UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

Case No. 22-1198 (L)

(2:20-cv-00278)

_____

DON BLANKENSHIP

Plaintiff-Appellant

v.

NBCUNIVERSAL, LLC; CNBC, LLC

Defendants-Appellees

and

DOES 1-50, inclusive

Defendant

_____

Case No. 22-1207

(2:19-cv-00236)

_____

DON BLANKENSHIP

Plaintiff-Appellant

v.

FOX NEWS NETWORK, LLC; CABLE NEWS NETWORK, INC.; MSNBC
CABLE LLC; 35TH INC.; WP COMPANY LLC, d/b/a The Washington Post;
DOES 1-50, inclusive; MEDIAITE, LLC; FISCALNOTE, INC., d/b/a Roll Call;
NEWS AND GUTS, LLC; THE CHARLESTON GAZETTE-MAIL; AMERICAN

BROADCASTING COMPANIES, INC.; TAMAR AUBER; GRIFFIN CONNOLLY; ELI LEHRER

      Defendants-Appellees

and

DOES 1-50, inclusive

      Defendant

_____

Appeal from the United States District Court
for the Southern District of West Virginia at Charleston

_____

**JOINT APPENDIX**

**VOLUME IV of XXI – PAGES 848 to 1149**

_____

| | DOCUMENT DESCRIPTION | DATE | ECF NO. | VOLUME | PAGE |
|---|---|---|---|---|---|
| 31. | Memorandum of Points and Authorities In Support of Plaintiff Don Blankenship's Opposition to Motion for Summary Judgment of Defendant MSNBC Cable, LLC – Exhibit 5: Excerpts from Deposition Transcript of Joy Reid taken on April 19, 2021 | 06/07/2021 | 911-5 | IV | 848 |
| 32. | Memorandum of Points and Authorities In Support of Plaintiff Don Blankenship's Opposition to Motion for Summary Judgment of Defendant MSNBC Cable, LLC – Exhibit 6: Excerpts from Deposition Transcript of Denis Horgan taken on April 23, 2021 | 06/07/2021 | 911-6 | IV | 894 |
| 33. | Memorandum of Points and Authorities In Support of Plaintiff Don Blankenship's Opposition to Motion for Summary Judgment of Defendant MSNBC Cable, LLC – Exhibit 7: Excerpts from Deposition of Don Blankenship taken on November 18, 2020 | 06/07/2021 | 911-7 | IV | 926 |

| | DOCUMENT DESCRIPTION | DATE | ECF NO. | VOLUME | PAGE |
|---|---|---|---|---|---|
| 34. | Memorandum of Points and Authorities In Support of Plaintiff Don Blankenship's Opposition to Motion for Summary Judgment of Defendant MSNBC Cable, LLC – Exhibit 8: Letter from Dr. Stan Smith to Mr. Eric Early re Assessment of Damages dated February 1, 2021 | 06/07/2021 | 911-8 | IV | 945 |
| 35. | Memorandum of Points and Authorities In Support of Plaintiff Don Blankenship's Opposition to Motion for Summary Judgment of Defendant MSNBC Cable, LLC – Exhibit 9: Excerpts from Deposition Transcript of Don Blankenship taken on April 29, 2021 | 06/07/2021 | 911-9 | IV | 1001 |
| 36. | Defendant MSNBC Cable, LLC's Reply In Support of Its Motion for Summary Judgment | 06/14/2021 | 938 | IV | 1021 |
| 37. | Defendant MSNBC Cable, LLC's Reply In Support of Its Motion for Summary Judgment – Exhibit 1: Excerpts from Deposition Transcript of Christopher Loffredo | 06/14/2021 | 938-1 | IV | 1047 |

| | DOCUMENT DESCRIPTION | DATE | ECF NO. | VOLUME | PAGE |
|---|---|---|---|---|---|
| | Hayes taken on March 2, 2021 | | | | |
| 38. | Defendant MSNBC Cable, LLC's Reply In Support of Its Motion for Summary Judgment – Exhibit 2: Excerpts from Deposition Transcript of Denis Horgan taken on April 23, 2021 | 06/14/2021 | 938-2 | IV | 1083 |
| 39. | Defendant MSNBC Cable, LLC's Reply In Support of Its Motion for Summary Judgment – Exhibit 3: Excerpts from Deposition Transcript of Joy-Ann Lomena-Reid taken on April 19, 2021 | 06/14/2021 | 938-3 | IV | 1095 |
| 40. | Defendant MSNBC Cable, LLC's Reply In Support of Its Motion for Summary Judgment – Exhibit 4: Excerpts from Deposition Transcript of Marian Porges taken on December 10, 2020 | 06/14/2021 | 938-4 | IV | 1121 |
| 41. | Defendant MSNBC Cable, LLC's Reply In Support of Its Motion for Summary Judgment – Ex. 5: Excerpts from Deposition Transcript of Don Blankenship taken on April 29, 2021 | 06/14/2021 | 938-5 | IV | 1134 |

# EXHIBIT 5
# Excerpts from Deposition of Joy Reid taken on April 19, 2021

# In the Matter Of:

## Don Blankenship vs

## Fox News Network

---

# JOY-ANN LOMENA-REID

## April 19, 2021

---

# LEXITAS™

USCA4 Appeal: 22-1198    Doc: 48    Filed: 05/25/2022    Pg: 8 of 307
Case 2:19-cv-00236   Document 911-5   Filed 06/07/21   Page 3 of 46 PageID #: 14406

Don Blankenship vs
Fox News Network
Confidential
Joy-Ann Lomena-Reid
April 19, 2021

1

```
 1              UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF WEST VIRGINIA
 2                  CHARLESTON DIVISION

 3   DON BLANKENSHIP,        §
                             §
 4        Plaintiff,         §
                             §
 5   v.                      § Case No.:  2:19-cv-00236
                             §
 6   FOX NEWS NETWORK,       §
     L.L.C., et al.          §
 7                           §
          Defendants.        §
 8
     * * * * * * * * * * * * * * * * * * * * * * * * *
 9
              REMOTE VIDEOTAPED ORAL DEPOSITION OF
10                 JOY-ANN LOMENA-REID
              Designated as "Confidential"
11                 April 19, 2021
     * * * * * * * * * * * * * * * * * * * * * * * * *
12

13        REMOTE VIDEOTAPED ORAL DEPOSITION OF JOY-ANN

14   LOMENA-REID, produced as a witness and duly sworn, was

15   taken in the above-styled and numbered cause on April

16   19, 2021, from 10:01 a.m. until 12:12  p.m. (Eastern

17   Time), before Suzanne Kelly, RDR, CRR, in and for the

18   State of Texas, reported by stenographic method with

19   all participants appearing remotely from separate

20   locations pursuant to emergency orders related to the

21   COVID-19 pandemic.

22

23   Reported by:  Suzanne Kelly, CSR, RDR, CRR

24   Job Number:  2021-785595

25
```

2

```
1                      APPEARANCES

2    FOR THE PLAINTIFF:

3    Jeremy Gray, Esq.
          -and-
4    Saam Takaloo, Esq.
     EARLY SULLIVAN WRIGHT GIZER & McRAE, L.L.P.
5    6420 Wilshire Boulevard
     17th Floor
6    Los Angeles, California 90048
     323.301.4660
7    jgray@earlysullivan.com
     stakaloo@earlysullivan.com
8

9    FOR DEFENDANT MSNBC CABLE, L.L.C.

10   Kevin T. Shook, Esq.
     FROST BROWN TODD, L.L.C.
11   10 W Broad Street #2300
     Columbus, Ohio 43215
12   614.559.7214
     kshook@fbtlaw.com
13
     Jared M. Tully, Esq.
14   FROST BROWN TODD, L.L.C.
     United Bank Building
15   500 Virginia Street, East
     Suite 1100
16   Charleston, West Virginia 25301
     304.348.2404
17   jtully@fbtlaw.com

18

19   FOR ABC:

20   Caesar Kalinowski, IV, Esq.
     DAVIS WRIGHT TREMAINE
21   920 Fifth Avenue
     Suite 3300
22   Seattle, Washington 98104
     206.757.8282
23   caesarkalinowski@dwt.com

24

25
```

| Don Blankenship vs | | Joy-Ann Lomena-Reid |
|---|---|---|
| Fox News Network | Confidential | April 19, 2021 |

3

```
1                    APPEARANCES (Continued)

2

    FOR THE DEFENDANT CABLE NEWS NETWORK AND THE
3   WASHINGTON POST:

4   Melinda Johnson, Esq.
    WILLIAMS & CONNOLLY, L.L.P.
5   725 12th Street NW
    Washington, D.C. 20005
6   202-434-5181
    mkjohnson@wc.com
7

8   FOR DEFENDANT FOX NEWS NETWORK, L.L.C.:

9   Silvia N. Ostrower, Esq.
    HUNTON ANDREWS KURTH, L.L.P.
10  200 Park Avenue
    New York, New York 10166
11  212.309.1204
    sostrower@HuntonAK.com
12

13  ALSO PRESENT:

14  Mr. Don Blankenship
    Mr. Phil Roller, Videographer, proller@otrlv.com
15  Mr. Erik Bierbauer, MSNBC in-house counsel
    Ms. Gail Gold
16

17

18

19

20

21

22

23

24

25
```

USCA4 Appeal: 22-1198    Doc: 48       Filed: 05/25/2022    Pg: 11 of 307
Case 2:19-cv-00236    Document 911-5    Filed 06/07/21    Page 6 of 46 PageID #: 14409

1    B-i-e-r-b-a-u-e-r.  He is in-house counsel for

2    MSNBC.  And he'll be taking the lead in defending

3    this deposition.

4              MR. BIERBAUER:  I would just add

5    that I believe the General Counsel Gail Gold,

6    will also be joining although she may have

7    trouble getting in for the moment.

8              THE VIDEOGRAPHER:  All right.  And

9    the Court Reporter, Dawna Suzanne Kelly, will now

10   swear in the witness.

11             MS. OSTROWER:  This Silvia Ostrower

12   of Hunter Andrews Kurth for Fox News Network.

13             MR. KALINOWSKI:  Caesar Kalinowski

14   from Davis Wright Tremaine appearing on behalf of

15   ABC.

16             MS. JOHNSON:  Mindy Johnson

17   appearing on behalf of CNN and the Washington

18   Post.

19             MR. GRAY:  Suzi, you're muted.

20             THE COURT REPORTER:  Anyone else to

21   announce?

22             In that is the case, Ms. Reid, if

23   you would please raise your right hand.

24             Do you solemnly swear or affirm

25   that the testimony which you give in this case

USCA4 Appeal: 22-1198    Doc: 48       Filed: 05/25/2022    Pg: 12 of 307

```
 1    will be the truth, the whole truth and nothing

 2    but the truth, so help you God?

 3                    THE WITNESS:  I do.

 4                    THE COURT REPORTER:  Thank you.

 5                    You all may proceed.

 6                    JOY-ANN LOMENA-REID,

 7    having sworn to testify the truth, the whole

 8    truth, and nothing but the truth testifies upon

 9    her oath as follows:

10                        EXAMINATION

11    BY MS. REID:

12         Q.  Good morning, Ms. Reid.  My name is

13    Jeremy Gray.  I am a lawyer, I represent Don

14    Blankenship in this litigation.

15         A.  Good morning.

16         Q.  Morning.  Could you please state and

17    spell your full name for the record?

18         A.  My full name is Joy-Ann Lomena-Reid.

19    Joy, J-o-y-A-n-n.  Last name L-o-m-e-n-a-R-e-i-d

20    but it's also just Joy-Ann Reid.

21         Q.  Ms. Reid, have you ever had your

22    deposition taken before?

23         A.  No.

24         Q.  Let me go over some of the ground rules.

25                    I'm going to be asking you
```

36

1    Q.   Take a moment to read the two paragraphs

2    under "Opinion and Commentary."

3    A.   Uh-huh.

4    Q.   So have you read those two paragraphs?

5    A.   I have.

6    Q.   Is that your understanding of the policy

7    to which you were generally referring to just a

8    moment ago?

9    A.   Yes.

10   Q.   Okay.   Is it -- it's your understanding

11   that you are allowed to provide opinions; is that

12   right?

13   A.   Correct.

14   Q.   But that doesn't detract from your

15   obligation to be factually accurate; true?

16   A.   To strive to be accurate, yes.

17   Q.   A couple more questions on Exhibit 1.

18        Did you ever attend any training

19   sessions at NBC Universal regarding these

20   policies?

21   A.   I can't recall doing a training

22   specifically on this.   I don't -- I mean I worked

23   there a long time.   So I can't recall.

24   Q.   I'm going to mark as Exhibits "2" and

25   "3," two transcripts.   The first, Exhibit 2, are

USCA4 Appeal: 22-1198   Doc: 48   Filed: 05/25/2022   Pg: 14 of 307
Case 2:19-cv-00236   Document 911-5   Filed 06/07/21   Page 9 of 46 PageID #: 14412

Don Blankenship vs
Fox News Network

Confidential

Joy-Ann Lomena-Reid
April 19, 2021

37

1   document control numbers 87 through 105 and it's

2   dated -- it is for a first show dated July 9,

3   2018.

4                  And the second transcript is --

5   which is Exhibit 3, are document control numbers

6   145 through 163 and it's for a show dated May 24,

7   2019.

8                  Do you have those --

9                  MR. BIERBAUER:  I think you said

10  "July 9th, 2018" for Exhibit 2 and I think you

11  meant January 9th, 2018.

12                 MR. GRAY:  I did.  I did mean

13  January 9th, I apologize.  Thank you, Counsel.

14                 THE WITNESS:  I have.

15                 MR. GRAY:  So let me correct for

16  the record.  Exhibit 2 is January 9, 2018, I

17  misspoke.  Exhibit 3 is May 4, 2018.

18                 THE WITNESS:  Uh-huh.

19  BY MR. GRAY:

20      Q.  Do you have those two in front of you,

21  ma'am?

22      A.  I do.

23      Q.  All right.  So I'm going to ask you some

24  questions about these later.  I just wanted to

25  mark them.

Don Blankenship vs
Fox News Network                    Confidential                    Joy-Ann Lomena-Reid
                                                                    April 19, 2021

38

1          So these are two shows where you

2    guest hosted for Chris Hayes on "All In."      Is

3    that right?

4          A.   Yes.

5          Q.   And -- and those shows were in 2018?

6          A.   Yes.

7          Q.   Was there a typical amount of notice

8    that you would be given before you guest hosted a

9    show?

10         A.   It depends.  You know if the person,

11   the -- the original host is out sick, for

12   instance, you get very little notice.

13              If there was a planned, you know,

14   vacation or, you know, he was going to be out,

15   you might get, you know, a week or two notice.

16   It just really depends on what -- what were the

17   circumstances of the person being out.

18         Q.   Understood.  Do you recall with respect

19   to either the January 9th show or the May 4th

20   show in either case, how much notice you had

21   that you were going to be the guest host that

22   day?

23         A.   I -- I absolutely do not remember that,

24   no.

25         Q.   Did you typically confer with Mr. Hayes

1   familiar.  I'm not the best with names in general

2   but her name sounds familiar.

3          Q.   How about Diane Shamis or "Shamis"?

4          A.   Diane Shamis, yes.

5          Q.   Denis Horgan?

6          A.   Yes.  He's the executive producer of

7   that show.

8          Q.   Todd Cole?

9          A.   He's a producer on that show, yeah.

10         Q.   Brendan O'Melia?

11         A.   He is the senior producer on that show.

12         Q.   And Rachel Simon?

13         A.   Rachel -- that name sounds familiar.  I

14  think she is a staffer somewhere on that show.

15         Q.   Okay.  Do you recall ever working with

16  someone named "Gregg Cockrell"?

17         A.   You know what's interesting is that

18  I -- I don't know if I ever worked with Gregg

19  Cockrell on that show, but I think I used to work

20  with him at WTVJ weirdly enough.

21               That -- the only Gregg Cockrell I

22  remember worked at WTVJ back when I did.  So I

23  don't recall a Gregg Cockrell being on this

24  particular show.

25         Q.   When you hosted the "All In" show in

USCA4 Appeal: 22-1198    Doc: 48    Filed: 05/25/2022    Pg: 17 of 307
Case 2:19-cv-00236   Document 911-5   Filed 06/07/21   Page 12 of 46 PageID #: 14415

Don Blankenship vs
Fox News Network                    Confidential                    Joy-Ann Lomena-Reid
                                                                     April 19, 2021

42

1   2018, were portions of the program scripted in

2   advance?

3       A.  Well, "in advance," us -- is not sort of

4   the way I would put it, no.  Every show that's a

5   daily show is scripted that day.  So, the show

6   that's going to air at 8:00 o'clock live is

7   scripted that day.

8       Q.  All right.  So just so there's no

9   confusion, when I say, "in advance," I mean

10  before you start broadcasting.  So...

11      A.  It's scripted that day in advance, yeah.

12  It's scripted during the day and worked on and

13  then you go live with it at 8:00.

14      Q.  And who prepares those scripts?

15          Let me ask it more specifically.

16  In 2018, when you were get hosting "All In," how

17  were those scripts prepared?  Let me ask you

18  generally.

19      A.  Okay.  So this is from memory.  Not

20  having guest hosted that show as a while.

21          As I recall, you come in for the

22  meeting in the morning which is I think the team

23  meeting that, one, but I would like to get there

24  a little early talk to the executive producer and

25  the senior producers about kind of the lay of the

45

1   it's in my voice because I have to actually speak

2   these words.  So I want to make sure that, you

3   know, Chris and I don't speak the same way, you

4   know, we don't have the same inflections or the

5   same kind of vibes.

6            If you're -- so even though you are

7   guest hosting, you want it to be in the style of

8   the show that it is.  You don't want to change

9   the character of the show.  But you do want it to

10  be in your voice because, you know, you're

11  reading it.  So, I more edit it for that.

12           I don't edit it for content or for,

13  you know, I don't go back and, you know, do any

14  of that.  I'm just editing it more to make sure

15  that it's in my voice.

16      Q.   Were -- part of -- let me start again.

17           There were segments of the shows

18  that you guest hosted in 2018, when there were

19  guests being interviewed.  Were -- were those

20  scripted in any way?

21      A.   No.  The interviews are just live.  They

22  are not scripted.

23      Q.   Is it correct to say that other -- that

24  segments other than interviews or where you have

25  a panel discussion, discussing on the show, the

1    other seg -- other than those, the segments on

2    the shows are scripted?

3              MR. BIERBAUER:  Objection to form.

4    BY MR. GRAY:

5        Q.  You can answer.

6              Let me rephrase the question.

7        A.  Sure.

8        Q.  I understand when you're interviewing

9    someone, that's not scripted; true?

10       A.  Correct.

11       Q.  And again, we're talking about when

12   you're guest hosting "All In" in 2018.

13       A.  Uh-huh.

14       Q.  So the interviews are not scripted;

15   true?

16       A.  Correct.  What's scripted is the

17   introduction to the segment.  So you come in,

18   and you come back from commercial and you set up

19   the topic that's scripted and then you introduce

20   the guest and then the conversation is

21   unscripted.

22       Q.  Would the same be true if you had a

23   panel that was kicking around a topic of the

24   day?

25       A.  Correct.  The setup is scripted and the

USCA4 Appeal: 22-1198    Doc: 48         Filed: 05/25/2022    Pg: 20 of 307    PageID #: 14418
Case 2:19-cv-00236   Document 911-5   Filed 06/07/21   Page 15 of 46

Don Blankenship vs
Fox News Network                    Confidential                    Joy-Ann Lomena-Reid
                                                                    April 19, 2021

47

1    conversation with the panel is unscripted.

2        Q.   Mr. Hayes has a feature on his show

3    called "Thing One" and "Thing Two."

4                Was that in 2018 when you are a

5    guest hosting, was that scripted in advance?

6        A.   Yes.   And just to be clear, when we say,

7    "in advance," we mean that day before the show.

8    Not like days before, it's scripted that day in

9    advance of it airing life, yeah.

10               MR. GRAY:   We have been going for

11   about an hour.   Why don't we take a 10-minute

12   break?

13               THE WITNESS:   Okay.

14               THE VIDEOGRAPHER:   The time is

15   10:57.   We are off the record.

16               (Recess taken.)

17               THE VIDEOGRAPHER:   The time is

18   11:10 a.m.   We're back on the record.

19   BY MR. GRAY:

20       Q.   Ms. Reid, when you were preparing for

21   these shows in 2018 that you were guest hosting,

22   did you work with Mr. Denis Horgan on the scripts

23   for those shows?

24       A.   I would say I did not work with Denis

25   Horgan on the scripts for those shows, you know,

Don Blankenship vs
Fox News Network                    Confidential                    Joy-Ann Lomena-Reid
                                                                     April 19, 2021

48

1   because he is, as the executive producer, he is

2   not writing the scripts.  He is assigning the

3   producers who write the scripts, and he's

4   overseeing the process overall.

5               So, I worked with him overall on

6   the show.

7        Q.  Were there particular people that you

8   recall working on with respect to the scripts

9   directly?

10       A.  There are so many producers on these

11  shows, I could not -- I couldn't recall which

12  producer wrote which transcript from that far

13  back.

14              But, you know, each producer is

15  assigned a segment.  So one of the many producers

16  on "All In" wrote Segment A, one wrote Segment B,

17  one wrote, you know, they all -- you know, I

18  couldn't tell you which one.

19       Q.  Did -- did you and Mr. Horgan do a final

20  read through or final review of all of those

21  materials before the show aired?

22       A.  Not together.  I mean, you know, he has

23  his process and his review price and I have mine.

24       Q.  Was it your understanding that he'd

25  review whatever materials you were broadcasting

Don Blankenship vs
Fox News Network     Confidential     Joy-Ann Lomena-Reid
April 19, 2021

49

1   that day?

2      A.   Yeah.   He's overseeing the overall

3   process, yes.

4      Q.   Okay.   Please put Exhibit 2 in front of

5   you.

6         Do you have it?

7      A.   Which -- which is Exhibit 2?   I'm sorry.

8      Q.   I'm sorry.   It's the January 9th show.

9   Transcript of the January 9th show.

10      A.   I have that.

11      Q.   All right.   So as I said before, I'm

12   just going to ask you about a couple of comments

13   in this particular transcript so I'm just going

14   to ask you about those if you feel the need to

15   read more than I'm asking, let me know.

16   Otherwise, we'll just proceed.

17         If you could look at Page 101, to

18   the document control number to at the bottom of

19   that transcript.

20      A.   Uh-huh.

21      Q.   Do you have that in front of you?

22      A.   Yes.

23      Q.   All right.   Do you see the paragraph

24   that begins "yet" about a third of the way down?

25   "Yet the Associated Press"?

1          A.   Yes.

2          Q.   All right.   You know above that, it

3   says, "Reid."   I understand that to mean that

4   this is statements that you broadcast that day;

5   is that correct?

6          A.   Correct.

7          Q.   All right.   And if you could just read

8   from where it says, "After being convicted"

9   through the end of the paragraph that begins

10  with, "yet, the Associated Press," yourself?

11              I'm going to ask you some questions

12  about it.

13         A.   Sure.   Read it to myself?

14         Q.   Yeah.   And then I'm going to have you

15  read part of it out loud but -- but I want to

16  just make sure you are oriented.

17         A.   Sure.

18         Q.   Okay.   Could you read for me into the

19  record the paragraph, just the paragraph that

20  begins, "Yet, the Associated Press"?

21         A.   Sure.   "Yet, the Associated Press

22  reports that the judge in Arpaio's case said

23  pardons moot punishments in criminal cases but

24  don't erase conviction.

25              Meaning that Arpaio is still an

USCA4 Appeal: 22-1198    Doc: 48    Filed: 05/25/2022    Pg: 24 of 307

Case 2:19-cv-00236   Document 911-5   Filed 06/07/21   Page 19 of 46 PageID #: 14422

Don Blankenship vs
Fox News Network

Confidential

Joy-Ann Lomena-Reid
April 19, 2021

51

1    85-year-old convicted criminal, which makes him

2    the third convicted criminal running for office

3    as an Republican this year, joining Don

4    Blankenship who is running for a Senate seat in

5    West Virginia after serving a year in federal

6    prison for ignoring safety regulations in a

7    mining explosion in a 20 -- in 2010 that killed

8    29 men."

9                    Do you want me to keep going?

10        Q.   No.  You can stop there.  That is fine.

11        A.   Okay.

12        Q.   Was that something what you just read

13   into the record, is that something you broadcast

14   on this show that night; true?

15        A.   This is a transcript, so I cannot

16   dispute that, yes.  This is correct.

17        Q.   You have no reason to believe that's not

18   accurate?

19        A.   No reason, no.

20        Q.   All right.  And was that something that

21   was scripted in advance?

22        A.   Yes.

23        Q.   Do you recall providing any input into

24   that portion of the show meaning -- let me re-ask

25   the question.

USCA4 Appeal: 22-1198    Doc: 48    Filed: 05/25/2022    Pg: 25 of 307
Case 2:19-cv-00236  Document 911-5  Filed 06/07/21  Page 20 of 46 PageID #: 14423
Don Blankenship vs
Fox News Network

Confidential

Joy-Ann Lomena-Reid
April 19, 2021

52

```
1            Do you recall providing any input
2   into the script on -- for this show relating to
3   the paragraph that we just looked at?
4        A.   No.  No.  I cannot.
5        Q.   Do you --
6        A.   Other than -- again, the only input that
7   I would offer would be, you know, sometimes
8   adding an ellipse where I would pause or, you
9   know, making sure that there was something about
10  the voice that would be mine but this was just
11  factual information.  So, I wouldn't have had any
12  reason to that I can recall.
13       Q.   Do you recall discussing Mr. Blankenship
14  with any of the folks involved in preparation of
15  the show prior to this broadcast?
16       A.   Discussing him in what way?
17       Q.   In any way.  In other words, do you
18  recall as you sit here today, any discussion
19  about Mr. Blankenship that you may have had with
20  any of the producers or staff on the show prior
21  to the January 9th broadcast?
22       A.   I can't think of a reason why I would
23  have had such a discussion.  So I can't recall
24  anything like that, no.
25       Q.   So for the May 4th show, I'm going
```

1    to -- we are going to play a portion of that so

2    we can all watch it together.   I believe it

3    starts --

4                MR. GRAY:   Saam, I believe it

5    starts at 3234; is that right?

6                MR. TAKALOO:   3222.

7                MR. GRAY:   Okay.   Thank you.

8                So can you -- Saam, just let us

9    know for the record the portion of the May 4th

10   program that you're going to play.

11               MR. TAKALOO:   Sure, it is going to

12   be 3222 to 3506.

13               (Video clip plays as follows:)

14               MS. REID:   Speech to the Trump base

15   is ahead.   Plus the political ad you have to see

16   to believe.   In tonight's Thing 1, Thing 2, next.

17               Thing 1 tonight, coal baron and

18   convicted felon Don Blankenship who spent a year

19   in federal prison for his role in a 2010 mine

20   explosion that killed 29 people and who is still

21   on probation has been trying to get Republicans

22   votes in the West Virginia Senate primary by

23   going after his own party, senate leader Mitch

24   McConnell, nicknaming him "Cocaine Mitch" and

25   referring to McConnell's father-in-law as a

1      quote, "China person."

2                MR. BLANKENSHIP:   I'm an American

3      person.   I don't see this insinuation by the

4      press that there is something racist about saying

5      a "China person."   Some Korean persons and some

6      of them are African persons.   It's not any

7      slander there.

8                MS. REID:   Oh, oh, but he wasn't

9      done there.   Behold the Blankenship's new

10     campaign ad.

11               MR. BLANKENSHIP:   Swamp captain

12     Mitch McConnell has created millions of jobs for

13     China people.   While doing so, Mitch has gotten

14     rich, in fact, his China family has given him

15     tens of millions of dollars.   Mitch's swamp

16     people are now running false negative ads against

17     me, they are also childishly calling me

18     "despicable" and "mentally ill."

19               The war to drain the swamp and

20     create jobs for West Virginia people has begun.

21     I will beat Joe Manchin and ditch Cocaine Mitch

22     for the sake of the kids.

23               MS. REID:   It's for the kids.   And

24     for the sake of the kids, Don Blankenship has a

25     new defense against charges of racism and that's

USCA4 Appeal: 22-1198   Doc: 48        Filed: 05/25/2022   Pg: 28 of 307
Case 2:19-cv-00236   Document 911-5   Filed 06/07/21   Page 23 of 46 PageID #: 14426

| Don Blankenship vs | | Joy-Ann Lomena-Reid |
| Fox News Network | Confidential | April 19, 2021 |

56

```
 1              You know, in order to have a racist
 2    statement, you have to mention a race or a
 3    derogatory comment about a race.
 4              (Video ceases to play.)
 5    BY MR. GRAY:
 6        Q.  So Ms. Reid, what we just watched was
 7    part of a program that was broadcast live on
 8    MSNBC on May 5th, 20 -- excuse me -- May 4th,
 9    2018; right?
10        A.  Uh-huh.
11        Q.  Is that a "yes"?
12        A.  Yes.  Sorry.  Yes.
13        Q.  And this sounds weird, but that was you
14    speaking?
15        A.  Very different hair style, but yes.
16        Q.  And you say that Mr. Blankenship is a
17    coal baron and convict -- convicted felon.
18              Did you see that?
19        A.  I saw that.
20        Q.  And were you reading that off a
21    teleprompter?
22        A.  Yes.
23        Q.  Was that scripted in advance?
24        A.  Scripted that day, yes.
25        Q.  There is a clip in that segment from the
```

 1                    UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF WEST VIRGINIA
 2                       CHARLESTON DIVISION
 3    DON BLANKENSHIP,          §
                                §
 4          Plaintiff,          §
                                §
 5    v.                        §  Case No.:   2:19-cv-00236
                                §
 6    FOX NEWS NETWORK,         §
      L.L.C., et al.            §
 7                              §
            Defendants.         §
 8
                 REMOTE VIDEOTAPED ORAL DEPOSITION OF
 9                     JOY-ANN LOMENA-REID
10                       April 19, 2021

11
            I, Suzanne Kelly, RDR, CRR, in and for the State
12    of Texas hereby certify to the following:

13          That the witness, JOY-ANN LOMENA-REID, was duly
      sworn by the officer and that the transcript of the
14    videotaped oral deposition is a true record of the
      testimony given by the witness;

15
            That the deposition transcript was submitted on
16    the _____ day of _____, 2021, to the witness for
      examination, signature and return to Suzanne Kelly by
17    the _____ day of _____, 2021;

18          That the amount of time used by each party at the
      deposition is as follows:
19
            Mr. Gray:   One hour and 43 minutes used;
20
            That pursuant to the information given to the
21    deposition officer at the time said testimony was
      taken, the following includes counsel for all parties
22    of record:

23

24

25

USCA4 Appeal: 22-1198   Doc: 48      Filed: 05/25/2022   Pg: 30 of 307
Case 2:19-cv-00236   Document 911-5   Filed 06/07/21   Page 25 of 46 PageID #: 14428

Don Blankenship vs
Fox News Network                    Confidential                    Joy-Ann Lomena-Reid
                                                                     April 19, 2021

91

```
 1   Jeremy Gray, Esq.
          -and-
 2   Saam Takaloo, Esq.
     EARLY SULLIVAN WRIGHT GIZER & McRAE, L.L.P.
 3   6420 Wilshire Boulevard
     17th Floor
 4   Los Angeles, California 90048
     323.301.4660
 5   jgray@earlysullivan.com
     stakaloo@earlysullivan.com
 6
     Kevin T. Shook, Esq.
 7   FROST BROWN TODD, L.L.C.
     10 W Broad Street #2300
 8   Columbus, Ohio 43215
     614.559.7214
 9   kshook@fbtlaw.com
10   Jared M. Tully, Esq.
     FROST BROWN TODD, L.L.C.
11   United Bank Building
     500 Virginia Street, East
12   Suite 1100
     Charleston, West Virginia 25301
13   304.348.2404
     jtully@fbtlaw.com
14
     Caesar Kalinowski, IV, Esq.
15   DAVIS WRIGHT TREMAINE
     920 Fifth Avenue
16   Suite 3300
     Seattle, Washington 98104
17   206.757.8282
     caesarkalinowski@dwt.com
18
     Melinda Johnson, Esq.
19   WILLIAMS & CONNOLLY, L.L.P.
     725 12th Street NW
20   Washington, D.C. 20005
     202-434-5181
21   mkjohnson@wc.com
22
     Silvia N. Ostrower, Esq.
     HUNTON ANDREWS KURTH, L.L.P.
23   200 Park Avenue
     New York, New York 10166
24   212.309.1204
     sostrower@HuntonAK.com
25
```

92

```
 1          I further certify that I am neither counsel for,
    related to, nor employed by any of the parties or
 2  attorneys in the action in which this proceeding was
    taken, and further that I am not financially or
 3  otherwise interested in the outcome of the action.
 4          In witness whereof, I have this date subscribed my
    name on this ___ day of _____ 2021.
 5
 6
 7
 8                  Suzanne Kelly, RDR, CRR
                    Expiration Date:  12-31-18
 9                  LEXITAS
                    Firm Registration No. 736
10                  Suite 118
                    999 Old Eagle School Road
11                  Wayne, Pennsylvania 19087-1707
                    215.494.7650
12
    JOB NO.:   2021-78559584
13

14

15

16

17

18

19

20

21

22

23

24

25
```

# EXHIBIT #2

<Show: ALL IN with CHRIS HAYES>
<Date: January 9, 2018>
<Time: 20:00>
<Tran: 010901cb.478>
<Type: Show>
<Head: ALL IN WITH CHRIS HAYES for January 9, 2018, on MSNBC>
<Sect: News; International>
<Byline: Joy Reid>
<Guest: Jason Johnson, Rick Wilson, Mazie Hirono, Evan McMullin, Kurt
Bardella >
<High: >
<Spec: Politics; Immigration; DACA; Congress; Donald Trump>

CHRIS MATTHEWS, MSNBC HOST:.  Thanks for being with us.  "ALL IN" with
Chris Hayes starts right now.

(BEGIN VIDEO CLIP)

JOY REID, MSNBC HOST:  Tonight on ALL IN.

DONALD TRUMP, PRESIDENT OF THE UNITED STATES:  Well, I think it's very sad
what they've done with this fake dossier.

REID:  Democrats release the Fusion GPS transcripts.

TRUMP:  But I think it's a disgrace.

REID:  Tonight, explosive new details about the Steele dossier, including
fears that Trump was blackmailed.  And that a human source from inside the
Trump organization led to the FBI's investigation.  Then --

STEVE BANNON, FORMER CHIEF STRATEGIST, WHITE HOUSE:  This is what they
think about President Trump behind closed doors.

REID:  Steve Bannon bounced from Breitbart as his epic collapse continues.

TRUMP:  That's why sloppy Steve is now looking for a job.

REID:  And the self-proclaimed very stable genius holds court on
immigration --

TRUMP:  My positions are going to be what the people in this room come up
with.

REID:  -- and plays chicken with DACA and the wall.

TRUMP:  I think that's what she's saying.

REID:  ALL IN starts now.

(END VIDEO CLIP)

REID:  Good evening from New York, I'm Joy Reid in for Chris Hayes.
Republicans did not want the public to see secret testimony related to the
infamous Trump dossier.  But today democratic Senator Dianne Feinstein went
ahead and released the testimony anyway.  And now that we've seen it, it's

MSNBC 000087

clear why the Republicans didn't want it to get out because this testimony
destroys the conspiracy theory being peddled on the right to undermine
Special Counsel Robert Mueller's Russia investigation. According to that
theory, the dossier was co-opted by the FBI in 2016 as part of a Democratic
plot to tarnish Donald Trump.

(BEGIN VIDEO CLIP)

REP. JIM JORDAN (R), OHIO:  The Clinton campaign and the DNC, now we know
those are one and the same, paid the law firm who paid Fusion GPS who paid
Christopher Steele who paid Russians to give him this dossier and get this
dossier that was we think taken to the FISA court and was the basis for
securing warrant to spy on American --

UNIDENTIFIED MALE:  Congressman -- the Clinton campaign --if you let me, I
will get to this. I will get to this --

(END VIDEO CLIP)

REID:  The testimony released today blows those claims out of the water and
the two Republican Senators blocking its release, Chuck Grassley, and
Lindsey Graham knew that. They knew the narrative being pushed on Fox News
and Capitol Hill was baloney. But instead of correcting that narrative,
they chose to perpetuate it calling for a second special counsel to
investigate so-called FBI bias and referring the author of the dossier,
former British spy Christopher Steele, for a criminal investigation. It's
all part of a concerted drive by the President's allies to muddy the waters
of the Russia investigation and discredit the dossier, which outlines
alleged Russian collusion with the Trump campaign in 2016. According to
the testimony released today, the reports in that dossier were "really
serious and really credible." And their author Steele was an experienced
intelligence professional who used to be the top Russia expert at MI6.

The testimony was given by Glenn Simpson. Co-Founder of the research firm
Fusion GPS, which hired Steele to investigate Donald Trump during the
campaign. The research by Fusion GPS, in turn, was originally funded by
the Washington Free Beacon, a conservative Web site and later by a lawyer
representing the DNC and the Clinton campaign. Simpson was interviewed in
August for about ten hours by investigators on the Senate Judiciary
Committee. And more recently, at his firm's work has taken center stage in
right-wing conspiracy theories, he's been calling on the committee's senior
Republicans, Grassley and Graham, to release his testimony. Well, today
the top-ranking Democrat on Judiciary, Dianne Feinstein, got tired of
waiting.

(BEGIN VIDEO CLIP)

SEN. DIANNE FEINSTEIN (D), CALIFORNIA:  I think the people are entitled to
know what was said and the lawyers also wanted it released. I see no
problem with releasing.

(END VIDEO CLIP)

REID:  A spokesman for Grassley slammed Feinstein's move in a written
statement claiming that it "undermines the integrity of the committee's
oversight work and jeopardizes its ability to secure candid, voluntary

MSNBC 000088

testimony related to the independent recollections of future witnesses." But Grassley may have had other reasons to object. According to the testimony, Christopher Steele approached the FBI in the Summer of 2016, not as part of some shadowy Democratic plot, but because he was deeply troubled by his findings in the dossier. "He said he thought we were obligated to tell someone in government about this information. He thought from his perspective there was an issue, a security issue, about whether a presidential candidate was being blackmailed." When Steele finally did get in contact with the FBI, it turned out he was not the first person to do so according to this testimony. "They believed Chris' information might be credible because they had other intelligence that indicated the same thing.

One of those pieces of intelligence was a human source from inside the Trump organization." I'm joined now by two people who know a thing or two about the Department of Justice, MSNBC Justice Analyst Matt Miller, who was Chief Spokesman at the DOJ under President Obama and NBC News National Security Contributor Frank Figliuzzi, former Assistant Director for Counterintelligence at the FBI under then-Director Robert Mueller. And Frank, I'll start with you first. There are questions about who this other intelligence source inside the Trump campaign might have been and whether it might be George Papadopoulos, the same person who's pleaded guilty to a crime, the same person who allegedly on a drunken night told Australian officials who then relayed to American intelligence officials that there might be some attempted contact with the Trump campaign by the Russians. Would it surprise you if George Papadopoulos was the inside man, so to speak?

FRANK FIGLIUZZI, NBC NEWS NATIONAL SECURITY CONTRIBUTOR: No, that could very well be the case. We know that he had a conversation with the Aussies in May 2016. We know that Christopher Steele approached the FBI in July 2016 so this could be consistent. But I'll tell you something, if it's not George Papadopoulos, then we've got a mystery person inside the Trump campaign who theoretically could still be in place. And if in fact that's been compromised or jeopardized, I'm sure that the Mueller team is kind of scratching their heads tonight.

REID: Yes, and you know, I think probably the thing that's the most maddening when you look at this new piece of information that Republicans tried to stop us from seeing but that we can now see, is that you had the FBI being approached now by at least two people, someone inside the campaign, as well as this former MI6 top Russia expert and raising the alarms that one of the two candidates for President of the United States could be being blackmailed. And there's this piece from Glenn Simpson's testimony to Congress that Steele was concerned. He said, "I understand Chris severed his relationship with the FBI out of concern that he did not know what was happening inside the FBI and there was a concern that the FBI was being manipulated for political ends by the Trump people." That's referring to the fact that the FBI was denying that it was investigating the Trump campaign while it was acknowledging that it was investigating Hillary Clinton's e-mails. Is that a scandal, a new scandal upon the FBI?

MATT MILLER, MSNBC JUSTICE ANALYST: I think it's a tough thing to explain. Look, I think --

REID: Matt first.

MSNBC 000089

MILLER: I think what -- I think why Christopher Steele severed his ties was after that story in The New York Times ran October 31st when they said that you know, the FBI's been investigating this and so far had found no clear ties. And of course, Chris Steele was talking to FBI agents and had his own information he was supplying them that showed that wasn't the case. And that happened after two other events. One, Director Comey having sent -- having sent that letter up to the Hill, and then two, a Wall Street Journal story that had a number of leaks from the FBI, very harmful to the Clinton campaign about attempts by FBI agents to investigate the Clinton Foundation.

So I think he was very concerned when he saw that story. And I think we still haven't ever gotten a good explanation from the bureau about why they did knock that down. It may be very well that they didn't want ---- that they didn't want the Trump campaign, people they planned to approach to know how serious they were conducting this investigation. In fact, that would be a legitimate thing for them to do. They aren't supposed to be confirming investigations appropriately, it only seems odd because they acted so differently in the Clinton case.

REID: Yes. And Frank, I mean, that -- I guess -- I guess that would be sort of the only rational explanation why the FBI would then prompt the New York Times to publish this story that essentially knocks down the idea that the Trump campaign was being investigated while they were confirming that Hillary Clinton was. Doesn't this also explode this idea on the right that somehow the FBI was this hotbed of liberalism that was trying to help Hillary Clinton?

FIGLIUZZI: Yes, I think it does. And we know now that the FBI was being very circumspect. And I think as Matt said, they were in the midst of figuring out what they had with Trump, a candidate, very early stages perhaps, and just were circumspect to come out with it. But I also want to add something here, because we're talking about Chris Steele as a British Intelligence, professional, who knows Russia, came forward, called time-out, went to the FBI. I also want to point out another intelligence professional here, and that's Dianne Feinstein. Don't forget she Chairs the Senate Intelligence Committee. I personally as A.D. at FBI had met with her personally, briefed the committee, briefed her. She gets the intelligence from Russia and I think in part the reason why she released this transcript was because she knows how deeply damaging the Russian threat can be. She needs the public to see it and she was extremely frustrated with her colleagues in not being able to release it.

REID: Yes, absolutely. And I think you know, she of all people would understand that according to Glenn Simpson's lawyer, somebody's already been killed as a result of the publication of this dossier and those involved didn't want to see harm come to anyone else. You know, she also met with dealing with a colleague on the other side of the aisle that doing were things like Lindsey Graham did this weekend on "MEET THE PRESS." This is Lindsey Graham again reiterating who he wants investigated.

(BEGIN VIDEO CLIP)

SEN. LINDSEY GRAHAM (R), SOUTH CAROLINA: I want a special counsel to look at not only how Mr. Steele conducted himself, what the FBI did with the dossier, whether Mr. Orr, whose wife worked for Fusion GPS alongside Mr.

MSNBC 000090

Steele, what involvement did he have in the dossier, and I want to find out if the lead investigator of the Clinton e-mail investigation had a political bias against Trump for Clinton to the point that it was a sham investigation. I don't know all these things, but I can tell you somebody needs to look. If you believe Robert Mueller should be looking at the Trump campaign, count me in. But if you ignore all this stuff, you're blind.

(END VIDEO CLIP)

REID: Matt, what does it say to you or how do you feel about it when you hear -- when you hear Lindsey Graham saying that, knowing that he heard the exact same testimony Diane Feinstein did, that he knew what was in these transcripts and yet he still demonize -- he's still demonizing Mr. Steele, still demonizing Fusion GPS, and he knew better?

MILLER: You know, one of the things that's most stark when you read this transcript is the behavior of Christopher Steele versus that of Lindsey Graham, Chuck Grassley, and everyone in the Trump orbit. Look, Christopher Steele is not an American citizen, he's a British citizen, someone who's worked with American intelligence agencies and national security agencies for years. But he was so concerned by what he saw and cared so much about America's national security, that he took it upon himself to call the FBI. Contrast that with Donald Trump Jr. who saw that the Russians want to interfere with the selection and said, I love it. Contrast it with Jared Kushner, who got an e-mail saying the same thing, and went to a meeting. And contrast that with Lindsey Graham and Chuck Grassley, who seeing Christopher Steele tried to blow the whistle, and refer him for criminal charges, try to have him prosecuted and sent to jail. It really is, I would say a shameful moment for those two members of the Senate.

REID: Yes, well said. Matt Miller, Frank Figliuzzi, thank you, both. I appreciate it. And for more on Russian efforts to block the dossier testimony from being released -- from being released, let's bring in MSNBC Contributor Jennifer Rubin, Conservative Columnist for The Washington Post and Evan McMullin, Independent Presidential Candidate in 2016, who's also happens to be a former CIA officer. And actually, I'm going to start with you, Evan. What do you make of this? You just heard you know, Lindsey Graham again demonizing Christopher Steele, who made it his business, he's not even an American citizen as Matt just pointed out, to try to inform the FBI that he thought there could be blackmail happening against an American presidential candidate and then finding out there was an insider in the Trump campaign that was saying the same thing. What does it -- what do you make of the idea that Republicans have been trying to get Fusion GPS and Christopher Steele investigated?

EVEN MCMULLIN, FORMER INDEPENDENT PRESIDENTIAL CANDIDATE: Well, I think it goes to show how far this extreme partisanship with many Republicans in Congress has gone. It's gone so far that they're willing to attack people who are standing up for American and for western national security, meaning our allies in Europe, in the U.K., elsewhere, and of course here at home. I mean, this is what they're doing. They're attacking even the people that serve our country's interests, our country's most vital interests including the integrity of our elections. I find (AUDIO GAP) Grassley's attack, especially the criminal referral to the DOJ on Christopher Steele, to be just disgusting and very disappointing. I mean, this is -- this is -- they

MSNBC 000091

are not serving the public interest. What they did is completely disingenuous.

Keep in mind, they took information that they had received from the FBI and then wrote a criminal referral back to the Department of Justice about information that the FBI had given them. Think about how ridiculous that is. That's information the DOJ already has. And these guys, in a political stunt, send it back to DOJ and said, we're going to give you a criminal referral on this. It's absolutely absurd. Christopher Steele is a patriotic Brit. He's somebody who cares about our security too. He's been a partner in a variety of forms with our national security and law enforcement officials. He did what any intelligence or any law enforcement self-respecting officer would do, and that is alerted the appropriate authorities about a serious national security risk.

REID: Yes, and Jennifer, you know, you have the Australians alerting the United States about their alarms about what was going on between the Kremlin and the Trump campaign. You have Christopher Steele, who's a British citizen, MI6 Russia expert, alerting them. They're being alerted by the FBI, they're being investigated by the FBI. How under those circumstances, knowing what they knew before we did, can Lindsey Graham, best friend of John McCain, possibly justify turning this around and demonizing Christopher Steele and Fusion GPS?

JENNIFER RUBIN, MSNBC CONTRIBUTOR: Well, you ask the same question that I have been asking, which is, remember, how did the FBI and Steele kind of get together? And that was through John McCain, one of the closest friends and colleagues that Lindsey Graham has in the Senate. But instead, as you say, he's off on this wild goose chase. And the Republicans can understand didn't want us to learn lots of things that were in this testimony. I didn't know, for example, that they determined that, for example, Donald Trump was doing business in former Soviet States. Donald Trump kept denying he did business in Russia but he didn't say anything about Georgia and Azerbaijan, two places that apparently still figured out he was active in. He talked about ties with people connected to the Russian mob. He talked about, as you have said, other people within the Trump campaign who had this concern he was being blackmailed. So there's a lot of substantive material in here.

But the picture that you get is someone, both Mr. Simpson and Mr. Steele, who are professionals, who are handling material in the appropriate way, who didn't go in with the agenda that they wanted to find this or that or they wanted to make stuff up but they wanted to find out was out there. You know, Republicans don't want to find out what's out there, and they're completely just interested frankly in finding out the truth here. The name of the game for them toss circle the wagons around Donald Trump, threw up enough dust and enough distraction that we all get lost in the weeds and hope that somehow they stumble through 2018. But instead they're making themselves accessories to this cover-up, they're making themselves complicit in an effort to mislead the American people and to really conceal Donald Trump's own wrongdoings.

REID: Yes, and everything you have now, there's -- a piece of Spencer Ackerman is reporting just tonight in The Daily Beast that even after the election, an acolyte of Michael Flynn and Peter Thiel was floating the idea of withdrawing U.S. forces from parts of Europe that the United States has

MSNBC 000092

been defending since the Cold War, just to please Vladimir Putin. The evidence is mounting that this administration is attempting to appease Putin. And so when you couple that with these ties before the election, does it -- I mean, you ran for President of the United States. Can you imagine why somebody like Lindsey Graham, who used to be a hawk, could possibly not be interested in exploring that further?

MCMULLIN: No, and he has been. It's -- Lindsey Graham's behavior over the past month or two has been absolutely bewildering. I'm somebody who has had a great deal of respect for him. I just don't understand it. I absolutely don't understand it. The Russian interfered in our election, they would like to deprive the American people of unimpeded power to choose their own leaders. The Russians want to have a say in that. They had a say in that in 2016. It's a huge national security problem. Lindsey Graham knows it. Why he would behave in this manner is just -- I just can't explain it.

REID: Yes, and I think a lot of people are baffled. Jennifer Rubin and Evan McMullin, thank you so much for your time tonight.

RUBIN: Thanks.

MCMULLIN: Thank you.

REID: Thank you. And next, two -- what two-shirted strategic genius Steve Bannon Loses two jobs in one day. The epic demise of Steve Bannon in two minutes.

(COMMERCIAL BREAK)

(BEGIN AUDIO CLIP)

BANNON: You've got this miracle. You don't think that that's going to resonate. When you say he's created this kind of Oprah thing to set up to run against him in 2020, because of just his tweets or maybe his -- the way he comports himself, isn't his actions, whether it's destroying ISIS in the Middle East, or rebuilding the economy here, and unlocking the animal spirits of the American people, don't you think those actions go a lot farther than your quiet professionalism?

(END AUDIO CLIP)

REID: Well, the groveling didn't work. Steve Bannon is out of a job tonight. Two jobs, in fact. He has stepped down as Executive Chairman of Breitbart News and will no longer host the Breitbart radio show on Sirius XM. Bannon attacked Donald Trump's family in the new book Fire and Fury, going after Ivanka and Donald Jr. and angering the President in the process. After the book came out, Trump said Bannon had "lost his mind" and said his one-time campaign chief executive and fired chief strategist "has nothing to do with me or my presidency." That in turn lost Bannon the support of Rebecca Mercer and her father Robert, the billionaire backers of the Breitbart media site where he served as Executive Chairman since 2012.

Well, tonight The New York Times broke the news that Bannon is out at Breitbart. His departure forced by Rebecca Mercer herself. MSNBC Political Analyst Robert Costa, National Reporter for the Washington Post,

MSNBC 000093

has been reporting on Bannon's exit today and Kurt Bardella is a former
Spokesperson for Breitbart News. I'll start with you on this Robert. Give
us the play by play of how Bannon lost his gig.

ROBERT COSTA, MSNBC POLITICAL ANALYST: It came sudden today at Breitbart's
headquarters. People were preparing for radio interviews. Bannon himself
was sharing the Web site and the editorial coverage. But the decision in a
way also had been in the works for weeks. Rebecca Mercer, the billionaire
donor who's a stakeholder in the site and others in the Breitbart
leadership were looking to push him. They wanted to move away from Bannon
as being this omnipresent person running the whole operation.

REID: And you reported or you tweeted out earlier today that poor people
close to Bannon, his wistful, but has referenced Thomas Cromwell in recent
days, during Cromwell guided a king but it never last and Cromwell was
eventually sent to the tower.

COSTA: And executed.

REID: What is that about?

COSTA: Well, when I was doing my reporting today with my colleagues Josh
Dawsey and Paul Farhi, we're trying to really get a sense of what's
happening inside of the whole Breitbart world today as this drama unfolds,
this battle with the White House. And people say Bannon keeps talking
about history, he mentioned Thomas Cromwell, who was an adviser to a
British king and he eventually was sent to the tower of London and
executed. And Bannon's reason for that, they tell us, is that he sees
himself as a revolutionary figure who guided a president, but he never
really saw it as something that would last.

REID: Well, he thinks quite highly of himself. Does he have to move out
of the Breitbart residence where he lives?

COSTA: We've been looking into that, and it's hard to say exactly what
Bannon's next step will be. He does runs a political operation, a C4 group
and he's going to try to perhaps move forward in 2018. But it's going to
be a real challenge Joy, to see if Steve Bannon can have a presence in the
Republican Party because President Trump is such a dominant force and he
doesn't want Bannon there.

REID: Yes, and so Kurt, you know, we have come to know, you know, over the
past 18 months or two years, Steve Bannon as this very haughty figure,
thinks highly of himself and likes to talk into a tough-guy terms. This is
Bannon from the Weekly Standard just back on August 18th after his White
House exit. This is just after he left, and he said, I feel jacked up.
Now I'm free, I've got my hands back on the weapon. Someone said, it's
Bannon the barbarian. I'm definitely going to crush the opposition, there's
no doubt. I built an F-ing machine at Breitbart. Now that I'm about to go
back, knowing what I know, and we're about to rev that machine up and rev
it up we will do." Is that a person that's capable of being deflated? Do
you think that his ego has been checked?

KURT BARDELLA, FORMER SPOKESPERSON FOR BREITBART NEWS: No, I think Steve,
much like his former boss, Donald Trump, is a textbook narcissist. And he
believes that the more that they punch at him, the more that he goes down.

MSNBC 000094

the harder he'll fight to come back. He is kind of that street fighter. And he talks about the how he built at Breitbart the so-called fight club. That's what they'd refer to themselves as. So I don't think Steve will go quietly. Now, the question is, is it viable for him to make a return, really that hinges on his relationship with Trump right now. Trump is the Republican Party, he is the gateway to donors, to supporters, to that audience. If Bannon can try to find his way back into Trump's good graces, he might have a second, third, fourth lease on life. But that's really the ultimate question.

REID: And do you -- how could he possibly think he could do that? I mean, he accused Donald Trump's son of treason. He went on the record, according to multiple people who have spoken about how they came to speak to Michael Wolff, they said Bannon was the guy who said, go ahead and talk to him. What way, what method would he use Kurt, to try to get back in Trump's good graces?

BARDELLA: I think that for Steve to succeed, he needs Trump to fail. At the end of the day, Trump is all about instant gratification in that moment. And that's why he's so unpredictable. He can watch one segment and see one thing he doesn't like, and all of a sudden tweet something crazy and fly off the handle. The Mueller investigation is a dark cloud that really is hanging over this Presidency. And as that cloud continues to darken and unfold, that can create a lot of chaos and instability in the Donald Trump world and he can become very disenchanted very quickly with this current cast of advisers, start reaching out to outside people outside the White House, and I suspect that Steve Bannon will be right there whisper -- trying to whisper in Trump's ear telling him, this is what people are serving you right now. This is what they're doing wrong, here's what you should be doing and try to use the chaos of failure that can be around Trump in the Mueller investigation to get back into his good graces.

REID: And Robert, there's been some reporting that part of the reason that Steve Bannon's felt comfortable going on the record with Michael Wolff, is that he assumed that Roy Moore was going to win, that his candidates would actually win and that would give him leverage because Trump would need him and feel like he need him in 2018. Can you -- can you confirm that?

COSTA: Joy, you're putting your finger on the Alabama senate race which was a huge factor in this entire unraveling of the relationship between the White House and Steve Bannon. He was confident that Roy Moore would win that race. And when Democrat Doug Jones won, he saw his political capital and his relationship with the White House suddenly turn. The White House was pointing a finger at Bannon and saying, you're responsible for this. You made this happen in Alabama. And Senate Majority Leader Mitch McConnell was only happy to cheer along that conclusion by the President.

REID: Yes, we saw that happy tweet by Mitch McConnell's office. I'm sure he's quite glad to see him gone. Robert Costa, Kurt Bardella, thank you, guys. I appreciate it.

COSTA: Thank you.

REID: Thank you. And next, the President who calls himself a very stable genius decided to put on a show for the cameras today and displayed a very loose grasp of what he was talking about. We'll show you what happened

MSNBC 000095

right after this

(COMMERCIAL BREAK)

REID: There are two competing conceptions of Donald Trump as President. The version in Michael Wolff's new book, of a man seen by everyone as an inattentive and incurious child who is utterly unfit for the job and the version being pushed by Trump himself, of a "very stable genius." Today, the President got a chance to make his case when he allowed cameras to roll for nearly an hour as he presided over a bipartisan negotiating session on immigration. One issue on the table, whether to pass a standalone bill to protect DREAMers from deportation as Democrats want.

(BEGIN VIDEO CLIP)

SEN. DIANNE FEINSTEIN (D), CALIFORNIA: What about a clean DACA bill now, and with a commitment that we go into a comprehensive immigration reform procedure --

TRUMP: I have no problem. I think that's basically what Dick is saying. We're going to come up with DACA, we're going to do DACA, and then we can start immediately on the phase two which would be comprehensive --

FEINSTEIN: Would you be agreeable to that?

TRUMP: Yes, I would like that. I think a lot of people would like to see that. But I think we have to do DACA first.

REP. KEVIN MCCARTHY (R-CA), HOUSE MAJORITY LEADER: Mr. President, you need to be clear though. I think what Senator Feinstein is asking here, when we talk about just DACA, we don't want to be back here two years later. You have to have security as the secretary would tell you.

TRUMP: But I think that's what she's saying.

(CROSSTALK)

MCCARTHY: No, I think she's saying something different.

(END VIDEO CLIP)

REID: She was saying something different. Trump just didn't seem to understand what it was. But Donald Trump has never been one to get bogged down in policy details. Indeed he told lawmakers today to just send him something, anything and he'll sign it.

(BEGIN VIDEO CLIP)

TRUMP: When this group comes back, hopefully with an agreement, this group and others from the Senate, from the House, comes back with an agreement, I'm signing it. I mean, I will be signing it. I'm not going to say, oh, gee, I want this, I want that. I'll be signing it.

(END VIDEO CLIP)

REID: Art of the deal. What it's like to try and to negotiate with this

MSNBC 000096

President from a Senator who was in that meeting next.

(COMMERCIAL BREAK)

(BEGIN VIDEO CLIP)

SEN. MAZIE HIRONO. (D) HAWAII: As the only immigrant serving in the United
States Senate right now, I would like nothing better than for us to get to
comprehensive immigration reform, but what I'm hearing around the table
right now is a commitment to resolving the DACA situation, because there is
a sense of urgency. Now, you have put it out there that you are $18
billion for a wall,
or else there will be no DACA. Is that still your position?

TRUMP: Yeah. I can build it for less, by the way.

HIRONO: But you are --

TRUMP: I must tell you. I'm looking at these prices, somebody said $42
billion. This is like the aircraft carrier, started off at $1.5 billion,
now at $18 billion. No. We can do it for less.

We can do a great job. We can do a great wall, but you need the wall. And
I'm now getting involved. I like to build under budget, OK? I like to go
under budget, ahead of schedule.

(END VIDEO CLIP)

REID: That was the scene at today's bipartisan negotiating session on
immigration, and joining me now is the senator you just saw in that clip,
Democrat Mazie Hirono of Hawaii.

And, senator, let's talk about that last bit, the wall. Donald Trump said
in response to Dianne Feinstein, when she asked about a clean DACA bill,
yes. Put that in front of me and I'll sign it. But then he said to you
that it's contingent on his wall. Did you come out of this negotiating --
negotiation
understanding which of those two things is his position?

HIRONO: He repeated several times that DACA, he would like to resolve, but
that the border
security would be part of that resolution. So we actually have bipartisan
support for the DREAMers in
the senate, and I understand there were enough votes to pass a similar bill
in the House, maybe not with the Freedom Caucus, but nonetheless going
forward. But as you know, Joy, two days ago, he said, I need $18 billion
for a wall or there will be no DACA, and that is why I wanted to ask him
whether that's still his position. And you notice that he did not answer
that question.

Now I would have appreciated if he had clarified and just said, oh, yeah,
that's my still position. Then we would have that understanding. But then
he kind of went all over the place. I asked him how many miles this wall
would be and he didn't respond.

So he wants something that he can call border security, something he can

MSNBC 000097

call a wall, but to me the fact that he didn't come out and say, something
that I said two days ago, $18 billion for a wall or no DACA, he didn't do
that. So I say maybe that he's open to something that's more reasonable.

I don't know, because with the president, you don't know what he's going to
say tomorrow.

REID: Yeah.

And would you and your Democratic colleagues vote for a bill that included
building this wall of Donald Trump's?

HIRONO: We already know that building a massive wall that goes on for
hundreds and hundreds of miles is not going to have much of an impact, and
so that's a waste of money. You know, $18 billion, which is just a down
payment for a wall, could pay for a whole year of health care for 9 million
children. So I am hopeful that if the House and Senate negotiators were
left to our own devices, that we might be able to better come up with a
compromise. But it's the president interjecting himself at the last
minute, throwing a wrench into the works that could foul things up.

And there's no question that as long as border security is on the table,
that's going to be a challenge as it is. The Democrats are open to
reasonable border security measures.

REID: But would you refuse to vote for a bill if it included the wall in
it?

HIRONO: It depends on what the wall is. Because he said things such as
originally you think it's 2,000 miles, oh, no, it's not 2,000 miles. And
of course there are mountains and rivers and valleys. And so we're not
sure quite he means. He wants something that he can call a wall for his
base, I suppose, but that's going to be the challenging part of the
negotiations.

As I said, we already have bipartisan agreement to support the dreamers in
both the House and the Senate, particularly in the Senate, so why can't we
just go ahead with that? That was Dianne's question and he did not provide
a yes or no response to that.

REID: I want to play you a little bit more sound. This is Donald Trump
talking about something it didn't seem he was for the entire time he was
running for president, and that's comprehensive immigration reform. This
is Donald Trump today.

(BEGIN VIDEO CLIP)

TRUMP: When you talk about comprehensive immigration reform, which is
where I would like to get to eventually, if we do the right bill here, we
are not very far away. We've done most of it.

You want to know the truth there, kid, we do this properly, DACA, you're
not so far away from
comprehensive immigration reform. And if you want to take it that further
step, I'll take the heat, I don't care.

MSNBC 000098

(END VIDEO CLIP)

REID: Did it surprise you to hear Donald Trump say he's for comprehensive immigration reform?

HIRONO: Well, that's what he said today. And I'm all for comprehensive immigration reform because we passed such a bill in 2013 in the Senate. And I was very involved in that as a member of the judiciary committee. That's what he's saying today. He didn't really talk about that during the campaign. So one never knows.

Now, I care very much about dealing with DACA and the 800,000 young people who are subject to deportation. And I have to say that one of the most astounding things that came out today was his homeland security secretary saying that no DACA participants had lost status. Is she not aware over 10,000 DACA participants have already lost their DACA status? That was an astounding thing. And I expect the homeland security secretary to know her facts better.

Yeah, indeed. Senator Mazie Hirono, thank you so much for your time tonight. Appreciate it. Thank you.

And still ahead, Joe Arpaio is a man of many titles -- former sheriff, Obama birther, convicted criminal. And now he wants to add senator to the list. That story coming up.

And the case for making sure every president from here on in is a stable genius in tonight's Thing One, Thing Two next.

(COMMERCIAL BREAK)

REID: Thing One tonight. Donald Trump is just three days away from his first physical since taking office. Now, we know two things about the 71-year-old's health. During the campaign, Trump's long-time doctor, Harold Bornstein, wrote a letter calling Trump's health astonishingly excellent and stated unequivocally Trump will be the healthiest individual ever elected to the presidency."

(BEGIN VIDEO CLIP)

HAROLD BORNSTEIN, TRUMP DOCTOR: I thought about it all day. And at the end -- I get rushed and I get anxious when I get rushed. So I try to get four or five lines done as fast as possible that they would be happy with.

(END VIDEO CLIP)

REID: The other thing we know about Trump's health is that he really likes fast food even as president, and so much so that according to Michael Wolff's reporting for Fire and Fury, the president of the United States takes his cheeseburgers to bed with him.

Wolff's book has also brought to the forefront something we don't have medical analysis of: Trump's mental fitness. Yesterday, a White House spokesman said a psychiatric exam would not be part of his physical on Friday.

MSNBC 000099

But one lawmaker is trying to change that. And that's Thing Two in 60 seconds.

(COMMERCIAL BREAK)

REID: Pennsylvania Democrat Brendan Boyle introduced a bill in the House this morning which would require all presidential candidates to undergo a mental health exam with the secretary
of the navy. The bill is called The Stable Genius Act. And it's not a joke. It's aimed to avoid a situation like we have now.

All we know about the mental fitness of the man in the White House is his own self-diagnosis.

(BEGIN VIDEO CLIP)

TRUMP: Is Donald Trump an intellectual? Trust me. I'm like a smart person.

I went to the best colleges -- or college.

I went to Wharton.

I had a situation where I was a very excellent student.

I'm a person that very strongly believes in academics.

I was a nice student.

I have a very good brain and I've said a lot of things.

I understand things. I comprehend very well, better than I think almost anybody.

I'm very highly educated. I know words. I have the best words.

I'm like a very smart person.

Like a smart person.

I'm a very smart person.

It's like I'm a smart person.

Very intelligent person.

Like a lot of us are really smart.

I'm really smart.

We're going to have smartness.

(END VIDEO CLIP)

(COMMERCIAL BREAK)

0888

(BEGIN VIDEO CLIP)

TRUMP:  Was Sheriff Joe convicted for doing his job?  That's what -- he should have had a jury, but you know what, I'll make a prediction, I think he's going to be just fine, OK?

(END VIDEO CLIP)

REID:  After being convicted last July of criminal contempt for violating a judge's order, and
pardoned by the president in a tweet a month later, former Sheriff Joe Arpaio is now running for U.S. Senate.

Arpaio thanked Donald Trump in a tweet of his own, quote, "for seeing my conviction for
what it is, a political witch hunt by holdovers in the Obama Justice Department."

Yet the Associated Press reports that the judge in Arpaio's case has said pardons moot punishments in criminal cases, but don't erase convictions, meaning that Arpaio is still an 85-year-old convicted criminal, which makes him the third convicted criminal running for office as a Republican this year joining Don Blankenship who is running for a senate seat in West Virginia after serving a year in federal prison for ignoring safety regulations in a mining explosion in 2010 that killed 29 men.

Blankenship will actually still be on probation at the time of the Republican primary.

And here in New York, ex-con Michael Grimm is running to reclaim his old congressional
seat after he was forced to resign in 2014 and served seven months in prison for felony tax fraud.

Interestingly enough, a convicted felon isn't prohibited from running for federal office at all.

Next, what happens when you elect a reality show star who hates to study to play the role
of president.  Well, he doesn't always understand the nuances of party policies or even the broad strokes.  More on that next.

(COMMERCIAL BREAK)

(BEGIN VIDEO CLIP)

 REP. PAUL RYAN, (R) WISCONSIN:  Something this big, something this generational,  something this profound could not have been done without presidential leadership.  Mr. President, thank you for getting us over the finish line.

(END VIDEO CLIP)

REID:  House Speaker Paul Ryan was effusive in praising the dear leader Donald Trump after Republicans rammed their tax cuts for corporations and the 1 percent through congress.  Ryan even coined a phrase that may come

MSNBC 000101

back to haunt him: exquisite leadership.

But one of the points in Michael Wolff's Fire and Fury is that Donald Trump doesn't really know Republican orthodoxy. That seems to be how he stumbled into agreeing, at least in principle, to comprehensive immigration reform today when he met with a bipartisan group of lawmakers.

(BEGIN VIDEO CLIP)

UNIDENTIFIED MALE: Mr. President, comprehensive means comprehensive.

TRUMP: No, we are talking about comprehensive, now we are talking --

UNIDENTIFIED MALE: No, we are talking comprehensive --

TRUMP: If you want to go there, it's OK, because you're not that far away.

UNIDENTIFIED MALE: Mr. President --

TRUMP: When this group comes back, hopefully with an agreement, this group and others, from the Senate, from the House comes back with an agreement, I'm signing it. I think a lot of people would like to see that, but I think we need to do DACA first.

UNIDENTIFIED MALE: Mr. President, you need to be clear, though. I think what Senator Feinstein is asking here, when we talk about just DACA, we don't want to be back here two years later.

TRUMP: I think that's what she said. No. No. I think she's saying something different.

I think what we're all saying is we'll do DACA and we can certainly start comprehensive immigration reform the following afternoon. OK. We'll take an hour off and then we'll start.

(END VIDEO CLIP)

REID: Republicans sat around that table and watched their president almost give away the entire store for nothing. MSNBC political analyst Jason Johnson is the politics editor at The Root and a professor at Morgan State University: and Rick Wilson is a Republican strategist and media consultant.

And Rick, the entire premise of the Trump campaign was Mexico is sending its worst, we're going to end immigration and build a wall. How did he suddenly go from that to being Marco Rubio? What is happening?

RICK WILSON, REPUBLICAN STRATEGIST: I think Donald Trump got his gang of eight tattoo tonight and the Members Only jacket for RINO immigration squishes, because this is a guy who literally sat there today and shredded the entire Bannon/Steve Miller agenda on building the wall and throwing out all the brown people. It was a clown show.

REID: But who is in charge of telling Ann Coulter? I nominate you, Rick. You're in charge of telling Ann Coulter. You have to tell her.

MSNBC 000102

OK, so Jason, is this a Democrats in my Twitter feed, there is some anger
that Democrats aren't really putting their foot down and saying we ain't
voting for a wall period, end of story. We don't care what you say.

Should Democrats be planting their flag there?

JASON JOHNSON, THE ROOT: They don't even have to put the flag down yet,
Joy, because it's clear -- and this is from the book and everyone who has
ever talked about this president, he agrees with whatever the last idea is
of the person who left the room. That's why he was ping ponging back and
forth. I like this kind of immigration. I hate this kind of immigration.
I don't like these kind of people. I like these people.

So, the Democrats don't have to take a strong position now because they
don't know what position Trump is going to have in three weeks.

That's part of the problem. So, there is no reason to plant a flag.

REID: Rick, I'm going to let you listen to Sarah Huckabee Sanders whose
job frequently is to try to interpret Trump for regular people.

Here she is trying to explain that he really does know what clean DACA bill
means. He meant something completely different than what clean DACA bill
sounds like. Take a listen.

(BEGIN VIDEO CLIP)

SARAH HUCKABEE SANDERS, WHITE HOUSE PRESS SECRETARY: Only if you look at
what the president's definition of a clean DACA bill is, and within that
bill, he thinks that you have to include not just fixing the -- not just
fixing DACA, but closing the loopholes and making sure we have a solution
on the front so we don't create a problem and find ourselves right back
where we started in one, two, three years later.

(END VIDEO CLIP)

REID: Help me, Rick. What did that mean?

WILSON: You know, Sarah Sanders is just the White House mistress of word
vomit. Every day something new just pops out.

Look, I don't blame her. It's like Donald Trump speaks some sort of
forgotten language like Hitite (ph) or Syrian and just rambles on and she
just tries to translate as best she can.

But this is a White House led by a man who does not have a lot of shall we
say intellectual heft when it comes to understanding complex items of the
policy agenda. You know, he's overcome by basically inanimate objects
every day. And so you end up with a situation where he says things in this
meeting that the rest of the Republicans are in the room saying, dear god,
what are we doing here? Because, you know, it's like they stumble
occasionally on a policy win like the tax bill, and then they come to
something like this and Trump is confused about what his own base is going
to do about this.

A lot of his base was motivated and informed by the sense that he was going

MSNBC 000103

to build a wall and throw out all the brown people, and obviously, what he's saying today is we'll have a policy based on love and we're going to do DACA and we're going to come back an hour later and do comprehensive immigration reform.

Like I said, that gang of eight tramp stamp tattoos is going to look awesome.

REID:  Back in June of 2016, we pulled this -- January of 2016, January 30th, as a matter of fact, Donald Trump told The New York Times editorial board the following about the wall. He said quote, "if it gets a little boring at his rallies, if I see people starting to sort of think about leaving, I can sort of tell the audience, I will just say, we'll build the wall, and they go nuts.

Isn't it just the case that Donald Trump used the wall and all of this Brexit talk about immigration just to trick his base into being for for him?

WILSON:  Sure.

REID:  Because he doesn't know what any of this means?

JOHNSON:  Joy, he doesn't know what any of this means. He doesn't know how to build it. He's basically been punked multiple times by Mexico who is like, I'm not building your wall. I'm not giving you any money. Fox said I'm not building a wall. So he doesn't know how this thing can get made. And he's always been back and forth on these issues.

Look, I mean, back in 2012 remember he said Mitt Romney was crazy for telling people that they have to self-deport and he said that to Newsmax. But I think the important thing to remember is this, as much as Donald Trump seems to flip flop back and forth, and can't figure out what he wants to order for lunch when it comes to immigration, this is the same administration that's now trying to kick out 200,000 El Salvadorians, when they aren't doing that to Kosovo refugees who we accepted in 1999. So the underlying tendency is still kicking out people of color, making it difficult for people of color to stay in the country, or at the same time fanning ignorance.

REID:  And at the same time, Rick then why doesn't his base react when he changes his mind?

WILSON:  I think we'll see the comment section of the now Steve Bannon free Breitbart tomorrow losing their minds on this and I think a lot of these folks that really relied on Donald Trump's immigration message that he really activated in an effort to position himself as the guy who was going to return their jobs from the sly Mexicans and wile Chinese, you know, these evil brown people and people of color from overseas, I think he's going to have some surprised supporters when they start reading these stories tomorrow.

REID:  Absolutely, Jason Johnson, Rick Wilson, thank you, guys.

That's All In for this evening. The Rachel Maddow Show starts right now. Good evening Rachel.

MSNBC 000104

THIS IS A RUSH TRANSCRIPT. THIS COPY MAY NOT BE IN ITS FINAL FORM AND MAY
BE UPDATED.

END

<Copy: Content and programming copyright 2018 MSNBC. ALL RIGHTS RESERVED.
Copyright 2018 ASC Services II Media, LLC. All materials herein are
protected by United States copyright law and may not be reproduced,
distributed, transmitted, displayed, published or broadcast without the
prior written permission of ASC Services II Media, LLC. You may not alter
or remove any trademark, copyright or other notice from copies of the
content.>

MSNBC 000105

# EXHIBIT 6
# Excerpts from Deposition of Denis Horgan taken on April 23, 2021

**In the Matter Of:**

*Blankenship vs*

*Fox News Network*

*DENIS HORGAN*

*April 23, 2021*

# LEXITAS™

1

1          UNITED STATES DISTRICT COURT

2          SOUTHERN DISTRICT OF WEST VIRGINIA

3             CHARLESTON DIVISION

4    DON BLANKENSHIP

5              Plaintiff,

6      vs.                    Case No.:  2:19-cv-00236

7    FOX NEWS NETWORK LLC, et al.,

8              Defendants.
     ----------------------------/

9

10

11              ** CONFIDENTIAL **

12              REMOTELY CONDUCTED

13     VIDEOTAPED DEPOSITION OF DENIS HORGAN

14              Friday, April 23, 2021

15

16

17

18

19

20

21   Stenographically reported by:
     LORRIE L. MARCHANT, RMR, CRR, CCRR, CRC
22   California CSR No. 10523
     Washington CSR No. 3318
23   Oregon CSR No. 19-0458
     Texas CSR No. 11318

24

25   Job No.:  2021-788039

2

1                      A P P E A R A N C E S

2              (All appearances remotely via Zoom)

3      Appearing as counsel on behalf of the Plaintiff:

4              SIMPKINS LAW
               BY:  JEFFREY S. SIMPKINS, ESQ.
5              102 E. 2nd Avenue
               Williamson, WV 25661
6              (304) 235-2735
               simpkinslawoffice@gmail.com
7
       Appearing as counsel on behalf of the Defendants:
8
               FROST BROWN TODD, LLC
9              BY:  KEVIN T. SHOOK, ESQ.
                    ALEX ZURBUCH, ESQ.
10             One Columbus Center
               10 West Broad Street
11             Columbus, OH 43215
               (614) 464-1211
12             kshook@fbtlaw.com
               azurbuch@ftblaw.com
13
       Also present:
14
               Don Blankenship
15             Erik Bierbauer, in-house counsel for MSNBC
               Gail Gove, in-house counsel for MSNBC
16             Marie Schuetze, stenographic intern
               Mitch Reisbord, legal video specialist
17

18                        ---oOo---

19

20

21

22

23

24

25

```
1                    FRIDAY, APRIL 23, 2021

2            NEW YORK, NEW YORK (Witness's location)

3                       10:02 a.m. EDT

4            THE VIDEOGRAPHER:  We are now on the

5     record.  My name is Mitchell Reisbord.  I'm a

6     videographer retained by Lexitas.  This is a video

7     deposition for the U.S. District Court, Southern

8     District of West Virginia, Charleston Division.

9     Case No. 2:19-cv-00236.

10           Today's date is April 23rd, 2021, and the

11    time is 10:02 a.m.  This deposition is being held in

12    the matter of Don Blankenship versus Fox News

13    Network, LLC, et al.

14           The deponent is Denis Horgan.  All present

15    counsel will be noted on the stenographic record.

16    The court reporter is Lorrie Marchant and will now

17    swear in the witness.

18                       DENIS HORGAN,

19     FIRST DULY SWORN/AFFIRMED, TESTIFIED AS FOLLOWS:

20           MR. SIMPKINS:  Are you ready?

21           THE WITNESS:  I'm ready.

22              EXAMINATION BY MR. SIMPKINS

23           BY MR. SIMPKINS:

24     Q.    State your full legal name, please.

25     A.    It's Denis Edward Horgan, Jr.
```

USCA4 Appeal: 22-1198    Doc: 48    Filed: 05/25/2022    Pg: 57 of 307
Case 2:19-cv-00236   Document 911-6   Filed 06/07/21   Page 6 of 32 PageID #: 14455

Blankenship vs
Fox News Network                    Confidential                    Denis Horgan
                                                                    April 23, 2021

11

1      A.   22 people.

2      Q.   When is the determination of show topics

3  typically finalized?  Is it the day of?  The morning

4  of?  Just immediate prior to the segment or

5  telecast?

6      A.   It depends on the situation.  Some of them

7  are in advance, days in advance.  Some of them

8  are -- you know, if it's built around something

9  that's happening on the calendar that day.  But most

10 of the time they are determined that day, in the

11 midafternoon.  Sometimes it goes a little later than

12 that.

13     Q.   Who has the final authority to determine

14 the show topics on All In with Chris Hayes?

15     A.   I don't -- we don't really work in terms of

16 final authority.  It's a collaborative effort.

17     Q.   Do you have the final authority to

18 determine show topics?

19     A.   I mean, I may technically, but we don't

20 practice that.  We don't practice it that way.

21     Q.   Well, if it's not you, who -- is there any

22 other person that would have final authority to

23 determine show topics on All In with Chris Hayes?

24     A.   I mean, again, I think technically, as

25 executive producer.  But I don't -- we don't

1    circumstance is.

2          Q.    Who has final authority to determine a

3    script, or is that the same as the show topics?

4          A.    Yes.   I would give the same answer.   It's a

5    collaborative effort.

6                (Marked for identification purposes,

7                 Exhibit 1.)

8                BY MR. SIMPKINS:

9          Q.    Do you have Exhibit No. 1, Mr. Horgan?   Do

10   you have access to that?

11         A.    I do, yes.

12         Q.    Exhibit No. 1 is the NBCUniversal News

13   Group Policies and Guidelines.

14         A.    Yes.

15         Q.    I assume you have that.

16         A.    M-hm.

17         Q.    Is that a "yes"?

18         A.    Yes.

19         Q.    Instead of saying "NBCUniversal News Group

20   Policies and Guidelines," I'm just going to refer to

21   them as "guidelines."

22               Is that okay?

23         A.    Yes.

24         Q.    Okay.  Has MSNBC ever provided you with a

25   copy of these guidelines?

USCA4 Appeal: 22-1198    Doc: 48        Filed: 05/25/2022    Pg: 59 of 307

Case 2:19-cv-00236   Document 911-6   Filed 06/07/21   Page 8 of 32 PageID #: 14457

Blankenship vs
Fox News Network

Confidential

Denis Horgan
April 23, 2021

19

1    the -- the shows -- the opinion shows are.

2        Q.    Let me rephrase.

3            Do the guidelines require that All In with

4    Chris Hayes comply with the fundamental journalism

5    principles of accuracy and fairness?

6            MR. SHOOK:  Objection.

7            THE WITNESS:  I mean, again, I'm not the

8    author of the guidelines, but the guidelines are

9    guidelines.  They are -- they are not requirements

10   necessarily.

11           BY MR. SIMPKINS:

12       Q.    Do you agree that the guidelines basically

13   speak for themselves in regard to the principles of

14   accuracy and fairness?

15       A.    Yes.

16       Q.    Thank you.

17           If you would, go to Exhibit No. 2.

18           (Marked for identification purposes,

19            Exhibit 2.)

20           BY MR. SIMPKINS:

21       Q.    Just tell me when you're there.

22       A.    Okay.

23       Q.    It appears it is two pages with four

24   e-mails.  Just let me know when you're there.

25       A.    I'm here.

USCA4 Appeal: 22-1198    Doc: 48    Filed: 05/25/2022    Pg: 60 of 307

Case 2:19-cv-00236   Document 911-6   Filed 06/07/21   Page 9 of 32 PageID #: 14458

Blankenship vs
Fox News Network

Confidential

Denis Horgan
April 23, 2021

20

1    Q.    Do you need a chance to review these

2  e-mails?

3    A.    No.

4    Q.    Go to the second page of Exhibit No. 2, if

5  you would.

6    A.    Okay.

7    Q.    Can you tell me who sent the e-mail?

8    A.    The original e-mail in the chain is what

9  you're asking?

10   Q.    Yes.

11   A.    It appears that I sent an e-mail with a

12  link to a story from The New York Times.

13   Q.    When was the e-mail sent?

14   A.    December 3rd, 2015, 10:13 a.m.

15   Q.    This says it was sent from Chris Hayes to

16  you; is that not correct?

17   A.    Yes, you are correct.  The e-mail itself

18  is -- is Chris responding to my e-mail.

19   Q.    Okay.

20   A.    And my e-mail is only included as a part of

21  his e-mail.

22   Q.    And Chris Hayes, he is the anchor and host

23  of All In with Chris Hayes; correct?

24   A.    Yes.

25   Q.    Okay.  And what was the subject of the

USCA4 Appeal: 22-1198    Doc: 48    Filed: 05/25/2022    Pg: 61 of 307
Case 2:19-cv-00236    Document 911-6    Filed 06/07/21    Page 10 of 32 PageID #: 14459

Blankenship vs
Fox News Network                        Confidential

Denis Horgan
April 23, 2021

34

1      Q.   Exhibit No. 3 appears to be a single

2   e-mail.

3           Do you see that?

4      A.   Yes.

5      Q.   Who sent the e-mail?

6      A.   This e-mail is from Brendan O'Melia.

7      Q.   And who is Brendan O'Melia?

8      A.   He is a producer on the show.

9      Q.   Okay.  When was the e-mail sent?

10     A.   It was sent on April 6th of 2016.

11     Q.   Who were the recipients of this e-mail?

12     A.   The full staff and Chris Hayes.

13     Q.   What is the subject of the e-mail?

14     A.   The subject:

15              "Our old friend Don Blankenship going

16          to the cooler for a year."

17     Q.   Is Don Blankenship an old friend of any

18   member of the All In with Chris Hayes production

19   team?

20          MR. SHOOK:  Objection.

21          THE WITNESS:  He's not an old friend of

22   anyone on the team, no.

23          BY MR. SIMPKINS:

24     Q.   Do you know why Don Blankenship was

25   described as "an old friend"?

36

```
 1              BY MR. SIMPKINS:

 2        Q.    Can you explain the e-mail message?

 3        A.    The e-mail message?

 4        Q.    Yes.

 5        A.    Are you asking me to explain the subject of

 6   the e-mail or the --

 7        Q.    Yes.  The subject.  Yeah.

 8        A.    Well, I didn't write it, so I can only tell

 9   you my interpretation of it.

10        Q.    What is your interpretation of it?

11        A.    Someone who had been on our show had been

12   convicted of the crime that he was convicted of and

13   was going to prison for a year.  This was an update

14   to the story.

15        Q.    And he was only going to prison for a year

16   because it was a misdemeanor conviction; correct?

17              MR. SHOOK:  Objection.

18              THE WITNESS:  I know that now, yes.

19              BY MR. SIMPKINS:

20        Q.    Is Exhibit No. 3 a true and accurate copy

21   or depiction of the e-mail that was sent from

22   Brendan O'Melia to everyone at All In with Chris

23   Hayes and to you?

24              MR. SHOOK:  Objection.

25              THE WITNESS:  I assume that it is.
```

37

1              (Marked for identification purposes,

2              Exhibit 4.)

3              BY MR. SIMPKINS:

4        Q.    Exhibit No. 4 is a video segment of All in

5    with Chris Hayes that was telecast on November the

6    29th, 2017.

7              Have you had a chance to review that video?

8        A.    I don't -- I don't have an Exhibit No. 4

9    printed out.  So it's a video?

10             MR. SIMPKINS:  Yes.

11             Mitch, can you play the video, please.

12             (Video playing.)

13             BY MR. SIMPKINS:

14       Q.    Are you familiar with Exhibit No. 4, the

15   video?

16       A.    I am now, yeah.

17       Q.    Thank you.

18             If you would, go to Exhibit No. 5.

19             (Marked for identification purposes,

20             Exhibit 5.)

21             BY MR. SIMPKINS:

22       Q.    Tell me when you have it and if you need a

23   chance to review it.

24       A.    I have it.

25       Q.    Have you -- did you review Exhibit No. 5

USCA4 Appeal: 22-1198    Doc: 48    Filed: 05/25/2022    Pg: 64 of 307
Case 2:19-cv-00236    Document 911-6    Filed 06/07/21    Page 13 of 32 PageID #: 14462

Blankenship vs
Fox News Network                    Confidential                    Denis Horgan
                                                                    April 23, 2021

38

1    prior to today's deposition?

2        A.    I reviewed it when it was presented as an

3    exhibit.

4        Q.    Okay.   And Exhibit No. 5 is an article from

5    wchstv.com titled "Former Massey Energy CEO

6    Don Blankenship to run for U.S. Senate."

7            Do you see that?

8        A.    Yes.   That's the headline.

9        Q.    And Chris Hayes referred to this article as

10   "a source" during the telecaster segment; is that

11   correct?

12       A.    Correct.

13            MR. SHOOK:   Objection.

14            THE WITNESS:   Sorry.

15            BY MR. SIMPKINS:

16       Q.    Sorry.   If you want to allow a brief moment

17   of pause before so Kevin Shook can get his

18   objection, that would be fine, if you don't mind.

19            MR. SIMPKINS:   So, Kevin, do you have an

20   objection?

21            MR. SHOOK:   Yeah.   I objected.

22            MR. SIMPKINS:   Okay.

23            BY MR. SIMPKINS:

24       Q.    The article was also used as a graphic

25   during the segment or telecast; correct?

USCA4 Appeal: 22-1198   Doc: 48   Filed: 05/25/2022   Pg: 65 of 307
Case 2:19-cv-00236   Document 911-6   Filed 06/07/21   Page 14 of 32 PageID #: 14463

Blankenship vs
Fox News Network                    Confidential                    Denis Horgan
                                                                     April 23, 2021

39

1          A.    Correct.

2                MR. SHOOK:    Objection.

3                THE WITNESS:    We have a real delay here.

4     Sorry.

5                BY MR. SIMPKINS:

6          Q.    The article alludes to Don Blankenship's

7     misdemeanor conviction in the third full paragraph

8     on page 2.

9                Do you see that?    It starts:

10                    "Blankenship's misdemeanor conviction

11               came after 24 days of testimony in

12               connection with his involvement in the

13               Upper Big Branch explosion that killed 29

14               men in 2010."

15               Do you see that?

16         A.    Not on page 2.    I have -- that's page 3.    I

17    see that on page 3.

18         Q.    Page 3 ends:

19                    "The AP contributed to the story."

20               I'm talking about page 2 of Exhibit No. 5.

21    The first page is a picture of Don Blankenship.

22         A.    This is my first page (witness showing page

23    to camera).

24         Q.    Where is your second page?

25         A.    This is my second page (witness showing

USCA4 Appeal: 22-1198    Doc: 48    Filed: 05/25/2022    Pg: 66 of 307
Case 2:19-cv-00236  Document 911-6  Filed 06/07/21  Page 15 of 32 PageID #: 14464

Blankenship vs
Fox News Network

Confidential

Denis Horgan
April 23, 2021

40

1   page to camera).

2      Q.    Okay.   Maybe it is your third page, but

3   it's my second page.

4      A.    This is my third page (witness showing page

5   to camera).

6      Q.    Do you see the paragraph --

7      A.    This is the fourth page (witness showing

8   page to camera).

9      Q.    Okay.   Do you see the paragraph that

10  states:

11              "Blankenship's misdemeanor conviction

12          came after 24 days of testimony"?

13          Do you see that within the article?

14      A.   I see it on page 3, yes.

15      Q.   Okay.  Is Exhibit No. 5 a true and accurate

16  depiction of the wchstv.com article used as a

17  graphic during the telecast of All In with

18  Chris Hayes?

19          MR. SHOOK:   Objection.

20          Go ahead and answer if you know.

21          THE WITNESS:   I have no reason to believe

22  that it's not.

23          BY MR. SIMPKINS:

24      Q.   Okay.  Do you know who chooses the graphics

25  to be used during the telecast of All In with

USCA4 Appeal: 22-1198    Doc: 48         Filed: 05/25/2022    Pg: 67 of 307
Case 2:19-cv-00236   Document 911-6   Filed 06/07/21   Page 16 of 32 PageID #: 14465

Blankenship vs
Fox News Network                        Confidential                        Denis Horgan
                                                                            April 23, 2021

41

1    Chris Hayes?

2         A.    Generally the segment producer will choose

3    the graphics.

4         Q.    And who was the segment producer for

5    this -- for the video segment, Exhibit No. 4?  If

6    you recall.

7         A.    I don't know.  I don't recall.

8         Q.    Okay.  If you would, go to Exhibit No. 6.

9              (Marked for identification purposes,

10             Exhibit 6.)

11             THE WITNESS:  Okay.

12             BY MR. SIMPKINS:

13        Q.    Do you have it in front of you?

14        A.    I do.

15        Q.    Now, Exhibit No. 6 is an article from The

16   New Yorker titled "Don Blankenship, West Virginia's

17   'King of Coal,' is Guilty."

18             Do you see that?

19        A.    I do.

20        Q.    Yeah.  And Chris Hayes referred to this

21   article as a source during the segment or telecast;

22   is that correct?

23             MR. SHOOK:  Objection.

24             THE WITNESS:  He did.

25   ///

USCA4 Appeal: 22-1198   Doc: 48   Filed: 05/25/2022   Pg: 68 of 307
Case 2:19-cv-00236   Document 911-6   Filed 06/07/21   Page 17 of 32 PageID #: 14466

Blankenship vs
Fox News Network                  Confidential                  Denis Horgan
                                                                April 23, 2021

42

1              BY MR. SIMPKINS:

2      Q.    Okay.  And the article was also used as a

3   graphic during the segment or telecast; is that

4   correct?

5              MR. SHOOK:   Objection.

6              THE WITNESS:   That headline and a quote

7   from it was.

8              BY MR. SIMPKINS:

9      Q.    Okay.  On the top of page 2 of the article,

10  what's my page 2, states -- well, turn to page 2.

11  It states:

12              "Today, after a six-week trial,

13              jurors convicted Blankenship of one

14              misdemeanor for conspiring to violate

15              safety rules and acquitted him of felony

16              charges of lying about it."

17              Do you -- do you see that?

18      A.    I do see that.

19      Q.    And is Exhibit No. 6 a true and accurate

20  depiction of The New York -- The New Yorker article

21  used as a graphic during the telecast of All in with

22  Chris Hayes on November the 29th, 2017?

23              MR. SHOOK:   Objection.

24              Go ahead and answer if you know.

25              THE WITNESS:   It appears to be.

55

1    Q.   Wasn't this the second use of the phrase

2    "convicted felon Don Blankenship" of All In with

3    Chris Hayes in less than one week?

4            MR. SHOOK:   Objection.

5            THE WITNESS:   It is a second use of that.

6            BY MR. SIMPKINS:

7    Q.   Yeah.   So it was on May the 4th of 2018 and

8    also May the 9th of 2018; is that correct?

9    A.   Yes.

10   Q.   On the May 9th episode of All In with Chris

11   Hayes, was the phrase "convicted felon

12   Don Blankenship" scripted or ad-libbed by

13   Chris Hayes?

14           MR. SHOOK:   Objection.

15           THE WITNESS:   It appears to have been in

16   the script.

17           BY MR. SIMPKINS:

18   Q.   Okay.   Who wrote the phrase "convicted

19   Don Blankenship" [sic] into the script on the

20   May 9th, 2018, episode or telecast?

21   A.   I don't -- I couldn't be -- say.   I don't

22   know.

23   Q.   You don't know?   Can you find out?

24   A.   Not really.   It's a collaborative effort,

25   and a lot of other -- a small number of people that

57

1          MR. SHOOK:  Objection.  Asked and answered.

2          BY MR. SIMPKINS:

3     Q.    I asked who approved the script.  The next

4   question was who was ultimately responsible for

5   approving the script.  That's two different

6   questions.

7          You can answer.

8     A.    Generally, we have -- it depends on the

9   situation, I guess is the answer.  There's --

10  there's no one answer to that question.

11    Q.    Did Chris Hayes have any participation in

12  scripting the phrase "convicted felon

13  Don Blankenship"?

14         MR. SHOOK:  Objection.

15         THE WITNESS:  I don't recall what his

16  involvement was with this one.

17         BY MR. SIMPKINS:

18    Q.    "Accurate" is define as correct in all

19  details.

20         Was the phrase "convicted felon

21  Don Blankenship" correct in all details?

22         MR. SHOOK:  Objection.

23         BY MR. SIMPKINS:

24    Q.    You can answer.

25    A.    I don't know that I agree with that

USCA4 Appeal: 22-1198    Doc: 48    Filed: 05/25/2022    Pg: 71 of 307
Case 2:19-cv-00236    Document 911-6    Filed 06/07/21    Page 20 of 32 PageID #: 14469

Blankenship vs                                                          Denis Horgan
Fox News Network                        Confidential                    April 23, 2021

58

 1    definition.

 2         Q.    What is your definition of "accurate,"

 3    then?

 4         A.    I think the context is important.    And

 5    "accurate" may be defined differently depending on

 6    the context that you're using the word in.

 7         Q.    I got the definition of "accurate" from

 8    Oxford Languages, which is the leading dictionary in

 9    the entire universe.

10          So you are disagreeing with the most used

11    dictionary in the world in regard to the definition

12    of "accurate"?

13          MR. SHOOK:    Objection.

14          THE WITNESS:    Well, I don't have the

15    dictionary in front of me, but I would imagine that

16    the definition of "accurate" has a little bit more

17    than one -- one line.

18          BY MR. SIMPKINS:

19         Q.    So you're saying it's accurate that

20    Don Blankenship was a convicted felon?

21         A.    I am not -- I'm not saying that, no.    I

22    didn't say anything.

23         Q.    Well, I asked you whether or not it was

24    accurate that -- strike that.

25          So the question was was the phrase

59

```
 1    "convicted felon Don Blankenship" correct?  Is that
 2    an accurate -- was that an accurate statement?
 3         A.   I don't feel like it was inaccurate --
 4         Q.   So it was accurate?
 5         A.   -- the way it was delivered.
 6         Q.   You're saying that "the convicted felon
 7    Don Blankenship" was an accurate statement, then?
 8         A.   I feel like in the context that it was
 9    delivered, it was an adjective to describe a -- to
10    shorthand Don Blankenship's biography as someone who
11    had committed a serious crime and had spent a year
12    in federal prison.
13         Q.   I'm not asking you in regard to the
14    context.  My question was is it accurate that
15    Don Blankenship is a convicted felon?
16         MR. SHOOK:  Objection.
17         BY MR. SIMPKINS:
18         Q.   I could care less about context.  I want to
19    know facts.
20         Is it factually true that Don Blankenship
21    was a convicted felon?
22         MR. SHOOK:  Objection.
23         THE WITNESS:  It is not technically precise
24    to say that he was a convicted felon.
25    ///
```

USCA4 Appeal: 22-1198    Doc: 48    Filed: 05/25/2022    Pg: 73 of 307
Case 2:19-cv-00236   Document 911-6   Filed 06/07/21   Page 22 of 32 PageID #: 14471

Blankenship vs
Fox News Network                        Confidential                    Denis Horgan
                                                                         April 23, 2021

68

1    And so not inaccurate and not unfair.

2            BY MR. SIMPKINS:

3        Q.    So you're saying it's accurate to say that

4    Don Blankenship was a convicted felon?

5            MR. SHOOK:   Objection.  Asked and answered.

6            THE WITNESS:  I think it's technically

7    imprecise, but we were not making a legal definition

8    in this case.  We were doing something in a

9    lighthearted segment and delivered in an almost

10   satirical way.

11           BY MR. SIMPKINS:

12       Q.    But you agree that it was factually

13   imprecise to call Don Blankenship a convicted felon?

14           MR. SHOOK:   Objection.

15           THE WITNESS:  I think it's technically

16   imprecise.

17           BY MR. SIMPKINS:

18       Q.    Thank you.

19           According to the guidelines, the writer who

20   penned the phrase "convicted felon Don Blankenship"

21   was responsible for the accuracy of the content

22   published by MSNBC on the show All In with

23   Chris Hayes; correct?

24           MR. SHOOK:   Objection.   Objection to form.

25           THE WITNESS:   Yeah.   I'm not -- I don't

USCA4 Appeal: 22-1198    Doc: 48    Filed: 05/25/2022    Pg: 74 of 307
Case 2:19-cv-00236   Document 911-6   Filed 06/07/21   Page 23 of 32 PageID #: 14472

Blankenship vs
Fox News Network

Confidential

Denis Horgan
April 23, 2021

69

1    know that I could confirm that.

2              BY MR. SIMPKINS:

3         Q.   You're familiar with the guidelines.

4              So the writer who penned the phrase

5    "convicted felon Don Blankenship" was responsible

6    for the accuracy; correct?

7              MR. SHOOK:  Objection.

8              THE WITNESS:  I believe you are quoting it

9    correctly.

10             BY MR. SIMPKINS:

11        Q.   Okay.  According to the guidelines, you, as

12   executive producer, was responsible for the accuracy

13   of the content published by MSNBC; correct?

14        A.   That's correct.

15        Q.   According to the guidelines, Chris Hayes's

16   host was responsible for the accuracy of the content

17   published by MSNBC; correct?

18        A.   I'm not sure what the guidelines say about

19   the host of the show.

20        Q.   Thank you.

21             You, Chris Hayes, and the entire All In

22   with Chris Hayes production team knew

23   Don Blankenship was only convicted of a misdemeanor

24   by virtue of the articles published by The New York

25   Times -- or the article published by The New York

Blankenship vs
Fox News Network

Confidential

Denis Horgan
April 23, 2021

72

1        A.    Was I aware in 2015?

2        Q.    Yes.

3        A.    I can't recall if I was aware at that time

4    or how much of that that I read.

5        Q.    Has Chris Hayes ever called a misdemeanor a

6    convicted felon during a telecast on All In with

7    Chris Hayes?

8            MR. SHOOK:    Objection.

9            Go ahead and answer if you know.

10           THE WITNESS:    I don't know.

11           BY MR. SIMPKINS:

12       Q.    Has any All In with Chris Hayes writer

13   penned that a misdemeanor was a convicted felon

14   during your tenure as executive producer?

15           MR. SHOOK:    Same objection.

16           THE WITNESS:    I can't recall.    I don't

17   know.

18           BY MR. SIMPKINS:

19       Q.    Have you ever approved a script in which a

20   misdemeanor was referenced as a convicted felon

21   during your tenure as executive producer?

22           MR. SHOOK:    Objection.

23           THE WITNESS:    I don't know.

24           BY MR. SIMPKINS:

25       Q.    Have you ever heard or known of any

```
 1        incident in which a misdemeanor was referenced as a
 2        convicted felon on a telecast of NBC News, MSNBC, or
 3        CNBC?
 4            A.    Not that I can recall.
 5            Q.    Have you ever called a misdemeanor a
 6        convicted felon?  Have you yourself ever called a
 7        misdemeanor a convicted felon?
 8            A.    I don't know.  I may have.
 9            Q.    Do you know of any other incident in which
10        a misdemeanor was called a convicted felon during a
11        telecast of All In with Chris Hayes during your
12        tenure as a -- as executive producer?
13            A.    I don't recall.
14            Q.    Has MSNBC ever clarified or corrected the
15        "convicted felon Don Blankenship" statements of
16        Chris Hayes and Joy Reid?
17            A.    I don't think so.
18            Q.    Okay.  Have you, Chris Hayes, or any other
19        member of the production people for All In with
20        Chris Hayes ever been subjected to disciplinary
21        action for making the statement "convicted felon
22        Don Blankenship"?
23            A.    No.  There were no rule violations or
24        reason for that.
25            Q.    Do you concede that you, Chris Hayes,
```

USCA4 Appeal: 22-1198    Doc: 48    Filed: 05/25/2022    Pg: 77 of 307
Case 2:19-cv-00236   Document 911-6   Filed 06/07/21   Page 26 of 32 PageID #: 14475

Blankenship vs
Fox News Network                        Confidential                    Denis Horgan
                                                                        April 23, 2021

79

1                       STENOGRAPHER'S CERTIFICATE

2                  I, LORRIE L. MARCHANT, Certified Shorthand

3       Reporter, Certificate No. 10523, for the State of

4       California, hereby certify that DENIS HORGAN was by

5       me duly sworn/affirmed to testify to the truth, the

6       whole truth and nothing but the truth in the

7       within-entitled cause; that said deposition was

8       taken at the time and place herein named; that the

9       deposition is a true record of the witness's

10      testimony as reported to the best of my ability by

11      me, a duly certified shorthand reporter and a

12      disinterested person, and was thereafter transcribed

13      under my direction into typewriting by computer;

14      that request [ X ] was [   ] was not made to read and

15      correct said deposition.

16                  I further certify that I am not interested

17      in the outcome of said action, nor connected with,

18      nor related to any of the parties in said action,

19      nor to their respective counsel.

20                  IN WITNESS WHEREOF, I have hereunto set my

21      hand this 6th day of May, 2021.

22

23      _____
                    LORRIE L. MARCHANT, RMR, CRR, CCRR, CRC
24             Stenographic Certified Shorthand Reporter #10523

25

# EXHIBIT #3

From:    O'Melia, Brendan (NBCUniversal, MSNBC)
Sent:    Wed 4/06/2016 12:39 PM (GMT-04:00)
To:      "allin_everyone@nbcuni.com" <"@NBC UNI All In Everyone>, "Chris
         Hayes<clhprivate@gmail.com" <clhprivate@gmail.com>
Cc:
Bcc:
Subject: our old friend Don Blankenship going to the cooler for a year

# Former Massey Energy CEO Don Blankenship receives maximum sentence

http://www.wsaz.com/content/news/Former-Massey-Energy-CEO-Don-Blankenship-to-be-sentenced-Wednesday-374701101.html

# EXHIBIT #5

Former Massey Energy CEO Don Blankenship to run for U.S. Senate | WCHS                    4/21/21, 8:00 PM

# Former Massey Energy CEO Don Blankenship to run for U.S. Senate

CHARLESTON, WV (WCHS/WVAH) —



Eyewitness News has learned that former Massey Energy chief executive officer Don Blankenship plans to run for U.S. Senate.

Blankenship filed his federal election official papers Tuesday. He will be running as a Republican.

He is one of the most well-known figures in West Virginia and has continued to push for a full investigation of the Upper Big Branch mine explosion in 2010. Blankenship contends the Mine Safety and Health Administration caused the blast after it reduced the ventilation air flow through the mine.

Blankenship has been a long-time critic of U.S. Sen. Joe Manchin, D-W.Va.

0923

Manchin, a Democrat, is seeking re-election. In the Republican primary, Blankenship will square off against U.S. Rep. Evan Jenkins and West Virginia Attorney General Patrick Morrisey.

In February, Blankenship's petition for a rehearing of his appeal of his conviction was denied by the U.S. Fourth Circuit Court of Appeals. In January, the court already had ruled that U.S. District Court in Charleston committed no reversible errors and denied Blankenship's battle to get his conviction overturned.

Blankenship served a one-year sentence at a California prison for conspiring to willfully violate mine safety standards.

Blankenship's misdemeanor conviction came after 24 days of testimony in connection with his involvement in the Upper Big Branch explosion that killed 29 men in 2010.

In briefs filed earlier this year, Blankenship's attorneys said the jury pool in Charleston was biased against him, the prosecution was politically motivated and the trial controlled by rulings unfair to the defense.

A defiant Don Blankenship declared himself an "American political prisoner" on his blog, blaming others for the 2010 mine explosion. The ex-Massey Energy CEO distributed 250,000 copies of the 67-page diatribe in booklet form.

After Blankenship's announcement, Sen. Joe Manchin released the following statement:

"Joe Manchin is focused on working in the Senate for West Virginia families, not campaign politics. He won't be distracted by Mitch McConnell's backroom deals in Washington, D.C."

West Virginia Attorney General Patrick Morrisey took to Twitter following the announcement that Blankenship would run for U.S. Senate.

Congressman Evan Jenkins released the following statement Wednesday afternoon:

"Every citizen has the right to run for office, and I have no doubt that West Virginia Republicans will choose their nominee with careful consideration. My candidacy offers voters a clear choice on issues they care about most, a fighter for our shared West Virginia values, a close working relationship with President Trump and the one candidate West Virginia voters can count on to defeat Joe Manchin."

The AP contributed to this story

# EXHIBIT 7
# Excerpts from Deposition of Don Blankenship taken on November 18, 2020

1          IN THE UNITED STATES DISTRICT COURT
2          FOR THE EASTERN DISTRICT OF VIRGINIA
3                  ALEXANDRIA DIVISION
4
5    _____
6    DON BLANKENSHIP              )Civil Action No.
                                 )1:20-cv-00429-LMB-IDD
7          Plaintiff             )
                                 )
8    v.                          )
                                 )
9    KEVIN McLAUGHLIN, et al.,   )
                                 )
10         Defendants            )
11   _____

12

13

14            - C O N F I D E N T I A L -

15

16      Zoom Videotaped Deposition of Don Blankenship

17                  November 18, 2020

18                    10:09 a.m.

19

20

21

22

23

24   Reported by:   Bonnie L. Russo

25   Job No. 186668

USCA4 Appeal: 22-1198    Doc: 48    Filed: 05/25/2022    Pg: 86 of 307
Case 2:19-cv-00236   Document 911-7   Filed 06/07/21   Page 3 of 19 PageID #: 14484
Confidential

Page 2

```
 1     Zoom Videotaped Deposition of Don Blankenship

 2     held through:

 3

 4

 5

 6               TSG Reporting

 7               228 E. 45th Street

 8               Suite 810

 9               New York, New York 10017

10

11

12

13

14

15

16

17

18

19

20

21

22     Pursuant to Notice, when were present on behalf

23     of the respective parties:

24

25
```

USCA4 Appeal: 22-1198    Doc: 48       Filed: 05/25/2022    Pg: 87 of 307
Case 2:19-cv-00236   Document 911-7   Filed 06/07/21   Page 4 of 19 PageID #: 14485
Confidential

Page 3

```
1    APPEARANCES:

2

3

4    On behalf of the Plaintiff:

5       BY: JEFFREY SIMPKINS, ESQ.

6           MICHAEL SPARKS, ESQ.

7       SIMPKINS LAW OFFICE

8       102 E. 2nd Avenue

9       Williamson, West Virginia 25661

10

11

12       BY: JEREMY GRAY, ESQ.

13           LISA ZEPEDA, ESQ.

14       EARLY SULLIVAN WRIGHT GIZER & McRAE

15       6420 Wilshire Boulevard

16       Los Angeles, California 90048

17

18

19

20

21

22

23

24

25
```

```
 1      APPEARANCES (CONTINUED):

 2

 3      On behalf of the Defendants:

 4         BY: DAVID TORBORG, ESQ.

 5             STEPHEN KENNY, ESQ.

 6         JONES DAY

 7         51 Louisiana Avenue, N.W.

 8         Washington, D.C. 20001

 9

10

11

12

13

14

15

16

17

18

19      Also Present:

20      Mark von Lanken, Videographer

21

22

23

24

25
```

USCA4 Appeal: 22-1198    Doc: 48    Filed: 05/25/2022    Pg: 89 of 307
Case 2:19-cv-00236   Document 911-7   Filed 06/07/21   Page 6 of 19 PageID #: 14487
Confidential

Page 9

1                    DON BLANKENSHIP

2               MS. ZEPEDA:  Lisa Zepeda on behalf

3     of Don Blankenship.

4               THE VIDEOGRAPHER:  Will the court

5     reporter please swear in the witness.

6

7                    DON BLANKENSHIP,

8     being first duly sworn, to tell the truth, the

9         whole truth and nothing but the truth,

10                testified as follows:

11       EXAMINATION BY COUNSEL FOR DEFENDANTS

12               BY MR. TORBORG:

13       Q.    Good morning, Mr. Blankenship.

14       A.    Morning.  How are you?

15       Q.    Good.  Again, my name is David

16    Torborg, I'm with the law firm of Jones Day.

17    We represent Kevin McLaughlin in connection

18    with a case that you brought against him

19    pending in the United States District Court for

20    the Eastern District of Virginia.

21               You understand that you are

22    appearing for your deposition in that matter

23    today, correct?

24       A.    Yes.

25       Q.    Can you hear me okay?

USCA4 Appeal: 22-1198    Doc: 48    Filed: 05/25/2022    Pg: 90 of 307
Case 2:19-cv-00236    Document 911-7    Filed 06/07/21    Page 7 of 19 PageID #: 14488
Confidential

Page 259

```
 1                    DON BLANKENSHIP

 2        A.     Okay.

 3        Q.     Okay.   In this interrogatory we ask

 4   that you describe the basis for your allegation

 5   that the defamation of Mr. Blankenship as a

 6   felon so smeared his reputation that he has

 7   been prevented from pursuing other businesses

 8   and opportunities in generating returns of

 9   billions of dollars, including identifying a

10   business and opportunities lost and the basis

11   for the contention that any lost businesses and

12   opportunities resulted from the alleged

13   conspiracy and/or McLaughlin's alleged" --

14   "allegedly defamatory statement rather than

15   plaintiff's criminal record."  It cites

16   Complaint Paragraph 48.

17            Do you see that?

18        A.     Yes.

19        Q.     Okay.  And then I want to ask you

20   about some of the specifics in your response to

21   this interrogatory.  At the bottom of Page 12,

22   you state that you were invited to serve and in

23   fact did serve on the board of directors of

24   Fluor Corporation.

25            Do you see that?
```

USCA4 Appeal: 22-1198   Doc: 48   Filed: 05/25/2022   Pg: 91 of 307
Case 2:19-cv-00236   Document 911-7   Filed 06/07/21   Page 8 of 19 PageID #: 14489
Confidential

Page 260

1                    DON BLANKENSHIP

2        A.    Yes.

3        Q.    And --

4        A.    Fluor, F-L-U-O-R.  It's not flowers;

5   it's Fluor.

6        Q.    Yeah.  I misspoke.

7              Was the Fluor Corporation the former

8   parent of Massey?

9        A.    Before Massey was spun off to be

10  public in -- I don't know.  1990 or something.

11  19 something like that.

12       Q.    My research said it was November of

13  2000.  Does that sound about right to you?

14       A.    Yeah.  I'm sorry.  We split with

15  Shell in 1990 probably, so anyway, it all runs

16  together.

17       Q.    When did you serve on the board of

18  the -- the Fluor Corporation?

19       A.    I don't remember the exact years,

20  but it was during a period of time that I was

21  president of Massey, so probably from 1990 to

22  2000, something like that.  Probably 1992 or

23  '3, something.

24       Q.    Were you serving on the board of the

25  Fluor corporation at the time or immediately

1                    DON BLANKENSHIP

2    before your retirement from Massey?

3         A.    No.  Once Massey was spun off to the

4    public and I became the president of Massey, I

5    guess, for -- you know, I don't know if it's

6    the law or the rules, but for the appearances I

7    was separated from Fluor so that Massey would

8    be viewed as being independent of Fluor.

9         Q.    You also state that you served on

10   the board of Witco Chemical?

11        A.    Yes.

12        Q.    And what kind of company is that?

13        A.    It was a chemical company

14   headquartered in Greenwich, Connecticut that

15   was merged into -- I can't remember, another

16   chemical company.  I don't know what year that

17   was either but probably late 1990s or 2000.

18        Q.    When did you serve on the board of

19   Witco Chemical?

20        A.    That's what I said.  I think in the

21   late 1990s, but I'm not -- I'm not sure.

22        Q.    And is the reason that you ceased

23   serving on the board was the -- I believe you

24   said there was a merger with another company?

25        A.    Yes.

USCA4 Appeal: 22-1198    Doc: 48    Filed: 05/25/2022    Pg: 93 of 307
Case 2:19-cv-00236   Document 911-7   Filed 06/07/21   Page 10 of 19 PageID #: 14491
Confidential

Page 262

```
 1                    DON BLANKENSHIP

 2        Q.     Do you have -- and that was in the

 3   late 1990s you said?

 4        A.     My memory is very, very vague of it,

 5   so I -- I shouldn't guess.   But I would think

 6   it was some time in that frame.

 7        Q.     Okay.   Let me ask you to go to the

 8   bottom of Page 13, last full paragraph starting

 9   with:   "A component of the harm."

10        A.     Yes.

11        Q.     It states:   "A component of the harm

12   suffered by Mr. Blankenship will be lost

13   opportunities, business and otherwise.   By

14   their nature, the precise nature of these lost

15   opportunities is either difficult to quantify

16   or otherwise unknown to Mr. Blankenship and

17   will be the subject of investigation and

18   discovery."

19               Do you see that?

20        A.     Yes.

21        Q.     Okay.   What investigation have you

22   done to identify the nature of the lost

23   opportunities referenced in your response?

24        A.     Well, we engaged an expert who

25   studied -- you know, had some time with me and
```

USCA4 Appeal: 22-1198    Doc: 48       Filed: 05/25/2022    Pg: 94 of 307
Case 2:19-cv-00236   Document 911-7   Filed 06/07/21   Page 11 of 19 PageID #: 14492
Confidential

Page 269

```
1                    DON BLANKENSHIP

2       Q.    Are you aware of any particular

3    companies that would have hired you as the CEO

4    after the 2018 primary but for Mr. McLaughlin's

5    statement?

6       A.    As I said repeatedly, I don't think

7    that any individual statement is solely

8    responsible.  I think that the multitude of

9    false statements much like those that you asked

10   me about earlier and these other issues.  I

11   mean, it's -- it's a continuation that I have

12   tried to stop.  I ran for the U.S. Senate,

13   spent millions of dollars making sure that

14   people knew the truth when people knew the

15   truth.  I took the lead in the polls, and the

16   media stepped up and created the same problem

17   with Kevin McLaughlin, Karl Rove, and others.

18      Q.    Have you expressed your interest to

19   any company about serving as their CEO?

20      A.    I have not because I know that

21   companies do not hire people who they believe

22   are felons, and I am pretty engaged in this

23   lawsuit and other things.  But I hope to as

24   soon as I win this lawsuit.

25      Q.    So you don't think you -- if -- if a
```

Page 270

1                    DON BLANKENSHIP

2   company really wanted to hire you as a CEO,

3   that they couldn't do their own research and

4   determine whether you were in fact a felon?

5        A.       They could do their own research and

6   determine that, but they would not be able to

7   withstand the pressure of the Security and

8   Exchange Commission of hiring a chairman who is

9   believed by the public because of false

10  statements by the Republican establishment and

11  the media that you are a felon.

12       Q.    How do you know that the public

13  believes that you are a felon.  What's the

14  basis for that?

15       A.    Well, because I know that they are

16  greatly influenced by the media because I have

17  seen it when I have used the media to run ads

18  and -- and won elections and when I turned my

19  unfavorables and so forth around through ads

20  that I know that people believe what they see

21  on TV because they expect it to be the truth.

22       Q.    Have you spoken with anyone in

23  connection with seeking any employment

24  opportunities?

25       A.    Again, I haven't I think I just

```
 1              DON BLANKENSHIP
 2    answered that question that I know as a former
 3    CEO, former member of the board of U.S. Chamber
 4    of Commerce, the largest construction company
 5    in the world, and a chemical company that
 6    people will not hire felons in this environment
 7    because the SEC and others would put them under
 8    greater scrutiny.
 9         Q.     But you are not a felon?
10         A.      That's correct, but you are -- you
11    know, your people, if you will, have caused
12    lots of people to believe that, and perception,
13    as you know, can become reality.
14         Q.     Are you aware of any CEOs in America
15    who have previously spent a year in federal
16    prison?
17              MR. SIMPKINS:   Objection as to form.
18              THE WITNESS:   Yeah.  I can't
19    remember the names right now, but there was one
20    guy that was found guilty of a crime who came
21    out and became a broker, so it's rare, but it
22    is like the camel getting through the eye of
23    the needle.  It's -- it's not going to happen
24    very often.
25              BY MR. TORBORG:
```

USCA4 Appeal: 22-1198    Doc: 48    Filed: 05/25/2022    Pg: 97 of 307
Case 2:19-cv-00236  Document 911-7  Filed 06/07/21  Page 14 of 19 PageID #: 14495
Confidential

Page 272

```
 1                   DON BLANKENSHIP
 2       Q.    You also referenced in your
 3  interrogatory response participating in private
 4  equity energy ventures.
 5             Do you see that?
 6             MR. SIMPKINS:  Which interrogatory,
 7  David?
 8             MR. TORBORG:  Interrogatory 7, Page
 9  14.  It's one of the opportunities that he
10  listed in response.
11             THE WITNESS:  Okay.  We are on the
12  right page now.
13             BY MR. TORBORG:
14       Q.    Okay.  What do you mean by "private
15  equity energy ventures"?
16       A.    It's a situation where a group of
17  private individuals get together and they
18  either buy a property or they buy a public
19  company and -- and make it private.  It can be
20  a number of things, but basically, it's a -- a
21  lot of times it's a lot of people with more
22  money than they know what to do with that hire
23  you to start a private energy company or a
24  private company.
25       Q.    What have you done since the 2018
```

USCA4 Appeal: 22-1198   Doc: 48   Filed: 05/25/2022   Pg: 98 of 307
Case 2:19-cv-00236   Document 911-7   Filed 06/07/21   Page 15 of 19 PageID #: 14496
Confidential

Page 273

```
 1                      DON BLANKENSHIP

 2   primary to seek business opportunities in this

 3   area?

 4        A.    As I have said probably five times

 5   in the last two hours, I don't seek jobs as a

 6   person who is perceived by the public to be a

 7   felon.  I have -- I have spent a lot of money

 8   trying to correct the misimpression that

 9   they've given people.

10        Q.    And why would reports that you were

11   a felon prevent you from pursuing opportunities

12   in the private equity energy venture space?

13             MR. SIMPKINS:  Objection.  Asked and

14   answered.

15             THE WITNESS:  It's the same thing.

16   I mean, people who are going to make

17   investments depend heavily on permits.  They

18   depend on banking arrangements.  They depend on

19   the reputation and so forth with customers.

20   They depend on trusts.  So it's just -- once

21   you've branded someone -- it's like that

22   song, you know, being branded is hard to stick,

23   you know.

24             BY MR. TORBORG:

25        Q.    So you made your own decision not to
```

USCA4 Appeal: 22-1198    Doc: 48    Filed: 05/25/2022    Pg: 99 of 307
Case 2:19-cv-00236  Document 911-7  Filed 06/07/21  Page 16 of 19 PageID #: 14497
Confidential

Page 275

```
 1               DON BLANKENSHIP
 2    current chaos to figure out what you will do in
 3    the next one, but you know, should I win the
 4    $12 million I've sued for, I probably will be
 5    free to do a number of things.
 6              BY MR. TORBORG:
 7        Q.    Do you need the $12 million that you
 8    are suing for in order to take advantage of
 9    whatever else you want to do?
10              MR. SIMPKINS:  It's billion with a
11    B.
12              THE WITNESS:  Hardly.  I -- I think
13    that the point is that by winning the lawsuit,
14    I'm going to make us a better country and I'm
15    going to make us a better judicial system and I
16    will be able to expose how unfair the criminal
17    justice system is.  I will be able to do a lot
18    of good for the country, but I will also be
19    able to do whatever I want to do, which I'm
20    sure I'll do a lot of businesses.  But right
21    now I am almost singularly focused on winning
22    this case.
23              BY MR. TORBORG:
24        Q.    Can you identify any business
25    partners who have declined to work with you?
```

USCA4 Appeal: 22-1198    Doc: 48    Filed: 05/25/2022    Pg: 100 of 307
Case 2:19-cv-00236   Document 911-7   Filed 06/07/21   Page 17 of 19 PageID #: 14498
Confidential

Page 276

```
 1                    DON BLANKENSHIP

 2              MR. SIMPKINS:  Objection.  Asked and

 3      answered.

 4              THE WITNESS:  You know, it's a --

 5      it's a situation where I don't have to identify

 6      them.  I am familiar enough with the corporate

 7      world and particularly the public law firm

 8      world, the banking institute.  It's just not

 9      practical.  I have enough knowledge and

10      experience to know that I need to clean up this

11      mess first.

12              BY MR. TORBORG:

13         Q.    Your interrogatory response also

14      references opportunities to participate in a

15      Nevada gaming industry.

16              Do you see that?

17         A.    Yes.

18         Q.    What kind of opportunities do you --

19      did you reference -- do you mean to reference

20      there?

21         A.    Almost anything that you do in

22      Nevada involves games.  Every gas station has a

23      slot machine and all that.  When you have a bad

24      reputation, that is very hard to get a gaming

25      license that would allow you to even be
```

USCA4 Appeal: 22-1198   Doc: 48      Filed: 05/25/2022   Pg: 101 of 307
Case 2:19-cv-00236   Document 911-7   Filed 06/07/21   Page 18 of 19 PageID #: 14499
Confidential

Page 279

```
 1                    DON BLANKENSHIP

 2        Q.    Have you spoken with any companies

 3   -- strike that.

 4              Let's go to Page 14.  Sorry, the

 5   next paragraph.  It states:  "Mr. Blankenship

 6   has also expended more than $10 million on

 7   efforts to prepare for his post Massey business

 8   life and to restore his business reputation."

 9              Do you see that?

10        A.    Yes.

11        Q.    And it says:  "Defendant's

12   defamation has effectively undone those efforts

13   and rendered that expenditure of funds largely

14   useless."

15              And, actually, before we go to that,

16   let me go back up to a different spot, so I

17   don't forget it.

18              MR. SIMPKINS:  Is there a question

19   in the near future?

20              MR. TORBORG:  Yeah.

21              BY MR. TORBORG:

22        Q.    Let's go -- going back up to 14, you

23   say -- it's the end of the last sentence of the

24   carryover paragraph.  You say:  "During the

25   course of discovery, Mr. Blankenship also
```

```
 1                    DON BLANKENSHIP

 2

 3              CERTIFICATE OF NOTARY PUBLIC

 4          I, Bonnie L. Russo, the officer before

 5     whom the foregoing deposition was taken, do

 6     hereby certify that the witness whose testimony

 7     appears in the foregoing deposition was duly

 8     sworn by me; that the testimony of said witness

 9     was taken by me in shorthand and thereafter

10     reduced to computerized transcription under my

11     direction; that said deposition is a true

12     record of the testimony given by said witness;

13     that I am neither counsel for, related to, nor

14     employed by any of the parties to the action in

15     which this deposition was taken; and further,

16     that I am not a relative or employee of any

17     attorney or counsel employed by the parties

18     hereto, nor financially or otherwise interested

19     in the outcome of the action.

20     Dated: November 19, 2020.

21                    _Bonnie L. Russo_

22                       Bonnie L. Russo
                         Notary Public in and for
23                       the District of Columbia

24

25     My Commission expires:  August 14, 2025
```

# EXHIBIT 8
# Expert Report

# SEG

## Smith Economics Group, Ltd.
### A Division of Corporate Financial Group
*Economics / Finance / Litigation Support*

Stan V. Smith, Ph.D.
President

February 1, 2021

Mr. Eric P. Early
Early Sullivan Wright Gizer & McRae
6420 Wilshire Blvd., 17th Floor
Los Angeles, CA 90048

Re: Blankenship v. Fox News Network LLC



**EXHIBIT**

**701**

Dear Mr. Early:

You have asked me to assess the damages to Don Blankenship based on the allegations against the various media defendants ("Media Defendants") described in the operative First Amended Complaint.

## I. ASSIGNMENT

Based on the allegations against the Media Defendants described in the First Amended Complaint, I have been asked to assess the loss of earnings suffered by Mr. Blankenship.

## II. QUALIFICATIONS AND EXPERIENCE

I am President of Smith Economics Group, Ltd., headquartered in Chicago, IL, which provides economic and financial consulting nationwide. I have worked as an economic and financial consultant since 1974, after completing a Research Internship at the Federal Reserve, Board of Governors, in Washington, D.C.

I received my Bachelor's Degree from Cornell University. I received a Master's Degree and my Ph.D. in Economics from the University of Chicago; Gary S. Becker, Nobel Laureate 1992, was my Ph.D. thesis advisor. The University of Chicago is one of the world's preeminent institutions for the study of economics, and the home of renowned research in the law and economics movement.

As President of Smith Economics, I have performed economic analyses in a great variety of engagements, including damages analysis in personal injury and wrongful death cases, business valuation, financial analysis, antitrust, contract losses, a wide range of class action matters, employment discrimination, defamation, and intellectual property valuations including evaluations of reasonable royalty.

# SEG

I have more than 40 years of experience in the field of economics. I am a member of various economic associations and served for three years as Vice President of the National Association of Forensic Economics (NAFE) which is the principal association in the field. I was also on the Board of Editors of the peer-reviewed journal, the Journal of Forensic Economics, for over a decade; I have also published scholarly articles in this journal. The JFE is the leading academic journal in the field of Forensic Economics.

I wrote the first textbook on Forensic Economic Damages that has been used in university courses such as the University of Wisconsin, Penn State University, and in various other states. As an adjunct professor, I created and taught the first course in Forensic Economics nationwide, at DePaul University in Chicago.

I am the creator and founder of Ibbotson Associates' Stock, Bonds, Bills, and Inflation (SBBI) Yearbook, Quarterly, Monthly, and SBBI/PC Services. SBBI is generally regarded by academics in the field of finance as the most widely accepted source of statistics on the rates of return on investment securities. SBBI was originally published by Ibbotson Associates, then by Morningstar, Inc., and is now currently published by Duff & Phelps. The original SBBI series generated what became a six-book set universally used for business valuation, and currently available on an online platform. These data series are widely relied upon and regarded as the most accepted and definitive scholarly references by the academic, actuarial and investment community, and in courts of law. All three publishers of the SBBI series acknowledge me as the founder in 1983, for my "invaluable role" as having "originated the idea" of SBBI, which I then implemented while Managing Director at Ibbotson Associates.

My estimate of the real discount rate is 1.25 percent per year. This discount rate is based on the rate of return on short-term U.S. Treasury investments. The data is from the statistical series H.15 Selected Interest Rates, published by the Board of Governors of the Federal Reserve System found at www.federalreserve.gov. This data is also published in the Economic Report of the President Table for "Bond yields and interest rates" for the real return on U.S. Treasury investments primarily for the last 20 years.

I have performed economic analysis in many thousands of cases in almost every state and federal jurisdiction since the early 1980s.

My curriculum vita is attached, listing all my publications in the last 10 years and beyond. My hourly rate in this case is $525 per hour. The list of all cases in which I have testified in the last 4 years is also attached.

## III.  INFORMATION REVIEWED

1. Plaintiff's First Amended Complaint;
2. The informational interview with Mr. Blankenship dated September 8, 2020.

# SEG

## IV. BACKGROUND AND DISCUSSION

Don Blankenship became a leader in the coal industry after a meteoric rise at Massey Energy. Mr. Blankenship began working for Massey Energy in 1982, and within two years, he was President of RAWL Sales, which was a subsidiary of Massey Energy. He was put in charge of all of Massey's mining operations four years later. In 1992, he was named President and CEO of the company, and his compensation rose to almost $18,000,000 in 2009 as a result of his success with the company and the phenomenal growth in the company's value from $150,000,000 to $7,800,000,000.

On April 5, 2010, tragedy struck Raleigh County at the Upper Big Branch Mine. Only a few hours after ventilation changes required by the Obama Administration were completed, cutting the mine's airflow in half, flammable gas deep in the mine ignited, causing an explosion which took the lives of twenty-nine miners. Eight months after the disaster, on December 6, 2010, MSHA concluded that a coal bed methane build-up ignited and created an explosion. In April 2014, Mr. Blankenship released a documentary which refuted MSHA's findings and challenged the inherent conflict of having a regulatory agency investigate an explosion where the agency itself was likely at fault. Among other things, the documentary identified powerful scientific evidence which refuted MSHA's conclusion that the explosion was caused by an influx of methane.

On or about November 13, 2014, federal prosecutors from the Obama Justice Department charged Mr. Blankenship with three felonies, including conspiracy to defraud the Federal mine regulators. He was also charged with a misdemeanor, conspiring to violate mine safety laws. Mr. Blankenship was not charged with causing any of the twenty-nine deaths in the April 5, 2010 Upper Big Branch Mine disaster. The Federal Government brought the full weight of its infinite resources to bear on Mr. Blankenship. The matter went to trial in October 2015 and lasted about two months. Following lengthy deliberations, the West Virginia jury found Mr. Blankenship innocent on all felony charges on December 3, 2015. The jury convicted him of the misdemeanor offense. Notably, at that time, many media outlets accurately reported that Mr. Blankenship was convicted only of a misdemeanor and not for any of the felony counts he was facing.

The Department of Justice Office of Professional Responsibility has since investigated the conduct of the United States Attorneys who prosecuted Mr. Blankenship -- Booth Goodwin and Steve Ruby. The OPR found that massive prosecutorial misconduct had occurred in the prosecution of Mr. Blankenship, stating among other things that, "because Ruby and Goodwin recklessly violated the Department's discovery policies regarding the disclosure of discoverable statements, they committed professional misconduct." Mr. Blankenship's verdict is still under appeal.

In January 2018, Mr. Blankenship formally announced his plans to run as a Republican for the U.S. Senate seat held by Senator Joe Manchin, a Democrat. The Republican primary was scheduled for May 8, 2018. Beginning at about the end of March 2018 the Media Defendants falsely called Mr. Blankenship a felon in order to injure his reputation and discredit his candidacy. Mr. Blankenship's senatorial run was his chance to increase his reputation, but following the defamatory statements by the Media Defendants on national media, he failed to

3

# SEG

receive the Republican nomination. Achieving the Republican nomination in a senatorial race would have undoubtedly added to Mr. Blankenship's reputation and provided him with business opportunities, as well as a national podium to further establish himself.

## V. OPINION

Lost Earnings

Mr. Blankenship would have had great opportunities to earn income from multiple sources but for the actions of the Media Defendants. I have illustrated Mr. Blankenship's loss of earnings in five categories:

> 1.) CEO in the Mining/Construction Industry;
> 2.) Strategic Consultant;
> 3.) Board of Directors;
> 4.) Coal Broker/Entrepreneur; and
> 5.) Author.

All of the above opportunities would have been available for Mr. Blankenship, but it is unlikely that he would have been a CEO and a Strategic Consultant at the same time. He could have been a CEO or a Strategic Consultant and entertained the other opportunities.

### A. CEO in the Mining/Construction Industry

Tables 1 and 2 show Mr. Blankenship's loss of earnings as a CEO in the Mining/Construction industry. Mr. Blankenship's earning capacity has been established by his track record of success as a President and CEO in the mining industry. Mr. Blankenship's compensation in as Chairman of the Board and President of Massey Energy was $5,328,422 in 2006, $9,929,125 in 2007, $11,226,717, plus non-qualified deferred compensation of $26,530,954, totaling $37,757,671 in 2008, and $17,835,837 in 2009. Adjusting Mr. Blankenship's earnings for inflation, Mr. Blankenship earned $6,900,337 in year 2020 dollars in 2006, $12,601,153 in year 2020 dollars in 2007, $13,955,811, plus non-qualified deferred compensation of $32,980,343 in years 2020 dollars, totaling $46,936,154 in year 2020 dollars in 2008, and $21,584,160 in year 2020 dollars in 2009.

While at Massey Energy, Mr. Blankenship received multiple employment offers from other companies. Mr. Blankenship states that he received an offer from Carl Smith, the former owner of Fola Coal, which was equivalent to $15 million in year 2020 dollars. He states that Massey Energy then matched and exceeded that offer to retain him. He states that he was named to the Board of Directors of Fluor, a global engineering and construction company, in 1997. In 1999, Mr. Blankenship was asked to manage Fluor while its Chairman, Les McGraw, battled cancer. Mr. Blankenship was approached to become the President of Fluor, but he declined, as he wanted to remain in West Virginia. Mr. Blankenship was contacted by a headhunter to become the President of Raytheon in approximately 2000, but he again declined to remain at Massey Energy.

4

# SEG

According to the Economic Research institute, the salary for new hire CEOs in the mining industry is $5,048,242 in year 2020 dollars.[1]

I have illustrated Mr. Blankenship's loss of earnings as a CEO in two scenarios. Table 1 shows the loss of earnings for Scenario 1. In Scenario 1, I have illustrated the lost earning to begin in 2019 at $22,005,451 in year 2020 dollars based on Mr. Blankenship's average real income from 2006 through 2009. Future earnings are illustrated to grow at inflation.

**Based on the above assumption, my opinion of the lost earnings as a CEO through 2030 are $254,647,877 ➤ Table 1.**

Table 2 shows the loss of earnings for Scenario 2. In Scenario 2, I have illustrated the lost earning to begin in 2019 at $5,048,242 in year 2020 dollars based on the salary for new hire CEOs in the mining industry. Mr. Blankenship's earnings are grown in 2024 to $21,584,160 in year 2020 dollars based on his actual income in 2009. Future earnings are illustrated to grow at inflation.

**Based on the above assumption, my opinion of the lost earnings as a CEO through 2030 are $197,218,122 ➤ Table 2.**

B. <u>Strategic Consultant</u>

Tables 3 through 5 show the lost earnings for Mr. Blankenship as a Strategic Consultant in three scenarios. Under Mr. Blankenship's leadership, and his implementation of systems that cut costs and increased efficiency, Massey Energy grew from a valuation of $150,000,000 to $7,800,000,000

Mr. Blankenship gained an expertise in cost accounting following his exposure to standard cost practices in the food industry while working for Keebler Company earlier in his career. Mr. Blankenship was able to grow Massey Energy in a time when the coal industry was in decline based on his ingenuity and groundbreaking methods. The metrics that he implemented to assess mines and make them profitable are now used universally in the mining industry. This approach has now become broad and has been applied to other industries as well, including the banking industry. Mr. Blankenship stated he cut costs by $400 million per year while at Massey Energy. Mr. Blankenship's ingenuity reduced Massey Energy's costs by 30 percent compared to similar coal mines.

Mr. Blankenship states that the harm to his reputation following the election has limited his ability to engage in business opportunities as a Strategic Consultant. He states that he would have been able to bring his expertise to companies across multiple industries, including mining, banking, and construction, in order to assist with cutting costs. Mr. Blankenship states that he would have been able to put together a team to assess companies and negotiate a percentage of

---

[1] https://online.erieri.com/SS/ExecutiveSurvey/

5

# SEG

the savings as compensation, and 10 percent would be a reasonable fee. Mr. Blankenship states that based upon his experience as a CEO, he would be willing to pay an outside consultant 10 percent of the realized cost savings.

I have illustrated Mr. Blankenship's loss of earnings as a strategic consultant in three scenarios. In Scenario 1, I have illustrated Mr. Blankenship to earn $5,000,000 per year beginning in 2019, which assumes that he would provide cost savings of approximately $50,000,000 to various companies. Mr. Blankenship's Scenario 1 earnings are illustrated to grow in 2024 to $20,000,000, which assumes that he would increase the amount of cost savings provided to $200,000,000, or half of what he did at Massey Energy.

**Based on the above assumptions for Scenario 1, my opinion of the lost earnings as a Strategic Consultant through 2030 is $175,394,301 ➤ Table 3.**

I have illustrated Mr. Blankenship's loss of earnings as a strategic consultant in three scenarios. In Scenario 2, I have illustrated Mr. Blankenship to earn $5,000,000 per year beginning in 2019, which assumes that he would provide cost savings of approximately $50,000,000 to various companies. Mr. Blankenship's Scenario 2 earnings are illustrated to grow in 2024 to $15,000,000, which assumes that he would increase the amount of cost savings provided to $150,000,000.

**Based on the above assumptions for Scenario 2, my opinion of the lost earnings as a Strategic Consultant through 2030 is $136,982,590 ➤ Table 4.**

I have illustrated Mr. Blankenship's loss of earnings as a strategic consultant in three scenarios. In Scenario 3, I have illustrated Mr. Blankenship to earn $5,000,000 per year beginning in 2019, which assumes that he would provide cost savings of approximately $50,000,000 to various companies. Mr. Blankenship's Scenario 2 earnings are illustrated to grow in 2024 to $10,000,000, which assumes that he would increase the amount of cost savings provided to $100,000,000, or one-quarter of what he did at Massey Energy.

**Based on the above assumptions for Scenario 3, my opinion of the lost earnings as a Strategic Consultant through 2030 is $97,766,336 ➤ Table 5.**

C. Board of Directors

Tables 6 and 7 show the lost earnings for Mr. Blankenship from seats on Board of Directors. Mr. Blankenship states that he had seats on three boards while he was CEO at Massey Energy, and he believes that he could have been on up to five boards if he was not engaged in other businesses, and three boards if he was engaged in other businesses.

I have illustrated Mr. Blankenship's loss of earnings as a member of a Board of Directors in two scenarios. The 90th percentile earnings for members of a Board of Directors is $290,000 in year

6

# SEG

2020 dollars[2]. In Scenario 1, I have illustrated Mr. Blankenship as a member of five Boards of Directors and earning $290,000 per seat, which yields estimated annual earnings of $1,450,000 in year 2019 dollars beginning in 2019. Mr. Blankenship's Scenario 1 earnings are adjusted by inflation.

**Based on the above assumptions for Scenario 1, my opinion of the lost earnings as member of a Board of Directors through 2030 is $17,115,042 ➤ Table 6.**

In Scenario 2, I have illustrated Mr. Blankenship as a member of three Boards of Directors and earning $290,000 per seat, which yields estimated annual earnings of $870,000 in 2019 dollars beginning in 2019. Mr. Blankenship's Scenario 2 earnings are adjusted by national average wage growth of 4.29 percent in 2019, and 3.00 percent in 2020. Future earnings are illustrated to grow at 1.00 percent real.

**Based on the above assumptions for Scenario 2, my opinion of the lost earnings as member of a Board of Directors through 2030 is $10,269,025 ➤ Table 7.**

## D. Coal Broker

Tables 8 and 9 show the lost earnings for Mr. Blankenship from working as a Coal Broker. Mr. Blankenship states that had a relationship with the steel industry, and while he was at Massey Energy he had wanted to become a coal broker or start his own mining company later in his life. Mr. Blankenship states that there have been several successful coal brokers, including Chris Cline, Ernie Thrasher, and Joseph Craft III, and he believes that he could have gone down a similar path. He states that in the 1990s, as well as after leaving Massey Energy in 2011, Chris Cline reached out to him about becoming the President of Cline Resource and Development Co. Mr. Blankenship states that he advised Mr. Cline on his large purchase of mines in Illinois, which earned Mr. Cline a fortune.

Chris Cline, another West Virginia native got his start working in coal mines at age 15 and later bet big on high-sulfur coal reserves in Illinois. He took coal mining firm Foresight Energy public in 2014, and sold a controlling stake in 2015 for $1.4 billion cash. His net worth was estimated at $1,800,000,000 in 2019.[3]

Ernie Thrasher is the Founder, CEO and CMO of Xcoal Energy and Resources. Thrasher held various positions in mine operations and mine management through 1981. Prior to forming Xcoal Energy & Resources in 2003, Thrasher spent twenty-two (22) years in various global marketing positions at Primary Coal and AMCI. Xcoal is the largest exporter of U.S. origin coal. In addition to marketing U.S. origin coal to customers throughout the world, Xcoal activities include the financing and development of mining projects and related infrastructure projects. Thrasher founded XLNG Energy & Resources in 2015, which plans to market LNG originating from natural gas reserves in the Marcellus and Utica Shale basins in the U.S., to customers in

---

[2] https://www.payscale.com/research/US/Job=Member_of_the_Board_of_Directors/Salary
[3] https://www.forbes.com/profile/christopher-cline/#4bba4fbf9a1d

7

# SEG

South America, Europe, and Asia. Thrasher serves on the Board of Directors of Barrick Gold Corporation, the President's Leadership Council-Boy Scouts of America, is a member of the Council on Foreign Relations, serves as a Director on the National Committee on U.S. China Relations, and serves as a Director of the U.S.-India Strategic Partnership Forum.[4]

Joseph Craft III became a lawyer, and then joined diversified coal company MAPCO as an assistant general counsel in 1980. He became president in 1987. Craft was rewarded with a big stake for leading the firm's LBO and conversion into a tax-efficient public master limited partnership in 1996; it was renamed Alliance Resource Partners three years later. He has been chief executive since and overseen subsequent expansion across Appalachia and the Midwest as revenue increased to $390 million. His net worth was an estimated $1,400,000,000 in 2012.[5]

The average net worth for Joseph Craft III and Chris Cline, whose net worth is publicly available, is $1,730,675,739. Assuming a 30-year career yields an estimated annual income of $56,558,030 in year 2019 dollars.

I have illustrated Mr. Blankenship's loss of earnings as a coal broker or entrepreneur in two scenarios. In Scenario 1, I have illustrated Mr. Blankenship's earnings to begin in 2019 at $56,558,030 in year 2020 dollars. Future earnings are illustrated to grow at inflation.

**Based on the above assumptions for Scenario 1, my opinion of the lost earnings as a coal broker or entrepreneur through 2030 is $667,581,406 ➢ Table 8.**

In Scenario 2, I have illustrated Mr. Blankenship's earnings to begin in 2019 at 50 percent of $56,558,030, or $28,279,015 in year 2020 dollars. Future earnings are illustrated to grow at inflation.

**Based on the above assumptions for Scenario 2, my opinion of the lost earnings as a coal broker or entrepreneur through 2030 is $333,790,703 ➢ Table 9.**


E.  Author

Tables 10 and 11 show the lost earnings for Mr. Blankenship from being an author in two scenarios. Mr. Blankenship states that he planned to author several books over the remainder of his career. He states that he also planned to adapt his story into a screenplay.

I have illustrated Mr. Blankenship's loss of book revenue in two scenarios. In Scenario 1, I have illustrated Mr. Blankenship receiving a benchmark of $100,000 advances every 3 years.

**Based on the above assumptions for Scenario 1, my opinion of the lost earnings as member of a Board of Directors through 2030 is $383,816 ➢ Table 10.**

---

[4] https://usispf.org/team/ernie-thrasher/
[5] https://www.forbes.com/profile/joseph-craft/#6a4b02ab712a

8

# SEG

In Scenario 1, I have illustrated Mr. Blankenship receiving a benchmark of $250,000 advances every 3 years.

**Based on the above assumptions for Scenario 1, my opinion of the lost earnings as member of a Board of Directors through 2030 is $959,539 ➤ Table 11.**

---------------------------------------

All opinions expressed in this report are clearly labeled as such. They are rendered in accordance with generally accepted standards within the field of economics and are expressed to a reasonable degree of economic certainty. Estimates, assumptions, illustrations and the use of benchmarks, which are not opinions, but which can be viewed as hypothetical in nature, are also clearly disclosed and identified herein.

In my opinion, it is reasonable for experts in the field of economics and finance to rely on the materials and information I reviewed in this case, for the formulation of my substantive opinions herein.

If additional information is provided to me, which could alter my opinions, I may incorporate any such information into an update, revision, addendum, or supplement of the opinions expressed in this report.

It is my opinion, based upon the foregoing, that the Plaintiff has suffered concrete, tangible, economic harm.

If you have any questions, please do not hesitate to call me.

Sincerely,

Stan V. Smith, Ph.D.
President

9

# SUMMARY OF LOSSES

| TABLE | DESCRIPTION | ESTIMATE |
|---|---|---|
| | **LOSS OF EARNINGS THROUGH 2030** | |
| | **CEO IN MINING/CONSTRUCTION** | |
| 1 | SCENARIO 1 | $254,647,877 |
| 2 | SCENARIO 2 | $197,218,122 |
| | **STRATEGIC CONSULTANT** | |
| 3 | SCENARIO 1 | $175,394,301 |
| 4 | SCENARIO 2 | $136,982,590 |
| 5 | SCENARIO 3 | $97,766,336 |
| | **BOARD OF DIRECTORS** | |
| 6 | SCENARIO 1 | $17,115,042 |
| 7 | SCENARIO 2 | $10,269,025 |
| | **COAL BROKER/ENTREPRENEUR** | |
| 8 | SCENARIO 1 | $667,581,406 |
| 9 | SCENARIO 2 | $333,790,703 |
| | **AUTHOR** | |
| 10 | SCENARIO 1 | $383,816 |
| 11 | SCENARIO 2 | $959,539 |

Table 1

LOSS OF CEO EARNINGS - SCENARIO 1
2019 - 2030

| YEARS | INCOME | DISCOUNT FACTOR | PRESENT VALUE | CUMULATE |
|-------|--------|-----------------|---------------|----------|
| 2019 | $21,573,972 | 1.0000 | 21,573,972 | 21,573,972 |
| 2020 | $22,005,451 | 1.0000 | 22,005,451 | 43,579,423 |
| 2021 | $22,445,560 | 0.9938 | 22,306,147 | 65,885,569 |
| 2022 | $22,445,560 | 0.9815 | 22,030,762 | 87,916,331 |
| 2023 | $22,445,560 | 0.9694 | 21,758,777 | 109,675,109 |
| 2024 | $22,445,560 | 0.9574 | 21,490,150 | 131,165,259 |
| 2025 | $22,445,560 | 0.9456 | 21,224,840 | 152,390,099 |
| 2026 | $22,445,560 | 0.9339 | 20,962,805 | 173,352,904 |
| 2027 | $22,445,560 | 0.9224 | 20,704,005 | 194,056,909 |
| 2028 | $22,445,560 | 0.9110 | 20,448,400 | 214,505,309 |
| 2029 | $22,445,560 | 0.8998 | 20,195,950 | 234,701,259 |
| 2030 | $22,445,560 | 0.8887 | 19,946,618 | 254,647,877 |

Table 2

LOSS OF CEO EARNINGS - SCENARIO 2
2019 - 2030

| YEARS | INCOME | DISCOUNT FACTOR | PRESENT VALUE | CUMULATE |
|---|---|---|---|---|
| 2019 | $4,949,257 | 1.0000 | 4,949,257 | 4,949,257 |
| 2020 | $6,723,867 | 1.0000 | 6,723,867 | 11,673,124 |
| 2021 | $9,134,783 | 0.9938 | 9,078,046 | 20,751,170 |
| 2022 | $12,410,160 | 0.9815 | 12,180,818 | 32,931,988 |
| 2023 | $16,859,959 | 0.9694 | 16,344,083 | 49,276,071 |
| 2024 | $22,905,282 | 0.9574 | 21,930,304 | 71,206,375 |
| 2025 | $22,905,282 | 0.9456 | 21,659,560 | 92,865,935 |
| 2026 | $22,905,282 | 0.9339 | 21,392,158 | 114,258,093 |
| 2027 | $22,905,282 | 0.9224 | 21,128,057 | 135,386,151 |
| 2028 | $22,905,282 | 0.9110 | 20,867,217 | 156,253,368 |
| 2029 | $22,905,282 | 0.8998 | 20,609,597 | 176,862,965 |
| 2030 | $22,905,282 | 0.8887 | 20,355,158 | 197,218,122 |

Table 3

LOSS OF STRATEGIC CONSULTANT EARNINGS - SCENARIO 1
2019 - 2030

| YEARS | INCOME | DISCOUNT FACTOR | PRESENT VALUE | CUMULATE |
|---|---|---|---|---|
| 2019 | $5,000,000 | 1.0000 | 5,000,000 | 5,000,000 |
| 2020 | $6,597,540 | 1.0000 | 6,597,540 | 11,597,540 |
| 2021 | $8,705,506 | 0.9938 | 8,651,434 | 20,248,974 |
| 2022 | $11,486,984 | 0.9815 | 11,274,702 | 31,523,676 |
| 2023 | $15,157,166 | 0.9694 | 14,693,391 | 46,217,067 |
| 2024 | $20,000,000 | 0.9574 | 19,148,687 | 65,365,754 |
| 2025 | $20,000,000 | 0.9456 | 18,912,284 | 84,278,038 |
| 2026 | $20,000,000 | 0.9339 | 18,678,799 | 102,956,837 |
| 2027 | $20,000,000 | 0.9224 | 18,448,196 | 121,405,033 |
| 2028 | $20,000,000 | 0.9110 | 18,220,441 | 139,625,474 |
| 2029 | $20,000,000 | 0.8998 | 17,995,497 | 157,620,971 |
| 2030 | $20,000,000 | 0.8887 | 17,773,330 | 175,394,301 |

Table 3

LOSS OF STRATEGIC CONSULTANT EARNINGS - SCENARIO 2
2019 - 2030

| YEARS | INCOME | DISCOUNT FACTOR | PRESENT VALUE | CUMULATE |
|---|---|---|---|---|
| 2019 | $5,000,000 | 1.0000 | 5,000,000 | 5,000,000 |
| 2020 | $6,228,655 | 1.0000 | 6,228,655 | 11,228,655 |
| 2021 | $7,759,228 | 0.9938 | 7,711,034 | 18,939,689 |
| 2022 | $9,665,910 | 0.9815 | 9,487,282 | 28,426,971 |
| 2023 | $12,041,123 | 0.9694 | 11,672,693 | 40,099,664 |
| 2024 | $15,000,000 | 0.9574 | 14,361,515 | 54,461,179 |
| 2025 | $15,000,000 | 0.9456 | 14,184,213 | 68,645,392 |
| 2026 | $15,000,000 | 0.9339 | 14,009,099 | 82,654,491 |
| 2027 | $15,000,000 | 0.9224 | 13,836,147 | 96,490,638 |
| 2028 | $15,000,000 | 0.9110 | 13,665,331 | 110,155,969 |
| 2029 | $15,000,000 | 0.8998 | 13,496,623 | 123,652,592 |
| 2030 | $15,000,000 | 0.8887 | 13,329,998 | 136,982,590 |

Table 5

LOSS OF STRATEGIC CONSULTANT EARNINGS - SCENARIO 3
2019 - 2030

| YEARS | INCOME | DISCOUNT FACTOR | PRESENT VALUE | CUMULATE |
|---|---|---|---|---|
| 2019 | $5,000,000 | 1.0000 | 5,000,000 | 5,000,000 |
| 2020 | $5,743,492 | 1.0000 | 5,743,492 | 10,743,492 |
| 2021 | $6,597,540 | 0.9938 | 6,556,561 | 17,300,053 |
| 2022 | $7,578,583 | 0.9815 | 7,438,529 | 24,738,582 |
| 2023 | $8,705,506 | 0.9694 | 8,439,137 | 33,177,719 |
| 2024 | $10,000,000 | 0.9574 | 9,574,344 | 42,752,063 |
| 2025 | $10,000,000 | 0.9456 | 9,456,142 | 52,208,205 |
| 2026 | $10,000,000 | 0.9339 | 9,339,399 | 61,547,604 |
| 2027 | $10,000,000 | 0.9224 | 9,224,098 | 70,771,702 |
| 2028 | $10,000,000 | 0.9110 | 9,110,220 | 79,881,923 |
| 2029 | $10,000,000 | 0.8998 | 8,997,749 | 88,879,671 |
| 2030 | $10,000,000 | 0.8887 | 8,886,665 | 97,766,336 |

Table 6

LOSS OF   OARD OF DIRECTORS EARNINGS - SCENARIO 1
2019 - 2030

| YEARS | INCOME | DISCOUNT FACTOR | PRESENT VALUE | CUMULATE |
|---|---|---|---|---|
| 2019 | $1,450,000 | 1.0000 | 1,450,000 | 1,450,000 |
| 2020 | $1,479,000 | 1.0000 | 1,479,000 | 2,929,000 |
| 2021 | $1,508,580 | 0.9938 | 1,499,210 | 4,428,210 |
| 2022 | $1,508,580 | 0.9815 | 1,480,701 | 5,908,911 |
| 2023 | $1,508,580 | 0.9694 | 1,462,421 | 7,371,332 |
| 2024 | $1,508,580 | 0.9574 | 1,444,366 | 8,815,698 |
| 2025 | $1,508,580 | 0.9456 | 1,426,535 | 10,242,233 |
| 2026 | $1,508,580 | 0.9339 | 1,408,923 | 11,651,156 |
| 2027 | $1,508,580 | 0.9224 | 1,391,529 | 13,042,685 |
| 2028 | $1,508,580 | 0.9110 | 1,374,350 | 14,417,035 |
| 2029 | $1,508,580 | 0.8998 | 1,357,382 | 15,774,417 |
| 2030 | $1,508,580 | 0.8887 | 1,340,625 | 17,115,042 |

Table 7

LOSS OF   OARD OF DIRECTORS EARNINGS - SCENARIO 2
2019 - 2030

| YEARS | INCOME | DISCOUNT FACTOR | PRESENT VALUE | CUMULATE |
|-------|--------|-----------------|---------------|----------|
| 2019 | $870,000 | 1.0000 | 870,000 | 870,000 |
| 2020 | $887,400 | 1.0000 | 887,400 | 1,757,400 |
| 2021 | $905,148 | 0.9938 | 899,526 | 2,656,926 |
| 2022 | $905,148 | 0.9815 | 888,421 | 3,545,347 |
| 2023 | $905,148 | 0.9694 | 877,453 | 4,422,799 |
| 2024 | $905,148 | 0.9574 | 866,620 | 5,289,419 |
| 2025 | $905,148 | 0.9456 | 855,921 | 6,145,340 |
| 2026 | $905,148 | 0.9339 | 845,354 | 6,990,694 |
| 2027 | $905,148 | 0.9224 | 834,917 | 7,825,611 |
| 2028 | $905,148 | 0.9110 | 824,610 | 8,650,221 |
| 2029 | $905,148 | 0.8998 | 814,429 | 9,464,650 |
| 2030 | $905,148 | 0.8887 | 804,375 | 10,269,025 |

Table 8

LOSS OF  RO  ER/ENTREPRENEUR EARNINGS - SCENARIO 1
2019 - 2030

| YEARS | INCOME | DISCOUNT FACTOR | PRESENT VALUE | CUMULATE |
|-------|--------|-----------------|---------------|----------|
| 2019 | $56,558,030 | 1.0000 | 56,558,030 | 56,558,030 |
| 2020 | $57,689,191 | 1.0000 | 57,689,191 | 114,247,221 |
| 2021 | $58,842,974 | 0.9938 | 58,477,490 | 172,724,711 |
| 2022 | $58,842,974 | 0.9815 | 57,755,546 | 230,480,256 |
| 2023 | $58,842,974 | 0.9694 | 57,042,514 | 287,522,771 |
| 2024 | $58,842,974 | 0.9574 | 56,338,286 | 343,861,057 |
| 2025 | $58,842,974 | 0.9456 | 55,642,751 | 399,503,808 |
| 2026 | $58,842,974 | 0.9339 | 54,955,804 | 454,459,612 |
| 2027 | $58,842,974 | 0.9224 | 54,277,337 | 508,736,949 |
| 2028 | $58,842,974 | 0.9110 | 53,607,247 | 562,344,195 |
| 2029 | $58,842,974 | 0.8998 | 52,945,429 | 615,289,624 |
| 2030 | $58,842,974 | 0.8887 | 52,291,781 | 667,581,406 |

Table 9

LOSS OF  RO  ER/ENTREPRENEUR EARNINGS - SCENARIO 2
2019 - 2030

| YEARS | INCOME | DISCOUNT FACTOR | PRESENT VALUE | CUMULATE |
|---|---|---|---|---|
| 2019 | $28,279,015 | 1.0000 | 28,279,015 | 28,279,015 |
| 2020 | $28,844,595 | 1.0000 | 28,844,595 | 57,123,610 |
| 2021 | $29,421,487 | 0.9938 | 29,238,745 | 86,362,355 |
| 2022 | $29,421,487 | 0.9815 | 28,877,773 | 115,240,128 |
| 2023 | $29,421,487 | 0.9694 | 28,521,257 | 143,761,385 |
| 2024 | $29,421,487 | 0.9574 | 28,169,143 | 171,930,528 |
| 2025 | $29,421,487 | 0.9456 | 27,821,376 | 199,751,904 |
| 2026 | $29,421,487 | 0.9339 | 27,477,902 | 227,229,806 |
| 2027 | $29,421,487 | 0.9224 | 27,138,669 | 254,368,474 |
| 2028 | $29,421,487 | 0.9110 | 26,803,623 | 281,172,098 |
| 2029 | $29,421,487 | 0.8998 | 26,472,714 | 307,644,812 |
| 2030 | $29,421,487 | 0.8887 | 26,145,891 | 333,790,703 |

Table 10

LOSS OF AUTHOR EARNINGS - SCENARIO 1
2019 - 2030

| YEARS | INCOME | DISCOUNT FACTOR | PRESENT VALUE | CUMULATE |
|-------|--------|-----------------|---------------|----------|
| 2019 | $100,000 | 1.0000 | 100,000 | 100,000 |
| 2020 | $0 | 1.0000 | 0 | 100,000 |
| 2021 | $0 | 0.9938 | 0 | 100,000 |
| 2022 | $100,000 | 0.9815 | 98,152 | 198,152 |
| 2023 | $0 | 0.9694 | 0 | 198,152 |
| 2024 | $0 | 0.9574 | 0 | 198,152 |
| 2025 | $100,000 | 0.9456 | 94,561 | 292,713 |
| 2026 | $0 | 0.9339 | 0 | 292,713 |
| 2027 | $0 | 0.9224 | 0 | 292,713 |
| 2028 | $100,000 | 0.9110 | 91,102 | 383,816 |
| 2029 | $0 | 0.8998 | 0 | 383,816 |
| 2030 | $0 | 0.8887 | 0 | 383,816 |

USCA4 Appeal: 22-1198    Doc: 48      Filed: 05/25/2022    Pg: 124 of 307

Table 11

## LOSS OF AUTHOR EARNINGS - SCENARIO 2
### 2019 - 2030

| YEARS | INCOME | DISCOUNT FACTOR | PRESENT VALUE | CUMULATE |
|-------|--------|-----------------|---------------|----------|
| 2019 | $250,000 | 1.0000 | 250,000 | 250,000 |
| 2020 | $0 | 1.0000 | 0 | 250,000 |
| 2021 | $0 | 0.9938 | 0 | 250,000 |
| 2022 | $250,000 | 0.9815 | 245,380 | 495,380 |
| 2023 | $0 | 0.9694 | 0 | 495,380 |
| 2024 | $0 | 0.9574 | 0 | 495,380 |
| 2025 | $250,000 | 0.9456 | 236,404 | 731,784 |
| 2026 | $0 | 0.9339 | 0 | 731,784 |
| 2027 | $0 | 0.9224 | 0 | 731,784 |
| 2028 | $250,000 | 0.9110 | 227,756 | 959,539 |
| 2029 | $0 | 0.8998 | 0 | 959,539 |
| 2030 | $0 | 0.8887 | 0 | 959,539 |

# SEG

## Smith Economics Group, Ltd.

**A Division of Corporate Financial Group**

*Economics / Finance / Litigation Support*

*Stan V. Smith, Ph.D.*
*President*

### S T A N   V.   S M I T H ,   P H . D .

**Smith Economics Group, Ltd.** -- Consultants and Experts in Economics and Finance. President, 11/85 to present.  Assisted in the successful resolution of thousands of lawsuits on behalf of clients that include many dozens of the nation's largest law firms, the U.S. Department of Justice, as well as thousands of other prominent plaintiff and defense law firms in almost every state.  Firm provides economic and financial consulting and economic legal analysis in federal and state courts on damages of every sort: Business Damages including antitrust damages, patent valuation, breach of contract losses, and others commercial losses; Business Valuations; Personal Injury and Wrongful Death losses including lost wages, benefits, services, and other injury losses; Hedonic Damages;  Wrongful Discharge, defamation and employment discrimination; Identity Theft and other credit damages; Product Liability; Pension Fund Evaluation and Withdrawal liability, Security Losses.

----------------------------------------------------------------

**DePaul University.** -- Adjunct Professor, College of Law, 1990 to 1994.  Created and taught a full three-credit course in Advanced Remedies - Analysis of Economic Damages in Litigation, based on my textbook on Forensic Economics; delivered lectures to other courses in subsequent years.  This was the first course created nationwide in the area of Forensic Economics.

**Ibbotson Associates, Inc.** -- Economic and Financial Consultants.  Principal and Managing Director; Originator of SBBI Subscription Services, 11/81 to 11/85. Firm provides consulting to hundreds of the nation's most prominent money managers, law firms, brokerage firms, and pension funds.

**Seaquest International, Inc.** -- Founder and President, 7/77 to 11/81.  Developed and financed sophisticated research, search, and recovery technologies for ancient underwater artifacts.

**The December Group, Ltd.** -- Investment Banking Consultants.  Associate Economic Analyst 12/74 to 7/77.  Firm specialized in mergers and acquisitions, leveraged buy-outs, divestitures and financing specialized start-ups with venture capital.

**JPMorgan Chase Bank – Chicago.** -- Staff Economist, 3/74 to 12/74.  Analyzed bank credit and service pricing policies.

**Federal Reserve System.** -- Staff Economist at Board of Governors, Washington, D.C. 9/73 to 2/74.

**University of Chicago.** - Adjunct Professor, Public Policy Economics, 3/73 to 6/73. Research Assistant in Economics, 3/70 to 6/73.

**Midlothian Manufacturing Co.** -- Vice President, 9/68 to 3/73.  Responsible for marketing to retail and industrial clients; production control.

# SEG

**EDUCATIONAL BACKGROUND:**

University of Chicago, Chicago IL.  Ph.D. in Economics, 1997; Support Areas in
    Finance and Econometrics.  Honors: Allied Chemical Scholar and Federal Reserve
    Internship.  The University of Chicago is recognized as a world preeminent
    institution for the study of Economics and the home of the Law and Economics
    movement.  Prof. Gary Becker, Nobel 1992, Thesis Advisor; Research Assistant to
    Prof. Eugene Fama, Nobel 2013.

University of Chicago, Chicago, IL.  Master's Degree, 1972, Graduate School of
    Business; Field of Concentration in Economics.

Cornell University, Ithaca, NY.  Bachelor of Science, Operations Research, 1968;
    Field of Concentration in Statistics, Computer Science and Industrial
    Engineering, Honors: John McMullen Scholar.


**PROFESSIONAL ACTIVITIES:**

American Academy of Economic & Financial Experts, <u>Journal of Legal Economics</u>,
    Manuscript Referee, 199x-2008.
American Arbitration Association, Arbitrator, 1994 to 1996;
American Board of Disability Analysts, Professional Advisory Council, 2002 to
    present, Member & Diplomat, 2001 to present;
American College of Forensic Examiners, Fellow, Diplomate and Board Certified
    Forensic Examiner, 1996 to present;
American Economic Association, Member, 1985 to present;
American Finance Association, Member, 1985 to present;
Collegium of Pecuniary Damages Experts, Charter Member, 2008-2011;
<u>Journal of the American Rehabilitation Economics Association: The Earnings
    Analyst</u>, Manuscript Referee, 1998 to 2002;
<u>Journal of Forensic Economics</u>, Board of Editors, 1990 to 2001;
<u>Journal of Forensic Economics</u>, Manuscript Referee, 1990 to 2003;
National Academy of Economic Arbitrators, Founder and Charter Member, 1989 to
    2005;
National Association of Forensic Economics, Vice President, 2000 to 2003, Board
    of Editors, 1990 to 2000, Member, 1988 to present;
National Futures Association's Panel of Arbitrators, Arbitrator, 1994 to
    present;


**PUBLICATIONS:**

Author, "Historical Returns on Investment Instruments," <u>Handbook of Modern Finance
    1985</u>, with Roger Ibbotson and Larry Siegel; Dennis Logue, ed., Warren, Gorham &
    Lamont, New York.
Author, 1988 Supp.to Vol 13, Am Jur <u>Proof of Facts 2d</u> on Hedonic Damages.
Author, "Economist Proposes Relief From Present Value Ruling," <u>Chicago Daily Law
    Bulletin</u>, June 8, 1988.
Author, "Hedonic Damages" <u>Illinois Tort Report</u>, June, 1988. 9209

# SEG

Author, "Hedonic Damages in Wrongful Death Cases," the ABA Journal, Sept,1988.

Author, "Hedonic Damages," The Audio Lawyer, Vol. 6 No. 8, ALI-ABA, February, 1989.

Author, "The Hedonic Value of Life: Economic Expert Witness Testimony in Injury and Wrongful Death," Expert Evidence Reporter, Vol. 1, No. 1, September 1989, Shepard's McGraw-Hill.

Co-author: Economic/Hedonic Damages: A Practice Book for Plaintiff and Defense Attorneys, with M. L. Brookshire, Anderson Publishing Co., Cinn., Ohio, 1990.

Co-author, "Hedonic Damages and Personal Injury:  A Conceptual Approach," Journal of Forensic Economics, 3(1), 1990, pp. 1-8.

Author, "Hedonic Damages in the Courtroom Setting – A Bridge Over Troubled Waters," Journal of Forensic Economics, 3(3), 1990, pp. 41-49.

Author, "Admissibility of Hedonic Damages Testimony," The Audio Litigator, Vol. 1, No. 1, April, 1990, ALI-ABA.

Author, "Hedonic Damages," with G. Magnarini, Wisconsin Lawyer, Vol. 64, No. 2, February 1991.

Author, "Hedonic Damages: Assessing the Loss of Enjoyment of Life," CaliforniaState Bar Bulletin, Vol. 1, No. 8, June 1991.

Co-author, "Hedonic Damages and Personal Injury:  A Conceptual Approach," Journal of Forensic Economics, 3(1), 1990, pp. 1-8; Reprinted in A Hedonics Primer for Economists and Attorneys, Compiled and Edited by John O. Ward, Lawyers & Judges Publishing Co., Chapter 7, pp. 121-129, 1992.

Co-author: 1991/1992 Cumulative Supplement to Economic/Hedonic Damages: A Practice Book for Plaintiff and Defense Attorneys, with M. L. Brookshire, Anderson Publishing Co., Cinn., Ohio, 1992.

Author, "Hedonic Damages in the Courtroom Setting – A Bridge Over Troubled Waters,," Journal of Forensic Economics, 3(3), 1990, pp. 41-49; Reprinted in A Hedonics Primer for Economists and Attorneys, Compiled and Edited by John O. Ward, Lawyers & Judges Publishing Co., Chapter 6, pp. 111-120, 1992.

Author, "Spotting Bias in Plaintiffs' Economic Loss Reports: A Primer for both Sides," Illinois Bar Journal, Vol 80, No. 12, December, 1992, pp. 635-638.

Author, "Life Values: Measuring the Loss of Enjoyment of Life – Economic Analysis whose time has come," The Brief, Summer 1993, Vol. 22, No. 4 pp. 24-27, 62-63, The American Bar Association.

Co-author: 1992/1993 Cumulative Supplement to Economic/Hedonic Damages: A Practice Book for Plaintiff and Defense Attorneys, with M. L. Brookshire and Charles W. de Seve, Anderson Publishing Co., Cinn., Ohio, 1993.

Author, "Evaluating the Loss of Enjoyment of Life – Hedonic Damages," in Charles N. Simkins, ed., Analysis, Understanding and Presentation of Cases Involving Traumatic Brain Injury, National Head Injury Foundation, Wash., DC, 1993.

Author, "Hedonic Damages in Personal Injury and Wrongful Death Litigation," in Gaughan and Thornton, eds. Litigation Economics, Contemporary Studies in Economic and Financial Analysis, Vol 74, JAI Press, Greenwich, CT, 1993.

Author, "Economic Evaluation of the Loss of Enjoyment of Life - Hedonic Damages," in Damages in Tort Actions, Ch. 124, Release 29 – February 1994, Pub. 309, Mathew Bender & Co., New York.

Author, "Measuring the Loss of Enjoyment of Life in Personal Injury Cases - Hedonic Damages," Journal of the Massachusetts Academy of Trial Attorneys, Vol 2, No. 1, July, 1994, pp. 65-67.

# SEG

Author, 3-Part Series, "Two Plus Two Equals -- What?" October, 1994, p. 21; "Detecting Bias in Economics," November, 1994, pp. 14 & 21; "Striving for Economic Fairness," December, 1994, pp. 24-25, California Bar Journal, The Experts.

Author, "Measuring the Loss of Enjoyment of Life in Personal Injury Cases - Hedonic Damages," MTLA News, Vol. 6, No. 4, December, 1994, pp. 3-5, Maine Trial Lawyers Association.

Author, "Hedonic Damages: Measuring The Loss of Enjoyment of Life in Personal Injury Cases," The Prairie Barrister, Vol. 1, No. 1, Winter, 1995, pp. 3, 4, & 12, Nebraska Association of Trial Attorneys.

Author, "Measuring The Loss of Enjoyment of life in Personal Injury Cases in Ohio - Hedonic Damages," Ohio Trial, Vol. 6, Issue 3, Summer 1995, pp. 13- 16, Ohio Academy of Trial Lawyers Education Foundation.

Author, "Measuring The Loss of Enjoyment of Life in Personal Injury Cases - Hedonic Damages," The Advocate, Vol. 22, No. 5, September/October, 1995, pp. 14-16, 22, The Kentucky Academy of Trial Attorneys.

Author, "Damages for the Value of Life," North Dakota Trial Lawyers The Pleader, Vol. 18, No. 4, September 1995, pp. 9-11, 24.

Author, "Hedonic Damages - Measuring The Loss of Enjoyment of Life in Personal Injury Cases," Law Reporter, The Journal of the Hawaii Trial lawyers Association, Vol. 7, No. 9, September 1995, pp. 8-10.

Author, "Measuring The Loss of Enjoyment of Life in Personal Injury Cases in Arizona - Hedonic Damages," Advocate, Arizona Trial Lawyers Association, November 1995, pp. 5, 7, 15.

Co-Author, "Hedonic Damages and Personal Injury: A Conceptual Approach," Journal of Forensic Economics, 3(1), 1990, pp. 1-8; Reprinted in A New Hedonics Primer for Economists and Attorneys, Compiled and Edited by Thomas R. Ireland and John O. Ward, Lawyers & Judges Publishing Co., Reading 25, 1996, pp. 325-334.

Author, "Hedonic Damages - Measuring the Loss of Enjoyment of Life in P.I. Cases," In Brief, Iowa Trial Lawyers Association, Vol. 7/Issue 1, January-February 1996, pp. 13-15.

Author, "Hedonic Damages in Personal Injury and Wrongful Death Litigation," in Gaughan and Thornton, eds. Litigation Economics, Contemporary Studies in Economic and Financial Analysis, Vol 74, JAI Press, Greenwich, CT, 1993; Reprinted in A New Hedonics Primer for Economists and Attorneys, Compiled and Edited by Thomas R. Ireland and John O. Ward, Lawyers & Judges Publishing Co., Reading 3, 1996, pp. 15-36.

Author, "Measuring the Loss of Enjoyment of Life in Personal Injury Cases and Wrongful Death Cases in New Mexico - Hedonic Damages," The New Mexico Trial Lawyer, New Mexico Trial Lawyers' Foundation, Vol. XXIV, No. 3, March, 1996, pp. 1, 60-63.

Author with Introduction by Darrel W. Aherin, "Measuring The Loss of Enjoyment of Life in Personal Injury Cases - Hedonic Damages," Idaho Trial Lawyers Association Journal, Volume 25, Number 2, Summer 1996, pp. 32-36.

Author, "The Value of Life to Close Family Members: Calculating the Loss of Society and Companionship," The New Hedonics Primer for Economists and Attorneys, Second Edition, Edited by Thomas R. Ireland and John O. Ward, Lawyers & Judges Publishing Co., 1996, pp. 377-384.

Author, "Pseudo-Economists - The New Junk Scientists," Federation of Insurance & Corporate Counsel Quarterly, Vol. 47, No. 1, Fall 1996, pp. 95-105.

# SEG

Author with Introduction by Darrel W. Aherin, "Measuring The Loss of Enjoyment of Life in Personal Injury Cases in Idaho - Hedonic Damages," <u>Western Chronicle</u>, N/D 1996, Western Trial Lawyers Association, pp. 32, 35-36.

Author, "Measuring The Loss of Enjoyment of Life in Personal Injury Cases in Washington - Hedonic Damages," <u>Trial News</u>, Vol. 32, Number 5, January 1997, Washington State Trial Lawyers Association, pp. 29-30.

Author, "Jury Verdicts in Drunken Driving Cases," University of Chicago Ph.D. Thesis, UMI Dissertation Services, Ann Arbor, MI, 1997.

Author, "The Value of Life to Close Family Members:  Calculating the Loss of Society and Companionship," <u>American Rehabilitation Economics Association 1997 Monograph</u>, pp. 10-16.

Author, Abstract:  "Jury Verdicts in Drunken Driving Cases," <u>Journal of Forensic Economics</u>, 11(1), 1998, p. 67-68.

Author, "Why Juries Can Be Trusted," <u>Voir Dire</u>, Vol. 5, Issue 3, Summer 1998, American Board of Trial Advocates, pp. 19-21 & 25.

Author, "Measuring The Loss of Enjoyment of Life in Personal Injury Cases - Hedonic Damages," <u>The Neurolaw Letter</u>, Vol. 9, No. 8, April 2000, pp. 45, 48-49.

Author, "Jury Verdicts and the Dollar Value of Human Life," <u>Journal of Forensic Economics</u>, 13(2), 2000, pp. 169-188.

Author, "Hedonic Damages," Izabela Z. Schultz, Douglas O. Brady, Steven Carella, Eds., <u>Psychological Injuries at Trial</u>, Torts Section, American Bar Association, 2003.

Contributor, "Economic Foundations of Injury and Death Damages," Roger T. Kaufman, James D. Rodgers, Gerald D. Martin, Edward Elgar Publishing, Inc., 2005.

Author, "Don't Overlook the Loss of Expanded Family Services," <u>Trial</u>, Vol. 42, No. 3, "Good Counsel" Column, March 2006, pg. 73.

Co-Author, "What is Your Value?" Chapter 2 in <u>Six-Figure Salary Negotiation</u>, Michael Zwell, Platinum Press, 2008.

Co-Author, "Jury Verdicts in Drunken Driving Cases," <u>Review of Law & Economics</u>, Berkeley Press, 2008.

Contributor, "Determining Economic Damages," Gerald D. Martin, James Publishing Inc., 2008 & previous years' editions.

Co-Author, "Estimating the Value of Family Household Management Services: Approaches and Markups," <u>Forensic Rehabilitation & Economics</u>, Vol 3, No. 2, 2010, with David A. Smith and Stephanie R. Uhl, pp. 85-94.

Co-Author, "Credit Damage: Causes, Consequences and Valuation," <u>Forensic Rehabilitation & Economics</u>, Vol 4, No. 1, 2011, with David A. Smith and Stephanie R. Uhl, pp. 27-32.

Co-Author, "Reply to Tinari's Comment on 'Estimating the Value of Family Household Management Services: Approaches and Markups,'" <u>Forensic Rehabilitation & Economics</u>, Vol 4, No. 1, 2011, with David A. Smith and Stephanie R. Uhl, pp. 37-38.

Co-Author, "A Response to Jayne's Comment on 'Estimating the Value of Family Household Management Services: Approaches and Markups,'" <u>Forensic Rehabilitation & Economics</u>, Vol 4, No. 1, 2011, with David A. Smith and Stephanie R. Uhl, pp. 39-40.

Co-Author, "A Reply to Mr. Climo's Credit Damage Comment," <u>Forensic Rehabilitation & Economics</u>, Vol 5, No. 1, 2012, with David A. Smith and Stephanie R. Uhl, pp. 75-76.

# SEG

Contributor, "Lost Earnings Report: Economist Expert," How To Write An Expert Witness Report, James J. Mangraviti, Jr., Steven Babitsky, Nadine Nasser Donovan, SEAK, Inc, The Expert Witness Training Company, 2014, pp. 527-542.

Author, "Economic Damages in Nevada," Vegas Legal Magazine, Vol 1, Issue 1, Summer 2015, pp. 24-25.

Author, "Economic Damages in Nevada," REPRINT, Vegas Legal Magazine, Fall 2016, pp. 31-32.

Author, "What Is a Wife Worth?" Vegas Legal Magazine, Winter 2017, pp. 34-35.

Author, "What Is Your Earning Capacity?" Vegas Legal Magazine, Spring 2017, pp.26-27.

Author, "Partially Disabling Injuries," Vegas Legal Magazine, Summer 2017, pp. 26-27.

Co-Author, "Credibility & Bias in Economic Experts," Vegas Legal Magazine, Winter 2017, pp. 28-29.

Co-Author, "Credit Damages," Vegas Legal Magazine, Spring 2018, pp. 28-29.

Co-Author, "Defamation" Vegas Legal Magazine, Summer 2018, pp. 26-27.

Co-Author, "Economics is Not Fair!" Vegas Legal Magazine, Fall 2018, pp. 20-21.

Co-Author, "Speculative Damages v. Imprecision: Are They the Same?" Vegas Legal Magazine, Spring 2019, pp. 24-25.

---

Creator and founder of Ibbotson Associates' Stocks, Bonds, Bills, and Inflation (SBBI) Yearbook, Quarterly, Monthly, and SBBI/PC Services. SBBI is generally regarded by academics in the field of finance as the most widely accepted source of statistics on the rates of return on investment securities. SBBI was originally published by Ibbotson Associates, then by Morningstar, Inc., and is now currently published by Duff & Phelps. The original SBBI series generated what became a six-book set universally used for business valuation, and currently available on an online platform. These data series are widely relied upon and regarded as the most accepted and definitive scholarly references by the academic, actuarial and investment community, and in courts of law. All three publishers of the SBBI series acknowledge me as the founder in 1983, for my "invaluable role" as having "originated the idea" of SBBI, which I then implemented while Managing Director at Ibbotson Associates.

---

**PROFILES:**

The Wall Street Journal, page 1 feature article with photo;
The Best Lawyer's in America: Directory of Expert Witnesses;
National Law Journal, page 1 feature article with photo;
Who's Who in the World;
Who's Who in America;
Who's Who in Finance and Industry;
Who's Who in Science and Engineering;
Who's Who in the Midwest;
Who's Who of Emerging Leaders of America;
Chicago Daily Law Bulletin, page 1 feature article;
Chicago Reader, Section 1 feature article with photo;

# SEG

Like Judgment Day:  The Ruin and Redemption of A Town Called Rosewood, D'Orso, Michael, 1996, Pg. 237.

## NATIONAL PRESENTATIONS:

Arizona: Brain Injury Association 13th Annual Conference for Attorneys, Phoenix, September 16, 1999;

California: American Bar Association Annual Meeting, San Francisco, August 10, 1992;

California: American Trial Lawyers Association 2005 Winter Convention, "Making Tangible the Intangible: Replacement Household/Family Services", Palm Springs, January 29, 2005;

Canada: Association of Trial Lawyers of America Annual Meeting, Economic Damages, Toronto, 1991;

District of Columbia: Larry King Live, Washington, May 22, 1989;

District of Columbia: National Institute for Trial Advocacy (NITA), Seventh Annual Washington DC Masters Advocacy Program, "Direct and Cross Examination of an Economic Witness," Washington, October 15, 1991;

District of Columbia: National Association. of Protection & Advocacy Systems, Inc., 19th Annual Conference, "Assessment and Proof of Damages," Washington, May 30, 1996;

District of Columbia: American Bar Association Annual Meeting, Washington, TIPS Aviation and Space Law, "Beyond the Horizon: What's Next in Aviation and Space Law Litigation," October 18, 2013;

Florida: Association of Trial Lawyers of America 1992 Winter Convention, Boca Raton, "Cutting Edge Developments in Economic Testimony," January 15, 1992;

Florida: Brain Injury Association 10th Anniversary Trial Lawyers Conference, Palm Beach, September 19, 1996;

Florida: National Association of Consumer Advocates, 2003 NACA-FCRA Conference, Building on Our Success, Panel of Experts, "What the Experts Have Learned, A View From the Witness Box," Orlando, March 9, 2003;

Georgia: National Academy of Economic Arbitrators Annual Meeting, Differences in Economic Assumptions in Personal Injury Wage Calculations, Atlanta, December, 1989;

Georgia: National Association of Forensic Economics Annual Meeting, Value of Life, Atlanta, December, 1989;

Hawaii: American Bar Association Annual Meeting in Honolulu, HI, Speaker and Expert Witness at Mock Trial, Honolulu, August, 1989;

Idaho: Inner Circle of Advocates Annual Meeting, Sun Valley, August, 1989;

Illinois: University of Chicago 1982 Annual Management Conference on Venture Capital;

Illinois: National Association of Consumer Advocates, 2009 NACA-FCRA Fair Credit Reporting Act Conference, "Credit Damages: How to Estimate Them," Chicago Hyatt Regency, May 9, 2009;

Illinois: American Rehabilitation Economics Association Annual Conference, "Hedonic Damages:  A Basic Approach," Chicago, June 13, 2009;

Illinois: National Association of Consumer Advocates, 2010 NACA Auto Fraud Litigation Conference, Credit Damages: How to Estimate Them," Chicago Hyatt Regency, May 16, 2010;

Illinois:  SEAK 19th Annual National Expert Witness Conference, "Handling the Toughest Questions:  Depositions and Trial," Rosemont, June 25, 2010;

# SEG

Illinois:  National Consumer Law Center 20th Annual Consumer Rights Litigation
   Conference, "Expert Witnesses at Trial - Handling Experts in the Courtroom,"
   Fairmont Chicago Millennium Park Hotel, November 5, 2011;
Internet: Credit Bureau Strategy Consulting, Webinar Presentation, "The
   Economics of Credit Damage," September 14, 2009
Louisiana: American Bar Association, National Institute Transportation
   Megaconference, New Orleans, March 5, 1993;
Louisiana: Defense Research Institute, Medical Malpractice Seminar, New Orleans,
   May 6, 1994;
Louisiana: Association of Trial Lawyers of America 2001 Winter Convention,
   Litigation at Sunrise, "Measuring the Loss of Enjoyment of Life in Personal
   Injury Cases -- Hedonic Damages Over the Last Ten Years," New Orleans, February
   12, 2001;
Louisiana: National Association of Consumer Advocates, 2005 NACA-FCRA Conference,
   "Litigating Accuracy Issues with Furnishers of Credit Data," Speaker on
   Economic Damages, New Orleans, June 5, 2005;
Louisiana: National Association of Minority and Women-Owned Law Firms, Trials
   Practice Area Committee Session:  Challenging Experts? "Tactics for Mastering
   Expert Examinations," New Orleans, February 21, 2016;
Louisiana: National Association of Minority and Women-Owned Law Firms, Emerging
   Leaders Session: Ready for Action? "Hone Your Expert Cross Examination
   Techniques," New Orleans, February 22, 2016;
Michigan: Northwest #255 Air Disaster Steering Committee Meeting, Detroit, June,
   1989;
Nevada: American Rehabilitation Economics Association Conference, Mock Trial
   Presided by Nevada Supreme Court Justice William Maupin, Reno, May 15, 1999;
Nevada: National Association of Consumer Advocates, 2006 NACA-FCRA Conference,
   "Experts on Damages," Washington, May 6, 2006;
Nevada: National Association of Consumer Advocates, 2006 NACA-FCRA Conference,
   "Breakfast with the Stars," Washington, May 7, 2006;
Nevada: Brain Injury Association of America; Mastering the Science and Trial
   Strategies, "Making Tangible the Intangible: Expanding the Traditional
   Measures," Las Vegas, April 4, 2008;
Nevada: Internet Law Leadership Summit at Aria Resort & Casino, "Calculating
   Complex Financial Damages," Las Vegas, November 30, 2012;
New York: Eastern Economic Association Annual Conference, "Estimating the
   Value of Family Household Management Services: Approaches and Markups," New
   York City, February 28, 2009;
New York: Eastern Economic Association Annual Conference, "Credit Damage:
   Causes, Consequences and Valuation," New York City, February 28, 2009;
Oregon: National Crime Victim Law Institute at Lewis & Clark Law School, Ninth
   Annual Crime Victim Law Conference, Due Process for Victims: Meaningful Rights
   in Every Case, Portland, June 11, 2010;
Pennsylvania: Swiss Re American Annual Claims Conference, "Looking to the Third
   Millennium," Hershey, June 3, 1996;
Texas: MADD Advanced Victim Assistance Institute Seminar, Dallas, November 12,
   1994;
Texas: National Norplant Litigation Conference 1995, Houston, June 22, 1995.
Texas: American Rehabilitation Economics Association Annual Conference, "Hedonic
   Damages for Dummies," Austin, June 23, 2018.

# SEG

## REGIONAL PRESENTATIONS:

Hawaii: Western Trial Lawyers Association 1994 Annual Convention, "Making it Work-Trial Practice in the 90's," Maui, June 16, 1994;

Illinois: GSA Seminar "Selling your Business", Chicago, October, 1987;

Illinois: Society of Trial Lawyers, "How to Depose an Economist," Chicago, May 7, 2009;

Louisiana: Southern Trial Lawyers Association Annual Meeting, New Orleans, 1988;

Louisiana: Southern Trial Lawyers Association 1996 Mardi Gras Conference, ATLA Traumatic Brain Injury Litigation Group, "Economic Implication of a Closed Head Injury," New Orleans, February 18, 1996;

Michigan: Advocacy Institute, Continuing Legal Education, 46th Annual Seminar, "Wrongful Death of an Older Person," Ann Arbor, May 12, 1995;

Michigan: Lorman Education Services, "Direct Examination of Experts in a Traumatic Brain Injury Case," Novi, August 21, 1997;

Michigan: Lorman Education Services, "Direct Examination of Experts in a Traumatic Brain Injury Case," Livonia, August 26, 1998;

New York: Eastern Finance Association Special Session on Pension Fund Asset Reversions, 1985;

New York: American Reinsurance Company for Senior Claims Executives Annual Meeting, August, 1989;

Ohio: Anderson Publishing Co., Proof of Economic Damages Seminar, Cincinnati, November 2, 1990.

## STATEWIDE PRESENTATIONS:

California: Arizona State Bar Fourth Annual "CLE By The Sea," San Diego, July 22-23, 1994;

Connecticut Trial Lawyer Association, "All About Experts," Hartford, November 21, 1992;

Florida State Bar Association, National Institute of Trial Advocacy (NITA), Advanced Trial Advocacy Seminar, Speaker and Expert Witness at Mock trial on Economic Damages, Gainesville, May 14, 1991;

Georgia Brain Injury Association & Institute of Continuing Legal Education in Georgia, "Hedonic Damages: Proving Loss of Enjoyment of Life in Non-Fatal Injury Cases," Atlanta, March 29, 2002;

Idaho Trial Lawyers Association Annual Meeting, Twin Falls, February 23, 1996;

Illinois State Bar Association CLE Series, April, 1989;

Illinois: Insurance Group of the Union League Club of Chicago, "Toward A More Rational Approach to Liability Judgments," Chicago, March 19, 1991;

Indiana State Bar Association Annual Meeting, October, 1989;

Indiana Trial Lawyers Association Annual Meeting, November 30, 1990;

Indiana State Bar Association "Masters in Trial" Spring Meeting, South Bend, April 18, 1997;

Iowa Trial Lawyers Association Annual Meeting, Des Moines, November 5, 1993;

Kentucky Academy of Trial Attorneys Damages Seminar, Louisville, August 18, 1995;

Louisiana Trial Lawyer Association, Baton Rouge, "Winning with Experts" Seminar, November 10, 1989;

Louisiana Trial Lawyer Association, "Winning With the Masters" Seminar, New Orleans, November 21, 1995;

# SEG

Louisiana Trial Lawyer Association, "Winning With the Masters" Seminar, New Orleans, December 10, 1997;

Massachusetts Trial Lawyers Association, "Learn From the Experts," Boston, October 9, 1992;

Massachusetts Trial Lawyers Association Annual Meeting, Boston, October 29, 1993;

Michigan Trial Lawyers Association Annual Meeting, Wrongful Death Damages, May, 1990;

Michigan Head Injury Alliance Fifth Annual Seminar on Closed Head Injury, Detroit, March 24, 1994;

Michigan Head Injury Alliance Sixth Annual Seminar on Closed Head Injury, Detroit, March 23, 1995;

Michigan Head Injury Alliance Seventh Annual Seminar on Closed Head Injury, Detroit, March 28, 1996;

Michigan Head Injury Alliance Eighth Annual Seminar on Closed Head Injury, Detroit, March 27, 1997;

Michigan, Institute of Continuing Legal Education, "The Name of the Game is Damages--Plaintiff and Defense Strategies in Negligence and Employment Cases," Troy, July 20, 2000;

Michigan Trial Lawyers Association Winter Seminar, "Hedonic Damages and Other Special Economic Issues," Gaylord, February 24, 2001;

Michigan Trial Lawyers Association 13th Annual Seminar in the Snow, Litigation Strategies and Techniques, "Loss of Society and Household Companionship and Advisory Services," Bellaire, February 22, 2003;

Mississippi Trial Lawyers Association Annual Convention, "Shooting Stars Seminar," Biloxi, May 19, 1995;

Mississippi Trial Lawyers Association Annual Convention, "Taking Your Recovery to the Next Level: Hedonic Damages," Biloxi, May 10, 2001;

Mississippi: Arkansas Trial Lawyer Association "Maximizing Damages in the Personal Injury Case," Tunica, MS, October 24, 2003;

Missouri: Kansas Trial Lawyers Association Annual Meeting, Kansas City, December 8, 1990;

Missouri State Bar Annual Meeting, Kansas City, September 19, 1996;

Missouri State Bar CLE Seminar, Proving Damages in Catastrophic Injury Cases, "Hedonic Damages after September 11th and An Economist's View on Proving Economic Damages," Kansas City, April 19, 2002;

Missouri State Bar CLE Seminar, Proving Damages in Catastrophic Injury Cases, "Hedonic Damages after September 11th and An Economist's View on Proving Economic Damages," St. Louis, May 9, 2002;

Montana Trial Lawyer Association Fourth Annual Convention, "Proving The Intangible (Hedonic) Value of Human Life," Whitefish, July 23, 1993;

Montana Trial Lawyer Association Seventh Annual Convention, Seminar of the Masters, Polson, August 1, 1996;

Montana Trial Lawyer Association Spring Seminar, Scientific Evidence, "Making Tangible the Intangible: Loss of Enjoyment of Life, and Society & Companionship Damages," Billings, April 25, 2003;

Nevada: Required Medical and Legal Education for the Traumatic Brain Injury Case, "9/11 Victim Compensation Fund Hedonic Damages: Implications for the State of Nevada," Las Vegas, October 25, 2002;

New Hampshire Trial Lawyer Association, "Secrets & Strategies of Trial Law," Concord, October 8, 1993;

New Mexico Trial Lawyers Association Annual Meeting, Economic Damages, Santa Fe, June 22, 1991;

# SEG

New Mexico Trial Lawyers Foundation Damages Seminar, Albuquerque, October 11, 1996;

North Carolina, Brain Injury Association of NC, First Annual Trial Lawyers Conference, "The Use of Expert Testimony in Brain Injury Litigation," Charlotte, January 26, 1996;

North Carolina, Brain Injury Association of NC, Second Annual Trial Lawyers Conference, "The Loss of Enjoyment of Life in Personal Injury - Hedonic Damages," Charlotte, January 24, 1997;

North Dakota Trial Lawyers Association, Annual Meeting Trial Practice Seminar, Fargo, May 4, 1995;

Ohio Association of Trial Lawyers Annual Meeting, Speaker and Expert Witness at Mock Trial on Wrongful Death Damages, Toledo, April, 1990;

Ohio Head Injury Association, "Representing the Survivor of Mild Head Injury," Annual Seminar, Columbus, June 3, 1994;

Pennsylvania: Philadelphia Trial Lawyers Association CLE Lecture Series, March 17, 1993;

South Dakota Trial Lawyers Association Spring Seminar, April, 1989;

Texas Trial Lawyers Association, Medical Malpractice Seminar, Wrongful Death Damages, Houston, May, 1990;

Washington State Trial Lawyers Annual Meeting & Convention, Stevenson, July 11, 1998;

Wisconsin Association of Trial Lawyers Annual Meeting, Wrongful Death Damages, Door County, July, 1990;

Wisconsin Brain Injury 2nd Annual Seminar, "Identifying and Understanding Traumatic Brain Injury," Green Lake, May 31, 1997.


**LOCAL PRESENTATIONS:**

Alaska: Alaska Trial Lawyers Association, Anchorage, August, 1989;

California: "Value of Life: Dismal Science from the Courtroom, "Economics Department Workshop Colloquium, Pomona College, Claremont, April 17, 2006;

Illinois: Chicago North Suburban Bar Association, May, 1988;

Illinois: Chicago Advocates Society, June, 1988;

Illinois: Northwest Chicago Suburban Bar Association, January, 1989;

Illinois: Chicago Public Radio, WBEZ, February, 1989;

Illinois: DuPage County, Bar Association, Chicago, May, 1989;

Illinois: Sangamon County Trial Lawyers Association, Springfield, May, 1989;

Illinois: McHenry County Bar Association, Chicago, May, 1989;

Illinois: Chicago Bar Association Wrongful Death Seminar, Wrongful Death Damages, February, 1990;

Illinois: Chicago Bar Association Torts Seminar, Defense Perspectives on Economic Damages, January 21, 1991;

Illinois: Chicago Bar Association, Wrongful Death Seminar, February 11, 1993;

Illinois: Chicago Bar Association Effective Direct and Cross-Examination of Expert Witnesses - A Demonstration, January 9, 1995;

Illinois: Interstate National Corporation, "Cutting Edge Developments on Economic Damages - Defense Perspectives", Chicago, August 2, 1995;

Illinois: Interstate National Corporation, "Cutting Edge Developments on Economic Damages - Defense Perspectives", Chicago, September 2, 1997;

# SEG

---

Illinois: Cassiday Schade & Gloor, "Catastrophic Damages...They're Back! – Limiting Damages After the Invalidation of Tort Reform," Chicago, November 18, 1998;

Illinois: Law Bulletin Publishing Company, Legal Career Day, Economic Outlook for Lawyer Employment, Chicago, April 13, 2004;

Illinois: Fox News Contributor WFLD TV, October 10 and October 15, 2008; February 25, March 24, April 10, April 20, June 17, August 3, August 26 and October 19, 2009;

Michigan: American Radio Network, WFOX, Detroit, January, 1989;

Michigan: Oakland County Bar Association Negligence Committee, Bloomfield Hills, November 5, 1996;

Ohio: Hamilton County, Bar Association Seminar on Economic Damages, Cincinnati, January 31, 1991.


**TELEVISION/VIDEO PRESENTATIONS**

American Bar Association Tort and Insurance Practice Section Annual Meeting, "Hedonic Damages," San Francisco, CA, August 10, 1992;

American Law Institute-American Bar Association, ALI-ABA Tape, "Hedonic Damages: Litigating the Loss of Enjoyment of Life," The Lawyers' Video Magazine, Vol. III Issue 20, Philadelphia, PA, December, 1991;

CNN: Larry King Live, May 22, 1989.


**PERSONAL BACKGROUND:**

Born November 16, 1946, Rhinelander, Wisconsin;

Graduated Nicolet High School 1964, Milwaukee, Wisconsin;

Honorable Discharge U.S. Army, 1975;

Member of Chicago Board Options Exchange, 1975-1978;

Trustee, Wright Graduate University;

Board Member, Wright Foundation.

**LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN**
**STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021**

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Smith v. Keyport Liquor | Superior Court of New Jersey, Law Division - Monmouth County | MON-L-1412-19 | Hanus & Parsons, Middletown, NJ | 01-21-2021 |
| Tsisyk v. Schneider, et al. | United States District Court, Western District of Oklahoma | 5:14-cv-00386-R | Tawwater Law Firm, Oklahoma City, OK | 01-21-2021 |
| Polk v. Grumet | United States District Court, District of Nevada (Las Vegas) | 2:19-cv-01636-JAD-VCF | Powell Law Firm, Las Vegas, NV | 01-20-2021 |
| Perry/Smith v. Mosaic Residential Inc. | District Court for Harris County, Texas, 127th District Court | 2019-76154 | Arnold & Itkin, Houston, TX | 01-20-2021 |
| Devine v. XPO Logistics Freight, Inc. | United States District Court, Northern District of Illinois, Eastern Division | 18 cv 1264 | Woodruff Johnson & Evans, Aurora, IL | 01-19-2021 |
| Carlini, Sr. v. Atlas Van Lines, et al. | Circuit Court of the Twelfth Judicial Circuit, Will County, Illinois | 15 L 00035B | Burnes & Libman, Chicago, IL | 01-18-2021 |
| Powers/Zak v. Sofocleous, et al. | United States District Court for the Southern District of New York | 1:20-cv-0262S | Hendler Flores Law, Austin, TX | 01-14-2021 |
| Rothman v. Bretschneider | Second Judicial District Court for the State of Nevada, County of Washoe | CV18-02481, Dept No. 15 | Brazelton Law, Reno, NV | 01-13-2021 |
| Oden, et al. v. Kelly, et al. | Twentieth Judicial District, District Court, Rice County, Kansas, Civil Department | 2018-CV-26 | Wagstaff & Cartmell, Kansas City, MO | 01-13-2021 |
| Savino, DO v. Indiana Urgent Care Physician Group, LLC | United States District Court for the Southern District of Indiana, Indianapolis Division | 1:19-cv-2163 | Betz & Blevins, Indianapolis, IN | 01-12-2021 |
| Thompson v. United States of America | United States District Court, Southern District of Illinois | 3:18-CV-1520 | Walker Law Office, Granite City, IL | 01-08-2021 |
| Goss v. Slavin, M.D., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 18 L 4605 | Mossing & Navarre, Chicago, IL | 01-04-2021 |
| James/Phiffer v. Irwin, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2017-L-006939 | Loggans & Associates, Chicago, IL | 12-16-2020 |
| Disantis v. C&W Facility Services, Inc. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2018 L 012739 | Anesi Ozmon, Chicago, IL | 12-15-2020 |
| McCaley/McCalley v. Petrovic, M.D. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2018 L 5925 | Loggans & Associates, Chicago, IL | 12-15-2020 |
| Jeffress v. Trinity Industries, Inc., et al. | Circuit Court of Missouri, Twenty-First Judicial Circuit, St. Louis County, Missouri | 19SL-CC04435 | Langdon & Emison, Lexington, MO | 12-14-2020 |
| Graves v. 3M Company | State of Minnesota, County of Hennepin, District Court, Fourth Judicial District | 27-CV-19-19916 | Schwebel Goetz & Sieben, Minneapolis, MN | 12-14-2020 |
| Mesa v. Schindler Elevator Corporation | District Court, Clark County, Nevada | A-16-745747-C, Dept No. XXXII | Bochanis Law Office, Las Vegas, NV | 12-11-2020 |
| Mills v. Taragon Summit Ridge Lewisville, et al. | County Court at Law No. 1, Dallas County, Texas | CC-19-05948-A | Arnold & Itkin, Houston, TX | 12-10-2020 |
| Burton/Foster v. Bristol-Myers Squibb Company, et al. | United States District Court, Northern District of Florida, Pensacola Division | 3:16-md-2734 | Goldenberg Law, Minneapolis, MN | 12-09-2020 |
| Whitmore v. Spectrum Health Hospitals | State of Michigan in the Circuit Court for the County of Kent | 20-01609-NH | Buchanan & Buchanan, Grand Rapids, MI | 12-02-2020 |
| Fletcher v. Whittington, et al. | United States District Court for the Western District of Louisiana (Shreveport) | 5:18-cv-01153-SMH-KLH | Jacob Litigation, Mechanicsburg, PA | 12-02-2020 |
| Blankenship v. McLaughlin, et al. | United States District Court, Eastern District of Virginia, Alexandria Division | 1:20-cv-00429 | Early Sullivan Wright Gizer & McRae, Los Angeles, CA | 12-01-2020 |
| Marshall v. Henkels & McCoy, Inc., et al. | Superior Court of New Jersey, Law Division - Middlesex County | MID-L-6247-17 | Brach Eichler, Roseland, NJ | 11-20-2020 |
| Newson/West v. Hayes, M.D., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2017 L 003695 | Loggans & Associates, Chicago, IL | 11-19-2020 |
| Tamton v. Advocate Christ Hospital, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 17 L 12380 | Watts Guerra, San Antonio, TX | 11-17-2020 |
| Smith v. Bristol-Myers Squibb Co., et al. | U.S. District Court, Northern District of Florida, Pensacola Division | 3:17-cv00474 | Kirtland & Packard, Redondo Beach, CA | 11-16-2020 |
| Chandler-Tonstad v. Bristol-Myers Squibb Company, et al. | U.S. District Court, Northern District of Florida, Pensacola Division | 3:18-cv-01302 | Kirtland & Packard, Redondo Beach, CA | 11-13-2020 |
| Ray-Rouser vs. Hernandez/Century Towing | District Court, Clark County, Nevada | A-19-788335-C | Powell Law Firm, Las Vegas, NV | 11-12-2020 |
| Hutt, et al. v. Bristol-Myers Squibb Company, et al. | U.S. District Court, Northern District of Florida, Pensacola Division | 3:17-cv-00634-MCR-GRJ | Bernheim Kelley Battista & Bliss, Plymouth, MA | 11-11-2020 |
| Spiekhout v. Pekin Insurance | American Arbitration Association | Z41-102 | Thiesen & Roche, Wheaton, IL | 11-04-2020 |
| Moon v. Steelberg, M.D., et al. | Eighteenth Judicial District, District Court, Sedgwick County, Kansas Civil Department | 2019-CV-2503 | Napoli Shkolnik, Overland Park, KS | 11-03-2020 |
| Errant Gene Therapeutics LLC v. Sloan-Kettering Institute for Cancer Research, et al. | Supreme Court of the State of New York, County of New York | 150856/2017 | McCue Sussmane Zapfel & Cohen, New York, NY | 10-30-2020 |
| Agwomoh v. Village of Dolton, et al | Circuit Court of Cook County, Illinois, Law Division | 18 L 2677 | Motherway & Napleton, Chicago, IL | 10-29-2020 |

**LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN**
**STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021**

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Gamze v. Seibel | Circuit Court of Cook County, Illinois, Law Division | 2017-L-007185 | Patterson Law Firm, Chicago, IL | 10-28-2020 |
| Driscoll v. Castellanos, et al. | U.S. District Court, for the District of New Mexico | 1:19-cv-00527-JCH-KK | Langdon & Emison, Chicago, IL | 10-27-2020 |
| Wood v. PACCAR Inc. et al. | U.S. District Court, Northern District of Iowa, Eastern Division | 2:19-CV-1010 | Crowley & Prill, Burlington, IA | 10-26-2020 |
| Jones Martin v. United States of America | U.S. District Court, District of Nevada | 2:18-cv-02392-GMN-VCF | Powell Law Firm, Las Vegas, NV | 10-21-2020 |
| Martinez vs. James River Insurance Company | U.S. District Court, District of Nevada | 2:19-cv-00603-JAD-NJK | Powell Law Firm, Las Vegas, NV | 10-20-2020 |
| Pym v. Ford Motor Company, et al. | Circuit Court of Missouri, Twenty First Judicial Circuit (St. Louis County) | 19SL-CC00857 | Langdon & Emison, Lexington, MO | 10-14-2020 |
| Rosas/Godinez v. Level Construction, Inc. | Circuit Court of Cook County, Illinois, County Department, Law Division | 2018 L 008625 | Cogan & Power, Chicago, IL | 10-06-2020 |
| Trepeta v. National Consumer Telecom and Utilities Exchange, Inc., et al. | United States District Court, Eastern District of Virginia, Norfolk Division | 2:19-cv-00405-MSJ-LRL | Consumer Litigation Associates, Newport News, VA | 10-05-2020 |
| DeLap v. Boone, M.D., et al. | Circuit Court of 17th Judicial Circuit, Winnebago County, Illinois | 17 L 140 | Cogan & Power, Chicago, IL | 10-02-2020 |
| Fernandez v. Debt Assistance Network, LLC ("DAN") | United States District Court for the Southern District of California | 3:19-cv-01442-MMA-JLB | Kazerouni Law Group, Costa Mesa, CA | 09-30-2020 |
| Lietzow v. Village of Huntley et al | U.S. District Court, Northern District of Illinois, Eastern Division | 17-cv-05291 | Dvorak Law Office, Willowbrook, IL | 09-29-2020 |
| Burlew v. Shop Rite, et al. | Superior Court of New Jersey, Monmouth County | MON-L-4318-18 | Hanna Law Office, Manasquan, NJ | 09-28-2020 |
| Warner v. CCS/Wellpath, et al. | United States District Court, Southern District of Indiana, Indianapolis Division | 1:19-cv-00774-RLY-MJD | Eskew Law Office, Indianapolis, IN | 09-28-2020 |
| Watkins/Green v. United States of America, et al. | United States District Court, Northern District of Illinois, Eastern Division | 18-cv-4142 | Cogan & Power, Chicago, IL | 09-24-2020 |
| Lipps v. Central DuPage Hospital Association | Circuit Court of Cook County, Illinois, County Department - Law Division | 19 L 005371 | Motherway & Napleton, Chicago, IL | 09-21-2020 |
| Dugger v. BNSF Railway Company | District Court of Box Butte County, Nebraska | CI1849 | High & Younes, Omaha, NE | 09-18-2020 |
| Lugg v. Sutton, et al. | United States District Court for the Central District of Illinois, Peoria Division | 18-cv-1412-JES-JEH | Katz Nowinski, Moline, IL | 09-17-2020 |
| Jones v. Ohio/Oklahoma Hearst Television, Inc. | District Court of Oklahoma County, State of Oklahoma | CJ-2017-4274 | Burch George & Germany, Oklahoma City, OK | 09-16-2020 |
| Stambaugh v. Indiana Department of Insurance | State of Indiana, County of Miami in the Miami County Circuit Court | 52C01-2005-CT-000326 | Rothberg Logan & Warsco, Fort Wayne, IN | 09-15-2020 |
| Doe v. First Presbyterian Church of Plymouth, MI | State of Michigan in the Third Circuit Court, Wayne County | 19-000088-NO | Fierberg National Law Group, Traverse City, MI | 09-15-2020 |
| Martinez v. Sorenson, et al. | District Court, Clark County, Nevada | A-19-798555-C, Dept No. 11 | Injury Lawyers Nevada, Las Vegas, NV | 09-14-2020 |
| Dugger v. BNSF Railway Company | District Court of Box Butte County, Nebraska | CI1849 | High & Younes, Omaha, NE | 09-14-2020 |
| Seymour/Mankin v. Lewis & McCorry PC | State of Michigan in the Circuit Court for the County of Kent | 19-08339-NH | Buchanan & Buchanan, Grand Rapids, MI | 09-04-2020 |
| Myers/Saterlee v. Land 'N' Sea Distributing, Inc. | United States District Court, Northern District of Indiana, Fort Wayne Division | 1:18-CV-00187-TLS-SLC | Theisen & Associates, Fort Wayne, IN | 09-01-2020 |
| Davis v. Suburban Hospital, Inc. et al. | Circuit Court for Montgomery County, Maryland | 474907-V | Bekman Marder & Adkins, Baltimore, MD | 09-01-2020 |
| White v. Mejia, et al. | District Court, Clark County, Nevada | A-18-780344-C, Dept No. XXIII | Paternoster Law Group, Las Vegas, NV | 08-31-2020 |
| Sorge v. FCA US, LLC, et al. | Circuit Court of Jackson County, Missouri at Independence | 1816-CV20409, Div 12 | Langdon & Emison, Chicago, IL | 08-27-2020 |
| Lewis v. A.W. Chesterton Company, et al. | State of Indiana, Marion County Superior Court, Civil Division | 49D12-1911-MI-047874 | Maune Raichle Hartley French & Mudd, St. Louis, MO | 08-25-2020 |
| Price v. UBS Financial Services, Inc. | United States District Court, District of New Jersey, Newark Division | 1701882 (WJM-MF) | Henrichsen Law Group, Jacksonville, FL | 08-13-2020 |
| Howe, et al. v. Tri-Energy, et al. | District Court, South Central Judicial District, State of North Dakota, County of Burleigh | 08-2018-CV-02789 | Beattie Law Firm, Des Moines, IA | 08-11-2020 |
| Polanco Urena/Urena-Valverde v. Vitex Extrusion, LLC. | United States District Court, District of New Hampshire | 18-cv-1019-JL | Bagolie Friedman, Jersey City, NJ | 08-06-2020 |
| Heartwise, Inc. v. Nutrigold, Inc. | United States District Court, District of Utah, Central Division | 2:13-cv-00982-DAK | Magleby Cataxinos & Greenwood, Salt Lake City\UT | 07-30-2020 |

## LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
## STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Myers/Sateriee v. Land 'N' Sea Distributing, Inc. | United States District Court, Northern District of Indiana, Fort Wayne Division | 1:18-CV-001B7-TLS-SLC | Theisen & Associates, Fort Wayne, IN | 07-29-2020 |
| Stallworth v. Estate of Stanius | Circuit Court of Cook County, Illinois, County Department - Probate Division | 19 P 008267 | Latimer LeVay Fyock, Chicago#IL | 07-29-2020 |
| Lee v. Dennison, et al. | United States District Court, District of Nevada | 2:19-cv-01332-KJD-DJ | Powell Law Firm, Las Vegas, NV | 07-22-2020 |
| Ghaisar v. United States of America | United States District Court, Eastern District of Virginia, Alexandria Division | 1:19-cv-01224 | Harris Wiltshire & Grannis, Washington, DC | 07-21-2020 |
| Guthmiller v. Ocwen Loan Servicing, LLC. | United States District Court, Western District of Washington at Seattle | 2:19-CV-01585-BJR | Hutchison Law Office, Tacoma, WA | 07-20-2020 |
| Guthmiller v. Ocwen Loan Servicing, LLC. | United States District Court, Western District of Washington at Seattle | 2:19-CV-01585-BJR | Hutchison Law Office, Tacoma, WA | 07-13-2020 |
| Hammit v. Spectrum Paint Company, Inc. | Circuit Court of Washington County, Arkansas, Civil Division | 72CV-19-2491 | Etoch Law Firm, Helena, AR | 07-13-2020 |
| Hauck/Chambers v. Wabash National Corporation | First Judicial District Court, Sante Fe County, New Mexico | D-101-CV-2018-01101 | Langdon & Emison, Lexington, MO | 07-09-2020 |
| Davis v. The Royal Paper Stock Company, Inc. | Common Pleas Court of Clinton County, Ohio, Civil Division | CVH 19000202 | Langdon & Emison, Lexington, MO | 07-07-2020 |
| Victor v. Dickey, et al. | District Court, Clark County, Nevada | A-18-775694-C, Dept. No II | Paternoster Law Group, Las Vegas, NV | 07-06-2020 |
| Slotten, et al. v. Southeastern Emergency Physicians of Memphis, LLP, et al. | Circuit Court of St. Charles County, State of Missouri | 1711-CC01108, Division 1 | Cox & Associates, St. Charles, MO | 07-01-2020 |
| Morgan v. Lakeland Medical Center, et al. | State of Michigan, Circit Court for the County of Kalamazoo | ADMIN-2019-0011-A6 | Buchanan & Buchanan, Grand Rapids, MI | 06-30-2020 |
| Roter v. Muhammad, M.D., et al. | Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois | 17 L 4 | Cogan & Power, Chicago, IL | 06-29-2020 |
| Stewart v. Pinnacle, et al. | Commonwealth of Kentucky, Fayette Circuit Court, Division 8 | 18-CI-03919 | Oldfather Law Firm, Louisville, KY | 06-17-2020 |
| Rhude v. Artis, et al. | District Court, Clark County, Nevada | A-18-785559-C, Dept No. 8 | Powell Law Firm, Las Vegas, NV | 06-16-2020 |
| Penton v. Hubard, et al. | United States District Court for the Eastern District of California, Sacramento Division | 2:11-cv-0051B-TLN-KJN (PC) | Simpson Thacher, Palo Alto, CA | 05-19-2020 |
| Burford, et al. v. Arconic, Inc., et al. | District Court of the 11th Judicial District, Harris County, Texas | 2017-70076-ASB | Cappolino Dodd & Krebs, Cameron, TX | 05-18-2020 |
| Maglera v. Modern Forge Services, LLC., et al. | State of Indiana in the Lake Superior Court Sitting at Gary, Indiana | 45D04-1505-CT-157 | Allen Law Group, Valparaiso, IN | 05-11-2020 |
| Abt v. Ceco Concrete Construction, LLC | Iowa District Court in and For Polk County | LACL 144075 | Duff Law Firm, West Des Moines, IA | 05-07-2020 |
| Winward, et al. v. Bitumar USA, Inc. | Circuit Court for Baltimore City | 24-C-19-003648 OT | Bekman Marder & Adkins, Baltimore, MD | 05-05-2020 |
| Ginsburg v. Furbush, et al. | District Court, Clark County, Nevada | A-18-779016-C, Dept. 10 | Powell Law Firm, Las Vegas, NV | 04-30-2020 |
| Moore v. BNSF Railway Company | Nineteenth Judicial District, District County, Cowley County, Kansas, Civil Department | 2017-CV-000099-W | Hubbell Law Firm, Kansas City, MO | 04-30-2020 |
| Dorn, et al. v. Vivint, Inc. | U.S. District Court, Middle District of Alabama, Northern Division | 2:19-cv-258-MHT0SMD | Pittman Dutton & Hellums, Birmingham, AL | 04-29-2020 |
| Hart v. Southern Illinois Hospital Services, et al. | Circuit Court of the First Judicial Circuit, Jackson County, Illinois | 17-L-59 | Womick Law Firm, Carbondale, IL | 04-27-2020 |
| Bauer v. Parks/Patrick, et al. | Commonwealth of Kentucky, Floyd Circuit Court, Division No. 2 | 16-CI-00829 | Collins Law Office, Salyersville, KY | 04-27-2020 |
| Boster v. Gordon Food Service, Inc. | Commonwealth of Kentucky, Warren Circuit Court, Division No. I | 17-CI-01382 | Stephenson Rife, Shelbyville, IN | 04-20-2020 |
| Jimenez v. Ramasamy, M.D., et al. | Superior Court of New Jersey, Law Division - Hudson County | HUD-L-004047-17 | Lynch Lynch Held Rosenberg, Hasbrouck Heights, NJ | 04-17-2020 |
| Anderson v. Prasad, M.D., et al. | Iowa District Court, Polk County | LACL143411 | Duff Law Firm, West Des Moines, IA | 04-14-2020 |
| Dreamstime.com v. Google, et al. | United States District Court, Northern District of California, San Jose Division | 3:18-CV-01910-WHA | Baker Marquart, Los Angeles, CA | 04-02-2020 |
| Eble v. UH Portage Medical Center, et al. | Court of Common Pleas, Portage County, Ohio | 201BCV00571 | Farrell Law Firm, Brooklyn Hts, Ohio | 03-31-2020 |
| Nelson v. Silver Cross Hospital | Circuit Court of Will County, Illinois, Illinois County Department - Law Division | 17 L 000068 | O'Connor Law Group, Chicago, Il | 03-23-2020 |
| Kendrick v. Union Pacific Railroad Co. | Circuit Court of Jackson County, Missouri at Independence | 1716-CV18714 | Davis Bethune & Jones, Kansas City, MO | 03-19-2020 |
| Hanson v. Mednax, Inc. | Circuit Court of Camden County, Missouri at Camdenton | 17CM-CC00251 | Heartland Group, Kansas City, MO | 03-17-2020 |

## LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
## STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Nhau v. Correa, et al. | District Court, Clark County, Nevada | A-18-780228-C, Dept No. XXII | The 702 Firm, Las Vegas, NV | 03-11-2020 |
| Friel v. Miller, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2015-L-006664 | Snorf Law Office* Chicago\IL | 03-11-2020 |
| Marques v. United Airlines, Inc. | United States District Court, Northern District of Illinois, Eastern Division | 18-cv-4159 | KMA Zuckert, Chicago, IL | 03-10-2020 |
| Figueroa-Rosario v. Wal-Mart Stores, Inc. | District Court, Clark County, Nevada | 2:19-cv-00928-JCM-BNW | Powell Law Firm, Las Vegas, NV | 03-09-2020 |
| Stoch v. John Crane, Inc. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2016 L 009400 | Taxman Pollock Murray & Bekkerman, Chicago, IL | 03-05-2020 |
| Egermeier v. Trinity Industries, Inc. | District Court In and For Nowata County, State of Oklahoma | CJ-2017-37 | Langdon & Emison, Lexington, MO | 03-03-2020 |
| Range III v. Roscoe Properties, Inc. | District Court of Harris County, Texas, 61st Judicial District | 2018-88031 | Arnold & Itkin, Houston, TX | 03-02-2020 |
| Gonzalez v. Lowe's Home Centers, et al. | JAMS Arbitration, Las Vegas, NV | 2:17-cv-02527-APG-PAL | Knepper & Clark, Las Vegas\NV | 02-27-2020 |
| Brown v. Cheesecake Factory Restaurants, Inc. | District Court, Clark County, Nevada | A-17757481-C, Dept No. XXXII | Shook & Stone, Las Vegas, NV | 02-27-2020 |
| Nazario/Guerrero v. Trinity Health Corporation | Circuit Court of Cook County, Illinois, County Department - Law Division | 2017 L 003937 | Dinizulu Law Group, Chicago\IL | 02-27-2020 |
| Huntly v. Global Med Hospice Services, LLC, et al. | Eighth Judicial District Court, Clark County, Nevada | A-16-739023-C, Dept No. XXVIII | Lucherini Blakesley Courtney, Las Vegas\NV | 02-26-2020 |
| Long v. Love's Travel Stops and Country Stores, Inc. | United States District Court, Eastern District of Missouri, Eastern Division | 4:18-CV-01414-SEP | Cox & Associates, St. Charles, MO | 02-24-2020 |
| Young/Artis v. Trinity Industries, Inc., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2018 L 007726 | Langdon & Emison, Lexington, MO | 02-21-2020 |
| Jennings v. Nash, et al. | United States District Court, Western District of Missouri | 6:18-cv-03261-NKL | Ramsey Law Office, St. Louis\MO | 02-20-2020 |
| Squiers v. Fregien | Court of the Twenty-Second Judicial Circuit, McHenry County, Illinois | 16 LA 61 | Franks & Rechenberg, Lake in the Hills, IL | 02-18-2020 |
| Clay v. Kabak, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 L 005380 | Sandman Levy & Petrich, Chicago, IL | 02-17-2020 |
| Shores/Clewell v. The Dupps Company, Inc., et al. | United States District Court for the Central District of Illinois, Rock Island Division | 4:18-cv-04147 | Bradley Law Firm, St. Louis, MO | 02-14-2020 |
| Albright v. Metropolitan Sewer District | Jefferson Circuit Court, Division Thirteen(13) | 18-CI-007082 | Sitlinger & Theiler, Louisville, KY | 02-13-2020 |
| Lopez/Starrett v. Presbyterian Healthcare Services, Inc. | State of New Mexico, County of Santa Fe, First Judicial District Court | D-101-CV-2018-01247 | Salazar Sullivan Jasionowski, Albuquerque, NM | 02-11-2020 |
| Aldred v. Renown Health, et al. | Second Judicial District Court for the State of Nevada, County of Washoe | CV18-01501, Dept. No 7 | Langdon & Emison, Lexington, MO | 02-11-2020 |
| Brock/Gilmedo v. Ching, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 17 L 9756 | Kalogerakos & Associates, Lincolnwood, IL | 02-10-2020 |
| Hennigan v. J.B. Hunt. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2018 L 002962 | Alberts Curran & Eiler, Chicago, IL | 02-07-2020 |
| Barnard v. Toyota Motor Corporation | Circuit Court of Cook County, Illinois, County Department - Law Division | 2016 L 001063 | Komyatte law Firm, Lakewood, CO | 02-06-2020 |
| Slocum v. Kaiser Foundation Health Plan, Inc. | Matter of Arbitration | 15497 | Kapoor Law Offices, Danville, CA | 02-05-2020 |
| Slocum v. Kaiser Foundation Health Plan, Inc. | Matter of Arbitration | 15497 | Kapoor Law Offices, Danville, CA | 01-14-2020 |
| Milburn v. Kansas City Southern Railway Company | Circuit Court of Jackson County, Missouri at Kansas City | 1816-CV11866, Division 8 | Davis Bethune & Jones, Kansas City, MO | 01-14-2020 |
| Barnard v. Toyota Motor Corporation | Circuit Court of Cook County, Illinois, County Department - Law Division | 2016 L 001063 | Komyatte law Firm, Lakewood, CO | 01-14-2020 |
| Marfice v. Finlay, et al. | District Court of the First Judicial District of the State of Idaho, In and For the County of Kootenai | CV28-18-6108 | Ramsden Marfice Ealy & Harris, Coeur d'Alene, ID | 01-14-2020 |
| Kane v. Wal-Mart, Inc. | District Court, Clark County, Nevada | A-18-772835-C, Dept No. 13 | Powell Law Firm, Las Vegas, NV | 01-13-2020 |
| Jado v. Mohamed, et al. | United States District Court, Southern District of Iowa, Eastern Division | 3:18-cv-00091 | Langdon & Emison, Lexington, MO | 01-13-2020 |
| Petite v. Martin | District Court, Clark County, Nevada | A-17-750181-C, Dept No. 2 | Powell Law Firm, Las Vegas\NV | 01-10-2020 |
| Walker v. Desert Palace LLC | District Court, Clark County, Nevada | A-18-771501-C, Dept No. XV | Powell Law Firm, Las Vegas, NV | 01-09-2020 |
| Bauer v. Parks/Patrick, et al. | Commonwealth of Kentucky, Floyd Circuit Court, Division No. 2 | 16-CI-00829 | Collins Law Office, Salyersville, KY | 01-09-2020 |

**LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN**
**STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021**

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Moss v. Grane Transportation Industries, Inc. | Circuit Court of Cook County, Illinois, County Department - Law Division | 18-L-000164 | Leonard Law Group, Chicago, IL | 01-09-2020 |
| Olek, Inc. v. RAR Development Associates, et al. | Superior Court of New Jersey, Law Division - Essex County | ESX-L-1780-15 | Orr Law Office, Newark\NJ | 01-08-2020 |
| Kennedy, et al. v. University of Kentucky Hospital, et al. | Commonwealth of Kentucky, Fayette Circuit Court, Division 7 | 17-CI-02025 | Erdmann & Stumbo, Richmond, KY | 01-06-2020 |
| Van Lente v. Rainbow Early Education Holding, LLC | State of Michigan, Circuit Court for the County of Ottawa | 2019-005857-NO | Eardley Law Office, Rockford, MI | 01-03-2020 |
| Tutt-Crabtree v. Riley Love, et al. | Circuit Court of the Twelfth Judicial Circuit, Will County, Illinois | 17 L 677 | Suber & Associates, Chicago, IL | 12-19-2019 |
| Vilela/Ramos v. Valley Health Systems, LLC., et al. | United States District Court, District of Nevada | 2:16-cv-01503 | Luh & Associates, Las Vegas, NV | 12-19-2019 |
| Rea v. Carvana, LLC. | Marion Superior Court No. 13, State of Indiana | 49D13-1712-CT-047191 | Allen Law Group, Valparaiso, IN | 12-18-2019 |
| Carter v. Szemak, et al. | District Court, Clark County, Nevada | A-18-779043-C, Dept No. XXIV | Powell Law Firm, Las Vegas, NV | 12-17-2019 |
| Rust, II v. Banner Health, et al. | Superior Court of Arizona, In and For the County of Gila | S0400CV201900001 | Lloyd Law Group, Payson, AZ | 12-16-2019 |
| Brady v. Desert Palace, Inc., et al. | District Court, Clark County, Nevada | A-16-746061-C, Dept No. II | Eglet Adams, Las Vegas, NV | 12-10-2019 |
| Butcher v. Dineequity, Inc., et al. | District Court, 192nd Judicial District, Dallas County, Texas | DC-18-05700 | Witherspoon Law Group, Dallas, TX | 12-09-2019 |
| Godines v. Entac, et al. | Eighth Judicial District Court, Clark County, Nevada | A-18-779781-C, Dept. 15 | Powell Law Firm, Las Vegas, NV | 12-05-2019 |
| Hankins v. Ragauskaite, M.D., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 L 2966 | Motherway & Napleton, Chicago\IL | 12-04-2019 |
| Gonzalez v. Christus Santa Rosa Health Care Corporation, et al. | District Court, 131st Judicial District, Bexar County, Texas | 2018-CI-09552 | Maloney Law Group, San Antonio, TX | 12-03-2019 |
| Farris, Jr. v. Clarksdale HMA, LLC., et al. | Circuit Court of Coahoma County, Mississippi | 14-CI-17-0033 | Merkel & Cocke, Clarksdale, MS | 12-02-2019 |
| Kroft v. Viper Trans, Inc. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2016 L 009466 | Allen Law Group, Valparaiso, IN | 11-26-2019 |
| LePretre v. Lend Lease (US) Construction, Inc., et al. | Circuit Court of Cook County, Illinois County Department - Law Division | 13 L 13896 | Anesi Ozmon, Chicago, IL | 11-25-2019 |
| Olson v. Advanced Pain & Anesthesia Consultants, P.C., et al. | Circuit Court of Cook County, Illinois County Department - Law Division | 2016L007019 | Ruder Law, Chicago, IL | 11-25-2019 |
| Mikocewicz v. Kroczek, M.D. | Circuit Court of Cook County, Illinois County Department - Law Division | 16 L 4094 | Xydakis Law Office, Chicago, IL | 11-22-2019 |
| Heywood v. Stanford, et al. | District Court, Clark County, Nevada | A-18-769335-C, Dept No. XXXII | Lerner Injury Attorneys, Las Vegas, NV | 11-14-2019 |
| Davis v. Pace Suburban Bus Division of the Regional Transportation Authority, et al. | Circuit Court of Cook County, Illinois County Department - Law Division | 18 L 693 | Loggans & Associates, Chicago, IL | 11-13-2019 |
| Bennington v. Clapper, et al. | District Court, Clark County, Nevada | A-18-775050-C, Dept No 1 | Powell Law Firm, Las Vegas, NV | 11-13-2019 |
| Whitfield v. St. Anthony Hospital, et al. | District Court for Oklahoma County, State of Oklahoma | CJ-2017-1428 | Tawwater Law Firm, Oklahoma City, OK | 11-07-2019 |
| Darden v. Snow, et al | United States District Court, Northern District of Texas, Fort Worth Division | 4:15-CV-221-A | Washington Law Office, Dallas, TX | 11-06-2019 |
| Narazio/Guerrero v. Trinity Health Corporation | Circuit Court of Cook County, Illinois, County Department - Law Division | 2017 L 003937 | Dinizulu Law Group, Chicago, IL | 11-05-2019 |
| Arijeloye v. Weidner Properties LLC | District Court of Midland County, Texas, 441st District Court | CV54920 | Arnold & Itkin, Houston, TX | 11-04-2019 |
| Clean Culture Laboratories, LLC v. Oz Naturals, LLC | Judicial Arbitration and Mediation Service, Miami Office | 1460005460 | Kronenberger Rosenfeld, San Francisco\CA | 10-30-2019 |
| Michon v. The City of Chicago, et al. | United States District Court, Northern District of Illinois, Eastern Division | 1:16-cv-06104 | Horwitz Law Firm, Chicago\IL | 10-29-2019 |
| Baldassano v. Goetz, et al. | Circuit Court of Cook County, State of Illinois, 1st Municipal District - Law Division | 17 L 63013 | Carponelli Law Offices, Hoffman Estates\IL | 10-29-2019 |
| Shapiro, M.D. et al. v. Northshore University Healthsystem Faculty Practice Associates | Circuit Court of Cook County, Illinois County Department - Law Division | 17 L 3203 | Motherway & Napleton, Chicago, IL | 10-28-2019 |
| Guvenoz v. Target Corporation, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 L 7377 | Motherway & Napleton, Chicago, IL | 10-25-2019 |
| Gaydula v. Roadsafe Traffic Systems, Inc. | Circuit Court of Cook County, Illinois, County Department - Law Division | 17 L 6680 | O'Connor Law Group, Chicago, IL | 10-24-2019 |
| Johnson/O'Leary v. Meeks Transport, LLC | Texas Arbitration Mediation Services | 18-0524-ARB | Grossman Law Offices, Dallas, TX | 10-23-2019 |
| Jimenez v. Ramasamy, M.D., et al. | Superior Court of New Jersey, Law Division - Hudson County | HUD-L-004047-17 | Lynch Lynch Held Rosenberg, Hasbrouck Heights, NJ | 10-17-2019 |

### LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
### STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Melgoza v. Rush University Medical Center | United States District Court, Northern District of Illinois, Eastern Division | 17-cv-6819 | Hahn Loeser & Parks, Chicago, IL | 10-16-2019 |
| Shah v. Insomniac, Inc., et al. | District Court, Clark County, Nevada | A-17-756782-C, Dept 10 | Eglet Adams, Las Vegas, NV | 10-16-2019 |
| Skinner, et al. v. Ethicon, Inc., et al. | United States District Court for the Southern District of West Virginia at Charleston | 2:15-cv-07789 | Carpenter Zuckerman & Rowley, Ojai, CA | 10-15-2019 |
| Spradlin v. Millner, et al. | State of New Mexico, County of Grant, Sixth Judicial District Court | D-608-CV-2013-00141 | Sherman & Sherman, Deming, NM | 10-15-2019 |
| Gaguancela v. BJ's Wholesale Club, Inc. etal | Superior Court of New Jersey, Law Division - Middlesex County | MID-L-3824-16 | Gill & Chamas, Perth Amboy\NJ | 10-09-2019 |
| Greenberg, M.D. v. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College | United States District Court, Eastern District of Louisiana | 19-cv-00137 | Flood Law, Royal Oak, MI | 10-08-2019 |
| Grzybowski v. All Star Fence, et al. | Circuit Court of Cook County, Illinois, County Department, Law Division | 17 L 009196 | Burnes & Libman, Chicago, IL | 10-07-2019 |
| Richards v. Rainford | District Court, Clark County, Nevada | A-18-775304-C, Dept No 4 | Saggese & Associates, Las Vegas, NV | 10-04-2019 |
| Santiago v. Fischer | United States District Court, Eastern District of New York | 09-CV-1383 | Davis Polk & Wardwell, New York, NY | 10-03-2019 |
| Sisk/Golden v. Turner, M.D. | Circuit Court of Lee County Mississippi | CV18-046 (R) (L) | Wais Vogelstein Forman & Offutt, Baltimore, MD | 10-02-2019 |
| Huiett v. Trinity Industries, Inc. | Circuit Court of Lake County, Illinois | 18L 00000741 | Langdon & Emison, Lexington, MO | 10-01-2019 |
| Zalud v. HC Aurora, LLC., et al. | Circuit Court of the Sixteenth Judicial Circuit, Kane County, Illinois | 13 L 570 | Cogan & Power, Chicago, IL | 10-01-2019 |
| Baldassano v. Goetz, et al. | Circuit Court of Cook County, State of Illinois, 1st Municipal District - Law Division | 17 L 63013 | Carponelli Law Offices, Hoffman Estates, IL | 09-30-2019 |
| Jacobson v. Spectrum Health Primary Care Partners | State of Michigan, Circuit Court for the County of Kent | 19-00978-NH | Buchanan & Buchanan, Grand Rapids, MI | 09-30-2019 |
| Ha v. Hong, M.D., et al. | Supreme Court of the State of New York, County of New York | 805177/2014 | Lynch Lynch Held Rosenberg, Hasbrouck Heights\NJ | 09-27-2019 |
| Pawson v. Susan Bennett, LLC | State of Illinois, Circuit Court of the Twenty-Third Judicial Circuit, DeKalb County, Illinois | 2016 L 46 | Burns Cronauer & Brown, Sycamore, IL | 09-26-2019 |
| Gallagher v. Midwest Orthopaedic Center, S.C., et al. | Circuit Court of the Tenth Judicial Circuit of Illinois, Peoria County | 17 L 6 | McNabola Law Group, Chicago, IL | 09-26-2019 |
| Banks v. Diaz, et al. | District Court, Clark County, Nevada | A-18-773248-C | Powell Law Firm, Las Vegas, NV | 09-26-2019 |
| Denniston v. BNSF Railway Company | Iowa District Court for Polk County | LACL134839 | Atwood Holsten Brown Deaver & Spier, Lincoln\NE | 09-25-2019 |
| Mahaffey v. Union Pacific Railroad | Circuit Court of Ouachita County, Arkansas | 52CV-17-186 | Hubbell Law Firm, Kansas City, MO | 09-19-2019 |
| Lavelle III v. Illinois Bell Telephone Company | State of Illinois, Human Rights Commission | 2007CN3494 | McGrail & Associates, Loves Park\IL | 09-18-2019 |
| Smithers v. Phillips, M.D. | Commonwealth of Kentucky, Fayette Circuit Court, Division 7 | 16-CI-3702 | Keith Law Office, Lexington, KY | 09-18-2019 |
| Winfield v. Metropolitan Hospital, et al. | State of Michigan, Circuit Court for the County of Kent | 18-06748-NH | Buchanan & Buchanan, Grand Rapids, MI | 09-16-2019 |
| Gallagher v. Midwest Orthopaedic Center, S.C., et al. | Circuit Court of the Tenth Judicial Circuit of Illinois, Peoria County | 17 L 6 | McNabola Law Group, Chicago, IL | 09-13-2019 |
| Butcher v. Dineequity, Inc., et al. | District Court, 192nd Judicial District, Dallas County, Texas | DC-18-05700 | Witherspoon Law Group, Dallas, TX | 09-12-2019 |
| Messeri v. University of Colorado, Boulder | United States District Court for the District of Colorado | 18-CV-02658-WJM-SKC | Savela Law Firm, Boulder, CO | 09-11-2019 |
| Jones Farms v. Helena Chemical Company | State of Indiana, County of Harrison, Harrison Circuit Court | 31C01-1512-PL-28 | Moore & Malone, Owensboro\KY | 09-09-2019 |
| Huff, et al. v. AMR Corporation, et al. | Court of Common Pleas, Mahoning County, Ohio | 2017 CV 02343 | Engler Law Firm, Warren, OH | 09-07-2019 |
| Hudnut v. Adventist Midwest Health, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2017-L-003732 | McNabola & Associates, Chicago\IL | 09-06-2019 |
| Ludwig v. United States of America | United States District Court, Northern District of Illinois, Eastern Division | 17 C 2943 | Kralovec Jambois & Schwartz, Chicago, IL | 09-04-2019 |
| McNamara v. ICO Polymers North America, Inc., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 14-L-000819 | Hendler Flores Law, Austin, TX | 08-29-2019 |
| Alonzo v. Kranzler, M.D., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 L 3895 | Motherway & Napleton, Chicago, IL | 08-26-2019 |

## LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
## STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Koontz v. First Transit, Inc. | Superior Court of the State of Arizona, In and For the County of Maricopa | CV2017-090635 | McGovern Law Offices, Phoenix, AZ | 08-22-2019 |
| Love, M.D. v. Medical College of Wisconsin, Inc. | United States District Court, Eastern District of Wisconsin | 2:15-cv-00650-LA | Ruberry Stalmack & Garvey, Chicago, IL | 08-22-2019 |
| Gibson v. Pirelli Tire, et al. | Circuit Court of Benton County, Arkansas | 04CV-17-2766 | Langdon & Emison, Lexington, MO | 08-21-2019 |
| Brook, M.D., Ph.D. v. Peconic Bay Medical Center, et al. | Supreme Court of the State of New York, County of New York | 650921/2012 | Pryor Cashman, New York, NY | 08-20-2019 |
| Mangaras v. Geico Casualty Company | Circuit Court of the Twelfth Judicial Circuit, Will County, Illinois | 17 L 001010 | Allen Law Group, Valparaiso, IN | 08-19-2019 |
| Libby v. Medina, et al. | District Court, Clark County, Nevada | A-17-766067-C, Dept No. XXIV | Powell Law Firm, Las Vegas, NV | 08-16-2019 |
| Bryant v. Waukegan Illinois Hospital Company, et al. | 19th Judicial Circuit Court, Lake County, IL | 18 L 0000611 | Geraci Law, Chicago, IL | 08-16-2019 |
| Ferry v. Shapero, DPM, et al. | Superior Court of New Jersey, Law Division - Middlesex County | MID-L-7150-16 | Quinn Law Office, Red Bank, NJ | 08-14-2019 |
| Williams, et al. v. Chicago South Shore & South Bend Railroad, et al. | State of Indiana, County of Lake, Lake Circuit Court | 45C01-1308-CT-124 | Allen Law Group, Valparaiso, IN | 08-12-2019 |
| Wheaton College v. John | Circuit Court for the Eighteenth Judicial Circuit, DuPage County, Illinois | 2013 L 1179 | Stilp Business Law* Chicago, Il | 08-07-2019 |
| Watkins/Green v. United States of America | United States District Court, Northern District of Illinois, Eastern Division | 18 C 4142 | Cogan & Power, Chicago, IL | 07-19-2019 |
| Tutt-Crabtree v. Riley Love, et al. | Circuit Court of the Twelfth Judicial Circuit, Will County, Illinois | 17 L 677 | Suber & Associates, Chicago, IL | 07-19-2019 |
| Bangham v. Cabell, et al. | Circuit Court of Kanawha County, West Virginia | 18-C-640 | Cumbo Law Office, Inez, KY | 07-18-2019 |
| Gerbasi v. Chicago Transit Authority | Circuit Court of Cook County, Illinois, County Department - Law Division | 2016-L-8484 | Grant Law* Chicago, IL | 07-17-2019 |
| Park v. Petranker | Superior Court of New Jersey, Law Division - Bergen County | BER-L-262-18 | Lee Law Firm, Hackensack, NJ | 07-15-2019 |
| Jordan/Lee v. Silver Cross Hospital and Medical Centers, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2015 L 002103 | Cogan & Power, Chicago, IL | 07-15-2019 |
| Fenner v. Toyota Motor Corporation, et al. | District Court, Clark County, Nevada | A-17-757335-C, Dept No. 27 | Olson Cannon Gormley Angulo & Stoberski, Las Vegas, NV | 07-12-2019 |
| Salazar v. ABC Automotive Investments, LLC. | United States District Court, District of Nevada | 2:19-cv-00039-RFB-PAL | Haines & Krieger, Henderson, NV | 07-11-2019 |
| Handhal-Hasan v. Lee Canyon Ski Lifts, Inc., et al. | District Court, Clark County, Nevada | A-17-750487-C, Dept No. XIII | Simon Law, Las Vegas, NV | 07-11-2019 |
| Hankins v. Ragauskaite, M.D., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 L 2966 | Motherway & Napleton, Chicago, IL | 07-09-2019 |
| Neufeld v. Capital Bank N.A. | United States District Court, Eastern District of California | 1:18-cv-01012-LJO-SKO | Kazerouni Law Group, Arroyo Grande, CA | 07-08-2019 |
| Juve v. Premier Tech Technologies Ltd, et al. | United States District Court, District of Minnesota | 17-cv-4545 (DWF/LIB) | Goldenberg Law, Minneapolis, MN | 07-08-2019 |
| Ilcrysryn v. Southwest Airlines Co., et al. | Superior Cour of California, County of Alameda | RG15766954 | Balaban & Spielberger, Los Angeles\CA | 07-03-2019 |
| Huff, et al. v. AMR Corporation, et al. | Court of Common Pleas, Mahoning County, Ohio | 2017 CV 02343 | Engler Law Firm, Warren, OH | 07-01-2019 |
| Wade v. ArcelorMittal, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 L 11769 | Rubino Ruman Crosmer & Polen, Dyer, IN | 07-01-2019 |
| Dunlap v. ArcelorMittal, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 L 11548 | Motherway & Napleton, Chicago, IL | 07-01-2019 |
| Allen v. Cumberland County, et al. | United States District Court for the District of New Jersey, Camden Vicinage | 1:15-cv-05273 (JBS/AMD) | Benedetto Law Office, Philadelphia, PA | 06-27-2019 |
| Dent v. Gewerth, et al. | District Court, Clark County, Nevada | A-17-751695-C, Dept No. XIV | Powell Law Firm, Las Vegas, NV | 06-26-2019 |
| Hudnut v. Adventist Midwest Health, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2017-L-003732 | McNabola & Associates, Chicago, IL | 06-24-2019 |
| Cocuzza v. Vecchione, D.D.S., et al. | Superior Court of New Jersey, Law Division - Morris County | MRS-L-1983-16 | Lynch Lynch Held Rosenberg, Hasbrouck Heights, NJ | 06-20-2019 |
| Charette v. Vecchione, D.D.S., et al. | Superior Court of New Jersey, Law Division - Morris County | MRS-L-2497-17 | Lynch Lynch Held Rosenberg, Hasbrouck Heights, NJ | 06-20-2019 |
| Steinberg v. Vecchione, D.D.S., et al. | Superior Court of New Jersey, Law Division - Morris County | MRS-L-2032-16 | Lynch Lynch Held Rosenberg, Hasbrouck Heights, NJ | 06-20-2019 |

## LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
## STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|-----------|-------|-------------|----------|------|
| Davino v. Vecchione, D.D.S., et al | Superior Court of New Jersey, Law Division - Morris County | MRS0L-1984-16 | Lynch Lynch Held Rosenberg, Hasbrouck Heights, NJ | 06-20-2019 |
| Nieswand v. Vecchione, D.D.S., et al | Superior Court of New Jersey, Law Division - Morris County | MRS-L-1981-16 | Lynch Lynch Held Rosenberg, Hasbrouck Heights, NJ | 06-20-2019 |
| Boyle v. Vecchione, D.D.S., et al. | Superior Court of New Jersey, Law Division - Morris County | MRS-L-1878-16 | Lynch Lynch Held Rosenberg, Hasbrouck Heights, NJ | 06-20-2019 |
| Doyle v. Vecchione, D.D.S., et al. | Superior Court of New Jersey, Law Division - Morris County | MRS-L-1868-16 | Lynch Lynch Held Rosenberg, Hasbrouck Heights, NJ | 06-20-2019 |
| Jarolem v. Vecchione, D.D.S., et al. | Superior Court of New Jersey, Law Division - Morris County | MRS-L-1867-16 | Lynch Lynch Held Rosenberg, Hasbrouck Heights, NJ | 06-20-2019 |
| Wernau v. Vecchione, D.D.S., et al. | Superior Court of New Jersey, Law Division - Morris County | MRS-L-1856-16 | Lynch Lynch Held Rosenberg, Hasbrouck Heights, NJ | 06-20-2019 |
| Benfield v. Vecchione, D.D.S., et al. | Superior Court of New Jersey, Law Division - Morris County | MRS-L-1862-16 | Lynch Lynch Held Rosenberg, Hasbrouck Heights, NJ | 06-20-2019 |
| DelGrosso v. Vecchione, D.D.S., et al. | Superior Court of New Jersey, Law Division - Morris County | MRS-L-1393-16 | Lynch Lynch Held Rosenberg, Hasbrouck Heights, NJ | 06-20-2019 |
| Baglieri v. New Jersey Manufacturers Insurance, et al. | Superior Court of New Jersey, Law Division - Bergen County | BER-L-3927-17 | Seigel Law, Ridgewood, NJ | 06-17-2019 |
| Mars v. BNSF Railroad Company | District Court of Oklahoma County, State of Oklahoma | CJ-2017-6097 | Hubbell Law Firm, Kansas City, MO | 06-17-2019 |
| C.R. England, Inc., et al. v Abdi | Northern District of Illinois, Western Division | 17 CV 50152 | McNeely Stephenson* Shelbyville, IN | 06-14-2019 |
| Huff, et al. v. AMR Corporation, et al. | Court of Common Pleas, Mahoning County, Ohio | 2017 CV 02343 | Engler Law Firm, Warren, OH | 06-14-2019 |
| Boyd v. Autozone West, LLC | District Court, Clark County, Nevada | A-17-765517-C, Dept. No II | Saggese & Associates, Las Vegas, NV | 06-11-2019 |
| Morris v. Equifax Information Services, LLC, et al. | United States District Court, District of Nevada | 2:18-cv-01829-JAD-GWF | Haines & Krieger, Henderson, NV | 06-07-2019 |
| Ruiz v. Diaz, M.D., et al. | Superior Court of New Jersey, Law Division - Hudson County | HUD-L-1177-17 | Gill & Chamas, Howell, NJ | 06-06-2019 |
| Cramer v. Equifax Information Services, LLC. | United States District Court, Eastern District of Missouri, Eastern Division | 4:18-cv-1078 | Goldsmith Law Office, Rocky River, OH | 06-04-2019 |
| Caruso v. PBR Rock, LLC., et al. | District Court, Clark County, Nevada | A-17-776385-C, Dept No. II | Close Law Group, Henderson, NV | 06-03-2019 |
| Gross v. FCA US LLC, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2016-L-007623 | Langdon & Emison, Lexington, MO | 05-30-2019 |
| Mejia v. Valley Health Holdings, LLC., et al. | District Court, Clark County, Nevada | A-17-751096-C, Dept No. XVII | Paternoster Law Group, Las Vegas, NV | 05-28-2019 |
| Lemperle v. Avis Rent a Car Systems, LLC., et al. | United States District Court, District of Nevada | 2:18-cv-00202-JCM-CWH | Powell Law Firm, Las Vegas, NV | 05-28-2019 |
| Landess v. DeBiparshad, M.D., et al. | District Court, Clark County, Nevada | A-18-776895-C, Dept No. 24 | Howard & Howard, Las Vegas, NV | 05-24-2019 |
| Stratman v. Farris, et al. | District Court, Clark County, Nevada | A-18-767754-C, Dept No. 27 | Powell Law Firm, Las Vegas, NV | 05-23-2019 |
| Schwab v. Ford Motor Company | United States District Court, District of Delaware | 1:18-cv-00184 RGA | Lanier Law Firm, Houston, TX | 05-22-2019 |
| Salomone v. Advocate Health and Hospitals Corporation | Circuit Court of Cook County, Illinois, County Department - Law Division | 2016 L 005457 | Slavin & Slavin, Chicago, IL | 05-21-2019 |
| Gulda v. Brown | Circuit Court of St. Charles County, Missouri, Circuit Judge Division | 1711-CC00811 | Bradley Law, Louisiana, MO | 05-20-2019 |
| Hinshaw/Johnson v. OSF Healthcare System, et al. | Eleventh Judicial Circuit Court of Livingston County, Illinois, Law Division | 16 L 11 | McNabola & Associates, Chicago, IL | 05-20-2019 |
| Moore v. Joe Tex, Inc., et al. | District Court, 62nd Judicial District, Franklin County, Texas | 12363 | Grossman Law Offices, Dallas, TX | 05-17-2019 |
| Arvidson v. Buchar | Superior Court of the Virgin Islands, Division of St. Thomas & St. John | 410 / 2016 | Kreamer Law Office, Naperville, IL | 05-16-2019 |
| Flores, et al. v. Ramirez, et al. | District Court of Harris County, Texas, 189th Judicial District | 2017-74379 | Grossman Law Offices, Dallas, TX | 05-14-2019 |
| Leglec v. Playcore Inc., et al. | Superior Court of New Jersey, Law Division - Middlesex County | MID-L-6217-17 | Gill & Chamas, Perth Amboy, NJ | 05-13-2019 |

## LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
## STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Andrades v. Menard, Inc. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2017 L 000671 | Argionis & Associates, Chicago, IL | 05-03-2019 |
| Errant Gene Therapeutics LLC v. Sloan-Kettering Institute for Cancer Research, et al. | Supreme Court of the State of New York, County of New York | 150856/2017 | McCue Sussmane Zapfel Cohen & Youbi, New York, NJ | 05-01-2019 |
| Birnbaum v. CentraState Medical Center, et al. | Superior Court of New Jersey, Law Division, Monmouth County | MON-L-4723-14 | Lomurro Law, Freehold, NJ | 04-30-2019 |
| Schweer v. Diaz, et al. | District Court, Clark County, Nevada | A-17-766063-C, Dept no. 27 | Powell Law Firm, Las Vegas, NV | 04-26-2019 |
| Rivo USA Co., LTD. V. Arro Corporation | United States District Court, Northern District of Illinois, Eastern Division | 17cv08513-VMK-JC | Holmes Law Group, Chicago, IL | 04-26-2019 |
| Doe v. Colgate University | United States District Court, Northern District of New York | 5:17-cv-1298 (FJS/ATB) | Nesenoff & Miltenberg, New York, NY | 04-25-2019 |
| Mrkalj v. Swedish Convenant Hospital, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 L 7992 | McNabola & Associates, Chicago, IL | 04-23-2019 |
| Pappas v. Ford Motor Company, et al. | Superior Court of New Jersey, Law Division, Middlesex County | L-5811-16 | Guajardo & Marks, Dallas, TX | 04-23-2019 |
| Zavala v. Richardson, et al. | District Court, Clark County, Nevada | A-17-749760-C, Dept No. II | Powell Law Firm, Las Vegas, NV | 04-17-2019 |
| McFarland v. Rinella, M.D. | Circuit Court of Will County, Illinois | 16 L 988 | Motherway & Napleton, Chicago, IL | 04-15-2019 |
| Swiech v. Birhanu, M.D., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 L 004271 | Power Rogers & Smith, Chicago, IL | 04-15-2019 |
| Doe, et al. v. Macomb Community Unit School District No. 185, et al. | United States District Court for the Central District of Illinois, Rock Island Division | 1:18-cv-01072-SLD-JEH | Fierberg National Law Group, Traverse City, MI | 04-05-2019 |
| Simon v. Riverside Health System, Inc., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 L 003077 | Motherway & Napleton, Chicago, IL | 04-05-2019 |
| Barajas v. Delnor Community Hospital, et al. | Circuit Court of the Sixteenth Judicial Circuit, Kane County, Illinois | 13 L 40 | Cogan & Power, Chicago\IL | 04-04-2019 |
| Gaguancela v. BJ's Wholesale Club, Inc. etal | Superior Court of New Jersey, Law Division - Middlesex County | MID-L-3824-16 | Gill & Chamas, Perth Amboy, NJ | 04-03-2019 |
| Gildein v. Birky | State of Indiana, Porter County Superior Court | 64D01-CT-006021 | Martz & Lucas, Valparaiso, IN | 04-02-2019 |
| Walsh/Shane v. Koren, M.D., et al. | Superior Court of New Jersey, Law Division: Camden County | CAM-L-1617-16 | Lynch Lynch Held Rosenberg, Hasbrouck Heights, NJ | 04-01-2019 |
| Das v. Kenny Construction Company, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 14 L 13186 | Morici Figlioli & Associates, Chicago, IL | 03-28-2019 |
| Ottens v. Starcon International, Inc. | Circuit Court of Cook County, Illinois, County Department - Law Division | 17 L 3697 | Shannon Law Group, Woodridge, IL | 03-27-2019 |
| Adams v. May Trucking Co., et al. | Circuit Court of the First Judicial Circuit, Williamson County, Illinois | 17-L-33 | Langdon & Emison, Lexington, MO | 03-26-2019 |
| TSR Landmark, LLC., et al. v. International Plaza Owner's Association | Circuit Court of the Eighteenth Judicial Circuit, DuPage County, Illinois | 2015 L 000569 | Kreamer Law Office, Naperville, IL | 03-26-2019 |
| Xane v. Hill, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 11 L 10329 | Loggans & Associates, Chicago, IL | 03-25-2019 |
| Cello v. American Family Insurance Company | State of Illinois, Uninsured Motorist Action | NA | Ryan Ryan & Landa, Chicago, IL | 03-21-2019 |
| Jones Farms v. Helena Chemical Company | State of Indiana, County of Harrison, Harrison Circuit Court | 31C01-1512-PL-28 | Moore & Malone, Owensboro, KY | 03-20-2019 |
| Gerbesi v. Chicago Transit Authority | Circuit Court of Cook County, Illinois, County Department - Law Division | 2016-L-8484 | Grant Law, Chicago, IL | 03-20-2019 |
| Saenz-Quintana v. Mora-Diaz, et al. | District Court, Clark County, Nevada | A-17-760888-C, Dept No. 12 | Powell Law Firm, Las Vegas, NV | 03-19-2019 |
| Gulick v. Schreiber, Costel & Bryant PLLC | Jefferson Circuit Court, Division Six | 15-CI-004456 | Oldfather Law Firm, Louisville, KY | 03-19-2019 |
| Walther v. Majeed, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2015 L 10267 | Truglio & Associates, Chicago, IL | 03-18-2019 |
| Black v. Grant County Public Utility District | United States District Court, Eastern District of Washington | 2:17-cv-00365-RMP | Earl & Earl, Boise, ID | 03-13-2019 |
| Longobardi v. Kaskel, M.D., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 L 10339 | Cogan & Power, Chicago, IL | 03-13-2019 |
| Wise v. Red Star Expedite, Inc., et al. | Commonwealth of Kentucky, Shelby Circuit Court | 16-CI-00321 | Sidlinger & Theiler, Louisville, KY | 03-12-2019 |
| Petite v. Martin | District Court, Clark County, Nevada | A-17-750181-C | Powell Law Firm, Las Vegas, NV | 03-11-2019 |
| Hospedales v. DuPage Medical Group, LTD | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 L 9158 | Lane & Lane, Chicago, IL | 03-11-2019 |

## LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
## STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Ayala/Muniz v. Lemons, et al. | United States District Court, District of Nevada | 2:18-CV-00511-GMN-PAL | Powell Law Firm, Las Vegas, NV | 03-08-2019 |
| Rollo v. Flores, et al. | District Court, Clark County, Nevada | A-17-749017-C, Dept No. VII | Ladah Law firm, Las Vegas, NV | 03-05-2019 |
| Warner v. Sheridan Agatite, LLC., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2016 L 010989 | McNabola & Associates, Chicago, IL | 03-05-2019 |
| Maher v. Hackensack University Medical Center | Superior Court of New Jersey, Law Division - Bergen County | BER-L-001350-16 | Shaw Law Office, Ft. Lee\NJ | 03-04-2019 |
| Obremski v. Advocate Christ Medical Center, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2016-L-000627 | Konicek & Dillon, Geneva, IL | 03-01-2019 |
| Varebrook v. Tisdall, M.D., et al. | District Court of Bexar County, Texas, 225th Judicial District | 2017CI06007 | Krebs Law Office, Austin\TX | 02-28-2019 |
| Ilahi v. Sebert Landscaping Company | Circuit Court of the Cook County Judicial Circuit, Cook County, Illinois | 16 L 4742 | Salvi & Maher, Waukegan, IL | 02-27-2019 |
| Gilmore v. Stamford Hospital, et al. | Superior Court J.D. of Fairfield at Bridgeport | FBT-CV16-6058665-S | Skiber Law Office, Norwalk, CT | 02-27-2019 |
| "Andy" v. Big Brothers Big Sister of America, Inc. | Third Judicial District Court, Salt Lake County, State of Utah | 170901382 | Marsh Law Firm, White Plains, NY | 02-25-2019 |
| Curry v. Brown, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 L 009946 | Wolfman Law Office, Chicago, IL | 02-21-2019 |
| Lilley/Zeches v. Ek Lian Tan, et al. | District Court, Clark County, Nevada | A-17-749596-C, Dept No. XVIII | Powell Law Firm, Las Vegas, NV | 02-20-2019 |
| Santiago v. Fischer | United States District Court, Eastern District of New York | 09-CV-13B3 | Davis Polk & Wardwell, New York, NY | 01-30-2019 |
| Strbac v. CT Mechanical, LLC, et al. | Circuit Court of Cook County, Illinois County Department - Law Division | 16 L 7256 | Curcio Law Offices, Chicago, IL | 01-30-2019 |
| Guzman/Jaramillo-Guzman v. Estate of Michael Don Tavis Dennis, et al. | District Court, Clark County, Nevada | A-16-748252-C, Dept No. VII | Bighorn Law, Las Vegas, NV | 01-28-2019 |
| Gregory v. Lexington Center Corporation | Commonwealth of Kentucky, Fayette Circuit Court, Division 4 | 14-CI-3891 | O'Bryan Brown & Toner, Louisville, KY | 01-28-2019 |
| Cooley v. Power Construction Company, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 15 L 008626 | O'Reilly Law Office, Chicago, IL | 01-25-2019 |
| Cochran, et al. v. Nevada Property 1, et al. | District Court, Clark County, Nevada | A687601, Dept No. 24 | Eglet Prince, Las Vegas, NV | 01-24-2019 |
| Lambert v. Bliss, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 L 001043 | Conway & Mrowiec, Chicago, IL | 01-22-2019 |
| Zorick v. ASV, Inc., et al. | State of Indiana, County of Porter, Porter Superior Court, Sitting at Valparaiso, Indiana | 64D01-1705-CT-004454 | Allen Law Group, Valparaiso, IN | 01-21-2019 |
| Heatherly, III v. Integrated Airline Services, Inc., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 17 L 4549 | Shannon Law Group, Woodridge, IL | 01-17-2019 |
| Abdalla, et al. v. Jewish Hospital, et al. | Commonwealth of Kentucky, 30th Judicial Circuit Court, Jefferson Circuit Court, Division Nine (9) | 16-CI-02929 | Morris & Player, Louisville, KY | 01-17-2019 |
| Levi/Mitchell v. Thomas | District Court, 17th Judicial District, Tarrant County, Texas | 017-287211-16 | Washington Law Office, Dallas, TX | 01-16-2019 |
| Williams v. Kumho Tire Co. Inc., et al | Circuit Court for Jefferson County, Arkansas | CV-2014-360-2 | Langdon & Emison, Lexington, MO | 01-14-2019 |
| Kieckhaefer v. Roscoe Township | State of Illinois, Circuit Court of the 17th Judicial Circuit, Winnebago County | 14 L 194 | Klein Stoddard Buck Lewis, Sycamore, IL | 01-11-2019 |
| Valencia v. U.S. Bank National Association | United States District Court for the Southern District of Iowa, Central Division | 4:18-cv-00056 | Duff Law Firm, West Des Moines, IA | 01-10-2019 |
| Martin v. Robertson | State of Indiana, County of Lake, Lake Superior Court, Sitting at Hammond, Indiana | 45D01-1803-CT-00060 | Hilbrich Law Office, Highland, IN | 01-09-2019 |
| Johnson v. Toyota Motor Corporation, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 L 9558 | Langdon & Emison, Lexington, MO | 01-09-2019 |
| Capuano v. Roshi, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 15 L 12727 | Motherway & Napleton, Chicago, IL | 01-08-2019 |
| Isaaq v. The Village3 of Niles, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 L 004710 | Nemeroff Law Office, Chicago, IL | 01-08-2019 |
| Carter v. Chelich, D.O. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2017 L 004046 | Cogan & Power, Chicago, IL | 01-07-2019 |
| Parmaksiz v. SVAP Hoffman Plaza, LP, et al. | Circuit Court of Cook County, Illinois, County Department - Chancery Division | 2016 CH 014315 | Paris Law Firm, Chicago, IL | 01-04-2019 |
| Ledet v. Capanna, M.D. | District Court, Clark County, Nevada | A-15-712091-C, Dept No. XXI | Eglet Prince, Las Vegas, NV | 01-04-2019 |
| Cortez v. FedEx Ground Package System, Inc. | 44th Judicial District Court, Dallas County, Texas | DC-17-06463 | Grossman Law Offices, Dallas, TX | 12-21-2018 |
| Benavides, Jr. v. Holland Community Hospital, et al. | State of Michigan in the Circuit Court for the County of Ottawa | 17-5138-NH | Buchanan & Buchanan, Grand Rapids, MI | 12-17-2018 |

**LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN**
**STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021**

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Ripley v. Shankar, M.D., et al. | Circuit Court of the First Judicial Circuit, Jackson County, Illinois | 16-L-78 | Womick Law Firm, Carbondale, IL | 12-13-2018 |
| Ibach v. Cho, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 14 L 10446 | McNabola & Associates, Chicago, IL | 12-12-2018 |
| Vesely v. Walsh Construction Company of Illinois, Inc. | Circuit Court of Cook County, Illinois, County Department - Law Division | 15 L 004250 | Morici Figlioli & Associates, Chicago, IL | 12-12-2018 |
| Gallagher v. Midwest Orthopaedic Center, S.C., et al. | Circuit Court of the Tenth Judicial Circuit of Illinois, Peoria County | 17 L 6 | McNabola Law Group, Chicago, IL | 12-11-2018 |
| Lisboa v. Stocker III, et al. | Circuit Court for Jackson County, Missouri at Independence | 1816-CV00467 | Langdon & Emison, Lexington, MO | 12-10-2018 |
| Torres, et al. v. Brown, et al. | United States District Court, District of Arizona | 3:17-cv-08217 PCT-JAT | Lerner Injury Attyorney, Las Vegas, NV | 12-10-2018 |
| Roberts v. CCRP/AG BOFA Plaza Owner, LLC, et al. | District Court, Clark County, NV | A-15-713245-C, Dept No. VII | Maier Gutierrez & Associates, Las Vegas, NV | 12-07-2018 |
| Zdravich v. Agave Azul Authentic Mexican Restaurant 3 LLC | State of Indiana, County of Tippecanoe, Tippecanoe Circuit Court | 79C01-170B-CT-000142 | Oldfather Law Firm, Louisville, KY | 12-07-2018 |
| Bell v. Zarnke, M.D., et al. | Circuit Court of the 17th Judicial Circuit, Winebago County, Illinois | 15 L 0205 | Ryan Ryan & Landa, Chicago, IL | 12-06-2018 |
| Watson/Ransom/Jones v. Texas-Cola Leasing Co., et al. | District Court, Tarrant County, TX | 352-290806-17 | Washington Law Office, Dallas\TX | 12-05-2018 |
| Watson/Ransom/Jones v. Texas-Cola Leasing Co., et al. | District Court, Tarrant County, TX | 352-290806-17 | Washington Law Office, Dallas, TX | 12-04-2018 |
| Jones/Lofton v. Sheykholeslami, M.D., et al. | State of Illinois, Circuit Court of the 17th Judicial Circuit, County of Winnebago | 2013-L-69 | Taxman Pollock Murray & Bekkerman, Chicago, IL | 12-04-2018 |
| Cardinali, et al. v. Plusfour, Inc., et al. | United States District Court, District of Nevada | 2:16-cv-02046-JAD-NJK | Haines & Krieger, Henderson, NV | 12-03-2018 |
| Adams v. University of Indianapolis | United States District Court for the Southern District of Indiana, Indianapolis Division | 1:17-CV-02101-WTL-MJD | Betz & Blevins, Indianapolis, IN | 11-30-2018 |
| Hespe v. The City of Chicago, et al. | United States District Court for the Northern District of Illinois, Eastern Division | 13 C 7998 | Herbert Law Firm, Chicago, IL | 11-29-2018 |
| Meeks v. Dissanayake, M.D. | Circuit Court of Cook County, Illinois County Department - Law Division | 15 L 11535 | Loggans & Associates, Chicago\IL | 11-29-2018 |
| Thoroughman v. Wisconsin Central, Ltd. | United States District Court, Western District of Wisconsin | 15-CV-74 | Lipkin & Higgins, Chicago, IL | 11-28-2018 |
| Ruettiger v. Lincoln-Way Area Special Education District 843, et al. | Circuit Court of the Twelfth Judicial Circuit, Will County, Illinois | 16 L 0539 | Allen Law Group, Valparaiso\IN | 11-28-2018 |
| Adair/Veytsman v. State Farm Mutual Automobile Insurance Company, et al. | United States District Court, District of Nevada | 2:17-cv-00421-RFB-CWH | Powell Law Firm, Las Vegas, NV | 11-27-2018 |
| E&I Holdings, Inc. v. Coral Springs Eggs and I, LLC, et al. | United States District Court for the District of Colorado | 17-cv-02377-WJM-STV | NOVA IP Law, Gainesville, VA | 11-21-2018 |
| King v. Desert Palace, Inc., et al. | District Court, Clark County, Nevada | A-13-691609-C, Dept No. XIV | Gentile Cristalli Miller Armeni Savarese, Las Vegas\NV | 11-21-2018 |
| King v. Desert Palace, Inc., et al. | District Court, Clark County, Nevada | A-13-691609-C, Dept No. XIV | Gentile Cristalli Miller Armeni Savarese, Las Vegas\NV | 11-20-2018 |
| Wise v. Red Star Expedite, Inc., et al. | Commonwealth of Kentucky, Shelby Circuit Court | 16-CI-00321 | Sitlinger & Theiler, Louisville, KY | 11-16-2018 |
| Strbac v. CT Mechanical, LLC, et al. | Circuit Court of Cook County, Illinois County Department - Law Division | 16 L 7256 | Curcio Law Offices, Chicago, IL | 11-14-2018 |
| Watson/Ransom/Jones v. Texas-Cola Leasing Co., et al. | District Court, Tarrant County, TX | 352-290806-17 | Washington Law Office, Dallas, TX | 11-13-2018 |
| Watson/Ransom/Jones v. Texas-Cola Leasing Co., et al. | District Court, Tarrant County, TX | 352-290806-17 | Washington Law Office, Dallas, TX | 11-12-2018 |
| Griffin v. Warren Ball, et al. | Circuit Court of Cook County, Illinois County Department - Law Division | 17 L 2740 | Motherway & Napleton, Chicago, IL | 11-09-2018 |
| Riley v. City of Chicago, et al. | Circuit Court of Cook County, Illinois County Department - Law Division | 17 L 246 | Langdon & Emison, Chicago, IL | 11-08-2018 |
| Shah v. Bernstein, et al. | Eighth Judicial District Court, Clark County, Nevada | A-15-723496-C, Dept No. XIII | Padda Law, Las Vegas, NV | 11-07-2018 |
| Bowens/Allen v. Vitale, M.D., et al. | Superior County of New Jersey, Law Division: Bergen County | L-7014-16 | Lynch Lynch Held Rosenberg, Hasbrouck Heights, NJ | 11-07-2018 |
| Lloyd/Watson v. Cumberland County, et al. | United States District Court for the District of New Jersey, Camden Vicinage | 1:16-cv-03503 JBS-AMD | Benedetto Law Office, Philadelphia, PA | 11-06-2018 |
| Hennis v. Cumberland County, et al. | United States District Court for the District of New Jersey, Camden Vicinage | 1:16-cv-03503 JBS-AMD | Benedetto Law Office, Philadelphia, PA | 11-06-2018 |
| Wilson/Lewis v. Cumberland County, et al. | United States District Court for the District of New Jersey, Camden Vicinage | 1:16-cv-03503 JBS-AMD | Benedetto Law Office, Philadelphia, PA | 11-06-2018 |

## LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
## STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Sanchez v. Samrith, et al. | District Court, Clark County, Nevada | A-17-751126-C, Dept No. XXX | Powell Law Firm, Las Vegas, NV | 11-05-2018 |
| Orr, Jr. v. T. Burns, Ltd., et al. | Circuit Court of Jackson County, Missouri at Kansas City | 1816-CV01412, Division 17 | Langdon & Emison, Lexington, MO | 11-05-2018 |
| Colon-Montoya v. Mahari, et al. | District Court, Clark County, Nevada | A-16-746156-C, Dept No. XVIII | Powell Law Firm, Las Vegas, NV | 11-01-2018 |
| Colvin, et al. v. Baptist Healthcare System, Inc., et al | Jefferson Circuit Court, Division Twelve | 17-CI-001894 | Oldfather Law Firm, Louisville, KY | 10-31-2018 |
| Ocampo-Trujillo/Nunez v. Ali, et al. | District Court, Clark County, Nevada | A-15-728995-C, Dept No. I | Powell Law Firm, Las Vegas, NV | 10-23-2018 |
| Stoch v. Sid Harvey Industries, Inc. et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2015 L 010602 | Sinson Law Group, Chicago, IL | 10-23-2018 |
| Bartels v. Silver Cross Hospital and Medical Centers, et al. | Circuit Court of the Twelfth Judicial Circuit, Will County, Illinois | 2018 L 000328 | McNabola Law Group, Chicago, IL | 10-22-2018 |
| Quinlan v. Alvarez, et al. | District Court, Clark County, Nevada | A-17-754682-C, Dept No. XV | Naqvi Injury Law, Las Vegas, NV | 10-22-2018 |
| Johnson/Toth v. White River Health System Inc., et al. | Circuit Court of Independence County, Arkansas, Civil Division | CV-2012-026-2 | Wilcox Lacy, Jonesboro\AR | 10-19-2018 |
| Bartolo v. Whole Foods Market, Inc. | United States District Court for the District of Columbia | 17-cv-1453 (APM) | Branch & Associates, Washington, DC | 10-18-2018 |
| Lilley/Zeches v. Ek Lian Tan, et al. | District Court, Clark County, Nevada | A-17-749596-C, Dept No. XVIII | Powell Law Firm, Las Vegas, NV | 10-17-2018 |
| Hinojosa v. United Parcel Service, Inc. | Circuit Court of Cook County, Illinois, County Department - Law Division | 13 L 7549 | Bashford Law Group, Glenview, IL | 10-16-2018 |
| Allenson v. Starbucks Corporation | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 L 4034 | Cogan & Power, Chicago, IL | 10-15-2018 |
| Nichols v. Staley, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2016 L 6571 | Dinizulu Law Group, Chicago, IL | 10-11-2018 |
| Aye/Hnin v. Ford Motor Company, et al. | Missouri Circuit Court, Sixth Judicial Circuit, Platte County | 17AE-CC00422 | Langdon & Emison, Lexington, MO | 10-11-2018 |
| Malone, et al. v. Moe, et al. | Eighth Judicial District Court, Clark County, Nevada | A-16-734167-C, Dept No. XXI | Bighorn Law, Las Vegas, NV | 10-09-2018 |
| Taylor v. Berger, M.D., et al. | Circuit Court of Cook County, State of Illinois, County Department - Law Division | 15 L 9085 | Motherway & Napleton, Chicago\IL | 10-09-2018 |
| Vaseemuddin v. County of Cook, et al. | United States District Court, Northern District of Illinois, Eastern Division | 14 C 2995 | Kreamer Law Office, Naperville\IL | 10-03-2018 |
| Snyder v. Bank of America, N.A., et al. | United States District Court, Northern District of California | 15-cv-042228-EDL | Pamela Snyder Pro Se, San Francisco, CA | 10-01-2018 |
| Farmer, et al. v. Las Vegas Metropolitan Police Department, et al. | United States District Court, District of Nevada | 2:17-cv-01946-JCM-PAL | Marquis Aurbach Coffing* Las Vegas, NV | 09-28-2018 |
| Cavazos v. Paschal Enterprises LLC, et al. | 88th Judicial District Court of Hardin County, Texas | 57455 | Grossman Law Offices, Dallas, TX | 09-28-2018 |
| Chappell v. Joey's Inc., et al. | District Court, Clark County, Nevada | A-17-752231-C, Dept No. XXX | Eglet Prince, Las Vegas, NV | 09-27-2018 |
| Confessore v. AGCO Corporation, et al. | Superior Court of New Jersey, Law Division - Monmouth County | MON-L-797-14 | Gill & Chamas, Perth Amboy\NJ | 09-26-2018 |
| Romero v. Club 390 Corp, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2016-L-006872 | Cochran Firm, Chicago, IL | 09-24-2018 |
| Tran v. NDL Group, Inc., et al. | Eighth Judicial District Court, Clark County, Nevada | A-16-740978-C, Dept X | Nguyen & Associates, Las Vegas, NV | 09-21-2018 |
| Ballard/Chapman v. Swartz, M.D., et al. | Superior Court of New Jersey, Law Division - Ocean County | OCN-L-761-16 | Escandon Fernicola Anderson & Covelli, Allenhurst, NJ | 09-19-2018 |
| Trahanas v. Northwestern University, et al. | United States District Court for the Northern District of Illinois, Eastern Division | 1:15-cv-11192 | DeRose & Associates, Hinsdale, IL | 09-17-2018 |
| Tracy v. Lake County Neurosurgery, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 09 L 14156 | McNabola Law Group, Chicago\IL | 09-17-2018 |
| Garcia-Alvarez v. Lopez-Acosta, et al. | Eighth Judicial District Court, Clark County, Nevada | A-16-743595-C, Dept No. I | Lerner Injury Attorneys, Las Vegas, NV | 09-14-2018 |
| Ayala v. Young, et al. | District Court, Clark County, Nevada | A-16-747753-C, Dept No. IV | Powell Law Firm, Las Vegas, NV | 09-14-2018 |
| Briggs v. IAP Worldwide Services, Inc., et al. | United States District Court for the Eastern District of Virginia, Alexandria Division | 18-cv-00982-AJT-TCB | Jarrard Law Office, Spokane, WA | 09-13-2018 |
| Lessert v. BNSF Railway Company | United States District Court, District of South Dakota, Western Division | 5:17-cv-5030-JLV | Hubbell Law Firm, Kansas City, MO | 09-11-2018 |
| Sanchez-Tolentino v. Vasquez III, et al. | District Court, Clark County, Nevada | A-16-746-163-C, Dept No. XIII | Powell Law Firm, Las Vegas, NV | 09-10-2018 |
| Whitstone v. Elizalde, et al. | District Court, Clark County, Nevada | A-17-749-640-C, Dept No. IV | Powell Law Firm, Las Vegas, NV | 09-07-2018 |

## LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
## STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| King v. Desert Palace, Inc., et al. | District Court, Clark County, Nevada | A-13-691609-C, Dept No. XIV | Gentile Cristalli Miller Armeni Savarese, Las Vegas, NV | 09-06-2018 |
| Rodriguez v. Wong, et al. | District Court, Clark County, Nevada | A-16-740806-C, Dept No. XXIII | Powell Law Firm, Las Vegas, NV | 09-05-2018 |
| Jordan/Lee v. Silver Cross Hospital and Medical Centers, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2015 L 002103 | Cogan & Power, Chicago, IL | 08-31-2018 |
| Pomazal v. Grodoski | Circuit Court of the Eighteenth Judicial Circuit, DuPage County, Illinois | 2013 L 879 | Nemeroff Law Office, Chicago\IL | 08-31-2018 |
| Dieken v. Clark, M.D. | Circuit Court of Will County, Illinois | 14 L 01012 | Paris Law Firm, Chicago\IL | 08-30-2018 |
| Oates v. Shiver, et al. | District Court, Clark County, Nevada | A-16-747820-C, Dept No. | Powell Law Firm, Las Vegas, NV | 08-24-2018 |
| Thompson v. Methodist Healthcare System of San Antonio, LTD., et al. | District Court, 37th Judicial District, Bexar County, Texas | 2016CI21754 | Krebs Law Office, Austin, TX | 08-24-2018 |
| Bonno/Moreno v. Sanford Clinic North, et al. | United States District Court, District of North Dakota, Eastern Division | 3:16-cv-00114-ARS | Grant & Eisenhofer, Chicago, IL | 08-22-2018 |
| Murillo/Young v. United States of America | United States District Court, Northern District of Illinois, Eastern Division | 17 C 1279 | Mitchell Hoffman & Wolf, Chicago, IL | 08-22-2018 |
| Adams, et al. v. Trinity Industries, Inc., et al. | Circuit Court for the City of St. Louis, Missouri | 1522-CC11395 | Langdon & Emison, Lexington, MO | 08-20-2018 |
| George v. Buckeye Diamond Logistics, Inc., et al. | Court of Common Pleas of Madison County, Ohio | CVC 2017 0147 | Willis & Willis, Hilliard, OH | 08-17-2018 |
| Lopez/Finnical v. Presbyterian Healthcare Services, Inc. | State of New Mexico, County of Santa Fe, First Judicial District Court | D-101-CV-2017-00654 | Salazar Sullivan Jasionowski, Albuquerque, NM | 08-16-2018 |
| Advanced Packaging Technology Laboratories, Inc. v. Phelan, et al. | Circuit Court of Cook County, Illinois, County Department - Chancery Division | 2014 CH 00143 | Kulinsky & Associates, Wheeling\IL | 08-16-2018 |
| Advanced Packaging Technology Laboratories, Inc. v. Phelan, et al. | Circuit Court of Cook County, Illinois, County Department - Chancery Division | 2014 CH 00143 | Kulinsky & Associates, Wheeling\IL | 08-15-2018 |
| Weir v. Coning, et al. | State of Indiana, County of Vigo, In the Vigo County Superior Court | 84D06-1701-CT-0154 | McNeely Stephenson Thopy & Harrold, Shelbyville, IN | 08-15-2018 |
| Brickner v. Johnson, et al. | District Court, Clark County, Nevada | A-16-737497-C, Dept No. XXX | Ayon Burk, Las Vegas, NV | 08-14-2018 |
| Townsend v. Rush University Medical Center, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 15 L 006635 | Spearman Firm, Chicago, IL | 08-13-2018 |
| Blevins v. Holzhauer, M.D. | Circuit Court of Lowndes County, Mississippi | 2016-0027-V1K | Merkel & Cocke, Clarksdale, MS | 08-10-2018 |
| McNeeley v. Banner Health, et al. | Superior Court of Arizona, Gila County | CV201700118 | Lloyd Law Group, Payson, AZ | 08-10-2018 |
| Bryant v. Wolf Electric Supply Company, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2014 L 009840 | Gravlin Law Office, Chicago\IL | 08-09-2018 |
| Mendoza v. Wal-Mart Stores East, et al. | State of New Mexico, County of Grant, Sixth Judicial District Court | D-608-CV-2014-00107 | Cardenas Law Firm, Las Cruces\NM | 08-08-2018 |
| Lavine, et al. v. Robertson, et al. | Superior Court of the State of California, County of San Mateo | CIV 532372 | Kastner Kim, Mountain View\CA | 08-07-2018 |
| Griffo v. Oculus VR, Inc., et al. | United States District Court, Central District of California, Southern Division (Santa Ana) | 8:15-cv-01228-DOC (JCGx) | Reich Law, Boston, MA | 08-03-2018 |
| Advanced Packaging Technology Laboratories, Inc. v. Phelan, et al. | Circuit Court of Cook County, Illinois, County Department - Chancery Division | 2014 CH 00143 | Kulinsky & Associates, Wheeling, IL | 08-03-2018 |
| Ilczyszyn v. Southwest Airlines Co., et al. | Superior Court of California, County of Alameda | RG15766954 | Balaban & Spielberger, Los Angeles, CA | 08-02-2018 |
| Wynn v. BNSF Railway Company, et al. | Circuit Court of Cass County, State of Missouri | 15CA-CC00241, Divison 1 | Davis Bethune & Jones, Kansas City\MO | 08-01-2018 |
| Spaulding, et al. v. Islamic Republic of Iran, et al. | United States District Court, Northern District of Ohio, Eastern Division | 5:16-cv-1748 | Choken Welling, Akron, OH | 07-24-2018 |
| Levi/Mitchell v. Thomas | District Court, 17th Judicial District, Tarrant County, Texas | 017-287211-16 | Washington Law Office, Dallas\TX | 07-11-2018 |
| Ogiego v. Leopardo Companies, Inc., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 15 L 001217 | Allen Law Group, Chicago, IL | 07-10-2018 |
| Garcia v. ALAA Al-Nawfall, et al. | District Court, Clark County, Nevada | A-16-742054-C, Dept No. VIII | Eglet Prince, Las Vegas, NV | 07-10-2018 |
| Xaliniak v. Chang, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2015 L 008829 | Groszek Law Firm, Chicago, IL | 07-09-2018 |
| Lhotak v. Robertson, et al. | State of Indiana, County of Porter In the Porter Superior Court, Sitting at Valparaiso, Indiana | 64D02-1704-CT-3337 | Allen Law Group, Chicago, IL | 07-09-2018 |
| Manchak v. St. Louis University, et al. | Circuit Court of the City of St. Louis, State of Missouri | 1322-CC09782 | Gori Julian & Associates, Edwardsville, IL | 07-06-2018 |

## LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
## STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Varebrook v. Tisdall, M.D., et al. | District Court of Bexar County, Texas, 225th Judicial District | 2017CI06007 | Krebs Law Office, Austin, TX | 07-05-2018 |
| Knaack v. Knight Transportation, Inc., et al. | United States District Court, District of Nevada | 3:17-cv-00172-LRH-WGC | Vannah & Vannah, Las Vegas, NV | 07-03-2018 |
| Piggee v. Schaefer, M.D., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2015 L 010611 | Etherton and Associates, Chicago, IL | 07-02-2018 |
| Burkey v. Hunter, et al. | United States District Court for the Northern District of Ohio, Eastern Division | 4:17-cv-00338-BYP | Engler Law Firm, Warren, OH | 06-29-2018 |
| Phillips v. Pangea Ventures, LLC, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2015 L 012092 | Rittenberg Buffen Gulbrandsen Robinson & Saks, Chicago, IL | 06-29-2018 |
| Angelo v. Albertson's, et al. | United States District Court, District of Nevada | 2:17-CV-01246-APG-GWF | Shook & Stone, Las Vegas, NV | 05-28-2018 |
| Feazell-Daniels v. Quiroz, et al. | District Court, Clark County, Nevada | A-16-735198-C, Dept No. XI | Naqvi Injury Law, Las Vegas, NV | 06-27-2018 |
| Bryant v. Wolf Electric Supply Company, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2014 L 009840 | Gravlin Law Office, Chicago, IL | 06-27-2018 |
| Pierce v. Windmill Environmental, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 15 L 11107 | Goldberg Weisman & Cairo, Chicago, IL | 06-26-2018 |
| McDaniels v. Wolverine World Wide, Inc., et al. | State of Indiana, County of Porter in the Porter Superior Court, Sitting at Valparaiso, Indiana | 64D01-1510-CT-008639 | Allen Law Group, Valparaiso, IN | 06-25-2018 |
| Verdone v. Schulze and Burch Biscuit Co. | Circuit Court of Cook County, Illinois, County Department - Law Division | 15 L S569 | O'Connor Law Group, Chicago, IL | 06-22-2018 |
| Schmidt v. Robertson, et al. | Lake Superior Court, Gary, Indiana | 4SD04-1702-CT-00042 | Allen Law Group, Valparaiso\IN | 06-21-2018 |
| Nedrick v. County of Monmouth, et al. | Superior Court of New Jersey, Law Division, Monmouth County | MON-L-1966-1S | Wolf Law Office, Red Bank\NJ | 06-20-2018 |
| Mendoza v. Wal-Mart Stores East, et al. | State of New Mexico, County of Grant, Sixth Judicial District Court | D-608-CV-2014-00107 | Cardenas Law Firm, Las Cruces, NM | 06-18-2018 |
| Lerma v. St. Alexius Medical Center | Circuit Court of Cook County, Illinois, County Department - Law Division | 2016 L 000603 | Indomenico & Associates, Chicago\IL | 06-15-2018 |
| Hughes v. Randall-Hayes, M.D., et al. | Circuit Court, Sixth Judicial Circuit, Champaign County, State of Illinois | 2013-L-99 | Mossing & Navarre, Chicago\IL | 06-14-2018 |
| Kenu v. Belkin International, Inc. et al | United States District Court, Northern District of California, San Francisco Division | 3:14-cv-04327-JD | Troutman Sanders, San Francisco\CA | 06-13-2018 |
| Zeller v. CRST Lincoln Sales, Inc., et al. | United States District Court, Northern District of Illinois, Eastern Division | 16-cv-10140 | Cogan & Power, Chicago, IL | 06-11-2018 |
| Leoni v. Experian Information Solutions, Inc. | United States District Court, District of Nevada | 2:17-cv-01408-RFB-VCF | Knepper & Clark, Las Vegas, NV | 06-08-2018 |
| Streit v. Halverson | United States District Court for the Western District of Missouri, Central Division at Jefferson City | 2:17-cv-4225 | Langdon & Emison, Lexington, MO | 06-07-2018 |
| Whitlock v. Nevada Capital Insurance Company, et al. | District Court, Clark County, Nevada | A-13-681608-C, Dept No. XXIX | Maier Gutierrez & Associates, Las Vegas, NV | 06-06-2018 |
| Hanna v. Trinity Industries, Inc., et al. | Circuit Court of Jackson County, Missouri at Kansas City | 1716-CV12173 | Langdon & Emison, Lexington, MO | 06-06-2018 |
| Taylor v. Berger, M.D., et al. | Circuit Court of Cook County, State of Illinois, County Department - Law Division | 15 L 9086 | Motherway & Napleton, Chicago, IL | 06-05-2018 |
| Kolesar v. XPO Logistics Freight, I(nc. | Circuit Court of Cook County, State of Illinois, County Department - Law Division | 2016-L-000686 | Pullano Law Firm, Chicago, IL | 06-04-2018 |
| Heartwise, Inc. v. Nutrigold, Inc. | United States District Court, District of Utah, Central Division | 2:13-cv-00982-DAK | Workman Nydegger* Salt Lake City, UT | 06-01-2018 |
| Kim v. Byun, M.D., et al. | United States District Court, Northern District of Illinois | 1:16-cv-09138 | Patterson Law Firm, Chicago, IL | 05-31-2018 |
| Barnum, et al. v. Equifax Information Services, Inc. | United States District Court, District of Nevada | 2:16-cv-2866-RFB-NJK | Knepper & Clark, Las Vegas, NV | 05-30-2018 |
| Bulduk v. Walgreen Co. | Circuit Court of Cook County, State of Illinois, County Department - Law Division | 17 L 1149 | Lane Kefli Law, Chicago, IL | 05-25-2018 |
| Mejia, et al. v. Lawyer Mechanical Services, et al. | District Court, Clark County, Nevada | A-16-740817-C | Powell Law Firm, Las Vegas, NV | 05-24-2018 |
| Petrocianpur, et al. v. Grand Lux Café LLC, et al. | District Court, Clark County, Nevada | A-15-719661-C, Dept No. XIX | Naqvi Injury Law, Las Vegas, NV | 05-23-2018 |
| Georgas v. Swedish Covenant Hospital, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2014L012688 | Power Rogers & Smith, Chicago, IL | 05-22-2018 |
| Cotton v. Lee, D.O., et al. | State of Illinois in the Circuit Court of the Twelfth Judicial Circuit, Will County | 14 L 563 | Motherway & Napleton, Chicago, IL | 05-21-2018 |
| Lewis v. Agarwal, M.D., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2015 L 008423 | Phillips & Associates, Chicago, IL | 05-17-2018 |

**LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN**
**STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021**

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Urth Laguna Beach Development, et al. v. Farsakh, et al. | Superior Court of the State of California, County of Orange | 30-2016-00849787-CU-CR-CJC | American Freedom Law Center* Ann Arbor, MI | 05-16-2018 |
| Holt/Cordova-Holt v. Ocwen Loan Servicing, et al. | Superior Court of the State of California in and for the County of Marin | CIV 1600577 | Christensen Law Office, Oakland, CA | 05-15-2018 |
| Carter/Collins v. Metropolitan Hospital, et al. | State of Michigan in the Circuit Court for the County of Kent | 17-06824-NH | Buchanan & Buchanan, Grand Rapids, MI | 05-10-2018 |
| Vaseemuddin v. County of Cook, et al. | United States District Court, Northern District of Illinois, Eastern Division | 14 C 2995 | Kreamer Law Office, Naperville, IL | 05-08-2018 |
| Robertshaw v. Maurer Truck Leasing, LLC, et al. | Circuit Court of Cook County, Illinois County Department - Law Division | 2016 L 2098 | Shannon Law Group, Woodridge, IL | 05-07-2018 |
| Haught v. Payson Healthcare Management, Inc. et al. | Superior Court of the State of Arizona In and For the County of Gila | CV201300157 | McGovern Law Offices, Phoenix\AZ | 05-04-2018 |
| Walsh/Shane v. Koren, M.D., et al. | Superior Court of New Jersey, Law Division: Camden County | CAM-L-1617-16 | Lynch Lynch Held Rosenberg, Hasbrouck Heights, NJ | 05-03-2018 |
| Simmons v. Richardson, M.D., et al. | Commonwealth of Kentucky, Daviess Circuit Court, Division II | 13-CI-00395 | Moore Malone & Safreed, Owensboro, KY | 04-26-2018 |
| Slone v. Anesthesia Associates, PSC | Commonwealth of Kentucky, Fayette Circuit Court | 16-CI-04089 | Savage Law Firm, Lexington, KY | 04-25-2018 |
| Haak, et al. v. Reyniers, et al. | United States District Court for the Eastern District of Wisconsin | 17-C-128 | Lawton & Cates, Madison, WI | 04-24-2018 |
| Ogiego v. Leopardo Companies, Inc., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 15 L 001217 | Allen Law Group, Valparaiso, IN | 04-24-2018 |
| Walker v. Macy's Merchandising Group, Inc. | United States District Court for the Northern District of Illinois, Eastern Division | 1:14-cv-02513 | Langdon & Emison, Lexington, MO | 04-18-2018 |
| McMichael v. Spectrum Health Hospitals, et al. | State of Michigan in the Circuit Court for the County of Kent | 17-01653-NH | Buchanan & Buchanan, Grand Rapids, MI | 04-12-2018 |
| Klaisner v. Johanson | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 L 2993 | Bashford Law Group, Glenview, IL | 04-12-2018 |
| McKenna v. Chesnoff, CHTD. P.C., et al. | United States District Court, District of Nevada | 2:14-CV-01773-JAD-CWH | Bailey Kennedy, Las Vegas, NV | 04-11-2018 |
| Ruettiger v. Lincoln-Way Area Special Education District 843, et al. | Circuit Court of the Twelfth Judicial Circuit, Will County, Illinois | 16 L 0539 | Allen Law Group, Valparaiso, IN | 04-06-2018 |
| Binkowski v. Grand Island Express, Inc., et al | State of Indiana, County of Porter, Porter County Superior Court 2 | 64D02-1503-CT-2255 | Allen Law Group, Valparaiso\IN | 04-05-2018 |
| Luedtke v. Northern Indiana Public Service Company, et al. | State of Indiana, County of Lake, in the Lake Superior Court Sitting at Crown Point, Indiana | 45D10-1602-CT-27 | Allen Law Group, Valparaiso, IN | 04-04-2018 |
| McKay v. the City of St. Louis, Missouri, et al. | United States District Court for the Eastern District of Missouri, Eastern Division | 4:15-cv-01315-JAR | Newton Barth, St. Louis, MO | 03-29-2018 |
| Stork v. Wenck | Iowa District Court for Carroll County | LACV039736 | Galligan & Reid, Des Moines, IA | 03-28-2018 |
| Hauslein v. Statham | Circuit Court of the Tenth Judicial Circuit of Illinois, Knox County | 15-L-2 | LeFante Law Offices, Peoria, IL | 03-28-2018 |
| Calianno v. Kaleb Crinite, et al. | District Court, Clark County, Nevada | A-15-727749-C, Dept No. XXX | Eglet Prince, Las Vegas, NV | 03-27-2018 |
| Thompson, et al. v. Stonegate Insurance Co. | Circuit Court of Cook County, County Department - Chancery Division | 12 CH 02774 | Richert Law Office, Orland Park, IL | 03-26-2018 |
| Contreras v. Manning, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2015 L 7542 | Espitia Law Office, Chicago, IL | 03-23-2018 |
| Estabrook v. Yamazaki Mazak Corporation, et al. | United States District Court for the Northern District of Indiana | 1:16-cv-0087-RL-SLC | Theisen & Associates, Fort Wayne, IN | 03-23-2018 |
| Schreck v. Sanford Health, et al. | Iowa District Court for Lyon County | LACV501613 | Beattie Law Firm, Des Moines, IA | 03-22-2018 |
| Appleton v. Tahoe Nugget, Inc., et al. | Second Judicial District Court of the State of Nevada, County of Washoe | CV17-00001, Dept No. 10 | Titolo Law Office, Las Vegas, NV | 03-21-2018 |
| Sarlan v. Proctor, DO, et al. | Commonwealth of Kentucky, Boone Circuit Court, First Division | 17-CI-00227 | Savage Law Firm, Lexington, KY | 03-19-2018 |
| Khlabani/Barin v. Motor Coach Industries, Inc., et al. | District Court, Clark County, Nevada | A-17-755977-C | Weinberg Wheeler Hudgins Gunn & Dial* Las Vegas\NV | 03-16-2018 |
| Allen v. Regional Transportation Authority, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 015L0000116 | Deratany & Associates, Chicago, IL | 03-13-2018 |
| Damor America v. Zurich International Italia S.P.A., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2014 L 13340 | Sinson Law Group, Chicago, IL | 03-09-2018 |
| Strosberg v. Englander, M.D., et al. | Circuit Court of the Fifteenth Judicial Circuit, In and For Palm Beach County, Florida | 50 2014 CA 012994XXXXMB AB | Roberts & Associates, West Palm Beach, FL | 03-08-2018 |
| Simpson v. General Motors, et al. | State of Michigan in the Circuit Court for the County of Genesee | 16-107103-NO | Darling Law Office, Plymouth, MI | 03-07-2018 |

**LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN**
**STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021**

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Smith v. Retail Project Managers, Inc., et al. | Circuit Court of Cook County of Illinois, County Department - Law Division | 15 L 1323 | Riseborough Law Office, Lake Bluff\IL | 02-28-2018 |
| Schlappi v. Finnestad | Circuit Court of the Twenty-Third Judicial Circuit, Kendall County, Illinois | 15 L 186 | Rigazio Law Office, Morris, IL | 02-27-2018 |
| Kenny, Jr. v. Superior Engineering, LLC., et al. | State of Indiana, County of Lake, Lake Superior Court, Sitting at Hammond Indiana | 45D01-1411-CT-00261 | Allen Law Group, Valparaiso, IN | 02-22-2018 |
| Amiri v. Duncan, et al. | United States District Court, Northern District of California, San Francisco Division | 3:15-cv-03994-JSC | Holl Law & Mediation, San Francisco, CA | 02-21-2018 |
| Robinson v. Eder, M.D., et al. | Circuit Court for Baltimore City, Maryland | 24-C-16-006431 | Wais Vogelstein Forman & Offutt, Baltimore, MD | 02-16-2018 |
| Foy v. Sherwin Williams Company | United States District Court, Northern District of Illinois, Eastern Division | 15-CV-4652 | O'Brien Law, Geneva, IL | 02-13-2018 |
| Ruettiger v. Lincoln-Way Area Special Education District 843, et al. | Circuit Court of the Twelfth Judicial Circuit, Will County, Illinois | 16 L 0539 | Allen Law Group, Valparaiso, IN | 02-08-2018 |
| Nakhla v. Rite Aid of New Jersey, Inc., et al. | Superior Court of New Jersey, Law Division - Monmouth County | MON-L-2242-16 | Escandon Fernicola Anderson & Covelli, Allenhurst, NJ | 02-07-2018 |
| Gurwood v. GCA Services Group, Inc., et al. | State of South Carolina, County of Charleston in the Court of Common Pleas for the Ninth Judicial Circuit | 2015-CP-10-2191 | Slotchiver & Slotchiver, Charleston, SC | 02-06-2018 |
| Villanueva v. Payson Hospital Corporation, et al. | Superior Court of the State of Arizona, In and For the County of Gila | CV 2016 00177 | Lloyd Law Group, Payson, AZ | 02-05-2018 |
| Pomazal v. Grodoski | Circuit Court of the Eighteenth Judicial Circuit, DuPage County, Illinois | 2013 L 879 | Nemeroff Law Office, Chicago, IL | 02-02-2018 |
| Pinkson v. Conway Two, LLC., et al. | Circuit Court of Cook County, County Department - Law Division | 2015L007994 | Gary Williams Parenti Finney Watson & Gary, Stuart, FL | 02-02-2018 |
| Ross, Jr. v. Cattron-Theimeg, Inc., et al. | State of Indiana, County of Lake, Lake Superior Court, Sitting at Gary, Indiana | 45D04-1407-CT-129 | Allen Law Group, Chicago, IL | 02-01-2018 |
| Thimmes v. Bakeris, D.C. | Circuit Court of DeSoto County, Mississippi | CV-2014-203RCD | Merkel & Cocke, Clarksdale, MS | 01-31-2018 |
| Rosol v. Elmhurst Memorial Hospital, et al. | Circuit Court of Cook County, County Department - Law Division | 14 L 1606 | McNabola & Associates, Chicago, IL | 01-31-2018 |
| Owens v. City of Chicago, et al. | Circuit Court of Cook County, County Department - Law Division | 2015 L 9132 | Curcio Law Offices, Chicago, IL | 01-30-2018 |
| Lanham v. BNSF Railway Company | District Court of Lancaster County, Nebraska | CI 17-106 | Atwood Holsten Brown Deaver & Spier, Lincoln, NE | 01-30-2018 |
| Komada v. Dove, et al. | Circuit Court of Cook County, County Department - Law Division | 16 L 5275 | Mitchell Hoffman & Wolf, Chicago, IL | 01-29-2018 |
| Beasley v. Shady Grove Adventist Hospital, et al. | Circuit Court for Prince Georges County, Maryland | CA46-30133 | Wais Vogelstein Forman & Offutt, Baltimore, MD | 01-26-2018 |
| Cardenas v. Northern Nevada Medical Center, et al. | Second Judicial District Court of the State of Nevada, County of Washoe | CV13-00523, Dept No. 4 | Durney & Brennan, Reno\NV | 01-25-2018 |
| Gillman v. Zamora, et al. | District Court, Clark County, Nevada | A722327, Dept No. II | Paternoster Law Group, Las Vegas, NV | 01-24-2018 |
| Metcalfe v. Loquerio Automotive, Inc., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 15 L 12932 | Chapekis Chapekis Kardas & Schmidt, Chicago, IL | 01-22-2018 |
| Lefthand v. Taos Health Systems, Inc., et al. | Thirteenth Judicial District Court, County of Valencia, State of New Mexico | D-1314-CV-2016-00390 | Salazar Sullivan Jasionowski, Albuquerque, NM | 01-22-2018 |
| Morgenstern, M.D. v. City of Highland Park, et al. | Circuit Court for the Nineteenth Judicial Circuit, Lake County, Illinois | 15 L 186 | Nolan Law Group, Chicago, IL | 01-19-2018 |
| Commonwealth of Kentucky, et al. v. National College of Kentucky, Inc. | Commonwealth of Kentucky, Fayette Circuit Court, Division 8 | 11-CI-4922 | Rose Grasch Camenisch Mains* Lexington\KY | 01-18-2018 |
| Olek, Inc. v. RAR Development Associates, et al. | Superior Court of New Jersey, Law Division - Essex County | ESX-L-1780-15 | Orr Law Office, Newark, NJ | 01-17-2018 |
| Rabadan/Sharp v. Mittapalli, M.D., et al. | Circuit Court of the Fourteenth Judicial Circuit, Whiteside County, Illinois | 2014 L 37 ST | Mertes & Mertes, Sterling, IL | 01-16-2018 |
| Hays, Jr., et al. v. Tarullo, et al. | Jefferson Circuit Court, Division One | 14-CI-03296 | Tobler Law Firm, New Orleans, LA | 01-15-2018 |
| Blue Book Services, Inc. v. Amerihua Produce, Inc. | United States District Court for the Northern District of Illinois, Eastern Division | 16-10495 | Schiller Law Group, New York, NY | 01-11-2018 |
| George v. CNS Transpro, et al. | United States District Court of the Eastern District of Missouri at St. Louis, Missouri | 4:16-cv-01666-RWS | Langdon & Emison, Lexington, MO | 01-10-2018 |
| Montague v. Yale University, et al. | United States District Court, District of Connecticut | 3:16-CV-00885-AVC | Todd & Weld, Boston, MA | 01-09-2018 |

## LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
## STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Cortese-Angelini v. Sangiovese, et al. | District Court, Clark County, Nevada | A-17-753796-C, Dept No. XXXI | Gentile Cristalli Miller Armeni Savarese, Las Vegas, NV | 01-08-2018 |
| Brooks v. Avila, et al. | District Court, Clark County, Nevada | A-16-737423-C, Dept No. VII | Powell Law Firm, Las Vegas, NV | 01-05-2018 |
| Mendoza v. Torres, et al. | District Court, Clark County, Nevada | A-16-733263-C, Dept No. XVI | Eglet Prince, Las Vegas, NV | 01-04-2018 |
| Ashford v. 99 Cents Only Store, et al. | District Court, Clark County, Nevada | A-16-736450-C, Dept No. XXX | Powell Law Firm, Las Vegas, NV | 01-04-2018 |
| Clinkscale v. Ruffin, et al. | District Court, Clark County, Nevada | A-15-729321-C, Dept No. XVI | Powell Law Firm, Las Vegas, NV | 01-03-2018 |
| Hays, Jr., et al. v. Tarullo, et al. | Jefferson Circuit Court, Division One | 14-CI-03296 | Tobler Law Firm, New Orleans, LA | 12-13-2017 |
| Marogil v. Sterbenz, et al. | Circuit Court for the Eighteenth Judicial Circuit, DuPage County, Illinois | 2015 L 784 | Patterson Law Firm, Chicago, IL | 12-12-2017 |
| Lerma v. St. Alexius Medical Center | Circuit Court of Cook County, Illinois, County Department - Law Division | 2016 L 000603 | Indomenico & Associates, Chicago, IL | 12-11-2017 |
| Johnson v. Shaw Transport, et al. | State of Indiana, County of Marion, Marion Superior Court #6 | 49D06-1603-CT-010096 | Allen Law Group, Valparaiso, IN | 12-08-2017 |
| Egan Marine Corporation v. ExxonMobil Oil Corporations, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 15 L 6437 | Cronin & Co, Chicago, IL | 12-07-2017 |
| Brooks v. Caterpillar Global Mining, LLC | United States District Court, Western District of Kentucky, Owensboro Division | 4.14-CV-00022-JHM | Moore Malone & Safreed, Owensboro\KY | 12-06-2017 |
| Siegfried v. Lopez, et al. | Eighth Judicial District Court, Clark County, Nevada | A-15-722816-C, Dept No. II | Powell Law Firm, Las Vegas, NV | 12-05-2017 |
| Conner v. Robertson, et al. | Lake Superior Circuit Court, Crown Point, Indiana | 45C01-1501-CT-00011 | Whalley & Associates, Merrillville, IN | 12-05-2017 |
| Albert v. Gauthier, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2015 L 002707 | Woodruff Johnson & Evans, Aurora, IL | 12-04-2017 |
| Guzman v. Dale, et al. | District Court, Clark County, Nevada | A-16-746355-C, Dept No. 30 | Lerner Injury Attorneys, Las Vegas, NV | 12-01-2017 |
| Gonzalez/Cuevas v. Northshore University Healthsystem, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2014 L 006113 | Cogan & Power, Chicago, IL | 12-01-2017 |
| Marin/Melvin v. The University of Chicago Medical Center | Circuit Court of Cook County, Illinois, County Department - Law Division | 14 L 006886 | Mossing & Navarre, Chicago, IL | 11-30-2017 |
| French, et al. v. Trinity Highway Products, et al. | Circuit Court for the City of St. Louis, Missouri | 1522-CC11395 | Fibich Leebron Copeland Briggs, Houston, TX | 11-28-2017 |
| Gentry v. Integritas Systems LLC, et al. | State of Indiana, County of Marion, Marion Superior Court, Sitting at Indianapolis, Indiana | 49D10-1602-CT-3929 | Allen Law Group, Valparaiso\IN | 11-15-2017 |
| Schwab v. Surgical Associates of Louisville, et al. | Jefferson Circuit Court, Division Twelve (12) | 15-CI-006423 | Franklin Law Group, Louisville, KY | 11-13-2017 |
| Main Street Power Mall, Inc., et al. v. Erie Insurance Exchange | State of Indiana, County of Hamilton, Hamilton Circuit Court | 29C01-1509-PL-7272 | Parr Richey Obremskey Frandsen & Patterson, Indianapolis, IN | 11-13-2017 |
| Shaffer v. Affiliated Southwest Surgeons, P.C., et al. | Superior Court of the State of Arizona, In and For the County of Maricopa | CV2015-005620 | McGovern Law Offices, Phoenix, AZ | 11-10-2017 |
| Russell v. Williams, et al. | District Court, 429th Judicial District, Collin County, Texas | 429-04560-2016 | Reed Law Group, Frisco, TX | 11-10-2017 |
| White v. Independence Plus, Inc., et al | Circuit Court of Cook County, County Department - Law Division | 13 L 8014 | Wienold & Associates, Chicago, IL | 11-09-2017 |
| Dautrich v. Nationstar Mortgage LLC, et al. | United States District Court, District of New Jersey | 1:15-cv-08278-RMB-KMW | Northeast Law Group, Longmeadow, MA | 11-09-2017 |
| Jones v. Ullah, M.D., et al. | Circuit Court, Twentieth Judicial Circuit, St. Clair County, Illinois | 14-L-565 | Hopson Law Group, Chicago, IL | 11-08-2017 |
| Vidaurri/Jones v. Sealy, et al. | State of New Mexico, County of Lea, Fifth Judicial District | CV-2016-00842 | Sawyers Law Group, Hobbs\NM | 11-07-2017 |
| Ledesma v. Sheets, et al. | District Court, Clark County, Nevada | A-15-727686-C, Dept No. XXVIII | Ladah Law firm, Las Vegas, NV | 11-06-2017 |
| Johnson v. Garceau | Second Judicial District Court In and For Weber County, State of Utah | 160905341 TA | Richards Law Office, Ogden, UT | 11-06-2017 |
| Vidaurri/Jones v. Sealy, et al. | State of New Mexico, County of Lea, Fifth Judicial District | CV-2016-00842 | Sawyers Law Group, Hobbs, NM | 11-03-2017 |
| Zarate v. Mendez, et al. | District Court, Clark County, Nevada | A-16-737427-C, Dept No. VI | Eglet Prince, Las Vegas, NV | 11-02-2017 |
| Murdick v. Manbeck, M.D. | State of Indiana, County of St. Joseph, Circuit Court | 71C01-1504-CT-000154 | Pavich Law Group, Chicago, IL | 11-02-2017 |
| Vidaurri/Jones v. Sealy, et al. | State of New Mexico, County of Lea, Fifth Judicial District | CV-2016-00842 | Sawyers Law Group, Hobbs, NM | 11-01-2017 |

## LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
## STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Morgenstern, M.D. v. City of Highland Park, et al. | Circuit Court for the Nineteenth Judicial Circuit, Lake County, Illinois | 15 L 186 | Nolan Law Group, Chicago, IL | 10-31-2017 |
| Poola, PhD. v. Howard University, et al. | Superior Court of the District fo Columbia, Civil Division | 2012 CA 000003 | Branch & Associates, Washington, DC | 10-27-2017 |
| Hernandez v. Noun, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 14 L 5052 | Burns Cronauer & Brown, Sycamore, IL | 10-26-2017 |
| Jackson v. Turley, M.D., et al. | Commonwealth of Kentucky, Madison Circuit Court, Division 1 | 16-CI-530 | Erdmann & Stumbo, Richmond, KY | 10-26-2017 |
| Blomgren v. Town Square Las Vegas, LLC, et al. | District Court, Clark County, Nevada | A736230, Dept No. I | Lerner Injury Associates, Las Vegas, NV | 10-24-2017 |
| Lopez v. Vazquez, M.D., et al. | Superior Court of New Jersey, Law Division: Passaic County | PAS-1-2196-15 | Lynch Lynch Held Rosenberg, Hasbrouck Heights, NJ | 10-23-2017 |
| Carreto-Silva v. Velcani | Circuit Court of Cook County, Illinois, County Department - Law Division | 14 L 011515 | Shim Law Office, Rolling Meadows\IL | 10-23-2017 |
| Damery v. McGrath, et al. | District Court, Clark County, Nevada | A-10-620078 | Eglet Prince, Las Vegas\NV | 10-20-2017 |
| Honigsblum v. Next Door and Window Company, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2014 L 009884 | O'Mara Gleason & O'Callaghan, Chicago\IL | 10-19-2017 |
| Oyugi v. Advocate Health and Hospitals Corporation, et al. | Circuit Court of Cook County, Illinois, County Department, Law Division | 13 L 10038 | McNabola & Associates, Chicago, IL | 10-18-2017 |
| Flanagan/Allen v. The City of Dallas, Texas, et al. | United States District Court for the Northern District of Texas, Dallas Division | 3:13-CV-4231 | Washington Law Office, Dallas\TX | 10-17-2017 |
| O'Sullivan v. O'Sullivan | Circuit Court of Cook County, Illinois, County Department - Domestic Relations Division | 15-D-303 | Leving Law Office, Chicago\IL | 10-16-2017 |
| Garcia-Morales, et al. v. Marshall Jr., et al. | District Court, Clark County, Nevada | A-16-730891-C, Dept No. XVI | Powell Law Firm, Las Vegas, NV | 10-13-2017 |
| Smoot, et al. v. Mercy Medical Center, Inc., et al | Circuit Court for Baltimore City | 24-C-17-000216 MM | Wais Vogelstein Forman & Offutt, Baltimore, MD | 10-12-2017 |
| Gonzalez/Gish v. Solid Platforms, Inc. | State of Indiana, County of Porter, Porter Superior Court, Sitting at Valparaiso, Indiana | 64D02-1511-CT-9806 | Allen Law Group, Valparaiso, IN | 10-11-2017 |
| Simao v. Rish, et al. | District Court, Clark County, Nevada | A539455 | Eglet Prince, Las Vegas, NV | 10-10-2017 |
| Mohammed v. Kelly | Circuit Court of Cook County, Illinois, County Department - Law Division | 2015 L 010729 | Wolfman Law Office, Chicago, IL | 10-10-2017 |
| Williams v. Douglas County, et al. | United States District Court for the Northern District fo Georgia, Atlanta Division | 1:16-CV-02913-ODE | Jeffrey Scott, New York, NY | 10-09-2017 |
| Doe v. Board of Education of the City of Chicago | Circuit Court of Cook County, Illinois, County Department | 2014 L 010388 | Montgomery Law Firm, Chicago\IL | 10-06-2017 |
| Collier v. Norfolk Southern Railway Company | Circuit Court of Clay County, Missouri | 15CY-CV06848, Division No. 4 | Barnes Law Firm, Kansas City\MO | 10-04-2017 |
| Aye/Parke v. Venetian Casino Resort, LLC., et al. | District Court, Clark County, Nevada | A-15-716380-C, Dept No. XXVIII | Ladah Law Firm, Las Vegas, NV | 10-02-2017 |
| Hernandez v. Davis, et al. | District Court, Clark County, Nevada | A-16-739703-C, Dept No. XXVI | Lerner Injury Attorneys, Las Vegas, NV | 09-27-2017 |
| Fowler v. Sonsungnuen, et al. | District Court, Clark County, Nevada | A-15-729006-C, Dept No. XXVIII | Powell Law Firm, Las Vegas, NV | 09-27-2017 |
| Czech v. Target Corporation, et al. | United States District Court, District of Nevada | 2:16-cv-01923-APG-GWF | Shook & Stone, Las Vegas, NV | 09-26-2017 |
| Clark v. Dixit, M.D., et al. | Jefferson Circuit Court, Division Thirteen | 15-CI 005753 | Goldberg & Simpson, Louisville, KY | 09-26-2017 |
| Seehoffer v. Illinois Farmers Insurance Company | State of Illinois, County of Cook | 1020183765-1-4* Policy No. 0345698892 | Burnes & Libman, Chicago, IL | 09-25-2017 |
| Abeln/Kaufman, et al. v. Trinity Industries, Inc., et al. | Circuit Court for the City of St. Louis, Missouri | 1522-CC11395 | Langdon & Emison, Lexington, MO | 09-25-2017 |
| Smith v. Retail Project Managers, Inc., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 15 L 1323 | Riseborough Law Office, Lake Bluff, IL | 09-22-2017 |
| Tremain v. Ferro, D.O., P.C., et al | State of Michigan, Circuit Court for the County of Ingham | 17-255-NH | Buchanan & Buchanan, Grand Rapids, MI | 09-22-2017 |
| Meeks/Jones v. Dissanayake, M.D. | Circuit Court of Cook County, Illinois, County Department - Law Division | 15 L 11535 | Loggans & Associates, Chicago, IL | 09-21-2017 |
| Binkowski v. Grand Island Express, Inc., et al | State of Indiana, County of Porter, Porter County Superior Court 2 | 64D02-1503-CT-2255 | Allen Law Group, Valparaiso, IN | 09-21-2017 |
| Cotton v. Lee, D.O., et al. | State of Illinois in the Circuit Court of the Twelfth Judicial Circuit, Will County | 14 L 563 | Motherway & Napleton, Chicago, IL | 09-20-2017 |
| Jones/Hortman, et al. v. Goodrich Corporation, et al. | United States District Court, District of Connecticut | 3:12-CV-02197-WWE | Baum Hedlund Aristei & Goldman, Los Angeles, CA | 09-20-2017 |
| Haught v. Payson Healthcare Management, Inc. et al. | Superior Court of the State of Arizona and for the County of Gila | CV201300157 | McGovern Law Offices, Phoenix, AZ | 09-18-2017 |
| Jones , et al. v. Mercy Medical Center, Inc., et al. | Circuit Court for Baltimore City, Maryland | 24-C-16-005857 | Wais Vogelstein Froman & Offutt, Baltimore, MD | 09-14-2017 |

## LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
## STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Scheibling v. Morris Heart Associates, et al. | Superior Court of New Jersey, Law Division - Morris County | MRS-L-220S-14 | Lomurro Law, Freehold\NJ | 09-13-2017 |
| Northland Products Company v. Ouelette Machinery Systems | Circuit Court of the County of St. Louis, State of Missouri | 16SL-CC00784, Div. 18 | Spooner Law* St. Louis\MO | 09-12-2017 |
| Sanchez/Miranda v. United States of America, et al. | United States District Court, District of New Jersey | 2:15-CV-07509-KSH-CLW | Lynch Lynch Held Rosenberg, Hasbrouck Heights, NJ | 09-11-2017 |
| Turner v. US Airbag, LLC., et al. | State of Wisconsin, Circuit Court, Chippewa County | 14 CV 162 | Guelzow Law Offices, Eau Clair\WI | 09-11-2017 |
| Warshawsky v. Epstein, DMD, et al. | Circuit Court for Cook County, Illinois, County Department - Law Division | 14 L 010575 | McNabola Law Group, Chicago, IL | 09-07-2017 |
| Slavish, et al. v. Rock Island Tri-County Consortium, et al. | Circuit Court of the Fourteenth Judicial Circuit, Rock Island County, Illinois, General Division | 14 L 7283 | Katz Nowinski, Moline, IL | 09-07-2017 |
| Bolden v. Illinois Central Railroad Company | Circuit Court of Cook County, Illinois, County Department - Law Division | 09 L 1553B | Lipkin & Higgins, Chicago, IL | 09-06-2017 |
| Felts v. Illinois Central Railroad Company | Circuit Court of Cook County, Illinois, County Department - Law Division | 09 L 009872 | Lipkin & Higgins, Chicago, IL | 09-06-2017 |
| Villaneuva v. Streamwood Behavioral Healthcare System, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 13 L 008377 | McNabola & Associates, Chicago, IL | 09-06-2017 |
| Northland Products Company v. Ouelette Machinery Systems | Circuit Court of the County of St. Louis, State of Missouri | 16SL-CC00784, Div. 18 | Spooner Law* St. Louis, MO | 09-05-2017 |
| Robbins v. Medical Associates Clinic P.C., et al. | Iowa District Court, Clayton County | LACV 010091 | Harding Law Office, Des Moines, IA | 09-05-2017 |
| Dieken v. Clark, M.D. | Circuit Court of Will County, Illinois | 14 L 01012 | Paris Law Firm, Chicago, IL | 08-31-2017 |
| Collier v. Norfolk Southern Railway Company | Circuit Court of Clay County, Missouri | 15CY-CV05848, Division No. 4 | Barnes Law Firm, Kansas City, MO | 08-30-2017 |
| Allen v. American Capital Limited, et al. | United States District Court for the District of Arizona | CV-16-02876-PHX-JAT | Wagstaff & Cartmell, Kansas City, MO | 08-28-2017 |
| Parker v. Derr, M.D., et al. | Circuit Court of Alcorn County, MS | CV15-107PA | Merkel & Cocke, Clarksdale\MS | 08-23-2017 |
| Juzefyk v. Mallon | Superior Court of New Jersey, Union County - Law Division | UNN-L-0468-16 | Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins, Springfield, NJ | 08-22-2017 |
| Patzschke v. Northern Indiana Public Service Company, et al. | State of Indiana, County of Lake in the Lake Superior Court Sitting in Gary, Indiana | 4SD04-150B-CT-151 | Allen Law Group, Valparaiso, IN | 08-18-2017 |
| Gough v. Mendez, et al. | District Court, Clark County, Nevada | A-15-726594-C, Dept No. XXI | Paternoster Law Group, Las Vegas, NV | 08-17-2017 |
| Brooks v. Caterpillar Global Mining, LLC | United States District Court, Western District of Kentucky, Owensboro Division | 4.14-CV-00022-JHM | Moore Malone & Safreed, Owensboro, KY | 08-17-2017 |
| Stoller v. Nissan Motor Company, LTD, et al. | JAMS Arbitration, Chicago, IL | 1340013103 | Kiss Law Office, Gurnee, IL | 08-17-2017 |
| Paul v. BNSF Railway Company | District Court of Lancaster County, Nebraska | CI 14 1505 | Perry Guthery Haase & Gessford, Lincoln\NE | 08-16-2017 |
| Rohan v. Pepper Construction, Co., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 14 L 7283 | Motherway & Napleton, Chicago, IL | 08-14-2017 |
| Kieckhaefer v. Roscoe Township | State of Illinois, Circuit Court of the 17th Judicial Circuit, Winnebago County | 14 L 194 | Klein Stoddard Buck Lewis, Sycamore, IL | 08-14-2017 |
| Murillo v. Goad, et al. | United States District Court, District of Nevada | 2:16-cv-02739-RFB-CWH | Mersch Law Office, Las Vegas, NV | 08-10-2017 |
| Nemec v. Roberts Environmental Control Corp, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 13 L 12753 | O'Connor Law Group, Chicago\IL | 07-24-2017 |
| Edwards v. Dakota, Minnesota & Eastern Railroad Corportation | Circuit Court of the Twelfth Judicial Circuit, Will County, Illinois | 2014 L 000421 | Lipkin & Higgins, Chicago\IL | 07-21-2017 |
| Al-Nobani v. Cernov, et al. | District Court, Clark County, Nevada | A-14-700-517-C, Dept No. I | Ladah Law Firm, Las Vegas\NV | 07-20-2017 |
| Honigsblum v. Next Door and Window Company, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2014 L 009884 | O'Mara Gleason & O'Callaghan, Chicago, IL | 07-18-2017 |
| Somo, et al. v. Advanced Custom Engineered Systems & Equiment Co., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 13 L 012720 | Rittenberg Buffen Gulbrandsen Robinson & Saks, Chicago, IL | 07-14-2017 |
| Nagpal v. Tencer, DC, et al. | Circuit Court of DeSoto County, Mississippi | CV 2015-176GCD | Merkel & Cocke, Clarksdale, MS | 07-14-2017 |
| Pilarski, et al. v. University of Maryland Medical Center, LLC, et al. | Circuit Court for Baltimore City | 24-C-16-002677 | Wais Vogelstein Forman & Offutt, Baltimore\MD | 07-11-2017 |
| Friel v. Miller, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2015-L-006664 | Snorf Law Office* Chicago, IL | 07-10-2017 |
| Smith v. BNSF Railway Company | State of New Mexico, County of Valendcia, Thirteenth Judicial District | D-1314-CV-2015-00606 | Davis Bethune & Jones, Kansas City, MO | 07-10-2017 |

**LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN**
**STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021**

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Miller v. Dunavant Farms Trucking, LLC., et al. | Circuit Court of St. Francis County, Arkansas | CV-2015-188-1 | Langdon & Emison, Lexington, MO | 07-06-2017 |
| Carreto-Silva v. Velcani | Circuit Court of Cook County, Illinois, County Department - Law Division | 14 L 011515 | Shim Law Office, Rolling Meadows, IL | 06-30-2017 |
| Hedrick v. TJ Materials, LLC, et al. | Lake Superior Court, Civil Division, Room Four, Sitting at Gary, Indiana | 45D04-1505-CT-00095 | Allen Law Group, Valparaiso, IN | 06-29-2017 |
| Howze v. United States of America | United States District Court, Eastern District of Arkansas, Eastern Division | 2:16-0003 BRW | Peraica & Associates, Chicago, IL | 06-28-2017 |
| Murdick v. Manbeck, M.D. | State of Indiana, County of St. Joseph, Circuit Court | 71C01-1504-CT-00D154 | Pavich Law Group, Chicago, IL | 06-27-2017 |
| Mapp v. Chen, M.D. | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 L 001998 | Cogan & Power, Chicago, IL | 06-27-2017 |
| ACG Industries Inc., et al. v. Rollins Properties, et al. | Superior Court of the State of California for the County of Los Angeles, Central District | BC627525 | Klein Litigation, Beverly Hills, CA | 06-26-2017 |
| O'Sullivan v. O'Sullivan | Circuit Court of Cook County, Illinois, County Department - Domestic Relations Division | 15-D-303 | Leving Law Office, Chicago, IL | 06-23-2017 |
| Hopfer/O'Grady v. Advocate Health and Hospitals Corportation, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 14 L 1744 | McNabola & Associates, Chicago, IL | 06-23-2017 |
| Hood, Jr. v. D&L Steel Transport, Inc., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2015 L 008640 | Lipkin & Higgins, Chicago, IL | 06-22-2017 |
| Ruch/Kazort v. Padgett, et al. | State of Illinois, Circuit Court of the 17th Judicial Circuit | 2015 L 315 | Langdon & Emison, Lexington, MO | 06-20-2017 |
| Koch v. Scientific Image Center Management, Inc., et al. | Superior Court of California, County of San Mateo | CIV 513706 | Kastner Kim, Mountain View, CA | 06-19-2017 |
| Wynn v. BNSF Railway Company, et al. | Circuit Court of Cass County, State of Missouri | 15CA-CC00241, Divison 1 | Davis Bethune & Jones, Kansas City, MO | 06-19-2017 |
| Cramsie-Homan v. Blue Island Hospital Company, LLC., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 14 L 1017 | Motherway & Napleton, Chicago, IL | 06-15-2017 |
| Cline v. HEB Grocery Co., L.P. | District Court, Hildago County, Texas, 206th Judicial District | C-2198-15-D | Tummel & Casso, Edinburg, TX | 06-09-2017 |
| Ragland v. Dr. Ahuja, et al. | Circuit Court of the First Judicial Court, Williamson County, Illinois | 15-L51 | Womick Law Firm, Carbondale, IL | 06-08-2017 |
| Nemec v. Roberts Environmental Control Corp, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 13 L 12753 | O'Connor Law Group, Chicago, IL | 06-05-2017 |
| Zohar/Noury v. Summerlin Hospital Medical Center, et al. | District Court, Clark County, Nevada | A-11-642383-C, Dept No. XVII | Luh & Associates, Las Vegas, NV | 06-02-2017 |
| Sikora v. Manor Care of Elk Grove Village, LLC., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 14 L 8881 | Malman & Associates, Chicago\IL | 06-02-2017 |
| Doe v. Board of Education of the City of Chicago | Circuit Court of Cook County, Illinois, County Department - Law Division | 2014 L 010388 | Montgomery Law Firm, Chicago, IL | 06-01-2017 |
| Staton v. VHS San Antonio Partners, et al. | District Court, 225th Judicial District, Bexar County, Texas | 2016-CI-07398 | Krebs Law Office, Austin, TX | 05-24-2017 |
| Carter v. Mayo, Jr. M.D., et al | Commonwealth of Kentucky, McCracken Circuit Court, Division 1 | 12-CI-00595 | Moore Malone & Safreed, Owensboro, KY | 05-23-2017 |
| Santiago v. Protechockey Ponds LLC, et al. | Superior Court of New Jersey, Law Division - Middlesex County | SOM-L-381-15 | Gill & Chamas, Perth Amboy, NJ | 05-16-2017 |
| Chatragadda v. Duquesne University | United States District Court for the Western District of Pennsylvania | 15-1051 | Praetorian Law Group, Pittsburgh\PA | 05-12-2017 |
| Starling, M.D. v. Banner Health, et al. | United States District Court for the District of Arizona | CV-16-708-PHX-NVW | Willis & Willis, Hilliard, OH | 05-11-2017 |
| Lipari v. Shawmut Design and Construction, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2014 L 002825 | Pullano Law Firm, Chicago\IL | 05-11-2017 |
| Kenu v. Belkin International, Inc. et al | United States District Court, Northern District of California, San Francisco Division | 3:14-cv-04327-JD | Troutman Sanders, San Francisco, CA | 05-09-2017 |
| Ragland v. Dr. Ahuja, et al. | Circuit Court of the First Judicial Court, Williamson County, Illinois | 15-L51 | Womick Law Firm, Carbondale, IL | 05-04-2017 |
| Craig v. Village Greene Phase IV Condominium Assn. Building B, et al. | Circuit Court of Cook County, Illinois, County Department, Law Division | 14 L 9567 | Curcio Law Offices, Chicago, IL | 05-03-2017 |
| Zurawski v. Rezin Orthopedics and Sports Medicine, S.C. , et al. | Circuit Court for the 12th Judicial Circuit, Will County, IL | 10 L 196 | Tarpey Jones & Schroeder, Chicago\IL | 04-25-2017 |
| Johnson/Toth v. White River Health System Inc., et al. | Circuit Court of Independence County, Arkansas, Civil Division | CV-2012-026-2 | Wilcox Lacy, Jonesboro, AR | 04-21-2017 |
| Tyson Gonzales v. Navarro, et al. | District Court, Clark County, Las Vegas, NV | A-15-728994-C, Dept No. XXXI | Powell Law Firm, Las Vegas, NV | 04-20-2017 |
| Kobes v. Bruning | State of Illinois in the Circuit Court of the 17th Judicial Circuit, County of Winnebago | 13 L 239 | Rouleau Law Office, Rockford, IL | 04-17-2017 |
| Alvarez, et al. v. Ashley Furniture Industries, Inc., et al. | United States District Court, Central District of California | CV 16-00630 MWF (MRWx) | Arias Sanguinetti Stahle Torrijos, Los Angeles, CA | 04-15-2017 |

## LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
## STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Shenouda v. Touch, LLC, et al. | District Court, Clark County, Nevada | A-15-726567-C, Dept No. II | Paternoster Law Group, Las Vegas, NV | 04-14-2017 |
| Francis v. FedEx Freight, Inc., et al. | State of Louisiana, Parish of Beauregard, Thirty-Sixth Judicial District Court | C-2014-0200 | Davis Bethune & Jones, Kansas City, MO | 04-13-2017 |
| Simmons v. The City of Chicago, et al. | United States District Court, Northern District of Illinois, Eastern Division | 14 C 9042 | Hofeld Law Office, Chicago, IL | 04-13-2017 |
| Tinnus Enterprises and Zuru Ltd. V. Telebrand Corp | United States District Court for the Eastern District of Texas, Tyler Division | 6:16-cv-33 | Dunlap Bennett & Ludwig, Richmond\VA | 04-12-2017 |
| Moradi v. Nevada Property | District Court, Clark County, Nevada | A-14-698824-C, Dept. 20 | Cohen & Padda, Las Vegas\NV | 04-04-2017 |
| Jones v. City of San Antonio, Texas, et al. | United States District Court, Western District of Texas, San Antonio Division | 5:14-cv-00328-FB-HJB | Washington Law Office, Dallas\TX | 03-31-2017 |
| Baptist v. Ford Motor Company | United States District Court for the Northern District of Illinois, Eastern Division | 1:13-cv-08974 | Sinson Law Group, Chicago\IL | 03-30-2017 |
| Pfeiffer v. Taylor, D.O. | Iowa District Court for Webster County | LACV318680 | Gibbs & Associates, Mason, OH | 03-30-2017 |
| Bortle/Hyer v. Johns Hopkins Bayview Medical Center, Inc., et al. | Circuit Court for Baltimore City, Maryland | 24C16003241MM | Wais Vogelstein Forman & Offutt, Baltimore, MD | 03-27-2017 |
| MacIsaac v. IGS Assoc., LLC, et al. | Superior Court of New Jersey, Law Division - Bergen County | L-1264-15 | Chasan Leyner & Lamparello, Secaucus\NJ | 03-24-2017 |
| Alfaro v. Frontier Logistic Services II, Inc. | State of Illinois, Human Rights Commission | Charge No. 2013CF1357* EEOC No. 21BA30407 | Bellows & Bellows, Chicago\IL | 03-22-2017 |
| Okic v. Fullerton Surgery Center, LTD., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 14 L 008168 | Peralca & Associates, Chicago, IL | 03-21-2017 |
| Miller v. McCoy Elkhorn Coal Corporation | Commonwealth of Kentucky, Knott Circuit Court | 13-CI-00115 | Collins Law Office, Salyersville, KY | 03-17-2017 |
| Frulla v. Hyatt Corporation, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2012 L 001381 | Sinson Law Group, Chicago\IL | 03-17-2017 |
| Stoller v. Premier Capital, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 L 008969 | Kiss Law Office, Gurnee\IL | 03-15-2017 |
| Hullum v. Dr. Anthony Daniels, et al. | Circuit Court of Mississippi County, Arkansas, Chickasawba District, Civil Division | CV-2016-118 | Scholtens & Averitt, Jonesboro, AR | 03-14-2017 |
| Bokos v. Shepard, M.D., et al. | Circuit Court of Cook County, County Department - Law Division | 13 L 11680 | Motherway & Napleton, Chicago, IL | 03-13-2017 |
| Illiano, et al. v. Howard County General Hospital, Inc., et al. | Circuit Court for Howard County, Maryland | C-16-107400 | Wais Vogelstein Forman & Offutt, Baltimore, MD | 03-10-2017 |
| Tatka v. Overlook Hospital, et al. | Superior Court of New Jersey, Union County, Law Division | UNN-L-1748-13 | Lomurro Law, Freehold\NJ | 03-09-2017 |
| Cravatta v. Metra d/b/a Northeast Illinois Regional Commuter Railroad Corporation | Circuit Court of Cook County, Illinois, County Department - Law Division | 2014 L 006667 | Langdon & Emison, Lexington\MO | 03-01-2017 |
| Moskvine v. VHS Acquisition Subsidiary Number 3, Inc., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 13 L 8127 | Cogan & Power, Chicago\IL | 03-01-2017 |
| Parker v. Bill Melton Trucking, Inc., et al. | United States District Court, Northern District of Texas, Dallas Division | 3:15-cv-02528-G | Pittman Law Firm, Dallas/TX | 02-28-2017 |
| Morgan v. Ferrante, MD, et al. | Superior Court of New Jersey, Law Division, Passaic | PAS-L-741-14 | Quinn Law Office, Red Bank, NJ | 02-27-2017 |
| Jimenez v. Klabunde, et al. | Circuit Court of Cook County, Illinois, County Department, Law Divison | 13 L 9280 | Dusky Law Office, Chicago, IL | 02-27-2017 |
| Pilarski, et al. v. University of Maryland Medical Center, LLC, et al. | Circuit Court for Baltimore City | 24-C-16-002677 | Wais Vogelstein Forman & Offutt, Baltimore, MD | 02-24-2017 |
| Lopez v. Vidljinovic, et al. | United States District Court, Northern District of Illinois, Eastern Division | 12 C5751 | DeRose and Associates, Hinsdale\IL | 02-23-2017 |
| McLaughlin, et al. v. Andy's Coin Launderies, LLC, et al. | Court of Common Pleas of Hamilton County, Ohio | A1600791 | Bieser Greer & Landis, Dayton, OH | 02-21-2017 |
| Brumley v. Norton Hospitals, Inc., et al. | Jefferson Circuit Court, Division Ten (10) | 14-CI-006217 | Franklin Law Group, Louisville, KY | 02-21-2017 |
| Tatka v. Overlook Hospital, et al. | Superior Court of New Jersey, Union County, Law Division | UNN-L-1748-13 | Lomurro Law, Freehold, NJ | 02-16-2017 |
| Mikus v. Porter Gwaltney, et al. | Circuit Court, Seventh Judicial Circuit, Sangamon County, Illinois | 12-L-79 | Ryan Ryan & Landa, Chicago, IL | 02-16-2017 |
| Macias/Ramirez v. Texas Taco Cabana | District Court, 45th Judical District, Bexar County, Texas | 2014-CI-08567 | Grossman Law Offices, Dallas, TX | 02-15-2017 |
| Bauscher/Robinson v. Freeport Memorial Hospital, et al. | State of Illinois, Circuit Court of the 15th Judicial Circuit, County of Stephenson | 2012 L 17 | Zinger Law Office, Chicago, IL | 02-14-2017 |
| Powers v. Young Men's Christian Association of Southwest Illinois | Circuit Court, Twentieth Judicial Circuit, St. Clair County, Illinois | 13-L-638 | Gori Julian & Associates, Edwardsville, IL | 02-14-2017 |
| Stritzel v. Advocate Health and Hospitals Corporation, et al. | Circuit Cour of Cook County, Illinois, County Department - Law Division | 14 L 009848 | McNabola Law Group, Chicago, IL | 02-13-2017 |

**LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN**
**STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021**

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Deckard/Darling v. Trapp, et al. | 4th Judicial District Court, Rusk County, Texas | 2016-070 | Grossman Law Offices, Dallas, TX | 02-13-2017 |
| Wallace v. Wondwossen Tegen Aragaw, et al. | Circuit Court of Cook County, Illinois, County Department- Law Division | 2013 L 011927 | Woodruff Johnson & Palermo, Aurora, IL | 02-10-2017 |
| Carandang-Patrick, et al. v. The Johns Hopkins Hospital, et al. | Circuit Court for Baltimore City | 24-C-16-001959 | Wais Vogelstein Forman & Offutt, Baltimore, MD | 02-10-2017 |
| Doe v. Marten, M.D., et al. | Superior Court of the State of California for the County of San Francisco | CPF-11-511337 | Brownstone Law Group, Vista\CA | 02-09-2017 |
| Sikora v. Manor Care of Elk Grove Village, LLC., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 14 L 8881 | Malman & Associates, Chicago, IL | 02-07-2017 |

# EXHIBIT 9
# Excerpts from Deposition of Don Blankenship taken on April 29, 2021

**In the Matter Of:**

*BLANKENSHIP vs*

*FOX NEWS NETWORK*

---

*DON BLANKENSHIP*

*April 29, 2021*

---

# LEXITAS™

1

```
 1              UNITED STATES DISTRICT COURT
 2            SOUTHERN DISTRICT OF WEST VIRGINIA

 3                  CHARLESTON DIVISION

 4      --------------------------X

 5    DON BLANKENSHIP,         :

 6              Plaintiff,:   Case No.

 7        v.                :   2:19-cv-00236

 8    FOX NEWS NETWORK LLC,    :

 9    et al.,                 :

10              DefendantS.:

11      --------------------------X

12

13      REMOTE VIDEOTAPED STENOGRAPHIC DEPOSITION OF

14                  DON BLANKENSHIP

15              Thursday, April 29, 2021

16                   9:18 a.m.

17

18

19

20

21    Job No.:   2021-788054

22    Pages:  1 - 507

23    STENOGRAPHICALLY REPORTED BY:

24    GISELLE MITCHELL-MARGERUM, RPR, CRI, CCR, LCR, CSR
```

USCA4 Appeal: 22-1198    Doc: 48    Filed: 05/25/2022    Pg: 162 of 307
Case 2:19-cv-00236   Document 911-9   Filed 06/07/21   Page 4 of 20 PageID #: 14560

Don Blankenship - April 29, 2021

2

1              Deposition of DON BLANKENSHIP, held remotely,

2     via videoconference at:

3

4

5          VIA VIDEOCONFERENCE

6

7

8

9              Pursuant to agreement, before Giselle

10    Mitchell-Margerum, Registered Professional Reporter,

11    Certified Reporting Instructor, Licensed Court Reporter

12    (TN), Certified Court Reporter (GA), Certified Court

13    Reporter (WA), Certified Shorthand Reporter (OR), and

14    Notary Public (Washington, D.C.).

15

16

17

18

19

20

21

22

23

24

USCA4 Appeal: 22-1198   Doc: 48      Filed: 05/25/2022   Pg: 163 of 307
Case 2:19-cv-00236   Document 911-9   Filed 06/07/21   Page 5 of 20 PageID #: 14561

Don Blankenship - April 29, 2021

3

```
 1              A P P E A R A N C E S

 2  ON BEHALF OF PLAINTIFF:

 3          JEREMY GRAY, ESQ.

 4          SAAM TAKALOO, ESQ.

 5          EARLY SULLIVAN WRIGHT GIZER & McRAE LLP

 6          6420 Wilshire Boulevard, 17th Floor

 7          Los Angeles, California 90048

 8          323.301.4660

 9

10          JEFFREY S. SIMPKINS, ESQ.

11          SIMPKINS LAW OFFICE, PLLC

12          102 West 2nd Avenue

13          Williamson, West Virginia 25661

14          302.235.2735

15

16  ON BEHALF OF DEFENDANT NBCUNIVERSAL MEDIA, MSNBC,

17  and CNBC:

18          JARED M. TULLY, ESQ.

19          FROST BROWN TODD LLC

20          United Bank Building

21          500 Virginia Street East, Suite 1100

22          304.348.2404

23

24
```

Don Blankenship - April 29, 2021

4

```
 1    APPEARANCES (cont'd):

 2

 3    ON BEHALF OF DEFENDANT NBCUNIVERSAL MEDIA, MSNBC,

 4    and CNBC:

 5            KEVIN SHOOK, ESQ.

 6            FROST BROWN TODD LLC

 7            One Columbus Center

 8            10 West Broad Street, Suite 2300

 9            Columbus, Ohio 43215

10            614.559.7214

11

12    FOR DEFENDANT FOX NEWS NETWORK, LLC:

13            SHAWN REGAN, ESQ.

14            SILVIA OSTROWER, ESQ.

15            HUNTON ANDREWS KURTH LLP

16            200 Park Avenue

17            New York, New York 10166

18            212.309.1204

19

20            J. ZAK RITCHIE, ESQ.

21            HISSAM FORMAN DONOVAN RITCHIE

22            707 Virginia Street East, Suite 260

23            Charleston, WV 25301

24
```

USCA4 Appeal: 22-1198    Doc: 48    Filed: 05/25/2022    Pg: 165 of 307
Case 2:19-cv-00236   Document 911-9   Filed 06/07/21   Page 7 of 20 PageID #: 14563

Don Blankenship - April 29, 2021

5

```
 1    APPEARANCES (cont'd):

 2    FOR DEFENDANT AMERICAN BROADCASTING COMPANIES, HD

 3    MEDIA:

 4              ERIC FEDER, ESQ.

 5              DAVIS WRIGHT TREMAINE

 6              920 Fifth Avenue, Suite 3300

 7              Seattle, Washington 98104

 8              206.757.8232

 9

10    FOR DEFENDANT CABLE NEWS NETWORK, INC.,

11    and WP COMPANY:

12              STEPHEN FUZESI, ESQ.

13              WILLIAMS & CONNOLLY LLP

14              725 Twelfth Street, Northwest

15              Washington, D.C. 20005

16              202.434.5181

17

18    ON BEHALF OF ELI LEHRER:

19              JENNIFER JACKMAN, ESQ.

20              BREIANNE VARNER REDD

21              DICKIE MCCAMEY

22              2001 MAIN STREET

23              SUITE 501

24              WHEELING, WV 26003
```

USCA4 Appeal: 22-1198    Doc: 48       Filed: 05/25/2022    Pg: 166 of 307
Case 2:19-cv-00236   Document 911-9   Filed 06/07/21   Page 8 of 20 PageID #: 14564

6

```
 1     APPEARANCES (cont'd):

 2

 3     ALSO PRESENT:

 4            MATTHEW HEINS

 5            MINDY JOHNSON

 6            JIM MCLAUGHLIN

 7            ARON GOETZL

 8            DAVID VIGILANTE

 9            KELLY BLACK-HOLMES

10            SONA REWARI

11            ERIC EARLY

12            BARBIE SAMPLES

13            MICHAEL SPARKS

14            JAMES CAGLE

15            DAVE HENDRICKSON

16            SEAN MCGINLY, ESQ.

17       RICK CHRISTIAN, Videographer

18

19

20

21

22

23

24
```

Don Blankenship - April 29, 2021

12

```
 1              P R O C E E D I N G S

 2              THE VIDEOGRAPHER:  All right.

 3      Good morning.  We are now on the record.

 4      My name is Rick Christian.  I'm the

 5      videographer retained by Lexitas.

 6              Today's date is April 29th 2021,

 7      and the video time is 9:18 a.m. Eastern.

 8      This deposition is in the matter of Don

 9      Blankenship v. Fox News Network LLC, et

10      al.  The deponent is Don Blankenship.

11              Counsel will be noted on the

12      stenographic record.

13              The court reporter is

14      Giselle Mitchell, and will now swear in

15      the witness.

16                  DON BLANKENSHIP

17  Having been duly sworn testified as follows:

18              MR. REGAN:  Giselle, do we need

19      to take appearances of counsel and

20      everyone who's on?

21              THE COURT REPORTER:  I can't

22      see who's speaking.

23              MR. SIMPKINS:  Jeff Simpkins;

24      Simpkins Law.
```

USCA4 Appeal: 22-1198    Doc: 48    Filed: 05/25/2022    Pg: 168 of 307
Case 2:19-cv-00236   Document 911-9   Filed 06/07/21   Page 10 of 20 PageID #: 14566

Don Blankenship - April 29, 2021

156

1    U.S. Senate.

2         Q.    So, the Upper Big Branch tragedy

3    impacted your interest in getting employment

4    or your ability to obtain employment?

5                   MR. SIMPKINS:  Objection as to

6         form.

7         A.    I don't think the tragedy had much

8    impact.   The reporting on the tragedy had a

9    lot of impact.

10        Q.    So, the reporting on the Upper Big

11   Branch tragedy impacted your ability to obtain

12   employment after retirement?

13                  MR. SIMPKINS:  Objection as to

14        form?

15        A.    I think it's fair to say that the --

16   the reporting -- the false reporting and the

17   FBI activity and public statements all had an

18   impact on my desire or likelihood of

19   successfully seeking employment, so there were

20   a lot of factors over that, I guess, about an

21   eight-year period, seven-year period.

22        Q.    And does that impact you still to

23   this day?

24        A.    I don't know.  You know, I mean --

USCA4 Appeal: 22-1198   Doc: 48   Filed: 05/25/2022   Pg: 169 of 307
Case 2:19-cv-00236   Document 911-9   Filed 06/07/21   Page 11 of 20 PageID #: 14567

Don Blankenship - April 29, 2021

157

1          MR. SIMPKINS:   Let me object as

2    to form, and then go ahead and answer.

3    Go ahead.

4               THE WITNESS:   Okay.

5          It still impacts today, but I think

6    I about had it beat when I took the lead

7    in the U.S. Senate race.

8          Because when I started to run, I was

9    probably 10 percent favorable, when,

10   obviously, I was far more than 10 percent

11   favorable, when I was in the lead

12   post-May 1.

13         I couldn't have been in the lead of

14   the Republican nomination, West Virginia,

15   if I had 10 percent favorable rating.

16         But no doubt, the reporting on the

17   explosion had a big impact.   Had the

18   media told just two or three truths, it

19   would not have had nearly the impact.

20   BY MR. SHOOK:

21      Q.   Okay.   And you said you thought you

22   had it beat because you were ahead in the

23   polls, at some point in your election.   Right?

24               MR. SIMPKINS:   Objection as to

USCA4 Appeal: 22-1198 Doc: 48 Filed: 05/25/2022 Pg: 170 of 307
Case 2:19-cv-00236 Document 911-9 Filed 06/07/21 Page 12 of 20 PageID #: 14568

Don Blankenship - April 29, 2021

170

```
 1   probably summer of 2014.
 2        Q.   It was after you retired?
 3        A.   Yes.
 4        Q.   Did you make any money associated
 5   with the Regcession documentary?
 6             MR. SIMPKINS:   Objection as to
 7        form.
 8        A.   I wasn't trying to make any money.
 9   I was trying to repair a reputation that might
10   lead to both a more normal life and better
11   employment opportunities.
12             And to save coal miners' lives,
13   which I think that if they watch it and look
14   at the recommendations, it will save lives.
15        Q.   What is Number 23 Inc.?
16        A.   It is just my son's dirt track
17   racing team, that they raced in a couple of
18   series and one of the series is called the
19   world of outlaws and one Lucas racing or
20   something like that.
21        Q.   What is your role with Number 23
22   Inc.?
23             MR. SIMPKINS:   Objection as to
24        form.
```

Don Blankenship - April 29, 2021

194

1   feel, themselves, that they should not impact

2   shareholder value by associating with people

3   that are under attack from the media or the

4   Government.

5        Q.    That was true, February 2nd 2015,

6   and that's continued right up until today.

7   Right?

8        A.    Yes.   To lesser degrees.   Of course,

9   today, you guys have gone silent because you

10  don't want to talk about the lies told before.

11            But, so, I don't know what's

12  happening out there in the -- in the world of

13  my reputation, but here in this period of

14  time, there was a lot of publicity.   Like you

15  said, I'd just been indicted a few months

16  before.   I was facing trial.

17            You know, it was probably -- other

18  than just after the explosion, perhaps the

19  worst time.

20       Q.    Who is Chris Cline?   Or who was

21  Chris Cline?

22       A.    He was both a friend of mine and a

23  business associate.   He ran Cline Resources.

24  You might have seen the publicity, July, I

USCA4 Appeal: 22-1198    Doc: 48    Filed: 05/25/2022    Pg: 172 of 307
Case 2:19-cv-00236   Document 911-9   Filed 06/07/21   Page 14 of 20 PageID #: 14570

Don Blankenship - April 29, 2021

369

1   question I asked.  The question I asked --

2       A.   I'm --

3       Q.   The question I asked -- I understand

4   why you're an effective political debater.

5   But, my question is much narrower.

6                It's just simply, that you

7   believe that the reputational harm that

8   resulted from your trial and conviction

9   persists today.  Correct?

10      A.   I believe that it persists.  I

11  believe that the needle had come down way down

12  on unfavorables on May the 1st, and that Fox

13  and MSNBC, and others, intentionally

14  heightened the unfavorables, leading into the

15  election.  Possibly even misled the President

16  of the United States.  Hope to find out

17  whether they misled the President's son.

18                But I think it's a horrible thing

19  that your clients did.  And I think the best

20  thing for them to do is to come clean, rather

21  than -- and plea bargain, rather than to do

22  what they are doing.  Because the trial's

23  going to be very interesting.

24                MR. REGAN:  Let's take a moment

USCA4 Appeal: 22-1198    Doc: 48         Filed: 05/25/2022    Pg: 173 of 307
Case 2:19-cv-00236   Document 911-9   Filed 06/07/21   Page 15 of 20 PageID #: 14571

Don Blankenship - April 29, 2021

427

```
1    long as it takes.  You go right ahead and

2    talk all night if you want.

3              MR. FUZESI:  Sounds good.

4              THE WITNESS:  Feels good just

5    to tell you guys that you keep lying, you

6    know, and what the truth is.

7         The truth is that the Government

8    blew the coal mine up, killed people, and

9    then I was about to correct that with

10   winning the Republican Primary, and then

11   the General Election.

12             And the establishment or whoever --

13   whatever you call it -- could not stand

14   it.  It's a -- it's a pretty simple

15   story.

16   BY MR. FUZESI:

17        Q.   Let me ask, Mr. Blankenship, are you

18   confident that if you had won the primary, you

19   would have gone on to win the General

20   Election?

21        A.   I'm confident that I would have

22   started off maybe 10 points down, as opposed

23   to the 70 that I was probably down when I

24   started this one.
```

Don Blankenship - April 29, 2021

437

1          For example, you know, I think

2    Donald Trump Junior has two misdemeanors.  I'm

3    not sure.  But, you know, people with

4    misdemeanors are in the millions, and they

5    usually don't make that the headline story.

6          Q.    But, Sir, you recognize, at least,

7    that it was going to be a challenge that you

8    had to overcome, during your campaign, that

9    you had been convicted of a crime.  Right?

10              MR. SIMPKINS:  Objection as to

11         form.

12         A.    I knew that I had to overcome the

13    media's bias and lies, and that they would

14    continue to be repeated.

15              And that, therefore, when I saw us

16    begin to slip, about the time of those text

17    messages, I was more concerned, and

18    questioning whether I could pull it off or

19    not.

20              Because I knew from the beginning as

21    you've said, that it was a challenge, and that

22    it would be a major upset.

23         Q.    And the time of those text messages,

24    that is March 2018.  Correct?

Don Blankenship - April 29, 2021

456

```
 1              I'm not in favor of blocking them,
 2      unless they are using profanity, or something.
 3      Because I'd rather respond to them.  So it's
 4      responsible that I did that, or said that.
 5          Q.   All right.  And you say:
 6                   "Still a lot of hate out there,
 7      despite our efforts to communicate the truth."
 8                   Do you see that?
 9          A.   Yes.
10          Q.   And you said that on March 15th
11      2018?
12          A.   Yes.
13          Q.   And when you said "still a lot of
14      hate out there," on March 15th 2018, what
15      were you referring to, Sir?
16          A.   Still a lot of people that were
17      believing your lies.  And, therefore, still
18      disliked me.
19          Q.   When you say "your lies?"
20          A.   Your clients, in general.  I don't
21      mean yours.  But your clients and others.
22          Q.   You are referring --
23          A.   I don't recall what the famous
24      saying is, but it's -- it's hard to refute
```

USCA4 Appeal: 22-1198    Doc: 48        Filed: 05/25/2022    Pg: 176 of 307
Case 2:19-cv-00236   Document 911-9   Filed 06/07/21   Page 18 of 20 PageID #: 14574

Don Blankenship - April 29, 2021

484

1    say that there were many times, over the

2    course of your campaign, that you were highly

3    critical of members of your campaign staff?

4                    MR. SIMPKINS:  Objection as to

5         form.

6         A.    Yeah.   I'm sure that I would have

7    been critical.   I'm critical of a lot of

8    things.   So, yeah.   It wouldn't surprise me.

9         Q.    You don't deny that you expressed

10   criticism and frustration about the

11   performance of your campaign staff?

12                   MR. SIMPKINS:   Objection as to

13        form.

14        A.    I don't deny that I expressed

15   frustration about a lot of things in my life.

16   So...

17        Q.    Including the performance of your

18   campaign staff?

19                   MR. SIMPKINS:   Objection as to

20        form.

21        A.    And including the lies of your

22   clients.   Yes.

23        Q.    Sir, my question was, including the

24   performance of your campaign staff?   Correct?

Don Blankenship - April 29, 2021

485

 1          MR. SIMPKINS:  Same objection.

 2      A.     And including the lies of your

 3  clients.

 4      Q.    You agree with me that you expressed

 5  criticism and frustration about the

 6  performance of your campaign staff.  Correct?

 7      A.    Yes.  And I think you agree with me

 8  that your clients should not be defaming

 9  Senate candidates in the election cycle.

10      Q.    Sir, I couldn't agree -- I couldn't

11  disagree more with your claims in this

12  lawsuit.

13              I'm simply asking you questions

14  as part of this discovery process.

15              MR. SIMPKINS:  I thought you

16      were first agreeing.

17              THE WITNESS:  You couldn't

18      disagree more with my claims in this

19      lawsuit?  So you think that --

20              MR. SIMPKINS:  First, he

21      agreed.

22  BY MR. FUZESI:

23      Q.    All right.  Let's -- let's keep

24  going.

USCA4 Appeal: 22-1198    Doc: 48        Filed: 05/25/2022    Pg: 178 of 307
Case 2:19-cv-00236   Document 911-9   Filed 06/07/21   Page 20 of 20 PageID #: 14576

Don Blankenship - April 29, 2021

505

1              REPORTER'S   CERTIFICATE

2

3         I, GISELLE MITCHELL-MARGERUM, the undersigned,
   a Registered Professional Reporter, Certified
4  Reporting Instructor, Licensed Court Reporter, and
   Certified Court Reporter, do hereby certify:
5
          That the witness, DON BLANKENSHIP, before
6  examination was remotely duly sworn to testify to
   the truth, the whole truth, and nothing but the
7  truth.

8         That the foregoing deposition was taken
   remotely stenographically by me on Thursday, April
9  29, 2021, and thereafter was transcribed by me, and
   that the deposition is a full, true, and complete
10 transcript of the testimony, including questions
   and answers, and objections, motions and exceptions
11 made by counsel.

12        That reading and signing was not requested;
   and that I am neither attorney nor counsel for, nor
13 related to or employed by, any of the parties to
   the action in which this deposition was taken; and
14 that I have no interest, financial or otherwise, in
   this case.

15

16        IN WITNESS WHEREOF, I have hereunto set
   my hand this 4th day of May       2021.

17

18

19

20

21 GISELLE MITCHELL-MARGERUM, RPR, CRI, CCR, LCR, CSR

22

23

24

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## AT CHARLESTON

DON BLANKENSHIP,                     :
                                     :
            Plaintiff,               :        Civil Action No. 2:19-cv-000236
                                     :
        v.                           :        Judge John T. Copenhaver, Jr.
                                     :
HONORABLE ANDREW NAPOLITANO,         :
(RET.), *et al.*                     :
                                     :
            Defendants.              :

### DEFENDANT MSNBC CABLE, LLC'S REPLY IN SUPPORT OF ITS
### MOTION FOR SUMMARY JUDGMENT

Kevin T. Shook (OH #0073718)
(*pro hac vice*)
Frost Brown Todd LLC
10 West Broad Street, Suite 2300
Columbus, OH 43215
kshook@fbtlaw.com
(614) 464-1211 Phone
(614) 464-1737 Fax

Ryan W. Goellner (OH #0093631)
(*pro hac vice*)
Frost Brown Todd LLC
3300 Great American Tower
301 E. Fourth Street
Cincinnati, OH 45202
rgoellner@fbtlaw.com
(513) 651-6800 Phone
(513) 651-6981 Fax

Jared M. Tully (WV Bar No. 9444)
Alex J. Zurbuch (WV Bar No. 12838)
Frost Brown Todd LLC
500 Virginia Street East, Suite 1100
Charleston, WV 25301
jtully@fbtlaw.com
azurbuch@fbtlaw.com
(304) 345-0111 Phone
(304) 345-0115 Fax

*Attorneys for MSNBC Cable, LLC*

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................1

II.    ARGUMENT ..........................................................................................................2

    A.    Blankenship Has No Clear and Convincing Evidence of Actual
       Malice. ..........................................................................................................2

        1.    Blankenship Misstates His Burden of Proving Actual
            Malice. ................................................................................................3

        2.    Blankenship's Unsupported Doubt About Hayes'
            Credibility Is Not Sufficient to Create a Dispute of Fact and
            Survive Summary Judgment. ..............................................................5

        3.    Blankenship Cannot Circumvent the Actual Malice
            Standard by Distorting Hayes' Testimony................................................7

        4.    MSNBC's Policies Do Not Create a Dispute of Fact. ..............................10

        5.    The *All In* Staff Communications Are Also Irrelevant. ...........................11

    B.    Blankenship Has Failed to Meet His Burden of Establishing
       Material Falsity. ..........................................................................................12

    C.    Blankenship Cannot Prove Causation or Actual Damages as a
       Matter of Law. .............................................................................................17

III.   CONCLUSION......................................................................................................20

## **TABLE OF AUTHORITIES**

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .............................................3, 5, 13

*Ballengee v. CBS Broadcasting, Inc.*, 331 F.Supp.3d 533 (S.D. W. Va. 2018) ...........................16

*Blankenship v. Napolitano*, 451 F.Supp.3d 596 (S.D. W.Va. 2020) ...................................7, 10, 13

*Brokers Choice of America, Inc. v. NBCUniversal, Inc.*, 861 F.3d 1081 (10th Cir. 2017) ...........................................................................................................13, 15

*Bustos v. A & E Television Networks*, 646 F.3d 762 (10th Cir. 2011) ...........................................16

*Byndon v. Pugh*, 350 F.Supp.3d 495 (N.D. W.Va. 2018)..................................................2

*Carr v. Forbes, Inc.*, 259 F.3d 273 (4th Cir. 2001) ......................................................12

*Cobb v. Time Inc.*, No. 3:94–0836 1999 WL 1027044 (M.D. Tenn. Feb. 17, 1999) ...................19

*Denny v. Seaboard Lacquer, Inc.*, 487 F.2d 485 (4th Cir. 1973) ......................................4

*Erickson v. Jones St. Publishers, LLC*, 629 S.E.2d 653 (S.C. 2006)...........................................19

*Fitzgerald v. Penthouse Int'l, Ltd.*, 691 F.2d 666 (4th Cir. 1982) ...............................3, 6

*Foodbuy, LLC v. Gregory Packaging, Inc.*, 987 F.3d 102 (4th Cir. 2021)..............................17

*Hagler v. WSAZ NewsChannel 3*, No. 3:19-cv-45, 2020 WL 1613430 (S.D. W. Va. Jan. 15, 2020) ...........................................................................................16

*Hancock v. Mitchell*, 98 S.E. 65 (W. Va. 1919) ......................................................20

*Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657 (1989) .......................4, 5, 11

*Hatfill v. N.Y. Times Company*, 532 F.3d 312 (4th Cir. 2008) ......................................9

*Hatfill v. New York Times Co.*, 488 F.Supp.2d 522 (E.D. Va. 2007) ...........................................16

*Henry v. Nat'l Ass'n of Air Traffic Specialists, Inc.*, 836 F.Supp. 1204 (D. Md. 1993) ...........................................................................................4

*Hinerman v. Daily Gazette Co., Inc.,* 423 S.E.2d 560 (W. Va. 1992).........................................12

*Hutchinson v. Proxmire*, 443 U.S. 111 (1979) ......................................................3

*Jackson v. Hartig*, 645 S.E.2d 303 (Va. 2007) ......................................................10

*Kinney v. Daniels*, 574 F. Supp. 542 (S.D.W. Va. 1983) ............................................20

*Little Rock Newspapers, Inc. v. Dodrill*, 660 S.W.2d 933 (Ark. 1983) ......................18

*MacDonald v. Riggs*, 166 P.3d 12 (Alaska 2007).........................................................19

*Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991).....................................7, 13

*McFarlane v. Sheridan Square Press, Inc.*, 91 F.3d 1501 (D.D.C. 1996)..................5, 10

*Milan v. Long*, 88 S.E. 618 (1916).................................................................................19

*Nat'l Life Ins. Co. v. Phillips Pub., Inc.*, 793 F.Supp. 627 (D. Md. 1992) .....................4

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) .................................................11

*Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 775-76 (1986) ......................12

*Pritt v. Republican Nat. Committee*, 557 S.E. 2d 853 (W.Va. 2001) ..............................6

*Reuber v. Food Chem. News, Inc.*, 925 F.2d 703 (4th Cir. 1991)..................................11

*Robb v. Lincoln Publ'g (Ohio), Inc.*, 683 N.E.2d 823 (Ohio 1996) ..............................18

*Sprouse v. Clay Commc'n, Inc.*, 211 S.E.2d 674 (W. Va. 1975) .....................................4

*St. Amant v. Thompson*, 390 U.S. 727 (1968)..................................................................6

*Suriano v. Gaughan*, 480 S.E.2d 548 (1996) ................................................................13

*Tharp v. Media Gen., Inc.*, 987 F.Supp.2d 673 (D.S.C. 2013) ........................................5

*Tomblin v. WCHS-TV8,* 434 F.App'x 205 (4th Cir. 2011) ..............................................5

*Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066 (5th Cir. 1987).........................12, 13

## I.    INTRODUCTION

The First Amendment requires that Plaintiff Don Blankenship's case be dismissed in the absence of clear and convincing evidence to support his claims. After months of discovery, Blankenship's Opposition to Defendant MSNBC's Motion for Summary Judgment ("Opposition," ECF No. 911) fails to present any evidence that would support allowing this case to proceed to trial, let alone clear and convincing evidence. MSNBC has presented three independent reasons for dismissal. Any one of them, standing alone, establishes that this case should be dismissed.

First, Blankenship cannot point to any evidence that the speakers of the challenged statements actually knew their statements were false when they were made or had a "high degree of awareness"—i.e., *subjective* doubts—about their truth. To the contrary, the undisputed evidence—including communications contemporaneous with the challenged statements—shows that the speakers did *not* act with actual malice. Lacking such evidence, Blankenship instead mischaracterizes the law, makes unfounded claims that MSNBC's witnesses lack credibility, and constructs a chain of inferences unrelated to the challenged statements.

Second, Blankenship fails to present clear and convincing evidence of material falsity. Unlike the motion to dismiss stage, Blankenship cannot rest on his pleadings. He must demonstrate that the gist or sting of "convicted felon" was materially different from the literal truth. The undisputed evidence establishes that the "gist" of the word "felon" simply conveys a serious crime. Blankenship's Opposition asks this Court to ignore the evidence, emphasize a distinction of legal terminology in a way that no other court has done in a defamation case, and find that Blankenship's crime of conspiracy to violate mine safety laws, at a mine that exploded killing 29 people, *was not serious*. Such a finding would defy not only the findings of the sentencing judge and undisputed evidence about the community's view of Blankenship's crime, but also the statements of

Blankenship and his own lawyers about the nature and perception of his offense.

Finally, the undisputed evidence shows that Blankenship cannot prove causation or damages, which are crucial elements of his claims. He provides only speculative assertions and cannot overcome the law that his damages cannot just be presumed. For this additional reason, summary judgment is proper in MSNBC's favor on all of Blankenship's claims.

## II.  ARGUMENT

### A.  Blankenship Has No Clear and Convincing Evidence of Actual Malice.

The author of MSNBC's challenged statements, Chris Hayes,[1] clearly testified that he "strive[s] to be truthful," and that he believed Blankenship "had been, in fact, convicted of a felony." (Deposition of Chris Hayes ("Hayes Dep."), excerpts attached as **Exhibit 1**, 45:17-46:15; 117:13-16.) MSNBC has also produced irrebuttable, contemporaneous evidence establishing that Hayes believed the two challenged statements were true when they were made on April 23, 2018 and May 9, 2018. First, MSNBC has produced an audio recording (and presented a transcript) of Hayes and his producer on April 23, 2018, preparing for the first *All In* show at issue, which establishes that Hayes believed Blankenship had been convicted of a felony when he called him a "convicted felon" later that evening on April 23. (*Id.* at 66:22-72:10.) MSNBC has also produced an email sent from Hayes on May 10, 2018 (a day after the May 9 broadcast), where Hayes makes clear that he did not learn that Blankenship was convicted of a misdemeanor until "after the show." (*Id.* at 66:22-72:10 and Hayes Dep. Ex. 8.) Faced with this evidence, Blankenship has failed to present any clear and convincing evidence of actual malice and resorts to misstating the law.

---

[1] MSNBC established that Joy Reid did not act with actual malice. (ECF No. 883 at p. 14.)  The Opposition mentions Reid in passing, but does not offer anything to rebut MSNBC's entitlement to summary judgment on his claims related her. He has thus waived any claim or argument with respect to Reid's statement. *Byndon v. Pugh*, 350 F.Supp.3d 495, 503 (N.D. W.Va. 2018) (finding claims plaintiff failed to address in response to summary judgment to be waived).

### 1.    Blankenship Misstates His Burden of Proving Actual Malice.

Blankenship's exegesis of defamation case law is inaccurate. He notes that "[c]redibility determinations . . . are jury functions, not those of a judge," yet he repeatedly asks the Court to weigh Hayes' credibility and determine it was "undermined." (ECF No. 911 at p. 11 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)); *id.* at pp. 9, 16.) This is precisely what the U.S. Supreme Court has said is not sufficient in opposing summary judgment in a defamation action. A plaintiff cannot "defeat a defendant's properly supported motion for summary judgment in a . . . libel case . . . by merely asserting that the jury might, and legally could, disbelieve the defendant's denial . . . of legal malice." *Anderson*, 477 U.S. at 256. Yet that is all Blankenship offers here: disbelief of Hayes' declaration—under oath—that he had no reason to doubt the accuracy of the challenged statements at the time they were made. (Hayes Dep. 109:15-23 ("[A]t the time that we wrote the script and we . . . referred to him as a felon, I did think he had been convicted of a felony."); *see also* ECF No. 882-5 at ¶ 8.)

Blankenship's other proffered authorities fare no better. Rather than directly address his burden to prove knowledge of a statement's falsity, Blankenship attempts to mitigate this "very difficult standard," *Fitzgerald v. Penthouse Int'l, Ltd.*, 691 F.2d 666, 670 (4th Cir. 1982), by selectively quoting case law or divorcing it from context. For instance, Blankenship cites *Hutchinson v. Proxmire*, 443 U.S. 111, 120, n.9 (1979) for the proposition that the actual malice standard does not lend itself to summary judgment because it implicates the defendant's mental state. (ECF No. 911 at p. 11.) But that is not accurate. *Anderson* clarified that *Hutchinson*'s footnote "was simply an acknowledgment of [the Court's] general reluctance 'to grant special procedural protections to defendants in libel and defamation actions in addition to the constitutional protections.'" *Anderson*, 477 U.S. at 256, n.7 (quoting *Calder v. Jones*, 465 U.S. 783, 790–791 (1984)). The Court later affirmed that proof of actual malice is readily susceptible

to summary judgment. *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 685 (1989) ("The question whether the evidence in the record in a defamation case is sufficient to support a finding of actual malice is a question of law."). As set forth in MSNBC's initial motion and discussed below, the evidence here cannot support a finding of actual malice by clear and convincing evidence, so summary judgment is proper.[2]

Likewise, Blankenship's admonition of "caution" as to granting summary judgment on actual malice in *National Life Ins. Co. v. Phillips Publishing, Inc.* is belied by the actual holdings of that case. There, the court held, "Defendants' arguments that Plaintiff cannot demonstrate that Defendants acted with malice, <u>are appropriate for Court review</u>," that malice was an "appropriate question[] of law for the Court's consideration," and that plaintiff's allegations of lack of research into the story plus the failure to publish a correction were legally insufficient to meet the Supreme Court's standard and survive summary judgment. *Nat'l Life Ins. Co. v. Phillips Pub., Inc.*, 793 F.Supp. 627, 632–33 (D. Md. 1992) (emphasis added).

The same is true of many of Blankenship's other proffered authorities. *See, e.g.*, *Henry v. Nat'l Ass'n of Air Traffic Specialists, Inc.*, 836 F.Supp. 1204, 1211 (D. Md. 1993) ("[I]f the plaintiffs in this case cannot produce 'clear and convincing evidence' of actual malice . . . this Court will grant defendants' summary judgment motion.") (holding that none of statements at issue were made with actual malice). Others are inapplicable to or readily distinguishable from the present case. *See, e.g.*, *Denny v. Seaboard Lacquer, Inc.*, 487 F.2d 485 (4th Cir. 1973) (wrongful death action arising under Alabama law and citing antitrust precedent in analysis of "wanton or willful misconduct" under state law); *Tharp v. Media Gen., Inc.*, 987 F.Supp.2d 673, 681 (D.S.C.

---

[2] Blankenship effectively provides no response to MSNBC's demonstration of the absence of evidence of an intent to injure Blankenship, which is required by Syl. Pt. 1, *Sprouse v. Clay Commc'n, Inc.*, 211 S.E.2d 674, 679 (W. Va. 1975). (ECF No. 911 at pp. 18-19.) Blankenship offers no more than his own bare conclusions that contradict *Sprouse*'s requirement and no binding or apposite authority to support his views. (*See id.*)

2013) (private figure case in which *New York Times* actual malice standard was held "inapplicable" and South Carolina state law applied); *Tomblin v. WCHS-TV8,* 434 F.App'x 205, 211 (4th Cir. 2011) (proof that defendant decided to air story despite having information it was false <u>at the time of the broadcast</u> was sufficient to survive summary judgment). Unlike *Tomblin,* the contemporaneous evidence—the recording of Hayes and his May 10 email to a viewer—show that Hayes believed that Blankenship was convicted of a felony at the time he made the statements on *All In.* (Hayes Dep. 66:22-72:10; Hayes Dep. Ex. 8.) Blankenship's obligation to present clear and convincing evidence of actual malice is not diminished by any of the law cited in his brief.

### 2. Blankenship's Unsupported Doubt About Hayes' Credibility Is Not Sufficient to Create a Dispute of Fact and Survive Summary Judgment.

Blankenship urges the Court to deny summary judgment based solely upon unsupported conclusions that Hayes' credibility is at stake. But the demanding standard of constitutional malice cannot be met by ginning up an unsupported "general controversy surrounding [the author's] credibility." *See McFarlane v. Sheridan Square Press, Inc.*, 91 F.3d 1501, 1515 (D.D.C. 1996) (affirming summary judgment based on lack of actual malice). The law requires Blankenship to produce clear and convincing evidence that Hayes knew his statements were false when he made them, or that he had a "high degree of awareness of probable falsity" of the statement or entertained "serious doubts" about its truth. *Harte-Hanks*, 491 U.S. at 667 (alteration and internal quotation marks omitted). Despite Hayes' clear testimony that he believed that Blankenship "had been, in fact, convicted of a felony," Blankenship asks this Court to hold a trial on Hayes' credibility. (Hayes Dep. at 45:17-46:15; 117:13-16.) The Opposition baldly posits that Hayes' straightforward statements are "so farfetched that they must be presented to a jury to weigh his credibility." (ECF No. 911 at p. 16.) But that is not the type of concrete evidence the law requires. *Anderson*, 477 U.S. at 256 (plaintiff cannot defeat summary judgment "by merely asserting that the jury might,

and legally could, disbelieve the defendant's denial . . . of legal malice"). *Cf.*, *Pritt v. Republican Nat. Committee*, 557 S.E. 2d 853, 860–61 (W.Va. 2001) (finding triable issue where there was a repeated and "ongoing factual dispute").

This is not a case where a reporter "fabricated" a story by the "production of . . . imagination," or "based wholly on an unverified anonymous telephone call." *See St. Amant v. Thompson*, 390 U.S. 727, 732 (1968) (hypothesizing that an inference of actual malice could exist in these extreme circumstances). Here, there is no factual dispute—just Blankenship's unsupported refusal to accept Hayes' testimony. Nor is this case analogous to *Fitzgerald*, 691 F.2d at 670–71 (finding triable issue of fact where Penthouse relied on a single source despite obvious reasons to doubt it). Here, the undisputed testimony establishes that when Hayes made the challenged statements—the same statements made about Blankenship by dozens of other news outlets during Blankenship's Senate run—he believed them to be true. (ECF No. 882-5, Hayes Decl., ¶¶ 8-9; Hayes Dep. at 90:25-92:8; 104:8-24; 109:15-110:4.)

The pre-show, "back-office recording," during which Hayes had no reason to be anything other than candid with his segment producer, Brian Montopoli, is irrefutable evidence that just hours before the show, Hayes believed Blankenship had been convicted of a felony. (Hayes Dep. 66:22-72:10 (in the recording, Hayes states: "that is like convicted felon. . . Don Blankenship. . . a man who was found, uh, you know, to have criminally violated the law in the mine that he owned that killed, you know, all those miners.").) Blankenship argues that Montopoli's reference to Blankenship (who had been a guest on *All In* four years earlier (*id.* at 125:5-15)) as an "old buddy" during the conversation is somehow evidence of a high degree of awareness that Blankenship was convicted of a misdemeanor, not a felony. It is not.[3] Even if one adopts Blankenship's

---

[3] Blankenship chose not to depose Montopoli and has no evidence that Montopoli had a high degree of awareness that Blankenship was not a felon.

characterization of their tone as contemptuous, that is not evidence of actual malice. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510 (1991) ("Actual malice . . . should not be confused with the concept of malice as an evil intent or a motive arising from spite or ill will.").

Blankenship's attempt to mischaracterize Hayes' response to the viewer email he received on May 10, 2018, likewise does not support a finding of actual malice. (ECF No. 911 at p. 17.) The email—sent a day after the final broadcast at issue and at a time when Hayes had no reason to be anything but honest—expressly confirms that Hayes did not realize until "*after the show,*" that Blankenship had been convicted of a misdemeanor. (Hayes Dep. Ex. 8.) Contrary to Blankenship's contention, the fact that Hayes learned this information after the show does not "contradict" his testimony that there is no formal post-show review process because one can "catch" a misstatement after the fact without a formalized process. (Hayes Dep. at 38:18-25.) Finally, the Court has already held that MSNBC and Hayes were not obligated to do anything with that later-acquired knowledge. *Blankenship v. Napolitano*, 451 F.Supp.3d 596, 619 (S.D. W.Va. 2020) ("Actual malice cannot be inferred from a failure to retract or correct a statement once the publisher learns that the statement is false."). Blankenship's attempt to gin up an unsupported credibility controversy is not sufficient to survive summary judgment as a matter of law.

### 3. Blankenship Cannot Circumvent the Actual Malice Standard by Distorting Hayes' Testimony.

Blankenship's Opposition also relies on selective quotations and many adverbs in an effort to make it seem like Hayes prevaricated. (ECF No. 911 at pp. 9, 15-16.) But Hayes' testimony was clear, unequivocal, and consistent. Hayes said that at the time he made the challenged statements, "I thought that [Blankenship] had been convicted of a felony." (Hayes Dep. at 104:17-18.) Hayes explained: "I knew he had done a year in federal prison, and I just thought that meant he had been convicted of a felony." (*Id.* at 104:22-24; *see also id.* at 109:15-110:4.)

Blankenship argues that Hayes "refused to flatly agree that accuracy is a fundamental principal of journalism. . . ." (ECF No. 911 at p. 8.) But this misrepresents the testimony, which actually stated:

> Q.    Do you agree that accuracy is a fundamental principle of journalism?
> A.    Yeah, I agree accuracy is fundamental– a fundamental principle of journalism, sure.
> Q.    And do you believe that accuracy is required of you as a matter of MSNBC policy?
> A.    As a -- yes, as a goal to strive towards, absolutely.

(Hayes Dep. at 51:14-23 (objection omitted).) This response is not evasive. And while Blankenship tries to make something of Hayes' acknowledgment that his description of Blankenship as a convicted felon was imprecise, the actual testimony was straightforward:

> Q.    And did you accurately report the fact of Mr. Blankenship's conviction when you said he was a "convicted felon," in your May 9th broadcast?
> A.    I think we were imprecise in that. I think that at the time I believed he had been convicted of a felony, and I think the statement was imprecise.

(*Id.* at 120:2-9.) Blankenship's argument that Hayes' "dubious views of 'accuracy' could easily prompt a jury to doubt his veracity" (ECF No. 911 at p. 2) does not comport with the testimony.

Second, Blankenship argues that "Hayes views of 'fairness' significantly undermine his credibility" because he offered a "startling response" that the concept of fairness is subjective. (*Id.* at p. 9.) Blankenship further represents that Hayes "vigorously disagreed that he must be fair to Mr. Blankenship because the concept of fairness is 'radically subjective.'" (*Id.* at p. 2.) This is also false. Hayes actually testified as follows:

> Q.    Do you believe you have any obligation to be fair to Mr. Blankenship?
> A.    I believe we have an obligation to be fair to everyone. But, again, as I said before, the understanding of what is fair tends to be fairly radically subjective.

(Hayes Dep. at 80:23-81:4 (objection omitted).) Hayes clearly testified that he believed MSNBC *does* have an obligation to be fair to everyone (including Blankenship), and qualified that fairness is subjective in the context of an opinion show such as *All In*. (*Id.* at 45:3-48:6.) This is not startling;

frankly, it is obvious. Hayes did not "vigorously disagree" that he must be fair to Blankenship. It is Blankenship's misrepresentation of Hayes' testimony that is startling.

In short, Hayes' testimony does not give rise to a credibility question, and certainly does not get Blankenship past the daunting actual malice standard. Rather, where the "the record contains substantial evidence" that the speaker "actually believed" his statement, summary judgment is proper. *Hatfill v. N.Y. Times Company*, 532 F.3d 312, 324–25 (4th Cir. 2008). Hayes testified that he believed Blankenship was convicted of a felony because he spent a year in jail: "I knew he had done a year in federal prison and I just thought that meant he had been convicted of a felony" and "honestly, those terms pale in comparison to just saying, 'He did a year in prison,' . . . I was trying to accurately convey the seriousness of the crime. . . ." (Hayes Dep. at 105:4-11.)

Blankenship's reliance on communications years or months before the challenged statements fails as well. Hayes' interview of Blankenship in 2014, before he was even indicted for the crime at issue, is irrelevant. (ECF No. 911 at p. 6.) Blankenship does not—and cannot—claim the discussion of his documentary during that interview has anything to do with correctly describing his later criminal conviction. The April 2016 email from a producer to Hayes likewise provides no evidence of actual malice. (Deposition of Denis Horgan ("Horgan Dep."), cited excerpts attached hereto as **Exhibit 2**, at Ex. 3 thereto.) The email does not mention the nature of Blankenship's conviction and merely references his sentence. So, too, for Joy Reid's January 9, 2018 broadcast of *All In*. (Deposition of Joy Reid ("Reid Dep."), cited excerpts attached hereto as **Exhibit 3**, at Ex. 2 thereto.) That broadcast referenced Blankenship's criminal conviction, but it never discussed the nature of his conviction or said it was a misdemeanor. (*Id.*; ECF No. 911 at p. 7.) In any case, that show—which Hayes did not even host—is not proof of Hayes' subjective knowledge in April-May 2018.

As set forth in MSNBC's opening Memorandum (ECF No. 883 at p. 17), it is true that, in 2015, Hayes learned Blankenship was convicted of a misdemeanor. (ECF No. 911 at p. 14.) But that was three years and 500 *All In* shows before Hayes referred to Blankenship as a "convicted felon" in a show discussing his Senate campaign. It is not at all incredulous—as Blankenship posits—that Hayes would forget this brief and inconsequential exchange after several years, and "[t]he mere presence of news stories in a newspaper's files . . . that contradicts an allegedly defamatory statement . . . is insufficient to establish actual malice." *Jackson v. Hartig*, 645 S.E.2d 303, 309 (Va. 2007). Blankenship's attempt to create a controversy about Hayes' credibility" based on this three-year-old communication is not enough to survive summary judgment, particularly where *contemporaneous* communications directly contradict a finding of actual malice. *See McFarlane*, 91 F.3d at 1509.

Blankenship's reliance on two headlines displayed during a November 29, 2017 *All In* segment is not clear and convincing evidence of actual malice either. The November 29 broadcast merely used the articles as sources for graphics *of their headlines*: "Former Massey Energy CEO Don Blankenship to Run for Senate" and "West Virginia King of Coal is Guilty." (Horgan Dep. at 38:9-41:24 and Ex. 4.) The headlines do not explain Blankenship's conviction and the segment did not discuss whether Blankenship was convicted of a felony or misdemeanor. Moreover, there is no evidence Hayes read either article; Hayes was never asked about it during his deposition. Even if Hayes had read the articles in 2017, five months before the challenged statements aired, that would not be enough. *Blankenship*, 451 F.Supp.3d at 619 ("[K]nowledge based on previous articles or reporting do not alone support a plausible inference of actual malice.").

### 4.    MSNBC's Policies Do Not Create a Dispute of Fact.

MSNBC's internal policies also do not advance Blankenship's burden of proving actual malice by clear and convincing evidence. Blankenship refers to the policy's foreword, which states

that MSNBC "stands for accuracy, fairness, independence, and integrity." (Deposition of Marian Porges ("Porges Dep."), cited excerpts attached as **Exhibit 4**, at Ex. 1, p. 5.) This aspirational principle does not mean that *any* inaccuracy would "violate" MSNBC's policies. As MSNBC's corporate representative, Marian Porges, testified, accuracy and fairness are goals MSNBC strives to achieve. (Porges Dep. at 25:17-18; 26:10-13.) Further, Hayes did not violate MSNBC's policies. Porges testified that Hayes' use of the term "felon" for Blankenship, while technically imprecise, did not violate any policy. (Porges Dep. at 51:9-21; *see also* Hayes Dep. at 92:3-8.) Finally, even if Hayes had violated an MSNBC policy—which he did not—that would not be enough because "a public figure plaintiff must prove *more* than an *extreme* departure from professional standards" to survive summary judgment. *Harte-Hanks*, 491 U.S. at 665 (emphasis added). Blankenship has no evidence of any departure from professional standards, let alone *more than an extreme* one.

### 5.    The *All In* Staff Communications Are Also Irrelevant.

Blankenship's reliance on internal communications among *All In* staff also fails. (ECF No. 911 at pp. 17-18.) As noted above, Hayes' December 2015 email that referred to Blankenship's misdemeanor conviction and predated Blankenship being sent to prison for a year, does not create a triable issue of fact as to Hayes' knowledge in April or May 2018. Nor can the April 2016 email about Blankenship's jail sentence. *See Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 718 (4th Cir. 1991) (holding a failure to analyze inconsistencies in document is not evidence of actual malice). Moreover, the responses of *All In* staff members to these emails are irrelevant. Whether staff members read the underlying *New York Times* article or knew of Blankenship's misdemeanor conviction in 2015 does not prove Hayes' knowledge in 2018. *New York Times Co. v. Sullivan*, 376 U.S. 254, 287 (1964).

Blankenship relies on *Zerangue*, but that case actually supports summary judgment in MSNBC's favor. (ECF No. 911 at p. 17 (citing *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066

(5th Cir. 1987).) In *Zerangue*, the court held that plaintiff *failed to establish actual malice* as to an article that incorrectly reported about crimes for which plaintiff had not been convicted or even indicted, even though the reporter failed to investigate and may have been negligent in relying on his own memory. *Id.* at 1071. The court allowed plaintiff's claim to proceed *only* as to a second article that contained the same false statement and was published within 30 days after the defendant published and retracted the first article. Contemporaneous evidence showed the editors and author of the second story had reason to doubt it when it was written: the editors "knew of the . . . retraction" and the author likely attended a meeting about the retraction and reviewed the newspaper's files containing the retracted shortly before writing the second article. *Id. at* 1072. Here, Hayes' statements were not broadcast after MSNBC had retracted a previous incorrect statement, and Blankenship relies on emails from *years*—not weeks—before Hayes' challenged statements.  Further, as discussed above at page 6, the contemporaneous evidence—the Montopoli recording and Hayes' email response to a viewer—demonstrate the *absence*, not the presence, of actual malice. This case falls squarely under the principle that "[t]he Constitution provides the press with a shield whereby it may be wrong when commenting on acts of a public figure, as long as it is not intentionally or recklessly so." *Carr v. Forbes, Inc.*, 259 F.3d 273, 283 (4th Cir. 2001).

## B.    Blankenship Has Failed to Meet His Burden of Establishing Material Falsity.

Blankenship concedes that it is his burden to prove material falsity by clear and convincing evidence. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 775–76 (1986); *Hinerman v. Daily Gazette Co., Inc.,* 423 S.E.2d 560, 571–72 (W. Va. 1992). Yet Blankenship's opposition presents no evidence—let alone clear and convincing evidence—to carry that burden.

Blankenship's argument that he has established material falsity rests entirely upon the Court's prior decision at the motion to dismiss stage, which was made without the benefit of discovery and when the Court was required to accept all of Blankenship's allegations as true. On

summary judgment, Blankenship "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth *specific fact*s showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (citation omitted).

When analyzing material falsity, the law requires the Court to determine, *based on the evidence in this case*, whether "the gist" or "sting" of MSNBC's description of Blankenship as a "convicted felon" was more harmful than the literal truth. *Masson*, 501 U.S. at 517; Syl. Pt. 4, *Suriano v. Gaughan*, 480 S.E.2d 548 (1996); *Brokers Choice of America, Inc. v. NBCUniversal, Inc.*, 861 F.3d 1081, 1108-1130 (10th Cir. 2017) (affirming dismissal for lack of material falsity of an investigative report about an insurance seminar after analyzing the recording of the actual seminar) (noting the court's analysis "requires examination of the published statements in context, not in isolation").[4]

Blankenship urges the Court to ignore the evidence and simply reaffirm its prior reasoning that "society at large views a 'felon' far differently than a person who committed an offense resulting in a misdemeanor conviction." *Blankenship*, 451 F.Supp.3d at 618. MSNBC has presented evidence establishing that a reasonable reader would view the gist of MSNBC's statements to be the same as the literal truth. The evidence presented by MSNBC includes the perceptions of the authors of the challenged statements, Blankenship's sentencing judge, Blankenship's criminal lawyers, the prospective jurors at his trial, the community in general, and

---

[4] In *Zerangue*, a case upon which Blankenship relies, the Fifth Circuit collected cases where defendants "reported the substance of the criminal proceedings, but erred in the use of legal terminology," and prevailed on substantial truth. 814 F.2d at 1073–74. The Fifth Circuit distinguished those cases from the facts in *Zerangue* because in *Zerangue*, the defendant newspaper's error was "*more than* the difference between a misdemeanor and a felony." *Id.* at 1073 (emphasis added). This case is just like all the cases cited in *Zerangue* that were dismissed on substantial truth: Hayes correctly reported the substance of Blankenship's criminal proceedings by referring to him as, e.g., "the former coal company executive who was released from prison last year after serving a year for mine safety violations connected to an explosion that killed 29 people," (Hayes Dep. at 87:2-6 and Ex. 6 thereto), and merely erred in legal terminology by using the word "felon."

Blankenship himself. (ECF No. 883 at pp. 19-23.) With no explanation, Blankenship discounts all this evidence as irrelevant.

As the undisputed evidence makes clear, Blankenship is not a run-of-the-mill misdemeanant. He was convicted of conspiracy to violate mine safety standards at a mine that exploded killing 29 people. (Apr. 29 Dep. 319:21-24.)[5] His trial was "broadly understood in the community" to concern "the UBB disaster and the deaths in it," and was "seen as the equivalent of a murder or manslaughter trial." (Apr. 30 Dep. 219:13-221:18.) He served a year in prison for this crime—just one day less than the time required to be designated a felony. (Apr. 29 Dep. at 331:1-8.) This is the literal truth within which the Court must analyze the gist or sting of MSNBC's reference to Blankenship as a "convicted felon."

Blankenship cites this Court's finding: "*[w]hile most persons would be unable to give a precise legal definition of the terms "misdemeanor" or "felony*," we have no doubt that the prevailing view would be that a misdemeanor is a minor offense and *a felony is a serious crime*." (ECF No. 911 at p. 20) (emphasis added). This only further supports MSNBC's position. The "sting" of referring to Blankenship as a "convicted felon" merely conveys something that is true— Blankenship *was* convicted of a serious offense. Blankenship even admits that his conviction of conspiracy to violate mine safety laws "sounds horrible." (Apr. 29 Dep. 340:17-21; ECF No. 911 at p. 24.) He claims this testimony "proves nothing," but if Blankenship thinks his crime sounds horrible, it stands to reason that the average reader would agree with him.

Blankenship also asks the Court to dismiss the words of his lawyers who sought to change the venue of his criminal trial because the public perceived it to be a murder case (ECF No. 911 at

---

[5] Cited excerpts from Blankenship's April 29 and April 30, 2021 deposition in this case are attached hereto as **Exhibits 5** and **6**, respectively ("Apr. 29 Dep." and "Apr. 30 Dep."). Cited excerpts from Mr. Blankenship's deposition in *Blankenship v. McLaughlin*, E.D. Va. No. 1:20-cv-00429 (filed Apr. 17, 2020) are attached hereto as **Exhibit 7**.

p. 24); and he urges the Court to disregard the statements made by the sentencing judge who repeatedly stressed the "seriousness of the offense." (Apr. 29 Dep. 338:1-19.) Blankenship argues this is all irrelevant because he "was not convicted of a felony." (ECF No. 911 at p. 24.) But the law requires a review of the sting of the challenged statement—it does not place legal terminology above all else and impose absolute liability for failure to state the literal truth. *See Brokers Choice of America*, 861 F.3d at 1113-1130.

The evidence also establishes that the authors of MSNBC's challenged statements believed the gist of the words "convicted felon" to be no worse than the literal truth. Joy Reid testified: "I think to the layperson hearing "convicted criminal" or "ex-convict" or "convicted felon," I think they convey the same thing." (Reid Dep. at 60:16-19.) Similarly, Chris Hayes testified: "I knew he had done a year in federal prison and I just thought that meant he had been convicted of a felony" and "honestly, those terms pale in comparison to just saying, 'He did a year in prison,' . . . I was trying to accurately convey the seriousness of the crime. . . ." (Hayes Dep. at 105:4-11.)

In short, the undisputed evidence establishes that the "gist" of the word "felon" simply conveys a serious crime.[6] Faced with this evidence, Blankenship is essentially asking the Court to find that his crime of conspiracy to violate mine safety laws, at a mine that exploded killing 29 people, *was not serious*. Any such ruling would defy not just common sense, but the undisputed evidence of how Blankenship's crime was perceived by the authors of the challenged statements, Blankenship's lawyers, people in the community, the sentencing judge and Blankenship himself.

Blankenship also argues that material falsity is a question that should be submitted to a jury. But, when "underlying facts as to the gist or sting are undisputed, substantial truth may be determined as a matter of law." *Brokers Choice of America*, 861 F.3d at 1113-1130. In fact, courts

---

[6] The dictionary definition of "felon" is also consistent with the sting of Blankenship's crime. *See, e.g.*, Webster's New World College Dictionary (5th ed. 2014) (defining "felon" as "a person guilty of a major crime").

routinely dismiss defamation claims where the plaintiff fails to establish material falsity. *Hatfill v. New York Times Co.*, 488 F.Supp.2d 522, 533–534 (E.D. Va. 2007) ("Plaintiff cannot carry his burden of proving material falsity of any of these statements as a matter of law."), *aff'd*, 532 F.3d 312 (4th Cir. 2008); *Ballengee v. CBS Broadcasting, Inc.*, 331 F.Supp.3d 533, 547 (S.D. W. Va. 2018) (finding, based on the undisputed evidence, that the broadcast statement would not have a different effect on the mind of the reader); *Hagler v. WSAZ NewsChannel 3*, No. 3:19-cv-45, 2020 WL 1613430, *5-6 (S.D. W. Va. Jan. 15, 2020) ("Plaintiff fails to establish falsity as a matter of law. . . .").

Blankenship selectively quotes *Bustos v. A & E Television Networks*, 646 F.3d 762, 767 (10th Cir. 2011) (Gorsuch, J.): "Unsurprisingly, deciding the materiality of a falsehood often requires a jury." Blankenship omits the next line: "But like nearly any other element of a tort *this one is amenable to resolution at summary judgment* . . . ." *Id.* (emphasis added). In fact, *Bustos* affirmed the dismissal of defamation claims because the plaintiff failed to prove material falsity:

> We don't doubt that the public thinks worse of Aryan Brotherhood prison gang members than standard-issue prisoners. But that only means A & E's statement. . . that Mr. Bustos is a member of the Aryan Brotherhood—is defamatory or hurtful to his public reputation. We must still compare A & E's statement against the truth of the matter. And on that score the facts reveal that, while Mr. Bustos isn't formally a *member* of the Brotherhood, he surely did *affiliate* with the organization.

*Id.* (emphasis in original). The *Bustos* decision stands for the exact opposite proposition that Blankenship asserts. The court found, as a matter of law, that while the words "member of the Aryan Brotherhood" generally might carry a gist that was more damaging than the literal truth, the gist was the same when taking into consideration the history and context of the plaintiff in that case. The Court should do the same here. Blankenship has failed to meet his burden of establishing material falsity with clear and convincing evidence and his claims should be dismissed.

**C.     Blankenship Cannot Prove Causation or Actual Damages as a Matter of Law.**

Blankenship's Memorandum failed to proffer *any* evidence that he suffered any actual harm that was caused by MSNBC. MSNBC's motion for summary judgment established, based on Blankenship's own admissions, that Blankenship has no evidence that anyone thinks less of him as a result of MSNBC's statements, or that he lost any business opportunities due to MSNBC's statements. (ECF No. 883 at p. 23 (citing Plaintiff's Second Am. Resp. to MSNBC Interrog., at pp. 2 and 4-5, Nos. 6 and 12).) The Motion further established that Blankenship was retired when the challenged statements were made and did not seek employment either before or after the challenged statements. (*See, e.g.*, Apr. 29 Dep. 154:13-155:24; 156:10-21.)

Blankenship responds that West Virginia permits the recovery of nominal damages if a plaintiff proves false light invasion of privacy. (ECF No. 911 at p. 27.) He thus concedes that, even if he could establish actual malice and material falsity—which he cannot—his recovery would be limited to nominal damages on only his false light claim. Further, Blankenship cannot rest on a bare assertion of nominal damages, which he did not plead in his complaint, to maintain his claims here. *See Foodbuy, LLC v. Gregory Packaging, Inc.*, 987 F.3d 102, 116 (4th Cir. 2021) (holding that failure to plead entitlement to nominal damages waives them and that "boilerplate" request for "other and further relief" does not preserve them) (citations and internal quotations omitted).

Blankenship claims he can prove damages "through his own testimony." (ECF No. 911 at p. 27.) Any such testimony would contradict his sworn interrogatory answers and is not a viable counter to summary judgment. It also misrepresents the record: Blankenship testified that companies would not hire him as a board member or executive officer *before* any of the statements at issue due to his tarnished reputation from the UBB disaster and that he did not seriously seek employment from 2010 (the UBB disaster and his retirement) through 2015 (his conviction) and until 2018 (the Senate campaign). (Apr. 29 Dep. 154:13-155:24; 156:10-21.)

Further, despite failing to identify any person who thinks less of him or any lost business opportunity, Blankenship asks the Court to believe that MSNBC's statements rendered ineffective his pre-election expenditure of funds (presumably intended to rehabilitate his reputation after the UBB disaster). (ECF No. 911 at p. 28.) This bare assertion is not enough under Rule 56. For the same reason, his reliance on his expert's report falls short. (*Id.*) The report is merely a series of calculations based on Blankenship's beliefs about job opportunities he could have sought; it offers nothing about the validity of those alleged losses or a tangible basis for the calculations. Blankenship's expert also provided no opinion about causation, let alone MSNBC's alleged role in Blankenship's supposed losses. (ECF No. 911-8.)

In response to the well-established rule that election losses are not recoverable (ECF No. 883 at pp. 24-25), Blankenship cites only an Ohio case that permitted damages following an election loss to proceed to a jury. (ECF No. 911 at p. 28 (citing *Robb v. Lincoln Publ'g (Ohio), Inc.*, 683 N.E.2d 823, 841 (Ohio 1996).) But in *Robb*, the plaintiff offered evidence that he would have won the election but for the alleged defamation. *Robb*, 683 N.E.2d at 841. Blankenship offers no such evidence here—he has no evidence he would have won the primary, let alone the general election. He publicly blamed former President Trump—not MSNBC—for his loss. (Apr. 30 Dep. 68:3-69:5.) Also, unlike the *Robb* plaintiff, Blankenship also has not pled or offered evidence of special damages stemming from his loss, such as a salary or other benefits. *Robb*, 683 N.E.2d at 841.

Blankenship's arguments that he can recover emotional distress and presumed damages also fail. Blankenship cannot recover for emotional distress when he has no evidence of reputational harm. *Little Rock Newspapers, Inc. v. Dodrill*, 660 S.W.2d 933, 935 (Ark. 1983) ("An action for defamation has always required this concept of reputational injury and recovery for

mental suffering alone has not been allowed.") (citing 53 C.J.S. Libel and Slander, § 243). Even on the merits, the testimony he offers in support of his alleged emotional distress does not provide the support he seeks. (*See, e.g.*, Apr. 29 Dep. 156:10-21 ("I think it's fair to say that the . . . the false reporting and the FBI activity and public statements all had an impact on *my desire or likelihood of successfully seeking employment*, so there were a lot of factors over that, I guess, about an eight-year period . . . .") (emphasis added); *id.* at 170:4-11.)

As for presumed damages, Blankenship baldly disputes the weight of the case law cited in MSNBC's brief, but fails to refute the core proposition that he cannot recover presumed damages as a public figure. (ECF No. 911 at p. 29.) The authority compiled in *Riggs* merely notes that presumed damages are generally permitted in cases that do <u>not</u> involve matters of public concern. *MacDonald v. Riggs*, 166 P.3d 12, 18, n.20 (Alaska 2007).

Blankenship also fails to rebut that: (1) in cases involving "an issue of public . . . concern" the "common law presumptions" of malice or that "the plaintiff suffered general damages do not apply," *Erickson v. Jones St. Publishers, LLC*, 629 S.E.2d 653, 665 (S.C. 2006) and (2) the law does "not permit presumed damages in [public figure] defamation cases and that [p]laintiff must prove actual damages," *Cobb v. Time Inc.*, No. 3:94–0836 1999 WL 1027044, *1 (M.D. Tenn. Feb. 17, 1999). Blankenship is not entitled to presumed damages.

His reference to *Milan v. Long* misses the mark because that case, besides involving a clearly private figure, predated the higher constitutional and state law requirements for public figures and says nothing about a public figure's ability to recover presumed damages. *Milan v. Long*, 88 S.E. 618 (1916). However, *Milan*'s general pronouncement of a high bar for special damages in any defamation case remains valid. *Id.* at the Syllabus ("Special damages cannot be recovered in such case without an allegation and proof of loss or damages as a consequence of the

publication."). Blankenship's other authorities are similarly inapposite. *Hancock v. Mitchell*, decided more than a century ago, axiomatically affirmed a public official's ability to recover presumed damages for defamatory statements accusing one of "improper conduct in his office," "incompetence to discharge" official duties, or "incapacity in his trade or profession," none of which MSNBC's statements did here. Syl., *Hancock v. Mitchell*, 98 S.E. 65 (W. Va. 1919); *see also Kinney v. Daniels*, 574 F.Supp. 542, 545–47 (S.D.W. Va. 1983) (granting summary judgment to defendants in private-figure case involving substantially true accusations about propriety of doctor's medical treatment).

Finally, Blankenship spends a paragraph arguing that he need not prove causation because "apportionment" is a jury issue. But these are separate concepts. Causation is an element of his claims. *Crump*, 320 S.E.2d at 74 (holding that injury must "result" from allegedly defamatory statement); *Rohrbaugh*, 572 S.E.2d at 888 (false light). Blankenship cannot tie MSNBC's statements to any compensable loss he allegedly suffered. The Court should not excuse this element of his claim simply because he has alleged "it is difficult to quantify the precise harm caused by MSNBC because multiple others"—dozens, according to his suit—"perpetrated the same defamation." (ECF No. 911 at p. 30.) His mere belief that others will not hire him due to *all* the defendants' challenged statements is insufficient. (McLaughlin Dep. 269:25-270:11.) Blankenship simply has no evidence that MSNBC's challenged statements caused him any specific actual harm. For this additional reason, all of his claims against MSNBC should be dismissed.

## III.    CONCLUSION

For these three independent reasons, each of which is sufficient ground for dismissal, the Court should grant MSNBC summary judgment on all of Blankenship's claims.

Respectfully submitted,

 _/s/ Kevin T. Shook_
Kevin T. Shook (OH #0073718)
(*pro hac vice*)
Frost Brown Todd LLC
10 West Broad Street, Suite 2300
Columbus, OH 43215
kshook@fbtlaw.com
(614) 464-1211 Phone
(614) 464-1737 Fax


Ryan W. Goellner (OH #0093631)
(*pro hac vice*)
Frost Brown Todd LLC
3300 Great American Tower
301 E. Fourth Street
Cincinnati, OH 45202
rgoellner@fbtlaw.com
(513) 651-6800 Phone
(513) 651-6981 Fax

*Attorneys for MSNBC Cable, LLC*

 _/s/ Jared M. Tully_
Jared M. Tully (WV Bar No. 9444)
Alex J. Zurbuch (WV Bar No. 12838)
Frost Brown Todd LLC
500 Virginia Street East, Suite 1100
Charleston, WV 25301
jtully@fbtlaw.com
azurbuch@fbtlaw.com
(304) 345-0111 Phone
(304) 345-0115 Fax

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON**

DON BLANKENSHIP,                          :
                                          :
           Plaintiff,                     :        Civil Action No. 2:19-cv-000236
                                          :
      v.                                  :        Judge John T. Copenhaver, Jr.
                                          :
HONORABLE ANDREW NAPOLITANO,              :
(RET.), *et al.*                          :
                                          :
           Defendants.                    :

## CERTIFICATE OF SERVICE

I, Jared M. Tully, do hereby certify that I have served the ***Defendant MSNBC Cable,
LLC's Reply in Support of Its Motion for Summary Judgment*** upon counsel for each party by
electronic mail, this 14th day of June, 2021.


                              */s/ Jared M. Tully*
                              Jared M. Tully (WV Bar No. 9444)


0141761.0718633   4821-4153-6237v14

# EXHIBIT 1

**In the Matter Of:**

*Blankenship vs*

*Fox News Network LLC*

*CHRISTOPHER LOFFREDO HAYES*

*March 02, 2021*



Confidential     Christopher Loffredo Hayes - March 02, 2021

1

1              UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF WEST VIRGINIA
2                  CHARLESTON DIVISION

3   DON BLANKENSHIP,                §
                                    §
4              Plaintiff,           §
                                    § CASE NO.:
5   vs.                             §
                                    § 2:19-cv-00236
6   FOX NEWS NETWORK LLC,           §
    et al.,                         §
7                                   §
               Defendants.          §
8

9

10    *****************************************

11                  CONFIDENTIAL

12    REMOTE VIDEOCONFERENCED DEPOSITION OF

13          CHRISTOPHER LOFFREDO HAYES

14               MARCH 2, 2021

15    *****************************************

16

17

18

19

20

21

22

23

24

25   Job No. 2021-781298

USCA4 Appeal: 22-1198    Doc: 48       Filed: 05/25/2022    Pg: 208 of 307
Case 2:19-cv-00236 Document 938-1   Filed 06/14/21   Page 4 of 36 PageID #: 15658

2

1          REMOTE VIDEOCONFERENCE DEPOSITION OF
2     CHRISTOPHER LOFFREDO HAYES, produced as a witness at
3     the instance of the Plaintiff, and remotely duly
4     sworn by agreement of all counsel, was taken in the
5     above-styled and numbered cause on March 2, 2021,
6     from 10:02 a.m. to 1:19 p.m., before Karen L. D.
7     Schoeve, RDR, CRR, reported remotely by computerized
8     machine shorthand, pursuant to the Federal Rules of
9     Civil Procedure and the provisions stated on the
10    record or attached hereto.
11          This deposition is being conducted
12    remotely in accordance with the current Emergency
13    Order regarding the COVID-19 State of Disaster of
14    the World.
15
16      REPORTER'S NOTE:  Please be advised that an
17    UNCERTIFIED ROUGH DRAFT version of this transcript
18    exists.  If you are in possession of said rough
19    draft, please replace it immediately with this
20    CERTIFIED FINAL TRANSCRIPT.
21          Please note that the quality of a Zoom
22    videoconference and transmission of data and
23    overspeaking causes audio distortion which disrupts
24    the process of preparing a videoconference
25    transcript.

Confidential    Christopher Loffredo Hayes - March 02, 2021

```
                                                        3
1                    A P P E A R A N C E S

2

3         ***********************************************

4              ALL PARTIES APPEARED REMOTELY

5                 WITH LEGALVIEW VIA ZOOM

6         ***********************************************

7    FOR THE PLAINTIFF:

8         JEREMY GRAY, ESQUIRE
          SAAM TAKALOO, ESQUIRE
9         EARLY SULLIVAN WRIGHT GIZER & McRAE LLP
          6420 Wilshire Boulevard, 17th Floor
10        Los Angeles, California 90048
          D: 323.301.4674 (Mr. Gray)
11        D: 323.301.4664 (Mr. Takaloo)
          T: 323.301.4660
12        F: 323.301.4676
          jgray@earlysullivan.com
13        stakaloo@earlysullivan.com

14   -and-

15        JEFFREY S. SIMPKINS, ESQUIRE
          SIMPKINS LAW OFFICE, PLLC
16        102 West 2nd Avenue
          Williamson, West Virginia 25661
17        T: 302.235.2735
          simpkinslawoffice@gmail.com

18

19   FOR DEFENDANT NBCUNIVERSAL MEDIA, LLC:

20        ERIK BIERBAUER, ESQUIRE
          NBCUNIVERSAL MEDIA, LLC
21        30 Rockefeller Plaza
          New York City, New York 10112
22        D: 212.664.4167
          T: 212.664.4444
23        erik.bierbauer@nbcuni.com
          -Admitted Pro Hac Vice-
24

25
```

```
                                                          4
1              A P P E A R A N C E S (Continued)

2

3   FOR DEFENDANT FOX NEWS NETWORK, LLC:

4        SILVIA OSTROWER, ESQUIRE
         HUNTON ANDREWS KURTH LLP
5        200 Park Avenue
         New York, New York 10166
6        D: 212.309.1204
         T: 212.309.1000
7        F: 212.309.1100
         sostrower@huntonak.com
8
    FOR DEFENDANT MSNBC CABLE, LLC:
9
         JARED M. TULLY, ESQUIRE
10       FROST BROWN TODD LLC
         United Bank Building
11       500 Virginia Street East, Suite 1100
         D: 304.348.2404
12       T: 304.345.0111
         F: 304.345.0115
13       jtully@fbtlaw.com

14  -and-

15       KEVIN SHOOK, ESQUIRE
         FROST BROWN TODD LLC
16       One Columbus Center
         10 West Broad Street, Suite 2300
17       Columbus, Ohio 43215
         D: 614.559.7214
18       T: 614.464.1211
         F: 614.464.1737
19       kshook@fbtlaw.com

20

21  FOR DEFENDANT AMERICAN BROADCASTING COMPANIES:

22       CAESAR KALINOWSKI, IV, ESQUIRE
         DAVIS WRIGHT TREMAINE, LLP
         920 Fifth Avenue, Suite 3300
23       Seattle, Washington 98104
         D: 206.757.8232
24       T: 206.622.3150
         F: 206.757.7700
25       caesarkalinowski@dwt.com
```

Confidential      Christopher Loffredo Hayes - March 02, 2021

5

```
1              A P P E A R A N C E S  (Continued)

2

3    FOR DEFENDANT CABLE NEWS NETWORK, INC.,
     and WP COMPANY
4
          MELINDA JOHNSON, ESQUIRE
5         WILLIAMS & CONNOLLY LLP
          725 Twelfth Street, Northwest
6         Washington, D.C. 20005
          D: 202.434.5181
7         T: 202.434.5000
          F: 202.434.5029
8         mkjohnson@wc.com

9
     ALSO PRESENT:
10
          Gail Gove, In-house Counsel
11          MSNBC Cable LLC

12        Adam Balenciaga, Videographer
            Lexitas Legal
13

14
     CERTIFIED STENOGRAPHIC COURT REPORTER:
15
          Karen L. D. Schoeve
16        Certified Realtime Reporter
          Registered Diplomate Reporter
17        Realtime Systems Administrator

18

19

20

21

22

23

24

25
```

Confidential    Christopher Loffredo Hayes - March 02, 2021

38

1            MR. BIERBAUER:  Objection to form.

2       A.   I don't think there's a definitive answer

3   for that.  I know you've asked me this -- I don't

4   know the definitive answer because it has not been

5   tested.

6       Q.   (BY MR. GRAY)  As the host with your name

7   on the show, do you have ultimate responsibility for

8   the content of the show?

9            MR. BIERBAUER:  Objection to form.

10      A.   I think your question implies there's a

11  reputational responsibility that is inescapable, and

12  I would agree with that.

13      Q.   (BY MR. GRAY)  Let's start with today.

14  I'll ask the question about the current operation of

15  the show, and then we can move back and find out

16  whether your answer would change for the time period

17  April/May of 2018.

18           Do you have any after-action process

19  with the show, meaning is there any -- does anyone

20  watch the show and then develop some review of what

21  happened?  Is there any process in any way, shape,

22  or form like that for the show?

23      A.   There's no formal after-action process.

24      Q.   How about an informal one?

25      A.   Not really.  Obviously, everyone watches

USCA4 Appeal: 22-1198    Doc: 48    Filed: 05/25/2022    Pg: 213 of 307
Case 2:19-cv-00236  Document 938-1  Filed 06/14/21  Page 9 of 36 PageID #: 15663

45

1      A.    Yes.  I recall in -- in meetings on this

2  topic, I would often bring it up.

3      Q.    It's your understanding that in your role

4  as the, quote/unquote, "host" of the show that you

5  have, that you are permitted to express opinions?

6      A.    Correct.

7      Q.    Does the fact that you're allowed to

8  express opinions, in your mind, in any way diminish

9  your obligation to be accurate in your reporting?

10          MR. BIERBAUER:  Objection to form.

11      A.    I would say that accuracy is important and

12  also that, in the context of an opinion show, there

13  are certain kinds of rhetorical flourishes, methods

14  and modes of communication that are going to be

15  distinct from what's on, say, the nightly news, and

16  that that's okay.

17      Q.    (BY MR. GRAY)  So does that mean you can

18  report things inaccurately?

19      A.    No.

20          MR. BIERBAUER:  Objection to form.

21      Q.    (BY MR. GRAY)  Does it mean that you can

22  lie?

23          MR. BIERBAUER:  Objection to form.

24      A.    No.  Lying is bad.

25      Q.    (BY MR. GRAY)  Does the fact that you're

46

1   allowed to express opinions diminish your obligation

2   to be fair in your reporting?

3               MR. BIERBAUER:  Objection to form.

4       A.   It -- I would say that fairness is a

5   radically subjective metric, and so the conception

6   of what that would mean is gonna vary depending on

7   all sorts of circumstances.  We always strive to be

8   fair.

9       Q.   (BY MR. GRAY)  Does the fact that you're

10  allowed to express opinions permit you to broadcast

11  falsehoods?

12              MR. BIERBAUER:  Objection to form.

13      A.   "Permit" I don't think is a -- a sort of a

14  germane characterization here.  We strive to be

15  truthful.

16      Q.   (BY MR. GRAY)  Well, I'm gonna -- I'm

17  gonna push back on that, because I think it is.

18              Your -- my understanding, and correct

19  me if I'm wrong, is that your view is that because

20  you can express opinions, you have some greater

21  leeway.  And I'm trying to put parameters around

22  that.

23              So my question is:  Does the fact that

24  you're allowed to express opinions in any way permit

25  you to broadcast something that's false?

Confidential    Christopher Loffredo Hayes - March 02, 2021

47

1            MR. BIERBAUER:  Objection to form.

2       A.   We are -- whatever work we're doing

3   on-air, whether opinion or news, we strive to be

4   truthful and fair to the extent possible.

5       Q.   (BY MR. GRAY)  So is the answer to my

6   question that the fact that you're allowed to

7   express opinions, it doesn't limit your obligation

8   to be -- to not be false --

9            MR. BIERBAUER:  Objection to form.

10      Q.   (BY MR. GRAY)  -- is that a fair

11  statement?

12      A.   We strive to be truthful in all of our

13  broadcasts.

14      Q.   I'm not asking what you strive to, sir.

15  I'm asking you -- I'm trying to understand what you

16  mean when you discuss the fact that you have greater

17  leeway because you're allowed to express opinions.

18           And my question is:  Do you understand

19  that because -- let me ask the question again.

20           Is it -- is it your view that because

21  your show allows you to express opinions, that that

22  somehow modifies or limits your obligation to tell

23  the truth?

24           MR. BIERBAUER:  Objection to form.

25      A.   No, it's not my understanding.

Confidential    Christopher Loffredo Hayes - March 02, 2021

48

1    Q.   (BY MR. GRAY)  I'm sorry, what was the --
2    "no"?
3                I didn't hear what you said after
4    that.
5    A.   No, that's not my understanding, that it
6    modifies or limits.
7                MR. GRAY:  We've been going for about
8    an hour.  Why don't we take 10 minutes.
9                THE WITNESS:  Okay.
10                THE VIDEOGRAPHER:  Time is 11:01 a.m.
11    We are going off the video record.
12                (A recess was taken from 11:01 a.m. to
13    11:13 a.m.)
14                THE VIDEOGRAPHER:  Time is 11:13 a.m.
15    We are now back on the video record.
16                MR. BIERBAUER:  As we just discussed
17    during the break, I am going to ask that this
18    deposition be designated confidential under the
19    Court's protective order.  I note that the document
20    marked as Exhibit 2 was designated as confidential
21    under the protective order.
22                MR. GRAY:  No objection.
23    Q.   (BY MR. GRAY)  I want to go back to the
24    discussions that you said you had about the Policies
25    and Guidelines.

Confidential    Christopher Loffredo Hayes - March 02, 2021

51

1    not the staff of your "All In" show attended

2    these -- one or more of these training sessions?

3         A.    Staff did attend, yes.

4         Q.    Other than whatever training sessions that

5    you've attended regarding the policies and

6    procedures set forth in Exhibit 2, prior to joining

7    MSNBC, have you ever received any coursework on

8    journalistic ethics?

9         A.    I have not.

10        Q.    Any training at any of the other prior

11   publications that you worked with or for prior to

12   MSNBC on the topic of journalistic ethics?

13        A.    Not that I can recall.

14        Q.    Do you agree that accuracy is a

15   fundamental principle of journalism?

16             MR. BIERBAUER:  Objection to form.

17        A.    Yeah, I agree accuracy is fundamental -- a

18   fundamental principle of journalism, sure.

19        Q.    (BY MR. GRAY)  And do you believe that

20   accuracy is required of you as a matter of MSNBC

21   policy?

22        A.    As a -- yes, as a goal to strive towards,

23   absolutely.

24        Q.    Do you agree that fairness is a

25   fundamental principle of journalism?

66

```
1            e-mail coverage and the Podesta -- and the
2            hacked e-mails.
3                    AMY CHOZICK:  Right.
4                    CHRIS HAYES:  What kind of -- in
5            retrospect, what do you think about the way
6            the -- the hacked e-mails are playing out?
7                    (End of video clip.)
8                    THE VIDEOGRAPHER:  Do we have the time
9       the clip ended?
10                   MR. GRAY:  Yeah.  Saam, can you let us
11      know where it ended?
12                   MR. TAKALOO:  Yes.  It ended at 38
13      minutes.
14                   MR. GRAY:  I'm sorry, say that again.
15                   MR. TAKALOO:  38 minutes.
16                   MR. BIERBAUER:  Just for the record,
17      that is not the complete segment.
18                   MR. GRAY:  That's correct.
19      Q.   (BY MR. GRAY)  So that was broadcast on
20      your television show?
21      A.   It was.
22      Q.   Okay.  All right.  So now I want to play
23      an audio clip.
24                   MR. GRAY:  Saam, can you play the
25      audio clip.
```

Confidential     Christopher Loffredo Hayes - March 02, 2021

67

1                    (Deposition Exhibit 5 marked for
2      identification.)
3                    (Audio clip playing:)
4                    BRIAN MONTOPOLI:  The next block --
5        and Diane's gonna come in shortly, I think.
6        But my suggestion is we bump in with our old
7        buddy Don Blankenship's ad.
8                    "We need to arrest Hillary -- we don't
9        need to investigate our president.  We need to
10       arrest Hillary.  Lock her up."
11                   CHRIS HAYES:  Holy fucking shit, Dude.
12                   BRIAN MONTOPOLI:  Yeah.
13                   CHRIS HAYES:  This is -- that is,
14       like, convicted felon --
15                   BRIAN MONTOPOLI:  Yeah.
16                   CHRIS HAYES:  -- Don Blankenship --
17                   BRIAN MONTOPOLI:  Yeah.
18                   CHRIS HAYES:  -- the man who was
19       found, you know, to have criminally violated
20       the law in the mine that he owned that killed,
21       you know, all those miners.
22                   BRIAN MONTOPOLI:  Yeah.
23                   CHRIS HAYES:  But, like, you know, the
24       AP says this is a theme.  Like --
25                   BRIAN MONTOPOLI:  Yeah.

Confidential     Christopher Loffredo Hayes - March 02, 2021

68

1              CHRIS HAYES:  -- having, you know,

2      the --

3              BRIAN MONTOPOLI:  Yeah.  There's two

4      sort of themes.  There's the theme of sort of

5      echoing Trump.

6              CHRIS HAYES:  Right.

7              BRIAN MONTOPOLI:  But, of course, part

8      of echoing Trump --

9              CHRIS HAYES:  Yeah, right.

10             BRIAN MONTOPOLI:  -- is going after

11     Hillary.

12             And, you know, maybe we don't get into

13     the -- sort of the tax -- do we want to say in

14     the intro, like, "Tax cuts were supposed to be

15     the message, but Republicans are increasingly

16     learning that, like, that's not working, so

17     instead they're targeting Hillary" --

18             CHRIS HAYES:  I think that --

19             BRIAN MONTOPOLI:  -- or that just

20     comes out in the conversation?

21             CHRIS HAYES:  No, I think -- no.

22     Because that's not really the -- what the

23     conversation with Chozick's going to -- really

24     going to be.

25             BRIAN MONTOPOLI:  Okay.

69

1                 CHRIS HAYES:  You know what I mean?

2                 BRIAN MONTOPOLI:  Okay.

3                 CHRIS HAYES:  So I think that's

4        worth --

5                 BRIAN MONTOPOLI:  Okay.

6                 CHRIS HAYES:  -- showing that.  And I

7        think you can still do this very short.

8        Just -- you know.

9                 BRIAN MONTOPOLI:  Okay.  Yeah.  That

10       sounds good.

11                (End of audio clip.)

12       Q.    (BY MR. GRAY)  So, Mr. Hayes, that was an

13       audio clip that your lawyer supplied to us.  Do you

14       know the circumstances under which that recording

15       was made?

16       A.    So my understanding -- I don't have any

17       special insight to it.  My understanding is that it

18       is a recording from Brian Montopoli, who is the

19       other voice you hear on that, who was the segment

20       producer for the segment that featured Amy Chozick

21       that you just showed us.

22       Q.    And this was a recording of the two of you

23       speaking?  The other voice was yours?

24       A.    Yes.

25       Q.    So the two voices we heard were Brian and

Confidential     Christopher Loffredo Hayes - March 02, 2021

70

1    you?

2         A.    Correct.

3         Q.    And this was a recording of a conversation

4    that took place before the April 23rd, 2018, show

5    aired?

6         A.    That's my understanding, yes.

7         Q.    And do you have any doubt as to the

8    accuracy of that recording?

9         A.    I have no reason to doubt the accuracy of

10   that recording.

11        Q.    And do you know where that was recorded?

12   Meaning was that --

13        A.    I have no idea.  I honestly -- I

14   presume -- presumably in my office, but I just

15   couldn't tell you.

16        Q.    I'm sorry, that was -- that was a bad

17   question.

18              On what -- on what medium was that

19   recorded?

20        A.    Oh, I --

21              MR. BIERBAUER:  Objection to form.

22        A.    That, I don't know.  My segment producers

23   use different tools to record meetings sometimes, so

24   I -- I don't know.

25        Q.    (BY MR. GRAY)  So is it a practice in the

71

1    production of the "All In" television shows for

2    certain conversations to be recorded?

3              MR. BIERBAUER:  Objection to form.

4        A.    Sometimes, yes, to help producers

5    transcribe my words as, you know, dictated in the

6    meeting.

7        Q.    (BY MR. GRAY)  Typically, do people record

8    things on their -- on their phones, or is there some

9    other recording equipment that's used?

10             MR. BIERBAUER:  Objection; form.

11       A.    Yeah, I don't -- I don't really pay close

12   attention to that.  I know that sometimes people use

13   phones.  They may use other devices, too.

14       Q.    (BY MR. GRAY)  Are these recordings for

15   audio that will be used on the show or for

16   generating scripts?

17       A.    No, this is completely confidential, you

18   know, internal editorial deliberation for -- for the

19   generation of a script.

20       Q.    When was the first time you heard this

21   recording?

22       A.    At some point in the course of this

23   litigation, fairly recently, when it was brought to

24   my attention.

25       Q.    What was your reaction to hearing it?

Confidential    Christopher Loffredo Hayes - March 02, 2021

72

1              MR. BIERBAUER:  Objection to form.

2       A.    Mostly that I -- I couldn't believe

3  that -- it's always weird to hear yourself in -- in

4  the process of working when removed from it as long

5  as I have been.

6       Q.    (BY MR. GRAY)  Did you have any reaction

7  to what you said about Mr. Blankenship?

8       A.    My reaction was that I called him a

9  convicted felon in the conversation because I

10  thought he was a convicted felon, clearly.

11      Q.    What about your comment that he was

12  "responsible for killing all those miners"?  Is that

13  something you believe then and now?

14      A.    I don't think that's the specific way that

15  it was articulated.

16              (Audio clip played.)

17              MR. GRAY:  I'm sorry, what -- what

18  happened just now?

19              Saam, are you gonna -- can you play it

20  again so we can hear it again?

21              MR. TAKALOO:  (Complied.)

22              (Audio clip played.)

23      A.    So I didn't say, "responsible."  I said,

24  "a man who was found to have criminally violated the

25  law in the mine he owned that killed all those

Confidential    Christopher Loffredo Hayes - March 02, 2021

80

```
1    misdemeanor conviction be set aside?

2              MR. BIERBAUER:  Objection to form.

3         A.   I don't recall.

4              Just for my own awareness, that

5    conviction has not been set aside or vacated, right?

6         Q.   (BY MR. GRAY)  It has not.

7              Have you reported on it at all, the

8    fact that -- the fact that Mr. Blankenship's

9    misdemeanor conviction is -- there's been a

10   recommendation that it be set aside, that that issue

11   is currently before the First -- Fourth Circuit?  Is

12   anything -- have you reported on any of that?

13        A.   Again, I don't recall that we have.

14        Q.   Given your prior statements about

15   Mr. Blankenship, do you think that fairness would

16   require that you do some reporting on those matters?

17             MR. BIERBAUER:  Objection to form.

18        A.   What prior statements do you mean?

19        Q.   (BY MR. GRAY)  The statements that he's a

20   convicted felon, et cetera?

21             MR. BIERBAUER:  Objection to form.

22        A.   No, I don't.

23        Q.   (BY MR. GRAY)  Do you believe you have any

24   obligation to be fair to Mr. Blankenship?

25             MR. BIERBAUER:  Objection to form.
```

Confidential    Christopher Loffredo Hayes - March 02, 2021

81

1      A.    I believe we have an obligation to be fair

2  to everyone.  But, again, as I said before, the

3  understanding of what is fair tends to be fairly

4  radically subjective.

5      Q.    (BY MR. GRAY)   Do you believe you're

6  entitled to be less fair to Mr. Blankenship because

7  he was an executive in the coal industry?

8            MR. BIERBAUER:   Objection to form.

9      A.    No.

10      Q.    (BY MR. GRAY)   Have you ever -- let's go

11  back to before you were at MSNBC.

12            During the time you were engaging in

13  freelance writing and working for the various

14  publications we've talked about, did you ever do any

15  reporting on the coal industry?

16      A.    I think the answer to that is I probably

17  did but don't have specific recollections.  But most

18  likely, I did.

19      Q.    Have you ever visited the coal country to

20  report?

21      A.    I have, yes.

22      Q.    Where have you gone?

23      A.    I have spent some time in Harlan County.

24  I've been in other parts of -- I don't recall

25  specifically, but around Knoxville, Tennessee, and

USCA4 Appeal: 22-1198    Doc: 48    Filed: 05/25/2022    Pg: 227 of 307
Case 2:19-cv-00236   Document 938-1   Filed 06/14/21   Page 23 of 36 PageID #: 15677

87

1    career of Don Blankenship, at least for now.
2    He is, of course, the former coal company
3    executive who was released from prison last
4    year after serving a year for mine safety
5    violations connected to an explosion that
6    killed 29 people.  He then ran for U.S. Senate
7    and talked about "China people."
8              (Video clip played:)
9              DON BLANKENSHIP:  "This idea that
10   calling somebody a 'China person' -- I mean,
11   I'm an 'American person.'  I don't see this
12   insinuation by the press that there's something
13   racist about saying a 'China person.'  Some
14   people are 'Korean persons,' and some of them
15   are 'African persons.'"
16             CHRIS HAYES:  He also began referring
17   to Majority Leader of the Senate as "Cocaine
18   Mitch," making a bizarre connection to a report
19   that a shipping vessel owned by Mitch
20   McConnell's father-in-law was discovered to
21   have drugs onboard in 2014.
22             (Video clip played:)
23             DON BLANKENSHIP:  "One of my goals as
24   U.S. Senator will be to ditch 'Cocaine Mitch.'
25             "I will beat Joe Manchin and ditch

90

1    silver lining.  At midnight, just hours after

2    he came in a distant third in the Republican

3    Senate Primary, Don Blankenship's year-long

4    probation came to an end.  And he has plans.

5            (Video clip played:)

6            DON BLANKENSHIP:  ". . . go on

7    vacation.  You know, I'm off of probation

8    tonight at midnight.  I've not been able to go

9    places I like to go for three years now.  And

10   I'll get my guns back in a day or two, so I'm

11   gonna win either way tonight."

12           (End of video clip.)

13       Q.    (BY MR. GRAY)  So first let me ask you,

14   Mr. Hayes, is that an excerpt from your television

15   program that was broadcast on MSNBC on May 9th,

16   2018?

17       A.    Yes, that is my understanding.

18       Q.    So I heard you say there that

19   "Mr. Blankenship is the former coal company

20   executive who was released from prison last year

21   after serving a year for mine safety violations

22   connected to an explosion that killed 29 people."

23           Did you hear yourself say that?

24       A.    I did.

25       Q.    And what's the basis for your statement

91

1   that his prison term was connected to the explosion?

2          MR. BIERBAUER:  Objection to form.

3      A.   I don't recall my -- the process by which

4   that script was written.  My understanding is that

5   the mine safety violations for which he was

6   convicted and did a year in prison were in the mine

7   that was the site of one of the worst, most deadly

8   mining accidents in generations.  And I think

9   "connected" there seems like a perfectly defensible

10  word choice.

11     Q.   (BY MR. GRAY)  So you mean to say by the

12  word "connected" that the safety violations were in

13  some way responsible for the explosion?

14         MR. BIERBAUER:  Objection to form.

15     A.   Yeah, I didn't -- I didn't say

16  "responsible."

17     Q.   (BY MR. GRAY)  I'm just asking what you

18  mean by "connected."

19     A.   Connected in that he was -- if I'm not

20  mistaken, I think it was convicted and did a year in

21  federal prison for conspiracy to evade mine safety

22  laws.  Obviously, mining is a very regulated

23  enterprise.  Mine safety laws, I think, are quite

24  important.  And the site of the mine where he was

25  convicted of trying to evade those laws is also the

92

1    place where the worst mining disaster in generations

2    that killed 29 people happened.

3         Q.   So do you believe that this statement is

4    an accurate description of what he was convicted of?

5              MR. BIERBAUER:  Objection to form.

6         A.   I believe it's accurate, yes.  Certainly

7    at the best of my understanding then and my -- best

8    of my understanding now.

9         Q.   (BY MR. GRAY)  Has Mr. Blankenship ever

10   been convicted of a felony?

11             MR. BIERBAUER:  Objection.

12        A.   My understanding is that he was convicted

13   of a serious crime for which he did a year in

14   prison.

15        Q.   (BY MR. GRAY)  Has Mr. Blankenship ever

16   been convicted of a felony?

17        A.   I -- I actually don't know the answer to

18   that as regards the -- I don't know his criminal

19   record.  As regards, I think, what is at issue here,

20   my understanding subsequently, having reviewed it,

21   is that he was convicted of a misdemeanor for which

22   he was sentenced to a year in federal -- federal

23   prison.

24        Q.   You knew that in 2015, right?

25             MR. BIERBAUER:  Objection.

104

1   mine where the worst mining accident in generations

2   happened, and 29 people lost their lives.

3        Q.    (BY MR. GRAY)   It's your understanding

4   that Mr. Blankenship personally owned that mine?

5        A.    It's -- my understanding is it's a little

6   complicated, but he was an executive there.   I don't

7   know the ownership structure specifically.

8        Q.    When you referred to Mr. Blankenship as a

9   convicted felon, you understood that that would make

10  him sound worse than just calling him a

11  misdemeanant, right?

12            MR. BIERBAUER:   Objection to form.

13       A.    No, I don't -- I don't know what I

14  understood at the time.

15            I mean, at the time it was my

16  understanding when we put -- the time in question,

17  of the shows you're referring to, I thought that he

18  had been convicted of a felony.   And I think that

19  that view, which comes from me ex nihilo, out of

20  nowhere, just -- I generated in that audio

21  conversation as -- as sort of evidence of that fact,

22  was borne of the fact that he had -- I knew he had

23  done a year in federal prison, and I just thought

24  that meant he had been convicted of a felony.

25       Q.    (BY MR. GRAY)   But you knew that calling

105

1   him a convicted felon would make him sound worse

2   than just calling him a misdemeanant.

3           MR. BIERBAUER:  Objection to form.

4       A.   I think those terms -- honestly, those

5   terms pale in comparison to just saying, "He did a

6   year in prison."  To the extent "convicted felon"

7   was essentially a shorthand -- or a technically

8   imprecise shorthand for that, I was trying to

9   accurately convey the seriousness of the crime in

10  the estimation of a jury that convicted him and a

11  judge that sentenced him.

12      Q.   (BY MR. GRAY)  If you had been called a

13  felon and you were not, would you be satisfied that

14  you'd been treated fairly?

15          MR. BIERBAUER:  Objection to form.

16      A.   If I was -- if I had done a year in

17  prison, yeah.

18      Q.   (BY MR. GRAY)  At any time prior to the

19  filing of this lawsuit, did you recognize that you

20  had called Mr. Blankenship a felon when he was not?

21          MR. BIERBAUER:  Objection to form.

22      A.   I think -- I have no direct recollection

23  of this, but I think there's an e-mail indicating

24  that -- that a viewer had notified me to that

25  technical distinction.

Confidential    Christopher Loffredo Hayes - March 02, 2021

109

1              Do you see that?

2      A.    I do see that, yep.

3      Q.    And then you respond to that at the top of

4    Exhibit 8.  And can you read what you write?

5      A.    I said, "yes!  Caught that after the show,

6    but you're right."

7      Q.    How did you catch that you had mistakenly

8    called Mr. Blankenship a felon after the show?

9      A.    I have --

10             MR. BIERBAUER:  Objection to form.

11     A.    I have honestly no idea.  I have no --

12   literally no recollection of this entire exchange,

13   which was, you know, close to three years ago.  So I

14   couldn't say.

15     Q.    (BY MR. GRAY)  Do you believe that you

16   were being truthful when you said to Miss Schaffer

17   that you caught that after the show?

18     A.    I do.  And I think what it reflects there

19   is that at the time that we wrote the script and we,

20   you know, broadcast those -- that show in which we

21   referred to him as a felon, I did think he had been

22   convicted of a felony.  I mean, I -- that is what --

23   I was under the impression.

24             I think that was colored by the fact

25   that I -- that I knew that he did a year in prison.

www.LexitasLegal.com/Premier    Lexitas         888-267-1200

Confidential     Christopher Loffredo Hayes - March 02, 2021

110

1   So that's an acknowledgment of the fact that my

2   state of mind then, as, I think, also reflected in

3   that video recording -- that audio recording you

4   played, was that he had been convicted of a felony.

5       Q.    And you believe that you realized that

6   before you received Miss Schaffer's e-mail, meaning

7   that you had called Mr. Blankenship a felon when he

8   was not?

9       A.    Again, I don't know when I realized what.

10  What I say there is that I caught that this -- I

11  caught this technical imprecision at some point

12  after the show.

13      Q.    And you believe that's true?

14            MR. BIERBAUER:  Objection to form.

15      A.    I'm sorry.  I didn't understand the

16  question.  You believe that what I said there --

17      Q.    (BY MR. GRAY)  Never mind.  I withdraw the

18  question.

19            Do you recall discussing with anyone

20  the fact that you had caught that you had called

21  Mr. Blankenship a felon when he was not?

22            MR. BIERBAUER:  Objection to form.

23      A.    No.  I have no -- I have no recollection

24  either way, whether I did or did not.

25      Q.    (BY MR. GRAY)  Have you or MSNBC ever

114

1     Q.    (BY MR. GRAY)   Your understanding is that

2  someone can be acquitted of a felony and still be a

3  felon?

4     A.    My understanding is that a person who does

5  a full year -- if I'm not mistaken, 365 entire days

6  in prison in a federal facility -- has been

7  adjudicated by a judge for doing something quite

8  serious, and the seriousness of that, as commonly

9  understood, equates to felony in -- in the common

10  understanding.

11     Q.    People can serve a year in prison for a

12  misdemeanor, true?

13     A.    Apparently.   I literally have only learned

14  of that in the case of Mr. Blankenship.

15     Q.    Whether or not -- but the question of

16  whether or not he is convicted of a felony is a

17  matter of fact that can be resolved, right?

18          MR. BIERBAUER:   Objection to form.

19     A.    Yes, whether he was con- -- the sentence,

20  "He was convicted of a felony," yes, is a matter of

21  fact.

22     Q.    (BY MR. GRAY)   Right.   That's something

23  that you, as a reporter, can ascertain the answer

24  to?

25     A.    Correct.   My understanding is that I never

117

1    Q.    (BY MR. GRAY)  Mr. Hayes, you agree

2  someone is either convicted of a felony or they are

3  not?

4    A.    Someone is either convicted of -- well, I

5  mean, there's lots of other ways that a case can

6  resolve, right?  Charges could be dropped; they

7  could be . . .

8            So, again, in the specific reference

9  to Don Blankenship, he was -- as the record

10  reflects, he was acquitted of a felony and convicted

11  of a misdemeanor.

12    Q.    Right.  And that -- you --

13    A.    I would say -- let me -- let me also say I

14  believed at the time that I referred to him as a

15  convicted felon that he had been, in fact, convicted

16  of a felony.

17            MR. GRAY:  I'll move the last part --

18  move to strike the last part as nonresponsive.

19            MR. BIERBAUER:  It was perfectly

20  responsive, Jeremy.

21            MR. GRAY:  We'll resolve that later.

22            Madame Court Reporter, can you read

23  back the last answer for me.  Last question and

24  answer, please.

25            THE COURT REPORTER:  One moment,

Confidential      Christopher Loffredo Hayes - March 02, 2021

120

```
 1        A.   I don't, no.

 2        Q.   And did you accurately report the fact of

 3   Mr. Blankenship's conviction when you said he was a

 4   "convicted felon," in your May 9th broadcast?

 5              MR. BIERBAUER:  Objection to form.

 6        A.   I think we were imprecise in that.  I

 7   think that at the time I believed he had been

 8   convicted of a felony, and I think the statement was

 9   imprecise.

10        Q.   (BY MR. GRAY)  Is it inaccurate?

11              MR. BIERBAUER:  Objection to form.

12        Q.   (BY MR. GRAY)  Is the statement

13   inaccurate?

14        A.   Again, I think it's -- no, it's in a gray

15   area, honestly.

16        Q.   Well, the question of whether or not he

17   was convicted of a felony we've established is --

18        A.   I didn't say he was convicted of a --

19        Q.   -- a question of fact.

20        A.   I didn't say he was convicted of a felony.

21        Q.   I'm not saying you did.  I'm just backing

22   up to -- to make sure you and I are on the same

23   page.

24              You have agreed with me, I think, that

25   whether or not someone is convicted of a felony is a
```

Confidential      Christopher Loffredo Hayes - March 02, 2021

125

1    April 6th, 2016.

2        Q.    (BY MR. GRAY)   Do you have Exhibit 9 in

3    front of you, sir?

4        A.    I do.

5        Q.    I see in the "Subject" line a reference to

6    "our old friend Don Blankenship."

7              Do you see that?

8        A.    I do.

9        Q.    You understood that was meant

10   sarcastically?

11             MR. BIERBAUER:   Objection.

12       A.    I don't know if sarcastically.  I think it

13   was a sort of playful reference to the fact that he

14   had actually come to our studio and been interviewed

15   in-studio.

16       Q.    (BY MR. GRAY)   Well, you hold

17   Mr. Blankenship in some disdain, do you not?

18             MR. BIERBAUER:   Objection.

19       A.    I would disagree with that

20   characterization.

21       Q.    (BY MR. GRAY)   Well, what's your general

22   opinion of the coal industry?

23             MR. BIERBAUER:   Objection.

24       A.    I don't know.  I don't really have a

25   general opinion of the coal industry.

152

1          Subscribed and sworn to on this the 7th

2     day of March, 2021.

3

4

5

6
      _____
7     Karen L.D. Schoeve, RDR, CRR
      Realtime Systems Administrator
      NCRA Exp. Date:  09-30-21
8     Lexitas Legal
      Firm Registration #736
9     999 Old Eagle School Road, Suite 118
      Wayne, Pennsylvania 19087
10    215-494-7650

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Job No. 2021-781298

USCA4 Appeal: 22-1198   Doc: 48      Filed: 05/25/2022   Pg: 240 of 307
Case 2:19-cv-00236   Document 938-1   Filed 06/14/21   Page 36 of 36 PageID #: 15690
Case 2:19-cv-00236   Document 882-6   Filed 05/24/21   Page 48 of 48 PageID #: 11278

**"Schaffer, Gia P"**

From:      Christopher Hayes
Sent:      Thu 5/10/2018 8:47 PM (GMT-04:00)
To:        "Schaffer, Gia P"
Cc:
Bcc:
Subject: Re: Blankenship felon

yes! Caught that after the show, but you're rght.

-c

On Thu, May 10, 2018 at 8:45 PM, Schaffer, Gia P
wrote:

First, I love your show. I watch you and Rachel every evening. I live in WV, I need it!!

You mentioned that Blankenship was a Felon on your Thing1/2 Segment. Unfortunately it was a misdemeanor

Go figure!

Keep up the good work!

Gia Schaffer

This communication is for use by the intended recipient and contains information that may be privileged, confidential or copyrighted under applicable law. If you are not the intended recipient, you are hereby formally notified that any use, copying or distribution of this e-mail, in whole or in part, is strictly prohibited. Please notify the sender by return e-mail and delete this e-mail from your system. Unless explicitly and conspicuously designated as "E-Contract Intended", this e-mail does not constitute a contract offer, a contract amendment, or an acceptance of a contract offer. This e-mail does not constitute a consent to the use of sender's contact information for direct marketing purposes or for transfers of data to third parties.

Francais Italiano Deutsch Portuges Espanol Japanese Chinese Korean

**EXHIBIT**

8

MSNBC 001287

USCA4 Appeal: 23-1198      Doc: 48         Filed: 05/25/2022      Pg: 241 of 307

# EXHIBIT 2

**In the Matter Of:**

*Blankenship vs*

*Fox News Network*

---

*DENIS HORGAN*

*April 23, 2021*

---



1

1           UNITED STATES DISTRICT COURT

2         SOUTHERN DISTRICT OF WEST VIRGINIA

3             CHARLESTON DIVISION

4    DON BLANKENSHIP

5           Plaintiff,

6      vs.              Case No.:  2:19-cv-00236

7    FOX NEWS NETWORK LLC, et al.,

8           Defendants.
     --------------------------------/

9

10

11             ** CONFIDENTIAL **

12            REMOTELY CONDUCTED

13      VIDEOTAPED DEPOSITION OF DENIS HORGAN

14           Friday, April 23, 2021

15

16

17

18

19

20

21   Stenographically reported by:
     LORRIE L. MARCHANT, RMR, CRR, CCRR, CRC
22   California CSR No. 10523
     Washington CSR No. 3318
23   Oregon CSR No. 19-0458
     Texas CSR No. 11318

24

25   Job No.:  2021-788039

2

```
 1                  A P P E A R A N C E S

 2          (All appearances remotely via Zoom)

 3   Appearing as counsel on behalf of the Plaintiff:

 4           SIMPKINS LAW
             BY:   JEFFREY S. SIMPKINS, ESQ.
 5           102 E. 2nd Avenue
             Williamson, WV 25661
 6           (304) 235-2735
             simpkinslawoffice@gmail.com
 7
     Appearing as counsel on behalf of the Defendants:
 8
             FROST BROWN TODD, LLC
 9           BY:   KEVIN T. SHOOK, ESQ.
                   ALEX ZURBUCH, ESQ.
10           One Columbus Center
             10 West Broad Street
11           Columbus, OH 43215
             (614) 464-1211
12           kshook@fbtlaw.com
             azurbuch@ftblaw.com
13
     Also present:
14
             Don Blankenship
15           Erik Bierbauer, in-house counsel for MSNBC
             Gail Gove, in-house counsel for MSNBC
16           Marie Schuetze, stenographic intern
             Mitch Reisbord, legal video specialist
17

18                      ---oOo---

19

20

21

22

23

24

25
```

| Blankenship vs Fox News Network | Confidential | Denis Horgan April 23, 2021 |
|---|---|---|

3

1                          I N D E X

2                      INDEX OF EXAMINATION

3    EXAMINATION BY                                    PAGE

4     MR. SIMPKINS                                      5

5                        ---oOo---

6      INDEX OF EXHIBITS MARKED FOR IDENTIFICATION

7      EXHIBIT        DESCRIPTION                     PAGE

8     Exhibit 1     NBCUniversal News Group Policies    13
                    and Guidelines, December
9                   2014{S}{TR:1}{P}

10    Exhibit 2     e-mail correspondence, dated        19
                    12/3/2015, subject: RE:  Shared
11                  from Twitter:  Former Massey
                    Energy CEO Guilty of Deadly Coal
12                  Mine Blast - NYTimes.com

13    Exhibit 3     e-mail correspondence, dated        33
                    4/6/2016, subject: our old
14                  friend Don Blankenship going to
                    the cooler for a year
15
      Exhibit 4     Video/audio clip from All In        37
16                  with Chris Hayes show

17    Exhibit 5     News article entitled "Former       37
                    Massey Energy CEO Don
18                  Blankenship to run for U.S.
                    Senate"
19
      Exhibit 6     Article by Evan Osnos, dated        41
20                  12/3/2015 entitled "Don
                    Blankenship, West Virginia's
21                  'King of Coal,' is Guilty"

22    Exhibit 7     Printout of tweet by Chris Hayes    43

23                        ---oOo---

24

25

USCA4 Appeal: 22-1198     Doc: 48     Filed: 05/25/2022     Pg: 246 of 307

1    prior to today's deposition?

2        A.    I reviewed it when it was presented as an

3    exhibit.

4        Q.    Okay.  And Exhibit No. 5 is an article from

5    wchstv.com titled "Former Massey Energy CEO

6    Don Blankenship to run for U.S. Senate."

7              Do you see that?

8        A.    Yes.  That's the headline.

9        Q.    And Chris Hayes referred to this article as

10   "a source" during the telecaster segment; is that

11   correct?

12       A.    Correct.

13             MR. SHOOK:  Objection.

14             THE WITNESS:  Sorry.

15             BY MR. SIMPKINS:

16       Q.    Sorry.  If you want to allow a brief moment

17   of pause before so Kevin Shook can get his

18   objection, that would be fine, if you don't mind.

19             MR. SIMPKINS:  So, Kevin, do you have an

20   objection?

21             MR. SHOOK:  Yeah.  I objected.

22             MR. SIMPKINS:  Okay.

23             BY MR. SIMPKINS:

24       Q.    The article was also used as a graphic

25   during the segment or telecast; correct?

| Blankenship vs<br>Fox News Network | Confidential | Denis Horgan<br>April 23, 2021 |
|---|---|---|

```
 1      A.   Correct.

 2           MR. SHOOK:  Objection.

 3           THE WITNESS:  We have a real delay here.

 4   Sorry.

 5           BY MR. SIMPKINS:

 6      Q.   The article alludes to Don Blankenship's

 7   misdemeanor conviction in the third full paragraph

 8   on page 2.

 9           Do you see that?  It starts:

10              "Blankenship's misdemeanor conviction

11           came after 24 days of testimony in

12           connection with his involvement in the

13           Upper Big Branch explosion that killed 29

14           men in 2010."

15           Do you see that?

16      A.   Not on page 2.  I have -- that's page 3.  I

17   see that on page 3.

18      Q.   Page 3 ends:

19              "The AP contributed to the story."

20           I'm talking about page 2 of Exhibit No. 5.

21   The first page is a picture of Don Blankenship.

22      A.   This is my first page (witness showing page

23   to camera).

24      Q.   Where is your second page?

25      A.   This is my second page (witness showing
```

1    page to camera).

2        Q.    Okay.  Maybe it is your third page, but

3    it's my second page.

4        A.    This is my third page (witness showing page

5    to camera).

6        Q.    Do you see the paragraph --

7        A.    This is the fourth page (witness showing

8    page to camera).

9        Q.    Okay.  Do you see the paragraph that

10   states:

11               "Blankenship's misdemeanor conviction

12          came after 24 days of testimony"?

13          Do you see that within the article?

14       A.    I see it on page 3, yes.

15       Q.    Okay.  Is Exhibit No. 5 a true and accurate

16   depiction of the wchstv.com article used as a

17   graphic during the telecast of All In with

18   Chris Hayes?

19          MR. SHOOK:  Objection.

20          Go ahead and answer if you know.

21          THE WITNESS:  I have no reason to believe

22   that it's not.

23          BY MR. SIMPKINS:

24       Q.    Okay.  Do you know who chooses the graphics

25   to be used during the telecast of All In with

1    Chris Hayes?

2        A.    Generally the segment producer will choose

3    the graphics.

4        Q.    And who was the segment producer for

5    this -- for the video segment, Exhibit No. 4?  If

6    you recall.

7        A.    I don't know.  I don't recall.

8        Q.    Okay.  If you would, go to Exhibit No. 6.

9             (Marked for identification purposes,

10            Exhibit 6.)

11            THE WITNESS:  Okay.

12            BY MR. SIMPKINS:

13       Q.    Do you have it in front of you?

14       A.    I do.

15       Q.    Now, Exhibit No. 6 is an article from The

16   New Yorker titled "Don Blankenship, West Virginia's

17   'King of Coal,' is Guilty."

18            Do you see that?

19       A.    I do.

20       Q.    Yeah.  And Chris Hayes referred to this

21   article as a source during the segment or telecast;

22   is that correct?

23            MR. SHOOK:  Objection.

24            THE WITNESS:  He did.

25   ///

Blankenship vs
Fox News Network

Confidential

Denis Horgan
April 23, 2021

79

1              STENOGRAPHER'S CERTIFICATE

2              I, LORRIE L. MARCHANT, Certified Shorthand

3      Reporter, Certificate No. 10523, for the State of

4      California, hereby certify that DENIS HORGAN was by

5      me duly sworn/affirmed to testify to the truth, the

6      whole truth and nothing but the truth in the

7      within-entitled cause; that said deposition was

8      taken at the time and place herein named; that the

9      deposition is a true record of the witness's

10     testimony as reported to the best of my ability by

11     me, a duly certified shorthand reporter and a

12     disinterested person, and was thereafter transcribed

13     under my direction into typewriting by computer;

14     that request [ X ] was [   ] was not made to read and

15     correct said deposition.

16             I further certify that I am not interested

17     in the outcome of said action, nor connected with,

18     nor related to any of the parties in said action,

19     nor to their respective counsel.

20             IN WITNESS WHEREOF, I have hereunto set my

21     hand this 6th day of May, 2021.

22

23     _____

24          LORRIE L. MARCHANT, RMR, CRR, CCRR, CRC
            Stenographic Certified Shorthand Reporter #10523

25

# EXHIBIT #3

From:    O'Melia, Brendan (NBCUniversal, MSNBC)
Sent:    Wed 4/06/2016 12:39 PM (GMT-04:00)
To:      "allin_everyone@nbcuni.com" <"@NBC UNI All In Everyone>, "Chris
         Hayes<clhprivate@gmail.com" <clhprivate@gmail.com>
Cc:
Bcc:
Subject: our old friend Don Blankenship going to the cooler for a year

# Former Massey Energy CEO Don Blankenship receives maximum sentence

http://www.wsaz.com/content/news/Former-Massey-Energy-CEO-Don-Blankenship-to-be-sentenced-Wednesday-374701101.html

# EXHIBIT 3

## In the Matter Of:

*Don Blankenship vs*

*Fox News Network*

---

## JOY-ANN LOMENA-REID

*April 19, 2021*

---



1

1              UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF WEST VIRGINIA
2                   CHARLESTON DIVISION

3    DON BLANKENSHIP,            §
                                 §
4          Plaintiff,            §
                                 §
5    v.                          § Case No.:  2:19-cv-00236
                                 §
6    FOX NEWS NETWORK,           §
     L.L.C., et al.              §
7                                §
           Defendants.           §
8
     * * * * * * * * * * * * * * * * * * * * * * * * *
9
              REMOTE VIDEOTAPED ORAL DEPOSITION OF
10                   JOY-ANN LOMENA-REID
               Designated as "Confidential"
11                    April 19, 2021
     * * * * * * * * * * * * * * * * * * * * * * * * *
12

13      REMOTE VIDEOTAPED ORAL DEPOSITION OF JOY-ANN

14   LOMENA-REID, produced as a witness and duly sworn, was

15   taken in the above-styled and numbered cause on April

16   19, 2021, from 10:01 a.m. until 12:12  p.m. (Eastern

17   Time), before Suzanne Kelly, RDR, CRR, in and for the

18   State of Texas, reported by stenographic method with

19   all participants appearing remotely from separate

20   locations pursuant to emergency orders related to the

21   COVID-19 pandemic.

22

23   Reported by:  Suzanne Kelly, CSR, RDR, CRR

24   Job Number:  2021-785595

25

| Don Blankenship vs<br>Fox News Network | Confidential | Joy-Ann Lomena-Reid<br>April 19, 2021 |
|---|---|---|

2

```
 1                        APPEARANCES

 2     FOR THE PLAINTIFF:

 3     Jeremy Gray, Esq.
              -and-
 4     Saam Takaloo, Esq.
       EARLY SULLIVAN WRIGHT GIZER & McRAE, L.L.P.
 5     6420 Wilshire Boulevard
       17th Floor
 6     Los Angeles, California 90048
       323.301.4660
 7     jgray@earlysullivan.com
       stakaloo@earlysullivan.com
 8

 9     FOR DEFENDANT MSNBC CABLE, L.L.C.

10     Kevin T. Shook, Esq.
       FROST BROWN TODD, L.L.C.
11     10 W Broad Street #2300
       Columbus, Ohio 43215
12     614.559.7214
       kshook@fbtlaw.com
13
       Jared M. Tully, Esq.
14     FROST BROWN TODD, L.L.C.
       United Bank Building
15     500 Virginia Street, East
       Suite 1100
16     Charleston, West Virginia 25301
       304.348.2404
17     jtully@fbtlaw.com

18

19     FOR ABC:

20     Caesar Kalinowski, IV, Esq.
       DAVIS WRIGHT TREMAINE
21     920 Fifth Avenue
       Suite 3300
22     Seattle, Washington 98104
       206.757.8282
23     caesarkalinowski@dwt.com

24

25
```

60

1              But the point of the segment was

2    his candidacy, not the specifics of what he was

3    convicted of.

4              So, we were attempting to convey,

5    you know, perhaps imprecisely, that this is

6    somebody who is a convicted criminal.

7       Q.   Do you think describing someone as "a

8    convicted criminal" and "a convicted felon" as

9    equivalent?

10      A.   I think in the shorthand, I think that

11   if the point is to convey that somebody has been

12   convicted of a very serious crime and, in fact,

13   you know, was on probation, spent a year in

14   federal prison to convey the seriousness of that

15   crime.

16             I think to the layperson hearing

17   "convicted criminal" or "ex-convict" or

18   "convicted felon," I think they convey the same

19   thing.

20             So I think the end result is this

21   conveying the exact same thing.  I mean one is

22   sort of shorthand for the other.  It's sort of

23   layman's shorthand.

24      Q.   Can you tell me any other occasions in

25   your broadcast career where you used the word

USCA4 Appeal: 22-1198    Doc: 48    Filed: 05/25/2022    Pg: 258 of 307
Case 2:19-cv-00236   Document 938-3   Filed 06/14/21   Page 6 of 26 PageID #: 15708

92

```
 1        I further certify that I am neither counsel for,
    related to, nor employed by any of the parties or
 2  attorneys in the action in which this proceeding was
    taken, and further that I am not financially or
 3  otherwise interested in the outcome of the action.
 4        In witness whereof, I have this date subscribed my
    name on this ___ day of _____ 2021.
 5
 6
 7
 8                    Suzanne Kelly, RDR, CRR
                      Expiration Date:  12-31-18
 9                    LEXITAS
                      Firm Registration No. 736
10                    Suite 118
                      999 Old Eagle School Road
11                    Wayne, Pennsylvania 19087-1707
                      215.494.7650
12
    JOB NO.:   2021-78559584
13

14

15

16

17

18

19

20

21

22

23

24

25
```

# EXHIBIT #2

&lt;Show: ALL IN with CHRIS HAYES&gt;
&lt;Date: January 9, 2018&gt;
&lt;Time: 20:00&gt;
&lt;Tran: 010901cb.478&gt;
&lt;Type: Show&gt;
&lt;Head: ALL IN WITH CHRIS HAYES for January 9, 2018, on MSNBC&gt;
&lt;Sect: News; International&gt;
&lt;Byline: Joy Reid&gt;
&lt;Guest: Jason Johnson, Rick Wilson, Mazie Hirono, Evan McMullin, Kurt
Bardella &gt;
&lt;High: &gt;
&lt;Spec: Politics; Immigration; DACA; Congress; Donald Trump&gt;

CHRIS MATTHEWS, MSNBC HOST:.  Thanks for being with us.  "ALL IN" with
Chris Hayes starts right now.

(BEGIN VIDEO CLIP)

JOY REID, MSNBC HOST:  Tonight on ALL IN.

DONALD TRUMP, PRESIDENT OF THE UNITED STATES:  Well, I think it`s very sad
what they`ve done with this fake dossier.

REID:  Democrats release the Fusion GPS transcripts.

TRUMP:  But I think it`s a disgrace.

REID:  Tonight, explosive new details about the Steele dossier, including
fears that Trump was blackmailed.  And that a human source from inside the
Trump organization led to the FBI`s investigation.  Then --

STEVE BANNON, FORMER CHIEF STRATEGIST, WHITE HOUSE:  This is what they
think about President Trump behind closed doors.

REID:  Steve Bannon bounced from Breitbart as his epic collapse continues.

TRUMP:  That`s why sloppy Steve is now looking for a job.

REID:  And the self-proclaimed very stable genius holds court on
immigration --

TRUMP:  My positions are going to be what the people in this room come up
with.

REID:  -- and plays chicken with DACA and the wall.

TRUMP:  I think that`s what she`s saying.

REID:  ALL IN starts now.

(END VIDEO CLIP)

REID:  Good evening from New York, I`m Joy Reid in for Chris Hayes.
Republicans did not want the public to see secret testimony related to the
infamous Trump dossier.  But today democratic Senator Dianne Feinstein went
ahead and released the testimony anyway.  And now that we`ve seen it, it`s

MSNBC 000087

clear why the Republicans didn't want it to get out because this testimony
destroys the conspiracy theory being peddled on the right to undermine
Special Counsel Robert Mueller's Russia investigation. According to that
theory, the dossier was co-opted by the FBI in 2016 as part of a Democratic
plot to tarnish Donald Trump.

(BEGIN VIDEO CLIP)

REP. JIM JORDAN (R), OHIO: The Clinton campaign and the DNC, now we know
those are one and the same, paid the law firm who paid Fusion GPS who paid
Christopher Steele who paid Russians to give him this dossier and get this
dossier that was we think taken to the FISA court and was the basis for
securing warrant to spy on American --

UNIDENTIFIED MALE: Congressman -- the Clinton campaign --if you let me, I
will get to this, I will get to this --

(END VIDEO CLIP)

REID: The testimony released today blows those claims out of the water and
the two Republican Senators blocking its release, Chuck Grassley, and
Lindsey Graham knew that. They knew the narrative being pushed on Fox News
and Capitol Hill was baloney. But instead of correcting that narrative,
they chose to perpetuate it calling for a second special counsel to
investigate so-called FBI bias and referring the author of the dossier,
former British spy Christopher Steele, for a criminal investigation. It's
all part of a concerted drive by the President's allies to muddy the waters
of the Russia investigation and discredit the dossier, which outlines
alleged Russian collusion with the Trump campaign in 2016. According to
the testimony released today, the reports in that dossier were "really
serious and really credible." And their author Steele was an experienced
intelligence professional who used to be the top Russia expert at MI6.

The testimony was given by Glenn Simpson, Co-Founder of the research firm
Fusion GPS, which hired Steele to investigate Donald Trump during the
campaign. The research by Fusion GPS, in turn, was originally funded by
the Washington Free Beacon, a conservative Web site and later by a lawyer
representing the DNC and the Clinton campaign. Simpson was interviewed in
August for about ten hours by investigators on the Senate Judiciary
Committee. And more recently, at his firm's work has taken center stage in
right-wing conspiracy theories, he's been calling on the committee's senior
Republicans, Grassley and Graham, to release his testimony. Well, today
the top-ranking Democrat on Judiciary, Dianne Feinstein, got tired of
waiting.

(BEGIN VIDEO CLIP)

SEN. DIANNE FEINSTEIN (D), CALIFORNIA: I think the people are entitled to
know what was said and the lawyers also wanted it released. I see no
problem with releasing.

(END VIDEO CLIP)

REID: A spokesman for Grassley slammed Feinstein's move in a written
statement claiming that it "undermines the integrity of the committee's
oversight work and jeopardizes its ability to secure candid, voluntary

MSNBC 000088

USCA4 Appeal: 22-1198   Doc: 48   Filed: 05/25/2022   Pg: 262 of 307
Case 2:19-cv-00236   Document 938-3   Filed 06/14/21   Page 10 of 26 PageID #: 15712

Case 2:19-cv-00236   Document 911-5   Filed 06/07/21   Page 30 of 46 PageID #: 14433

testimony related to the independent recollections of future witnesses."
But Grassley may have had other reasons to object. According to the
testimony, Christopher Steele approached the FBI in the Summer of 2016, not
as part of some shadowy Democratic plot, but because he was deeply troubled
by his findings in the dossier. "He said he thought we were obligated to
tell someone in government about this information. He thought from his
perspective there was an issue, a security issue, about whether a
presidential candidate was being blackmailed." When Steele finally did get
in contact with the FBI, it turned out he was not the first person to do so
according to this testimony. "They believed Chris' information might be
credible because they had other intelligence that indicated the same thing.

One of those pieces of intelligence was a human source from inside the
Trump organization." I'm joined now by two people who know a thing or two
about the Department of Justice, MSNBC Justice Analyst Matt Miller, who was
Chief Spokesman at the DOJ under President Obama and NBC News National
Security Contributor Frank Figliuzzi, former Assistant Director for
Counterintelligence at the FBI, under then-Director Robert Mueller. And
Frank, I'll start with you first. There are questions about who this other
intelligence source inside the Trump campaign might have been and whether
it might be George Papadopoulos, the same person who's pleaded guilty to a
crime, the same person who allegedly on a drunken night told Australian
officials who then relayed to American intelligence officials that there
might be some attempted contact with the Trump campaign by the Russians.
Would it surprise you if George Papadopoulos was the inside man, so to
speak?

FRANK FIGLIUZZI, NBC NEWS NATIONAL SECURITY CONTRIBUTOR: No, that could
very well be the case. We know that he had a conversation with the Aussies
in May 2016. We know that Christopher Steele approached the FBI in July
2016 so this could be consistent. But I'll tell you something, if it's not
George Papadopoulos, then we've got a mystery person inside the Trump
campaign who theoretically could still be in place. And if in fact that's
been compromised or jeopardized, I'm sure that the Mueller team is kind of
scratching their heads tonight.

REID: Yes, and you know, I think probably the thing that's the most
maddening when you look at this new piece of information that Republicans
tried to stop us from seeing but that we can now see, is that you had the
FBI being approached now by at least two people, someone inside the
campaign, as well as this former MI6 top Russia expert and raising the
alarms that one of the two candidates for President of the United States
could be being blackmailed. And there's this piece from Glenn Simpson's
testimony to Congress that Steele was concerned. He said, "I understand
Chris severed his relationship with the FBI out of concern that he did not
know what was happening inside the FBI and there was a concern that the FBI
was being manipulated for political ends by the Trump people." That's
referring to the fact that the FBI was denying that it was investigating
the Trump campaign while it was acknowledging that it was investigating
Hillary Clinton's e-mails. Is that a scandal, a new scandal upon the FBI?

MATT MILLER, MSNBC JUSTICE ANALYST: I think it's a tough thing to explain.
Look, I think --

REID: Matt first.

MSNBC 000089

USCA4 Appeal: 22-1198   Doc: 48   Filed: 05/25/2022   Pg: 263 of 307
Case 2:19-cv-00236   Document 938-3   Filed 06/14/21   Page 11 of 26 PageID #: 15713

Case 2:19-cv-00236   Document 911-5   Filed 06/07/21   Page 31 of 46 PageID #: 14434

MILLER: I think what -- I think why Christopher Steele severed his ties was after that story in The New York Times ran October 31st when they said that you know, the FBI's been investigating this and so far had found no clear ties. And of course, Chris Steele was talking to FBI agents and had his own information he was supplying them that showed that wasn't the case. And that happened after two other events. One, Director Comey having sent -- having sent that letter up to the Hill, and then two, a Wall Street Journal story that had a number of leaks from the FBI, very harmful to the Clinton campaign about attempts by FBI agents to investigate the Clinton Foundation.

So I think he was very concerned when he saw that story. And I think we still haven't ever gotten a good explanation from the bureau about why they did knock that down. It may be very well that they didn't want --- that they didn't want the Trump campaign, people they planned to approach to know how serious they were conducting this investigation. In fact, that would be a legitimate thing for them to do. They aren't supposed to be confirming investigations appropriately, it only seems odd because they acted so differently in the Clinton case.

REID: Yes. And Frank, I mean, that -- I guess -- I guess that would be sort of the only rational explanation why the FBI would then prompt the New York Times to publish this story that essentially knocks down the idea that the Trump campaign was being investigated while they were confirming that Hillary Clinton was. Doesn't this also explode this idea on the right that somehow the FBI was this hotbed of liberalism that was trying to help Hillary Clinton?

FIGLIUZZI: Yes, I think it does. And we know now that the FBI was being very circumspect. And I think as Matt said, they were in the midst of figuring out what they had with Trump, a candidate, very early stages perhaps, and just were circumspect to come out with it. But I also want to add something here, because we're talking about Chris Steele as a British Intelligence, professional, who knows Russia, came forward, called time-out, went to the FBI. I also want to point out another intelligence professional here, and that's Dianne Feinstein. Don't forget she Chairs the Senate Intelligence Committee. I personally as A.D. at FBI had met with her personally, briefed the committee, briefed her. She gets the intelligence from Russia and I think in part the reason why she released this transcript was because she knows how deeply damaging the Russian threat can be. She needs the public to see it and she was extremely frustrated with her colleagues in not being able to release it.

REID: Yes, absolutely. And I think you know, she of all people would understand that according to Glenn Simpson's lawyer, somebody's already been killed as a result of the publication of this dossier and those involved didn't want to see harm come to anyone else. You know, she also met with dealing with a colleague on the other side of the aisle that doing were things like Lindsey Graham did this weekend on "MEET THE PRESS." This is Lindsey Graham again reiterating who he wants investigated.

(BEGIN VIDEO CLIP)

SEN. LINDSEY GRAHAM (R), SOUTH CAROLINA: I want a special counsel to look at not only how Mr. Steele conducted himself, what the FBI did with the dossier, whether Mr. Orr, whose wife worked for Fusion GPS alongside Mr.

MSNBC 000090

USCA4 Appeal: 22-1198    Doc: 48    Filed: 05/25/2022    Pg: 264 of 307
Case 2:19-cv-00236   Document 938-3   Filed 06/14/21   Page 12 of 26 PageID #: 15714

Case 2:19-cv-00236   Document 911-5   Filed 06/07/21   Page 32 of 46 PageID #: 14435

Steele, what involvement did he have in the dossier, and I want to find out
if the lead investigator of the Clinton e-mail investigation had a
political bias against Trump for Clinton to the point that it was a sham
investigation. I don't know all these things, but I can tell you somebody
needs to look. If you believe Robert Mueller should be looking at the
Trump campaign, count me in. But if you ignore all this stuff, you're
blind.

(END VIDEO CLIP)

REID: Matt, what does it say to you or how do you feel about it when you
hear -- when you hear Lindsey Graham saying that, knowing that he heard the
exact same testimony Diane Feinstein did, that he knew what was in these
transcripts and yet he still demonize -- he's still demonizing Mr. Steele,
still demonizing Fusion GPS, and he knew better?

MILLER: You know, one of the things that's most stark when you read this
transcript is the behavior of Christopher Steele versus that of Lindsey
Graham, Chuck Grassley, and everyone in the Trump orbit. Look, Christopher
Steele is not an American citizen, he's a British citizen, someone who's
worked with American intelligence agencies and national security agencies
for years. But he was so concerned by what he saw and cared so much about
America's national security, that he took it upon himself to call the FBI.
Contrast that with Donald Trump Jr. who saw that the Russians want to
interfere with the selection and said, I love it. Contrast it with Jared
Kushner, who got an e-mail saying the same thing, and went to a meeting.
And contrast that with Lindsey Graham and Chuck Grassley, who seeing
Christopher Steele tried to blow the whistle, and refer him for criminal
charges, try to have him prosecuted and sent to jail. It really is, I
would say a shameful moment for those two members of the Senate.

REID: Yes, well said. Matt Miller, Frank Figliuzzi, thank you, both. I
appreciate it. And for more on Russian efforts to block the dossier
testimony from being released -- from being released, let's bring in MSNBC
Contributor Jennifer Rubin, Conservative Columnist for The Washington Post
and Evan McMullin, Independent Presidential Candidate in 2016, who's also
happens to be a former CIA officer. And actually, I'm going to start with
you, Evan. What do you make of this? You just heard you know, Lindsey
Graham again demonizing Christopher Steele, who made it his business, he's
not even an American citizen as Matt just pointed out, to try to inform the
FBI that he thought there could be blackmail happening against an American
presidential candidate and then finding out there was an insider in the
Trump campaign that was saying the same thing. What does it -- what do you
make of the idea that Republicans have been trying to get Fusion GPS and
Christopher Steele investigated?

EVEN MCMULLIN, FORMER INDEPENDENT PRESIDENTIAL CANDIDATE: Well, I think it
goes to show how far this extreme partisanship with many Republicans in
Congress has gone. It's gone so far that they're willing to attack people
who are standing up for American and for western national security, meaning
our allies in Europe, in the U.K., elsewhere, and of course here at home.
I mean, this is what they're doing. They're attacking even the people that
serve our country's interests, our country's most vital interests including
the integrity of our elections. I find (AUDIO GAP) Grassley's attack,
especially the criminal referral to the DOJ on Christopher Steele, to be
just disgusting and very disappointing. I mean, this is -- this is -- they

MSNBC 000091

USCA4 Appeal: 22-1198    Doc: 48    Filed: 05/25/2022    Pg: 265 of 307
Case 2:19-cv-00236   Document 938-3   Filed 06/14/21   Page 13 of 26 PageID #: 15715

Case 2:19-cv-00236   Document 911-5   Filed 06/07/21   Page 33 of 46 PageID #: 14436

are not serving the public interest. What they did is completely
disingenuous.

Keep in mind, they took information that they had received from the FBI and
then wrote a criminal referral back to the Department of Justice about
information that the FBI had given them. Think about how ridiculous that
is. That's information the DOJ already has. And these guys, in a
political stunt, send it back to DOJ and said, we're going to give you a
criminal referral on this. It's absolutely absurd. Christopher Steele is
a patriotic Brit. He's somebody who cares about our security too. He's
been a partner in a variety of forms with our national security and law
enforcement officials. He did what any intelligence or any law enforcement
self-respecting officer would do, and that is alerted the appropriate
authorities about a serious national security risk.

REID: Yes, and Jennifer, you know, you have the Australians alerting the
United States about their alarms about what was going on between the
Kremlin and the Trump campaign. You have Christopher Steele, who's a
British citizen, MI6 Russia expert, alerting them. They're being alerted
by the FBI, they're being investigated by the FBI. How under those
circumstances, knowing what they knew before we did, can Lindsey Graham,
best friend of John McCain, possibly justify turning this around and
demonizing Christopher Steele and Fusion GPS?

JENNIFER RUBIN, MSNBC CONTRIBUTOR: Well, you ask the same question that I
have been asking, which is, remember, how did the FBI and Steele kind of
get together? And that was through John McCain, one of the closest friends
and colleagues that Lindsey Graham has in the Senate. But instead, as you
say, he's off on this wild goose chase. And the Republicans can understand
didn't want us to learn lots of things that were in this testimony. I
didn't know, for example, that they determined that, for example, Donald
Trump was doing business in former Soviet States. Donald Trump kept
denying he did business in Russia but he didn't say anything about Georgia
and Azerbaijan, two places that apparently still figured out he was active
in. He talked about ties with people connected to the Russian mob. He
talked about, as you have said, other people within the Trump campaign who
had this concern he was being blackmailed. So there's a lot of substantive
material in here.

But the picture that you get is someone, both Mr. Simpson and Mr. Steele,
who are professionals, who are handling material in the appropriate way,
who didn't go in with the agenda that they wanted to find this or that or
they wanted to make stuff up but they wanted to find out was out there.
You know, Republicans don't want to find out what's out there, and they're
completely just interested frankly in finding out the truth here. The name
of the game for them toss circle the wagons around Donald Trump, threw up
enough dust and enough distraction that we all get lost in the weeds and
hope that somehow they stumble through 2018. But instead they're making
themselves accessories to this cover-up, they're making themselves
complicit in an effort to mislead the American people and to really conceal
Donald Trump's own wrongdoings.

REID: Yes, and everything you have now, there's -- a piece of Spencer
Ackerman is reporting just tonight in The Daily Beast that even after the
election, an acolyte of Michael Flynn and Peter Thiel was floating the idea
of withdrawing U.S. forces from parts of Europe that the United States has

MSNBC 000092

USCA4 Appeal: 22-1198    Doc: 48    Filed: 05/25/2022    Pg: 266 of 307
Case 2:19-cv-00236   Document 938-3   Filed 06/14/21   Page 14 of 26 PageID #: 15716

Case 2:19-cv-00236   Document 911-5   Filed 06/07/21   Page 34 of 46 PageID #: 14437

been defending since the Cold War, just to please Vladimir Putin. The evidence is mounting that this administration is attempting to appease Putin. And so when you couple that with these ties before the election, does it -- I mean, you ran for President of the United States. Can you imagine why somebody like Lindsey Graham, who used to be a hawk, could possibly not be interested in exploring that further?

MCMULLIN: No, and he has been. It's -- Lindsey Graham's behavior over the past month or two has been absolutely bewildering. I'm somebody who has had a great deal of respect for him. I just don't understand it. I absolutely don't understand it. The Russian interfered in our election, they would like to deprive the American people of unimpeded power to choose their own leaders. The Russians want to have a say in that. They had a say in that in 2016. It's a huge national security problem. Lindsey Graham knows it. Why he would behave in this manner is just -- I just can't explain it.

REID: Yes, and I think a lot of people are baffled. Jennifer Rubin and Evan McMullin, thank you so much for your time tonight.

RUBIN: Thanks.

MCMULLIN: Thank you.

REID: Thank you. And next, two -- what two-shirted strategic genius Steve Bannon Loses two jobs in one day. The epic demise of Steve Bannon in two minutes.

(COMMERCIAL BREAK)

(BEGIN AUDIO CLIP)

BANNON: You've got this miracle. You don't think that that's going to resonate. When you say he's created this kind of Oprah thing to set up to run against him in 2020, because of just his tweets or maybe his -- the way he comports himself, isn't his actions, whether it's destroying ISIS in the Middle East, or rebuilding the economy here, and unlocking the animal spirits of the American people, don't you think those actions go a lot farther than your quiet professionalism?

(END AUDIO CLIP)

REID: Well, the groveling didn't work. Steve Bannon is out of a job tonight. Two jobs, in fact. He has stepped down as Executive Chairman of Breitbart News and will no longer host the Breitbart radio show on Sirius XM. Bannon attacked Donald Trump's family in the new book Fire and Fury, going after Ivanka and Donald Jr. and angering the President in the process. After the book came out, Trump said Bannon had "lost his mind" and said his one-time campaign chief executive and fired chief strategist "has nothing to do with me or my presidency." That in turn lost Bannon the support of Rebecca Mercer and her father Robert, the billionaire backers of the Breitbart media site where he served as Executive Chairman since 2012.

Well, tonight The New York Times broke the news that Bannon is out at Breitbart. His departure forced by Rebecca Mercer herself. MSNBC Political Analyst Robert Costa, National Reporter for the Washington Post,

MSNBC 000093

has been reporting on Bannon's exit today and Kurt Bardella is a former
Spokesperson for Breitbart News. I'll start with you on this Robert. Give
us the play by play of how Bannon lost his gig.

ROBERT COSTA, MSNBC POLITICAL ANALYST: It came sudden today at Breitbart's
headquarters. People were preparing for radio interviews, Bannon himself
was sharing the Web site and the editorial coverage. But the decision in a
way also had been in the works for weeks. Rebecca Mercer, the billionaire
donor who's a stakeholder in the site and others in the Breitbart
leadership were looking to push him. They wanted to move away from Bannon
as being this omnipresent person running the whole operation.

REID: And you reported or you tweeted out earlier today that poor people
close to Bannon, his wistful, but has referenced Thomas Cromwell in recent
days, during Cromwell guided a king but it never last and Cromwell was
eventually sent to the tower.

COSTA: And executed.

REID: What is that about?

COSTA: Well, when I was doing my reporting today with my colleagues Josh
Dawsey and Paul Farhi, we're trying to really get a sense of what's
happening inside of the whole Breitbart world today as this drama unfolds,
this battle with the White House. And people say Bannon keeps talking
about history, he mentioned Thomas Cromwell, who was an adviser to a
British king and he eventually was sent to the tower of London and
executed. And Bannon's reason for that, they tell us, is that he sees
himself as a revolutionary figure who guided a president, but he never
really saw it as something that would last.

REID: Well, he thinks quite highly of himself. Does he have to move out
of the Breitbart residence where he lives?

COSTA: We've been looking into that, and it's hard to say exactly what
Bannon's next step will be. He does runs a political operation, a C4 group
and he's going to try to perhaps move forward in 2018. But it's going to
be a real challenge Joy, to see if Steve Bannon can have a presence in the
Republican Party because President Trump is such a dominant force and he
doesn't want Bannon there.

REID: Yes, and so Kurt, you know, we have come to know, you know, over the
past 18 months or two years, Steve Bannon as this very haughty figure,
thinks highly of himself and likes to talk into a tough-guy terms. This is
Bannon from the Weekly Standard just back on August 18th after his White
House exit. This is just after he left, and he said, I feel jacked up.
Now I'm free. I've got my hands back on the weapon. Someone said, it's
Bannon the barbarian, I'm definitely going to crush the opposition, there's
no doubt. I built an F-ing machine at Breitbart. Now that I'm about to go
back, knowing what I know, and we're about to rev that machine up and rev
it up we will do." Is that a person that's capable of being deflated? Do
you think that his ego has been checked?

KURT BARDELLA, FORMER SPOKESPERSON FOR BREITBART NEWS: No, I think Steve,
much like his former boss, Donald Trump, is a textbook narcissist. And he
believes that the more that they punch at him, the more that he goes down,

MSNBC 000094

USCA4 Appeal: 22-1198    Doc: 48    Filed: 05/25/2022    Pg: 268 of 307
Case 2:19-cv-00236   Document 938-3   Filed 06/14/21   Page 18 of 26 PageID #: 15718

Case 2:19-cv-00236   Document 911-5   Filed 06/07/21   Page 36 of 46 PageID #: 14439

the harder he'll fight to come back. He is kind of that street fighter.
And he talks about the how he built at Breitbart the so-called fight club.
That's what they'd refer to themselves as. So I don't think Steve will go
quietly. Now, the question is, is it viable for him to make a return,
really that hinges on his relationship with Trump right now. Trump is the
Republican Party, he is the gateway to donors, to supporters, to that
audience. If Bannon can try to find his way back into Trump's good graces,
he might have a second, third, fourth lease on life. But that's really the
ultimate question.

REID: And do you -- how could he possibly think he could do that? I mean,
he accused Donald Trump's son of treason. He went on the record, according
to multiple people who have spoken about how they came to speak to Michael
Wolff, they said Bannon was the guy who said, go ahead and talk to him.
What way, what method would he use Kurt, to try to get back in Trump's good
graces?

BARDELLA: I think that for Steve to succeed, he needs Trump to fail. At
the end of the day, Trump is all about instant gratification in that
moment. And that's why he's so unpredictable. He can watch one segment
and see one thing he doesn't like, and all of a sudden tweet something
crazy and fly off the handle. The Mueller investigation is a dark cloud
that really is hanging over this Presidency. And as that cloud continues
to darken and unfold, that can create a lot of chaos and instability in the
Donald Trump world and he can become very disenchanted very quickly with
this current cast of advisers, start reaching out to outside people outside
the White House, and I suspect that Steve Bannon will be right there
whisper -- trying to whisper in Trump's ear telling him, this is what
people are serving you right now. This is what they're doing wrong, here's
what you should be doing and try to use the chaos of failure that can be
around Trump in the Mueller investigation to get back into his good graces.

REID: And Robert, there's been some reporting that part of the reason that
Steve Bannon's felt comfortable going on the record with Michael Wolff, is
that he assumed that Roy Moore was going to win, that his candidates would
actually win and that would give him leverage because Trump would need him
and feel like he need him in 2018. Can you -- can you confirm that?

COSTA: Joy, you're putting your finger on the Alabama senate race which
was a huge factor in this entire unraveling of the relationship between the
White House and Steve Bannon. He was confident that Roy Moore would win
that race. And when Democrat Doug Jones won, he saw his political capital
and his relationship with the White House suddenly turn. The White House
was pointing a finger at Bannon and saying, you're responsible for this.
You made this happen in Alabama. And Senate Majority Leader Mitch
McConnell was only happy to cheer along that conclusion by the President.

REID: Yes, we saw that happy tweet by Mitch McConnell's office. I'm sure
he's quite glad to see him gone. Robert Costa, Kurt Bardella, thank you,
guys. I appreciate it.

COSTA: Thank you.

REID: Thank you. And next, the President who calls himself a very stable
genius decided to put on a show for the cameras today and displayed a very
loose grasp of what he was talking about. We'll show you what happened

MSNBC 000095

USCA4 Appeal: 22-1198    Doc: 48    Filed: 05/25/2022    Pg: 269 of 307    PageID #: 15719
Case 2:19-cv-00236   Document 938-3   Filed 06/14/21   Page 17 of 26 PageID #: 15719

Case 2:19-cv-00236   Document 911-5   Filed 06/07/21   Page 37 of 46 PageID #: 14440

right after this

(COMMERCIAL BREAK)

REID: There are two competing conceptions of Donald Trump as President.
The version in Michael Wolff's new book, of a man seen by everyone as an
inattentive and incurious child who is utterly unfit for the job and the
version being pushed by Trump himself, of a "very stable genius." Today,
the President got a chance to make his case when he allowed cameras to roll
for nearly an hour as he presided over a bipartisan negotiating session on
immigration. One issue on the table, whether to pass a standalone bill to
protect DREAMers from deportation as Democrats want.

(BEGIN VIDEO CLIP)

SEN. DIANNE FEINSTEIN (D), CALIFORNIA: What about a clean DACA bill now,
and with a commitment that we go into a comprehensive immigration reform
procedure --

TRUMP: I have no problem. I think that's basically what Dick is saying.
We're going to come up with DACA, we're going to do DACA, and then we can
start immediately on the phase two which would be comprehensive --

FEINSTEIN: Would you be agreeable to that?

TRUMP: Yes, I would like that. I think a lot of people would like to see
that. But I think we have to do DACA first.

REP. KEVIN MCCARTHY (R-CA), HOUSE MAJORITY LEADER: Mr. President, you need
to be clear though. I think what Senator Feinstein is asking here, when we
talk about just DACA, we don't want to be back here two years later. You
have to have security as the secretary would tell you.

TRUMP: But I think that's what she's saying.

(CROSSTALK)

MCCARTHY: No, I think she's saying something different.

(END VIDEO CLIP)

REID: She was saying something different. Trump just didn't seem to
understand what it was. But Donald Trump has never been one to get bogged
down in policy details. Indeed he told lawmakers today to just send him
something, anything and he'll sign it.

(BEGIN VIDEO CLIP)

TRUMP: When this group comes back, hopefully with an agreement, this group
and others from the Senate, from the House, comes back with an agreement,
I'm signing it. I mean, I will be signing it. I'm not going to say, oh,
gee, I want this, I want that. I'll be signing it.

(END VIDEO CLIP)

REID: Art of the deal. What it's like to try and to negotiate with this

MSNBC 000096

USCA4 Appeal: 22-1198    Doc: 48    Filed: 05/25/2022    Pg: 270 of 307
Case 2:19-cv-00236   Document 938-3   Filed 06/14/21   Page 18 of 26 PageID #: 15720

Case 2:19-cv-00236   Document 911-5   Filed 06/07/21   Page 38 of 46 PageID #: 14441

President from a Senator who was in that meeting next.

(COMMERCIAL BREAK)

(BEGIN VIDEO CLIP)

SEN. MAZIE HIRONO, (D) HAWAII:  As the only immigrant serving in the United
States Senate right now, I would like nothing better than for us to get to
comprehensive immigration reform, but what I'm hearing around the table
right now is a commitment to resolving the DACA situation, because there is
a sense of urgency. Now, you have put it out there that you are $18
billion for a wall,
or else there will be no DACA. Is that still your position?

TRUMP:  Yeah. I can build it for less, by the way.

HIRONO:  But you are --

TRUMP:  I must tell you, I'm looking at these prices, somebody said $42
billion. This is like the aircraft carrier, started off at $1.5 billion,
now at $18 billion. No. We can do it for less.

We can do a great job. We can do a great wall, but you need the wall. And
I'm now getting involved. I like to build under budget, OK? I like to go
under budget, ahead of schedule.

(END VIDEO CLIP)

REID:  That was the scene at today's bipartisan negotiating session on
immigration, and joining me now is the senator you just saw in that clip,
Democrat Mazie Hirono of Hawaii.

And, senator, let's talk about that last bit, the wall. Donald Trump said
in response to Dianne Feinstein, when she asked about a clean DACA bill,
yes,  Put that in front of me and I'll sign it.  But then he said to you
that it's contingent on his wall. Did you come out of this negotiating --
negotiation
understanding which of those two things is his position?

HIRONO:  He repeated several times that DACA, he would like to resolve, but
that the border
security would be part of that resolution. So we actually have bipartisan
support for the DREAMers in
the senate, and I understand there were enough votes to pass a similar bill
in the House, maybe not with the Freedom Caucus, but nonetheless going
forward. But as you know, Joy, two days ago, he said, I need $18 billion
for a wall or there will be no DACA, and that is why I wanted to ask him
whether that's still his position. And you notice that he did not answer
that question.

Now I would have appreciated if he had clarified and just said, oh, yeah,
that's my still position. Then we would have that understanding. But then
he kind of went all over the place. I asked him how many miles this wall
would be and he didn't respond.

So he wants something that he can call border security, something he can

MSNBC 000097

USCA4 Appeal: 22-1198    Doc: 48    Filed: 05/25/2022    Pg: 271 of 307
Case 2:19-cv-00236   Document 938-3   Filed 06/14/21   Page 19 of 26 PageID #: 15721

Case 2:19-cv-00236   Document 911-5   Filed 06/07/21   Page 39 of 46 PageID #: 14442

call a wall, but to me the fact that he didn't come out and say, something that I said two days ago, $18 billion for a wall or no DACA, he didn't do that. So I say maybe that he's open to something that's more reasonable.

I don't know, because with the president, you don't know what he's going to say tomorrow.

REID: Yeah.

And would you and your Democratic colleagues vote for a bill that included building this wall of Donald Trump's?

HIRONO: We already know that building a massive wall that goes on for hundreds and hundreds of miles is not going to have much of an impact, and so that's a waste of money. You know, $18 billion, which is just a down payment for a wall, could pay for a whole year of health care for 9 million children. So I am hopeful that if the House and Senate negotiators were left to our own devices, that we might be able to better come up with a compromise. But it's the president interjecting himself at the last minute, throwing a wrench into the works that could foul things up.

And there's no question that as long as border security is on the table, that's going to be a challenge as it is. The Democrats are open to reasonable border security measures.

REID: But would you refuse to vote for a bill if it included the wall in it?

HIRONO: It depends on what the wall is. Because he said things such as originally you think it's 2,000 miles, oh, no, it's not 2,000 miles. And of course there are mountains and rivers and valleys. And so we're not sure quite he means. He wants something that he can call a wall for his base, I suppose, but that's going to be the challenging part of the negotiations.

As I said, we already have bipartisan agreement to support the dreamers in both the House and the Senate, particularly in the Senate, so why can't we just go ahead with that? That was Dianne's question and he did not provide a yes or no response to that.

REID: I want to play you a little bit more sound. This is Donald Trump talking about something it didn't seem he was for the entire time he was running for president, and that's comprehensive immigration reform. This is Donald Trump today.

(BEGIN VIDEO CLIP)

TRUMP: When you talk about comprehensive immigration reform, which is where I would like to get to eventually, if we do the right bill here, we are not very far away. We've done most of it.

You want to know the truth there, kid, we do this properly. DACA, you're not so far away from
comprehensive immigration reform. And if you want to take it that further step, I'll take the heat, I don't care.

MSNBC 000098

USCA4 Appeal: 22-1198 Doc: 48 Filed: 05/25/2022 Pg: 272 of 307 PageID #: 15722
Case 2:19-cv-00236 Document 938-3 Filed 06/14/21 Page 20 of 26 PageID #: 15722

Case 2:19-cv-00236 Document 911-5 Filed 06/07/21 Page 40 of 46 PageID #: 14443

(END VIDEO CLIP)

REID: Did it surprise you to hear Donald Trump say he's for comprehensive immigration reform?

HIRONO: Well, that's what he said today. And I'm all for comprehensive immigration reform because we passed such a bill in 2013 in the Senate. And I was very involved in that as a member of the judiciary committee. That's what he's saying today. He didn't really talk about that during the campaign. So one never knows.

Now, I care very much about dealing with DACA and the 800,000 young people who are subject to deportation. And I have to say that one of the most astounding things that came out today was his homeland security secretary saying that no DACA participants had lost status. Is she not aware over 10,000 DACA participants have already lost their DACA status? That was an astounding thing. And I expect the homeland security secretary to know her facts better.

Yeah, indeed. Senator Mazie Hirono, thank you so much for your time tonight. Appreciate it. Thank you.

And still ahead, Joe Arpaio is a man of many titles -- former sheriff, Obama birther, convicted criminal. And now he wants to add senator to the list. That story coming up.

And the case for making sure every president from here on in is a stable genius in tonight's Thing One, Thing Two next.

(COMMERCIAL BREAK)

REID: Thing One tonight, Donald Trump is just three days away from his first physical since taking office. Now, we know two things about the 71-year-old's health. During the campaign, Trump's long-time doctor, Harold Bornstein, wrote a letter calling Trump's health astonishingly excellent and stated unequivocally Trump will be the healthiest individual ever elected to the presidency."

(BEGIN VIDEO CLIP)

HAROLD BORNSTEIN, TRUMP DOCTOR: I thought about it all day. And at the end -- I get rushed and I get anxious when I get rushed. So I try to get four or five lines done as fast as possible that they would be happy with.

(END VIDEO CLIP)

REID: The other thing we know about Trump's health is that he really likes fast food even as president, and so much so that according to Michael Wolff's reporting for Fire and Fury, the president of the United States takes his cheeseburgers to bed with him.

Wolff's book has also brought to the forefront something we don't have medical analysis of: Trump's mental fitness. Yesterday, a White House spokesman said a psychiatric exam would not be part of his physical on Friday.

MSNBC 000099

But one lawmaker is trying to change that. And that's Thing Two in 60 seconds.

(COMMERCIAL BREAK)

REID:  Pennsylvania Democrat Brendan Boyle introduced a bill in the House this morning which would require all presidential candidates to undergo a mental health exam with the secretary
of the navy. The bill is called The Stable Genius Act. And it's not a joke. It's aimed to avoid a situation like we have now.

All we know about the mental fitness of the man in the White House is his own self-diagnosis.

(BEGIN VIDEO CLIP)

TRUMP:  Is Donald Trump an intellectual? Trust me, I'm like a smart person.

I went to the best colleges -- or college.

I went to Wharton.

I had a situation where I was a very excellent student.

I'm a person that very strongly believes in academics.

I was a nice student.

I have a very good brain and I've said a lot of things.

I understand things. I comprehend very well, better than I think almost anybody.

I'm very highly educated. I know words. I have the best words.

I'm like a very smart person.

Like a smart person.

I'm a very smart person.

It's like I'm a smart person.

Very intelligent person.

Like a lot of us are really smart.

I'm really smart.

We're going to have smartness.

(END VIDEO CLIP)

(COMMERCIAL BREAK)

MSNBC  000100

(BEGIN VIDEO CLIP)

TRUMP: Was Sheriff Joe convicted for doing his job? That's what -- he should have had a jury, but you know what, I'll make a prediction, I think he's going to be just fine, OK?

(END VIDEO CLIP)

REID: After being convicted last July of criminal contempt for violating a judge's order, and
pardoned by the president in a tweet a month later, former Sheriff Joe Arpaio is now running for U.S. Senate.

Arpaio thanked Donald Trump in a tweet of his own, quote, "for seeing my conviction for
what it is, a political witch hunt by holdovers in the Obama Justice Department."

Yet the Associated Press reports that the judge in Arpaio's case has said pardons moot punishments in criminal cases, but don't erase convictions, meaning that Arpaio is still an 85-year-old convicted criminal, which makes him the third convicted criminal running for office as a Republican this year joining Don Blankenship who is running for a senate seat in West Virginia after serving a year in federal prison for ignoring safety regulations in a mining explosion in 2010 that killed 29 men.

Blankenship will actually still be on probation at the time of the Republican primary.

And here in New York, ex-con Michael Grimm is running to reclaim his old congressional
seat after he was forced to resign in 2014 and served seven months in prison for felony tax fraud.

Interestingly enough, a convicted felon isn't prohibited from running for federal office at all.

Next, what happens when you elect a reality show star who hates to study to play the role
of president. Well, he doesn't always understand the nuances of party policies or even the broad strokes. More on that next.

(COMMERCIAL BREAK)

(BEGIN VIDEO CLIP)

REP. PAUL RYAN, (R) WISCONSIN: Something this big, something this generational, something this profound could not have been done without presidential leadership. Mr. President, thank you for getting us over the finish line.

(END VIDEO CLIP)

REID: House Speaker Paul Ryan was effusive in praising the dear leader Donald Trump after Republicans rammed their tax cuts for corporations and the 1 percent through congress. Ryan even coined a phrase that may come

MSNBC 000101

USCA4 Appeal: 22-1198    Doc: 48      Filed: 05/25/2022    Pg: 275 of 307
Case 2:19-cv-00236   Document 938-3   Filed 06/14/21   Page 23 of 26 PageID #: 15725

Case 2:19-cv-00236   Document 911-5   Filed 06/07/21   Page 43 of 46 PageID #: 14446

back to haunt him: exquisite leadership.

But one of the points in Michael Wolff's Fire and Fury is that Donald Trump doesn't really know Republican orthodoxy. That seems to be how he stumbled into agreeing, at least in principle, to comprehensive immigration reform today when he met with a bipartisan group of lawmakers.

(BEGIN VIDEO CLIP)

UNIDENTIFIED MALE: Mr. President, comprehensive means comprehensive.

TRUMP: No, we are talking about comprehensive, now we are talking --

UNIDENTIFIED MALE: No, we are talking comprehensive --

TRUMP: If you want to go there, it's OK, because you're not that far away.

UNIDENTIFIED MALE: Mr. President --

TRUMP: When this group comes back, hopefully with an agreement, this group and others, from the Senate, from the House comes back with an agreement, I'm signing it. I think a lot of people would like to see that, but I think we need to do DACA first.

UNIDENTIFIED MALE: Mr. President, you need to be clear, though. I think what Senator Feinstein is asking here, when we talk about just DACA, we don't want to be back here two years later.

TRUMP: I think that's what she said. No, No, I think she's saying something different.

I think what we're all saying is we'll do DACA and we can certainly start comprehensive immigration reform the following afternoon, OK. We'll take an hour off and then we'll start.

(END VIDEO CLIP)

REID: Republicans sat around that table and watched their president almost give away the entire store for nothing. MSNBC political analyst Jason Johnson is the politics editor at The Root and a professor at Morgan State University; and Rick Wilson is a Republican strategist and media consultant.

And Rick, the entire premise of the Trump campaign was Mexico is sending its worst, we're going to end immigration and build a wall. How did he suddenly go from that to being Marco Rubio? What is happening?

RICK WILSON, REPUBLICAN STRATEGIST: I think Donald Trump got his gang of eight tattoo tonight and the Members Only jacket for RINO immigration squishes, because this is a guy who literally sat there today and shredded the entire Bannon/Steve Miller agenda on building the wall and throwing out all the brown people. It was a clown show.

REID: But who is in charge of telling Ann Coulter? I nominate you, Rick. You're in charge of telling Ann Coulter. You have to tell her.

MSNBC 000102

USCA4 Appeal: 22-1198   Doc: 48   Filed: 05/25/2022   Pg: 276 of 307
Case 2:19-cv-00236   Document 938-3   Filed 06/14/21   Page 24 of 26 PageID #: 15726

Case 2:19-cv-00236   Document 911-5   Filed 06/07/21   Page 44 of 46 PageID #: 14447

OK, so Jason, is this a Democrats in my Twitter feed, there is some anger that Democrats aren't really putting their foot down and saying we ain't voting for a wall period, end of story. We don't care what you say.

Should Democrats be planting their flag there?

JASON JOHNSON, THE ROOT: They don't even have to put the flag down yet, Joy, because it's clear -- and this is from the book and everyone who has ever talked about this president, he agrees with whatever the last idea is of the person who left the room. That's why he was ping ponging back and forth. I like this kind of immigration. I hate this kind of immigration. I don't like these kind of people. I like these people.

So, the Democrats don't have to take a strong position now because they don't know what position Trump is going to have in three weeks.

That's part of the problem. So, there is no reason to plant a flag.

REID: Rick, I'm going to let you listen to Sarah Huckabee Sanders whose job frequently is to try to interpret Trump for regular people.

Here she is trying to explain that he really does know what clean DACA bill means. He meant something completely different than what clean DACA bill sounds like. Take a listen.

(BEGIN VIDEO CLIP)

SARAH HUCKABEE SANDERS, WHITE HOUSE PRESS SECRETARY: Only if you look at what the president's definition of a clean DACA bill is, and within that bill, he thinks that you have to include not just fixing the -- not just fixing DACA, but closing the loopholes and making sure we have a solution on the front so we don't create a problem and find ourselves right back where we started in one, two, three years later.

(END VIDEO CLIP)

REID: Help me, Rick. What did that mean?

WILSON: You know, Sarah Sanders is just the White House mistress of word vomit. Every day something new just pops out.

Look, I don't blame her. It's like Donald Trump speaks some sort of forgotten language like Hitite (ph) or Syrian and just rambles on and she just tries to translate as best she can.

But this is a White House led by a man who does not have a lot of shall we say intellectual heft when it comes to understanding complex items of the policy agenda. You know, he's overcome by basically inanimate objects every day. And so you end up with a situation where he says things in this meeting that the rest of the Republicans are in the room saying, dear god, what are we doing here? Because, you know, it's like they stumble occasionally on a policy win like the tax bill, and then they come to something like this and Trump is confused about what his own base is going to do about this.

A lot of his base was motivated and informed by the sense that he was going

MSNBC 000103

USCA4 Appeal: 22-1198    Doc: 48    Filed: 05/25/2022    Pg: 277 of 307
Case 2:19-cv-00236   Document 938-3   Filed 06/14/21   Page 25 of 26 PageID #: 15727

Case 2:19-cv-00236   Document 911-5   Filed 06/07/21   Page 45 of 46 PageID #: 14448

to build a wall and throw out all the brown people, and obviously, what he's saying today is we'll have a policy based on love and we're going to do DACA and we're going to come back an hour later and do comprehensive immigration reform.

Like I said, that gang of eight tramp stamp tattoos is going to look awesome.

REID: Back in June of 2016, we pulled this -- January of 2016, January 30th, as a matter of fact, Donald Trump told The New York Times editorial board the following about the wall. He said quote, "if it gets a little boring at his rallies, if I see people starting to sort of think about leaving, I can sort of tell the audience, I will just say, we'll build the wall, and they go nuts.

Isn't it just the case that Donald Trump used the wall and all of this Brexit talk about immigration just to trick his base into being for for him?

WILSON: Sure.

REID: Because he doesn't know what any of this means?

JOHNSON: Joy, he doesn't know what any of this means. He doesn't know how to build it. He's basically been punked multiple times by Mexico who is like, I'm not building your wall. I'm not giving you any money. Fox said I'm not building a wall. So he doesn't know how this thing can get made. And he's always been back and forth on these issues.

Look, I mean, back in 2012 remember he said Mitt Romney was crazy for telling people that they have to self-deport and he said that to Newsmax. But I think the important thing to remember is this, as much as Donald Trump seems to flip flop back and forth, and can't figure out what he wants to order for lunch when it comes to immigration, this is the same administration that's now trying to kick out 200,000 El Salvadorians, when they aren't doing that to Kosovo refugees who we accepted in 1999. So the underlying tendency is still kicking out people of color, making it difficult for people of color to stay in the country, or at the same time fanning ignorance.

REID: And at the same time, Rick then why doesn't his base react when he changes his mind?

WILSON: I think we'll see the comment section of the now Steve Bannon free Breitbart tomorrow losing their minds on this and I think a lot of these folks that really relied on Donald Trump's immigration message that he really activated in an effort to position himself as the guy who was going to return their jobs from the sly Mexicans and wile Chinese, you know, these evil brown people and people of color from overseas, I think he's going to have some surprised supporters when they start reading these stories tomorrow.

REID: Absolutely. Jason Johnson, Rick Wilson, thank you, guys.

That's All In for this evening. The Rachel Maddow Show starts right now. Good evening Rachel.

MSNBC 000104

THIS IS A RUSH TRANSCRIPT. THIS COPY MAY NOT BE IN ITS FINAL FORM AND MAY
BE UPDATED.

END

<Copy: Content and programming copyright 2018 MSNBC.  ALL RIGHTS  RESERVED.
Copyright 2018 ASC Services II Media, LLC.  All materials herein are
protected by United States copyright law and may not be reproduced,
distributed, transmitted, displayed, published or broadcast without the
prior written permission of ASC Services II Media, LLC. You may not alter
or remove any trademark, copyright or other notice from copies of the
content.>

MSNBC 000105

# EXHIBIT 4

CONFIDENTIAL

1          UNITED STATES DISTRICT COURT
2        SOUTHERN DISTRICT OF WEST VIRGINIA
3              CHARLESTON DIVISION
4

5   DON BLANKENSHIP,                    )
                                        )
6            Plaintiff,                 )
                                        )
7        vs.                            ) Case No.
                                        ) 2:19-cv-00236
8   FOX NEWS NETWORK, LLC, et           )
    al.,                                )
9                                       )
             Defendants.               )
10

11

12

13                  CONFIDENTIAL
14

15

16   VIDEOTAPED REMOTE DEPOSITION VIA ZOOM OF:
17             MARIAN PORGES
18             THURSDAY, DECEMBER 10, 2020
19             11:03 A.M. EASTERN STANDARD TIME
20

21

22

23

24

     Reported by:  PAULA A. PYBURN
25                  CSR 7304, RPR, CLR

                                        Page 1

CONFIDENTIAL

```
 1              VIDEOTAPED REMOTE DEPOSITION VIA ZOOM OF
 2    MARIAN PORGES, the witness, taken on behalf of
 3    PLAINTIFF, on Thursday, December 10, 2020,
 4    11:03 a.m. Eastern Standard Time, before PAULA A.
 5    PYBURN, CSR 7304, RPR, CLR.
 6
 7
 8    APPEARANCES OF COUNSEL VIA VIDEOCONFERENCE:
 9
10    FOR PLAINTIFF:
11        SIMPKINS LAW
12        BY:  JEFFREY S. SIMPKINS, ESQ.
13        102 East 2nd Avenue
14        Williamson, West Virginia 25661
15        304.235.2735
16        simpkinslawoffice@gmail.com
17
18
19
20
21
22
23
24
25
```

Page 2

CONFIDENTIAL

```
 1    APPEARANCES VIA VIDEOCONFERENCE:   (CONTINUED)

 2

 3    FOR DEFENDANT MSNBC CABLE LLC:

 4        FROST BROWN TODD LLC

 5        BY:  KEVIN T. SHOOK, ESQ.

 6        One Columbus Center

 7        10 West Broad Street

 8        Suite 2300

 9        Columbus, Ohio 43215-3484

10        614.559.7214

11        kshook@fbtlaw.com

12

13        FROST BROWN TODD LLC

14        BY:  JARED M. TULLY, ESQ.

15        500 Virginia Street East

16        Suite 1100

17        Charleston, West Virginia 25301

18        304.345.0111

19        jtully@fbtlaw.com

20

21

22

23

24

25

                                            Page 3
```

CONFIDENTIAL

```
 1    APPEARANCES VIA VIDEOCONFERENCE:   (CONTINUED)

 2

 3    FOR DEFENDANT AMERICAN BROADCASTING COMPANIES, LLC:

 4         DAVIS WRIGHT TREMAINE LLP

 5         BY:  KELLI L. SAGER, ESQ.

 6         865 South Figueroa Street

 7         Suite 2400

 8         Los Angeles, California 90017-2566

 9         213.633.6800

10         kellisager@dwt.com

11

12    FOR DEFENDANT ELI LEHRER:

13         WHITEFORD TAYLOR PRESTON, LLP

14         BY:  KATELYN P. BRADY, ESQ.

15         1800 M Street, N.W.

16         Suite 450N

17         Washington, D.C. 20036

18         410.347.8725

19         kbrady@wtplaw.com

20

21

22

23

24

25
```

Page 4

CONFIDENTIAL

```
 1    APPEARANCES VIA VIDEOCONFERENCE:   (CONTINUED)

 2

 3    FOR DEFENDANT CABLE NEWS NETWORK, INC., AND

 4    WP COMPANY LLC, D/B/A THE WASHINGTON POST:

 5         WILLIAMS & CONNOLLY LLP

 6         BY:  MELINDA JOHNSON, ESQ.

 7         725 Twelfth Street, N.W.

 8         Washington, D.C. 20005

 9         202.434.5000

10         mkjohnson@wc.com

11

12    ALSO PRESENT:

13         Julian Abalos, Videographer

14         Erik Bierbauer, MSNBC In-House Counsel

15         Don Blankenship

16         Thomas Munk, Concierge

17

18

19

20

21

22

23

24

25
```

Page 5

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | Marian, can you hear me? | 11:29:55 |
| 2 | THE WITNESS: I do hear you, and I haven't | 11:29:58 |
| 3 | adjusted anything on my side. I mean, I can also | 11:30:01 |
| 4 | try to speak up, of course. | 11:30:03 |
| 5 | MR. SIMPKINS: I think it may have been an | 11:30:04 |
| 6 | issue with my internet; so I apologize. | 11:30:06 |
| 7 | Q    Do you need to reread that first paragraph | 11:30:08 |
| 8 | that I just read into the record? | 11:30:11 |
| 9 | A    No, I do not. | 11:30:14 |
| 10 | Q    Okay.  What is your understanding of the | 11:30:15 |
| 11 | word "accuracy" as referenced in the guidelines or | 11:30:17 |
| 12 | in that paragraph? | 11:30:21 |
| 13 | A    Accuracy is getting our information right, | 11:30:25 |
| 14 | what we're reporting. | 11:30:30 |
| 15 | Q    Fair to say correct or precise?  Would that | 11:30:32 |
| 16 | be a fair statement? | 11:30:37 |
| 17 | A    We -- we always want to be correct, yes. | 11:30:41 |
| 18 | We strive to be correct, yes. | 11:30:43 |
| 19 | Q    What is your understanding of the word | 11:30:45 |
| 20 | "fairness" as referenced in the guidelines? | 11:30:47 |
| 21 | A    Acknowledging that there are more than one | 11:30:51 |
| 22 | side to a story and it's our job to find out all | 11:30:54 |
| 23 | those sides. | 11:30:59 |
| 24 | Q    Okay.  Okay.  Great. | 11:30:59 |
| 25 | What is your understanding of the word | 11:31:01 |

Page 25

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | "integrity" as referenced in the guidelines? | 11:31:04 |
| 2 | A    Making sure our news organization is | 11:31:14 |
| 3 | reporting from a place where -- excuse me -- a place | 11:31:17 |
| 4 | where we can be proud and where we have done our | 11:31:23 |
| 5 | best to do the right thing. | 11:31:28 |
| 6 | Q    Is accuracy a fundamental principle for | 11:31:29 |
| 7 | MSNBC? | 11:31:41 |
| 8 | A    I think accuracy is a fundamental | 11:31:42 |
| 9 | journalistic principle. | 11:31:45 |
| 10 | Q    Is fairness a fundamental principle for | 11:31:46 |
| 11 | MSNBC? | 11:31:50 |
| 12 | A    Yes.  We always strive to be fair, of | 11:31:52 |
| 13 | course. | 11:31:54 |
| 14 | Q    Is integrity a fundamental principle for | 11:31:54 |
| 15 | MSNBC? | 11:31:59 |
| 16 | A    Yes. | 11:32:00 |
| 17 | Q    Okay.  Why is accuracy a fundamental | 11:32:00 |
| 18 | principle for MSNBC? | 11:32:04 |
| 19 | A    We're journalists; it's important to be | 11:32:06 |
| 20 | right. | 11:32:13 |
| 21 | Q    Thank you. | 11:32:13 |
| 22 | Now, why is fairness a fundamental | 11:32:14 |
| 23 | principle for MSNBC? | 11:32:16 |
| 24 | A    We want to be seen by our audience as | 11:32:19 |
| 25 | people who present a story based on all sides, not | 11:32:21 |

Page 26

CONFIDENTIAL

| 1 | MR. SHOOK: Objection. Go ahead and answer | 11:59:19 |
| 2 | if you can. | 11:59:22 |
| 3 | THE WITNESS: He was not convicted of a | 11:59:22 |
| 4 | felony charge, yes. | 11:59:30 |
| 5 | BY MR. SIMPKINS: | 11:59:31 |
| 6 | Q    Isn't it true that Don Blankenship was | 11:59:31 |
| 7 | convicted of a misdemeanor only? | 11:59:33 |
| 8 | A    Yes. | 11:59:37 |
| 9 | Q    Okay. Marian, the -- the, quote, convicted | 11:59:37 |
| 10 | felon Don Blankenship, unquote, statements made, | 11:59:49 |
| 11 | were those a violation of the guidelines that you've | 11:59:53 |
| 12 | previously testified to here today? | 11:59:57 |
| 13 | A    I don't believe so, no. | 12:00:00 |
| 14 | Q    You do not believe so? | 12:00:01 |
| 15 | A    No, they were not. | 12:00:03 |
| 16 | Q    How -- how were they not? How were they | 12:00:04 |
| 17 | not a violation of your guidelines to report | 12:00:10 |
| 18 | accurate, fair, and honest reporting? | 12:00:12 |
| 19 | A    Because I think the words used in the | 12:00:14 |
| 20 | context in which they were used were substantially | 12:00:17 |
| 21 | true. | 12:00:19 |
| 22 | Q    Let me ask you this: Quote, convicted | 12:00:20 |
| 23 | felon Don Blankenship, was that an accurate, fair, | 12:00:23 |
| 24 | and honest representation of his -- of his charge or | 12:00:26 |
| 25 | a representation of Mr. Blankenship's charges? | 12:00:33 |

Page 51

CONFIDENTIAL

```
 1    STATE OF CALIFORNIA      )
 2    COUNTY OF RIVERSIDE      )  ss.
 3
 4         I, Paula A. Pyburn, CSR No. 7304, RPR, CLR, in
 5    and for the State of California, do hereby certify:
 6         I am the deposition officer that
 7    stenographically recorded the testimony in the
 8    foregoing deposition;
 9         Prior to being examined the deponent was first
10    duly sworn by me;
11         The foregoing transcript is a true record of the
12    testimony given.
13         Before completion of the deposition, review of
14    the transcript [xx] was [ ] was not requested.  If
15    requested, any changes made by the deponent (and
16    provided to the reporter) during the period allowed
17    are appended hereto.
18
19    Dated: December 30, 2020
20
21
22
                   Paula A. Pyburn, RPR, CLR
23                 CSR No. 7304
                   Certified Shorthand
24                 Reporter for the
                   State of California
25
```

Page 69

# EXHIBIT #1





# NBCUniversal News Group Policies and Guidelines

## December 2014

**For Internal NBCUniversal Use Only**

# NBCUniversal

## FOREWORD

The NBCUniversal News Group (News Group) – NBC News, MSNBC, and CNBC – stands for accuracy, fairness, independence, and integrity.  Our goal in the crowded field of TV and digital services is to be the reliable source for news and information.

These Policies and Guidelines apply to everyone working for the News Group, the NBCUniversal Owned Stations, and the Telemundo network and stations.  There may be some specific policies and approval processes that are specific to each entity, but the fundamental principles apply to all.

Of course, we recognize that it is not possible to include every issue you may face in the course of your work.  We expect you to use your best common sense and conduct yourselves in a professional manner at all times.

In some cases, you may need to consult the News Group Standards team ("Standards"), along with the News Group Lawyers ("Legal") for guidance.  We are here, as part of the journalism process, to help you publish and air your work.

The Senior Vice President for Standards, in consultation with the senior management of the respective divisions, must approve any exceptions to these policies and guidelines in advance.

- David McCormick
  Senior Vice President, Standards
  NBCUniversal News Group

5

# EXHIBIT 5

**In the Matter Of:**

*BLANKENSHIP vs*

*FOX NEWS NETWORK*

---

*DON BLANKENSHIP*

*April 29, 2021*

---



1

1          UNITED STATES DISTRICT COURT
2        SOUTHERN DISTRICT OF WEST VIRGINIA

3              CHARLESTON DIVISION

4    ----------------------------X

5    DON BLANKENSHIP,          :

6                Plaintiff,:   Case No.

7        v.                :   2:19-cv-00236

8    FOX NEWS NETWORK LLC,   :

9    et al.,                 :

10               DefendantS.:

11   ----------------------------X

12

13   REMOTE VIDEOTAPED STENOGRAPHIC DEPOSITION OF

14              DON BLANKENSHIP

15          Thursday, April 29, 2021

16               9:18 a.m.

17

18

19

20

21   Job No.:  2021-788054

22   Pages:  1 - 507

23   STENOGRAPHICALLY REPORTED BY:

24   GISELLE MITCHELL-MARGERUM, RPR, CRI, CCR, LCR, CSR

Don Blankenship - April 29, 2021

2

```
 1              Deposition of DON BLANKENSHIP, held remotely,

 2    via videoconference at:

 3

 4

 5              VIA VIDEOCONFERENCE

 6

 7

 8

 9              Pursuant to agreement, before Giselle

10    Mitchell-Margerum, Registered Professional Reporter,

11    Certified Reporting Instructor, Licensed Court Reporter

12    (TN), Certified Court Reporter (GA), Certified Court

13    Reporter (WA), Certified Shorthand Reporter (OR), and

14    Notary Public (Washington, D.C.).

15

16

17

18

19

20

21

22

23

24
```

USCA4 Appeal: 22-1198    Doc: 48    Filed: 05/25/2022    Pg: 296 of 307
Case 2:19-cv-00236   Document 938-5   Filed 06/14/21   Page 5 of 16 PageID #: 15746

3

```
 1                    A P P E A R A N C E S
 2     ON BEHALF OF PLAINTIFF:
 3            JEREMY GRAY, ESQ.
 4            SAAM TAKALOO, ESQ.
 5            EARLY SULLIVAN WRIGHT GIZER & McRAE LLP
 6            6420 Wilshire Boulevard, 17th Floor
 7            Los Angeles, California 90048
 8            323.301.4660
 9
10            JEFFREY S. SIMPKINS, ESQ.
11            SIMPKINS LAW OFFICE, PLLC
12            102 West 2nd Avenue
13            Williamson, West Virginia 25661
14            302.235.2735
15
16     ON BEHALF OF DEFENDANT NBCUNIVERSAL MEDIA, MSNBC,
17     and CNBC:
18            JARED M. TULLY, ESQ.
19            FROST BROWN TODD LLC
20            United Bank Building
21            500 Virginia Street East, Suite 1100
22            304.348.2404
23
24
```

Don Blankenship - April 29, 2021

```
                                                                    4
1    APPEARANCES (cont'd):

2

3    ON BEHALF OF DEFENDANT NBCUNIVERSAL MEDIA, MSNBC,

4    and CNBC:

5            KEVIN SHOOK, ESQ.

6            FROST BROWN TODD LLC

7            One Columbus Center

8            10 West Broad Street, Suite 2300

9            Columbus, Ohio 43215

10           614.559.7214

11

12   FOR DEFENDANT FOX NEWS NETWORK, LLC:

13           SHAWN REGAN, ESQ.

14           SILVIA OSTROWER, ESQ.

15           HUNTON ANDREWS KURTH LLP

16           200 Park Avenue

17           New York, New York 10166

18           212.309.1204

19

20           J. ZAK RITCHIE, ESQ.

21           HISSAM FORMAN DONOVAN RITCHIE

22           707 Virginia Street East, Suite 260

23           Charleston, WV 25301

24
```

Don Blankenship - April 29, 2021

```
                                                              5
1    APPEARANCES (cont'd):

2    FOR DEFENDANT AMERICAN BROADCASTING COMPANIES, HD

3    MEDIA:

4              ERIC FEDER, ESQ.

5              DAVIS WRIGHT TREMAINE

6              920 Fifth Avenue, Suite 3300

7              Seattle, Washington 98104

8              206.757.8232

9

10   FOR DEFENDANT CABLE NEWS NETWORK, INC.,

11   and WP COMPANY:

12             STEPHEN FUZESI, ESQ.

13             WILLIAMS & CONNOLLY LLP

14             725 Twelfth Street, Northwest

15             Washington, D.C. 20005

16             202.434.5181

17

18   ON BEHALF OF ELI LEHRER:

19             JENNIFER JACKMAN, ESQ.

20             BREIANNE VARNER REDD

21             DICKIE MCCAMEY

22             2001 MAIN STREET

23             SUITE 501

24             WHEELING, WV 26003
```

USCA4 Appeal: 22-1198    Doc: 48    Filed: 05/25/2022    Pg: 299 of 307
Case 2:19-cv-00236    Document 938-5    Filed 06/14/21    Page 8 of 16 PageID #: 15749

154

```
 1   NBC Universal.  I'll be asking a group of
 2   questions next.
 3               In your testimony earlier, you
 4   testified that you retired from Massey Energy
 5   Company on December 31st 2010.  Correct?
 6               MR. SIMPKINS:  Objection as to
 7       form.
 8       A.   I don't know if I was specific,
 9   December 31.  Whatever that document said.  I
10   agreed that it was at the end of 2010.  I
11   don't know if it was January 1, 2011; or
12   December 23, 2010; or December 31, 2010.
13       Q.   Since your retirement, have you been
14   employed by anyone?
15       A.   No.
16       Q.   You remain to this day, retired.
17   Correct?
18       A.   Yes.
19       Q.   Since your retirement, have you
20   served as an independent contractor for
21   anyone?
22               MR. SIMPKINS:  Objection as to
23       form.
24       A.   I don't think you would call it an
```

Don Blankenship - April 29, 2021

155

```
 1    independent contractor.  I've done a little

 2    bit of -- brokered one boat, or two boats of

 3    coal for client resources, I think that would

 4    be about the extent of it.

 5         Q.    But you haven't been a paid

 6    independent contractor from -- since your

 7    retirement, have you?

 8         A.    I think that's correct.

 9         Q.    Since your retirement, have you been

10    a paid consultant in any way?

11         A.    No.

12         Q.    Since your retirement, have you

13    served on any boards?

14         A.    No.

15         Q.    Have you pursued employment since

16    your retirement?

17         A.    No.

18         Q.    Why not?

19         A.    Because of the aftermath of the

20    tragedy and various other things.  Like the

21    non-compete agreement.  Being the subject of

22    an FBI investigation.  Being indicted, being

23    tried, being imprisoned, being in a half-way

24    house, and deciding that I should run for the
```

USCA4 Appeal: 22-1198    Doc: 48      Filed: 05/25/2022   Pg: 301 of 307
Case 2:19-cv-00236  Document 938-5  Filed 06/14/21  Page 10 of 16 PageID #: 15751

1    U.S. Senate.

2         Q.   So, the Upper Big Branch tragedy

3    impacted your interest in getting employment

4    or your ability to obtain employment?

5              MR. SIMPKINS:  Objection as to

6         form.

7         A.   I don't think the tragedy had much

8    impact.  The reporting on the tragedy had a

9    lot of impact.

10        Q.   So, the reporting on the Upper Big

11   Branch tragedy impacted your ability to obtain

12   employment after retirement?

13             MR. SIMPKINS:  Objection as to

14        form?

15        A.   I think it's fair to say that the --

16   the reporting -- the false reporting and the

17   FBI activity and public statements all had an

18   impact on my desire or likelihood of

19   successfully seeking employment, so there were

20   a lot of factors over that, I guess, about an

21   eight-year period, seven-year period.

22        Q.   And does that impact you still to

23   this day?

24        A.   I don't know.  You know, I mean --

Don Blankenship - April 29, 2021

170

1    probably summer of 2014.

2         Q.    It was after you retired?

3         A.    Yes.

4         Q.    Did you make any money associated

5    with the Regcession documentary?

6                MR. SIMPKINS:  Objection as to

7         form.

8         A.    I wasn't trying to make any money.

9    I was trying to repair a reputation that might

10   lead to both a more normal life and better

11   employment opportunities.

12               And to save coal miners' lives,

13   which I think that if they watch it and look

14   at the recommendations, it will save lives.

15        Q.    What is Number 23 Inc.?

16        A.    It is just my son's dirt track

17   racing team, that they raced in a couple of

18   series and one of the series is called the

19   world of outlaws and one Lucas racing or

20   something like that.

21        Q.    What is your role with Number 23

22   Inc.?

23               MR. SIMPKINS:  Objection as to

24        form.

Don Blankenship - April 29, 2021

319

1    your face.

2              MR. FEDER:  Let's take a break

3        now, for a few minutes.

4              MR. REGAN:  All right.

5              MR. FEDER:  And then, we

6        could -- do people want 10 minutes, I

7        guess?  Let's go off the record.

8              THE VIDEOGRAPHER:  The time is

9        4:38.  Off the record.

10          (Short break.)

11             THE VIDEOGRAPHER:  All right.

12       The time is 5:10.  Back on the record.

13             MR. FEDER:  Okay.  Thanks

14       Mr. Blankenship, that concludes my

15       portion, for now, on that topic.  And so,

16       I'm going to pass the baton to Mr. Regan,

17       to continue the next topic.

18             THE WITNESS:  Thank you.

19             MR. REGAN:  Thank you, Eric.

20   FURTHER CROSS-EXAMINATION BY MR. REGAN:

21       Q.  Mr. Blankenship, you were indicted

22   by a Federal Grand Jury, in November of 2014.

23   Is that correct?

24       A.  Yes.

USCA4 Appeal: 22-1198    Doc: 48    Filed: 05/25/2022    Pg: 304 of 307

331

```
1        Q.   The sentencing judge gave you, or
2   sentenced you, to a term of 12 months in
3   prison.  Correct?
4        A.   Yes.
5        Q.   And that was the maximum sentence
6   that she could have imposed for that offence.
7   Correct?
8        A.   That's what I'm told.  Yes.
9        Q.   And she also imposed a
10  250,000-dollar fine.  Correct?
11       A.   Yes.
12       Q.   And that was the maximum fine that
13  she could have imposed, under the law?
14       A.   Yes.
15       Q.   And she also imposed a term of 12
16  months of supervised release, to follow your
17  release from prison.  Right?
18       A.   Yes.
19       Q.   And that supervised -- that 12
20  months of supervised release was also the
21  maximum sentence she could impose?
22       A.   Yes.
23       Q.   Correct?
24       A.   That's my understanding.
```

Don Blankenship - April 29, 2021

338

1              And that she said:

2                   "I also find, specifically,

3      that Mr. Blankenship, that the sentence

4      reflects the seriousness of the offense."

5                   And if I told you that she used

6      the word "serious" several other times in her

7      sentencing, including saying:

8                   "The crime is serious, and we

9      sentence based on the conduct, which I find to

10     be very serious, not only in its commission,

11     but in its potential impact in terms of risk

12     in this particular case."

13                  Would that be surprising to

14     you?

15                  MR. SIMPKINS:  Objection as to

16         form?

17         A.    No.  As I said, I think it might

18     have been surprising to most of the people in

19     the audience, and to my attorneys.

20                  It wasn't surprising to me, because

21     it's been consistent with the treatment since

22     1985, by liberal or activist judges, or the

23     media.

24                  The bottom line is, you know, they

Don Blankenship - April 29, 2021

340

```
 1              MR. SIMPKINS:  Objection as to
 2      form.
 3      Q.   -- in deciding how long to sentence
 4  you?
 5      A.   I agree --
 6      Q.   Right?
 7      A.   I agree that the action she took
 8  would suggest that she considered it a very
 9  serious offense.
10          But I suspect that like with the
11  Mine Safety and Health Administration; United
12  Mine Workers; Department of Labor;
13  Davitt McAteer; and Joe Manchin state reports,
14  that she was protecting the President's
15  proclamation that he made before anybody went
16  underground, and so forth.
17          And I think it's important to
18  understand, consider it as serious as you want
19  to consider it, the words, "conspiring
20  to willfully commit mine safety violations,"
21  sounds horrible.
22          But what constituted that, in this
23  trial, was the men telling each other that
24  inspectors had arrived.  Which is a national,
```

Don Blankenship - April 29, 2021

505

1                    REPORTER'S   CERTIFICATE

2

3        I, GISELLE MITCHELL-MARGERUM, the undersigned,
    a Registered Professional Reporter, Certified
4   Reporting Instructor, Licensed Court Reporter, and
    Certified Court Reporter, do hereby certify:

5
         That the witness, DON BLANKENSHIP, before
6   examination was remotely duly sworn to testify to
    the truth, the whole truth, and nothing but the
7   truth.

8        That the foregoing deposition was taken
    remotely stenographically by me on Thursday, April
9   29, 2021, and thereafter was transcribed by me, and
    that the deposition is a full, true, and complete
10  transcript of the testimony, including questions
    and answers, and objections, motions and exceptions
11  made by counsel.

12       That reading and signing was not requested;
    and that I am neither attorney nor counsel for, nor
13  related to or employed by, any of the parties to
    the action in which this deposition was taken; and
14  that I have no interest, financial or otherwise, in
    this case.

15

16          IN WITNESS WHEREOF, I have hereunto set
    my hand this 4th day of May       2021.

17

18

19

20

21  GISELLE MITCHELL-MARGERUM, RPR, CRI, CCR, LCR, CSR

22

23

24