UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

Case No. 22-1198 (L)

(2:20-cv-00278)

_____

DON BLANKENSHIP

       Plaintiff-Appellant

v.

NBCUNIVERSAL, LLC; CNBC, LLC

       Defendants-Appellees

and

DOES 1-50, inclusive

       Defendant

_____

Case No. 22-1207

(2:19-cv-00236)

_____

DON BLANKENSHIP

       Plaintiff-Appellant

v.

FOX NEWS NETWORK, LLC; CABLE NEWS NETWORK, INC.; MSNBC
CABLE LLC; 35TH INC.; WP COMPANY LLC, d/b/a The Washington Post;
DOES 1-50, inclusive; MEDIAITE, LLC; FISCALNOTE, INC., d/b/a Roll Call;
NEWS AND GUTS, LLC; THE CHARLESTON GAZETTE-MAIL; AMERICAN

BROADCASTING COMPANIES, INC.; TAMAR AUBER; GRIFFIN CONNOLLY; ELI LEHRER

     Defendants-Appellees

and

DOES 1-50, inclusive

     Defendant

_____

Appeal from the United States District Court
for the Southern District of West Virginia at Charleston

_____

**JOINT APPENDIX**

**VOLUME XIV of XXI – PAGES 3758 to 4054**

_____

| | DOCUMENT DESCRIPTION | DATE | ECF NO. | VOLUME | PAGE |
|---|---|---|---|---|---|
| 274. | Defendant Fox News Network, LLC's Memorandum In Support of Motion for Summary Judgment | 05/24/2021 | 891 | XIV | 3758 |
| 275. | Corrected Amended Memorandum of Law In Support of Plaintiff Don Blankenship's Opposition to Motion for Summary Judgment of Defendant Fox News Network LLC's Motion for Summary Judgment | 06/23/2021 | 953 | XIV | 3795 |
| 276. | Corrected Amended Memorandum of Law In Support of Plaintiff Don Blankenship's Opposition to Motion for Summary Judgment of Defendant Fox News Network LLC – Exhibit 1: West Virginia Secretary of State – Online Data Services re Candidate Don Blankenship | 06/23/2021 | 953-1 | XIV | 3826 |
| 277. | Corrected Amended Memorandum of Law In Support of Plaintiff Don Blankenship's Opposition to Motion for Summary Judgment of Defendant Fox News Network LLC – Exhibit 2: Excerpts from Deposition Transcript of | 06/23/2021 | 953-2 | XIV | 3828 |

| | DOCUMENT DESCRIPTION | DATE | ECF NO. | VOLUME | PAGE |
|---|---|---|---|---|---|
| | Alex Isenstadt taken on December 8, 2020 | | | | |
| 278. | Corrected Amended Memorandum of Law In Support of Plaintiff Don Blankenship's Opposition to Motion for Summary Judgment of Defendant Fox News Network LLC – Exhibit 3: FEC Form – Statement of Organization | 06/23/2021 | 953-3 | XIV | 3839 |
| 279. | Corrected Amended Memorandum of Law In Support of Plaintiff Don Blankenship's Opposition to Motion for Summary Judgment of Defendant Fox News Network LLC – Exhibit 4: Information on Mountain Families PAC | 06/23/2021 | 953-4 | XIV | 3842 |
| 280. | Corrected Amended Memorandum of Law In Support of Plaintiff Don Blankenship's Opposition to Motion for Summary Judgment of Defendant Fox News Network LLC – Exhibit 5: Information on Independent expenditures | 06/23/2021 | 953-5 | XIV | 3845 |
| 281. | Corrected Amended Memorandum of Law In Support of Plaintiff Don | 06/23/2021 | 953-6 | XIV | 3848 |

| | DOCUMENT DESCRIPTION | DATE | ECF NO. | VOLUME | PAGE |
|---|---|---|---|---|---|
| | Blankenship's Opposition to Motion for Summary Judgment of Defendant Fox News Network LLC – Exhibit 6: Letter re Termination Report dated May 31, 2018 | | | | |
| 282. | Corrected Amended Memorandum of Law In Support of Plaintiff Don Blankenship's Opposition to Motion for Summary Judgment of Defendant Fox News Network LLC – Exhibit 7: Excerpts from Deposition Transcript of Neil Cavuto taken on April 7, 2021 | 06/23/2021 | 953-7 | XIV | 3850 |
| 283. | Corrected Amended Memorandum of Law In Support of Plaintiff Don Blankenship's Opposition to Motion for Summary Judgment of Defendant Fox News Network LLC – Exhibit 8: Excerpts from Deposition Transcript of Andrew Napolitano taken on April 15, 2021 | 06/23/2021 | 953-8 | XIV | 3874 |
| 284. | Corrected Amended Memorandum of Law In Support of Plaintiff Don Blankenship's Opposition to Motion | 06/23/2021 | 953-9 | XIV | 3894 |

| | DOCUMENT DESCRIPTION | DATE | ECF NO. | VOLUME | PAGE |
|---|---|---|---|---|---|
| | for Summary Judgment of Defendant Fox News Network LLC – Exhibit 9: Excerpts from Deposition of Karrah Levine taken on April 23, 2021 | | | | |
| 285. | Corrected Amended Memorandum of Law In Support of Plaintiff Don Blankenship's Opposition to Motion for Summary Judgment of Defendant Fox News Network LLC – Exhibit 10: Excerpts from Deposition Transcript of Don Blankenship taken on April 29, 2021 | 06/23/2021 | 953-10 | XIV | 3901 |
| 286. | Corrected Amended Memorandum of Law In Support of Plaintiff Don Blankenship's Opposition to Motion for Summary Judgment of Defendant Fox News Network LLC – Exhibit 11: Excerpts from Deposition Transcript of Don Blankenship taken on April 30, 2021 | 06/23/2021 | 953-11 | XIV | 3907 |
| 287. | Corrected Amended Memorandum of Law In Support of Plaintiff Don Blankenship's Opposition to Motion for Summary Judgment | 06/23/2021 | 953-12 | XIV | 3920 |

| | **DOCUMENT DESCRIPTION** | **DATE** | **ECF NO.** | **VOLUME** | **PAGE** |
|---|---|---|---|---|---|
| | of Defendant Fox News Network LLC – Exhibit 12: Excerpts from Deposition Transcript of Christopher Stirewalt taken on November 17. 2020 | | | | |
| 288. | Corrected Amended Memorandum of Law In Support of Plaintiff Don Blankenship's Opposition to Motion for Summary Judgment of Defendant Fox News Network LLC – Exhibit 13: Email from Martha MacCallum to Antonia Ferrer dated May 4, 2018 | 06/23/2021 | 953-13 | XIV | 3925 |
| 289. | Corrected Amended Memorandum of Law In Support of Plaintiff Don Blankenship's Opposition to Motion for Summary Judgment of Defendant Fox News Network LLC – Exhibit 14: Email from Antonia Ferrier to Martha MacCallum dated May 4, 2018 | 06/23/2021 | 953-14 | XIV | 3927 |
| 290. | Corrected Amended Memorandum of Law In Support of Plaintiff Don Blankenship's Opposition to Motion for Summary Judgment | 06/23/2021 | 953-15 | XIV | 3929 |

| | DOCUMENT DESCRIPTION | DATE | ECF NO. | VOLUME | PAGE |
|---|---|---|---|---|---|
| | of Defendant Fox News Network LLC – Exhibit 15: Email from Martha MacCallum to Antonia Ferrer dated May 4, 2018 | | | | |
| 291. | Corrected Amended Memorandum of Law In Support of Plaintiff Don Blankenship's Opposition to Motion for Summary Judgment of Defendant Fox News Network LLC – Exhibit 16: Email from Antonia Ferrier to Martha MacCallum dated May 4, 201816 | 06/23/2021 | 953-16 | XIV | 3931 |
| 292. | Corrected Amended Memorandum of Law In Support of Plaintiff Don Blankenship's Opposition to Motion for Summary Judgment of Defendant Fox News Network LLC – Exhibit 17: Email from Karrah Kaplan to 582-TheStory dated May 4, 2018 | 06/23/2021 | 953-17 | XIV | 3933 |
| 293. | Corrected Amended Memorandum of Law In Support of Plaintiff Don Blankenship's Opposition to Motion for Summary Judgment of Defendant Fox News Network LLC – Exhibit | 06/23/2021 | 953-18 | XIV | 3935 |

| | DOCUMENT DESCRIPTION | DATE | ECF NO. | VOLUME | PAGE |
|---|---|---|---|---|---|
| | 18: Excerpts from Deposition Transcript of Karl Rove taken on April 9, 2021 | | | | |
| 294. | Corrected Amended Memorandum of Law In Support of Plaintiff Don Blankenship's Opposition to Motion for Summary Judgment of Defendant Fox News Network LLC – Exhibit 19: Letter from Dr. Stan Smith to Mr. Eric Early re Assessment of Damages dated February 1, 2021 | 06/23/2021 | 953-19 | XIV | 3947 |
| 295. | Corrected Amended Memorandum of Law In Support of Plaintiff Don Blankenship's Opposition to Motion for Summary Judgment of Defendant Fox News Network LLC – Exhibit 20: Statement of Don Blankenship | 06/23/2021 | 953-20 | XIV | 4007 |
| 296. | Defendant Fox News Network, LLC's Reply In Support of Summary Judgment | 06/14/2021 | 940 | XIV | 4014 |
| 297. | Defendant Fox News Network, LLC's Response to Plaintiff's Motions for Leave to File a Surreply Memorandum in | 09/15/2021 | 990 | XIV | 4041 |

|  | DOCUMENT DESCRIPTION | DATE | ECF NO. | VOLUME | PAGE |
|---|---|---|---|---|---|
|  | Opposition to Summary Judgment |  |  |  |  |
| 298. | Defendant Fox News Network, LLC's Response to Plaintiff's Motions for Leave to File a Surreply Memorandum in Opposition to Summary Judgment – Exhibit A: Declaration of Rupert Murdoch | 09/15/2021 | 990-1 | XIV | 4046 |

676474.1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### CHARLESTON DIVISION

DON BLANKENSHIP,

      *Plaintiff*,

v.                                       Case No. 2:19-cv-00236

FOX NEWS NETWORK, LLC, *et al.*,

      *Defendants*.

## DEFENDANT FOX NEWS NETWORK, LLC'S
## MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT

Elbert Lin (WVSB #12171)
David Parker (*pro hac vice*)
HUNTON ANDREWS KURTH LLP
951 E. Byrd Street
Richmond, VA 23219
804-788-8200 *office*
804-788-8218 *fax*
elin@HuntonAK.com
dparker@HuntonAK.com

Shawn Patrick Regan (*pro hac vice*)
Silvia Ostrower (*pro hac vice*)
HUNTON ANDREWS KURTH LLP
200 Park Avenue
New York, NY 10166
212-309-1000 *office*
212-309-1100 *fax*
sregan@HuntonAK.com
sostrower@HuntonAK.com

J. Zak Ritchie (WVSB #11705)
Ryan McCune Donovan (WVSB #11660)
HISSAM FORMAN DONOVAN RITCHIE PLLC
P.O. Box 3983
Charleston, WV 25339
681-265-3802 *office*
304-982-8056 *fax*
zritchie@hfdrlaw.com
rdonovan@hfdrlaw.com

*Counsel for Fox News Network, LLC*

## **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................... 1

FACTUAL BACKGROUND ................................................................................... 3

    I.      Blankenship's mine explodes, and he serves a year in prison for a "very serious" crime. ........................................................................................................... 3

    II.     Over 100 commentators mistakenly refer to Blankenship as a "felon." ................. 6

PROCEDURAL HISTORY ...................................................................................... 9

STANDARD OF REVIEW ..................................................................................... 10

ARGUMENT .......................................................................................................... 11

    I.      A reasonable jury could not conclude that any FNN statement was made with the knowledge of falsity or likely falsity required for actual malice ........................... 11

          A.     No jury could reasonably conclude that any FNN speaker knew his or her statement was false at the time it was made. ............................................. 13

          B.     No jury could reasonably conclude that any FNN speaker made his or her statement with "serious doubts" or "a high degree of awareness" of probable falsity. ........................................................................................ 14

    II.     There is no evidence that any FNN speaker intended to injure Blankenship. ........ 19

    III.    Blankenship cannot prove material falsity by "clear and convincing evidence." . 20

          A.     Blankenship cannot establish, by "clear and convincing evidence," that the FNN statements were materially false. ..................................................... 21

          B.     Mislabeling or misidentifying a crime is not always materially false. ....... 23

    IV.    Blankenship cannot prove any "resulting injury." ................................................. 26

          A.     Blankenship cannot prove entitlement to any special damages. ............... 26

          B.     Blankenship cannot prove entitlement to general damages ...................... 28

    V.     Blankenship cannot prove punitive damages or an invasion of privacy. .............. 29

          A.     Blankenship cannot prove entitlement to punitive damages. .................... 29

          B.     Blankenship cannot prove his tag-along privacy claim. ............................ 30

CONCLUSION ....................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Wis. Airlines Corp. v. Hoeper*,
  571 U.S. 237 (2014) ................................................................20

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ...........................................................*passim*

*Anderson v. Stanco Sports Libr., Inc.*,
  542 F.2d 638 (4th Cir. 1976) .....................................................13

*Benson v. AJR, Inc.*,
  599 S.E.2d 747 (W. Va. 2004) ....................................................30

*Blankenship v. McLaughlin*,
  No. 1:20-cv-00429 (E.D.Va. Apr. 17, 2020).................................17

*Brown v. Gobble*,
  474 S.E.2d 489 (W. Va. 1996) ....................................................10

*Bustos v. A & E Television Networks*,
  646 F.3d 762 (10th Cir. 2011) (Gorsuch, J.) ...........................20, 21

*C.F. Tr., Inc. v. First Flight Ltd. P'ship*,
  306 F.3d 126 (4th Cir. 2002).............................................11, 26, 28, 29

*CACI Premier Tech., Inc. v. Rhodes*,
  536 F.3d 280 (4th Cir. 2008) .................................................12, 24

*Carr v. Forbes, Inc.*,
  259 F.3d 273 (4th Cir. 2001) .....................................................13

*Colcord v. Gazette Pub. Co.*,
  145 S.E. 751 (W. Va. 1928) .......................................................28

*Colorado v. New Mexico*,
  467 U.S. 310 (1984) .........................................................12, 15, 21

*Crump v. Beckley Newspapers, Inc.*,
  320 S.E.2d 70 (W. Va. 1983) ...................................................26, 29

*Curran v. Amazon.com, Inc.*,
  No. CIV.A. 2:07-0354, 2008 WL 472433 (S.D.W. Va. Feb. 19, 2008)
  (Copenhaver, J.).......................................................................30

*Distinguished Execs. Transp., LLC v. Cracker Barrel Old Country Store, Inc.*,
   No. 2:16-CV-08503, 2018 WL 2171443 (S.D.W. Va. May 10, 2018)
   (Copenhaver, J.) ............................................................................................ 28

*Giles v. Kanawha Cty. Bd. of Educ.*,
   No. 17-0139, 2018 WL 300605 (W. Va. Jan. 5, 2018) .................................... 19, 30

*Harte-Hanks Commc'ns v. Connaughton*,
   491 U.S. 657 (1989) ....................................................................................... *passim*

*Hayseeds, Inc. v. State Farm Fire & Cas.*,
   352 S.E.2d 73 (W. Va. 1986) ............................................................................... 13

*Hinerman v. Daily Gazette Co.*,
   423 S.E.2d 560 (W.Va. 1992) ......................................................... 1, 11, 12, 13

*Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*,
   790 F.3d 532 (4th Cir. 2015) ............................................................................... 10

*Hutchinson v. Miller*,
   797 F.2d 1279 (4th Cir. 1986) ............................................................................. 26

*Jennings v. Telegram-Tribune Co.*,
   210 Cal. Rptr. 485 (Cal. App. 4th Dist. 1985) ...................................................... 25

*Kahl v. Bureau of Nat'l Affs., Inc.*,
   856 F.3d 106 (D.C. Cir. 2017) (Kavanaugh, J.) ................................................... 13

*Lawrence v. Altice USA*,
   841 F. App'x 273 (2d Cir. 2021) .......................................................................... 24

*Masson v. New Yorker Mag., Inc.*,
   501 U.S. 496 (1991) ...................................................................................... 20, 23

*Meade v. Parsley*,
   No. 2:09-CV-00388, 2010 WL 4909435 (S.D.W. Va. Nov. 24, 2010)
   (Copenhaver, J.) ................................................................................................ 27

*Milan v. Long*,
   88 S.E. 618 (W. Va. 1916) .................................................................................. 28

*Nanji v. Nat'l Geographic Soc'y*,
   403 F. Supp. 2d 425 (D. Md. 2005) ..................................................................... 24

*New York Times Co. v. Sullivan*,
   376 U.S. 254 (1964) .................................................................................... 2, 13

*Pritt v. Republican Nat'l Comm.*,
557 S.E.2d 853 (W. Va. 2001) ................................................................. 20

*Richard H. v. Rachel B.*,
No. 18-1004, 2019 WL 6998331 (W. Va. Dec. 20, 2019) ................................ 28, 29

*Rohrbaugh v. Wal-Mart Stores, Inc.*,
572 S.E.2d 881 (W. Va. 2002) ................................................................. 26

*Rouch v. Enquirer & News of Battle Creek Michigan*,
440 Mich. 238 (1992) ............................................................................ 23

*Ryan v. Brooks*,
634 F.2d 726 (4th Cir. 1980) ................................................................... 15

*Sakaria v. Trans World Airlines*,
8 F.3d 164 (4th Cir. 1993) ................................................................... 27, 28

*Soules v. Kauaians for Nukolii Campaign Comm.*,
849 F.2d 1176 (9th Cir. 1988) ................................................................ 26

*Sprouse v. Clay Commc'n, Inc.*,
211 S.E.2d 674 (W. Va. 1975) ................................................................ 19

*St. Amant v. Thompson*,
390 U.S. 727 (1968) ..................................................................... 1, 12, 15

*Suriano v. Gaughan*,
198 W.Va. 339 (1996) ........................................................................... 20

*Sw. Publ'g Co. v. Horsey*,
230 F.2d 319 (9th Cir. 1956) .................................................................. 26

*Tavoulareas v. Piro*,
817 F.2d 762 (D.C. Cir. 1987) (en banc) ..................................................... 10

*Taylor v. W. Vir. Dept. of Health & Human Res.*,
788 S.E.2d 295 (W. Va. 2016) ................................................................. 30

*United States v. Blankenship*,
846 F.3d 663 (4th Cir. 2017) (*Blankenship II*) ........................................... 3, 4

## Statutes

18 U.S.C. § 3559(a) .......................................................................... 4, 22

30 U.S.C. § 820 ................................................................................ 21

W. Va. Code Ann. § 55-7-29 ................................................................. 29

## INTRODUCTION

Several months after completing a one-year prison sentence for conspiring to willfully violate federal mine safety and health laws, plaintiff Don Blankenship announced he was running for the Republican nomination in the 2018 U.S. Senate race in West Virginia.  Unsurprisingly, Blankenship's criminal history, and his widely reported role in the Upper Big Branch mine explosion that killed 29 people, featured prominently in the race.

Blankenship lost the primary, finishing in third place fifteen points behind the winner. He then sued more than 100 defendants for remarks they made in the course of media coverage of his campaign.  Of course, he does not deny that his criminal history and the Upper Big Branch mine explosion were relevant to voters.  Instead, the gravamen of his complaint is that all of these media outlets and personalities—which by his own description span the ideological spectrum—engaged in a "concerted effort" to mislabel his criminal conviction, thereby defaming him.  And he claims those statements were a "material cause" of him losing the election.

Under the First Amendment, public figures claiming defamation must clear a high hurdle, and especially so in cases concerning "public discussion of the qualifications of a candidate for elective office."  *Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 686 (1989).  They must provide "clear and convincing evidence" that the speaker acted with "actual malice"—that is, either had a "*subjective appreciation*" that the statement was false or subjectively "entertained serious doubts as to the truth of his [statement]."  *Hinerman v. Daily Gazette Co.*, 423 S.E.2d 560, 572 (W.Va. 1992) (emphasis in original); *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).  For good reason, a case involving election coverage, as here, "presents what is probably the strongest possible case for application of the [actual malice] rule."  *Harte-Hanks*, 491 U.S. at 686.  After all, "examining and discussing the[] merits and demerits of the candidates" is

"necessary for the optimal functioning of democratic institutions" and "must be protected with special vigilance." *Id.* at 687 (quoting 4 J. Elliot, Debates on the Federal Constitution 575 (1861)).

In allowing discovery to proceed, this Court found that Blankenship had made allegations "sufficient *at [the motion to dismiss] stage* to create a plausible inference" of actual malice. MTD Order (ECF 398) at 44 (emphasis added). It held that "discovery [may] reveal evidence of alleged wrongdoing," *id.* at 44–45, such as an "organized effort" to defame Blankenship, *id.* at 3, or violations of internal "policies and procedures," *id.* at 33 (citing Am. Compl. (ECF 14) ¶ 231).

But after more than a year of discovery, Blankenship has not adduced evidence from which a jury reasonably could infer—much less to a clear and convincing evidence standard— that the speakers on Fox News Network (FNN) knew their words were incorrect or had serious doubts as to their accuracy. To the contrary, the evidence confirms what has always been the simplest and most likely explanation: The commentators believed their statements were true based on their understanding of Blankenship's history, the Upper Big Branch explosion, and his one-year prison sentence. Furthermore, discovery has not yielded evidence from which a jury could reasonably conclude, by a clear and convincing standard, that the statements were intended to injure, were materially false, or caused any injury. These failures doom both claims— defamation and false light—against FNN.

As Blankenship candidly admitted at his deposition, his "real effort is … to put a dent in the New York Times versus Sullivan" standard. Ex. 2 (Pl. Dep. Vol. 2) 92:24–93:11. But the vitality of *New York Times v. Sullivan* is not up to this Court to decide. The question for this Court is whether Blankenship meets that high standard with clear and convincing evidence. Because he does not, his claims cannot survive summary judgment.

## FACTUAL BACKGROUND

**I.     Blankenship's mine explodes, and he serves a year in prison for a "very serious" crime.**

Affirming his conviction, the Fourth Circuit described Blankenship's criminal case as having "arise[n] from a tragic accident on April 5, 2010 at the Upper Big Branch coal mine in Montcoal, West Virginia, which caused the death of 29 miners."  *United States v. Blankenship*, 846 F.3d 663, 666 (4th Cir. 2017) (*Blankenship II*).  At the time of the accident, Blankenship was chairman and CEO of Massey, the company that operated the mine.  *Id.*

As the Fourth Circuit highlighted, the federal Mine Safety and Health Administration had "repeatedly cited Massey" for mine-safety violations in the years preceding the accident, finding 549 such violations in 2009 alone.  *Blankenship II*, 846 F.3d at 666.  And in the months preceding the explosion, "the Upper Big Branch mine received the third-most serious safety citations of any mine in the United States."  *Id.*  Many violations "related to improper ventilation and accumulation of combustible materials—problems that were key contributing factors to the accident."  *Id.* at 666–67.

Blankenship admits he quickly and indelibly became the "face of the UBB disaster."  Ex. 3 (Pl. EDVA Dep.) 237:3–8.  "[F]our widely-reported investigative reports . . . concluded that the UBB disaster was preventable and was caused by Mr. Blankenship and his former employer, Massey."  Ex. 4 (Mot. to Transfer) at 2.  The "world" was "bombarded" by a "huge volume" of reports with this same message.  Ex. 1 (Pl. Dep. Vol. 1) 252:13–254:8.  In fact, Blankenship was asked to leave Massey after the explosion.  *Id.* at 92:14–93:6.  And since then, he has not sought (or received) any other employment or served on any corporate Boards.  *Id.* at 154:13–156:1, 162:22–163:12.  He admits that "[t]he reporting on the [UBB] tragedy had a lot of impact" on his "likelihood of successfully seeking employment."  *Id.* at 155:15–156:21.

In November 2014, Blankenship was federally indicted and ultimately convicted of conspiring to willfully violate federal mine safety laws. *Blankenship II*, 846 F.3d at 667. The judgment of conviction does not state that his crime is a misdemeanor, Ex. 1 (Pl. Dep. Vol. 1) 326:7–327:18, nor do the statutes under which he was convicted, MTD Order (ECF 398) at 21. Rather, the offense is classified as a felony or misdemeanor only under another law that classifies as a felony crimes for which the "maximum term of imprisonment authorized … is more than one year" and as a misdemeanor crimes for which the maximum prison term is less. 18 U.S.C. § 3559(a). Blankenship was sentenced to exactly one year in prison.

Blankenship admits that, from the outset, his trial was "seen as the equivalent of a murder or manslaughter trial." Ex. 2 (Pl. Dep. Vol. 2) at 219:13–220:10. The trial was "broadly understood" to concern the UBB explosion "and the deaths in it," though Blankenship was not charged with causing it. *Id.* at 221:7–18. The undeniable gist was that Blankenship "was being tried for his responsibility for the 29 deaths." *Id.* at 232:11–21. "Indeed, practically all" reports connected the trial "to the UBB explosion and the 29 deaths," *id.* at 222:2–224:15, with "[v]irtually every filing or ruling" triggering additional coverage to that effect, *id.* at 239:24–240:17. Prior to his campaign and the events at issue in this case, "thousands" of articles connected his trial to the explosion, in contrast to only "two or three" that did not. *Id.* at 225:20–226:9. Senator Joe Manchin said Blankenship "ha[d] blood on his hands," *id.* at 242:12–24, and the prosecutors compared Blankenship to a "drug kingpin" running a "criminal enterprise," *id.* at 241:4–14. Others called him a "murderer." *Id.* at 243:23–244:13. The fifth anniversary of the UBB explosion, which occurred during the criminal trial, generated another "mass of publicity that linked the UBB disaster to the prosecution's charges against" plaintiff. *Id.* at 225:9–19.

Those perceptions were bolstered at his sentencing by Judge Berger's findings of "fact that [Blankenship] abused the trust of … employees who looked to [him] . . . for a safe workplace," personally ran a "dangerous conspiracy" that "flout[ed] MSHA's safety and health standards," and "put[] the profitability of the company ahead of the safety of [his] employees." Ex. 5 (Sentencing Tr.) 15:12, 66:19–23, 67:11–12, 68:23.  She highlighted "the pervasiveness of that conspiracy," "the length of time that the conspiracy lasted," and "that, during that time, the risk of … death was present every single day for employees in the mines."  *Id.* at 70:1–5.

Repeatedly, Judge Berger emphasized the "seriousness of the offense," *id.* at 25:20, 70:21, 71:6, and that the crime was "very serious not only in its commission but in its … impact," *id.* at 71:15–17.  And she concluded that "the serious crime of conspiring to willfully violate mine safety and health standards," and the need for "deterring … similar conduct, and promoting respect for the law," made "necessary" a "sentence of one year of incarceration coupled with the maximum fine."  *Id.* at 70:12–19.  She expressly rejected any suggestion that the labeling of the crime as a felony or misdemeanor was significant, saying the crime was "very serious" regardless of how "the legal community" had "tag[ged]" it.  *Id.* at 71:10–17.

As Blankenship himself admits, his one-year sentence "would indicate to a casual observer" that he had been convicted of a "very serious crime."  Ex. 1 (Pl. Dep. Vol. 1) 346:17–347:5.  He is unaware "of any other person, in all of American history, who has served a year in federal prison for . . . a misdemeanor—not a felony," and further volunteered, "I don't think that anyone in the media has."  *Id.* at 363:9–18; 363:19–364:11.  Indeed, Blankenship "do[es]n't know of anyone that's heard of anyone going to prison for a misdemeanor," *id.* at 367:10–22, and his attorneys told him that "nobody goes to prison for a first time misdemeanor," *id.* at 329:5–13.  He publicly decried the correctional facility to which he had been sent as "a felony

prison." Ex. 6 (Blankenship advertisement). Indeed, Blankenship was the only misdemeanant of the 2,400 inmates there, Ex. 1 (Pl. Dep. Vol. 1) 348:15–349:12, and served a longer sentence than many of them, Ex. 2 (Pl. Dep. Vol. 2) 251:2–10.

## II.    Over 100 commentators mistakenly refer to Blankenship as a "felon."

Shortly after leaving prison, and while still on probation, Blankenship announced his candidacy for U.S. Senate. He knew his campaign was a "long shot," Ex. 1 (Pl. Dep. Vol. 1) 419:8–14, but hoped his entry into the race could "expose" what he believed were persistent "lies" about the "Upper Big Branch [explosion] and prosecution," *id.* at 423:24–424:12.

Soon after Blankenship announced his candidacy, commentators from across the political spectrum again connected Blankenship's conviction and one-year sentence to the UBB deaths and began referring to his crime as a "felony." It appears such statements began as early as late 2017, predating the statute of limitations period governing this suit, Ex. 2 (Pl. Dep. Vol. 2) at 249:4–13, and grew through early 2018, well before any FNN speakers made any statements at issue here. For example:

- On January 26, 2018, political commentator Zack Colman tweeted: "Read @joshkurtznews dispatch from convicted felon/coal mining exec/GOP senate candidate Don Blankenship's rally in WV."

- On March 30, 2018, the Democratic Senatorial Campaign Committee published an article stating: "Republicans are increasingly worried that … ex-felon Don Blankenship could come out on top in the primary . . . ."

- On April 10, 2018, 35th PAC tweeted: "You are a convicted felon hurting West Virginia families."

- On April 10, 2018, National Journal published an article saying: "Republicans have been concerned that they could blow a winnable race against Sen. Joe Manchin … if a convicted felon (Don Blankenship) ends up as their nominee."

- On April 15, 2018, political blog Watauga Watch referred to Blankenship as: "[T]he scary … recent felon who presided over a coal company that lied about the deaths of 29 coal miners, one Don Blankenship, who's notorious in West Virginia without necessarily being electable."

- On April 16, 2018, Chris Hayes tweeted: "The GOP may very well nominate a felonious coal baron found responsible for dozens of miners' deaths as their senate nominee in WV."

- On April 23, 2018, Mr. Hayes described Blankenship as "a convicted felon … who spent a year in jail for his role in a mine disaster that killed 29 people."

Ex. 7 (Rog Resp. to NRSC) pp. 20–21.

Over the next few months, more than 50 other commentators and articles made similar statements about Blankenship's electability, including six on live FNN television programs, *id.* at pp. 21–22, that this Court correctly described as "stray comments during much longer broadcasts about national political issues," MTD Order (ECF 398) at 43. On an FNN program on April 25, 2018, Judge Andrew Napolitano briefly referred to one of Blankenship's primary opponents as "from New Jersey," Ex. 8 at 35:9, Senator Manchin as a "favorite" of Republicans, *id.* at 35:15, and Blankenship as having gone "to jail for manslaughter, after people died," *id.* at 36:1–4. The next day, a blog post on the website Down With Tyranny referred to Blankenship's conviction as a felony. Ex. 7 (Rog Resp. to NRSC) p. 21. And on April 29, Kevin McLaughlin referred to Blankenship as a felon on a CNN television program. *Id.*

On May 2, 3, 4 and 5, additional commentators mistakenly referred to him as a felon. *Id.* at pp. 21–22. On May 7, eleven more individuals separately used the term felony or felon, including some in brief references on live FNN television programs. *Id.* at pp. 22–23; *see also* Ex. 9 (Neil Cavuto) 14; Ex. 10 (Bradley Blakeman and John Layfield) 51:16–22, 52:12–22; Ex. 11 (Stephanie Hamill) at 88:19–22. On May 9, FNN host Elizabeth MacDonald referred to Blankenship as a felon. Ex. 12 at 64:23–66:2. And the mistaken references continued at least until August. Ex. 7 (Rog Resp. to NRSC) pp 24–26.

The evidence adduced in discovery shows that all six FNN television commentators believed their passing references were true at the time. Ex. 13 (Napolitano Tr.) 52:10–23; Ex. 14

(Cavuto Tr.) 139:7–18; Ex. 15 (Blakeman Aff.) ¶ 4; Ex. 16 (Layfield Aff.) ¶ 4; Ex. 17 (Hamill

Aff.) ¶ 4; Ex. 18 (MacDonald Aff.) ¶ 4.  They genuinely believed he had been convicted of more

than just a misdemeanor given the circumstances surrounding his prosecution and his year-long

prison sentence.  Ex. 13 (Napolitano. Tr.) 159:8–15; Ex. 14 (Cavuto Tr.) 87:15–22.

        That fact is confirmed by their reactions when they learned otherwise.  For example, after

Blankenship's campaign complained about Napolitano's error and Napolitano received materials

explaining Blankenship's crime is classified as a misdemeanor, Ex. 19 (email to Napolitano), he

immediately apologized for "mistakenly misstat[ing] the nature of [Blankenship's] conviction,"

Ex. 20 (email to Blankenship's campaign manager).  Napolitano also sought to clarify what he

said and "address the complex legal issues around Don Blankenship," Ex. 21 (emails to FNN

producers), which he did on *Your World*, hosted by Neil Cavuto, appearing immediately after an

interview with Blankenship, Ex. 14 (Cavuto Tr.) 135:20–136:11.

        The questions Cavuto asked in the interview show that he, too, was surprised to learn that

the prior reference he'd made to Blankenship's conviction was inaccurate.  *Id*. at 127:13–22 ("So

what are you if you've served time in jail?"); *id*. at 128:5–16 ("[T]hat would be a little more than

a misdemeanor right?"); *id*. at 136:2–9 ("So just serving a year in jail doesn't make you a

convicted felon?").  Cavuto then turned to Napolitano, who explained that Blankenship was

technically correct.  *Id.*

        Though Blankenship alleged in his complaint that the mistaken references were a

"material cause" of his losing the primary election, he admitted in discovery that he cannot

identify any "individual who did not vote for him" because of what the FNN speakers said.  Ex.

22 (Plf. Suppl. Resp. to FNN Interrog.) Resp. No. 8.  Rather, the evidence shows he understood

he lost for a very simple reason:  "our buddy Trump did us in."  Ex. 23 (Blankenship email).

Blankenship had hoped President Trump would remain "neutral," Ex. 1 (Pl. Dep. Vol. 1) 466:8–467:17, since Trump wielded an 80% popularity rating and had "a very powerful voice" in West Virginia, *id.* at 465:2–4, 467:7–17. But President Trump ultimately supported Blankenship's opponents, Ex. 24, tweeting "[t]o the great people of West Virginia" that "Don Blankenship . . . can't win the General Election in your State….No way! Remember Alabama. Vote Rep. Jenkins or A.G. Morrisey!" Ex. 25. The next day, Blankenship was "beaten badly" by Patrick Morrissey and Evan Jenkins, finishing a distant third with just 19% of the vote. Ex. 2 (Pl. Dep. Vol. 2) 65:22–67:5. Blankenship later blamed his loss on the fact that Trump "stabbed [him] in the back." Ex. 26 (Blankenship email). *See also id.* Ex. 27 ("We had them beat pre Trump tweet."); Ex. 28 ("Had em beat pre Trump tweet."); Ex. 29 ("We had em beat before Trump tweeted.").

## PROCEDURAL HISTORY

In allowing discovery to proceed, this Court held that Blankenship's allegations were "sufficient at th[at] stage to create a 'plausible inference' that the Fox News defendants published their statements with actual malice." *See* MTD Order (ECF 398) at 44. It reasoned that "discovery [may] reveal evidence of alleged wrongdoing," *id.* at 44–45, such as an "organized effort" to defame Blankenship, *id.* at 3, or violations of internal "policies and procedures," *id.* at 33 (citing Am. Compl. (ECF 14) ¶ 231). But after more than a year of discovery, Blankenship admitted—on the last business day before the discovery cutoff—that he has no evidence that any of the FNN commentators knew their statements were false when made. Ex. 2 (Pl. Dep. Vol. 2) 245:19–25 ("I have no evidence that [Napolitano] knew . . . ."); *id.* at 252:14–21 (Cavuto) ("Yeah, I don't have any evidence of what anybody knew at the time they made the statement."); *id.* at 254:13–19 (Layfield) ("I don't think I have evidence that any of

them knew about it beforehand."); *id.* at 255:3–13 (Blakeman, Hamill, MacDonald) ("I don't have the evidence").

## STANDARD OF REVIEW

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact." Rule 56(a). When a defendant shows there is "an absence of evidence to support the [plaintiff's] case," the burden shifts to the plaintiff to "present specific facts showing that there is a genuine issue for trial." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 539–40 (4th Cir. 2015). And a "genuine issue for trial" exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The plaintiff "may not rest upon mere allegation[s]," but must present "significant probative evidence." *Id.* at 256.

Moreover, in a defamation case, a plaintiff must present "evidence" that is of sufficient "caliber" and "quantity to allow a rational finder of fact to find actual malice by *clear and convincing evidence*." *Id.* at 254. This "clear and convincing evidence" standard is the "highest possible standard of civil proof," *Brown v. Gobble,* 474 S.E.2d 489, 494 (W. Va. 1996), and "significantly more onerous than the usual preponderance of the evidence standard," *Tavoulareas v. Piro*, 817 F.2d 762, 776 (D.C. Cir. 1987) (en banc). Thus, "[w]hen determining if a genuine factual issue as to actual malice exists in a [defamation] suit brought by a public figure, a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability under *New York Times*[]" and "must view the evidence presented through the prism of [this] substantive evidentiary burden." *Anderson*, 477 U.S. at 254. And the plaintiff

cannot withstand summary judgment by "merely asserting that the jury might, and legally could, disbelieve the defendant's denial . . . of [actual] malice." *Id.* at 256.

**ARGUMENT**

The Court should grant summary judgment in favor of FNN on Blankenship's defamation claim for four independent reasons. *First*, a reasonable jury could not find that the FNN commentators acted with actual malice, much less that there is clear and convincing evidence of actual malice. To the contrary, the evidence confirms that they believed what they said to be true. *Second*, there is no evidence from which a reasonable jury could find that the FNN commentators intended to injure Blankenship, as required by West Virginia law. *Third*, a reasonable jury could not find, by clear and convincing evidence, that the challenged statements were materially false. *Fourth*, a reasonable jury could not find that these statements caused quantifiable injury.

Blankenship's other claims—for punitive damages and false light invasion of privacy—fail with his defamation claim, but also for independent reasons. Even if Blankenship *could* prove causation and damages, he could not do so by "clear and convincing evidence," as required under West Virginia law for the award of punitive damages. And his privacy claim fails in all events because FNN did not "give publicity" to Blankenship's criminal conviction, which was already widely publicized.

**I.    A reasonable jury could not conclude that any FNN statement was made with the knowledge of falsity or likely falsity required for actual malice.**

The First Amendment sets a high bar for a "candidate for public office … in a libel action." *Hinerman*, 423 S.E.2d at 571–72.[1] Because "the stake of the people in public business and the conduct of public officials is so great," a candidate must establish that the alleged libeler

---

[1] There is no dispute in this matter that West Virginia law governs.

spoke with requisite *personal knowledge* of falsity or likely falsity—a subjective standard known as "actual malice." *St. Amant*, 390 U.S. at 731–32. Actual malice is the "greatest obstacle" for any public figure suing for libel. *Hinerman*, 423 S.E.2d at 572. And the First Amendment interests underlying the actual malice requirement are at their apex in cases, like this one, involving "public discussion of the qualifications of a candidate for elective office," *Harte-Hanks*, 491 U.S. at 686.

The plaintiff must "prove by clear and convincing evidence that … the person who uttered the defamatory statement either *knew* the statement was false or *knew* that he was publishing the statement in reckless disregard of whether the statement was false." *Hinerman*, 423 S.E.2d at 571–72 (emphases added). Reckless disregard "requires more than a departure from reasonably prudent conduct." *Harte-Hanks*, 491 U.S. at 688. Rather, "[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication," "actually had a high degree of awareness of probable falsity," or "purposeful[ly] avoid[ed] the truth." *Id.* at 688, 692 (cleaned up). Proof of "failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient." *Id.* at 688.

The clear and convincing evidence standard makes surviving summary judgment "no easy task" for a public-figure plaintiff like Blankenship. *CACI Premier Tech., Inc. v. Rhodes*, 536 F.3d 280, 293 (4th Cir. 2008). The evidence must be such that a reasonable jury could find the "evidentiary scales" were "instantly tilted" towards the plaintiff, providing an "abiding conviction" that actual malice was "highly probable." *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984). As noted above, it is not enough for a defamation plaintiff to "merely assert[] that the jury might, and legally could, disbelieve the defendant's denial of … legal malice."

*Anderson*, 477 U.S. at 256.  Moreover, because actual malice requires "*subjective appreciation* at

the time of publication," the evidence must be sufficient to support a finding of actual knowledge

*in the speaker's mind* that the statement was false or likely false.  *Hinerman*, 423 S.E.2d at 572.

It is not sufficient to show that a media organization or some person other than the speaker (even

in the same organization) previously reported an issue differently.  MTD Order (ECF 398) at 26

("[T]he state of mind required for actual malice would have to be brought home to the persons in

the newspaper's organization having responsibility for the publication of the statement.")

(quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 287 (1964)).

Thus, the question of actual malice in the defamation context is "highly susceptible to

summary judgment for the defendant."  *Hayseeds, Inc. v. State Farm Fire & Cas.*, 352 S.E.2d

73, 81 (W. Va. 1986).[2]

### A.  No jury could reasonably conclude that any FNN speaker knew his or her statement was false at the time it was made.

Blankenship acknowledges that he has no evidence that any FNN speaker "personally

knew [their challenged statements] to be incorrect" "at the time" they made them.  Ex. 2 (Pl.

Dep. Vol. 2) 245:19–25 (Napolitano); *id.* at 252:14–21 (Cavuto); *id.* at 254:13–19 (Layfield); *id.*

at 255:3–13 (Blakeman, Hamill, and MacDonald).  As to Napolitano, Blankenship admitted at

his deposition, "I have no evidence that he knew." *Id.* at 245:19–25.  When asked about Cavuto,

---

[2] *See also Anderson v. Stanco Sports Libr., Inc.*, 542 F.2d 638, 641 (4th Cir. 1976) ("The granting of summary judgment is especially appropriate in libel cases, for prolonging a meritless case through trial could result in further chilling of First Amendment rights."); *Kahl v. Bureau of Nat'l Affs., Inc.,* 856 F.3d 106, 109 (D.C. Cir. 2017) (Kavanaugh, J.) ("To preserve First Amendment freedoms and give . . . commentators . . . the breathing room they need . . ., the Supreme Court has directed courts to expeditiously weed out unmeritorious defamation suits."); *Carr v. Forbes, Inc.*, 259 F.3d 273, 283 (4th Cir. 2001) ("[T]he First Amendment does not require perfection from the news media.  Were the press subject to suit every time it erred, it would decline to speak out without resorting to the sort of cumbersome due diligence common in security offerings.").

Blankenship testified, "Yeah, I don't have any evidence of what anybody knew at the time they made the statement." *Id.* at 252:14–21. He then admitted, when asked about the remaining individuals who inaccurately described his conviction on FNN, "I don't think I have evidence that any of them knew about it beforehand." *Id.* at 254:13–19.

In fact, what evidence exists bolsters that the FNN speakers believed their words to be true. Napolitano "honestly thought [Blankenship] had been convicted of Manslaughter." Ex. 13 (Napolitano Tr.) 50:18–22. And Cavuto "did not know there was a distinction between going to jail over a felony or going to jail over a misdemeanor, just that [Blankenship] went to jail for a year." Ex. 14 (Cavuto Tr.) 139:7–21. The remaining four speakers, whom Blankenship never sought to depose, similarly each believed him to be a felon when they referred to him as such.[3]

> **B. No jury could reasonably conclude that any FNN speaker made his or her statement with "serious doubts" or "a high degree of awareness" of probable falsity.**

Blankenship similarly has not adduced evidence from which a jury could conclude by any standard, much less a clear and convincing standard, that any of the FNN speakers personally had "serious doubts" or a "high degree of awareness" that their statements were likely false. To the contrary, Napolitano explained that he made "an honest mistake because [he] believed it was true at the time." Ex. 13 (Napolitano Tr.) 52:10–23. Indeed, when he learned of his error and was given information confirming that error, Ex. 19 (email to Napolitano), he promptly apologized to Blankenship, Ex. 20 (email to Blankenship's campaign manager), and began requesting air time for a public correction, Ex. 21 (emails to FNN producers). Even Blankenship admits that Napolitano "was pretty convincing that he made a mistake." Ex. 2 (Pl. Dep. Vol. 2 Tr.) 247:1–11.

---

[3] *See* Ex. 15 (Blakeman Aff.) ¶ 4; Ex. 16 (Layfield Aff.) ¶ 4; Ex. 17 (Hamill Aff.) ¶ 4; Ex. 18 (MacDonald Aff.) ¶ 4.

For his part, Cavuto acknowledged that his statement "was incorrect, but it was inadvertent," "not intentional [and] not deliberate." Ex. 14 (Cavuto Tr.) 139:7–140:15. This, too, is confirmed by contemporaneous evidence. When Blankenship corrected him on the air after the election, he responded with disbelief. *Id.* at 127:13–22 ("So what are you if you've served time in jail?"); *id*. at 128:5–16 ("[T]hat would be a little more than a misdemeanor right?"); *id*. at 136:2–9 ("So just serving a year in jail doesn't make you a convicted felon?"). And Blankenship has no evidence that any of the other FNN speakers harbored doubts about their words either.[4]

In short, there is no evidence showing that the FNN speakers made anything but good faith mistakes—and certainly not "knowing, calculated falsehood[s]." *Ryan v. Brooks*, 634 F.2d 726, 733 (4th Cir. 1980). *See also St. Amant*, 390 U.S. at 732 (considering whether statements were "indeed made in good faith"). No reasonable jury could find with "convincing clarity," *Anderson*, 477 U.S. at 244, or that the evidence "instantly" shows, *Colorado*, 467 U.S. at 316, that any speaker "in fact entertained serious doubts as to the truth" or "actually had a high degree of awareness of probable falsity," *Harte-Hanks*, 491 U.S. at 688, 692 (cleaned up).

Nor can it be said that the statements were "inherently improbable" or "obvious[ly]" false in light of what the speakers knew, *St. Amant*, 390 U.S. at 732, such that a jury could find it clear and convincing that any speaker "purposeful[ly] avoid[ed] the truth," *Harte-Hanks*, 491 U.S. at 692. Like the vast majority of those who have any knowledge of Don Blankenship, Napolitano knew that dozens of miners had died under Blankenship's watch, Ex. 13 (Napolitano Dep. Tr.) 60:16–19, and that Blankenship had served significant time in prison. Indeed, immediately

---

[4] *See* Ex. 15 (Blakeman Aff.) ¶ 4; Ex. 16 (Layfield Aff.) ¶ 4; Ex. 17 (Hamill Aff.) ¶ 4; Ex. 18 (MacDonald Aff.) ¶ 4.

before Napolitano's utterance, another commentator had noted that Blankenship "went to jail after a really tragic coal mining" accident.  Ex. 8 (Napolitano Program Tr.).  And in his experience as a judge, having "sentenced more than 1,000 people," he "ha[d] never heard of someone going to prison without a prior record for committing a misdemeanor."  Ex. 13 (Napolitano. Dep. Tr.) 159:8–15; *accord id*. 160:6–11 ("it's beyond unusual, it's unheard of").  A jury could not reasonably conclude that it was "inherently improbable" for Napolitano to believe on these facts that Blankenship had been charged with the miners' deaths and gone to jail for manslaughter.

The same is true of Cavuto.  Prior to Cavuto's statement, he received a packet of information, Ex. 30, from which he recalled learning only the "big bullet-point headlines," namely "the safety standards violation and Mr. Blankenship serving one year in prison," *id.* at FoxNews__006715, Ex. 14 (Cavuto Tr.) 87:15–22.  He explained, "What stood out to me was the time he'd served in federal prison, the safety issues related to these 29 dead miners."  Ex. 14 (Cavuto Tr.) at 104:22–24.  Cavuto testified that he later learned Blankenship "was not a convicted felon" and "had I known that, by all means I would have said that."  *Id*.

Indeed, the evidence shows that commentators from many other publications and networks, over many months, well before and well after Cavuto, reached the same conclusion as Cavuto in good faith.  *See* Ex. 31 (Verhovek Tr.) 66:22–11 ("[T]his was someone who I understood had a criminal history and went to prison for a certain amount of time, and I thought that that term was an accurate term at the time."); Ex. 32 (Verhovek email) ("Blankenship was sent to federal prison but he was not convicted of a felony?"); Ex. 33 (Hayes Tr.) 104:8–24 ("I knew he had done a year in federal prison, and I just thought that meant he had been convicted of a felony."); Ex. 34 (Reid Tr.) 58:14–59:2 ("[A]t the time what I understood was that he had spent

a – a year in federal prison for a serious crime."); Ex. 35 (Cupp Tr.) 109:14–21 ("At the time I believed [the term 'felon'] to be true and synonymous with a person who had been convicted of a federal crime and served a year in prison."); Ex. 36 (McLaughlin Tr.) 79:14–21 ("[G]iven what happened in the sentence, that it was obviously a very serious crime."); Ex. 37 (Lockhart Tr.) 55:6–16 (testifying that he believed "someone who spent a significant amount of time in jail was a felon"). Cavuto's conclusion thus was not "inherently improbable," but demonstrably probable.

Blankenship's complaint in large measure hinged on the assertion that these were not sensible deductions reached consistently and independently by many individuals, but rather the result of a far-reaching "clandestine campaign" in which media commentators across the political spectrum finally found common ground: To defame Don Blankenship. His theory included the assertion that various defendants or speakers were directed by Majority Leader Mitch McConnell and the National Republican Senatorial Committee (NRSC) to refer to Blankenship as a felon. Am. Compl. (ECF 14) ¶ 4. *See also id.* ¶¶ 2–3, 5, 150, 167.

Because the UBB explosion, Blankenship's conviction, and his prison term were already so widely known in detail to voters, Ex. 1 (Pl. Dep. Vol. 1) 419:8–14, it was always a rather dubious proposition that opponents decided the words "felony" or "manslaughter" were the key to defeating Blankenship's self-described "long shot" campaign. But now, after more than a year of discovery here and in his companion case in the Eastern District of Virginia,[5] his "conspiracy" theory has been completely debunked. Blankenship voluntarily dismissed under threat of Rule 11 sanctions his claims against "conspiracy defendants" NRSC and Kevin McLaughlin. In fact,

---

[5] Blankenship filed claims against two individual defendants in the Eastern District of Virginia after they were dismissed here for lack of personal jurisdiction. *See* Compl. (ECF 1), *Blankenship v. McLaughlin*, No. 1:20-cv-00429 (E.D.Va. Apr. 17, 2020).

Blankenship admitted that the sole basis for those "conspiracy allegations" were two *Politico*

articles that described what amounts to entirely lawful opposition to his campaign, with no

suggestion of any conspiracy to defame him.  Draft Mot. for Sanctions in EDVA (ECF 801-2).

Moreover, Blankenship has conceded that he has no evidence that any FNN speakers

were instructed to mischaracterize his conviction.[6]  And, in response to questioning from

Blankenship's own counsel, FNN speakers, producers, and other personnel consistently testified

that they have never spoke with Senator McConnell (or any other Senator), Kevin McLaughlin,

anyone at the NRSC, any senior FNN executives, any Fox Corporation executives, or any Fox

Corporation board members about Blankenship or his conviction.[7]

Finally, while this Court previously concluded that a plaintiff "may support" a finding

that the speaker "purposeful[ly] avoid[ed] the truth," MTD Order (ECF 398) at 25 (citing *Harte-*

*Hanks*), with evidence of failure to "comply[] with [company] policies and procedures regarding

the reporting of criminal convictions," *see id.* at 33, 40, 44, Blankenship has not adduced such

evidence.  He has not shown any FNN speaker violated any FNN policies or procedures

regarding the reporting of criminal convictions.  Ex. 38 (FNN 30(b)(6) Tr.) pp. 42–45.  Nor is

there evidence that any FNN speaker would be considered, under any standard or practice, to

have been "reporting" on a criminal conviction versus simply commenting on a candidate's

electability.  *See* Ex. 13 (Napolitano Tr.) 72:1 ("[T]he conversation . . . had to do with the West

---

[6] *See* Ex. 2 (Pl. Dep. Vol. 2) at 247:1–11 ("I don't know whether [Napolitano] had instruction or not.  I thought he was pretty convincing that he made a mistake."); *id.* at 252:25–253:6 ("Q:  And you don't have any evidence that Mr. Cavuto was instructed by anyone to refer to your conviction as one that qualified as a felony under federal law; is that correct?  A:  No."); *id.* at 254:13–255:13 (Blakeman, Hamill, MacDonald).

[7] Ex. 39 (Hadden Tr.) 81:16–87:9, Ex. 13 (Napolitano Tr.) 208:2–214:9, Ex. 40 (Kaplan Tr.) 113:14–115:11, Ex. 41 (Rove Tr.) 121:19–126:25, Ex. 42 (Stirewalt Tr.) 151:1–152:14, 153:14–155:25.

Virginia primary.  It wasn't about Mr. Blankenship's legal issues.").  Of course, even if such

evidence existed, *Harte-Hanks* makes clear that there would have to be "more" to support a

finding of actual malice.  491 U.S. at 665 ("a public figure plaintiff must prove more than an

extreme departure from professional standards").[8]  And as shown above, Blankenship has

nothing more.

## II.    There is no evidence that any FNN speaker intended to injure Blankenship.

In addition to actual malice, West Virginia law requires "a candidate for office" suing

over alleged defamation to "further . . . prove" that the defamatory statements "were published

with a deliberate intent to injure."  *Sprouse v. Clay Commc'n, Inc.*, 211 S.E.2d 674, 692 (W. Va.

1975).  The West Virginia Supreme Court recently reaffirmed this requirement as part of "the

appropriate test" for such plaintiffs in *Giles v. Kanawha Cty. Bd. of Educ.*, No. 17-0139, 2018

WL 300605, at *3 (W. Va. Jan. 5, 2018).

Blankenship has failed to adduce evidence that any of the FNN commentators intended to

injure him.  Again, what evidence exists points in the opposite direction.  *See* Ex. 19 (Napolitano

email to Blankenship) ("I feel very badly about this; especially since I am fond of him and wish

him well in his Senate race."); Ex. 13 (Napolitano Tr.) 128:14–21 (opining that Blankenship

"was unfairly prosecuted" and "should never have gone to jail"); *id.* at 159:23–160:4 ("If I had

been the judge [in Blankenship's criminal case], the case would have been thrown out . . . .");

Ex. 14 (Cavuto Tr.) 104:14–21 ("[H]ad I known that [Blankenship was a misdemeanant], by all

means I would have said that. . . .  I had no horse in the race to do otherwise."); *id.* at 135:11–14

("You know he [Blankenship] might not be so crazy.").

---

[8] To the extent this Court concluded that a mere departure from standards or policies is
sufficient to prove actual malice, such a ruling is foreclosed by Supreme Court and Fourth
Circuit precedent.  Mot. for Recon. (ECF 416).

## III.     Blankenship cannot prove material falsity by "clear and convincing evidence."

To prove defamation, Blankenship also must show more than literal falsity; the falsity must be "material." *Air Wis. Airlines Corp. v. Hoeper*, 571 U.S. 237, 247 (2014). Even if literally false, a statement is not actionable if "the gist" or "sting" is no worse than the literal truth. *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991); Syl. pt. 4, *Suriano v. Gaughan*, 198 W.Va. 339, 342 (1996). Put another way, a statement is not considered materially false unless it "would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Masson*, 501 U.S. at 496. "[T]he alleged misstatement must be likely to cause reasonable people to think 'significantly less favorably' about the plaintiff than they would if they knew the truth; a misstatement is not actionable if the comparative harm to the plaintiff's reputation is real but only modest." *Bustos v. A & E Television Networks*, 646 F.3d 762, 765 (10th Cir. 2011) (Gorsuch, J.) (citation omitted).

Unlike at the motion to dismiss stage, Blankenship must now prove material falsity by clear and convincing evidence. In West Virginia, public-figure defamation plaintiffs must "prove by clear and convincing evidence that the stated or implied facts were false." Syl. pt. 12, *Pritt v. Republican Nat'l Comm.*, 557 S.E.2d 853 (W. Va. 2001). And because falsity under West Virginia law must be material, materiality must be proven by clear and convincing evidence, too. *Id.* at 861–62 ("A statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced.") (citation omitted).[9]

---

[9] Moreover, under the First Amendment, material falsity is a component of actual malice. *Hoeper*, 571 U.S. at 246 ("[W]e have long held that actual malice requires material falsity."); *id.* at 247 ("Indeed, we have required more than mere falsity to establish actual malice: The falsity must be 'material.'"). Since actual malice must be proved by "clear and convincing evidence," *see* Section I, *supra*, material falsity must be as well.

A.    **Blankenship cannot establish, by "clear and convincing evidence," that the FNN statements were materially false.**

Blankenship cannot show, by clear and convincing evidence, that the statements by the FNN speakers would "cause reasonable people to think 'significantly less favorably' about [him] than they would if they knew the truth." *Bustos*, 646 F.3d at 765. The literal truth is that the deaths of 29 miners under Blankenship's watch, in a terrible mine explosion, triggered an investigation that resulted in him being convicted of a "very serious" crime that sounds "horrible"—conspiracy to violate mine safety and health standards—and being punished to a degree typical for those convicted of felonies. Based on the evidence adduced in discovery, no reasonable jury could find it "instantly" clear, *Colorado*, 467 U.S. at 316, that what this Court described as "stray comments during much longer broadcasts about national political issues," ECF 398 at 43, imparted a greater sting in the minds of viewers than the literal truth.

The effect of the literal truth about Blankenship's conviction on the mind of a viewer is reflected in the statements of the judges who, in fact, heard the literal truth and passed judgment on him. Judge Berger repeatedly emphasized the "seriousness" and "dangerous" nature of the "conduct" for which Blankenship had been convicted: his willful violation of trust, his failure of leadership, and the "unsafe working conditions" and the extraordinary "risk of injury and death" he had created in his mines every single day for years. Ex. 5 (Sentencing Tr.) 25:20, 67:14–15, 68:23, 70:3–4, 70:21, 71:6. She also explained that, while "the legal community" and "Congress put[] tags on offenses," those labels belie real impact of what Blankenship did. She found the only "just punishment" for Blankenship was a maximum prison sentence, fine, and period of supervised release. *Id*. at 66:11–14, 70:12, 71:10–17.[10]

_____

[10] The statute under which Blankenship was convicted, 30 U.S.C. § 820, does not state whether it is a misdemeanor or felony, so this offense is classified based on the "maximum term

The three judges on the Fourth Circuit panel that affirmed Blankenship's conviction were particularly moved by the connection to the UBB explosion. The court described the conviction as "aris[ing] from a tragic accident . . . which caused the death of 29 miners." *Blankenship II*, 846 F.3d at 666–67. It noted that "[m]any" of the mine safety violations "related to … problems that were key contributing factors to the accident," that Blankenship "was aware of the violations at the Upper Big Branch mine in the years leading up to the accident," that Blankenship ignored "warnings from a senior Massey safety official about the serious risks posed by the violations at Upper Big Branch," and that he "direct[ed] mine supervisors to focus on 'run[ning] coal' rather than safety compliance and to forego construction of safety systems." *Id.* at 667.

In the course of discovery here, Blankenship conceded that the judges' harsh observations and connections to the UBB explosion accurately reflect what comes to the mind of one hearing the literal truth. Blankenship admits that his trial and conviction are inextricably and "broadly understood in the community" to concern "the UBB disaster and the deaths in it," such that it was "seen as the equivalent of a murder or manslaughter trial." Ex. 2 (Pl. Dep. Vol. 2) 219:13–220:10, 221:7–18. And "publicly reported findings from four different investigations la[id] blame for mining safety violations and for the UBB explosion at the feet of Mr. Blankenship." Ex. 1 (Pl. Dep. Vol. 1) 269:1–270:11.

Indeed, Blankenship admits that the very name of his crime "sounds horrible." *Id.* at 339:20–340:21. He acknowledges that his prison sentence "would indicate to a casual observer" that he had been convicted of a "very serious crime." *Id.* at 346:17–347:5. In fact, he has repeatedly touted that his punishment is typical of that given to convicted felons, even taking out

---

of imprisonment authorized." 18 U.S.C. § 3559(a). The dividing line under § 3559(a) between misdemeanors and felonies is one year—Blankenship's precise sentence.

a full-page advertisement in the *Charleston Gazette* to complain that he had been "sent to a felony prison," Ex. 6, and admitting that his year-long stay exceeded that of many of the 2,399 felons incarcerated with him, Ex. 1 (Pl. Dep. Vol. 1) 348:15–349:12, Ex. 2 (Pl. Dep. Vol. 2) 251:2–10. Tellingly, at deposition he admitted: "I don't know of *anyone that's heard of anyone going to prison for a misdemeanor.*" Ex. 1 (Pl. Dep. Vol. 1) 367:10–22 (emphasis added). That would include every speaker deposed in this case, each of whom, in some form or fashion, explained that it was the UBB explosion and Blankenship's prison sentence that led them to believe he had been convicted of a felony.

The simple question is whether Blankenship can show by clear and convincing evidence that the sting of the single-word utterances of the FNN speakers was worse than what would otherwise indisputably come to the mind of a viewer who—like the sentencing judge and the Fourth Circuit—knew the complete and literal truth about Blankenship's conviction and sentencing. The answer is "no." No reasonable jury could conclude differently, and certainly not with "convincing clarity." *Anderson*, 477 U.S. at 257.[11]

### B. Mislabeling or misidentifying a crime is not always materially false.

Blankenship has suggested that the statements at issue here are categorically false, because they either mislabeled or misidentified a criminal conviction. Blankenship Opp'n to MTD (ECF 330) at 16. That is not the law. "Numerous courts have rejected claims of falsity when based on a misuse of formal legal terminology." *Rouch v. Enquirer & News of Battle Creek Michigan*, 440 Mich. 238, 264 (1992) (collecting cases). Indeed, "[t]echnical inaccuracies in legal terminology" are "commonplace in the forum of robust debate." *Id.* (citing *Masson*, 501

---

[11] In addition, because material falsity is a component of actual malice, *see* n. 9, *supra*, which is "subjective," *see* pp. 16–17, *supra*, Blankenship must prove, by clear and convincing evidence, that the FNN speakers *knew* that their statements were (or were likely to be) not just false, but materially false. Blankenship has no evidence suggesting that they did.

U.S. at 519).  Accordingly, "[a] media defendant's characterization of criminal allegations . . . is substantially true" if it "comports with the common understanding of the terms employed." *Lawrence v. Altice USA*, 841 F. App'x 273, 276 (2d Cir. 2021).  *See also CACI Premier Tech.,* 536 F.3d at 296 (explaining that "a reasonable listener" would not understand the challenged statement in a "narrow, legalistic sense" like that "in the U.S. criminal code").

Courts have consistently held that *mislabeling* a misdemeanor as a felony may not be materially false.  Indeed, in the Virginia case brought by Blankenship against certain individual defendants dismissed from this case for lack of personal jurisdiction, Judge Brinkema explained that she had "serious doubts that the average juror would understand there to be any significant difference between those two terms."  Ex. 43 (EDVA MTD Tr.) 6:18–20; *see also Nanji v. Nat'l Geographic Soc'y*, 403 F. Supp. 2d 425, 432 (D. Md. 2005) ("[A] long line of cases holds that technical errors in legal nomenclature in reports on matters involving violation of the law are of no legal consequence.").  As here, Judge Brinkema denied a motion to dismiss "because there ha[d] not been discovery," though she found it "a very weak case" and suggested it would not "survive summary judgment."  *Id.* at 12:23–13:3.  As noted above, *see supra* pp. 17–18, Blankenship has voluntarily dismissed that case.

In *Brewer v. Dungan*, the court faced a similar mislabeling mistake as here.  The plaintiff had been convicted of "misdemeanor aggravated assault," but a newspaper reported she "was not promoted to chief of security at Connestee Falls because she had previously been convicted of a 'felony assault.'"  No. 92-CVS-456, 1993 WL 441306, at *1 (N.C. Super. June 30, 1993).  The court found this "mistaken characterization of the classification of the crime" to be "substantially true."  *Id.*  It concluded that "the 'gist' or 'sting' of the publications at issue here would be no different than had the publications correctly characterized her assault conviction."  *Id.*

Courts similarly have found *misidentification* of crimes, even where one is a misdemeanor and the other a felony, insufficient to support a claim for defamation. For example, in *Jennings v. Telegram-Tribune Co.*, 210 Cal. Rptr. 485, 489 (Cal. App. 4th Dist. 1985), the plaintiff was convicted of "'willfully and knowingly' failing to file income tax returns" (a misdemeanor), which the defendant erroneously reported as "tax fraud" (a felony). The court held that the "gist or sting" of the articles was that the plaintiff had been convicted of "several serious tax crimes." *Id.* And "in view of the sentence imposed" (one year, suspended) the plaintiff's actual crimes "certainly fit that description." *Id.*[12]

Other cases are similar. In *Tiwari v. NBC Universal, Inc.*, a television program described plaintiff as having been convicted of "attempted lewd and lascivious acts" (a felony and sexual offense) instead of his actual conviction for attempting to lure a child from home (a misdemeanor "which was not by its terms a sexual offense"). No. C-08-3988 EMC, 2011 WL 5079505, at *14–15 (N.D. Cal. Oct. 25, 2011), *order clarified*, 2011 WL 5903859 (Nov. 23, 2011). But based on the circumstances of the broadcast, the court found the misidentification "would not have affected a viewer." *Id.* And in *Barnett v. Denver Publishing Co., Inc.*, the plaintiff had pleaded guilty to harassment but was described in an article as having been convicted of "stalking." 36 P.3d 145, 147 (Colo. App. 2001). The court found this "technical error[] in legal terminology" of "no legal consequence." *Id.* at 148.

In short, material falsity is a case-by-case inquiry. The question in each case is whether, under the relevant facts and context, the "gist" or "sting" of the challenged statements is worse than the literal truth. And where a plaintiff cannot meet the requisite evidentiary standard after

---

[12] Although the *Jennings* court discussed California's fair report privilege as a basis for its ruling, the court applied the same reasoning as it would under the substantial-truth doctrine by considering the "gist or sting" of the articles. *See* 210 Cal. Rptr. at 487–89.

discovery, as here, a defendant is entitled to summary judgment.  To the extent this Court's prior

decision denying defendants' motions to dismiss is irreconcilable, which FNN believes it is not,

FNN respectfully urges this Court to reconsider.  Mot. for Recon. (ECF 416).

## IV.  Blankenship cannot prove any "resulting injury."

Blankenship's defamation claim fails for a fourth reason—he cannot prove "resulting

injury."  *Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70, 77 (W. Va. 1983).  Blankenship

requests both "special damages" and "general damages" in his complaint, Am. Compl. p. 58, but

he can prove entitlement to neither.

### A.  Blankenship cannot prove entitlement to any special damages.

Blankenship cannot prove he should be awarded any special damages, *i.e.*, "actual

monetary loss*." *Rohrbaugh v. Wal-Mart Stores, Inc.*, 572 S.E.2d 881, 888 n.18 (W. Va. 2002).

All of his theories are purely speculative.

*First*, Blankenship cannot recover any damages for his election loss.  "[F]ederal courts

are not available for awards of damages to defeated candidates."  *Hutchinson v. Miller*, 797 F.2d

1279, 1287 (4th Cir. 1986).[13]  These damages are "just too speculative and conjectural"

considering the "thousand factors which enter into the vagaries of an election."  *Sw. Publ'g Co.

v. Horsey*, 230 F.2d 319, 322 (9th Cir. 1956).  This case is a paradigmatic example of that

problem.  Blankenship admits that he cannot identify any "individual who did not vote for him"

because of what the FNN speakers said.  Ex. 22 (Pl. Suppl. Resp. to FNN Interrog.) at Resp. No.

8.  And though his complaint alleged that the mistaken references were a "material cause" of his

losing the primary election (by fifteen points, Ex. 2 (Pl. Dep. Vol. 2) 67:13–20), the evidence

---

[13] *See also id.* at 1288–89 (holding that "compensation is fundamentally inappropriate"
and "unavailable as a form of post-election relief"); *Soules v. Kauaians for Nukolii Campaign
Comm.,* 849 F.2d 1176, 1182 (9th Cir. 1988) ("[T]he Fourth Circuit adopted a blanket rule
precluding post-election damage actions brought by defeated candidates.").

shows he believed he lost because then-President Trump supported his opponents. Ex. 23 (Blankenship email).

*Second*, Blankenship cannot prove causation of any lost income. He asserts that, but for the challenged statements, he would be working as either a "CEO in the mining/construction industry" or a "strategic consultant," with other ventures on the side. Ex. 44 (Smith Report) at 4.[14] But he has presented no evidence that these opportunities were actually available to him prior to the challenged statements. "'[I]ndeterminate expert testimony on causation that is based solely on possibility . . . is not sufficient to allow a reasonable juror to find causation.'" *Meade v. Parsley*, No. 2:09-CV-00388, 2010 WL 4909435, at *7 (S.D.W. Va. Nov. 24, 2010) (Copenhaver, J.). Such "raw speculation" is insufficient to survive summary judgment. *Sakaria v. Trans World Airlines*, 8 F.3d 164, 172–73 (4th Cir. 1993).

Indeed, Blankenship admits that these opportunities were lost for *other* reasons. Unsurprisingly, he has "been told on more than one occasion" that opportunities would be available "were it not for the *explosion and conviction*." Ex. 45 (Blankenship email) (emphasis added). He even admitted that this loss is "*not directly tied to the slander*" alleged in this case. *Id.* That is why the only "offers" or "inquiries" Blankenship received were "pre-explosion." Ex. 46 (Blankenship email). And it is also why he did not pursue employment *in the eight years between the explosion and the challenged statements in 2018. See* Ex. 1 (Pl. Dep. Vol. 1) 155:5–56:21. *See also id.* ("The reporting on the tragedy had a lot of impact.").

*Third*, damages Blankenship supposedly incurred to build his reputation are clearly not compensable. On the penultimate day of discovery, Blankenship produced receipts of expenses

---

[14] FNN will be filing a *Daubert* motion with respect to Plaintiff's expert.

he incurred in the early 2000s, including charitable contributions, political causes, his criminal habeas petition, and a scholarship fund in his mother's name. *See* Ex. 2 (Pl. Dep. Vol. 2) at 190:10–203:13. Even assuming these efforts were intended to improve his reputation, there is no way to know whether they actually did, or how much. Nor is there evidence that any such hypothetical improvement was negated by the remarks, not the UBB explosion or his year in prison. On either point, Blankenship offers only "raw speculation." *Sakaria*, 8 F.3d at 172.

## B. Blankenship cannot prove entitlement to general damages.

Blankenship cannot prove entitlement to "general damages" either. These are available only for defamation per se, and only when damages are the "natural and probable consequence" of the challenged statement. *Milan v. Long*, 88 S.E. 618, 619 (W. Va. 1916). Blankenship cannot satisfy either requirement.

*First*, general damages require defamation per se, and the words here do not qualify. *Distinguished Execs. Transp., LLC v. Cracker Barrel Old Country Store, Inc.*, No. 2:16-CV-08503, 2018 WL 2171443, at *10 (S.D.W. Va. May 10, 2018) (Copenhaver, J.). Defamation per se comprises "a limited set of slanderous communications that are regarded as so severe that proof of special damages is not required." *Id.* And here, the challenged words fall well outside of this "limited set." While defamation per se includes imputation of a crime, that category encompasses only such statements involving plaintiffs who are innocent of any crime. *See, e.g., id.* (plaintiff not guilty of any crime); *Colcord v. Gazette Pub. Co.*, 145 S.E. 751, 752 (W. Va. 1928) (plaintiff was "in no way or manner connected with [the] crime"). Blankenship was undisputedly convicted of a crime, and the challenged words merely changed the legal label.

*Second*, general damages cannot be awarded because the challenged words were false only by "degree." *Richard H. v. Rachel B.*, No. 18-1004, 2019 WL 6998331 (W. Va. Dec. 20,

2019).[15]  In *Richard H.*, for example, the defendant said the plaintiff had been convicted of five felonies when in fact he had been convicted of only three.  *Id.* at *1.  Because the falsity was "only a matter of degree," there was "no factual basis on which to . . . presume general damages as the natural and probable consequences of respondent's false statements."  *Id.* at *3.

So too here.  Blankenship is undisputedly a criminal who served time in prison—mislabeling his crime was false only by "degree."  *Id.* at *3.  Indeed, the gap was even wider in *Richard H.*, where the statement imputed two additional crimes, including murder.  *Id.* at *1.  When the plaintiff is already a serious criminal, even statements imputing violence—like murder or "manslaughter"—cannot justify general damages.  Rather, the plaintiff must prove actual damages, which Blankenship has failed to do.[16]

## V.    Blankenship cannot prove punitive damages or an invasion of privacy.

Blankenship's claims for punitive damages and invasion of privacy cannot survive without his defamation claim.  *See* W. Va. Code Ann. § 55-7-29 (requiring "compensatory damages" award); *Crump*, 320 S.E.2d at 87–88 (holding that "courts and commentators have consistently treated false light privacy claims in essentially the same manner as they have treated defamation," including the requirements of actual malice and material falsity).  But even if Blankenship's defamation claim survives, these other claims still fail for independent reasons.

### A.  Blankenship cannot prove entitlement to punitive damages.

In West Virginia, punitive damages requires proof of causation by "clear and convincing evidence."  W. Va. Code Ann. § 55-7-29 (requiring plaintiff "*establish[] by clear and convincing evidence that the damages suffered were the result of the conduct that was carried out by the*

---

[15] That *Richard H.* is "not reported" does not "preclude[] a federal court from using it to predict state law."  *C.F. Tr., Inc. v. First Flight Ltd. P'ship*, 306 F.3d 126, 136 (4th Cir. 2002).

[16] West Virginia law also provides "nominal damages," but Blankenship did not request them in his complaint.  Am. Compl. p. 58.

*defendant* with actual malice toward the plaintiff"). Blankenship cannot prove causation by a preponderance, *see* Section IV, *supra*, let alone by "clear and convincing evidence."

### B. Blankenship cannot prove his tag-along privacy claim.

False-light invasion of privacy requires the defendant to "*give[] publicity* to a matter concerning another that places the other before the public in a false light." *Taylor v. W. Vir. Dept. of Health & Human Res.*, 788 S.E.2d 295, 315 (W. Va. 2016) (quoting Restatement (Second) of Torts § 652E (1977) (emphasis in original)). But it is axiomatic that a defendant cannot "give[] publicity" to a fact that is "already widely publicized." *Giles*, 2018 WL 300605 at *5 (holding that the defendant did not "g[ive] publicity" to facts that were "already widely publicized" and had been "fodder for the local news media six days before the challenged statements were made"). *See also Taylor*, 788 S.E.2d at 316 (holding that the defendant did not "give[] publicity" to a search warrant that "was already a matter of public record"). Here, Blankenship's conviction was "already widely publicized" long before the challenged statements. *See* Ex. 2 (Pl. Dep. Vol. 2) 103:12–22 (discussing 2015 reporting on conviction).[17]

### <u>CONCLUSION</u>

For the foregoing reasons, FNN's motion for summary judgment should be granted.

---

[17] Relatedly, West Virginia may also impose a "private fact" requirement, although this is an area of confusion in the law. Many courts, citing *Benson v. AJR, Inc.*, 599 S.E.2d 747 (W. Va. 2004), have concluded that West Virginia does impose such a requirement. *See, e.g., Curran v. Amazon.com, Inc.*, No. CIV.A. 2:07-0354, 2008 WL 472433, at *8 (S.D.W. Va. Feb. 19, 2008) (Copenhaver, J.) ("The elements of a false light claim consist of . . . (1) the false (2) publication (3) *of private facts* . . . .") (citing *Benson*). The West Virginia Supreme Court recently declined to resolve this conflict, relying instead on the related requirement that the defendant "give[] publicity" to the fact at issue. *Giles*, 2018 WL 300605 at *5.

Respectfully submitted,

/s/ J. Zak Ritchie
J. Zak Ritchie (WVSB #11705)
Ryan McCune Donovan (WVSB #11660)
HISSAM FORMAN DONOVAN RITCHIE PLLC
P.O. Box 3983
Charleston, WV 25339
681-265-3802 *office*
304-982-8056 *fax*
zritchie@hfdrlaw.com
rdonovan@hfdrlaw.com

Elbert Lin (WVSB #12171)
David Parker (*pro hac vice*)
HUNTON ANDREWS KURTH LLP
951 E. Byrd Street
Richmond, VA 23219
804-788-8200 *office*
804-788-8218 *fax*
elin@HuntonAK.com
dparker@HuntonAK.com

Shawn Patrick Regan (*pro hac vice*)
Silvia Ostrower (*pro hac vice*)
HUNTON ANDREWS KURTH LLP
200 Park Avenue
New York, NY 10166
212-309-1000 *office*
212-309-1100 *fax*
sregan@HuntonAK.com
sostrower@HuntonAK.com

*Counsel for Fox News Network LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 24th day of May 2021, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system, which will send a notification of such

filing to all CM/ECF participants and will cause to send to other parties by U.S. Mail as follows:

Jim Heath
2716 Saratoga Avenue
Lake Havasu City, AZ 86406


_____*/s/ Zak Ritchie*_____ _____
Zak Ritchie

121636.0000001 EMF_US 85012839v55

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

DON BLANKENSHIP,

     Plaintiff,

v.                                     Civil Action No. 2:19-cv-00236

FOX NEWS NETWORK, LLC, et al.,

     Defendants.

---

**CORRECTIVE AMENDED MEMORANDUM OF LAW
IN SUPPORT OF PLAINTIFF DON BLANKENSHIP'S OPPOSITION
TO DEFENDANT FOX NEWS NETWORK LLC'S
MOTION FOR SUMMARY JUDGMENT**

---

SIMPKINS LAW OFFICE LLC
Jeffrey S. Simpkins ESQ
WVSB #9806
102 E 2nd AVE
Williamson WV 25661
304.235.2735
simpkinslawoffice@gmail.com
304.235.2735

EARLY SULLIVAN WRIGHT
GIZER & McRAE LLP
Jeremy Gray ESQ
CASB #1500750
6420 Wilshire BLVD 17th FL
Los Angeles CA 90048
jgray@earlysullivan.com
323.301.4660

**PRELIMINARY STATEMENT**

In his farewell address, President George Washington clairvoyantly forewarned America about the self-serving comportment of political parties and the negative impact opposing factions could have on our nation:

> They serve to organize faction, to give it an artificial and extraordinary force; to put, in the place of the designated will of the nation, the will of a party, ... However combination and associations of the above description may now and then answer popular ends, they are likely, in the course of time and things, to become potent engines, by which cunning, ambitious, and unprincipled men will be enabled to subvert the power of the people and to usurp for themselves the reins of government, destroying afterwards the very engines which have lifted them to unjust dominion.[1]

The United States political system is a duopoly controlled by the Republican Party and Democratic Party. The two-party duopoly prioritizes political power and self-preservation over the public interest. The primary election process has evolved into a fraternity/sorority rush in which the party leadership determines who will join them in the metaphorical country club on Capitol Hill. Insurgent, non-establishment candidates such as Don Blankenship need not apply.

The emergence of partisan cable news networks has prompted a transformational shift in the news media landscape. News media outlets no longer strive to be regarded as centrist. Today, they overtly identify as being either liberal (Democrat) or conservative (Republican). The choice[2] and perceived credibility[3] of a

---

[1] https://www.ourdocuments.gov/doc.php?flash=false&doc=15&page=transcript.
[2] 60% of Republicans (and independents who lean Republican) get political and election news from Fox News Channel. *See* https://www.journalism.org/2020/01/24/americans-are-divided-by-party-in-the-sources-they-turn-to-for-political-news/.
[3] 70% of Republicans believe that Fox News Channel is a credible news source.

1

particular news source is significantly influenced by the partisan sentiment of the viewer.

The rising politico-media complex is a clear and present danger to our democracy as the government and press become increasingly entangled. The historic function of the press was to report the news. Today, the press manipulates the news to fit a political narrative. In essence, the institutional press has degenerated into a purveyor of political propaganda. Consequently, the distinction between factual reporting and editorializing is often blurred, if not imperceptible.

A symbiotic relationship between partisan cable news networks and the major political parties is inevitable. Partisan cable news networks rely upon party officials and operatives for information and content. In turn, the political parties depend on partisan cable news networks to propagate their agendas. The press is no longer a proverbial "watchdog" of the government. To the contrary, the press is now an implement of the government.

The most compelling exemplar of the politico-media complex is the deep interconnection between Fox[4] and the Republican Party. Rupert Murdock[5] and Sean Hannity[6] enjoyed extraordinary access to President Donald Trump during Trump's presidency.[7] In fact, Murdoch and Hannity were among "a few dozen friends and family members outside the administration" cleared to reach Trump's White House

---

[4] The term "Fox" is used interchangeably to refer to Defendant Fox Corporation, Fox News Network LLC, Fox News Channel, and Fox Business Network.
[5] Murdoch is the Chairman of Fox Corporation.
*See* https://www.foxcorporation.com/management/executive-team/rupert-murdoch-2/.
[6] Hannity is the host of *Hannity*. *See* https://www.foxnews.com/person/h/sean-hannity.
[7] https://www.newyorker.com/magazine/2019/03/11/the-making-of-the-fox-news-white-house.

phone through the switchboard operator.[8] Trump considered Murdoch to be "one of his closest confidants."[9] Hannity was "Trump's most influential counselor and figuratively had a presence in the White House."[10] Trump's former deputy campaign chairman, Rick Gates, told FBI investigators that Hannity tailored the content of his show to the suggestions of Trump's former campaign chairman, Paul Manafort.[11]

Fox has also maintained a close association with Senator Mitch McConnell. Rupert Murdoch ($1,000,015.00)[12] and Lachlan Murdoch[13] ($1,031,200.00)[14] have recently given lucrative campaign contributions to political action committees aligned with McConnell. Fox political contributor Karl Rove is the mastermind behind the 501(c)(4) "dark money" group One Nation ran by Steven Law, a former chief of staff to McConnell.[15] One Nation shares office space and employees with the Senate Leadership Fund, a super PAC aligned with McConnell.[16] In 2018, the Senate Leadership Fund reported contributions from One Nation totaling $12.8 million.[17]

---

[8] https://nymag.com/intelligencer/2018/05/sean-hannity-donald-trump-late-night-calls.html.
[9] https://www.nytimes.com/2017/12/23/business/media/murdoch-trump-relationship.html.
[10] https://www.newsweek.com/sean-hannity-white-house-desk-counselor-donald-trump-1457917.
[11] https://lawandcrime.com/high-profile/mueller-witness-sean-hannity-tailored-his-shows-to-fit-manaforts-agenda-during-2016-campaign/.
[12] https://www.fec.gov/data/receipts/individual-contributions/?contributor_name=k.r.+murdoch&two_year_transaction_period=2020&min_date=01%2F01%2F2018&max_date=12%2F31%2F2020.
[13] Lachlan Murdoch is Executive Chairman and Chief Executive Officer of Fox Corporation. *See* https://www.foxcorporation.com/management/executive-team/lachlan-murdoch/.
[14] https://www.fec.gov/data/receipts/individual-contributions/?contributor_name=Lachlan+Murdoch&two_year_transaction_period=2020&min_date=01%2F01%2F2018&max_date=12%2F31%2F2020.
[15] https://www.opensecrets.org/news/2018/11/karl-rove-crossroads-gps-is-dead-long-live-dark-money-operation/.
[16] *Id.*
[17] *Id.*

3

Former Speaker of the House of Representatives Paul Ryan serves as a Fox board member with an annual salary of $335,000.[18] Ryan was also the Republican Party's 2012 vice presidential nominee.[19]

Fox is the de facto mouthpiece of the Republican Party.[20] For example, Republican Senator Chuck Grassley blamed Fox for "failing to articulate" the Trump administration's second-term priorities.[21] Newsworthiness at Fox is determined by the "immediate political agenda."[22] Fox has a history of offering commentary positions to prominent Republicans and recruiting Republican candidates.[23]

Blankenship entered the rough-and-tumble arena of American politics to run for West Virginia's hotly contested United States Senate seat in the 2018 West Virginia Republican primary. On the campaign trail, Blankenship defied conventional wisdom by candidly proclaiming that "the government blew up the mine" and his prosecution was "politically motivated." Blankenship's populace message, sincerity, authenticity resonated with voters. Despite being robustly opposed by McConnell and the Republican Party machine, Blankenship was poised to overcome the odds and win the primary.[24]

---

[18] *See* https://www.directorsandboards.com/news/former-speaker-paul-ryan-joins-fox-corp-board.
[19] *Id.*
[20] *See* https://www.vox.com/2019/3/22/18275835/fox-news-trump-propaganda-tom-rosenstiel; *See also* https://www.newyorker.com/magazine/2019/03/11/the-making-of-the-fox-news-white-house.
[21] *See* https://www.politico.com/news/2020/06/27/chuck-grassley-fox-news-trump-second-term-342088.
[22] *See* https://www.crikey.com.au/2021/01/12/fox-news-made-trump/.
[23] *Id.*
[24] *See* https://thehill.com/homenews/campaign/386498-polls-show-blankenship-ahead-sparking-panic-among-gop; *See also* https://www.politico.com/story/2018/05/05/blankenship-polls-west-virginia-senate-primary-570752; https://politicalwire.com/2018/05/06/internal-poll-shows-blankenship-ahead-in-west-virginia/.

4

However, Fox intervened with an assault of weaponized defamation to derail Blankenship's campaign on the eve of the primary. Despite having a high degree of awareness of their probable falsity, Fox endorsed the calculated falsehoods that Blankenship "went to jail for manslaughter" and was convicted of a felony. The defamatory publications advanced the Fox narrative and Republican Party message that Blankenship was unfit to be the GOP nominee and had no chance of beating incumbent Democrat Senator Joe Manchin in the general election. Fox's "immediate political agenda" was prioritized over professional journalism standards.

There are multifarious genuine disputes of material fact:

- Whether the defamatory statements were published by Fox with reckless disregard for the truth;

- Whether Fox purposely avoided the truth concerning Blankenship's misdemeanor conviction;

- Whether the defamatory statements were published by Fox with a high degree of awareness of their probable falsity;

- Whether inaction and omissions of Fox constituted an extreme departure from professional publication standards;

- Whether the defamatory statements were materially false;

- Whether Blankenship sustained injury from the defamatory publications;

- Whether the defamatory publications placed Blankenship in a false light; and

- Whether Blankenship is entitled to punitive damages.

## CHRONOLOGY OF FACTS

On 23 January 2018, Blankenship filed to run in the 2018 West Virginia

5

Republican United States Senate primary election. Ex. 1.

On 17 February 2018, *The New York Times* reported that Senator Mitch McConnell did not want to Blankenship to win the primary election.[25] Ex. 2 (Isenstadt Dep. Tr.) at 57:8-58:9.

On 29 March 2018, a Statement of Organization was filed with the Federal Election Commission (FEC) to register the Mountain Families PAC. Ex. 3. The Senate Leadership Fund, a super PAC aligned with McConnell, funded the Mountain Families PAC. Ex. 2 at 58:18-59:4, 103:7-10, 103:11-15; Ex. 4. FEC documents substantiate that the Mountain Families PAC expended $1,328,755.73 for the production and placement of a barrage of false attack ads targeting Blankenship. Ex. 5; Ex. 2 at 58:18- 59:4, 59:14-17, 69:22-70:3, 103:4-5. The PAC was terminated after the primary election having been formed the sole purpose of opposing Blankenship's candidacy. Ex. 6.

On 25 April 2018, Doocy appeared on a Fox telecast of *Your World with Neil Cavuto*. Ex. 7 (Cavuto Dep. Tr.) at 76:24-77:1, 78:7-12. During a discussion with host Neil Cavuto, Doocy described Blankenship as a "former coal baron who recently served a year in jail on a misdemeanor conviction …" Ex. 7 at 78:3-6, 79:23-25 (in relevant part).

On 25 April 2018, Fox senior judicial analyst Judge Andrew Napolitano (ret.) commented that Blankenship "went to jail for manslaughter after people died in a mine accident" during a Fox telecast of *Outnumbered.* Ex. 8 (Napolitano Dep. Tr.) at

---

[25] *See* https://www.nytimes.com/2018/02/17/us/politics/mitch-mcconnell-midterms.html.

21:3-21, 36:3-5, 45:1-11; ECF No. 398 at 41.

On 25 April 2018 at 7:40 PM, Fox politics editor Chris Stirewalt informed Napolitano in an email: "Blankenship's campaign reached out to me [Stirewalt] … and wanted you [Napolitano] to know that he [Blankenship] was not convicted of manslaughter …" *Id.* at 86:17-22 (in relevant part).

On 26 April 2018 at 6:43 AM, Napolitano responded: "I understand now that yesterday I mistakenly misstated [sic] the nature of Mr. Blankenship's lamentable conviction and failed to mention his acquittals. I will be happy to address this thoroughly and accurately on air on Monday." *Id.* at 90:15-23.

On 30 April 2018 at 9:12 AM, *The Story with Martha MacCallum* senior booking producer Karrah Levine messaged Napolitano's producer, Gary Villapiano: "Good morning, Gary. Touching base for tonight and confirming Monday 7th. Full disclosure on tonight -- we have to cover the candidates for Martha's [MacCallum] West Virginia debate tomorrow and it's eating up a lot of air time [sic] so heads up if we can't get him in that's one of the reasons. But should know by 3p ok? Have pitches? …" Ex. 9 (Levine Dep. Tr.) 10:5-7 (in relevant part).

On 30 April 2018 at 9:38 AM, Napolitano directed Villapiano to "[t]ell them [Fox producers] I will also explain the complex legal issues around Don Blankenship, one of the West Virginia senatorial candidates, who was unjustly prosecuted by the Obama DOJ over a coal mine disaster and served time in a federal prison." Ex. 8 at 102:7-103:1.

On 30 April 2018 at 9:47 AM, Villapiano responded to Levine: "The Judge

7

would love to explain the complex legal issues around Don Blankenship, one of the West Virginia senatorial candidates, who was unjustly prosecuted by the Obama DOJ over a coal mine disaster and served time in a federal prison." *Id.* at 115:5-10 (in relevant part). Levine rejected Napolitano's pitch to explain Blankenship's complex legal issues and unjust prosecution, notwithstanding the obvious relevance and timeliness of the topic. *Id.* at 111:19-112:3.

On 30 April 2018 at 10:34 AM, Villapiano made the same pitch to Fox senior producer Michael Robinson without success. *Id.* at 122:21-124:12, 124:23-125:1.

On 30 April 2018 at 2:44 PM, Villapiano requested a "favor" from *Fox & Friends* executive producer Gavin Hadden: "The Judge asks if he could correct the record on WV senate candidate Don Blankenship's legal record. He was unfairly prosecuted. He was properly acquitted of his charges. He never should have gone to jail. The Judge could either do it as a segment or just a throwaway at the end of a segment." *Id.* at 127:23-128:23, 166:25-167:1.

On 30 April 2018 at 4:43 PM, Hadden became the third Fox producer to refuse Napolitano's appeal for airtime to set the record straight about Blankenship's misdemeanor conviction. *Id.* at 167:23-168:8.

On 30 April 2018 at 8:45 PM, Villapiano urged Hadden to "throw him [Napolitano] a bone about Blankenship" to no avail. *Id.* at 168:22-169:12.

On 01 May 2018, Fox telecast a debate between Blankenship and the other

8

candidates anchored by Martha MacCallum[26] and Bret Baier.[27] During the debate Blankenship resolved any uncertainty about his conviction:

> I faced 30 years in prison for a fake charge and I beat all three felonies ... It's incredible. They sent me to prison for a misdemeanor. I was the only prisoner there that was a misdemeanor. It was clear from the beginning to the end that it was a fake prosecution.[28]

Blankenship had a "very good" debate and subsequently surged ahead in the polls. Ex. 7 at 68:8-21, 72:15-17; Ex. 10 (Blankenship Dep. Tr. Apr. 29, 2021) at 263:16-18; Ex. 11 (Blankenship Dep. Tr. Apr. 30, 2021) at 33:16-22, 33:23-34:5; Ex. 12 (Stirewalt Dep. Tr.) at 166:13-25.

On 02 May 2018, an information packet summarizing the 2018 West Virginia Republican United States Senate primary election was emailed to Cavuto. Ex. 7 at 80:9-81:22. Blankenship was described in the information packet as "a former coal company CEO" seeking "vindication for his 2015 conviction on a misdemeanor charge ..." *Id.* at 90:3-8. Cavuto has acknowledged that it is "standard procedure" for Cavuto to receive information packets. *Id.* at 84:2-13. Cavuto further acknowledged that he had "no doubt" that he would have reviewed the packet which referenced Blankenship's misdemeanor conviction. *Id.* at 88:18-89:6.

On 03 May 2018 at 10:41 PM, MacCallum received an email from a McConnell staffer with an attachment of a story published in *The New York Times* that

---

[26] MacCallum is the anchor and executive editor of *The Story with Martha MacCallum. See* https://www.foxnews.com/person/m/martha-maccallum.
[27] Baier is Fox's chief political anchor and executive editor of *Special Report with Bret Baier. See* https://www.foxnews.com/person/b/bret-baier.
[28] *See* https://www.youtube.com/watch?v=X8xu547cxGo.

9

referenced Blankenship questioning whether McConnell "faced a conflict of interest in foreign relations" due to family ties.[29] Ex. 13.

On 04 May 2018 at 2:49 AM, MacCallum advised that she had read the attached article and replied: "There are so many issues with DB, never enough time to hit them all." *Id.*

On 04 May 2018 at 2:51 AM, McConnell's staffer stated: "Between us my boss [McConnell] is pretty ticked." ECF No. 855-1, Ex. 14.

On 04 May 2018 at 3:06 AM, MacCallum sympathized: "I don't blame him [McConnell] at all. It's all about him [Blankenship], he [Blankenship] thinks he's more of a victim than the miners." Ex. 15.

On 04 May 2018 at 10:47 AM, MacCallum appreciatively told McConnell's staffer: "I'm reporting this 4 pinnochios tonight - thank you."[30] Ex. 16.

On 04 May 2018, Rove[31] and Tammy Bruce[32] ruthlessly disparaged Blankenship during a Fox telecast of *The Story with Martha MacCallum.*[33]

On 04 May 2018 at 8:35 PM, MacCallum received an email from Kaplan summarizing Bruce's talking points: "Blankenship is an embarrassment, but the silver lining here is that generally everyone is admitting it." "The good news is, Blankenship will be rejected ..." Ex. 17 (in relevant part).

---

[29] *See* https://www.nytimes.com/2018/04/25/us/politics/don-blankenship-china-west-virginia.html.
[30] "Four Pinnochios" refers to an article published in *The Washington Post.*
*See* https://www.washingtonpost.com/news/fact-checker/wp/2018/05/04/the-kooky-tale-of-cocaine-mitch/.
[31] Rove is a Fox News political contributor. *See* https://www.foxnews.com/person/r/karl-rove.
[32] Bruce is a Fox News political contributor. *See* https://www.foxnews.com/person/b/tammy-bruce.
[33] *See* https://grabien.com/file.php?id=381587&from=usermedia.

10

On 05 May 2018, McConnell messaged Rove by email: "Thanks so much for your comments on Martha's show last night. Elaine and I are both grateful. Mitch." Ex. 18 (Rove Depo. Tr.) at 103:10-13. Rove replied back: "Happy to help. Wait a sick, twisted moron." *Id.* at 106:18-107:2.

On 07 May 2018, Cavuto referred to Blankenship as a "convicted felon" during a Fox telecast of *Cavuto: Coast to Coast.* Ex. 7 at 98:1-7; ECF No. 398 at 41. Cavuto admitted that he was "incorrect" and "wrong" when describing Blankenship as a "convicted felon." Ex. 7 at 104:8-13.

On 07 May 2018, guest host John Layfield portrayed Blankenship as "a felon who's got a probation officer, who could end up in Congress." during a Fox telecast of *The Evening Edit.* ECF No. 398 at 42.

On 07 May 2018, Fox political contributor Bradley Blakeman described Blankenship as a "felon" during the same telecast of *The Evening Edit.* ECF No. 398 at 42.

On 08 May 2018, panelist Stephanie Hamill depicted Blankenship as a "convicted felon" during a Fox telecast of *Making Money.* ECF No. 398 at 42.

On 09 May 2018, host Elizabeth MacDonald referred to Blankenship as a "felon" during a Fox telecast of *The Evening Edit.* ECF No. 398 at 42.

On 22 May 2018 (fourteen days after the primary election), Napolitano was finally granted airtime on a Fox telecast of *Your World with Neal Cavuto* to explain that Blankenship was only convicted of a misdemeanor and was acquitted of the felony charges. Ex. 8 at 187:13-25. Still, Napolitano inexplicably failed to "correct the

11

record" concerning his erroneous "manslaughter" statement. Instead, Napolitano stated: "I once inadvertently said on air that [Blankenship] was a convicted felon." *Id.* at 187:14-16. Napolitano never directly identified Blankenship as a "convicted felon" although the "He went to jail for manslaughter after people died in a mine accident" comment was exceedingly more offensive and inferred that Blankenship was convicted of a felony.

## STANDARD OF REVIEW

"The function of summary judgment is 'to pierce the boilerplate of the pleadings and assay the parties' proof to determine whether a trial is actually required." *Powderridge Unit Owners Ass'n v. Highland Props., Ltd.,* 474 S.E.2d 872, 877 (W. Va. 1996)(quoting *Hanlon v. Chambers,* 464 S.E.2d 741, 748 (W. Va. 1995)). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Moreover, "[s]ummary judgment is available only in those cases where it is not only perfectly clear that there exists no dispute as to the facts, but also where there is no dispute as to any conclusions or inference which may reasonably be drawn therefrom." *Pauley v. Combustion Engineering, Inc.,* 528 F. Supp. 759, 765 (S.D.W. Va. 1981). In sum, "[i]t is well settled that summary judgment should not be granted unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances." *Prince v. Pittston Co.,* 63 F.R.D. 28, 32 (S.D.W. Va. 1974).

12

At the summary judgment stage, a trial judge's function is to determine "whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party." *Matherly v. Andrews*, 859 F.3d 264, 279 (4th Cir. 2017). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge … ruling on a motion for summary judgment." *Liberty Lobby,* 477 U.S. at 255. "[W]here affidavits present conflicting versions of the facts which require credibility determinations, summary judgment cannot lie." *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016).

The evidence must be viewed "in the light most favorable to the party opposing the motion [for summary judgment] and give to that party the benefit of all favorable inferences that may reasonably be drawn from the evidence." *First Nat'l Bank of West Hamlin v. Maryland Cas. Co.,* 354 F. Supp. 189, 192 (S.D.W. Va. 1973). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading but must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 256. "The mere scintilla of evidence" in favor of the nonmovant party is insufficient to withstand summary judgment. *Id.* at 252.

The "clear and convincing" evidentiary standard applies to the summary judgment inquiry in constitutional defamation cases. *Id.* at 255.

13

## ARGUMENT

### I.    Fox published the defamatory statements in reckless disregard of the truth.

Defamation is "[a] false written or oral statement that damages another's reputation." *Pritt v. Republican Nat. Comm.,* 557 S.E.2d 853, 861 n.12 (W. Va. 2001). A statement is defamatory if it tends to "reflect shame, contumely, and disgrace" upon the subject of the statement.  Syl. Pt. 1, *Sprouse v. Clay Commc'n, Inc.,* 211 S.E.2d 674, 679 (W. Va. 1975).

A candidate for public office must prove the following elements recover damages in a defamation action:

> (1) there was the publication of a defamatory statement of fact or a statement in the form of an opinion that implied the allegation of undisclosed defamatory facts as the basis for the opinion; (2) the stated or implied facts were false; and (3) the person who uttered the defamatory statement either knew the statement was false or knew that he was publishing the statement in reckless disregard of whether the statement was false.

Syl. Pt. 1, *Hinerman v. Daily Gazette Co.,* 423 S.E.2d 560, 563 (W. Va. 1992). "Thus, to sustain a cause of action for defamation, a [candidate for public office], after establishing the existence of a an allegedly defamatory statement, must prove that the statement was (1) false and (2) published with actual malice[.]" *Chafin v. Gibson,* 576 S.E.2d 361, 366 (W. Va. 2003).

As a candidate for public office with "prominence or notoriety" and a history of "commenting upon public matters" and engaging in political advocacy, Blankenship qualifies as an "public figure" in this case. *See State ex rel. Suriano v. Gaughan,* 480 S.E.2d 548 (1996). A public figure must prove by clear and convincing

14

evidence that the defamatory statements were published with actual malice. *See New York Times Co. v. Sullivan,* 376 U.S. 254, 375-76 (1964); *See also Long v. Egnor,* 346 S.E.2d 778, 783 (W. Va. 1986). The actual malice standard "requires at a minimum that a defamatory statement is published with reckless disregard for the truth." *Harte-Hanks Commc'ns, Inc. v. Connaughton,* 491 U.S. 657, 667 (1989).

Proving that a defamatory statement was published with reckless disregard for the truth requires "sufficient evidence to permit the conclusion that the defendant actually had a 'high degree of awareness of … probable falsity.'" *Id.* 491 U.S. at 688 (citing *Garrison v. Louisiana,* 379 U.S. 64, 74 (1964). However, "reckless disregard" is a concept that "cannot be fully encompassed in one infallible definition. Inevitably, its outer limits will be marked out through case-by-case adjudication …" *St. Amant v. Thompson,* 390 U.S. 727, 730 (1968).

"[A] plaintiff is entitled to prove the defendant's state of mind through circumstantial evidence." *Id.* at 668 (citing *Herbert v. Lando,* 441 U.S. 153, 160 (1979)); *See also Sprouse,* 211 S.E.2d at 689-90 (actual malice can be established by cumulative evidence). For example, an "extreme departure from professional publishing standards" may support a conclusion of reckless disregard of the truth. *Id.* at 667-68, 693; *See also Sprouse,* 211 S.E.2d at 687 (a departure from objectively reporting the news can be considered in determining whether there was a willful disregard of the truth.). Partisanship and other motives may also be considered in the determination of "whether a subjective realization that the statement was false or a subjective realization that the statement was being published recklessly existed at the time the

15

statement was published." *See Hinerman,* 423 S.E.2d at 573

       Determining actual malice is a question of *scienter* that "does not readily lend itself to summary disposition" because the determination requires a "subjective evaluation" of the defendant's state of mind. *See Hutchinson v. Proxmire,* 443 U.S. 111, 120, n. 9 (1979)(recognizing that actual malice "does not readily lend itself to summary disposition" since it "calls a defendant's state of mind into question."); *Nat'l Life Ins. Co. v. Phillips Publ'g., Inc.,* 793 F.Supp. 627, 632 (D.MD. 1992)("Under Rule 56, where possibly subjective evaluations are at issue, as here where a determination of whether defendants acted with actual malice is at issue, the Fourth Circuit has cautioned against a court taking those determinations away from a jury"). Consequently, "[w]here state of mind is at issue, summary disposition should be sparingly used." *See Denny v. Seaboard Lacquer, Inc.,* 487 F.2d 485, 491 (4th Cir. 1973); *See also Fitzgerald v. Penthouse Int'l, Ltd.,* 691 F.2d. 666, 670-671 (4th Cir. 1982)(denying summary judgment because "plaintiff can meet his burden of proving that the defendants had actual doubts about the accuracy of the information they published and that their failure to make an adequate investigation will reveal a reckless disregard for the truth.").

       Defendant Fox published six defamatory statements concerning Blankenship:

- On 25 April 2018, Napolitano inexplicably commented that Blankenship "went to jail for manslaughter after people died in a mine accident" during a Fox telecast of *Outnumbered.* Ex. 8 at 36:3-5, 45:1-11; ECF No. 398 at 41.

- On 07 May 2018, Cavuto falsely identified Blankenship as a "convicted felon" during a Fox telecast of *Cavuto: Coast to Coast.* Ex. 7 at 98:1-7; ECF No. 398 at 41.

16

- On 07 May 2018, Layfield incorrectly portrayed Blankenship as "a felon who's got a probation officer, who could end up in Congress." during a Fox telecast of *The Evening Edit*. ECF No. 398 at 42.

- On 07 May 2018, Blakeman erroneously described Blankenship as a "felon" during the same Fox telecast of *The Evening Edit*. ECF No. 398 at 42.

- On 08 May 2018, Hamill wrongly depicted Blankenship as a "convicted felon" during a Fox telecast of *Making Money*. ECF No. 398 at 42.

- On 09 May 2018, MacDonald inaccurately referred to Blankenship as a "felon" during a Fox telecast of *The Evening Edit*. ECF No. 398 at 42.

In addition, MacCallum orchestrated a nationally televised character assassination of Blankenship on *The Story with Martha MacCallum* less than a day after McConnell's staffer informed MacCallum that McConnell was "pretty ticked" at Blankenship. Rove callously called Blankenship a "bigot," "moron," and "crook" while Bruce dubbed Blankenship as an "embarrassment" and remarked: "The good news is, Blankenship will be rejected ..."[34] Although there technically may have been no defamatory statements[35] during MacCallum's beatdown of Blankenship, it served as a foundation for the false narrative that Fox would persistently endorse on the eve of the primary election.

---

[34] *See* https://grabien.com/file.php?id=381587&from=usermedia.
[35] It could be plausibly argued made that Rove defamed Plaintiff Blankenship with innuendo that Plaintiff Blankenship was responsible for the deaths of the 29 miners during the UBB explosion, as well as referring to Plaintiff Blankenship as a "crook."

17

A.    Fox purposely avoided the truth concerning Blankenship's misdemeanor conviction.

Fox producers rejected Napolitano's "numerous attempts" through producer, Gary Villapiano, to "correct the record" and explain Blankenship's misdemeanor conviction, felony acquittals, unjust prosecution, and wrongful incarceration during a Fox telecast. Ex. 8 at 131:6-7. In addition, Fox producers and Cavuto disregarded Doocy's accurate report of Blankenship's misdemeanor conviction on *Your World with Neil Cavuto*. Cavuto also brushed aside the accurate information in the primary packet concerning Blankenship's misdemeanor conviction. Ex. 7 at 88:18-89:6. Finally, Fox producers and commentators turned a deaf ear to Blankenship's explicit remarks about his misdemeanor conviction during the Fox debate.

Napolitano gave the following pertinent deposition testimony:

- If I had been the judge, the case would have been thrown out at the end of the Government's case. Ex. 8 at 160:2-4.

- I mean I think I told you that if I were the trial judge, he wouldn't have gone to jail and he wouldn't have been convicted because I would have thrown the case out. *Id*. at 163:25-164:4.

In addition to clarifying Blankenship's misdemeanor conviction, Napolitano would have also trumpeted that Blankenship's criminal case should have been "thrown out" by directed verdict. The Napolitano commentary that Fox deliberately declined to publish was bombshell news that surely would have been republished by other news media outlets.

Cavuto verified an alliance between Fox and the Republican party when he divulged:

18

（略）

> Morning, Republicans. You know what? **We're** gonna lose West
> Virginia if Don Blankenship is **allowed** to win the Primary and he
> does win the Primary outright" before falsely identifying
> Blankenship as a "convicted felon.

Ex. 7 at 98:1-5. The defamatory publications advanced the Fox narrative that
Blankenship was unfit to be the GOP nominee and had no chance of beating
incumbent Democrat Senator Joe Manchin in the general election. In sum, the
inaction, omissions, and willful ignorance of Fox were designed to facilitate Fox's
"immediate political agenda" as a surrogate of the Republican Party.

Accordingly, a jury could reasonably conclude that Fox purposely avoided the
truth concerning Blankenship's misdemeanor conviction.

### B. Fox published the defamatory statements with a high degree of awareness of their probable falsity.

"[T]he state of mind required for actual malice [is] brought home to the
persons ... having responsibility for the defamatory publication." *New York Times,*
376 U.S. at 254. Fox politics editor Stirewalt, Fox senior judicial analyst Napolitano,
Fox producer Villapiano, Fox senior producer Robinson, Fox executive producer
Hadden, Fox senior vice president and anchor Cavuto, Fox associate producer Absell,
Fox campaign correspondent Doocy, Fox senior booking producer Levine, Fox anchor
MacCallum, Fox chief political anchor Baier, Fox senior vice president and managing
editor Sammon, vice president of news and politics Komissaroff, and inferentially
others at Fox either knew that Blankenship was only convicted of a misdemeanor or
had reason to seriously doubt that Blankenship was a "felon" and "convicted felon."
Even so, the commentators, producers, and editors who had responsibility for the

defamatory publications endorsed the false narrative that Blankenship was a convicted of a felony for causing the deaths of 29 coal miners rather than publishing the truth.

Accordingly, a jury could reasonably conclude that Fox published the defamatory statements with a high degree of awareness of their probable falsity.

### C. The inaction and omissions of Fox constituted an extreme departure from professional publication standards.

The highly unreasonable inaction and omissions of Fox cumulatively constitute an extreme departure for professional publication standards:

- Fox producers snubbed Napolitano's attempts to timely correct the record and explain Blankenship's misdemeanor conviction.

- Fox producers and Cavuto unheeded Doocy's accurate report of Blankenship's misdemeanor conviction.

- Fox producers and commentators ignored Blankenship's unequivocal remarks about his misdemeanor conviction during the Fox debate.

The commentators, producers, and editors who had responsibility for the defamatory publications deliberately declined to engage in any inquiry to obtain information concerning Blankenship's conviction despite having a high degree of awareness of their falsity.

Fox is the only major media defendant in this case that does not have written ethics policy or offer ethics training. Ex. 7 at14:22-15:4; Ex. 8 at 137:8-14. Ex. 18 at 74:8-23. Rove even testified that he is not bound by journalism standards or ethics. Ex. 18 at 73:25-74:5. The absence of a written ethics policy and ethics training may constitute an extreme departure from professional publishing standards. Regardless,

20

the omissions fostered a culture of indifference towards truthful reporting.

Accordingly, a jury could reasonably conclude that Fox's inaction and omissions constituted an extreme departure from professional publishing standards.

## II.    The defamatory statements were materially false.

Napolitano's false commentary that Blankenship "went to jail for manslaughter" and the false references to Blankenship as a "felon" and "convicted felon" had a different effect on the mind of viewers in comparison to Blankenship's actual misdemeanor conviction of conspiracy to willfully violate mandatory mine safety and health standards. In context, the "gist" or "sting" of the defamatory publications was that Blankenship went to jail for the felonious homicide of 29 coal miners rather than for a misdemeanor MSHA regulation.

Fox's outrageous contention that "29 miners died under Blankenship's watch" has no basis whatsoever in law or fact. First, the court has previously established that Blankenship "was not charged with the deaths of the miners." ECF No. 398 at 2. Second, Massey Energy operated 119 coal mines when the UBB mine explosion occurred. Obviously, Blankenship had minimal involvement in the day-to-day operations of the UBB mine as Massey Energy CEO.

The references to federal statutes, investigation reports, the comments of Judge Berger and the Fourth Circuit panel, federal sentencing idiosyncrasies, and the defamatory statements of other commentators are all subterfuge. No Fox witness has asserted that the defamatory publications stemmed from these red herrings. Moreover, Fox is mindful that those who viewed Fox's defamatory publications were

21

oblivious to that information.

As reflected in the Memorandum Opinion and Order denying Fox's motions to dismiss, this court has deemed that the references to Blankenship as a "felon" and "convicted felon" were materially false as a matter of law:

> All the defendants' statements identifying the plaintiff as a "felon" are materially false. The term "felon" is an objective label with a clear legal meaning — having been convicted of a crime with a term of imprisonment of more than one year. A person either is or is not a felon; there is no in between or room for "substantial truth." The United States Code clearly outlines the difference between a felony and a misdemeanor even when the criminal statute does not clarify the category of the crime. The different consequences associated with being a felon, including that "felons can suffer numerous restrictions on their constitutional rights," further underscore that the two categories are distinct. *See United States v. Chovan,* 735 F.3d 1127, 1145 (9th Cir. 2013)(Bea, J., concurring); *See also D.C. v. Heller,* 554 U.S. 570, 631 (2008)(discussing that felons may be "disqualified" from exercising Second Amendment rights); *United States v. McCane,* 573 F.3d 1037, 1049 (10th Cir. 2009)(Tymkovich, J., concurring)("After all, felons lose out on fundamental rights such as voting and serving on juries, and face discrimination that need only survive rational basis review.") The court also agrees that "society at large views a 'felon' far differently than a person who has committed an offense resulting in a misdemeanor conviction." *See Myers v. The Telegraph,* 773 N.E.2d 192, 198 (Ill. App. Ct. 2002).

ECF No. 398 at 22.

The distinction between a misdemeanor and a felony is unmistakable. A misdemeanor is viewed as a "petty" or "minor" offense, infraction, citation, or ticket. In contrast, a felony is perceived as "serious" or "major" crime. Misdemeanor prosecutions define the criminal experience from millions of Americans. The sheer scale of the number of misdemeanants and acquaintances of misdemeanants

indicate that those who viewed the defamatory publications had a common understanding of the disparity between a misdemeanor and a felony. Therefore, it is disingenuous to characterize the defamatory statements published by Fox as simply "mislabeling" Blankenship's misdemeanor conviction or being mere "technical errors" in legal nomenclature.

Regardless, the effect on the mind of the viewer is generally a jury question. *See Bustos v. A&E Television Networks,* 646 F.3d. 762, 767 (10th Cir. 2011)("Unsurprisingly, deciding the materiality of a falsehood often requires a jury. Whether a particular misstatement is likely to injure the plaintiff's reputation in the mind of a reasonable member of the community is often best decided by reasonable members of the community."); *See also Kaelin v. Globe Commc'ns Corp.,* 162 F.3d 1036, 1040 (9th Cir. 1998)("[s]o long as a publication is reasonably susceptible of a defamatory meaning, a factual question for the jury exists.").

Statements falsely imputing a person with the commission of a crime are actionable as defamation per se according to West Virginia case law. *See Mauck v. City of Martinsburg,* 280 S.E.2d 216, 219, n. 3 (W. Va. 1981)("At common law, defamation per se includes only imputations of a crime of moral turpitude ...); *See also Colcord v. Gazette Publ'g. Co.,* 145 S.E. 751, 753 (W. Va. 1928)("Any printed or written publication imputing to another a crime or moral delinquency is actionable per se, without proof of damages). This court has already ruled that the defamatory statements referencing Blankenship as a "felon" and "convicted felon" are "defamatory per se because they impute a felony conviction." ECF No. 398 at 19-20.

Accordingly, a jury could reasonably conclude that the defamatory publications were materially false.

## III.    Blankenship sustained injury from the defamatory publications.

### A. Blankenship has sustained special damages.

Blankenship can and will establish special damages through expert testimony and by his own testimony. Stan V. Smith PhD, a forensic economist, has issued a report that Blankenship has sustained the following impairment of future earning capacity damages:

- $197,218,122 – $254,647,877 (CEO);
- $97,766,336 – $175,394,301 (strategic consultant);
- $10,269,025 – $17,115,042 (board of directors); and
- $333,790,703 - $667,581,406 (coal broker).

*See* Ex. 19 at 4-9. Smith's opinions were rendered to a reasonable degree of economic certainty in accordance with generally accepted standards with the field of economics. *Id.* at 10.

Fox contends any assessment of Blankenship's impaired earning capacity is invalid speculation because Blankenship has not presented evidence of lost employment opportunities. However, Smith's substantive opinions concerning Blankenship's impaired earning capacity were formulated from materials and information routinely relied upon by economics experts. *Id.* at 10. Furthermore, Blankenship did not seek employment between his retirement from Massey Energy and the defamatory publications for the following reasons:

24

- retirement agreement non-competition clause (2011-2012);

- indictment > trial > sentencing (2014-2016);

- federal custody (2016-2017); and

- United States Senate campaign (2017-2018).

It is axiomatic that employment as a CEO or strategic consultant, board memberships, and business opportunities as a coal broker or in private equity ventures have been unavailable to Blankenship after being branded as a "felon" and "convicted felon" by Fox and other national media outlets.

Although the actual loss of an election is more difficult to prove, it remains a jury question. *See Robb v. Lincoln Publ'g (Ohio), Inc.,* 683 N.E.2d 823, 841 (Ohio 1996)(special damages arising from the loss of an election may be awarded by a jury if the evidence is sufficient to demonstrate that the plaintiff lost the election as a proximate result of defamatory publications). Internal polling data validated that Blankenship surged ahead in the polls after the Fox debate.[36] Moreover, Rove was concerned that Blankenship would win the primary. Ex. 18 at 40:9-13.

**B.    Blankenship is entitled to general damages as a matter of law.**

Statements falsely imputing a person with the commission of a crime are actionable as defamation per se according to West Virginia case law. *See Mauck v. City of Martinsburg,* 280 S.E.2d 216, 219, n. 3 (W. Va. 1981)("At common law,

---

[36] *See* https://thehill.com/homenews/campaign/386498-polls-show-blankenship-ahead-sparking-panic-among-gop; *See also* https://www.politico.com/story/2018/05/05/blankenship-polls-west-virginia-senate-primary-570752; https://politicalwire.com/2018/05/06/internal-poll-shows-blankenship-ahead-in-west-virginia/.

defamation per se includes only imputations of a crime of moral turpitude ...); *See also Colcord v. Gazette Pub. Co.,* 145 S.E. 751, 753 (W. Va. 1928)("Any printed or written publication imputing to another a crime or moral delinquency is actionable per se, without proof of damages).

This court has already ruled that the defamatory publications are "capable of defamatory meaning because they reflect shame and disgrace on the plaintiff." ECF No. 398 at 20. This court has also ruled that the defamatory publications are "defamatory <u>per se</u> because they impute a felony conviction." ECF No. 398 at 19-20.

Fox's reliance on *Richard H.* is misplaced and entirely distinguishable from this case. It is indisputable that Blankenship is not a "felon" and "convicted felon." The court has previously ruled that the defamatory statements identifying Blankenship as a "felon" are materially false. Therefore, the falsity of the defamatory publications is considerably greater than "a matter of degree." *See Richard H. v. Rachel B.,* No. 18-1004 at 5 (W. Va. Dec. 20, 2019).

"Where words are actionable per se, it is not necessary to aver and prove special damages in order to entitle the plaintiff to general damages. The law implies all such damages are the natural and probable consequences of the words so spoken or written in all cases where the words are actionable per se." Syl. Pt. 2, *Milan v. Long,* 78 W. Va. 102 (1916). Blankenship is entitled to general damages as a matter of law.

Accordingly, a jury could reasonably conclude that Blankenship has sustained injury from the defamatory publications.

IV.    **The defamatory publications placed Blankenship in a false light.**

A false light invasion of privacy claim requires the following elements of proof: (1) the defendant gave publicity to a matter concerning the plaintiff that places the plaintiff before the public in a false light; (2) the publicity was widespread; (3) the matter of the publicity was false; (4) the false light in which the plaintiff was placed would be highly offensive to a reasonable person; and (5) the defendant had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed. *See Taylor v. W. Virginia Dep't of Health & Human Res.,* 788 S.E.2d 295, 315-16 (W. Va. 2016). The defamatory publications check all the boxes.

Although Blankenship had been the target of unfavorable publicity prior to the defamatory publications, he had never been falsely identified as a "felon" and "convicted felon" who slaughtered 29 coal miners. Of course, Blankenship sustained emotional injury by being placed in an unprecedented false light.

Accordingly, a jury could reasonably conclude that the defamatory publications placed Blankenship in a false light.

V.    **Blankenship is entitled to punitive damages.**

"An award of punitive damages may occur in a civil action against a defendant if a plaintiff establishes by clear and convincing evidence that the damages suffered were the result of the conduct that was carried out by the defendant with actual malice toward the plaintiff or a conscious, reckless, and outrageous indifference to the health, safety, and welfare of others." W. Va. Code § 55-7-29(a). Blankenship has

established the requisite *mens rea* with clear and convincing proof that Fox published the defamatory statements with actual malice in reckless disregard of the truth.

Accordingly, a jury could reasonably conclude that Blankenship is entitled to punitive damages.

### SUPPLEMENTAL STATEMENT

The Bill of Rights is the foundation of our governing principles of personal liberty and limited government. The First Amendment provides in relevant part that "Congress shall make no law … abridging the freedom … of the press…" Freedom of the press is freedom from any law that criminalizes criticism of the government.

The actual malice standard illegitimately expands the protection afforded to the press by the First Amendment. Shielding the press from being held accountable for defamatory publications does not advance robust political debate. Moreover, it is inconsistent with the fundamental concepts of personal liberty to preclude legal redress from an individual who has been irreparably harmed by a defamatory publication.

Benjamin Franklin, despite being a defender of the freedom of the press, discerned the power of the press to unjustly impose reputational damage:

> The accused is allowed no grand jury to judge of the truth of the accusation before it is publicly made, nor is the name of the accuser made known to him, nor has he an opportunity of confronting the witnesses against him; for they are kept in the dark, as in the Spanish Court of Inquisition.[37]

---

[37] *See* https://www.heritage.org/american-founders/commentary/franklin-and-the-free-press.

Justice Byron White wrote in dissent that the majority ruling in *Roe v. Wade* was "an improvident and extravagant exercise of the power of judicial review." *Roe v. Wade*, 410 U.S. 113 (1973). *New York Times* has been similarly castigated as another example of judicial overreach. Justice Clarence Thomas wrote: "*New York Times* and the court's decisions extending it were policy-driven decisions masquerading as constitutional law. ... We should not continue to reflexively apply this policy-driven approach to the Constitution. ... If the Constitution does not require public figures to satisfy an actual malice standard in state law defamation suits, then neither should we." *See McKee v. Cosby*, 568 U.S. ___ (2019)(Thomas, J., concurring). It is time for *New York Times* to be revisited.

## CONCLUSION

For the foregoing reasons, summary judgment should be denied to Fox on all claims.

                                                    **DON BLANKENSHIP**
                                                    **By Counsel**


**/s/ Jeffrey S. Simpkins**                        **/s/ Jeremy Gray**
**Jeffrey S. Simpkins ESQ**                        **Jeremy Gray ESQ**
**WVSB #9806**                                      **CASB #150075 *pro hac vice***
***SIMPKINS LAW***                                 **EARLY SULLIVAN WRIGHT**
**102 E. 2nd AVE**                                  **GIZER & McRAE LLP**
**Williamson, WV 25661**                            **6420 Wilshire BLVD 17th FL**
**304.235.2735**                                    **Los Angeles CA 90048**
**simpkinslawoffice@gmail.com**                     **323.301.4660**
                                                    **jgray@earlysullivan.com**

29

3824

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

DON BLANKENSHIP,

     Plaintiff,

v.                                              Civil Action No. 2:19-cv-00236

FOX NEWS NETWORK, LLC, et al.,

     Defendants.

---

## CERTIFICATE OF SERVICE

---

     I hereby certify that I electronically filed the foregoing **"Corrective Amended Memorandum of Law in Support of Plaintiff Don Blankenship's Opposition to Defendant Fox News Network LLC's Motion for Summary Judgment"** with the Clerk of Court using the CM/ECF system which will send notice to all CM/ECF participants.

     Date: 23 June 2021

/s/ Jeffrey S. Simpkins
Jeffrey S. Simpkins ESQ
WVSB #9806
*SIMPKINS LAW*
102 E. 2nd AVE
Williamson, WV 25661
304.235.2735
simpkinslawoffice@gmail.com

30

# EXHIBIT #1

WV SOS - Elections - Candidate - Online Data Services                                                    6/1/21, 11:27 AM

You are viewing this page over a secure connection. Click here for more information.

# West Virginia Secretary of State — Online Data Services

## Elections
Online Data Services Help

## Elections

## Candidate Detail

| 2018 U.S. Senate | | | | | | |
|---|---|---|---|---|---|---|
| Name | Party | County | City/State | Mailing Address | Campaign Phone/E-Mail | Filing Date |
| **DON BLANKENSHIP** | Republican | Mingo | Sprigg, WV | *Mailing Address* PO BOX 1757 WILLIAMSON WV 25661 | 304-720-4365 don@votedonblankenship.com http://www.votedonblankenship.com | 1/23/2018 |

| View | Type Of Report | Report Name |
|---|---|---|
|  |  |  |

If you have any questions or concerns about the data on these pages, please contact the WV SOS Elections department at 304-558-6000 or via e-mail to elections@wvsos.com.

Tuesday, June 1, 2021 — 11:26 AM

© 2021 State of West Virginia

# EXHIBIT #2

```
1              IN THE UNITED STATES DISTRICT COURT
2             FOR THE EASTERN DISTRICT OF VIRGINIA
3                      ALEXANDRIA DIVISION
4    DON BLANKENSHIP,                    )
                                         )
5         PLAINTIFF,                     )
                                         ) CIVIL ACTION NO.
6    V.                                  ) 1:20-CV-00429
                                         ) (LMB/IDD)
7    KEVIN MCLAUGHLIN, ET AL.,           )
                                         )
8         DEFENDANTS.                    )
9
10
11
12
13
14
15    VIDEOTAPED REMOTE DEPOSITION VIA ZOOM OF:
16                   ALEX ISENSTADT
17             TUESDAY, DECEMBER 8, 2020
18             11:35 A.M. EASTERN TIME
19
20
21
22
23
24    REPORTED BY:  PAULA A. PYBURN
                    CSR 7304, RPR, CLR
25
```

Page 1

```
1              VIDEOTAPED REMOTE DEPOSITION VIA ZOOM OF

2      ALEX ISENSTADT, THE WITNESS, TAKEN ON BEHALF OF

3      PLAINTIFF, ON TUESDAY, DECEMBER 8, 2020, 11:35 A.M.

4      EASTERN TIME, BEFORE PAULA A. PYBURN, CSR 7304, RPR,

5      CLR.

6

7

8      APPEARANCES OF COUNSEL VIA VIDEOCONFERENCE:

9

10     FOR PLAINTIFF DON BLANKENSHIP:

11         SIMPKINS LAW

12         BY:  JEFFREY S. SIMPKINS, ESQ.

13         BY:  C. MICHAEL SPARKS, ESQ.

14         102 EAST 2ND AVENUE

15         WILLIAMSON, WEST VIRGINIA 25661

16         304.235.2735

17         SIMPKINSLAWOFFICE@GMAIL.COM

18

19

20

21

22

23

24

25
```

                                                    Page 2

```
1        Q    IS DON BLANKENSHIP A POWERFUL APPALACHIAN    12:33:12

2   REPUBLICAN?                                            12:33:16

3        A    HE WAS -- HE WAS WIDELY CONSIDERED TO BE AT  12:33:17

4   THAT TIME.                                             12:33:22

5        Q    THANK YOU.                                   12:33:22

6             IF YOU WOULD SKIP TO THE NEXT SENTENCE.      12:33:23

7        A    YES.                                         12:33:28

8        Q    IT STARTS (AS READ):                         12:33:28

9                  MCCONNELL, FOR HIS PART, WAS            12:33:30

10             RECENTLY QUOTED AS SAYING HE DID NOT        12:33:32

11             WANT BLANKENSHIP TO WIN THE                 12:33:34

12             NOMINATION.                                 12:33:36

13             DO YOU SEE THAT?                            12:33:37

14        A    YES, SIR.                                   12:33:37

15        Q    ARE YOU REFERRING TO THE ARTICLE THAT WAS   12:33:37

16   IN THE "NEW YORK TIMES" ENTITLED "TRUMP SHOULD GET    12:33:41

17   BEHIND ROMNEY'S CANDIDACY, MCCONNELL SAYS"?           12:33:44

18        A    I RECALL THAT THAT WAS BASED UPON A STORY    12:33:48

19   THAT WAS IN THE "NEW YORK TIMES."  I DON'T RECALL IF  12:33:50

20   IT WAS THAT PARTICULAR STORY IN THE "NEW YORK         12:33:52

21   TIMES."                                               12:33:54

22        Q    AND THAT WAS THE STORY THAT WAS WRITTEN BY   12:33:54

23   JONATHAN MARTIN; CORRECT?                             12:33:56

24        A    AS I RECALL, HE WAS THE AUTHOR OF THE STORY  12:34:00

25   IN QUESTION.                                          12:34:01
```

Page 57

```
 1       Q      DO YOU HAVE ANY -- ANY REASON TO DISPUTE      12:34:02

 2   THAT IT WAS WRITTEN ON OR ABOUT -- OR PUBLISHED ON       12:34:04

 3   FEBRUARY THE 17TH, 2018?                                 12:34:06

 4       A      THAT SOUNDS LIKE IT COULD BE ACCURATE.        12:34:09

 5       Q      OKAY.  DID MCCONNELL NOT WANT                 12:34:12

 6   DON BLANKENSHIP TO WIN THE NOMINATION?                   12:34:15

 7       A      HE DID NOT WANT HIM -- HE DIDN'T --           12:34:18

 8   MCCONNELL DID NOT WANT BLANKENSHIP TO WIN THE            12:34:20

 9   NOMINATION.                                              12:34:22

10       Q      ARE YOU AWARE WHETHER MCCONNELL DID           12:34:24

11   ANYTHING TO DEFEAT DON BLANKENSHIP'S CANDIDACY?          12:34:27

12       A      YES.                                          12:34:35

13              THE VIDEOGRAPHER:  JUST A SECOND.  TURN FOR   12:34:38

14   ME, PLEASE, AND FACE THE CAMERA.                         12:34:39

15              THE WITNESS:  OH, I'M SORRY.  SORRY.          12:34:43

16   BY MR. SIMPKINS:                                         12:34:44

17       Q      YOUR ANSWER WAS YES.                          12:34:45

18              WHAT DID MCCONNELL DO TO DEFEAT               12:34:46

19   DON BLANKENSHIP'S CANDIDACY?                             12:34:48

20       A      THERE WAS A SUPER PAC THAT WAS STAFFED BY     12:34:50

21   PEOPLE CLOSE TO HIM AND THAT WAS FUNDED BY THE           12:34:55

22   SENATE LEADERSHIP FUND, WHICH WAS ALSO ALIGNED WITH      12:34:59

23   MCCONNELL.  THE SUPER PAC WAS CALLED MOUNTAIN            12:35:03

24   FAMILIES PAC, THAT -- IT WAS -- IT WAS FUNDED BY THE     12:35:10

25   SENATE LEADERSHIP FUND, WHICH IS ALIGNED WITH            12:35:12
```

Page 58

```
 1    MCCONNELL, AND IT WAS STAFFED BY PEOPLE WHO ARE      12:35:15

 2    CLOSE TO MCCONNELL OR HAD PREVIOUSLY WORKED FOR      12:35:17

 3    MCCONNELL.   AND MOUNTAIN FAMILIES PAC RAN TV ADS    12:35:20

 4    AGAINST DON BLANKENSHIP.                             12:35:28

 5        Q    ARE YOU AWARE WHO STEVEN LAW IS?            12:35:29

 6        A    YES.                                        12:35:34

 7        Q    AND WHO IS THAT?                            12:35:34

 8        A    HE RUNS THE SENATE LEADERSHIP FUND.         12:35:35

 9        Q    OKAY.  DID HE LEAD THE MOUNTAIN FAMILY PAC? 12:35:41

10        A    I DON'T -- I DON'T -- WHAT DO YOU MEAN BY   12:35:47

11    LED?                                                 12:35:54

12        Q    WAS HE OVER IT?  SUPERVISED IT?             12:35:55

13        A    I DON'T KNOW.                               12:35:58

14        Q    WHAT ACTIONS DID THE MOUNTAIN FAMILIES PAC  12:35:59

15    TAKE TO DEFEAT DON BLANKENSHIP'S CANDIDACY?          12:36:03

16        A    AS I RECALL, IT RAN COMMERCIALS AGAINST     12:36:08

17    HIM.                                                 12:36:11

18        Q    OKAY.  ARE YOU AWARE OF BENJAMIN OTTENHOFF? 12:36:11

19        A    YES.                                        12:36:17

20        Q    AND WHO IS HE?                              12:36:18

21        A    HE'S THE TREASURER OF MOUNTAIN FAMILIES     12:36:19

22    PAC, AS I RECALL.                                    12:36:23

23        Q    OKAY.  IS HE ALIGNED WITH MCCONNELL ALSO?   12:36:23

24        A    I DON'T KNOW.                               12:36:27

25        Q    OKAY.  THE NEXT SENTENCE, YOU WROTE (AS     12:36:29
```

Page 59

```
1        Q     DO YOU BELIEVE THAT BLANKENSHIP'S CAMPAIGN     13:00:53

2   APPARATUS WAS EQUIVALENT TO THAT OF MORRISEY?            13:00:56

3        A     I DON'T RECALL ONE WAY OR THE OTHER.          13:01:01

4        Q     IF YOU WOULD GO TO THE NEXT PARAGRAPH, IT     13:01:04

5   STARTS BY SAYING (AS READ):                              13:01:10

6              NATIONAL GOP OFFICIALS SAY                    13:01:11

7              THEY'VE MADE NO DECISION ON WHETHER           13:01:13

8              TO WEIGH IN AGAINST BLANKENSHIP,              13:01:15

9              THOUGH SEVERAL SAID THEY EXPECTED             13:01:17

10             THE SENATE COMMITTEE TO CREATE A              13:01:20

11             MENU OF OPTIONS.                              13:01:23

12             DO YOU SEE THAT?                              13:01:24

13       A     YES.                                          13:01:27

14       Q     OKAY.  WHO WERE YOU SPECIFICALLY REFERRING    13:01:28

15   TO BY THE TERM "NATIONAL GOP OFFICIALS"?                13:01:30

16       A     THE BROADER REPUBLICAN PARTY APPARATUS        13:01:33

17   LEADERSHIP.                                             13:01:37

18       Q     IS THE NRSC AMONG THOSE?                      13:01:38

19       A     I DON'T WANT TO GO ANY FURTHER THAN WHAT'S    13:01:46

20   IN THE ARTICLE.                                         13:01:49

21       Q     FAIR ENOUGH.                                  13:01:50

22             DID THE NATIONAL GOP OFFICIALS WEIGH IN       13:01:51

23   AGAINST BLANKENSHIP DURING THE PRIMARY?                 13:01:55

24       A     I THINK THAT'S -- THAT COULD BE SAID, YES.    13:02:02

25       Q     OKAY.  IF SO, WHEN AND HOW DID THEY DO        13:02:05
```

Page 69

| 1 | THAT? | 13:02:11 |
| 2 | A     THROUGH THE MOUNTAIN FAMILIES PAC THAT | 13:02:11 |
| 3 | LAUNCHED -- THAT RAN TV ADS AGAINST BLANKENSHIP. | 13:02:20 |
| 4 | Q     AND WOULD THAT INCLUDE THE CERTAIN NEGATIVE | 13:02:24 |
| 5 | STATEMENTS MADE BY CERTAIN SENATORS AGAINST OR | 13:02:29 |
| 6 | TOWARDS DON BLANKENSHIP? | 13:02:33 |
| 7 | A     I DON'T KNOW THAT THAT COULD BE SAID TO BE | 13:02:37 |
| 8 | PART OF THEIR OVERALL EFFORT TO WEIGH IN OR NOT. | 13:02:52 |
| 9 | THE SENATORS JUST SAID IT ON THEIR OWN.  I DON'T | 13:02:56 |
| 10 | KNOW WHETHER THEY SAID IT ON THEIR OWN OR AS PART OF | 13:02:58 |
| 11 | THE WEIGHING -- DECISION TO WEIGH IN OR NOT; SO I | 13:03:01 |
| 12 | GUESS I'M STRUGGLING TO ANSWER YOUR QUESTION. | 13:03:04 |
| 13 | Q     OKAY.  WOULD THAT BE THEIR PERSONAL ATTEMPT | 13:03:06 |
| 14 | TO WEIGH IN AGAINST DON BLANKENSHIP? | 13:03:12 |
| 15 | A     I CAN'T SPEAK TO THEIR PERSONAL | 13:03:14 |
| 16 | MOTIVATIONS, WHAT WAS GOING THROUGH THEIR HEAD WHEN | 13:03:18 |
| 17 | THEY SAID THE THINGS THEY SAID. | 13:03:20 |
| 18 | Q     YOU SAID -- ALSO SAID "THE SENATE COMMITTEE | 13:03:21 |
| 19 | TO CREATE A MENU OF OPTIONS." | 13:03:22 |
| 20 | WHICH COMMITTEE ARE YOU SPECIFICALLY | 13:03:25 |
| 21 | REFERRING TO WHEN YOU -- | 13:03:27 |
| 22 | A     THAT WOULD HAVE BEEN THE NATIONAL | 13:03:28 |
| 23 | REPUBLICAN SENATORIAL COMMITTEE OR, HOW IT'S BETTER | 13:03:32 |
| 24 | KNOWN AS, THE NRSC. | 13:03:33 |
| 25 | Q     OKAY.  YOU TALK ABOUT "A MENU OF OPTIONS." | 13:03:34 |

Page 70

```
 1    UNCLEAR ON WHETHER HE CONTROLS IT OR -- OR WHAT THE    13:48:04

 2    MEANING OF THAT WORD WOULD BE.                         13:48:07

 3        Q    BUT HE IS ALIGNED --                          13:48:08

 4        A    IT IS -- THE SENATE LEADERSHIP FUND IS        13:48:10

 5    KNOWN TO BE ALIGNED WITH MITCH MCCONNELL.              13:48:12

 6        Q    THANK YOU.                                    13:48:14

 7             NOW, THE MOUNTAIN FAMILIES PAC, THAT WAS      13:48:14

 8    FUNDED BY THE SENATE LEADERSHIP FUND; IS THAT NOT      13:48:17

 9    TRUE?                                                  13:48:20

10        A    AS I -- AS I RECALL, THAT WAS THE CASE.       13:48:21

11        Q    ISN'T IT TRUE THAT THE MOUNTAIN FAMILIES      13:48:23

12    PACS WAS RAN BY KNOWN OPERATIVES OF MCCONNELL AND      13:48:27

13    REPUBLICAN STRATEGIST KARL ROVE?                       13:48:31

14        A    I CAN SPEAK TO MCCONNELL, AND THE ANSWER      13:48:35

15    WOULD BE IN THE AFFIRMATIVE.                           13:48:39

16             I CAN'T SPEAK TO ROVE; I DON'T KNOW ABOUT     13:48:40

17    ROVE.                                                  13:48:42

18        Q    OKAY.  YOU DON'T KNOW WHETHER OR NOT          13:48:42

19    KARL ROVE HAS ANY CONNECTION WITH THE MOUNTAIN         13:48:44

20    FAMILIES PAC?                                          13:48:47

21        A    I KNOW THAT ROVE HAS -- HAS PREVIOUSLY BEEN   13:48:47

22    CONNECTED TO SENATE LEADERSHIP FUND.  I DON'T KNOW     13:48:51

23    IF HE WAS SPECIFICALLY CONNECTED TO MOUNTAIN           13:48:53

24    FAMILIES PAC.                                          13:48:58

25        Q    IF HE WAS CONNECTED TO THE SENATE            13:48:58
```

Page 103

Confidential          Neil Cavuto - April 07, 2021

104

1      garner the most controversy and attention?

2      What seemed like slam dunk, maybe not a slam

3      dunk.  What a mess.

4            All right.  Not a mess, the corner of

5      Wall and Broad.  Right now we've got the Dow

6      up about 2 --

7            (End of video clip.)

8      Q.   (BY MR. GRAY)  Mr. Cavuto, you saw there

9 that you said that Mr. Blankenship was a convicted

10 felon, right?

11     A.   I did.

12     Q.   Was that an accurate statement?

13     A.   I was incorrect.  I was wrong.

14     Q.   Was it a mistake to call Mr. Blankenship a

15 convicted felon?

16     A.   He was not a convicted felon.  I did not

17 draw the distinction with the misdemeanor.  I now,

18 in retrospect, since this lawsuit was filed -- had I

19 known that, by all means I would have said that.  I

20 wouldn't be -- I had no horse in the race to do

21 otherwise.  I want to be accurate.

22           What stood out to me was the time he'd

23 served in the federal prison, the safety issues

24 related to these 29 dead miners.  And what that was

25 called, a misdemeanor, a felony, was lost on me.  If

```
1    STATE OF CALIFORNIA      )
2    COUNTY OF RIVERSIDE      )  SS.
3
4         I, PAULA A. PYBURN, CSR NO. 7304, RPR, CLR, IN
5    AND FOR THE STATE OF CALIFORNIA, DO HEREBY CERTIFY:
6         I AM THE DEPOSITION OFFICER THAT
7    STENOGRAPHICALLY RECORDED THE TESTIMONY IN THE
8    FOREGOING DEPOSITION;
9         PRIOR TO BEING EXAMINED THE DEPONENT WAS FIRST
10   DULY SWORN BY ME;
11        THE FOREGOING TRANSCRIPT IS A TRUE RECORD OF THE
12   TESTIMONY GIVEN.
13        BEFORE COMPLETION OF THE DEPOSITION, REVIEW OF
14   THE TRANSCRIPT [XX] WAS [ ] WAS NOT REQUESTED.  IF
15   REQUESTED, ANY CHANGES MADE BY THE DEPONENT (AND
16   PROVIDED TO THE REPORTER) DURING THE PERIOD ALLOWED
17   ARE APPENDED HERETO.
18
19   DATED: this 14th day of December, 2020.
20
21
22
                    PAULA A. PYBURN, RPR, CLR
23                  CSR NO. 7304
                    CERTIFIED SHORTHAND
24                  REPORTER FOR THE
                    STATE OF CALIFORNIA
25
                                          Page 165
```

# EXHIBIT #3

## FEC FORM 1

## STATEMENT OF ORGANIZATION

## FILING FEC-1216227

### 1. MOUNTAIN FAMILIES PAC

PO BOX 9891
ARLINGTON, VA 22219
Email: BEN@CROSBYOTT.COM

### 2. Date: 03/29/2018

3. FEC Committee ID #: C00674689

**This committee supports/opposes more than one Federal candidate and is NOT a separate segregated fund or a party committee.**

### Affiliated Committees/Organizations

NONE
, ———

### Custodian of Records:

BENJAMIN OTTENHOFF
PO BOX 9891
ARLINGTON, VA 22219
Title: TREASURER

### Treasurer:

BENJAMIN OTTENHOFF
PO BOX 9891
ARLINGTON, Virginia 22219
Title: TREASURER

### Designated Agent(s):

### Banks or Depositories

CHAIN BRIDGE BANK
1445-A LAUGHLIN AVE
MCLEAN, Virginia 22101

### Signed: BENJAMIN OTTENHOFF
### Date Signed: 03/29/2018

### FORM TEXT-1

Form 1 for MOUNTAIN FAMILIES PAC                                                        6/7/21, 6:42 PM

# (End FEC FORM 1)

Generated Mon Jun 7 18:42:02 2021

Federal Election Commission, 999 E Street, NW, Washington, DC 20463 (800) 424-9530 In Washington (202) 694-1100
For the hearing impaired, TTY (202) 219-3336 Send comments and suggestions about this site to:
**webmaster@fec.gov**.

# EXHIBIT #4



**An official website of the United States government**
Here's how you know ⌄

This site is in beta, visit FEC.gov

An official website of the United States Government 🏛

## Federal Election Commission
U N I T E D   S T A T E S   — *of* —   A M E R I C A

Home  ›  Campaign finance data  ›  Committee profiles  ›  MOUNTAIN FAMILIES PAC

# MOUNTAIN FAMILIES PAC
🚫 TERMINATED

**SUPER PAC (INDEPENDENT EXPENDITURE-ONLY)**

ID: C00674689

## Raising

**TWO-YEAR PERIOD**

2017-2018  ▼

## Total receipts

▤  Filter all receipts

# $1,400,000.00

raised in total receipts by this committee from **March 29, 2018 to May 20, 2018.**

See the financial summary for a breakdown of each type of receipt.

*Newly filed summary data may not appear for up to 48 hours.*

# Individual contributions

| 🗐  Filter this data |
|---|

**GROUP BY:**

| All transactions |
|---|
| State |
| Size |
| Employer |
| Occupation |

| Coverage dates: 03/29/2018 to 05/20/2018 | | | Export ⬇ |
|---|---|---|---|

| Contributor name | Contributor state | Receipt date ▼ | Amount |
|---|---|---|---|
| SENATE LEADERSHIP FUND | VA | 04/26/2018 | $600,000.00 |
| SENATE LEADERSHIP FUND | VA | 04/12/2018 | $800,000.00 |

Results per page:  10 ▼                                                         ◀   ▶

Showing 1 to 2 of 2 entries

# EXHIBIT #5



☰ **An official website of the United States government**
  Here's how you know ⌄

This site is in beta, visit FEC.gov                    An official website of the United States Government 🏛

## Federal Election Commission
UNITED STATES — *of* — AMERICA

Home › Campaign finance data › Browse data › Independent expenditures

# Independent expenditures

Viewing **8** filtered results for:   <u>Clear all filters</u> ✕

| Data type: processed ✕ | | MOUNTAIN FAMILIES PAC (C00674689)   ✕ | | Regularly scheduled reports |
|---|---|---|---|---|

| 01/01/2017 ✕ | 12/31/2018 ✕ |
|---|---|

| Spender | Support/Oppose | Candidate | Expenditure date ▼ | Amount | |
|---|---|---|---|---|---|
| MOUNTAIN FAMILIES PAC | Oppose | BLANKENSHIP, DON | 05/04/2018 | $300.00 | ◉ |
| MOUNTAIN FAMILIES PAC | Oppose | BLANKENSHIP, DON | 04/28/2018 | $12,515.53 | ◉ |
| MOUNTAIN FAMILIES PAC | Oppose | BLANKENSHIP, DON | 04/27/2018 | $47,700.00 | ◉ |
| MOUNTAIN FAMILIES PAC | Oppose | BLANKENSHIP, DON | 04/26/2018 | $524,382.08 | ◉ |
| MOUNTAIN FAMILIES PAC | Oppose | BLANKENSHIP, DON | 04/13/2018 | $47,700.00 | ◉ |
| MOUNTAIN FAMILIES | | BLANKENSHIP, | | | |

| PAC | Oppose | DON | 04/13/2018 | $1,118.34 | |
| MOUNTAIN FAMILIES PAC | Oppose | BLANKENSHIP, DON | 04/12/2018 | $14,073.09 | |
| MOUNTAIN FAMILIES PAC | Oppose | BLANKENSHIP, DON | 04/12/2018 | $680,966.69 | |

Results per page: 30 ▼                                    ◄   ►

Showing 1 to 8 of 8 entries

# EXHIBIT #6



FEDERAL ELECTION COMMISSION
WASHINGTON, D.C. 20463

MS-K

May 31, 2018

BENJAMIN OTTENHOFF, TREASURER
MOUNTAIN FAMILIES PAC
P.O. BOX 9891
ARLINGTON, VA  22219

IDENTIFICATION NUMBER: C00674689

REFERENCE: TERMINATION REPORT (05/01/2018 - 05/20/2018)

Dear Treasurer:

Your committee's filing has been accepted as a valid termination as it meets the conditions set forth in 52 U.S.C. §30103(d) (formerly 2 U.S.C. §433(d)) and Section 102.3 of the Commission's Regulations. Your committee is no longer required to file reports on a periodic basis. However, 52 U.S.C. §30102(d) (formerly 2 U.S.C. §432(d)) and Sections 102.9(c) and 104.14(b)(3) of the Commission's Regulations require that you maintain your records and copies of reports for inspection for at least three (3) years. In addition, you may be required to respond to Commission requests for information regarding your committee's federal election activity and previously filed reports.

If your committee again becomes active in federal elections, it will be required to re-register with the Commission in accordance with the Federal Election Campaign Act and applicable Regulations. Your committee will be treated as a new entity by the Commission and should register as a new committee on FEC FORM 1, pursuant to 52 U.S.C. §§30102(g) and 30103(a) (formerly 2 U.S.C. §§432(g) and 433(a))

If you have any questions concerning your status and requirements, please contact the Reports Analysis Division on the toll-free number, (800) 424-9530 (at the prompt press 5 to reach the Reports Analysis Division). My local number is (202) 694-1177.

Sincerely,

Brian Jones
Sr. Campaign Finance & Reviewing Analyst
Reports Analysis Division

321

# EXHIBIT #7

**In the Matter Of:**

*Blankenship vs*

*Fox News Network LLC*

---

*NEIL CAVUTO*

*April 07, 2021*

---



Confidential            Neil Cavuto - April 07, 2021

1

| 1 | UNITED STATES DISTRICT COURT |
| | SOUTHERN DISTRICT OF WEST VIRGINIA |
| 2 | CHARLESTON DIVISION |

```
 3   DON BLANKENSHIP,              §
                                  §
 4         Plaintiff,             §
                                  § CASE NO.:
 5   vs.                          §
                                  § 2:19-cv-00236
 6   FOX NEWS NETWORK LLC,        §
     et al.,                      §
 7                                §
           Defendants.            §
 8

 9

10      ******************************************

11                   CONFIDENTIAL

12      REMOTE VIDEOCONFERENCED DEPOSITION OF

13              NEIL PATRICK CAVUTO

14                 APRIL 7, 2021

15      ******************************************

16

17

18

19

20

21

22

23

24

25   Job No. 2021-783118
```

USCA4 Appeal: 23-1198    Doc: 57    Filed: 05/25/2022    Pg: 106 of 307

Confidential          Neil Cavuto - April 07, 2021

2

1          REMOTE VIDEOCONFERENCE DEPOSITION OF

2    NEIL PATRICK CAVUTO, produced as a witness at the

3    instance of the Plaintiff, and remotely duly sworn

4    by agreement of all counsel, was taken in the above-

5    styled and numbered cause on March 2, 2021, from

6    8:06 a.m. to 1:58 p.m., before Karen L. D. Schoeve,

7    RDR, CRR, reported remotely by computerized machine

8    shorthand, pursuant to the Federal Rules of Civil

9    Procedure and the provisions stated on the record or

10   attached hereto.

11          This deposition is being conducted

12   remotely in accordance with the current Emergency

13   Order regarding the COVID-19 State of Disaster of

14   the World.

15

16   REPORTER'S NOTES:  Please be advised that an

17   UNCERTIFIED ROUGH DRAFT version of this transcript

18   exists.  If you are in possession of said rough

19   draft, please replace it immediately with this

20   CERTIFIED FINAL TRANSCRIPT.

21          Please note that the quality of a Zoom

22   videoconference and transmission of data and

23   overspeaking causes audio distortion which disrupts

24   the process of preparing a videoconference

25   transcript.

Confidential          Neil Cavuto - April 07, 2021

14

1      Q.    And what was your degree in?

2      A.    Journalism.

3      Q.    Do you have any further degrees?

4      A.    I do.

5      Q.    What are those, if they're more than one?

6      A.    I got my master's at American University

7    in journalism and public affairs.

8      Q.    When did you attain that master's degree?

9      A.    1982.

10     Q.    Did you undertake those studies for your

11   master's directly after college, then?

12     A.    No, there was about a one-year gap.

13     Q.    What did you do during that gap year?

14     A.    I wrote.  I was a print reporter.  I wrote

15   for the "Indianapolis News" and "Star" and later a

16   magazine called "Investment Age."

17     Q.    Any other formal education beyond your

18   master's degree?

19     A.    No.

20     Q.    Or in addition to your master's degree?

21     A.    No.

22     Q.    During your career have you attended any

23   seminars or continuing education on the topic of

24   ethics in journalism?

25     A.    No.

15

1    Q.    During your time at Fox News, have you

2  attended any training on ethics in journalism?

3    A.    Outside of consultations on big stories

4  and big events, no.

5    Q.    Is it accurate to describe what you just

6  referred to as on-the-job information that may have

7  been conveyed regarding ethical issues that arose on

8  a particular story?

9    A.    I don't know if they were so much in

10 regard to ethical issues, but if it was a very big

11 story or we were covering something -- 9/11 comes to

12 mind -- that we were always cognizant and aware of

13 how to constantly update that, you know, fairly and

14 as precisely as possible.

15    Q.    Those were on-the-job decisions as opposed

16 to some formal training that was implemented at Fox;

17 is that right?

18          MR. REGAN:   Jeremy, I think we heard

19 that question, but you just got much quieter with

20 that last question.

21          The transcript says the question was,

22 "Those were on-the-job decisions as opposed to some

23 formal training that was implemented at Fox; is that

24 right?"

25          MR. GRAY:   (Nodded head.)

68

1   don't believe so.  I don't believe anyone comes on,

2   especially if they're on-set in the studio with me,

3   and reads something -- unless they're in another --

4   another place.  It's just not that -- none of my

5   shows are that way.

6        Q.   (BY MR. GRAY)  So let's -- let's move to

7   the 2018 primary season.

8             Do you recall that the Fox News

9   Channel hosted a May 1st debate in 2018 involving

10  the candidates running for the West Virginia GOP

11  Primary?

12       A.   Yes, I remember very well.

13       Q.   Did you watch the debate?

14       A.   I watched the coverage afterwards and the

15  attention that it was getting, given the fact that

16  this was such a crucial state.  And I can remember

17  very, very well that, you know, it got fairly

18  heated.  And Mr. Blankenship had comported himself

19  quite well in that debate.  And this was a contest.

20  This race was a contest.  This Senate Primary battle

21  was one to watch.

22       Q.   Whether you -- so is it your testimony you

23  did not watch the debate when it was broadcast live?

24       A.   I'm sorry, I didn't make that clear.  I

25  did not watch it live.

Confidential          Neil Cavuto - April 07, 2021

72

1    now the Senate's under Democrat control.

2              So back then, it had great import.  So

3    it was important to cover, and we did.

4        Q.   (BY MR. GRAY)  And did the fact that

5    Mr. Blankenship was a businessman provide an

6    additional angle that made it of interest to you and

7    your viewers on the Fox Business Network?

8              MR. REGAN:  Objection.

9              You can answer.

10       A.    I don't know if he was just a businessman.

11   But I think the situation of it, where he was

12   familiar, you know, running a company that had this

13   horrible accident and he had served, you know, a

14   year in jail.  He had come out of that.  He was

15   making this run.  He did a very good job in that

16   debate.

17              This was an interesting race.  This

18   was an interesting dynamic, and it was treated as

19   such.  We covered it as such.

20              MR. REGAN:  Jeremy, just for the

21   record, the transcript is showing that Mr. Cavuto

22   began the last answer by saying "I know he was just

23   a businessman, but I think" -- so on and so forth.

24              I think his testimony was, "I know he

25   was not just a businessman."  I thought that's what

Confidential          Neil Cavuto - April 07, 2021

76

1   of it, feel free to do so, and whenever you're ready

2   to answer my questions, let me know.

3            MR. REGAN:  Just take a moment and

4   read through the first -- is it the first few pages

5   here for me?

6            MR. GRAY:  Yes.  I'm sure you guys

7   know what I'm going to ask about, so it will be in

8   the first five pages.

9            MR. REGAN:  Okay.  Let's just take a

10  moment to read through sort of 116.  I think that's

11  where the relevant period ends.  Take your time and

12  read through it.

13      A.   (Examined exhibit.)

14            MR. REGAN:  It's not a memory test,

15  but just so you have some general familiarity and

16  for context.

17      A.   (Examined exhibit.)  Okay.  I think I have

18  an idea.

19      Q.   (BY MR. GRAY)  I'm sorry, I didn't have my

20  earphones in.  Did you say you're ready, Mr. Cavuto?

21      A.   I am.  Yeah.

22      Q.   I apologize, I took my earphones out.

23      A.   Oh, that's okay.

24      Q.   Is this a transcript that was prepared of

25  the edition of "Your World with Neil Cavuto" that

Confidential                Neil Cavuto - April 07, 2021

                                                          77

1    aired on April 25th, 2018?

2              MR. REGAN:  Objection.

3              You can answer.

4    A.   It looks like that.  I can't, you know,

5    vouch for it to the word, but it looks like that.

6    Q.   (BY MR. GRAY)  Transcripts are prepared of

7    your programs, right?

8    A.   Right.

9    Q.   And they're prepared by Fox News?

10   A.   No, no, I'm not disputing it.  I'm just --

11   I -- I don't recall a lot of this.  But I -- I'm not

12   disputing it.

13   Q.   Do you have any reason to doubt the

14   accuracy of this transcript, as you sit here today?

15             MR. REGAN:  Objection.

16             You can answer.

17   A.   No.  It says what it says.  I'll postulate

18   that this is what was said.  I just don't recall

19   this exact moment or some of these interchanges, but

20   it has been a few years, so -- but go ahead.

21   Q.   (BY MR. GRAY)  Right.  But my question's

22   straightforward.

23             Whether or not you recall, you have no

24   reason to doubt the accuracy of this transcript?

25             MR. REGAN:  Objection.

Confidential          Neil Cavuto - April 07, 2021

78

```
 1              You can answer.
 2       A.   No, I don't.
 3       Q.   (BY MR. GRAY)  So the show begins with an
 4  interview -- or discussion, rather, with you and
 5  someone named Peter Doocy.  Do you see that?
 6       A.   Yes.
 7       Q.   And in 2018, what was Mr. Doocy's role at
 8  Fox News or Fox Business Network, to the best of
 9  your recollection?
10       A.   I believe at the time, he was a campaign
11  correspondent.  So he would travel the country
12  looking at key races, this one among them.
13       Q.   "This one" being the West Virginia
14  Primary?
15       A.   Correct.
16       Q.   And I see it says here, "Meanwhile, here
17  in West Virginia."
18              This was pre-pandemic.  Do you recall
19  that Mr. Doocy actually was on the ground in West
20  Virginia reporting on what was going on there?
21       A.   I don't recall per se.  This looks like
22  just that.  He was there.
23       Q.   All right.  And if you look at the -- the
24  middle of the second page of Exhibit 1, which has
25  Document Control 113.
```

Confidential          Neil Cavuto - April 07, 2021

79

1              In the middle of the page, do you see

2      the comment by Mr. Doocy, "And rounding out the top

3      tier"?

4                   Do you see that?

5          A.   Yes.

6          Q.   And there's some reference to

7      Mr. Blankenship there, right?

8          A.   Yes.

9          Q.   I'm sorry.  Did you answer, or are you

10     reading?

11         A.   I said, "Yes."

12              MR. REGAN:  He said, "Yes."

13         Q.   (BY MR. GRAY)  Your sound cut out.

14         A.   Oh, I'm sorry.  But yes, I wasn't ignoring

15     you.

16         Q.   I didn't think you were.  I thought maybe

17     you were either reading or you had answered, and I

18     didn't hear you.

19              Could you read into the record the

20     sentence -- that paragraph that begins, "Blankenship

21     never took the hat off"?

22         A.   "Blankenship never took the hat off.

23     Blankenship is best known here in West Virginia as

24     being a former coal baron who recently served a year

25     in jail on a misdemeanor conviction tied to his role

Confidential          Neil Cavuto - April 07, 2021

80

```
 1    in a mine collapse that killed 29 people almost a
 2    decade ago."
 3        Q.   As we sit here today, do you have any
 4    reason to believe that Mr. Doocy didn't say that on
 5    this program on that day?
 6              MR. REGAN:  Objection.
 7              You can answer.
 8        A.   No, I'm sure he did.
 9        Q.   (BY MR. GRAY)  Do you recall at some point
10    that a packet of information was put together for
11    you in connection with the May 8th primaries?
12              MR. REGAN:  Objection.
13              You can answer.
14        A.   There usually is.  Yeah.  Usually you'll
15    get a packet on any of that at the end.
16        Q.   (BY MR. GRAY)  So let me ask you about
17    that.
18              So what was the -- what's the purpose
19    of a packet of information like that?
20        A.   To generally bring you up to speed.  To
21    familiarize you with the very latest news, what's --
22    what's going on.
23        Q.   Is that something that you asked for?
24              MR. REGAN:  Objection.
25              You can answer.
```

Confidential          Neil Cavuto - April 07, 2021

81

1       Q.    (BY MR. GRAY)   Let me ask it a different
2    way, sir.  I'm not focusing on this particular
3    packet, which we're gonna look at in a moment.  I'm
4    asking you as a general practice.  I -- just for
5    your reference, I have a number of news
6    organizations in this case.  Not everyone does
7    everything the same way.
8            So my question is:  Is the practice of
9    having a particular packet of information for you
10   about a primary season something that you
11   instituted, you asked for, or was this someone
12   else's idea?
13           MR. REGAN:  Objection.
14           You can answer.
15      A.   Well, I don't know if I originally asked
16   for it.  It's just standard procedure to get
17   information on a CEO's appearance, a politician's
18   appearance, an issue involving a roundtable or what
19   have you.  It can sometimes be quite voluminous.  It
20   can be a lot of pieces to it.  But this is just
21   to -- you know, a standard procedure to have
22   research.
23      Q.   (BY MR. GRAY)  And is it your practice to
24   read these materials that are provided to you and to
25   prepare to do your show?

Confidential          Neil Cavuto - April 07, 2021

84

1   Sometimes my click didn't work perfect.

2       Q.   (BY MR. GRAY)  All right.  Mr. Cavuto, do

3   you recall whether you specifically asked for this

4   packet regarding the primary races or whether this

5   was something that was done in the ordinary course

6   by your producers who knew this was something you

7   would want?

8       A.   Probably --

9            MR. REGAN:  Objection.

10           You can answer.

11      A.   Yeah.  I'm sorry.

12           Probably the latter.  It's a standard

13  procedure.

14      Q.   (BY MR. GRAY)  All right.  And is it your

15  understanding that this was prepared by Miss Apsell?

16           MR. REGAN:  Objection.

17           You can answer.

18      A.   That's her as the sender.  It could have

19  been her in coordination with others, but that --

20  that would not be surprising since she coordinated a

21  lot of the research for me.

22      Q.   (BY MR. GRAY)  So this could well be a

23  document that had input from multiple people beyond

24  just Miss Apsell?

25      A.   Could be.

Confidential          Neil Cavuto - April 07, 2021

88

1   would probably be focusing on the big bullet-point
2   issues.
3          Q.   Well, regardless of that, I --
4               You've testified, sir, that this West
5   Virginia Primary was a big deal at the time, right?
6          A.   Yes.
7          Q.   And your staff had gone to the trouble to
8   prepare this packet of information about the
9   various -- the West Virginia race, the Ohio race,
10  and the Indiana race.
11              And my question is, sir:  Would it
12  have been your practice as a diligent broadcaster to
13  have read this?
14              MR. REGAN:  Objection.
15              I think he's answered that, but . . .
16              MR. GRAY:  He's -- I'm asking -- he's
17  answered what he --
18       Q.   (BY MR. GRAY)  Mr. Cavuto, I'm not asking
19  what you recall, as to whether or not you remember
20  this.  I understand what -- your testimony there.
21  What I'm asking you is to what your practice would
22  have been.
23              Given the significance of this West
24  Virginia race and the fact that you were going to be
25  covering it on both of your shows, do you believe

Confidential          Neil Cavuto - April 07, 2021

89

 1    that it's likely that you read this packet of

 2    information?

 3        A.   I probably did, along with many other

 4    pieces and other things.  A lot of information comes

 5    my way, and I would have no doubt that I would have

 6    gone through this.

 7        Q.   Take a look at the -- page 6717.  It's got

 8    the "West Virginia Senate Race Overview" page.

 9        A.   (Examined exhibit.)

10        Q.   Do you have that page in front of you,

11    sir?

12             MR. REGAN:  We do.

13        Q.   (BY MR. GRAY)  The third paragraph begins,

14    "Republicans have . . ."

15             Do you see that?

16        A.   (Examined exhibit.)

17        Q.   Are you with me?

18        A.   Yes.

19        Q.   Okay.  Sorry.  I didn't hear you, I

20    apologize.

21             If you look, there's a sentence in

22    there that begins, "Blankenship, who can put

23    personal resources . . ."

24             Do you see that?

25        A.   I do.

Confidential          Neil Cavuto - April 07, 2021

90

1        Q.    Could you read that sentence into the

2    record for us.

3        A.    "Blankenship, who can put personal

4    resources into the race, seems to be running in

5    search of vindication for his 2015 conviction on a

6    misdemeanor charge related to the Upper Big Branch

7    Mine explosion that killed 29 miners.  Either

8    Morrisey or Jenkins" --

9        Q.    Oh.  You can -- I'm sorry.  You can stop

10   there, sir.

11       A.    Okay.  I'm sorry.

12       Q.    You can stop.

13              Have you ever had occasion since you

14   received this packet of information to believe that

15   any of the information supplied therein was

16   inaccurate in any way?

17              MR. REGAN:  Objection.

18              You can answer.

19       A.    No.

20              MR. REGAN:  Jeremy and Karen, the

21   transcript in that last question is showing the word

22   "accurate."  And I -- I will state, Mr. Cavuto, that

23   I think the question was "inaccurate."

24              "Have you ever had any occasion," so

25   on and so forth, "to believe that any of the

Confidential          Neil Cavuto - April 07, 2021

98

1          MR. CAVUTO:   Morning, Republicans.

2     You know what?   We're gonna lose West

3     Virginia if Don Blankenship is allowed to win

4     the Primary and he does win the Primary

5     outright.   Blankenship, of course, is arguing

6     that he -- he's the best qualified for this.

7          Of course, he's a convicted felon.

8     You know the whole background on him, and the

9     party is just eschewing the guy.   Now even

10    threatening to run as a third-party

11    candidate.   There's some ifs, ands, or buts

12    about that, whether it's even allowed in West

13    Virginia.

14          Be that as it may, it's a complicated

15    race that might be more complicated by the

16    possibility a potential pickup for

17    Republicans might not be a pickup at all.

18          So Washington Examiner, White House

19    reporter Gabby Morrongiello and Independent

20    Voter Network business and politics editor

21    Lindsay France.

22          Lindsay, first of all, educate me on

23    the pickup in disdain for Blankenship.   I

24    mean, it's not as if even present polls --

25    and it could change -- give him a shot.   I

Confidential          Neil Cavuto - April 07, 2021

181

```
 1                 UNITED STATES DISTRICT COURT
             SOUTHERN DISTRICT OF WEST VIRGINIA
 2                     CHARLESTON DIVISION

 3   DON BLANKENSHIP,              §
                                   §
 4          Plaintiff,             §
                                   § CASE NO.:
 5   vs.                           §
                                   § 2:19-cv-00236
 6   FOX NEWS NETWORK LLC, et      §
     al,                           §
 7                                 §
            Defendants.            §
 8

 9

10       *******************************************

11                      CONFIDENTIAL

12       REMOTE VIDEOCONFERENCED DEPOSITION OF

13                  NEIL PATRICK CAVUTO

14                    APRIL 7, 2021

15       *******************************************

16

17              CERTIFIED STENOGRAPHIC

18             COURT REPORTER CERTIFICATE

19

20       I, Karen L. D. Schoeve, Registered Diplomate

21   Reporter, Certified Realtime Reporter, and Realtime

22   Systems Administrator, residing in the State of

23   Texas, do hereby certify that the foregoing

24   proceedings were reported remotely by me and that

25   the foregoing transcript constitutes a full, true,
```

Confidential            Neil Cavuto - April 07, 2021

182

1   and correct transcription of my stenographic notes,

2   to the best of my ability and hereby certify to the

3   following:

4       By agreement of all attending attorneys, the

5   witness, NEIL PATRICK CAVUTO, was remotely duly

6   sworn by the officer and that the transcript of the

7   oral deposition is a true record of the testimony

8   given by the witness;

9       That the original deposition was delivered to

10  JEREMY GRAY, custodial attorney;

11      That a copy of this certificate was served on

12  all parties and/or the witness shown herein on

13  _____.

14      That the amount of time used by each party at

15  the deposition is as follows:

16  JEREMY GRAY        - 00 HOUR(S):00 MINUTE(S)
         For the Plaintiff
17
    SHAWN REGAN        - 00 HOUR(S):00 MINUTE(S)
18       For Defendant Fox News Network, LLC

19  JARED M. TULLY      - 00 HOUR(S):00 MINUTE(S)
         For Defendant MSNBC Cable, LLC
20
    CAESAR KALINOWSKI, IV- 00 HOUR(S):00 MINUTE(S)
21       For Defendant American Broadcasting Companies

22  MATTHEW HEINS      - 00 HOUR(S):00 MINUTE(S)
         For Defendant Cable News Network, Inc., and WP
23       Company

24

25

Confidential          Neil Cavuto - April 07, 2021

183

1          I further certify that pursuant to FRCP No.

2    30(f)(i) that the signature of the witness was

3    requested by the witness or a party before the

4    completion of the deposition and the signature is to

5    be returned within 30 days from date of receipt of

6    the transcript.

7          If returned, the attached Changes and Signa-

8    ture Page contains any changes and the reasons

9    therefor.

10         That pursuant to information given to the

11   deposition officer at the time said testimony was

12   taken, the following includes counsel for all

13   parties of record:

14

15   FOR THE PLAINTIFF:

16        JEREMY GRAY, ESQUIRE
          SAAM TAKALOO, ESQUIRE
17        EARLY SULLIVAN WRIGHT GIZER & McRAE LLP
          6420 Wilshire Boulevard, 17th Floor
18        Los Angeles, California 90048
          D: 323.301.4674 (Mr. Gray)
19        D: 323.301.4664 (Mr. Takaloo)
          T: 323.301.4660
20        F: 323.301.4676
          jgray@earlysullivan.com
21        stakaloo@earlysullivan.com

22

     FOR DEFENDANT FOX NEWS NETWORK, LLC:
23
          SHAWN REGAN, ESQUIRE
24        HUNTON ANDREWS KURTH LLP
          200 Park Avenue
25        New York, New York 10166

Confidential          Neil Cavuto - April 07, 2021

184

```
 1        D: 212.309.1204
          T: 212.309.1000
 2        F: 212.309.1100
          sostrower@huntonak.com
 3

 4

     FOR DEFENDANT MSNBC CABLE LLC:
 5
          JARED M. TULLY, ESQUIRE
 6        FROST BROWN TODD LLC
          United Bank Building
 7        500 Virginia Street, East, Suite 1100
          D: 304.348.2404
 8        T: 304.345.0111
          F: 304.345.0115
 9        jtully@fbtlaw.com

10

     FOR DEFENDANT AMERICAN BROADCASTING COMPANIES:
11
          CAESAR KALINOWSKI, IV, ESQUIRE
12        DAVIS WRIGHT TREMAINE, LLP
          920 Fifth Avenue, Suite 3300
13        Seattle, Washington 98104
          D: 206.757.8232
14        T: 206.622.3150
          F: 206.757.7700
15        caesarkalinowski@dwt.com

16

17
     FOR DEFENDANT CABLE NEWS NETWORK, INC.,
18   and WP COMPANY

19        MATTHEW HEINS, ESQUIRE
          WILLIAMS & CONNOLLY LLP
20        725 Twelfth Street, Northwest
          Washington, D.C. 20005
21        D: 202-434-5073
          T: 202.434.5000
22        F: 202.434.5029
          mkjohnson@wc.com
23

24

25
```

185

1        I further certify that I am neither counsel

2   for, related to, nor employed by any of the parties

3   in the action in which this proceeding was taken,

4   and further that I am not financially or otherwise

5   interested in the outcome of the action.

6

7          Subscribed and sworn to on this the ^ CH

8   day of April, 2021.

9

10

11

12   _____

13   Karen L.D. Schoeve, RDR, CRR
     Realtime Systems Administrator
     NCRA Exp. Date:  09-30-21

14   Lexitas Legal
     Firm Registration #736

15   999 Old Eagle School Road, Suite 118
     Wayne, Pennsylvania 19087

16   215-494-7650

17

18

19

20

21

22

23

24

25   Job No. 2021-781298

# EXHIBIT #8

**In the Matter Of:**

*Blankenship vs*

*Fox News Network*

---

*ANDREW NAPOLITANO*

*April 15, 2021*

---



Confidential        Andrew Napolitano - April 15, 2021

1

1          UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF WEST VIRGINIA
2                 CHARLESTON DIVISION

3    DON BLANKENSHIP,           §
                                §
4         Plaintiff,            §
                                §
5    v.                         § Case No.:  2:19-cv-00236
                                §
6    FOX NEWS NETWORK,          §
     L.L.C., et al.             §
7                               §
          Defendants.           §
8
     * * * * * * * * * * * * * * * * * * * * * * * * *
9
            REMOTE VIDEOTAPED ORAL DEPOSITION OF
10               ANDREW PETER NAPOLITANO,
             Designated as "Confidential"
11                   April 15, 2021
     * * * * * * * * * * * * * * * * * * * * * * * * *
12

13        REMOTE VIDEOTAPED ORAL DEPOSITION OF ANDREW PETER

14   NAPOLITANO, produced as a witness and duly sworn, was

15   taken in the above-styled and numbered cause on April

16   15, 2021, from 9:03 a.m. until 2:02 p.m. (Eastern

17   Time), before Suzanne Kelly, RDR, CRR, in and for the

18   State of Texas, reported by stenographic method with

19   all participants appearing remotely from separate

20   locations pursuant to emergency orders related to the

21   COVID-19 pandemic.

22

23   Reported by:  Suzanne Kelly, CSR, RDR, CRR

24   Job Number:  2021-787438

25

Confidential          Andrew Napolitano - April 15, 2021

21

```
 1   from farming to speaking to lecturing, to
 2   teaching in law schools and working at Fox.
 3        Q.  Okay.  Are you the -- or were you the
 4   Senior Judicial Analyst at Fox?
 5                 MR. REGAN:  Objection.
 6                 You can answer.
 7                 THE WITNESS:  When you say "were,"
 8   when are you talking about?
 9   BY MR. SIMPKINS:
10        Q.  At the time -- at the time that you made
11   the representations that Mr. Blankenship was
12   convicted of Manslaughter.
13        A.  The answer is --
14                 MR. REGAN:  Objection.
15                 You can answer.
16                 THE WITNESS:  The answer to your
17   question is "yes."
18   BY MR. SIMPKINS:
19        Q.  Are you the currently the Senior
20   Judicial Analyst at Fox?
21        A.  Yes.
22        Q.  Okay.  When was the last time that you
23   were actually on the Fox broadcast, any of the
24   Fox broadcasts?
25                 MR. REGAN:  Objection.
```

Confidential          Andrew Napolitano - April 15, 2021

                                                        36

1   to jail actually after a really tragic coal

2   mining --

3                  SPEAKER:  He went to jail for

4   Manslaughter after people died in a mine

5   accident.

6                  SPEAKER:  Yes.  Exactly.

7                  SPEAKER:  He will be joining

8   America's Newsroom tomorrow morning.

9                  SPEAKER:  He's going to be on with

10  you tomorrow?

11                 SPEAKER:  Yes.  Let me tell you

12  something about this race that's fascinating, the

13  undecided voter, 24 percent of GOP primary voters

14  are undecided in this race.

15                 SPEAKER:  That's huge.

16                 SPEAKER:  In addition to those that

17  are currently supporting someone, 40 -- excuse

18  me -- 41 percent said they would be willing to

19  change their mind.  So I mean throw that in the

20  bin of undecided.  And then -- that -- that

21  leaves a very --

22                 SPEAKER:  Next week, Tuesday, May

23  1st.

24                 SPEAKER:  Can we go back to the Joe

25  Manchin question for a second?

Confidential        Andrew Napolitano - April 15, 2021

45

1    Q.  Okay.  Now, Exhibit Number 1, the video

2    segment shows you saying he went to jail for

3    Manslaughter after people died in that mine

4    incident in the end.

5              You were -- you just seen that; is

6    that correct?

7    A.  Yes.

8    Q.  You were -- were you referring to

9    Mr. Blankenship when you said, "He went to jail

10   for Manslaughter"?

11   A.  Yes.

12   Q.  Okay.  Judge, it appears that you've had

13   plenty of experience in the legal profession and

14   as a Judge.  Can you describe the crime of

15   Manslaughter to me, please?

16              MR. REGAN:  Objection.

17              You can answer.

18              THE WITNESS:  The use of a

19   dangerous instrumentality in a reckless way that

20   results in death.

21   BY MR. SIMPKINS:

22   Q.  Are you aware of the definition of

23   "Manslaughter" in the state of West Virginia?

24   A.  I would imagine it's comparable to the

25   general definition.

Confidential        Andrew Napolitano - April 15, 2021

86

1        Q.  When was it sent?

2        A.  Well, it is dated 4-25-2018,

3    7:40:33 p.m.

4        Q.  And who received the e-mail?

5        A.  Well, it was sent to me so it probably

6    went to my inbox on my Fox News computer.

7        Q.  Okay.  What is the subject of the

8    e-mail?

9        A.  Do you want me to read what it says?

10       Q.  I'm getting ready to ask you that.  Yes,

11   please.  Please read the message into the record.

12       A.  Please read the subject line into the

13   record?

14       Q.  Read the message into the record.

15            MR. REGAN:  Both.  Why don't you

16   read both?

17            THE WITNESS:  Subject line is:

18   Blankenship's campaign reached out to me...

19            "He's apparently a big admirer of

20   yours and wanted you to know that he wasn't

21   convicted of Manslaughter which you apparently

22   said on "Outnumbered."

23   BY MR. SIMPKINS:

24       Q.  Can you explain what this message is

25   about?

Confidential          Andrew Napolitano - April 15, 2021

131

1    wouldn't know, Mr. Simpkins.

2    BY MR. SIMPKINS:

3         Q.  So far, you've made at least two

4    attempts is that correct, to get on Fox News to

5    correct?

6         A.  So far we have seen Gary Villapiano, my

7    producer make numerous attempts.

8         Q.  Thank you.  Can you explain what was

9    meant by, "The Judge asked if he could correct

10   the record on Senate candidate Don Blankenship's

11   legal record"?

12                  MR. REGAN:  Objection.

13                  THE WITNESS:  I mean it's obvious,

14   I mean even though I didn't write this and I

15   haven't seen it, it's obviously referring to what

16   appears below, unfairly prosecuted, properly

17   acquitted, never should have gone to jail.

18   BY MR. SIMPKINS:

19        Q.  Okay.  And "Judge" means you in the

20   context of this e-mail; is that correct?

21        A.  I would assume so.

22        Q.  And does "he" mean you in the context of

23   this e-mail?

24                  MR. REGAN:  Objection.

25                  THE WITNESS:  No.  The "he" means

Confidential          Andrew Napolitano - April 15, 2021

137

1      A.   Yes.

2      Q.   Do you believe it should have been

3   important to Fox to correct the record, Judge?

4             MR. REGAN:   Objection.

5             THE WITNESS:   I don't set policy or

6   make management --

7   BY MR. SIMPKINS:

8      Q.   Does Fox have any policies in regard to

9   ethics, accurate reporting, truthful reporting,

10  balanced reporting?

11            MR. REGAN:   Objection.

12            You can answer.

13            THE WITNESS:   No written policies

14  of which I'm aware.

15  BY MR. SIMPKINS:

16     Q.   Thank you.

17            And once again, I think I may have

18  asked you this question.

19            You are Fox News channel's Senior

20  Judicial Analyst; correct?

21     A.   You have answered it and I have

22  asked -- you have asked and I've answered it.

23     Q.   It was reckless for Kaplan, Robinson and

24  Hadden to disregard your pitch to correct the

25  record, wasn't it, Judge?

Confidential        Andrew Napolitano - April 15, 2021

160

```
 1            MR. REGAN:  Objection.
 2            THE WITNESS:  If I had been the
 3   judge, the case would have been thrown out at the
 4   end of the Government's case.
 5   BY MR. SIMPKINS:
 6        Q.  Thank you.  I'm going to ask you a
 7   little bit differently.  Is it unusual for a
 8   person who has no criminal history, no criminal
 9   record to be sentenced to a year in jail for a
10   non-violent misdemeanor conviction?
11        A.  It's beyond unusual.  It's unheard of.
12        Q.  Is it even more unusual in federal cases
13   for a person who has no prior criminal record to
14   be sentenced to a year in jail for a non-violent
15   misdemeanor conviction?
16        A.  Yes.
17        Q.  Okay.  In parentheses the e-mail states,
18   "The judge could either do it as a segment or
19   just a throw away at the end of the segment."
20            Do you -- can you explain by what
21   was meant by, "The judge could do it as a segment
22   or just a throw away at the end of the segment"?
23            MR. REGAN:  Objection.
24            You can answer.
25            THE WITNESS:  As a general matter,
```

www.LexitasLegal.com/Premier    Lexitas              888-267-1200

Confidential          Andrew Napolitano - April 15, 2021

163

1      A.  Well, I can't accept the premise of

2  "allowed" and I did make a correction at the

3  beginning of the Cavuto segment, the one that

4  immediately followed Mr. Cavuto interviewing

5  Mr. Blankenship, the tape of which we have

6  viewed.

7      Q.  That was on May 22nd after the May 8th

8  primary; correct?

9      A.  I don't know the date but I will accept

10  your representation as to what the date was,

11  Mr. Simpkins.

12      Q.  So, it was after the May 8th the

13  primary?

14      A.  May 28th is after May 8th.

15      Q.  So it was after the primary?

16      A.  Yes.

17      Q.  Okay.  Are you aware Mr. Blankenship was

18  sentenced to jail prior to his appeal?

19      A.  I don't know that.

20      Q.  Do you believe the jail sentence should

21  have been postponed until after all appeal

22  proceedings were completed?

23          MR. REGAN:  Objection.

24          Go ahead and answer.

25          THE WITNESS:  I mean I think I told

164

1    you that if I were the trial judge, he wouldn't

2    have gone to jail and he wouldn't have been

3    convicted because I would have thrown the case

4    out.

5              The trial judge obviously, who

6    knows a lot more about the case than I do, had a

7    different view.

8    BY MR. SIMPKINS:

9       Q.  Do you agree that your pitch to

10   Gavin Hadden was newsworthy?

11              MR. REGAN:  Objection.

12              MR. SIMPKINS:  I didn't hear the

13   word before Gavin's name.  My what?

14   BY MR. SIMPKINS:

15      Q.  Gary Villapiano sent an e-mail to

16   Gavin -- Gavin Hadden and he asked for a favor.

17   You wanted to correct the record and say that

18   Mr. Blankenship was unfairly prosecuted and was

19   properly acquitted?

20      A.  Right.

21      Q.  That pitch was made to Gavin Hadden, do

22   you think that pitch was newsworthy?

23      A.  We've been through this before.  I don't

24   decide, which I did, but I don't decide what's

25   newsworthy at Fox.

166

1      Q.  Okay.  All right.  Have you had a chance

2   to review it?

3      A.  Yes, ma'am.

4      Q.  Okay.  Who sent the e-mail?

5      A.  It says it was sent by Gary Villapiano.

6      Q.  And when was it sent?

7      A.  It said it was sent Monday, April 30,

8   2018, 4:43 p.m.

9      Q.  Was it received by Gavin Hadden?

10      A.  I don't know that.

11      Q.  It says, "To Gavin Hadden," so would you

12   agree that Gavin Hadden, was the one that it was

13   sent to?

14      A.  It says it was sent to Gavin Hadden.

15      Q.  Okay.  What was the subject of the

16   e-mail?

17      A.  "Forward:  Judge Napolitano tomorrow."

18      Q.  Okay.  And would you read the message

19   into the record?

20      A.  "Hi Gav," G-a-v, "I know you guys are

21   producing in the a.m... just wanted to make sure

22   you saw..."

23      Q.  What was the show that -- that Hadden

24   produced?

25      A.  Mr. Hadden is the executive producer of

Confidential          Andrew Napolitano - April 15, 2021

167

1    Fox and friends.

2        Q.  Do you know what the message was about

3    from Villapiano to Hadden?

4        A.  I don't.

5        Q.  Was the next morning the day of the

6    debate, Judge?

7        A.  I don't know.  You would have to refresh

8    my memory, Mr. Simpkins?  What was the date of

9    the debate?

10       Q.  May 1.

11       A.  That would have been the next morning.

12   This e-mail about which you're asking me is dated

13   Monday, April 30.

14       Q.  So it was one day prior to the debate;

15   correct?

16       A.  Yes.

17       Q.  Okay.  Go to the second e-mail on 6-22

18   of Exhibit 3.  Starts out, "Hey, Gary."

19       A.  Yes.

20       Q.  Who sent the e-mail?

21       A.  It says it is sent by Gavin Hadden.

22       Q.  When was the e-mail sent?

23       A.  It says it was sent Monday, April 30,

24   2018, at 4:43 p.m.

25       Q.  And that was sent to Gary Villapiano; is

Confidential          Andrew Napolitano - April 15, 2021

168

1    that correct?

2         A.  Yes.

3         Q.  And then it was cc'd to Stephanie

4    Freeman?

5         A.  Yes.

6         Q.  Would you read the message?

7         A.  "Hey, Gary.  I love the topic on the

8    caravan.  Would like to stick with that."

9         Q.  Can you tell me what this message is

10   about?

11        A.  I have no recollection of this,

12   Mr. Simpkins.

13        Q.  If you don't know, you don't know?

14        A.  I don't know.

15        Q.  Okay.  If you would go to the top of

16   6622 of Exhibit 3, looks like an e-mail from

17   Villapiano to Gavin Hadden?

18        A.  Yes.  I'm not laughing at you.  I'm

19   laughing at the phrase Gary used in that e-mail.

20        Q.  Yeah.  We're getting ready to talk about

21   that.

22             So it was sent by Gary Villapiano;

23   is that correct?

24        A.  Yes.

25        Q.  Sent on May -- or April the 30th, 2018

Confidential          Andrew Napolitano - April 15, 2021

169

1    at approximately 8:45 p.m.?

2         A.   I don't know that Gary sent it.  It says

3    Gary sent it.  It says it was sent 4:30, 2018,

4    8:45:39 p.m.  It says it was sent to

5    Gavin Hadden.

6         Q.   Okay.  What is the subject of the

7    e-mail?

8         A.   Just Re:  Judge Napolitano Tomorrow.

9         Q.   Would you read the message into the

10   record, Judge?

11        A.   "Of course... but could you throw him a

12   bone about Blankenship at the very end?"

13        Q.   Okay.  What was meant by "could -- could

14   you throw him a bone about Blankenship at the

15   very end?"

16             MR. REGAN:  Objection.

17             You can answer.

18             THE WITNESS:  You know, you'd have

19   to ask Gary, but the phrase generally means,

20   could you do him a favor.

21   BY MR. SIMPKINS:

22        Q.   Okay.  And is that the third time or

23   numerous times that you requested that the Fox

24   allow you to correct the record?

25        A.   I don't know how many times this was

Confidential        Andrew Napolitano - April 15, 2021

187

1    change.
2                Thank you very much.  We'll watch
3    very, very closely.
4                MR. BLANKENSHIP:  Thank you.  I
5    appreciate it.
6                MR. CAVUTO:  All right.  You know,
7    he might not be so crazy, Don Blankenship running
8    as a third-party candidate in a state that
9    supposedly has a sore loser law and says that he
10   can't.
11               Well, according to Judge
12   Napolitano, oh, yes, he can; right?
13               MR. NAPOLITANO:  Let me say first
14   that Don Blankenship is correct.  I once
15   inadvertently said on air that he was a convicted
16   felon.  He was not.  He was acquitted of the
17   charges, the felony charges against him.
18               The only thing he was convicted of
19   was a misdemeanor.  A definition of a
20   "misdemeanor" is the maximum penalty is one year
21   or less.
22               Definition of a "felony" is the
23   maximum penalty is one year or more.  He was
24   convicted of the least of all of the charges
25   against him.

230

```
 1            UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF WEST VIRGINIA
 2              CHARLESTON DIVISION
 3   DON BLANKENSHIP,      §
                           §
 4        Plaintiff,       §
                           §
 5   v.                    § Case No.:  2:19-cv-00236
                           §
 6   FOX NEWS NETWORK,     §
     L.L.C., et al.        §
 7                         §
          Defendants.      §
 8
            REMOTE VIDEOTAPED ORAL DEPOSITION OF
 9               ANDREW PETER NAPOLITANO
10                  April 15, 2021

11
          I, Suzanne Kelly, RDR, CRR, in and for the State
12   of Texas hereby certify to the following:

13        That the witness, ANDREW PETER NAPOLITANO, was
     duly sworn by the officer and that the transcript of
14   the videotaped oral deposition is a true record of the
     testimony given by the witness;

15
          That the deposition transcript was submitted on
16   the _____ day of _____, 2021, to the witness for
     examination, signature and return to Suzanne Kelly by
17   the _____ day of _____, 2021;

18        That the amount of time used by each party at the
     deposition is as follows:
19
          Mr. Simpkins:  Three hours and 34 minutes used;
20
          That pursuant to the information given to the
21   deposition officer at the time said testimony was
     taken, the following includes counsel for all parties
22   of record:

23

24

25
```

Confidential          Andrew Napolitano - April 15, 2021

231

```
 1   Jeffery S. Simpkins, Esq.
     SIMPKINS LAW
 2   102 E. 2nd Avenue
     Williamson, West Virginia 25661
 3   304.235.2735
     simpkinslawoffice@gmail.com
 4
     Matthew Heins, Esq.
 5   WILLIAMS & CONNOLLY, L.L.P.
     725 12th Street NW
 6   Washington, D.C. 20005
     202.434.5073
 7   mheins@wc.com
 8   BreiAnne Varner Redd, Esq.
     DICKIE McCAMEY
 9   2001 Main Street
     Suite 501
10   Wheeling, West Virginia 26003-2854
     304.233.1022
11   bredd@dmclaw.com
12   Jared M. Tully, Esq.
     FROST BROWN TODD, L.L.C.
13   United Bank Building
     500 Virginia Street, East
14   Suite 1100
     Charleston, West Virginia 25301
15   304.348.2404
     jtully@fbtlaw.com
16
     Shawn Patrick Regan, Esq.
17   HUNTON ANDREWS KURTH, L.L.P.
     200 Park Avenue
18   New York, New York 10166
     212.309.1046
19   sregan@HuntonAK.com
20   J. Zak Ritchie, Esq.
     HISSAM FORMAN DONOVAN RITCHIE, P.L.L.C.
21   707 Virginia Street East
     Suite 260
22   Charleston, West Virginia 25301
     304.615.2887
23   zritchie@hfdrlaw.com
24
25
```

Confidential        Andrew Napolitano - April 15, 2021

232

```
 1  Caesar Kalinowski, IV, Esq.
    DAVIS WRIGHT TREMAINE
 2  920 Fifth Avenue
    Suite 3300
 3  Seattle, Washington 98104
    206.757.8282
 4  caesarkalinowski@dwt.com
 5       I further certify that I am neither counsel for,
    related to, nor employed by any of the parties or
 6  attorneys in the action in which this proceeding was
    taken, and further that I am not financially or
 7  otherwise interested in the outcome of the action.
 8       In witness whereof, I have this date subscribed my
    name on this __ day of _____, 2021.
 9

10

11            Suzanne Kelly
              <%signature%>
12            Suzanne Kelly, RDR, CRR
              Expiration Date:  12-31-18
13            LEXITAS
              Firm Registration No. 736
14            Suite 118
              999 Old Eagle School Road
15            Wayne, Pennsylvania 19087-1707
              215.494.7650
16
    JOB NO.:  2021-787438
17

18

19

20

21

22

23

24

25
```

# EXHIBIT #9

**In the Matter Of:**

*Blankenship vs*

*Fox News Network LLC*

*KARRAH LEVINE*

*April 23, 2021*



1

1      UNITED STATES DISTRICT COURT
       SOUTHERN DISTRICT OF WEST VIRGINIA
2           CHARLESTON DIVISION

3   DON BLANKENSHIP,              §
                                  §
4         Plaintiff,              §
                                  §
5   v.                            § Case No.:  2:19-cv-00236
                                  §
6   FOX NEWS NETWORK,             §
    L.L.C., et al.                §
7                                 §
          Defendants.             §
8
    * * * * * * * * * * * * * * * * * * * * * * * * *
9
          REMOTE VIDEOTAPED ORAL DEPOSITION OF
10              KARRAH KAPLAN LEVINE
          Designated as "Confidential"
11              April 23, 2021
    * * * * * * * * * * * * * * * * * * * * * * * * *
12

13       REMOTE VIDEOTAPED ORAL DEPOSITION OF KARRAH KAPLAN

14   LEVINE, produced as a witness and duly sworn, was

15   taken in the above-styled and numbered cause on April

16   23, 2021, from 1:13 p.m. until 3:53 p.m. (Eastern

17   Time), before Suzanne Kelly, RDR, CRR, in and for the

18   State of Texas, reported by stenographic method with

19   all participants appearing remotely from separate

20   locations pursuant to emergency orders related to the

21   COVID-19 pandemic.

22

23   Reported by:  Suzanne Kelly, CSR, RDR, CRR

24   Job Number:  2021-789962

25

Confidential          Karrah Levine - April 23, 2021

10

1      Q.  Okay.  Are you currently the senior

2  booking producer for "The Story with Martha

3  MacCallum"?

4      A.  No.

5      Q.  Were you the senior booking producer for

6  "The Story with Martha MacCallum" in 2018?

7      A.  Yes.

8      Q.  Okay.  Now, "The Story with Martha

9  MacCallum," is a show that was telecast by -- by

10  Fox News Channel on weekdays at 3:00 p.m.; is

11  that correct?  During 2018?  Or now?

12      A.  Now?

13      Q.  Is it now?

14      A.  Yes.  It is at 3:00 o'clock now and in

15  2018, it was at 7:00 p.m.

16      Q.  What was the reason behind Fox News

17  Channel moving "The Story with Martha MacCallum"

18  from to a prime time spot of 7:00 to the 3:00

19  p.m.?

20              MR. REGAN:  Objection.

21              You can answer.

22              THE WITNESS:  I don't know.

23  BY MR. SIMPKINS:

24      Q.  You don't know whether or not it was

25  punitive in nature?

USCA4 Appeal: 22-1198    Doc: 57    Filed: 05/25/2022    Pg: 151 of 307
Case 2:19-cv-00236    Document 953-9    Filed 06/23/21    Page 5 of 7 PageID #: 16355

125

```
 1                UNITED STATES DISTRICT COURT
             SOUTHERN DISTRICT OF WEST VIRGINIA
 2                   CHARLESTON DIVISION

 3   DON BLANKENSHIP,      §
                           §
 4        Plaintiff,       §
                           §
 5   v.                    § Case No.:  2:19-cv-00236
                           §
 6   FOX NEWS NETWORK,     §
     L.L.C., et al.        §
 7                         §
          Defendants.      §
 8
              REMOTE VIDEOTAPED ORAL DEPOSITION OF
 9                   KARRAH KAPLAN LEVINE

10                   April 23, 2021

11

12        I, Suzanne Kelly, RDR, CRR, in and for the State
     of Texas hereby certify to the following:

13        That the witness, KARRAH KAPLAN LEVINE, was duly
     sworn by the officer and that the transcript of the
14   videotaped oral deposition is a true record of the
     testimony given by the witness;

15
          That the deposition transcript was submitted on
16   the _____ day of _____, 2021, to the witness for
     examination, signature and return to Suzanne Kelly by
17   the _____ day of _____, 2021;

18        That the amount of time used by each party at the
     deposition is as follows:

19
          Mr. Simpkins:  One hour and 51 minutes used;
20        Mr. Regan:  Two minutes used;

21        That pursuant to the information given to the
     deposition officer at the time said testimony was
22   taken, the following includes counsel for all parties
     of record:

23

24

25
```

126

```
 1   Jeffery S. Simpkins, Esq.
     SIMPKINS LAW
 2   102 E. 2nd Avenue
     Williamson, West Virginia 25661
 3   304.235.2735
     simpkinslawoffice@gmail.com
 4
     Shannon Rutherford, Esq.
 5   FROST BROWN TODD, L.L.C.
     United Bank Building
 6   500 Virginia Street, East
     Suite 1100
 7   Charleston, West Virginia 25301
     304.348.2404
 8   srutherford@fbtlaw.com

 9   Shawn Patrick Regan, Esq.
     HUNTON ANDREWS KURTH, L.L.P.
10   200 Park Avenue
     New York, New York 10166
11   212.309.1046
     sregan@HuntonAK.com
12
     J. Zak Ritchie, Esq.
13   HISSAM FORMAN DONOVAN RITCHIE, P.L.L.C.
     707 Virginia Street East
14   Suite 260
     Charleston, West Virginia 25301
15   304.615.2887
     zritchie@hfdrlaw.com
16
     Matthew Heins, Esq.
17   WILLIAMS & CONNOLLY, L.L.P.
     725 12th Street NW
18   Washington, D.C. 20005
     202.434.5073
19   mheins@wc.com

20        I further certify that I am neither counsel for,
     related to, nor employed by any of the parties or
21   attorneys in the action in which this proceeding was
     taken, and further that I am not financially or
22   otherwise interested in the outcome of the action.

23

24

25
```

Confidential        Karrah Levine - April 23, 2021

127

1        In witness whereof, I have this date subscribed my
name on this __ day of _____, 2021.

2

3

4                    *Suzanne Kelly*
                <<signature>>
5              Suzanne Kelly, RDR, CRR
               Expiration Date:  12-31-18
6              LEXITAS
               Firm Registration No. 736
7              Suite 118
               999 Old Eagle School Road
8              Wayne, Pennsylvania 19087-1707
               215.494.7650
9
        JOB NO.:  2021-789962
10

00:-58:-161
12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT #10

**In the Matter Of:**

*BLANKENSHIP vs*

*FOX NEWS NETWORK*

---

*DON BLANKENSHIP*

*April 29, 2021*

---



1

1          UNITED STATES DISTRICT COURT
2        SOUTHERN DISTRICT OF WEST VIRGINIA

3              CHARLESTON DIVISION

4    -------------------------X

5    DON BLANKENSHIP,          :

6                Plaintiff,:   Case No.

7         v.               :   2:19-cv-00236

8    FOX NEWS NETWORK LLC,    :

9    et al.,                  :

10               DefendantS.:

11   -------------------------X

12

13   REMOTE VIDEOTAPED STENOGRAPHIC DEPOSITION OF

14              DON BLANKENSHIP

15          Thursday, April 29, 2021

16                9:18 a.m.

17

18

19

20

21   Job No.:  2021-788054

22   Pages:  1 - 507

23   STENOGRAPHICALLY REPORTED BY:

24   GISELLE MITCHELL-MARGERUM, RPR, CRI, CCR, LCR, CSR

Don Blankenship - April 29, 2021

```
                                                              2
1            Deposition of DON BLANKENSHIP, held remotely,

2    via videoconference at:

3

4

5            VIA VIDEOCONFERENCE

6

7

8

9            Pursuant to agreement, before Giselle

10   Mitchell-Margerum, Registered Professional Reporter,

11   Certified Reporting Instructor, Licensed Court Reporter

12   (TN), Certified Court Reporter (GA), Certified Court

13   Reporter (WA), Certified Shorthand Reporter (OR), and

14   Notary Public (Washington, D.C.).

15

16

17

18

19

20

21

22

23

24
```

Don Blankenship - April 29, 2021

263

1    was it coal gas?  Because the science purely

2    shows that it was natural gas.

3            Or asked the question, "What is the

4    best way to prevent an explosion in the event

5    of gas."  The answer is, a large volume of air

6    flow.  And ask, "Who was responsible for the

7    air flow being reduced.  Is it true that, as

8    Blankenship says, that the Government reduced

9    the air flow?"

10           Had y'all taken on that approach,

11   which is what the founders of the country

12   intended for you to do -- hold the Government

13   responsible, instead of blaming some

14   individual being attacked by the Government --

15   I would have been in great shape.

16           And when I was able to speak

17   directly to the audience at the Fox debate on

18   May 1st 2018, the poll change was remarkable.

19           And, as proven during the trial,

20   when people heard the truth, and you get a

21   12/0 vote against the cheating prosecution,

22   40 miles from the mine disaster, it speaks

23   volumes about how much -- how much the lying

24   damages people; and how much it's damaging the

Don Blankenship - April 29, 2021

505

```
1                   REPORTER'S   CERTIFICATE

2

3        I, GISELLE MITCHELL-MARGERUM, the undersigned,
    a Registered Professional Reporter, Certified
4   Reporting Instructor, Licensed Court Reporter, and
    Certified Court Reporter, do hereby certify:

5
         That the witness, DON BLANKENSHIP, before
6   examination was remotely duly sworn to testify to
    the truth, the whole truth, and nothing but the
7   truth.

8        That the foregoing deposition was taken
    remotely stenographically by me on Thursday, April
9   29, 2021, and thereafter was transcribed by me, and
    that the deposition is a full, true, and complete
10  transcript of the testimony, including questions
    and answers, and objections, motions and exceptions
11  made by counsel.

12       That reading and signing was not requested;
    and that I am neither attorney nor counsel for, nor
13  related to or employed by, any of the parties to
    the action in which this deposition was taken; and
14  that I have no interest, financial or otherwise, in
    this case.

15

16       IN WITNESS WHEREOF, I have hereunto set
    my hand this 4th day of May        2021.

17

18

19

20

21  GISELLE MITCHELL-MARGERUM, RPR, CRI, CCR, LCR, CSR

22

23

24
```

# EXHIBIT #11

**In the Matter Of:**

*BLANKENSHIP vs*

*FOX NEWS NETWORK*

*DONALD BLANKENSHIP*

*April 30, 2021*



1

1          UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF WEST VIRGINIA
2                CHARLESTON DIVISION

3    DON BLANKENSHIP,                §
                                     §
4             Plaintiff,             §
                                     § CASE NO.:
5    vs.                             §
                                     § 2:19-cv-00236
6    FOX NEWS NETWORK LLC,           §
     et al.,                         §
7                                    §
              Defendants.            §
8

9

10     ********************************************

11                    CONFIDENTIAL

12   REMOTE REALTIMED VIDEOCONFERENCED DEPOSITION OF

13        DONALD LEON BLANKENSHIP, VOLUME 2

14                 APRIL 30, 2021

15     ********************************************

16

17

18

19

20

21

22

23

24

25   Job No. 2021-788055

Confidential        Donald Blankenship - April 30, 2021

2

1           REMOTE VIDEOCONFERENCE DEPOSITION OF

2    DONALD LEON BLANKENSHIP, VOLUME 2, produced as a

3    witness at the instance of the "Noticing

4    Defendants," and remotely duly sworn by agreement of

5    all counsel, was taken in the above-styled and

6    numbered cause on April 30, 2021, from 9:34 a.m. to

7    6:24 p.m. Eastern Standard Time, before Karen L. D.

8    Schoeve, RDR, CRR, reported remotely by computerized

9    machine shorthand, pursuant to the Federal Rules of

10   Civil Procedure and the provisions stated on the

11   record or attached hereto.

12           This deposition is being conducted

13   remotely in accordance with the current Emergency

14   Order regarding the COVID-19 State of Disaster of

15   the World.

16       REPORTER'S NOTE:  Please be advised that an

17   UNCERTIFIED ROUGH DRAFT version of this transcript

18   exists.  If you are in possession of said rough

19   draft, please replace it immediately with this

20   CERTIFIED FINAL TRANSCRIPT.

21       Please note that the quality of a Zoom

22   videoconference and transmission of data and

23   overspeaking causes audio distortion which disrupts

24   the process of preparing a videoconference

25   transcript.

Confidential        Donald Blankenship - April 30, 2021

                                                          33

1        Q.   And you responded to Mr. Thomas, correct?

2        A.   Yes.

3        Q.   And you said:  "Greg, I have decided not

4   to go to wherever is planned today.  The chances of

5   our winning are next to nil and I need a break

6   anyway.  Send someone to read something."  Correct?

7        A.   Yes.

8        Q.   And do you recall that you also expressed

9   similar conclusions about your chances of winning at

10  that time to Gwen Thomas?

11            MR. SIMPKINS:  Objection as to form.

12       A.   I may have.  I was fortunate at that time

13  to -- that Greg -- in fact, we met and discussed

14  whether we could win.  I don't know if it was a few

15  days before this or a few days after.

16            He convinced me that once I got on Fox

17  debate publicly and was able to speak for myself

18  rather than to try to fight through the media's eyes

19  and the false commercials that the communist group

20  was running, that we could win.  And, sure enough,

21  after the debate, we took the lead and the

22  defamation increased.

23       Q.   (BY MR. FUZESI)  Well, sir, as of

24  April 25th, 2018, what you said in this e-mail was

25  "the chances of our winning are next to nil,"

Confidential        Donald Blankenship - April 30, 2021

34

1    correct?

2        A.   Yeah.   Next to nil turned out to be the

3    next -- you know, it wasn't nil, so we were on the

4    verge of winning.   The polls were showing us double

5    digits after the debate.

6        Q.   All right.  Well, I'm just talking about

7    this -- at this point in time, April 25th.  Correct?

8        A.   I was just explaining that at times,

9    probably from around March 20 or so to about this

10   time, it was my opinion that we were sliding down,

11   after having gained heavily, and that was the reason

12   in some of the e-mails you showed yesterday I was

13   trying to improve the performance of the campaign

14   team and refocus the strategy and make sure that we

15   were doing what we could; otherwise, we needed to,

16   you know, just quit running around spending money.

17              So the campaign team, including

18   primarily Greg, convinced me to continue, and it

19   turned out to be true, that we could win.

20       Q.   Well, you ultimately lost the election,

21   correct?

22       A.   Yeah.  Because of you guys.  I mean, you

23   know, it's not many lunatics that went to prison for

24   manslaughter and are convicted felons and racists

25   and all that are gonna win election, so y'all made

Confidential          Donald Blankenship - April 30, 2021

260

```
 1                 UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF WEST VIRGINIA
 2                     CHARLESTON DIVISION

 3   DON BLANKENSHIP,                §
                                     §
 4            Plaintiff,             §
                                     § CASE NO.:
 5   vs.                             §
                                     § 2:19-cv-00236
 6   FOX NEWS NETWORK LLC, et        §
     al,                             §
 7                                   §
              Defendants.            §
 8

 9

10      ********************************************

11                       CONFIDENTIAL

12      REMOTE VIDEOCONFERENCED DEPOSITION OF

13         DONALD LEON BLANKENSHIP, VOLUME 2

14                    APRIL 30, 2021

15      ********************************************

16

17            CERTIFIED STENOGRAPHIC

18           COURT REPORTER CERTIFICATE

19

20        I, Karen L. D. Schoeve, Registered Diplomate

21   Reporter, Certified Realtime Reporter, and Realtime

22   Systems Administrator, residing in the State of

23   Texas, do hereby certify that the foregoing

24   proceedings were reported remotely by me and that

25   the foregoing transcript constitutes a full, true,
```

Confidential        Donald Blankenship - April 30, 2021

261

1   and correct transcription of my stenographic notes,

2   to the best of my ability and hereby certify to the

3   following:

4        By agreement of all attending attorneys, the

5   witness, DONALD LEON BLANKENSHIP, VOLUME 2, was

6   remotely duly sworn by the officer and that the

7   transcript of the oral deposition is a true record

8   of the testimony given by the witness;

9        That the original deposition was delivered to

10  STEPHEN FUZESI, custodial attorney;

11       That a copy of this certificate was served on

12  all parties and/or *the witness shown herein on

13  _____.

14       That the amount of time used by each party at

15  the deposition is as follows:

16

17       All "Noticing Defendants":

18            14 hours:12 minutes

19

20       I further certify that pursuant to FRCP No.

21  30(f)(i) that the signature of the witness was

22  requested by the witness or a party before the

23  completion of the deposition and the signature is to

24  be returned within 30 days from date of receipt of

25  the transcript.

Confidential          Donald Blankenship - April 30, 2021

262

1          If returned, the attached Changes and Signa-

2     ture Page contains any changes and the reasons

3     therefor.

4          That pursuant to information given to the

5     deposition officer at the time said testimony was

6     taken, the following includes counsel for all

7     parties of record:

8     FOR THE PLAINTIFF:

9          ERIC EARLY, ESQUIRE
           EARLY SULLIVAN WRIGHT GIZER & McRAE LLP
10         6420 Wilshire Boulevard, 17th Floor
           Los Angeles, California 90048
11         D: 323.301.4674 (Mr. Gray)
           D: 323.301.4664 (Mr. Takaloo)
12         T: 323.301.4660
           F: 323.301.4676
13         eearly@earlysullivan.com

14    -and-

15         JEFFREY S. SIMPKINS, ESQUIRE
           C.M. SPARKS, ESQUIRE
16         SIMPKINS LAW OFFICE, PLLC
           102 West 2nd Avenue
17         Williamson, West Virginia 25661
           T: 302.235.2735
18         simpkinslawoffice@gmail.com

19         -and-

20         JAMES McCALL CAGLE, ESQUIRE
           1018 Kanawha Blvd. E., Suite 1200
21         Charleston, WV 25301- 2827
           T: 304.342.3174
22         F: 304.342.0448
           caglelaw@aol.com

23

24

25

Confidential          Donald Blankenship - April 30, 2021

263

```
 1   FOR DEFENDANT FOX NEWS NETWORK, LLC:

 2        SHAWN PATRICK REGAN, ESQUIRE
          SILVIA OSTROWER, ESQUIRE
 3        HUNTON ANDREWS KURTH LLP
          200 Park Avenue
 4        New York, New York 10166
          D: 212.309.1204
 5        T: 212.309.1000
          F: 212.309.1100
 6        sregan@huntonAK.com
          sostrower@huntonAK.com
 7
     -and-
 8
          SONA REWARI, ESQUIRE
 9        HUNTON ANDREWS KURTH LLP
          2200 Pennsylvania Avenue NW
10        Washington, DC 20037
          D: 202.955.1974
11        T: 202 955 1500
          F: 202 778 2201
12        srewari@HuntonAK.com

13   -and-

14        J. ZAK RITCHIE, ESQUIRE
          HISSAM FORMAN DONOVAN & RITCHIE LLP
15        707 Virginia Street East, Suite 260
          Charleston, West Virginia 25301
16        D: 304-615-2887
          T: 681-265-3802
17        zritchie@hfdrlaw.com

18
     FOR DEFENDANT MSNBC CABLE, LLC:
19
          JARED M. TULLY, ESQUIRE
20        FROST BROWN TODD LLC
          United Bank Building
21        500 Virginia Street East, Suite 1100

22        D: 304.348.2404
          T: 304.345.0111
23        F: 304.345.0115
          jtully@fbtlaw.com
24
     -and-
25
```

Confidential          Donald Blankenship - April 30, 2021

264

```
 1          KEVIN SHOOK, ESQUIRE
            FROST BROWN TODD LLC
 2          One Columbus Center
            10 West Broad Street, Suite 2300
 3          Columbus, Ohio 43215
            D: 614.559.7214
 4          T: 614.464.1211
            F: 614.464.1737
 5          kshook@fbtlaw.com

 6

 7   FOR DEFENDANT AMERICAN BROADCASTING COMPANIES:

 8          ERIC J. FEDER, ESQUIRE
            DAVIS WRIGHT TREMAINE, LLP
 9          920 Fifth Avenue, Suite 3300
            Seattle, Washington 98104
10          D: 206.757.8232
            T: 206.622.3150
11          F: 206.757.7700
            ericfeder@dwt.com
12          -admitted pro hac vice-

13          -and-

14          REPRESENTING ABC AND OTHER DEFENDANTS:

15          SEAN P. McGINLEY, ESQUIRE
            DiPIERO SIMMONS McGINLEY & BASTRESS, PLLC
16          604 Virginia Street, East
            Charleston, WV 25301
17          T: 304.342.0133
            sean.mcginley@dbdlawfirm.com

18

19   FOR DEFENDANT ELI LEHRER:

20          JENNIFER S. JACKMAN, ESQUIRE
            WHITEFORD TAYLOR & PRESTON
21          1800 M Street, NW, Suite 450N
            Washington, DC 20036

22
            T: 202-659-6800
23          F: 202-327-6144
            jjackman@wtplaw.com

24
     -and-
25
```

Confidential          Donald Blankenship - April 30, 2021

265

```
 1        BREIANNE VARNER REDD, ESQUIRE
          DICKIE MCCAMEY & CHILCOTE
 2        2001 Main Street, Suite 501
          Wheeling, WV 26003-2854
 3        T: 304.233-1022
          F: 304.233.1026
 4        bredd@dmclaw.com

 5

    FOR DEFENDANT CABLE NEWS NETWORK, INC.,
 6  and WP COMPANY:

 7        STEPHEN FUZESI, ESQUIRE
          MATTHEW HEINS, ESQUIRE
 8        MINDY JOHNSON, ESQUIRE
          WILLIAMS & CONNOLLY LLP
 9        725 Twelfth Street, Northwest
          Washington, D.C. 20005
10        D: 202.434.5181
          T: 202.434.5000
11        F: 202.434.5029
          sfuzesi@wc.com
12        mheins@wc.com
          mjohnson@wc.com
13

14  FOR DEFENDANT [NOT SUPPLIED TO COURT REPORTER]:

15        BARBARA ALLEN-SAMPLES, ESQUIRE
          DAVID HENDRICKSON, ESQUIRE
16        HENDRICKSON & LONG, PLLC
          214 Capitol Street
17        Charleston, WV 25301
          T: 304-346-5500
18        F: 304-346-5515
          bsamples@handl.com
19        dhendrickson@handl.com

20

21       I further certify that I am neither counsel for,

22  related to, nor employed by any of the parties in

23  the action in which this proceeding was taken, and

24  further that I am not financially or otherwise

25  interested in the outcome of the action.
```

Confidential          Donald Blankenship - April 30, 2021

266

1

2              Subscribed and sworn to on this the 2nd

3    day of May, 2021.

4

5

6

7    _____

8    Karen L.D. Schoeve, RDR, CRR
     Realtime Systems Administrator
     NCRA Exp. Date:  09-30-21

9    Lexitas Legal
     Firm Registration #736

10   999 Old Eagle School Road, Suite 118
     Wayne, Pennsylvania 19087

11   215-494-7650

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Job No. 2021-788055

# EXHIBIT #12

```
 1              UNITED STATES DISTRICT COURT

 2            SOUTHERN DISTRICT OF WEST VIRGINIA

 3                   CHARLESTON DIVISION

 4

 5   DON BLANKENSHIP,                    )
                                         )
 6              PLAINTIFF,               )
                                         )  CASE NO. 2:19-cv-00236
 7         VS.                           )
                                         )
 8   FOX NEWS NETWORK, LLC, ET AL.,)
                                         )
 9              DEFENDANTS.              )
     _____)

10

11

12

13

14

15

16

17          VIDEOTAPED REMOTE ZOOM DEPOSITION

18               CHRISTOPHER STIREWALT

19             TUESDAY, NOVEMBER 17, 2020

20

21

22

23

24   JOB NO. 4341953

25   REPORTED BY:  DAYNA HESTER, C.S.R. 9970
```

Page 1

```
 1     VIDEOTAPED REMOTE ZOOM DEPOSITION OF CHRISTOPHER
 2     STIREWALT, TAKEN ON BEHALF OF PLAINTIFF, AT 8:39 A.M.,
 3     TUESDAY, NOVEMBER 17, 2020, EASTERN STANDARD TIME,
 4     WITH THE WITNESS PHSYCIALLY PRESENT WITH COUNSEL; THE
 5     COURT REPORTER, AND VIDEOGRAPHER APPEARING REMOTELY
 6     VIA ZOOM VIDEOCONFERENCE, BEFORE DAYNA HESTER, C.S.R.
 7     NO. 9970.
 8
 9     APPEARANCES OF COUNSEL:
10     FOR PLAINTIFF:
11          EARLY SULLIVAN WRIGHT GIZER & McRAE LLP
            BY:  JEREMY GRAY, ADMITTED PRO HAC VICE
12               (PRESENT VIA ZOOM VIDEOCONFERENCE)
            BY:  PADIDEH ZARGARI, ESQ.
13               (PRESENT VIA ZOOM VIDEOCONFERENCE)
            6420 WILSHIRE BOULEVARD, 17TH FLOOR
14          LOS ANGELES, CALIFORNIA  90048
            (323) 301-4660
15          JGRAY@EARLYSULLIVAN.COM
            PZARGARI@EARLYSULLIVAN.COM
16
                 -AND-
17
       SIMPKINS LAW OFFICE PLLC
18     BY:  C. MICHAEL SPARKS, JD, LITIGATION SPECIALIST
                 (PRESENT VIA ZOOM VIDEOCONFERENCE)
19          102 EAST 2ND AVENUE
            WILLIAMSON, WEST VIRGINIA  25661
20          (304) 235-2735
            SIMPKINSLAWOFFICE@GMAIL.COM
21
22
23
24
25          -- APPEARANCES CONTINUED ON NEXT PAGE --

                                          Page 2
```

```
 1              MR. REGAN:  We are up to 13?            13:36

 2              MR. GRAY:  Yes.                          13:36

 3              MR. REGAN:  Okay.                        13:36

 4   BY MR. GRAY:                                        13:36

 5       Q.   So take a moment to read.  I'm going to    13:36

 6   ask you about the bottom part, where there is some  13:36

 7   reference to what you believe.                      13:36

 8       A.   [Witness reviews document].                13:36

 9            Okay.                                      13:36

10       Q.   Have you had a chance to review            13:36

11   Exhibit 13?                                         13:36

12       A.   Yes, sir.                                  13:36

13       Q.   It indicates in there that you believed   13:36

14   that [as read]:  Mr. Blankenship may have picked up 13:36

15   as many as eight percentage points for his         13:36

16   performance in the debate.                          13:36

17            Do you see that?                           13:36

18       A.   I do.                                      13:36

19       Q.   And what was the reason that you believed 13:37

20   that?  What information did you have?               13:37

21       A.   Well, it would have been unlikely that I  13:37

22   would have said, "I think he picked up eight        13:37

23   points," but I can see how I would have expressed   13:37

24   that I thought he had gained points.  I don't       13:37

25   remember how I characterized it.                    13:37
```

                                           Page 166

1    STATE OF CALIFORNIA                          )

2    COUNTY OF LOS ANGELES                        )  SS.

3

4            I, Dayna Hester, C.S.R. No. 9970, in

5    and for the State of California, do hereby certify:

6            That, prior to being examined, the witness

7    named in the foregoing deposition was by me duly

8    sworn to testify to the truth, the whole truth, and

9    nothing but the truth;

10           That said deposition was taken down by me

11   in shorthand at the time and place therein named and

12   thereafter reduced to typewriting under my

13   direction, and the same is a true, correct, and

14   complete transcript of said proceedings;

15           That if the foregoing pertains to the

16   original transcript of a deposition in a Federal

17   Case, before completion of the proceedings, review

18   of the transcript {  } was {  } was not required;

19           I further certify that I am not interested

20   in the event of the action.

21           Witness my hand this 3rd day of December,

22   2020.

23

24

25           Dayna Hester, C.S.R. No. 9970

                                            Page 176

# EXHIBIT #13

Message
---

| | |
|---|---|
| **From:** | MacCallum, Martha [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=DA6B2FA1BC2E43C79B61F00EA859FD73-MACCALLUM,] |
| **Sent:** | 5/4/2018 2:49:38 AM |
| **To:** | Ferrier, Antonia (McConnell) [Antonia_Ferrier@mcconnell.senate.gov] |
| **Subject:** | Re: Don Blankenship, West Virginia Candidate, Lives Near Las Vegas and Mulled Chinese Citizenship - The New York Times |

Yes I had read this. There are so many issues with DB, never enough time to hit them all. MM said it clearly, "My father in law is an American, who lives in New York City." We went into the Las Vegas question during the debate. His fiancé is Chinese and after he got out of prison he said he'd consider moving there.

Sent from my iPhone

> On May 3, 2018, at 10:41 PM, Ferrier, Antonia (McConnell) <Antonia_Ferrier@mcconnell.senate.gov> wrote:
>
> You might want to give this a read
>
> https://urldefense.proofpoint.com/v2/url?u=https-3A__www.nytimes.com_2018_04_25_us_politics_don-2Dblankenship-2Dchina-2Dwest-2Dvirginia.html&d=DwIFAg&c=cnx1hdOQtepEQkpermZGwQ&r=mtBWfEzXukPHGHh4KFmzZku4e5fKH27pji2s4p_M6JE&m=Liyc8OibAoEwqqfnl4AeeUKvxTg4FzA_1FvueCioRV8&s=6V2v3m-kLIAui18HOYL69E2JTszgwuquAIfPELxkL2Y&e=
>
>
> Sent from my iPhone

Confidential

FoxNews_008628

# EXHIBIT #14

Message

---

| | |
|---|---|
| **From:** | Ferrier, Antonia (McConnell) [Antonia_Ferrier@mcconnell.senate.gov] |
| **Sent:** | 5/4/2018 2:51:58 AM |
| **To:** | MacCallum, Martha [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=da6b2fa1bc2e43c79b61f00ea859fd73-MacCallum,] |
| **Subject:** | Re: Don Blankenship, West Virginia Candidate, Lives Near Las Vegas and Mulled Chinese Citizenship - The New York Times |

Between us my boss is pretty ticked. He's very thick skinned but going after his wife who's honorably
served our country under TWO presidents? Bonkers

Sent from my iPhone

> On May 3, 2018, at 10:50 PM, MacCallum, Martha <Martha.MacCallum@FOXNEWS.COM> wrote:
>
> Yes I had read this.  There are so many issues with DB, never enough time to hit them all. MM said it
clearly, "My father in law is an American, who lives in New York City." We went into the Las Vegas
question during the debate. His fiancé is Chinese and after he got out of prison he said he'd consider
moving there.
>
> Sent from my iPhone
>
>> On May 3, 2018, at 10:41 PM, Ferrier, Antonia (McConnell) <Antonia_Ferrier@mcconnell.senate.gov>
wrote:
>>
>> You might want to give this a read
>>
>> https://urldefense.proofpoint.com/v2/url?u=https-3A__www.nytimes.com_2018_04_25_us_politics_don-
2Dblankenship-2Dchina-2Dwest-
2Dvirginia.html&d=DwIFAg&c=cnx1hdOQtepEQkpermZGwQ&r=mtBWfEzXukPHGHh4KFmzZku4e5FKH27pji2s4p_M6JE&m=Liyc8Oi
bAoEwqqfnl4AeeUKvxTg4FzA_1FvueCioRV8&s=6V2v3m-kLIAui18HOYL69E2JTszgwuquAIfPELxkL2Y&e=
>>
>>
>> Sent from my iPhone
>
> This message and its attachments may contain legally privileged or confidential information. It is
intended solely for the named addressee. If you are not the addressee indicated in this message (or
responsible for delivery of the message to the addressee), you may not copy or deliver this message or
its attachments to anyone. Rather, you should permanently delete this message and its attachments and
kindly notify the sender by reply e-mail. Any content of this message and its attachments that does not
relate to the official business of Fox News or Fox Business must not be taken to have been sent or
endorsed by either of them. No representation is made that this email or its attachments are without
defect.

# EXHIBIT #15

---

Message

| | |
|---|---|
| **From:** | MacCallum, Martha [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=DA6B2FA1BC2E43C79B61F00EA859FD73-MACCALLUM,] |
| **Sent:** | 5/4/2018 3:06:48 AM |
| **To:** | Ferrier, Antonia (McConnell) [Antonia_Ferrier@mcconnell.senate.gov] |
| **Subject:** | Re: Don Blankenship, West Virginia Candidate, Lives Near Las Vegas and Mulled Chinese Citizenship - The New York Times |

I don't blame him at all.

 It's all about him, he thinks he's more of a victim than the miners.
Will be interesting to see what happens. Too bad Tom Willis couldn't get any traction, he was the best one in the race.

Sent from my iPhone

> On May 3, 2018, at 10:52 PM, Ferrier, Antonia (McConnell) <Antonia_Ferrier@mcconnell.senate.gov> wrote:
>
> Between us my boss is pretty ticked. He's very thick skinned but going after his wife who's honorably served our country under TWO presidents? Bonkers
>
> Sent from my iPhone
>
>> On May 3, 2018, at 10:50 PM, MacCallum, Martha <Martha.MacCallum@FOXNEWS.COM> wrote:
>>
>> Yes I had read this.  There are so many issues with DB, never enough time to hit them all. MM said it clearly,  "My father in law is an American, who lives in New York City." We went into the Las Vegas question during the debate. His fiancé is Chinese and after he got out of prison he said he'd consider moving there.
>>
>> Sent from my iPhone
>>
>>> On May 3, 2018, at 10:41 PM, Ferrier, Antonia (McConnell) <Antonia_Ferrier@mcconnell.senate.gov> wrote:
>>>
>>> You might want to give this a read
>>>
>>> https://urldefense.proofpoint.com/v2/url?u=https-3A__www.nytimes.com_2018_04_25_us_politics_don-2Dblankenship-2Dchina-2Dwest-2Dvirginia.html&d=DwIFAg&c=cnx1hdOQtepEQkpermZGwQ&r=mtBWfEzXukPHGHh4KFmzZku4e5fKH27pji2s4p_M6JE&m=Liyc8OibAoEwqqfn14AeeUKvxTg4FzA_1FvueCioRV8&s=6V2v3m-kLIAui18HOYL69E2JTszgwuquAIfPELxkL2Y&e=
>>>
>>>
>>> Sent from my iPhone
>>
>> This message and its attachments may contain legally privileged or confidential information. It is intended solely for the named addressee. If you are not the addressee indicated in this message (or responsible for delivery of the message to the addressee), you may not copy or deliver this message or its attachments to anyone. Rather, you should permanently delete this message and its attachments and kindly notify the sender by reply e-mail. Any content of this message and its attachments that does not relate to the official business of Fox News or Fox Business must not be taken to have been sent or endorsed by either of them. No representation is made that this email or its attachments are without defect.

Confidential

# EXHIBIT #16

3931

Message
| | |
|---|---|
| From: | Ferrier, Antonia (McConnell) [Antonia_Ferrier@mcconnell.senate.gov] |
| Sent: | 5/4/2018 7:35:37 PM |
| To: | MacCallum, Martha [/o=ExchangeLabs/ou=Exchange Administrative Group {FYDIBOHF23SPDLT}/cn=Recipients/cn=da6b2fa1bc2e43c79b61f00ea859fd73-MacCallum,] |
| Subject: | RE: WashPost Fact Checker: The kooky tale of 'Cocaine Mitch' |

Any time! Apologies for the slow response, but yes on this awful hot day, my car broke down.

**From:** MacCallum, Martha <Martha.MacCallum@FOXNEWS.COM>
**Sent:** Friday, May 4, 2018 10:47 AM
**To:** Ferrier, Antonia (McConnell) <Antonia_Ferrier@mcconnell.senate.gov>
**Subject:** Re: WashPost Fact Checker: The kooky tale of 'Cocaine Mitch'

I'm reporting this 4 pinnochios tonight - thank you

Sent from my iPhone

On May 4, 2018, at 7:10 AM, Ferrier, Antonia (McConnell) <Antonia_Ferrier@mcconnell.senate.gov> wrote:

> <image003.jpg>
> **NOTE:** But the bottom line is that Blankenship has no evidence to support his crude and incendiary attack.
>
> https://wapo.st/2IfSmzN
> **The kooky tale of 'Cocaine Mitch'**
> By Salvador Rizzo  The Fact Checker  Washington Post  May 4, 2018
>
> *"One of my goals as U.S. senator will be to ditch 'Cocaine Mitch.' "*
> — U.S. Senate primary candidate Don Blankenship (R-W.Va.), in an ad attacking Senate Majority Leader Mitch McConnell (R-Ky.)
>
> *"Having cocaine on a family-owned ship certainly should be of interest because cocaine deaths in this country keep going up, and even though that ship, I think, headed to Europe, we still need to be aware that there are cocaine and other drugs moving on the high seas on commercial ships. And if nothing else, it should make us aware that we need to be careful when these commercial ships are docking, when your country needs to see what's on them. And certainly, the family of Elaine Chao and McConnell should be no exception to that."*
> — Blankenship, in an interview on Fox News, May 2, 2018
>
> This fact check explores whether "Cocaine Mitch" is an accurate nickname for the Senate majority leader.
>
> How did we end up here?
>
> Blankenship, a Republican candidate in the Senate primary in West Virginia, released an ad claiming that "politicians … blew up the coal mine and then put me in prison."
>
> In fact, Blankenship spent a year in prison because a jury convicted him of conspiracy to violate federal safety standards. A 2010 explosion at a coal mine owned by Massey Energy, where Blankenship was chief executive, killed 29 workers at the Upper Big Branch Mine in West Virginia. A state investigation found that Massey Energy's negligence was the main reason for

FoxNews_008639

# EXHIBIT #17

Message

| From: | Kaplan (Levine), Karrah [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=7C47AE657DE34C17A65DAC8C7B5CCE1D-KAPLAN, KAR] |
|---|---|
| Sent: | 5/4/2018 8:35:32 PM |
| To: | 582-TheStory [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=9a410892b1414d8bb2eb90ff9f28461b-582-TheFirs] |
| Subject: | A block: Tammy Bruce TPs |

Blankenship is an embarrassment, but the silver lining here is that generally everyone is admitting it. I'm not a fan of Mitch McConnell, and both men can serve as examples why the opinion of politicians is so low, but Blankenship isn't running as a guy with great ideas and good policy, who is politically incorrect. His comments about "China people"is plainly racist, and the people of WV all deserve better.

The good news is, Blankenship will be rejected, and while the GOP isn't famous for knowing how to win races like this, whoever the nominee is better get the support of both the GOP and the Trump base.

Blankenship is trying clearly to position himself as anti-swamp, when his past, his criminal conviction, and then the expectation that he should be elected to the senate are all swampy moves. He's the consummate insider, the sort of politician Americans have had enough of: no real ideas, just a lot of pandering and an attempt to get elected through the politics of personal destruction.

Sounds, in fact, like he should be running as a Democrat.

Confidential                    FoxNews_008651

# EXHIBIT #18

**In the Matter Of:**

*Don Blankenship vs*

*Fox News Network*

*KARL ROVE*

*April 09, 2021*



1

| | |
|---|---|
| 1 | UNITED STATES DISTRICT COURT |
| | SOUTHERN DISTRICT OF WEST VIRGINIA |
| 2 | CHARLESTON DIVISION |

3

DON BLANKENSHIP,                    )
                                    )
        Plaintiff,                  )   Case No. 2:19-cv-00236
                                    )
VS.                                 )
                                    )
FOX NEWS NETWORK LLC,               )
et al.,                             )
                                    )
        Defendants.                 )


            ORAL AND VIDEOTAPED DEPOSITION
                        OF
             KARL CHRISTIAN ROVE
                 APRIL 9, 2021

2

1

2

3      ORAL DEPOSITION OF KARL CHRISTIAN ROVE,

4    produced as a witness at the instance of the

5    Plaintiff and duly sworn, was taken in the

6    above styled and numbered cause on

7    April 9, 2021, from 8:58 a.m. to 11:22 a.m.,

8    before KATERI A. FLOT-DAVIS, CSR, CCR,

9    reported by machine shorthand, pursuant to the

10   Federal Rules of Civil Procedure and the

11   provisions stated on the record herein.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

40

```
 1        you.
 2              MR. SIMPKINS:  Okay.  Withdrawn.
 3        Q.  (BY MR. SIMPKINS)  You were
 4   concerned that the ads exposing Senator
 5   McConnell's family ties in China would
 6   resonate with the voters in West Virginia,
 7   correct?
 8        A.   No.
 9        Q.   You were concerned that
10   Mr. Blankenship would split the Jenkins and
11   Morrissey vote and actually win the election.
12              Was that a concern for you?
13        A.   Yes.
14        Q.   Okay.
15              Do you agree with -- with me that
16   attack ads are often effective, Mr. Rove?
17              MR. OBERMEIER:  Objection.  Calls
18         for speculation and irrelevant.
19              MR. SIMPKINS:  He's the baby genus
20         for -- for attack ads, so I think he can
21         answer.
22              THE WITNESS:  Well, I'm not really
23         a baby any more, sir, with all due
24         respect.
25              MR. OBERMEIER:  Yeah.
```

73

1    campaign.  They were hoping, desperately

2    hoping, that the Republicans would nominate

3    him.

4              And remember, this is the first --

5    (communications breakup/inaudible) -- so even

6    if the other candidates, between the two of

7    them had, you know -- (communications

8    breakup/inaudible) --

9         Q.   Mr. Rove, you violated the

10   journalism ethics standards when you attacked

11   Mr. Blankenship.

12             Would you agree?

13        A.   No.

14             MR. OBERMEIER:  Objection.  Lack of

15        foundation.

16             Go ahead.

17             THE WITNESS:  Yeah -- no. I'm not a

18        journalist.  I'm an opinion.  I write on

19        the opinion page of the Wall Street

20        Journal and I'm a Fox News contributor.

21        I'm not a journalist.

22        Q.   (BY MR. SIMPKINS)  So you're not --

23             THE WITNESS:  There is a

24        distinction.

25        Q.   (BY MR. SIMPKINS)  So you're not

Don Blankenship vs
Fox News Network
Confidential
Karl Rove
April 09, 2021

74

1   bound by any journalism standards or ethics?

2        A.   I'm not a reporter.  I'm not a

3   writer.  I'm an opinion -- opinion writer in

4   the Wall Street Journal and I'm a commentator

5   on Fox News.

6           There's a big difference between

7   that and a news reporter.

8        Q.   So you're saying you had no

9   journalism ethics training at all?

10       A.   Not as a journalist, no.  I'm an

11  opinion -- I'm an opinion writer and a

12  commentator.

13       Q.   Have you had --

14           (Simultaneous speaking.)

15       A.   My job is -- my job is opinion.

16  Their job is journalism.

17       Q.   Have you had any other ethics

18  training?

19           MR. OBERMEIER:  Objection.  Vague.

20           Are you talking about --

21       Q.   (BY MR. SIMPKINS)  As a

22  commentator?

23       A.   No.

24       Q.   Okay.

25           You later said, "If you look at the

103

1          Q.    Okay.

2                When was the email sent?

3          A.    Is it looks like 5/5 -- May 5th,

4     2018, at 7:47 a.m.

5          Q.    7:47 or 7:49 a.m.?

6          A.    Mine says 7:47, is when it's sent

7     by -- by McConnell to me.  And I respond at

8     7:49.

9          Q.    I see that.  Okay.

10               The email message is:  "Thanks so

11    much for your comments on Martha's show last

12    night.  Elaine and I are both grateful.

13               "Mitch."

14               Who is Martha?

15         A.    Martha MacCallum.

16         Q.    Okay.

17               Is that -- okay.

18               And what -- what is Martha's show?

19         A.    The Story.

20         Q.    Okay.

21               Who is Elaine?

22         A.    Secretary Elaine Chao, the wife of

23    Mitch McConnell.

24         Q.    She never did take the McConnell

25    name, correct?

106

```
 1              Who is it sent to?

 2        A.    Senator McConnell.

 3        Q.    He's also known as Addison, Mitch

 4   McConnell, I assume.

 5        A.    I believe that's his middle name,

 6   but I --

 7              (Simultaneous speaking.)

 8        Q.    Mitch --

 9        A.    -- don't know.

10        Q.    -- Mitch Addison McConnell?

11        A.    I don't know.  You would have to

12   ask him.

13        Q.    When was it sent?

14        A.    Five -- 7:49:47.

15        Q.    On May the 5th?

16        A.    Yes.

17        Q.    Okay.

18              The email message is, in part --

19   I'm only going to ask you for part of the --

20   about part of the email.

21              It says, "Happy to help.  Wait a

22   sick, twisted moron."

23              Do you see that?

24        A.    Yes.

25        Q.    Did you mean "What a sick, twisted
```

USCA4 Appeal: 22-1198    Doc: 57      Filed: 05/25/2022    Pg: 197 of 307

107

```
 1   moron"?
 2        A.   I'm sure I did.
 3        Q.   Okay.
 4             Were you happy to help Senator
 5   McConnell?
 6        A.   I was happy to set the record
 7   straight.
 8        Q.   You say "happy to help."
 9             So you were happy to help Senator
10   McConnell, correct?
11        A.   Happy to help set the record
12   straight.
13        Q.   Does the "happy to rep" refer to
14   calling Mr. Blankenship a bigot, moron and a
15   crook?
16        A.   Happy to help setting the record
17   straight.
18        Q.   You don't say that in your email,
19   though.
20        A.   I said, "Happy" --
21             (Simultaneous speaking.)
22        Q.   You say "happy to help."
23        A.   -- "Happy to help."
24             You asked me for what I meant by it
25   and I just told you.
```

153

1

2

3

            UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF WEST VIRGINIA
                 CHARLESTON DIVISION

4

DON BLANKENSHIP,              )
5                             )
            Plaintiff,        )   Case No. 2:19-cv-00236
6                             )
VS.                           )
7                             )
FOX NEWS NETWORK LLC,         )
8  et al.,                    )
                              )
9           Defendants.       )

10

11              REPORTER'S CERTIFICATION
                       DEPOSITION
12                         OF
                  KARL CHRISTIAN ROVE
13                  APRIL 9, 2021

14

15          I, Kateri A. Flot-Davis, Certified

16   Shorthand Reporter in and for the State of

17   Texas, hereby certify to the following:

18       That the witness, KARL CHRISTIAN ROVE, was

19   duly sworn by the officer and that the

20   transcript of the oral deposition is a true

21   record of the testimony given by the witness;

22       There was a request for examination and

23   signature of the witness to the deposition

24   transcript.  The original transcript was sent

25   for review on _____ to the

USCA4 Appeal: 22-1198    Doc: 57        Filed: 05/25/2022    Pg: 199 of 307

154

1    witness or to the attorney for the witness for

2    examination, signature and return to me by

3    _____;

4        I further certify that I am neither counsel

5    for, related to, nor employed by any of the

6    parties or attorneys in the action in which

7    this proceeding was taken, and further that I

8    am not financially or otherwise interested in

9    the outcome of the action.

10       Certified to by me this ___ of _____

11   ,_____.

12

13

14   _____
     Kateri A. Flot-Davis
15   Texas CSR No. 8462
     Expiration Date: 12-31-22
16

17

18

19

20

21

22

23

24

25

# EXHIBIT #19

# SEG

## Smith Economics Group, Ltd.
### A Division of Corporate Financial Group
### *Economics / Finance / Litigation Support*

*Stan V. Smith, Ph.D.*
*President*

February 1, 2021

Mr. Eric P. Early
Early Sullivan Wright Gizer & McRae
6420 Wilshire Blvd., 17th Floor
Los Angeles, CA  90048

Re:  Blankenship v. Fox News Network LLC

Dear Mr. Early:

You have asked me to assess the damages to Don Blankenship based on the allegations against the various media defendants ("Media Defendants") described in the operative First Amended Complaint.

## I.  ASSIGNMENT

Based on the allegations against the Media Defendants described in the First Amended Complaint, I have been asked to assess the loss of earnings suffered by Mr. Blankenship.

## II.  QUALIFICATIONS AND EXPERIENCE

I am President of Smith Economics Group, Ltd., headquartered in Chicago, IL, which provides economic and financial consulting nationwide.  I have worked as an economic and financial consultant since 1974, after completing a Research Internship at the Federal Reserve, Board of Governors, in Washington, D.C.

I received my Bachelor's Degree from Cornell University.  I received a Master's Degree and my Ph.D. in Economics from the University of Chicago; Gary S. Becker, Nobel Laureate 1992, was my Ph.D. thesis advisor.  The University of Chicago is one of the world's preeminent institutions for the study of economics, and the home of renowned research in the law and economics movement.

As President of Smith Economics, I have performed economic analyses in a great variety of engagements, including damages analysis in personal injury and wrongful death cases, business valuation, financial analysis, antitrust, contract losses, a wide range of class action matters, employment discrimination, defamation, and intellectual property valuations including evaluations of reasonable royalty.

# SEG

I have more than 40 years of experience in the field of economics. I am a member of various economic associations and served for three years as Vice President of the National Association of Forensic Economics (NAFE) which is the principal association in the field. I was also on the Board of Editors of the peer-reviewed journal, the Journal of Forensic Economics, for over a decade; I have also published scholarly articles in this journal. The JFE is the leading academic journal in the field of Forensic Economics.

I wrote the first textbook on Forensic Economic Damages that has been used in university courses such as the University of Wisconsin, Penn State University, and in various other states. As an adjunct professor, I created and taught the first course in Forensic Economics nationwide, at DePaul University in Chicago.

I am the creator and founder of Ibbotson Associates' Stock, Bonds, Bills, and Inflation (SBBI) Yearbook, Quarterly, Monthly, and SBBI/PC Services. SBBI is generally regarded by academics in the field of finance as the most widely accepted source of statistics on the rates of return on investment securities. SBBI was originally published by Ibbotson Associates, then by Morningstar, Inc., and is now currently published by Duff & Phelps. The original SBBI series generated what became a six-book set universally used for business valuation, and currently available on an online platform. These data series are widely relied upon and regarded as the most accepted and definitive scholarly references by the academic, actuarial and investment community, and in courts of law. All three publishers of the SBBI series acknowledge me as the founder in 1983, for my "invaluable role" as having "originated the idea" of SBBI, which I then implemented while Managing Director at Ibbotson Associates.

My estimate of the real discount rate is 1.25 percent per year. This discount rate is based on the rate of return on short-term U.S. Treasury investments. The data is from the statistical series H.15 Selected Interest Rates, published by the Board of Governors of the Federal Reserve System found at www.federalreserve.gov. This data is also published in the Economic Report of the President Table for "Bond yields and interest rates" for the real return on U.S. Treasury investments primarily for the last 20 years.

I have performed economic analysis in many thousands of cases in almost every state and federal jurisdiction since the early 1980s.

My curriculum vita is attached, listing all my publications in the last 10 years and beyond. My hourly rate in this case is $525 per hour. The list of all cases in which I have testified in the last 4 years is also attached.

## III. INFORMATION REVIEWED

1. Plaintiff's First Amended Complaint;
2. The informational interview with Mr. Blankenship dated September 8, 2020.

2

# SEG

## IV.  BACKGROUND AND DISCUSSION

Don Blankenship became a leader in the coal industry after a meteoric rise at Massey Energy. Mr. Blankenship began working for Massey Energy in 1982, and within two years, he was President of RAWL Sales, which was a subsidiary of Massey Energy. He was put in charge of all of Massey's mining operations four years later. In 1992, he was named President and CEO of the company, and his compensation rose to almost $18,000,000 in 2009 as a result of his success with the company and the phenomenal growth in the company's value from $150,000,000 to $7,800,000,000.

On April 5, 2010, tragedy struck Raleigh County at the Upper Big Branch Mine. Only a few hours after ventilation changes required by the Obama Administration were completed, cutting the mine's airflow in half, flammable gas deep in the mine ignited, causing an explosion which took the lives of twenty-nine miners. Eight months after the disaster, on December 6, 2010, MSHA concluded that a coal bed methane build-up ignited and created an explosion. In April 2014, Mr. Blankenship released a documentary which refuted MSHA's findings and challenged the inherent conflict of having a regulatory agency investigate an explosion where the agency itself was likely at fault. Among other things, the documentary identified powerful scientific evidence which refuted MSHA's conclusion that the explosion was caused by an influx of methane.

On or about November 13, 2014, federal prosecutors from the Obama Justice Department charged Mr. Blankenship with three felonies, including conspiracy to defraud the Federal mine regulators. He was also charged with a misdemeanor, conspiring to violate mine safety laws. Mr. Blankenship was not charged with causing any of the twenty-nine deaths in the April 5, 2010 Upper Big Branch Mine disaster. The Federal Government brought the full weight of its infinite resources to bear on Mr. Blankenship. The matter went to trial in October 2015 and lasted about two months. Following lengthy deliberations, the West Virginia jury found Mr. Blankenship innocent on all felony charges on December 3, 2015. The jury convicted him of the misdemeanor offense. Notably, at that time, many media outlets accurately reported that Mr. Blankenship was convicted only of a misdemeanor and not for any of the felony counts he was facing.

The Department of Justice Office of Professional Responsibility has since investigated the conduct of the United States Attorneys who prosecuted Mr. Blankenship -- Booth Goodwin and Steve Ruby. The OPR found that massive prosecutorial misconduct had occurred in the prosecution of Mr. Blankenship, stating among other things that, "because Ruby and Goodwin recklessly violated the Department's discovery policies regarding the disclosure of discoverable statements, they committed professional misconduct." Mr. Blankenship's verdict is still under appeal.

In January 2018, Mr. Blankenship formally announced his plans to run as a Republican for the U.S. Senate seat held by Senator Joe Manchin, a Democrat. The Republican primary was scheduled for May 8, 2018. Beginning at about the end of March 2018 the Media Defendants falsely called Mr. Blankenship a felon in order to injure his reputation and discredit his candidacy. Mr. Blankenship's senatorial run was his chance to increase his reputation, but following the defamatory statements by the Media Defendants on national media, he failed to

3

# SEG

receive the Republican nomination.  Achieving the Republican nomination in a senatorial race would have undoubtedly added to Mr. Blankenship's reputation and provided him with business opportunities, as well as a national podium to further establish himself.


## V.  OPINION

Lost Earnings

Mr. Blankenship would have had great opportunities to earn income from multiple sources but for the actions of the Media Defendants.  I have illustrated Mr. Blankenship's loss of earnings in five categories:

> 1.) CEO in the Mining/Construction Industry;
> 2.) Strategic Consultant;
> 3.) Board of Directors;
> 4.) Coal Broker/Entrepreneur; and
> 5.) Author.

All of the above opportunities would have been available for Mr. Blankenship, but it is unlikely that he would have been a CEO and a Strategic Consultant at the same time.  He could have been a CEO or a Strategic Consultant and entertained the other opportunities.


A.  CEO in the Mining/Construction Industry

Tables 1 and 2 show Mr. Blankenship's loss of earnings as a CEO in the Mining/Construction industry.  Mr. Blankenship's earning capacity has been established by his track record of success as a President and CEO in the mining industry.  Mr. Blankenship's compensation as Chairman of the Board and President of Massey Energy was $5,328,422 in 2006, $9,929,125 in 2007, $11,226,717, plus non-qualified deferred compensation of $26,530,954, totaling $37,757,671 in 2008, and $17,835,837 in 2009.  Adjusting Mr. Blankenship's earnings for inflation, Mr. Blankenship earned $6,900,337 in year 2020 dollars in 2006, $12,601,153 in year 2020 dollars in 2007, $13,955,811, plus non-qualified deferred compensation of $32,980,343 in years 2020 dollars, totaling $46,936,154 in year 2020 dollars in 2008, and $21,584,160 in year 2020 dollars in 2009.

While at Massey Energy, Mr. Blankenship received multiple employment offers from other companies.  Mr. Blankenship states that he received an offer from Carl Smith, the former owner of Fola Coal, which was equivalent to $15 million in year 2020 dollars.  He states that Massey Energy then matched and exceeded that offer to retain him.  He states that he was named to the Board of Directors of Fluor, a global engineering and construction company, in 1997.  In 1999, Mr. Blankenship was asked to manage Fluor while its Chairman, Les McGraw, battled cancer.  Mr. Blankenship was approached to become the President of Fluor, but he declined, as he wanted to remain in West Virginia.  Mr. Blankenship was contacted by a headhunter to become the President of Raytheon in approximately 2000, but he again declined to remain at Massey Energy.

4

# SEG

According to the Economic Research institute, the salary for new hire CEOs in the mining industry is $5,048,242 in year 2020 dollars.[1]

I have illustrated Mr. Blankenship's loss of earnings as a CEO in two scenarios. Table 1 shows the loss of earnings for Scenario 1. In Scenario 1, I have illustrated the lost earning to begin in 2019 at $22,005,451 in year 2020 dollars based on Mr. Blankenship's average real income from 2006 through 2009. Future earnings are illustrated to grow at inflation.

**Based on the above assumption, my opinion of the lost earnings as a CEO through 2030 are $254,647,877 ➢ Table 1.**

Table 2 shows the loss of earnings for Scenario 2. In Scenario 2, I have illustrated the lost earning to begin in 2019 at $5,048,242 in year 2020 dollars based on the salary for new hire CEOs in the mining industry. Mr. Blankenship's earnings are grown in 2024 to $21,584,160 in year 2020 dollars based on his actual income in 2009. Future earnings are illustrated to grow at inflation.

**Based on the above assumption, my opinion of the lost earnings as a CEO through 2030 are $197,218,122 ➢ Table 2.**

B. <u>Strategic Consultant</u>

Tables 3 through 5 show the lost earnings for Mr. Blankenship as a Strategic Consultant in three scenarios. Under Mr. Blankenship's leadership, and his implementation of systems that cut costs and increased efficiency, Massey Energy grew from a valuation of $150,000,000 to $7,800,000,000

Mr. Blankenship gained an expertise in cost accounting following his exposure to standard cost practices in the food industry while working for Keebler Company earlier in his career. Mr. Blankenship was able to grow Massey Energy in a time when the coal industry was in decline based on his ingenuity and groundbreaking methods. The metrics that he implemented to assess mines and make them profitable are now used universally in the mining industry. This approach has now become broad and has been applied to other industries as well, including the banking industry. Mr. Blankenship stated he cut costs by $400 million per year while at Massey Energy. Mr. Blankenship's ingenuity reduced Massey Energy's costs by 30 percent compared to similar coal mines.

Mr. Blankenship states that the harm to his reputation following the election has limited his ability to engage in business opportunities as a Strategic Consultant. He states that he would have been able to bring his expertise to companies across multiple industries, including mining, banking, and construction, in order to assist with cutting costs. Mr. Blankenship states that he would have been able to put together a team to assess companies and negotiate a percentage of

---

[1] https://online.erieri.com/SS/ExecutiveSurvey/

5

# SEG

the savings as compensation, and 10 percent would be a reasonable fee. Mr. Blankenship states that based upon his experience as a CEO, he would be willing to pay an outside consultant 10 percent of the realized cost savings.

I have illustrated Mr. Blankenship's loss of earnings as a strategic consultant in three scenarios. In Scenario 1, I have illustrated Mr. Blankenship to earn $5,000,000 per year beginning in 2019, which assumes that he would provide cost savings of approximately $50,000,000 to various companies. Mr. Blankenship's Scenario 1 earnings are illustrated to grow in 2024 to $20,000,000, which assumes that he would increase the amount of cost savings provided to $200,000,000, or half of what he did at Massey Energy.

**Based on the above assumptions for Scenario 1, my opinion of the lost earnings as a Strategic Consultant through 2030 is $175,394,301 ➤ Table 3.**

I have illustrated Mr. Blankenship's loss of earnings as a strategic consultant in three scenarios. In Scenario 2, I have illustrated Mr. Blankenship to earn $5,000,000 per year beginning in 2019, which assumes that he would provide cost savings of approximately $50,000,000 to various companies. Mr. Blankenship's Scenario 2 earnings are illustrated to grow in 2024 to $15,000,000, which assumes that he would increase the amount of cost savings provided to $150,000,000.

**Based on the above assumptions for Scenario 2, my opinion of the lost earnings as a Strategic Consultant through 2030 is $136,982,590 ➤ Table 4.**

I have illustrated Mr. Blankenship's loss of earnings as a strategic consultant in three scenarios. In Scenario 3, I have illustrated Mr. Blankenship to earn $5,000,000 per year beginning in 2019, which assumes that he would provide cost savings of approximately $50,000,000 to various companies. Mr. Blankenship's Scenario 2 earnings are illustrated to grow in 2024 to $10,000,000, which assumes that he would increase the amount of cost savings provided to $100,000,000, or one-quarter of what he did at Massey Energy.

**Based on the above assumptions for Scenario 3, my opinion of the lost earnings as a Strategic Consultant through 2030 is $97,766,336 ➤ Table 5.**

C. Board of Directors

Tables 6 and 7 show the lost earnings for Mr. Blankenship from seats on Board of Directors. Mr. Blankenship states that he had seats on three boards while he was CEO at Massey Energy, and he believes that he could have been on up to five boards if he was not engaged in other businesses, and three boards if he was engaged in other businesses.

I have illustrated Mr. Blankenship's loss of earnings as a member of a Board of Directors in two scenarios. The 90th percentile earnings for members of a Board of Directors is $290,000 in year

6

# SEG

2020 dollars[2]. In Scenario 1, I have illustrated Mr. Blankenship as a member of five Boards of Directors and earning $290,000 per seat, which yields estimated annual earnings of $1,450,000 in year 2019 dollars beginning in 2019. Mr. Blankenship's Scenario 1 earnings are adjusted by inflation.

**Based on the above assumptions for Scenario 1, my opinion of the lost earnings as member of a Board of Directors through 2030 is $17,115,042 ➢ Table 6.**

In Scenario 2, I have illustrated Mr. Blankenship as a member of three Boards of Directors and earning $290,000 per seat, which yields estimated annual earnings of $870,000 in 2019 dollars beginning in 2019. Mr. Blankenship's Scenario 2 earnings are adjusted by national average wage growth of 4.29 percent in 2019, and 3.00 percent in 2020. Future earnings are illustrated to grow at 1.00 percent real.

**Based on the above assumptions for Scenario 2, my opinion of the lost earnings as member of a Board of Directors through 2030 is $10,269,025 ➢ Table 7.**

D. Coal Broker

Tables 8 and 9 show the lost earnings for Mr. Blankenship from working as a Coal Broker. Mr. Blankenship states that had a relationship with the steel industry, and while he was at Massey Energy he had wanted to become a coal broker or start his own mining company later in his life. Mr. Blankenship states that there have been several successful coal brokers, including Chris Cline, Ernie Thrasher, and Joseph Craft III, and he believes that he could have gone down a similar path. He states that in the 1990s, as well as after leaving Massey Energy in 2011, Chris Cline reached out to him about becoming the President of Cline Resource and Development Co. Mr. Blankenship states that he advised Mr. Cline on his large purchase of mines in Illinois, which earned Mr. Cline a fortune.

Chris Cline, another West Virginia native got his start working in coal mines at age 15 and later bet big on high-sulfur coal reserves in Illinois. He took coal mining firm Foresight Energy public in 2014, and sold a controlling stake in 2015 for $1.4 billion cash. His net worth was estimated at $1,800,000,000 in 2019.[3]

Ernie Thrasher is the Founder, CEO and CMO of Xcoal Energy and Resources. Thrasher held various positions in mine operations and mine management through 1981. Prior to forming Xcoal Energy & Resources in 2003, Thrasher spent twenty-two (22) years in various global marketing positions at Primary Coal and AMCI. Xcoal is the largest exporter of U.S. origin coal. In addition to marketing U.S. origin coal to customers throughout the world, Xcoal activities include the financing and development of mining projects and related infrastructure projects. Thrasher founded XLNG Energy & Resources in 2015, which plans to market LNG originating from natural gas reserves in the Marcellus and Utica Shale basins in the U.S., to customers in

---

[2] https://www.payscale.com/research/US/Job=Member_of_the_Board_of_Directors/Salary
[3] https://www.forbes.com/profile/christopher-cline/#4bba4fbf9a1d

7

# SEG

South America, Europe, and Asia. Thrasher serves on the Board of Directors of Barrick Gold Corporation, the President's Leadership Council-Boy Scouts of America, is a member of the Council on Foreign Relations, serves as a Director on the National Committee on U.S. China Relations, and serves as a Director of the U.S.-India Strategic Partnership Forum.[4]

Joseph Craft III became a lawyer, and then joined diversified coal company MAPCO as an assistant general counsel in 1980. He became president in 1987. Craft was rewarded with a big stake for leading the firm's LBO and conversion into a tax-efficient public master limited partnership in 1996; it was renamed Alliance Resource Partners three years later. He has been chief executive since and overseen subsequent expansion across Appalachia and the Midwest as revenue increased to $390 million.  His net worth was an estimated $1,400,000,000 in 2012.[5]

The average net worth for Joseph Craft III and Chris Cline, whose net worth is publicly available, is $1,730,675,739.  Assuming a 30-year career yields an estimated annual income of $56,558,030 in year 2019 dollars.

I have illustrated Mr. Blankenship's loss of earnings as a coal broker or entrepreneur in two scenarios.  In Scenario 1, I have illustrated Mr. Blankenship's earnings to begin in 2019 at $56,558,030 in year 2020 dollars.  Future earnings are illustrated to grow at inflation.

**Based on the above assumptions for Scenario 1, my opinion of the lost earnings as a coal broker or entrepreneur through 2030 is $667,581,406 ➤ Table 8.**

In Scenario 2, I have illustrated Mr. Blankenship's earnings to begin in 2019 at 50 percent of $56,558,030, or $28,279,015 in year 2020 dollars.  Future earnings are illustrated to grow at inflation.

**Based on the above assumptions for Scenario 2, my opinion of the lost earnings as a coal broker or entrepreneur through 2030 is $333,790,703 ➤ Table 9.**


E. Author

Tables 10 and 11 show the lost earnings for Mr. Blankenship from being an author in two scenarios.  Mr. Blankenship states that he planned to author several books over the remainder of his career.  He states that he also planned to adapt his story into a screenplay.

I have illustrated Mr. Blankenship's loss of book revenue in two scenarios.  In Scenario 1, I have illustrated Mr. Blankenship receiving a benchmark of $100,000 advances every 3 years.

**Based on the above assumptions for Scenario 1, my opinion of the lost earnings as member of a Board of Directors through 2030 is $383,816 ➤ Table 10.**

---

[4] https://usispf.org/team/ernie-thrasher/
[5] https://www.forbes.com/profile/joseph-craft/#6a4b02ab712a

8

# SEG

In Scenario 1, I have illustrated Mr. Blankenship receiving a benchmark of $250,000 advances every 3 years.

**Based on the above assumptions for Scenario 1, my opinion of the lost earnings as member of a Board of Directors through 2030 is $959,539 ➢ Table 11.**

----------------------------------------

All opinions expressed in this report are clearly labeled as such. They are rendered in accordance with generally accepted standards within the field of economics and are expressed to a reasonable degree of economic certainty. Estimates, assumptions, illustrations and the use of benchmarks, which are not opinions, but which can be viewed as hypothetical in nature, are also clearly disclosed and identified herein.

In my opinion, it is reasonable for experts in the field of economics and finance to rely on the materials and information I reviewed in this case, for the formulation of my substantive opinions herein.

If additional information is provided to me, which could alter my opinions, I may incorporate any such information into an update, revision, addendum, or supplement of the opinions expressed in this report.

It is my opinion, based upon the foregoing, that the Plaintiff has suffered concrete, tangible, economic harm.

If you have any questions, please do not hesitate to call me.

Sincerely,

Stan V. Smith, Ph.D.
President

9

# SUMMARY OF LOSSES

| TABLE | DESCRIPTION | ESTIMATE |
|---|---|---|
| | **LOSS OF EARNINGS THROUGH 2030** | |
| | **CEO IN MINING/CONSTRUCTION** | |
| 1 | SCENARIO 1 | $254,647,877 |
| 2 | SCENARIO 2 | $197,218,122 |
| | **STRATEGIC CONSULTANT** | |
| 3 | SCENARIO 1 | $175,394,301 |
| 4 | SCENARIO 2 | $136,982,590 |
| 5 | SCENARIO 3 | $97,766,336 |
| | **BOARD OF DIRECTORS** | |
| 6 | SCENARIO 1 | $17,115,042 |
| 7 | SCENARIO 2 | $10,269,025 |
| | **COAL BROKER/ENTREPRENEUR** | |
| 8 | SCENARIO 1 | $667,581,406 |
| 9 | SCENARIO 2 | $333,790,703 |
| | **AUTHOR** | |
| 10 | SCENARIO 1 | $383,816 |
| 11 | SCENARIO 2 | $959,539 |

Table 1

LOSS OF CEO EARNINGS - SCENARIO 1
2019 - 2030

| YEARS | INCOME | DISCOUNT FACTOR | PRESENT VALUE | CUMULATE |
|---|---|---|---|---|
| 2019 | $21,573,972 | 1.0000 | 21,573,972 | 21,573,972 |
| 2020 | $22,005,451 | 1.0000 | 22,005,451 | 43,579,423 |
| 2021 | $22,445,560 | 0.9938 | 22,306,147 | 65,885,569 |
| 2022 | $22,445,560 | 0.9815 | 22,030,762 | 87,916,331 |
| 2023 | $22,445,560 | 0.9694 | 21,758,777 | 109,675,109 |
| 2024 | $22,445,560 | 0.9574 | 21,490,150 | 131,165,259 |
| 2025 | $22,445,560 | 0.9456 | 21,224,840 | 152,390,099 |
| 2026 | $22,445,560 | 0.9339 | 20,962,805 | 173,352,904 |
| 2027 | $22,445,560 | 0.9224 | 20,704,005 | 194,056,909 |
| 2028 | $22,445,560 | 0.9110 | 20,448,400 | 214,505,309 |
| 2029 | $22,445,560 | 0.8998 | 20,195,950 | 234,701,259 |
| 2030 | $22,445,560 | 0.8887 | 19,946,618 | 254,647,877 |

Table 2

LOSS OF CEO EARNINGS - SCENARIO 2
2019 - 2030

| YEARS | INCOME | DISCOUNT FACTOR | PRESENT VALUE | CUMULATE |
|---|---|---|---|---|
| 2019 | $4,949,257 | 1.0000 | 4,949,257 | 4,949,257 |
| 2020 | $6,723,867 | 1.0000 | 6,723,867 | 11,673,124 |
| 2021 | $9,134,783 | 0.9938 | 9,078,046 | 20,751,170 |
| 2022 | $12,410,160 | 0.9815 | 12,180,818 | 32,931,988 |
| 2023 | $16,859,959 | 0.9694 | 16,344,083 | 49,276,071 |
| 2024 | $22,905,282 | 0.9574 | 21,930,304 | 71,206,375 |
| 2025 | $22,905,282 | 0.9456 | 21,659,560 | 92,865,935 |
| 2026 | $22,905,282 | 0.9339 | 21,392,158 | 114,258,093 |
| 2027 | $22,905,282 | 0.9224 | 21,128,057 | 135,386,151 |
| 2028 | $22,905,282 | 0.9110 | 20,867,217 | 156,253,368 |
| 2029 | $22,905,282 | 0.8998 | 20,609,597 | 176,862,965 |
| 2030 | $22,905,282 | 0.8887 | 20,355,158 | 197,218,122 |

USCA4 Appeal: 22-1198 Doc: 57 Filed: 05/25/2022 Pg: 213 of 307

Table 3

LOSS OF STRATEGIC CONSULTANT EARNINGS - SCENARIO 1
2019 - 2030

| YEARS | INCOME | DISCOUNT FACTOR | PRESENT VALUE | CUMULATE |
|---|---|---|---|---|
| 2019 | $5,000,000 | 1.0000 | 5,000,000 | 5,000,000 |
| 2020 | $6,597,540 | 1.0000 | 6,597,540 | 11,597,540 |
| 2021 | $8,705,506 | 0.9938 | 8,651,434 | 20,248,974 |
| 2022 | $11,486,984 | 0.9815 | 11,274,702 | 31,523,676 |
| 2023 | $15,157,166 | 0.9694 | 14,693,391 | 46,217,067 |
| 2024 | $20,000,000 | 0.9574 | 19,148,687 | 65,365,754 |
| 2025 | $20,000,000 | 0.9456 | 18,912,284 | 84,278,038 |
| 2026 | $20,000,000 | 0.9339 | 18,678,799 | 102,956,837 |
| 2027 | $20,000,000 | 0.9224 | 18,448,196 | 121,405,033 |
| 2028 | $20,000,000 | 0.9110 | 18,220,441 | 139,625,474 |
| 2029 | $20,000,000 | 0.8998 | 17,995,497 | 157,620,971 |
| 2030 | $20,000,000 | 0.8887 | 17,773,330 | 175,394,301 |

Table 3

LOSS OF STRATEGIC CONSULTANT EARNINGS - SCENARIO 2
2019 - 2030

| YEARS | INCOME | DISCOUNT FACTOR | PRESENT VALUE | CUMULATE |
|---|---|---|---|---|
| 2019 | $5,000,000 | 1.0000 | 5,000,000 | 5,000,000 |
| 2020 | $6,228,655 | 1.0000 | 6,228,655 | 11,228,655 |
| 2021 | $7,759,228 | 0.9938 | 7,711,034 | 18,939,689 |
| 2022 | $9,665,910 | 0.9815 | 9,487,282 | 28,426,971 |
| 2023 | $12,041,123 | 0.9694 | 11,672,693 | 40,099,664 |
| 2024 | $15,000,000 | 0.9574 | 14,361,515 | 54,461,179 |
| 2025 | $15,000,000 | 0.9456 | 14,184,213 | 68,645,392 |
| 2026 | $15,000,000 | 0.9339 | 14,009,099 | 82,654,491 |
| 2027 | $15,000,000 | 0.9224 | 13,836,147 | 96,490,638 |
| 2028 | $15,000,000 | 0.9110 | 13,665,331 | 110,155,969 |
| 2029 | $15,000,000 | 0.8998 | 13,496,623 | 123,652,592 |
| 2030 | $15,000,000 | 0.8887 | 13,329,998 | 136,982,590 |

Table 5

LOSS OF STRATEGIC CONSULTANT EARNINGS - SCENARIO 3
2019 - 2030

| YEARS | INCOME | DISCOUNT FACTOR | PRESENT VALUE | CUMULATE |
|---|---|---|---|---|
| 2019 | $5,000,000 | 1.0000 | 5,000,000 | 5,000,000 |
| 2020 | $5,743,492 | 1.0000 | 5,743,492 | 10,743,492 |
| 2021 | $6,597,540 | 0.9938 | 6,556,561 | 17,300,053 |
| 2022 | $7,578,583 | 0.9815 | 7,438,529 | 24,738,582 |
| 2023 | $8,705,506 | 0.9694 | 8,439,137 | 33,177,719 |
| 2024 | $10,000,000 | 0.9574 | 9,574,344 | 42,752,063 |
| 2025 | $10,000,000 | 0.9456 | 9,456,142 | 52,208,205 |
| 2026 | $10,000,000 | 0.9339 | 9,339,399 | 61,547,604 |
| 2027 | $10,000,000 | 0.9224 | 9,224,098 | 70,771,702 |
| 2028 | $10,000,000 | 0.9110 | 9,110,220 | 79,881,923 |
| 2029 | $10,000,000 | 0.8998 | 8,997,749 | 88,879,671 |
| 2030 | $10,000,000 | 0.8887 | 8,886,665 | 97,766,336 |

Table 6

LOSS OF BOARD OF DIRECTORS EARNINGS - SCENARIO 1
2019 - 2030

| YEARS | INCOME | DISCOUNT FACTOR | PRESENT VALUE | CUMULATE |
|---|---|---|---|---|
| 2019 | $1,450,000 | 1.0000 | 1,450,000 | 1,450,000 |
| 2020 | $1,479,000 | 1.0000 | 1,479,000 | 2,929,000 |
| 2021 | $1,508,580 | 0.9938 | 1,499,210 | 4,428,210 |
| 2022 | $1,508,580 | 0.9815 | 1,480,701 | 5,908,911 |
| 2023 | $1,508,580 | 0.9694 | 1,462,421 | 7,371,332 |
| 2024 | $1,508,580 | 0.9574 | 1,444,366 | 8,815,698 |
| 2025 | $1,508,580 | 0.9456 | 1,426,535 | 10,242,233 |
| 2026 | $1,508,580 | 0.9339 | 1,408,923 | 11,651,156 |
| 2027 | $1,508,580 | 0.9224 | 1,391,529 | 13,042,685 |
| 2028 | $1,508,580 | 0.9110 | 1,374,350 | 14,417,035 |
| 2029 | $1,508,580 | 0.8998 | 1,357,382 | 15,774,417 |
| 2030 | $1,508,580 | 0.8887 | 1,340,625 | 17,115,042 |

Table 7

LOSS OF BOARD OF DIRECTORS EARNINGS - SCENARIO 2
2019 - 2030

| YEARS | INCOME | DISCOUNT FACTOR | PRESENT VALUE | CUMULATE |
|---|---|---|---|---|
| 2019 | $870,000 | 1.0000 | 870,000 | 870,000 |
| 2020 | $887,400 | 1.0000 | 887,400 | 1,757,400 |
| 2021 | $905,148 | 0.9938 | 899,526 | 2,656,926 |
| 2022 | $905,148 | 0.9815 | 888,421 | 3,545,347 |
| 2023 | $905,148 | 0.9694 | 877,453 | 4,422,799 |
| 2024 | $905,148 | 0.9574 | 866,620 | 5,289,419 |
| 2025 | $905,148 | 0.9456 | 855,921 | 6,145,340 |
| 2026 | $905,148 | 0.9339 | 845,354 | 6,990,694 |
| 2027 | $905,148 | 0.9224 | 834,917 | 7,825,611 |
| 2028 | $905,148 | 0.9110 | 824,610 | 8,650,221 |
| 2029 | $905,148 | 0.8998 | 814,429 | 9,464,650 |
| 2030 | $905,148 | 0.8887 | 804,375 | 10,269,025 |

SMITH ECONOMICS GROUP, LTD.  312/943-1551

Table 8

LOSS OF BROKER/ENTREPRENEUR EARNINGS - SCENARIO 1
2019 - 2030

| YEARS | INCOME | DISCOUNT FACTOR | PRESENT VALUE | CUMULATE |
|---|---|---|---|---|
| 2019 | $56,558,030 | 1.0000 | 56,558,030 | 56,558,030 |
| 2020 | $57,689,191 | 1.0000 | 57,689,191 | 114,247,221 |
| 2021 | $58,842,974 | 0.9938 | 58,477,490 | 172,724,711 |
| 2022 | $58,842,974 | 0.9815 | 57,755,546 | 230,480,256 |
| 2023 | $58,842,974 | 0.9694 | 57,042,514 | 287,522,771 |
| 2024 | $58,842,974 | 0.9574 | 56,338,286 | 343,861,057 |
| 2025 | $58,842,974 | 0.9456 | 55,642,751 | 399,503,808 |
| 2026 | $58,842,974 | 0.9339 | 54,955,804 | 454,459,612 |
| 2027 | $58,842,974 | 0.9224 | 54,277,337 | 508,736,949 |
| 2028 | $58,842,974 | 0.9110 | 53,607,247 | 562,344,195 |
| 2029 | $58,842,974 | 0.8998 | 52,945,429 | 615,289,624 |
| 2030 | $58,842,974 | 0.8887 | 52,291,781 | 667,581,406 |

Table 9

LOSS OF BROKER/ENTREPRENEUR EARNINGS - SCENARIO 2
2019 - 2030

| YEARS | INCOME | DISCOUNT FACTOR | PRESENT VALUE | CUMULATE |
|---|---|---|---|---|
| 2019 | $28,279,015 | 1.0000 | 28,279,015 | 28,279,015 |
| 2020 | $28,844,595 | 1.0000 | 28,844,595 | 57,123,610 |
| 2021 | $29,421,487 | 0.9938 | 29,238,745 | 86,362,355 |
| 2022 | $29,421,487 | 0.9815 | 28,877,773 | 115,240,128 |
| 2023 | $29,421,487 | 0.9694 | 28,521,257 | 143,761,385 |
| 2024 | $29,421,487 | 0.9574 | 28,169,143 | 171,930,528 |
| 2025 | $29,421,487 | 0.9456 | 27,821,376 | 199,751,904 |
| 2026 | $29,421,487 | 0.9339 | 27,477,902 | 227,229,806 |
| 2027 | $29,421,487 | 0.9224 | 27,138,669 | 254,368,474 |
| 2028 | $29,421,487 | 0.9110 | 26,803,623 | 281,172,098 |
| 2029 | $29,421,487 | 0.8998 | 26,472,714 | 307,644,812 |
| 2030 | $29,421,487 | 0.8887 | 26,145,891 | 333,790,703 |

SMITH ECONOMICS GROUP, LTD.  312/943-1551

3966

Table 10

LOSS OF AUTHOR EARNINGS - SCENARIO 1
2019 - 2030

| YEARS | INCOME | DISCOUNT FACTOR | PRESENT VALUE | CUMULATE |
|-------|--------|-----------------|---------------|----------|
| 2019 | $100,000 | 1.0000 | 100,000 | 100,000 |
| 2020 | $0 | 1.0000 | 0 | 100,000 |
| 2021 | $0 | 0.9938 | 0 | 100,000 |
| 2022 | $100,000 | 0.9815 | 98,152 | 198,152 |
| 2023 | $0 | 0.9694 | 0 | 198,152 |
| 2024 | $0 | 0.9574 | 0 | 198,152 |
| 2025 | $100,000 | 0.9456 | 94,561 | 292,713 |
| 2026 | $0 | 0.9339 | 0 | 292,713 |
| 2027 | $0 | 0.9224 | 0 | 292,713 |
| 2028 | $100,000 | 0.9110 | 91,102 | 383,816 |
| 2029 | $0 | 0.8998 | 0 | 383,816 |
| 2030 | $0 | 0.8887 | 0 | 383,816 |

Table 11

LOSS OF AUTHOR EARNINGS - SCENARIO 2
2019 - 2030

| YEARS | INCOME | DISCOUNT FACTOR | PRESENT VALUE | CUMULATE |
|-------|--------|-----------------|---------------|----------|
| 2019 | $250,000 | 1.0000 | 260,000 | 250,000 |
| 2020 | $0 | 1.0000 | 0 | 250,000 |
| 2021 | $0 | 0.9938 | 0 | 250,000 |
| 2022 | $250,000 | 0.9815 | 245,380 | 495,380 |
| 2023 | $0 | 0.9694 | 0 | 495,380 |
| 2024 | $0 | 0.9574 | 0 | 495,380 |
| 2025 | $250,000 | 0.9456 | 236,404 | 731,784 |
| 2026 | $0 | 0.9339 | 0 | 731,784 |
| 2027 | $0 | 0.9224 | 0 | 731,784 |
| 2028 | $250,000 | 0.9110 | 227,756 | 959,539 |
| 2029 | $0 | 0.8998 | 0 | 959,539 |
| 2030 | $0 | 0.8887 | 0 | 959,539 |

# SEG

## Smith Economics Group, Ltd.

A Division of Corporate Financial Group

*Economics / Finance / Litigation Support*

*Stan V. Smith, Ph.D.*
*President*

## S T A N   V.   S M I T H,   P H . D .

**Smith Economics Group, Ltd.** -- Consultants and Experts in Economics and Finance. President, 11/85 to present.  Assisted in the successful resolution of thousands of lawsuits on behalf of clients that include many dozens of the nation's largest law firms, the U.S. Department of Justice, as well as thousands of other prominent plaintiff and defense law firms in almost every state.  Firm provides economic and financial consulting and economic legal analysis in federal and state courts on damages of every sort: Business Damages including antitrust damages, patent valuation, breach of contract losses, and others commercial losses; Business Valuations; Personal Injury and Wrongful Death losses including lost wages, benefits, services, and other injury losses; Hedonic Damages;  Wrongful Discharge, defamation and employment discrimination; Identity Theft and other credit damages; Product Liability; Pension Fund Evaluation and Withdrawal liability, Security Losses.

-----------------------------------------------------------------

**DePaul University.** -- Adjunct Professor, College of Law, 1990 to 1994.  Created and taught a full three-credit course in Advanced Remedies - Analysis of Economic Damages in Litigation, based on my textbook on Forensic Economics; delivered lectures to other courses in subsequent years.  This was the first course created nationwide in the area of Forensic Economics.

**Ibbotson Associates, Inc.** -- Economic and Financial Consultants.  Principal and Managing Director; Originator of SBBI Subscription Services, 11/81 to 11/85.  Firm provides consulting to hundreds of the nation's most prominent money managers, law firms, brokerage firms, and pension funds.

**Seaquest International, Inc.** -- Founder and President, 7/77 to 11/81.  Developed and financed sophisticated research, search, and recovery technologies for ancient underwater artifacts.

**The December Group, Ltd.** -- Investment Banking Consultants.  Associate Economic Analyst 12/74 to 7/77.  Firm specialized in mergers and acquisitions, leveraged buy-outs, divestitures and financing specialized start-ups with venture capital.

**JPMorgan Chase Bank - Chicago.** -- Staff Economist, 3/74 to 12/74.  Analyzed bank credit and service pricing policies.

**Federal Reserve System.** -- Staff Economist at Board of Governors, Washington, D.C. 9/73 to 2/74.

**University of Chicago.** - Adjunct Professor, Public Policy Economics, 3/73 to 6/73. Research Assistant in Economics, 3/70 to 6/73.

**Midlothian Manufacturing Co.** -- Vice President, 9/68 to 3/73.  Responsible for marketing to retail and industrial clients; production control.

# SEG

**EDUCATIONAL BACKGROUND:**

University of Chicago, Chicago IL.  Ph.D. in Economics, 1997; Support Areas in
   Finance and Econometrics.  Honors: Allied Chemical Scholar and Federal Reserve
   Internship.  The University of Chicago is recognized as a world preeminent
   institution for the study of Economics and the home of the Law and Economics
   movement.  Prof. Gary Becker, Nobel 1992, Thesis Advisor; Research Assistant to
   Prof. Eugene Fama, Nobel 2013.

University of Chicago, Chicago, IL.  Master's Degree, 1972, Graduate School of
   Business; Field of Concentration in Economics.

Cornell University, Ithaca, NY.  Bachelor of Science, Operations Research, 1968;
   Field of Concentration in Statistics, Computer Science and Industrial
   Engineering, Honors: John McMullen Scholar.

**PROFESSIONAL ACTIVITIES:**

American Academy of Economic & Financial Experts, Journal of Legal Economics,
   Manuscript Referee, 199x-2008.
American Arbitration Association, Arbitrator, 1994 to 1996;
American Board of Disability Analysts, Professional Advisory Council, 2002 to
   present, Member & Diplomat, 2001 to present;
American College of Forensic Examiners, Fellow, Diplomate and Board Certified
   Forensic Examiner, 1996 to present;
American Economic Association, Member, 1985 to present;
American Finance Association, Member, 1985 to present;
Collegium of Pecuniary Damages Experts, Charter Member, 2008-2011;
Journal of the American Rehabilitation Economics Association: The Earnings
   Analyst, Manuscript Referee, 1998 to 2002;
Journal of Forensic Economics, Board of Editors, 1990 to 2001;
Journal of Forensic Economics, Manuscript Referee, 1990 to 2003;
National Academy of Economic Arbitrators, Founder and Charter Member, 1989 to
   2005;
National Association of Forensic Economics, Vice President, 2000 to 2003, Board
   of Editors, 1990 to 2000, Member, 1988 to present;
National Futures Association's Panel of Arbitrators, Arbitrator, 1994 to
   present;

**PUBLICATIONS:**

Author, "Historical Returns on Investment Instruments," Handbook of Modern Finance
   1985, with Roger Ibbotson and Larry Siegel; Dennis Logue, ed., Warren, Gorham &
   Lamont, New York.
Author, 1988 Supp.to Vol 13, Am Jur Proof of Facts 2d on Hedonic Damages.
Author, "Economist Proposes Relief From Present Value Ruling," Chicago Daily Law
   Bulletin, June 8, 1988.
Author, "Hedonic Damages" Illinois Tort Report, June, 1988. 9209

# SEG

Author, "Hedonic Damages in Wrongful Death Cases," the ABA Journal, Sept,1988.

Author, "Hedonic Damages," The Audio Lawyer, Vol. 6 No. 8, ALI-ABA, February, 1989.

Author, "The Hedonic Value of Life: Economic Expert Witness Testimony in Injury and Wrongful Death," Expert Evidence Reporter, Vol. 1, No. 1, September 1989, Shepard's McGraw-Hill.

Co-author: Economic/Hedonic Damages: A Practice Book for Plaintiff and Defense Attorneys, with M. L. Brookshire, Anderson Publishing Co., Cinn., Ohio, 1990.

Co-author, "Hedonic Damages and Personal Injury:  A Conceptual Approach," Journal of Forensic Economics, 3(1), 1990, pp. 1-8.

Author, "Hedonic Damages in the Courtroom Setting - A Bridge Over Troubled Waters," Journal of Forensic Economics, 3(3), 1990, pp. 41-49.

Author, "Admissibility of Hedonic Damages Testimony," The Audio Litigator, Vol. 1, No. 1, April, 1990, ALI-ABA.

Author, "Hedonic Damages," with G. Magnarini, Wisconsin Lawyer, Vol. 64, No. 2, February 1991.

Author, "Hedonic Damages: Assessing the Loss of Enjoyment of Life," CaliforniaState Bar Bulletin, Vol. 1, No. 8, June 1991.

Co-author, "Hedonic Damages and Personal Injury:  A Conceptual Approach," Journal of Forensic Economics, 3(1), 1990, pp. 1-8; Reprinted in A Hedonics Primer for Economists and Attorneys, Compiled and Edited by John O. Ward, Lawyers & Judges Publishing Co., Chapter 7, pp. 121-129, 1992.

Co-author: 1991/1992 Cumulative Supplement to Economic/Hedonic Damages: A Practice Book for Plaintiff and Defense Attorneys, with M. L. Brookshire, Anderson Publishing Co., Cinn., Ohio, 1992.

Author, "Hedonic Damages in the Courtroom Setting - A Bridge Over Troubled Waters,," Journal of Forensic Economics, 3(3), 1990, pp. 41-49; Reprinted in A Hedonics Primer for Economists and Attorneys, Compiled and Edited by John O. Ward, Lawyers & Judges Publishing Co., Chapter 6, pp. 111-120, 1992.

Author, "Spotting Bias in Plaintiffs' Economic Loss Reports: A Primer for both Sides," Illinois Bar Journal, Vol 80, No. 12, December, 1992, pp. 635-638.

Author, "Life Values: Measuring the Loss of Enjoyment of Life - Economic Analysis whose time has come," The Brief, Summer 1993, Vol. 22, No. 4 pp. 24-27, 62-63, The American Bar Association.

Co-author: 1992/1993 Cumulative Supplement to Economic/Hedonic Damages: A Practice Book for Plaintiff and Defense Attorneys, with M. L. Brookshire and Charles W. de Seve, Anderson Publishing Co., Cinn., Ohio, 1993.

Author, "Evaluating the Loss of Enjoyment of Life - Hedonic Damages," in Charles N. Simkins, ed., Analysis, Understanding and Presentation of Cases Involving Traumatic Brain Injury, National Head Injury Foundation, Wash., DC, 1993.

Author, "Hedonic Damages in Personal Injury and Wrongful Death Litigation," in Gaughan and Thornton, eds. Litigation Economics, Contemporary Studies in Economic and Financial Analysis, Vol 74, JAI Press, Greenwich, CT, 1993.

Author, "Economic Evaluation of the Loss of Enjoyment of Life - Hedonic Damages," in Damages in Tort Actions, Ch. 124, Release 29 - February 1994, Pub. 309, Mathew Bender & Co., New York.

Author, "Measuring the Loss of Enjoyment of Life in Personal Injury Cases - Hedonic Damages," Journal of the Massachusetts Academy of Trial Attorneys, Vol 2, No. 1, July, 1994, pp. 65-67.

# SEG

Author, 3-Part Series, "Two Plus Two Equals -- What?" October, 1994, p. 21; "Detecting Bias in Economics," November, 1994, pp. 14 & 21; "Striving for Economic Fairness," December, 1994, pp. 24-25, California Bar Journal, The Experts.

Author, "Measuring the Loss of Enjoyment of Life in Personal Injury Cases - Hedonic Damages," MTLA News, Vol. 6, No. 4, December, 1994, pp. 3-5, Maine Trial Lawyers Association.

Author, "Hedonic Damages: Measuring The Loss of Enjoyment of Life in Personal Injury Cases," The Prairie Barrister, Vol. 1, No. 1, Winter, 1995, pp. 3, 4, & 12, Nebraska Association of Trial Attorneys.

Author, "Measuring The Loss of Enjoyment of life in Personal Injury Cases in Ohio - Hedonic Damages," Ohio Trial, Vol. 6, Issue 3, Summer 1995, pp. 13- 16, Ohio Academy of Trial Lawyers Education Foundation.

Author, "Measuring The Loss of Enjoyment of Life in Personal Injury Cases - Hedonic Damages," The Advocate, Vol. 22, No. 5, September/October, 1995, pp. 14-16, 22, The Kentucky Academy of Trial Attorneys.

Author, "Damages for the Value of Life," North Dakota Trial Lawyers The Pleader, Vol. 18, No. 4, September 1995, pp. 9-11, 24.

Author, "Hedonic Damages - Measuring The Loss of Enjoyment of Life in Personal Injury Cases," Law Reporter, The Journal of the Hawaii Trial lawyers Association, Vol. 7, No. 9, September 1995, pp. 8-10.

Author, "Measuring The Loss of Enjoyment of Life in Personal Injury Cases in Arizona - Hedonic Damages," Advocate, Arizona Trial Lawyers Association, November 1995, pp. 5, 7, 15.

Co-Author, "Hedonic Damages and Personal Injury: A Conceptual Approach," Journal of Forensic Economics, 3(1), 1990, pp. 1-8; Reprinted in A New Hedonics Primer for Economists and Attorneys, Compiled and Edited by Thomas R. Ireland and John O. Ward, Lawyers & Judges Publishing Co., Reading 25, 1996, pp. 325-334.

Author, "Hedonic Damages - Measuring the Loss of Enjoyment of Life in P.I. Cases," In Brief, Iowa Trial Lawyers Association, Vol. 7/Issue 1, January-February 1996, pp. 13-15.

Author, "Hedonic Damages in Personal Injury and Wrongful Death Litigation," in Gaughan and Thornton, eds. Litigation Economics, Contemporary Studies in Economic and Financial Analysis, Vol 74, JAI Press, Greenwich, CT, 1993; Reprinted in A New Hedonics Primer for Economists and Attorneys, Compiled and Edited by Thomas R. Ireland and John O. Ward, Lawyers & Judges Publishing Co., Reading 3, 1996, pp. 15-36.

Author, "Measuring the Loss of Enjoyment of Life in Personal Injury Cases and Wrongful Death Cases in New Mexico - Hedonic Damages," The New Mexico Trial Lawyer, New Mexico Trial Lawyers' Foundation, Vol. XXIV, No. 3, March, 1996, pp. 1, 60-63.

Author with Introduction by Darrel W. Aherin, "Measuring The Loss of Enjoyment of Life in Personal Injury Cases - Hedonic Damages," Idaho Trial Lawyers Association Journal, Volume 25, Number 2, Summer 1996, pp. 32-36.

Author, "The Value of Life to Close Family Members: Calculating the Loss of Society and Companionship," The New Hedonics Primer for Economists and Attorneys, Second Edition, Edited by Thomas R. Ireland and John O. Ward, Lawyers & Judges Publishing Co., 1996, pp. 377-384.

Author, "Pseudo-Economists - The New Junk Scientists," Federation of Insurance & Corporate Counsel Quarterly, Vol. 47, No. 1, Fall 1996, pp. 95-105.

# SEG

Author with Introduction by Darrel W. Aherin, "Measuring The Loss of Enjoyment of Life in Personal Injury Cases in Idaho – Hedonic Damages," Western Chronicle, N/D 1996, Western Trial Lawyers Association, pp. 32, 35-36.

Author, "Measuring The Loss of Enjoyment of Life in Personal Injury Cases in Washington – Hedonic Damages," Trial News, Vol. 32, Number 5, January 1997, Washington State Trial Lawyers Association, pp. 29-30.

Author, "Jury Verdicts in Drunken Driving Cases," University of Chicago Ph.D. Thesis, UMI Dissertation Services, Ann Arbor, MI, 1997.

Author, "The Value of Life to Close Family Members:  Calculating the Loss of Society and Companionship," American Rehabilitation Economics Association 1997 Monograph, pp. 10-16.

Author, Abstract:  "Jury Verdicts in Drunken Driving Cases," Journal of Forensic Economics, 11(1), 1998, p. 67-68.

Author, "Why Juries Can Be Trusted," Voir Dire, Vol. 5, Issue 3, Summer 1998, American Board of Trial Advocates, pp. 19-21 & 25.

Author, "Measuring The Loss of Enjoyment of Life in Personal Injury Cases – Hedonic Damages," The Neurolaw Letter, Vol. 9, No. 8, April 2000, pp. 45, 48-49.

Author, "Jury Verdicts and the Dollar Value of Human Life," Journal of Forensic Economics, 13(2), 2000, pp. 169-188.

Author, "Hedonic Damages," Izabela Z. Schultz, Douglas O. Brady, Steven Carella, Eds., Psychological Injuries at Trial, Torts Section, American Bar Association, 2003.

Contributor, "Economic Foundations of Injury and Death Damages," Roger T. Kaufman, James D. Rodgers, Gerald D. Martin, Edward Elgar Publishing, Inc., 2005.

Author, "Don't Overlook the Loss of Expanded Family Services," Trial, Vol. 42, No. 3, "Good Counsel" Column, March 2006, pg. 73.

Co-Author, "What is Your Value?" Chapter 2 in Six-Figure Salary Negotiation, Michael Zwell, Platinum Press, 2008.

Co-Author, "Jury Verdicts in Drunken Driving Cases," Review of Law & Economics, Berkeley Press, 2008.

Contributor, "Determining Economic Damages," Gerald D. Martin, James Publishing Inc., 2008 & previous years' editions.

Co-Author, "Estimating the Value of Family Household Management Services: Approaches and Markups," Forensic Rehabilitation & Economics, Vol 3, No. 2, 2010, with David A. Smith and Stephanie R. Uhl, pp. 85-94.

Co-Author, "Credit Damage: Causes, Consequences and Valuation," Forensic Rehabilitation & Economics, Vol 4, No. 1, 2011, with David A. Smith and Stephanie R. Uhl, pp. 27-32.

Co-Author, "Reply to Tinari's Comment on 'Estimating the Value of Family Household Management Services: Approaches and Markups,'" Forensic Rehabilitation & Economics, Vol 4, No. 1, 2011, with David A. Smith and Stephanie R. Uhl, pp. 37-38.

Co-Author, "A Response to Jayne's Comment on 'Estimating the Value of Family Household Management Services: Approaches and Markups,'" Forensic Rehabilitation & Economics, Vol 4, No. 1, 2011, with David A. Smith and Stephanie R. Uhl, pp. 39-40.

Co-Author, "A Reply to Mr. Climo's Credit Damage Comment," Forensic Rehabilitation & Economics, Vol 5, No. 1, 2012, with David A. Smith and Stephanie R. Uhl, pp. 75-76.

# SEG

Contributor, "Lost Earnings Report: Economist Expert," How To Write An Expert
    Witness Report, James J. Mangraviti, Jr., Steven Babitsky, Nadine Nasser
    Donovan, SEAK, Inc, The Expert Witness Training Company, 2014, pp. 527-542.
Author, "Economic Damages in Nevada," Vegas Legal Magazine, Vol 1, Issue 1,
    Summer 2015, pp. 24-25.
Author, "Economic Damages in Nevada," REPRINT, Vegas Legal Magazine, Fall 2016,
    pp. 31-32.
Author, "What Is a Wife Worth?" Vegas Legal Magazine, Winter 2017, pp. 34-35.
Author, "What Is Your Earning Capacity?" Vegas Legal Magazine, Spring 2017, pp.26-
    27.
Author, "Partially Disabling Injuries," Vegas Legal Magazine, Summer 2017, pp. 26-
    27.
Co-Author, "Credibility & Bias in Economic Experts," Vegas Legal Magazine, Winter
    2017, pp. 28-29.
Co-Author, "Credit Damages," Vegas Legal Magazine, Spring 2018, pp. 28-29.
Co-Author, "Defamation" Vegas Legal Magazine, Summer 2018, pp. 26-27.
Co-Author, "Economics is Not Fair!" Vegas Legal Magazine, Fall 2018, pp. 20-21.
Co-Author, "Speculative Damages v. Imprecision: Are They the Same?" Vegas Legal
    Magazine, Spring 2019, pp. 24-25.

---

Creator and founder of Ibbotson Associates' Stocks, Bonds, Bills, and Inflation
    (SBBI) Yearbook, Quarterly, Monthly, and SBBI/PC Services. SBBI is generally
    regarded by academics in the field of finance as the most widely accepted
    source of statistics on the rates of return on investment securities. SBBI
    was originally published by Ibbotson Associates, then by Morningstar, Inc.,
    and is now currently published by Duff & Phelps. The original SBBI series
    generated what became a six-book set universally used for business valuation,
    and currently available on an online platform. These data series are widely
    relied upon and regarded as the most accepted and definitive scholarly
    references by the academic, actuarial and investment community, and in courts
    of law. All three publishers of the SBBI series acknowledge me as the founder
    in 1983, for my "invaluable role" as having "originated the idea" of SBBI,
    which I then implemented while Managing Director at Ibbotson Associates.

---

PROFILES:

The Wall Street Journal, page 1 feature article with photo;
The Best Lawyer's in America: Directory of Expert Witnesses;
National Law Journal, page 1 feature article with photo;
Who's Who in the World;
Who's Who in America;
Who's Who in Finance and Industry;
Who's Who in Science and Engineering;
Who's Who in the Midwest;
Who's Who of Emerging Leaders of America;
Chicago Daily Law Bulletin, page 1 feature article;
Chicago Reader, Section 1 feature article with photo;

# SEG

Like Judgment Day:  The Ruin and Redemption of A Town Called Rosewood, D'Orso, Michael, 1996, Pg. 237.


**NATIONAL PRESENTATIONS:**

Arizona: Brain Injury Association 13th Annual Conference for Attorneys, Phoenix, September 16, 1999;

California: American Bar Association Annual Meeting, San Francisco, August 10, 1992;

California: American Trial Lawyers Association 2005 Winter Convention, "Making Tangible the Intangible: Replacement Household/Family Services", Palm Springs, January 29, 2005;

Canada: Association of Trial Lawyers of America Annual Meeting, Economic Damages, Toronto, 1991;

District of Columbia: Larry King Live, Washington, May 22, 1989;

District of Columbia: National Institute for Trial Advocacy (NITA), Seventh Annual Washington DC Masters Advocacy Program, "Direct and Cross Examination of an Economic Witness," Washington, October 15, 1991;

District of Columbia: National Association. of Protection & Advocacy Systems, Inc., 19th Annual Conference, "Assessment and Proof of Damages," Washington, May 30, 1996;

District of Columbia: American Bar Association Annual Meeting, Washington, TIPS Aviation and Space Law, "Beyond the Horizon: What's Next in Aviation and Space Law Litigation," October 18, 2013;

Florida: Association of Trial Lawyers of America 1992 Winter Convention, Boca Raton, "Cutting Edge Developments in Economic Testimony," January 15, 1992;

Florida: Brain Injury Association 10th Anniversary Trial Lawyers Conference, Palm Beach, September 19, 1996;

Florida: National Association of Consumer Advocates, 2003 NACA-FCRA Conference, Building on Our Success, Panel of Experts, "What the Experts Have Learned, A View From the Witness Box," Orlando, March 9, 2003;

Georgia: National Academy of Economic Arbitrators Annual Meeting, Differences in Economic Assumptions in Personal Injury Wage Calculations, Atlanta, December, 1989;

Georgia: National Association of Forensic Economics Annual Meeting, Value of Life, Atlanta, December, 1989;

Hawaii: American Bar Association Annual Meeting in Honolulu, HI, Speaker and Expert Witness at Mock Trial, Honolulu, August, 1989;

Idaho: Inner Circle of Advocates Annual Meeting, Sun Valley, August, 1989;

Illinois: University of Chicago 1982 Annual Management Conference on Venture Capital;

Illinois: National Association of Consumer Advocates, 2009 NACA-FCRA Fair Credit Reporting Act Conference, "Credit Damages: How to Estimate Them," Chicago Hyatt Regency, May 9, 2009;

Illinois: American Rehabilitation Economics Association Annual Conference, "Hedonic Damages:  A Basic Approach," Chicago, June 13, 2009;

Illinois: National Association of Consumer Advocates, 2010 NACA Auto Fraud Litigation Conference, Credit Damages: How to Estimate Them," Chicago Hyatt Regency, May 16, 2010;

Illinois:  SEAK 19th Annual National Expert Witness Conference, "Handling the Toughest Questions:  Depositions and Trial," Rosemont, June 25, 2010;

# SEG

Illinois:  National Consumer Law Center 20th Annual Consumer Rights Litigation
   Conference, "Expert Witnesses at Trial - Handling Experts in the Courtroom,"
   Fairmont Chicago Millennium Park Hotel, November 5, 2011;
Internet: Credit Bureau Strategy Consulting, Webinar Presentation, "The
   Economics of Credit Damage," September 14, 2009
Louisiana: American Bar Association, National Institute Transportation
   Megaconference, New Orleans, March 5, 1993;
Louisiana: Defense Research Institute, Medical Malpractice Seminar, New Orleans,
   May 6, 1994;
Louisiana: Association of Trial Lawyers of America 2001 Winter Convention,
   Litigation at Sunrise, "Measuring the Loss of Enjoyment of Life in Personal
   Injury Cases -- Hedonic Damages Over the Last Ten Years," New Orleans, February
   12, 2001;
Louisiana: National Association of Consumer Advocates, 2005 NACA-FCRA Conference,
   "Litigating Accuracy Issues with Furnishers of Credit Data," Speaker on
   Economic Damages, New Orleans, June 5, 2005;
Louisiana: National Association of Minority and Women-Owned Law Firms, Trials
   Practice Area Committee Session:  Challenging Experts? "Tactics for Mastering
   Expert Examinations," New Orleans, February 21, 2016;
Louisiana: National Association of Minority and Women-Owned Law Firms, Emerging
   Leaders Session: Ready for Action? "Hone Your Expert Cross Examination
   Techniques," New Orleans, February 22, 2016;
Michigan: Northwest #255 Air Disaster Steering Committee Meeting, Detroit, June,
   1989;
Nevada: American Rehabilitation Economics Association Conference, Mock Trial
   Presided by Nevada Supreme Court Justice William Maupin, Reno, May 15, 1999;
Nevada: National Association of Consumer Advocates, 2006 NACA-FCRA Conference,
   "Experts on Damages," Washington, May 6, 2006;
Nevada: National Association of Consumer Advocates, 2006 NACA-FCRA Conference,
   "Breakfast with the Stars," Washington, May 7, 2006;
Nevada: Brain Injury Association of America; Mastering the Science and Trial
   Strategies, "Making Tangible the Intangible: Expanding the Traditional
   Measures," Las Vegas, April 4, 2008;
Nevada: Internet Law Leadership Summit at Aria Resort & Casino, "Calculating
   Complex Financial Damages," Las Vegas, November 30, 2012;
New York: Eastern Economic Association Annual Conference, "Estimating the
   Value of Family Household Management Services: Approaches and Markups," New
   York City, February 28, 2009;
New York: Eastern Economic Association Annual Conference, "Credit Damage:
   Causes, Consequences and Valuation," New York City, February 28, 2009;
Oregon: National Crime Victim Law Institute at Lewis & Clark Law School, Ninth
   Annual Crime Victim Law Conference, Due Process for Victims: Meaningful Rights
   in Every Case, Portland, June 11, 2010;
Pennsylvania: Swiss Re American Annual Claims Conference, "Looking to the Third
   Millennium," Hershey, June 3, 1996;
Texas: MADD Advanced Victim Assistance Institute Seminar, Dallas, November 12,
   1994;
Texas: National Norplant Litigation Conference 1995, Houston, June 22, 1995.
Texas: American Rehabilitation Economics Association Annual Conference, "Hedonic
   Damages for Dummies," Austin, June 23, 2018.

# SEG

**REGIONAL PRESENTATIONS:**

Hawaii: Western Trial Lawyers Association 1994 Annual Convention, "Making it Work-
    Trial Practice in the 90's," Maui, June 16, 1994;
Illinois: GSA Seminar "Selling your Business", Chicago, October, 1987;
Illinois: Society of Trial Lawyers, "How to Depose an Economist," Chicago, May
    7, 2009;
Louisiana: Southern Trial Lawyers Association Annual Meeting, New Orleans, 1988;
Louisiana: Southern Trial Lawyers Association 1996 Mardi Gras Conference, ATLA
    Traumatic Brain Injury Litigation Group, "Economic Implication of a Closed Head
    Injury," New Orleans, February 18, 1996;
Michigan: Advocacy Institute, Continuing Legal Education, 46th Annual
    Seminar, "Wrongful Death of an Older Person," Ann Arbor, May 12, 1995;
Michigan: Lorman Education Services, "Direct Examination of Experts in a
    Traumatic Brain Injury Case," Novi, August 21, 1997;
Michigan: Lorman Education Services, "Direct Examination of Experts in a
    Traumatic Brain Injury Case," Livonia, August 26, 1998;
New York: Eastern Finance Association Special Session on Pension Fund Asset
    Reversions, 1985;
New York: American Reinsurance Company for Senior Claims Executives Annual
    Meeting, August, 1989;
Ohio: Anderson Publishing Co., Proof of Economic Damages Seminar, Cincinnati,
    November 2, 1990.

**STATEWIDE PRESENTATIONS:**

California: Arizona State Bar Fourth Annual "CLE By The Sea," San Diego, July
    22-23, 1994;
Connecticut Trial Lawyer Association, "All About Experts," Hartford, November 21,
    1992;
Florida State Bar Association, National Institute of Trial Advocacy (NITA),
    Advanced Trial Advocacy Seminar, Speaker and Expert Witness at Mock trial on
    Economic Damages, Gainesville, May 14, 1991;
Georgia Brain Injury Association & Institute of Continuing Legal Education in
    Georgia, "Hedonic Damages: Proving Loss of Enjoyment of Life in Non-Fatal
    Injury Cases," Atlanta, March 29, 2002;
Idaho Trial Lawyers Association Annual Meeting, Twin Falls, February 23, 1996;
Illinois State Bar Association CLE Series, April, 1989;
Illinois: Insurance Group of the Union League Club of Chicago, "Toward A More
    Rational Approach to Liability Judgments," Chicago, March 19, 1991;
Indiana State Bar Association Annual Meeting, October, 1989;
Indiana Trial Lawyers Association Annual Meeting, November 30, 1990;
Indiana State Bar Association "Masters in Trial" Spring Meeting, South Bend, April
    18, 1997;
Iowa Trial Lawyers Association Annual Meeting, Des Moines, November 5, 1993;
Kentucky Academy of Trial Attorneys Damages Seminar, Louisville, August 18, 1995;
Louisiana Trial Lawyer Association, Baton Rouge, "Winning with Experts" Seminar,
    November 10, 1989;
Louisiana Trial Lawyer Association, "Winning With the Masters" Seminar, New
    Orleans, November 21, 1995;

# SEG

Louisiana Trial Lawyer Association, "Winning With the Masters" Seminar, New Orleans, December 10, 1997;

Massachusetts Trial Lawyers Association, "Learn From the Experts," Boston, October 9, 1992;

Massachusetts Trial Lawyers Association Annual Meeting, Boston, October 29, 1993;

Michigan Trial Lawyers Association Annual Meeting, Wrongful Death Damages, May, 1990;

Michigan Head Injury Alliance Fifth Annual Seminar on Closed Head Injury, Detroit, March 24, 1994;

Michigan Head Injury Alliance Sixth Annual Seminar on Closed Head Injury, Detroit, March 23, 1995;

Michigan Head Injury Alliance Seventh Annual Seminar on Closed Head Injury, Detroit, March 28, 1996;

Michigan Head Injury Alliance Eighth Annual Seminar on Closed Head Injury, Detroit, March 27, 1997;

Michigan, Institute of Continuing Legal Education, "The Name of the Game is Damages--Plaintiff and Defense Strategies in Negligence and Employment Cases," Troy, July 20, 2000;

Michigan Trial Lawyers Association Winter Seminar, "Hedonic Damages and Other Special Economic Issues," Gaylord, February 24, 2001;

Michigan Trial Lawyers Association 13th Annual Seminar in the Snow, Litigation Strategies and Techniques, "Loss of Society and Household Companionship and Advisory Services," Bellaire, February 22, 2003;

Mississippi Trial Lawyers Association Annual Convention, "Shooting Stars Seminar," Biloxi, May 19, 1995;

Mississippi Trial Lawyers Association Annual Convention, "Taking Your Recovery to the Next Level: Hedonic Damages," Biloxi, May 10, 2001;

Mississippi: Arkansas Trial Lawyer Association "Maximizing Damages in the Personal Injury Case," Tunica, MS, October 24, 2003;

Missouri: Kansas Trial Lawyers Association Annual Meeting, Kansas City, December 8, 1990;

Missouri State Bar Annual Meeting, Kansas City, September 19, 1996;

Missouri State Bar CLE Seminar, Proving Damages in Catastrophic Injury Cases, "Hedonic Damages after September 11th and An Economist's View on Proving Economic Damages," Kansas City, April 19, 2002;

Missouri State Bar CLE Seminar, Proving Damages in Catastrophic Injury Cases, "Hedonic Damages after September 11th and An Economist's View on Proving Economic Damages," St. Louis, May 9, 2002;

Montana Trial Lawyer Association Fourth Annual Convention, "Proving The Intangible (Hedonic) Value of Human Life," Whitefish, July 23, 1993;

Montana Trial Lawyer Association Seventh Annual Convention, Seminar of the Masters, Polson, August 1, 1996;

Montana Trial Lawyer Association Spring Seminar, Scientific Evidence, "Making Tangible the Intangible: Loss of Enjoyment of Life, and Society & Companionship Damages," Billings, April 25, 2003;

Nevada: Required Medical and Legal Education for the Traumatic Brain Injury Case, "9/11 Victim Compensation Fund Hedonic Damages: Implications for the State of Nevada," Las Vegas, October 25, 2002;

New Hampshire Trial Lawyer Association, "Secrets & Strategies of Trial Law," Concord, October 8, 1993;

New Mexico Trial Lawyers Association Annual Meeting, Economic Damages, Santa Fe, June 22, 1991;

# SEG

New Mexico Trial Lawyers Foundation Damages Seminar, Albuquerque, October 11, 1996;

North Carolina, Brain Injury Association of NC, First Annual Trial Lawyers Conference, "The Use of Expert Testimony in Brain Injury Litigation," Charlotte, January 26, 1996;

North Carolina, Brain Injury Association of NC, Second Annual Trial Lawyers Conference, "The Loss of Enjoyment of Life in Personal Injury – Hedonic Damages," Charlotte, January 24, 1997;

North Dakota Trial Lawyers Association, Annual Meeting Trial Practice Seminar, Fargo, May 4, 1995;

Ohio Association of Trial Lawyers Annual Meeting, Speaker and Expert Witness at Mock Trial on Wrongful Death Damages, Toledo, April, 1990;

Ohio Head Injury Association, "Representing the Survivor of Mild Head Injury," Annual Seminar, Columbus, June 3, 1994;

Pennsylvania: Philadelphia Trial Lawyers Association CLE Lecture Series, March 17, 1993;

South Dakota Trial Lawyers Association Spring Seminar, April, 1989;

Texas Trial Lawyers Association, Medical Malpractice Seminar, Wrongful Death Damages, Houston, May, 1990;

Washington State Trial Lawyers Annual Meeting & Convention, Stevenson, July 11, 1998;

Wisconsin Association of Trial Lawyers Annual Meeting, Wrongful Death Damages, Door County, July, 1990;

Wisconsin Brain Injury 2nd Annual Seminar, "Identifying and Understanding Traumatic Brain Injury," Green Lake, May 31, 1997.


**LOCAL PRESENTATIONS:**

Alaska: Alaska Trial Lawyers Association, Anchorage, August, 1989;

California: "Value of Life:  Dismal Science from the Courtroom, "Economics Department Workshop Colloquium, Pomona College, Claremont, April 17, 2006;

Illinois: Chicago North Suburban Bar Association, May, 1988;

Illinois: Chicago Advocates Society, June, 1988;

Illinois: Northwest Chicago Suburban Bar Association, January, 1989;

Illinois: Chicago Public Radio, WBEZ, February, 1989;

Illinois: DuPage County, Bar Association, Chicago, May, 1989;

Illinois: Sangamon County Trial Lawyers Association, Springfield, May, 1989;

Illinois: McHenry County Bar Association, Chicago, May, 1989;

Illinois: Chicago Bar Association Wrongful Death Seminar, Wrongful Death Damages, February, 1990;

Illinois: Chicago Bar Association Torts Seminar, Defense Perspectives on Economic Damages, January 21, 1991;

Illinois: Chicago Bar Association, Wrongful Death Seminar, February 11, 1993;

Illinois: Chicago Bar Association Effective Direct and Cross-Examination of Expert Witnesses - A Demonstration, January 9, 1995;

Illinois: Interstate National Corporation, "Cutting Edge Developments on Economic Damages - Defense Perspectives", Chicago, August 2, 1995;

Illinois: Interstate National Corporation, "Cutting Edge Developments on Economic Damages - Defense Perspectives", Chicago, September 2, 1997;

Smith Economics Group, Ltd.  ■  312-943-1551

# SEG

Illinois: Cassiday Schade & Gloor, "Catastrophic Damages...They're Back! –
   Limiting Damages After the Invalidation of Tort Reform," Chicago, November 18,
   1998;
Illinois: Law Bulletin Publishing Company, Legal Career Day, Economic Outlook
   for Lawyer Employment, Chicago, April 13, 2004;
Illinois: Fox News Contributor WFLD TV, October 10 and October 15, 2008;
   February 25, March 24, April 10, April 20, June 17, August 3, August 26 and
   October 19, 2009;
Michigan: American Radio Network, WFOX, Detroit, January, 1989;
Michigan: Oakland County Bar Association Negligence Committee, Bloomfield Hills,
   November 5, 1996;
Ohio: Hamilton County, Bar Association Seminar on Economic Damages, Cincinnati,
   January 31, 1991.


## TELEVISION/VIDEO PRESENTATIONS

American Bar Association Tort and Insurance Practice Section Annual
   Meeting, "Hedonic Damages," San Francisco, CA, August 10, 1992;
American Law Institute-American Bar Association, ALI-ABA Tape,
   "Hedonic Damages:  Litigating the Loss of Enjoyment of Life," The Lawyers'
   Video Magazine, Vol. III Issue 20, Philadelphia, PA, December, 1991;
CNN: Larry King Live, May 22, 1989.


## PERSONAL BACKGROUND:

Born November 16, 1946, Rhinelander, Wisconsin;
Graduated Nicolet High School 1964, Milwaukee, Wisconsin;
Honorable Discharge U.S. Army, 1975;
Member of Chicago Board Options Exchange, 1975-1978;
Trustee, Wright Graduate University;
Board Member, Wright Foundation.

## LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
## STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Smith v. Keyport Liquor | Superior Court of New Jersey, Law Division - Monmouth County | MON-L-1412-19 | Hanus & Parsons, Middletown, NJ | 01-21-2021 |
| Tsisyk v. Schneider, et al. | United States District Court, Western District of Oklahoma | 5:14-cv-00386-R | Tawwater Law Firm, Oklahoma City, OK | 01-21-2021 |
| Polk v. Grumet | United States District Court, District of Nevada (Las Vegas) | 2:19-cv-01636-JAD-VCF | Powell Law Firm, Las Vegas, NV | 01-20-2021 |
| Perry/Smith v. Mosaic Residential Inc. | District Court for Harris County, Texas, 127th District Court | 2019-76154 | Arnold & Itkin, Houston, TX | 01-20-2021 |
| Devine v. XPO Logistics Freight, Inc. | United States District Court, Northern District of Illinois, Eastern Division | 18 cv 1264 | Woodruff Johnson & Evans, Aurora, IL | 01-19-2021 |
| Carlini, Sr. v. Atlas Van Lines, et al. | Circuit Court of the Twelfth Judicial Circuit, Will County, Illinois | 15 L 000358 | Burnes & Libman, Chicago, IL | 01-18-2021 |
| Powers/Zak v. Sofocleous, et al. | United States District Court for the Southern District of New York | 1:20-cv-02625 | Hendler Flores Law, Austin, TX | 01-14-2021 |
| Rothman v. Bretschneider | Second Judicial District Court for the State of Nevada, County of Washoe | CV18-02481, Dept No. 15 | Brazelton Law, Reno, NV | 01-13-2021 |
| Oden, et al. v. Kelly, et al. | Twentieth Judicial District, District Court, Rice County, Kansas, Civil Department | 2018-CV-26 | Wagstaff & Cartmell, Kansas City, MO | 01-13-2021 |
| Savino, DO v. Indiana Urgent Care Physician Group, LLC | United States District Court for the Southern District of Indiana, Indianapolis Division | 1:19-cv-2163 | Betz & Blevins, Indianapolis, IN | 01-12-2021 |
| Thompson v. United States of America | United States District Court, Southern District of Illinois | 3:18-CV-1520 | Walker Law Office, Granite City, IL | 01-08-2021 |
| Goss v. Slavin, M.D., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 18 L 4606 | Mossing & Navarre, Chicago, IL | 01-04-2021 |
| James/Phiffer v. Irwin, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2017-L-006939 | Loggans & Associates, Chicago, IL | 12-16-2020 |
| Disantis v. C&W Facility Services, Inc. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2018 L 012739 | Anesi Ozmon, Chicago, IL | 12-15-2020 |
| McCaley/McCalley v. Petrovic, M.D. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2018 L 5925 | Loggans & Associates, Chicago, IL | 12-15-2020 |
| Jeffress v. Trinity Industries, Inc., et al. | Circuit Court of Missouri, Twenty-First Judicial Circuit, St. Louis County, Missouri | 19SL-CC04435 | Langdon & Emison, Lexington, MO | 12-14-2020 |
| Graves v. 3M Company | State of Minnesota, County of Hennepin, District Court, Fourth Judicial District | 27-CV-19-19916 | Schwebel Goetz & Sieben, Minneapolis, MN | 12-14-2020 |
| Mesa v. Schindler Elevator Corporation | District Court, Clark County, Nevada | A-16-745747-C, Dept No. XXXII | Bochanis Law Office, Las Vegas, NV | 12-11-2020 |
| Mills v. Taragon Summit Ridge Lewisville, et al. | County Court at Law No. 1, Dallas County, Texas | CC-19-06948-A | Arnold & Itkin, Houston, TX | 12-10-2020 |
| Burton/Foster v. Bristol-Myers Squibb Company, et al. | United States District Court, Northern District of Florida, Pensacola Division | 3:16-md-2734 | Goldenberg Law, Minneapolis, MN | 12-09-2020 |
| Whitmore v. Spectrum Health Hospitals | State of Michigan in the Circuit Court for the County of Kent | 20-01609-NH | Buchanan & Buchanan, Grand Rapids, MI | 12-02-2020 |
| Fletcher v. Whittington, et al. | United States District Court for the Western District of Louisiana (Shreveport) | 5:18-cv-01153-SMH-KLH | Jacob Litigation, Mechanicsburg, PA | 12-02-2020 |
| Blankenship v. McLaughlin, et al. | United States District Court, Eastern District of Virginia, Alexandria Division | 1:20-cv-00429 | Early Sullivan Wright Gizer & McRae, Los Angeles, CA | 12-01-2020 |
| Marshall v. Henkels & McCoy, Inc., et al. | Superior Court of New Jersey, Law Division - Middlesex County | MID-L-6247-17 | Brach Eichler, Roseland, NJ | 11-20-2020 |
| Newson/West v. Hayes, M.D., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2017 L 003695 | Loggans & Associates, Chicago, IL | 11-19-2020 |
| Tamton v. Advocate Christ Hospital, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 17 L 12380 | Watts Guerra, San Antonio, TX | 11-17-2020 |
| Smith v. Bristol-Myers Squibb Co., et al. | U.S. District Court, Northern District of Florida, Pensacola Division | 3:17-cv00474 | Kirtland & Packard, Redondo Beach, CA | 11-16-2020 |
| Chandler-Tonstad v. Bristol-Myers Squibb Company, et al. | U.S. District Court, Northern District of Florida, Pensacola Division | 3:18-cv-01302 | Kirtland & Packard, Redondo Beach, CA | 11-13-2020 |
| Ray-Rouser vs. Hernandez/Century Towing | District Court, Clark County, Nevada | A-19-788335-C | Powell Law Firm, Las Vegas, NV | 11-12-2020 |
| Hutt, et al. v. Bristol-Myers Squibb Company, et al. | U.S. District Court, Northern District of Florida, Pensacola Division | 3:17-cv-00634-MCR-GRJ | Bernheim Kelley Battista & Bliss, Plymouth, MA | 11-11-2020 |
| Splekhout v. Pekin Insurance | American Arbitration Association | Z41-102 | Thiesen & Roche, Wheaton, IL | 11-04-2020 |
| Moon v. Steelberg, M.D., et al. | Eighteenth Judicial District, District Court, Sedgwick County, Kansas Civil Department | 2019-CV-2503 | Napoli Shkolnik, Overland Park, KS | 11-03-2020 |
| Errant Gene Therapeutics LLC v. Sloan-Ketttering Institute for Cancer Research, et al. | Supreme Court of the State of New York, County of New York | 150856/2017 | McCue Sussmane Zapfel & Cohen, New York, NY | 10-30-2020 |
| Agwomoh v. Village of Dolton, et al | Circuit Court of Cook County, Illinois, Law Division | 18 L 2677 | Motherway & Napleton, Chicago, IL | 10-29-2020 |

### LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
### STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Gamze v. Seibel | Circuit Court of Cook County, Illinois, Law Division | 2017-L-007185 | Patterson Law Firm, Chicago, IL | 10-28-2020 |
| Driscoll v. Castellanos, et al. | U.S. District Court, for the District of New Mexico | 1:19-cv-00527-JCH-KK | Langdon & Emison, Chicago, IL | 10-27-2020 |
| Wood v. PACCAR Inc. et al. | U.S. District Court, Northern District of Iowa, Eastern Division | 2:19-CV-1010 | Crowley & Prill, Burlington, IA | 10-26-2020 |
| Jones Martin v. United States of America | U.S. District Court, District of Nevada | 2:18-cv-02392-GMN-VCF | Powell Law Firm, Las Vegas, NV | 10-21-2020 |
| Martinez vs. James River Insurance Company | U.S. District Court, District of Nevada | 2:19-cv-00603-JAD-NJK | Powell Law Firm, Las Vegas, NV | 10-20-2020 |
| Pym v. Ford Motor Company, et al. | Circuit Court of Missouri, Twenty First Judicial Circuit (St. Louis County) | 19SL-CC00857 | Langdon & Emison, Lexington, MO | 10-14-2020 |
| Rosas/Godinez v. Level Construction, Inc. | Circuit Court of Cook County, Illinois, County Department, Law Division | 2018 L 008625 | Cogan & Power, Chicago, IL | 10-06-2020 |
| Trepeta v. National Consumer Telecom and Utilities Exchange, Inc., et al. | United States District Court, Eastern District of Virginia, Norfolk Division | 2:19-cv-00405-MSJ-LRL | Consumer Litigation Associates, Newport News, VA | 10-05-2020 |
| DeLap v. Boone, M.D., et al. | Circuit Court of 17th Judicial Circuit, Winnebago County, Illinois | 17 L 140 | Cogan & Power, Chicago, IL | 10-02-2020 |
| Fernandez v. Debt Assistance Network, LLC ("DAN") | United States District Court for the Southern District of California | 3:19-cv-01442-MMA-JLB | Kazerouni Law Group, Costa Mesa, CA | 09-30-2020 |
| Lietzow v. Village of Huntley et al | U.S. District Court, Northern District of Illinois, Eastern Division | 17-cv-05291 | Dvorak Law Office, Willowbrook, IL | 09-29-2020 |
| Burlew v. Shop Rite, et al. | Superior Court of New Jersey, Monmouth County | MON-L-4318-18 | Hanna Law Office, Manasquan, NJ | 09-28-2020 |
| Warner v. CCS/Wellpath, et al. | United States District Court, Southern District of Indiana, Indianapolis Division | 1:19-cv-00774-RLY-MJD | Eskew Law Office, Indianapolis, IN | 09-28-2020 |
| Watkins/Green v. United States of America, et al. | United States District Court, Northern District of Illinois, Eastern Division | 18-cv-4142 | Cogan & Power, Chicago, IL | 09-24-2020 |
| Lipps v. Central DuPage Hospital Association | Circuit Court of Cook County, Illinois, County Department - Law Division | 19 L 005371 | Motherway & Napleton, Chicago, IL | 09-21-2020 |
| Dugger v. BNSF Railway Company | District Court of Box Butte County, Nebraska | CI1849 | High & Younes, Omaha, NE | 09-18-2020 |
| Lugg v. Sutton, et al. | United States District Court for the Central District of Illinois, Peoria Division | 18-cv-1412-JES-JEH | Katz Nowinski, Moline, IL | 09-17-2020 |
| Jones v. Ohio/Oklahoma Hearst Television, Inc. | District Court of Oklahoma County, State of Oklahoma | CJ-2017-4274 | Burch George & Germany, Oklahoma City, OK | 09-16-2020 |
| Stambaugh v. Indiana Department of Insurance | State of Indiana, County of Miami in the Miami County Circuit Court | 52C01-2005-CT-000326 | Rothberg Logan & Warsco, Fort Wayne, IN | 09-16-2020 |
| Doe v. First Presbyterian Church of Plymouth, MI | State of Michigan in the Third Circuit Court, Wayne County | 19-000088-NO | Fierberg National Law Group, Traverse City, MI | 09-15-2020 |
| Martinez v. Sorenson, et al. | District Court, Clark County, Nevada | A-19-798555-C, Dept No. 11 | Injury Lawyers Nevada, Las Vegas, NV | 09-14-2020 |
| Dugger v. BNSF Railway Company | District Court of Box Butte County, Nebraska | CI1849 | High & Younes, Omaha, NE | 09-14-2020 |
| Seymour/Mankin v. Lewis & McCorry PC | State of Michigan in the Circuit Court for the County of Kent | 19-08339-NH | Buchanan & Buchanan, Grand Rapids, MI | 09-04-2020 |
| Myers/Saterlee v. Land 'N' Sea Distributing, Inc. | United States District Court, Northern District of Indiana, Fort Wayne Division | 1:18-CV-00187-TLS-SLC | Theisen & Associates, Fort Wayne, IN | 09-01-2020 |
| Davis v. Suburban Hospital, Inc. et al. | Circuit Court for Montgomery County, Maryland | 474907-V | Bekman Marder & Adkins, Baltimore, MD | 09-01-2020 |
| White v. Mejia, et al. | District Court, Clark County, Nevada | A-18-780344-C, Dept No. XXIII | Paternoster Law Group, Las Vegas, NV | 08-31-2020 |
| Sorge v. FCA US, LLC, et al. | Circuit Court of Jackson County, Missouri at Independence | 1816-CV20409, Div 12 | Langdon & Emison, Chicago, IL | 08-27-2020 |
| Lewis v. A.W. Chesterton Company, et al. | State of Indiana, Marion County Superior Court, Civil Division | 49D12-1911-MI-047874 | Maune Raichle Hartley French & Mudd, St. Louis, MO | 08-25-2020 |
| Price v. UBS Financial Services, Inc. | United States District Court, District of New Jersey, Newark Division | 1701882 (WJM-MF) | Henrichsen Law Group, Jacksonville, FL | 08-13-2020 |
| Howe, et al. v. Tri-Energy, et al. | District Court, South Central Judicial District, State of North Dakota, County of Burleigh | 08-2018-CV-02789 | Beattie Law Firm, Des Moines, IA | 08-11-2020 |
| Polanco Urena/Urena-Valverde v. Vitex Extrusion, LLC. | United States District Court, District of New Hampshire | 18-cv-1019-JL | Bagolie Friedman, Jersey City, NJ | 08-06-2020 |
| Heartwise, Inc. v. Nutrigold, Inc. | United States District Court, District of Utah, Central Division | 2:13-cv-00982-DAK | Magleby Cataxinos & Greenwood, Salt Lake City\UT | 07-30-2020 |

### LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
### STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Myers/Saterlee v. Land 'N' Sea Distributing, Inc. | United States District Court, Northern District of Indiana, Fort Wayne Division | 1:18-CV-00187-TLS-SLC | Theisen & Associates, Fort Wayne, IN | 07-29-2020 |
| Stallworth v. Estate of Stanius | Circuit Court of Cook County, Illinois, County Department - Probate Division | 19 P 008267 | Latimer LeVay Fyock, Chicago#IL | 07-29-2020 |
| Lee v. Dennison, et al. | United States District Court, District of Nevada | 2:19-cv-01332-KJD-DJ | Powell Law Firm, Las Vegas, NV | 07-22-2020 |
| Ghaisar v. United States of America | United States District Court, Eastern District of Virginia, Alexandria Division | 1:19-cv-01224 | Harris Wiltshire & Grannis, Washington, DC | 07-21-2020 |
| Guthmiller v. Ocwen Loan Servicing, LLC. | United States District Court, Western District of Washington at Seattle | 2:19-CV-01585-BJR | Hutchison Law Office, Tacoma, WA | 07-20-2020 |
| Guthmiller v. Ocwen Loan Servicing, LLC. | United States District Court, Western District of Washington at Seattle | 2:19-CV-01585-BJR | Hutchison Law Office, Tacoma, WA | 07-13-2020 |
| Hammit v. Spectrum Paint Company, Inc. | Circuit Court of Washington County, Arkansas, Civil Division | 72CV-19-2491 | Etoch Law Firm, Helena, AR | 07-13-2020 |
| Hauck/Chambers v. Wabash National Corporation | First Judicial District Court, Sante Fe County, New Mexico | D-101-CV-2018-01101 | Langdon & Emison, Lexington, MO | 07-09-2020 |
| Davis v. The Royal Paper Stock Company, Inc. | Common Pleas Court of Clinton County, Ohio, Civil Division | CVH 19000202 | Langdon & Emison, Lexington, MO | 07-07-2020 |
| Victor v. Dickey, et al. | District Court, Clark County, Nevada | A-18-775694-C, Dept. No II | Paternoster Law Group, Las Vegas, NV | 07-06-2020 |
| Slotten, et al. v. Southeastern Emergency Physicians of Memphis, LLP, et al. | Circuit Court of St. Charles County, State of Missouri | 1711-CC01108, Division 1 | Cox & Associates, St. Charles, MO | 07-01-2020 |
| Morgan v. Lakeland Medical Center, et al. | State of Michigan, Circit Court for the County of Kalamazoo | ADMIN-2019-0011-A6 | Buchanan & Buchanan, Grand Rapids, MI | 06-30-2020 |
| Roter v. Muhammad, M.D., et al. | Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois | 17 L 4 | Cogan & Power, Chicago, IL | 06-29-2020 |
| Stewart v. Pinnacle, et al. | Commonwealth of Kentucky, Fayette Circuit Court, Division 8 | 18-CI-03919 | Oldfather Law Firm, Louisville, KY | 06-17-2020 |
| Rhude v. Artis, et al. | District Court, Clark County, Nevada | A-18-785559-C, Dept No. 8 | Powell Law Firm, Las Vegas, NV | 06-16-2020 |
| Penton v. Hubard, et al. | United States District Court for the Eastern District of California, Sacramento Division | 2:11-cv-00518-TLN-KJN (PC) | Simpson Thacher, Palo Alto, CA | 05-19-2020 |
| Burford, et al. v. Arconic, Inc., et al. | District Court of the 11th Judicial District, Harris County, Texas | 2017-70076-ASB | Cappolino Dodd & Krebs, Cameron, TX | 05-18-2020 |
| Maglera v. Modern Forge Services, LLC., et al. | State of Indiana In the Lake Superior Court Sitting at Gary, Indiana | 45D04-1505-CT-157 | Allen Law Group, Valparaiso, IN | 05-11-2020 |
| Abt v. Ceco Concrete Construction, LLC | Iowa District Court In and For Polk County | LACL 144075 | Duff Law Firm, West Des Moines, IA | 05-07-2020 |
| Winward, et al. v. Bitumar USA, Inc. | Circuit Court for Baltimore City | 24-C-19-003648 OT | Bekman Marder & Adkins, Baltimore, MD | 05-05-2020 |
| Ginsburg v. Furbush, et al. | District Court, Clark County, Nevada | A-18-779016-C, Dept. 10 | Powell Law Firm, Las Vegas, NV | 04-30-2020 |
| Moore v. BNSF Railway Company | Nineteenth Judicial District, District County, Cowley County, Kansas, Civil Department | 2017-CV-000099-W | Hubbell Law Firm, Kansas City, MO | 04-30-2020 |
| Dorn, et al. v. Vivint, Inc. | U.S. District Court, Middle District of Alabama, Northern Division | 2:19-cv-258-MHTOSMD | Pittman Dutton & Hellums, Birmingham, AL | 04-29-2020 |
| Hart v. Southern Illinois Hospital Services, et al. | Circuit Court of the First Judicial Circuit, Jackson County, Illinois | 17-L-59 | Womick Law Firm, Carbondale, IL | 04-27-2020 |
| Bauer v. Parks/Patrick, et al. | Commonwealth of Kentucky, Floyd Circuit Court, Division No. 2 | 16-CI-00829 | Collins Law Office, Salyersville, KY | 04-27-2020 |
| Boster v. Gordon Food Service, Inc. | Commonwealth of Kentucky, Warren Circuit Court, Division No. 1 | 17-CI-01382 | Stephenson Rife, Shelbyville, IN | 04-20-2020 |
| Jimenez v. Ramasamy, M.D., et al. | Superior Court of New Jersey, Law Division - Hudson County | HUD-L-004047-17 | Lynch Lynch Held Rosenberg, Hasbrouck Heights, NJ | 04-17-2020 |
| Anderson v. Prasad, M.D., et al. | Iowa District Court, Polk County | LACL143411 | Duff Law Firm, West Des Moines, IA | 04-14-2020 |
| Dreamstime.com v. Google, et al. | United States District Court, Northern District of California, San Jose Division | 3:18-CV-01910-WHA | Baker Marquart, Los Angeles, CA | 04-02-2020 |
| Eble v. UH Portage Medical Center, et al. | Court of Common Pleas, Portage County, Ohio | 2018CV00571 | Farrell Law Firm, Brooklyn Hts, Ohio | 03-31-2020 |
| Nelson v. Silver Cross Hospital | Circuit Court of Will County, Illinois, Illinois County Department - Law Division | 17 L 000068 | O'Connor Law Group, Chicago, Il | 03-23-2020 |
| Kendrick v. Union Pacific Railroad Co. | Circuit Court of Jackson County, Missouri at Independence | 1716-CV18714 | Davis Bethune & Jones, Kansas City, MO | 03-19-2020 |
| Hanson v. Mednax, Inc. | Circuit Court of Camden County, Missouri at Camdenton | 17CM-CC00251 | Heartland Group, Kansas City, MO | 03-17-2020 |

## LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
## STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Nnau v. Correa, et al. | District Court, Clark County, Nevada | A-18-780228-C, Dept No. XXII | The 702 Firm, Las Vegas, NV | 03-11-2020 |
| Friel v. Miller, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2015-L-006664 | Snorf Law Office* Chicago\IL | 03-11-2020 |
| Marques v. United Airlines, Inc. | United States District Court, Northern District of Illinois, Eastern Division | 18-cv-4159 | KMA Zuckert, Chicago, IL | 03-10-2020 |
| Figueroa-Rosario v. Wal-Mart Stores, Inc. | District Court, Clark County, Nevada | 2:19-cv-00928-JCM-BNW | Powell Law Firm, Las Vegas, NV | 03-09-2020 |
| Stoch v. John Crane, Inc. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2016 L 009400 | Taxman Pollock Murray & Bekkerman, Chicago, IL | 03-05-2020 |
| Egermeier v. Trinity Industries, Inc. | District Court In and For Nowata County, State of Oklahoma | CJ-2017-37 | Langdon & Emison, Lexington, MO | 03-03-2020 |
| Range III v. Roscoe Properties, Inc. | District Court of Harris County, Texas, 61st Judicial District | 2018-88031 | Arnold & Itkin, Houston, TX | 03-02-2020 |
| Gonzalez v. Lowe's Home Centers, et al. | JAMS Arbitration, Las Vegas, NV | 2:17-cv-02527-APG-PAL | Knepper & Clark, Las Vegas\NV | 02-27-2020 |
| Brown v. Cheesecake Factory Restaurants, Inc. | District Court, Clark County, Nevada | A-17757481-C, Dept No. XXXII | Shook & Stone, Las Vegas, NV | 02-27-2020 |
| Nazario/Guerrero v. Trinity Health Corporation | Circuit Court of Cook County, Illinois, County Department - Law Division | 2017 L 003937 | Dinizulu Law Group, Chicago\IL | 02-27-2020 |
| Huntly v. Global Med Hospice Services, LLC, et al. | Eighth Judicial District Court, Clark County, Nevada | A-16-739023-C, Dept No. XXVIII | Lucherini Blakesley Courtney, Las Vegas\NV | 02-26-2020 |
| Long v. Love's Travel Stops and Country Stores, Inc. | United States District Court, Eastern District of Missouri, Eastern Division | 4:18-CV-01414-SEP | Cox & Associates, St. Charles, MO | 02-24-2020 |
| Young/Artis v. Trinity Industries, Inc., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2018 L 007726 | Langdon & Emison, Lexington, MO | 02-21-2020 |
| Jennings v. Nash, et al. | United States District Court, Western District of Missouri | 6:18-cv-03261-NKL | Ramsey Law Office, St. Louis\MO | 02-20-2020 |
| Squiers v. Freglen | Court of the Twenty-Second Judicial Circuit, McHenry County, Illinois | 16 LA 61 | Franks & Rechenberg, Lake in the Hills, IL | 02-18-2020 |
| Clay v. Kabak, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 L 005380 | Sandman Levy & Petrich, Chicago, IL | 02-17-2020 |
| Shores/Clewell v. The Dupps Company, Inc., et al. | United States District Court for the Central District of Illinois, Rock Island Division | 4:18-cv-04147 | Bradley Law Firm, St. Louis, MO | 02-14-2020 |
| Albright v. Metropolitan Sewer District | Jefferson Circuit Court, Division Thirteen(13) | 18-CI-007082 | Sitlinger & Theller, Louisville, KY | 02-13-2020 |
| Lopez/Starrett v. Presbyterian Healthcare Services, Inc. | State of New Mexico, County of Santa Fe, First Judicial District Court | D-101-CV-2018-01247 | Salazar Sullivan Jasionowski, Albuquerque, NM | 02-11-2020 |
| Aldred v. Renown Health, et al. | Second Judicial District Court for the State of Nevada, County of Washoe | CV18-01501, Dept. No 7 | Langdon & Emison, Lexington, MO | 02-11-2020 |
| Brock/Olmedo v. Ching, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 17 L 9756 | Kalogerakos & Associates, Lincolnwood, IL | 02-10-2020 |
| Hennigan v. J.B. Hunt. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2018 L 002962 | Alberts Curran & Eiler, Chicago, IL | 02-07-2020 |
| Barnard v. Toyota Motor Corporation | Circuit Court of Cook County, Illinois, County Department - Law Division | 2016 L 001063 | Komyatte law Firm, Lakewood, CO | 02-06-2020 |
| Slocum v. Kaiser Foundation Health Plan, Inc. | Matter of Arbitration | 15497 | Kapoor Law Offices, Danville, CA | 02-05-2020 |
| Slocum v. Kaiser Foundation Health Plan, Inc. | Matter of Arbitration | 15497 | Kapoor Law Offices, Danville, CA | 01-14-2020 |
| Milburn v. Kansas City Southern Railway Company | Circuit Court of Jackson County, Missouri at Kansas City | 1816-CV11866, Division 8 | Davis Bethune & Jones, Kansas City, MO | 01-14-2020 |
| Barnard v. Toyota Motor Corporation | Circuit Court of Cook County, Illinois, County Department - Law Division | 2016 L 001063 | Komyatte law Firm, Lakewood, CO | 01-14-2020 |
| Marfice v. Finlay, et al. | District Court of the First Judicial District of the State of Idaho, In and For the County of Kootenai | CV28-18-6108 | Ramsden Marfice Ealy & Harris, Coeur d'Alene, ID | 01-14-2020 |
| Kane v. Wal-Mart, Inc. | District Court, Clark County, Nevada | A-18-772835-C, Dept No. 13 | Powell Law Firm, Las Vegas, NV | 01-13-2020 |
| Jado v. Mohamed, et al. | United States District Court, Southern District of Iowa, Eastern Division | 3:18-cv-00091 | Langdon & Emison, Lexington, MO | 01-13-2020 |
| Petite v. Martin | District Court, Clark County, Nevada | A-17-750181-C, Dept No. 2 | Powell Law Firm, Las Vegas\NV | 01-10-2020 |
| Walker v. Desert Palace LLC | District Court, Clark County, Nevada | A-18-771501-C, Dept No. XV | Powell Law Firm, Las Vegas, NV | 01-09-2020 |
| Bauer v. Parks/Patrick, et al. | Commonwealth of Kentucky, Floyd Circuit Court, Division No. 2 | 16-CI-00829 | Collins Law Office, Salyersville, KY | 01-09-2020 |

## LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
## STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Moss v. Grane Transportation Industries, Inc. | Circuit Court of Cook County, Illinois, County Department - Law Division | 18-L-000164 | Leonard Law Group, Chicago, IL | 01-09-2020 |
| Olek, Inc. v. RAR Development Associates, et al. | Superior Court of New Jersey, Law Division - Essex County | ESX-L-1780-15 | Orr Law Office, Newark\NJ | 01-08-2020 |
| Kennedy, et al. v. University of Kentucky Hospital, et al. | Commonwealth of Kentucky, Fayette Circuit Court, Division 7 | 17-CI-02025 | Erdmann & Stumbo, Richmond, KY | 01-06-2020 |
| Van Lente v. Rainbow Early Education Holding, LLC | State of Michigan, Circuit Court for the County of Ottawa | 2019-005857-NO | Eardley Law Office, Rockford, MI | 01-03-2020 |
| Tutt-Crabtree v. Riley Love, et al. | Circuit Court of the Twelfth Judicial Circuit, Will County, Illinois | 17 L 677 | Suber & Associates, Chicago, IL | 12-19-2019 |
| Vilela/Ramos v. Valley Health Systems, LLC., et al. | United States District Court, District of Nevada | 2:16-cv-01503 | Luh & Associates, Las Vegas, NV | 12-19-2019 |
| Rea v. Carvana, LLC. | Marion Superior Court No. 13, State of Indiana | 49D13-1712-CT-047191 | Allen Law Group, Valparaiso, IN | 12-18-2019 |
| Carter v. Szemak, et al. | District Court, Clark County, Nevada | A-18-779043-C, Dept No. XXIV | Powell Law Firm, Las Vegas, NV | 12-17-2019 |
| Rust, II v. Banner Health, et al. | Superior Court of Arizona, In and For the County of Gila | S0400CV201900001 | Lloyd Law Group, Payson, AZ | 12-16-2019 |
| Brady v. Desert Palace, Inc., et al. | District Court, Clark County, Nevada | A-16-746061-C, Dept No. II | Eglet Adams, Las Vegas, NV | 12-10-2019 |
| Butcher v. Dineequity, Inc., et al. | District Court, 192nd Judicial District, Dallas County, Texas | DC-18-05700 | Witherspoon Law Group, Dallas, TX | 12-09-2019 |
| Godines v. Entac, et al. | Eighth Judicial District Court, Clark County, Nevada | A-18-777981-C, Dept. 15 | Powell Law Firm, Las Vegas, NV | 12-05-2019 |
| Hankins v. Ragauskaite, M.D., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 L 2966 | Motherway & Napleton, Chicago\IL | 12-04-2019 |
| Gonzalez v. Christus Santa Rosa Health Care Corporation, et al. | District Court, 131st Judicial District, Bexar County, Texas | 2018-CI-09552 | Maloney Law Group, San Antonio, TX | 12-03-2019 |
| Farris, Jr. v. Clarksdale HMA, LLC., et al. | Circuit Court of Coahoma County, Mississippi | 14-CI-17-0033 | Merkel & Cocke, Clarksdale, MS | 12-02-2019 |
| Kroft v. Viper Trans, Inc. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2016 L 009466 | Allen Law Group, Valparaiso, IN | 11-26-2019 |
| LePretre v. Lend Lease (US) Construction, Inc., et al. | Circuit Court of Cook County, Illinois County Department - Law Division | 13 L 13896 | Anesi Ozmon, Chicago, IL | 11-25-2019 |
| Olson v. Advanced Pain & Anesthesia Consultants, P.C., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2016L007019 | Ruder Law, Chicago, IL | 11-25-2019 |
| Mikocewicz v. Kroczek, M.D. | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 L 4094 | Xydakis Law Office, Chicago, IL | 11-22-2019 |
| Heywood v. Stanford, et al. | District Court, Clark County, Nevada | A-18-769335-C, Dept No. XXXII | Lerner Injury Attorneys, Las Vegas, NV | 11-14-2019 |
| Davis v. Pace Suburban Bus Division of the Regional Transportation Authroity, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 18 L 693 | Loggans & Associates, Chicago, IL | 11-13-2019 |
| Bennington v. Clapper, et al. | District Court, Clark County, Nevada | A-18-775050-C, Dept No 1 | Powell Law Firm, Las Vegas, NV | 11-13-2019 |
| Whitfield v. St. Anthony Hospital, et al. | District Court for Oklahoma County, State of Oklahoma | CJ-2017-1428 | Tawwater Law Firm, Oklahoma City, OK | 11-07-2019 |
| Darden v. Snow, et al | United States District Court, Northern District of Texas, Fort Worth Division | 4:15-CV-221-A | Washington Law Office, Dallas, TX | 11-06-2019 |
| Narazio/Guerrero v. Trinity Health Corporation | Circuit Court of Cook County, Illinois, County Department - Law Division | 2017 L 003937 | Dinizulu Law Group, Chicago, IL | 11-05-2019 |
| Arijeloye v. Weidner Properties LLC | District Court of Midland County, Texas, 441st District Court | CV54920 | Arnold & Itkin, Houston, TX | 11-04-2019 |
| Clean Culture Laboratories, LLC v. Oz Naturals, LLC | Judicial Arbitration and Mediation Service, Miami Office | 1460005460 | Kronenberger Rosenfeld, San Francisco\CA | 10-30-2019 |
| Michon v. The City of Chicago, et al. | United States District Court, Northern District of Illinois, Eastern Division | 1:16-cv-06104 | Horwitz Law Firm, Chicago\IL | 10-29-2019 |
| Baldassano v. Goetz, et al. | Circuit Court of Cook County, State of Illinois, 1st Municipal District - Law Division | 17 L 63013 | Carponelli Law Offices, Hoffman Estates\IL | 10-29-2019 |
| Shapiro, M.D. et al. v. Northshore University Healthsystem Faculty Practice Associates | Circuit Court of Cook County, Illinois County Department - Law Division | 17 L 3203 | Motherway & Napleton, Chicago, IL | 10-28-2019 |
| Guvenoz v. Target Corporation, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 L 7377 | Motherway & Napleton, Chicago, IL | 10-25-2019 |
| Gaydula v. Roadsafe Traffic Systems, Inc. | Circuit Court of Cook County, Illinois, County Department - Law Division | 17 L 6680 | O'Connor Law Group, Chicago, IL | 10-24-2019 |
| Johnson/O'Leary v. Meeks Transport, LLC | Texas Arbitration Mediation Services | 18-0524-ARB | Grossman Law Offices, Dallas, TX | 10-23-2019 |
| Jimenez v. Ramasamy, M.D., et al. | Superior Court of New Jersey, Law Division - Hudson County | HUD-L-004047-17 | Lynch Lynch Held Rosenberg, Hasbrouck Heights, NJ | 10-17-2019 |

LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Melgoza v. Rush University Medical Center | United States District Court, Northern District of Illinois, Eastern Division | 17-cv-6819 | Hahn Loeser & Parks, Chicago, IL | 10-16-2019 |
| Shah v. Insomniac, Inc., et al. | District Court, Clark County, Nevada | A-17-756782-C, Dept 10 | Eglet Adams, Las Vegas, NV | 10-16-2019 |
| Skinner, et al. v. Ethicon, Inc., et al. | United States District Court for the Southern District of West Virginia at Charleston | 2:15-cv-07789 | Carpenter Zuckerman & Rowley, Ojai, CA | 10-15-2019 |
| Spradlin v. Millner, et al. | State of New Mexico, County of Grant, Sixth Judicial District Court | D-608-CV-2013-00141 | Sherman & Sherman, Deming, NM | 10-15-2019 |
| Gaguancela v. BJ's Wholesale Club, Inc. etal | Superior Court of New Jersey, Law Division - Middlesex County | MID-L-3824-16 | Gill & Chamas, Perth Amboy\NJ | 10-09-2019 |
| Greenberg, M.D. v. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College | United States District Court, Eastern District of Louisiana | 19-cv-00137 | Flood Law, Royal Oak, MI | 10-08-2019 |
| Grzybowski v. All Star Fence, et al. | Circuit Court of Cook County, Illinois, County Department, Law Division | 17 L 009196 | Burnes & Libman, Chicago, IL | 10-07-2019 |
| Richards v. Rainford | District Court, Clark County, Nevada | A-18-775304-C, Dept No 4 | Saggese & Associates, Las Vegas, NV | 10-04-2019 |
| Santiago v. Fischer | United States District Court, Eastern District of New York | 09-CV-1383 | Davis Polk & Wardwell, New York, NY | 10-03-2019 |
| Sisk/Golden v. Turner, M.D. | Circuit Court of Lee County Mississippi | CV18-046 (R) (L) | Wais Vogelstein Forman & Offutt, Baltimore, MD | 10-02-2019 |
| Hulett v. Trinity Industries, Inc. | Circuit Court of Lake County, Illinois | 18L00000741 | Langdon & Emison, Lexington, MO | 10-01-2019 |
| Zalud v. HC Aurora, LLC., et al. | Circuit Court of the Sixteenth Judicial Circuit, Kane County, Illinois | 13 L 570 | Cogan & Power, Chicago, IL | 10-01-2019 |
| Baldassano v. Goetz, et al. | Circuit Court of Cook County, State of Illinois, 1st Municipal District - Law Division | 17 L 63013 | Carponelli Law Offices, Hoffman Estates, IL | 09-30-2019 |
| Jacobson v. Spectrum Health Primary Care Partners | State of Michigan, Circuit Court for the County of Kent | 19-00978-NH | Buchanan & Buchanan, Grand Rapids, Mi | 09-30-2019 |
| Ha v. Hong, M.D., et al. | Supreme Court of the State of New York, County of New York | 805177/2014 | Lynch Lynch Held Rosenberg, Hasbrouck Heights\NJ | 09-27-2019 |
| Pawson v. Susan Bennett, LLC | State of Illinois, Circuit Court of the Twenty-Third Judicial Circuit, DeKalb County, Illinois | 2016 L 46 | Burns Cronauer & Brown, Sycamore, IL | 09-26-2019 |
| Gallagher v. Midwest Orthopaedic Center, S.C., et al. | Circuit Court of the Tenth Judicial Circuit of Illinois, Peoria County | 17 L 6 | McNabola Law Group, Chicago, IL | 09-26-2019 |
| Banks v. Diaz, et al. | District Court, Clark County, Nevada | A-18-773248-C | Powell Law Firm, Las Vegas, NV | 09-26-2019 |
| Denniston v. BNSF Railway Company | Iowa District Court for Polk County | LACL134839 | Atwood Holsten Brown Deaver & Spier, Lincoln\NE | 09-25-2019 |
| Mahaffey v. Union Pacific Railroad | Circuit Court of Ouachita County, Arkansas | 52CV-17-186 | Hubbell Law Firm, Kansas City, MO | 09-19-2019 |
| Lavelle III v. Illinois Bell Telephone Company | State of Illinois, Human Rights Commission | 2007CN3494 | McGrail & Associates, Loves Park\IL | 09-18-2019 |
| Smithers v. Phillips, M.D. | Commonwealth of Kentucky, Fayette Circuit Court, Division 7 | 16-CI-3702 | Keith Law Office, Lexington, KY | 09-18-2019 |
| Winfield v. Metropolitan Hospital, et al. | State of Michigan, Circuit Court for the County of Kent | 18-06748-NH | Buchanan & Buchanan, Grand Rapids, MI | 09-16-2019 |
| Gallagher v. Midwest Orthopaedic Center, S.C., et al. | Circuit Court of the Tenth Judicial Circuit of Illinois, Peoria County | 17 L 6 | McNabola Law Group, Chicago, IL | 09-13-2019 |
| Butcher v. Dineequity, Inc., et al. | District Court, 192nd Judicial District, Dallas County, Texas | DC-18-05700 | Witherspoon Law Group, Dallas, TX | 09-12-2019 |
| Messeri v. University of Colorado, Boulder | United States District Court for the District of Colorado | 18-CV-02658-WJM-SKC | Savela Law Firm, Boulder, CO | 09-11-2019 |
| Jones Farms v. Helena Chemical Company | State of Indiana, County of Harrison, Harrison Circuit Court | 31C01-1512-PL-28 | Moore & Malone, Owensboro\KY | 09-09-2019 |
| Huff, et al. v. AMR Corporation, et al. | Court of Common Pleas, Mahoning County, Ohio | 2017 CV 02343 | Engler Law Firm, Warren, OH | 09-07-2019 |
| Hudnut v. Adventist Midwest Health, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2017-L-003732 | McNabola & Associates, Chicago\IL | 09-06-2019 |
| Ludwig v. United States of America | United States District Court, Northern District of Illinois, Eastern Division | 17 C 2943 | Kralovec Jambois & Schwartz, Chicago, IL | 09-04-2019 |
| McNamara v. ICO Polymers North America, Inc., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 14-L-000819 | Hendler Flores Law, Austin, TX | 08-29-2019 |
| Alonzo v. Kranzler, M.D., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 L 3895 | Motherway & Napleton, Chicago, IL | 08-26-2019 |

### LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
### STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Koontz v. First Transit, Inc. | Superior Court of the State of Arizona, In and For the County of Maricopa | CV2017-090635 | McGovern Law Offices, Phoenix, AZ | 08-22-2019 |
| Love, M.D. v. Medical College of Wisconsin, Inc. | United States District Court, Eastern District of Wisconsin | 2:15-cv-00650-LA | Ruberry Stalmack & Garvey, Chicago, IL | 08-22-2019 |
| Gibson v. Pirelli Tire, et al. | Circuit Court of Benton County, Arkansas | 04CV-17-2766 | Langdon & Emison, Lexington, MO | 08-21-2019 |
| Brook, M.D., Ph.D. v. Peconic Bay Medical Center, et al. | Supreme Court of the State of New York, County of New York | 650921/2012 | Pryor Cashman, New York, NY | 08-20-2019 |
| Mangaras v. Geico Casualty Company | Circuit Court of the Twelfth Judicial Circuit, Will County, Illinois | 17 L 001010 | Allen Law Group, Valparaiso, IN | 08-19-2019 |
| Libby v. Medina, et al. | District Court, Clark County, Nevada | A-17-766067-C, Dept No. XXIV | Powell Law Firm, Las Vegas, NV | 08-16-2019 |
| Bryant v. Waukegan Illinois Hospital Company, et al. | 19th Judicial Circuit Court, Lake County, IL | 18 L 0000611 | Geraci Law, Chicago, IL | 08-16-2019 |
| Ferry v. Shapero, DPM, et al. | Superior Court of New Jersey, Law Division - Middlesex County | MID-L-7150-16 | Quinn Law Office, Red Bank, NJ | 08-14-2019 |
| Williams, et al. v. Chicago South Shore & South Bend Railroad, et al. | State of Indiana, County of Lake, Lake Circuit Court | 45C01-1308-CT-124 | Allen Law Group, Valparaiso, IN | 08-12-2019 |
| Wheaton College v. John | Circuit Court for the Eighteenth Judicial Circuit, DuPage County, Illinois | 2013 L 1179 | Stilp Business Law* Chicago, Il | 08-07-2019 |
| Watkins/Green v. United States of America | United States District Court, Northern District of Illinois, Eastern Division | 18 C 4142 | Cogan & Power, Chicago, IL | 07-19-2019 |
| Tutt-Crabtree v. Riley Love, et al. | Circuit Court of the Twelfth Judicial Circuit, Will County, Illinois | 17 L 677 | Suber & Associates, Chicago, IL | 07-19-2019 |
| Bangham v. Cabell, et al. | Circuit Court of Kanawha County, West Virginia | 18-C-640 | Cumbo Law Office, Inez, KY | 07-18-2019 |
| Gerbasi v. Chicago Transit Authority | Circuit Court of Cook County, Illinois, County Department - Law Division | 2016-L-8484 | Grant Law* Chicago, IL | 07-17-2019 |
| Park v. Petranker | Superior Court of New Jersey, Law Division - Bergen County | BER-L-262-18 | Lee Law Firm, Hackensack, NJ | 07-15-2019 |
| Jordan/Lee v. Silver Cross Hospital and Medical Centers, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2015 L 002103 | Cogan & Power, Chicago, IL | 07-15-2019 |
| Fenner v. Toyota Motor Corporation, et al. | District Court, Clark County, Nevada | A-17-757335-C, Dept No. 27 | Olson Cannon Gormley Angulo & Stoberski, Las Vegas, NV | 07-12-2019 |
| Salazar v. ABC Automotive Investments, LLC. | United States District Court, District of Nevada | 2:19-cv-00039-RFB-PAL | Haines & Krieger, Henderson, NV | 07-11-2019 |
| Handhal-Hasan v. Lee Canyon Ski Lifts, Inc., et al. | District Court, Clark County, Nevada | A-17-750487-C, Dept No. XIII | Simon Law, Las Vegas, NV | 07-11-2019 |
| Hankins v. Ragauskaite, M.D., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 L 2966 | Motherway & Napleton, Chicago, IL | 07-09-2019 |
| Neufeld v. Capital Bank N.A. | United States District Court, Eastern District of California | 1:18-cv-01012-LJO-SKO | Kazerouni Law Group, Arroyo Grande, CA | 07-08-2019 |
| Juve v. Premier Tech Technologies Ltd, et al. | United States District Court, District of Minnesota | 17-cv-4545 (DWF/LIB) | Goldenberg Law, Minneapolis, MN | 07-08-2019 |
| Ilczyszyn v. Southwest Airlines Co., et al. | Superior Cour of California, County of Alameda | RG15766954 | Balaban & Spielberger, Los Angeles\CA | 07-03-2019 |
| Huff, et al. v. AMR Corporation, et al. | Court of Common Please, Mahoning County, Ohio | 2017 CV 02343 | Engler Law Firm, Warren, OH | 07-01-2019 |
| Wade v. ArcelorMittal, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 L 11769 | Rublino Ruman Crosmer & Polen, Dyer, IN | 07-01-2019 |
| Dunlap v. ArcelorMittal, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 L 11548 | Motherway & Napleton, Chicago, IL | 07-01-2019 |
| Allen v. Cumberland County, et al. | United States District Court for the District of New Jersey, Camden Vicinage | 1:15-cv-06273 (JBS/AMD) | Benedetto Law Office, Philadelphia, PA | 06-27-2019 |
| Dent v. Gewerth, et al. | District Court, Clark County, Nevada | A-17-751695-C, Dept No. XIV | Powell Law Firm, Las Vegas, NV | 06-26-2019 |
| Hudnut v. Adventist Midwest Health, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2017-L-003732 | McNabola & Associates, Chicago, IL | 06-24-2019 |
| Cocuzza v. Vecchione, D.D.S., et al. | Superior Court of New Jersey, Law Division - Morris County | MRS-L-1983-16 | Lynch Lynch Held Rosenberg, Hasbrouck Heights, NJ | 06-20-2019 |
| Charette v. Vecchione, D.D.S., et al. | Superior Court of New Jersey, Law Division - Morris County | MRS-L-2497-17 | Lynch Lynch Held Rosenberg, Hasbrouck Heights, NJ | 06-20-2019 |
| Steinberg v. Vecchione, D.D.S., et al. | Superior Court of New Jersey, Law Division - Morris County | MRS-L-2032-16 | Lynch Lynch Held Rosenberg, Hasbrouck Heights, NJ | 06-20-2019 |

### LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
### STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Davino v. Vecchione, D.D.S., et al | Superior Court of New Jersey, Law Division - Morris County | MRSOL-1984-16 | Lynch Lynch Held Rosenberg, Hasbrouck Heights, NJ | 06-20-2019 |
| Nieswand v. Vecchione, D.D.S., et al | Superior Court of New Jersey, Law Division - Morris County | MRS-L-1981-16 | Lynch Lynch Held Rosenberg, Hasbrouck Heights, NJ | 06-20-2019 |
| Boyle v. Vecchione, D.D.S., et al. | Superior Court of New Jersey, Law Division - Morris County | MRS-L-1878-16 | Lynch Lynch Held Rosenberg, Hasbrouck Heights, NJ | 06-20-2019 |
| Doyle v. Vecchione, D.D.S., et al. | Superior Court of New Jersey, Law Division - Morris County | MRS-L-1868-16 | Lynch Lynch Held Rosenberg, Hasbrouck Heights, NJ | 06-20-2019 |
| Jarolem v. Vecchione, D.D.S., et al. | Superior Court of New Jersey, Law Division - Morris County | MRS-L-1867-16 | Lynch Lynch Held Rosenberg, Hasbrouck Heights, NJ | 06-20-2019 |
| Wernau v. Vecchione, D.D.S., et al. | Superior Court of New Jersey, Law Division - Morris County | MRS-L-1866-16 | Lynch Lynch Held Rosenberg, Hasbrouck Heights, NJ | 06-20-2019 |
| Benfield v. Vecchione, D.D.S., et al. | Superior Court of New Jersey, Law Division - Morris County | MRS-L-1862-16 | Lynch Lynch Held Rosenberg, Hasbrouck Heights, NJ | 06-20-2019 |
| DelGrosso v. Vecchione, D.D.S., et al. | Superior Court of New Jersey, Law Division - Morris County | MRS-L-1393-16 | Lynch Lynch Held Rosenberg, Hasbrouck Heights, NJ | 06-20-2019 |
| Baglieri v. New Jersey Manufacturers Insurance, et al. | Superior Court of New Jersey, Law Division - Bergen County | BER-L-3927-17 | Selgel Law, Ridgewood, NJ | 06-17-2019 |
| Mars v. BNSF Railroad Company | District Court of Oklahoma County, State of Oklahoma | CJ-2017-6097 | Hubbell Law Firm, Kansas City, MO | 06-17-2019 |
| C.R. England, Inc., et al. v Abdi | Northern District of Illinois, Western Division | 17 CV 50152 | McNeely Stephenson* Shelbyville, IN | 06-14-2019 |
| Huff, et al. v. AMR Corporation, et al. | Court of Common Please, Mahoning County, Ohio | 2017 CV 02343 | Engler Law Firm, Warren, OH | 06-14-2019 |
| Boyd v. Autozone West, LLC | District Court, Clark County, Nevada | A-17-765517-C, Dept. No II | Saggese & Associates, Las Vegas, NV | 06-11-2019 |
| Morris v. Equifax Information Services, LLC, et al. | United States District Court, District of Nevada | 2:18-cv-01829-JAD-GWF | Haines & Krieger, Henderson, NV | 06-07-2019 |
| Ruiz v. Diaz, M.D., et al. | Superior Court of New Jersey, Law Division - Hudson County | HUD-L-1177-17 | Gill & Chamas, Howell, NJ | 06-06-2019 |
| Cramer v. Equifax Information Services, LLC. | United States District Court, Eastern District of Missouri, Eastern Division | 4:18-cv-1078 | Goldsmith Law Office, Rocky River, OH | 06-04-2019 |
| Caruso v. PBR Rock, LLC., et al. | District Court, Clark County, Nevada | A-17-776385-C, Dept No. II | Close Law Group, Henderson, NV | 06-03-2019 |
| Gross v. FCA US LLC, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2016-L-007623 | Langdon & Emison, Lexington, MO | 05-30-2019 |
| Mejia v. Valley Health Holdings, LLC., et al. | District Court, Clark County, Nevada | A-17-751096-C, Dept No. XVII | Paternoster Law Group, Las Vegas, NV | 05-28-2019 |
| Lemperle v. Avis Rent a Car Systems, LLC., et al. | United States District Court, District of Nevada | 2:18-cv-00202-JCM-CWH | Powell Law Firm, Las Vegas, NV | 05-28-2019 |
| Landess v. DeBiparshad, M.D., et al. | District Court, Clark County, Nevada | A-18-776896-C, Dept No. 24 | Howard & Howard, Las Vegas, NV | 05-24-2019 |
| Stratman v. Farris, et al. | District Court, Clark County, Nevada | A-18-767754-C, Dept No. 27 | Powell Law Firm, Las Vegas, NV | 05-23-2019 |
| Schwab v. Ford Motor Company | United States District Court, District of Delaware | 1:18-cv-00184 RGA | Lanier Law Firm, Houston, TX | 05-22-2019 |
| Salomone v. Advocate Health and Hospitals Corporation | Circuit Court of Cook County, Illinois, County Department - Law Division | 2016 L 005457 | Slavin & Slavin, Chicago, IL | 05-21-2019 |
| Guida v. Brown | Circuit Court of St. Charles County, Missouri, Circuit Judge Division | 1711-CC00811 | Bradley Law, Louisiana, MO | 05-20-2019 |
| Hinshaw/Johnson v. OSF Healthcare System, et al. | Eleventh Judicial Circuit Court of Livingston County, Illinois, Law Division | 16 L 11 | McNabola & Associates, Chicago, IL | 05-20-2019 |
| Moore v. Joe Tex, et al. | District Court, 62nd Judicial District, Franklin County, Texas | 12363 | Grossman Law Offices, Dallas, TX | 05-17-2019 |
| Arvidson v. Buchar | Superior Court of the Virgin Islands, Division of St. Thomas & St. John | 410 / 2016 | Kreamer Law Office, Naperville, IL | 05-16-2019 |
| Flores, et al. v. Ramirez, et al. | District Court of Harris County, Texas, 189th Judicial District | 2017-74379 | Grossman Law Offices, Dallas, TX | 05-14-2019 |
| Legiec v. Playcore Inc., et al. | Superior Court of New Jersey, Law Division - Middlesex County | MID-L-6217-17 | Gill & Chamas, Perth Amboy, NJ | 05-13-2019 |

## LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
## STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Andrades v. Menard, Inc. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2017 L 000671 | Argionis & Associates, Chicago, IL | 05-03-2019 |
| Errant Gene Therapeutics LLC v. Sloan-Kettering Institute for Cancer Research, et al. | Supreme Court of the State of New York, County of New York | 150856/2017 | McCue Sussmane Zapfel Cohen & Youbi, New York, NJ | 05-01-2019 |
| Birnbaum v. CentraState Medical Center, et al. | Superior Court of New Jersey, Law Division, Monmouth County | MON-L-4723-14 | Lomurro Law, Freehold, NJ | 04-30-2019 |
| Schweer v. Diaz, et al. | District Court, Clark County, Nevada | A-17-766063-C, Dept no. 27 | Powell Law Firm, Las Vegas, NV | 04-26-2019 |
| Rivo USA Co., LTD. V. Arro Corporation | United States District Court, Northern District of Illinois, Eastern Division | 17cv08513-VMK-JC | Holmes Law Group, Chicago, IL | 04-26-2019 |
| Doe v. Colgate University | United States District Court, Northern District of New York | 5:17-cv-1298 (FJS/ATB) | Nesenoff & Miltenberg, New York, NY | 04-25-2019 |
| Mrkalj v. Swedish Covenant Hospital, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 L 7992 | McNabola & Associates, Chicago, IL | 04-23-2019 |
| Pappas v. Ford Motor Company, et al. | Superior Court of New Jersey, Law Division, Middlesex County | L-5811-16 | Guajardo & Marks, Dallas, TX | 04-23-2019 |
| Zavala v. Richardson, et al. | District Court, Clark County, Nevada | A-17-749760-C, Dept No. NV | Powell Law Firm, Las Vegas, NV | 04-17-2019 |
| McFarland v. Rinella, M.D. | Circuit Court of Will County, Illinois | 16 L 988 | Motherway & Napleton, Chicago, IL | 04-15-2019 |
| Swiech v. Birhanu, M.D., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 L 004271 | Power Rogers & Smith, Chicago, IL | 04-15-2019 |
| Doe, et al. v. Macomb Community Unit School District No. 185, et al. | United States District Court for the Central District of Illinois, Rock Island Division | 1:18-cv-01072-SLD-JEH | Flerberg National Law Group, Traverse City, MI | 04-05-2019 |
| Simon v. Riverside Health System, Inc., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 L 003077 | Motherway & Napleton, Chicago, IL | 04-05-2019 |
| Barajas v. Delnor Community Hospital, et al. | Circuit Court of the Sixteenth Judicial Circuit, Kane County, Illinois | 13 L 40 | Cogan & Power, Chicago\IL | 04-04-2019 |
| Gaguancela v. BJ's Wholesale Club, Inc. etal | Superior Court of New Jersey, Law Division - Middlesex County | MID-L-3824-16 | Gill & Chamas, Perth Amboy, NJ | 04-03-2019 |
| Gildein v. Birky | State of Indiana, Porter County Superior Court | 64D01-CT-006021 | Martz & Lucas, Valparaiso, IN | 04-02-2019 |
| Walsh/Shane v. Koren, M.D., et al. | Superior Court of New Jersey, Law Division: Camden County | CAM-L-1617-16 | Lynch Lynch Held Rosenberg, Hasbrouck Heights, NJ | 04-01-2019 |
| Das v. Kenny Construction Company, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 14 L 13186 | Morici Figlioli & Associates, Chicago, IL | 03-28-2019 |
| Ottens v. Starcon International, Inc. | Circuit Court of Cook County, Illinois, County Department - Law Division | 17 L 3697 | Shannon Law Group, Woodridge, IL | 03-27-2019 |
| Adams v. May Trucking Co., et al. | Circuit Court of the First Judicial Circuit, Williamson County, Illinois | 17-L-33 | Langdon & Emison, Lexington, MO | 03-26-2019 |
| TSR Landmark, LLC., et al. v. International Plaza Owner's Association | Circuit Court of the Eighteenth Judicial Circuit, DuPage County, Illinois | 2015 L 000569 | Kreamer Law Office, Naperville, IL | 03-26-2019 |
| Kane v. Hill, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 11 L 10329 | Loggans & Associates, Chicago, IL | 03-25-2019 |
| Celio v. American Family Insurance Company | State of Illinois, Uninsured Motorist Action | NA | Ryan Ryan & Landa, Chicago, IL | 03-21-2019 |
| Jones Farms v. Helena Chemical Company | State of Indiana, County of Harrison, Harrison Circuit Court | 31C01-1512-PL-28 | Moore & Malone, Owensboro, KY | 03-20-2019 |
| Gerbasi v. Chicago Transit Authority | Circuit Court of Cook County, Illinois, County Department - Law Division | 2016-L-8484 | Grant Law, Chicago, IL | 03-20-2019 |
| Saenz-Quintana v. Mora-Diaz, et al. | District Court, Clark County, Nevada | A-17-760888-C, Dept No. 12 | Powell Law Firm, Las Vegas, NV | 03-19-2019 |
| Gulick v. Schreiber, Costel & Bryant PLLC | Jefferson Circuit Court, Division Six | 15-CI-004456 | Oldfather Law Firm, Louisville, KY | 03-19-2019 |
| Walther v. Majeed, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2015 L 10267 | Truglio & Associates, Chicago, IL | 03-18-2019 |
| Black v. Grant County Public Utility District | United States District Court, Eastern District of Washington | 2:17-cv-00365-RMP | Earl & Earl, Boise, ID | 03-13-2019 |
| Longobardi v. Kaskel, M.D., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 L 10339 | Cogan & Power, Chicago, IL | 03-13-2019 |
| Wise v. Red Star Expedite, Inc., et al. | Commonwealth of Kentucky, Shelby Circuit Court | 16-CI-00321 | Sitlinger & Theller, Louisville, KY | 03-12-2019 |
| Petite v. Martin | District Court, Clark County, Nevada | A-17-750181-C | Powell Law Firm, Las Vegas, NV | 03-11-2019 |
| Hospedales v. DuPage Medical Group, LTD | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 L 9158 | Lane & Lane, Chicago, IL | 03-11-2019 |

## LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
## STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Ayala/Muniz v. Lemons, et al. | United States District Court, District of Nevada | 2:18-CV-00511-GMN-PAL | Powell Law Firm, Las Vegas, NV | 03-08-2019 |
| Rollo v. Flores, et al. | District Court, Clark County, Nevada | A-17-749017-C, Dept No. VII | Ladah Law firm, Las Vegas, NV | 03-05-2019 |
| Warner v. Sheridan Agatite, LLC., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2016 L 010989 | McNabola & Associates, Chicago, IL | 03-05-2019 |
| Maher v. Hackensack University Medical Center | Superior Court of New Jersey, Law Division - Bergen County | BER-L-001350-16 | Shaw Law Office, Ft. Lee\NJ | 03-04-2019 |
| Obremski v. Advocate Christ Medical Center, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2016-L-000627 | Konicek & Dillon, Geneva, IL | 03-01-2019 |
| Varebrook v. Tisdall, M.D., et al. | District Court of Bexar County, Texas, 225th Judicial District | 2017CI06007 | Krebs Law Office, Austin\TX | 02-28-2019 |
| Ilahi v. Sebert Landscaping Company | Circuit Court of the Cook County Judicial Circuit, Cook County, Illinois | 16 L 4742 | Salvi & Maher, Waukegan, IL | 02-27-2019 |
| Gilmore v. Stamford Hospital, et al. | Superior Court J.D. of Fairfield at Bridgeport | FBT-CV16-6058665-S | Skiber Law Office, Norwalk, CT | 02-27-2019 |
| "Andy" v. Big Brothers Big Sister of America, Inc. | Third Judicial District Court, Salt Lake County, State of Utah | 170901382 | Marsh Law Firm, White Plains, NY | 02-25-2019 |
| Curry v. Brown, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 L 009946 | Wolfman Law Office, Chicago, IL | 02-21-2019 |
| Lilley/Zeches v. Ek Lian Tan, et al. | District Court, Clark County, Nevada | A-17-749596-C, Dept No. XVIII | Powell Law Firm, Las Vegas, NV | 02-20-2019 |
| Santiago v. Fischer | United States District Court, Eastern District of New York | 09-CV-1383 | Davis Polk & Wardwell, New York, NY | 01-30-2019 |
| Strbac v. CT Mechanical, LLC, et al. | Circuit Court of Cook County, Illinois County Department - Law Division | 16 L 7256 | Curcio Law Offices, Chicago, IL | 01-30-2019 |
| Guzman/Jaramillo-Guzman v. Estate of Michael Don Tavis Dennis, et al. | District Court, Clark County, Nevada | A-16-748252-C, Dept No. VII | Bighorn Law, Las Vegas, NV | 01-28-2019 |
| Gregory v. Lexington Center Corporation | Commonwealth of Kentucky, Fayette Circuit Court, Division 4 | 14-CI-3891 | O'Bryan Brown & Toner, Louisville, KY | 01-28-2019 |
| Cooley v. Power Construction Company, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 15 L 008626 | O'Reilly Law Office, Chicago, IL | 01-25-2019 |
| Cochran, et al. v. Nevada Property 1, et al. | District Court, Clark County, Nevada | A687601, Dept No. 24 | Eglet Prince, Las Vegas, NV | 01-24-2019 |
| Lambert v. Bliss, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 L 001043 | Conway & Mrowiec, Chicago, IL | 01-22-2019 |
| Zorick v. ASV, Inc., et al. | State of Indiana, County of Porter, Porter Superior Court, Sitting at Valparaiso, Indiana | 64D01-1705-CT-004454 | Allen Law Group, Valparaiso, IN | 01-21-2019 |
| Heatherly, III v. Integrated Airline Services, Inc., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 17 L 4549 | Shannon Law Group, Woodridge, IL | 01-17-2019 |
| Abdalla, et al. v. Jewish Hospital, et al. | Commonwealth of Kentucky, 30th Judicial Circuit Court, Jefferson Circuit Court, Division Nine (9) | 16-CI-02929 | Morris & Player, Louisville, KY | 01-17-2019 |
| Levi/Mitchell v. Thomas | District Court, 17th Judicial District, Tarrant County, Texas | 017-287211-16 | Washington Law Office, Dallas, TX | 01-16-2019 |
| Williams v. Kumho Tire Co. Inc., et al | Circuit Court for Jefferson County, Arkansas | CV-2014-360-2 | Langdon & Emison, Lexington, MO | 01-14-2019 |
| Kleckhaefer v. Roscoe Township | State of Illinois, Circuit Court of the 17th Judicial Circuit, Winnebago County | 14 L 194 | Klein Stoddard Buck Lewis, Sycamore, IL | 01-11-2019 |
| Valencia v. U.S. Bank National Association | United States District Court for the Southern District of Iowa, Central Division | 4:18-cv-00056 | Duff Law Firm, West Des Moines, IA | 01-10-2019 |
| Martin v. Robertson | State of Indiana, County of Lake, Lake Superior Court, Sitting at Hammond, Indiana | 45D01-1803-CT-00060 | Hilbrich Law Office, Highland, IN | 01-09-2019 |
| Johnson v. Toyota Motor Corporation, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 L 9558 | Langdon & Emison, Lexington, MO | 01-09-2019 |
| Capuano v. Roshi, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 15 L 12727 | Motherway & Napleton, Chicago, IL | 01-08-2019 |
| Isaaq v. The Village3 of Niles, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 L 004710 | Nemeroff Law Office, Chicago, IL | 01-08-2019 |
| Carter v. Chelich, D.O. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2017 L 004046 | Cogan & Power, Chicago, IL | 01-07-2019 |
| Parmaksiz v. SVAP Hoffman Plaza, LP, et al. | Circuit Court of Cook County, Illinois, County Department - Chancery Division | 2016 CH 014315 | Paris Law Firm, Chicago, IL | 01-04-2019 |
| Ledet v. Capanna, M.D. | District Court, Clark County, Nevada | A-15-712091-C, Dept No. XXI | Eglet Prince, Las Vegas, NV | 01-04-2019 |
| Cortez v. FedEx Ground Package System, Inc. | 44th Judicial District Court, Dallas County, Texas | DC-17-06463 | Grossman Law Offices, Dallas, TX | 12-21-2018 |
| Benavides, Jr. v. Holland Community Hospital, et al. | State of Michigan in the Circuit Court for the County of Ottawa | 17-5138-NH | Buchanan & Buchanan, Grand Rapids, MI | 12-17-2018 |

## LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
## STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Ripley v. Shankar, M.D., et al. | Circuit Court of the First Judicial Circuit, Jackson County, Illinois | 16-L-78 | Womick Law Firm, Carbondale, IL | 12-13-2018 |
| Ibach v. Cho, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 14 L 10446 | McNabola & Associates, Chicago, IL | 12-12-2018 |
| Vesely v. Walsh Construction Company of Illinois, Inc. | Circuit Court of Cook County, Illinois, County Department - Law Division | 15 L 004250 | Morici Figlioli & Associates, Chicago, IL | 12-12-2018 |
| Gallagher v. Midwest Orthopaedic Center, S.C., et al. | Circuit Court of the Tenth Judicial Circuit of Illinois, Peoria County | 17 L 6 | McNabola Law Group, Chicago, IL | 12-11-2018 |
| Lisboa v. Stocker III, et al. | Circuit Court for Jackson County, Missouri at Independence | 1816-CV00467 | Langdon & Emison, Lexington, MO | 12-10-2018 |
| Torres, et al. v. Brown, et al. | United States District Court, District of Arizona | 3:17-cv-08217 PCT-JAT | Lerner Injury Attyorney, Las Vegas, NV | 12-10-2018 |
| Roberts v. CCRP/AG BOFA Plaza Owner, LLC, et al. | District Court, Clark County, NV | A-15-713245-C, Dept No. VII | Maier Gutierrez & Associates, Las Vegas, NV | 12-07-2018 |
| Zdravich v. Agave Azul Authentic Mexican Restaurant 3 LLC | State of Indiana, County of Tippecanoe, Tippecanoe Circuit Court | 79C01-1708-CT-000142 | Oldfather Law Firm, Louisville, KY | 12-07-2018 |
| Bell v. Zarnke, M.D., et al. | Circuit Court of the 17th Judicial Circuit, Winebago County, Illinois | 15 L 0206 | Ryan Ryan & Landa, Chicago, IL | 12-06-2018 |
| Watson/Ransom/Jones v. Texas-Cola Leasing Co., et al. | District Court, Tarrant County, TX | 352-290806-17 | Washington Law Office, Dallas\TX | 12-05-2018 |
| Watson/Ransom/Jones v. Texas-Cola Leasing Co., et al. | District Court, Tarrant County, TX | 352-290806-17 | Washington Law Office, Dallas, TX | 12-04-2018 |
| Jones/Lofton v. Sheykholeslami, M.D., et al. | State of Illinois, Circuit Court of the 17th Judicial Circuit, County of Winnebago | 2013-L-69 | Taxman Pollock Murray & Bekkerman, Chicago, IL | 12-04-2018 |
| Cardinali, et al. v. Plusfour, Inc., et al. | United States District Court, District of Nevada | 2:16-cv-02046-JAD-NJK | Haines & Krieger, Henderson, NV | 12-03-2018 |
| Adams v. University of Indianapolis | United States District Court for the Southern District of Indiana, Indianapolis Division | 1:17-CV-02101-WTL-MJD | Betz & Blevins, Indianapolis, IN | 11-30-2018 |
| Hespe v. The City of Chicago, et al. | United States District Court for the Northern District of Illinois, Eastern Division | 13 C 7998 | Herbert Law Firm, Chicago, IL | 11-29-2018 |
| Meeks v. Dissanayake, M.D. | Circuit Court of Cook County, Illinois County Department - Law Division | 15 L 11535 | Loggans & Associates, Chicago\IL | 11-29-2018 |
| Thoroughman v. Wisconsin Central, Ltd. | United States District Court, Western District of Wisconsin | 15-CV-74 | Lipkin & Higgins, Chicago, IL | 11-28-2018 |
| Ruettiger v. Lincoln-Way Area Special Education District 843, et al. | Circuit Court of the Twelfth Judicial Circuit, Will County, Illinois | 16 L 0539 | Allen Law Group, Valparaiso\IN | 11-28-2018 |
| Adair/Veytsman v. State Farm Mutual Automobile Insurance Company, et al. | United States District Court, District of Nevada | 2:17-cv-00421-RFB-CWH | Powell Law Firm, Las Vegas, NV | 11-27-2018 |
| E&I Holdings, Inc. v. Coral Springs Eggs and I, LLC, et al. | United States District Court for the District of Colorado | 17-cv-02377-WJM-STV | NOVA IP Law, Gainesville, VA | 11-21-2018 |
| King v. Desert Palace, Inc., et al. | District Court, Clark County, Nevada | A-13-691609-C, Dept No. XIV | Gentile Cristalli Miller Armeni Savarese, Las Vegas\NV | 11-21-2018 |
| King v. Desert Palace, Inc., et al. | District Court, Clark County, Nevada | A-13-691609-C, Dept No. XIV | Gentile Cristalli Miller Armeni Savarese, Las Vegas\NV | 11-20-2018 |
| Wise v. Red Star Expedite, Inc., et al. | Commonwealth of Kentucky, Shelby Circuit Court | 16-CI-00321 | Sitlinger & Theller, Louisville, KY | 11-16-2018 |
| Strbac v. CT Mechanical, LLC, et al. | Circuit Court of Cook County, Illinois County Department - Law Division | 16 L 7256 | Curcio Law Offices, Chicago, IL | 11-14-2018 |
| Watson/Ransom/Jones v. Texas-Cola Leasing Co., et al. | District Court, Tarrant County, TX | 352-290806-17 | Washington Law Office, Dallas, TX | 11-13-2018 |
| Watson/Ransom/Jones v. Texas-Cola Leasing Co., et al. | District Court, Tarrant County, TX | 352-290806-17 | Washington Law Office, Dallas, TX | 11-12-2018 |
| Griffin v. Warren Ball, et al. | Circuit Court of Cook County, Illinois County Department - Law Division | 17 L 2740 | Motherway & Napleton, Chicago, IL | 11-09-2018 |
| Riley v. City of Chicago, et al. | Circuit Court of Cook County, Illinois County Department - Law Division | 17 L 246 | Langdon & Emison, Chicago, IL | 11-08-2018 |
| Shah v. Bernstein, et al. | Eighth Judicial District Court, Clark County, Nevada | A-15-723496-C, Dept No. XIII | Padda Law, Las Vegas, NV | 11-07-2018 |
| Bowens/Allen v. Vitale, M.D., et al. | Superior County of New Jersey, Law Division: Bergen County | L-7014-16 | Lynch Lynch Held Rosenberg, Hasbrouck Heights, NJ | 11-07-2018 |
| Lloyd/Watson v. Cumberland County, et al. | United States District Court for the District of New Jersey, Camden Vicinage | 1:16-cv-03503 JBS-AMD | Benedetto Law Office, Philadelphia, PA | 11-06-2018 |
| Hennis v. Cumberland County, et al. | United States District Court for the District of New Jersey, Camden Vicinage | 1:16-cv-03503 JBS-AMD | Benedetto Law Office, Philadelphia, PA | 11-06-2018 |
| Wilson/Lewis v. Cumberland County, et al. | United States District Court for the District of New Jersey, Camden Vicinage | 1:16-cv-03503 JBS-AMD | Benedetto Law Office, Philadelphia, PA | 11-06-2018 |

**LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN**
**STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021**

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Sanchez v. Samrith, et al. | District Court, Clark County, Nevada | A-17-751126-C, Dept No. XXX | Powell Law Firm, Las Vegas, NV | 11-05-2018 |
| Orr, Jr. v. T. Burns, Ltd., et al. | Circuit Court of Jackson County, Missouri at Kansas City | 1816-CV01412, Division 17 | Langdon & Emison, Lexington, MO | 11-05-2018 |
| Colon-Montoya v. Mahari, et al. | District Court, Clark County, Nevada | A-16-746156-C, Dept No. XVIII | Powell Law Firm, Las Vegas, NV | 11-01-2018 |
| Colvin, et al. v. Baptist Healthcare System, Inc., et al | Jefferson Circuit Court, Division Twelve | 17-CI-001894 | Oldfather Law Firm, Louisville, KY | 10-31-2018 |
| Ocampo-Trujillo/Nunez v. Ali, et al. | District Court, Clark County, Nevada | A-15-728995-C, Dept No. I | Powell Law Firm, Las Vegas, NV | 10-23-2018 |
| Stoch v. Sid Harvey Industries, Inc. et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2015 L 010602 | Sinson Law Group, Chicago, IL | 10-23-2018 |
| Bartels v. Silver Cross Hospital and Medical Centers, et al. | Circuit Court of the Twelfth Judicial Circuit, Will County, Illinois | 2018 L 000328 | McNabola Law Group, Chicago, IL | 10-22-2018 |
| Quinlan v. Alvarez, et al. | District Court, Clark County, Nevada | A-17-754682-C, Dept No. XV | Naqvi Injury Law, Las Vegas, NV | 10-22-2018 |
| Johnson/Toth v. White River Health System Inc., et al. | Circuit Court of Independence County, Arkansas, Civil Division | CV-2012-026-2 | Wilcox Lacy, Jonesboro\AR | 10-19-2018 |
| Bartolo v. Whole Foods Market, Inc. | United States District Court for the District of Columbia | 17-cv-1453 (APM) | Branch & Associates, Washington, DC | 10-18-2018 |
| Lilley/Zeches v. Ek Lian Tan, et al. | District Court, Clark County, Nevada | A-17-749596-C, Dept No. XVIII | Powell Law Firm, Las Vegas, NV | 10-17-2018 |
| Hinojosa v. United Parcel Service, Inc. | Circuit Court of Cook County, Illinois, County Department - Law Division | 13 L 7549 | Bashford Law Group, Glenview, IL | 10-16-2018 |
| Allenson v. Starbucks Corporation | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 L 4034 | Cogan & Power, Chicago, IL | 10-15-2018 |
| Nichols v. Staley, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2016 L 6671 | Dinizulu Law Group, Chicago, IL | 10-11-2018 |
| Aye/Hnin v. Ford Motor Company, et al. | Missouri Circuit Court, Sixth Judicial Circuit, Platte County | 17AE-CC00422 | Langdon & Emison, Lexington, MO | 10-11-2018 |
| Malone, et al. v. Moe, et al. | Eighth Judicial District Court, Clark County, Nevada | A-16-734167-C, Dept No. XXI | Bighorn Law, Las Vegas, NV | 10-09-2018 |
| Taylor v. Berger, M.D., et al. | Circuit Court of Cook County, State of Illinois, County Department - Law Division | 15 L 9086 | Motherway & Napleton, Chicago\IL | 10-09-2018 |
| Vaseemuddin v. County of Cook, et al. | United States District Court, Northern District of Illinois, Eastern Division | 14 C 2995 | Kreamer Law Office, Naperville\IL | 10-03-2018 |
| Snyder v. Bank of America, N.A., et al. | United States District Court, Northern District of California | 15-cv-042228-EDL | Pamela Snyder Pro Se, San Francisco, CA | 10-01-2018 |
| Farmer, et al. v. Las Vegas Metropolitan Police Department, et al. | United States District Court, District of Nevada | 2:17-cv-01946-JCM-PAL | Marquis Aurbach Coffing* Las Vegas, NV | 09-28-2018 |
| Cavazos v. Paschal Enterprises LLC, et al. | 88th Judicial District Court of Hardin County, Texas | 57455 | Grossman Law Offices, Dallas, TX | 09-28-2018 |
| Chappell v. Joey's Inc., et al. | District Court, Clark County, Nevada | A-17-752231-C, Dept No. XXX | Eglet Prince, Las Vegas, NV | 09-27-2018 |
| Confessore v. AGCO Corporation, et al. | Superior Court of New Jersey, Law Division - Monmouth County | MON-L-797-14 | Gill & Chamas, Perth Amboy\NJ | 09-26-2018 |
| Romero v. Club 390 Corp, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2016-L-006872 | Cochran Firm, Chicago, IL | 09-24-2018 |
| Tran v. NDL Group, Inc., et al. | Eighth Judicial District Court, Clark County, Nevada | A-16-740978-C, Dept X | Nguyen & Associates, Las Vegas, NV | 09-21-2018 |
| Ballard/Chapman v. Swartz, M.D., et al. | Superior Court of New Jersey, Law Division - Ocean County | OCN-L-761-16 | Escandon Fernicola Anderson & Covelli, Allenhurst, NJ | 09-19-2018 |
| Trahanas v. Northwestern University, et al. | United States District Court for the Northern District of Illinois, Eastern Division | 1:15-cv-11192 | DeRose & Associates, Hinsdale, IL | 09-17-2018 |
| Tracy v. Lake County Neurosurgery, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 09 L 14156 | McNabola Law Group, Chicago\IL | 09-17-2018 |
| Garcia-Alvarez v. Lopez-Acosta, et al. | Eighth Judicial District Court, Clark County, Nevada | A-16-743595-C, Dept No. I | Lerner Injury Attorneys, Las Vegas, NV | 09-14-2018 |
| Ayala v. Young, et al. | District Court, Clark County, Nevada | A-16-747753-C, Dept No. IV | Powell Law Firm, Las Vegas, NV | 09-14-2018 |
| Briggs v. IAP Worldwide Services, Inc., et al. | United States District Court for the Eastern District of Virginia, Alexandria Division | 18-cv-00982-AJT-TCB | Jarrard Law Office, Spokane, WA | 09-13-2018 |
| Lessert v. BNSF Railway Company | United States District Court, District of South Dakota, Western Division | 5:17-cv-5030-JLV | Hubbell Law Firm, Kansas City, MO | 09-11-2018 |
| Sanchez-Tolentino v. Vasquez III, et al. | District Court, Clark County, Nevada | A-16-746-163-C, Dept No. XIII | Powell Law Firm, Las Vegas, NV | 09-10-2018 |
| Whitstone v. Elizalde, et al. | District Court, Clark County, Nevada | A-17-749-640-C, Dept No. IV | Powell Law Firm, Las Vegas, NV | 09-07-2018 |

**LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021**

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| King v. Desert Palace, Inc., et al. | District Court, Clark County, Nevada | A-13-691609-C, Dept No. XIV | Gentile Cristalli Miller Armeni Savarese, Las Vegas, NV | 09-06-2018 |
| Rodriguez v. Wong, et al. | District Court, Clark County, Nevada | A-16-740806-C, Dept No. XXIII | Powell Law Firm, Las Vegas, NV | 09-05-2018 |
| Jordan/Lee v. Silver Cross Hospital and Medical Centers, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2015 L 002103 | Cogan & Power, Chicago, IL | 08-31-2018 |
| Pomazal v. Grodoski | Circuit Court of the Eighteenth Judicial Circuit, DuPage County, Illinois | 2013 L 879 | Nemeroff Law Office, Chicago\IL | 08-31-2018 |
| Dieken v. Clark, M.D. | Circuit Court of Will County, Illinois | 14 L 01012 | Paris Law Firm, Chicago\IL | 08-30-2018 |
| Oates v. Shiver, et al. | District Court, Clark County, Nevada | A-16-747820-C, Dept No. I | Powell Law Firm, Las Vegas, NV | 08-24-2018 |
| Thompson v. Methodist Healthcare System of San Antonio, LTD., et al. | District Court, 37th Judicial District, Bexar County, Texas | 2016CI21754 | Krebs Law Office, Austin, TX | 08-24-2018 |
| Bonno/Moreno v. Sanford Clinic North, et al. | United States District Court, District of North Dakota, Eastern Division | 3:16-cv-00114-ARS | Grant & Eisenhofer, Chicago, IL | 08-22-2018 |
| Murillo/Young v. United States of America | United States District Court, Northern District of Illinois, Eastern Division | 17 C 1279 | Mitchell Hoffman & Wolf, Chicago, IL | 08-22-2018 |
| Adams, et al. v. Trinity Industries, Inc., et al. | Circuit Court for the City of St. Louis, Missouri | 1522-CC11395 | Langdon & Emison, Lexington, MO | 08-20-2018 |
| George v. Buckeye Diamond Logistics, Inc., et al. | Court of Common Pleas of Madison County, Ohio | CVC 2017 0147 | Willis & Willis, Hilliard, OH | 08-17-2018 |
| Lopez/Finnical v. Presbyterian Healthcare Services, Inc. | State of New Mexico, County of Santa Fe, First Judicial District Court | D-101-CV-2017-00654 | Salazar Sullivan Jasionowski, Albuquerque, NM | 08-16-2018 |
| Advanced Packaging Technology Laboratories, Inc. v. Phelan, et al. | Circuit Court of Cook County, Illinois, County Department - Chancery Division | 2014 CH 00143 | Kulinsky & Associates, Wheeling\IL | 08-16-2018 |
| Advanced Packaging Technology Laboratories, Inc. v. Phelan, et al. | Circuit Court of Cook County, Illinois, County Department - Chancery Division | 2014 Ch 00143 | Kulinsky & Associates, Wheeling\IL | 08-15-2018 |
| Weir v. Coning, et al. | State of Indiana, County of Vigo, In the Vigo County Superior Court | 84D06-1701-CT-0154 | McNeely Stephenson Thopy & Harrold, Shelbyville, IN | 08-15-2018 |
| Brickner v. Johnson, et al. | District Court, Clark County, Nevada | A-16-737497-C, Dept No. XXX | Ayon Burk, Las Vegas, NV | 08-14-2018 |
| Townsend v. Rush University Medical Center, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 15 L 006635 | Spearman Firm, Chicago, IL | 08-13-2018 |
| Blevins v. Holzhauer, M.D. | Circuit Court of Lowndes County, Mississippi | 2016-0027-V1K | Merkel & Cocke, Clarksdale, MS | 08-10-2018 |
| McNeeley v. Banner Health, et al. | Superior Court of Arizona, Gila County | CV201700118 | Lloyd Law Group, Payson, AZ | 08-10-2018 |
| Bryant v. Wolf Electric Supply Company, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2014 L 009840 | Gravlin Law Office, Chicago\IL | 08-09-2018 |
| Mendoza v. Wal-Mart Stores East, et al. | State of New Mexico, County of Grant, Sixth Judicial District Court | D-608-CV-2014-00107 | Cardenas Law Firm, Las Cruces\NM | 08-08-2018 |
| Lavine, et al. v. Robertson, et al. | Superior Court of the State of California, County of San Mateo | CIV 532372 | Kastner Kim, Mountain View\CA | 08-07-2018 |
| Griffo v. Oculus VR, Inc., et al. | United States District Court, Central District of California, Southern Division (Santa Ana) | 8:15-cv-01228-DOC (JCGx) | Reich Law, Boston, MA | 08-03-2018 |
| Advanced Packaging Technology Laboratories, Inc. v. Phelan, et al. | Circuit Court of Cook County, Illinois, County Department - Chancery Division | 2014 CH 00143 | Kulinsky & Associates, Wheeling, IL | 08-03-2018 |
| Ilcryszyn v. Southwest Airlines Co., et al. | Superior Court of California, County of Alameda | RG15766954 | Balaban & Spielberger, Los Angeles, CA | 08-02-2018 |
| Wynn v. BNSF Railway Company, et al. | Circuit Court of Cass County, State of Missouri | 15CA-CC00241, Divison 1 | Davis Bethune & Jones, Kansas City\MO | 08-01-2018 |
| Spaulding, et al. v. Islamic Republic of Iran, et al. | United States District Court, Northern District of Ohio, Eastern Division | 5:16-cv-1748 | Choken Welling, Akron, OH | 07-24-2018 |
| Levi/Mitchell v. Thomas | District Court, 17th Judicial District, Tarrant County, Texas | 017-287211-16 | Washington Law Office, Dallas\TX | 07-11-2018 |
| Ogiego v. Leopardo Companies, Inc., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 15 L 001217 | Allen Law Group, Chicago, IL | 07-10-2018 |
| Garcia v. ALAA Al-Nawfall, et al. | District Court, Clark County, Nevada | A-16-742054-C, Dept No. VIII | Eglet Prince, Las Vegas, NV | 07-10-2018 |
| Kaliniak v. Chang, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2015 L 008829 | Groszek Law Firm, Chicago, IL | 07-09-2018 |
| Lhotak v. Robertson, et al. | State of Indiana, County of Porter In the Porter Superior Court, Sitting at Valparaiso, Indiana | 64D02-1704-CT-3337 | Allen Law Group, Chicago, IL | 07-09-2018 |
| Manchak v. St. Louis University, et al. | Circuit Court of the City of St. Louis, State of Missouri | 1322-CC09782 | Gori Julian & Associates, Edwardsville, IL | 07-06-2018 |

### LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
### STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Varebrook v. Tisdall, M.D., et al. | District Court of Bexar County, Texas, 225th Judicial District | 2017CI06007 | Krebs Law Office, Austin, TX | 07-05-2018 |
| Knaack v. Knight Transportation, Inc., et al. | United States District Court, District of Nevada | 3:17-cv-00172-LRH-WGC | Vannah & Vannah, Las Vegas, NV | 07-03-2018 |
| Piggee v. Schaefer, M.D., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2015 L 010611 | Etherton and Associates, Chicago, IL | 07-02-2018 |
| Burkey v. Hunter, et al. | United States District Court for the Northern District of Ohio, Eastern Division | 4:17-cv-00338-BYP | Engler Law Firm, Warren, OH | 06-29-2018 |
| Phillips v. Pangea Ventures, LLC, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2015 L 012092 | Rittenberg Buffen Gulbrandsen Robinson & Saks, Chicago, IL | 06-29-2018 |
| Angelo v. Albertson's, et al. | United States District Court, District of Nevada | 2:17-CV-01246-APG-GWF | Shook & Stone, Las Vegas, NV | 06-28-2018 |
| Feazell-Daniels v. Quiroz, et al. | District Court, Clark County, Nevada | A-16-735198-C, Dept No. XI | Naqvi Injury Law, Las Vegas, NV | 06-27-2018 |
| Bryant v. Wolf Electric Supply Company, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2014 L 009840 | Gravlin Law Office, Chicago, IL | 06-27-2018 |
| Pierce v. Windmill Environmental, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 15 L 11107 | Goldberg Weisman & Cairo, Chicago, IL | 06-26-2018 |
| McDaniels v. Wolverine World Wide, Inc., et al. | State of Indiana, County of Porter In the Porter Superior Court, Sitting at Valparaiso, Indiana | 64D01-1510-CT-008639 | Allen Law Group, Valparaiso, IN | 06-25-2018 |
| Verdone v. Schulze and Burch Biscuit Co. | Circuit Court of Cook County, Illinois, County Department - Law Division | 15 L 5569 | O'Connor Law Group, Chicago, IL | 06-22-2018 |
| Schmidt v. Robertson, et al. | Lake Superior Court, Gary, Indiana | 45D04-1702-CT-00042 | Allen Law Group, Valparaiso\IN | 06-21-2018 |
| Nedrick v. County of Monmouth, et al. | Superior Court of New Jersey, Law Division, Monmouth County | MON-L-1966-15 | Wolf Law Office, Red Bank\NJ | 06-20-2018 |
| Mendoza v. Wal-Mart Stores East, et al. | State of New Mexico, County of Grant, Sixth Judicial District Court | D-608-CV-2014-00107 | Cardenas Law Firm, Las Cruces, NM | 06-18-2018 |
| Lerma v. St. Alexius Medical Center | Circuit Court of Cook County, Illinois, County Department - Law Division | 2016 L 000603 | Indomenico & Associates, Chicago\IL | 06-15-2018 |
| Hughes v. Randall-Hayes, M.D., et al. | Circuit Court, Sixth Judicial Circuit, Champaign County, State of Illinois | 2013-L-99 | Mossing & Navarre, Chicago\IL | 06-14-2018 |
| Kenu v. Belkin International, Inc. et al | United States District Court, Northern District of California, San Francisco Division | 3:14-cv-04327-JD | Troutman Sanders, San Francisco\CA | 06-13-2018 |
| Zeller v. CRST Lincoln Sales, Inc., et al. | United States District Court, Northern District of Illinois, Eastern Division | 16-cv-10140 | Cogan & Power, Chicago, IL | 06-11-2018 |
| Leoni v. Experian Information Solutions, Inc. | United States District Court, District of Nevada | 2:17-cv-01408-RFB-VCF | Knepper & Clark, Las Vegas, NV | 06-08-2018 |
| Streit v. Halverson | United States District Court for the Western District of Missouri, Central Division at Jefferson City | 2:17-cv-4225 | Langdon & Emison, Lexington, MO | 06-07-2018 |
| Whitlock v. Nevada Capital Insurance Company, et al. | District Court, Clark County, Nevada | A-13-681608-C, Dept No. XXIX | Maier Gutierrez & Associates, Las Vegas, NV | 06-06-2018 |
| Hanna v. Trinity Industries, Inc., et al. | Circuit Court of Jackson County, Missouri at Kansas City | 1716-CV12173 | Langdon & Emison, Lexington, MO | 06-06-2018 |
| Taylor v. Berger, M.D., et al. | Circuit Court of Cook County, State of Illinois, County Department - Law Division | 15 L 9086 | Motherway & Napleton, Chicago, IL | 06-05-2018 |
| Kolesar v. XPO Logistics Freight, I(nc. | Circuit Court of Cook County, State of Illinois, County Department - Law Division | 2016-L-000686 | Pullano Law Firm, Chicago, IL | 06-04-2018 |
| Heartwise, Inc. v. Nutrigold, Inc. | United States District Court, District of Utah, Central Division | 2:13-cv-00982-DAK | Workman Nydegger* Salt Lake City, UT | 06-01-2018 |
| Kim v. Byun, M.D., et al. | United States District Court, Northern District of Illinois | 1:16-cv-09138 | Patterson Law Firm, Chicago, IL | 05-31-2018 |
| Barnum, et al. v. Equifax Information Services, Inc. | United States District Court, District of Nevada | 2:16-cv-2866-RFB-NJK | Knepper & Clark, Las Vegas, NV | 05-30-2018 |
| Bulduk v. Walgreen Co. | Circuit Court of Cook County, State of Illinois, County Department - Law Division | 17 L 1149 | Lane Kefil Law, Chicago, IL | 05-25-2018 |
| Mejia, et al. v. Lawyer Mechanical Services, et al. | District Court, Clark County, Nevada | A-16-740817-C | Powell Law Firm, Las Vegas, NV | 05-24-2018 |
| Petrocianpur, et al. v. Grand Lux Café LLC, et al. | District Court, Clark County, Nevada | A-15-719661-C, Dept No. XIX | Naqvi Injury Law, Las Vegas, NV | 05-23-2018 |
| Georgas v. Swedish Covenant Hospital, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2014L012688 | Power Rogers & Smith, Chicago, IL | 05-22-2018 |
| Cotton v. Lee, D.O., et al. | State of Illinois In the Circuit Court of the Twelfth Judicial Circuit, Will County | 14 L 563 | Motherway & Napleton, Chicago, IL | 05-21-2018 |
| Lewis v. Agarwal, M.D., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2015 L 008423 | Phillips & Associates, Chicago, IL | 05-17-2018 |

## LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
### STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Urth Laguna Beach Development, et al. v. Farsakh, et al. | Superior Court of the State of California, County of Orange | 30-2016-00849787-CU-CR CJC | American Freedom Law Center* Ann Arbor, MI | 05-16-2018 |
| Holt/Cordova-Holt v. Ocwen Loan Servicing, et al. | Superior Court of the State of California in and for the County of Marin | OLV 1600577 | Christensen Law Office, Oakland, CA | 05-15-2018 |
| Carter/Collins v. Metropolitan Hospital, et al. | State of Michigan in the Circuit Court for the County of Kent | 17-06824-NH | Buchanan & Buchanan, Grand Rapids, MI | 05-10-2018 |
| Vaseemuddin v. County of Cook, et al. | United States District Court, Northern District of Illinois, Eastern Division | 14 C 2995 | Kreamer Law Office, Naperville, IL | 05-08-2018 |
| Robertshaw v. Maurer Truck Leasing, LLC, et al. | Circuit Court of Cook County, Illinois County Department - Law Division | 2016 L 2098 | Shannon Law Group, Woodridge, IL | 05-07-2018 |
| Haught v. Payson Healthcare Management, Inc. et al. | Superior Court of the State of Arizona In and For the County of Gila | CV201300157 | McGovern Law Offices, Phoenix\AZ | 05-04-2018 |
| Walsh/Shane v. Koren, M.D., et al. | Superior Court of New Jersey, Law Division: Camden County | CAM-L-1617-16 | Lynch Lynch Held Rosenberg, Hasbrouck Heights, NJ | 05-03-2018 |
| Simmons v. Richardson, M.D., et al. | Commonwealth of Kentucky, Daviess Circuit Court, Division II | 13-CI-00395 | Moore Malone & Safreed, Owensboro, KY | 04-26-2018 |
| Slone v. Anesthesia Associates, PSC | Commonwealth of Kentucky, Fayette Circuit Court | 16-CI-04089 | Savage Law Firm, Lexington, KY | 04-25-2018 |
| Haak, et al. v. Reyniers, et al. | United States District Court for the Eastern District of Wisconsin | 17-C-128 | Lawton & Cates, Madison, WI | 04-24-2018 |
| Ogiego v. Leopardo Companies, Inc., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 15 L 001217 | Allen Law Group, Valparaiso, IN | 04-24-2018 |
| Walker v. Macy's Merchandising Group, Inc. | United States District Court for the Northern District of Illinois, Eastern Division | 1:14-cv-02513 | Langdon & Emison, Lexington, MO | 04-18-2018 |
| McMichael v. Spectrum Health Hospitals, et al. | State of Michigan in the Circuit Court for the County of Kent | 17-01653-NH | Buchanan & Buchanan, Grand Rapids, MI | 04-12-2018 |
| Klaisner v. Johanson | Circuit Court of Cook County, Illinois County Department - Law Division | 16 L 2993 | Bashford Law Group, Glenview, IL | 04-12-2018 |
| McKenna v. Chesnoff, CHTD. P.C., et al. | United States District Court, District of Nevada | 2:14-CV-01773-JAD-CWH | Bailey Kennedy, Las Vegas, NV | 04-11-2018 |
| Ruetiger v. Lincoln-Way Area Special Education District 843, et al. | Circuit Court of the Twelfth Judicial Circuit, Will County, Illinois | 16 L 0539 | Allen Law Group, Valparaiso, IN | 04-06-2018 |
| Binkowski v. Grand Island Express, Inc., et al. | State of Indiana, County of Porter, Porter County Superior Court 2 | 64D02-1503-CT-2255 | Allen Law Group, Valparaiso\IN | 04-05-2018 |
| Luedtke v. Northern Indiana Public Service Company, et al. | State of Indiana, County of Lake, in the Lake Superior Court Sitting at Crown Point, Indiana | 45D10-1602-CT-27 | Allen Law Group, Valparaiso, IN | 04-04-2018 |
| McKay v. the City of St. Louis, Missouri, et al. | United States District Court for the Eastern District of Missouri, Eastern Division | 4:15-cv-01315-JAR | Newton Barth, St. Louis, MO | 03-29-2018 |
| Stork v. Wenck | Iowa District Court for Carroll County | LACV039736 | Galligan & Reid, Des Moines, IA | 03-28-2018 |
| Hauslein v. Statham | Circuit Court of the Tenth Judicial Circuit of Illinois, Knox County | 15-L-2 | LeFante Law Offices, Peoria, IL | 03-28-2018 |
| Calianno v. Kaleb Crinite, et al. | District Court, Clark County, Nevada | A-15-727749-C, Dept No. XXX | Eglet Prince, Las Vegas, NV | 03-27-2018 |
| Thompson, et al. v. Stonegate Insurance Co. | Circuit Court of Cook County, County Department - Chancery Division | 12 CH 02774 | Richert Law Office, Orland Park, IL | 03-26-2018 |
| Contreras v. Manning, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2015 L 7542 | Espitia Law Office, Chicago, IL | 03-23-2018 |
| Estabrook v. Yamazaki Mazak Corporation, et al. | United States District Court for the Northern District of Indiana | 1:16-cv-0087-RL-SLC | Theisen & Associates, Fort Wayne, IN | 03-23-2018 |
| Schreck v. Sanford Health, et al. | Iowa District Court for Lyon County | LACV501613 | Beattie Law Firm, Des Moines, IA | 03-22-2018 |
| Appleton v. Tahoe Nugget, Inc., et al. | Second Judicial District Court of the State of Nevada, County of Washoe | CV17-00001, Dept No. 10 | Titolo Law Office, Las Vegas, NV | 03-21-2018 |
| Sarian v. Proctor, DO, et al. | Commonwealth of Kentucky, Boone Circuit Court, First Division | 17-CI-00227 | Savage Law Firm, Lexington, KY | 03-19-2018 |
| Khiabani/Barin v. Motor Coach Industries, Inc., et al. | District Court, Clark County, Nevada | A-17-755977-C | Weinberg Wheeler Hudgins Gunn & Dial* Las Vegas\NV | 03-16-2018 |
| Allen v. Regional Transportation Authority, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 015L0000116 | Deratany & Associates, Chicago, IL | 03-13-2018 |
| Damor America v. Zurich International Italia S.P.A., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2014 L 13340 | Sinson Law Group, Chicago, IL | 03-09-2018 |
| Strosberg v. Englander, M.D., et al. | Circuit Court of the Fifteenth Judicial Circuit, In and For Palm Beach County, Florida | 50 2014 CA 012994XXXXMB AB | Roberts & Associates, West Palm Beach, FL | 03-08-2018 |
| Simpson v. General Motors, et al. | State of Michigan in the Circuit Court for the County of Genesee | 16-107103-NO | Darling Law Office, Plymouth, MI | 03-07-2018 |

### LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
### STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Smith v. Retail Project Managers, Inc., et al. | Circuit Court of Cook County of Illinois, County Department - Law Division | 15 L 1323 | Riseborough Law Office, Lake Bluff\IL | 02-28-2018 |
| Schlappi v. Finnestad | Circuit Court of the Twenty-Third Judicial Circuit, Kendall County, Illinois | 15 L 186 | Rigazio Law Office, Morris, IL | 02-27-2018 |
| Kenny, Jr. v. Superior Engineering, LLC., et al. | State of Indiana, County of Lake, Lake Superior Court, Sitting at Hammond Indiana | 45D01-1411-CT-00261 | Allen Law Group, Valparaiso, IN | 02-22-2018 |
| Amiri v. Duncan, et al. | United States District Court, Northern District of California, San Francisco Division | 3:15-cv-03994-JSC | Holl Law & Mediation, San Francisco, CA | 02-21-2018 |
| Robinson v. Eder, M.D., et al. | Circuit Court for Baltimore City, Maryland | 24-C-16-006431 | Wais Vogelstein Forman & Offutt, Baltimore, MD | 02-16-2018 |
| Foy v. Sherwin Williams Company | United States District Court, Northern District of Illinois, Eastern Division | 15-CV-4652 | O'Brien Law, Geneva, IL | 02-13-2018 |
| Ruettiger v. Lincoln-Way Area Special Education District 843, et al. | Circuit Court of the Twelfth Judicial Circuit, Will County, Illinois | 16 L 0539 | Allen Law Group, Valparaiso, IN | 02-08-2018 |
| Nakhla v. Rite Aid of New Jersey, Inc., et al. | Superior Court of New Jersey, Law Division - Monmouth County | MON-L-2242-16 | Escandon Fernicola Anderson & Covelli, Allenhurst, NJ | 02-07-2018 |
| Gurwood v. GCA Services Group, Inc., et al. | State of South Carolina, County of Charleston in the Court of Common Pleas for the Ninth Judicial Circuit | 2015-CP-10-2191 | Slotchiver & Slotchiver, Charleston, SC | 02-06-2018 |
| Villanueva v. Payson Hospital Corporation, et al. | Superior Court of the State of Arizona, In and For the County of Gila | CV 2016 00177 | Lloyd Law Group, Payson, AZ | 02-05-2018 |
| Pomazal v. Grodoski | Circuit Court of the Eighteenth Judicial Circuit, DuPage County, Illinois | 2013 L 879 | Nemeroff Law Office, Chicago, IL | 02-02-2018 |
| Pinkson v. Conway Two, LLC., et al. | Circuit Court of Cook County, County Department - Law Division | 2015L007994 | Gary Williams Parenti Finney Watson & Gary, Stuart, FL | 02-01-2018 |
| Ross, Jr. v. Cattron-Theimeg, Inc., et al. | State of Indiana, County of Lake, Lake Superior Court, Sitting at Gary, Indiana | 45D04-1407-CT-129 | Allen Law Group, Chicago, IL | 02-01-2018 |
| Thimmes v. Bakeris, D.C. | Circuit Court of DeSoto County, Mississippi | CV-2014-203RCD | Merkel & Cocke, Clarksdale, MS | 01-31-2018 |
| Rosol v. Elmhurst Memorial Hospital, et al. | Circuit Court of Cook County, County Department - Law Division | 14 L 1606 | McNabola & Associates, Chicago, IL | 01-31-2018 |
| Owens v. City of Chicago, et al. | Circuit Court of Cook County, County Department - Law Division | 2015 L 9132 | Curcio Law Offices, Chicago, IL | 01-30-2018 |
| Lanham v. BNSF Railway Company | District Court of Lancaster County, Nebraska | CI 17-106 | Atwood Holsten Brown Deaver & Spier, Lincoln, NE | 01-30-2018 |
| Komada v. Dove, et al. | Circuit Court of Cook County, County Department - Law Division | 16 L 5275 | Mitchell Hoffman & Wolf, Chicago, IL | 01-29-2018 |
| Beasley v. Shady Grove Adventist Hospital, et al. | Circuit Court for Prince Georges County, Maryland | CA46-30133 | Wais Vogelstein Forman & Offutt, Baltimore, MD | 01-26-2018 |
| Cardenas v. Northern Nevada Medical Center, et al. | Second Judicial District Court of the State of Nevada, County of Washoe | CV13-00523, Dept No. 4 | Durney & Brennan, Reno\NV | 01-25-2018 |
| Gillman v. Zamora, et al. | District Court, Clark County, Nevada | A722327, Dept No. II | Paternoster Law Group, Las Vegas, NV | 01-24-2018 |
| Metcalfe v. Loquerio Automotive, Inc., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 15 L 12932 | Chapekis Chapekis Kardas & Schmidt, Chicago, IL | 01-22-2018 |
| Lefthand v. Taos Health Systems, Inc., et al. | Thirteenth Judicial District Court, County of Valencia, State of New Mexico | D-1314-CV-2016-00390 | Salazar Sullivan Jasionowski, Albuquerque, NM | 01-22-2018 |
| Morgenstern, M.D. v. City of Highland Park, et al. | Circuit Court for the Nineteenth Judicial Circuit, Lake County, Illinois | 15 L 186 | Nolan Law Group, Chicago, IL | 01-19-2018 |
| Commonwealth of Kentucky, et al. v. National College of Kentucky, Inc. | Commonwealth of Kentucky, Fayette Circuit Court, Division 8 | 11-CI-4922 | Rose Grasch Camenisch Mains* Lexington\KY | 01-18-2018 |
| Olek, Inc. v. RAR Development Associates, et al. | Superior Court of New Jersey, Law Division - Essex County | ESX-L-1780-15 | Orr Law Office, Newark, NJ | 01-17-2018 |
| Rabadan/Sharp v. Mittapalli, M.D., et al. | Circuit Court of the Fourteenth Judicial Circuit, Whiteside County, Illinois | 2014 L 37 ST | Mertes & Mertes, Sterling, IL | 01-16-2018 |
| Hays, Jr., et al. v. Tarullo, et al. | Jefferson Circuit Court, Division One | 14-CI-03296 | Tobler Law Firm, New Orleans, LA | 01-15-2018 |
| Blue Book Services, Inc. v. Amerihua Produce, Inc. | United States District Court for the Northern District of Illinois, Eastern Division | 16-10495 | Schiller Law Group, New York, NY | 01-11-2018 |
| George v. CNS Transpro, et al. | United States District Court of the Eastern District of Missouri at St. Louis, Eastern Division | 4:16-cv-01656-RWS | Langdon & Emison, Lexington, MO | 01-10-2018 |
| Montague v. Yale University, et al. | United States District Court, District of Connecticut | 3:16-CV-00885-AVC | Todd & Weld, Boston, MA | 01-09-2018 |

LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Cortese-Angellini v. Sanglovese, et al. | District Court, Clark County, Nevada | A-17-753796-C, Dept No. XXXI | Gentile Cristalli Miller Armeni Savarese, Las Vegas, NV | 01-08-2018 |
| Brooks v. Avila, et al. | District Court, Clark County, Nevada | A-16-737423-C, Dept No. VII | Powell Law Firm, Las Vegas, NV | 01-05-2018 |
| Mendoza v. Torres, et al. | District Court, Clark County, Nevada | A-16-733263-C, Dept No. XVI | Eglet Prince, Las Vegas, NV | 01-04-2018 |
| Ashford v. 99 Cents Only Store, et al. | District Court, Clark County, Nevada | A-16-736450-C, Dept No. XXX | Powell Law Firm, Las Vegas, NV | 01-04-2018 |
| Clinkscale v. Ruffin, et al. | District Court, Clark County, Nevada | A-15-729321-C, Dept No. XVI | Powell Law Firm, Las Vegas, NV | 01-03-2018 |
| Hays, Jr., et al. v. Tarullo, et al. | Jefferson Circuit Court, Division One | 14-CI-03296 | Tobler Law Firm, New Orleans, LA | 12-13-2017 |
| Marogil v. Sterbenz, et al. | Circuit Court for the Eighteenth Judicial Circuit, DuPage County, Illinois | 2015 L 784 | Patterson Law Firm, Chicago, IL | 12-12-2017 |
| Lerma v. St. Alexius Medical Center | Circuit Court of Cook County, Illinois, County Department - Law Division | 2016 L 000603 | Indomenico & Associates, Chicago, IL | 12-11-2017 |
| Johnson v. Shaw Transport, et al. | State of Indiana, County of Marion, Marion Superior Court #6 | 49D06-1603-CT-010096 | Allen Law Group, Valparaiso, IN | 12-08-2017 |
| Egan Marine Corporation v. ExxonMobil Oil Corporations, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 15 L 6437 | Cronin & Co, Chicago, IL | 12-07-2017 |
| Brooks v. Caterpillar Global Mining, LLC | United States District Court, Western District of Kentucky, Owensboro Division | 4.14-CV-00022-JHM | Moore Malone & Safreed, Owensboro\KY | 12-06-2017 |
| Siegfried v. Lopez, et al. | Eighth Judicial District Court, Clark County, Nevada | A-15-722816-C, Dept No. II | Powell Law Firm, Las Vegas, NV | 12-05-2017 |
| Conner v. Robertson, et al. | Lake Superior Circuit Court, Crown Point, Indianan | 45C01-1501-CT-00011 | Whalley & Associates, Merrillville, IN | 12-05-2017 |
| Albert v. Gauthier, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2015 L 002707 | Woodruff Johnson & Evans, Aurora, IL | 12-04-2017 |
| Guzman v. Dale, et al. | District Court, Clark County, Nevada | A-16-746355-C, Dept No. 30 | Lerner Injury Attorneys, Las Vegas, NV | 12-01-2017 |
| Gonzalez/Cuevas v. Northshore University Healthsystem, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2014 L 006113 | Cogan & Power, Chicago, IL | 12-01-2017 |
| Marin/Melvin v. The University of Chicago Medical Center | Circuit Court of Cook County, Illinois, County Department - Law Division | 14 L 006886 | Mossing & Navarre, Chicago, IL | 11-30-2017 |
| French, et al. v. Trinity Highway Products, et al. | Circuit Court for the City of St. Louis, Missouri | 1522-CC11395 | Fibich Leebron Copeland Briggs, Houston, TX | 11-28-2017 |
| Gentry v. Integritas Systems LLC, et al. | State of Indiana, County of Marion, Marion Superior Court, Sitting at Indianapolis, Indiana | 49D10-1602-CT-3929 | Allen Law Group, Valparaiso\IN | 11-15-2017 |
| Schwab v. Surgical Associates of Louisville, et al. | Jefferson Circuit Court, Division Twelve (12) | 15-CI-006423 | Franklin Law Group, Louisville, KY | 11-13-2017 |
| Main Street Power Mail, Inc., et al. v. Erie Insurance Exchange | State of Indiana, County of Hamilton, Hamilton Circuit Court | 29C01-1509-PL-7272 | Parr Richey Obremskey Frandsen & Patterson, Indianapolis, IN | 11-13-2017 |
| Shaffer v. Affiliated Southwest Surgeons, P.C., et al. | Superior Court of the State of Arizona, In and For the County of Maricopa | CV2015-005620 | McGovern Law Offices, Phoenix, AZ | 11-10-2017 |
| Russell v. Williams, et al. | District Court, 429th Judicial District, Collin County, Texas | 429-04560-2016 | Reed Law Group, Frisco, TX | 11-10-2017 |
| White v. Independence Plus, Inc., et al | Circuit Court of Cook County, County Department - Law Division | 13 L 8014 | Wienold & Associates, Chicago, IL | 11-09-2017 |
| Dautrich v. Nationstar Mortgage LLC, et al. | United States District Court, District of New Jersey | 1:15-cv-08278-RMB-KMW | Northeast Law Group, Longmeadow, MA | 11-09-2017 |
| Jones v. Ullah, M.D., et al. | Circuit Court, Twentieth Judicial Circuit, St. Clair County, Illinois | 14-L-565 | Hopson Law Group, Chicago, IL | 11-08-2017 |
| Vidaurri/Jones v. Sealy, et al. | State of New Mexico, County of Lea, Fifth Judicial District | CV-2016-00842 | Sawyers Law Group, Hobbs\NM | 11-07-2017 |
| Ledesma v. Sheets, et al. | District Court, Clark County, Nevada | A-15-727686-C, Dept No. XXVIII | Ladah Law firm, Las Vegas, NV | 11-06-2017 |
| Johnson v. Garceau | Second Judicial District Court In and For Weber County, State of Utah | 160905341 TA | Richards Law Office, Ogden, UT | 11-06-2017 |
| Vidaurri/Jones v. Sealy, et al. | State of New Mexico, County of Lea, Fifth Judicial District | CV-2016-00842 | Sawyers Law Group, Hobbs, NM | 11-03-2017 |
| Zarate v. Mendez, et al. | District Court, Clark County, Nevada | A-16-737427-C, Dept No. VI | Eglet Prince, Las Vegas, NV | 11-02-2017 |
| Murdick v. Manbeck, M.D. | State of Indiana, County of St. Joseph, Circuit Court | 71C01-1504-CT-000154 | Pavich Law Group, Chicago, IL | 11-02-2017 |
| Vidaurri/Jones v. Sealy, et al. | State of New Mexico, County of Lea, Fifth Judicial District | CV-2016-00842 | Sawyers Law Group, Hobbs, NM | 11-01-2017 |

**LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN**
**STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021**

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Morgenstern, M.D. v. City of Highland Park, et al. | Circuit Court for the Nineteenth Judicial Circuit, Lake County, Illinois | 15 L 186 | Nolan Law Group, Chicago, IL | 10-31-2017 |
| Poola, PhD. v. Howard University, et al. | Superior Court of the District fo Columbia, Civil Division | 2012 CA 000003 | Branch & Associates, Washington, DC | 10-27-2017 |
| Hernandez v. Noun, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 14 L 5052 | Burns Cronauer & Brown, Sycamore, IL | 10-26-2017 |
| Jackson v. Turley, M.D., et al. | Commonwealth of Kentucky, Madison Circuit Court, Division 1 | 16-CI-530 | Erdmann & Stumbo, Richmond, KY | 10-26-2017 |
| Blomgren v. Town Square Las Vegas, LLC, et al. | District Court, Clark County, Nevada | A736230, Dept No. I | Lerner Injury Associates, Las Vegas, NV | 10-24-2017 |
| Lopez v. Vazquez, M.D., et al. | Superior Court of New Jersey, Law Division: Passaic County | PAS-1-2196-15 | Lynch Lynch Held Rosenberg, Hasbrouck Heights, NJ | 10-23-2017 |
| Carreto-Silva v. Velcani | Circuit Court of Cook County, Illinois, County Department - Law Division | 14 L 011515 | Shim Law Office, Rolling Meadows\IL | 10-23-2017 |
| Damery v. McGrath, et al. | District Court, Clark County, Nevada | A-10-620078 | Eglet Prince, Las Vegas\NV | 10-20-2017 |
| Honigsblum v. Next Door and Window Company, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2014 L 009884 | O'Mara Gleason & O'Callaghan, Chicago\IL | 10-19-2017 |
| Oyugi v. Advocate Health and Hospitals Corporation, et al. | Circuit Court of Cook County, Illinois, County Department, Law Division | 13 L 10038 | McNabola & Associates, Chicago, IL | 10-18-2017 |
| Flanagan/Allen v. The City of Dallas, Texas, et al. | United States District Court for the Northern District of Texas, Dallas Division | 3:13-CV-4231 | Washington Law Office, Dallas\TX | 10-17-2017 |
| O'Sullivan v. O'Sullivan | Circuit Court of Cook County, Illinois, County Department - Domestic Relations Division | 15-D-303 | Leving Law Office, Chicago\IL | 10-16-2017 |
| Garcia-Morales, et al. v. Marshall Jr., et al. | District Court, Clark County, Nevada | A-16-730891-C, Dept No. XVI | Powell Law Firm, Las Vegas, NV | 10-13-2017 |
| Smoot, et al. v. Mercy Medical Center, Inc., et al | Circuit Court for Baltimore City | 24-C-17-000216 MM | Wais Vogelstein Forman & Offutt, Baltimore, MD | 10-12-2017 |
| Gonzalez/Gish v. Solid Platforms, Inc. | State of Indiana, County of Porter Superior Court, Sitting at Valparaiso, Indiana | 64D02-1511-CT-9806 | Allen Law Group, Valparaiso, IN | 10-11-2017 |
| Simeo v. Rish, et al. | District Court, Clark County, Nevada | A539455 | Eglet Prince, Las Vegas, NV | 10-10-2017 |
| Mohammed v. Kelly | Circuit Court of Cook County, Illinois, County Department - Law Division | 2015 L 010729 | Wolfman Law Office, Chicago, IL | 10-10-2017 |
| Williams v. Douglas County, et al. | United States District Court for the Northern District to Georgia, Atlanta Division | 1:16-CV-02913-ODE | Jeffrey Scott, New York, NY | 10-09-2017 |
| Doe v. Board of Education of the City of Chicago | Circuit Court of Cook County, Illinois, County Department | 2014 L 010388 | Montgomery Law Firm, Chicago\IL | 10-06-2017 |
| Collier v. Norfolk Southern Railway Company | Circuit Court of Clay County, Missouri | 15CY-CV06848, Division No. 4 | Barnes Law Firm, Kansas City\MO | 10-04-2017 |
| Aye/Parke v. Venetian Casino Resort, LLC., et al. | District Court, Clark County, Nevada | A-15-716380-C, Dept No. XXVIII | Ladah Law Firm, Las Vegas, NV | 10-02-2017 |
| Hernandez v. Davis, et al. | District Court, Clark County, Nevada | A-16-739703-C, Dept No. XXVI | Lerner Injury Attorneys, Las Vegas, NV | 09-27-2017 |
| Fowler v. Sonsungnuen, et al. | District Court, Clark County, Nevada | A-15-729006-C, Dept No. XXVIII | Powell Law Firm, Las Vegas, NV | 09-27-2017 |
| Czech v. Target Corporation, et al. | United States District Court, District of Nevada | 2:16-cv-01923-APG-GWF | Shook & Stone, Las Vegas, NV | 09-26-2017 |
| Clark v. Dixit, M.D., et al. | Jefferson Circuit Court, Division Thirteen | 15-CI 005753 | Goldberg & Simpson, Louisville, KY | 09-26-2017 |
| Seehoffer v. Illinois Farmers Insurance Company | State of Illinois, County of Cook | 1020183765-1-4* Policy No. 0145698892 | Burnes & Libman, Chicago, IL | 09-25-2017 |
| Abeln/Kaufman, et al. v. Trinity Industries, Inc., et al. | Circuit Court for the City of St. Louis, Missouri | 1522-CC11395 | Langdon & Emison, Lexington, MO | 09-25-2017 |
| Smith v. Retail Project Managers, Inc., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 15 L 1323 | Riseborough Law Office, Lake Bluff, IL | 09-22-2017 |
| Tremain v. Ferro, D.O., P.C., et al | State of Michigan, Circuit Court for the County of Ingham | 17-255-NH | Buchanan & Buchanan, Grand Rapids, MI | 09-22-2017 |
| Meeks/Jones v. Dissanayake, M.D. | Circuit Court of Cook County, Illinois, County Department - Law Division | 15 L 11535 | Loggans & Associates, Chicago, IL | 09-21-2017 |
| Binkowski v. Grand Island Express, Inc., et al. | State of Indiana, County of Porter, Porter County Superior Court 2 | 64D02-1503-CT-2255 | Allen Law Group, Valparaiso, IN | 09-21-2017 |
| Cotton v. Lee, D.O., et al. | State of Illinois in the Circuit Court of the Twelfth Judicial County, Will County | 14 L 563 | Motherway & Napleton, Chicago, IL | 09-20-2017 |
| Jones/Hortman, et al. v. Goodrich Corporation, et al. | United States District Court, District of Connecticut | 3:12-CV-02197-WWE | Baum Hedlund Aristel & Goldman, Los Angeles, CA | 09-20-2017 |
| Haught v. Payson Healthcare Management, Inc. et al. | Superior Court of the State of Arizona and for the County of Gila | CV201300157 | McGovern Law Offices, Phoenix, AZ | 09-18-2017 |
| Jones, et al. v. Mercy Medical Center, Inc., et al. | Circuit Court for Baltimore City, Maryland | 24-C-16-005857 | Wais Vogelstein Froman & Offutt, Baltimore, MO | 09-14-2017 |

## LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
## STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Schelbling v. Morris Heart Associates, et al. | Superior Court of New Jersey, Law Division - Morris County | MRS-L-2205-14 | Lomurro Law, Freehold\NJ | 09-13-2017 |
| Northland Products Company v. Ouelette Machinery Systems | Circuit Court of the County of St. Louis, State of Missouri | 16SL-CC00784, Div. 18 | Spooner Law* St. Louis\MO | 09-12-2017 |
| Sanchez/Miranda v. United States of America, et al. | United States District Court, District of New Jersey | 2:15-CV-07509-KSH-CLW | Lynch Lynch Held Rosenberg, Hasbrouck Heights, NJ | 09-11-2017 |
| Turner v. US Airbag, LLC., et al. | State of Wisconsin, Circuit Court, Chippewa County | 14 CV 162 | Guelzow Law Offices, Eau Clair\WI | 09-11-2017 |
| Warshawsky v. Epstein, DMD, et al. | Circuit Court for Cook County, Illinois, County Department - Law Division | 14 L 010575 | McNabola Law Group, Chicago, IL | 09-07-2017 |
| Slavish, et al. v. Rock Island Tri-County Consortium, et al. | Circuit Court of the Fourteenth Judicial Circuit, Rock Island County, Illinois, General Division | 14 L 7283 | Katz Nowinski, Moline, IL | 09-07-2017 |
| Bolden v. Illinois Central Railroad Company | Circuit Court of Cook County, Illinois, County Department - Law Division | 09 L 15538 | Lipkin & Higgins, Chicago, IL | 09-06-2017 |
| Felts v. Illinois Central Railroad Company | Circuit Court of Cook County, Illinois, County Department - Law Division | 09 L 009872 | Lipkin & Higgins, Chicago, IL | 09-06-2017 |
| Villanueva v. Streamwood Behavioral Healthcare System, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 13 L 008377 | McNabola & Associates, Chicago, IL | 09-06-2017 |
| Northland Products Company v. Ouelette Machinery Systems | Circuit Court of the County of St. Louis, State of Missouri | 16SL-CC00784, Div. 18 | Spooner Law* St. Louis, MO | 09-05-2017 |
| Robbins v. Medical Associates Clinic P.C., et al. | Iowa District Court, Clayton County | LACV 010091 | Harding Law Office, Des Moines, IA | 09-05-2017 |
| Dieken v. Clark, M.D. | Circuit Court of Will County, Illinois | 14 L 01012 | Paris Law Firm, Chicago, IL | 08-31-2017 |
| Collier v. Norfolk Southern Railway Company | Circuit Court of Clay County, Missouri | 15CY-CV06848, Division No. 4 | Barnes Law Firm, Kansas City, MO | 08-30-2017 |
| Allen v. American Capital Limited, et al. | United States District Court for the District of Arizona | CV-16-02876-PHX-JAT | Wagstaff & Cartmell, Kansas City, MO | 08-28-2017 |
| Parker v. Derr, M.D., et al. | Circuit Court of Alcorn County, MS | CV15-107PA | Merkel & Cocke, Clarksdale\MS | 08-23-2017 |
| Juzefyk v. Mallon | Superior Court of New Jersey, Union County - Law Division | UNN-L-0468-16 | Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins, Springfield, NJ | 08-22-2017 |
| Patzschke v. Northern Indiana Public Service Company, et al. | State of Indiana, County of Lake in the Lake Superior Court Sitting in Gary, Indiana | 45D04-1508-CT-151 | Allen Law Group, Valparaiso, IN | 08-18-2017 |
| Gough v. Mendez, et al. | District Court, Clark County, Nevada | A-15-726594-C, Dept No. XXI | Paternoster Law Group, Las Vegas, NV | 08-17-2017 |
| Brooks v. Caterpillar Global Mining, LLC | United States District Court, Western District of Kentucky, Owensboro Division | 4.14-CV-00022-JHM | Moore Malone & Safreed, Owensboro, KY | 08-17-2017 |
| Stoller v. Nissan Motor Company, LTD, et al. | JAMS Arbitration, Chicago, IL | 1340013103 | Kiss Law Office, Gurnee, IL | 08-17-2017 |
| Paul v. BNSF Railway Company | District Court of Lancaster County, Nebraska | CI 14 1505 | Perry Guthery Haase & Gessford, Lincoln\NE | 08-16-2017 |
| Rohan v. Pepper Construction, Co., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 14 L 7283 | Motherway & Napleton, Chicago, IL | 08-14-2017 |
| Kieckhaefer v. Roscoe Township | State of Illinois, Circuit Court of the 17th Judicial Circuit, Winnebago County | 14 L 194 | Klein Stoddard Buck Lewis, Sycamore, IL | 08-14-2017 |
| Murillo v. Goad, et al. | United States District Court, District of Nevada | 2:16-cv-02739-RFB-CWH | Mersch Law Office, Las Vegas, NV | 08-10-2017 |
| Nemec v. Roberts Environmental Control Corp, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 13 L 12753 | O'Connor Law Group, Chicago\IL | 07-24-2017 |
| Edwards v. Dakota, Minnesota & Eastern Railroad Corportation | Circuit Court of the Twelfth Judicial Circuit, Will County, Illinois | 2014 L 000421 | Lipkin & Higgins, Chicago\IL | 07-21-2017 |
| Al-Nobani v. Cernov, et al. | District Court, Clark County, Nevada | A-14-700-517-C, Dept No. I | Ladah Law Firm, Las Vegas\NV | 07-20-2017 |
| Honigsblum v. Next Door and Window Company, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2014 L 009884 | O'Mara Gleason & O'Callaghan, Chicago, IL | 07-18-2017 |
| Somo, et al. v. Advanced Custom Engineered Systems & Equiment Co., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 13 L 012720 | Rittenberg Buffen Guibrandsen Robinson & Saks, Chicago, IL | 07-14-2017 |
| Nagpal v. Tencer, DC, et al. | Circuit Court of DeSoto County, Mississippi | CV 2015-176GCD | Merkel & Cocke, Clarksdale, MS | 07-14-2017 |
| Pilarski, et al. v. University of Maryland Medical Center, LLC, et al. | Circuit Court for Baltimore City | 24-C-16-002677 | Wais Vogelstein Forman & Offutt, Baltimore\MD | 07-11-2017 |
| Friel v. Miller, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2015-L-006664 | Snorf Law Office* Chicago, IL | 07-10-2017 |
| Smith v. BNSF Railway Company | State of New Mexico, County of Valendcia, Thirteenth Judicial District | D-1314-CV-2015-00606 | Davis Bethune & Jones, Kansas City, MO | 07-10-2017 |

## LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
## STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Miller v. Dunavant Farms Trucking, LLC., et al. | Circuit Court of St. Francis County, Arkansas | CV-2015-188-1 | Langdon & Emison, Lexington, MO | 07-06-2017 |
| Carreto-Silva v. Velcani | Circuit Court of Cook County, Illinois, County Department - Law Division | 14 L 011515 | Shim Law Office, Rolling Meadows, IL | 06-30-2017 |
| Hedrick v. TJ Materials, LLC, et al. | Lake Superior Court, Civil Division, Room Four, Sitting at Gary, Indiana | 45D04-1505-CT-00095 | Allen Law Group, Valparaiso, IN | 06-29-2017 |
| Howze v. United States of America | United States District Court, Eastern District of Arkansas, Eastern Division | 2:16-0003 BRW | Peraica & Associates, Chicago, IL | 06-28-2017 |
| Murdick v. Manbeck, M.D. | State of Indiana, County of St. Joseph, Circuit Court | 71C01-1504-CT-000154 | Pavich Law Group, Chicago, IL | 06-27-2017 |
| Mapp v. Chen, M.D. | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 L 001998 | Cogan & Power, Chicago, IL | 06-27-2017 |
| ACG Industries Inc., et al. v. Rollins Properties, et al. | Superior Court of the State of California for the County of Los Angeles, Central District | BC627525 | Klein Litigation, Beverly Hills, CA | 06-26-2017 |
| O'Sullivan v. O'Sullivan | Circuit Court of Cook County, Illinois, County Department - Domestic Relations Division | 15-D-303 | Leving Law Office, Chicago, IL | 06-23-2017 |
| Hopfer/O'Grady v. Advocate Health and Hospitals Corportation, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 14 L 1744 | McNabola & Associates, Chicago, IL | 06-23-2017 |
| Hood, Jr. v. D&L Steel Transport, Inc., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2015 L 008640 | Lipkin & Higgins, Chicago, IL | 06-22-2017 |
| Ruch/Kazort v. Padgett, et al. | State of Illinois, Circuit Court of the 17th Judicial Circuit | 2015 L 315 | Langdon & Emison, Lexington, MO | 06-20-2017 |
| Koch v. Scientific Image Center Management, Inc., et al. | Superior Court of California, County of San Mateo | CIV 513706 | Kastner Kim, Mountain View, CA | 06-19-2017 |
| Wynn v. BNSF Railway Company, et al. | Circuit Court of Cass County, State of Missouri | 15CA-CC00241, Divison 1 | Davis Bethune & Jones, Kansas City, MO | 06-19-2017 |
| Cramsie-Homan v. Blue Island Hospital Company, LLC., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 14 L 1017 | Motherway & Napleton, Chicago, IL | 06-15-2017 |
| Cline v. HEB Grocery Co., L.P. | District Court, Hildago County, Texas, 206th Judicial District | C-2198-15-D | Tummel & Casso, Edinburg, TX | 06-09-2017 |
| Ragland v. Dr. Ahuja, et al. | Circuit Court of the First Judicial Court, Williamson County, Illinois | 15-L51 | Womick Law Firm, Carbondale, IL | 06-08-2017 |
| Nemec v. Roberts Environmental Control Corp, et al | Circuit Court of Cook County, Illinois, County Department - Law Division | 13 L 12753 | O'Connor Law Group, Chicago, IL | 06-05-2017 |
| Zohar/Noury v. Summerlin Hospital Medical Center, et al. | District Court, Clark County, Nevada | A-11-642383-C, Dept No. XVII | Luh & Associates, Las Vegas, NV | 06-02-2017 |
| Sikora v. Manor Care of Elk Grove Village, LLC., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 14 L 8881 | Malman & Associates, Chicago\IL | 06-02-2017 |
| Doe v. Board of Education of the City of Chicago | Circuit Court of Cook County, Illinois, County Department - Law Division | 2014 L 010388 | Montgomery Law Firm, Chicago, IL | 06-01-2017 |
| Staton v. VHS San Antonio Partners, et al. | District Court, 225th Judicial District, Bexar County, Texas | 2016-CI-07398 | Krebs Law Office, Austin, TX | 05-24-2017 |
| Carter v. Mayo, Jr. M.D., et al | Commonwealth of Kentucky, McCracken Circuit Court, Division 1 | 12-CI-00596 | Moore Malone & Safreed, Owensboro, KY | 05-23-2017 |
| Santiago v. Protechockey Ponds LLC, et al. | Superior Court of New Jersey, Law Division - Middlesex County | SOM-L-381-15 | Gill & Chamas, Perth Amboy, NJ | 05-16-2017 |
| Chatragadda v. Duquesne University | United States District Court for the Western District of Pennsylvania | 15-1051 | Praetorian Law Group, Pittsburgh\PA | 05-12-2017 |
| Starling, M.D. v. Banner Health, et al. | United States District Court for the District of Arizona | CV-16-708-PHX-NVW | Willis & Willis, Hilliard, OH | 05-11-2017 |
| Lipari v. Shawmut Design and Construction, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2014 L 002825 | Pullano Law Firm, Chicago\IL | 05-11-2017 |
| Kenu v. Belkin International, Inc. et al | United States District Court, Northern District of California, San Francisco Division | 3:14-cv-04327-JD | Troutman Sanders, San Francisco, CA | 05-09-2017 |
| Ragland v. Dr. Ahuja, et al. | Circuit Court of the First Judicial Court, Williamson County, Illinois | 15-L51 | Womick Law Firm, Carbondale, IL | 05-04-2017 |
| Craig v. Village Greene Phase IV Condominium Assn. Building 8, et al. | Circuit Court of Cook County, Illinois, County Department, Law Division | 14 L 9567 | Curcio Law Offices, Chicago, IL | 05-03-2017 |
| Zurawski v. Rezin Orthopedics and Sports Medicine, S.C., et al. | Circuit Court for the 12th Judicial Circuit, Will County, IL | 10 L 196 | Terpey Jones & Schroeder, Chicago\IL | 04-25-2017 |
| Johnson/Toth v. White River Health System Inc., et al. | Circuit Court of Independence County, Arkansas, Civil Division | CV-2012-026-2 | Wilcox Lacy, Jonesboro, AR | 04-21-2017 |
| Tyson Gonzales v. Navarro, et al. | District Court, Clark County, Las Vegas, NV | A-15-728994-C, Dept No. XXXI | Powell Law Firm, Las Vegas, NV | 04-20-2017 |
| Kobes v. Bruning | State of Illinois in the Circuit Court of the 17th Judicial Circuit, County of Winnebago | 13 L 239 | Rouleau Law Office, Rockford, IL | 04-17-2017 |
| Alvarez, et al. v. Ashley Furniture Industries, Inc., et al. | United States District Court, Central District of California | CV 16-00630 MWF (MRWx) | Arias Sanguinetti Stahle Torrijos, Los Angeles, CA | 04-15-2017 |

**LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021**

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Shenouda v. Touch, LLC, et al. | District Court, Clark County, Nevada | A-15-725567-C, Dept No. II | Paternoster Law Group, Las Vegas, NV | 04-14-2017 |
| Francis v. FedEx Freight, Inc., et al. | State of Louisiana, Parish of Beauregard, Thirty-Sixth Judicial District Court | C-2014-0200 | Davis Bethune & Jones, Kansas City, MO | 04-13-2017 |
| Simmons v. The City of Chicago, et al. | United States District Court, Northern District of Illinois, Eastern Division | 14 C 9042 | Hofeld Law Office, Chicago, IL | 04-13-2017 |
| Tinnus Enterprises and Zuru Ltd. V. Telebrand Corp | United States District Court for the Eastern District of Texas, Tyler Division | 6:16-cv-33 | Dunlap Bennett & Ludwig, Richmond\VA | 04-12-2017 |
| Moradi v. Nevada Property | District Court, Clark County, Nevada | A-14-698824-C, Dept. 20 | Cohen & Padda, Las Vegas\NV | 04-04-2017 |
| Jones v. City of San Antonio, Texas, et al. | United States District Court, Western District of Texas, San Antonio Division | 5:14-cv-00328-FB-HJB | Washington Law Office, Dallas\TX | 03-31-2017 |
| Baptist v. Ford Motor Company | United States District Court for the Northern District of Illinois, Eastern Division | 1:13-cv-08974 | Sinson Law Group, Chicago\IL | 03-30-2017 |
| Pfeiffer v. Taylor, D.O. | Iowa District Court for Webster County | LACV318680 | Gibbs & Associates, Mason, OH | 03-30-2017 |
| Bortle/Hyer v. Johns Hopkins Bayview Medical Center, Inc., et al. | Circuit Court for Baltimore City, Maryland | 24C16003241MM | Wais Vogelstein Forman & Offutt, Baltimore, MD | 03-27-2017 |
| MacIsaac v. IGS Assoc., LLC, et al. | Superior Court of New Jersey, Law Division - Bergen County | L-1264-15 | Chasan Leyner & Lamparello, Secaucus\NJ | 03-24-2017 |
| Alfaro v. Frontier Logistic Services II, Inc. | State of Illinois, Human Rights Commission | Charge No. 2013CF1357* EEOC No. 21BA30407 | Bellows & Bellows, Chicago\IL | 03-22-2017 |
| Okic v. Fullerton Surgery Center, LTD., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 14 L 008168 | Peraica & Associates, Chicago, IL | 03-21-2017 |
| Miller v. McCoy Elkhorn Coal Corporation | Commonwealth of Kentucky, Knott Circuit Court | 13-CI-00115 | Collins Law Office, Salyersville, KY | 03-17-2017 |
| Frulla v. Hyatt Corporation, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2012 L 001381 | Sinson Law Group, Chicago\IL | 03-17-2017 |
| Stoller v. Premier Capital, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 L 008969 | Kiss Law Office, Gurnee\IL | 03-15-2017 |
| Hullum v. Dr. Anthony Daniels, et al. | Circuit Court of Mississippi County, Arkansas, Chickasawba District, Civil Division | CV-2016-118 | Scholtens & Averitt, Jonesboro, AR | 03-14-2017 |
| Bokos v. Shepard, M.D., et al. | Circuit Court of Cook County, County Department - Law Division | 13 L 11680 | Motherway & Napleton, Chicago, IL | 03-13-2017 |
| Illiano, et al. v. Howard County General Hospital, Inc., et al. | Circuit Court for Howard County, Maryland | C-16-107400 | Wais Vogelstein Forman & Offutt, Baltimore, MD | 03-10-2017 |
| Tatka v. Overlook Hospital, et al. | Superior Court of New Jersey, Union County, Law Division | UNN-L-1748-13 | Lomurro Law, Freehold\NJ | 03-09-2017 |
| Cravatta v. Metra d/b/a Northeast Illinois Regional Commuter Railroad Corporation | Circuit Court of Cook County, Illinois, County Department - Law Division | 2014 L 006667 | Langdon & Emison, Lexington\MO | 03-01-2017 |
| Moskvine v. VHS Acquisition Subsidiary Number 3, Inc., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 13 L 8127 | Cogan & Power, Chicago\IL | 03-01-2017 |
| Parker v. Bill Melton Trucking, Inc., et al. | United States District Court, Northern District of Texas, Dallas Division | 3:15-cv-02528-G | Pittman Law Firm, Dallas\TX | 02-28-2017 |
| Morgan v. Ferrante, MD, et al. | Superior Court of New Jersey, Law Division, Passaic | PAS-L-741-14 | Quinn Law Office, Red Bank, NJ | 02-27-2017 |
| Jimenez v. Klabunde, et al. | Circuit Court of Cook County, Illinois, County Department, Law Division | 13 L 9280 | Dusky Law Office, Chicago, IL | 02-27-2017 |
| Pilarski, et al. v. University of Maryland Medical Center, LLC, et al. | Circuit Court for Baltimore City | 24-C-16-002677 | Wais Vogelstein Forman & Offutt, Baltimore, MD | 02-24-2017 |
| Lopez v. Vidljinovic, et al. | United States District Court, Northern District of Illinois, Eastern Division | 12 C5751 | DeRose and Associates, Hinsdale\IL | 02-23-2017 |
| McLaughlin, et al. v. Andy's Coin Launderies, LLC, et al. | Court of Common Pleas of Hamilton County, Ohio | A1600791 | Bieser Greer & Landis, Dayton, OH | 02-21-2017 |
| Brumley v. Norton Hospitals, Inc., et al. | Jefferson Circuit Court, Division Ten (10) | 14-CI-006217 | Franklin Law Group, Louisville, KY | 02-21-2017 |
| Tatka v. Overlook Hospital, et al. | Superior Court of New Jersey, Union County, Law Division | UNN-L-1748-13 | Lomurro Law, Freehold, NJ | 02-16-2017 |
| Mikus v. Porter Gwaltney, et al. | Circuit Court, Seventh Judicial Circuit, Sangamon County, Illinois | 12-L-79 | Ryan Ryan & Landa, Chicago, IL | 02-16-2017 |
| Macias/Ramirez v. Texas Taco Cabana | District Court, 45th Judical District, Bexar County, Texas | 2014-CI-08567 | Grossman Law Offices, Dallas, TX | 02-15-2017 |
| Bauscher/Robinson v. Freeport Memorial Hospital, et al. | State of Illinois, Circuit Court of the 15th Judicial Circuit, County of Stephenson | 2012 L 17 | Zinger Law Office, Chicago, IL | 02-14-2017 |
| Powers v. Young Men's Christian Association of Southwest Illinois | Circuit Court, Twentieth Judicial Circuit, St. Clair County, Illinois | 13-L-638 | Gori Julian & Associates, Edwardsville, IL | 02-14-2017 |
| Stritzel v. Advocate Health and Hospitals Corporation, et al. | Circuit Cour of Cook County, Illinois, County Department - Law Division | 14 L 009848 | McNabola Law Group, Chicago, IL | 02-13-2017 |

**LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021**

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Deckard/Darling v. Trapp, et al. | 4th Judicial District Court, Rusk County, Texas | 2016-070 | Grossman Law Offices, Dallas, TX | 02-13-2017 |
| Wallace v. Wondwossen Tegen Aragaw, et al. | Circuit Court of Cook County, Illinois, County Department- Law Division | 2013 L 011927 | Woodruff Johnson & Palermo, Aurora, IL | 02-10-2017 |
| Carandang-Patrick, et al. v. The Johns Hopkins Hospital, et al. | Circuit Court for Baltimore City | 24-C-16-001959 | Wals Vogelstein Forman & Offut, Baltimore, MD | 02-10-2017 |
| Doe v. Marten, M.D., et al. | Superior Court of the State of California for the County of San Francisco | CPF-11-511337 | Brownstone Law Group, Vista\CA | 02-09-2017 |
| Sikora v. Manor Care of Elk Grove Village, LLC., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 14 L 8881 | Malman & Associates, Chicago, IL | 02-07-2017 |

# SEG

## Smith Economics Group, Ltd.
### A Division of Corporate Financial Group
*Economics / Finance / Litigation Support*

*Stan V. Smith, Ph.D.*
*President*

March 19, 2021

Mr. Eric P. Early
Early Sullivan Wright Gizer & McRae
6420 Wilshire Blvd., 17th Floor
Los Angeles, CA  90048

Re:  Blankenship – REBUTTAL REPORT

Dear Mr. Early:

You have asked me to review the report of Dr. Laura A. Malowane, PhD ("Malowane") dated March 3, 2021 and provide comments.

Malowane does not produce any numbers of her own.  She merely comments on my report. In her report, Malowane discusses at length and provides expert opinion assessing the impact on Mr. Blankenship's preexisting reputation on his electability.  Such opinions I believe are outside the area of her expertise; in contrast to Malowane, I offer no such opinions.  I only assert what should be obvious to anyone, that being falsely labeled a felon on national television can damage one's reputation among voters and prospective business partners.  Malowane's report is further flawed for a variety of reasons, including the following:

- In Paragraph 21, Malowane states that my "theory of damages is premised on the fundamental assumption that Mr. Blankenship would have won the primary but-for the allegedly defamatory statements."  Malowane is incorrect.  Mr. Blankenship had a likelihood of winning the primary, but not a certainty.  I state that Mr. Blankenship had a "chance to increase his reputation" by winning the primary.  This is a significant error on Malowane's part.  Malowane ignores the fact that Defendants falsely calling Mr. Blankenship a "felon" damaged his reputation whether he would have won the primary or not.

- In Paragraph 24, Malowane seems to equate the subjective negative press commentary that she cites with factually, falsely labeling him as a "felon."  Understandably, Malowane fails to cite the incredible financial achievements that resulted in Massey's spectacular growth over his tenure that led to his being viewed as an exceptionally capable CEO in the energy industry.

- Malowane's error in Paragraph 25 is that she equates the new defamation of being falsely labeled a "felon" on national television in the high publicity of a Senate race with preexisting, and much older, statements in the press far more distant in the memories of voters and others weighing Mr. Blankenship's reputation.  Elsewhere, Malowane's comments are only to the effect that Mr. Blankenship was in the competitive race and

USCA4 Appeal: 22-1198    Doc: 57    Filed: 05/25/2022    Pg: 257 of 307

# SEG

was not everyone's favorite. As stated above, we never asserted that Mr. Blankenship was everyone's favorite, and would win the race. Given the devastating defamation, neither Malowane nor anyone could say that he would not have won the race.

- Malowane confuses her readers by first complaining incorrectly that we assumed Mr. Blankenship would win the primary, which assumption she goes at length to discredit over several pages, but then changes her tune and complains that we assume he wouldn't have won the general election. How can she have this both ways? Not only do we not assume he would certainly win the primary, we do opine that it is even less likely he would win the general election. In this matter, Malowane appears to be very confused and self-contradictory.

- In Paragraph 39, Malowane commits further error stating that I acknowledge Mr. Blankenship had a poor reputation going into the election. It's astonishing that she questions whether someone winning a primary would add to their reputation. Again, Malowane mistakenly asserts that I assume voter support and business demand are the same, but she is mistaken if she doesn't believe that falsely labeling Mr. Blankenship a "felon" would impact his reputation in the business world.

- In Paragraph 42, Malowane is again mistaken saying that I "do not take into account" Mr. Blankenship's specific circumstances. Malowane herself fails to take into account that Mr. Blankenship's primary run was more than 2 years after his misdemeanor conviction, and many years after some of the negative press that she discussed. She also fails to take into account that Mr. Blankenship was fully exonerated after the investigation into the UBB mine explosion. She failed to take into account that he was cleared of any criminal charges. She fails to take into account that he and Massey Energy were cleared of any liability whatsoever. It's amazing that Malowane fails to take these critical facts into account. Further, Malowane doesn't take into account, as she may not know, that Mr. Blankenship is appealing his misdemeanor conviction, and may well be fully exonerated in the near future. These facts which she ignores would be very important in any potential business relationship.

- In Paragraph 61, Malowane comments on whether there are specific opportunities for Mr. Blankenship as a CEO. The Memo dated November 10, 2020 ("Memo") details multiple companies in the coal and energy industries that Mr. Blankenship has received professional offers and indications of interest from, including but not limited to, Addington Resources Inc., FOLA Coal Company LLC, Harless Resources, Hampden Coal Company LLC, Fluor Corporation, CSX Corporation, and various other small business operations wherein Mr. Blankenship was offered equity positions. The CEO of Fluor Corporation earned total compensation of $11,826,342 in 2019, and the CEO of CSX Corporation earned total compensation of $14,993,262 in 2019.

The Memo details that Mr. Blankenship ran for the US Senate to continue his efforts on behalf of mine safety, pursue meaningful criminal justice reform, and remain a productive and avid contributor to the well-being of the country. He was keenly aware of

2

# SEG

the array of opportunities that running as a viable US Senate candidate would provide. Mr. Blankenship's testimony is that he has not sought these positions, because he doesn't "seek jobs as a person who is perceived by the public to be a felon." (Deposition, page 217).  Again, Mr. Blankenship demonstrated that he had the capacity to be seriously considered as a CEO for many companies.

The Memo further details executives comparable to Mr. Blankenship, including Kevin Crutchfield, who was the former CEO of Alpha Natural Resources Inc. (Alpha) when Massey was acquired by Alpha after Mr. Blankenship Retired.  Alpha received 20 percent more safety violations, sustained crippling financial losses, was delisted from the NYSE, and eventually filed for Chapter 11 Bankruptcy under Mr. Crutchfield's oversight, yet Mr. Crutchfield still landed a job as CEO of Compass Minerals International Inc. and earns annual compensation of $9,525,000.  Another comparable executive, Arch Resources Inc. CEO John Eaves, receives annual compensation of $9,200,000 even though Arch Resources Inc. reorganized and exited bankruptcy under Mr. Eaves' management.

- In Paragraphs 67 through 77, Malowane comments on whether Mr. Blankenship would have sought opportunities as a Strategic consultant, and whether the cost savings at Massey were fairly attributable to Mr. Blankenship.  Mr. Blankenship testified that "even today lots of coal companies would hire me even where you have so many bankruptcies in this business and so forth.  I could make a huge difference in their cost because that's what I have always focused on."  (Deposition, page 245).  Mr. Blankenship further testified that he is "confident that any coal company, any energy company, any manufacturing company would greatly benefit and I could sell my services." (Deposition, page 245-46).  He states that he could save companies "at least" $10 to $20 per ton on coal.  (Deposition, page 247).

The Memo details Mr. Blankenship's implementations regarding equipment downtime autopsies and his development of the "six key numbers" measurement list that mine managers were expected to know at each mine, which were loading time, haul time, dump time, clean tons per foot, bolt time, and change out time for the shuttle cars, which afforded more accurate budgeting and allowed Massey to assess the potential of mines being considered for acquisition.  Mr. Blankenship testified that he "came out of the food industry where they counted things in tenths of a tenth of a penny, so I applied some of that to the coal industry."  (Deposition, page 244).  The evidence shows that the cost savings at Massey were clearly attributable to Mr. Blankenship.

- Nowhere has Malowane proven that the opportunities that Mr. Blankenship has claimed were available to him were not available.  In fact, he has been on boards, worked as a CEO, and has proven his ability in the past on some of the opportunities that he claims would have been available in the future.  Malowane fails to understand that while the value of these opportunities cannot be measured with complete precision, as one might assess the income of a union bricklayer working 40 hours per week, they can be assessed to a reasonable degree of economic certainty.  Malowane may not know that time and time again courts have unanimously ruled regarding expert witness testimony on

3

# SEG

economic damages that "imprecision does not bar recovery." They have further ruled that once a harm has been established, as is certainly the case when Mr. Blankenship's reputation was harmed and damaged when he was falsely called a "felon" on national television, that the calculation of damages flowing from that harm is no longer speculative. Damages certainly resulted from that harm. Again, that they cannot be measured precisely, and that there is a degree of imprecision, does not bar recovery, and nor are they speculative, as Malowane mistakenly believes. I calculated damages to a reasonable degree of economic certainty, and that is all that is required.

- Regarding mitigation, Mr. Blankenship has not been engaged in any of the activities outlined in my report, and there is no current evidence that he will be able to do so. Thus, no mitigation has been calculated.

**CONCLUSION**

After reviewing Malowane's report, I have determined that she has not opined nor asserted that Mr. Blankenship did not suffer any damage to his reputation as result of being falsely labeled a convicted felon in the midst of a high publicity campaign for the U.S. Senate. Neither does she assert that the damage resulting from a false labeling as a convicted felon has absolutely no impact on Mr. Blankenship's future business prospects as a result of the damage to his reputation.

I have extensive background, training, and experience in evaluating defamation and the financial impact of the damages to reputation and the damages to someone's career. I have a Ph.D. in Economics, including training in labor economics. I have background, training, and experience in investment banking, where I have personally formed entrepreneurial business ventures of the type that Mr. Blankenship might be engaged in, and where I have hired people to be on boards of companies of the type that Mr. Blankenship might be engaged in. I am on the board of several such business ventures. I have evaluated defamation, and the financial damages that flow from defamation, in many dozens of cases nationwide, including those involving high profile professionals such as Mr. Blankenship. My background, training, and experience give me the qualifications and ability to do so.

**There is nothing in Malowane's report that changes my opinion in any way. Therefore, it continues to be my opinion that Mr. Blankenship did sustain damage to his business reputation as result of being falsely labeled a convicted felon in the midst of a high publicity campaign for the U.S. Senate. It also continues to be my opinion that the damages to his business reputation resulting from a false labeling him as a convicted felon did impair his future business prospects as a result of the damage to his business reputation. The extent of these financial damages is detailed in my report dated February 1, 2021.**

Sincerely,

Stan V. Smith, Ph.D.
President

4

# STATEMENT OF DON BLANKENSHIP

## THE CONSTITUTION PREVAILS

I am an American citizen whose rights to speak freely and to criticize the government are protected by the United States Constitution. Any argument to the contrary that is based on case law is therefore superseded.

Specifically, my rights as an American citizen cannot Constitutionally be lessened by the government declaring me to be a "public figure." Nor can my free speech rights be subverted based on case law under the guise of protecting Freedom of the Press. Both of these truths are especially relevant here where the major Defendants, are members of the Press.

Simply put it is farcical for the Press Defendant's to be using law which was created by the US Supreme Court in order to secure their free Press freedoms as a defense of their intentional intrusion into my free speech. This is especially true here because there is significant circumstantial evidence and some hard evidence that at least some of the media Defendant's made their defamatory and derogatory comments about me to help fulfill the desire of the United States Senate Leader, ie, to defeat my candidacy for the US Senate and sabotage a federal election.

Nonetheless, my attorneys have accepted that my threshold of proof to win this defamation claim has been increased by the New York Times versus Sullivan (New York Times case) Supreme Court decision, and by my being a "public figure." As a result, though the hurdles have been created in defiance of the Constitution, my attorneys and the Defendant attorneys have positioned their arguments in this case greatly based on the New York Times case and related case law.

My attorneys have accepted the challenge of clearing these unconstitutional high hurdles because they believe that this court will require that those hurdles be cleared. Fortunately, both my attorneys and I believe those high hurdles of proof are comfortably cleared by the facts of this case. However, I write here because I seek to make a point even if only for the sake of posterity.

The point I seek to make is that Defendants in future cases, such as this, must not be protected by any defense arguments that derive from the New York Times case or from discrimination against "public figures." Any argument that either of these two abridgements of an American's free speech rights can rightly be used to increase the burden of proof for a defamation claim is flawed and unconstitutional.

The fundamental flaw is the notion that raising the bar for a "public figure" to prove a defamation claim somehow increases robust debate about issues of public importance. As a person who has been repeatedly defamed by persons who are far better known "public figures" than I am, I can say for certain that this notion makes no sense.

4007

We only need to look at the particulars of this case to see that I was defamed by persons who are on nationwide television in prime time nearly every night. Consequently, the strength of their voices and their influence on public opinions and voters is far greater than is mine.

The question to be asked, for example, is whether anyone is going to be encouraged to become a candidate and robustly debate public issues if doing so means they can be legally defamed.   If Fox, CNN, MSNBC, and all these other Defendants, without liability, can pay and allow people to appear on their networks and say the candidate is a pedophile (unless the candidate can prove that the speakers themselves knew for sure that the candidate is not a pedophile) will that increase public debate?  The answer is obvious.

The point is that common law which strengthens the Freedom of the Press, such as the New York Times case decision did, do not run afoul of the First Amendment.  But any application of those same common law rulings to this case or future similar cases for the purpose of defending against the abridging or the destroying of the impact of an American's free speech does run afoul of the First Amendment.

Sullivan's free speech rights were not at issue in the New York Times case as are mine here.  The issue in the Times case was whether the Times did wrong when it allowed an ad to be published which was critical of law enforcement practices, ie, the government's law enforcement practices.   The two cases are not similar.

## MORE SPECIFICS AS TO WHY NEW YORK TIMES v. SULLIVAN IS EXTRANEOUS HERE

There can be no argument that defamation is not a core issue in both Blankenship versus Fox News et al, and the New York Times versus Sullivan cases. There is also no argument that the legal community immediately links all defamation cases to the New York Times case.

But there also can be no legitimate argument made that there are not huge differences in the case before this court and the New York Times case.   In fact, the two cases are disjunctive.  At a minimum, the differences in the two cases are so major as to make the Supreme Court Judges' 1964 ruling and their commentary at that time entirely inapplicable to the case before this court.

The Supreme Court rulings regarding the New York Times case define the defenses available to the Press when assailed by the government for criticizing the government, or for allowing others to publish criticisms of the government. Conversely, this case involves the rights of an American citizen to defend their individual free speech rights when defamed by the Press.

Both cases bank on the First Amendment and involve the bounds of the "Freedom of the Press." But only this case involves the question of whether Freedom of the Press entitles the Press to destroy the value of an American's free speech.

As the court is well aware, the New York Times case involved the Times publishing an ad that criticized the government. The government in that instance being Alabama law enforcement  The ad was placed by the Committee to Defend Martin Luther King and the Struggle for Freedom in the South (Committee).

The purpose of the ad was to solicit funding for Martin Luther King and the civil rights movement. The ad did not name Sullivan or any specific person. The ad exaggerated the "misbehavior" of the government but this was not surprising because it was an ad which was attempting to gain support for among other things the cause of protecting protesters from police abuses.

The public understood then and understands now that an ad which has as its purpose attracting funding for the civil rights movement may well contain exaggerations and the ad published by the Times certainly did contain exaggerations. As well, the US Supreme Court understood then and will understand now, that the Constitution via 'Freedom of the Press" protects the Press from government or government officials' reprisals. Reprisals such as defamation lawsuits by government officials stemming from media criticism of the government.

In short, the US Supreme Court recognized and confirmed that the Press has great latitude to criticize the government, or as in the case that was before the Supreme Court, to publish ads wherein others are critical of the government. All American courts should likewise confirm the right of an American citizen to defend his free speech rights against defamation by the Press.

## THE CASE DIFFERENCES ARE MAJOR

The differences between the New York Times case and the case before this court are not only numerous they are major. First, the Defendants here were not criticizing the government. Instead they were criticizing, actually defaming, a "government critic." By doing so the Defendants here were protecting the government.

Also, the Defendants here were not publishing an ad but rather they were leading the public to believe that they were telecasting news stories. News stories that the public and voters could rightfully expect complied with Defendant slogans. Slogans such as Cable "News" Network's, "The Most Trusted Name in News," or Fox "News" Network's "Most Watched-Most Trusted."

The point is that this case would be more on point with the New York Times case if the Times versus publishing the Committee ad had refused to publish the ad and had instead

called the "Committee" members who sought to place the ad lunatics, morons, or convicted felons.

More so, the New York Times case would have been even closer to on point with this case had the Times instead of publishing the ad called the protesters "persons who went to jail for manslaughter." This is true because if the Times had done so they would have been behaving more comparable to what the Defendants did here. The Times like the Defendants did here would then have been defaming "public figure" critics of the government.

In summary, this case and the New York Times case both involve the same three types of key participants. Both cases have a government official, a government critic, and a member of the Press. In the Times case, the government Official (Sullivan) sued the Press (Times) for publishing a government critic (Committee) ad. The Supreme Court sided with the Press (Times) because they were arguably complying with the First Amendment. In this case, the government critic sued the Press for destroying the value of his free speech rights by defaming him in support of a government official's stated goal of defeating the critics candidacy for a US Senate seat. Obviously, the right judicial decision is to again side with the First Amendment, which in this case and any future similar cases are to side with the Plaintiff.

### THE DEFENDANTS HERE WERE FOCUSED ON A SINGLE AMERICAN PERSON

In another major contrast with this case the Times published Committee ad did not name any specific person. The defamation in the case here was one hundred percent directed at me, the Plaintiff.

As noted above my attorneys have accepted that I am a "Public Figure" as defined by the government. But worthy of note is that my "Public Figure" status came about greatly because I have been a critic of our government for decades. The question becomes whether the government and the Press would be defaming me if I were not such a stalwart critic of the government.

Adding merit to asking what the real reason was for the Republican government officials opposing my candidacy is that there is no evidence supporting their stated reason for opposing my candidacy. Their stated reason for being so determined to defeat my primary election candidacy was that I could not win the general election. But following months of discovery not a single poll or survey of any kind has been produced which supports the Republican stated belief that I could not have won the general election.

Also, casting doubt on the motives of government officials who opposed my candidacy is that government officials have made no secret that they are concerned about my exercising my free speech rights. Over the years federal judges and federal prosecutors have said that my free speech while legal "troubles the United States" and to deal with that concern they gagged me prior to my criminal trial. Other government elected officials

have said, "don't listen to that coal guy," "Blankenship should just disappear," "Blankenship should be indicted," and "Blankenship's company deserves extra scrutiny" now that he has engaged in public policy issues. There are dozens of such government official derogatory comments about me. Government officials have even implied that I did not deserve a fair criminal trial.

## THE TIMES COMPLIED WITH THE FIRST AMENDMENT
## THE DEFENDANTS HERE DID NOT

The Times and the US Supreme Court knew that the "Committee" was attempting to fund their voice, ie, to increase the number of Americans who would hear the "Committee's" criticism of the government. The media Defendants here knew, that just like the "Committee" was doing in 1964, that I was seeking in 2018 to increase the number of Americans who would hear my voice.

But the Defendants here also knew that the government Republican leadership did not want my voice to be believed. It is not likely just a coincidence that only when government officials expressed concern that I would win the election did the Defendants then and only then come to the government's rescue. The Defendants had never before referred to me as a felon but they willingly did so in mass when it became necessary to help the government stop me from winning.

Newspaper ads are understood by Americans to include puffery for the purpose of promoting the product or idea that is being promoted. Americans understand that is what ads are for, ie sell a product or an idea. Americans do not expect that paid advertisements are totally truthful.

But Americans need and deserve truthfulness when reading or watching the news. They do not need for the "news" media to tell them that a candidate for a US Senate seat is a convicted felon who went to prison for manslaughter who is not a convicted felon and who did not go to prison for manslaughter.

## CONSTITUTIONAL CONTEXT

Americans, the US Supreme Court Judges, and this court know that the Freedom of the Press referred to in the First Amendment was never intended to free the Press from American citizens lawsuits. Particularly from lawsuits regarding defamation which destroyed the influence of an American citizen's free speech and potentially sabotaged a federal election. All of the Bill of Rights articles, including the Freedom of the Press mentioned in the First Amendment, were added to the Constitution to protect the rights of American citizens not to lessen them.

Also, the government cannot Constitutionally take away my Fourteenth Amendment guarantee to equal protection under the law by declaring me to be a "public figure" and allowing far more prominent "public figures" to legally defame me. The US Supreme Court was not attempting to deny the "Committee" their right to criticize the government

nor their effort to secure a louder voice.   Instead the Supreme Court was attempting to defend the "Committee's" right and the Times right to criticize the government in support of a civil justice movement.

What the Defendants did in this matter was exactly the opposite of what the Times did in 1964.   The Times complied with the First Amendment but the Defendants here violated it.

## ISSUES OF THE DAY

Courts are often faced with so called issues of the day. In 1964 Martin Luther King's marches and the civil rights movement were issues of the day for the Supreme Court.   Today one of the issues of the day for American courts is interference in elections. The Defendants in this case clearly interfered in a federal election.  In so doing, the Defendants became what are today called trollers.

The Defendant's owners are collectively valued at a trillion dollars today.  Their messages unlike 1964 are heard around the world.  If it is necessary to protecting the integrity of American elections these Defendants can afford the cost of the research necessary to get their facts straight, particularly about candidates for US Senate seats.  Instead they chose in 2018 to become "Trillion Dollar Trollers" and to troll against a US Senate candidate.

As trollers, the defendants should not enjoy the same defenses that the New York Times enjoyed when they complied with the First Amendment and allowed an ad to be placed in their newspaper that criticized the government.

## WE SHOULD ALL BE CONCERNED

Irregardless of the outcome of this lawsuit, we should all be concerned that the government can brand selected Americans as "public figures" and then violate these Americans Fourteenth Amendment guarantee to equal protection under the law.  As outrageous as it may sound to those who have not been falsely jailed by the government we arguably have a Sedition Act in America today.  The "public figure" law when combined with New York Times case law, and the all too frequent Brady violations arguably constitute a modern day "Sedition Act."

Consider that Matthew Lyon was arrested in 1798 for violating the Sedition Act following his criticism of government plans to enter a trade agreement with England.  Lyon later became the first and only American to win a Congressional seat while imprisoned.  Soon after Lyon's election the Sedition Act was abolished.

Somewhat similarly, I was arrested in 2014 when I criticized the government for their spreading of an obviously false narrative about the Upper Big Branch Mine explosion.  My arrest followed US Senator Joe Manchin publicly insisting that I be arrested even as he admitted he did not have the facts to prove I was guilty of anything.  As I fought back

against my false imprisonment and the government's false mine explosion narrative I was hopeful of becoming the first government detained American to win a US Senate seat. But perhaps emboldened by the New York Times case the Defendants repeatedly called me a felon. The reason they did so was obvious. The reason was even stated by a Fox commentator on election day when she said, "it will be difficult for him (me) to win given that he is a convicted felon."

## DEFENDANTS DESPERATE TO AVOID A JURY TRIAL

We should all be fearful if cases like this one are not decided by voting Jurors.

Sincerely,

s/Don Blankenship

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### CHARLESTON DIVISION

DON BLANKENSHIP,

     *Plaintiff*,

v.                                                          Case No. 2:19-cv-00236

FOX NEWS NETWORK, LLC, *et al.*,

     *Defendants*.

## DEFENDANT FOX NEWS NETWORK, LLC'S
## REPLY IN SUPPORT OF SUMMARY JUDGMENT

Elbert Lin (WVSB #12171)
David Parker (*pro hac vice*)
HUNTON ANDREWS KURTH LLP
951 E. Byrd Street
Richmond, VA 23219
804-788-8200 *office*
804-788-8218 *fax*
elin@HuntonAK.com
dparker@HuntonAK.com

J. Zak Ritchie (WVSB #11705)
Ryan McCune Donovan (WVSB #11660)
HISSAM FORMAN DONOVAN RITCHIE PLLC
P.O. Box 3983
Charleston, WV 25339
681-265-3802 *office*
304-982-8056 *fax*
zritchie@hfdrlaw.com
rdonovan@hfdrlaw.com

Shawn Patrick Regan (*pro hac vice*)
Silvia Ostrower (*pro hac vice*)
HUNTON ANDREWS KURTH LLP
200 Park Avenue
New York, NY 10166
212-309-1000 *office*
212-309-1100 *fax*
sregan@HuntonAK.com
sostrower@HuntonAK.com

*Counsel for Fox News Network, LLC*

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

ARGUMENT ............................................................................................................ 1

    I.    Blankenship fails to identify clear and convincing evidence of actual malice........ 2

        A.    Blankenship must clear the "high hurdle[]" of producing "clear and convincing evidence" of actual malice. ..................................................... 3

        B.    Blankenship concedes he has no evidence that any FNN speaker had knowledge of *actual* falsity. ........................................................................ 5

        C.    There is not clear and convincing evidence that any FNN speaker had serious doubts about the truth either. ...................................................... 5

    II.    Blankenship concedes that summary judgment is appropriate given the absence of evidence of an "intent to injure." ........................................................................ 11

    III.    Blankenship lacks clear and convincing evidence of material falsity. ................. 12

        A.    Blankenship bears the burden of producing clear and convincing evidence of material falsity. ..................................................................................... 13

        B.    Blankenship fails to produce clear and convincing evidence of material falsity. .................................................................................................... 14

    IV.    Blankenship cannot prove any "resulting injury." ............................................. 17

        A.    Blankenship cannot prove causation of any special damages. ................. 17

        B.    Blankenship cannot prove entitlement to general damages..................... 18

    V.    Blankenship cannot prove punitive damages or an invasion of privacy. ............. 19

CONCLUSION .................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................*passim*

*Bustos v. A & E Television Networks*,
    646 F.3d 762 (10th Cir. 2011) (Gorsuch, J.) ...............................*passim*

*CACI Premier Tech., Inc. v. Rhodes*,
    536 F.3d 280 (4th Cir. 2008) ........................................................4

*Church of Scientology Int'l v. Time Warner, Inc.*,
    903 F. Supp. 637 (S.D.N.Y. 1995), *aff'd sub nom.* 238 F.3d 168 (2d Cir.
    2001) .............................................................................................4

*Colorado v. New Mexico*,
    467 U.S. 310 (1984) ................................................................2, 6

*Denny v. Seaboard Lacquer, Inc.*,
    487 F.2d 485 (4th Cir. 1973) ........................................................5

*Dongguk Univ. v. Yale Univ.*,
    734 F.3d 113 (2d Cir. 2013) ........................................................10

*Fitzgerald v. Penthouse International, Ltd*,
    691 F.2d. 666 (4th Cir. 1982) ......................................................5

*Foodbuy, LLC v. Gregory Packaging, Inc.*,
    987 F.3d 102 (4th Cir. 2021) ......................................................19

*Frakes v. Crete-Carrier Corp.*,
    579 F.3d 426 (5th Cir. 2009) ........................................................9

*Glob. Relief Found., Inc. v. New York Times Co.*,
    390 F.3d 973 (7th Cir. 2004) ......................................................14

*Harte-Hanks Commc'ns v. Connaughton*,
    491 U.S. 657 (1989) ..............................................................1, 8, 10

*Hayseeds, Inc. v. State Farm Fire & Cas.*,
    352 S.E.2d 73 (W. Va. 1986) ........................................................4

*Hinerman v. Daily Gazette Co.*,
    423 S.E.2d 560 (W.Va. 1992) ................................................2, 4, 5

*Holbrook v. Harman Auto., Inc.*,
   58 F.3d 222 (6th Cir. 1995) ............................................................. 10

*Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*,
   238 F. Supp. 2d 174 (D.D.C. 2002) ................................................. 12

*Hutchinson v. Miller*,
   797 F.2d 1279 (4th Cir. 1986) ......................................................... 17

*Hutchinson v. Proxmire*,
   443 U.S. 111 (1979) ........................................................................... 3

*Kaelin v. Globe Commc'ns Corp.*,
   162 F.3d 1036 (9th Cir. 1998) ......................................................... 14

*Kahl v. Bureau of Nat'l Affs., Inc.*,
   856 F.3d 106 (D.C. Cir. 2017) (Kavanaugh, J.) ................................. 4

*Masson v. New Yorker Mag., Inc.*,
   501 U.S. 496 (1991) ......................................................................... 13

*Meade v. Parsley*,
   No. 2:09-CV-00388, 2010 WL 4909435 (S.D.W. Va. Nov. 24, 2010)
   (Copenhaver, J.) ............................................................................... 18

*Milan v. Long*,
   88 S.E. 618 (W. Va. 1916) ............................................................... 19

*Mimms v. CVS Pharmacy, Inc.*,
   889 F.3d 865 (7th Cir. 2018) ..................................................... 10, 11

*National Life Insurance Co. v. Phillips Publishing., Inc.*,
   793 F. Supp. 627 (D. Md. 1992) ........................................................ 4

*New York Times v. Sullivan*,
   376 U.S. 254 (1964) .................................................................*passim*

*Pritt v. Republican Nat'l Comm.*,
   557 S.E.2d 853 (W. Va. 2001) ......................................................... 13

*Richard H. v. Rachel B.*,
   No. 18-1004, 2019 WL 6998331 (W. Va. Dec. 20, 2019) ................ 19

*Robb v. Lincoln Publ'g (Ohio), Inc.*,
   683 N.E.2d 823 (Ohio 1996) ........................................................... 17

*Sakaria v. Trans World Airlines*,
   8 F.3d 164 (4th Cir. 1993) ............................................................... 18

*Saleeby v. Free Press, Inc.*,
    91 S.E.2d 405 (Va. 1956) ................................................................. 14

*Shelton v. Collins Career Ctr.*,
    No. 2:20-CV-00457, 2020 WL 7232319 (S.D.W. Va. Dec. 8, 2020) ................................... 12

*Soules v. Kauaians for Nukolii Campaign Comm.*,
    849 F.2d 1176 (9th Cir. 1988) ................................................................. 17

*Sprouse v. Clay Commc'n, Inc.*,
    211 S.E.2d 674 (W. Va. 1975) ................................................................. 12

*St. Surin v. Virgin Islands Daily News, Inc.*,
    21 F.3d 1309 (3d Cir. 1994) ................................................................. 4

*Taylor v. W. Virginia Dep't of Health & Hum. Res.*,
    788 S.E.2d 295 (W. Va. 2016) ................................................................. 20

*U.S. Term Limits, Inc. v. Thornton*,
    514 U.S. 779 (1995) ................................................................. 17

*United States v. Blankenship*,
    846 F.3d 663 (4th Cir. 2017) ................................................................. 15

*Zerangue v. TSP Newspapers, Inc.*,
    814 F.2d 1066 (5th Cir. 1987) ................................................................. 6, 11

**Statutes**

W. Va. Code Ann. § 55-7-29 ................................................................. 20

**Other Authorities**

W. Va. Const. art. IV, § 4 ................................................................. 17

## INTRODUCTION

Plaintiff's Opposition finally admits what has been clear all along—this is not so much a defamation lawsuit as a political grievance.  The Opposition is long on complaints about the American political system: a "self-serving . . . two-party duopoly . . . in which the party leadership determines who will join them."  Blankenship Am. Opp. to Fox News Network's Mot. for Summ. J. (ECF 924) ("Opp.") at 1.  But it is far short on the evidence necessary to survive summary judgment in a defamation suit brought by a political candidate—the context in which the First Amendment interests underlying the actual malice requirement are at their "strongest."  *Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 686 (1989).

As Fox News Network (FNN) explained in its opening brief, discovery revealed no "clandestine campaign" to defame Blankenship, and instead confirmed that the utterances at issue were common mistakes, believed by the speakers to be true at the time.  Blankenship cannot identify clear and convincing evidence to the contrary, which is why he is left decrying the "high hurdles" of *New York Times v. Sullivan*, 376 U.S. 254 (1964) as unconstitutional.  But those hurdles exist for a reason: to weed out lawsuits like this one.

Because Blankenship lacks clear and convincing evidence of actual malice, and for other independent reasons discussed below, summary judgment should be entered for FNN.

## ARGUMENT

Blankenship's Opposition confirms that summary judgment should be granted on both of the claims against FNN, as well as on his bid for punitive damages.  As to defamation, Blankenship fails to persuasively answer any of the four independent bases for judgment set forth in FNN's opening memorandum.  *First*, Blankenship's Opposition fails to identify clear and convincing evidence of actual malice.  *Second*, Blankenship does not even attempt to

respond to the lack of any evidence that the FNN speakers acted with an intent to injure him. *Third*, Blankenship does not identify clear and convincing evidence of material falsity, as is also his burden. And *fourth*, nothing in the Opposition shows that a reasonable jury could conclude that the challenged statements caused any "resulting injury."

As to punitive damages and false light invasion of privacy, Blankenship does not contest that those claims necessarily fail if his defamation claim does. In addition, Blankenship fails to rebut the independent bases on which those claims also fail.

## I. Blankenship fails to identify clear and convincing evidence of actual malice.

Blankenship acknowledges that actual malice is a "high hurdle[]," Opp. Ex. 19 at 1, and his Opposition falls well short of clearing it. To survive summary judgment, Blankenship must identify clear and convincing evidence that the individual FNN speakers, at the time they spoke, either "knew" their words were false or subjectively "entertained serious doubts as to" their accuracy. *Hinerman v. Daily Gazette Co.*, 423 S.E.2d 560, 571–72 (W.Va. 1992). The clear and convincing standard requires Plaintiff, at summary judgment, to come forth with evidence from which a reasonable jury could conclude that the "evidentiary scales" were "instantly tilted" towards him, thereby providing an "abiding conviction" that actual malice was "highly probable." *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984). Blankenship fails to show that the record includes such overwhelming evidence.

Instead of pointing to evidence, Blankenship begins by trying to diminish the actual malice requirement. When he does address it, he does not dispute that there is no evidence the FNN speakers knew that their statements were *actually* false. Rather, he relies entirely on arguing that the FNN speakers had a high degree of awareness of probable falsity or purposefully avoided the truth. But to the extent Blankenship identifies any evidence to support this theory, most of it is legally irrelevant to the question of actual malice and, in any event, sheds no light on

what the *speakers* subjectively knew, relating instead what others at FNN may have believed.

*Sullivan*, 376 U.S. at 287 (holding that actual malice must be "brought home" to the individual

speakers).  His purported evidence falls far short of indicating with "convincing clarity" that any

of *the individual speakers* had actual and serious doubts about the truth of their passing

statements.  *Anderson*, 477 U.S. at 244.

### A.    Blankenship must clear the "high hurdle[]" of producing "clear and convincing evidence" of actual malice.

As a threshold matter, Blankenship's Opposition is premised on a misstatement of law.

Unable to avoid *Sullivan*,[1] Blankenship attempts to diminish it, arguing that actual malice "does

not readily lend itself to summary disposition."  Opp. 16 (quoting *Hutchinson v. Proxmire*, 443

U.S. 111, 120, n.9 (1979)).  But the footnote dicta he quotes from *Hutchinson* was expressly

repudiated by the Supreme Court in *Anderson*, in which the Court held that all of the rigorous

requirements of the actual malice standard, including the mandate of clear and convincing

evidence, must be enforced at the summary judgment stage.  *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 252–56 (1986).  "When determining if a genuine factual issue as to actual malice

exists in a libel suit brought by a public figure, a trial judge must bear in mind the actual

quantum and quality of proof necessary to support liability under *New York Times* . . . . [and]

view the evidence presented through the prism of the substantive evidentiary burden."  *Id.* at 254.

The *Anderson* Court made clear that the dicta in *Hutchison* was "simply an acknowledgment" of

the unremarkable principle that defamation defendants do not have—"in addition to the[se]

---

[1] Blankenship's "Supplemental Statement" posits that the actual malice requirement "illegitimately expands the protection afforded to the press by the First Amendment" and should be "revisited."  Opp. 28–29.  He asserts that this requirement is merely "case law" that is "superseded" by his "right[] to speak freely and to criticize the government."  Opp. Ex. 19 at 1. But as Blankenship ultimately concedes, the legitimacy of *Sullivan* is not for this court to decide. *See id.* ("My attorneys have accepted the challenge of clearing these unconstitutional high hurdles because they believe that this court will require that those high hurdles be cleared.").

constitutional protections embodied in the substantive laws"—a special *presumption* in favor of summary judgment.  *Id.* at 256 n.7 (no "special procedural protections").

Thus, cases are legion post-*Hutchinson* and post-*Anderson* not only recognizing that these substantive protections create a "high hurdle[]" for public-figure defamation plaintiffs to survive summary judgment, as Plaintiff acknowledges, Opp. 16, but also granting summary judgment for lack of clear and convincing evidence of actual malice, *see, e.g., Hayseeds, Inc. v. State Farm Fire & Cas.*, 352 S.E.2d 73, 81 (W. Va. 1986) (noting that the question of actual malice in the defamation context is "highly susceptible to summary judgment for the defendant"); *Hinerman*, 423 S.E.2d at 572 (describing actual malice as "[t]he greatest obstacle that a public official libel plaintiff must overcome"); *St. Surin v. Virgin Islands Daily News, Inc.*, 21 F.3d 1309, 1318 (3d Cir. 1994) ("Summary judgment for the publisher is quite often appropriate because of the difficulty a public official has in showing 'actual malice.'"); *Church of Scientology Int'l v. Time Warner, Inc.*, 903 F. Supp. 637, 640 (S.D.N.Y. 1995), *aff'd sub nom*. 238 F.3d 168 (2d Cir. 2001) ("[W]ithout judicious use of summary judgment to dispose of libel suits, 'the threat of being put to the defense of a lawsuit . . . may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself.'") (citation omitted).[2]

 Indeed, the cases cited by Plaintiff, Opp. 16, undermine, rather than support, his assertion.  In *National Life Insurance Co. v. Phillips Publishing., Inc.*, 793 F. Supp. 627 (D. Md. 1992), the court *granted* summary judgment for defendant on the issue of actual malice, *id.* at

---

[2] *See also CACI Premier Tech., Inc. v. Rhodes*, 536 F.3d 280, 293 (4th Cir. 2008) ("[E]stablishing actual malice is no easy task, because the defamation plaintiff bears the burden of proof by clear and convincing evidence."); *Kahl v. Bureau of Nat'l Affs., Inc.*, 856 F.3d 106, 109 (D.C. Cir. 2017) (Kavanaugh, J.) ("To preserve First Amendment freedoms and give . . . commentators . . . the breathing room they need . . ., the Supreme Court has directed courts to expeditiously weed out unmeritorious defamation suits.").

649.  *Denny v. Seaboard Lacquer, Inc.*, 487 F.2d 485 (4th Cir. 1973), is not even a defamation

case; it involved a wrongful death claim, *id.* at 488.  And *Fitzgerald v. Penthouse International,*

*Ltd*, 691 F.2d. 666 (4th Cir. 1982), illustrates the extraordinary evidence required to withstand

summary judgment: reliance on a source known to be "suffering from persecutory delusion"

whom the author knew had made "many bold assertions" that "invite[d] skepticism," *id.* at 671.

**B.    Blankenship concedes he has no evidence that any FNN speaker had**
**knowledge of *actual* falsity.**

Plaintiff's Opposition concedes he has no evidence that any FNN speaker had subjective

knowledge that his or her words were false at the time uttered.  He does not contest FNN's

argument in its opening brief that he lacks (and admitted he lacks) any such evidence.  FNN

Mem. in Supp. of Summ. J. (ECF 891) at 9 ("Opening Br.") (collecting admissions).  Instead, his

Opposition simply asserts that the FNN speakers acted with a high degree of awareness that their

words were *likely* false—*i.e.*, "reckless disregard of the truth."  Opp. 14; *see also id.* at 18 ("Fox

purposely avoided the truth concerning Blankenship's misdemeanor conviction."); *id.* at 19

("Fox published the … statements with a high degree of awareness of probable falsity.").

**C.    There is not clear and convincing evidence that any FNN speaker had serious**
**doubts about the truth either.**

As to Blankenship's contention that the FNN speakers believed there was a high

probability their words were false or entertained serious doubts as to accuracy, the Opposition

comes nowhere close to identifying evidence from which a reasonable jury could find as much

with "convincing clarity."  *Anderson*, 477 U.S. at 244; *Hinerman*, 423 S.E.2d at 571–72.

**1.    Blankenship does not contest the substantial evidence showing that**
**the FNN speakers believed their words to be true when spoken.**

To begin, Blankenship does not dispute any of the substantial evidence that the FNN

speakers made an unknowing mistake, the sum of which "instantly tilt[s] the evidentiary scales"

towards FNN, *not* Blankenship. *Colorado*, 467 U.S. at 316. He does not dispute that the FNN

speakers he deposed (Napolitano and Cavuto) believed he had been convicted of more than just a

misdemeanor because of his year in prison (which, as Napolitano testified, is "unheard of" for

misdemeanants), after the Upper Big Branch mine exploded and killed 29 people. Opening Br.

15–16. Nor does he dispute that these speakers were genuinely surprised to learn their words

were inaccurate. *Id.* at 14–15. *See also* Opening Br. Ex. 2 (Pl. Dep. Vol. 2 Tr.) 247:1–11 ("I

thought [Napolitano] was pretty convincing that he made a mistake"); *Zerangue v. TSP

Newspapers, Inc.*, 814 F.2d 1066, 1071 (5th Cir. 1987) ("The fact that . . . Sims had to ask [the

plaintiff] what was inaccurate about the story when [the plaintiff] called to protest tends to

indicate that Sims did not know of the inaccuracy."). Finally, Blankenship concedes that many

other commentators misspoke about his conviction for the same reasons, including well before

any FNN speaker did so. Opening Br. 16–17.

And although Blankenship accuses FNN of being connected to Republicans like Mitch

McConnell, Opp. 2–5, 9–10, 18–19, he does not contest FNN's argument that he has no evidence

that the party or anyone else instructed the FNN speakers to mischaracterize his conviction,

Opening Br. 18 n.6 (collecting quotations). Indeed, while Plaintiff's Complaint asserted a

conspiracy claim against three defendants—Kevin McLaughlin, the National Republican

Senatorial Committee ("NRSC"), and 35th PAC, *see* Am. Compl. (ECF 14) ¶ 233—his

conspiracy claims have now been eviscerated and voluntarily abandoned. As noted in FNN's

opening memorandum, Blankenship dropped all claims against McLaughlin and NRSC after he

admitted under oath that he had no factual basis to support his claims, and McLaughlin

threatened Rule 11 sanctions. Opening Br. 17–18. As to the remaining "conspiracy defendant,"

35th PAC, Plaintiff has never argued that FNN or any of its speakers had any connection with

35th PAC, did not take a single deposition of 35th PAC, and has since conceded summary

judgment should be granted for 35th PAC on his conspiracy claims. *See* ECF 893 at 11–13, 15–

17 (identifying the conspiracy claims as Counts Two and Four) *and* ECF 916 at 4–5 (opposing

35th PAC's motion for summary judgment only as to "Counts One and Three," *i.e.*, the

substantive "defamation and false light" claims). Thus, there is no conspiracy claim in this case.

> **2.** **The little evidence that Blankenship identifies falls well short of tipping the evidentiary scales with "convincing clarity."**

Much of Blankenship's argument on actual malice, spanning all of four pages, points to

no evidence whatsoever. *See* Opp. 18–21. In the section arguing that FNN speakers acted "with

a high degree of awareness of . . . probable falsity," there is not a single record citation. *Id*. 19–

20.

The thin evidence that Blankenship does identify at best supports an inference of mere

negligence. But of course that is "constitutionally insufficient to show the recklessness that is

required for a finding of actual malice." *Sullivan*, 376 U.S. at 288. For example, Blankenship

argues that the FNN speakers "turned a deaf ear to [his] explicit remarks about his misdemeanor

conviction during the Fox debate." Opp. 18. But the fact that a media organization covered

previously accurate statements is not evidence of actual malice, *unless there is proof that the*

*speakers themselves knew of those accurate statements*. *See also* MTD Opin. (ECF 398) at 26

(explaining that fact that company previously published accurate descriptions of conviction does

not suffice and, instead, plaintiff must "allege specific facts that these individual [speakers]

previously reported accurate information about the plaintiff's conviction"). As the Supreme

Court held in *Sullivan*, "The mere presence of [prior accurate] stories in the files does not, of

course, establish that the Times 'knew' the [challenged content] was false . . . ." 376 U.S. at 287.

And here, there is no evidence that any of the speakers were involved in the debate or knew what

Blankenship said there regarding his conviction.  At best, Blankenship's statements at the debate

support a finding of "failure to investigate before publishing," which plainly "is not sufficient."

*Harte-Hanks*, 491 U.S. at 688.

The same is true of Blankenship's contentions about Cavuto.  Blankenship argues that

Cavuto "disregarded" information that could have alerted him to the fact that Blankenship was

only a misdemeanant—namely that (a) in April 2018, Peter Doocy once used the word

misdemeanor on Cavuto's show when referring to Plaintiff's conviction, Opp. 18–19, and (b) a

packet of information Cavuto received about the West Virginia Senate race refers in passing to

Plaintiff's conviction as a misdemeanor, *id.* at 18.

Blankenship does not claim that Cavuto *actually knew* that the crime for which he was

convicted is classified only as a misdemeanor, and wisely so.  Cavuto testified specifically that

he believed what he said to be true at the time he said it—that he only later learned Blankenship

"was not a convicted felon," and "had I known that, by all means I would have said that."

Opening Br. 16 (quoting Ex. 14 (Cavuto Tr.)).  The Supreme Court has expressly held that a

defamation plaintiff cannot withstand summary judgment by "merely asserting that the jury

might . . . disbelieve the defendant's denial . . . of legal malice" without "concrete evidence" to

support that disbelief.  *Anderson*, 477 U.S. at 256.  And there is no such evidence here.

Rather, the only evidence supports that Cavuto was, indeed, genuinely surprised to learn

of his mistake.  Opening Br. 15.  When Blankenship later corrected him on the air, Cavuto

responded with disbelief.  *See also id.* Ex. 14 (Cavuto Tr.) 127:13–22 ("So what are you if

you've served time in jail?"); *id.* at 128:5–16 ("[T]hat would be a little more than a misdemeanor

right?"); *id.* at 136:2–9 ("So just serving a year in jail doesn't make you a convicted felon?").

And Blankenship does not present any evidence that Cavuto was mindful, at the time Cavuto

spoke, of Doocy's previous passing reference to "misdemeanor."  In fact, the only evidence on

that issue is to the contrary.  Opening Br. Ex. 14 (Cavuto Tr.) 104:14–25 ("I did not draw the

distinction with the misdemeanor.  I now, in retrospect, since this lawsuit was filed [understand]

. . . .  What stood out to me was the time he'd served in the federal prison, the safety issues

related to these 29 dead miners.  And what that was called, a misdemeanor, a felony, was lost on

me.").  Likewise with respect to the packet, Cavuto's uncontradicted testimony is that he recalled

learning only the "big bullet-point headlines" summarizing Blankenship's candidacy, *id.* at

87:15–22—which stated only that Blankenship was "[c]onvicted of conspiring to willfully

violate safety standards and served one year in prison," *id.* Ex. 30 at FoxNews__006715—and

not the single reference to Blankenship's "misdemeanor" several pages later, *id*. at

FoxNews__006717.  In short, there is no "concrete evidence" from which a reasonable jury

could disbelieve Cavuto's testimony that he thought Blankenship was a "felon" at the time of his

statement, *Anderson*, 477 U.S. at 256, which is why Blankenship does not contend as much and

has conceded there is no evidence that any FNN speaker had knowledge of actual falsity, *see*

*supra* Section I.B.

     Instead, Blankenship's argument is that Cavuto *should have* paid closer attention to this

information.  But that is again an argument of negligence, not actual malice.  Just as in *Sullivan*,

Cavuto's failure to check his statement against information "in [his] own files" supports "at most

a finding of negligence."  376 U.S. at 287–88.  There is no evidence of a "deliberate attempt to

avoid a suspected truth."  *Frakes v. Crete-Carrier Corp.*, 579 F.3d 426, 431 (5th Cir. 2009).

     Blankenship's remaining evidence relates solely to things he believes reflect poorly on

other individuals at FNN, none of which is relevant to the claims.  He contends that certain

individuals involved with other programs at FNN declined Napolitano's requests for airtime to

immediately correct his statement. Opp. 18. But as this Court already recognized, "[a]ctual malice cannot be inferred from a failure to retract or correct a statement once the publisher learns that the statement is false." MTD Opin. (ECF 398) at 26 (citing *Sullivan*, 376 U.S. at 286).

Nor does he fare any better by arguing the fact that FNN "does not have [a] written ethics policy or offer ethics training . . . *may* constitute an extreme departure from professional publishing standards." Opp. 20 (emphasis added). For one, Blankenship cites no evidence or authority for the proposition that the absence of written ethics policies or formal ethics training constitutes an extreme departure from a professional standard, and counsel is aware of none. Furthermore, while the Supreme Court has held that a speaker's "departure from accepted standards" in the course of an investigation may support a showing that a speaker had "serious doubts" that his or her statement was likely false, *Harte-Hanks*, 491 U.S. at 667–68, the general absence of written policies at a company does not so indicate. Again, Blankenship cites no evidence or authority for his proposition, and counsel is aware of none.

In all events, "the state of mind required for actual malice" must "be brought home to" the speaker. MTD Opin. (ECF 398) at 26 (quoting *Sullivan*, 376 U.S. at 287) (emphasis added).[3] The alleged attitude towards the truth of other people at FNN, whether those who responded to Napolitano's producer or those who made decisions about FNN's written policies, cannot be imputed to the individual speakers. *Holbrook*, 58 F.3d at 225 (refusing to "impute" knowledge

---

[3] *See also Holbrook v. Harman Auto., Inc.*, 58 F.3d 222, 225 (6th Cir. 1995) ("[W]here, as here, the defendant is an institution rather than an individual, the question is whether *the individual* responsible for the statement's publication acted with the requisite culpable state of mind.") (emphasis added) (citing *Sullivan*); *Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 123 (2d Cir. 2013) ("[T]he plaintiff must identify the individual responsible for publication of a statement, and it is that individual the plaintiff must prove acted with actual malice." (citing *Sullivan*)); *Mimms v. CVS Pharmacy, Inc.*, 889 F.3d 865, 868 (7th Cir. 2018) ("It is the state of mind of the speaker that is relevant." (citing *Sullivan*)).

from "subordinates" of the individual responsible for the statement); *Mimms*, 889 F.3d at 868

(refusing to "imput[e] corporate knowledge to the speakers").

*          *          *

In sum, Blankenship has done little more than confirm the absence of clear and

convincing evidence of actual malice on the part of any FNN speaker. That is perhaps best

illustrated by Blankenship's touting of *Zerangue*, 814 F.2d 1066, as "particularly instructive,"

*see* Opp. to CNN (ECF 906) at 20; Opp. to WaPo (ECF 910) at 19–20; Opp. to MSNBC (ECF

911) at 13–1, since the case actually supports FNN. The defendant there published an initial

article mischaracterizing the plaintiff's criminal conviction and, after retracting this statement,

published a second article that repeated the error. *Zerangue*, 814 F.2d at 1068–69. The court

affirmed summary judgment on the first article, because while the author of that article "may

have been negligent," there was not clear and convincing evidence that he acted with actual

malice. *Id.* at 1071. But the court reversed summary judgment on the second article, though it

acknowledged "the question [was] close," on the ground that that the second author had

"attended a staff meeting *at which the error was reviewed and discussed*" and a showing that the

second article "*was edited" by someone who "knew of the . . . retraction*." *Id.* at 1072 (emphases

added). Blankenship has mustered nothing remotely similar to that evidence regarding any of

the FNN speakers. If even the second erroneous article in *Zerangue* was a "close" call, summary

judgment is clearly warranted here.

## II.    Blankenship concedes that summary judgment is appropriate given the absence of evidence of an "intent to injure."

Blankenship does not respond to FNN's argument that summary judgment is appropriate

because there is no evidence of an intent by any FNN speaker to injure him. *Compare* Opening

Br. 19 *with* Opp. 14–21. He offers no answer to the law or any evidence that the FNN speakers

-11-
4029

intended to harm him.  Accordingly, that argument is conceded, and summary judgment can and should be granted as to defamation on that basis alone.  *See, e.g., Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) ("[W]hen a plaintiff files an opposition . . . addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."); *Shelton v. Collins Career Ctr.*, No. 2:20-CV-00457, 2020 WL 7232319, at *11 (S.D.W. Va. Dec. 8, 2020) ("Any argument not responded to is deemed conceded and waived.").

In responding to other defendants, Blankenship argues that a showing of "actual malice" would necessarily also prove an intent to injure, but that is not correct.  *See, e.g.*, Opp. to CNN (ECF 906) at 24–25.  "Actual malice" and intent to injure are two distinct elements of a public-figure plaintiff's defamation claim under West Virginia law.  Syl. Pt. 1, *Sprouse v. Clay Commc'n, Inc.*, 211 S.E.2d 674, 679 (W. Va. 1975) ("A candidate for political office . . . [must] prove that:  . . . . (3) the statements were published with knowledge . . . that they were false . . . *and*, (4) the publisher intended to injure the plaintiff . . . .") (emphasis added).  *Sprouse* explicitly held that plaintiffs like Blankenship must prove actual malice and "*further* [] prove that [the statements] were published with a deliberate intent to injure."  *Id.* at 692 (emphasis added).  Blankenship's argument that *Sprouse* subsumes "intent to injure" within the actual malice requirement is simply wrong.  So even if Blankenship had clear and convincing evidence of actual malice, which he does not, he must still prove the absence of an intent to injure by that same evidentiary standard.

## III.   Blankenship lacks clear and convincing evidence of material falsity.

The third independent ground for summary judgment as to defamation is lack of material falsity.  To be actionable, the challenged statements must be more than just literally false—the error must produce a "different effect on the mind of the reader from what the pleaded truth

would have produced," *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991), and cause "reasonable people to think 'significantly less favorably' about the plaintiff than they would if they knew the truth," *Bustos v. A & E Television Networks*, 646 F.3d 762, 765 (10th Cir. 2011) (Gorsuch, J.).  To survive summary judgment, Blankenship must produce clear and convincing evidence of this materially different effect.  He has not.

### A.   Blankenship bears the burden of producing clear and convincing evidence of material falsity.

As with actual malice, Blankenship seeks at the outset to manipulate the applicable legal standard, but this time in two ways.  Neither withstands scrutiny.

*First*, it is not correct that "substantial truth" is a "defense" on which defendants bear the burden of proof.  *See, e.g.,* Opp. to CNN (ECF 906) at 4.  Under West Virginia law, material falsity is an element of Blankenship's affirmative case, so it is Blankenship's burden to prove it by clear and convincing evidence.  Opening Br. 20; Syl. pt. 12, *Pritt v. Republican Nat'l Comm.*, 557 S.E.2d 853, 856 (W. Va. 2001) ("In order for a public official or a candidate for public office to recover in a libel action, he/she must prove by clear and convincing evidence that the stated or implied facts were false."); *id.* at 861–62 ("A statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced.") (citation omitted).  In addition, as Blankenship does not dispute, the First Amendment also requires him to bear this heightened burden, since material falsity is a component of actual malice, which plaintiffs must prove by clear and convincing evidence. Opening Br. 20 n.9 (citing *Hoeper*, 571 U.S. at 246).  *See also Bustos*, 646 F.3d at 764 ("Where truth was once strictly a defense, now the plaintiff must shoulder the burden in his case-in-chief of proving . . . falsity.").  That other jurisdictions have referred in passing to substantial truth as a "defense" does not lessen Blankenship's burden here.  Opp. to CNN (ECF 906) at 4 (citing

*Saleeby v. Free Press, Inc.*, 91 S.E.2d 405, 407 (Va. 1956) and *Glob. Relief Found., Inc. v. New York Times Co.*, 390 F.3d 973, 987 (7th Cir. 2004)).

*Second*, Blankenship argues that material falsity is "generally a jury question," which is not correct either.  Opp. 23–24 (citing *Bustos*, 646 F.3d. at 767 and *Kaelin v. Globe Commc'ns Corp.*, 162 F.3d 1036, 1040 (9th Cir. 1998)).  While *Bustos* did state that material falsity "often requires a jury," it then explained that "like nearly any other element of a tort, this one is amenable to resolution at summary judgment when, viewing the facts in the light most favorable to the non-movant, the answer is beyond cavil."  *Id.*  Indeed, *Bustos* affirmed summary judgment on this issue.  *Id.  Kaelin* is equally unhelpful to Blankenship, as it did not address the question of material falsity at all, but rather how to interpret statements that are potentially ambiguous—which is not at issue here.  162 F.3d at 1040 (rejecting the defendant's reading of the challenged statement, because "[s]o long as the publication is reasonably susceptible of a defamatory meaning, a factual question for the jury exists").

**B.**      **Blankenship fails to produce clear and convincing evidence of material falsity.**

Blankenship's effort to manipulate the applicable legal standard reflects his inability to meet it.  The evidence adduced in discovery shows that the "sting" of the challenged statements was not materially worse than the literal truth: that 29 miners died under Blankenship's watch, after which he was convicted of what he acknowledges was a "very serious offense" that "sounds horrible"—conspiring to willfully violate mine safety and health standards—and punished to a degree typical of a convicted felon.  Opening Br. 21; Opp. Ex. 1 (Pl. Dep. Vol. 1) 340:8–21.  Blankenship's Opposition has no compelling response.

Blankenship cannot avoid the sting of the literal truth.  He argues it is "outrageous" to say that "29 miners died under Blankenship's watch," Opp. 21, but that is literally true.  Blankenship

does not, and cannot, dispute that he was "chairman and chief executive officer of Massey Energy Company," which "owned and operated the Upper Big Branch mine" at the time of the explosion.  *United States v. Blankenship*, 846 F.3d 663, 666 (4th Cir. 2017) ("*Blankenship II*"). Nor can he dispute that "four widely-reported investigative reports . . . concluded that the UBB disaster was preventable and was caused by Mr. Blankenship and his former employer, Massey." Opening Br. Ex. 4 (Mot. to Transfer) at 2.  *See also Blankenship II*, 846 F.3d at 666 ("This case arises from a tragic accident on April 5, 2010 at the Upper Big Branch coal mine in Montcoal, West Virginia, which caused the death of 29 miners.").

Blankenship tries to sweep the rest of the literal truth under the rug, arguing that the undisputed facts in FNN's opening memorandum are all "subterfuge" because they were not actually known to FNN's commentators or viewers. Opp. 21.  But that is a pure red herring, as it grossly misstates the test for material falsity, which asks whether the challenged statements would "cause *reasonable* people to think 'significantly less favorably' about [him] than they would *if* they knew the literal truth."  *Bustos*, 646 F.3d at 765 (emphases added).  In other words, the material falsity element does not depend on whether speakers or listeners knew the literal truth—the point is that Plaintiff has presented no evidence that, *if* the FNN commentators had stated the literal truth, the impact on a reasonable listener would have been materially different.[4]

Blankenship then turns to this Court's motion-to-dismiss ruling, but that is no help either. Opp. 22–23. As FNN explained: (a) Blankenship now faces a higher evidentiary burden at summary judgment, and (b) discovery has revealed ample evidence of the literal truth such that it is indisputable that the reasonable listener who knew that truth would *not* care whether

---

[4] Further, Blankenship cannot identify anyone who heard the challenged statements, believed them to be true, and declined to vote for him or otherwise changed his or her opinion of him in any way.  Opening Br. Ex. 22 (Plf. Suppl. Resp. to FNN Interrog.) Resp. Nos. 8–10.

Blankenship's conviction was technically a misdemeanor.  Opening Br. 20–23.  Blankenship

simply ignores these changed circumstances.

Blankenship also claims that mislabeling a misdemeanor as a felony is *always* materially

false, regardless of how badly the truth about that misdemeanor stings.  *See* Opp. 22 ("The

distinction between a misdemeanor and a felony is unmistakable.").  But Blankenship ignores

decisions that defy such a per se rule.  Opening Br. 23–25 (collecting cases).  And he fails to

acknowledge Judge Brinkema's "serious doubts," in Blankenship's now-dismissed companion

case, "that the average juror would understand there to be any significant difference between

those two terms," rendering the case unlikely to "survive summary judgment."  Opening Br. 24–

25 (quoting Opening Br. Ex. 43 (EDVA MTD Tr.) 6:18–20, 12:23–13:3).  FNN does not believe

that this Court's prior ruling imposed Blankenship's erroneous per se rule, but if it did, FNN

respectfully urges this Court to reconsider.  Mot. for Recon. (ECF 416).

Lastly, Blankenship is wrong that the challenged statements are materially false because

they are defamatory per se.  Opp. 23.  As discussed below, the challenged statements were not

defamatory "per se."  *See* Section IV.B, *infra*.  But even if they were, defamatory meaning and

material falsity are two different inquiries:  A statement can be defamatory per se because it is

harmful to the plaintiff on its face, but not be materially false because it is no *more* harmful than

the literal truth.  As illustrated by *Bustos*:

> We don't doubt that the public thinks worse of Aryan Brotherhood prison gang
> members than standard-issue prisoners.  But that only means A & E's statement—
> its indication that Mr. Bustos is a member of the Aryan Brotherhood—is
> defamatory or hurtful to his public reputation.  We must still compare A & E's
> statement against the truth of the matter.

646 F.3d at 767.[5]

---

[5] In opposing summary judgment for another defendant on material falsity grounds,
Blankenship suggests that the "felon" statements stung worse than the literal truth because, were

IV.     **Blankenship cannot prove any "resulting injury."**

The fourth independent ground for summary judgment on Blankenship's defamation

claim is his inability to prove any "resulting injury."  His Opposition confirms that he cannot

prove entitlement to either special or presumed (general) damages.  His claim therefore fails as a

matter of law for this reason, too.

A.     **Blankenship cannot prove causation of any special damages.**

Blankenship claims the challenged statements caused him two types of special damages,

but neither are recoverable for both legal and evidentiary reasons.  *First*, Blankenship is flatly

barred from recovering damages for his loss in the primary election.  Opening Br. 26.  Such

damages might be compensable in Ohio, Opp. 25 (citing *Robb v. Lincoln Publ'g (Ohio), Inc.*,

683 N.E.2d 823, 841 (Ohio 1996)), but in the Fourth Circuit they are clearly not, *Hutchinson v.

Miller*, 797 F.2d 1279, 1280 (4th Cir. 1986) ("[F]ederal courts are not available for awards of

damages to defeated candidates."); *Soules v. Kauaians for Nukolii Campaign Comm.,* 849 F.2d

1176, 1182 (9th Cir. 1988) ("[T]he Fourth Circuit adopted a blanket rule precluding post-election

damage actions brought by defeated candidates.").  And even setting aside this "blanket rule,"

Blankenship could not prove causation of his election loss in *this* case given the other obvious

causal factors that Blankenship himself acknowledges, such as President Trump imploring West

Virginians not to vote for Blankenship.  Opening Br. 26–27.  Blankenship's Opposition does not

even address those factors, much less point to any evidence that would allow a reasonable jury to

distinguish among them.  Opp. 25.

---

he a felon, he could not be elected to the United States Senate.  Opp. to CNN (ECF 906) at 4.
But that is not the law—West Virginia does not bar felons from holding *federal* office.  W. Va.
Const. art. IV, § 4 (prohibiting felons from serving in "any state, county or municipal office").
Nor could it.  *See U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 783 (1995) (holding that
States cannot "adopt their own qualifications for congressional service").

*Second*, Blankenship does not (and cannot) point to any actual evidence that the challenged statements caused him to lose any business opportunities.  Instead, he just asserts it is "axiomatic" that they did.  Opp. 25.  That sort of "raw speculation" cannot create a jury question. *Sakaria v. Trans World Airlines*, 8 F.3d 164, 172–73 (4th Cir. 1993).  In addition, Blankenship offers no answer to his prior admissions that he lost opportunities because of "the explosion and conviction" and not "the slander."  Opening Br. 27 (quoting *id.* Ex. 45).  *See also id.* Ex. 46 (admitting that the only "offers" or "inquires" he received were "pre-explosion"); *id.* Ex. 1 (Pl. Dep. Vol. 1) 155:5–56:21 (admitting that he did not pursue employment in the eight years between the explosion and the challenged statements).

Nor can Blankenship simply parrot his expert's conclusory assertion that the speakers' words caused him to lose business opportunities.  Opp. 24.  He must identify actual evidence. Because he does not, *see id.* (asserting that his expert's opinions were "formulated from materials and information routinely relied upon by economics experts"), that conclusion is nothing more than "indeterminate expert testimony. . . that is based solely on possibility," which "is not sufficient to allow a reasonable juror to find causation."  *Meade v. Parsley*, No. 2:09-CV-00388, 2010 WL 4909435, at *7 (S.D.W. Va. Nov. 24, 2010) (Copenhaver, J.).[6]

## B.    Blankenship cannot prove entitlement to general damages.

Blankenship's Opposition also shows he cannot prove entitlement to general damages. He first asserts that statements imputing a crime are defamatory per se.  Opp. 25.  But he offers no response to FNN's argument that this principle applies only to statements that impute a crime to someone who is not a convicted criminal, which, of course, Blankenship is.  Opening Br. 28.

Even if the challenged statements were defamatory per se, Blankenship could not recover

---

[6] Blankenship no longer claims he can recover expenses incurred *before* the challenged statements.  *See* Opp. 24–25.  Nor could he.  Opening Br. 27–28.

general damages under the West Virginia Supreme Court of Appeals' decision in *Richard H. v. Rachel B.*, No. 18-1004, 2019 WL 6998331, at *3 (W. Va. Dec. 20, 2019). General damages are not automatic in cases of defamation per se—they must be "the natural and probable consequences of the words so spoken or written." *Id.* at *3 (quoting Syl. Pt. 2, *Milan v. Long*, 88 S.E. 618 (W. Va. 1916)). And general damages are not "the natural and probable consequences" of statements that are false only as "a matter of degree." *Id.* Blankenship baldly asserts that the statements here were not merely false by "degree," Opp. 25–26, but he does not, and cannot, explain how they were false by any greater degree than the statements in *Richard H.*, which imputed two additional felonies (including murder), 2019 WL 6998331, at *1. Where the challenged statements merely mischaracterize the plaintiff's undisputed criminal history, just as in *Richard H.*, general damages are not available.

Further, Blankenship does not contest that he has waived entitlement to nominal damages. As previously explained, Blankenship's complaint does not mention nominal damages. Opening Br. 29 n.16. And his request for "[s]uch further relief as the Court may deem just and proper," Am. Compl. (ECF 14) p. 59, is not sufficient, *Foodbuy, LLC v. Gregory Packaging, Inc.*, 987 F.3d 102, 116 (4th Cir. 2021) (holding that "a boilerplate request for 'other and further relief as the Court deems just and proper' . . . does not preserve a nominal damages claim") (citation omitted). His Opposition rightly does not claim otherwise.

**V.    Blankenship cannot prove punitive damages or an invasion of privacy.**

Blankenship's Opposition also fails to save his claims for punitive damages and invasion of privacy. As an initial matter, their survival depends on his defamation claim, Opening Br. 29, which Blankenship does not dispute, *see* Opp. 27–28. And because Blankenship's defamation claim fails, so too must these.

But Blankenship's claims for punitive damages and invasion of privacy also fail for

independent reasons that he has failed to persuasively rebut.  For punitive damages, Blankenship

faces a heightened evidentiary standard on causation—*i.e.*, that a reasonable jury must be able to

find that the challenged statement caused him harm not just by a preponderance, but by clear and

convincing evidence.  Opening Br. 29–30; W. Va. Code Ann. § 55-7-29 (requiring plaintiff to

"*establish[] by clear and convincing evidence that the damages suffered were the result of the*

*conduct that was carried out by the defendant* with actual malice toward the plaintiff") (emphasis

added).  Blankenship does not dispute this higher burden of proof on causation, or explain how

he satisfies it even assuming he could show causation by a preponderance, Opp. 27, which he

does not, *see supra* Section IV.

Nor does Blankenship dispute that his invasion of privacy claim requires him to prove

that FNN "gave publicity" to the matter at issue, an additional burden beyond what is required

for his defamation claim.  As explained in FNN's opening brief, Blankenship's conviction was

already widely publicized.  Opening Br. 30.  He counters that the matter at issue was not his

criminal conviction, but the mischaracterization of that conviction as a felony.  Opp. 27.  But that

argument addresses a different element of the false-light test—whether the publication "places

the [plaintiff] before the public in a false light."  *Taylor v. W. Virginia Dep't of Health & Hum.*

*Res.,* 788 S.E.2d 295, 315 (W. Va. 2016).  And regardless, that mischaracterization too was

"widely publicized" before any of the challenged FNN statements.  Opening Br. Ex. 7 (Rog

Resp. to NRSC) pp. 20–21 (showing seven prior "felon" statements).

## **CONCLUSION**

For the foregoing reasons, and those stated in FNN's opening memorandum, FNN's

motion for summary judgment should be granted.

Respectfully submitted,

/s/ J. Zak Ritchie
J. Zak Ritchie (WVSB #11705)
Ryan McCune Donovan (WVSB #11660)
HISSAM FORMAN DONOVAN RITCHIE PLLC
P.O. Box 3983
Charleston, WV 25339
681-265-3802 *office*
304-982-8056 *fax*
zritchie@hfdrlaw.com
rdonovan@hfdrlaw.com

Elbert Lin (WVSB #12171)
David Parker (*pro hac vice*)
HUNTON ANDREWS KURTH LLP
951 E. Byrd Street
Richmond, VA 23219
804-788-8200 *office*
804-788-8218 *fax*
elin@HuntonAK.com
dparker@HuntonAK.com

Shawn Patrick Regan (*pro hac vice*)
Silvia Ostrower (*pro hac vice*)
HUNTON ANDREWS KURTH LLP
200 Park Avenue
New York, NY 10166
212-309-1000 *office*
212-309-1100 *fax*
sregan@HuntonAK.com
sostrower@HuntonAK.com

*Counsel for Fox News Network LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of June 2021, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system, which will send a notification of such

filing to all CM/ECF participants and will cause to send to other parties by U.S. Mail as follows:

Jim Heath
2716 Saratoga Avenue
Lake Havasu City, AZ 86406


_____/s/ Zak Ritchie_____
Zak Ritchie

121636.0000001 EMF_US 85507619v35

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON DIVISION

DON BLANKENSHIP,

     *Plaintiff*

v.                               Case No. 2:19-cv-00236

FOX NEWS NETWORK, LLC, et al.,

     *Defendants.*

---

### DEFENDANT FOX NEWS NETWORK, LLC'S RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO FILE A SURREPLY MEMORANDUM IN OPPOSITION TO SUMMARY JUDGMENT

Defendant Fox News Network, LLC ("FNN") respectfully submits this response to Plaintiff Don Blankenship's ("Plaintiff") motion for leave to file a surreply memorandum of law in opposition to Fox News's motion for summary judgment (ECF 987) ("Motion").

### ARGUMENT

For the reasons described below, and in declarations attached hereto as Exhibits A, B, and C, the Court should deny Plaintiff's Motion. Alternatively, if the Court were to grant Plaintiff's Motion and allow Plaintiff's surreply at this time, FNN respectfully requests leave to file the proposed surrebuttal memorandum of law (attached hereto as Exhibit D) to address Plaintiff's arguments. *See Moore v. SmitHahn Co., Inc.*, No. 3:13-CV-151, 2014 WL 12605547, at *1 (N.D.W. Va. Oct. 24, 2014) (granting leave for parties to file surreply and surrebuttal memoranda).

While Plaintiff's Motion for Leave asserts that the recent document production "contained an inculpatory email that is highly relevant to [Plaintiff's] conspiracy claim … and to the issue of actual malice," Motion ¶ 12, as explained in the attached declarations and in FNN's [Proposed]

Surrebuttal, Plaintiff misapprehends the email exchange.  *See* Ex. A (Decl. of K. Rupert Murdoch) ¶¶ 2-4; Ex. B (Decl. of Jay Wallace) ¶¶ 3-7; Ex. C (Decl. of Suzanne Scott) ¶¶ 3-6.

The email does not show any effort "to defame" Plaintiff, cast him in a "false" light or to defeat his candidacy "with misinformation," as Plaintiff asserts.  *See* ECF 987-1 ([Proposed] Surreply) at 2.  It does not even refer (let alone does it suggest anyone else refer) to Plaintiff as a "felon" or to his crime as a "felony" or "manslaughter."  *See id*. at Ex. 1.  Moreover, the evidence reflects that Mr. Murdoch's email was an observation about a political race, not a direction or instruction.  Neither of the recipients—Jay Wallace or Suzanne Scott—forwarded or otherwise transmitted any part of the exchange to another person.  *See* Wallace Decl. ¶ 6; Scott Decl. ¶ 6.  And neither Sean Hannity nor Laura Ingraham, the only two FNN individuals referenced in the email, even mentioned Plaintiff on their programs during the period between Mr. Murdoch's email and the close of primary election.  Mr. Murdoch's observation was never communicated in any way to any of the speakers or others involved with the programs on which Plaintiff alleges he was defamed.  *See* Murdoch Decl. ¶¶ 2-3; Wallace Decl. ¶ 6; Scott Decl. ¶ 6.  Thus, the record evidence remains clear that those who are alleged to have defamed Plaintiff never received any communication, directly or indirectly, of the nature Plaintiff asserts.  *See* ECF 890-13 (Napolitano Tr.) 208:2-211:18, 212:22-213:12; ECF 890-39 (Hadden Tr.) 81:16-85:7; ECF 890-40 (Levine Tr.) 113:14-115:3; ECF 890-42 (Stirewalt Tr.) 153:14-155:25; *see also* ECF 890-41 (Rove Tr.) 121:19-125:11.  And the record remains uncontroverted that the speakers alleged to have defamed Plaintiff on FNN programs all believed their words to be true when uttered.  *See* ECF 891 (FNN Mem. in Supp. of Mot. for Summ. J.) at 13-19; ECF 940 (FNN Reply Br.) at 5-11.

As such, Plaintiff cannot meet the evidentiary standard necessary to withstand summary judgment.  *See* ECF 398 (Mar. 31, 2020 MTD Order) at 26 ("'[T]he state of mind required for

actual malice [must] be brought home to the persons … having responsibility for the publication of the [statement].'") (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 287 (1964)).

In addition, Plaintiff filed his Motion prematurely.  Since September 1st, Plaintiff, FNN, and non-party Fox Corporation,  have been and are still engaged in ongoing negotiations regarding additional discovery that Plaintiff requested following FNN's August 26, 2021 supplemental document production.  Had Plaintiff completed those discussions and the subsequent discovery, he would have learned the context of the email exchange, which shows that the email exchange does not support Plaintiff's arguments in opposition to FNN's motion for summary judgment.

Because Plaintiff filed his motion prematurely, it would be more appropriate, less redundant, and best serve judicial economy for the Court to deny Plaintiff's Motion, hold adjudication of FNN's summary judgment motion in abeyance, and order that the parties negotiate and submit for court approval a proposed agreed schedule for the following: (i) a date by which Plaintiff and FNN shall complete any further discovery, including an interim date by which the parties shall present to the Court any unresolved discovery disputes,[1] (ii) a date (following completion of supplemental discovery) by which Plaintiff shall then promptly file a single surreply, and (iii) a date thereafter by which FNN shall promptly file a single surrebuttal.

---

[1] For example, Plaintiff's Motion for Leave suggests that FNN was obligated to produce documents of its parent corporation, non-party Fox Corporation (and its predecessor 21CF). Motion at n.1.  But the Magistrate Judge explained, and expressly warned Plaintiff, that materials from Fox Corporation would be "outside the scope of my order anyhow."  ECF 969 (Tr. of July 7, 2021 Mot. Hr'g) at 37.  Despite being aware for months that FNN does not control materials of its parent corporation, and the Magistrate Judge's warning, Plaintiff never served a non-party subpoena to obtain such materials.  Nonetheless, in an effort to complete any necessary discovery so this case may proceed to summary judgment, as well as to avoid third-party motion practice, counsel for FNN and separate counsel for Fox Corporation have been engaged in a meet-and-confer with Plaintiff to agree upon a scope and schedule for any additional discovery.  We expect to be able to resolve those issues and present to the Court the proposed schedule described above within 10 business days.

## **CONCLUSION**

The Court should deny the Motion as premature. In the alterative, the Court should grant

FNN leave to file a surrebuttal memorandum of law.

Respectfully submitted,

/s/ J. Zak Ritchie
J. Zak Ritchie (WVSB #11705)
Ryan McCune Donovan (WVSB #11660)
HISSAM FORMAN DONOVAN RITCHIE PLLC
P.O. Box 3983
Charleston, WV 25339
681-265-3802 *office*
304-982-8056 *fax*
zritchie@hfdrlaw.com
rdonovan@hfdrlaw.com

Elbert Lin (WVSB #12171)
David Parker (*pro hac vice*)
HUNTON ANDREWS KURTH LLP
951 E. Byrd Street
Richmond, VA 23219
804-788-8200 *office*
804-788-8218 *fax*
elin@HuntonAK.com
dparker@HuntonAK.com

Shawn Patrick Regan (*pro hac vice*)
Silvia Ostrower (*pro hac vice*)
HUNTON ANDREWS KURTH LLP
200 Park Avenue
New York, NY 10166
212-309-1000 *office*
212-309-1100 *fax*
sregan@HuntonAK.com
sostrower@HuntonAK.com

*Counsel for Fox News Network LLC*

### CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of September 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all CM/ECF participants and will cause to send to other parties by U.S. Mail as follows:

Jim Heath
2716 Saratoga Avenue
Lake Havasu City, AZ 86406

/s/ J. Zak Ritchie
J. Zak Ritchie (WVSB #11705)

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

DON BLANKENSHIP,

    *Plaintiff,*

v.                              Case No. 2:19-cv-00236

FOX NEWS NETWORK, LLC, *et al.*,

    *Defendants.*

**DECLARATION OF K. RUPERT MURDOCH**

1.     My name is Keith Rupert Murdoch. I am Chairman of Fox Corporation, and make this declaration based on personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently to the matters discussed in this Declaration.

2.     Attached hereto as Exhibits 1 and 2 are, respectively, a May 6, 2018 email, from John Ellis to me, and an email of the same date from me to Jay Wallace and Suzanne Scott. Although I do not specifically recall either email as they were transmitted more than three years ago, I do not doubt that I received Exhibit 1 and sent Exhibit 2, as each reflects the email address I then used.

    a.     As to Exhibit 1, I do not recall either responding to it, whether by email or another form of communication, or forwarding the email or communicating its contents to anyone.

    b.     As to Exhibit 2, the email reflects my practice at the time of communicating with Mr. Wallace and Ms. Scott about certain news and policy items contained in media reports. I have identified the email as Exhibit 2a and 2b, to show the email as I sent it (Exhibit 2a), and as embedded in an email Mr. Wallace sent me the following day (Exhibit 2b). Apart from what appears in Exhibit 2b, I have no recollection of anyone responding to my email, whether by email or any other form of communication.

3.     To the best of my recollection, prior to this litigation, I did not communicate with anyone at Fox News Network, LLC, or Fox Corporation about Exhibits 1 or 2 (including 2a and 2b), and apart from the exhibits themselves, I did not communicate about Don Blankenship with anyone at Fox News Network, LLC. Nor, to the best of my recollection, did I communicate with any public official (including former President Donald Trump and Senator Mitch McConnell) or their staff.

4.     At no time did I ever instruct anyone to refer to Mr. Blankenship as a "felon" or someone who was convicted of a "felony." Nor, to the best of my recollection, did I ever personally refer to Mr. Blankenship as a "felon" or someone who was convicted of a "felony."

I declare under penalty of perjury that the foregoing is true and correct.

Executed: _____

9-15-21

Keith Rupert Murdoch

# EXHIBIT  1

Message

| | |
|---|---|
| **From**: | John Ellis [jellis41@gmail.com] |
| **Sent**: | 5/6/2018 5:55:52 AM |
| **To**: | Murdoch, Rupert [crc@21cf.com]; Sweeney, Clare [csweeney@21cf.com] |
| **Subject**: | Blankenship surging on eve of West Virginia Senate primary |

Blankenship surging on eve of West Virginia Senate primary

He calls the Majority Leader "cocaine Mitch." And he's a convicted felon!  And he is, in fact, surging in the GOP primary polling.

https://www.politico.com/story/2018/05/05/blankenship-polls-west-virginia-senate-primary-570752

# EXHIBIT  2a

Message

| | |
|---|---|
| **From**: | Murdoch, Rupert [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=DD1AC40C95B646E8B7559FB323E48D96-MURDOCH, RU] |
| **Sent**: | 5/6/2018 9:04:55 PM |
| **To**: | Scott, Suzanne ( FoxNews ) [suzanne.scott@foxnews.com] |
| **CC**: | Wallace, Jay ( FoxNews ) [jay.wallace@foxnews.com] |
| **Subject**: | West Virginia |

```
Both Trump and McConnell appealing for help to beat unelectable former mine owner who served time.
Anything during day helpful but Sean and Laura dumping on him hard might save the day.

Sent from my iPhone
```

Case 2:19-cv-00236   Document 990-1   Filed 09/15/21   Page 7 of 9 PageID #: 17395

# EXHIBIT 2b

Message

| | |
|---|---|
| **From**: | Wallace, Jay [jay.wallace@FOXNEWS.COM] |
| **Sent**: | 5/7/2018 7:12:54 AM |
| **To**: | Murdoch, Rupert [crc@21cf.com] |
| **CC**: | Scott, Suzanne ( FoxNews ) [suzanne.scott@foxnews.com] |
| **Subject**: | Re: West Virginia |

After a tweet free weekend, he's back to tee up WV...

**Donald J. Trump** Verified account @realDonaldTrump 3m3 minutes ago
More
To the great people of West Virginia we have, together, a really great chance to keep making a big difference. Problem is, Don Blankenship, currently running for Senate, can't win the General Election in your State...No way! Remember Alabama. Vote Rep. Jenkins or A.G. Morrisey!

On May 6, 2018, at 9:05 PM, Murdoch, Rupert <crc@21cf.com> wrote:

> Both Trump and McConnell appealing for help to beat unelectable former mine owner who served time.
> Anything during day helpful but Sean and Laura dumping on him hard might save the day.
>
> Sent from my iPhone
> This message and its attachments may contain legally privileged or confidential information. It is intended solely for the named addressee. If you are not the addressee indicated in this message (or responsible for delivery of the message to the addressee), you may not copy or deliver this message or its attachments to anyone. Rather, you should permanently delete this message and its attachments and kindly notify the sender by reply e-mail. Any content of this message and its attachments that does not relate to the official business of Twenty-First Century Fox, Inc. or its subsidiaries must be taken not to have been sent or endorsed by any of them. No representation is made that this email or its attachments are without defect.

Case 2:19-cv-00236   Document 990-1   Filed 08/15/21   Page 6 of 6 PageID #: 17361