UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

Case No. 22-1198 (L)

(2:20-cv-00278)

_____

DON BLANKENSHIP

Plaintiff-Appellant

v.

NBCUNIVERSAL, LLC; CNBC, LLC

Defendants-Appellees

and

DOES 1-50, inclusive

Defendant

_____

Case No. 22-1207

(2:19-cv-00236)

_____

DON BLANKENSHIP

Plaintiff-Appellant

v.

FOX NEWS NETWORK, LLC; CABLE NEWS NETWORK, INC.; MSNBC
CABLE LLC; 35TH INC.; WP COMPANY LLC, d/b/a The Washington Post;
DOES 1-50, inclusive; MEDIAITE, LLC; FISCALNOTE, INC., d/b/a Roll Call;
NEWS AND GUTS, LLC; THE CHARLESTON GAZETTE-MAIL; AMERICAN

676474.1

BROADCASTING COMPANIES, INC.; TAMAR AUBER; GRIFFIN CONNOLLY; ELI LEHRER

      Defendants-Appellees

and

DOES 1-50, inclusive

      Defendant

_____

Appeal from the United States District Court
for the Southern District of West Virginia at Charleston

_____

**JOINT APPENDIX**

**VOLUME XV of XXI – PAGES 4055 to 4352**

_____

676474.1

| | **DOCUMENT DESCRIPTION** | **DATE** | **ECF NO.** | **VOLUME** | **PAGE** |
|---|---|---|---|---|---|
| 299. | Defendant Fox News Network, LLC's Response to Plaintiff's Motions for Leave to File a Surreply Memorandum in Opposition to Summary Judgment – Exhibit B: Declaration of Jay Wallace in Support of Fox News Network, LLC's Motion for Summary Judgment | 09/15/2021 | 990-2 | XV | 4055 |
| 300. | Defendant Fox News Network, LLC's Response to Plaintiff's Motions for Leave to File a Surreply Memorandum in Opposition to Summary Judgment – Exhibit C: Declaration of Suzanne Scott in Support of Fox News Network, LLC's Motion for Summary Judgment | 09/15/2021 | 990-3 | XV | 4061 |
| 301. | Defendant Fox News Network, LLC's Response to Plaintiff's Motions for Leave to File a Surreply Memorandum in Opposition to Summary Judgment – Exhibit D: Defendant Fox News Network, LLC's [Proposed] Surrebuttal | 09/15/2021 | 990-4 | XV | 4066 |

| | DOCUMENT DESCRIPTION | DATE | ECF NO. | VOLUME | PAGE |
|---|---|---|---|---|---|
| | in Support of Summary Judgment | | | | |
| 302. | Plaintiff Don Blankenship's Surreply Memorandum in Opposition to Defendant Fox News Network LLC's Motion for Summary Judgment | 12/03/2021 | 1055 | XV | 4078 |
| 303. | Plaintiff Don Blankenship's Surreply Memorandum in Opposition to Defendant Fox News Network LLC's Motion for Summary Judgment – Exhibit 1: Excerpts from Deposition Transcript of Jay Wallace taken on November 16, 2021 | 12/03/2021 | 1055-1 | XV | 4103 |
| 304. | Plaintiff Don Blankenship's Surreply Memorandum in Opposition to Defendant Fox News Network LLC's Motion for Summary Judgment – Exhibit 2: Excerpts from Deposition Transcript of Antonia Ferrier taken on November 19, 2021 | 12/03/2021 | 1055-2 | XV | 4129 |
| 305. | Plaintiff Don Blankenship's Surreply Memorandum in Opposition to Defendant Fox News Network | 12/03/2021 | 1055-3 | XV | 4152 |

| | DOCUMENT DESCRIPTION | DATE | ECF NO. | VOLUME | PAGE |
|---|---|---|---|---|---|
| | LLC's Motion for Summary Judgment – Exhibit 3: Excerpts from Deposition Transcript of Martha MacCallum taken on November 15, 2021 | | | | |
| 306. | Plaintiff Don Blankenship's Surreply Memorandum in Opposition to Defendant Fox News Network LLC's Motion for Summary Judgment – Exhibit 4: Excerpts from Deposition Transcript of K. Rupert Murdoch taken on November 18, 2021 | 12/03/2021 | 1055-4 | XV | 4169 |
| 307. | Plaintiff Don Blankenship's Surreply Memorandum in Opposition to Defendant Fox News Network LLC's Motion for Summary Judgment – Exhibit 5: Excerpts from Deposition Transcript of Karl Rove taken on April 9, 2021 | 12/03/2021 | 1055-5 | XV | 4199 |
| 308. | Plaintiff Don Blankenship's Surreply Memorandum in Opposition to Defendant Fox News Network LLC's Motion for Summary Judgment – | 12/03/2021 | 1055-6 | XV | 4218 |

| | DOCUMENT DESCRIPTION | DATE | ECF NO. | VOLUME | PAGE |
|---|---|---|---|---|---|
| | Exhibit 6: Excerpts from Deposition Transcript of Neil Cavuto taken on April 7, 2021 | | | | |
| 309. | Plaintiff Don Blankenship's Surreply Memorandum in Opposition to Defendant Fox News Network LLC's Motion for Summary Judgment – Exhibit 7: Excerpts from Deposition Transcript of Alan Komissaroff taken on March 30, 2021 | 12/03/2021 | 1055-7 | XV | 4241 |
| 310. | Defendant Fox News Network, LLC's Surrebuttal In Support of Summary Judgment | 12/10/2021 | 1059 | XV | 4257 |
| 311. | Defendant Fox News Network, LLC's Surrebuttal In Support of Summary Judgment – Exhibit A: Article "Blankenship surging on eve of West Virginia Senate primary" written by Alex Isenstadt dated May 5, 2018 | 12/10/2021 | 1059-1 | XV | 4276 |
| 312. | Defendant Fox News Network, LLC's Surrebuttal In Support of Summary Judgment – Exhibit B: Excerpts from Deposition | 12/10/2021 | 1059-2 | XV | 4282 |

| | DOCUMENT DESCRIPTION | DATE | ECF NO. | VOLUME | PAGE |
|---|---|---|---|---|---|
| | Transcript of K. Rupert Murdoch taken on November 18, 2021 (Volume I) | | | | |
| 313. | Defendant Fox News Network, LLC's Surrebuttal In Support of Summary Judgment – Exhibit C: Excerpts from Deposition Transcript of Jay Wallace taken on November 16, 2021 | 12/10/2021 | 1059-3 | XV | 4286 |
| 314. | Defendant Fox News Network, LLC's Surrebuttal In Support of Summary Judgment – Exhibit D: Excerpts from Deposition Transcript of Gary Villapiano taken on November 9, 2021 | 12/10/2021 | 1059-4 | XV | 4294 |
| 315. | Defendant Fox News Network, LLC's Surrebuttal In Support of Summary Judgment – Exhibit E: Excerpts from Deposition Transcript of Martha MacCallum taken on November 15, 2021 | 12/10/2021 | 1059-5 | XV | 4302 |

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

DON BLANKENSHIP,

         *Plaintiff,*

v.                                     Case No. 2:19-cv-00236

FOX NEWS NETWORK, LLC, *et al.*,

         *Defendants.*

## DECLARATION OF JAY WALLACE IN SUPPORT OF
## FOX NEWS NETWORK, LLC'S MOTION FOR SUMMARY JUDGMENT

    1.     My name is Jay Wallace. I make this declaration based on personal, firsthand

knowledge, and if called and sworn as a witness, I could and would testify competently to the

matters discussed in this Declaration.

    2.     I am the President and Executive Editor of Fox News Network, LLC ("FNN").

    3.     I am aware that, on May 6-7, 2018, I engaged in an email exchange with Rupert

Murdoch, as shown on Exhibit 1 hereto. That exchange began in the evening on May 6, 2018,

when I received from Mr. Murdoch an email that contained the following message:

> Both Trump and McConnell appealing for help to beat unelectable former mine
> owner who served time.
> Anything during day helpful but Sean and Laura dumping on him hard might save
> the day.

    4.     I did not understand this email as an instruction or request for me, Ms. Scott or

anyone else to take any action. Rather, I understood Mr. Murdoch's email simply to be sharing an

observation.

    5.     Consistent with this, I did not respond in a manner as one would to a request, such

as to convey that I had taken or would take some action. Instead, my reply, which I sent the next

day, on May 7, 2018, simply observed, to Mr. Murdoch and Suzanne Scott, the fact that President

Trump's political opposition to Mr. Blankenship had been further manifested in a Tweet the

President had issued. I wrote that:

> After a tweet free weekend, he's back to tee up WV...
>
> **Donald J. Trump** Verified account @realDonaldTrump 3m3 minutes ago . . .
>
> To the great people of West Virginia we have, together, a really great chance to keep making a big difference. Problem is, Don Blankenship, currently running for Senate, can't win the General Election in your State...No way! Remember Alabama. Vote Rep. Jenkins or A.G. Morrisey!

6.     Aside from my response to Mr. Murdoch, copying Ms. Scott, I did not forward or

otherwise transmit any part of the email exchange to anyone. After my receipt of Mr. Murdoch's

email and through the conclusion of the West Virginia Senate Republican Primary vote on May 8,

I do not recall any communications about Mr. Blankenship (or any subject in Mr. Murdoch's

email) with Mr. Murdoch or with any of the speakers, producers, or others involved with any

program(s) on which Plaintiff alleges he was defamed. This includes, of course, that I did not have

any communications with any of those persons concerning the nature of Don Blankenship's

conviction or about referring to him as a felon or his conviction as a felony, misdemeanor, or

manslaughter.

7.     In sum, my email with Mr. Murdoch reflects two people exchanging observations

about a political race. It does not show a request to take action with respect to that race, nor did I

take any action to defeat Mr. Blankenship's candidacy, let alone to suggest anyone refer to him as

a felon or his conviction as a felony. I understand that the testimony of other FNN personnel and

commentators deposed in this case similarly reflects that none received any instruction or

suggestion from me or anyone else to criticize Plaintiff at all, much less mischaracterize his

conviction as a felony.

I declare under penalty of perjury that the foregoing is true and correct.

Executed: __9/15/21__

Jay Wallace

# EXHIBIT 1

| Message | |
| --- | --- |
| **From:** | Wallace, Jay [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP |
| | (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=AB5524D684614BC885C4E9CF42F465DC-WALLACE, JA] |
| **Sent:** | 5/7/2018 11:12:54 AM |
| **To:** | Murdoch, Rupert ( 21CF ) [/o=ExchangeLabs/ou=Exchange Administrative Group |
| | (FYDIBOHF23SPDLT)/cn=Recipients/cn=685ab4b56a2640eaa0b8d51f5b7dd3ac-Murdoch, Ru] |
| **CC:** | Scott, Suzanne [/o=ExchangeLabs/ou=Exchange Administrative Group |
| | (FYDIBOHF23SPDLT)/cn=Recipients/cn=daa07fe596e7464cbf3d2223d20f99c2-Scott, Suza] |
| **Subject:** | Re: West Virginia |

After a tweet free weekend, he's back to tee up WV...

**Donald J. Trump**Verified account @realDonaldTrump 3m3 minutes ago
More

To the great people of West Virginia we have, together, a really great chance to keep making a big difference. Problem is, Don Blankenship, currently running for Senate, can't win the General Election in your State...No way! Remember Alabama. Vote Rep. Jenkins or A.G. Morrisey!

On May 6, 2018, at 9:05 PM, Murdoch, Rupert <crc@21cf.com> wrote:

> Both Trump and McConnell appealing for help to beat unelectable former mine owner who served time.
> Anything during day helpful but Sean and Laura dumping on him hard might save the day.
>
> Sent from my iPhone
> This message and its attachments may contain legally privileged or confidential information. It is intended solely for the named addressee. If you are not the addressee indicated in this message (or responsible for delivery of the message to the addressee), you may not copy or deliver this message or its attachments to anyone. Rather, you should permanently delete this message and its attachments and kindly notify the sender by reply e-mail. Any content of this message and its attachments that does not relate to the official business of Twenty-First Century Fox, Inc. or its subsidiaries must be taken not to have been sent or endorsed by any of them. No representation is made that this email or its attachments are without defect.

FoxNews_016696

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

DON BLANKENSHIP,

    *Plaintiff,*

v.

                              Case No. 2:19-cv-00236

FOX NEWS NETWORK, LLC, *et al.*,

    *Defendants.*

## DECLARATION OF SUZANNE SCOTT IN SUPPORT OF
## FOX NEWS NETWORK, LLC'S MOTION FOR SUMMARY JUDGMENT

1.    My name is Suzanne Scott. I make this declaration based on personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently to the matters discussed in this Declaration.

2.    I am currently the Chief Executive Officer of Fox News Network, LLC ("FNN").

3.    I am aware that on May 6-7, 2018, my colleague Jay Wallace and Rupert Murdoch exchanged an email communication on which I was copied, as shown on Exhibit 1 hereto. I understand that exchange began in the evening on May 6, 2018, when Mr. Wallace and I received from Mr. Murdoch an email that contained the following message:

> Both Trump and McConnell appealing for help to beat unelectable former mine owner who served time.
> Anything during day helpful but Sean and Laura dumping on him hard might save the day.

4.    And I understand that the next day, on May 7, 2018, Mr. Wallace responded to Mr. Murdoch, with a copy to me, observing:

1

After a tweet free weekend, he's back to tee up WV...

**Donald J. Trump** Verified account @realDonaldTrump 3m3 minutes ago ...

To the great people of West Virginia we have, together, a really great chance to keep making a big difference. Problem is, Don Blankenship, currently running for Senate, can't win the General Election in your State...No way! Remember Alabama. Vote Rep. Jenkins or A.G. Morrisey!

5.     I do not, and did not, understand Mr. Murdoch's email as an instruction or request for me, Mr. Wallace or anyone else to take any action. I understand Mr. Murdoch's email simply to be sharing an observation. Hence, I did not respond in a manner typical for a request or instruction and, in fact, I believe I did not respond at all.

6.     After receiving Mr. Murdoch's email, I did not forward or otherwise transmit any part of the email exchange to anyone.  Through the conclusion of the West Virginia Senate Republican Primary vote on May 8, I did not communicate about Mr. Blankenship (or any subject in Mr. Murdoch's email) with Mr. Murdoch or with any of the speakers, producers or others involved with any program(s) on which Plaintiff alleges he was defamed.  This means, of course, that I did not have any communications with any of those persons concerning the nature of Don Blankenship's conviction, whether referring to him as a felon or his conviction as a felony, misdemeanor, or manslaughter.

7.     I understand that the testimony of other FNN personnel and commentators deposed in this case similarly reflects that none received any instruction or suggestion from me or anyone else to criticize Plaintiff at all, much less mischaracterize his conviction as a felony.

I declare under penalty of perjury that the foregoing is true and correct.

Executed:   9/15/2021

Suzanne Scott

2

# EXHIBIT 1

| Message | |
| --- | --- |
| **From:** | Wallace, Jay [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP |
| | (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=AB5524D684614BC885C4E9CF42F465DC-WALLACE, JA] |
| **Sent:** | 5/7/2018 11:12:54 AM |
| **To:** | Murdoch, Rupert ( 21CF ) [/o=ExchangeLabs/ou=Exchange Administrative Group |
| | (FYDIBOHF23SPDLT)/cn=Recipients/cn=685ab4b56a2640eaa0b8d51f5b7dd3ac-Murdoch, Ru] |
| **CC:** | Scott, Suzanne [/o=ExchangeLabs/ou=Exchange Administrative Group |
| | (FYDIBOHF23SPDLT)/cn=Recipients/cn=daa07fe596e7464cbf3d2223d20f99c2-Scott, Suza] |
| **Subject:** | Re: West Virginia |

After a tweet free weekend, he's back to tee up WV...

**Donald J. Trump**Verified account @realDonaldTrump 3m3 minutes ago
More
To the great people of West Virginia we have, together, a really great chance to keep making a big difference. Problem is, Don Blankenship, currently running for Senate, can't win the General Election in your State...No way! Remember Alabama. Vote Rep. Jenkins or A.G. Morrisey!

On May 6, 2018, at 9:05 PM, Murdoch, Rupert <crc@21cf.com> wrote:

Both Trump and McConnell appealing for help to beat unelectable former mine owner who served time.
Anything during day helpful but Sean and Laura dumping on him hard might save the day.

Sent from my iPhone
This message and its attachments may contain legally privileged or confidential information. It is intended solely for the named addressee. If you are not the addressee indicated in this message (or responsible for delivery of the message to the addressee), you may not copy or deliver this message or its attachments to anyone. Rather, you should permanently delete this message and its attachments and kindly notify the sender by reply e-mail. Any content of this message and its attachments that does not relate to the official business of Twenty-First Century Fox, Inc. or its subsidiaries must be taken not to have been sent or endorsed by any of them. No representation is made that this email or its attachments are without defect.

FoxNews_016696

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

DON BLANKENSHIP,

     *Plaintiff*

v.                                   Case No. 2:19-cv-00236

FOX NEWS NETWORK, LLC, et al.,

     *Defendants.*

---

**DEFENDANT FOX NEWS NETWORK, LLC'S [PROPOSED] SURREBUTTAL IN
SUPPORT OF SUMMARY JUDGMENT**

---

Fox News Network, LLC ("FNN") respectfully submits this [Proposed] Surrebuttal in response to Plaintiff's [Proposed] Surreply (ECF 987-1) ("Surreply") with respect to FNN's Motion for Summary Judgment.

## **INTRODUCTION**

The entirety of Plaintiff's filing rests on a false premise and erroneous reading of an innocuous email. The crux of Plaintiff's argument is that one email exchange included in FNN's recent supplemental document production is a "smoking gun" that "unveils" a "conspiracy between [FNN] and the Republican Party establishment *to defame* Mr. Blankenship and substantiates that [FNN] defamed [Plaintiff]." Surreply at 4 (emphasis added).

The email exchange shows nothing of the sort.

First, the email exchange does not show, or in any way suggest, an effort to "defame" Plaintiff or to defeat his candidacy "with misinformation," as Plaintiff asserts. *See* Surreply at 2; *see also id.* at Ex. 1. The email exchange does not even refer (or suggest anyone else refer) to Plaintiff as a "felon" or to his crime as a "felony" or "manslaughter." *See id.* at Ex. 1. Plaintiff's

entire case against FNN is premised on the fact that certain FNN speakers referred to him as a "felon" or his crime as a "felony" or "manslaughter," and he now points to a "smoking gun" allegedly proving a conspiracy to defame or defeat him with misinformation. But that purported "smoking gun" makes no mention of any of those words and contains no other "misinformation" about Plaintiff or his conviction. Rather, that email refers to Mr. Blankenship in terms indisputably accurate: as one "who served time." *See id.*

Second, while the email refers to the fact that "Trump and McConnell" were appealing for help to defeat Blankenship, it does *not* show that either had appealed *to Mr. Murdoch* for anything; it merely shows that Mr. Murdoch *was aware* that they were appealing broadly for help to defeat Plaintiff. In fact, as other discovery demonstrates, shortly before emailing Mr. Wallace and Ms. Scott, Mr. Murdoch had received by email an article published one day earlier, on May 5, 2018, in *Politico,* which highlighted a May 3rd tweet by Donald Trump, Jr. "asking 'the people of West Virginia to make a wise decision and reject Blankenship.'" *See* FNN Resp. to Pl.'s Mot. for Leave to File Surreply, at Ex. A ("Murdoch Decl.") ¶ 2 and accompanying Ex. 1. That article further detailed that a PAC aligned with Senator McConnell (who Blankenship previously had "label[ed] … 'Cocaine Mitch'") had launched a "$1.3 million … ad campaign targeting the former prisoner … telling West Virginians, 'Don't vote Don Blankenship.'" *Id.* This context is well known to Plaintiff, of course: Plaintiff deposed the author of that very article, separately has sued the junior Mr. Trump in this Court for his tweets, and sought to depose Senator McConnell in another case based in part on that article (which deposition the court there denied).

Third, all of the evidence surrounding this email exchange indicates that Mr. Murdoch was merely sharing observations with Mr. Wallace and Ms. Scott, not giving them instructions. That is borne out by Mr. Wallace's only response, which does not acknowledge a request or direction,

but simply shares a subsequent, related news item and observation.  There also is no evidence that any aspect of Mr. Murdoch's message was ever forwarded or otherwise transmitted to anyone by Mr. Wallace or Ms. Scott; nor is there any evidence that Mr. Murdoch's observation was otherwise communicated to any of the speakers or others involved with the programs on which Plaintiff alleges he was defamed.  *See* Murdoch Decl.¶¶ 2-3; FNN Resp. to Mot. for Leave to File Surreply, at Ex. B ("Wallace Decl.") ¶¶ 6-7; *id.* at Ex. C ("Scott Decl.") ¶ 6.  To the contrary, the record evidence remains clear that those who are alleged to have defamed Plaintiff never received any communication, directly or indirectly, of the nature Plaintiff asserts.  *See* ECF 890-13 (Napolitano Tr.) 208:2-211:18, 212:22-213:12; ECF 890-39 (Hadden Tr.) 81:16-85:7; ECF 890-40 (Levine Tr.) 113:14-115:3; ECF 890-42 (Stirewalt Tr.) 153:14-155:25; *see also* ECF 890-41 (Rove Tr.) 121:19-125:11.  And the record remains uncontroverted that the speakers alleged to have defamed Plaintiff on FNN programs all believed their words to be true when uttered.  *See* ECF 891 (FNN Mem. in Supp. of Mot. for Summ. J.) at 13-19; ECF 940 (FNN Reply) at 5-11.

For these reasons, Plaintiff still cannot meet the evidentiary burden necessary to withstand summary judgment.  ECF 398 (Mar. 31, 2020 MTD Order) at 26 ("'[T]he state of mind required for actual malice [must] be brought home to the persons … having responsibility for the publication of the [statement].'") (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 287 (1964)).

## SUPPLEMENTAL FACTS

On May 6, 2018 Rupert Murdoch received an email from Mr. John Ellis, linking to an article published the previous day, May 5, 2018, in *Politico,* which highlighted a May 3rd tweet by Donald Trump, Jr. "asking 'the people of West Virginia to make a wise decision and reject

Blankenship.'" Murdoch Decl. at Ex. 1.[1]  The article also detailed that a PAC aligned with Senator McConnell had launched a "$1.3 million … ad campaign targeting the former prisoner … telling West Virginians, 'Don't vote Don Blankenship.'"  *Id.*  And it described that "Blankenship ha[d] responded in kind, launching a slash-and-burn campaign targeting McConnell," who Blankenship previously had "label[ed] …'Cocaine Mitch.'"  *Id.*  The article described that Blankenship's "scorching attacks have veered into deeply personal, even racially charged territory" with respect to Senator McConnell's Taiwan-born wife, and explained that "[n]ational Republicans have sought to prevent Blankenship from winning the nomination."  *Id.*

Shortly thereafter, also on May 6, 2018, Mr. Murdoch emailed Jay Wallace and Suzanne Scott saying:

> Both Trump and McConnell appealing for help to beat unelectable former mine owner who served time.
> Anything during day helpful but Sean and Laura dumping on him hard might save the day.

Surreply at Ex. 1.

The following day, May 7, 2018, Mr. Wallace replied to Mr. Murdoch (copying Ms. Scott), sharing a related observation regarding President Trump:

> After a tweet free weekend, he's back to tee up WV…
>
> **Donald J. Trump** Verified account @realDonaldTrump 3m3 minutes ago …
>
> To the great people of West Virginia we have, together, a really great chance to keep making a big difference. Problem is, Don Blankenship, currently running for Senate, can't win the General Election in your State…No way! Remember Alabama. Vote Rep. Jenkins or A.G. Morrisey!

*Id.*

---

[1] The *Politico* article is available at: https://www.politico.com/story/2018/05/05/blankenship-polls-west-virginia-senate-primary-570752.

# ARGUMENT

**I.    Plaintiff still has not shown "clear and convincing evidence" of actual malice.**

Plaintiff's assertion that "the partisanship and animus against Mr. Blankenship" in the email exchange "bolster" the "evidence of actual malice presented in Mr. Blankenship's opposition," Surreply at 2, is wrong on the facts and on the law.

On his defamation claim, Plaintiff must show "clear and convincing evidence" that *the speaker* acted with "actual malice"—that is, that *the speaker* either had a "subjective appreciation" that the statement was false or subjectively "entertained serious doubts as to the truth of his [statement]."  Mar. 31, 2020 MTD Order at 17, 23-24, 26 (citations omitted).  Crucially, "the state of mind required for actual malice [must] be brought home to the persons … having responsibility for the publication of the [statement]."  *Id.* at 26 (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 287 (1964)); *see also* ECF 985 (Aug. 20, 2021 Order) at 21 (same).  The issue of actual malice in the defamation context is "highly susceptible to summary judgment for the defendant." *Hayseeds, Inc. v. State Farm Fire & Cas.*, 352 S.E.2d 73, 81 (W. Va. 1986).[2]

The email exchange does not help Plaintiff meet this burden.  To begin with, the exchange cannot be read to have suggested anyone use "misinformation" to defeat Blankenship.  It did not even refer to Plaintiff as a "felon" or to his crimes as a "felony" or "manslaughter," let alone did it suggest those terms or anything similar be employed.  *See* Surreply at Ex. 1.  Rather, it states that Blankenship "served time," *id.*—a fact undisputed in this litigation or otherwise.

---

[2] Plaintiff's assertion that actual malice is "ill-suited for resolution at summary judgment," Surreply at 9—a point he has previously made in briefing—continues to ignore the Supreme Court's subsequent clarification in *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986).  *See* FNN Reply at 3-5*; see also id.* at 5 (explaining why *Denny v. Seaboard Lacquer, Inc.*, 487 F.2d 485 (4th Cir. 1973) and *Fitzgerald v. Penthouse Int'l, Ltd.*, 691 F.2d 666 (4th Cir. 1982) do not support Plaintiff).

And even assuming *arguendo* that Mr. Murdoch's email could be evidence of some personal "partisanship," which FNN does not concede, numerous courts have found political opposition or partisanship categorically irrelevant to the actual malice inquiry. *See, e.g. Palin v. New York Times Co.*, 940 F.3d 804, 814 (2d Cir. 2019) ("[P]olitical opposition alone does not constitute actual malice … allegation[s] [must] indicate more than sheer political bias …."); *Arpaio v. Robillard*, 459 F. Supp. 3d 62, 66 (D.D.C. 2020) ("Even assuming the alleged 'leftist enmity' [against Sherriff Joe Arpaio] is real, the motivations behind defendants' communications—inspired by political differences or otherwise—do not impact whether defendants acted with actual malice as a matter of law.") (citations omitted). Indeed, "a media defendant's 'adversarial stance' … is not 'indicative of actual malice.'" *Lohrenz v. Donnelly*, 223 F. Supp. 2d 25, 46 (D.D.C. 2002), *aff'd*, 350 F.3d 1272 (D.C. Cir. 2003) (internal citations and quotation marks omitted). And for good reason, because "debate on the qualifications of candidates is at the core of our electoral process and of the First Amendment freedoms …." *Republican Party of Minnesota v. White*, 536 U.S. 765, 781 (2002) (cleaned up); *see also Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272 (1971) ("[I]t can hardly be doubted that the [First Amendment] has its fullest and most urgent application precisely to the conduct of campaigns for political office.").

Moreover, Plaintiff cannot satisfy the actual malice standard because there is no evidence (let alone clear and convincing evidence) that any such partisanship was adopted by or communicated to the speakers. There is no evidence that the email or some aspect of "partisanship" was communicated to and reached any speaker, producer, or other person involved in the FNN shows during which the statements were made. In fact, the evidence shows the

opposite: Mr. Murdoch's observation, in whole or part, was never shared with others. *See* Murdoch Decl. ¶¶ 2-3; Wallace Decl. ¶¶ 6-7; Scott Decl. ¶ 6.

No recipient understood Mr. Murdoch's email as an instruction or request. Mr. Wallace did not understand the email that way. Wallace Decl. ¶ 4. Accordingly, he replied not with any message of assent or even acknowledgment but merely with his own related observation. *See* Surreply at Ex. 1. And, after he received Mr. Murdoch's email through the conclusion of the West Virginia Senate Republican Primary, Mr. Wallace did not otherwise communicate about Plaintiff (or any subject in the email) with Mr. Murdoch or any of the speakers, producers, or others involved with any program(s) on which Plaintiff alleges he was defamed. Wallace Decl. ¶¶ 6-7. Ms. Scott's declaration reflects the same. Scott Decl. ¶¶ 5-6. In fact, there is no evidence that Ms. Scott responded at all. *See id.* Furthermore, there is no evidence that any aspect of Mr. Murdoch's message was ever forwarded or otherwise transmitted to anyone by Mr. Wallace or Ms. Scott; nor is there any evidence that Mr. Murdoch's observation was somehow otherwise communicated, directly or indirectly, to any of the speakers or others involved with the programs on which Plaintiff alleges he was defamed. Murdoch Decl. ¶ 3; Wallace Decl. ¶¶ 4-7; Scott Decl. ¶¶ 5-6; *accord* Napolitano Tr. 208:2-211:18, 212:22-213:12; Hadden Tr. 81:16-85:7; Levine Tr. 113:14-115:3; Stirewalt Tr. 153:14-155:25; *see also* Rove Tr. 121:19-125:11.[3]

---

[3] This lack of any connection to the speakers, or anyone else involved with the alleged defamatory statements, is why there is no merit to Plaintiff's attempt to malign FNN's prior objections and discovery motions. Surreply at 3. FNN's motions opposed production of documents from senior management or board members of Fox Corporation because neither those records nor any other evidence showed a link between those individuals and the speakers or producers of the FNN shows on which the challenged statements were made. *E.g.,* ECF 949 (FNN R. 54(b) Mot. for Reconsid.) at 5. As this surrebuttal explains, that basis for objection was and is true. The evidence shows that the email on which Plaintiff bases his surreply was a wholly separate communication, with no connection to the alleged defamatory statements, to the FNN programs on which those statements were made, or to the speakers who made them. And, as to Plaintiff's

Nor does the email "report[] that [Mr. Murdoch] had conferred with President Donald Trump [or] Senator Mitch McConnell," or that President Trump and Senator McConnell had gone "straight to the top and appealed to" Mr. Murdoch for help in defeating Plaintiff in the West Virginia Senate primary.  Surreply at 1, 5; *see also id*. at 10.  Mr. Murdoch sent his email shortly after he received an email from John Ellis, linking to a *Politico* article published one day earlier that detailed how Donald Trump Jr. and Senator McConnell were appealing broadly for help to defeat Plaintiff.  Lest there be any doubt, Mr. Murdoch has confirmed that to the best of his recollection, he did not communicate with President Trump, Senator McConnell, or any of their staff concerning Blankenship.  Murdoch Decl. ¶ 3.[4]

Finally, Plaintiff's hypothesis that Mr. Murdoch's email was responsible for Plaintiff being described as a felon on FNN is untenable.  It is undisputed that, well before Mr. Murdoch's email, at least 14 different commentators from *other* media outlets had referred to Plaintiff as a "felon" or "felonious."  *See* ECF 890-6 (Pl.'s Interrog. Resp. to NRSC) at 20-22.  And it was after the President of the United States personally issued a tweet on May 7 begging voters to support either of Plaintiff's opponents (the same tweet Mr. Wallace had included in his response email), that news coverage regarding Plaintiff exploded across nearly every news organization, many of which referred to Plaintiff as a "felon," FNN Mem. in Supp. of Mot. for Summ. J. at 7-8, and none of

---

claim that FNN "[b]uried" the email at the end of its recent production,  Surreply at 1 & 1 n.1, the fact is that, as with each document production FNN made in this case, FNN's e-discovery vendor produced documents consistent with the Federal Rules and in the order in which they were maintained.  Plaintiff's aspersion is baseless and improper.

[4] To the extent Plaintiff is tempted to note that Mr. Ellis referred to Plaintiff as a "felon," that fact only undermines Plaintiff's theories.  That "sequence," *see* Surreply at 10, only serves to compel the conclusion that Mr. Murdoch's email did not advance or further any effort to defame Plaintiff as a "felon" or direct such "misinformation."  The fact that Mr. Murdoch *did not repeat* that term makes any inference Plaintiff asks to be drawn about malice, or intent to defame or injure, untenable.

which have any connection to Mr. Murdoch.  Given these indisputable and undisputed facts, and the lack of evidence connecting the statements made on FNN to Mr. Murdoch's observations, summary judgment for FNN is warranted.

## II.  **Plaintiff cannot establish an actionable conspiracy.**

For the same reasons, any conspiracy claim against FNN cannot withstand summary judgment, and the email exchange does not add anything.  Conspiracy requires an underlying wrongful act.  *Kessel v. Leavitt*, 511 S.E.2d 720, 754 (W. Va. 1998).  Here, all of Plaintiff's allegations make clear that the wrongful acts would be the tort of defamation and the derivative tort of false light invasion of privacy.  *See* ECF 14 (FAC) ¶¶ 233-34, 236 (defamation); *id.* ¶¶ 246-47, 249 (false light).  But, as described above, Plaintiff still lacks evidence that FNN conspired to defame him.

Of course, Plaintiff has not pleaded a conspiracy claim against FNN, for reasons FNN has previously articulated.  ECF 974 (FNN R. 72(a) Obj.) at 10-11.  And for the reasons stated above, this Court should deny Plaintiff's request to seek leave to amend the First Amended Complaint to plead such a claim against FNN, as such an amendment would be futile.  *See Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995) ("In sum, the district court was justified in denying [the plaintiff's] motion to amend her complaint because the proposed amendments could not withstand a motion to dismiss.").

## **CONCLUSION**

For the foregoing reasons, and those stated in FNN's opening and reply memoranda, the

Court should grant FNN's motion for summary judgment.

Respectfully submitted,

/s/ J. Zak Ritchie
J. Zak Ritchie (WVSB #11705)
Ryan McCune Donovan (WVSB #11660)
HISSAM FORMAN DONOVAN RITCHIE PLLC
P.O. Box 3983
Charleston, WV 25339
681-265-3802 *office*
304-982-8056 *fax*
zritchie@hfdrlaw.com
rdonovan@hfdrlaw.com

Elbert Lin (WVSB #12171)
David Parker (*pro hac vice*)
HUNTON ANDREWS KURTH LLP
951 E. Byrd Street
Richmond, VA 23219
804-788-8200 *office*
804-788-8218 *fax*
elin@HuntonAK.com
dparker@HuntonAK.com

Shawn Patrick Regan (*pro hac vice*)
Silvia Ostrower (*pro hac vice*)
HUNTON ANDREWS KURTH LLP
200 Park Avenue
New York, NY 10166
212-309-1000 *office*
212-309-1100 *fax*
sregan@HuntonAK.com
sostrower@HuntonAK.com

*Counsel for Fox News Network LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 15th day of September 2021, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing

to all CM/ECF participants and will cause to send to other parties by U.S. Mail as follows:

Jim Heath
2716 Saratoga Avenue
Lake Havasu City, AZ 86406

/s/ J. Zak Ritchie
J. Zak Ritchie (WVSB #11705)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

DON BLANKENSHIP,

     Plaintiff,

v.

                                     Civil Action No. 2:19-cv-00236

                                     Honorable John T. Copenhaver Jr.

FOX NEWS NETWORK, LLC, et al.,

     Defendant.

---

**PLAINTIFF DON BLANKENSHIP'S SURREPLY MEMORANDUM
IN OPPOSITION TO DEFENDANT FOX NEWS NETWORK LLC'S
MOTION FOR SUMMARY JUDGMENT**

---

EARLY SULLIVAN WRIGHT
GIZER & McRAE LLP
Jeremy Gray ESQ
CASB #1500750
6420 Wilshire BLVD 17th FL
Los Angeles CA 90048
323.301.4660
jgray@earlysullivan.com

SIMPKINS LAW OFFICE LLC
Jeffrey S. Simpkins ESQ
WVSB #9806
102 E 2nd AVE
Williamson WV 25661
304.235.2735
simpkinslawoffice@gmail.com

645137.1

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

STANDARD OF REVIEW ....................................................................................2

BACKGROUND AND CONTEXT .......................................................................3

SUPPLEMENTAL WITNESSES AND FACTS ...................................................5

    I.    Jay Wallace ................................................................................................5

    II.   Antonia Ferrier ..........................................................................................5

    III.  Martha MacCallum ....................................................................................6

    IV.  Rupert Murdoch .........................................................................................6

ARGUMENT ..........................................................................................................7

    I.    Mr. Blankenship has presented clear and convincing evidence that FNN conspired with the Republican Party leadership (including President Trump and/or Senator McConnell) to defame Mr. Blankenship and place Mr. Blankenship before the public in a false light in furtherance of a common plan to defeat Mr. Blankenship's candidacy. ...........................................7

        A.    A reasonable jury would likely find that Senator McConnell influenced the negative content of FNN programing against Mr. Blankenship ...........................................................................................10

        B.    A reasonable jury would likely find that President Trump directly appealed to Rupert Murdoch for "help to beat" Mr. Blankenship and was a source of Rupert Murdoch's information about Mr. Blankenship. ....................................................................................11

        C.    A reasonable jury would likely find that the Murdoch Email was a tacit instruction to defame Mr. Blankenship and place Mr. Blankenship before the public in a false light at the behest of the Republican Party leadership (including President Trump and/or Senator McConnell). ..................................................................................12

    II.   The denials of misconduct by FNN witnesses do not support a grant of summary judgment ..........................................................................................15

    III.  The supplemental evidence bolsters a showing of actual malice. .........................17

i

CONCLUSION ................................................................................................ 19

ii

# TABLE OF AUTHORITIES

## Page

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ........................................ 2, 16

*Blankenship v. Napolitano*, 451 F. Supp. 596, 618 (S.D.W. Va. 2020) ........................... 19

*Charbonnages De France v. Smith*, 597 F.2d 406 (4th Cir. 1979) ................................ 2, 9

*Cmty. Antenna Serv., Inc. v. Charter Commc'ns VI, LLC*, 712 S.E.2d 504, 516 (2011) ............... 8

*Davenport v. N. Carolina Dep't of Transp.*, 3 F.3d 89, 98 (4th Cir. 1993) ................................... 9

*Dunn v. Rockwell*, 225 W.Va. 43 (2009) ...................................................................... 7

*Franklin D. Azar & Assocs., P.C. v. Bryant*, 2019 WL 5390172 (E.D. Tex. July 30, 2019) ....... 15

*Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 667-68 (1989) .................................... 17

*Hinerman v. Daily Gazette Co.*, 188 W.Va. 157 (1992) .......................................................... 19

*J & J Sports Prods., Inc. v. Hernandez*, 2013 WL 5937909 (M.D.N.C. Nov. 5, 2013) .............. 16

*Jane Doe-1 v. Corp. of President of The Church of Jesus Christ of Latter-day Saints*, 239 W. Va. 428, 458 (2017) ............................................................................................................. 7

*Lesikar v. Rappeport*, 33 S.W.3d 282, 302 (Tx. Ct. App. 2000) ............................................... 7

*O'Dell v. Stegall*, 226 W. Va. 590, 625 (2010) .................................................................. 17

*Pagani v. Modus eDiscovery*, 2017 WL 1205075 (W.D.N.C. Mar. 30, 2017) ........................... 16

*Potter Press v. C.W. Potter, Inc.*, 303 Mass. 485 (1939) ........................................................ 7

*Precision Piping & Instruments, Inc. v. E.I. duPont De Nemours & Co.*, 707 F. Supp. 225 (S.D.W. Va. 1989) ........................................................................................................ 9

*St. Paul Fire & Marine Ins. Co. v. Hoskins* is particularly instructive. No. 5:10CV087, 2012 WL 748574 (W.D. Va. Mar. 7, 2012) .......................................................................... 15

*United States v. Amer. Grain*, 763 F.2d 312, 315 (8th Cir. 1985) .............................................. 8

*United States v. Burgos*, 94 F.3d 849, 857–58 (4th Cir. 1996) ........................................ 7, 8, 17

*United States v. Dickerson*, 37 F.3d 1496 (4th Cir. 1994) ...................................................... 7

*United States v. Goodin*, 835 F. App'x 771, 777 (5th Cir. 2021) ............................................... 8

*United States v. Hastamorir*, 881 F.2d 1551, 1557 (11th Cir. 1989) ....................................... 17

*United States v. Rafiekian*, 991 F.3d 529, 548 (4th Cir. 2021) ........................................ 3, 8

*Webb v. Paine*, 515 F. Supp. 3d 466 (S.D.W. Va. 2021) ...................................................... 9

*White v. McKinley*, 519 F.3d 806, 816 (8th Cir. 2008) ........................................................ 8

**Statutes**

Fed. R. Civ. P. 56(a) ...................................................................................................... 2

iii

## INTRODUCTION

On Sunday morning, May 6, 2018, FNN[1] Chairman and acting CEO, Rupert Murdoch, was

informed in the following email ("Ellis Email") from John Ellis[2] that Mr. Blankenship[3] – who was

falsely described therein as a "convicted felon" – was surging in the polling on the eve of the West

Virginia Republican United States Senate primary election ("Primary"):

| Message | |
|---|---|
| **From:** | John Ellis [jellis41@gmail.com] |
| **Sent:** | 5/6/2018 5:55:52 AM |
| **To:** | Murdoch, Rupert [crc@21cf.com]; Sweeney, Clare [csweeney@21cf.com] |
| **Subject:** | Blankenship surging on eve of West Virginia Senate primary |

Blankenship surging on eve of West Virginia Senate primary

He calls the Majority Leader "cocaine Mitch." And he's a convicted felon! And he is, in fact, surging in the
GOP primary polling.

https://www.politico.com/story/2018/05/05/blankenship-polls-west-virginia-senate-primary-570752

(ECF No. 990-1 at 5).

Approximately thirteen hours later (Sunday evening), Mr. Murdoch sent the following

email ("Murdoch Email") to Suzanne Scott (then FNN President of Programming) and Jay Wallace

(then FNN President of News and Editorial):

| Message | |
|---|---|
| **From:** | Murdoch, Rupert [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=DD1AC40C95B646E8B7559FB323E48D96-MURDOCH, RU] |
| **Sent:** | 5/6/2018 9:04:55 PM |
| **To:** | Scott, Suzanne ( FoxNews ) [suzanne.scott@foxnews.com] |
| **CC:** | Wallace, Jay ( FoxNews ) [jay.wallace@foxnews.com] |
| **Subject:** | West Virginia |

Both Trump and McConnell appealing for help to beat unelectable former mine owner who served time.
Anything during day helpful but Sean and Laura dumping on him hard might save the day.

Sent from my iPhone

---

[1] "FNN" is used interchangeably in reference to Defendant Fox News Network LLC, Fox News
Channel, and Fox Business Network.
[2] John Ellis worked at Fox Business Network and Fox News Channel from July 2014 to January
2019. *See* https://www.linkedin.com/in/john-ellis-048b57183/.
[3] "Mr. Blankenship" is used in reference to Plaintiff Don Blankenship.

1

(ECF No. 990-1 at 7).

For nearly a year, FNN engaged in procedural gamesmanship to evade disclosure of the Murdoch Email. FNN now disingenuously downplays the Murdoch Email as merely an innocuous "observation about the news, what was going on in the news, what was happening at the moment." (*See* Exhibit 1 [Deposition of Jay Wallace ("Wallace Depo.")] at 41:24-42:2). However, a neutral reader would inevitably construe the Murdoch Email as a tacit instruction to negatively shape the content of FNN programming to defeat Mr. Blankenship's candidacy in accordance with the eleventh-hour appeals from President Donald Trump and Senator Mitch McConnell. It is neither accidental nor coincidental that five different commentators falsely described Mr. Blankenship as either a "felon" or "convicted felon" after the Murdoch Email. Critically, FNN had never previously published that Mr. Blankenship was a "felon" or "convicted felon" until Mr. Ellis described Mr. Blankenship as such in the Ellis Email. A reasonable jury would likely conclude that the Murdoch Email is persuasive circumstantial evidence of a conspiracy between FNN and the Republican Party leadership (including President Trump and/or Senator McConnell) to defame Mr. Blankenship and place Mr. Blankenship before the public in a false light.

## **STANDARD OF REVIEW**

The movant is not entitled to summary judgment if there is a genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). In defamation cases, "[a] court ruling on a motion for summary judgment must be guided by the New York Times 'clear and convincing' evidentiary standard in determining whether a genuine issue .... exists ...." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257 (1986). The evidence must be assessed in the light most favorable to the non-movant. *See Charbonnages De France v. Smith,* 597 F.2d 406 (4th Cir. 1979). Moreover, the non-movant is entitled "to have the credibility of his evidence as forecast assumed, his version of all that is in

2

dispute accepted, all internal conflicts in it resolved favorably to him, the most favorable of possible alternative inferences from it drawn in his behalf; and finally, to be given the benefit of all favorable legal theories invoked by the evidence so considered." (*Id.* at 414)

A non-movant is afforded even greater leeway concerning a conspiracy claim. The law recognizes that co-conspirators rarely if ever admit to their nefarious schemes, plans, and conduct. "Direct proof is therefore not required, and a conspiracy may be inferred from the facts and circumstances of the case, ...." *United States v. Rafiekian*, 991 F.3d 529, 548 (4th Cir. 2021).

## BACKGROUND AND CONTEXT

Mr. Blankenship alleged in the First Amended Complaint ("FAC") that FNN engaged in a conspiracy with the Republican Party establishment to destroy Mr. Blankenship's candidacy by employing weaponized defamation to place Mr. Blankenship before the public in a false light. (*See* ECF 14 ¶¶ 1, 3, 4, 14, 21). For example, the FAC contains the following factual allegations:

> Prominent mainstream beltway "swamp" Republicans, led by Senate Majority Leader Mitch McConnell, told all who would listen that Blankenship had to be stopped at all costs. McConnell set in motion the wheels of a clandestine campaign ... to destroy Blankenship and blatantly interfere in a federal election, using among other things, ... his contacts in the establishment media, including Fox News in particular, to do McConnell's ... bidding."

(ECF 14 ¶¶ 3, 4).

Both the Magistrate Judge and this Court have identified factual allegations in the FAC that articulate the essential elements of a civil conspiracy claim against FNN. For example, the Magistrate Judge has noted as follows:

> Plaintiff has articulated specific grounds concerning the conspiracy claim in the First Amended Complaint as well as in his Final Supplemental Memorandum in which he has alleged that a high-ranking Republican official, Senator McConnell, and others implemented a clandestine campaign to smear Plaintiff to prevent him from winning the Republican primary in West Virginia."

3

(ECF No. 573 at 28-29). Moreover, this Court has observed as follows:

> Although the conspiracy allegations set forth in the complaint's two counts focus on 35th PAC, NRSC, and Mr. McLaughlin, other portions of the complaint concern Fox News' involvement in the conspiracy. For instance, the complaint alleges that Senate Majority Leader Mitch McConnell, who opposed plaintiff's candidacy, "set in motion the wheels of a clandestine campaign," "using … [NRSC] and his contacts in the establishment media, including Fox News in particular, to do [his] (and in turn, the NRSC's) bidding," "including lying and smearing to stop [the plaintiff] from winning the primary." It further alleges that "multiple news personalities, … some at the direction of [Senator] McConnell and other GOP leaders, repeatedly and falsely called [the plaintiff] a 'felon' and 'convicted felon'" and that "[t]hese defamatory statements were made on Fox News … by conservative commentators."

(ECF 985 at 3) (internal citations omitted).

Mr. Blankenship's opposition provided sufficient evidence to survive FNN's summary judgment motion. In this regard, Mr. Blankenship has demonstrated as follows:

- FNN published the defamatory statements with actual malice in reckless disregard of the truth (ECF 953 at 15-22);

- FNN's defamatory statements were materially false (*Id.* at 22-25);

- Mr. Blankenship has sustained injury from FNN's defamatory publications (*Id.* at 25-26);

- FNN's defamatory publications placed Mr. Blankenship in a false light (*Id.* at 27);

- Mr. Blankenship is entitled to punitive damages (*Id.* at 27-28).

FNN passingly disputed Mr. Blankenship's conspiracy claim in FNN's summary judgment motion.[4] Even so, Mr. Blankenship presented sufficient evidence in opposition to allow the conspiracy claim to proceed to trial. (ECF 953 at 6-12; 16-19). The supplemental documentary and testimonial evidence discussed herein will further substantiate Mr. Blankenship's defamation,

---

[4] FNN briefly alluded to Mr. Blankenship's conspiracy claim in a single paragraph of FNN's thirty-page summary judgment motion. (ECF No. 891 at 22-23).

4

false light invasion of privacy, and conspiracy claims against FNN.

## SUPPLEMENTAL WITNESSES AND FACTS

### I.   Jay Wallace

Mr. Wallace is currently the President and Executive Editor of FNN, a title he also held in May 2018. (Wallace Depo. 9:17-10:7).  Mr. Wallace reported to Mr. Murdoch in May 2018.  (*Id.* at 13:15-14:6).  Mr. Wallace oversaw FNN's news division and was ultimately responsible for FNN's news programming.  (*Id.* at 14:9-16; 15:15-24).

Mr. Wallace supervised FNN's "news" shows, but not FNN's nighttime "opinion" shows. (*Id.* at 22:24-23:7).  Mr. Wallace testified that FNN's daytime shows were "straight news."  (*Id.* at 15:14-20).  Mr. Wallace was ultimately responsible for the co "news" programming. (*Id.* at 15:15-24).  Mr. Wallace testified that Martha MacCallum and Neil Cavuto were "news" hosts. (*Id.* at 23:8-10; 48:6-15).

Mr. Wallace testified that FNN lacked any written journalism ethics standards. (*Id.* at 23:11-16, 25:17-22).  However, Mr. Wallace did specify that FNN had unwritten journalism ethics standards requiring impartiality and prohibiting external influence from public officials:

> Q. In 2018, did you believe it would have been appropriate for either a producer or a host of a Fox show – a Fox News show to take sides in a political race and shape the stories that they covered to either help or harm a particular candidate?
> A. No.
> (*Id.* at 19:20-25).
>
> Q. Would it have been appropriate in 2018 for Senator Mitch McConnell to have influence over the editorial judgments made by those that were in charge of various shows at Fox News?
> MR. REGAN:  Objection. You can answer.
> A. No.
> (*Id.* at 20:19-25).

### II.   Antonia Ferrier

Ms. Ferrier worked for Senator McConnell as his spokesperson in May 2018. (Exhibit 2

5

[Deposition of Antonia Ferrier ("Ferrier Depo.")] at 19:14-17). Ms. Ferrier spoke as "the representative" of Senator McConnell. (*Id.* at 20:12-16). Ms. Ferrier testified on multiple occasions that her job was to "protect" and "defend" Senator McConnell. (*Id.* at 34:13-15, 43:21-44:1, 44:10-15, 46:12-24, 57:17-58:8, 66:13-15).

On May 3, 2018, at 10:41 PM, Ms. Ferrier emailed Martha MacCallum, host of the FNN show, *The Story with Martha MacCallum*. (*Id.* 24:23-25:15). Attached to Ms. Ferrier's email was a story published by *The Washington Post* reporting that Mr. Blankenship was questioning whether Senator McConnell "faced a conflict of interest in foreign relations" because of his family ties. (*Id.* at 30:4-21). Ms. MacCallum responded a few minutes later: "There are so many issues with DB [Don Blankenship], never enough time to hit them all." (*Id.* at 36:18-20).

Ms. Ferrier replied two minutes later: "Between us my boss is pretty ticked." (*Id.* at 43:11-18) (emphasis added). Ms. Ferrier admitted that "my boss" referred to Senator McConnell. (*Id.* at 43:19-20).

### III. Martha MacCallum

Ms. MacCallum testified that Mr. Blankenship surged eight points in the polls after the debate telecast by FNN on May 1, 2018. (Exhibit 3 [Deposition of Martha MacCallum ("MacCallum Depo.")] at 35:5-9, 86:21-24). Ms. MacCallum also testified that Mr. Blankenship was not "unelectable." (*Id.* at 64:25-65:5).

### IV. Rupert Murdoch

Mr. Murdoch was the acting CEO of FNN in May 2018. (Exhibit 4 [Deposition of Rupert Murdoch ("Murdoch Depo.")] at 15:3-6). Additionally, Mr. Murdoch is the author of the Murdoch Email, which is the evidentiary cornerstone of Mr. Blankenship's conspiracy claim against FNN. Mr. Murdoch has extensive ties to the Republican Party leadership, including President Trump and

6

Senator McConnell.  (ECF No. 953 at 2-3)

## ARGUMENT

I.   **Mr. Blankenship has presented clear and convincing evidence that FNN conspired with the Republican Party leadership (including President Trump and/or Senator McConnell) to defame Mr. Blankenship and place Mr. Blankenship before the public in a false light in furtherance of a common plan to defeat Mr. Blankenship's candidacy.**

"A civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means." *Jane Doe-1 v. Corp. of President of The Church of Jesus Christ of Latter-day Saints*, 239 W. Va. 428, 458 (2017); *see also Dunn v. Rockwell,* 225 W.Va. 43 (2009). Not every member of a conspiracy must be aware of every action taken in furtherance of it.  *Id.* at 473 (citing *Potter Press v. C.W. Potter, Inc.,* 303 Mass. 485 (1939)) ("One may be held a member of …. a conspiracy and responsible for all its doings, although he was not aware of the entire scope, or all its details, or the identities of all its members, …[.]); *see also Lesikar v. Rappeport*, 33 S.W.3d 282, 302 (Tx. Ct. App. 2000) ("The general rule is that conspiracy liability is sufficiently established by proof showing concert of action or other facts and circumstances from which the natural inference arises that …. acts were committed in furtherance of …. [the] purpose of the alleged conspirators ***…. It is not required that each and every act of a conspirator be shown to have been in concert with the others or that it be established by direct evidence that all combined at a given time prior to each transaction.") (citations omitted).

Civil conspiracies are inherently secretive and seldom proven by direct evidence.  *See Jane Doe-1*, 239 W. Va. at 457–59 (citing supporting cases); *United States v. Dickerson*, 37 F.3d 1496 (4th Cir. 1994) (emphasizing that "conspiracies are intrinsically secretive"); *United States v. Burgos*, 94 F.3d 849, 857–58 (4th Cir. 1996) ("By its very nature, a conspiracy is clandestine and

7

covert, thereby frequently resulting in little direct evidence of such an agreement."). Hence, a conspiracy "may be inferred from the facts and circumstances of the case, *i.e.*, circumstances indicating that two or more persons acted in concert to achieve an illegal goal." *United States v. Rafiekian*, 991 F.3d 529, 548 (4th Cir. 2021); *Burgos*, 94 F.3d at 858 (emphasizing that a conspiracy "may be inferred from a development and collocation of circumstances"); *United States v. Goodin*, 835 F. App'x 771, 777 (5th Cir. 2021). Furthermore, a jury may infer any element of a conspiracy from circumstantial evidence—an agreement may be inferred from concert of action, voluntary participation may be inferred from a collocation of circumstances, and knowledge may be inferred from surrounding circumstances. *Goodin*, 835 F. App'x at 778.

A conspiracy claim can be proven solely by circumstantial evidence:

> Circumstantial evidence is information that tends directly to prove or disprove not a fact in issue but a fact or circumstance for which, either alone or in connection with other facts and circumstances, one may, according to the common experience of mankind, reasonably infer the existence or nonexistence of a fact that is in issue…. In West Virginia and in federal courts, civil and criminal verdicts may be based entirely upon circumstantial evidence.

*Cmty. Antenna Serv., Inc. v. Charter Commc'ns VI, LLC,* 712 S.E.2d 504, 516 (2011) (citation omitted). "Circumstantial evidence, especially evidence of concerted activity directed toward achievement of a common goal, is as probative as direct evidence." *See Jane Doe-1*, 239 W. Va. at 472 (citing *United States v. Amer. Grain,* 763 F.2d 312, 315 (8th Cir. 1985)).

The question of the existence of a conspiracy is rarely appropriate for summary judgment and such motions should be denied if there is a possibility a jury could infer a conspiracy from the circumstances. *See White v. McKinley*, 519 F.3d 806, 816 (8th Cir. 2008). Because "the elements of a conspiracy are rarely established through means other than circumstantial evidence, and summary judgment is only warranted when the evidence is so one-sided as to leave no room for any reasonable difference of opinion as to how the case should be decided … [t]he court must be

8

convinced that the evidence presented is insufficient to support any reasonable inference of a conspiracy." *Id.*; *see also* Davenport *v. N. Carolina Dep't of Transp.*, 3 F.3d 89, 98 (4th Cir. 1993) (holding that factual question as to whether defendants agreed to proceed against employee motivated primarily by discriminatory animus related to his political affiliation precluded summary judgment on civil conspiracy claim).

On summary judgment, the evidence must be assessed in the light most favorable to the non-moving party. *Charbonnages De France v. Smith*, 597 F.2d 406 (4th Cir. 1979). This means that Mr. Blankenship is entitled "to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, all internal conflicts in it resolved favorably to him, the most favorable of possible alternative inferences from it drawn in his behalf; and finally, to be given the benefit of all favorable legal theories invoked by the evidence so considered." *Id.* at 414. "Implicit in these basic rules is a consequence, frequently expressed as a maxim, that summary judgment is seldom appropriate in cases wherein particular states of mind are decisive as elements of claim or defense." *Id.* "This reflects a general perception that whether as a matter of fact any particular state of mind exists can seldom be considered to be beyond reasonable dispute because this depends entirely upon the conflicting inferences to be drawn from evidence so likely to be circumstantial or, if direct, self-serving." *Id.*

Where there is considerable direct and circumstantial evidence of a conspiracy, it is inappropriate to dismiss such a claim at summary judgment. *See Webb v. Paine*, 515 F. Supp. 3d 466 (S.D.W. Va. 2021) (finding that the concerted action of parties was sufficient to survive summary judgment in the face of claims in which the precise elements of the conspiracy were "mere speculation."); *Precision Piping & Instruments, Inc. v. E.I. duPont De Nemours & Co.*, 707 F. Supp. 225 (S.D.W. Va. 1989) (holding that genuine issues of material fact existed as to whether

conspiracy existed which precluded summary judgment).

### A. A reasonable jury would likely find that Senator McConnell influenced the negative content of FNN programing against Mr. Blankenship.

After being informed by Senator McConnell's spokesperson, Ms. Ferrier, that Senator McConnell was "pretty ticked" at Mr. Blankenship, Ms. MacCallum promptly coordinated an eleven-minute segment on the May 4, 2018, FNN telecast of *The Story with Martha MacCallum* in which Karl Rove maliciously and untruthfully disparaged Mr. Blankenship.[5] Mr. Rove is a Republican Party strategist closely aligned with Senator McConnell and a paid political contributor of FNN.[6] The next day, Senator McConnell expressed gratitude to Mr. Rove via email: "Thanks so much for your comments on Martha's show last night. Elaine and I are both grateful. Mitch." (ECF No. 953-18 at 103:10-13). Mr. Rove replied back: "Happy to help. Wait [sic] a sick, twisted moron." (*Id.* at 106:18-107:2).

The pretext for rebuking Mr. Blankenship was an article published by *The Washington Post* that claimed that Mr. Blankenship was running deceptive campaign ads which exposed the political and financial conflicts of interest that Senator McConnell had with Communist China. Ms. MacCallum portrayed the campaign ads as being "racially-charged." (MacCallum Depo. 41:2-9). In addition, Mr. Rove called Mr. Blankenship a "bigot." (Exhibit 5 [Deposition of Karl Rove ("Rove Depo.")] at 61:13-17). Nevertheless, Mr. Blankenship's legitimate concerns have been validated by an investigative report published by *The New York Times*.[7]

Ms. Ferrier conceded that the purpose for communicating with Ms. MacCallum was to

---

[5] *See* https://grabien.com/file.php?id=381587&from=usermedia. FNN political contributor Tammy Bruce and Ms. MacCallum also castigated Mr. Blankenship.

[6] ████████████████████████████████████

[7] *See* https://www.nytimes.com/2019/06/02/us/politics/elaine-chao-china.html.

10

"protect and defend" Senator McConnell. (*See* Ferrier Depo. 34:13-15, 43:21-44:1, 44:10-15, 46:12-24, 57:17-58:8, 66:13-15). Ms. Ferrier continued to "protect and defend" Senator McConnell by prevaricating when she perceived that Senator McConnell would be implicated in wrongful acts. In an obvious attempt to cover-up Senator McConnell's culpability in shaping the negative content of Ms. MacCallum's show against Mr. Blankenship, Ms. Ferrier devoted several minutes of testimony dubiously attempting to wipe away her own words by absurdly suggesting that it was "she" who was "pretty ticked" at Mr. Blankenship rather than Senator McConnell. (*Id.* at 43:15-47:12). A jury would readily conclude that Ms. Ferrier was deceptively camouflaging Senator McConnell's collusive influence over FNN programming.

### B. A reasonable jury would likely find that President Trump directly appealed to Rupert Murdoch for "help to beat" Mr. Blankenship and was a source of Rupert Murdoch's information about Mr. Blankenship.

First, Mr. Murdoch had no independent knowledge of Mr. Blankenship when he received the Ellis Email on May 6, 2018. (*See* Murdoch Depo. 20:6-20). Second, Mr. Murdoch had not been following the Primary before receiving the Ellis Email. (*Id.* at 24:1-3). Third, the Ellis Email did not inform Mr. Murdoch that President Trump and Senator McConnell were "appealing for help to beat" Mr. Blankenship.[8] Fourth, Mr. Murdoch had not spoken with anyone at FNN about Mr. Blankenship. (ECF No. 990-1 at 2). Fifth, President Trump did not publicly voice any oppositional sentiment against Mr. Blankenship until weighing in on Twitter the next morning on May 7, 2018.[9] Sixth, President Trump used to call Mr. Murdoch. Thus, as Mr. Murdoch testified,

---

[8] The *Politico* article linked in the Ellis Email reported that "President Donald Trump has yet to speak out against Blankenship). *See* https://www.politico.com/story/2018/05/05/blankenship-polls-west-virginia-senate-primary-570752.
[9] *See* https://www.nytimes.com/2018/05/07/us/politics/don-blankenship-trump-west-virginia.html. Notably, Senator McConnell urged President Trump to intervene in the Primary against Mr. Blankenship during a telephone call on May 6, 2018. This telephone call was the precursor to President Trump's telephone call with Mr. Murdoch later on May 6, 2018.

11

it is "perfectly possible" that Mr. Murdoch obtained the information about Mr. Blankenship in the Murdoch Email during a telephone call with President Trump.[10]  (*See* Murdoch Depo. 30:24-31:6). Seventh, the Republican Party leadership was "campaigning" for Mr. Blankenship to lose the Primary according to President Trump. (*Id.* at 32:14-33:5).  Eighth, Mr. Murdoch was told that Mr. Blankenship was "unelectable." (*Id.* at 38:24-39:3).  Senator McConnell was the author of the untested narrative that Mr. Blankenship was "unelectable" and the most obvious source of the myth.[11]  Ninth, Senator McConnell opposed Mr. Blankenship but never publicly appealed for help to beat Mr. Blankenship.  Finally, Mr. Murdoch observed in the Murdoch Email that the content of FNN programming could have an impact on the outcome of the Primary.[12]  (*Id.* at 41:8-24).

### C. A reasonable jury would likely find that the Murdoch Email was a tacit instruction to defame Mr. Blankenship and place Mr. Blankenship before the public in a false light at the behest of the Republican Party leadership (including President Trump and/or Senator McConnell).

Less than thirty-six hours before the polls opened in the Primary, Mr. Murdoch sent the following email:

| Message | |
|---|---|
| From: | Murdoch, Rupert [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=DD1AC40C95B646E8B7559FB323E48D96-MURDOCH, RU] |
| Sent: | 5/6/2018 9:04:55 PM |
| To: | Scott, Suzanne ( FoxNews ) [suzanne.scott@foxnews.com] |
| CC: | Wallace, Jay ( FoxNews ) [jay.wallace@foxnews.com] |
| Subject: | West Virginia |

Both Trump and McConnell appealing for help to beat unelectable former mine owner who served time. Anything during day helpful but Sean and Laura dumping on him hard might save the day.

Sent from my iPhone

(ECF No. 990-1 at 7).

---

[10] Mr. Murdoch declared in his Declaration that he did not recollect any communications with President Trump about Mr. Blankenship. However, Mr. Murdoch later recanted.

[11] No party defendant in this case has produced a poll showing that Mr. Blankenship was "unelectable" in the 2018 West Virginia United States Senate general election.

[12] Mr. Murdoch also testified that President Trump and Senator McConnell believed that FNN could have some influence on the outcome of the Primary. (*See* Murdoch Depo. 44:11-45:3).

12

FNN has submitted a self-serving declaration executed by Mr. Murdoch purporting that the Murdoch Email reflected Mr. Murdoch's "practice at the time of communicating with Mr. Wallace and Ms. Scott about certain news and policy items contained in media reports." (ECF 990-1 at 2). The Murdoch Email has also been speciously characterized by FNN as an innocuous "observation about the news, what was going on in the news, what was happening at the moment." (*See* Wallace Depo. 41:24-42:2). However, it is exceedingly more plausible that the Murdoch Email is a directive to telecast denunciatory commentary about Mr. Blankenship. In fact, Mr. Murdoch admitted that he would use the term "criticizing" if writing the email again. (*See* Murdoch Depo. 34:20-35:3).

"Anything during day helpful" and "dumping on him hard might save the day" are calls to action—not passive observations. Crucially, Mr. Murdoch testified that his use of the term "helpful" in the Murdoch Email meant "helpful to the Republican leadership" before underscoring "that's what they were campaigning for, at least what President Trump said." (*Id.* at 32:14-33:5). Mr. Murdoch also testified that he meant "criticizing" Mr. Blankenship when he wrote "dumping on him hard" in the Murdoch Email. (*Id.* at 34:4-35:6). Finally, Mr. Murdoch admitted that the clause "save the day" in the Murdoch Email meant "Mr. Blankenship would lose" in accordance with the Republican Party leadership's wishes. (*Id.* at 37:23-38:7).

Mr. Murdoch's apathy toward the Primary is corroborated by his failure to remember how to spell Mr. Blankenship's name. (*See* Murdoch Depo. 28:25-29:3). Why did Mr. Murdoch suddenly take interest? Who other than President Trump and/or Senator McConnell would have enough stature to motivate Mr. Murdoch to intervene and shape the content of FNN programming to impact the outcome of the Primary? (*Id.* at 41:20-24).

FNN had never previously published that Mr. Blankenship was a "felon" or "convicted felon" before the Murdoch Email. Thereafter, Mr. Blankenship was defamed as a "felon" or "convicted felon" five times and marginalized as a crazy "yahoo" by commentators on FNN shows:

- On May 7, 2018, Neil Cavuto inaugurated the smear campaign during a FNN telecast of *Cavuto: Coast to Coast*: "Morning, Republicans. You know what? We're gonna lose West Virginia if Don Blankenship is allowed to win the primary and does win the primary outright. Blankenship, of course, is arguing that he -- he's the best qualified for this. Of course, he's a convicted felon. You know the whole background on him, and the party is just eschewing the guy." Mr. Cavuto's derogatory commentary parroted Mr. Murdoch's concern that Mr. Blankenship would win the Primary. Moreover, Mr. Cavuto's defamatory portrayal of Mr. Blankenship as a "convicted felon" served as the paradigm for "criticizing" Mr. Blankenship in accordance with Mr. Murdoch's directive. (Exhibit 6 [Deposition of Neil Cavuto ("Cavuto Depo.")]at 98:1-9).

- On May 7, 2018, John Layfield described Mr. Blankenship as "a felon who's got a probation officer, who could end up in Congress." during a FNN telecast of *The Evening Edit*. (ECF No. 398 at 42).

- On May 7, 2018, Bradley Blakeman referred to Mr. Blankenship as a "felon" during the same FNN telecast of *The Evening Edit*. (ECF No. 398 at 42).

- On May 7, 2018, Lisa "Kennedy" Montgomery labeled Mr. Blankenship as a "yahoo" before stating that Mr. Blankenship was "out of his gourd" during a FNN telecast of *Kennedy*.[13]

- On May 8, 2018, Stephanie Hamill depicted Mr. Blankenship as a "convicted felon" during a FNN telecast of *Making Money with Charles Payne*. (ECF No. 398 at 42).

- On May 9, 2018, Elizabeth MacDonald alluded to Mr. Blankenship as a "felon" during a FNN telecast of *The Evening Edit*. (ECF No. 398 at 42).

---

[13] *See* https://www.youtube.com/watch?v=1SInI-C2tj4&t=9s.

14

The plain language of the Murdoch Email itself is a tacit instruction to telecast defamatory content about Mr. Blankenship. (*See* Murdoch Depo. 34:20-35:6). The Murdoch Email was sent because President Trump and Senator McConnell were "appealing for help to beat unelectable former mine owner." (ECF No. 990-1 at 7).

## II.    The denials of misconduct by FNN witnesses do not support a grant of summary judgment.

FNN will inevitably rely on the self-serving declarations of Mr. Murdoch, Mr. Wallace, and Ms. Scott to support FNN's summary judgment motion. But the respective declarations do not provide any basis for the relief requested. FNN claims that the Murdoch Email was a benign observation rather than a call to action. However, the plain meaning of the text in the Murdoch Email and Mr. Murdoch's deposition testimony are conflictive with Mr. Murdoch's declaration testimony and FNN's benign observation argument. In this regard, the decision in *St. Paul Fire & Marine Ins. Co. v. Hoskins* is particularly instructive. No. 5:10CV087, 2012 WL 748574, at *11 (W.D. Va. Mar. 7, 2012). The *St. Paul* case involved conspiracy claims by St. Paul against Hoskins. In connection with a motion for summary judgment, Hoskins submitted affidavits and other documentation asserting his lack of the requisite knowledge, intent, and participation required to find him liable to St. Paul in connection with the conspiracy claims. The Court emphasized that such disputed issues of fact are best resolved by the jury. *Id.* Accordingly, the Court concluded that genuine issues of material fact remained concerning Hoskins' knowledge, intent, and participation in the alleged conspiracy that precluded summary judgment. *Id.* The same reasoning applies here.

Similarly, the Court in *Franklin D. Azar & Assocs., P.C. v. Bryant* determined that there was a genuine issue of fact regarding plaintiff's conspiracy claim and denied defendants' motions for summary judgment. No. 417CV00418ALMKPJ, 2019 WL 5390172 (E.D. Tex. July 30,

15

650473.1

4096

2019), *report and recommendation adopted*, No. 4:17-CV-00418, 2019 WL 4071782 (E.D. Tex. Aug. 29, 2019). The Court agreed that "considering the declarations at the summary judgment stage runs the risk of a paper trial based solely on affidavits." *Id.* *4. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)); *see also Pagani v. Modus eDiscovery*, No. 3:16-CV-00024-GCM, 2017 WL 1205075, at *3 (W.D.N.C. Mar. 30, 2017) (concluding that a grant of summary judgment would be erroneous because the Court would need to weigh various declarations and make credibility determinations); *J & J Sports Prods., Inc. v. Hernandez*, No. 1:11CV749, 2013 WL 5937909, at *3–4 (M.D.N.C. Nov. 5, 2013) (denying motion for summary judgment because the Court would need to weigh the sworn affidavit and make credibility determinations).

Mr. Murdoch previously claimed that he did not communicate with any public official (including President Trump and Senator McConnell) or any public official's staffer about Mr. Blankenship. (ECF No. 990-1 at 2). How then did Mr. Murdoch learn that "[b]oth Trump and McConnell [are] appealing for help to beat [Mr. Blankenship]" if Mr. Murdoch never communicated with President Trump or Senator McConnell? As of the date of the Murdoch Email (May 6, 2018), neither President Trump nor Senator McConnell had issued any public statement appealing for help to defeat Mr. Blankenship. President Trump did not publicly appeal for help to beat Mr. Blankenship until May 7, 2018. Senator McConnell never publicly appealed for such help. In light of this discrepancy, Mr. Murdoch changed his testimony. (*See* Murdoch Depo. 29:25-31:6.). Specifically, Mr. Murdoch recollected at his deposition that President Trump used to call him and that it is "perfectly possible" that the information in the email had come from

16

President Trump. (*Id*).

The fact that FNN personnel have denied involvement in the conspiracy should also be disregarded. *See Burgos*, 94 F.3d at 867–68; *United States v. Hastamorir*, 881 F.2d 1551, 1557 (11th Cir. 1989) (holding that the jury was free to disregard the defendant's false testimony that he did not participate in the conspiracy). Indeed, conflicting statements and implausible stories may be considered by the jury as indicia of guilt in connection with a conspiracy. *Burgos*, 94 F.3d at 867–68 ("Relating implausible, conflicting tales to the jury can be rationally viewed as further circumstantial evidence indicating guilt."). A defendant's contradictory, vague, and evasive answers may also give rise to a reasonable inference that a defendant participated in a conspiracy and attempted to conceal his/her participation. *Burgos*, 94 F.3d at 867-68.

## III.    The supplemental evidence bolsters a showing of actual malice.

The defamation claim must axiomatically proceed to trial with the conspiracy claim. *See O'Dell v. Stegall*, 226 W. Va. 590, 625 (2010) (emphasizing that "a civil conspiracy must be based on some underlying tort or wrong"). It is intrinsic to Mr. Blankenship's conspiracy claim that those who were responsible for the FNN defamatory publications knew that Mr. Blankenship was not a "felon" and "convicted felon." For example, the FAC alleges as follows:

> "Over the ensuing week, multiple news personalities, lubricated with their disdain for Mr. Blankenship, and some at the direction of McConnell and other GOP leaders, repeatedly and falsely called Mr. Blankenship a "felon" and "convicted felon." These defamatory statements were made on Fox News and in other venues by conservative commentators." (ECF No. 14 at ¶ 21).

Furthermore, the recent depositions have revealed additional evidence that FNN departed from its own unwritten journalism ethics standards, which is relevant to actual malice. *See Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 667-68 (1989). FNN's Rule 30(b)(6) Corporate Representative testified in relevant part:

> I think accuracy – and you brought up the term "ethics" before. I think both
> of those things are vital to [Fox News] business. The reason people watch
> us is because of our accuracy and our ethics. So, therefore, it is something
> that is very important, and -- and we strive for."

(Exhibit 7 [Deposition of Alan Komissaroff ("Komissaroff Depo.")] at 54:01:27:44-01:27:21).

Mr. Wallace provided further evidence that FNN departed from journalism ethics standards. Mr. Wallace testified that FNN did not have any written policies requiring the correction of false and/or misleading information. (Wallace Depo. 23:11-16). Unsurprisingly, Judge Napolitano's defamatory statement that Mr. Blankenship "went to jail for manslaughter after people died in a mine accident" has never been corrected.

Mr. Wallace further testified that it was inappropriate for FNN news hosts to take sides in elections. (Wallace Depo. 18:2-8, 19:20-25). Mr. Cavuto failed to comply with FNN journalism ethics standards requiring impartiality by suggesting to viewers that the Republican Party would "lose West Virginia" if Mr. Blankenship won the Primary before defaming Mr. Blankenship as a "convicted felon."[14] Mr. Wallace also testified that was improper for politicians like Senator McConnell to have influence over the content of FNN's telecasts. (*Id.* 20:19-25) Ms. MacCallum as a "news" anchor violated FNN's journalism ethics standards that prohibits external influence by public officials when Ms. MacCallum allowed Senator McConnell to negatively shape the content of her show against Mr. Blankenship. Mr. Murdoch violated both journalism ethics standards in the Murdoch Email by tacitly instructing FNN executives to telecast defamatory content about Mr. Blankenship on behalf of President Trump and Senator McConnell to impact

---

[14] On 25 April 2018, FNN correspondent, Peter Doocy, appeared on *Your World with Neil Cavuto*. (*See* Cavuto Depo. 76:24-77:1, 78:7-12). Mr. Doocy described Mr. Blankenship as a "former coal baron who recently served a year in jail on a misdemeanor conviction …" during a discussion with Mr. Cavuto. (*Id.* at 78:3-6, 79:23-25) (in relevant part).

the outcome of the Primary.

Finally, this Court has recognized that "[p]artisanship, animus toward the subject of a libel, or other 'malicious' motives" may be considered by a jury in determining "whether a subjective realization that the statement was false or a subjective realization that the statement was being published recklessly, existed at the time the statement was published." *Blankenship v. Napolitano*, 451 F. Supp. 596, 618 (S.D.W. Va. 2020) (citing *Hinerman v. Daily Gazette Co.*, 188 W.Va. 157 (1992)).

Mr. Blankenship has uncovered several instances in which FNN executives, anchors, and contributors exhibited partisanship, animus toward Mr. Blankenship, and other malicious motives which evidences actual malice. For example, Ms. MacCallum's coordination with Senator McConnell and Mr. Rove to malign Mr. Blankenship on Ms. MacCallum's show was unquestionably indicative of actual malice. Similarly, Mr. Cavuto's unfounded marginalization of Mr. Blankenship as a viable candidate and false reference to Mr. Blankenship as a "convicted felon" was quintessential actual malice. Perhaps, the most compelling evidence of unbridled partisanship, animus toward Mr. Blankenship, and other malicious motives is the Murdoch email. The world's most powerful media mogul was persuaded by the two most powerful men in the United States government to employ weaponized defamation on the most watched cable news network in America to sabotage a federal election and defeat a non-establishment candidate under supervised release. Mr. Murdoch's misconduct attested to actual malice.

## CONCLUSION

Mr. Blankenship has presented clear and convincing evidentiary proof in support of his defamation, false light invasion of privacy, and conspiracy claims. Consequently, there are multiple genuine disputes of material fact that preclude summary judgment and require jury

determination. Accordingly, Mr. Blankenship respectfully requests that this Court deny FNN's summary judgment motion and such other relief deemed appropriate under the circumstances.

**DON BLANKENSHIP**
**By Counsel**

**/s/ Jeremy Gray**
**Jeremy Gray ESQ**
**CASB #150075 (*pro hac vice*)**
**EARLY SULLIVAN WRIGHT**
**GIZER & McRAE LLP**
**6420 Wilshire Blvd. 17th Fl.**
**Los Angeles, CA 90048**
**323.301.4660**
**jgray@earlysullivan.com**

**/s/ Jeffrey S. Simpkins**
**Jeffrey S. Simpkins ESQ**
**WVSB #9806**
**SIMPKINS LAW**
**102 E. 2nd Ave.**
**Williamson, WV 25661**
**304.235.2735**
**simpkinslawoffice@gmail.com**

645137.1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

DON BLANKENSHIP,

      Plaintiff,

v.                               Civil Action No. 2:19-cv-00236

FOX NEWS NETWORK, LLC, et al.,

      Defendants.

---

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **"Plaintiff Don Blankenship's Surreply Memorandum in Opposition to Defendant Fox News Network LLC's Motion for Summary Judgment"** with the Clerk of Court using the CM/ECF system which will send notice to all CM/ECF participants.

Date: December 1, 2021

/s/ Jeffrey S. Simpkins
Jeffrey S. Simpkins ESQ
WVSB #9806
*SIMPKINS LAW*
102 E. 2nd AVE
Williamson, WV 25661
304.235.2735
simpkinslawoffice@gmail.com

21

# EXHIBIT 1

**In the Matter Of:**

*BLANKENSHIP v*

*FOX NEWS NETWORK*

*JAY WALLACE*

*November 16, 2021*



1

```
 1            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA
 2                CHARLESTON DIVISION

 3   DON BLANKENSHIP,           )
          Plaintiff,           )
 4                              )
     v.                         ) Case No. 2:19-cv-00236
 5                              )
     FOX NEWS NETWORK LLC,      )
 6   et al.,                    )
          Defendants.          )
 7

 8   ********************************************************

 9                    "CONFIDENTIAL"

10      REMOTE ORAL AND VIDEOTAPED DEPOSITION OF

11                    JAY WALLACE

12                 NOVEMBER 16, 2021

13   ********************************************************

14      REMOTE ORAL AND VIDEOTAPED DEPOSITION OF JAY

15   WALLACE, produced as a witness at the instance of the

16   Plaintiff, and duly sworn, was taken remotely in the

17   above-styled and numbered cause on the 16th day of

18   November, 2021, from 12:33 p.m. to 2:07 p.m. (Eastern

19   Standard Time), via Zoom, before Julie C. Brandt, RMR,

20   CRR, and CSR in and for the State of Texas, reported by

21   machine shorthand in Fort Worth, Texas, with the witness

22   located in New York, New York, pursuant to the Federal

23   Rules of Civil Procedure and the provisions stated on

24   the record or attached hereto.

25
```

2

1                           REMOTE APPEARANCES

2    FOR THE PLAINTIFF:

3         Jeremy Gray

4         Ryan Hemar

5         EARLY SULLIVAN WRIGHT GIZER & McRAE LLP

6         6420 Wilshire Boulevard, 17th Floor

7         Los Angeles, California 90048

8         323 301 4660

9         jgray@earlysullivan.com

10        rhemar@earlysullivan.com

11   -and-

12        Jeffrey S. Simpkins (local counsel)

13        SIMPKINS LAW

14        102 E. 2nd Avenue

15        Williamson, West Virginia 25661

16        304 235 2735

17        simpkinslawoffice@gmail.com

18

19   FOR THE DEFENDANT FOX NEWS NETWORK LLC AND THE WITNESS:

20        Shawn Patrick Regan

21        HUNTON ANDREWS KURTH LLP

22        200 Park Avenue

23        New York, New York 10166

24        212 309 1046

25        sregan@HuntonAK.com

USCA4 Appeal: 22-1198    Doc: 58    Filed: 05/25/2022    Pg: 60 of 305
Case 2:19-cv-00236    Document 1055-1    Filed 12/03/21    Page 5 of 26 PageID #: 18339

BLANKENSHIP v                                                          Jay Wallace
FOX NEWS NETWORK                    Confidential                  November 16, 2021

3

```
 1   -and-

 2        J. Zak Ritchie

 3        HISSAM FORMAN DONOVAN RITCHIE PLLC

 4        707 Virginia Street East, Suite 260

 5        Charleston, West Virginia 25301

 6        304 615 2887

 7        zritchie@hfdrlaw.com

 8

 9   FOR THE DEFENDANTS CNN AND THE WASHINGTON POST:

10        Matthew Heins

11        WILLIAMS & CONNOLLY LLP

12        725 Twelfth Street, NW

13        Washington, DC 20005

14        202 434 5073

15        mheins@wc.com

16

17   ALSO PRESENT:

18        Steve Potenza - Fox News Deputy General Counsel

19        Michael Sparks

20        Don Blankenship

21        Juan Torres - Lexitas Videographer

22

23

24

25
```

```
                                                           4
 1                        INDEX
                                            PAGE
 2
     Appearances.................................     2
 3   Proceedings.................................     5
     Stipulations................................     6
 4
     JAY WALLACE
 5        Examination by Mr. Gray................     6

 6   Signature and Changes.......................    52
     Reporter's Certificate......................    54
 7

 8   DEPOSITION EXHIBITS                      IDENTIFIED

 9   Exhibit 1      Declaration of Jay Wallace in
                    Support of Fox News Network
10                  LLC's Motion for Summary
                    Judgment.......................    28
11
     Exhibit 2      5/6/2018 email to Suzanne Scott,
12                  Copying Jay Wallace, from Rupert
                    Murdoch........................    29
13

14

15

16

17

18

19

20

21

22

23

24

25
```

5

```
 1                  P R O C E E D I N G S

 2              THE VIDEOGRAPHER:  We are on the record

 3   on November 16, 2021, at approximately 12:33 p.m.

 4   Eastern Time for the remote video deposition of Mr. Jay

 5   Wallace, in the matter of Don Blankenship versus Fox

 6   News Network LLC, et al.

 7              My name is Juan Torres, and I am the

 8   videographer on behalf of Lexitas.

 9              All appearances will be noted on the

10   stenographic record.

11              Will the court reporter please swear in the

12   witness.

13                  (Witness sworn.)

14              MR. REGAN:  I'm sorry, I didn't hear

15   that.  Jeremy, was that you or someone else?

16              MR. GRAY:  It was not me.  I don't know

17   what that was.  Michael maybe.

18              MR. SPARKS:  I was unmuted accidentally.

19   So going back to mute.

20              MR. GRAY:  All right.

21              MR. REGAN:  Okay, Mike.  It was nice to

22   hear from you.

23          Do we want to do our appearances or no?

24              MR. GRAY:  I think the videographer said

25   it will be according to what's in the --
```

USCA4 Appeal: 22-1198    Doc: 58    Filed: 05/25/2022    Pg: 63 of 305

6

1              THE VIDEOGRAPHER:  Yes, it will be noted

2     on the stenographic record, so no appearances needed.

3              MR. REGAN:  Well, let me just note, this

4     is Shawn Regan from Hunton Andrews Kurth LLP.  I'm

5     appearing on behalf of Defendant Fox News Network LLC,

6     representing Mr. Wallace today as well in his capacity

7     as a deponent.

8              And, Jeremy, I expect -- we'll just do it now.

9     We'll designate the deposition "confidential" subject to

10    review.  And we'll reserve the right to review and sign,

11    also.

12                       JAY WALLACE,

13    having been first duly sworn, testified as follows:

14

15

16

17

18

19

20

21

22

23

24

25

BLANKENSHIP v                                                            Jay Wallace
FOX NEWS NETWORK                    Confidential                    November 16, 2021

9

1 ████████

2 ████████████

3 ███████████████████████████████████

4 ██████████████████████████████████████

5 ███████████████████████████████████████

6 ██████████████

7 ███████████████████████████

8 ██████████████████████████████████████

9 ████████████████████████████████

10 ███████████████

11 █████████████████████████████████

12 ██████████████

13 ██████████████████████████████████████

14 ████████████████████████████████████████

15 ████████████████████

16 ███████████████

17      Q.   Where are you currently employed?

18      A.   Fox News Media in New York City.

19      Q.   And what's your title?

20      A.   My title is president and executive editor.

21      Q.   How long have you held that position?

22      A.   Approximately three years or so.

23      Q.   In 2018, were you employed by Fox News Network

24 LLC?

25      A.   Yes.

USCA4 Appeal: 22-1198    Doc: 58    Filed: 05/25/2022    Pg: 65 of 305



```
 1      Q.   Is it okay if I refer to that as Fox News from

 2   now on?  Will you understand that that's what I'm

 3   referring to, that entity that employed you in 2018?

 4      A.   Yes.

 5      Q.   What was your title in 2018 when you were

 6   employed by Fox News?

 7      A.   President and executive editor.
```

BLANKENSHIP v                                                          Jay Wallace
FOX NEWS NETWORK                    Confidential                  November 16, 2021

13



15      Q.    (BY MR. GRAY)   In 2018, was Rupert Murdoch the

16   acting chief executive of Fox News?

17             MR. REGAN:  Objection.

18             As best you know.

19      A.    I believe -- I believe he was then.

20      Q.    (BY MR. GRAY)   Did you report to Rupert

21   Murdoch in 2018?

22      A.    Yes, I believe so.  Yes.

23      Q.    Was that a direct reporting relationship?

24             MR. REGAN:  Objection.

25             If you know.

14

1        A.    I'm trying to remember the actual time

2    where --

3              MR. REGAN:   Don't speculate, but if you

4    know, you know, as best you can, answer the question.

5    If you don't know, you don't know.

6        A.    Yes.

7    Q.    (BY MR. GRAY)   In -- well, we can come back to

8    that.

9              What were your general duties and

10   responsibilities as an executive at Fox News in 2018?

11             MR. REGAN:   Objection.

12             You can answer.

13       A.    My oversight was of the News division.  Within

14   the News division, you know, bureaus, technical support,

15   news gathering, things that went into covering news and

16   politics.

17

18

19

20

21

22

23

24

25

BLANKENSHIP v                                                    Jay Wallace
FOX NEWS NETWORK              Confidential              November 16, 2021

15

1  ████████████████████████████████████████████

2  ██████████████████████████

3  ███████████████████████████████████████████

4  ██████████████████████████████████████

5  ██████████████████████████████████████████████

6  ███████████████████

7  ████████████████████████████

8  ███████████████████

9  ███████████████████████████████████████████

10 ███████████████████████████████████████████

11 ████████████████████████████████████████████

12 █████████████████████████████████████

13 ██████████████████████████

14     Q.   (BY MR. GRAY)   In 2018, is it correct to say

15 that the program that aired during the daytime on Fox

16 News was generally what would be described as straight

17 news?

18              MR. REGAN:   Objection.

19              You can answer.

20     A.   Yeah, straight news mostly.

21     Q.   (BY MR. GRAY)   And did I hear you correctly

22 that to varying degrees you supervised the editorial

23 decisions made by the producers and the hosts of those

24 news shows?

25              MR. REGAN:   Objection.  I don't think

USCA4 Appeal: 22-1198    Doc: 58        Filed: 05/25/2022    Pg: 69 of 305
Case 2:19-cv-00236   Document 1055-1   Filed 12/03/21   Page 14 of 26 PageID #: 18348

BLANKENSHIP v                                                           Jay Wallace
FOX NEWS NETWORK              Confidential                         November 16, 2021

18

1    for the country.

2        Q.    (BY MR. GRAY)   In 2018, when you were an

3    executive at Fox News, was it proper for one of the

4    factors to be considered in editorial judgments about

5    stories that were going to be broadcast, if the purpose

6    of that was to help or harm a particular political

7    candidate?

8        A.    No.





18      Q.   (BY MR. GRAY)  Sure.  Let me ask the question

19  again.

20          In 2018, did you believe it would have been

21  appropriate for either a producer or a host of a Fox

22  show -- a Fox News show to take sides in a political

23  race and shape the stories that they covered to either

24  help or harm a particular candidate?

25      A.   No.

BLANKENSHIP v                                                    Jay Wallace
FOX NEWS NETWORK              Confidential                  November 16, 2021

20

1  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

2  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

3  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

4  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

5  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

6  ▬▬▬▬▬▬▬▬▬

7  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

8  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

9  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

10 ▬▬▬▬▬▬▬

11 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

12 ▬▬▬

13 ▬▬▬▬▬▬▬▬

14 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

15 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.

16     Q.   (BY MR. GRAY) ▬▬▬▬▬▬▬▬▬▬▬

17 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

18 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

19     Would it have been appropriate in 2018 for

20 Senator Mitch McConnell to have influence over the

21 editorial judgments made by those that were in charge of

22 various shows at Fox News?

23          MR. REGAN:  Objection.

24          You can answer.

25     A.   No.

22



24    Q.    (BY MR. GRAY)  So, Mr. Wallace, did you have
25 responsibility in the April, May, June 2018 timeframe

USCA4 Appeal: 22-1198    Doc: 58        Filed: 05/25/2022    Pg: 73 of 305
Case 2:19-cv-00236   Document 1055-1   Filed 12/03/21   Page 18 of 26 PageID #: 18352

BLANKENSHIP v                                                        Jay Wallace
FOX NEWS NETWORK                    Confidential               November 16, 2021

23



```
 1    for those shows?  Did they report up to you in any way?

 2                MR. REGAN:  Objection.

 3           You can answer.

 4       A.   No.

 5       Q.   (BY MR. GRAY)  I'm sorry?

 6       A.   No, opinion shows.  I dealt with the news

 7    shows.

 8       Q.   Was Martha MacCallum's program in 2018 one of

 9    the shows that reported ultimately up to you?

10       A.   For news, yes.  She's one of our news anchors.

11       Q.   In 2018, did Fox News have any written

12    policies regarding the vetting or checking of the

13    accuracy of the information that was broadcast?

14                MR. REGAN:  Objection.

15           You can answer.

16       A.   No.

17

18

19

20

21

22

23

24

25
```

25



17     Q.    (BY MR. GRAY)   In 2018, did Fox News have any

18  written standards or guidelines regarding ethical

19  journalism?

20              MR. REGAN:   Objection.

21              You can answer.

22     A.   No.

41



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24      Q.    What do you mean when you say that he was

25  simply sharing an observation?

USCA4 Appeal: 22-1198 Doc: 58 Filed: 05/25/2022 Pg: 76 of 305

Case 2:19-cv-00236 Document 1055-1 Filed 12/03/21 Page 21 of 26 PageID #: 18359

BLANKENSHIP v
FOX NEWS NETWORK
Confidential

Jay Wallace
November 16, 2021

42



1    A.    An observation about the news, what was going

2  on in the news, what was happening at the moment.

USCA4 Appeal: 23-1198    Doc: 58    Filed: 05/25/2023    Pg: 77 of 305

BLANKENSHIP v
FOX NEWS NETWORK
Confidential

Jay Wallace
November 16, 2021

48



53

1          I, JAY WALLACE, have read the foregoing
   deposition and hereby affix my signature that same is
2  true and correct, except as noted above.

3

4

                    _____
5                              JAY WALLACE

6

7  THE STATE OF _____)
   COUNTY OF _____)
8
          Before me, _____, on
9  this day personally appeared JAY WALLACE, known to me
   (or proved to me under oath or through
10 _____) (description of identity
   card or other document) to be the person whose name is
11 subscribed to the foregoing instrument and acknowledged
   to me that they executed the same for the purposes and
12 consideration therein expressed.
          Given under my hand and seal of office this
13 _____ day of _____, _____.

14

15

                    _____
16                  NOTARY PUBLIC IN AND FOR
                    THE STATE OF _____
17                  COMMISSION EXPIRES: _____

18

19

20

21

22

23

24

25

54

1            UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF WEST VIRGINIA
2                 CHARLESTON DIVISION

3    DON BLANKENSHIP,            )
         Plaintiff,             )
4                               )
     v.                         ) Case No. 2:19-cv-00236
5                               )
     FOX NEWS NETWORK LLC,      )
6    et al.,                    )
         Defendants.            )

7

8

9              REPORTER'S CERTIFICATION

10    REMOTE VIDEOTAPED DEPOSITION OF JAY WALLACE

11              NOVEMBER 16, 2021

12

13      I, Julie C. Brandt, Certified Shorthand Reporter in

14   and for the State of Texas, hereby certify to the

15   following:

16      That the witness, JAY WALLACE, was duly sworn by

17   the officer and that the transcript of the oral

18   deposition is a true record of the testimony given by

19   the witness;

20      Before completion of the deposition, review of the

21   transcript [X] was [ ] was not requested.  If requested,

22   any changes made by the deponent (and provided to the

23   reporter) during the period allowed are appended hereto;

24      That pursuant to information given to the

25   deposition officer at the time said testimony was taken,

55

```
 1   the following includes counsel for all parties of

 2   record:

 3   FOR THE PLAINTIFF:

 4       Jeremy Gray
         Ryan Hemar
 5       EARLY SULLIVAN WRIGHT GIZER & McRAE LLP
         6420 Wilshire Boulevard, 17th Floor
 6       Los Angeles, California 90048
         323 301 4660
 7       jgray@earlysullivan.com
         rhemar@earlysullivan.com

 8
     -and-
 9
         Jeffrey S. Simpkins (local counsel)
10       SIMPKINS LAW
         102 E. 2nd Avenue
11       Williamson, West Virginia 25661
         304 235 2735
12       simpkinslawoffice@gmail.com


13
     FOR THE DEFENDANT FOX NEWS NETWORK LLC AND THE WITNESS:
14
         Shawn Patrick Regan
15       HUNTON ANDREWS KURTH LLP
         200 Park Avenue
16       New York, New York 10166
         212 309 1046
17       sregan@HuntonAK.com

18   -and-

19       J. Zak Ritchie
         HISSAM FORMAN DONOVAN RITCHIE PLLC
20       707 Virginia Street East, Suite 260
         Charleston, West Virginia 25301
21       304 615 2887
         zritchie@hfdrlaw.com

22

23   FOR THE DEFENDANTS CNN AND THE WASHINGTON POST:

24       Matthew Heins
         WILLIAMS & CONNOLLY LLP
25       725 Twelfth Street, NW
```

56

```
1        Washington, DC 20005
         202 434 5073
2        mheins@wc.com

3        I further certify that I am neither counsel for,

4   related to, nor employed by any of the parties or

5   attorneys in the action in which this proceeding was

6   taken, and further that I am not financially or

7   otherwise interested in the outcome of the action.

8        Certified to by me _____, 2021.

9

10

11       _____
         Julie C. Brandt, CSR, RMR, CRR
12       Texas CSR No. 4018
         Expiration Date:  10/31/23
13
         LEXITAS
14       Texas Firm Registration No. 736
         999 Old Eagle School Road, Suite 118
15       Wayne, Pennsylvania 19087-1707
         215 494 7650
16

17  Job No. 2021-819162

18

19

20

21

22

23

24

25
```

# EXHIBIT 2

** CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER **

```
 1              UNITED STATES DISTRICT COURT
 2            SOUTHERN DISTRICT OF WEST VIRGINIA
 3                  CHARLESTON DIVISION
 4
 5     _____
                                      )
 6     DON BLANKENSHIP,               )
                                      )
 7              Plaintiff,            )
                                      )
 8         vs.                        )   Case No. 2:19-cv-00236
                                      )
 9     FOX NEWS NETWORK, LLC,         )
       et al.,                        )
10                                    )
                Defendants.           )
11     _____)
12
13
14
15      ** CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER **
16            REMOTE VIDEOTAPED DEPOSITION OF
17                   ANTONIA FERRIER
18             Friday, November 19, 2021
19                    Volume I
20
21
22     Reported by:
       NADIA NEWHART
23     CSR No. 8714
24     Job No. 4955744
25     PAGES 1 - 74
```

Page 1

```
 1              UNITED STATES DISTRICT COURT

 2            SOUTHERN DISTRICT OF WEST VIRGINIA

 3                  CHARLESTON DIVISION

 4

 5      _____
                                       )
 6      DON BLANKENSHIP,               )
                                       )
 7                 Plaintiff,          )
                                       )
 8          vs.                        )  Case No. 2:19-cv-00236
                                       )
 9      FOX NEWS NETWORK, LLC,         )
        et al.,                        )
10                                     )
                   Defendants.         )
11      _____)

12

13

14

15

16           Remote videotaped deposition of

17      ANTONIA FERRIER, Volume I, taken on behalf of

18      Plaintiff, with all participants appearing remotely

19      via videoconference and the witness testifying from

20      Washington, D.C., beginning at 10:59 a.m. and ending

21      at 12:09 p.m. on Friday, November 19, 2021, before

22      NADIA NEWHART, Certified Shorthand Reporter No. 8714.

23

24

25

                                             Page 2
```

** CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER **

```
 1    APPEARANCES:

 2

 3    For Plaintiff:

 4         SIMPKINS LAW OFFICE, PLLC

 5         BY:  JEFFREY S. SIMPKINS, ESQ.

 6         BY:  C.M. SPARKS, ESQ.

 7         102 East 2nd Avenue

 8         Williamson, West Virginia 25661

 9         304-235-2735

10         simpkinslawoffice@gmail.com

11         (Remote appearance.)

12             - and -

13         EARLY SULLIVAN WRIGHT GIZER & McRAE, LLP

14         BY:  JEREMY GRAY, ESQ.

15         6420 Wilshire Blvd 17th Floor

16         Los Angeles, California 90048

17         323-301-4660

18         jgray@earlysullivan.com

19         (Remote appearance.)

20

21

22

23

24

25
```

Page 3

```
 1    APPEARANCES (Continued):

 2

 3    For Defendant Fox News Network, LLC:

 4         HUNTON ANDREWS KURTH, LLP

 5         BY:  SHAWN PATRICK REGAN, ESQ.

 6         200 Park Avenue

 7         New York, New York 10166

 8         212-309-1000

 9         sregan@huntonak.com

10         (Remote appearance.)

11             - and -

12         HISSAM FORMAN DONOVAN RITCHIE, PLLC

13         BY:  J. ZAK RITCHIE, ESQ.

14         707 Virginia Street East, Suite 260

15         Charleston, West Virginia 25301

16         681-265-3802

17         zritchie@hfdrlaw.com

18         (Remote appearance.)

19

20

21

22

23

24

25

                                        Page  4
```

** CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER **

```
 1    APPEARANCES (Continued):

 2

 3    For Defendant The Washington Post and CNN:

 4         WILLIAMS & CONNOLLY, LLP

 5         BY:  MATTHEW HEINS, ESQ.

 6         725 Twelfth Street, N.W.

 7         Washington, D.C. 20005

 8         202-434-5000

 9         mheins@wc.com

10         (Remote appearance.)

11

12    For the Witness:

13         WILEY REIN, LLP

14         BY:  STEPHEN J. OBERMEIER, ESQ.

15         1776 K Street NW

16         Washington, D.C. 20006

17         202-719-7000

18         sobermeier@wiley.law

19         (Remote appearance.)

20

21    Also Present:

22         DON BLANKENSHIP

23         JOANN YAGER, Videographer

24         (Remote appearance.)

25
```

Page 5

** CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER **

```
 1                        INDEX

 2    WITNESS                          EXAMINATION

 3    ANTONIA FERRIER

 4    Volume I

 5              BY MR. SIMPKINS                  9

 6

 7

 8                      EXHIBITS

 9    NUMBER            DESCRIPTION            PAGE

10    Exhibit 1   Email chain dated 5/3/18      27

11                and 5/4/18; FoxNews_008739

12

13

14             INSTRUCTION NOT TO ANSWER

15                  Page      Line

16                   15        9

17                   53        16

18                   60        14

19                   62        23

20                   70        5

21

22

23

24

25

                                          Page  6
```

** CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER **

```
 1              Friday, November 19, 2021

 2                    10:59 a.m.

 3

 4         THE VIDEOGRAPHER:  Good morning.  We are on

 5    the record at 10:59 a.m. on November 19th, 2021.       10:59:36

 6    This is the beginning of media number 1 of the

 7    recorded deposition of Antonia Ferrier in the matter

 8    of Don Blankenship versus Fox News Network.  This

 9    deposition is being conducted using Veritext Virtual

10    Zoom technology and all participants are attending      10:59:55

11    remotely.

12         Please note microphones are sensitive and may

13    pick up whispers, private conversations and cellular

14    interference.  Until all parties agree to go off the

15    record, audio- and video-recording will continue to    11:00:10

16    take place.

17         My name is JoAnn Yager.  I am the

18    videographer.  The court reporter is Nadia Newhart,

19    and we are here with Veritext Legal Solutions.  If

20    there are any objections to proceedings, please        11:00:23

21    state them at the time of your appearance, beginning

22    with the noticing attorney.

23         THE REPORTER:  Mr. Simpkins?

24         MR. SIMPKINS:  Oh, sorry.  Jeff Simpkins from

25    Simpkins Law representing the plaintiff.  I would      11:00:38
```

Page 7

** CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER **

```
 1    like to put on the record that Michael Sparks,

 2    litigation specialist, is in the room along with the

 3    plaintiff, Don Blankenship.

 4         MR. REGAN:  Shawn Regan on behalf -- Shawn

 5    Regan of Hunton Andrews Kurth, LLP on behalf of Fox    11:00:52

 6    News Network, LLC.  I'm also joined today remotely

 7    by my colleague, J. Zak Ritchie, of the Hissam

 8    Forman firm, also on behalf of Fox News Network,

 9    LLC.

10         MR. OBERMEIER:  Steve Obermeier from Wiley       11:01:11

11    Rein on behalf of the deponent, Antonia Ferrier.  I

12    have a couple things I want put on the record, but

13    I'm going to just wait until we get started, if

14    that's all right, Jeff.

15         MR. SIMPKINS:  Sure.                             11:01:23

16         MR. HEINS:  Matthew Heins from Williams &

17    Connolly on behalf of CNN and The Washington Post.

18         MR. GRAY:  Jeremy Gray on behalf of the

19    Plaintiff.

20         THE VIDEOGRAPHER:  It looks like that's          11:01:50

21    everyone.

22         The witness may be sworn in.

23         THE REPORTER:  Please raise your right hand.

24         Do you solemnly swear that the testimony

25    you're about to give in this deposition will be the
```

Page 8



```
 1    truth, the whole truth and nothing but the truth, so

 2    help you God?

 3            THE WITNESS:  I do.

 4

 5                   ANTONIA FERRIER,

 6       having been first duly sworn, was examined and

 7                   testified as follows:

 8

 9
```

11:02:14

Page 9



```
 1

       ▮

       ▮

       ▮

       ▮

       ▮

       ▮


       ▮

       ▮

       ▮

       ▮

       ▮

14        Q      Thank you.    Now, were you employed by Senator

15     Mitch McConnell as his senior communication          11:11:18

16     strategist from 2015 to 2018?

17        A      That's correct.

18        Q

       ▮

       ▮

       ▮

       ▮

       ▮

       ▮

       ▮                                                     11:11:46
```

Page 19



1

12    Q    Okay.  Let me go back just a second.

13         A spokesperson is, basically, defined as a

14   person who speaks as the representative of another.

15   Would you agree to that?                              11:12:27

16    A    Yes.

17

                                                           11:12:46

Page 20



23    Q    Sorry.    Does Ms. MacCallum anchor a show

24  telecast by Fox News called "The Story With Martha

25  MacCallum"?                                    11:16:48

Page 24

** CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER **



1    A    That seems right, but I -- I don't know the

2    actual name of her program.   But that sounds right

3    to me.

4    Q    Okay.   Now, did Ms. MacCallum anchor the same

5    show in May of 2018?                                    11:17:01

6    A    No.   I think she moved -- she moved time

7    slots.   I think she was in a different slot, and

8    then -- and now she's in the afternoon.

9    Q    That was my next question.

10       Is it true that she was -- she was initially    11:17:12

11   at a 7:00 p.m. position, and is now that she's in a

12   3:00 p.m. position, time slot, as you call it?

13   A    Yes.   There -- to my knowledge, in watching a

14   lot of different television news media, she went

15   from 7:00 to 3:00, yes.                                 11:17:29

16

                                                          11:17:53

                                                 Page 25



1

And so my job was to -- to -- one of my --

many aspects of my job was to protect and defend

him.  And I sent Ms. MacCallum that story.          11:26:35

Q

** CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER **



18   "Yes I read this.  There are so

19   many issues with DB, never enough

20   time to hit them all.

11:28:49

Page 36



11:34:39

11  Q   This email was sent by you to Martha

12  MacCallum two minutes later at 10:52 p.m.; is that

13  correct?

14  A   Yes.

15  Q   And in that, you wrote, "Between us my boss    11:34:50

16  is pretty ticked."

17      Do you see that?

18  A   I do.

19  Q   Who were you referring to as my boss?

20  A   Senator McConnell.                            11:35:00

21  Q   Okay.  What did you mean by pretty ticked?

22  A   Honestly, I -- I don't even really recall

23  writing this email, so all I can give -- all I can

24  say, Mr. Simpkins, which I hope is helpful, is that

25  as we've gone through previously about what my job   11:35:17

Page 43

** CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER **

```
 1        was, part of my job was to defend my boss.

 2               And I -- the -- like I mentioned before, the

 3        two ads that Mr. Blankenship ran were very -- in my

 4        personal opinion, were below the belt, slightly

 5        sexist.                                        11:35:41

 6               I found them absolutely horrific.  And so I

 7        was -- that's -- that's my view, and I don't

 8        remember writing this email until I looked at this

 9        email that you presented this morning.

10               But when you say -- when you ask me about, is  11:35:55

11        my boss pretty ticked, I don't remember writing the

12        email.  But I can just tell you that, generally

13        speaking, when those ads came out against Senator

14        McConnell, working for him, it was part of my job to

15        defend him, and, you know, I -- I did not like them.  11:36:09

16          Q    Okay.  Pretty ticked means he was mad?

17               MR. OBERMEIER:  Objection; calls for

18        speculation.

19               Are you asking what she meant by pretty

20        ticked?                                        11:36:23

21               MR. SIMPKINS:  Yes.

22          Q    By pretty ticked, did you mean that

23        Mr. McConnell was mad, that he was angered, that he

24        was outraged?

25               MR. OBERMEIER:  I'm going to make the same  11:36:34
```

Page 44

** CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER **

```
1      objection.

2             But go ahead.

3      BY MR. SIMPKINS:

4         Q    Go ahead.

5         A    Well, just again, Mr. Simpkins, I don't     11:36:37

6      remember any specific moment at that time.  I can

7      just rely on this email and say I wrote it.  So

8      (technical difficulty) -- just note that.  I --

9             MR. SIMPKINS:  Time out.  I didn't get the

10     last ten seconds of your response.               11:36:59

11            THE WITNESS:  Okay.  I was saying that -- I

12     said that, you know, I -- I only saw this email this

13     morning.  I didn't even really -- I didn't remember

14     sending this email, so I can't say to you -- or

15     anything specific other than, you know, what I wrote  11:37:18

16     is what I wrote at the time.

17     BY MR. SIMPKINS:

18        Q    Okay.  With whom was Senator McConnell pretty

19     ticked?

20            MR. OBERMEIER:  I'm sorry.  What was that      11:37:35

21     question?

22     BY MR. SIMPKINS:

23        Q    With whom was Senator McConnell pretty

24     ticked?

25            MR. OBERMEIER:  Objection; calls for          11:37:39
```

Page 45

** CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER **

```
 1   speculation.  You can ask her what she thinks pretty

 2   ticked means, but I'm going to instruct her not to

 3   answer anything about what Senator McConnell was

 4   thinking.  She can't even say that anyways.  It's

 5   speculative.                                    11:37:51

 6   BY MR. SIMPKINS:

 7       Q    Do you know who Senator McConnell was ticked

 8   at?

 9            MR. OBERMEIER:  Same objection.  You can ask

10   Senator McConnell.                              11:37:59

11   BY MR. SIMPKINS:

12       Q    Was Senator McConnell pretty ticked at Don

13   Blankenship?

14            MR. OBERMEIER:  Are you asking if that's her

15   opinion of --                                   11:38:05

16            MR. SIMPKINS:  Yes.

17            THE WITNESS:  I will -- I will make the

18   following statement:  Again, Mr. Blankenship aired

19   advertisements that went after Senator McConnell and

20   his wife and his family.  So I cannot recall      11:38:22

21   anything specific to answer this for you.  But part

22   of my job, as I said, was to protect and defend my

23   boss, and -- and that's what I was doing and -- as

24   you can see in the email.

25   BY MR. SIMPKINS:                                11:38:50
```

Page 46

** CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER **



1    Q   So it's your opinion that Senator McConnell

2    was pretty ticked at Don Blankenship for running

3    these what you call below-the-belt ads?

4    A   I'm saying that -- I -- I'm saying that I was

5    pretty ticked.  And looking at this email, that is    11:39:00

6    what I wrote at the time, was what you -- what

7    you've said and what -- what you've outlined in the

8    email, which is in the email.

9    Q   Okay.  So you were pretty ticked, and you

10   also wrote that "My boss is pretty ticked."  And    11:39:21

11   you're referring --

12   A   I did write that.

13   Q

                                                           11:39:52

                                                    Page 47

** CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER **

1

2

3

4          I, ANTONIA FERRIER, do hereby declare under

5     penalty of perjury that I have read the foregoing

6     transcript; that I have made any corrections as

7     appear noted, in ink, initialed by me, or attached

8     hereto; that my testimony as contained herein, as

9     corrected, is true and correct.

10          EXECUTED this _____ day of _____,

11     20_____, at _____, _____.
                      (City)                   (State)

12

13

14

                   _____

15                        ANTONIA FERRIER

                            VOLUME I

16

17

18

19

20

21

22

23

24

25

                                            Page 73

** CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER **

1          I, the undersigned, a Certified Shorthand

2     Reporter of the State of California, do hereby

3     certify:

4          That the foregoing proceedings were taken

5     before me at the time and place herein set forth;

6     that any witnesses in the foregoing proceedings,

7     prior to testifying, were placed under oath; that a

8     record of the proceedings was made by me using

9     machine shorthand which was thereafter transcribed

10    under my direction; further, that the foregoing is

11    an accurate transcription thereof.

12         I further certify that I am neither

13    financially interested in the action nor a relative

14    or employee of any attorney of any of the parties.

15         IN WITNESS WHEREOF, I have this date

16    subscribed my name.

17    Dated: November 22, 2021

18

19

20

21

                        *Nadia Newhart*

22                      NADIA NEWHART

                        CSR NO. 8714

23

24

25

                                        Page 74

EXHIBIT 3

**In the Matter Of:**

*BLANKENSHIP v*

*FOX NEWS NETWORK*

---

*MARTHA MACCALLUM*

*November 15, 2021*

---



BLANKENSHIP v                                                    Martha MacCallum
FOX NEWS NETWORK                    Confidential                 November 15, 2021

1

```
 1            UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF WEST VIRGINIA
 2                CHARLESTON DIVISION

 3   DON BLANKENSHIP,              )
          Plaintiff,              )
 4                                )
     v.                           ) Case No. 2:19-cv-00236
 5                                )
     FOX NEWS NETWORK LLC,         )
 6   et al.,                      )
          Defendants.            )
 7
```

 8   ********************************************************

 9                    "CONFIDENTIAL"

10       REMOTE ORAL AND VIDEOTAPED DEPOSITION OF

11                  MARTHA MacCALLUM

12                  NOVEMBER 15, 2021

13   ********************************************************

14       REMOTE ORAL AND VIDEOTAPED DEPOSITION OF MARTHA

15   MacCALLUM, produced as a witness at the instance of the

16   Plaintiff, and duly sworn, was taken remotely in the

17   above-styled and numbered cause on the 15th day of

18   November, 2021, from 8:57 a.m. to 11:52 a.m. (Eastern

19   Standard Time), via Zoom, before Julie C. Brandt, RMR,

20   CRR, and CSR in and for the State of Texas, reported by

21   machine shorthand in Fort Worth, Texas, with the witness

22   located in New York, New York, pursuant to the Federal

23   Rules of Civil Procedure and the provisions stated on

24   the record or attached hereto.

25

2

```
 1              REMOTE APPEARANCES

 2   FOR THE PLAINTIFF:

 3        Helena R. Jackson

 4        162 Quail Walk

 5        Pikeville, Kentucky 41501

 6        859 533 4901

 7        hracin@gmail.com

 8   -and-

 9        Jeremy Gray

10        EARLY SULLIVAN WRIGHT GIZER & McRAE LLP

11        6420 Wilshire Boulevard

12        17th Floor

13        Los Angeles, California 90048

14        323 301 4660

15        jgray@earlysullivan.com

16

17   FOR THE DEFENDANT FOX NEWS NETWORK LLC AND THE WITNESS:

18        Shawn Patrick Regan

19        HUNTON ANDREWS KURTH LLP

20        200 Park Avenue

21        New York, New York 10166

22        212 309 1046

23        sregan@HuntonAK.com

24   -and-

25        J. Zak Ritchie
```

3

1       HISSAM FORMAN DONOVAN RITCHIE PLLC

2       707 Virginia Street East, Suite 260

3       Charleston, West Virginia 25301

4       304 615 2887

5       zritchie@hfdrlaw.com

6

7   ALSO PRESENT:

8       Aydaline Garcia - Lexitas Videographer and Doc Tech

9       Bernard Gugar - Fox News General Counsel

10      Lesley West - Fox News In-House Counsel

11      Michael Sparks

12

13

14

15

16

17

18

19

20

21

22

23

24

25

BLANKENSHIP v                                                    Martha MacCallum
FOX NEWS NETWORK                    Confidential              November 15, 2021

4

```
 1                         INDEX
                                                    PAGE
 2
      Appearances................................    2
 3    Proceedings................................    5
      Stipulations...............................   99
 4
      MARTHA MacCALLUM
 5         Examination by Ms. Jackson.............    6

 6    Signature and Changes......................  100
      Reporter's Certificate.....................  102
 7

 8    DEPOSITION EXHIBITS                    IDENTIFIED

 9    Exhibit 1       Video clip...................   10

10    Exhibit 2       Video clip...................   34

11    Exhibit 3       Video clip...................   40

12    Exhibit 4       Article in The New York Times
                      "A 'Bridge' to China, and her
13                    Family's Business, in the Trump
                      Cabinet"....................   42
14
      Exhibit 5       Article in The New York Times
15                    "Inspector General's Report
                      cites Elaine Chao for Using
16                    Office to Help Family"........   58

17    Exhibit 6       OpenSecrets article "Karl Rove's
                      Crossroads GPS is dead, long
18                    live his multi-million dollar
                      'dark money' operation".......   66
19
      Exhibit 7       May 2018 message string between
20                    Antonio Ferrier and Martha
                      MacCallum FoxNews_008739......   71
21
      Exhibit 8       5/6/2018 email to Suzanne Scott,
22                    Copying Jay Wallace from Rupert
                      Murdoch.......................   75
23

24

25
```

USCA4 Appeal: 22-1198    Doc: 58    Filed: 05/25/2022    Pg: 111 of 305
Case 2.19-cv-00236    Document 1055-3    Filed 12/03/21    Page 7 of 17 PageID #: 18390

BLANKENSHIP v                                                    Martha MacCallum
FOX NEWS NETWORK                    Confidential                November 15, 2021

5

```
 1                    P R O C E E D I N G S
 2              THE VIDEOGRAPHER:  We are going on the
 3   record for the remote video deposition of Martha
 4   MacCallum on November 15, 2021, at 8:57 a.m. Eastern
 5   Time, in the matter of Don Blankenship versus Fox News
 6   Network LLC, et al.
 7              My name is Aydaline Garcia and I will be
 8   videorecording today's deposition and sharing documents
 9   on behalf of Lexitas.
10              Will counsel please introduce themselves for
11   the record and who they represent, beginning with the
12   party noticing this proceeding, please.
13              MS. JACKSON:  My name is Helena Jackson.
14   I represent Don Blankenship, the Plaintiff in this
15   proceeding.
16              MR. REGAN:  This is Shawn Regan, Hunton
17   Andrews Kurth LLP, appearing on behalf of the Defendant
18   Fox News Network LLC and also representing today
19   Ms. MacCallum for purposes of her deposition.
20              MR. RITCHIE:  This is Zak Ritchie, also
21   on behalf of Defendant Fox News Network LLC.
22              MR. REGAN:  I should have said I'm also
23   joined here today by Bernard Gugar, who is in-house
24   counsel at Fox News Network LLC and -- is general
25   counsel, excuse me, of Fox News Network, and by Lesley
```

USCA4 Appeal: 22-1198    Doc: 58    Filed: 05/25/2022    Pg: 112 of 305

6

1    West, who is also an in-house lawyer, senior vice

2    president at Fox News Network LLC.

3                    THE VIDEOGRAPHER:  Will the court

4    reporter please swear in the witness.

5                    MARTHA MacCALLUM,

6    having been first duly sworn, testified as follows:

7                    EXAMINATION

8    ██████████████████

9    ████████████████████████████████████████████

10   ██████████

11   ████████████████████████

12   ██████████████████████████████

13   ███████████████████████████████████████████

14   █████████████████████████████████████████████████

15   ███████████████████████████████████████████

16   ███████████████████████████████████████████

17   ████████████████

18   ██████████████████████████████

19   ████████████████████

20   █████████████████████████████████████████████

21   █████████████████████████████████████████████

22   ██████████

23   ██████████████████████████

24   ████████████████

25   ████████████████████████████████████████████████



35

1

2

3

4

5      Q.   (BY MS. JACKSON)   In fact, you said Don

6   Blankenship gained as much as 8 points.   Correct?

7      A.   I'm sure that was the case.   I don't recall

8   which poll it was at this point, but I'm sure that was

9   the case if I put it in the question.

10     Q.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

41



1    ██████████████████████████████████.

2       Q.    (BY MS. JACKSON)   Okay.   So please define for

3    me the terms "racially charged."

4                MR. REGAN:  Objection.

5           You can answer.

6       A.   Define "racially charged"?  Any -- anything

7    that -- I mean, to me it's something that's very

8    commonly understood.  Something that raises concerns

9    about race.

BLANKENSHIP v                                      Martha MacCallum
FOX NEWS NETWORK              Confidential         November 15, 2021

64



```
1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25     Q.   Are you aware of any poll that indicated that
```

BLANKENSHIP v                                           Martha MacCallum
FOX NEWS NETWORK              Confidential              November 15, 2021

65



1    Don Blankenship could not have won?

2         A.    No.   The election had not happened yet.

3         Q.    Do you have any evidence that Don Blankenship

4    was unelectable?

5         A.    I would say no one is unelectable.

BLANKENSHIP v
FOX NEWS NETWORK

Confidential

Martha MacCallum
November 15, 2021

86



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21     Q.    And Don Blankenship surged in the polls after

22   that debate, correct, you said 8 points?

23     A.    Based on that interview and that reporting,

24   yes, I believe that's the case.

25

USCA4 Appeal: 22-1198    Doc: 58    Filed: 05/25/2022    Pg: 118 of 305
Case 2:19-cv-00236   Document 1055-3   Filed 12/03/21   Page 14 of 17 PageID #: 18397

BLANKENSHIP v                                                    Martha MacCallum
FOX NEWS NETWORK              Confidential                       November 15, 2021

101

1          I, MARTHA MacCALLUM, have read the foregoing
   deposition and hereby affix my signature that same is
2  true and correct, except as noted above.

3

4

5          _____
                       MARTHA MacCALLUM

6

7  THE STATE OF _____)
   COUNTY OF _____)
8

9          Before me, _____, on
   this day personally appeared MARTHA MacCALLUM, known to
   me (or proved to me under oath or through
10 _____) (description of identity
   card or other document) to be the person whose name is
11 subscribed to the foregoing instrument and acknowledged
   to me that they executed the same for the purposes and
12 consideration therein expressed.
           Given under my hand and seal of office this
13 _____ day of _____, _____.

14

15

16         _____
           NOTARY PUBLIC IN AND FOR
           THE STATE OF _____
17         COMMISSION EXPIRES: _____

18

19

20

21

22

23

24

25

                                                                102

1               UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF WEST VIRGINIA
2                    CHARLESTON DIVISION

3   DON BLANKENSHIP,              )
        Plaintiff,               )
4                                 )
    v.                            ) Case No. 2:19-cv-00236
5                                 )
    FOX NEWS NETWORK LLC,         )
6   et al.,                       )
        Defendants.               )

7

8

9

10

11               REPORTER'S CERTIFICATION

12   REMOTE VIDEOTAPED DEPOSITION OF MARTHA MacCALLUM

13                  NOVEMBER 15, 2021

14

15      I, Julie C. Brandt, Certified Shorthand Reporter in

16   and for the State of Texas, hereby certify to the

17   following:

18      That the witness, MARTHA MacCALLUM, was duly sworn

19   by the officer and that the transcript of the oral

20   deposition is a true record of the testimony given by

21   the witness;

22      Before completion of the deposition, review of the

23   transcript [X] was [ ] was not requested.  If requested,

24   any changes made by the deponent (and provided to the

25   reporter) during the period allowed are appended hereto;

1        That pursuant to information given to the

2    deposition officer at the time said testimony was taken,

3    the following includes counsel for all parties of

4    record:

5    FOR THE PLAINTIFF:

6        Helena R. Jackson
         162 Quail Walk
7        Pikeville, Kentucky 41501
         859 533 4901
8        hracin@gmail.com

9    -and-

10       Jeremy Gray
         EARLY SULLIVAN WRIGHT GIZER & McRAE LLP
11       6420 Wilshire Boulevard
         17th Floor
12       Los Angeles, California 90048
         323 301 4660
13       jgray@earlysullivan.com

14   FOR THE DEFENDANT FOX NEWS NETWORK LLC AND THE WITNESS:

15       Shawn Patrick Regan
         HUNTON ANDREWS KURTH LLP
16       200 Park Avenue
         New York, New York 10166
17       212 309 1046
         sregan@HuntonAK.com

18   -and-

19       J. Zak Ritchie
         HISSAM FORMAN DONOVAN RITCHIE PLLC
20       707 Virginia Street East, Suite 260
         Charleston, West Virginia 25301
21       304 615 2887
         zritchie@hfdrlaw.com
22

23       I further certify that I am neither counsel for,

24   related to, nor employed by any of the parties or

25   attorneys in the action in which this proceeding was

USCA4 Appeal: 22-1198    Doc: 58       Filed: 05/25/2022    Pg: 121 of 305
Case 2:19-cv-00236   Document 1055-3   Filed 12/03/21   Page 17 of 17 PageID #: 18404

BLANKENSHIP v                                          Martha MacCallum
FOX NEWS NETWORK              Confidential             November 15, 2021

104

1   taken, and further that I am not financially or

2   otherwise interested in the outcome of the action.

3        Certified to by me _____, 2021.

4

5

6                          _____
                           Julie C. Brandt, CSR, RMR, CRR
7                          Texas CSR No. 4018
                           Expiration Date:  10/31/23
8
                           LEXITAS
9                          Texas Firm Registration No. 736
                           999 Old Eagle School Road, Suite 118
10                         Wayne, Pennsylvania 19087-1707
                           215 494 7650
11

12  Job No. 2021-819162

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT 4

```
 1              UNITED STATES DISTRICT COURT

 2            SOUTHERN DISTRICT OF WEST VIRGINIA

 3                  CHARLESTON DIVISION

 4

 5    _____
                                     )
 6    DON BLANKENSHIP,               )
                                     )
 7            Plaintiff,             )
                                     )
 8        vs.                        )   Case No. 2:19-cv-00236
                                     )
 9    FOX NEWS NETWORK LLC et al.,   )
                                     )
10            Defendants.            )
      _____)
11

12

13

14              ** CONFIDENTIAL **

15        REMOTE VIDEOTAPED DEPOSITION OF

16              K. RUPERT MURDOCH

17        Thursday, November 18, 2021

18                  Volume I

19

20

21

22    Reported by:
      NADIA NEWHART
23    CSR No. 8714
24    Job No. 4890949
25    PAGES 1 - 73
```

                                        Page 1

```
 1            UNITED STATES DISTRICT COURT

 2         SOUTHERN DISTRICT OF WEST VIRGINIA

 3               CHARLESTON DIVISION

 4

 5   _____
                                   )
 6   DON BLANKENSHIP,              )
                                   )
 7            Plaintiff,           )
                                   )
 8        vs.                      )   Case No. 2:19-cv-00236
                                   )
 9   FOX NEWS NETWORK LLC et al., )
                                   )
10            Defendants.          )
     _____)
11

12

13

14

15        Remote videotaped deposition of K. RUPERT

16   MURDOCH, Volume I, taken on behalf of Plaintiff,

17   with all participants appearing remotely via

18   videoconference and the witness testifying from

19   Los Angeles, California beginning at 9:36 a.m. and

20   ending at 11:36 a.m. on Thursday, November 18, 2021,

21   before NADIA NEWHART, Certified Shorthand Reporter No. 8714.

22

23

24

25

                                              Page 2
```

```
 1   APPEARANCES:

 2   For Plaintiff:

 3       EARLY SULLIVAN WRIGHT GIZER & McRAE, LLP

 4       BY:  JEREMY GRAY, ESQ.

 5       BY:  RYAN HEMAR, ESQ.

 6       6420 Wilshire Blvd 17th Floor

 7       Los Angeles, California 90048

 8       323-301-4660

 9       jgray@earlysullivan.com

10       rhemar@earlysullivan.com

11       (Remote appearance.)

12               - and -

13       SIMPKINS LAW OFFICE, PLLC

14       BY:  JEFFREY S. SIMPKINS, ESQ.

15       BY:  C.M. SPARKS, ESQ.

16       102 East 2nd Avenue

17       Williamson, West Virginia 25661

18       304-235-2735

19       simpkinslawoffice@gmail.com

20       (Remote appearance.)

21

22

23

24

25

                                      Page 3
```

```
 1    APPEARANCES (Continued):

 2    For Defendant Fox News Network, LLC:

 3          HUNTON ANDREWS KURTH,  LLP

 4          BY:  SHAWN PATRICK REGAN, ESQ.

 5          200 Park Avenue

 6          New York, New York 10166

 7          212-309-1046

 8          sregan@HuntonAK.com

 9          (Remote appearance.)

10                  - and -

11          HISSAM FORMAN DONOVAN RITCHIE, PLLC

12          BY:  J. ZAK RITCHIE, ESQ.

13          707 Virginia Street East, Suite 260

14          Charleston, West Virginia 25301

15          681-265-3802

16          zritchie@hfdrlaw.com

17          (Remote appearance.)

18

19    For Defendant News and Guts, LLC:

20          RITHOLZ LEVY FIELDS, LLP

21          BY:  JENNA L. HARRIS, ESQ.

22          1221 6th Avenue North

23          Nashville, Tennessee 37208

24          jharris@rlfllp.com

25          (Remote appearance.)
```

                                        Page 4

```
 1    APPEARANCES (Continued):

 2    For Defendant MSNBC CABLE:

 3          FROST BROWN TODD, LLC

 4          BY:  JARED M. TULLY, ESQ.

 5          500 Virginia Street, East, Suite 1100

 6          Charleston, West Virginia 25301

 7          304-348-2404

 8          jtully@fbtlaw.com

 9          (Remote appearance.)

10

11    For Defendant The Washington Post and CNN:

12          WILLIAMS & CONNOLLY. LLP

13          BY:  GLORIA K. MAIER, ESQ.

14          725 Twelfth Street, N.W.

15          Washington, D.C., 20005

16          202-434-5213

17          gmaier@wc.com

18          (Remote appearance.)

19

20

21

22

23

24

25
```

Page 5

1    APPEARANCES (Continued):

2

3    For the Witness:

4        BROWNE GEORGE ROSS O'BRIEN ANNAGUEY & ELLIS, LLP

5        BY:  ERIC M. GEORGE, ESQ.

6        BY:  KATHERINE A. PETTI, ESQ.

7        2121 Avenue of the Stars, Suite 2400

8        Los Angeles, California 90067

9        310-274-7100

10       egeorge@bgrfirm.com

11       kpetti@bgrfirm.com

12       (Remote appearance.)

13

14   Also Present:

15       JEFFREY TAYLOR, ESQ., Fox Corporation general counsel

16       DON BLANKENSHIP

17       SCOTT SLATER, Videographer

18       (Remote appearance.)

19

20

21

22

23

24

25

Page 6

```
 1                        INDEX

 2    WITNESS                          EXAMINATION

 3    K. RUPERT MURDOCH

 4    Volume I

 5

 6              BY MR. GRAY                    11

 7

 8

 9                      EXHIBITS

10    NUMBER            DESCRIPTION           PAGE

11    Exhibit A    Declaration of K. Rupert      15

12                 Murdoch; 8 pages

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 7

CONFIDENTIAL

```
 1                Thursday, November 18, 2021

 2                     9:36 a.m.

 3

 4        THE VIDEOGRAPHER:  Good morning.  We are on

 5   the record at 9:36 a.m. Pacific Standard Time on      09:36:13

 6   November 18th, 2021.  Please note that the

 7   microphones are sensitive and may pick up

 8   whispering, private conversations or cellular

 9   interference.  Audio- and video-recording will

10   continue to take place unless all parties agree to    09:36:28

11   go off the record.

12        This is media unit one of the video-recorded

13   deposition of Rupert Murdoch, taken by counsel for

14   plaintiff in the matter of Don Blankenship versus

15   Fox News Network, LLC, et al. filed in the United     09:36:45

16   States District Court, Southern District of

17   West Virginia, Charleston Division, case

18   number 2:19-cv-00236.

19        This deposition is being held as a virtual

20   deposition via Zoom with the witness located in       09:37:07

21   Los Angeles, California.  My name is Scott Slater

22   from the firm Veritext Legal Solutions, and I am the

23   videographer.  The court reporter is Nadia Newhart

24   from the firm Veritext Legal Solutions.  I am not

25   related to any party in this action, nor am I         09:37:23
```

Page 8

```
 1    financially interested in the outcome.

 2          Counsel and all present will now state their

 3    appearances and affiliations for the record.  If

 4    there are any objections to proceeding, please state

 5    them at the time of your appearance, beginning with    09:37:35

 6    the noticing attorney.

 7          MR. GRAY:  Good morning.  Jeremy Gray from

 8    Early Sullivan representing the plaintiff Don

 9    Blankenship.  Also attending are Michael Sparks and

10    Jeffrey Simpkins from the Simpkins Law Firm.  And      09:37:52

11    also from my law firm is Ryan Hemar.  And also

12    present is Mr. Blankenship.

13          MR. GEORGE:  I'm going to proceed.  My name

14    is Eric George, and I am counsel for the deponent.

15          MR. TAYLOR:  Good morning.  I'm Jeff Taylor,     09:38:16

16    general counsel for Fox Corporation.

17          MR. REGAN:  Good morning.  This is Shawn

18    Regan of Hunton Andrews Kurth, LLP.  We are counsel

19    for the Defendant Fox News Network, LLC.  I believe

20    joining me on video today is our local counsel Zak     09:38:36

21    Ritchie of the Hissam Forman firm.

22          And I'm hearing some feedback.  Are you folks

23    hearing me okay?

24          THE VIDEOGRAPHER:  I am.

25          MR. GREY:  Yeah, we're hearing you fine,         09:38:42
```

Page 9

CONFIDENTIAL

```
 1   Mr. Regan.
 2        MR. REGAN:  Yes.  And, Jeremy, I have two
 3   small housekeeping matters, but why don't we finish
 4   the appearances first, and we can just go back to
 5   those afterwards.                              09:38:57
 6        THE VIDEOGRAPHER:  Are there any remaining
 7   appearances, please?
 8        MS. MAIER:  Good morning.  This is Gloria
 9   Maier with Williams & Connolly.  I'm counsel for
10   Defendant The Washington Post and CNN.          09:39:05
11        MS. PETTI:  Also, Katherine Petti on behalf
12   of Fox Corporation and Mr. Murdoch.
13        MR. TULLY:  This is Jared Tully, Frost Brown
14   Todd, on behalf of MSNBC Cable.
15        MS. HARRIS:  This is Jenna Harris, Ritholz   09:39:26
16   Levy Fields, on behalf of News and Guts, LLC.
17        THE VIDEOGRAPHER:  Is there anyone else?
18        Thank you very much.  Will the court reporter
19   please administer the oath.
20        THE REPORTER:  Please raise your right hand,  09:40:03
21   Mr. Murdoch.
22
23             K. RUPERT MURDOCH,
24     having been first duly sworn, was examined and
25             testified as follows:
```

                                                   Page 10



```
 1
 
 3     Q    In 2018, you were the acting chief executive
 4  of Fox News; is that right?
 5     A    Yes.  I'm not sure of that date.  But yes, I     09:44:39
 6  was, for a period, acting CEO.
 7
```

09:45:41

Page 15



BY MR. GRAY:                                          09:51:17

   Q   All right.  Prior to this email, had you

communicated with Mr. Ellis about Mr. Blankenship

previously?

   A   No, I don't think so.  I didn't know anything

about Mr. Blankenship.                               09:51:27

   Q   You anticipated my next question.

      At the time you received this email from

Mr. Ellis, were you familiar with Mr. Blankenship?

   A   No.  I've never been familiar with him.

   Q   To the best of your recollection, is this the   09:51:40

first time you'd heard of him?

   A   Yes, I think so, but I -- I don't remember.

I never heard of Mr. Blankenship really at all.  But

whether someone had mentioned his name the day

before or not, I don't know or I don't recall.      09:52:20

                                                     09:52:48

                                                     Page 20

USCA4 Appeal: 22-1198   Doc: 58   Filed: 05/25/2022   Pg: 135 of 305
Case 2:19-cv-00236   Document 1055-4   Filed 12/03/21   Page 14 of 30 PageID #: 18404

CONFIDENTIAL



1    Q    And was that a primary that you had been

2    following at all?

3    A    No.

09:58:02

Page 24



25    Q    Is there some reason you didn't refer to    10:04:20

Page 28



1    Mr. Blankenship by name in this email?

2       A    No.   I probably couldn't remember how to

3    spell it.

25      Q    You write in this email (as read):          10:05:40

Page 29

```
 1          "Both Trump and McConnell appealing

 2          for help."

 3          Do you see that?

 4      A   Yes.  That's what I wrote.

 5      Q   And you were referring to President Trump,    10:05:52

 6   correct?

 7      A   Correct.

 8      Q   Was -- was your understanding that both Trump

 9   and McConnell were appealing for help, did that come

10   from the Ellis email?                                10:06:11

11          MR. GEORGE:  Vague, argumentative.

12          THE WITNESS:  I have no idea.

13   BY MR. GRAY:

14      Q   Did your understanding that both Trump and

15   McConnell were appealing for help, did that come     10:06:31

16   from reading the Politico article that Mr. Ellis had

17   linked to in his email to you?

18      A   I didn't read the Politico article, no.

19      Q   As you sit here today --

20      A   And I can --                                  10:06:50

21      Q   I'm sorry.  I apologize, sir.  Go ahead.

22          MR. GEORGE:  Thank you, Mr. Gray.

23          Go ahead.

24          THE WITNESS:  It's perfectly possible that

25   President Trump -- he used to call me.  We don't     10:07:04
```

Page 30

CONFIDENTIAL



1    speak now, but he used to call me.

2    BY MR. GRAY:

3        Q    So it's possible that that information had

4    come from a call that you had with President Trump?

5        A    It could be.   I just don't remember any of          10:07:17

6    that.

7

10:08:21

Page 31

CONFIDENTIAL



13    BY MR. GRAY:

14         Q.    Sure.   If you read -- if you read the email,

15    the word "helpful" that appears in the second          10:08:57

16    sentence -- when you use the word "helpful" there,

17    you mean it would help to beat Mr. Blankenship?

18              MR. GEORGE:   Same objection.

19              Mr. Murdoch, answer in your own words.

20              THE WITNESS:   Yes.   I mean, it would be      10:09:16

21    helpful to the Republican leadership.

22    BY MR. GRAY:

23         Q.    By having Mr. Blankenship lose, true?

24         A.    That's --

25              MR. GEORGE:   Same objections.              10:09:26

Page 32



1    Go ahead.

2    BY MR. GRAY:

3    Q    I'm sorry.

4    A    That's what -- that's what they were

5    campaigning for, at least what President Trump said.    10:09:30

6

10:10:41

Page 33

CONFIDENTIAL



```
 1   ████████████   ██████████████

 █   █████████████   ███████

 3   BY MR. GRAY:

 4       Q    Mr. Murdoch, you used the phrase "dumping on

 5   him hard."                                      10:10:50

 6            Do you see that?

 7       A    Yes.

 8       Q    The "him" in that phrase is Don Blankenship,

 9   true?

10            MR. GEORGE:   Object to form.           10:11:03

11            THE WITNESS:   I think so.   We're talking,

12   certainly, about Mr. Blankenship.

13   BY MR. GRAY:

14       Q    And so the "him" in that sentence is Don

15   Blankenship, true?                              10:11:14

16            MR. GEORGE:   Asked and answered.

17            THE WITNESS:   I think I answered the

18   question.

19   BY MR. GRAY:

20       Q    All right.   The word "dumping" in that   10:11:24

21   sentence refers to broadcasting negative content

22   about Mr. Blankenship on Fox News, true?

23            MR. GEORGE:   Argumentative.

24            THE WITNESS:  No.   I would --

25            MR. GEORGE:   Object to form.           10:11:39
```

Page 34



1　　　　THE WITNESS:　I would -- if I was writing it

2　again, I would say "criticizing."

3　BY MR. GRAY:

4　　　Q　　Criticizing is a form of negative content

5　about Mr. Blankenship, yes?　　　　　　　　　　10:11:56

6　　　A　　Yes.　It's opinion, whatever.

7

　　　　　　　　　　　　　　　　　　　　　　　　　　10:12:57

Page 35

CONFIDENTIAL



1

23    When you wrote that phrase, "Save the day,"

24    was the meaning of that, that Mr. Blankenship would

25    lose the primary?                              10:27:08

Page 37

CONFIDENTIAL



1          MR. GEORGE:   Same objections and same

2    instruction.

3          THE WITNESS:   That's what they wished.

4    BY MR. GRAY:

5      Q    And that's what you meant by "save the day,"      10:27:20

6    that Mr. Blankenship would lose?

7      A    Yes.

8

24          When you used the word "unelectable" in this

25    email on May 6th, 2018, what was -- what was the     10:28:14

Page 38



1    basis for you using that word in this email?

2        A    I don't remember.   I must have been told that

3    before I said that.

10:30:12

Page 39



1

8     Q    Mr. Murdoch, isn't one of the observations

9  that you're making in this email, is that the

10 content of Fox News programming could have an effect     10:32:02

11 on the outcome of the primary?

12         MR. GEORGE:   Object to form; argumentative.

13         Just answer in your own words.

14         THE WITNESS:   Yes.   I think both politicians

15 and commentators assume that they have an effect.     10:32:32

16 BY MR. GRAY:

17    Q    And the effect that you're discussing in this

18 email --

19    A    I think it's often exaggerated.

20    Q    But the point that you're making, the     10:32:38

21 observation that you're making in this email, is

22 that the content of the programming of Fox News can

23 have an impact on the outcome of the primary, true?

24    A    Yes.

25                                                      10:32:51

Page 41



```
10   BY MR. GRAY:                                    10:35:11

11      Q   Mr. Murdoch, one of the observations that

12   you're making in this email is that the content of

13   the programming broadcast by Fox News can have an

14   effect on the outcome of this primary that was

15   underway in May of 2018.                        10:35:23

16          MR. GEORGE:   Okay.   So let me interpose my

17   objection.   It misstates testimony.   And you have

18   asked that exact question, and it has been answered.

19   So I'd like to move on.

20          But, Mr. Murdoch, if you have anything     10:35:39

21   further to add, go ahead.

22   BY MR. GRAY:

23      Q   Do you need to have the question read back to

24   you?   Let's do that, so we have a clean question.

25      A   It's an assumption, but I think it's fair to  10:35:57
```

Page 44



1   say that politicians like President Trump and

2   Senator McConnell believe that Fox News has some

3   influence.

4       Q

10:46:37

Page 45

1

2

3

4        I, K. RUPERT MURDOCH, do hereby declare

5   under penalty of perjury that I have read the

6   foregoing transcript; that I have made any

7   corrections as appear noted, in ink, initialed by

8   me, or attached hereto; that my testimony as

9   contained herein, as corrected, is true and correct.

10        EXECUTED this _____ day of _____,

11   20_____, at _____, _____.
                         (City)                    (State)

12

13

14

15        _____

                    K. RUPERT MURDOCH

16                    Volume I

17

18

19

20

21

22

23

24

25

                                        Page 72

CONFIDENTIAL

```
 1            I, the undersigned, a Certified Shorthand
 2    Reporter of the State of California, do hereby
 3    certify:
 4            That the foregoing proceedings were taken
 5    before me at the time and place herein set forth;
 6    that any witnesses in the foregoing proceedings,
 7    prior to testifying, were administered an oath; that
 8    a record of the proceedings was made by me using
 9    machine shorthand which was thereafter transcribed
10    under my direction; that the foregoing transcript is
11    a true record of the testimony given.
12            Further, that if the foregoing pertains to the
13    original transcript of a deposition in a Federal
14    Case, before completion of the proceedings, review
15    of the transcript [ ] was [ ] was not requested.
16            I further certify that I am neither financially
17    interested in the action nor a relative or employee
18    of any attorney or any party to this action.
19       IN WITNESS WHEREOF, I have this date subscribed
20    my name.
21    Dated: November 19, 2021
22
23
24                        Nadia Newhart
                          _____
                          NADIA NEWHART
25                        CSR NO. 8714
```

Page 73

# EXHIBIT 5

**In the Matter Of:**

*Don Blankenship vs*

*Fox News Network*

---

**KARL ROVE**

*April 09, 2021*

---



USCA4 Appeal: 22-1198   Doc: 58   Filed: 05/25/2022   Pg: 154 of 305
Case 2:19-cv-00236   Document 1055-5   Filed 12/03/21   Page 3 of 19 PageID #: 18433

Don Blankenship vs                                                    Karl Rove
Fox News Network                    Confidential              April 09, 2021

1

```
 1              UNITED STATES DISTRICT COURT
             SOUTHERN DISTRICT OF WEST VIRGINIA
 2                  CHARLESTON DIVISION

 3

 4   DON BLANKENSHIP,           )
                                )
 5           Plaintiff,         )   Case No. 2:19-cv-00236
                                )
 6   VS.                        )
                                )
 7   FOX NEWS NETWORK LLC,      )
     et al.,                    )
 8                              )
             Defendants.        )
 9

10

11          ORAL AND VIDEOTAPED DEPOSITION
                      OF
12             KARL CHRISTIAN ROVE
                 APRIL 9, 2021
13

14

15

16

17

18

19

20

21

22

23

24

25
```

Don Blankenship vs
Fox News Network
Confidential
Karl Rove
April 09, 2021

2

1

2

3    ORAL DEPOSITION OF KARL CHRISTIAN ROVE,

4  produced as a witness at the instance of the

5  Plaintiff and duly sworn, was taken in the

6  above styled and numbered cause on

7  April 9, 2021, from 8:58 a.m. to 11:22 a.m.,

8  before KATERI A. FLOT-DAVIS, CSR, CCR,

9  reported by machine shorthand, pursuant to the

10  Federal Rules of Civil Procedure and the

11  provisions stated on the record herein.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

```
 1              A P P E A R A N C E S

 2

 3   FOR THE PLAINTIFF:

 4   JEFFREY S. SIMPKINS, ESQ.
     Simpkins Law
 5   102 E. 2nd Avenue
     Williamson, West Virginia 25661
 6   simpkinslawoffice@gmail.com

 7   JEREMY GRAY, ESQ. (Not Present)
     Early Sullivan Wright Gizer & McRae, LLP
 8   6420 Wilshire Blvd.
     17th Floor
 9   Los Angeles, California 90049
     jgray@earlysullivan.com
10

11

     FOR KARL CHRISTIAN ROVE:
12

     STEPHEN J. OBERMEIER, ESQ.
13   Wiley Rein LLP
     1776 K. Street NW
14   Washington, DC 20006
     sobermeier@wiley.com
15

16

     FOR FOX NEWS NETWORK LLC:
17

     J. ZAK RITCHIE, ESQ.
18   Hissam Forman Donovan Ritchie PLLc
     707 Virginia Street East
19   Ste. 260
     Charleston, West Virginia 25301
20   zritchie@hfdrlaw.com

21   SHAWN PATRICK REGAN, ESQ. (Not Present)
     Hunton Andrews Kurth, LLP
22   200 Park Avenue
     New York, New York 10166
23   sregan@huntonak.com

24

25
```

4

1

       CHRISTOPHER BREWER, ESQ.
2      Hunton Andrews Kurth, LLP
       2200 Pennsylvania Avenue NW
3      Washington, DC 20037
       brewer@huntonak.com
4

5      FOR CABLE NEWS NETWORK, INC. AND WP COMPANY
       LLC:
6
       MATTHEW D. HEINS, ESQ.
7      Williams & Connolly, LLP
       725 Twelfth Street NW
8      Washington, DC 20005
       meheins@dwc.com
9


10
       FOR ABC NEWS NETWORK:
11
       CAESAR KALINOWSKI, ESQ.
12     Davis Wright Tremaine, LLP
       920 Fifth Avenue
13     Ste. 3300
       Seattle, Washington 98104
14     ceasarkalinowski@dwt.com

15

16

17
       Also Present:
18     Chris Weiss, Videographer

19

20

21

22

23

24

25

5

1                          INDEX

2
                                               PAGE
3

4

5    Appearances........................      3

6

7

8    KARL CHRISTIAN ROVE

9

10       Examination by Mr. Simpkins.....     8

11

12

13   Signature and Changes...............    151

14   Reporter's Certificate..............    153

15

16

17

18

19

20

21

22

23

24

25

6

```
 1                    EXHIBITS

 2
        NO.           DESCRIPTION              PAGE
 3

 4
        Exhibit 1     Video, dated 5/4/2018.....   10
 5

 6
        Exhibit 2     Video, dated 5/22/2018....   88
 7

 8
        Exhibit 3     Email from Cathy McConnell
 9                    To Karl Rove, dated
                      5/7/2018, Subject: From
10                    Martha's booker..........    97

11

12      Exhibit 4     Email from Karl Rove to
                      Senator Mitch McConnell,
13                    Dated 5/5/2018, Subject:
                      Re: Blankenship..........   101
14

15
        Exhibit 5     Email from Karl Rove to
16                    Steven Law, dated
                      4/26/2018, Subject: Re:
17                    CMAG TV AD ALERT –
                      BLANKENSHIP, DON–USSEN/WV
18                    BLANKENSHIP MOST DADS.....   109

19

20

21

22

23

24

25
```

7

```
 1              P R O C E E D I N G S

 2


 3


 4         THE VIDEOGRAPHER:  Okay.  We are

 5    recording.  We are now on the record.

 6         My name is Chris Weiss Calhoun,

 7    certified legal videographer, retained

 8    by Lexitas.

 9         This is the video deposition in the

10    United States District Court, Southern

11    District of Western Virginia, Charleston

12    Division.

13         Today's date is April 9th of 2021.

14    The time on the monitor is 8:58 a.m.

15    Eastern Time.

16         The deposition is being held

17    virtually in the matter of Don

18    Blankenship versus Fox News Network,

19    LLC, et al.

20         The deponent is Karl Christian

21    Rove.

22         The attorneys will be on the

23    stenographic record.

24         The court reporter is Teri

25    Flot-Davis and...will now administer the
```

Don Blankenship vs
Fox News Network                    Confidential                    Karl Rove
                                                                April 09, 2021

8

```
 1        oath.

 2

 3              KARL CHRISTIAN ROVE,

 4    having been first duly sworn, testified as

 5    follows:

 6

 7              EXAMINATION

 8    BY MR. SIMPKINS:

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



Don Blankenship vs
Fox News Network

Confidential

Karl Rove
April 09, 2021



USCA4 Appeal: 22-1198    Doc: 58        Filed: 05/25/2022    Pg: 163 of 305

Don Blankenship vs
Fox News Network

Confidential

Karl Rove
April 09, 2021

16



Don Blankenship vs
Fox News Network                      Confidential                      Karl Rove
                                                                        April 09, 2021



61

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13        Q.   (BY MR. SIMPKINS)  Okay.
14             You later said:  "Let's be clear.
15   He is a bigot.  He is a moron."
16             Do you remember saying that?
17        A.   Yes.
18
19
20
21
22
23
24
25
```

USCA4 Appeal: 22-1198    Doc: 58    Filed: 05/25/2022    Pg: 165 of 305



Don Blankenship vs                                          Karl Rove
Fox News Network                    Confidential            April 09, 2021



106

18         The email message is, in part --

19   I'm only going to ask you for part of the --

20   about part of the email.

21             It says, "Happy to help.  Wait a

22   sick, twisted moron."

23             Do you see that?

24       A.   Yes.

25       Q.   Did you mean "What a sick, twisted

Don Blankenship vs                                                    Karl Rove
Fox News Network                    Confidential                    April 09, 2021

107

1    moron"?

2         A.   I'm sure I did.



152

1          I, KARL CHRISTIAN ROVE, have read the
    foregoing deposition and hereby affix my
2   signature that same is true and correct,
    except as noted above.

3

4
    _____
5   KARL CHRISTIAN ROVE

6

7
    THE STATE OF _____)
8   COUNTY OF _____)

9
           Before me,
10  _____, on this day
    personally appeared KARL CHRISTIAN ROVE, known
11  to me (or proved to me under oath or through
    _____) (description of
12  identity card or other document) to be the
    person whose name is subscribed to the
13  foregoing instrument and acknowledged to me
    that they executed the same for the purposes
14  and consideration therein expressed.
           Given under my hand and seal of
15  office this _____ day of
    _____, _____.
16

17

18  _____
    NOTARY PUBLIC IN AND FOR
    THE STATE OF _____
19  COMMISSION EXPIRES: _____

20

21

22

23

24

25

USCA4 Appeal: 22-1198    Doc: 58    Filed: 05/25/2022    Pg: 169 of 305
Case 2:19-cv-00236   Document 1055-5   Filed 12/03/21   Page 18 of 19 PageID #: 18448

153

```
 1                 UNITED STATES DISTRICT COURT
 2             SOUTHERN DISTRICT OF WEST VIRGINIA
                     CHARLESTON DIVISION
 3

 4
     DON BLANKENSHIP,             )
 5                               )
             Plaintiff,          )   Case No. 2:19-cv-00236
 6                               )
     VS.                         )
 7                               )
     FOX NEWS NETWORK LLC,        )
 8   et al.,                      )
                                 )
 9           Defendants.          )

10

11                 REPORTER'S CERTIFICATION
                        DEPOSITION
12                          OF
                    KARL CHRISTIAN ROVE
13                     APRIL 9, 2021

14

15           I, Kateri A. Flot-Davis, Certified

16      Shorthand Reporter in and for the State of

17      Texas, hereby certify to the following:

18          That the witness, KARL CHRISTIAN ROVE, was

19      duly sworn by the officer and that the

20      transcript of the oral deposition is a true

21      record of the testimony given by the witness;

22          There was a request for examination and

23      signature of the witness to the deposition

24      transcript.  The original transcript was sent

25      for review on _____ to the
```

Don Blankenship vs                                                  Karl Rove
Fox News Network                    Confidential                    April 09, 2021

154

1    witness or to the attorney for the witness for

2    examination, signature and return to me by

3    _____;

4       I further certify that I am neither counsel

5    for, related to, nor employed by any of the

6    parties or attorneys in the action in which

7    this proceeding was taken, and further that I

8    am not financially or otherwise interested in

9    the outcome of the action.

10      Certified to by me this ___ of _____

11   ,_____.

12

13

14   _____

     Kateri A. Flot-Davis
15   Texas CSR No. 8462
     Expiration Date: 12-31-22
16

17

18

19

20

21

22

23

24

25

# EXHIBIT 6

**In the Matter Of:**

*Blankenship vs*

*Fox News Network LLC*

---

==NEIL CAVUTO==

*April 07, 2021*

---



1

```
 1              UNITED STATES DISTRICT COURT
             SOUTHERN DISTRICT OF WEST VIRGINIA
 2                  CHARLESTON DIVISION

 3   DON BLANKENSHIP,              §
                                   §
 4           Plaintiff,            §
                                   § CASE NO.:
 5   vs.                           §
                                   § 2:19-cv-00236
 6   FOX NEWS NETWORK LLC,         §
     et al.,                       §
 7                                 §
             Defendants.           §
 8

 9

10   *******************************************

11                    CONFIDENTIAL

12     REMOTE VIDEOCONFERENCED DEPOSITION OF

13              NEIL PATRICK CAVUTO

14                  APRIL 7, 2021

15   *******************************************

16

17

18

19

20

21

22

23

24

25   Job No. 2021-783118
```

2

```
 1           REMOTE VIDEOCONFERENCE DEPOSITION OF

 2   NEIL PATRICK CAVUTO, produced as a witness at the

 3   instance of the Plaintiff, and remotely duly sworn

 4   by agreement of all counsel, was taken in the above-

 5   styled and numbered cause on March 2, 2021, from

 6   8:06 a.m. to 1:58 p.m., before Karen L. D. Schoeve,

 7   RDR, CRR, reported remotely by computerized machine

 8   shorthand, pursuant to the Federal Rules of Civil

 9   Procedure and the provisions stated on the record or

10   attached hereto.

11           This deposition is being conducted

12   remotely in accordance with the current Emergency

13   Order regarding the COVID-19 State of Disaster of

14   the World.

15

16      REPORTER'S NOTES:  Please be advised that an

17   UNCERTIFIED ROUGH DRAFT version of this transcript

18   exists.  If you are in possession of said rough

19   draft, please replace it immediately with this

20   CERTIFIED FINAL TRANSCRIPT.

21           Please note that the quality of a Zoom

22   videoconference and transmission of data and

23   overspeaking causes audio distortion which disrupts

24   the process of preparing a videoconference

25   transcript.
```

Confidential          Neil Cavuto - April 07, 2021

3

```
 1                      A P P E A R A N C E S


 2


 3         ********************************************


 4              ALL PARTIES APPEARED REMOTELY


 5               WITH LEGALVIEW VIA ZOOM


 6         ********************************************


 7    FOR THE PLAINTIFF:


 8         JEREMY GRAY, ESQUIRE
           SAAM TAKALOO, ESQUIRE
 9         EARLY SULLIVAN WRIGHT GIZER & McRAE LLP
           6420 Wilshire Boulevard, 17th Floor
10         Los Angeles, California 90048
           D: 323.301.4674 (Mr. Gray)
11         D: 323.301.4664 (Mr. Takaloo)
           T: 323.301.4660
12         F: 323.301.4676
           jgray@earlysullivan.com
13         stakaloo@earlysullivan.com


14
      FOR DEFENDANT FOX NEWS NETWORK, LLC:
15
           SHAWN PATRICK REGAN, ESQUIRE
16         HUNTON ANDREWS KURTH LLP
           200 Park Avenue
17         New York, New York 10166
           D: 212.309.1046
18         T: 212.309.1000
           F: 212.309.1100
19         sregan@HuntonAK.com


20
      -and-
21
           J. ZAK RITCHIE, ESQUIRE
22         HISSAM FORMAN DONOVAN & RITCHIE LLP
           707 Virginia Street East, Suite 260
23         Charleston, West Virginia 25301
           D: 304-615-2887
24         T: 681-265-3802
           zritchie@hfdrlaw.com

25
```

Confidential                 Neil Cavuto - April 07, 2021

4

```
 1            A P P E A R A N C E S (Continued)

 2

 3   FOR DEFENDANT MSNBC CABLE, LLC:

 4        JARED M. TULLY, ESQUIRE
          FROST BROWN TODD LLC
 5        United Bank Building
          500 Virginia Street East, Suite 1100
 6        D: 304.348.2404
          T: 304.345.0111
 7        F: 304.345.0115
          jtully@fbtlaw.com
 8

 9
     FOR DEFENDANT AMERICAN BROADCASTING COMPANIES:
10
          CAESAR KALINOWSKI, IV, ESQUIRE
11        DAVIS WRIGHT TREMAINE, LLP
          920 Fifth Avenue, Suite 3300
12        Seattle, Washington 98104
          D: 206.757.8232
13        T: 206.622.3150
          F: 206.757.7700
14        caesarkalinowski@dwt.com

15

16   FOR DEFENDANT CABLE NEWS NETWORK, INC.,
     and WP COMPANY, LLC:
17
          MATTHEW HEINS, ESQUIRE
18        WILLIAMS & CONNOLLY LLP
          725 Twelfth Street, Northwest
19        Washington, D.C. 20005
          D: 202-434-5073
20        T: 202.434.5000
          F: 202.434.5029
21        mheins.com

22

23

24

25
```

5

 1          A P P E A R A N C E S (Continued)

 2

 3   ALSO PRESENT:

 4       Don Blankenship

 5       Lesley West, In-house Counsel
           Fox News Network
 6
         Phillip Roller, Videographer
 7         Lexitas Legal

 8

 9   CERTIFIED STENOGRAPHIC COURT REPORTER:

10       Karen L. D. Schoeve
         Certified Realtime Reporter
11       Registered Diplomate Reporter
         Realtime Systems Administrator
12

13

14

15

16

17

18

19

20

21

22

23

24

25

Confidential          Neil Cavuto - April 07, 2021

6

```
 1                        INDEX

 2                                            PAGE

 3    Appearances                               3

 4    Confidential Designation                 10

 5    Video clip played from 16:00-21:10       97

 6    End of video clip                       104

 7    Video clip played from 0:00-11:24       124

 8    End of video clip                       139

 9

10

11    NEIL PATRICK CAVUTO

12         Examination By Mr. Gray             10

13         Afternoon Session                  153

14         Examination (Continued) By Mr. Gray  153

15

16

17
      Changes and Signature                   179
19
      Stenographic Reporter's Certificate     181
21
22
23
24
25
```

Confidential              Neil Cavuto - April 07, 2021

7

```
 1                       EXHIBIT INDEX

 2    NO. DESCRIPTION                              PAGE

 3    Exhibit 1                                    75
          Fox News television show transcript,
 4        titled ""Your World" with Neil
          Cavuto," dated 04/25/18
 5        Bates stamped FoxNews_000112 -133

 6    Exhibit 2                                    82
          E-mail dated 05/02/18 To Ralph
 7        Giordano From Natalie Apsell
          Subject:  MAY 8TH - PRIMARY PACKET,
 8        with attachment
          Bates stamped FoxNews_006708 - 6718
 9        Confidential

10    Exhibit 3                                    91
          E-mail dated 05/07/18 To Neil Cavuto
11        From Sam Sayegh
          Subject:  CBS NEWS REPORTS DON
12        BLANKENSHIP WON'T RULE OUT THIRD
          PARTY BID IN WEST VIRGINIA SENATE
13        RACE
          Bates stamped FoxNews_007789 - 7792
14        Confidential

15    Exhibit 4                                    112
          E-mail thread dated 05/22/18 To Pam
16        Ritter and Neil Cavuto From Andrew
          White
17        Subject:  YW Working Rundown
          Bates stamped FoxNews_007740 - 7744
18        Confidential

19    Exhibit 5                                    168
          Fox News television show transcript,
20        titled ""Your World" with Neil
          Cavuto," dated 05/22/18
21        Bates stamped FoxNews_000342 - 364

22    Exhibit 6                                    175
          E-mail dated 05/08/18 To
23        316-FBNCavuto From Grete Suarez
          Subject: Jillian's POV
24        Bates stamped FoxNews_006794
          Confidential

25
```

8

```
 1              P R O C E E D I N G S

 2              THE VIDEOGRAPHER:  We are now on the

 3   record.

 4              My name is Phillip Roller.  I'm a

 5   videographer retained by Lexitas.

 6              This is a video deposition for the

 7   United States District Court, Southern District of

 8   West Virginia, Charleston Division.

 9              Today's date is April 7th, 2021.

10   Video time is 8:06 a.m.

11              This deposition is in the matter of

12   Blankenship versus Fox News Network LLC, et al.  The

13   deponent is Neil Cavuto.

14              Would all counsel please identify

15   themselves for the record.

16              MR. GRAY:  Jeremy Gray for

17   Mr. Blankenship.

18              MR. REGAN:  Shawn Regan of Hunton

19   Andrews Kurth, here today for Mr. Cavuto and

20   representing Fox News LLP.

21              MR. TAKALOO:  Saam Takaloo for

22   Mr. Blankenship.

23              MR. RITCHIE:  (Audio distortion.)

24   Hissam Forman Donovan Ritchie for Fox News Network.

25              MR. TULLY:  Jared Tully, Frost Brown
```

9

1    Todd, MSNBC Cable LLC.

2              MR. KALINOWSKI:  Caesar Kalinowski

3    from Davis Wright Tremaine LLP on behalf of ABC.

4              MR. HEINS:  Matthew Heins on behalf of

5    Williams & Connolly for CNN and The Washington Post.

6              THE VIDEOGRAPHER:  If that's everyone,

7    will Karen Schoeve swear in the witness.

8              MR. REGAN:  Karen, before we begin on

9    that, I think there was someone after me and before

10   Jared Tully whose name I -- we couldn't hear.

11             It was barely audible, but I thought I

12   heard a voice.  I don't know if you heard that

13   or . . .

14             THE COURT REPORTER:  Yes, I heard it

15   too, and I wasn't sure who it was.

16             Who went after Mr. Regan?

17             (No response.)

18             THE COURT REPORTER:  I don't know.  I

19   see everyone on the screen.

20             Do you want me to run through roll

21   call again or swear the witness?

22             MR. REGAN:  Okay.  I mean, if we -- if

23   you think you have everyone that was on the screen,

24   then I think we're good.  I'm not sure who it was.

25             MR. GRAY:  Yeah.  I agree.

USCA4 Appeal: 22-1198    Doc: 58       Filed: 05/25/2022    Pg: 182 of 305
Case 2:19-cv-00236  Document 1055-6  Filed 12/03/21  Page 12 of 23 PageID #: 18465

10

1          MR. REGAN:  Okay.  And just before we

2     begin, Jeremy, we'll -- just for now, we'll

3     designate the entire transcript as confidential,

4     subject to our review.

5          MR. GRAY:  Okay.

6           NEIL PATRICK CAVUTO,

7     having been first duly sworn to tell the truth, the

8     whole truth, and nothing but the truth, so help him

9     God, testified as follows:

10    ████████████████████████████████████

11    ████████████████████████████████████

12    █████████████████████████████████████

13    ██████████████████████████████

14    ████████████████████████████████

15    ████████████

16    █████████████████████████████████████

17    ██████████████

18    █████████████████████████████████████

19    ████████████████

20    ███████████████████

21    ██████████

22    ████████████████████████████████

23    ███████████████████████████

24    ██████████████████

25    ████████████████████████████████

Confidential          Neil Cavuto - April 07, 2021

76

24        Q.    Is this a transcript that was prepared of

25   the edition of "Your World with Neil Cavuto" that

Confidential                    Neil Cavuto - April 07, 2021



77

1    aired on April 25th, 2018?

78

1

2

3      Q.   (BY MR. GRAY)  So the show begins with an

4   interview -- or discussion, rather, with you and

5   someone named Peter Doocy.  Do you see that?

6      A.   Yes.

7      Q.   And in 2018, what was Mr. Doocy's role at

8   Fox News or Fox Business Network, to the best of

9   your recollection?

10      A.   I believe at the time, he was a campaign

11   correspondent.  So he would travel the country

12   looking at key races, this one among them.

13

14

15

16

17

18

19

20

21

22

23

24

25

Confidential          Neil Cavuto - April 07, 2021

79

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23     Blankenship is best known here in West Virginia as

24     being a former coal baron who recently served a year

25     in jail on a misdemeanor conviction tied to his role

Confidential          Neil Cavuto - April 07, 2021

98

1          MR. CAVUTO:  Morning, Republicans.

2     You know what?  We're gonna lose West

3     Virginia if Don Blankenship is allowed to win

4     the Primary and he does win the Primary

5     outright.  Blankenship, of course, is arguing

6     that he -- he's the best qualified for this.

7          Of course, he's a convicted felon.

8     You know the whole background on him, and the

9     party is just eschewing the guy.  ████████

10    ████████████████████████████████

11    ██████████████████████████████████████

12    ████████████████████████████████████████

13    ██████████

14    ████████████████████████████████████████

15    ██████████████████████████████████

16    ██████████████████████████

17    ████████████████████████████████████

18    ████████████████████████████████████

19    ████████████████████████████████████

20    ████████████████████████████████████

21    ██████████████

22    ██████████████████████████████████████

23    ██████████████████████████████   ██

24    ██████████████████████████████████

25    ██████████████████████████████   ██

Confidential                Neil Cavuto - April 07, 2021

180

1        I, NEIL PATRICK CAVUTO, have read the

2    foregoing deposition and hereby affix my signature

3    that same is true and correct, except as noted above.

4

5                        _____

6                        NEIL PATRICK CAVUTO

7

8    THE STATE OF _____)

9    COUNTY OF _____)

10

11       Before me, _____, on

12   this day personally appeared NEIL PATRICK CAVUTO,

13   known to me (or proved to me under oath or through

14   _____) (description of

15   identity card or other document) to be the person

16   whose name is subscribed to the foregoing instrument

17   and acknowledged to me that they executed the same

18   for the purposes and consideration therein

19   expressed.

20       Given under my hand and seal of office this

21   _____ day of _____, 2021.

22

23                        _____

                         NOTARY PUBLIC IN AND FOR
24
                         THE STATE OF _____
25

USCA4 Appeal: 22-1198    Doc: 58    Filed: 05/25/2022    Pg: 189 of 305

181

```
 1              UNITED STATES DISTRICT COURT
             SOUTHERN DISTRICT OF WEST VIRGINIA
 2                   CHARLESTON DIVISION

 3  DON BLANKENSHIP,              §
                                 §
 4          Plaintiff,           §
                                 § CASE NO.:
 5  vs.                          §
                                 § 2:19-cv-00236
 6  FOX NEWS NETWORK LLC, et     §
    al,                          §
 7                               §
                Defendants.      §
 8

 9

10    *******************************************

11                    CONFIDENTIAL

12    REMOTE VIDEOCONFERENCED DEPOSITION OF

13              NEIL PATRICK CAVUTO

14                   APRIL 7, 2021

15    *******************************************

16

17            CERTIFIED STENOGRAPHIC

18          COURT REPORTER CERTIFICATE

19

20      I, Karen L. D. Schoeve, Registered Diplomate

21  Reporter, Certified Realtime Reporter, and Realtime

22  Systems Administrator, residing in the State of

23  Texas, do hereby certify that the foregoing

24  proceedings were reported remotely by me and that

25  the foregoing transcript constitutes a full, true,
```

182

1    and correct transcription of my stenographic notes,

2    to the best of my ability and hereby certify to the

3    following:

4         By agreement of all attending attorneys, the

5    witness, NEIL PATRICK CAVUTO, was remotely duly

6    sworn by the officer and that the transcript of the

7    oral deposition is a true record of the testimony

8    given by the witness;

9         That the original deposition was delivered to

10   JEREMY GRAY, custodial attorney;

11        That a copy of this certificate was served on

12   all parties and/or the witness shown herein on

13   _____.

14        That the amount of time used by each party at

15   the deposition is as follows:

16   JEREMY GRAY        - 00 HOUR(S):00 MINUTE(S)
        For the Plaintiff
17
     SHAWN REGAN        - 00 HOUR(S):00 MINUTE(S)
18      For Defendant Fox News Network, LLC

19   JARED M. TULLY     - 00 HOUR(S):00 MINUTE(S)
        For Defendant MSNBC Cable, LLC
20
     CAESAR KALINOWSKI, IV- 00 HOUR(S):00 MINUTE(S)
21      For Defendant American Broadcasting Companies

22   MATTHEW HEINS      - 00 HOUR(S):00 MINUTE(S)
        For Defendant Cable News Network, Inc., and WP
23      Company

24

25

183

1        I further certify that pursuant to FRCP No.

2   30(f)(i) that the signature of the witness was

3   requested by the witness or a party before the

4   completion of the deposition and the signature is to

5   be returned within 30 days from date of receipt of

6   the transcript.

7        If returned, the attached Changes and Signa-

8   ture Page contains any changes and the reasons

9   therefor.

10       That pursuant to information given to the

11  deposition officer at the time said testimony was

12  taken, the following includes counsel for all

13  parties of record:

14

15  FOR THE PLAINTIFF:

16       JEREMY GRAY, ESQUIRE
         SAAM TAKALOO, ESQUIRE
17       EARLY SULLIVAN WRIGHT GIZER & McRAE LLP
         6420 Wilshire Boulevard, 17th Floor
18       Los Angeles, California 90048
         D: 323.301.4674 (Mr. Gray)
19       D: 323.301.4664 (Mr. Takaloo)
         T: 323.301.4660
20       F: 323.301.4676
         jgray@earlysullivan.com
21       stakaloo@earlysullivan.com

22
    FOR DEFENDANT FOX NEWS NETWORK, LLC:
23
         SHAWN REGAN, ESQUIRE
24       HUNTON ANDREWS KURTH LLP
         200 Park Avenue
25       New York, New York 10166

184

```
1        D: 212.309.1204
         T: 212.309.1000
2        F: 212.309.1100
         sostrower@huntonak.com
3


4
     FOR DEFENDANT MSNBC CABLE LLC:
5
         JARED M. TULLY, ESQUIRE
6        FROST BROWN TODD LLC
         United Bank Building
7        500 Virginia Street, East, Suite 1100
         D: 304.348.2404
8        T: 304.345.0111
         F: 304.345.0115
9        jtully@fbtlaw.com


10
     FOR DEFENDANT AMERICAN BROADCASTING COMPANIES:
11
         CAESAR KALINOWSKI, IV, ESQUIRE
12       DAVIS WRIGHT TREMAINE, LLP
         920 Fifth Avenue, Suite 3300
13       Seattle, Washington 98104
         D: 206.757.8232
14       T: 206.622.3150
         F: 206.757.7700
15       caesarkalinowski@dwt.com


16


17
     FOR DEFENDANT CABLE NEWS NETWORK, INC.,
18   and WP COMPANY

19       MATTHEW HEINS, ESQUIRE
         WILLIAMS & CONNOLLY LLP
20       725 Twelfth Street, Northwest
         Washington, D.C. 20005
21       D: 202-434-5073
         T: 202.434.5000
22       F: 202.434.5029
         mkjohnson@wc.com
23


24


25
```

Confidential                    Neil Cavuto - April 07, 2021

185

1          I further certify that I am neither counsel

2     for, related to, nor employed by any of the parties

3     in the action in which this proceeding was taken,

4     and further that I am not financially or otherwise

5     interested in the outcome of the action.

6

7              Subscribed and sworn to on this the ^ CH

8     day of April, 2021.

9

10

11

12
      _____
13    Karen L.D. Schoeve, RDR, CRR
      Realtime Systems Administrator
      NCRA Exp. Date:  09-30-21
14    Lexitas Legal
      Firm Registration #736
15    999 Old Eagle School Road, Suite 118
      Wayne, Pennsylvania 19087
16    215-494-7650

17

18

19

20

21

22

23

24

25    Job No. 2021-781298

EXHIBIT 7

**In the Matter Of:**

*DON BLANKENSHIP vs*

*FOX NEWS NETWORK*

---

*ALAN KOMISSAROFF*

*March 30, 2021*

---



1

1       UNITED STATES DISTRICT COURT
        SOUTHERN DISTRICT OF WEST VIRGINIA
2             CHARLESTON DIVISION

3    DON BLANKENSHIP,           §
                                §
4         Plaintiff,            §
                                §
5    v.                         §  Case No.:  2:19-cv-00236
                                §
6    FOX NEWS NETWORK,          §
     L.L.C., et al.             §
7                               §
          Defendants.           §
8
     * * * * * * * * * * * * * * * * * * * * * * * * *
9
            REMOTE VIDEOTAPED ORAL DEPOSITION OF
10                 ALAN KOMISSAROFF,
        FOX NEWS NETWORK, L.L.C.'s FRCP 30(b)(6)
11             CORPORATE REPRESENTATIVE
             Designated as "Confidential"
12                 March 30, 2021
     * * * * * * * * * * * * * * * * * * * * * * * * *
13

14        REMOTE VIDEOTAPED ORAL DEPOSITION OF RICHARD ALAN

15   KOMISSAROFF, FOX NEWS NETWORK, L.L.C.'s FRCP 30(b)(6)

16   CORPORATE REPRESENTATIVE, produced as a witness and

17   duly sworn, was taken in the above-styled and numbered

18   cause on March 30, 2021, from 10:14 a.m. until 3:43

19   p.m. (Eastern Time), before Suzanne Kelly, RDR, CRR,

20   in and for the State of Texas, reported by

21   stenographic method with all participants appearing

22   remotely from separate locations.

23

24   Reported by:  Suzanne Kelly, CSR, RDR, CRR

25   Job Number:  2021-781297

30(b)(6), Confidential Alan Komissaroff - March 30, 2021

```
                                                                    2
  1                         APPEARANCES

  2   FOR THE PLAINTIFF:

  3   Jeremy Gray, Esq.
             -and-
  4   Padideh Zargari, Esq.
      EARLY SULLIVAN WRIGHT GIZER & McRAE, L.L.P.
  5   6420 Wilshire Boulevard
      17th Floor
  6   Los Angeles, California 90048
      323.301.4660
  7   jgray@earlysullivan.com
      pzargari @earlysullivan.com

  8

  9   FOR THE DEFENDANT CABLE NEWS NETWORK:

 10   Matthew Heins, Esq.
      WILLIAMS & CONNOLLY, L.L.P.
 11   725 12th Street NW
      Washington, D.C. 20005
 12   202.434.5073
      mheins@wc.com

 13

 14   FOR DEFENDANT NEWS AND GUTS, L.L.C.:

 15   Jenna Harris, Esq.
      RITHOLZ LEVY FIELDS
 16   131 South 11th Street
      Nashville, Tennessee 37206
 17   615.250.3939
      jharris@rlfllp.com

 18

 19   FOR DEFENDANT MSNBC CABLE, L.L.C.

 20   Alex J. Zurbuch, Esq.
      FROST BROWN TODD, L.L.C.
 21   United Bank Building
      500 Virginia Street, East
 22   Suite 1100
      Charleston, West Virginia 25301
 23   304.348.2419
      azurbuch@fbtlaw.com

 24

 25
```

30(b)(6), Confidential Alan Komissaroff - March 30, 2021

```
                                                                    3
 1                    APPEARANCES (Continued)

 2

     FOR DEFENDANT FOX NEWS NETWORK, L.L.C.:
 3
     Shawn Patrick Regan, Esq.
 4   HUNTON ANDREWS KURTH, L.L.P.
     200 Park Avenue
 5   New York, New York 10166
     212.309.1046
 6   sregan@HuntonAK.com

 7   J. Zak Ritchie, Esq.
     HISSAM FORMAN DONOVAN RITCHIE, P.L.L.C.
 8   707 Virginia Street East
     Suite 260
 9   Charleston, West Virginia 25301
     304.615.2887
10   zritchie@hfdrlaw.com

11
     ALSO PRESENT:
12
     Mr. Phil Roller, Videographer
13   Mr. Don Blankenship
     Ms. Lesley West, Fox News Network in-house counsel
14   Ms. Melissa Sarsten, Fox News Network in-house counsel

15

16

17

18

19

20

21

22

23

24

25
```

30(b)(6), Confidential Alan Komissaroff - March 30, 2021

4

```
 1                         INDEX

 2                                              PAGE

 3   Appearances...................................   2

 4        ALAN KOMISSAROFF, FOX NEWS NETWORK,

 5        L.L.C.'s, FRCP 30(b)(6)

 6        CORPORATE REPRESENTATIVE

 7             Examination by Mr. Gray.............   9

 8             Examination by Mr. Regan...........  152

 9             Examination by Mr. Gray............  164

10   Signature and Changes .......................  173

11   Reporter's Certificate ......................  175

12

13                       EXHIBITS

14   NO.            DESCRIPTION                    PAGE

15   Exhibit 1      A copy of the Notice for        39
                    Deposition of Fox News Network
16                  Corporate Representative

17   Exhibit 2      A copy of a two-page document   86
                    entitled, "Sentencing Set April
18                  6th for Former Massey CEO
                    Convicted of a Misdemeanor"
19

20   Exhibit 3      A copy of a five-page document  87
                    entitled, "Mine Explosion Trial:
                    Ex-Coal CEO Blankenship CEO
21                  Convicted on 1 Count and
                    Acquitted on 2"
22

23   Exhibit 4      A copy of a two-page document   87
                    entitled, "Jury Finds Former
                    Massey Energy CEO, Don
24                  Blankenship Guilty on 1 of 3
                    Counts in Criminal Trial"
25
```

00:00:01 (at line 18-19)
00:00:27 (at line 20)
00:00:30 (at line 20)
00:00:36 (at line 21)
00:00:37 (at line 21)
00:01:03 (at line 23)
00:01:04 (at line 23)
00:01:08 (at line 24)
00:01:13 (at line 24)

30(b)(6), Confidential Alan Komissaroff - March 30, 2021

```
                                                                    5
  1                          INDEX (Continued)
                           EXHIBITS (Continued)
  2
           NO.              DESCRIPTION                        PAGE
  3

  4        Exhibit 5       A copy of a two-page document         90
00:01:43                  entitled, "Prosecutors:
00:01:45   5              Former Coal Chief to Head to
00:01:50                  Prison May 12th"
  6
           Exhibit 6       A copy of a two-page document         89
00:02:35   7              entitled, "Appealing Year of
00:02:36                  Prison, CEO pays $250,000 Fine"
  8
           Exhibit 7       A copy of a two-page document         89
00:03:01   9              entitled, "Ex-Coal CEO Sentencing
00:03:02                  Slated for Wednesday in West
  10                      Virginia"

  11       Exhibit 8       A copy of a two-page document         89
00:03:24                  entitled, "Ex-Coal CEO faces Up
00:03:24   12             to One Year Sentencing for Mine
00:03:27                  Crime"
  13

  14

  15

  16

  17

  18

  19

  20

  21

  22

  23

  24

  25
```

30(b)(6), Confidential    Alan Komissaroff - March 30, 2021

6

```
-02:-51:-30              P R O C E E D I N G S

-02:-50:-32              THE VIDEOGRAPHER:  We are now on

-02:-50:-30    the record.  My name is Phillip Roller.  I'm a

-02:-50:-28    Videographer retained by Lexitas.

-02:-50:-26              Today's date is March 30th, 2021.

-02:-50:-22    The video time is 10:14 a.m.

-02:-50:-20              This deposition is in the matter of

-02:-50:-19    Blankenship versus Fox News Network, L.L.C., et

-02:-50:-15    al.  The deponent is Alan Komissaroff.

-02:-50:-10              Will all counsel please identify

-02:-50:-08    themselves for the record?

-02:-50:-07              MR. GRAY:  Jeremy Gray for the

-02:-50:-07    Plaintiff.

-02:-50:-06              MS. ZARGARI:  Padideh Zargari for

-02:-50:-06    the Plaintiff.

-02:-50:-03              MR. REGAN:  Shawn Patrick Regan of

-02:-49:-59    Hunton Andrews Kurth, on behalf of Defendant Fox

-02:-49:-56    News Network, L.L.C., and also here today

-02:-49:-53    defending the deponent, Mr. Komissaroff.

-02:-49:-48              MR. RITCHIE:  Zak Ritchie from

-02:-49:-48    Hissam Forman Donovan Ritchie on behalf of Fox

-02:-49:-43    News Network.

-02:-49:-32              MS. HARRIS:  Jenna Harris on behalf

          24    of Defendant News and Guts, L.L.C.

-02:-49:-29              MR. ZURBUCH:  Alex Zurbuch Frost
```

USCA4 Appeal: 22-1198    Doc: 58    Filed: 05/25/2022    Pg: 202 of 305

7

```
-02:-49:-27   Brown Todd on behalf of MSNBC Cable, L.L.C.

-02:-49:-20                MR. HEINS:  Matthew Heins from

-02:-49:-19   Williams & Connolly on behalf of CNN and

-02:-49:-17   Washington Post.

-02:-49:-07                THE COURT REPORTER:  Is that

-02:-49:-05   everyone?

-02:-49:007                THE VIDEOGRAPHER:  And the Court

-02:-48:-59   Reporter, Dawna Suzanne Kelly, will now swear in

          9   the witness.

-02:-48:-21                (Conversation held off the record.)

-02:-48:-21                THE COURT REPORTER:  If you would

         12   please raise your right hand, I will administer

         13   the witness's oath to you.

         14                THE WITNESS:  (Complies.)

         15                THE COURT REPORTER:  Do you

         16   solemnly swear or affirm that the testimony which

         17   you will give in this case will be the truth, the

         18   whole truth, and nothing but the truth, so help

         19   you God?

         20                THE WITNESS:  Thank you.

         21                THE COURT REPORTER:  Thank you.

-02:-47:-50              ███████████████████████████████████

-0                       ██████████████████████████████████

-0                       ████████████████████████████████████

-0                       ███████████████████████████████████
```

USCA4 Appeal: 22-1198    Doc: 58    Filed: 05/25/2022    Pg: 203 of 305

30(b)(6), Confidential    Alan Komissaroff - March 30, 2021



USCA4 Appeal: 22-1198    Doc: 58    Filed: 05/25/2022    Pg: 204 of 305

30(b)(6), Confidential Alan Komissaroff - March 30, 2021



30(b)(6), Confidential   Alan Komissaroff - March 30, 2021



54

-01:-28:-24 [redacted]

-0 [redacted]

-0 [redacted]

-0 [redacted]

-0 [redacted]

[redacted]

-0 [redacted]

-0 [redacted]

-0 [redacted]

-0 [redacted]

-01:-27:-44    A.   I think accuracy -- and you brought up

-01:-27:-42    the term "ethics" before.   I think both of those

-01:-27:-38    things are vital to our business.   The reason

-01:-27:-33    people watch us is because of our accuracy and

-01:-27:-30    our ethics.   So, therefore, it is something

-01:-27:-26    that's very important, and -- and something we

-01:-27:-21    strive for.

-01:-27:-09 [redacted]

-0 [redacted]

-0 [redacted]

-0 [redacted]

-0 [redacted]

-0 [redacted]

-0 [redacted]

USCA4 Appeal: 22-1198    Doc: 58    Filed: 05/25/2022    Pg: 206 of 305
Case 2:19-cv-00236  Document 1055-7  Filed 12/03/21  Page 13 of 16 PageID #: 18459

30(b)(6), Confidential    Alan Komissaroff - March 30, 2021

174

```
00:-52:-341        I, ALAN KOMISSAROFF, FOX NEWS NETWORK, L.L.C.'s

     2     30(b)(6) CORPORATE REPRESENTATIVE have read the

     3     foregoing deposition and hereby affix my signature

     4     that same is true and correct, except as noted above.

     5                         _____

     6                         (Signature of witness)

     7     STATE OF _____

     8     COUNTY OF _____

     9         Before me,_____, on this day

00:-52:-340  personally appeared ALAN KOMISSAROFF, FOX NEWS

    11     NETWORK, L.L.C.'s FRCP 30(b)(6) CORPORATE

    12     REPRESENTATIVE known to me (proved to me under oath or

    13     through _____) (description of

    14     identity card or other document) to be the person

    15     whose name is subscribed to the foregoing instrument

    16     and acknowledged to me that he executed the same for

    17     the purposes and consideration therein expressed.

    18       (Seal)    Given under my hand and seal of office

    19     this _____ day of _____, 2021.

    20

    21

    22                         _____

    23                         Notary Public in and for

    24                         the State of _____.

    25
```

USCA4 Appeal: 22-1198    Doc: 58        Filed: 05/25/2022    Pg: 207 of 305
Case 2:19-cv-00236 Document 1055-7  Filed 12/03/21  Page 14 of 16 PageID #: 18480

30(b)(6), Confidential    Alan Komissaroff - March 30, 2021

175

```
 1              UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF WEST VIRGINIA
 2                 CHARLESTON DIVISION

 3   DON BLANKENSHIP,           §
                                §
 4        Plaintiff,            §
                                §
 5   v.                         §  Case No.:  2:19-cv-00236
                                §
 6   FOX NEWS NETWORK,          §
     L.L.C., et al.             §
 7                              §
          Defendants.           §
 8
              REMOTE VIDEOTAPED ORAL DEPOSITION OF
 9                  ALAN KOMISSAROFF,
        FOX NEWS NETWORK, L.L.C.'s FRCP 30(b)(6)
10               CORPORATE REPRESENTATIVE

11                   March 30, 2021

12
          I, Suzanne Kelly, RDR, CRR, in and for the State
13   of Texas hereby certify to the following:

14        That the witness, ALAN KOMISSAROFF, FOX NEWS
     NETWORK, L.L.C.'s FRCP 30(b)(6) CORPORATE
15   REPRESENTATIVE was duly sworn by the officer and that
     the transcript of the videotaped oral deposition is a
16   true record of the testimony given by the witness;

17        That the deposition transcript was submitted on
     the _____ day of _____, 2021, to the witness for
18   examination, signature and return to Suzanne Kelly by
     the _____ day of _____, 2021;
19
          That the amount of time used by each party at the
20   deposition is as follows:

21        Mr. Gray:  Three hours and 39 minutes used;
          Mr. Regan:  Two minutes used;
22
          That pursuant to the information given to the
23   deposition officer at the time said testimony was
     taken, the following includes counsel for all parties
24   of record:

25
```

USCA4 Appeal: 22-1198    Doc: 58       Filed: 05/25/2022    Pg: 208 of 305
Case 2:19-cv-00236 Document 1055-7   Filed 12/03/21   Page 15 of 16 PageID #: 18487

30(b)(6), Confidential Alan Komissaroff - March 30, 2021

```
                                                                    176
 1   Jeremy Gray, Esq.
          -and-
 2   Padideh Zargari, Esq.
     EARLY SULLIVAN WRIGHT GIZER & McRAE, L.L.P.
 3   6420 Wilshire Boulevard
     17th Floor
 4   Los Angeles, California 90048
     323.301.4660
 5   jgray@earlysullivan.com
     pzargari @earlysullivan.com
 6
     Matthew Heins, Esq.
 7   WILLIAMS & CONNOLLY, L.L.P.
     725 12th Street NW
 8   Washington, D.C. 20005
     202.434.5073
 9   mheins@wc.com

10   Jenna Harris, Esq.
     RITHOLZ LEVY FIELDS
11   131 South 11th Street
     Nashville, Tennessee 37206
12   615.250.3939
     jharris@rlfllp.com
13
     Alex J. Zurbuch, Esq.
14   FROST BROWN TODD, L.L.C.
     United Bank Building
15   500 Virginia Street, East
     Suite 1100
16   Charleston, West Virginia 25301
     304.348.2419
17   azurbuch@fbtlaw.com

18   Shawn Patrick Regan, Esq.
     HUNTON ANDREWS KURTH, L.L.P.
19   200 Park Avenue
     New York, New York 10166
20   212.309.1046
     sregan@HuntonAK.com
21
     J. Zak Ritchie, Esq.
22   HISSAM FORMAN DONOVAN RITCHIE, P.L.L.C.
     707 Virginia Street East
23   Suite 260
     Charleston, West Virginia 25301
24   304.615.2887
     zritchie@hfdrlaw.com
25
```

USCA4 Appeal: 22-1198    Doc: 58    Filed: 05/25/2022    Pg: 209 of 305
Case 2:19-cv-00236  Document 1055-7  Filed 12/03/21  Page 16 of 16 PageID #: 18482

30(b)(6), Confidential Alan Komissaroff - March 30, 2021

177

1      I further certify that I am neither counsel for,
   related to, nor employed by any of the parties or
2  attorneys in the action in which this proceeding was
   taken, and further that I am not financially or
3  otherwise interested in the outcome of the action.

4      In witness whereof, I have this date subscribed my
   name on this __ day of _____, 2021.

5

6                    *Suzanne Kelly*

7
                <%signature%>
8               Suzanne Kelly, RDR, CRR
                Expiration Date:  12-31-18
9               LEXITAS
                Firm Registration No. 736
10              Suite 118
                999 Old Eagle School Road
11              Wayne, Pennsylvania 19087-1707
                215.494.7650
12
   JOB NO.:  2021-781297
13

14

15

16

17

18

19

20

21

22

23

24

25

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### CHARLESTON DIVISION

DON BLANKENSHIP,

     *Plaintiff*,

v.                                        Case No. 2:19-cv-00236

FOX NEWS NETWORK, LLC, *et al.*,

     *Defendants*.

## DEFENDANT FOX NEWS NETWORK, LLC'S
## SURREBUTTAL IN SUPPORT OF SUMMARY JUDGMENT

Elbert Lin (WVSB #12171)
David Parker (*pro hac vice*)
HUNTON ANDREWS KURTH LLP
951 E. Byrd Street
Richmond, VA 23219
804-788-8200 *office*
804-788-8218 *fax*
elin@HuntonAK.com
dparker@HuntonAK.com

Shawn Patrick Regan (*pro hac vice*)
Silvia Ostrower (*pro hac vice*)
HUNTON ANDREWS KURTH LLP
200 Park Avenue
New York, NY 10166
212-309-1000 *office*
212-309-1100 *fax*
sregan@HuntonAK.com
sostrower@HuntonAK.com

J. Zak Ritchie (WVSB #11705)
Ryan McCune Donovan (WVSB #11660)
HISSAM FORMAN DONOVAN RITCHIE PLLC
P.O. Box 3983
Charleston, WV 25339
681-265-3802 *office*
304-982-8056 *fax*
zritchie@hfdrlaw.com
rdonovan@hfdrlaw.com

*Counsel for Fox News Network, LLC*

## **<u>TABLE OF CONTENTS</u>**

**Page**

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION ................................................................................................... 1

SUPPLEMENTAL BACKGROUND ..................................................................... 3

ARGUMENT ........................................................................................................... 6

    I.     Plaintiff still lacks clear and convincing evidence of actual malice. ............................. 6

       A.    The May 6 email is not clear and convincing evidence of actual malice. ................... 7

       B.    Blankenship's other purported evidence of actual malice is not clear and convincing either. ........................................................................... 10

    II.    Summary judgment is warranted on other independent grounds. ................................ 12

    III.   If the Court concludes that Plaintiff actually pleaded a "conspiracy" claim against FNN, it cannot survive summary judgment. ............................. 13

CONCLUSION ...................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                              **Page(s)**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ..............................................................................................8, 14

*Arpaio v. Robillard*,
    459 F. Supp. 3d 62 (D.D.C. 2020) ...........................................................................12

*Colorado v. New Mexico*,
    467 U.S. 310 (1984) ....................................................................................................6

*Dunn v. Rockwell*,
    689 S.E.2d 255 (W. Va. 2009) ............................................................................2, 13

*Franklin D. Azar & Assocs., P.C. v. Bryant*,
    No. 417CV00418ALMKPJ, 2019 WL 5390172 (E.D. Tex. July 30, 2019) ...........14

*Harte-Hanks Commc'ns v. Connaughton*,
    491 U.S. 657 (1989) ........................................................................................3, 11, 12

*Hayseeds, Inc. v. State Farm Fire & Cas.*,
    352 S.E.2d 73 (W. Va. 1986) .....................................................................................6

*Hinerman v. Daily Gazette Co.*,
    423 S.E.2d 560 (W. Va. 1992) ...........................................................................1, 6, 12

*J & J Sports Prods., Inc. v. Hernandez*,
    No. 1:11CV749, 2013 WL 5937909 (M.D.N.C. Nov. 5, 2013) ...............................14

*NY Times Co. v. Sullivan*,
    376 U.S. 254 (1964) ............................................................................................ *passim*

*O'Dell v. Stegall*,
    226 W. Va. 590 (2010) .............................................................................................14

*Pagani v. Modus eDiscovery*,
    No. 3:16-CV-00024-GCM, 2017 WL 1205075 (W.D.N.C. Mar. 30, 2017) ...........14

*Palin v. New York Times Co.*,
    940 F.3d 804 (2d Cir. 2019) ....................................................................................12

*St. Paul Fire & Marine Ins. Co. v. Hoskins*,
    No. 5:10CV087, 2012 WL 748574 (W.D. Va. Mar. 7, 2012) .................................14

*Wittenberg v. Wells Fargo Bank, N.A.*,
    852 F. Supp. 2d 731 (N.D.W. Va. 2012) ...............................................................14

## INTRODUCTION

What is most notable about Plaintiff's supplemental brief is what is lacking.  Plaintiff still fails to present evidence, let alone clear and convincing evidence, with respect to "[t]he greatest obstacle that a public official libel plaintiff must overcome," *Hinerman v. Daily Gazette Co.*, 423 S.E.2d 560, 571–72 (W.Va. 1992): evidence that the individual speakers either subjectively "knew" their words were false, MTD Order (ECF 398) at 17 (citing *Hinerman*), or subjectively "entertained serious doubts as to" their accuracy when uttered, *id.* at 24 (internal citation and quotation marks omitted), *i.e.,* actual malice.  *Accord NY Times Co. v. Sullivan*, 376 U.S. 254, 287 (1964) (holding actual malice must be "brought home" to the individual speakers).

After nearly two years of discovery, including several rounds of supplemental document discovery and five additional depositions, there is still no evidence that any of the Fox News Network, LLC ("FNN") commentators knew their words were false when uttered or entertained serious doubts as to their accuracy.  *See* FNN Br. (ECF 891) at 9–10, 13–14 (detailing Plaintiff's admissions that he has "no evidence" of such facts).  Plaintiff's original brief in opposition to summary judgment presented no evidence in this respect.  FNN Reply (ECF 940) at 5–6.  And his surreply contains *nothing* to address his absence of evidence of the speakers' actual malice. The evidence adduced in this case supports only the opposite conclusion:  The speakers believed their words were true based on their understanding of Plaintiff's history, the Upper Big Branch ("UBB") explosion and his one-year prison sentence, a mistake made by more than 100 other media commentators.  FNN Br. (ECF 891) at 9.

Plaintiff's surreply proclaims that the "cornerstone" of his case, which he says is his "most compelling evidence" of actual malice, is a May 6 email among executives at FNN.  ECF 1053 ("Surreply") at 19.  But that email exchange makes no mention of the nature of Plaintiff's conviction, nor does it in any way suggest referring to him as a felon.  And Plaintiff presents no

evidence showing the email's sentiments were ever communicated to any of the speakers.  In fact, the evidence uniformly shows that the views expressed in the email were not communicated to anyone else.  No reasonable jury could find this to be clear and convincing evidence of actual malice.

Moreover, nothing from the supplemental discovery period rebuts FNN's other independent grounds for summary judgment either.  Plaintiff still lacks sufficient evidence that the speakers intended to injure him, that the challenged statements were materially false, or that he suffered any resulting injury.  Nothing from the supplemental discovery period has improved Plaintiff's position, so summary judgment is still warranted on these independent grounds too.

Having found nothing to remedy the fatal deficiencies of his defamation and false light claims, Plaintiff instead devotes his surreply to arguing that FNN conspired with Republican leaders to defame him.  But to the extent Plaintiff even pleaded a conspiracy claim against FNN (a dubious proposition, since his Amended Complaint plainly does not include FNN among those he defined as the "Conspiracy Defendants," ECF 14, ¶ 233), it cannot survive without his underlying defamation and false-light claims.  *Dunn v. Rockwell*, 689 S.E.2d 255, 268–69 (W. Va. 2009) (explaining "[a] civil conspiracy is not a *per se*, stand-alone cause of action" and "for civil conspiracy to be actionable[,] it must be proved that the defendants have committed some *wrongful act*") (emphasis added) (internal citations and quotation marks omitted).

Ultimately, Plaintiff's supplemental brief merely serves to confirm that his suit is a political grievance.  Throughout his lawsuit, Plaintiff has made abundantly clear that he feels affronted and even betrayed by those who either opposed his candidacy or criticized his incendiary remarks on the campaign trail.  But no actionable defamation occurred here—just what this Court has recognized as "stray comments," MTD Order (ECF 398) at 43, during the

course of robust "public discussion of the qualifications of a candidate for elective office," which is firmly protected by the First Amendment. *Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 686 (1989). Accordingly, this case must be resolved as a matter of law. Summary judgment in favor of FNN is warranted on Plaintiff's claims.

## SUPPLEMENTAL BACKGROUND

In August 2021, this Court reiterated that actual malice must be "brought home" to the individuals responsible for the challenged statements, ECF 985 at 21 (quoting *Sullivan*, 376 U.S. at 287), and that FNN "may be correct" that intra-executive communications "are perhaps not relevant for the purposes of proving actual malice as an evidentiary matter," *id.* at 25. The Court ordered production of "intra-executive communications" as "relevant for purposes of discovery," since discovery could determine, among other things, whether any such communications "might have filtered down to the persons who were involved in making the statements." *Id.* at 25–26.[1]

FNN promptly produced all responsive intra-executive communications, including two emails that are the focus of Plaintiff's surreply. In the first, John Ellis emailed Rupert Murdoch on the morning of May 6, 2018, stating that Plaintiff "calls the Majority Leader 'cocaine Mitch.' And he's a convicted felon!," ECF 990-1 at Ex. 1, and linking to a *Politico* article, which stated that "Many [Republicans] are convinced that a Blankenship win . . . would destroy the party's prospects of defeating Democratic Sen. Joe Manchin in November" given the UBB explosion, Blankenship's year-long prison sentence, and his "racially charged" ads against Mitch McConnell (whom he called "Cocaine Mitch") and his so-called "China family." *See Politico*,

---

[1] This Court also reasoned that discovery might show "the extent and sources of information concerning the plaintiff and the nature of his conviction that were available to and circulating among Fox News employees near the time the statements were made." ECF 985 at 25–26.

*Blankenship Surging on Eve of West Virginia Senate Primary* (May 5, 2018), *available at*
https://tinyurl.com/na2ez6py and attached as Ex. A.

Later that night (still May 6), Mr. Murdoch emailed Fox News executives Jay Wallace
and Suzanne Scott, writing "Both Trump and McConnell appealing for help to beat unelectable
former mine owner who served time. Anything during day helpful but Sean and Laura dumping
on him hard might save the day."  ECF 990-1 at Ex. 2a.  The next morning (May 7), Mr. Wallace
responded as follows:

> After a tweet free weekend, he's back to tee up WV...
>
> **Donald J. Trump** Verified account @realDonaldTrump 3m3 minutes ago ...
>
> To the great people of West Virginia we have, together, a really great chance
> to keep making a big difference. Problem is, Don Blankenship, currently
> running for Senate, can't win the General Election in your State...No way!
> Remember Alabama. Vote Rep. Jenkins or A.G. Morrisey!

*Id.* at Ex. 2b.

When FNN produced these emails, it also offered to meet and confer with Plaintiff
regarding any additional discovery he believed necessary.  *See* ECF 1016-1.  Amidst those
discussions, Plaintiff moved for leave to file a surreply opposing FNN's motion for summary
judgment, claiming Mr. Murdoch's May 6 email was a "smoking gun" showing a conspiracy to
"maliciously defame" him.  ECF 987-1 at 1.  FNN's opposition brief explained that (1) the May
6 email says nothing about characterizing his criminal conviction as a "felony" or
"manslaughter"; (2) there was no evidence that the message, or any of its sentiments, ever
reached the speakers in any way; and (3) Plaintiff's motion for leave was premature, given
Plaintiff was requesting further supplemental discovery.  ECF 990 at 2.  That brief was supported
by sworn declarations from the three executives on the May 6 email, each of whom testified they
did not forward the email to, or share its substance with, anyone else at FNN, including any of

4

the persons who uttered the word "felon" or "manslaughter," or any producers of the programs on which those words were used. ECF 990-1 ¶¶ 2–4 (Murdoch); ECF 990-2 ¶¶ 4–7 (Wallace); ECF 990-3 ¶¶ 5–6 (Scott). Notably, Plaintiff has not alleged that either Sean (Hannity) or Laura (Ingraham)—the only FNN personalities mentioned in the email—ever said anything negative about him at all, much less that they referred to him as a felon or otherwise said anything about Plaintiff that he considers defamation.

This Court agreed with FNN's suggestion to hold Plaintiff's motion in abeyance pending supplemental discovery. ECF 991. At Plaintiff's request, FNN agreed to three more rounds of supplemental document searches and productions, based on search terms proposed by Plaintiff. FNN also consented to Plaintiff taking five additional depositions: FNN's President (Jay Wallace), the Chairman of its non-party parent company Fox Corporation (K. Rupert Murdoch), a former senior communications aide to Senator Mitch McConnell (Antonia Ferrier), a former FNN producer (Gary Villapiano), and another FNN program host (Martha MacCallum), the latter two of whom this Court previously denied Plaintiff leave to depose.

Both Mr. Murdoch and Mr. Wallace confirmed in deposition testimony what they had previously stated in their sworn declarations: Neither ever forwarded this private exchange, or shared its substance with, anyone else at FNN, including any of the persons who uttered the word "felon" or "manslaughter," or any producers of the programs on which those words were used. *See* Ex. B (Murdoch Tr.) 28:1–12 (testifying that he did not communicate with anyone else about the email); Ex. C (Wallace Tr.) 38:9–24, 41:13–42:4 (testifying that he understood the email to be an "observation" or "musing," not a directive). Gary Villapiano—the producer for Napolitano—testified that no one asked him to cease or slow his efforts to have Judge Napolitano appear on-air to clarify his misstatement. Ex. D (Villapiano Tr.) 50:3–52:25 ("I

don't recall anyone saying that at all.").  And Plaintiff's deposition of Martha MacCallum merely

confirmed (i) the uncontested reports that Plaintiff's poll numbers were reported to have

improved by 8 points after the debate she hosted, Ex. E (MacCallum Tr.) 35:5–9, 86:21–24, and

(ii) she too was unaware of the May 6 email exchange until her deposition, *id.* at 96:1–6, a fact

consistent with the entirety of the document discovery in the case and the testimony of all other

witnesses.[2]

## ARGUMENT

### I.    Plaintiff still lacks clear and convincing evidence of actual malice.

All of Plaintiff's claims ultimately require him to prove actual malice, which is the

"greatest obstacle" for public-figure libel plaintiffs, *Hinerman*, 423 S.E.2d at 572, and "highly

susceptible to summary judgment for the defendant."  *Hayseeds, Inc. v. State Farm Fire & Cas.*,

352 S.E.2d 73, 81 (W. Va. 1986).  At the summary judgment stage, Plaintiff must present "clear

and convincing evidence" of actual malice.  MTD Order (ECF 398) at 17, 23–24, 26 (citations

omitted).  The evidence must allow a reasonable jury to find the "evidentiary scales" were

"instantly tilted" towards Plaintiff, yielding an "abiding conviction" that actual malice was

"highly probable."  *See Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (discussing "clear

and convincing" standard).

---

[2] Ms. MacCallum is not alleged to have had any connection to any of the allegedly defamatory statements at issue and Plaintiff's counsel spent nearly the entirety of the deposition asking Ms. MacCallum for opinion testimony about a range of irrelevant topics including the validity of Plaintiff's conviction, whether she is personally concerned that China has developed hypersonic missiles, her personal knowledge of Senator McConnell's connections to China, and other irrelevant topics.  *See, e.g.*, Ex. E (MacCallum Tr.) 14–27, 41–62, 92–99.  Plaintiff had demanded to personally examine Ms. MacCallum at this deposition, but this Court entered a protective order prohibiting him from doing so.  ECF 1047.

Importantly, actual malice must be "brought home to the persons . . . having responsibility for the publication of the [statement]."  MTD Order (ECF 398) at 26 (quoting *Sullivan*, 376 U.S. at 287); *see also* ECF 985 at 21 (same).  Here, where all the challenged statements were made on live, unscripted television, the "persons . . . having responsibility" for these statements are *the actual speakers* that uttered them—Plaintiff must show that those *speakers* either had a "subjective appreciation" that the statement was false or subjectively "entertained serious doubts as to the truth of his [statement]."  MTD Order (ECF 398) at 24, 26 (internal citations and quotation marks omitted).

After an original discovery period of more than a year, Plaintiff failed to present clear and convincing evidence that the FNN speakers acted with actual malice, FNN Br. (ECF 891) at 11–19; FNN Reply (ECF 940) at 2–11.  Nothing from the supplemental discovery period has improved Plaintiff's position.

### A.    The May 6 email is not clear and convincing evidence of actual malice.

Plaintiff has focused on the May 6 email among FNN *executives*, but that does not constitute clear and convincing evidence that the *speakers* acted with actual malice for two important reasons.

First, the email says nothing about *defaming* Plaintiff, or about mischaracterizing his criminal conviction.  ECF 990-1 at Ex. 2a.  It does not refer to Plaintiff as a "felon" or to his crimes as a "felony" or "manslaughter," let alone suggest those terms or anything similar be used.  *See id*.  Nor does it say anything false about Plaintiff or his conviction; rather, it states that Plaintiff "served time," *id.*—a fact undisputed in this litigation or otherwise.  At most, the email contemplates criticizing Plaintiff, not defaming him.  *Accord* Surreply at 13 (tellingly describing the email as a directive to telecast "denunciatory," not defamatory, "commentary about Mr. Blankenship").  And there is no doubt that criticizing a political candidate is perfectly lawful.

*Sullivan*, 376 U.S. at 268 ("[D]iscussion [of public figures] cannot be denied and the right, as well as the duty, of criticism must not be stifled.") (internal citation and quotation marks omitted).

Second, and perhaps more important, there is no evidence that the May 6 email or its substance reached the *speakers* in any way. Instead, extensive discovery has confirmed what the three executives on this email testified to at the outset—none of them relayed the email (or the substance of it) to anyone else at FNN. ECF 990-1 ¶¶ 2–3; ECF 990-2 ¶¶ 6–7; ECF 990-3 ¶ 6.

Plaintiff is wrong in suggesting that the sworn declarations and deposition testimony by the executives who were party to the May 6 email, stating that they did not communicate its substance to anyone else, necessarily present credibility issues that must be decided by a jury. Surreply at 15–16. It is well established that a plaintiff cannot withstand summary judgment by "merely asserting that the jury might . . . disbelieve the defendant's denial of a conspiracy or of legal malice." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Rather, Plaintiff must offer "concrete evidence" that "affirmative[ly]" discredits this testimony, *id.* at 256–57, and here no documentary or testimonial evidence does so. Extensive document discovery yielded no "concrete evidence" of any such communications, and deposition testimony corroborates that neither the May 6 email nor its substance were ever communicated to any speaker or producer involved in any FNN program on which Plaintiff alleges he was defamed. *See* Napolitano Tr. (ECF 890-13) 208:2–211:18, 212:22–213:12 (in response to questions from Plaintiff's counsel, testifying he never discussed Plaintiff with any of a long list of persons including Mr. Murdoch, Mr. Wallace, Ms. Scott, Senator McConnell and others); Hadden Tr. (ECF 890-39) 81:16–85:18 (same); Levine Tr. (ECF 890-40) 113:14–115:3 (same, albeit shorter list); Stirewalt Tr. (ECF 890-42) 151:1–152:14; 153:14–155:25 (same, albeit shorter list); *see also* Rove Tr. (ECF 890-

41) 121:19–126:1 (same). The record is consistent with, rather than contradicts, the testimony of the executives on the May 6 email.

Plaintiff's speculation that "[i]t is neither accidental nor coincidental" that five commentators referred to his conviction as a felony after that email, Surreply at 2, is not concrete evidence. Nor is it, in any event, persuasive, because it ignores the indisputable facts in the record. Well *before* the May 6 email, at least 14 *other* commentators (from *other* media outlets) had *already* referred to Plaintiff as a "felon" or "felonious." *See* ECF 890-6 (Pl.'s Interrog. Resp. to NRSC) at 20–22. Plaintiff also asks the Court to ignore that on May 7 and 8, at least 16 *other* commentators on *other* media platforms also referred to Plaintiff as a "felon," none of whom attributed their word selection to FNN.[3] Plaintiff does not and cannot argue that Mr. Murdoch caused those other outlets to make such statements. Instead, Plaintiff expects the Court to simply ignore that a spike in media coverage occurred then across all Defendants (and other media organizations) because May 7–8 were the day before and of the West Virginia primary vote, and because on the morning of May 7 the President of the United States personally issued a tweet urging voters to support either of Plaintiff's opponents (the same tweet Mr. Wallace had included in his response email). ECF 990-1 at Ex. 2b. No reasonable factfinder could ignore those indisputable facts. Even if Plaintiff's theorizing that the FNN statements could not have been "accidental," Surreply at 2, were itself evidence—which it is not—it certainly does not

---

[3] *Id.* at 22–23 (S.E. Cupp (CNN); Griffin Connolly (Roll Call); Ben Jacobs (The Guardian); News and Guts; Holly Figueroa O'Reilly; Joe Lockhart (CNN); J.W. Williamson (Watauga Watch); Cathleen Decker (Los Angeles Times); Rachel Koning Beals (Market Watch); Chris Jones (KUTV); Paul Blest (Splinter News); Jim Heath; Nicole Hensley (New York Daily News); Rashmee Roshan Lall (The National); Gideon Resnick (Daily Beast); Dana Milbank (Washington Post)).

9

satisfy the clear and convincing evidence standard as required to withstand summary judgment here.

There is simply no evidence in the record—much less clear and convincing evidence—sufficient to raise a genuine dispute as to whether the May 6 email or its substance were ever communicated to anyone else at FNN, much less that it "filtered down to the persons who were involved in making the statements."  ECF 985 at 25–26.  Ultimately, Plaintiff's argument and speculation about what prompted Mr. Murdoch to send the May 6 email and what Mr. Murdoch intended to happen in response, if anything, are irrelevant.  Regardless of whether or how Mr. Murdoch heard of President Trump or Senator McConnell's appeals, Surreply at 11–12, and regardless of Plaintiff's argument that the May 6 email was a "tacit instruction," *id.* at 12–15, Plaintiff has nothing more than utter speculation that the email or its substance ever reached the individual speakers.[4]

### B. Blankenship's other purported evidence of actual malice is not clear and convincing either.

Plaintiff's case on actual malice is also unimproved by his assertion that individuals affiliated with FNN—Mr. Murdoch, Ms. MacCallum, Judge Napolitano, and Mr. Cavuto—departed from "journalism ethics standards."  Surreply at 17–19.

Plaintiff's arguments about Mr. Murdoch and Ms. MacCallum are unavailing because he has no evidence—and certainly not clear and convincing evidence—that either of them impacted the state of mind of the speakers as they uttered the challenged words.  His arguments about Mr. Murdoch solely concern the May 6 email and, as explained, there is no evidence the email or its substance reached any of the speakers.  Section I.A., *supra*.  As for Ms. MacCallum, Plaintiff

---

[4] To the extent Plaintiff implies a different standard applies at summary judgment for a conspiracy claim, that is incorrect.  *See infra,* n.7.

10

asserts that she "allowed Senator McConnell to negatively shape the content of her show against

Mr. Blankenship." Surreply at 18. Even assuming this vague, baseless assertion were true,

which it is not, Plaintiff has not adduced a shred of evidence that Ms. MacCallum ever

communicated with any of the speakers about Plaintiff, or that any of the speakers based their

words or state of mind on any commentary about Plaintiff on Ms. MacCallum's show. (Nor,

indeed, does Plaintiff claim that anything on her show was defamatory.) Again, Plaintiff has lost

sight of the requirement that actual malice be "brought home to the persons . . . having

responsibility for" the challenged statements. *Sullivan*, 376 U.S. at 287.

That leaves Judge Napolitano and Mr. Cavuto. Plaintiff's argument that Judge

Napolitano acted with actual malice because he departed from "unwritten journalism ethics

standards" by failing to timely correct his "manslaughter" statement ignores that failing to

correct a statement is not a departure from journalistic standards. As this Court has recognized,

"[a]ctual malice cannot be inferred from a failure to retract or correct a statement once the

publisher learns that the statement is false." MTD Order (ECF 398) at 26 (citing *Sullivan*, 376

U.S. at 286).[5]

And, as to Mr. Cavuto, it was neither a departure from "unwritten journalism ethics

standards," nor reflective of "animus" or "partisanship," *id.* at 19, for Mr. Cavuto to "suggest[]

to viewers that the Republican Party would 'lose West Virginia' if Mr. Blankenship won the

---

[5] Plaintiff's claim that Napolitano "never" corrected his misstatement is misleading. Surreply at 18. Judge Napolitano's public apology to Plaintiff did not precisely match his prior misstatement (Judge Napolitano apologized for calling Plaintiff a "felon," when his prior misstatement had used the word "manslaughter"), but that was because Plaintiff himself had confused the issue by complaining, moments earlier on the same show, about being called a "felon." Ex. F (Napolitano Tr.) at 184:6–10 (quoting a telecast of the program *Your World*, hosted by Neil Cavuto, on which Judge Napolitano and Blankenship appeared as guests); *id.* at 197:19–24 (Judge Napolitano later testifying that "[y]our own client [Plaintiff] in the same interview accused me of calling him a 'felon' which . . . had not been the case").

11

primary," Surreply at 18.  Mr. Cavuto's statement falls within the realm of First Amendment-

protected "public discussion of the qualifications of a candidate for elective office," *Harte-*

*Hanks*, 491 U.S. at 686 (internal citation and quotation marks omitted); *see also id.* at 686–87

(emphasizing that discussions of the "merits and demerits of the candidates for public trust" must

be "protected with special vigilance" and are "probably the strongest possible case for

application of the [actual malice] rule") (internal citations and quotation marks omitted).  Mr.

Cavuto's statement was neither "extreme" nor could it be sufficient to support a conclusion, by

clear and convincing evidence, that Mr. Cavuto deliberately lied (or was knowingly reckless) in

describing Plaintiff's criminal conviction.  *See id.* at 665 ("a public figure plaintiff must prove

more than an extreme departure from professional standards"); *Arpaio v. Robillard*, 459 F. Supp.

3d 62, 66 (D.D.C. 2020) ("the motivations behind defendants' communications—inspired by

political differences or otherwise—do not impact whether defendants acted with actual malice as

a matter of law"); *Palin v. New York Times Co.*, 940 F.3d 804, 814 (2d Cir. 2019) ("allegation[s]

[must] indicate more than sheer political bias. . . ."); *accord Hinerman*, 423 S.E.2d at 573 at 170

("partisanship, animus toward the subject of a libel, or other 'malicious' motives are not, alone,

conclusive evidence of 'actual malice'").

## II.     Summary judgment is warranted on other independent grounds.

In addition to the lack of actual malice, summary judgment is warranted on several

independent grounds.  As explained in FNN's original motion, Plaintiff also lacks sufficient

evidence that:

(1) the speakers intended to injure Plaintiff, ECF 891 at 19;

(2) the challenged statements were materially false, *id.* at 20–26; and

(3) Plaintiff suffered any "resulting injury," *id.* at 26–29.[6]

Plaintiff does not argue that any of these grounds are affected by evidence from the supplemental discovery period, and they are not.

### III.    If the Court concludes that Plaintiff actually pleaded a "conspiracy" claim against FNN, it cannot survive summary judgment.

Faced with the fact that he does not have an actionable defamation claim, Plaintiff's surreply focuses instead on a supposed conspiracy to defame him.  But any such conspiracy claim cannot survive summary judgment either.  To begin, it is clear from the face of Plaintiff's complaint that he did not actually plead the conspiracy claim against FNN.  While some allegations in the complaint allude to FNN's involvement in a conspiracy, Surreply at 4 (quoting ECF 985 at 3), this Court has already noted that Plaintiff did not include FNN among those he defined as "Conspiracy Defendants," and "the conspiracy related allegations contained in the counts involve only [those] three [other] defendants."  ECF 985 at 2.  Though this Court has previously refrained from deciding the issue, *id.* at 20 n.10, the Court should hold now Plaintiff failed to plead a conspiracy claim against FNN, for the reasons FNN has argued elsewhere.  ECF 974 (FNN R. 72(a) Obj.) at 10–11.

But to the extent Plaintiff is deemed to have pleaded (and not abandoned) claims against FNN for conspiracy to defame and false-light conspiracy, those claims necessarily fall together with Plaintiff's underlying defamation and false-light claims.  It is hornbook law that "[a] civil conspiracy is not a *per se*, stand-alone cause of action."  *Dunn*, 689 S.E.2d at 269.  "The cause of action is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiff."  *Id.* at 268 (internal citation and quotation marks omitted).  So "for civil

---

[6] FNN also argues that Plaintiff cannot prove punitive damages or an invasion of privacy. *Id.* at 29–30.

conspiracy to be actionable[,] it must be proved that the defendants have committed some

wrongful act." *Id.* (internal citation and quotation marks omitted).

Nor is the summary judgment standard lessened for a conspiracy claim, as Plaintiff

appears to suggest. *See* Surreply at 3 (arguing "[a] non-movant is afforded even greater leeway

concerning conspiracy claim"); *id.* at 8 (claiming "[t]he question of the existence of a conspiracy

is rarely appropriate for summary judgment"). That postulation was squarely rejected by the

Supreme Court in *Anderson.* 477 U.S. at 256–57 (in case similarly involving claims of libel *and

conspiracy,* squarely rejecting argument that "summary judgment should seldom . . . be granted

where [the defendant's] state of mind is at issue"). And Plaintiff's authorities do not hold

otherwise. Surreply at 15–16.[7]

In short, if "no viable tort claim remains in this action . . . , any claim of civil conspiracy

fails as a matter of law." *Wittenberg v. Wells Fargo Bank, N.A.*, 852 F. Supp. 2d 731, 754

(N.D.W. Va. 2012). As Plaintiff himself ultimately concedes, "a civil conspiracy must be based

---

[7] None of Plaintiff's authorities hold that plaintiffs can carry conspiracy claims to trial by "merely asserting" that a jury could "disbelieve the defendant's denial of a conspiracy"—a proposition that would squarely contradict *Anderson*. 477 U.S. at 256. In two of Plaintiff's cases, the court relied on denials by the defendants to deny summary judgment *to the plaintiff*. *St. Paul Fire & Marine Ins. Co. v. Hoskins*, No. 5:10CV087, 2012 WL 748574, at *11 (W.D. Va. Mar. 7, 2012); *J & J Sports Prods., Inc. v. Hernandez*, No. 1:11CV749, 2013 WL 5937909, at *4 (M.D.N.C. Nov. 5, 2013). In another, the court expressly acknowledged *Anderson*, and denied summary judgment for the defendant only because *other* "evidence exist[ed] from which a rational juror could conclude" the defendant was lying. *Franklin D. Azar & Assocs., P.C. v. Bryant*, No. 417CV00418ALMKPJ, 2019 WL 5390172, at *4 (E.D. Tex. July 30, 2019), *report and recommendation adopted*, No. 4:17-CV-00418, 2019 WL 4071782 (E.D. Tex. Aug. 29, 2019) (citing a dozen pieces of contrary evidence). Plaintiff's final case held only that summary judgment is inappropriate when the entire dispute hinges on competing testimony from witnesses presenting "conflicting versions of the facts," which is not so here. *Pagani v. Modus eDiscovery*, No. 3:16-CV-00024-GCM, 2017 WL 1205075, at *3 (W.D.N.C. Mar. 30, 2017). As the Court made clear in *Anderson*, the plaintiff "must set forth specific facts showing that there is a genuine issue for trial . . . even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity to conduct discovery." 477 U.S. at 256–57.

14

on some underlying tort or wrong."  Surreply at 17 (quoting *O'Dell v. Stegall*, 226 W. Va. 590, 625 (2010)).  Here, the only wrongful acts identified and alleged by Plaintiff are defamation and the derivative tort of false light invasion of privacy.  And because those claims fail, so too must any conspiracy claim based on those alleged torts.

To be sure, Plaintiff has complained at length about supposed coordinated efforts to *criticize* him in the 2018 West Virginia Republican Senate Primary, *see* Surreply at 10–11 (arguing that Senator McConnell's staffer encouraged Martha MacCallum to criticize Plaintiff on her show), but political grievances are not actionable in court.  This is not a case about who likes or dislikes Plaintiff, or who considered Plaintiff worthy or unworthy as a candidate.  Nor could it be, as holding those views is not unlawful and, absent more, is purely protected political activity.  To the extent there is a conspiracy claim, the question is whether FNN conspired to *defame* Plaintiff by mischaracterizing his criminal conviction.  And because Plaintiff lacks evidence of a conspiracy *to defame*, summary judgment must be entered for FNN.

## **CONCLUSION**

For the foregoing reasons, and those stated in FNN's opening and reply memoranda, the Court should grant FNN's motion for summary judgment.

Respectfully submitted,

/s/ J. Zak Ritchie
J. Zak Ritchie (WVSB #11705)
Ryan McCune Donovan (WVSB #11660)
HISSAM FORMAN DONOVAN RITCHIE PLLC
P.O. Box 3983
Charleston, WV 25339
681-265-3802 *office*
304-982-8056 *fax*
zritchie@hfdrlaw.com
rdonovan@hfdrlaw.com

Elbert Lin (WVSB #12171)
David Parker (*pro hac vice*)

15

HUNTON ANDREWS KURTH LLP
951 E. Byrd Street
Richmond, VA 23219
804-788-8200 *office*
804-788-8218 *fax*
elin@HuntonAK.com
dparker@HuntonAK.com

Shawn Patrick Regan (*pro hac vice*)
Silvia Ostrower (*pro hac vice*)
HUNTON ANDREWS KURTH LLP
200 Park Avenue
New York, NY 10166
212-309-1000 *office*
212-309-1100 *fax*
sregan@HuntonAK.com
sostrower@HuntonAK.com

*Counsel for Fox News Network LLC*

16

# Exhibit A

# POLITICO

# POLITICO

## ELECTIONS

## Blankenship surging on eve of West Virginia Senate primary

Establishment Republicans are fretting about a late surge by the convicted coal baron.

By **ALEX ISENSTADT** | 05/05/2018 09:29 PM EDT



Four Republicans said they'd reviewed polling conducted in recent days showing former coal baron Don Blankenship moving narrowly ahead of his more mainstream GOP rivals in West Virginia's Senate primary. | Steve Helber/AP Photo

There is growing concern among Republicans that Don Blankenship, a bombastic coal baron who has spent time in prison, is surging ahead of Tuesday's West Virginia Senate primary — and a last-minute campaign is underway to stop him.

4277

As the tight contest hurtles to a close, four Republicans said they'd reviewed polling conducted in recent days showing Blankenship, who spent a year in jail following the 2010 explosion at his Upper Big Branch Mine that killed 29 workers, moving narrowly ahead of his more mainstream GOP rivals, Rep. Evan Jenkins and state Attorney General Patrick Morrisey.

The Republicans cautioned that the surveys, designed to offer a snapshot of the race, were conducted over a brief period of time and may be overstating Blankenship's support.

Still, Blankenship's rivals and other Republicans are alarmed. Many are convinced that a Blankenship win, coming just months after the disastrous Alabama Senate race, would destroy the party's prospects of defeating Democratic Sen. Joe Manchin in November.

Some Republicans involved in the race said they were hoping the White House would intervene ahead of the Tuesday primary, though it remains unclear whether it will do so.

## Morning Score newsletter

✉ Your guide to the permanent campaign — weekday mornings, in your inbox.

> Your email...

By signing up you agree to receive email newsletters or updates from POLITICO and you agree to our privacy policy and terms of service. You can unsubscribe at any time and you can contact us here. This sign-up form is protected by reCAPTCHA and the Google Privacy Policy and Terms of Service apply.

On Thursday, the president's son, Donald Trump Jr., sent out a tweet asking "the people of West Virginia to make a wise decision and reject Blankenship."

"No more fumbles like Alabama," he added. "We need to win in November."

Morrisey, who'd largely been ignoring Blankenship, has suddenly turned his fire on the coal baron. On Saturday, Morrisey's campaign released a 30-second robocall to West Virginia voters blasting Blankenship on an array of issues. The call described Blankenship as a "convicted criminal" who didn't vote for President Donald Trump in the 2016 election. It also highlighted his Nevada residency.

USCA4 Appeal: 23-1198    Doc: 58    Filed: 05/25/2022    Pg: 232 of 305

"A vote for Blankenship is a vote to advance liberal positions, higher taxes and abortion on demand," the voice-over says. "That's because Blankenship would get crushed in November."

On Sunday afternoon, Morrisey is slated to hold a news conference to "talk about Don Blankenship's criminal record, his significant legal issues, and how his candidacy threatens West Virginia's conservative agenda," according to a media advisory his campaign sent out over the weekend.

A Blankenship strategist, Greg Thomas, shrugged off the eleventh-hour assault.

"We have run hard from beginning to end, and we are encouraged by the desperation we are seeing from our opposition," he said in a text message.

National Republicans have sought to prevent Blankenship from winning the nomination. An outside group aligned with Senate Majority Leader Mitch McConnell, Mountain Families PAC, has spent $1.3 million on a TV ad campaign targeting the former prisoner. On Friday afternoon, the group began a digital advertisement telling West Virginians, "Don't vote Don Blankenship."

The offensive bears similarities to the ultimately unsuccessful one the party launched against former state Supreme Court Justice Roy Moore in last year's Alabama Senate race. Moore beat back the national GOP campaign against him and went on to lose the general election to Democrat Doug Jones.

Blankenship has responded in kind, launching a slash-and-burn campaign targeting McConnell.

## California GOP looks to dislodge Democratic control
By **CARLA MARINUCCI**

His scorching attacks have veered into deeply personal, even racially charged territory.

This week, Blankenship began airing a TV commercial labeling McConnell "Cocaine Mitch," an apparent reference to a 2014 report that drugs were once found aboard a shipping vessel owned by the family of McConnell's wife, Taiwan-born Transportation Secretary Elaine Chao. Then, a few days later, Blankenship began airing another spot declaring that McConnell's "China family has given him tens of millions of dollars."

12/10/21, 11:03 AM    Case 2:19-cv-00203 Blankenship surging in chaotic West Virginia Senate primary - POLITICO Page 288 PageID #: 18530

President Donald Trump has yet to speak out against Blankenship, though earlier this spring he held a tax reform-focused event in which he sat next to Jenkins and Morrisey — a deliberate move designed to show that he preferred either of them to win the nomination.

But after lining up behind losing candidates in Alabama and Pennsylvania races — electoral defeats that ultimately proved embarrassing to Trump — many Republicans are skeptical that he will forcefully repudiate Blankenship ahead of the primary.

Particularly concerning to Republicans is Blankenship's TV spending. Over the final six days of the race, the self-funding coal baron is set to spend over $640,000 on commercials, according to media buying totals — more than Jenkins and Morrisey combined. Blankenship has spent over $2.5 million on TV ads in total, far more than his rivals.

Senior Republicans say they are also distressed that Jenkins and Morrisey spent nearly all of the campaign savaging each other. Further complicating matters is that a Democratic super PAC, Duty and Country, convinced that Jenkins would pose a formidable challenge to Manchin, has invested $1.8 million targeting him in an effort to keep him from winning the GOP primary.

The bloodbath could ultimately benefit Blankenship, who has faced far fewer incoming attacks.

Andy Seré, a Jenkins strategist, argued that Morrisey's attacks against Jenkins "have helped Blankenship," and that with his last-minute attacks on Blankenship, "Morrisey is scrambling to fix the mess he and his enablers made."

"But West Virginians see through it," Seré added. "We are confident the Schumer-Morrisey alliance will fail and Evan Jenkins will prevail."

About Us

Advertising

Breaking News Alerts

Careers

Credit Card Payments

4280

Digital Edition

FAQ

Feedback

Headlines

Photos

POWERJobs

Press

Print Subscriptions

Write For Us

RSS

Site Map

Terms of Service

Privacy Policy

Do not sell my info

Notice to California Residents

—————————

© 2021 POLITICO LLC

# Exhibit B

1              UNITED STATES DISTRICT COURT
2           SOUTHERN DISTRICT OF WEST VIRGINIA
3                 CHARLESTON DIVISION
4
5    _____
                                   )
6    DON BLANKENSHIP,              )
                                   )
7              Plaintiff,          )
                                   )
8         vs.                      )   Case No. 2:19-cv-00236
                                   )
9    FOX NEWS NETWORK LLC et al., )
                                   )
10             Defendants.         )
     _____)
11
12
13
14
15            REMOTE VIDEOTAPED DEPOSITION OF
16                 K. RUPERT MURDOCH
17             Thursday, November 18, 2021
18                    Volume I
19
20
21
22   Reported by:
     NADIA NEWHART
23   CSR No. 8714
24   Job No. 4890949
25   PAGES 1 - 73

                                         Page 1

```
 1        Q    And that is -- that's an email from

 2   Mr. Wallace replying back to you the next morning in

 3   reply to the email that we just looked at, correct?

 4        A    Yes.

 5        Q    All right.  Other than that reply that you      10:03:18

 6   received from Mr. Wallace, did you ever communicate

 7   with anyone else about the email that is from you to

 8   Ms. Scott and Mr. Wallace?

 9             MR. GEORGE:  Object to form; misstates.

10             But go ahead.                                   10:03:36

11             THE WITNESS:  I don't think so.  I certainly

12   have no memory.

13   BY MR. GRAY:

14        Q    All right.  So go -- so go back to the email

15   that you sent to Ms. Scott and Mr. Wallace.              10:03:49

16        A    Yes.

17        Q    All right.  You make reference there to a,

18   quote, unelectable former mine owner.  Do you see

19   that?

20        A    Yes.                                            10:04:08

21        Q    You were referring to Mr. Blankenship, true?

22        A    Yes.

23        Q    This -- go ahead.

24        A    Obviously, yes.

25        Q    Is there some reason you didn't refer to      10:04:20
```

Page 28

1        I, the undersigned, a Certified Shorthand

2    Reporter of the State of California, do hereby

3    certify:

4        That the foregoing proceedings were taken

5    before me at the time and place herein set forth;

6    that any witnesses in the foregoing proceedings,

7    prior to testifying, were administered an oath; that

8    a record of the proceedings was made by me using

9    machine shorthand which was thereafter transcribed

10   under my direction; that the foregoing transcript is

11   a true record of the testimony given.

12       Further, that if the foregoing pertains to the

13   original transcript of a deposition in a Federal

14   Case, before completion of the proceedings, review

15   of the transcript [ ] was [ ] was not requested.

16       I further certify that I am neither financially

17   interested in the action nor a relative or employee

18   of any attorney or any party to this action.

19    IN WITNESS WHEREOF, I have this date subscribed

20   my name.

21   Dated: November 19, 2021

22

23

24                    *Nadia Newhart*

                       NADIA NEWHART

25                     CSR NO. 8714

                                              Page 73

# Exhibit C

**In the Matter Of:**

*BLANKENSHIP v*

*FOX NEWS NETWORK*

---

*JAY WALLACE*

*November 16, 2021*

---



USCA4 Appeal: 22-1198    Doc: 58         Filed: 05/25/2022    Pg: 241 of 305

 1  email "anything during the day helpful"?

 2       A.   Yes.

 3       Q.   When you read the word "helpful," you

 4  understood that to mean that it would aid in defeating

 5  Mr. Blankenship in the primary.  Correct?

 6               MR. REGAN:  Objection.

 7          You can answer.

 8       A.   No.

 9       Q.   (BY MR. GRAY)  What is your understanding of

10  the word "helpful" in this email?

11               MR. REGAN:  Objection.

12          You can answer.

13       A.   You know, during the day all we do is purely

14  cover the news.  I mean, it's a high profile case.  It

15  was covered.  I didn't look at it as anything beyond a

16  musing.  A musing as in a, period, m- -- musing.  Not

17  amusing.

18               MR. REGAN:  Not funny.

19       A.   Right.

20               MR. REGAN:  Two different words.

21       A.   Sorry.

22               MR. REGAN:  Two different words.

23       A.   Yeah.  I meant an observation.  Sorry about

24  that.

25       Q.   (BY MR. GRAY)  And what -- isn't the word

41

```
 1      A.   Yes.

 2             MR. GRAY:  Let's take five minutes, and

 3   we'll come back.

 4             MR. REGAN:  Okay.

 5             THE VIDEOGRAPHER:  The time is 1:28 p.m.

 6   We are going off the record.

 7             (Break from 1:28 a.m. to 1:45 p.m.)

 8             THE VIDEOGRAPHER:  The time is 1:45 p.m.

 9   We are back on the record.

10      Q.   (BY MR. GRAY)  Mr. Wallace, can you put

11   Exhibit 1 in front of you, the declaration?

12             MR. REGAN:  He has it.

13      Q.   (BY MR. GRAY)  If you look at paragraph 4,

14   you say in the second sentence of that paragraph,

15   "Rather" -- I am quoting now -- "I understood

16   Mr. Murdoch's email simply to be sharing an

17   observation."

18         Do you see that?

19      A.   Yes, I see it.

20      Q.   And you've said similar -- similar things in

21   this deposition.  And the email you're referring to is

22   Exhibit 2 that we've just been discussing.  Right?

23      A.   Yes.  Yes.

24      Q.   What do you mean when you say that he was

25   simply sharing an observation?
```

Case 2.19-cv-00236  Document 1059-3  Filed 12/10/21  Page 5 of 8 PageID #: 18540

42

1      A.    An observation about the news, what was going

2  on in the news, what was happening at the moment.

3      Q.    Anything other than that?

4      A.    No.

5      Q.    Has Donald Trump when he was president, did he

6  ever communicate with you, either directly or

7  indirectly, with an appeal to help with respect to

8  either supporting or defeating a particular candidate?

9              MR. REGAN:  Objection.

10             You can answer.

11     A.    No, he did not.

12     Q.    (BY MR. GRAY)  How about Senator McConnell?

13  Has that ever happened with Senator McConnell?  Has he

14  ever communicated with you, either directly or

15  indirectly, with a request or an appeal for help in

16  supporting or defeating a particular candidate?

17             MR. REGAN:  Objection.

18             You can answer.

19     A.    No, he has not.

20     Q.    (BY MR. GRAY)  Are you aware of any occasions

21  where Donald Trump has communicated with any other than

22  person at Fox News, that's either directly or

23  indirectly, with an appeal for help in supporting or

24  defeating a particular candidate?

25             MR. REGAN:  Objection.  I mean, Jeremy,

54

```
1              UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF WEST VIRGINIA
2                   CHARLESTON DIVISION

3   DON BLANKENSHIP,            )
        Plaintiff,             )
4                              )
    v.                         ) Case No. 2:19-cv-00236
5                              )
    FOX NEWS NETWORK LLC,       )
6   et al.,                     )
        Defendants.            )

7

8

9              REPORTER'S CERTIFICATION

10   REMOTE VIDEOTAPED DEPOSITION OF JAY WALLACE

11                 NOVEMBER 16, 2021

12

13     I, Julie C. Brandt, Certified Shorthand Reporter in

14  and for the State of Texas, hereby certify to the

15  following:

16      That the witness, JAY WALLACE, was duly sworn by

17  the officer and that the transcript of the oral

18  deposition is a true record of the testimony given by

19  the witness;

20      Before completion of the deposition, review of the

21  transcript [X] was [ ] was not requested.  If requested,

22  any changes made by the deponent (and provided to the

23  reporter) during the period allowed are appended hereto;

24      That pursuant to information given to the

25  deposition officer at the time said testimony was taken,
```

55

```
 1   the following includes counsel for all parties of

 2   record:

 3   FOR THE PLAINTIFF:

 4        Jeremy Gray
          Ryan Hemar
 5        EARLY SULLIVAN WRIGHT GIZER & McRAE LLP
          6420 Wilshire Boulevard, 17th Floor
 6        Los Angeles, California 90048
          323 301 4660
 7        jgray@earlysullivan.com
          rhemar@earlysullivan.com
 8
     -and-
 9
          Jeffrey S. Simpkins (local counsel)
10        SIMPKINS LAW
          102 E. 2nd Avenue
11        Williamson, West Virginia 25661
          304 235 2735
12        simpkinslawoffice@gmail.com

13
     FOR THE DEFENDANT FOX NEWS NETWORK LLC AND THE WITNESS:
14
          Shawn Patrick Regan
15        HUNTON ANDREWS KURTH LLP
          200 Park Avenue
16        New York, New York 10166
          212 309 1046
17        sregan@HuntonAK.com

18   -and-

19        J. Zak Ritchie
          HISSAM FORMAN DONOVAN RITCHIE PLLC
20        707 Virginia Street East, Suite 260
          Charleston, West Virginia 25301
21        304 615 2887
          zritchie@hfdrlaw.com

22

23   FOR THE DEFENDANTS CNN AND THE WASHINGTON POST:

24        Matthew Heins
          WILLIAMS & CONNOLLY LLP
25        725 Twelfth Street, NW
```

56

1      Washington, DC 20005
       202 434 5073
2      mheins@wc.com

3      I further certify that I am neither counsel for,

4   related to, nor employed by any of the parties or

5   attorneys in the action in which this proceeding was

6   taken, and further that I am not financially or

7   otherwise interested in the outcome of the action.

8      Certified to by me _____, 2021.

9

10

11   _____
     Julie C. Brandt, CSR, RMR, CRR
12   Texas CSR No. 4018
     Expiration Date:  10/31/23
13
     LEXITAS
14   Texas Firm Registration No. 736
     999 Old Eagle School Road, Suite 118
15   Wayne, Pennsylvania 19087-1707
     215 494 7650
16

17  Job No. 2021-819162

18

19

20

21

22

23

24

25

# Exhibit D

**In the Matter Of:**

*BLANKENSHIP v*

*FOX NEWS NETWORK*

---

*GARY VILLAPIANO*

*November 09, 2021*

---



50

```
 1                THE WITNESS:  I don't recall.

 2   BY MR. GRAY:

 3        Q.  Did anyone at Fox News communicate to

 4   you in any way that you should cease or slow your

 5   efforts to have the judge correct the record

 6   about his statement that Mr. Blankenship went to

 7   jail for manslaughter?

 8        A.  I don't recall anyone saying that at

 9   all.

10        Q.  Did any of the producers on the shows on

11   which the Judge appeared communicate to you that

12   you should cease or slow your efforts to have the

13   Judge correct the record?

14        A.  I don't recall that ever happening.

15        Q.  Did any of the hosts of the shows on

16   which the Judge appeared communicate to you that

17   you should cease or slow your efforts to have the

18   judge correct the record?

19        A.  No host ever said that to me.

20        Q.  Did any executives at Fox News

21   communicate to you that you should cease or slow

22   your efforts to have the Judge correct the

23   record?

24        A.  No executive ever said anything of that

25   matter at all to me.
```

51

1        Q.  Did you ever hear from any source that

2   it was the desire of Jay Wallace that you should

3   cease or slow your efforts to have the Judge

4   correct the record?

5        A.  I never heard that.

6        Q.  Did you ever hear from any source that

7   it was the desire of Bill Sammon that you should

8   cease or slow your efforts to have the Judge

9   correct the record?

10       A.  I never heard that.

11       Q.  Did you ever hear from any source that

12  it was the desire of Suzanne Scott that you could

13  cease or slow your efforts to have the Judge

14  correct the record?

15       A.  I never heard that.

16       Q.  Did you ever hear from any source that

17  Senator McConnell opposed Mr. Blankenship's

18  candidacy in this timeframe?

19       A.  I never heard that.

20       Q.  Did you ever hear from any source that

21  Rupert Murdoch had expressed a desire that Fox

22  News broadcast negative content about

23  Mr. Blankenship?

24       A.  I never heard that.

25       Q.  Did you ever hear or learn that hosts or

52

```
 1    guests on other Fox News shows had referred to

 2    Mr. Blankenship as a convicted felon?

 3                   MR. REGAN:  Objection.

 4                   Ever or during the relevant time

 5    period?

 6                   MR. GRAY:  Fair enough, Counsel.

 7    During the April, May, June timeframe of 2018.

 8    BY MR. GRAY:

 9        Q.  So let me re-ask the question to you:

10    During the April, May, June 2018 timeframe, did

11    you ever learn that a guest or a host other than

12    Judge Napolitano had referred to Mr. Blankenship

13    as a, quote, "convicted felon" or as a felon on

14    the air?

15        A.  I'm not aware of that at all.

16        Q.  Do you ever remember watching any

17    broadcasts where that happened?

18        A.  I don't recall.

19        Q.  Did you ever have any discussion

20    with anyone at Fox News about -- other than what

21    we have already looked at, the e-mails you had

22    with the Judge, et cetera.  Did you have any

23    other communications that you can recall about

24    the nature of Mr. Blankenship's conviction?

25        A.  No.  I had no other communications.
```

61

```
 1              UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF WEST VIRGINIA
 2                  CHARLESTON DIVISION
 3
DON BLANKENSHIP,      §
 4                    §
        Plaintiff,    §
 5                    §
v.                    § Case No.:  2:19-cv-00236
 6                    §
FOX NEWS NETWORK,     §
 7 L.L.C., et al.     §
                      §
 8      Defendants.   §
 9
            REMOTE VIDEOTAPED ORAL DEPOSITION OF
10                   GARY VILLAPIANO
                   November 9, 2021
11
        I, Suzanne Kelly, RDR, CRR, in and for the State
12 of Texas hereby certify to the following:
13      That the witness, GARY VILLAPIANO, was duly sworn
   by the officer and that the transcript of the
14 videotaped oral deposition is a true record of the
   testimony given by the witness;
15
        That the deposition transcript was submitted on
16 the _____ day of _____, 2021, to the witness for
   examination, signature and return to Suzanne Kelly by
17 the _____ day of _____, 2021;
18      That the amount of time used by each party at the
   deposition is as follows:
19
        Mr. Gray:  56 minutes used;
20
21
22
23
24
25
```

62

 1        That pursuant to the information given to the
    deposition officer at the time said testimony was
 2  taken, the following includes counsel for all parties
    of record:

 3
    Jeremy Gray, Esq.
 4  Ryan Hemar, Esq.
    EARLY SULLIVAN WRIGHT GIZER & McRAE, L.L.P.
 5  6420 Wilshire Boulevard
    17th Floor
 6  Los Angeles, California 90048
    323.301.4660
 7  jgray@earlysullivan.com
    rhemar@earlysullivan.com
 8
    Shawn Patrick Regan, Esq.
 9  HUNTON ANDREWS KURTH, L.L.P.
    200 Park Avenue
10  New York, New York 10166
    212.309.1046
11  sregan@HuntonAK.com

12  J. Zak Ritchie, Esq.
    HISSAM FORMAN DONOVAN RITCHIE, P.L.L.C.
13  707 Virginia Street East
    Suite 260
14  Charleston, West Virginia 25301
    304.615.2887
15  zritchie@hfdrlaw.com

16  Matthew Heins, Esq.
    WILLIAMS & CONNOLLY, L.L.P.
17  725 Twelfth Street, N.W.
    Washington, D.C. 20005
18  202.434.5073
    mheins@wc.com

19
          I further certify that I am neither counsel for,
20  related to, nor employed by any of the parties or
    attorneys in the action in which this proceeding was
21  taken, and further that I am not financially or
    otherwise interested in the outcome of the action.

22
          In witness whereof, I have this date subscribed my
23  name on this __ day of _____, 2021.

24

25

63

*Suzanne Kelly*

Suzanne Kelly, RDR, CRR
LEXITAS
Firm Registration No. 736
Suite 118
999 Old Eagle School Road
Wayne, Pennsylvania 19087-1707
215.494.7650

JOB NO.:  2021-787438

# Exhibit E

**In the Matter Of:**

*BLANKENSHIP v*

*FOX NEWS NETWORK*

---

*MARTHA MACCALLUM*

*November 15, 2021*

---



14

1       Q.   (BY MS. JACKSON)  And what were the charges in

2   Don Blankenship's indictment?

3       A.   I can't recount them without looking into it

4   again.

5       Q.   Do you know how many years after UBB Don

6   Blankenship was indicted?

7       A.   Not as I sit here right now, no.

8       Q.   If I told you it was four and a half years

9   later, would you have any reason to disagree with me,

10  ma'am?

11      A.   I'm sorry.  If what was four and a half -- say

12  that again.

13          MR. REGAN:  She can always read it back.

14  Helena, you're speaking very quickly, maybe it's partly

15  the audio.  But go ahead if you want that question read

16  back, because I'm looking at a transcript and I'm having

17  a difficult time following it.

18      Q.   (BY MS. JACKSON)  If I told you Don

19  Blankenship was indicted four years after the UBB Mine

20  explosion, would it surprise you?

21      A.   If -- no, I would just go by what you're --

22  what you're saying right now.

23      Q.   Did you know that Mr. Blankenship was indicted

24  after he published a documentary exposing Obama's

25  government responsibility for causing the mine

USCA4 Appeal: 22-1198    Doc: 58    Filed: 05/25/2022    Pg: 258 of 305
Case 2:19-cv-00236    Document 1059-5    Filed 12/10/21    Page 4 of 51 PageID #: 18555

BLANKENSHIP v                                              Martha MacCallum
FOX NEWS NETWORK                                           November 15, 2021

15

1    explosion?

2        MR. REGAN:  Objection.

3        You can answer.

4    A.  No, I did not know that.

5    Q.  (BY MS. JACKSON)  Why didn't you report on

6    that during this election cycle?  Do you know?

7        MR. REGAN:  Objection.  I mean, Helena,

8    what does this have to do with anything?  This is a

9    defamation case.  Ms. MacCallum's statements are not at

10   issue.  What does it have to do with anything in this

11   case what she didn't report on?

12   Q.  (BY MS. JACKSON)  You can answer.

13       MR. REGAN:  How does that at all relate

14   to anything?  This just further illustrates that the

15   purpose of this deposition is to harass Ms. MacCallum,

16   who doesn't have anything to do with the statements at

17   issue in this case.

18       Go ahead and answer the question, if you would

19   like.  The question was why didn't you report on that

20   during this election cycle, do you know?  And I have an

21   objection.

22   A.  I don't know why we didn't report on that at

23   that time.  I'd have to -- I don't know.

24   Q.  (BY MS. JACKSON)  Were you aware that United

25   States Magistrate Judge Omar Aboulhosn has ruled that

BLANKENSHIP v
FOX NEWS NETWORK

Martha MacCallum
November 15, 2021

16

1    Don Blankenship's misdemeanor conviction should be

2    vacated?

3        A.   I am not aware.

4        Q.   Did you know that Magistrate Judge Aboulhosn

5    also ruled that the federal prosecutors in Don

6    Blankenship's case withheld evidence that was favorable

7    to his case?

8            MR. REGAN:  Objection.

9        You can answer.

10           I mean, Helena this just shows this is just

11   harassing the witness.  What does Ms. MacCallum's

12   knowledge have to do with anything in this case?  Can

13   you tell me that?

14       Q.   (BY MS. JACKSON)  You can answer, ma'am.

15           MR. REGAN:  Can you tell me what that --

16   I mean, this illustrates this is just harassing an

17   innocent victim.

18       Q.   (BY MS. JACKSON)  Sir, you can -- sorry --

19           MR. REGAN:  You can answer.  The question

20   was did you know that Magistrate Judge Aboulhosn also

21   ruled that the federal prosecutors in Don Blankenship's

22   case withheld evidence that was favorable to his case?

23       A.   I did not, but he explained quite a bit of his

24   side of it in the opportunity that he was given at that

25   debate.  So I would acknowledge that he was given an

USCA4 Appeal: 22-1198    Doc: 58    Filed: 05/25/2022    Pg: 260 of 305

Case 2:19-cv-00236   Document 1059-5   Filed 12/10/21   Page 6 of 51 PageID #: 18557

BLANKENSHIP v
FOX NEWS NETWORK

Martha MacCallum
November 15, 2021

17

1    opportunity to explain his perspective on his case

2    during that debate.

3        Q.   (BY MS. JACKSON)  Were you aware that that

4    same Magistrate Judge Aboulhosn further ruled that the

5    evidence withheld by these prosecutors could have

6    resulted in Don Blankenship's acquittal?

7            MR. REGAN:  Objection.

8        Q.   (BY MS. JACKSON)  Go ahead and answer.

9            MR. REGAN:  Go ahead and answer.

10       A.   I was not aware of what you just mentioned.

11       Q.   (BY MS. JACKSON)  Did you know that the DOJ,

12   the actual Office of Professional Responsibility, found

13   the federal prosecutors violated DOJ policies during

14   this case?

15           MR. REGAN:  Objection.

16        You can answer.

17       A.   No.

18       Q.   (BY MS. JACKSON)  Did you know that the DOJ

19   Office of Professional Responsibility found that the

20   prosecutors recklessly disregarded their discovery

21   obligations?

22           MR. REGAN:  Objection.

23        You can answer.

24           (Reporter clarification.)

25       A.   I was not aware.

BLANKENSHIP v                                                    Martha MacCallum
FOX NEWS NETWORK                                                 November 15, 2021

18

1      Q.   (BY MS. JACKSON)  Did you know that the DOJ

2  Office of Professional Responsibility found the federal

3  prosecutors committed professional misconduct?

4             MR. REGAN:  Do you want that read back?

5             THE WITNESS:  Yes, please.

6             MR. REGAN:  This came through a little

7  quickly, more garbled.

8      Q.   (BY MS. JACKSON)  Did you know that the DOJ

9  Office of Professional Responsibility found the federal

10 prosecutors committed professional misconduct?

11            MR. REGAN:  Objection.

12        You can answer.

13     A.   I was not aware.

14     Q.   (BY MS. JACKSON)  Did you do any investigation

15 at all into Don Blankenship's case before this debate?

16            MR. REGAN:  Objection.

17        You can answer.

18     A.   Yes, we did some -- we did some research.

19     Q.   (BY MS. JACKSON)  Do you know what UBB stands

20 for?

21            MR. REGAN:  Objection.  You're asking her

22 if she knows what UBB stands for when she said UBB?

23            MS. JACKSON:  Yeah, does she know what it

24 stands for.

25            MR. REGAN:  You mean her own statement,

1    though?

2            MS. JACKSON:  Yeah.

3        Q.   (BY MS. JACKSON)  What does it stand for?

4        A.   I believe it's the Upper Big Branch Mine.

5        Q.   In what county is UBB located in West

6    Virginia?  Do you know?

7            MR. REGAN:  Objection.

8        A.   I can't recall as I sit here right now.  I'm

9    sure that we covered it at the time, but I can't recall.

10   It was a long time ago.

11       Q.   (BY MS. JACKSON)  In what region of West

12   Virginia is UBB located?  Do you know?

13           MR. REGAN:  Objection.  Helena, I mean,

14   this is just harassing the witness.  What on earth does

15   it have to do with anything in this case whether

16   Ms. MacCallum has a geographic understanding of West

17   Virginia.  She is not alleged to have defamed

18   Mr. Blankenship.  In fact, as she just said and it's

19   clear from these exhibits you've marked, she gave him

20   ample and numerous opportunities and a tremendous a

21   platform to talk about his issues.

22       Q.   (BY MS. JACKSON)  In what region is UBB

23   located, ma'am?

24       A.   As I sit here right now, I don't recall.  I

25   probably knew at the time of the debate, but it was a

20

1    long time ago, so I don't remember.

2         MR. REGAN:  Do you have a list of regions

3    you want to give her?  I'm not even sure how to describe

4    that.  Are you talking about counties, or are there

5    geographic -- is there a geographic nomenclature that

6    one uses to define -- that is definitive to define

7    regions of West Virginia?

8         Q.   (BY MS. JACKSON)  When did UBB explode?

9         MR. REGAN:  You're not going to answer my

10   question.

11        Go ahead.  The question is when did UBB

12   explode.

13        A.   It was several years before the debate.  I

14   can't recall as I sit here today.

15        Q.   (BY MS. JACKSON)  Do you have a year that you

16   remember?

17        MR. REGAN:  Objection.

18        A.   I just answered that.  I can't recall.

19        Q.   (BY MS. JACKSON)  Have you ever met or spoken

20   with anyone impacted by UBB other than Don Blankenship?

21        A.   I can't recall.

22        Q.   Have you ever read any official reports

23   concerning UBB?

24        A.   I would imagine -- we did research at the

25   time.  As I said, it's several years ago.  We've covered

USCA4 Appeal: 23-1198   Doc: 58   Filed: 05/25/2022   Pg: 264 of 305
Case 2:19-cv-00236   Document 1059-5   Filed 12/10/21   Page 10 of 51 PageID #: 18561

BLANKENSHIP v                                    Martha MacCallum
FOX NEWS NETWORK                                 November 15, 2021

21

1   many elections and many, many stories since then.  So

2   that detail is not at the front of my mind right now.

3       Q.   Have you been to an underground coal mine?

4            MR. REGAN:  Sorry, has she been to an

5   underground coal mine?

6            MS. JACKSON:  Uh-huh.

7       A.   I have.

8       Q.   (BY MS. JACKSON)  Did you investigate any

9   facts surrounding the UBB explosion before the debate?

10           MR. REGAN:  Objection, asked and

11  answered.

12       Go ahead.

13      A.   Yes, to some extent, and I think that's

14  reflected in my question.

15      Q.   (BY MS. JACKSON)  Do you remember what facts

16  you investigated before the debate about UBB?

17      A.   Not off the top of my mind right now, no.

18      Q.   Do you know that sufficient airflow is the

19  most important factor to prevent a mine explosion?

20      A.   I believe that Mr. Blankenship referenced that

21  in his answer.

22      Q.   Do you know that the government forced the UBB

23  miners to cut that airflow in half before the explosion?

24      A.   Again, I believe he references that in his

25  answer, so anybody who was watching would be -- would

USCA4 Appeal: 22-1198    Doc: 58    Filed: 05/25/2022    Pg: 265 of 305

1    have been informed to that.

2        Q.   Do you know that the UBB Mine exploded only a

3    few days after the government cut that airflow in half?

4        A.   I'm sorry, can you say that again?

5        Q.   Did you know that the UBB Mine exploded only a

6    few days after the government cut that airflow in half?

7        A.   If I understand your question correctly, I

8    believe that Mr. Blankenship also referenced that in the

9    answer that he gave in the broadcasted debate that

10   evening.

11       Q.   Did you know that a government panel appointed

12   by the Secretary of Labor concluded that the UBB Mine

13   would not have exploded if there was sufficient airflow?

14          MR. REGAN:  Objection.

15          You can answer.  If you need it read back --

16       A.   I'm not aware.  Again, I believe he touched on

17   that in his answer.

18       Q.   (BY MS. JACKSON)  Did you know that Massey

19   Energy's ventilation expert begged the government not to

20   cap the airflow?

21          MR. REGAN:  Objection.

22          You can answer.

23       A.   I'm not aware.

24       Q.   (BY MS. JACKSON)  Did you know that this was

25   the first time the government exercised this new

1    authority to change a mine ventilation plan in this

2    region of West Virginia?

3            MR. REGAN:  Objection.

4        You can answer.

5    A.   I'm not aware.

6    Q.   (BY MS. JACKSON)  Did you know that the UBB

7    Mine operated for 17 years without an explosion before

8    the government cut that airflow in half?

9            MR. REGAN:  Objection.

10       You can answer.

11   A.   Again, I believe that Mr. Blankenship was

12   given an opportunity to speak to this on -- in the

13   debate, which he clearly did in the answer that he just

14   gave.

15   Q.   (BY MS. JACKSON)  Do you know what a Sentinels

16   of Safety award is?

17           MR. REGAN:  Helena, can you spell that

18   for us?  I'm sorry.  A Sentinel, S-E-N -- sorry --

19   S-E-N-T-I-N-E-L?

20           MS. JACKSON:  S-E-N-T-I-N-E-L-S of

21   Safety.

22   A.   I do not.

23   Q.   (BY MS. JACKSON)  Are you aware that the

24   Sentinels of Safety award is awarded annually by the

25   National Mining Association to the nation's safest mines

1    in the country?

2           MR. REGAN:  Are you aware of that?

3       A.  I was not aware of that.

4       Q.  (BY MS. JACKSON)  Are you aware that Massey

5    Energy was the only company to ever win three Sentinels

6    of Safety awards in a single year?

7           MR. REGAN:  Objection.

8        You can answer.

9       A.  I was not aware of that.

10      Q.  (BY MS. JACKSON)  Are you aware that the

11   government falsely claimed that the UBB miners were at

12   fault for not keeping the mine clean of coal dust?

13      A.  Again, I would say that the -- we asked the

14   questions at the debate, and Mr. Blankenship is there to

15   answer the questions.  And he touched on a number of the

16   things that you're mentioning, and that's why we give

17   him the opportunity to explain and to answer that

18   question, which he -- which he did, which we just

19   watched on the video that you just showed us.

20      Q.  Are you aware that the government also claimed

21   that the UBB miners were at fault for using dull mining

22   bits?

23      A.  I'm sorry, you broke up a little bit on that

24   question.

25      Q.  Are you aware that the government falsely

1    claimed that the UBB miners were at fault for the

2    explosion for using dull mining bits?

3            MR. REGAN:  Objection.  You're asking her

4    whether she's aware the government falsely claimed this?

5            MS. JACKSON:  Correct.

6            MR. REGAN:  Objection.

7        You can answer.

8        A.   I don't know if he touched on the question

9    that you just asked, although it sounds generally in the

10   frame of what he said when we gave him the opportunity

11   to speak to all of this at the debate.

12           In the answer you just played, I believe he

13   touched on a number of the things that you are asking me

14   about, and our forum in the debate was to give him the

15   opportunity to speak to this, which we gave him the

16   opportunity to do.

17   Q.   (BY MS. JACKSON)  So do you think it was wrong

18   of Don Blankenship to defend the legacies of the 29

19   deceased miners?

20           MR. REGAN:  Objection.  Helena, this is

21   outrageous.  For somebody who started -- for somebody

22   who started a deposition saying you're a big fan of

23   Ms. MacCallum, I mean, the irony is just -- is seething

24   here.  It's -- because you're showing an extraordinary

25   level of disrespect.  I can't for the life of me

USCA4 Appeal: 23-1198    Doc: 58    Filed: 05/25/2022    Pg: 269 of 305
Case 2:19-cv-00236    Document 1059-5    Filed 12/10/21    Page 15 of 51 PageID #: 18566
BLANKENSHIP v
FOX NEWS NETWORK

Martha MacCallum
November 15, 2021

26

1    understand why you think it would be appropriate to ask

2    someone like Ms. MacCallum if she thinks it was wrong of

3    Don Blankenship to defend the legacies of 29 deceased

4    miners.  I mean, if that isn't when did you stop beating

5    your wife type of question, I don't know what is.  I

6    mean, what is the purpose of this?

7          I have to tell you, we're getting -- we are

8    getting very close to stopping this deposition or

9    reaching out to the Court because this is outrageous.

10   There is -- this just confirms that from the noticing of

11   this deposition the first time and the losing of their

12   right to take it or the denial of the right to take it

13   the first time and the second time and then

14   Mr. Blankenship's effort to depose her personally, it's

15   all just, for some reason, an effort to harass her.  She

16   did nothing wrong as evidenced by the fact that

17   Mr. Blankenship did not mention any of her statements in

18   his complaint.  This is outrageous.

19       Q.   (BY MS. JACKSON)  Would you mind answering my

20   question, ma'am, please?

21          MS. JACKSON:  We can have her repeat it

22   if you would like.

23          THE WITNESS:  I would like it repeated.

24       Q.   (BY MS. JACKSON)  Was it wrong of Don

25   Blankenship to defend the legacies of the 29 deceased

27

1    miners?

2         MR. REGAN:  Objection.

3    A.   No.  I mean, I can't say why it would be.

4    Q.   (BY MS. JACKSON)  You mentioned in the debate

5    that he had made it about him, but did you know that Don

6    Blankenship spent personally millions of his own dollars

7    to explain what I just explained to you about the UBB

8    Mine explosion?

9         MR. REGAN:  Objection.

10   A.   I don't recall.

11   Q.   (BY MS. JACKSON)  Did you know that Don

12   Blankenship produced a documentary that explained why,

13   how the government caused the UBB Mine explosion?

14   A.   I'm sorry.  You are asking if I was aware of

15   that video -- of that documentary?

16   Q.   Uh-huh.

17   A.   I -- I would imagine we were aware of it at

18   the time of the debate.  I don't recall it at this

19   moment, no, these years later.

20   Q.   So who determined at Fox News that you would

21   telecast a West Virginia Senate debate?

22        MR. REGAN:  Objection.

23        You can answer, if you can.

24   A.   I don't remember specifically.

25   Q.   (BY MS. JACKSON)  Who determined the format of

BLANKENSHIP v
FOX NEWS NETWORK

Martha MacCallum
November 15, 2021

35

1    polls after the debate.  Correct?

2         MR. REGAN:  Objection.

3      You can answer.

4      A.   That appeared to be the first question, yes.

5      Q.   (BY MS. JACKSON)  In fact, you said Don

6    Blankenship gained as much as 8 points.  Correct?

7      A.   I'm sure that was the case.  I don't recall

8    which poll it was at this point, but I'm sure that was

9    the case if I put it in the question.

10     Q.   And so although it was difficult to watch, you

11   quickly pivoted to the negative.  Correct?

12        MR. REGAN:  Objection.  What does that --

13   I don't understand the question.

14     Q.   (BY MS. JACKSON)  You quickly pivoted to the

15   negative.  Correct?

16        MR. REGAN:  You mean in this -- are you

17   asking her about this exchange?

18        MS. JACKSON:  Correct.

19        MR. REGAN:  And whether she believes she

20   quickly pivoted to the negative?

21      Go ahead.

22      A.   I wouldn't say that's the case, no.

23      Q.   (BY MS. JACKSON)  So did you communicate with

24   Senator Mitch McConnell between the debate and this

25   interview?

1          MS. JACKSON:  Thank you so much.

2     Q.   (BY MS. JACKSON)  Okay.  So please define for

3     me the terms "racially charged."

4          MR. REGAN:  Objection.

5        You can answer.

6     A.   Define "racially charged"?  Any -- anything

7     that -- I mean, to me it's something that's very

8     commonly understood.  Something that raises concerns

9     about race.

10    Q.   (BY MS. JACKSON)  The Office of Management and

11    Budget recognizes five categories of race.  Those are

12    white, black, Asian, American Indian and Pacific

13    Islander.  Do you agree that China is not recognized as

14    a race?

15         MR. REGAN:  Objection.

16        You can answer.

17    A.   According to the list that you just read, yes.

18    Q.   (BY MS. JACKSON)  Is China a country?

19    A.   Yes.

20    Q.   Is The People's Republic of China the official

21    name?

22    A.   Yes.

23    Q.   Is China -- does China have a communist

24    government, if you know?

25    A.   Yes, China has a communist government.

42

1      Q.   Is James Chao Senator McConnell's

2   father-in-law?

3           MR. REGAN:  Objection.

4      A.   I don't know if that's his first name, but

5   yes.

6      Q.   (BY MS. JACKSON)  Is Elaine Chao Senator

7   McConnell's wife?

8      A.   You got clipped there.

9      Q.   Is Elaine Chao Senator McConnell's wife?

10     A.   Yes.

11     Q.   Okay.  Let's go to Exhibit 4, please, which is

12  a document.  I'll give you a minute to look at it.

13          MR. REGAN:  You have to tell me which one

14  it is.

15     Q.   (BY MS. JACKSON)  It's an article from The New

16  York Times entitled "A Bridge to China, and her Family's

17  Business, in the Trump Cabinet."

18       Do you see that?

19          (Exhibit 4 marked.)

20          MR. REGAN:  Let me get it for her.

21     Q.   (BY MS. JACKSON)  It's dated June 2, 2019.

22  And the first section I am going to discuss is

23  highlighted in orange on page 1-2.  And it reads --

24          MR. REGAN:  Helena, I'm sorry, but she

25  doesn't even have the exhibit yet.  I'm marking it right

USCA4 Appeal: 22-1198    Doc: 58    Filed: 05/25/2022    Pg: 274 of 305

```
 1    now to give it to her.  It was not the first one, and

 2    they didn't come through premarked so -- which is fine,

 3    but as we've done this in every deposition, I'm marking

 4    it.  I saw an email this morning about you guys changed

 5    the order or something, so.  She now has the document in

 6    front of her.

 7       Q.   (BY MS. JACKSON)  It reads in highlight,

 8    Elaine Chao, the Transportation Secretary, oversees the

 9    American maritime industry.  Her family's shipping

10    company, Foremost Group, has deep ties to the Chinese

11    elite.

12          Do you see that?

13       A.   Yes, I do see it.  Yes, I do.

14       Q.   Do you have any reason to doubt the accuracy

15    of this statement?

16             MR. REGAN:  Helena, I'm just going to --

17    I'm going to object.  I mean, the witness hasn't even --

18    has not said -- you haven't asked her whether she has

19    seen this before.  She hasn't had a chance to read it

20    all.

21          I understand your question is simply does she

22    have any reason to doubt the accuracy of this one

23    sentence in this document.  So with that caveat, that

24    she hasn't seen the document or said she's seen it

25    before, hasn't had a chance to read through it, she can
```

USCA4 Appeal: 22-1198    Doc: 58    Filed: 05/25/2022    Pg: 275 of 305

1    answer that question.

2         The question is do you have any reason to

3    doubt the accuracy of the statement that is highlighted

4    at the bottom of page 2 carrying over on the top to page

5    3.

6         A.   Well, this is a New York Times report.  It's

7    their reporting.  She certainly was the Transportation

8    Secretary.  They reference deep ties to the Chinese

9    elite.  I can't really characterize that.

10        Q.   (BY MS. JACKSON)  So what is a Transportation

11   Secretary?

12        A.   What is a Transportation Secretary?

13        Q.   Uh-huh.

14        A.   It's a cabinet level appointment overseeing

15   transportation in the country of the United States.

16        Q.   Do you have any reason to know or not know if

17   Foremost Group has deep ties to communist China?

18             MR. REGAN:  Objection.

19        You can answer.

20        A.   I don't know.

21        Q.   (BY MS. JACKSON)  What was the answer?

22        A.   I don't know.

23        Q.   Have you ever investigated the Chao family's

24   shipping company's ties to communist China?

25             MR. REGAN:  Objection.

45

1          I'm just going to caution the witness that

2     there is an investigative reporter's privilege.  So to

3     the extent that this question or any other question asks

4     for information that is not public about your research

5     investigation into topics that may lead to news

6     reporting, I would caution you to be sensitive and

7     mindful of that privilege and not disclose that

8     information.

9          Why don't we read the question back.

10         The question is have you ever investigated the

11    Chao family's shipping company's ties to communist

12    China?

13      A.   Not specifically that I recall.

14      Q.   (BY MS. JACKSON)  Okay.  So please go to the

15    section highlighted in green on page 5.  It reads, Over

16    the years, Ms. Chao has repeatedly used her connections

17    and celebrity status in China to boost the profile of

18    the company.

19         Do you see that?

20      A.   Yes, I do.

21      Q.   Do you have any reason to doubt the accuracy

22    of this statement?

23      A.   This is not my reporting.  This is someone

24    else's reporting, so I can't speak to the veracity of

25    this New York Times reporter's work.  It's there for

1    anyone to read, but beyond that, I can't support its

2    veracity or not.

3        Q.    Have you done any independent investigation

4    into whether Senator McConnell's wife has used her

5    connections in communist China to boost the profile of

6    her family's shipping company?

7              MR. REGAN:  I am going to object, and I

8    am going to -- I need a moment with the witness, because

9    this -- you are -- you are asking for information that

10   could be protected by the reporter's privilege, and I

11   don't see how it's relevant to this case.  So I need a

12   moment with the witness.

13             MS. JACKSON:  Let's go off the record

14   then, please.

15             MR. REGAN:  Let's just step out for a

16   second.

17             THE VIDEOGRAPHER:  The time is 10:02.

18   We're going off the record.

19             (Break from 10:02 to 10:15 a.m.)

20             THE VIDEOGRAPHER:  The time is 10:15, and

21   we are back on the record.

22             MR. REGAN:  You can hear us, right?

23             THE WITNESS:  Can you hear me?

24             MS. JACKSON:  Are we back on the record?

25             THE VIDEOGRAPHER:  Yes.  I can't hear

USCA4 Appeal: 23-1198    Doc: 58    Filed: 05/25/2022    Pg: 278 of 305
Case 2:19-cv-00236   Document 1059-5   Filed 12/10/21   Page 24 of 51 PageID #: 18575

BLANKENSHIP v                                              Martha MacCallum
FOX NEWS NETWORK                                           November 15, 2021

47

1    anybody.

2           MR. REGAN:  Aydaline, you can hear us,

3    right?  This is Shawn.

4           MS. JACKSON:  There you go.  Okay.

5        All right.  So are we back on?

6           MR. REGAN:  We are.

7    Q.   (BY MS. JACKSON)  All right.  So we were going

8    through this New York Times article.

9           MS. JACKSON:  And could we read back the

10   last question, please?

11          (Requested testimony read.)

12   A.   So I would say beyond what I read in the press

13   about this issue, I didn't do any independent

14   investigative reporting on this particular story.

15   Q.   (BY MS. JACKSON)  Okay.  So let's go on the

16   section highlighted in blue on page 5.  It reads,

17   Foremost has received hundreds of millions of dollars in

18   loan commitments from a bank run by the Chinese

19   government, whose policies have been labeled by the

20   Trump administration as threats to American security.

21       Do you see that portion?

22   A.   Yes, I do.

23   Q.   Were you aware that The New York Times

24   reported that the Chao family's shipping company has

25   received hundreds of millions of dollars from a bank run

 1    by the communist Chinese government?

 2          MR. REGAN:  Objection.

 3       You can answer.

 4    A.   I'm aware of this reporting here on that, yes.

 5    Q.   (BY MS. JACKSON)  Were you aware at the time

 6    of your debate questions that you asked Mr. Blankenship?

 7          MR. REGAN:  Objection.

 8    A.   I would assume it was part of our research --

 9          MR. REGAN:  Objection.

10    A.   -- but I don't recall specifically.

11          MS. JACKSON:  Helena, it's metaphysically

12    impossible.  The article is dated June 2, 2019.

13    Q.   (BY MS. JACKSON)  Do you agree with the Trump

14    administration that communist China poses a national

15    security threat to the United States?

16          MR. REGAN:  Objection.

17       You can answer.

18    A.   I think it's clear that communist China poses

19    a threat to the United States.

20    Q.   (BY MS. JACKSON)  Please go to the section

21    highlighted in pink on page 5.  It reads, The company's

22    primary business, delivering China's iron ore and coal,

23    is intertwined with industries caught up in a trade war

24    with the United States.

25          Do you see that?

USCA4 Appeal: 22-1198   Doc: 58        Filed: 05/25/2022   Pg: 280 of 305

1          MR. REGAN:  You're asking her -- take

2    your time to read that section.  It's the red

3    highlighted section.

4        A.   I have read it.

5        Q.   (BY MS. JACKSON)  Are you aware that The New

6    York Times reported that the Chao family's shipping

7    company's primary business is feeding communist China's

8    industrial machine with iron ore and coal?

9        A.   I've read what's in this article, which was

10   pointed out was post the debate period, this article.

11       Q.   Please go to the section highlighted in purple

12   on page 5-6.  It reads, In a rarity for foreigners,

13   Angela and James Chao have served on the board of the

14   holding company for China State Ship Building, a

15   state-owned enterprise that makes ships for the Chinese

16   military.

17          Do you see that?

18       A.   I see it, yes.

19       Q.   Angela Chao is Senator McConnell's

20   sister-in-law?

21       A.   I believe so.

22       Q.   Did you know that Senator McConnell's family

23   has served on the governing board of a Chinese company

24   that builds warships for the China's Navy?

25          MR. REGAN:  Objection.

50

1     You can answer.

2     A.   I -- I see that it's in this article that

3   you've referenced, yes.

4     Q.   (BY MS. JACKSON)  Please go to the section

5   highlighted in orange on page 6.  It reads, Angela Chao

6   is also on the board at the Bank of China, a top lender

7   to the shipbuilder, and a former vice chairman of the

8   Council of China's Foreign Trade, a promotional group

9   created by the Chinese government.

10     Do you see that?

11     A.   I'm just reading it.

12         MR. REGAN:  Take your time.

13     A.   Yes, I see that it says that.

14     Q.   (BY MS. JACKSON)  Did you know that Senator

15   McConnell's sister-in-law is on the governing board of a

16   communist Chinese bank that is a top lender to the

17   Chinese military?

18         MR. REGAN:  Objection.

19     You can answer.

20     A.   I see that it's reported in this article, yes.

21     Q.   (BY MS. JACKSON)  Did you know that Senator

22   McConnell's sister-in-law was also the former vice

23   chairman for a group created by the communist Chinese

24   government to promote Chinese trade?

25         MR. REGAN:  Objection.

BLANKENSHIP v
FOX NEWS NETWORK

Martha MacCallum
November 15, 2021

51

1        You can answer.

2        A.   I was not aware of that specifically.

3        Q.   (BY MS. JACKSON)  Please go to the section

4    highlighted in green on page 6.  It reads that the Chao

5    family's shipping company has almost no footprint left

6    in the United States, save for a modest corporate

7    headquarters in Midtown Manhattan.  It registers its

8    ship in Liberia and Hong Kong and owns them through

9    companies in the Marshall Islands.

10        Did you know that the Chao family's shipping

11    company has almost no footprint left in the United

12    States?

13            MR. REGAN:  Objection.

14        You can answer.

15        A.   Again, this article was printed after the

16    election period, I believe, and was researched and

17    reported then, and it's New York Times reporting.  But I

18    have no reason to dispute it based on what it says and

19    general knowledge.

20        Q.   (BY MS. JACKSON)  Did you know that the Chao

21    family's ships are neither registered nor owned in the

22    United States?

23            MR. REGAN:  Objection.

24        You can answer.

25        A.   I see that -- reporting on that.  I have seen

USCA4 Appeal: 22-1198    Doc: 58       Filed: 05/25/2022    Pg: 283 of 305
Case 2:19-cv-00236   Document 1059-5   Filed 12/10/21   Page 29 of 51 PageID #: 18580

BLANKENSHIP v
FOX NEWS NETWORK

Martha MacCallum
November 15, 2021

52

1    reporting on that.

2        Q.   (BY MS. JACKSON)  Please go to the section

3    highlighted in blue on page 6.  It reads that Elaine

4    Chao repeatedly called to cut programs intended to

5    stabilize the financially trouble maritime industry in

6    the United States.

7             MR. REGAN:  I'm sorry.  Were you reading

8    a document, because it doesn't seem to say that, Helena?

9    Oh, I see.  You were -- you were paraphrasing, or you

10   were omitting some --

11            MS. JACKSON:  I'm sorry.

12            MR. REGAN:  Okay.  Do you want the

13   witness to read the section that's highlighted in blue

14   on the bottom of page 6?

15            MS. JACKSON:  Yes, sir.  Thank you.

16            MR. REGAN:  Go ahead, Ms. MacCallum, read

17   that.

18       A.   I have read it.  What's the question?

19       Q.   (BY MS. JACKSON)  Did you know that Senator

20   McConnell's wife tried to cut programs intended to

21   stabilize the American maritime industry?

22       A.   I see the reporting that's covered in this New

23   York Times piece on that, yes.

24       Q.   Please go to the section highlighted in pink

25   on page 7.  It reads, Elaine Chao tried to scale back

USCA4 Appeal: 23-1198    Doc: 58    Filed: 05/25/2022    Pg: 284 of 305
Case 2:19-cv-00236    Document 1059-5    Filed 12/10/21    Page 30 of 51 PageID #: 18581
BLANKENSHIP v
FOX NEWS NETWORK

Martha MacCallum
November 15, 2021

53

```
 1   plans to buy new ships that would be used to train

 2   Americans as crew members.  In China, Ms. Chao's family

 3   has paid for scholarships in a ship simulator to train

 4   Chinese seamen.

 5        Did you know that Senator McConnell's wife's

 6   scaled back plans to facilitate the training of American

 7   sailors while the Chao family paid for scholarships to

 8   train Chinese sailors?

 9            MR. REGAN:  Objection.

10        You can answer.

11     A.   Again, I see this -- this reporting from June

12   2nd of 2019 to that effect, yes.

13     Q.   (BY MS. JACKSON)  Please go to the section

14   highlighted in purple on page 16.  It reads, The Chao

15   family's shipping company's fleet is overwhelmingly

16   focused on China.  About --

17            MR. REGAN:  Helena, I'm sorry, can you

18   direct us to what page again?  Just you're moving pretty

19   quickly there.

20            MS. JACKSON:  The section highlighted in

21   purple on page 16.  Thank you so much.

22            MR. REGAN:  Page 16.

23            THE WITNESS:  I don't think 16 is the

24   same on my printout, because this is 16 -- yeah, that's

25   the printed --
```

54

1        MR. REGAN:  Let me use a different

2   handout.

3        THE WITNESS:  Okay.

4        MR. REGAN:  So I'll let you use mine.  It

5   has a note on it.

6        Q.   (BY MS. JACKSON)  It reads that the Chao

7   family shipping company's fleet is overwhelmingly

8   focused on China.  About 72 percent of the raw materials

9   it has shipped since the beginning of 2018 has gone to

10  China.

11       Do you see that?

12       A.   I see that.

13       Q.   Did you know that the Chao family's shipping

14  fleet is overwhelmingly focused on China?

15       A.   It's reported in this story, yes, in 2019.

16       Q.   Did you know that 72 percent of the raw

17  materials transported by the Chao family's shipping

18  company has gone to China since 2018?

19       A.   This is New York Times reporting, and, you

20  know, if they're accurate in this reporting, then yes.

21       Q.   Let's go to the section highlighted in orange

22  on page 17.  It reads that the Chao family's shipping

23  company is committed to continuing to build ships in

24  China.

25       Did you know that the Chao family's shipping

USCA4 Appeal: 23-1198    Doc: 58    Filed: 05/25/2022    Pg: 286 of 305
Case 2:19-cv-00236    Document 1059-5    Filed 12/10/21    Page 32 of 51    PageID #: 18583

BLANKENSHIP v                                                   Martha MacCallum
FOX NEWS NETWORK                        I                       November 15, 2021

55

1    company is committed to building ships in China?

2        A.   I see The New York Times reporting on that.  I

3    see what you're referring to.

4        Q.   Sorry, I didn't get to finish my question.

5    I'm sorry.

6            Did you know that the Chao family's shipping

7    companies committed to building ships in China rather

8    than in the U.S.?

9        A.   I can't characterize it.  I see the reporting

10   that you just put up on the screen, yes.

11       Q.   Please go to the section highlighted in green

12   on page 31.  Again, they're speaking of the Chao family.

13   And it reads, The family's wealth has also benefitted

14   Mr. McConnell personally.  In 2008, Mr. Chao's family

15   gave the couple a gift valued at between 5 million and

16   25 million.

17           Did you know that Senator McConnell has

18   personally benefited from the Chao family?

19           MR. REGAN:  Objection.

20       You can answer.

21       A.   I don't know the particulars of his

22   financials.  I know it came up in the -- in the

23   Washington Post piece that analyzed some of the facts on

24   this.

25       Q.   (BY MS. JACKSON)  Did you know that Senator

USCA4 Appeal: 22-1198    Doc: 58    Filed: 05/25/2022    Pg: 287 of 305

1    McConnell received between 5 million and 25 million from

2    the Chao family?

3         MR. REGAN:  Objection.

4         You can answer.

5    A.  I can't verify that.

6    Q.  (BY MS. JACKSON)  Please go to the section

7    highlighted in blue on page 31.

8         It reads, Mr. McConnell, never a wealthy man,

9    vaulted up the moneyed rankings in the Senate.  As of

10   2018, he was the tenth wealthiest senator.

11        Did you know that Senator McConnell vaulted up

12   moneyed rankings to become the tenth wealthiest senator

13   in 2018 due to monetary gifts from the Chao family?

14        MR. REGAN:  Objection.

15        You can answer.

16   A.  I was not aware of that specific ranking.

17   Q.  (BY MS. JACKSON)  Isn't it true that the

18   Washington Post fact check article that you displayed is

19   refuted by this New York Times article?

20        MR. REGAN:  Objection.

21        You can answer.

22   A.  You know, that New York Times has their

23   reporting; the Washington Post has their reporting.

24   Q.  (BY MS. JACKSON)  Did you conduct any research

25   to verify the accuracy of the Washington Post story?

BLANKENSHIP v
FOX NEWS NETWORK

Martha MacCallum
November 15, 2021

57

```
 1        A.   We have reported that as a Washington Post

 2    story.  It's a very common reference point when they

 3    give something for Pinocchios to share it with viewers.

 4    It's up to the viewers to decide whether or not they

 5    think that it holds up.  But it's not our reporting;

 6    it's Washington Post's reporting.

 7        Q.   But before you showed it to your approximate 3

 8    million viewers, did you investigate Senator McConnell's

 9    family and financial interests with communist China?

10             MR. REGAN:  Objection.

11        A.   There was a lot of reporting on it at the

12    time, which was part of the research.

13        Q.   (BY MS. JACKSON)  Isn't it true that Don

14    Blankenship had valid reasons to question Senator

15    McConnell's political and financial conflicts with

16    communist China?

17        A.   I'm sorry, is it true?

18        Q.   That Don Blankenship had good reason to

19    question Senator McConnell's political and financial

20    conflicts of interest with communist China?

21             MR. REGAN:  Objection.  You're asking

22    her for her opinion here, it sounds like.  She's

23    really not here as an expert witness.

24             But to the extent you can answer the

25    question --
```

58

1      A.   I would just say that's the forum of election

2   politics, that he has the right to question whatever he

3   wants to question.

4      Q.   (BY MS. JACKSON)  Doesn't it appear as if his

5   concerns were validated by this New York Times article?

6           MR. REGAN:  Same objection.

7      A.   I can't validate The New York Times reporting.

8   It's out there for everyone to read and to assess for

9   themselves.

10     Q.   (BY MS. JACKSON)  Let's go to Exhibit 5.

11           (Exhibit 5 marked.)

12           MR. REGAN:  Which one is that?

13           MS. JACKSON:  Exhibit 5.

14           MR. REGAN:  Yeah, the date and title of

15   it, just so I'm sure I'm giving her the right one?

16           MS. JACKSON:  March 3, 2021.

17     Q.   (BY MS. JACKSON)  It's an article from The New

18   York Times again entitled "Inspector General's report

19   cites Elaine Chao for using office to help family."

20   There's a picture of her on the front.

21           Please go to the highlighted portion of page

22   1.  Reading in relevant part, While serving as

23   Transportation Secretary, Elaine Chao repeatedly used

24   her office staff to help family members who run a

25   shipping business with extensive ties to China.

BLANKENSHIP v
FOX NEWS NETWORK

Martha MacCallum
November 15, 2021

59

1    Did you know that Elaine Chao used her office

2    staff to help her family members?

3    MR. REGAN:  I am just going to, just for

4    the record, make clear that this is a March 3, 2021

5    article.  And I don't think the witness has been asked

6    or testified as to whether she has seen this before.  I

7    know she hasn't had a chance to read through it in its

8    entirety.

9    I respect that you're just asking her a

10   question about a particular sentence and her views,

11   but so with that -- with those caveats, I will let her

12   answer it, but if she wants time to read through the

13   article for some reason, it's certainly her right to do

14   so.

15   So go ahead.  The question was did you know

16   that Elaine Chao used her office staff to help her

17   family members?

18   I have objected.  You can answer.

19   A.  Again, this article came out years after the

20   period that we're discussing, back around the election

21   in West Virginia.  I'm, of course, generally aware of

22   articles to this effect.  And this is New York Times

23   reporting; this is not Fox reporting.

24   Q.  (BY MS. JACKSON)  You stated in the video clip

25   that the cocaine found on the Chao family's ship was a

USCA4 Appeal: 22-1198    Doc: 58    Filed: 05/25/2022    Pg: 291 of 305

 1   relatively small amount.

 2       Do you recall how much cocaine was actually

 3   found on the ship?

 4       A.   I do not recall three years later.

 5       Q.   If I told you it was 90 pounds of cocaine,

 6   would you have any reason to disagree?

 7       A.   I can't substantiate that or not.

 8       Q.   Do you think 90 pounds is a relatively small

 9   amount?

10           MR. REGAN:  Objection.  You're really

11   asking her her opinion?

12       A.   I am not in the DEA, so I really -- I honestly

13   can't characterize it.

14       Q.   (BY MS. JACKSON)  So Don Blankenship's focus

15   in his campaign was the loss of West Virginia jobs due

16   to Senator McConnell's financial and political conflicts

17   of interest with China.  So why didn't you report on

18   that?

19           MR. REGAN:  Objection.  I mean, again,

20   this is -- I don't know what relevance it possibly has

21   to this case what Ms. MacCallum decided or elected to

22   not report on.  I don't see how it has any bearing in

23   this case whatsoever.  If you want to ask her a specific

24   question that might be relevant to these claims, like

25   was she told by certain people to not report on certain

USCA4 Appeal: 22-1198    Doc: 58    Filed: 05/25/2022    Pg: 292 of 305
Case 2:19-cv-00236    Document 1059-5    Filed 12/10/21    Page 38 of 51 PageID #: 18589
BLANKENSHIP v                                          Martha MacCallum
FOX NEWS NETWORK                                       November 15, 2021

61

1   things or to report on certain things under the guise

2   that that fits into, you know, Mr. Blankenship's -- I

3   will omit the adjectives -- conspiracy theory in this

4   case, that's one thing.  I just don't see how it's at

5   all relevant asking her why she didn't report on

6   something, and I think it's an impossible question to

7   answer.

8         The judge for whom I first began -- first

9   worked at the beginning of my legal career said the

10  answer to the question that begins "why" starts with

11  something like this, "In the beginning there was

12  darkness," because it all goes back to that, why

13  something happened.

14        So with that caveat, go ahead and answer the

15  question of why didn't you report on that, if you

16  recall.

17    A.   I'm sorry.  Can you repeat the question?

18        MS. JACKSON:  Could you read it back to

19  her, please?

20        (Requested testimony read.)

21    A.   I could only say that we gave Mr. Blankenship

22  a forum of a full debate to address what he wanted to

23  address in his campaign and then subsequent interviews

24  and also invitations to be interviewed.  So I think he

25  was given a very ample forum to bring up whatever he

BLANKENSHIP v
FOX NEWS NETWORK

Martha MacCallum
November 15, 2021

62

1    wanted to focus on.

2        Q.   (BY MS. JACKSON)  Don Blankenship's campaign

3    focused on the substantial number of West Virginians

4    dying in this state from drug overdoses.  Why didn't you

5    report on that?

6              MR. REGAN:  Objection.  Same objection.

7        A.   I believe that did come up in the debate.

8        Q.   (BY MS. JACKSON)  Do you remember what you

9    said about it?

10       A.   Not specifically, as I sit here.

11             MS. JACKSON:  Okay.  Let's play Exhibit 3

12   from minute 5:08 to 6:01, please.

13             THE VIDEOGRAPHER:  You said 5:08, right?

14             MS. JACKSON:  Yes, ma'am.

15             (Exhibit 3 video excerpt being played.)

16             MS. JACKSON:  Thank you.

17             MR. REGAN:  I just want to make clear for

18   the record, we're not watching that whole clip.  I think

19   there's a period we skipped over between what we watched

20   before and now this, and there's something after it.

21   But go ahead and ask your questions.

22       Q.   (BY MS. JACKSON)  Okay.  So when you were in

23   that clip there, what did you mean by the word "parody"?

24       A.   I think a parody is a pretty well understood

25   term, something that, you know -- I don't know how to

BLANKENSHIP v                                              Martha MacCallum
FOX NEWS NETWORK                                           November 15, 2021

86

1       Q.   So when did you first become aware that Don

2   Blankenship was only convicted of a misdemeanor?

3            MR. REGAN:  Objection.

4       A.   I don't recall specifically.  It was, you

5   know -- it would be part of the preparation for the

6   debate, and he also referenced it himself in the debate.

7       Q.   (BY MS. JACKSON)  When did you first become

8   aware that he, in fact, did not go to jail for a felony?

9            MR. REGAN:  Objection.

10      A.   I don't remember exactly.

11      Q.   (BY MS. JACKSON)  What about, when did you

12  first become aware that he did not go to jail for the

13  alleged crime of manslaughter?

14           MR. REGAN:  Objection.

15       You can answer.

16      A.   I don't have any awareness about that.

17      Q.   (BY MS. JACKSON)  So to summarize, on May 1,

18  Don Blankenship participated in a debate telecast by Fox

19  News.  Correct?

20      A.   Correct.

21      Q.   And Don Blankenship surged in the polls after

22  that debate, correct, you said 8 points?

23      A.   Based on that interview and that reporting,

24  yes, I believe that's the case.

25      Q.   So isn't it true that Senator McConnell and

```
 1   missiles are a concern for me?  Yes.

 2      Q.   (BY MS. JACKSON)  And then recently on your

 3   show, Representative Michael Waltz stated that China is

 4   stealing technology from America.

 5         Do you agree with  Mr. Waltz?

 6         MR. REGAN:  Does she agree with

 7   Mr. Waltz, his opinion?

 8      A.   It's not really a matter of whether or not I

 9   agree with him, but I brought him on the show to

10   highlight something that he had been talking about as a

11   member of Congress, and so obviously we thought it was

12   an important topic to discuss.

13      Q.   (BY MS. JACKSON)  So Don Blankenship's

14   campaign focused on Senator McConnell's wealth being

15   rooted in business dealings with a communist country who

16   steals technology from the United States.  Are you not

17   concerned with that?

18         MR. REGAN:  Objection.  Helena, this

19   has -- you're asking about her concerns, about current

20   events, recent events with communist China.  She is here

21   as a witness about something that happened three and a

22   half years ago that she has no relevance to with respect

23   to her own coverage.  This is just harassing the

24   witness.  This is an abuse.  It's an abuse of the

25   witness.  It's an abuse of First Amendment, reporter's
```

93

1    privilege and news gathering process.  This is -- this

2    just confirms, once again, as I said at the beginning,

3    what Mr. Blankenship is doing in this whole litigation

4    and in this deposition, is that he thinks that he can

5    bully people into giving him more favorable coverage or

6    less scrutiny because he will make their lives

7    miserable.  That's an offense to the process.  It's a

8    offense to the judicial process.  It's an offense to the

9    First Amendment.  It's an offense to everyone here.  It

10   should be.  This is outrageous.  If you want to ask her

11   questions that are relevant to the case or relevant to

12   her personal knowledge, she is here to answer them.  If

13   this continues much longer, I am going to let the

14   witness leave.  It's just harassing her.

15       Q.   (BY MS. JACKSON)  Are you concerned with that,

16   ma'am?

17       A.   I said I was concerned with China having

18   hypersonic missiles.  I think most Americans are.  We've

19   covered it quite a bit, yes.

20       Q.   Don Blankenship had verifiable reasons to

21   question Senator McConnell's political and financial

22   conflicts of interest with communist China.  Do you

23   agree?

24       A.   So, as I said before, Mr. Blankenship raised

25   those issues in the debate and in interviews.  He was

94

1    given an ample opportunity to bring those things to the

2    people of West Virginia and the American public, and I

3    think it's great that he had that opportunity to do

4    that.

5        Q.    Was it fair or balanced for a Fox News

6    political commentator to state on air that he gave the

7    maximum contribution to Don Blankenship's opponent?

8            MR. REGAN:  Objection.

9        A.    He did that in terms of disclosure, so he's

10   making it clear that he has -- you know, that he made a

11   donation.  It's part of disclosure when you're

12   discussing something.  So he's essentially saying, you

13   know, here is where I stand and here is what I think.

14   That's what the opinion -- that's what the commentators

15   do that's separate from the news side of the business.

16       Q.    (BY MS. JACKSON)  So on May 2nd when you

17   interviewed Don Blankenship on your show, why didn't you

18   question about -- why didn't you question about his

19   excellent debate performance that resulted in an 8 point

20   surge in the polls?

21       A.    I believe that was the first -- that was the

22   first point I made, that he had a big night and he was

23   up 8 points in the polls.

24       Q.    But instead, you just reiterated Senator

25   McConnell's negative attack ads against Mr. Blankenship.

BLANKENSHIP v
FOX NEWS NETWORK

Martha MacCallum
November 15, 2021

95

1    Correct?

2         MR. REGAN:  Objection.  She has asked and

3    answered this previously, and the exchange speaks for

4    itself.

5         A.  I mean, you know, Mr. -- that's the back and

6    forth of politics.  Mr. Blankenship called out

7    Mr. McConnell.  Then Mr. McConnell called out

8    Mr. Blankenship.  We were covering that story.

9         Q.  (BY MS. JACKSON) But on May 3, 2018, a

10   staffer of Senator McConnell informed you that he was

11   pretty ticked at Don Blankenship.  Correct?

12        A.  That's correct.

13        Q.  And so on May 4, you orchestrated even more

14   coverage of Mr. Blankenship on your show with -- with a

15   man who had given the maximum contribution amount to his

16   opponent.  Isn't that correct?

17             MR. REGAN:  Objection.

18          You can answer.

19        A.  They were going after each other in the public

20   forum and we were covering the story.  That's -- that's

21   how it works.  And it, you know -- as I said, he had

22   said, you know, ditch Mitch and "Cocaine Mitch."  Then

23   Mitch McConnell responded.  We're not -- we're covering

24   the story that both people are a big part of at that

25   moment in time, and so that's what we did.

```
 1        Q.    (BY MS. JACKSON)   Then on May 6, 2018, Fox

 2   News Chairman Rupert Murdoch issued an order to dump on

 3   Mr. Blankenship hard.  Correct?

 4                MR. REGAN:  Objection.

 5        A.    You showed me that email.  That's the first I

 6   saw it.

 7        Q.    (BY MS. JACKSON)   Then after that,

 8   Mr. Blankenship was smeared on Fox News as a felon or a

 9   convicted felon, when, in fact, he is not one.  Six

10   times on different telecasts.  Correct?

11                MR. REGAN:  Objection.  She's asked --

12   you've asked this.  She's answered it.  She's not a

13   competent witness to deal with these issues.  Helena, I

14   don't understand what you're doing.  These are arguments

15   you can make to a jury or to a judge.  This is just

16   harassing the witness.

17           I mean, this whole thing, this whole charade

18   has been proven by the fact that you guys are taking

19   this deposition.  And you haven't shown the witness --

20   this is a deposition that plaintiff sought three times,

21   was denied by the Court three times.  Took this

22   deposition on the premise that there was supplemental

23   discovery.  And you know what?  You guys haven't shown

24   her a single document that has her name on it, that she

25   saw, that she sent, that she received that was part of
```

97

```
 1   that supplemental production.  And that question is

 2   something she has -- she's been asked and answered

 3   several times.

 4           Go ahead and answer it again.

 5      A.   I need it read again, I'm sorry.

 6              MS. JACKSON:  Would you read it back to

 7   her, please?

 8              (Requested testimony read.)

 9      A.   I am not aware of those specific instances

10   and, as I said, I gave him opportunities to come back on

11   and to state his case, which is the fair thing to do,

12   and that's what we did.  That's all I can --

13      Q.   (BY MS. JACKSON)  And isn't it true that

14   Senator McConnell celebrated Don Blankenship's election

15   defeat by tweeting "Thanks for playing, Don"?

16              MR. REGAN:  Objection.

17      A.   Did he?  Apparently he did.

18              MS. JACKSON:  All right.  I would like to

19   take a break, please, sir.

20           Thank you, ma'am.

21              MR. REGAN:  How long of a break are we

22   taking here?

23              MS. JACKSON:  Five minutes.  Thank you.

24              MR. REGAN:  Okay.

25              THE VIDEOGRAPHER:  The time is 11:44.
```

98

 1   We're going off the record.

 2                  (Break from 11:44 a.m. to 11:50 a.m.)

 3                  THE VIDEOGRAPHER:  The time is 11:50, and

 4   we are back on the record.

 5                  MS. JACKSON:  Thank you, ma'am, for your

 6   morning.  I know that you're a very busy person, and I

 7   really have appreciation --

 8                  MR. REGAN:  She just froze, right?

 9            Helena, you just froze, so we're going to wait

10   a second and hope that you come back.

11                  MR. GRAY:  Ms. Brandt, this is Jeremy

12   Gray.  Can you hear me?

13                  MR. REGAN:  We can hear you, Jeremy.

14                  MR. GRAY:  I just want to make sure the

15   court reporter can hear me.

16                  THE REPORTER:  Yes, I can hear you.

17                  MR. GRAY:  Thank you, ma'am.  I would

18   like an ASCII or, you know, a rough transcript as soon

19   as possible, please.  Thank you.

20                  THE VIDEOGRAPHER:  Ms. Jackson is back.

21   She's not frozen no more.

22                  MR. REGAN:  Yes.  Helena, are we done?

23                  MS. JACKSON:  Yes.

24            I just wanted to thank you, ma'am, for your

25   time.  It's been a real honor and a privilege of mine,

99

 1   and I just appreciate you, and I just thank you so much

 2   for your service to us.

 3            And I would like to request an expedited copy

 4   of this transcript.

 5            And I wanted to let you know I have no more

 6   questions.  Thank you.

 7                 THE WITNESS:  Thank you.

 8                 MR. REGAN:  We have no questions for the

 9   witness either.

10            We will designate the transcript as

11   "confidential" subject to further review, and the

12   witness will review and sign, as is her right.

13            And I, too, will ask for an expedited copy.

14   Can I also get a rough ASCII sent to me this afternoon,

15   as soon as you have it ready?

16                 THE VIDEOGRAPHER:  The time is 11:52.

17   This concludes today's deposition.  Thank you, everyone.

18                 (Proceedings ended at 11:52 a.m.)

19

20

21

22

23

24

25

```
 1                 UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF WEST VIRGINIA
 2                     CHARLESTON DIVISION

 3    DON BLANKENSHIP,              )
          Plaintiff,               )
 4                                 )
      v.                           )  Case No. 2:19-cv-00236
 5                                 )
      FOX NEWS NETWORK LLC,        )
 6    et al.,                      )
          Defendants.              )
 7

 8

 9

10

11              REPORTER'S CERTIFICATION

12    REMOTE VIDEOTAPED DEPOSITION OF MARTHA MacCALLUM

13                  NOVEMBER 15, 2021

14

15       I, Julie C. Brandt, Certified Shorthand Reporter in

16   and for the State of Texas, hereby certify to the

17   following:

18       That the witness, MARTHA MacCALLUM, was duly sworn

19   by the officer and that the transcript of the oral

20   deposition is a true record of the testimony given by

21   the witness;

22       Before completion of the deposition, review of the

23   transcript [X] was [ ] was not requested.  If requested,

24   any changes made by the deponent (and provided to the

25   reporter) during the period allowed are appended hereto;
```

USCA4 Appeal: 22-1198    Doc: 58         Filed: 05/25/2022    Pg: 304 of 305

                                                                        103

1        That pursuant to information given to the

2   deposition officer at the time said testimony was taken,

3   the following includes counsel for all parties of

4   record:

5   FOR THE PLAINTIFF:

6        Helena R. Jackson
         162 Quail Walk
7        Pikeville, Kentucky 41501
         859 533 4901
8        hracin@gmail.com

9   -and-

10       Jeremy Gray
         EARLY SULLIVAN WRIGHT GIZER & McRAE LLP
11       6420 Wilshire Boulevard
         17th Floor
12       Los Angeles, California 90048
         323 301 4660
13       jgray@earlysullivan.com

14  FOR THE DEFENDANT FOX NEWS NETWORK LLC AND THE WITNESS:

15       Shawn Patrick Regan
         HUNTON ANDREWS KURTH LLP
16       200 Park Avenue
         New York, New York 10166
17       212 309 1046
         sregan@HuntonAK.com

18  -and-
19
         J. Zak Ritchie
20       HISSAM FORMAN DONOVAN RITCHIE PLLC
         707 Virginia Street East, Suite 260
21       Charleston, West Virginia 25301
         304 615 2887
22       zritchie@hfdrlaw.com

23       I further certify that I am neither counsel for,

24  related to, nor employed by any of the parties or

25  attorneys in the action in which this proceeding was

USCA4 Appeal: 22-1198    Doc: 58        Filed: 05/25/2022    Pg: 305 of 305
Case 2:19-cv-00236   Document 1059-5   Filed 12/10/21   Page 51 of 51 PageID #: 18602
BLANKENSHIP v                                              Martha MacCallum
FOX NEWS NETWORK                                           November 15, 2021

104

```
 1   taken, and further that I am not financially or

 2   otherwise interested in the outcome of the action.

 3        Certified to by me _____, 2021.

 4

 5

 6                    _____

 7        Julie C. Brandt, CSR, RMR, CRR
          Texas CSR No. 4018
          Expiration Date:  10/31/23
 8

 9        LEXITAS
          Texas Firm Registration No. 736
          999 Old Eagle School Road, Suite 118
10        Wayne, Pennsylvania 19087-1707
          215 494 7650
11

12   Job No. 2021-819162

13

14

15

16

17

18

19

20

21

22

23

24

25
```