UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

Case No. 22-1198 (L)

(2:20-cv-00278)

_____

DON BLANKENSHIP

      Plaintiff-Appellant

v.

NBCUNIVERSAL, LLC; CNBC, LLC

      Defendants-Appellees

and

DOES 1-50, inclusive

      Defendant

_____

Case No. 22-1207

(2:19-cv-00236)

_____

DON BLANKENSHIP

      Plaintiff-Appellant

v.

FOX NEWS NETWORK, LLC; CABLE NEWS NETWORK, INC.; MSNBC CABLE LLC; 35TH INC.; WP COMPANY LLC, d/b/a The Washington Post; DOES 1-50, inclusive; MEDIAITE, LLC; FISCALNOTE, INC., d/b/a Roll Call; NEWS AND GUTS, LLC; THE CHARLESTON GAZETTE-MAIL; AMERICAN

BROADCASTING COMPANIES, INC.; TAMAR AUBER; GRIFFIN CONNOLLY; ELI LEHRER

Defendants-Appellees

and

DOES 1-50, inclusive

Defendant

_____

Appeal from the United States District Court
for the Southern District of West Virginia at Charleston

_____

**JOINT APPENDIX**

**VOLUME XXI of XXI – PAGES 5757 to 5791**

_____

| | DOCUMENT DESCRIPTION | DATE | ECF NO. | VOLUME | PAGE |
|---|---|---|---|---|---|
| 398. | Memorandum Opinion and Order (*Blankenship v. NBCUniversal, LLC*, et al.) | 02/02/2022 | 72 | XXI | 5752 |
| 399. | Judgment Order (*Blankenship v. Fox News Network, LLC*, et al.) | 02/02/2022 | 1069 | XXI | 5785 |
| 400. | Judgment Order (*Blankenship v. NBCUniversal, LLC*, et al.) | 02/02/2022 | 73 | XXI | 5787 |
| 401. | Notice of Appeal (*Blankenship v. Fox News Network, LLC*, et al.) | 02/24/2022 | 1070 | XXI | 5788 |
| 402. | Notice of Appeal (*Blankenship v. NBCUniversal, LLC*, et al.) | 02/24/2022 | 74 | XXI | 5790 |

THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

DON BLANKENSHIP,

      Plaintiff,

v.                                    Civil Action No. 2:20-cv-000278

NBCUNIVERSAL, LLC,
CNBC, LLC, and
DOES 1-50 INCLUSIVE,

      Defendants.

## MEMORANDUM OPINION AND ORDER

      Pending is Defendants NBCUniversal, LLC ("NBC") and
CNBC, LLC's ("CNBC") Motion for Summary Judgment (ECF 56), filed
May 24, 2021.  On June 7, 2021, Plaintiff Don Blankenship
responded (ECF 59) in opposition, to which NBC and CNBC replied
(ECF 60) on June 14, 2021.

### I.  Background

      Mr. Blankenship instituted a civil action, now styled
Blankenship v. Fox News Network, LLC, et al., No. 2:19-cv-00236
(S.D.W. Va.), on March 14, 2019, in the Circuit Court of Mingo
County, asserting defamation and false light invasion of privacy
claims against numerous media organizations, reporters, and
others.  See Fox News, ECF 1.  The action was removed to this

court based on diversity jurisdiction.  See id; 28 U.S.C. §
1332.  On April 9, 2019, Mr. Blankenship amended his complaint
in the Fox News action.  See id., ECF 14.  The amended complaint
named, for the first time, NBC and CNBC as defendants.  See id.

On March 31, 2020, the court dismissed NBC and CNBC
from the Fox News action without prejudice based upon
insufficient service of process.  See id., ECF 398.  On April
20, 2020, Mr. Blankenship instituted the current action against
NBC, CNBC, and fifty unnamed "Doe" defendants, asserting claims
of defamation and false light invasion of privacy.[1]  See ECF 1.
The complaint alleges the following.

A.  General Allegations

After an explosion in a West Virginia mine resulted in
the deaths of twenty-nine miners, the United States Government
initiated an investigation into the cause of the explosion,
focusing on Massey Energy, which operated the mine, and Mr.
Blankenship, who was Massey Energy's chief executive officer.
See id., ¶¶ 7-8, 33-36.  While Mr. Blankenship was not charged
with the deaths of the miners, the Government later charged him
with three felonies, as well as one misdemeanor for conspiracy

---

[1] The court has today dismissed the fifty "Doe" defendants
from this action given Mr. Blankenship's failure to properly
identify them after the close of discovery.

to violate federal mine safety laws.  See id., ¶ 39.  On December 3, 2015, a jury acquitted Mr. Blankenship of the felony charges but found him guilty of the misdemeanor offense.  See id., ¶ 41.  As a result, Mr. Blankenship was sentenced to one year in prison and was released in the spring of 2017.  See id., ¶¶ 42-43.

In January 2018, Mr. Blankenship announced his campaign to run as a Republican for a United States Senate seat in West Virginia.  See id., ¶ 44.  Mr. Blankenship lost his bid for the Republican party's nomination in the primary election on May 8, 2018.  See id., ¶ 54.  He alleges that media coverage was responsible for his loss due to defamatory statements referring to him as a "felon" or "convicted felon," despite that he was acquitted of the felony charges and was only convicted of the misdemeanor offense.  See id., ¶¶ 50-54.

Mr. Blankenship alleges that these defamatory statements injured his reputation, prevented him from pursuing other business opportunities, and caused him to lose the primary election.  See id., ¶¶ 21, 54.  Additionally, Mr. Blankenship alleges that many of these statements were made in conjunction with reference to the mine disaster and therefore had the additional effect of falsely attributing to him responsibility for murder.  See id., ¶ 20.

B.  Allegations Against NBC and CNBC

NBC is an international media conglomerate and
subsidiary of Comcast Corporation, a national telecommunications
and mass-media corporation.  See id., ¶ 28.  NBC owns numerous
entities in the news field, including CNBC, NBC News, and MSNBC.
See id., ¶¶ 27-28.  The websites that publish articles under
these names are also owned by NBC.  See id.  Mr. Blankenship
contends that, on May 17, 2018, Leigh Ann Caldwell, writing for
NBC's website, NBCNews.com, published a defamatory statement
describing Mr. Blankenship as an "ex-coal baron and convicted
felon."  See id., ¶ 55 (emphasis added); see also ECF 56-5.  Mr.
Blankenship also contends that, on June 25, 2018, CNBC published
an article written by Brian Schwartz, containing the defamatory
statement "[Donald Trump Jr.] also campaigned with Morrisey in
early June (sic) when he was competing in a crowded primary that
included coal baron and convicted felon Don Blankenship who is
now running as a third party candidate."  See id., ¶ 56
(emphasis added); see also ECF 56-6.

Based upon these allegations, Mr. Blankenship has
asserted defamation and false light invasion of privacy claims
against NBC and CNBC.  On May 24, 2021, NBC and CNBC (the
"moving defendants") filed the subject motion seeking summary
judgment as to the claims asserted against them.

## II.  Governing Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Id.</u>  In deciding a motion for summary judgment, the court must view the evidence and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party.  <u>See</u> <u>Tolan v. Cotton</u>, 572 U.S. 650, 651, 657 (2014) (per curiam).

## III.  Discussion

### A.  <u>Defamation</u>

Defamation is "[a] false written or oral statement that damages another's reputation."  <u>Pritt v. Republican Nat. Comm.</u>, 557 S.E.2d 853, n.12 (W. Va. 2001) (quoting Black's Law Dictionary 427 (7th ed. 1999)).

West Virginia law identifies three types of plaintiffs in defamation cases: (1) public officials and candidates for

public office, (2) public figures, and (3) private individuals.
See Syl. Pt. 10, Hinerman v. Daily Gazette Co., 423 S.E.2d 560,
564 (W. Va. 1992); see generally Wilson v. Daily Gazette Co.,
588 S.E.2d 197 (W. Va. 2003) (discussing types of public figures
in defamation suits).  The first step in assessing a claim for
defamation is to determine whether the plaintiff is a private
individual or is instead a candidate for public office, a public
official, or a public figure.  See Zsigray v. Langman, 842
S.E.2d 716, 722 (W. Va. 2020).  Mr. Blankenship concedes that he
qualifies as both a candidate for public office and a public
figure.[2]  See ECF 59 at 4-5; see also Fox News ECF 953 at 14.
While the statements at issue herein were published on May 17,
2018, and June 25, 2018, after the conclusion of the primary
election, the court finds that Mr. Blankenship qualified as a
candidate for public office through this time given his
intention to run as the Constitution Party's candidate for the
United States Senate.[3]

---

[2] Based upon nearly identical allegations in Mr.
Blankenship's complaint in the Fox News action, the court
determined that Mr. Blankenship qualifies as a candidate for
public office and "may also qualify as a public figure in West
Virginia based on his 'prominence and notoriety'".  See Fox News
ECF 398 at 17 (citing State ex rel. Suriano v. Gaughan, 480
S.E.2d 548, 556 (W. Va. 1996)).

[3] The Supreme Court of Appeals of West Virginia did not
reject Mr. Blankenship's attempt to run as the Constitution
Party's candidate until August 29, 2018.  See State ex rel.

As Mr. Blankenship concedes, his notoriety in the
state of West Virginia, his pervasive involvement in the
national political arena, and the extensive national media
attention he has received as set forth in detail in the court's
memorandum opinion and order entered this same date in the <u>Fox
News</u> action make clear that he also qualifies as a public
figure.  <u>See Wilson</u>, 588 S.E.2d at 205 (explaining that an
individual's "general fame or notoriety in the state and
pervasive involvement in the affairs of society" renders that
individual an "all-purpose public figure" in a defamation
action.).  Regardless of whether Mr. Blankenship is referred to
as a candidate for public office or public figure, the First
Amendment protections are the same for each.  <u>See Gertz v.
Robert Welch, Inc.</u>, 418 U.S. 323, 336 (1974) (noting the test
set forth in <u>New York Times v. Sullivan</u> applies to both
"criticism of 'public figures' as well as 'public officials.'");
<u>see also Monitor Patriot Co. v. Roy</u>, 401 U.S. 265, 271 (1971)
(noting that it "might be preferable to categorize a candidate
for [public office] as a 'public figure,'" as opposed to a
public official, "if for no other reason than to avoid straining
the common meaning of words.  But . . . it is abundantly clear

---

<u>Blankenship v. Warner</u>, 825 S.E.2d 309, 312 n.1 (W. Va. 2018).
The court later issued its written opinion detailing its
decision on October 5, 2018.  <u>Id.</u>

that, whichever term is applied, publications concerning candidates [for public office] must be accorded at least as much protection under the First and Fourteenth Amendments as those concerning occupants of public office.").

To recover in a defamation action, a plaintiff who qualifies as a candidate for public office must prove that:

> (1) there was the publication of a defamatory statement of fact or a statement in the form of an opinion that implied the allegation of undisclosed defamatory facts as the basis for the opinion;[4] (2) the stated or implied facts were false; and, (3) the person who uttered the defamatory statement either knew the statement was false or knew that he was publishing the statement in reckless disregard of whether the statement was false.

---

[4] In its March 31, 2020, memorandum opinion and order in the Fox News case, the court concluded that the challenged statements identified in Mr. Blankenship's complaint are capable of defamatory meaning and may also be considered defamatory per se because they impute a felony conviction.  See Fox News ECF 398 at 18-20.  To the extent any of the statements could be considered opinions, the court concluded "they are based on a 'provably false assertion of fact' and thus are not absolutely protected under the First Amendment." Id. at 20.  The court incorporates its previous findings here and concludes that the challenged statements herein are not only capable of defamatory meaning but constitute defamation per se as a matter of law. The court recognizes that Mr. Blankenship was convicted of a misdemeanor offense, which amounts to a criminal conviction. Nonetheless, inasmuch as "a felony conviction carries significantly greater legal consequences than a misdemeanor does," the court concludes the per se rule is still applicable. Myers v. The Telegraph, 332 Ill.App.3d 917, 773 N.E.2d 192, 197 (2002) (concluding the defamation per se rule should still apply given the "little, if any, practical difference between falsely accusing a person of committing a crime and falsely attributing a felony conviction to a person who pleaded guilty only to a misdemeanor.").

Syl. Pt. 5, Chafin v. Gibson, 578 S.E.2d 361, 363 (W. Va. 2003)

(per curiam) (emphasis omitted) (quoting Syl. Pt. 1, Hinerman,

423 S.E.2d at 563); accord Syl. Pt. 7, Pritt, 557 S.E.2d at 855;

see also State ex rel. Suriano, 480 S.E.2d at 561 (setting forth

nearly identical elements in a defamation action involving a

limited purpose public figure).  Further, the West Virginia

Supreme Court of Appeals has also held that, to sustain a

defamation action, a plaintiff who qualifies as a candidate for

public office must also prove that "the publisher intended to

injure the plaintiff through the knowing or reckless publication

of the alleged libelous material."  Syl. Pt. 4, Chafin, 578

S.E.2d at 363 (quoting Syl. Pt. 1, Sprouse v. Clay Commc'n Inc.,

211 S.E.2d 674, 679 (1975)); accord Syl. Pt. 6, Pritt, 557

S.E.2d at 855; see also State ex rel. Suriano, 480 S.E.2d at 561

(noting a limited purpose public figure must also prove a

publisher's intent to injure).  A plaintiff who qualifies as a

candidate for public office must prove each of the elements of

his claim by clear and convincing evidence.  See Chafin, 578

S.E.2d at 366-67; Pritt, 557 S.E.2d at 862; Hinerman, 423 S.E.2d

at 572-73.

        The moving defendants contend that Mr. Blankenship's

defamation claims fail inasmuch as Mr. Blankenship has failed to

produce clear and convincing evidence demonstrating: (1) actual

malice; (2) material falsity of the alleged defamatory statements; and (3) an intent to injure.[5]

### 1.  Actual Malice

To satisfy the essential elements of a defamation cause of action, a plaintiff who qualifies as a candidate for public office must prove "actual malice" on the part of the publisher, that is, that the publisher made the defamatory statement "'with knowledge that the statement was false or with reckless disregard of whether it was false or not.'"  Chafin, 578 S.E.2d at 366 (brackets omitted) (quoting N.Y. Times Co. v. Sullivan, 376 U.S. 254, 280 (1964)).

The actual malice standard derives from the United States Supreme Court's decision in Sullivan and its progeny, which, as recognized by the Supreme Court of Appeals of West Virginia, "placed a [F]irst [A]mendment, free speech gloss upon all prior law of defamation."  Havalunch, Inc. v. Mazza, 294 S.E.2d 70, 73 (W. Va. 1983); see id. (noting that First Amendment concerns and concomitant protections provided by the actual malice standard, are at their "strongest" when the

---

[5] The moving defendants also contend that Mr. Blankenship has failed to produce evidence of causation or compensable damages.

statement at issue concerns "a public official or candidate for
office because of the need for full, robust, and unfettered
public discussion of persons holding or aspiring to offices of
public trust."). Thus, "'application of the state law of
defamation' is limited . . . by the First Amendment," <u>CACI
Premier Tech., Inc. v. Rhodes</u>, 536 F.3d 280, 293 (4th Cir. 2008)
(quoting <u>Milkovich v. Loarin Journal Co.</u>, 497 U.S. 1, 14
(1990)), and the court applies federal law in assessing the
element of actual malice, <u>see</u> <u>Berisha v. Lawson</u>, 973 F.3d 1304,
1314 n.6 (11th Cir. 2020).

     "'Actual malice is a subjective standard.'" <u>Fairfax
v. CBS Corp.</u>, 2 F.4th 286, 293 (4th Cir. 2021) (alteration
omitted) (quoting <u>Reuber v. Food Chem. News, Inc.</u>, 925 F.2d 703,
714 (4th Cir. 1991) (en banc)). Thus, "[t]he actual malice
standard requires that 'the defendant had a particular,
subjective state of mind at the time the statements were made.'"
<u>Id.</u> at 295 (quoting <u>Horne v. WTVR, LLC</u>, 893 F.3d 201, 211 (4th
Cir. 2018)). Accordingly, "[a] plaintiff must prove that the
defendant published the statement despite actually knowing it
was false or harboring 'a high degree of awareness of probable
falsity.'" <u>Id.</u> at 293 (ellipsis omitted) (quoting <u>Reuber</u>, 925
F.2d at 714). To show reckless disregard for the truth, then,
"a plaintiff must prove that 'the defendant in fact entertained

serious doubts as to the truth of his publication.'"  Id.
(quoting St. Amant v. Thompson, 390 U.S. 727, 731 (1968)).

      A plaintiff who is a candidate for public office bears
the heavy burden of proving actual malice by clear and
convincing evidence.  See CACI, 536 F.3d at 293 (citing Carr v.
Forbes, Inc., 259 F.3d 273, 282 (4th Cir. 2001); see also Carr,
259 F.3d at 282 (4th Cir. 2001) ("Establishing actual malice is
no easy task . . . .").  At the summary judgment stage, the
appropriate inquiry for the court is "whether the evidence in
the record could support a reasonable jury finding . . . that
the plaintiff has shown actual malice by clear and convincing
evidence."  Anderson, 477 U.S. at 255-56; see Harte-Hanks
Commc'ns v. Connaughton, 491 U.S. 657, 685 (1989) ("The question
whether the evidence in the record in a defamation case is
sufficient to support a finding of actual malice is a question
of law.").

      The moving defendants first contend that Mr.
Blankenship has not and cannot produce sufficient evidence to
support a jury finding of actual malice by clear and convincing
evidence.  Specifically, they assert that Mr. Blankenship has
not produced evidence that Ms. Caldwell or Mr. Schwartz - - the
authors of the articles at issue -- knew that their references
to Mr. Blankenship as a "convicted felon" were false or that

they entertained serious doubts regarding the truth of their statements at the time of publication.

The moving defendants rely on the affidavits of Ms. Caldwell and Mr. Schwartz in support of their assertion that they were unaware that their statements regarding Mr. Blankenship's conviction were false and that they did not publish their statements with reckless disregard as to their falsity. Ms. Caldwell states in her affidavit that "at the time [she] wrote the May 17 Article, [she] believed Don Blankenship had been convicted of a felony and had no doubt or reason to doubt that the May 17 Article was accurate." ECF 56-5, ¶ 5. She further states that she "knew that Don Blankenship had been convicted of a serious crime and went to prison after a fatal mine explosion, and [she] believed that the crime was a felony. [She] did not learn that Mr. Blankenship had been convicted of a misdemeanor, rather than a felony, until sometime after Mr. Blankenship sued NBC." Id. at ¶ 6.

Mr. Schwartz likewise states in his affidavit that "[a]t the time [he] wrote the June 25 Article, [he] believed Don Blankenship had been convicted of a felony and had no doubt or reason to doubt that the June 25 Article was accurate." ECF 56-6, ¶ 5. He further states that he "knew that Don Blankenship had been convicted of a serious crime and went to prison after a

fatal mine explosion, which [he] believed that the crime was a felony. [He] did not learn that Mr. Blankenship had been convicted of a misdemeanor, rather than a felony, until sometime after Mr. Blankenship sued CNBC." Id. at ¶ 6. The moving defendants assert that Mr. Blankenship has produced no evidence to refute these affidavits and, in fact, never deposed Ms. Caldwell or Mr. Schwartz.

As to the article written by Ms. Caldwell, the moving defendants note that Mr. Blankenship testified during his deposition that he did not know Ms. Caldwell, how she came to use the words "convicted felon" in the article, or anything about the research she conducted for the same. See ECF 56-2 at 165-66. Mr. Blankenship further testified that he did not recall ever reading Ms. Caldwell's article and did not know whether it was part of his lawsuit. See id. at 164-65.

As to the article written by Mr. Schwartz, Mr. Blankenship made similar statements in his deposition testimony. Specifically, he testified that he did not know Mr. Schwartz, anything about his research process regarding his article, or how he came to use the words "convicted felon" therein. See id. at 170-71.

The moving defendants further contend that the record is devoid of any evidence that the authors' references to Mr.

Blankenship as a convicted felon amount to anything more "than the use of an imprecise term to convey that [his] crime was serious." ECF 57 at 12. They aver that the record supports that the authors' use of the imprecise language was understandable under the circumstances as evidenced by Mr. Blankenship's deposition testimony, wherein he stated that roughly 100 different media outlets had referred to him as a felon or convicted felon during this same time. See id.; see also ECF 56-2 at 81-82. Inasmuch as Mr. Blankenship is unable to produce clear and convincing evidence that the authors of the subject articles entertained serious doubts as to the truth of their publications, the moving defendants contend summary judgment is warranted.

Mr. Blankenship responds that the issue of actual malice should not be addressed at the summary judgment stage inasmuch as it involves determinations regarding the authors' state of mind. He also contends that the moving defendants "had a high degree of awareness of the probable falsity" of the defamatory publications given that NBC had previously reported, on or about April 6, 2016, that he had only been convicted of a misdemeanor.[6] Additionally, Mr. Blankenship asserts that the

---

[6] Mr. Blankenship refers to this April 6, 2016, article in his response brief and in paragraph fifty-five of his complaint. See ECF 59 at 8-9; ECF 1 ¶ 55. The court notes, however, that

fact that his conviction was a matter of public record and thus
readily available to the authors supports a finding of actual
malice.  He further contends that the moving defendants' failure
to issue corrections to the publications at issue support a
finding of actual malice.  Lastly, he asserts that the authors'
violations of NBCUniversal News Group's Policies and Guidelines
regarding accuracy and corrections demonstrate actual malice.
The court will address each contention in turn.

First, Mr. Blankenship contends "[a]s a preliminary
matter," that "the issue of 'actual malice' is rarely
appropriate for summary judgment because it involves
determinations with respect to the defendant's state of mind."
ECF 59 at 5.  He further asserts it is inappropriate for the
court to address actual malice at this stage inasmuch as the
existence of the same hinges on the credibility of the authors,
which is a subjective evaluation for the jury.  In support of
this contention, Mr. Blankenship cites dicta from a footnote of
the Supreme Court's decision in <u>Hutchinson v. Proxmire</u>, 443 U.S.
111 (1979), for the proposition that the issue of actual malice
"does not readily lend itself to summary disposition" because it
"calls a defendant's state of mind into question."  443 U.S. at

---

Mr. Blankenship has not provided a copy of this unidentified
April 6, 2016, article into evidence.

120 n.9.  He goes on to cite numerous cases in which courts have denied summary judgment in defamation actions where genuine issues of material fact existed as to whether the defendant acted with actual malice.  See e.g., ECF 59 at 5-6.

Mr. Blankenship's contention is unavailing when squared with the controlling precedent on this issue.[7]  In Anderson, the Supreme Court held that

> the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case. . . . .  [W]here the factual dispute concerns actual malice . . . the appropriate summary judgment question will be whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not.

477 U.S. at 255-56.  The standard articulated in Anderson clearly contemplates that summary judgment is an appropriate procedure for addressing actual malice.  Indeed, the Court in Anderson expressly rejected the argument that a defendant in a public-figure defamation action "should seldom if ever be granted summary judgment where his state of mind is at issue and the jury might disbelieve him or his witnesses as to this

---

[7] Mr. Blankenship made this same contention in the related Fox News action in response to many of the defendants' motions for summary judgment, which the court rejected for identical reasons in its memorandum opinion and order entered therein this same date.

issue." <u>Id.</u> at 256.[8]  Instead, the Court explained, if the
defendant shows there is no genuine factual dispute as to actual
malice, "the plaintiff is not . . . relieved of his own burden
of producing in turn evidence that would support a jury
verdict." <u>Id.</u>  Thus, "the plaintiff must present affirmative
evidence in order to defeat a properly supported motion for
summary judgment," and "[t]his is true even where the evidence
is likely to be within the possession of the defendant, as long
as the plaintiff has had a full opportunity to conduct
discovery." <u>Id.</u> at 257.

The upshot of <u>Anderson</u>, then, is that the summary
judgment procedure is not foreclosed simply because the actual
malice inquiry involves evidence pertaining to a defendant's
state of mind and that summary disposition on the actual malice
issue is neither favored nor disfavored.  As a descriptive
matter, however, in light of the heightened showing required of
public figure plaintiffs, "[s]ummary judgment for the publisher
is quite often appropriate," not necessarily because it is

_____

[8] The Court in <u>Anderson</u> explained that the Court's
"statement in <u>Hutchinson</u> . . . that proof of actual malice 'does
not readily lend itself to summary disposition' was simply an
acknowledgment of [the Court's] general reluctance to grant
special procedural protections to defendants in libel and
defamation actions in addition to the constitutional protections
embodied in the substantive laws."  447 U.S. at 256 n.7
(internal citations and quotation marks omitted).

favored,[9] but "because of the difficulty a public [figure] has in showing 'actual malice.'" St. Surin v. Virgin Islands Daily News, Inc., 21 F.3d 1309, 1318 (3d Cir. 1994); see also CACI, 536 F.3d at 293 (explaining that "establishing actual malice is no easy task" at the summary judgment stage (brackets and quotation marks omitted)). Mr. Blankenship's contention is thus without merit.

Second, Mr. Blankenship asserts that the moving defendants "had a high degree of awareness of the probable falsity" of the defamatory publications given that NBC had previously reported, on or about April 6, 2016, that he had only been convicted of a misdemeanor. ECF 59 at 8. Aside from this bare assertion, however, Mr. Blankenship has failed to provide

---

[9] But see Kahl v. Bureau of Nat'l Affairs, Inc., 856 F.3d 106, 108 (D.C. Cir. 2017) (Kavanaugh, J.) ("To preserve First Amendment freedoms and give reporters, commentators, bloggers, and tweeters (among others) the breathing room they need to pursue the truth, the Supreme Court has directed courts to expeditiously weed out unmeritorious defamation suits."); id. at 116 ("Summary proceedings 'are essential in the First Amendment area because if a suit entails long and expensive litigation, then the protective purpose of the First Amendment is thwarted even if the defendant ultimately prevails.'" (quoting Farrah v. Esquire Mag., 736 F.3d 528, 534 (D.C. Cir. 2013))). The decision in Kahl comes at the summary judgment stage, wherein the appellate court reversed the district court's decision denying the defendant's motion for summary judgment given the lack of evidence that the defendant acted with actual malice. Id. at 118.

or specifically identify any such article or publication in the
record.

        Absent some evidentiary support for such assertion,
the court is unable to conclude that Mr. Blankenship has
demonstrated any showing of actual malice by clear and
convincing evidence.  Moreover, even assuming the unidentified
article or publication existed, Mr. Blankenship has failed to
provide evidence that Ms. Caldwell or Mr. Schwartz knew of its
existence at the time their articles were written.  In fact, Mr.
Blankenship never deposed Ms. Caldwell or Mr. Schwartz.  As the
court previously explained in its opinion in Blankenship v.
Napolitano, "the 'mere presence' of previous stories in a [media
organization's] files does not establish that the [media
organization] knew that the statement was false 'since the state
of mind required for actual malice would have to be brought home
to the persons in the . . . organization having responsibility
for the publication of the [statement].'"  451 F. Supp. 3d 596,
619 (S.D. W. Va. 2020) (quoting Sullivan, 376 U.S. at 287).  In
other words, absent evidence that Ms. Caldwell or Mr. Schwartz
were aware of the unidentified publication that allegedly
reported that Mr. Blankenship had been convicted of a
misdemeanor, the mere existence of the same is of little moment

respecting whether the moving defendants possessed actual malice.

Third, Mr. Blankenship asserts that the fact that his conviction was a matter of public record and thus readily available to the authors at the time their articles were written supports a finding of actual malice.  Simply put, Mr. Blankenship contends the authors failed to investigate the nature of his conviction before publishing.  The court, however, is unpersuaded by this assertion.  Importantly, "recklessness 'is not measured by whether a reasonably prudent man would have published or would have investigated before publishing.'"  Fairfax, 2 F.4th at 293 (quoting St. Amant, 390 U.S. at 731).  Thus, a publisher's "failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard" without more.[10]

---

[10] "[F]ailure to investigate before reporting a third party's allegations can be reckless 'where there were obvious reasons to doubt the veracity of the informant or the accuracy of his reports.'"  Fairfax, 2 F.4th 286 at 293 (quoting Harte-Hanks, 491 U.S. at 688).  Mr. Blankenship has produced no evidence that the authors actually relied on any information or sources that should have provided them with obvious reasons to doubt the accuracy thereof.  In fact, he has produced no evidence to refute the authors' sworn statements that they believed he had been convicted of a felony and had no reason to doubt the same at the time the articles were published.  See ECF 56-5, ¶ 5; ECF 56-6, ¶ 5.  Mr. Blankenship merely contends the authors should have consulted public records before publication, which is insufficient to establish actual malice.

Harte-Hanks, 491 U.S. at 688.  Accordingly, the authors' mere failure to consult public records regarding Mr. Blankenship's conviction cannot establish actual malice by clear and convincing evidence given that a "failure to investigate is precisely what the Supreme Court has said is insufficient to establish reckless disregard for the truth."  Pippen v. NBCUniversal Media, LLC, 734 F.3d 610, 614 (7th Cir. 2013).

Fourth, Mr. Blankenship avers that the authors' failure to correct their publications describing him as a "convicted felon" supports a finding of actual malice.  This contention, too, is lacking in merit.  As the court has previously explained, a publisher's failure to correct or retract a statement once it learns of its falsity does not support a showing of actual malice.  See Napolitano, 451 F. Supp. 3d at 619 (noting "[a]ctual malice cannot be inferred from a publisher's failure to retract . . . a statement once it learns it to be false."); see also Pippen, 734 F.3d at 614 (explaining that the Supreme Court in Sullivan concluded "that actual malice cannot be inferred from a publisher's failure to retract a statement once it learns it to be false.").  The authors' sworn statements indicate that they did not learn that Mr. Blankenship's conviction was for a misdemeanor rather than a felony until after Mr. Blankenship sued the moving defendants,

and Mr. Blankenship has produced no evidence to the contrary. See ECF 56-5, ¶ 6; ECF 56-6, ¶ 6. Thus, the authors' failure to correct an inaccuracy that was unknown to them at the time of publication fails to establish actual malice.

Lastly, Mr. Blankenship contends that the authors' violations of NBCUniversal News Group's Policies and Guidelines regarding accuracy and corrections demonstrate actual malice. Mr. Blankenship relies upon the following excerpts from the internal policy:

1. "The NBCUniversal Group (News Group) — NBC News, MSNBC, and CNBC — stands for accuracy, fairness, independence, and integrity." ECF 59-1 at 5.

2. "We are responsible for everything we report in any and all media. The correspondent/reporter and the producers/writers (including freelancers) of a specific report are ultimately responsible for its content, including the accuracy of the words . . ." Id. at 7.

3. "Accuracy and fairness are fundamental principles of journalism. . . . Accuracy is about ensuring all of the facts are correct and presenting them in their proper context. . . . Fairness is keeping an open mind about the nature of a story, making good faith, timely efforts to seek out and present all relevant points of view, and avoiding a rush to judgment." Id. at 11.

4. "If it is determined that a clarification or correction is necessary, it should be addressed as soon as reasonably possible within the same program and/or any other platform where the content has been distributed." Id. at 18.

Mr. Blankenship avers that the authors' deviated from these internal standards when they referred to him as a convicted felon in their publications, which he contends is evidence that the moving defendants recklessly disregarded the truth. This contention, however, fares no better than its predecessors.

Even assuming the authors' conduct amounted to a violation of the journalistic standards set forth in NBCUniversal News Group's Policies and Guidelines, this alone is insufficient to establish a showing of actual malice by clear and convincing evidence. Indeed, as the Supreme Court has made clear, "a public figure plaintiff must prove more than an extreme departure from professional standards" to demonstrate actual malice. Harte-Hanks, 491 U.S. at 665; see also Reuber, 925 F.2d at 711-12 (noting that "the Harte-Hanks Court went to some lengths to reaffirm that a departure from accepted standards alone does not constitute actual malice."); Hinerman, 423 S.E.2d at 573 ("[E]gregious deviation from accepted standards of journalism standing alone will not carry the day for a public official libel plaintiff . . . ." (emphasis in original)). Inasmuch as Mr. Blankenship has failed to produce any other evidence that would support a finding of actual malice, the mere allegation that the authors' deviated from

NBCUniversal News Group's journalistic standards cannot alone save his claim.

In sum, Mr. Blankenship has failed to produce sufficient evidence that would permit a reasonable jury to conclude that the authors published their references to him as a convicted felon with knowledge or reckless disregard of their falsity. Mr. Blankenship has thus failed to meet his burden of establishing actual malice by clear and convincing evidence, which is detrimental to his claim. Accordingly, the moving defendants are entitled to summary judgment on the defamation claims against them.[11]

B.   <u>False Light Invasion of Privacy</u>

West Virginia recognizes a legally protected interest in privacy. <u>Tabata v. Charleston Area Med. Ctr., Inc.</u>, 759 S.E.2d 459, 464 (W. Va. 2014). "Publicity which unreasonably places another in a false light before the public is an actionable invasion of privacy." Syl. Pt. 12, <u>Crump v. Beckley Newspapers, Inc.</u>, 320 S.E.2d 70, 74 (W. Va. 1983). Although the Supreme Court of Appeals of West Virginia has not definitively set forth elements for the cause of action, it appears that, for

---

[11] Given that Mr. Blankenship has failed to produce clear and convincing evidence of actual malice, an essential element of his defamation claim, the court need not address the sufficiency of evidence with respect to the remaining elements.

a plaintiff who qualifies as a candidate for public office to establish a case for a false light invasion of privacy, he must prove that: (1) the defendant gave publicity to a matter concerning the plaintiff that places the plaintiff before the public in a false light, (2) the publicity was widespread, (3) the matter of the publicity was false, (4) the false light in which the plaintiff was placed would be "highly offensive to a reasonable person," and (5) the defendant "had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the [plaintiff] would be placed" (i.e., actual malice).  Taylor v. W. Virginia Dep't of Health & Human Res., 788 S.E.2d 295, 315–16 (W. Va. 2016) (citing Restatement (Second) of Torts § 652E (1977)); see Crump, 320 S.E.2d at 87-88.

Although "false light invasion of privacy is a distinct theory of recovery entitled to separate consideration and analysis," claims of false light invasion of privacy are similar to defamation claims, and courts often treat them in essentially the same manner as they treat defamation claims. Crump, 320 S.E.2d at 87.  As the Supreme Court of Appeals of West Virginia has recognized, the First Amendment-derived actual malice standard announced in Sullivan applies to claims for false light invasion of privacy brought by plaintiffs who are

public officials or public figures.  <u>See</u> <u>Crump</u>, 320 S.E.2d at

88-90 (citing <u>Curtis Publ'g Co. v. Butts</u>, 388 U.S. 130 (1967);

<u>Time, Inc. v. Hill</u>, 385 U.S. 374 (1967)).

      Thus, to withstand summary judgment on his false light

invasion of privacy claim, the plaintiff, as a matter of federal

constitutional law, must adduce sufficient evidence that could

reasonably support a jury finding of actual malice by clear and

convincing evidence.  <u>See</u> <u>Anderson</u>, 477 U.S. at 255-56; <u>see</u> <u>also</u>

<u>Howard v. Antilla</u>, 294 F.3d 244, 248-49, 252 (1st Cir. 2002)

(requiring actual malice to be proved by clear and convincing

evidence for false light invasion of privacy claim); <u>Solano v.</u>

<u>Playgirl, Inc.</u>, 292 F.3d 1078, 1084 (9th Cir. 2002) (same);

<u>Ashby v. Hustler Mag., Inc.</u>, 802 F.2d 856, 860 (6th Cir. 1986)

(same); <u>Douglass v. Hustler Mag., Inc.</u>, 769 F.2d 1128, 1140 (7th

Cir. 1985) (same); <u>cf.</u> <u>Parson v. Farley</u>, 800 F. App'x 617, 623

(10th Cir. 2020) (affirming jury instructions requiring actual

malice to be proved by clear and convincing evidence for false

light invasion of privacy claim); <u>Peoples Bank & Tr. Co. of</u>

<u>Mountain Home v. Globe Int'l Publ'g, Inc.</u>, 978 F.2d 1065, 1067 &

n.2 (8th Cir. 1992) (same).

      As previously explained in detail above, Mr.

Blankenship has failed to produce sufficient evidence that could

reasonably support a jury finding of actual malice by clear and

convincing evidence.  Accordingly, the moving defendants are

likewise entitled to summary judgment on Mr. Blankenship's cause

of action for false light invasion of privacy.


## IV.  Conclusion


Based upon the foregoing discussion, it is ORDERED

that the moving defendants' motion for summary judgment (ECF 56)

is GRANTED and this action is DISMISSED.


The Clerk is directed to transmit copies of this

memorandum opinion and order to all counsel of record and any

unrepresented parties.


ENTER: February 2, 2022


John T. Copenhaver, Jr.
Senior United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


DON BLANKENSHIP,

        Plaintiff,

v.                            Civil Action No. 2:19-cv-00236

FOX NEWS NETWORK, LLC;
CABLE NEWS NETWORK, INC.;
MSNBC CABLE, LLC; 35th INC.;
WP COMPANY, LLC d/b/a The Washington Post;
MEDIAITE, LLC; FISCALNOTE, INC. d/b/a Roll Call;
NEWS AND GUTS, LLC; THE CHARLESTON GAZETTE-MAIL;
AMERICAN BROADCASTING COMPANIES, INC.; TAMAR AUBER;
GRIFFIN CONNOLLY; ELI LEHRER; and
DOES 1-50 INCLUSIVE,

        Defendants.


<u>JUDGMENT ORDER</u>


      In accordance with the two companion Memorandum
Opinion and Orders entered this same date, it is ORDERED that
judgment be, and hereby is, entered in favor of Defendants 35th
Inc.; Fox News Network, LLC; Cable News Network, Inc.; MSNBC
Cable, LLC; WP Company, LLC; Mediaite, LLC; FiscalNote, Inc.;
News and Guts, LLC; The Charleston Gazette-Mail; American
Broadcasting Companies, Inc.; Tamar Auber; Griffin Connolly; and
Eli Lehrer, and against Plaintiff Don Blankenship.  It is
further ORDERED that this civil action is DISMISSED and STRICKEN
from the docket.

The Clerk is directed to transmit copies of this Order to all counsel of record and to any unrepresented parties.

ENTER: February 2, 2022

John T. Copenhaver, Jr.
Senior United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

DON BLANKENSHIP,

       Plaintiff,

v.                     Civil Action No. 2:20-cv-000278

NBCUNIVERSAL, LLC,
CNBC, LLC, and
DOES 1-50 INCLUSIVE,

       Defendants.

## JUDGMENT ORDER

      In accordance with the companion Memorandum Opinion
and Order entered this same date, it is ORDERED that judgment
be, and hereby is, entered in favor of Defendants NBCUniversal,
LLC, and CNBC, LLC, and against Plaintiff Don Blankenship.  It
is further ORDERED that this civil action is DISMISSED and
STRICKEN from the docket.

      The Clerk is directed to transmit copies of this Order
to all counsel of record and to any unrepresented parties.

                         ENTER: February 2, 2022

                         John T. Copenhaver, Jr.
                         Senior United States District Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON DIVISION

| | |
|---|---|
| **DON BLANKENSHIP,** | **Case No.: 2:19-cv-00236** |
| **Plaintiff,** | **Docket No.: _____** |
| **vs.** | |
| **FOX NEWS NETWORK, LLC; CABLE NEWS NETWORK, INC.; MSNBC CABLE, LLC; 35th INC.; WP COMPANY, LLC d/b/a The Washington Post; MEDIAITE, LLC; FISCALNOTE, INC. d/b/a Roll Call; NEWS AND GUTS, LLC; THE CHARLESTON GAZETTE-MAIL; AMERICAN BROADCASTING COMPANIES, INC.; TAMAR AUBER; GRIFFIN CONNOLLY; ELI LEHRER; and DOES 1-50 INCLUSIVE,** | **NOTICE OF APPEAL** |
| **Defendants.** | |

Plaintiff Don Blankenship appeals to the United States Court of Appeals for the Fourth Circuit from the final judgment entered on February 2, 2022 (ECF No. 1069).

Date: February 24, 2022

Respectfully submitted,

**DON BLANKENSHIP**
**By Counsel**

/s/ Jeremy Gray_____

Eric P. Early
(CA State Bar No. 166275, pro hac vice)
Jeremy Gray
(CA State Bar No. 150075, pro hac vice)
EARLY SULLIVAN
  WRIGHT GIZER & MCRAE LLP
6420 Wilshire Boulevard, 17th Floor
Los Angeles, California 90048
eearly@earlysullivan.com
jgray@earlysullivan.com

/s/ Jeffrey S. Simpkins_____

Jeffrey S. Simpkins (WVSB # 9806)
SIMPKINS LAW
102 E. 2nd Avenue
Williamson, West Virginia 25661
simpkinslawoffice@gmail.com

1

663537.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of February 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the Electronic Service List for this Case.

_____/s/ Jeffrey S. Simpkins_
Jeffrey S. Simpkins, Esq.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON DIVISION**
**CIVIL ACTION NO. 2:20-cv-00278**
**DOCKET NO. _____**

| | | |
|---|---|---|
| DON BLANKENSHIP | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **NOTICE OF APPEAL** |
| | ) | |
| | ) | |
| | ) | |
| NBCUNIVERSAL, LLC, | ) | |
| CNBC, LLC, and | ) | |
| DOES 1-50 INCLUSIVE, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Don Blankenship appeals to the United States Court of Appeals for

the Fourth Circuit from the final judgment entered on February 2, 2022 (ECF No. 73).

Date: February 24, 2022

**DON BLANKENSHIP**
**By Counsel**

**/s/ Jeffrey S. Simpkins**
**Jeffrey S. Simpkins, Esq.**
**WVSB #9806**
*SIMPKINS LAW*
**102 E. 2nd Ave.**
**Williamson, WV 25661**
**304.235.2735**
**simpkinslawoffice@gmail.com**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON DIVISION**
**CIVIL ACTION NO. 2:20-cv-00278**
**DOCKET NO. _____**

DON BLANKENSHIP                        )
                                       )
    Plaintiff,                         )
                                       )
v.                                     )        **CERTIFICATE OF SERVICE**
                                       )
                                       )
                                       )
NBCUNIVERSAL, LLC,                     )
CNBC, LLC, and                         )
DOES 1-50 INCLUSIVE,                   )
                                       )
    Defendants.                        )


    I hereby certify that I electronically filed the foregoing **"Notice of Appeal"**

with the Clerk of Court using the CM/ECF system which will send notice to all CM/ECF

participants.

    Date: February 24, 2022


**/s/ Jeffrey S. Simpkins, Esq.**
**Jeffrey S. Simpkins, Esq.**
**WVSB #9806**
*SIMPKINS LAW*
**102 E. 2nd Ave.**
**Williamson, WV 25661**
**304.235.2735**
**simpkinslawoffice@gmail.com**

5791