UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

————————

Case No. 22-1198 (L)

(2:20-cv-00278)

————————

DON BLANKENSHIP

       Plaintiff-Appellant

v.

NBCUNIVERSAL, LLC; CNBC, LLC

       Defendants-Appellees

and

DOES 1-50, inclusive

       Defendant

————————

Case No. 22-1207

(2:19-cv-00236)

————————

DON BLANKENSHIP

       Plaintiff-Appellant

v.

FOX NEWS NETWORK, LLC; CABLE NEWS NETWORK, INC.; MSNBC CABLE LLC; 35TH INC.; WP COMPANY LLC, d/b/a The Washington Post; DOES 1-50, inclusive; MEDIAITE, LLC; FISCALNOTE, INC., d/b/a Roll Call; NEWS AND GUTS, LLC; THE CHARLESTON GAZETTE-MAIL; AMERICAN

BROADCASTING COMPANIES, INC.; TAMAR AUBER; GRIFFIN CONNOLLY; ELI LEHRER

Defendants-Appellees

and

DOES 1-50, inclusive

Defendant

_____

Appeal from the United States District Court
for the Southern District of West Virginia at Charleston

_____

**JOINT APPENDIX**

**VOLUME XVII of XXI – PAGES 4645 to 4919**

_____

676474.1

| | DOCUMENT DESCRIPTION | DATE | ECF NO. | VOLUME | PAGE |
|---|---|---|---|---|---|
| 346. | Defendant Mediaite, LLC's Memorandum in Support of Motion for Summary Judgment | 06/07/2021 | 901 | XVII | 4645 |
| 347. | Memorandum of Points and Authorities In Support of Plaintiff Don Blankenship's Opposition to Motion for Summary Judgment of Defendants Mediaite, LLC and Tamar Auber | 06/21/2022 | 948 | XVII | 4661 |
| 348. | Memorandum of Points and Authorities In Support of Plaintiff Don Blankenship's Opposition to Motion for Summary Judgment of Defendants Mediaite, LLC and Tamar Auber – Exhibit 1: Article "WV Senate Candidate Defends Horrifying Campaign Ad: 'There's No Mention of a Race' Lile 'Negro'" by Tamar Auber dated May 3, 2018 | 06/21/2022 | 948-1 | XVII | 4685 |
| 349. | Memorandum of Points and Authorities In Support of Plaintiff Don Blankenship's Opposition to Motion for Summary Judgment of Defendants Mediaite, LLC and Tamar Auber – Exhibit 2: Excerpts from | 06/21/2022 | 948-2 | XVII | 4688 |

| | DOCUMENT DESCRIPTION | DATE | ECF NO. | VOLUME | PAGE |
|---|---|---|---|---|---|
| | Deposition Transcript of Don Blankenship taken on April 29, 2021 | | | | |
| 350. | Defendants Mediaite, LLC and Tamar Auber's Reply In Support of Their Motion for Summary Judgment | 6/28/2021 | 958 | XVII | 4695 |
| 351. | Defendants FiscalNote and Griffin Connolly's Motion for Summary Judgment | 06/07/2021 | 903 | XVII | 4709 |
| 352. | Defendants FiscalNote and Griffin Connolly's Motion for Summary Judgment – Exhibit 1: Biography of FiscalNote's Company | 06/07/2021 | 903-1 | XVII | 4711 |
| 353. | Defendants FiscalNote and Griffin Connolly's Motion for Summary Judgment – Exhibit 2: FiscalNote CQ News – Policy News from Award-Winning Journalists | 06/07/2021 | 903-2 | XVII | 4717 |
| 354. | Defendants FiscalNote and Griffin Connolly's Motion for Summary Judgment – Exhibit 3: Declaration of Eric Garcia | 06/07/2021 | 903-3 | XVII | 4725 |
| 355. | Defendants FiscalNote and Griffin Connolly's Motion for Summary Judgment – Exhibit 4: Article "Blankenship | 06/07/2021 | 903-4 | XVII | 4728 |

| | DOCUMENT DESCRIPTION | DATE | ECF NO. | VOLUME | PAGE |
|---|---|---|---|---|---|
| | Blames Establishment For 'Misinforming' Trump"by Eric Garcia dated May 7, 2018 | | | | |
| 356. | Defendants FiscalNote and Griffin Connolly's Motion for Summary Judgment – Exhibit 5: Declaration of Griffin Connolly | 06/07/2021 | 903-5 | XVII | 4733 |
| 357. | Defendants FiscalNote and Griffin Connolly's Motion for Summary Judgment – Exhibit 6: *Blankenship v. Trump*, No. 2:19-cv-00549 (S.D.W. Va. July 26, 2019) | 06/07/2021 | 903-6 | XVII | 4736 |
| 358. | Defendants FiscalNote and Griffin Connolly's Memorandum in Support of Their Motion for Summary Judgment | 06/07/2021 | 904 | XVII | 4766 |
| 359. | Memorandum of Points and Authorities In Support of Plaintiff Don Blankenship's Opposition to Motion for Summary Judgment of Defendants FiscalNote and Griffin Connolly | 06/21/2022 | 947 | XVII | 4791 |
| 360. | Memorandum of Points and Authorities In Support of Plaintiff Don Blankenship's Opposition to Motion | 06/21/2022 | 947-1 | XVII | 4817 |

| | DOCUMENT DESCRIPTION | DATE | ECF NO. | VOLUME | PAGE |
|---|---|---|---|---|---|
| | for Summary Judgment of Defendants FiscalNote and Griffin Connolly – Exhibit 1: Excerpts from Deposition Transcript of Don Blankenship taken on April 29, 2021 | | | | |
| 361. | Memorandum of Points and Authorities In Support of Plaintiff Don Blankenship's Opposition to Motion for Summary Judgment of Defendants FiscalNote and Griffin Connolly – Exhibit 2: Excerpts from Deposition of Don Blankenship taken on November 18, 2020 | 06/21/2022 | 947-2 | XVII | 4824 |
| 362. | Memorandum of Points and Authorities In Support of Plaintiff Don Blankenship's Opposition to Motion for Summary Judgment of Defendants FiscalNote and Griffin Connolly – Exhibit 3: Letter from Dr. Stan Smith to Mr. Eric Early re Assessment of Damages dated February 1, 2021 | 06/21/2022 | 947-3 | XVII | 4843 |
| 363. | Defendants FiscalNote and Griffin Connolly's | 6/28/2021 | 961 | XVII | 4899 |

| | DOCUMENT DESCRIPTION | DATE | ECF NO. | VOLUME | PAGE |
|---|---|---|---|---|---|
| | Reply In Support of Their Motion for Summary Judgment | | | | |
| 364. | HD Media, LLC's Motion for Summary Judgment | 06/21/2022 | 945 | XVII | 4917 |

676474.1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## AT CHARLESTON

DON BLANKENSHIP,                              CIVIL ACTION NO. 2:19-cv-00236

                    Blankenship,

         v.

FOX NEWS NETWORK, LLC et al.,
                         Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS MEDIAITE, LLC AND TAMAR AUBER'S MOTION FOR SUMMARY JUDGMENT

Dated: June 7, 2021                 Respectfully submitted,

                                    MEDIAITE, LLC and TAMAR AUBER,
                                    Defendants

                                    By counsel:

                                    /s/ Andrew Eisbrouch
                                    Andrew Eisbrouch, Esq. (*pro hac vice*)
                                    NY Bar No. 5515598
                                    Mediaite, LLC
                                    1261 Broadway, Suite 606
                                    New York, New York 10001
                                    Tel: (201) 452-3990

                                    *Attorney for Defendants*
                                    *Mediaite, LLC & Tamar Auber*

## TABLE OF CONTENTS

INTRODUCTION……………………………………………………………………..1

FACTS……………………………………………………………………………………2

LEGAL STANDARDS………………………………………………………………..3

ARGUMENT…………………………………………………………………………4

    I.     Summary Judgment Should be Granted on Blankenship's Claim for Defamation

          A.    There Is No Clear and Convincing Evidence of Actual Malice………….4

          B.    There Is No Evidence that Mediaite Intended to Injure Blankenship, as Required by West Virginia Defamation Law Specific to Political Candidates……………………………………….………………..9

    II.    Summary Judgment Should Be Granted on Blankenship's False Light Claim…10

CONCLUSION……………………………………………….…………………………11

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) …………………………………………..4

*Backus v. City of Parkersburg,* 980 F. Supp. 2d 741 (S.D.W. Va. 2013) ……………………9, 10

*Bose Corp. v. Consumers Union of U.S., Inc.,* 466 U.S. 485 (1984). ………………………………6

*Bowen v. Union Concrete Pipe Co.*, 299 F. Supp. 1109 (S.D.W.Va. 1969) ……………………..4

*CACI Premier Tech., Inc. v. Rhodes*, 536 F.3d 280 (4th Cir. 2008) ……………………………..4

*Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087 (4th Cir. 1993) …………………………………..5

*Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70 (W. Va. 1983).…………………………5, 10

*Giles v. Kanawha Cty. Bd. of Educ.*, 2018 WL 300605 (W. Va. Jan. 5, 2018) …………………9

*Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657 (1989) ………………………………6, 7

*Hinerman v. Daily Gazette Co.*, 423 S.E.2d 560 (W. Va. 1992). ………………………………...9

*Horne v. WTVR, LLC*, 893 F.3d 201 (4th Cir. 2018) ………………………………………….6, 8

*Lohrenz v. Donnelly*, 223 F. Supp. 2d 25, 55 (D.D.C. 2002), aff'd, 350 F. 3d 1272 (D.C. Cir. 2003). …………………………………………………………………………………………………7

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) ………………………………………4, 7, 8

*O'Dell v. Stegall*, 703 S.E.2d 561, 596 (W. Va. 2010) ………………………………………….11

*Pritt v. Republican Nat'l Comm.*, 557 S.E.2d 853 (W. Va. 2001) ……………………………….4

*Sheehan v. Saoud*, 650 F. App'x 143, 153 (4th Cir. 2016) ……………………………………...11

*Sprouse v. Clay Commc'n, Inc.*, 211 S.E.2d 674 (W. Va. 1975) ……………………………….5, 9

*Snyder v. Phelps*, 580 F.3d 206  (4th Cir. 2009), *aff'd*, 562 U.S. 443 (2011). …………………10

*Thompson Everett, Inc. v. National Cable Adver.*, 57 F.3d 1317 (4th Cir. 1995) ………………4

*United States v. Blankenship*, 846 F.3d 663 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 315 (2017).2

**<u>STATUTES</u>**

F.R.C.P. 56(c). ……………………………………….………………………………………3

# INTRODUCTION

No evidence exists in the record to support Plaintiff Don Blankenship's outlandish contention that Mediaite, LLC ("Mediaite") and Tamar Auber ("Auber") (collectively herein "Mediaite Defendants") acted with actual malice when reporting and publishing the news article at issue in this litigation. Blankenship's inability to prove an essential element of his claims with the requisite "convincing clarity," or identify a genuine issue of material fact regarding those claims, requires dismissal of his claims against Mediaite Defendants on summary judgment as a matter of law.

In a lawsuit filed against nearly 100 media defendants, including multi-national media companies and conglomerates, Mediaite Defendants were sued on a singular article about Blankenship, entitled "*WV Senate Candidate Defends Horrifying Campaign Ad: 'There's No Mention of a Race' Like 'Negro,'*" in which Blankenship made national headlines for his West Virginia Senate campaign ad against Senator Mitch McConnell referring to Mitch McConnell's family as a "China family" and his father-in-law as a rich "Chinaperson." In the article, Blankenship was mistakenly referred to as a "felon" rather than a "convicted criminal" or a "misdemeanant." Additionally, Blankenship was referred to as a "felon" on multiple occasions by the numerous co-defendants and media companies named in this lawsuit, both before and after the Mediaite Defendant's Article. From this *one reference*, Blankenship accused Mediaite Defendants and all other co-defendants of defamation and false light invasion of privacy, as well as having allegedly conspired against Blankenship to commit both alleged offenses.

Blankenship has not provided a scintilla of evidence of actual malice or intent to injure Blankenship, all elements required by law to be proven by Blankenship. Despite being granted wide-ranging discovery, Blankenship has not produced one piece of evidence to back up any of

these claims. In fact, despite the required showing of actual malice in order to prove both of Blankenship's defamation and false light claims, Blankenship did not even bother deposing anyone connected with Mediaite Defendants. Accordingly, Mediaite Defendants respectfully requests that this Court grant its motion for summary judgment.

**FACTS**

Blankenship Don Blankenship ("Blankenship" or "Blankenship") is the former President and CEO of Massey Energy Company, which during his tenure, was the largest coal producer in West Virginia. First Am. Compl. (hereinafter "Compl.") ¶ 135 (ECF # 14). On April 5, 2010, an explosion at Massey's Upper Big Branch Mine in Raleigh County killed twenty-nine miners. *Id.* at ¶ 136. In the aftermath of the tragedy, a federal grand jury indicted Blankenship on multiple charges, including felony charges. *United States v. Blankenship*, 846 F.3d 663, 667 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 315 (2017).

Following a six-week trial, a jury convicted Blankenship of conspiring to violate federal mine safety laws and acquitted him of the other charges. *Id.* The district court sentenced Blankenship to one year in federal prison and assessed a $250,000 fine, both of which were the maximum permitted by law. *Id.* At Blankenship's sentencing hearing, District Judge Irene Berger imposed the maximum penalties allowed by law, a fine above the amount set by federal sentencing guidelines, because "given the nature and extent of [Blankenship's] conduct … the fine range under the guidelines is simply not sufficient in this case to meet the goals of sentencing." *United States v. Blankenship*, No. 5:14-cr-00244, ECF No. 589. Blankenship was released from federal prison in the spring of 2017. Compl. ¶ 145. In January 2018, Mr. Blankenship announced that he would seek the Republican nomination to serve as a U.S. Senator from West Virginia.

After Blankenship's release from Prison and during his Senate campaign in West Virginia, various media sources reported that Blankenship was "a convicted felon," and many of the references to "felon" were made in connection to the mine disaster. Compl. ¶¶ 21, 23. On May 3, 2018, Mediaite published an article written by Auber regarding Blankenship's campaign advertisement, entitled "*WV Senate Candidate Defends Horrifying Campaign Ad: 'There's No Mention of a Race' Like 'Negro'*" (the "Article"). The Article stated: "The convicted felon turned Senate hopeful then tried to defend the whole thing by claiming he was an 'Americanperson' during the Fox News debate on Tuesday, adding there are also 'Koreanpersons' and 'Africanpersons'". Compl. ¶ 164. Blankenship was referred to as a "felon" on multiple occasions both before and after the Mediaite Defendant's Article. Blankenship initiated this action in response to Mediaite Defendants and many other media defendants' similar reporting and filed his First Amended Complaint on April 9, 2019.

Mediaite Defendants filed their Answer on April 14, 2020, wherein Mediaite Defendants denied that they committed any of the offenses alleged by Blankenship and pled a series of affirmative defenses. Answer of Mediaite Tamar Auber (ECF # 406). During discovery, Blankenship served Mediaite Defendants with 50 requests for production of documents. ECF # 431 and # 434. Blankenship did not depose, or seek to depose, any individual connected with Mediaite Defendants.

## LEGAL STANDARDS

Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." F.R.C.P. 56(c). "[T]his standard provides that the mere existence of

some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In particular, "[w]hen determining if a genuine factual issue as to actual malice exists in a libel suit brought by a public figure, a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability under *New York Times*." *Id.* at 254. Accordingly, the question is "whether the Plaintiff has proffered sufficient evidence to prove actual malice by clear and convincing evidence." *CACI Premier Tech., Inc. v. Rhodes*, 536 F.3d 280, 293 (4th Cir. 2008). A Plaintiff also must also demonstrate material falsity by clear and convincing evidence. *Pritt v. Republican Nat'l Comm.*, 557 S.E.2d 853, 862 (W. Va. 2001)

Where the court, having examined the pleadings, affidavits, interrogatories, answer and depositions, finds that no genuine issues of material fact are presented, disposition on motion for summary judgment is appropriate. *Bowen v. Union Concrete Pipe Co.*, 299 F. Supp. 1109, 1110 (S.D.W.Va. 1969). "At bottom, the district court must determine whether the party opposing the motion for summary judgment has presented genuinely disputed facts which remain to be tried. If not, the district court may resolve the legal questions between the parties as a matter of law and enter judgment accordingly." *Thompson Everett, Inc. v. National Cable Adver.*, 57 F.3d 1317, 1323 (4th Cir. 1995).

## **ARGUMENT**

I.   <u>Summary Judgment Should be Granted on Blankenship's Claim for Defamation</u>

In West Virginia, the "essential elements" of defamation are (1) defamatory statements;

(2) a nonprivileged communication to a third party; (3) falsity[1]; (4) reference to the Plaintiff; (5) fault; and (6) resulting injury. *Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70, 77 (W. Va. 1983). In addition, when the plaintiff is a "candidate for political office," he must also prove that "the publisher intended to injure the plaintiff through the knowing or reckless publication of the alleged libelous material." *Sprouse v. Clay Commc'n, Inc.*, 211 S.E.2d 674, 679 (W. Va. 1975). "[T]he First Amendment's press and speech clauses greatly restrict the common law where the defendant is a member of the press, the plaintiff is a public figure, or the subject matter of the supposed libel touches on a matter of public concern. Where, as here, all of these considerations are present, the constitutional protection of the press reaches its apogee." *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1091-92 (4th Cir. 1993). For numerous separate, independent reasons, Blankenship cannot sustain a claim against Mediaite Defendants in this case.

## A. There Is No Clear and Convincing Evidence of Actual Malice

After over a year of discovery in this case and since the Court allowed Blankenship the opportunity to see if discovery would "reveal evidence of alleged wrongdoing," not one piece of evidence has been produced that would support a finding of actual malice, let alone by clear and convincing evidence. ECF No. 398 at 40. As this Court has already recognized, Blankenship is a

---

[1] In their Answer, Mediaite Defendants raised the affirmative defense that their Article was substantially true given Blankenship's criminal record. *See* Answer of Mediaite and Tamar Auber at p. 4 (ECF # 406). Mediaite Defendants wish to preserve this issue for appeal, but given that this Court has previously rejected this argument in its March 31, 2020 Memorandum and Order, when the defense was raised by other co-defendants and the absence of any evidence of actual malice in this case, Mediaite Defendants focus their argument herein on the requirement that Mr. Blankenship prove actual malice in his defamation and false light invasion of privacy claims.

public figure to whom the formidable actual malice standard would apply. *Id.* at 17. "[T]here is a significant difference between proof of actual malice and mere proof of falsity." *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 511 (1984).

The question whether the evidence in the record in a defamation case is sufficient to support a finding of actual malice is a question of law. *Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 659, 109 S. Ct. 2678, 2681 (1989). If a defamation plaintiff is a public official for purposes of a news story, and if the defamatory statements relate to [his] official conduct, [he] is required to demonstrate that the news station acted with 'actual malice' rather than negligence in order to succeed on her defamation claim." *Horne v. WTVR, LLC*, 893 F.3d 201, 211 (4th Cir. 2018).

Here, the evidentiary record unequivocally shows that Mediaite Defendants did not have knowledge that the reference to Blankenship in the article was false or act with disregard of its falsity. In a sworn affidavit, Auber stated that Auber believed the words at issue to be true. (Auber Affidavit ¶ 7). Auber used the word "felon" to describe Blankenship because Auber was aware he had been convicted of a crime and sent to prison, and because Auber had seen or heard him referred to as a felon elsewhere. *Id.* at ¶ 4, 5. Given the nature of Blankenship's crime that was serious enough to warrant imprisonment, it did not occur to Auber, who is not a lawyer, that "felon" was inaccurate as a legal matter. *Id.* at ¶ 6, 7. At the time, Auber never doubted that referring to Blankenship as a "felon" was true. *Id.* at ¶ 7. Blankenship never even contacted Mediaite Defendants to request a correction. *Id.* at ¶ 11.

Blankenship has not produced any evidence that refutes the sworn affidavit of Auber that

Mediaite Defendants published the article and accurately highlighted Blankenship's legal status based on how Auber understood it at the time of publication. *Id.* at ¶ 4, 7). Tellingly, Blankenship did not take the deposition of any of the Mediaite Defendants responsible for the words at issue, including the author and editor of the Article, to ascertain whether the Article was made "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964). Rather, Blankenship relies only upon boilerplate and generalized allegations of misconduct relating to all Media Defendants through group pleadings with no specific facts regarding any improper conduct by Mediaite Defendants.

Further, as evidenced by the many co-defendants in this case, Blankenship was referred to as a "felon" on multiple occasions both before and after the Mediaite Defendant's Article. Mediaite Defendants simply did not possess an awareness of falsity with respect to its use of the term "felon" in the Article. Moreover, Mediaite Defendants are not subjected to liability for "mere factual error – an everyday occurrence in journalism – unless those errors rise to the level of circumstantial evidence of 'actual malice.'" *Lohrenz v. Donnelly*, 223 F. Supp. 2d 25, 55 (D.D.C. 2002), aff'd, 350 F. 3d 1272 (D.C. Cir. 2003). Mediaite Defendants error in referring to Blankenship as a felon does not establish actual malice, as Mediaite Defendants lacked actual knowledge of the purported falsity of the singular term used and did not act in reckless disregard for the truth.

Finally, Mediaite Defendants do not maintain any internal policies relating to reporting on criminal activity or charges, nor are Mediaite Defendants required to uphold such policies. (Auber Affidavit ¶ 8). *See Harte-Hanks*, 491 U.S. 657. A lack of policies regarding criminal

reporting and/or alleged failure to adhere to related reporting standards establish the existence of actual malice and even "an extreme departure from professional standards" does not rise to the level of actual malice. *Id.* Further, as previously mentioned, Blankenship was referred to as a "felon" on multiple occasions both before and after the Mediaite Defendant's Article. Mediaite Defendants had no separate duty to investigate beyond their reliance on other sources and any alleged failure of Mediaite Defendants to investigate the accuracy of the term "felon" or otherwise "factcheck" does not subject Mediaite Defendants to liability or support a finding of actual malice. *N.Y. Times Co*., 376 U.S. at 279.

Failure to investigate "where there was no reason to doubt the accuracy of the sources used, cannot amount to reckless conduct." *Horne*, 893 F.3d at 211. Reckless conduct is not measured by whether a reasonably prudent person would have published or spoken, or would have investigated before publishing or speaking. *Id.* A 'reckless disregard' for the truth requires more than a departure from reasonably prudent conduct. *Id.* "There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Id.*

Here, nothing in the record exists to indicate that Mediaite Defendants harbored any doubt at all, let alone "serious" doubt, in referring to Blankenship as a "felon." Blankenship has not produced any evidence to establish by clear and convincing evidence that Mediaite Defendants acted with knowledge that the reference to Blankenship in the article was false or acted with disregard of its falsity.  As such, Blankenship has failed to prove that Mediaite Defendants acted with actual malice. Blankenship does not come close to meeting the substantial burden that must

be satisfied in order to establish actual malice and summary judgment should be granted.

### B. There Is No Evidence that Mediaite Intended to Injure Blankenship, as Required by West Virginia Defamation Law Specific to Political Candidates

Summary judgment must be granted for the separate reason that Blankenship has not identified evidence from which a jury could reasonably find that the Mediaite Defendants intended to injure Blankenship through the publication of the allegedly defamatory statements. Under West Virginia law, candidates for political office and public officials "can sustain an action for libel only if"—in addition to Constitutional actual malice—they can prove that "the publisher intended to injure the plaintiff through the knowing or reckless publication of the alleged libelous material." *Sprouse*, Syl. Pt. 1, 211 S.E.2d at 679. In *Sprouse*, the Supreme Court of Appeals stated: "[I]t is necessary for a candidate for office to prove that false or misleading statements were published with knowledge on the part of the publisher of their falsity or with willful and reckless disregard of their truth, and further to prove that they were published with a deliberate intent to injure." *Id*. at 692.

The Supreme Court of Appeals has repeatedly confirmed the continuing vitality of this additional requirement where the plaintiff is a candidate for political office or a public official, which must be determined by clear and convincing evidence. *See, e.g., Giles v. Kanawha Cty. Bd. of Educ*., 2018 WL 300605, at *3 (W. Va. Jan. 5, 2018); *Hinerman v. Daily Gazette Co*., 423 S.E.2d 560, 579 (W. Va. 1992).

While Blankenship has repeated boilerplate and general allegations of intent, over a year of discovery has uncovered no evidence of an intent to injure Blankenship by Mediaite Defendants. For this reason alone, summary judgment must be granted. *See Backus v. City of*

*Parkersburg,* 980 F. Supp. 2d 741, 748 (S.D.W. Va. 2013) (granting summary judgment where Blankenship failed to "offer more than a scintilla of evidence in support of his argument" that publisher intended to injure him).

II.    <u>Summary Judgment Should Be Granted on Blankenship's False Light Claim</u>

Blankenship's claim for false light invasion of privacy fails for the same reasons as his libel claim. Previously in this action, this Court has held that:

> In a false light invasion of privacy claim, the plaintiff must prove that: (1) the defendant gave publicity to a matter concerning the plaintiff that places the plaintiff before the public in a false light, (2) the publicity was widespread, (3) the matter of the publicity was false, (4) the false light in which the plaintiff was placed would be 'highly offensive to a reasonable person,' and (5) the defendant 'had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the [Plaintiff would be placed' (i.e., actual malice).

Memorandum Opinion and Order, 3/31/20 (ECF # 398) at pp. 27-28 (internal citations omitted).

"[R]egardless of the specific tort being employed, the First Amendment applies when a plaintiff seeks damages for reputational, mental, or emotional injury allegedly resulting from the defendant's speech." *Snyder v. Phelps*, 580 F.3d 206, 218 (4th Cir. 2009), *aff'd*, 562 U.S. 443 (2011). "[C]ourts and commentators have consistently treated false light privacy claims in essentially the same manner as they have treated defamation." *Crump*, 320 S.E.2d at 87. As discussed in greater length and incorporated herein, Mediaite Defendants did not have knowledge that the Article was false nor did they act with reckless disregard of whether it was false or not and Blankenship can point to no evidence to the contrary. As such, Mediaite Defendants are

entitled to summary judgment on Blankenship's false light invasion of privacy claims.[2]

## **CONCLUSION**

For all the foregoing reasons, Mediaite Defendants respectfully submit that summary judgment should be granted to Mediaite Defendants on all claims.


Dated: June 7, 2021

Respectfully submitted,

MEDIAITE, LLC and TAMAR AUBER,
Defendants

By counsel:

/s/ Andrew Eisbrouch
Andrew Eisbrouch, Esq. (*pro hac vice*)
NY Bar No. 5515598
Mediaite, LLC
1261 Broadway, Suite 606
New York, New York 10001
Tel: (201) 452-3990

*Attorney for Defendants*
*Mediaite, LLC & Tamar Auber*

---

[2] Blankenship also asserted broad conspiracy claims against all co-defendants. As this Court has previously held in this matter, "a civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means." Memorandum Opinion and Order, 3/31/20 (ECF # 398) at p. 29 (internal citations omitted). "A civil conspiracy must therefore be based on an underlying tort or wrong." *Id.* at 29-30 (citing *O'Dell v. Stegall*, 703 S.E.2d 561, 596 (W. Va. 2010)). "As such, courts in West Virginia dismiss civil conspiracy claims they are not supported by an underlying tort." *Sheehan v. Saoud*, 650 F. App'x 143, 153 (4th Cir. 2016). Here, there is simply no evidence of an underlying tort or any conspiracy involving Mediaite Defendants, so much that it does not even warrant a section of this brief devoted to its absurdity. As discussed throughout this brief, and incorporated herein, Mediaite Defendants did not commit any torts against Blankenship and as Blankenship has not produced any evidence that Mediaite Defendants engaged an underlying tort or in a conspiracy to defame the Blankenship, Mediaite Defendants are entitled to summary judgment on the conspiracy to commit defamation and false light invasion of privacy claims by Blankenship.

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON**

DON BLANKENSHIP,                                    CIVIL ACTION NO. 2:19-cv-00236

                    Plaintiff,

        v.

FOX NEWS NETWORK, LLC et al.,
                                    Defendants.

### CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2021 a true and correct copy of the foregoing was served

via CM/ECF on all counsel of record in this action registered to receive CM/ECF notification.

                                    /s/ Andrew Eisbrouch
                                    Andrew Eisbrouch, Esq. (*pro hac vice*)
                                    NY Bar No. 5515598

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF WEST VIRGINIA

# CHARLESTON DIVISION

|  |  |
|---|---|
| DON BLANKENSHIP, | Case No.: 2:19-cv-00236 |
| Plaintiff, | [Honorable John T. Copenhaver, Jr.] |
| vs. | |
| FOX NEWS NETWORK, LLC, et al. | |
| Defendants. | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF DON BLANKENSHIP'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS MEDIAITE, LLC AND TAMAR AUBER

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .................................................................................1

II.    STATEMENT OF MATERIAL FACTS ..............................................4

III.   LEGAL STANDARD...........................................................................4

IV.    ARGUMENT .......................................................................................5

       A.    The Mediaite Defendants Have Not Met Their Burden To Establish The Absence Of Disputed Facts With Respect To Mr. Blankenship's Defamation Claim.................................................................................5

             1.    At The Very Least, There Is A Genuine Issue of Disputed Fact With Respect to "Actual Malice" ...........................................6

                   i.    A Genuine Issue Of Fact Exists As To Whether Tamar Auber Acted With "Actual Malice"....................................9

                   ii.   Mediaite's Lack of Policies and Standards .....................14

             2.    There Is Evidence Of An Intent To Injure Mr. Blankenship .......16

       B.    The Mediaite Defendants Have Not Met Their Burden To Establish The Absence Of Disputed Facts With Respect To Mr. Blankenship's False Light Invasion of Privacy Claim.................................................18

V.     CONCLUSION...................................................................................19

8.1

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Anaya v. CBS Broadcasting Inc.*, 626 F.Supp.2d 1158 (D.N.M. 2009) ...........................................7

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ........................................................5, 7

*Associated Press* v.] *Walker* [388 U.S. 130 (1967) ........................................................................17

*Blankenship v. Fox News Network, LLC*, No. 2:19-CV-00236, 2020 WL 7753102 (S.D.W. Va. Dec. 29, 2020) ............................................................................................................................2

*Blankenship v. Napolitano*, 451 F. Supp. 3d 596, 616 (S.D.W. Va. 2020) ......................................2

*Chafin v. Gibson*, 213 W. Va. 167, 172 (2003) ....................................................................2, 5, 6

*Denny v. Seaboard Lacquer, Inc.*, 487 F.2d 485, 491 (4th Cir. 1973) .........................................2, 6

*Fitzgerald v. Penthouse Int'l, Ltd.*, 691 F.2d 666, 670–71 (4th Cir. 1982) ...................................2, 7

*Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989) .....................................8

*Henry v. Nat'l Ass'n of Air Traffic Specialists, Inc.*, 836 F.Supp. 1204, 1211 (D.Md. 1993)..........7

*Hinerman v. Daily Gazette Co.*, 188 W.Va. 157 (1992).................................................................8

*Hutchinson v. Proxmire*, 443 U.S. 111, 120, n. 9 (1979) .........................................................2, 6

*Martin v. Duffy*, 977 F.3d 294, 305 (4th Cir. 2020)......................................................................5

*McKinney v. K-Mart Corp.*, 649 F. Supp. 1217, 1221-22 (S.D.W. Va. 1986) ...............................18

*Nat'l Life Ins. Co. v. Phillips Pub., Inc.*, 793 F.Supp. 627, 632 (D.Md. 1992) ...............................6

*New York Times Co. v. Sullivan*, 376 U.S. 254, 287 (1964) ...........................................................6

*Pauley v. Combustion Engineering, Inc.,* 528 F. Supp. 759, 765 (S.D.W.V. 1981).........................5

*Pritt v. Republican Nat. Comm.*, 557 S.E.2d 853, 860-61 (W. Va. 2001)........................................8

*Publishing Company v. Butts*, 388 U.S. 130 (1967) .....................................................................17

*Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016) ......................................................................5

*Smith v. A Pocono Country Place Property Owners Ass'n, Inc.*, 686 F.Supp. 1053, 1062 (M.D. Pa. 1987)..................................................................................................................................10

*Sprouse v. Clay Commc'n, Inc.*, 158 W. Va. 427 (1975)........................................3, 8, 16, 18

*St. Amant v. Thompson*, 390 U.S. 727 (1968)................................................................................9

8.1

*Tharp v. Media General, Inc.*, 987 F.Supp.2d 673 (D.S.C. 2013).....................................................8

*Tomblin v. WCHS-TV8*, 434 F. App'x 205, 211 (4th Cir. 2011) .................................................3, 7

*United States v. Alvarez*, 567 U.S. 709 (2012) ..........................................................................18

*Westmoreland v. CBS Inc.*, 596 F.Supp. 1170 (S.D.N.Y. 1984) ......................................................7

*Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1072 (5th Cir. 1987)..........................2, 3, 7, 9

3.1

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Don Blankenship ("Mr. Blankenship"), through his counsel of record, hereby submits this Memorandum of Points and Authorities in support of his Opposition to the Motion for Summary Judgment of Defendants Mediaite, LLC ("Mediaite") and Tamar Auber (collectively, "Mediaite Defendants").

## I.     INTRODUCTION

Mediaite claims to be "a trusted source on the intersection of politics and media across the political spectrum."[1]   Yet, while they claim to be a trusted source, the Mediaite Defendants falsely reported that Mr. Blankenship is a "convicted felon" and insinuated that he is a racist in the days before the 2018 West Virginia Primary in an effort to destroy his candidacy for the United States Senate. These false statements were made just two (2) days after Mr. Blankenship appeared in a debate with the other two Primary candidates, which was televised nationally on the Fox News Channel on May 1, 2018, during which Mr. Blankenship addressed his conviction and imprisonment right out of the gate and made clear that he was acquitted of all felony charges.

On May 3, 2018, Mediaite published an article provocatively titled "WV Senate Candidate Defends Horrifying Campaign Ad: 'There's No Mention of a Race' Like 'Negro', written by Tamar Auber who stated: "The **convicted felon** turned Senate hopeful then tried to defend the whole thing by claiming he was an 'Americanperson' during the Fox News debate on Tuesday, adding there are also 'Koreanpersons' and 'Africanpersons'", ((Exhibit 1) (the "Article" (emphasis added)) (ECF No. 900-1.))   The Mediaite Defendants' false statements were made only after Mr. Blankenship had taken the lead according to Senate race polling.  A jury should decide whether it is merely a coincidence that these statements were made at this critical time.

The Mediaite Defendants' misconduct gives rise to Mr. Blankenship's defamation and false light invasion of privacy claims.  In their Motion for Summary Judgment, the Mediaite Defendants contend that summary judgment should be granted as to these claims for the

---

[1] https://www.mediaite.com/about/

following reasons.

First, the Mediaite Defendants claim that there is no clear and convincing evidence of "actual malice." As a matter of law, "actual malice" requires that "the person who uttered the defamatory statement either knew the statement was false or knew that he was publishing the statement in reckless disregard of whether the statement was false." *Blankenship v. Napolitano*, 451 F. Supp. 3d 596, 616 (S.D.W. Va. 2020), *on reconsideration in part sub nom. Blankenship v. Fox News Network, LLC*, No. 2:19-CV-00236, 2020 WL 7753102 (S.D.W. Va. Dec. 29, 2020) ("*Blankenship*"); *Chafin v. Gibson*, 213 W.Va. 167, 172 (2003). Accordingly, the issue of "actual malice" is rarely appropriate for summary judgment because it involves determinations regarding a defendant's state of mind. *See e.g., Hutchinson v. Proxmire*, 443 U.S. 111, 120, n. 9 (1979) (recognizing that the issue of "actual malice" "does not readily lend itself to summary disposition," since it "calls a defendant's state of mind into question"); *Denny v. Seaboard Lacquer, Inc.*, 487 F.2d 485, 491 (4th Cir. 1973) ("Where state of mind is at issue, summary disposition should be sparingly used."). In determining whether actual malice exists, the crucial and often determinative factor is credibility. *See Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1072 (5th Cir. 1987). Thus, courts in the Fourth Circuit have denied summary judgment because a genuine issue of material fact existed as to whether the defendant acted with "actual malice." *See e.g.*, *Fitzgerald v. Penthouse Int'l, Ltd.*, 691 F.2d 666, 670–71 (4th Cir. 1982)

In the instant case, adequate evidence of "actual malice" exists. Genuine issues of fact exist with respect to whether the author of the Article acted with "actual malice"—i.e., whether she recklessly or purposefully avoided the truth. It is difficult to believe that a publication like Mediaite with extensive experience and involvement in politics did not know of Mr. Blankenship's prior felony acquittals—a matter of public record. Indeed, a simple Google search would have revealed the truth. Thus, at the very least, genuine issues of fact exist with respect to whether the Mediaite Defendants actually knew that their statements were false, or were reckless when they made the defamatory statements without first conducting research with respect to the contrary publicly available information. The Article highlights statements made by Mr.

Blankenship at the Fox News debate, the very same debate where he explained that he had only been convicted of a misdemeanor.  Yet, the Article purposefully ignored those comments and referred to him as a "convicted felon."  This is the type of specific access to accurate information which must be considered in denying the Mediate Defendants' Motion for Summary Judgment *See Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1072 (5th Cir. 1987).

Moreover, this Court has made clear that a "newspaper's departure from accepted standards" may support a conclusion of reckless disregard of the truth.  *Blankenship*, 451 F. Supp. 3d at 619; *Harte-Hanks Commc'ns, Inc.*, 491 U.S. at 667–68 (recognizing that a departure from journalistic standards may serve as supportive evidence of actual malice).  The fact that Mediaite admittedly does not maintain any internal policies relating to or governing its reporting on criminal activity or charges itself supports a finding of actual malice and reckless disregard for the truth.  Clearly, these are matters that should be considered by the jury in determining whether there was a reckless disregard of the truth.  *Blankenship*, 451 F. Supp. 3d at 619.

These disputed facts, if resolved in Mr. Blankenship's favor as required under the law, provide sufficient evidence from which a jury could infer that the Mediaite Defendants acted with actual malice.  *Tomblin v. WCHS-TV8*, 434 F. App'x 205, 211 (4th Cir. 2011) (resolving disputed facts in plaintiff's favor and concluding that factual questions existed, which precluded the entry of summary judgment on defamation and false light claims).

Second, the Mediaite Defendants contend that there is no evidence of an "intent to injure" Mr. Blankenship.  For one to suggest that falsely calling a candidate for the United States Senate a "convicted felon" was not intended to harm the candidate is farcical.  Indeed, no felon has ever won a United States Senate seat and, therefore, their intent is clear.  The Mediaite Defendants, like many other defendants, cite *Sprouse v. Clay Commc'n, Inc.*, 158 W. Va. 427 (1975) and wrongly claim that West Virginia law requires that political candidates suing for defamation prove both actual malice and an "intent to injure."  As noted in the other Oppositions a fair reading of *Sprouse* reveals this claim about the case to be false. However, because the Defendants persist in pressing their false reading of *Sprouse*, Plaintiff provides additional

discussion of why Sprouse does not hold as they claim at pages 16-19 of this brief.

On a motion for summary judgment, it is the Mediaite Defendants' burden to establish the absence of any material facts as to Mr. Blankenship's claims. The Mediaite Defendants have failed to satisfy this burden and their Motion for Summary Judgment should be denied.

## II.    STATEMENT OF MATERIAL FACTS

According to the Mediaite website, "Mediaite is a trusted source on the intersection of politics and media across the political spectrum."

Despite "being a trusted source," the Mediaite Defendants defamed Mr. Blankenship by falsely calling him a "convicted felon" and insinuating that he is racist. In this regard, on May 3, 2018, Mediaite published an article provocatively titled "WV Senate Candidate Defends Horrifying Campaign Ad: 'There's No Mention of a Race' Like 'Negro', written by Tamar Auber who stated: "The **convicted felon** turned Senate hopeful then tried to defend the whole thing by claiming he was an 'Americanperson' *during the Fox News debate* on Tuesday, adding there are also 'Koreanpersons' and 'Africanpersons'", (Exhibit 1, (emphasis added)).

Critically, the Article was published on May 3, 2018 *after* Mr. Blankenship participated in a debate with the other two Primary candidates, which was televised nationally on the Fox News Channel on May 1, 2018. During this debate, Mr. Blankenship addressed his conviction and imprisonment right out of the gate, stating in no uncertain terms: "I faced thirty years in prison for a fake charge, and *I beat all three of the felonies*. … It's incredible, they sent me to prison for a misdemeanor. I was the only prisoner there that was a misdemeanant." (Exhibit 2 [Deposition of Don Blankenship, dated April 29, 2021 ("Blankenship Depo."), pp. 364:16-365:5 (emphasis added).)][2]

## III.    LEGAL STANDARD

"Summary judgment is available only in those cases where it is not only perfectly clear that there exists no dispute as to the facts, but also where there is no dispute as to conclusions or

---

[2]  https://video.foxnews.com/v/5779097203001#sp=show-clips.

inferences which may reasonably be drawn therefrom," and the burden to establish the absence of any disputed material fact is on the moving party. *Pauley v. Combustion Engineering, Inc.,* 528 F. Supp. 759, 765 (S.D.W.V. 1981). At the summary judgment stage, a court must view all facts and inferences reasonably drawn therefrom in the light most favorable to the nonmoving party. *Martin v. Duffy*, 977 F.3d 294, 305 (4th Cir. 2020). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge ... ruling on a motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see also Martin*, 977 F.3d at 305 "[W]here affidavits present conflicting versions of the facts which require credibility determinations, summary judgment cannot lie." *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016).

## IV.   ARGUMENT

### A.   The Mediaite Defendants Have Not Met Their Burden To Establish The Absence Of Disputed Facts With Respect To Mr. Blankenship's Defamation Claim

"In order for a public official or a candidate for public office to recover in a libel action, the plaintiff must prove that: (1) there was the publication of a defamatory statement of fact or a statement in the form of an opinion that implied the allegation of undisclosed defamatory facts as the basis for the opinion; (2) the stated or implied facts were false; and, (3) the person who uttered the defamatory statement either knew the statement was false or *knew* that he was publishing the statement in reckless disregard of whether the statement was false." *Chafin v. Gibson*, 213 W. Va. 167, 172 (2003).

In their Motion, the Mediaite Defendants contend that summary judgment should be granted with respect to Mr. Blankenship's defamation claim for two reasons. First, the Mediaite Defendants claim that there is no clear and convincing evidence of "actual malice." Second, the Mediaite Defendants argue that there is no evidence of an "intent to injure" Mr. Blankenship. To the contrary, the Mediaite Defendants have not satisfied their burden of showing the absence of disputed facts with respect to any of these issues.

5

1.    **At The Very Least, There Is A Genuine Issue of Disputed Fact With Respect to "Actual Malice"**

The Mediaite Defendants contend that Mr. Blankenship's defamation claim fails because there is no clear and convincing evidence of "actual malice."  As a matter of law, "actual malice" requires that "the person who uttered the defamatory statement either knew the statement was false or knew that he was publishing the statement in reckless disregard of whether the statement was false." *Blankenship*, 451 F. Supp. 3d at 616; *Chafin,* 213 W.Va. at 172.  As discussed below, the undisputed fact that Mediaite does not "maintain any internal policies relating to reporting on criminal activity or charges" shows recklessness in reporting the defamatory statement.  The United States Supreme Court recognized in *New York Times Co. v. Sullivan*, 376 U.S. 254, 287 (1964) [3] that actual malice is measured by the "persons . . . having responsibility" for the offensive publication.  In this case, the persons having responsibility for calling Mr. Blankenship a "felon" include Mediaite and its staff members, including but not limited to Tamar Auber, as well as any others at Mediaite involved in writing, editing, and/or publication of the Article.

 As a preliminary matter, the issue of "actual malice" is rarely appropriate for summary judgment because it involves determinations with respect to the defendant's state of mind.  *See Hutchinson v. Proxmire*, 443 U.S. 111, 120, n. 9 (1979) (recognizing that the issue of "actual malice" "does not readily lend itself to summary disposition," since it "calls a defendant's state of mind into question"); *Denny v. Seaboard Lacquer, Inc.*, 487 F.2d 485, 491 (4th Cir. 1973) ("Where state of mind is at issue, summary disposition should be sparingly used."); *Nat'l Life Ins. Co. v. Phillips Pub., Inc.*, 793 F.Supp. 627, 632 (D.Md. 1992) ("Under Rule 56, where possibly subjective evaluations are at issue, as here where a determination of whether Defendants acted with actual malice is at issue, the Fourth Circuit has cautioned against a Court taking those

---

[3]    Plaintiff believes this Court is not, and should not be bound by the limits of *New York Times Co. v. Sullivan* in the present circumstances.  See Plaintiff's Statement filed along with the Opposition to Fox News Network, LLC's Motion for Summary Judgment.  (ECF No. 923-20.)

determinations away from a jury."); *Henry v. Nat'l Ass'n of Air Traffic Specialists, Inc.*, 836 F.Supp. 1204, 1211 (D.Md. 1993), *aff'd*, 34 F.3d 1066 (4th Cir. 1994) ("Because the question of actual malice involves subjective evaluations, the Court is reluctant to take the malice determination from a jury.").

In determining whether actual malice exists, the crucial and often determinative factor is credibility. *See Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1072 (5th Cir. 1987) ("the drawing of inferences and the determination of credibility will still be a task for the factfinder," and the "present case hinges on just such determinations); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).[4]  Accordingly, courts in the Fourth Circuit and otherwise have denied summary judgment because a genuine issue of material fact existed as to whether the defendant acted with "actual malice." *See e.g., Fitzgerald v. Penthouse Int'l, Ltd.*, 691 F.2d 666, 670–71 (4th Cir. 1982) (denying summary judgment motion because of the mere possibility that "plaintiff can meet his burden of proving that the defendants had actual doubts about the accuracy of the information they published and that their failure to make an adequate investigation will reveal a reckless disregard for the truth"); *Tomblin v. WCHS-TV8*, 434 F.App'x 205, 211 (4th Cir. 2011) (concluding that the disputed facts, if resolved in plaintiff's favor, provide evidence from which a jury could infer that defendant acted with reckless disregard of the truth); *Anaya v. CBS Broadcasting Inc.*, 626 F.Supp.2d 1158 (D.N.M. 2009) (holding that a genuine issue of material fact existed as to whether the national broadcast network acted with actual malice, precluding summary judgment in favor of the network in the agent's action alleging defamation); *Westmoreland v. CBS Inc*., 596 F.Supp. 1170 (S.D.N.Y. 1984) (in a libel action brought by a former general against a television station, genuine issues of

---

[4]    The issue of "actual malice" raises numerous factual questions for the jury.  For example and without limitation, a jury should be permitted to consider whether the Mediaite Defendants' claims about being a "trusted source" are credible, while also denying that communist China is a human race and after falsely calling Mr. Blankenship a "convicted felon" following a debate in which it was widely reported he had prevailed.  A jury could infer that this evidence suggests "actual malice."

fact existed as to whether evidence was knowingly or recklessly misstated, precluding summary judgment on the issue of malice); *Pritt v. Republican Nat. Comm*., 557 S.E.2d 853, 860-61 (W. Va. 2001) (concluding that there were genuine issues of material fact as to whether allegedly defamatory statements were tainted with falsity or laced with malice precluding summary judgment for defendant political organizations, in defamation action brought by unsuccessful candidate for Governor, relating to statements made during the campaign); *Tharp v. Media General, Inc.*, 987 F.Supp.2d 673 (D.S.C. 2013) (holding that a genuine issue of material fact existed as to whether a television broadcaster deliberately or recklessly conveyed a false message to sensationalize the news, thus providing factual support for a finding of malice, when it published a broadcast regarding the arrestee, precluding summary judgment in the arrestee's defamation action).

Notwithstanding the foregoing, "[a]ctual malice may be proven by circumstantial evidence." *See Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989). "[P]artisanship, animus toward the subject of a libel, or other 'malicious' motives" are not conclusive evidence of "actual malice" on their own, but a jury may consider them in determining "whether a subjective realization that the statement was false or a subjective realization that the statement was being published recklessly, existed at the time the statement was published." *Blankenship*, 451 F. Supp. 3d at 618 (citing *Hinerman v. Daily Gazette Co.*, 188 W.Va. 157 (1992)).

Although the failure to investigate is not alone sufficient to establish actual malice, this Court has emphasized that purposeful avoidance of the truth is a different matter. *Blankenship*, 451 F. Supp. 3d at 619 (citing *Harte-Hanks Commc'ns*, 491 U.S. at 688, 692). Moreover, a "newspaper's departure from accepted standards" may support a conclusion of reckless disregard of the truth. *Id*.; *see also Sprouse v. Clay Commc'n, Inc.*, 158 W. Va. 427 (1975) ("When a newspaper departs from an attempt to report the news objectively, the fact of such departure can be considered by the jury in a libel action and by an appellate court in determining whether there was a willful disregard of the truth.").

The decision in *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066 (5th Cir. 1987) is particularly instructive here. In *Zerangue*, former law enforcement officials appealed a district court's grant of summary judgment in favor of defendant newspaper company for failure to raise an issue of actual malice. In finding a genuine question of material fact existed as to actual malice, the Fifth Circuit remanded the matter for trial on that issue. In *Zerangue*, the defendant newspaper erroneously reported that former public officials had been convicted of bribery and receiving stolen things. The Fifth Circuit precluded a finding of summary judgment in the former public officials' libel action against the newspaper company, when the reporter who wrote the second story worked in the same department as others who knew of the error, the reporter may have attended a staff meeting at which the error was reviewed and discussed, the newspaper's computer file may have contained the previous retraction, and the second story was edited by an editor who knew of the previous retraction. *Id*. at 1072. The Court emphasized that "the drawing of inferences and the determination of credibility will still be a task for the factfinder," and the "present case hinges on just such determinations." *Id*. Thus, the Fifth Circuit held that plaintiffs had produced enough evidence that the erroneous article was published knowingly or recklessly to obtain a jury trial on the issue. *Id*. In the instant case, a genuine issue of material fact exists as to "actual malice" for the reasons demonstrated below.

i.    **A Genuine Issue Of Fact Exists As To Whether Tamar Auber Acted With "Actual Malice"**

In the instant case, Auber admits to authoring the article which falsely states that Mr. Blankenship is a "convicted felon." In their defense, the Mediaite Defendants merely claim that Auber "was not aware that Plaintiff's conviction relating to the mine explosion at the Upper Big Brand [sic] technically amounted to a misdemeanor" (ECF. No. 900-1, ¶ 4.)

In *St. Amant v. Thompson*, 390 U.S. 727 (1968), the United States Supreme Court rejected this very contention in the context of a motion for summary judgment, stating in relevant part:

***"The defendant in a defamation action brought by a public official cannot, however, automatically insure a favorable verdict by testifying that he published with a belief that the***

9

statements were true.  **The finder of fact must determine whether the publication was indeed made in good faith.**"  *Id*. at 732 (emphasis added); *Smith v. A Pocono Country Place Property Owners Ass'n, Inc.*, 686 F.Supp. 1053, 1062 (M.D. Pa. 1987) ("mere assertions that defendants thought the statement published was true and bare professions of good faith do not require a finding that actual malice does not exist").  Moreover, Auber's state of mind when she made the defamatory statement requires a determination of credibility and, thus, is improper on summary judgment for this additional reason.  *See Zerangue*, 814 F.2d at 1072; *Fitzgerald*, 691 F.2d at 670–71.

In her declaration, Auber states that she "recall[s] reading news articles and posts on social media describing Plaintiff having been a felon as a result of his criminal conviction. I do not expressly recall which particular articles I read, but they were the types of articles in newspapers and other media sources that I would have found in a Google search or that would have been shared by others across social media."  (ECF No. 900-1, ¶ 5).  Whether or not Auber is credible, and whether or not she acted with reckless disregard for the truth in relying on "social media sources", are questions for the jury.  *See Tomblin*, 434 F.App'x at 211.

Critically, the Article was published on May 3, 2018 *after* Mr. Blankenship participated in a debate with the other two Primary candidates, which was televised nationally on the Fox News Channel on May 1, 2018.  During this debate, Mr. Blankenship addressed his conviction and imprisonment right out of the gate, stating in no uncertain terms:  "I faced thirty years in prison for a fake charge, and *I beat all three of the felonies*. … It's incredible, they sent me to prison for a misdemeanor.  I was the only prisoner there that was a misdemeanant."  (Exhibit 2 [Deposition of Don Blankenship, dated April 29, 2021 ("Blankenship Depo."), pp. 364:16-365:5 (emphasis added).)][5]  Thus, Mr. Blankenship made clear that, contrary to the defamatory remark at issue here, he was never convicted of a felony.  In fact, in the same sentence in which Auber defamed Mr. Blankenship, the Article cites to the Fox News debate, stating "the convicted felon

---

[5]  https://video.foxnews.com/v/5779097203001#sp=show-clips.

turned Senate hopeful then tried to defend the whole thing by claiming he was an "Americanperson" ***during the Fox news debate on Tuesday***…"  (Exhibit 1 (emphasis added).)  This sentence suggest that Auber watched the debate where Mr. Blankenship set the record straight and yet, she still chose to incorrectly refer to him as a "convicted felon" in the Article.  The Article takes issue with something Mr. Blankenship said during the very same debate where he explained, at the outset, and in clear detail, that he had only been convicted of a misdemeanor.  This is the type of specific access to accurate information that prompted the *Zerangue* court to deny a motion for summary judgment.  *See Zerangue*, 814 F.2d at 1072.

Additionally, on the same day (May 3, 2018), Auber authored another article about Mr. Blankenship, in which she quoted a clarification point that he had made regarding a prior statement, stating: "Then, Tuesday, he defended his remarks during a Fox News debate ' I don't see this insinuation by the press that there's something racist about saying a Chinaperson,' Blankenship insisted in his monotone drawl."[6]  Yet, in the Article, Auber left out the correction that Mr. Blankenship made regarding his conviction, and instead referred to him as a felon.  In light of these facts, a jury must be afforded the opportunity to weigh the evidence here and decide Auber's credibility.  *See Zerangue*, 814 F.2d at 1072; *Fitzgerald*, 691 F.2d at 670–71.

Moreover, Mediate published numerous additional articles regarding the 2018 West Virginia Primary and Mr. Blankenship and has obviously conducted extensive research into these topics, including an article specifically on Mr. Blankenship and the Fox News debate.[7]

Further, the Article was intentionally written in a way to suggest that Mr. Blankenship is racist.  This attitude toward Mr. Blankenship may also be considered by a jury in determining whether Auber's statement was made with "actual malice."  *Blankenship*, 451 F. Supp. 3d at 618.  The title of the article "WV Senate Candidate Defends Horrifying Campaign Ad:  There's No

---

[6] https://www.mediaite.com/politics/wv-senate-candidate-takes-aim-at-mitch-mcconnells-china-family-in-worst-ad-of-all-time/

[7] https://www.mediaite.com/online/wv-senate-candidate-says-his-use-of-chinaperson-isnt-racist-there-are-africanpersons-too/

Mention of a Race 'Like Negro'" is clearly designed to be provocative and to suggest that Mr. Blankenship is racist. However, a factfinder could conclude that use of the term "Negro" is not racist. The term may be considered outdated, but it is still currently used (*e.g.*, United Negro College Fund (UNCF).)[8]   Indeed, there is evidence that reputable political commentators involved in this case have admitted that the term is "not racist."

The Article then focuses on Mr. Blankenship's use of the words "Chinaperson" and "China family" to suggest racism and prejudice by Mr. Blankenship. (Exhibit 1.) These are also considerations for the factfinder. First, a factfinder could conclude that "China person" is an awkward term, but not racist, in a manner similar to the term "Mountain Family" PAC, used by Senator McConnell to refer to the people of the West Virginia mountains. "China" is not a race. "China person" is not disparaging. "China person" is not a racial epithet. A jury in West Virginia may very well conclude that the term "China Family" is no more racist than the term "Mountain Family" and that neither Senator McConnell nor Mr. Blankenship are racists. In any event, a jury should be allowed to decide whether innuendo that Mr. Blankenship is a racist is evidence of "actual malice" and avoidance of the truth.

Second, Mr. Blankenship had legitimate concerns about the involvement of Senator McConnell, and his wife, Transportation Secretary Elaine Chao's ties with China—concerns which the people of West Virginia shared as well. Importantly, all of Mr. Blankenship's concerns about Senator McConnell's family ties to China have been proven to be true and reported by the New York Times. [9]According to the New York Times, Foremost (Secretary Chao's family business) is responsible for a large portion of orders at one of China's biggest state-funded shipyards and has secured long-term charters with a Chinese state-owned steel maker as well as global commodity companies that guarantee it steady revenues. *Id.* Some of Foremost's ships were built in a Chinese shipyard and financed with loans from the Export-

---

[8] https://uncf.org.
[9] https://www.nytimes.com/2019/06/02/us/politics/elaine-chao-china.html

Import Bank of China, which is owned by the China government. *Id*. More than 70 percent of the raw material shipped by Foremost since 2018 has gone to China. *Id*. The New York Times stated that "Foremost has received hundreds of millions of dollars in loan commitments from a bank run by the China government, whose policies have been labeled by the Trump administration as threats to American security. The company's primary business — delivering China's iron ore and coal — is intertwined with industries caught up in a trade war with the United States." *Id*. It further stated that the Chao family "run an American shipping company with deep ties to the economic and political elite in China, where most of the company's business is centered." *Id*. It is also known that the American shipping industry is in great decline and overshadowed by its China competitors. *Id*. Secretary Chao, "has repeatedly used her connections and celebrity status in China to boost the profile of the company, which benefits handsomely from the expansive industrial policies in Beijing that are at the heart of diplomatic tensions with the United States, according to interviews, industry filings and government documents from both countries." *Id*. Ms. Chao has permitted Chinese relatives involved in the Chinese shipping business to attend official meetings with government officials. *Id*. Notably, government officials have also repeated Mr. Blankenship's concerns about the closeness of Senator McConnell and Secretary Chao to the Chinese shipping industry. "Marilyn L. Glynn, a former general counsel at the Office of Government Ethics, questioned Ms. Chao's proximity to Foremost, saying she should recuse herself from decisions that broadly impacted the shipping industry." *Id*. Importantly, the New York Times reported, that Secretary Chao "repeatedly used her office staff to help family members who run a shipping business with extensive ties to China" citing to a report released by the Transportation Department inspector general. [10] The inspector general referred the matter to the Justice Department for criminal investigation. *Id*. Secretary Chao thereafter resigned. *Id*. These reported facts unveil the ethical conflicts that Mr. Blankenship voiced concerns on, which have since been shared by officials and news agencies.

---

[10] https://www.nytimes.com/2021/03/03/us/politics/elaine-chao-inspector-general-report.html

Furthermore, it has been reported that Dr. James Chao (Foremost's Founder, current Honorary Chairman, and Elaine Chao's father) [11] and Angela Chao (Foremost's Chairperson and Chief Executive Officer, and Elaine Chao's sister), [12] have served on the boards of a Chinese state-owned shipbuilder, and Angela Chao has served on the board of the Bank of China, as well as the China Council for the Promotion of International Trade (which was created by the government of China). [13] This evidence raises additional ethical concerns.

Yet, the Article, instead of focusing on the real issues that Mr. Blankenship was bringing to light, falsely painted him as a "racist." Mr. Blankenship's concerns were, and remain, legitimate. Thus, it was reasonable, proper, and not racist for him to inform voters about Secretary Chao's and Senator McConnell's conflicts of interest, and their ties to Communist China. It is abundantly clear that Auber intended to disparage Mr. Blankenship as a racist and as a "felon" and that the Mediaite Defendants did so with actual malice and with an intent to harm Mr. Blankenship. Auber's animus toward Mr. Blankenship may also be considered by a jury in determining whether her statement was made with "actual malice." *Blankenship*, 451 F. Supp. 3d at 618 (emphasizing that partisanship, animus toward the subject, or other malicious motives may be considered by a jury in determining whether there is evidence of actual malice).

### ii. Mediaite's Lack of Policies and Standards

The Mediaite Defendants contend that Mediaite does not "maintain any internal policies relating to reporting on criminal activity or charges, nor are the Mediate Defendants required to uphold such policies." (ECF No. 901, p. 7.) The foregoing is particularly egregious and reckless in light of the fact that Mediaite was founded by Dan Abrams. Mr. Abrams is a well-known media entrepreneur, television host, commentator, and New York Times bestselling author. [14] He received a B.A. cum laude in political science from Duke University and a J.D. from

---

[11] https://www.foremostgroupusa.com/about/dr-james-s-c-chao.

[12] https://www.foremostgroupusa.com/about/angela-chao.

[13] https://www.nytimes.com/2019/06/02/us/politics/elaine-chao-china.html.

[14] http://www.dan-abrams.com/about.

Columbia Law School.  Mr. Abrams is currently the ABC News chief legal correspondent and is the host of the *The Dan Abrams Show: Where Politics Meets The Law*.  He is a legal commentator, author, and former anchor of Nightline.  Mr. Abrams also worked as the chief legal correspondent and analyst for NBC News and general manager of MSNBC.

Notwithstanding the foregoing, the Mediaite Defendants claim that they are not required to uphold any policies to prevent falsely labeling a leading candidate for the United States Senate a "convicted felon" just five (5) days before the Primary election—an election that was closely followed by the media and critically important to the direction of this country.

The Mediaite Defendants are improperly asking this Court to make credibility determinations which are a unique function of the jury, including the following questions of fact: whether the Mediaite Defendants were reckless when they called a leading United States Senate candidate a "convicted felon" and a racist when in truth he is not; whether it is believable that a news website focusing on politics and the media did not intend to harm and did in fact harm Mr. Blankenship's chances of winning a federal election; and whether the defamation by the Mediaite Defendants caused Mr. Blankenship to be viewed in a false light by their millions of visitors.

Simply put, the Mediaite Defendants and Mediaite's Founder are essentially pleading ignorance while marketing themselves as experts on politics and the law.  A jury should be allowed to decide whether, considering the Founder of Mediaite's educational background and extensive experience in law, politics, and media, should be believed and excused from any liability in the Mediaite Defendants' role in sabotaging a federal election.  Mr. Abrams' father, Floyd Abrams, is also an attorney and widely known as an expert on Constitutional Law and the First Amendment.[15]  Thus, Mr. Abrams should have learned at an early age that disparaging and defaming individuals damages and even destroys the effectiveness of their free speech which renders a hotly contested Senate race impossible to win. Mediaite's lack of any internal policies relating to reporting on criminal activity or charges, or the lack of the requirement for Mediaite

---

[15] https://www.cahill.com/professionals/floyd-abrams.

and/or its authors and reporters to uphold such policies is "reckless per se." A question of fact exists as to the Mediaite Defendants' actual malice towards Mr. Blankenship.

## 2. There Is Evidence Of An Intent To Injure Mr. Blankenship

Next, the Mediaite Defendants argue that there is no evidence of an "intent to injure" Mr. Blankenship. The Mediaite Defendants primarily rely on *Sprouse v. Clay Commc'n, Inc.*, 158 W. Va. 427 (1975) for this proposition. The Mediaite Defendants join with several other defendants (including Fox News, MSNBC, and CNN, among others) in misreading *Sprouse* as adding the requirement that a public-figure plaintiff must prove not just actual malice, but that the defaming party acted with an "intent to injure."[16]

The defendants did not argue for the existence of this "intent to injure" requirement in their motions to dismiss. To the contrary, CNN did not mention "intent to injure" when it outlined the standard for actual malice: "It has long been settled that a public official or figure must plead and prove that alleged defamation was published 'with "actual malice"—that is, with knowledge that it was false or with reckless disregard of whether it was false or not.'" (ECF No. 196, p. 12.) Fox News argued similarly: "Accordingly, Blankenship must plead and prove 'actual malice'—that the Fox News Defendants acted 'with knowledge that [their speech] was false or with reckless disregard of whether it was false or not.'" (ECF No. 218, p. 9.)

Furthermore, in its Order on the Motions to Dismiss, this Court specifically described the test for actual malice without adding a requirement of an "intent to injure." *Blankenship*, 451 F. Supp. 3d at 615–16 ("Public officials or candidates for public office must prove three elements by clear and convincing evidence in order to recover in a defamation action: (1) there was the publication of a defamatory statement of fact or a statement in the form of an opinion that implied the allegation of undisclosed defamatory facts as the basis for the opinion; (2) the stated or implied facts were false; and, (3) the person who uttered the defamatory statement either knew

---

[16] *See* ECF Nos. 883 at 11-12; 885 at 3, 12, 19; 887 at 1, 11, 19-20; 889 at 15, 21; 891 at 19; 899 at 12, 15; 901 at 5, 9; 904 at 5, 7, 11; 934 at 2; 935 at 13-14; 936 at 15; 938 at 4; 940 at 12.

the statement was false or knew that he was publishing the statement in reckless disregard of whether the statement was false."). Moreover, this Court cited to *Sprouse* along with its discussions of actual malice and did not recognize the "additional element" that Defendants now wrongly argue that *Sprouse* requires. *Id*. at 616.

The Court should reject Defendants' invitation to rewrite the elements of actual malice. At the outset, it is important to recognize that *Sprouse* must be read in the context in which it arose. The decision was published about a decade after *New York Times v. Sullivan* at a point when the parameters of the actual malice doctrine were still being defined. *Sprouse*, 211 S.E.2d at 680. Indeed, the Court in *Sprouse* emphasized that it was a question of *first impression* of whether a newspaper's decision to join with a candidate to intentionally discredit (injure) his opponent was evidence relevant to proving actual malice. *Id*. But when *Sprouse* articulates the test for actual malice it makes no mention of "intent to injure" and does not deviate from *Sullivan*: "Consequently, in order for the evidence in this case to withstand appellate review it is necessary that the plaintiff, Sprouse, demonstrate that the defendant Daily Mail knew that the defamatory material contained in the articles it printed was false or for plaintiff to demonstrate that the Daily Mail was reckless and willful in its indifference to the truth of the printed material." *Id*. at 682.

In fact, *Sprouse's* discussion of "intent to injure" is **never** in the context of **adding** to *Sullivan's* description of actual malice, but rather **deciding whether evidence of intent to injure is relevant to actual malice**. *Id*. at 681-82, 690-91. Indeed, the Court makes this point explicitly: "Nevertheless when [*Associated Press* v.] *Walker* [388 U.S. 130 (1967)] and *Curtis* [*Publishing Company v. Butts*, 388 U.S. 130 (1967)] are read together they still stand for the proposition that personal motives on the part of a newspaper, or participation by a newspaper in a plan or scheme to injure, **is evidence of** recklessness and willful disregard for truth which may be considered along with other evidence on the question of actual malice." *Id*. at 688 (emphasis added).

Notably, in *Matter of Callaghan*, 796 S.E.2d 604 (W. Va. 2017) – a defamation matter involving a judicial candidate decided long after *Sprouse* – the Court did not even reference the issue of "intent to injure" much less require proof of such to show actual malice. Rather, the Court cited *United States v. Alvarez*, 567 U.S. 709 (2012) as follows: "[I]n order to prevent the chilling of truthful speech on matters of public concern, we have held that liability for the defamation of a public official or figure *requires proof that defamatory statements were made with knowledge or reckless disregard of their falsity.*" *Callaghan*, 796 S.E.2d at 623.

Likewise, a federal court citing *Sprouse* has observed that the "intent to injure" is just one example of evidence of actual malice: "In defamation law, malice has a narrow meaning. *Sprouse v. Clay Communication, Inc.,* 211 S.E.2d 674 (W. Va. 1975). It requires not only a deliberate intent to injure, but also an intent to injure through the publication of false or misleading defamatory statements known by the publisher or its agents to be false. ***Alternatively***, malice can be manifested by an intent to injure through publication of such statements with reckless and willful disregard for their truth." *McKinney v. K-Mart Corp.*, 649 F. Supp. 1217, 1221-22 (S.D.W. Va. 1986) (emphasis added).

Simply put, Defendants have not, because they cannot, cite this Court to a case where a defendant's case was tossed on summary judgment or otherwise because it proved actual malice, but did not also separately and additionally prove an "intent to injure."

**B.    The Mediaite Defendants Have Not Met Their Burden To Establish The Absence Of Disputed Facts With Respect To Mr. Blankenship's False Light Invasion of Privacy Claim**

The Mediaite Defendants contend that Mr. Blankenship's false light invasion of privacy claim fails for the same reasons that his defamation claim fails.[17]   For the reasons discussed above, there are genuine issues of material fact with respect to "actual malice" precluding summary disposition as to both of Mr. Blankenship's claims.

---

[17]    "West Virginia courts … treat false light privacy claims in essentially the same manner as they treat defamation claims." *Blankenship*, 451 F. Supp. 3d at 620.

## V.    CONCLUSION

For reasons demonstrated above, Mr. Blankenship respectfully requests that the Court deny the Mediaite Defendants' Motion for Summary Judgment in its entirety.

Respectfully submitted,

DON BLANKENSHIP<br>By Counsel

/s/ Jeremy Gray_____              /s/ Jeffrey S. Simpkins_____
**Eric P. Early, Esq.**              **Jeffrey S. Simpkins, Esq.**
**(CA State Bar No. 166275, *pro hac vice*)**    **WVSB #9806**
**Jeremy Gray, Esq.**              *SIMPKINS LAW*
**(CA State Bar No. 150075, *pro hac vice*)**    **102 E. 2nd Ave.**
*EARLY SULLIVAN WRIGHT*            **Williamson, WV 25661**
*GIZER & McRAE LLP*                **304.235.2735**
**6420 Wilshire Blvd., 17th Floor**
**Los Angeles, CA 90048**
**323.301.4660**
**eearly@earlysullivan.com**
**jgray@earlysullivan.com**

8.1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON DIVISION**

DON BLANKENSHIP,

           Plaintiff,

vs.

FOX NEWS NETWORK, LLC, et al.

           Defendants.

Case No.: 2:19-cv-00236

[Honorable Omar J. Aboulhosn]

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of June 2021, I electronically filed the foregoing "**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF DON BLANKENSHIP'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS MEDIAITE LLC AND TAMAR AUBER**" with the Clerk of Court using the CM/ECF system which will send notice to all CM/ECF participants.

/s/ Jeremy Gray
Jeremy Gray
(CA State Bar No. 150075, pro hac vice)
EARLY SULLIVAN
  WRIGHT GIZER & MCRAE LLP
6420 Wilshire Boulevard, 17th Floor
Los Angeles, California 90048

/s/ Jeffrey S. Simpkins
Jeffrey S. Simpkins (WVSB # 9806)
SIMPKINS LAW
102 E. 2nd Avenue
Williamson, West Virginia 25661

20

# EXHIBIT 1
# WV Senate Candidate

USCA4 Appeal: 22-1198     Doc: 64     Filed: 05/25/2022     Pg: 49 of 282



**MEDIAITE**

TV   OPINION   WEIRD   TRUMP   SPORTS   ENTERTAINMENT   FOOD   NEWSLETTER

Stormy Daniels and Roseanne Are Now Feuding: 'I Don't Even Do Anal Movies, You Ignorant

Fox News' Neil Cavuto Reads a Ton of Angry Messages from Viewers Over His Commentary

CNN: Devin Nunes Did Not Read Documents He Requested

Et Tu? Even Wall Street Journal's Editorial Board Scolding Trump For 'False' Stormy Daniels Claims

Federal Judge Questions Mueller's Intentions, Authority with Manafort Indictment



# WV Senate Candidate Defends Horrifying Campaign Ad: 'There's No Mention of a Race' Like 'Negro'

by Tamar Auber | 10:04 pm, May 3rd, 2018







**AROUND THE WEB** by Taboola

Luxury Senior Living in San Francisco Is Now... Affordable! Search For Assisted Living Communities Near Me

Doctor Tells Man He's Infertile, Then Realizes W... His Three Sons Look So Familiar

How A Bobby Pin Is Actually Supposed To Be Used

West Virginia Senate Candidate **Don Blankenship** responded to the critics who called his new anti-Sen. Mitch McConnell (R-KY) "China family" ad racist by claiming he's "never used a race word."

4686



USCA4 Appeal: 22-1198    Doc: 64    Filed: 05/25/2022    Pg: 50 of 282

TV    OPINION    WEIRD    TRUMP    SPORTS    ENTERTAINMENT    FOOD    NEWSLETTER



"They've always said about me, West Virginia people, is West Virginia people racist," Blankenship opined, roping the population of the whole state into his mess, and making sure to refer to people from the Mountain State as "West Virginia people."

He added, according to the report by Roll's Call's **Simone Pathe**, "We're confused on our staff as to how it can be racist when there is no mention of a race. There's no race. Races are negro, white caucasian, Hispanic, Asian. There's no mention of a race. I've never used a race word."

Blankenship's latest denial comes after he referred to Mitch McConnell's family as a "China family" and his father-in-law as a rich "Chinaperson."

The convicted felon turned Senate hopeful then tried to defend the whole thing by claiming he was an "Americanperson" during the Fox News debate on Tuesday, adding there are also "Koreanpersons" and "Africanpersons."

Blankenship, who was convicted for his part in the death of 29 miners, is currently third in the GOP polls.

The West Virginia primary is on May 8.

[image via screengrab]

*Have a tip we should know?* tips@mediaite.com

**Follow Mediaite**

 

**MORE FROM AROUND THE WEB** by Zergnet


Matt Lauer Had an Affair with a 'Well-Respected' NBC Star


New Video Of George Floyd Has The Police In Even More Hot Water


Why Burger King is Falling Behind the Rest of the Fast Food Pack


Melania Trump Endures 'the Worst Booing She Has Received'


Kelly Ripa Gets Emotional Over the Death of Her Former Co-Star


The Trump Cartoon That May Have Gone Way Too Far


Jimmy Carter's Surprising Comment About Trump Is Turning Heads

Kate Middleton Reportedly

# Exhibit 2
# Excerpts from Deposition of Don Blankenship Taken on April 29, 2021

**In the Matter Of:**

*BLANKENSHIP vs*

*FOX NEWS NETWORK*

---

*DON BLANKENSHIP*

*April 29, 2021*

---

LEXITAS

USCA4 Appeal: 22-1198    Doc: 64    Filed: 05/25/2022    Pg: 53 of 282

```
                                                                    12
 1              P R O C E E D I N G S

 2                   THE VIDEOGRAPHER:  All right.

 3      Good morning.  We are now on the record.

 4      My name is Rick Christian.  I'm the

 5      videographer retained by Lexitas.

 6             Today's date is April 29th 2021,

 7      and the video time is 9:18 a.m. Eastern.

 8      This deposition is in the matter of Don

 9      Blankenship v. Fox News Network LLC, et

10      al.  The deponent is Don Blankenship.

11             Counsel will be noted on the

12      stenographic record.

13             The court reporter is

14      Giselle Mitchell, and will now swear in

15      the witness.

16                    DON BLANKENSHIP

17      Having been duly sworn testified as follows:

18                   MR. REGAN:  Giselle, do we need

19      to take appearances of counsel and

20      everyone who's on?

21                   THE COURT REPORTER:  I can't

22      see who's speaking.

23                   MR. SIMPKINS:  Jeff Simpkins;

24      Simpkins Law.
```

USCA4 Appeal: 22-1198    Doc: 64    Filed: 05/25/2022    Pg: 54 of 282

Don Blankenship - April 29, 2021

364

1  sentence period, under federal law?

2                MR. SIMPKINS:  Objection as to

3        form.

4                THE WITNESS:  But that --

5                MR. SIMPKINS:  The question is

6        absurd.

7            But you can answer.

8                THE WITNESS:  Yeah.  You could

9        add to that, prior to an appeal.  Though

10       I've never heard of anyone, and I don't

11       know that anyone in the media has.

12           But, if not, you would think they

13       would find that to be unusual, and put

14       the whole prosecution in question.

15  BY MR. REGAN:

16    Q.   It would be very unusual.  Right?

17  That's the whole point.  It is very unusual.

18  You are the only one.  Right?

19      A.   Yeah.  So, I mean, I don't know

20  what, exactly, your point is.  But I made it

21  very clear, on many programs, including Fox

22  Debate, that I was sent to prison for a

23  misdemeanor.

24      Q.   And Fox gave you that opportunity to

USCA4 Appeal: 22-1198     Doc: 64     Filed: 05/25/2022     Pg: 55 of 282

Don Blankenship - April 29, 2021

365

1    make that.  Right?  Fox -- Fox hosted the

2    debate of -- of this primary?

3         A.   Yeah.  Several days before they

4    called me a felon, and a convicted felon,

5    several more times.

6         Q.   The Fourth Circuit U.S. Court of

7    Appeal ruled against you on your appeal from

8    your conviction.  Correct?

9         A.   Yes.

10        Q.   And you asked the United States

11   Supreme Court for a writ of certiorari on that

12   question.  Correct?

13             MR. SIMPKINS:  Objection as to

14        form.

15        A.   Yes.

16        Q.   And the Supreme Court denied that

17   too.  Correct?

18        A.   Yes.

19        Q.   And once you had exhausted all those

20   appeals, you filed a petition for a writ of

21   habeas corpus, to vacate your conviction.  Is

22   that correct?

23             MR. SIMPKINS:  Objection as to

24        form.

USCA4 Appeal: 22-1198    Doc: 64    Filed: 05/25/2022    Pg: 56 of 282
Case 2:19-cv-00236  Document 948-2   Filed 06/21/21   Page 6 of 7 PageID #: 16147

Don Blankenship - April 29, 2021

505

1                    REPORTER'S   CERTIFICATE

2

3         I, GISELLE MITCHELL-MARGERUM, the undersigned,
   a Registered Professional Reporter, Certified
4  Reporting Instructor, Licensed Court Reporter, and
   Certified Court Reporter, do hereby certify:
5
          That the witness, DON BLANKENSHIP, before
6  examination was remotely duly sworn to testify to
   the truth, the whole truth, and nothing but the
7  truth.

8         That the foregoing deposition was taken
   remotely stenographically by me on Thursday, April
9  29, 2021, and thereafter was transcribed by me, and
   that the deposition is a full, true, and complete
10 transcript of the testimony, including questions
   and answers, and objections, motions and exceptions
11 made by counsel.

12        That reading and signing was not requested;
   and that I am neither attorney nor counsel for, nor
13 related to or employed by, any of the parties to
   the action in which this deposition was taken; and
14 that I have no interest, financial or otherwise, in
   this case.

15

16        IN WITNESS WHEREOF, I have hereunto set
   my hand this 4th day of May      2021.

17

18

19

20

21 GISELLE MITCHELL-MARGERUM, RPR, CRI, CCR, LCR, CSR

22

23

24

506

1

2                   CERTIFICATE OF DEPONENT

3

4    I, DON BLANKENSHIP, hereby certify that I have read
     the foregoing pages, numbered 1 through 504, of my
5    deposition of testimony taken in these proceedings
     on Thursday, April 29, 2021 and, with the exception
6    of the changes listed on the next page and/or
     corrections, if any, find them to be a true and
7    accurate transcription thereof.

8

9

10

11

12   Signed:   ........................

13   Name:    DON BLANKENSHIP

14   Date:    ........................

15

16

17

18

19

20

21

22

23

24

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### AT CHARLESTON

---

DON BLANKENSHIP,                              CIVIL ACTION NO. 2:19-cv-00236

                          Blankenship,

      v.

FOX NEWS NETWORK, LLC et al.,
                       Defendants.

---

## DEFENDANTS MEDIAITE, LLC AND TAMAR AUBER'S REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Dated: June 28, 2021           Respectfully submitted,

                             MEDIAITE, LLC and TAMAR AUBER,
                             Defendants

                             By counsel:

                             /s/ Andrew Eisbrouch
                             Andrew Eisbrouch, Esq. (*pro hac vice*)
                             NY Bar No. 5515598
                             Mediaite, LLC
                             1261 Broadway, Suite 606
                             New York, New York 10001
                             Tel: (201) 452-3990

                             *Attorney for Defendants*
                             *Mediaite, LLC & Tamar Auber*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION……………………………………………..…………………………………..1

ARGUMENT…………………………………………….…………………………………2

    I.    A Determination of Actual Malice is Appropriate on Summary Judgment and

        Blankenship Misstates His Burden of Proving Actual Malice……………………2

    II.    No Genuine Disputed and Material Fact Exists Regarding Actual Malice……….6

        A.    Blankenship's Unsupported Doubt About Auber's Credibility is Not

            Sufficient to Create a Dispute of Fact and Survive Summary Judgment…6

        B.    Mediaite Defendants Lack of Formal Written Policies Do Not Create a

            Dispute of Fact…………………………………………………………8

        C.    False Light Invasion of Privacy Fails Absent a Showing of Actual

            Malice…………………………………………………………....10

CONCLUSION………………………………………….……………………………10

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) …………………………………………2,3,4

*Anderson v. Rocky Mountain News*, No. 85-2114, 1988 U.S. App. LEXIS 19304 (10th Cir. July 7, 1988) ………………………………………………………………………………………3,4

*Blankenship v. Napolitano*, 451 F. Supp. 3d 596 (S.D. W. Va. 2020) ………………………..9,10

*Carr v. Forbes, Inc.*, 259 F.3d 273 (4th Cir. 2001)…………………………………………………8

*Carroll v. United Steelworkers of Am., AFL-CIO-CLC*, 498 F.Supp. 976 (D. Md. 1980), *aff'd*, 639 F.2d 778 (4th Cir. 1980) …………………………………………………………………..5

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)….. ………………………………………………4

*Clyburn v. News World Commc'ns, Inc.*, 705 F. Supp. 635 (1989) ………………………………3

*Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657 (1989) …………………………………9

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) …………………………………………2,7

*Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610 (7th Cir. 2013) ……………………………8

*Pritt v. Republican Nat. Committee*, 557 S.E.2d 853 (W. Va. 2001) ……………………………5

*Sprouse v. Clay Commc'n, Inc.*, 211 S.E.2d 674 (W. Va. 1975) …………………………………2

*Spacecon Specialty Contractors, LLC v. Bensinger*, 713 F.3d 1028 (10th Cir. 2013). …………..6

*St. Amant v. Thompson*, 390 U.S. 727 (1968)….. …………………………………………...5

*Walpert v. Bart*, 280 F.Supp. 1006 (D. Md. 1967) …………………………………………5

*Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066 (5th Cir. 1987) ……………………………7,8

## INTRODUCTION

Plaintiff Don Blankenship has produced no facts and offered no law that remotely supports this case surviving summary judgment. Blankenship never bothered to depose anyone involved in publishing the challenged statement made by Mediaite, LLC ("Mediaite") and Tamar Auber ("Auber") (collectively herein "Mediaite Defendants") – no corporate designee, no persons most knowledgeable, and not even the author themselves. Lacking any evidence necessary to establish actual malice, Blankenship in his Opposition to Defendants Mediaite LLC and Tamar Auber's Motion for Summary Judgment ("Opposition" ECF No. 948) relies on speculation, bald assertions about the author's intent, and a red-herring argument, heard by Mediaite Defendants for the first time, that the article was "designed to be provocative and to suggest that Mr. Blankenship is racist." Blankenship's own words do enough to suggest his beliefs on race, as clearly evidenced in the article. Blankenship conveniently misconstrues the context of the article, which was written based off of his very own campaign advertisement in which Blankenship made national headlines referring to Senator Mitch McConnell's family as a "China family" and his father-in-law as a rich "Chinaperson." He confounds the subject of the article – his campaign advertisement – which was news in and of itself for its absurdity as some sort of evidence that Mediaite Defendants acted with actual malice.

Blankenship cannot refute that Auber believed that Blankenship had been convicted of a felony when she wrote the respective article or show that she harbored any doubt the statement was accurate. Blankenship has <u>absolutely no evidence</u> of actual malice here, let alone the clear and convincing kind required by the First Amendment. He continues his pattern of generalized and conclusory assertions and is unable to point to any evidence that Auber actually knew the statement was false when made or had a "high degree of awareness"—i.e., subjective doubts—about the

truth. Lacking such evidence, Blankenship instead mischaracterizes the law, makes unfounded claims that Mediaite Defendants lack credibility, and constructs a chain of inferences unrelated to the challenged statements.

Finally, Blankenship's Opposition fails to identify any fact that is both material and disputed. He attempts to create an issue of fact by raising hypothetical and speculative arguments, referencing and relying on unsubstantiated evidence, introduced for the first time improperly in connection with summary judgment, none of which is sufficient to individually or collectively create a genuine issue of material fact.

## **ARGUMENT**

I.    A Determination of Actual Malice is Appropriate on Summary Judgment and Blankenship Misstates His Burden of Proving Actual Malice

In civil claims, when it is shown that a party has not met his or her burden of proof on a particular claim, and no material fact is genuinely in dispute, summary judgment is the proper avenue to reduce the ongoing and significant expense and use of resources associated with seeing those claims through trial. Here, Plaintiff has a high burden: proving actual malice with clear and convincing evidence. However, Plaintiff confuscates the subjective nature of an actual-malice standard. The Supreme Court of the United States has rejected such. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 2514 (1986). Assessing the existence of actual malice does not operate to preclude summary dismissal, as Plaintiff suggests, especially where no evidence exists to establish actual malice with convincing clarity or a subjective intent to cause injury. *New York N.Y. Times Co. v. Sullivan,* 376 U.S. 254, 279, 84 S. Ct. 710, 725 (1964) (Plaintiff must prove actual malice with "convincing clarity.*"); Sprouse v. Clay Commc'n*, 158 W. Va. 427, 430, 211 S.E.2d 674, 680 (1975)("[I]t is necessary for a candidate for office to prove

that false or misleading statements were published with knowledge on the part of the publisher

of their falsity or with willful and reckless disregard of their truth, and further to prove that they

were published with a deliberate intent to injure…").

    Blankenship bears a heightened burden of proof to withstand summary judgment.

*Anderson*, 477 U.S. at 254 (Holding that courts must consider "the actual quantum and quality of

proof necessary to support liability under *New York Times*" when considering summary judgment

on the actual malice issue.). Courts routinely grant summary judgment on defamation and false

light claims due to lack of relevant evidence demonstrating actual malice. *Clyburn v. News World

Commc'ns, Inc.*, 705 F. Supp. 635, 642 (1989) (Newspaper granted summary judgment in an

action for libel because plaintiff was a limited purpose public figure and there was **insufficient

evidence of actual malice** in the newspaper's publication of the disputed articles.)(emphasis

added); *See e.g. Anderson v. Rocky Mountain News*, No. 85-2114, 1988 U.S. App. LEXIS 19304,

at *6 (10th Cir. July 7, 1988) (Summary judgment was proper in father's libel suit against

newspaper and its general manager because father was a public figure and he failed to meet his

burden of showing actual malice.).

    Blankenship's interpretation of defamation case law is inaccurate. He notes that

"[c]redibility determinations . . . are jury functions, not those of a judge," yet he repeatedly asks

the Court to weigh Auber's credibility and determine it was "undermined." (ECF No. 948 at p. 5

(citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986)); id. at pp. 9, 16.) This is

precisely what the U.S. Supreme Court has said is not sufficient in opposing summary judgment

in a defamation action. A plaintiff cannot "defeat a defendant's properly supported motion for

summary judgment in a . . . libel case . . . by merely asserting that the jury might, and legally could, disbelieve the defendant's denial . . . of legal malice." *Anderson,* 477 U.S. at 256. Yet that is all Blankenship offers in his Opposition: disbelief of Auber's declaration—under oath—that she had no reason to doubt the accuracy of the challenged statements at the time they were made. Blankenship failed to even depose Auber to question her assertion of doubt. Based upon the record as it stands currently, no reasonable jury could find that Mediaite Defendants used the term "felon" with knowledge that it was false or with reckless disregard as to whether it were true.

Laughably, Blankenship's Opposition asserts that it is Mediaite Defendants' burden to "show the absence of any material facts." (ECF No. 948 at p. 4). Blankenship cites no legal support for this misplaced burden because the law is clear, as cited by every defendant in this case, that the burden falls on Blankenship to show, by clear and convincing evidence, that Mediaite Defendants acted with actual malice by using the word "felon" and intended to injure Blankenship. *See Anderson v. Rocky Mountain News*, No. 85-2114, 1988 U.S. App. LEXIS 19304, at *6 (10th Cir. July 7, 1988)(Where plaintiff argued that defendants produced no evidence of lack of malice, court found that defendants' silence will not suffice as "proof" to withstand a motion for summary judgment. (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

Blankenship's backward theory of placing the burden on Mediaite Defendants to prove the absence of actual malice ignores Blankenship's sole burden of proving its existence in the first place. The use of the term "felon" by Mediaite Defendants was not fabricated by out of thin air, it was not purely the product of Auber's imagination, and it was not based on anonymous tips

nor is its use so inherently improbable that only a reckless person would have put it in circulation. *See St. Amant v. Thompson*, 390 U.S. 727 (1968) Blankenship was, after all, charged with a crime for which he served a year in federal prison. Blankenship's references to "credibility determinations," have no basis for challenging the credibility of the sworn testimony of Mediaite Defendants' witness, whom he never even deposed. (ECF No. 948, p.5) *See Carroll v. United Steelworkers of Am., AFL-CIO-CLC*, 498 F.Supp. 976, 978 (D. Md. 1980), *aff'd*, 639 F.2d 778 (4th Cir. 1980) ("In order for the opposing party to raise an issue of credibility 'he must produce <u>by way of affidavit or otherwise sufficient evidence</u> to show the court that at trial he will be able to produce some fact to shake the credibility of the affiants. Mere hopes are not enough.'") (quoting *Walpert v. Bart*, 280 F.Supp. 1006, 1013 (D. Md. 1967)) (emphasis added).

The Supreme Court has expressly forbidden Blankenship's strategy in defamation cases: a plaintiff cannot "defeat a defendant's properly supported motion for summary judgment in a . . . . libel case . . . by merely asserting that the jury might, and legally could, disbelieve the defendant's denial . . . of legal malice." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 256. *See Pritt v. Republican Nat. Committee*, 557 S.E.2d 853, 860–61 (W. Va. 2001) (finding a material issue of fact where there was "repeatedly and continuously" an "ongoing factual dispute"). The author of the article at issue testified that she believed her statement about Blankenship when she made it, and Blankenship's unsupported hope that a jury might disbelieve her testimony is insufficient to maintain his claims. In this case, Blankenship has no evidence that Mediaite Defendants had reason to doubt their statements at the time they were made. Blankenship's failure to produce any such evidence—or any evidence at all—dooms his claims and ignores his

constitutional burden to meet the *New York Times* actual malice standard at the summary judgment stage.

II.     No Genuine Disputed and Material Fact Exists Regarding Actual Malice

No genuine issue of material and disputed fact exists with respect to whether Mediaite Defendants knew that referring to Blankenship as a felon, for which he was criminally charged, was actually false given his ultimate misdemeanor conviction. The sworn declaration of Auber establishes the lack of Auber's knowledge as to the technical falsity of the term "felon," and nothing exists in the record to refute that statement or establish otherwise. (ECF No. 900, Ex. 1). "[I]f the evidence presented in the opposing affidavits is of insufficient caliber or quantity to allow a rational finder of fact to find actual malice by clear and convincing evidence," then "there is no genuine issue" and summary judgment is appropriate. *Spacecon Specialty Contractors, LLC v. Bensinger*, 713 F.3d 1028, 1048 n.13 (10th Cir. 2013). Plaintiff's Opposition fails to present any evidence showing Mediaite Defendants subjective knowledge that the term used in the Article's headline was false or a reckless disregard for the truth

A.     **Blankenship's Unsupported Doubt About Auber's Credibility is Not Sufficient to Create a Dispute of Fact and Survive Summary Judgment**

Blankenship's Opposition does not create a dispute of fact because Blankenship has come forward with nothing that contradicts the clear evidence offered in support of Mediaite Defendants' motion. The sworn declaration by Auber establishes that she believed what she wrote about Blankenship when she wrote it, had no reason to doubt the accuracy of the statements, and was not aware that Blankenship's conviction relating to the mine explosion technically amounted to a misdemeanor, only that it was a serious crime and he was sent to prison. (ECF No. 900, Ex.

1). Blankenship has no actual proof that Auber published a statement "with knowledge that it was false or with reckless disregard of whether it was false or not." *Sullivan*, 376 U.S. at 279–80. Blankenship "suggests" that Auber watched the Fox News debate on May 1, 2018 where Blankenship states, "I faced thirty years in prison for a fake charge, and I beat all three of the felonies. … It's incredible, they sent me to prison for a misdemeanor. I was the only prisoner there that was a misdemeanant." (ECF No. 948, Ex. 2 [Deposition of Don Blankenship, dated April 29, 2021 ("Blankenship Depo."), pp. 364:16-365.].). First, Blankenship himself admits that he went to a felony prison, which in and of itself, shows the lack of material falsity of referring to him as a "felon." Further, Blankenship's "suggestion" of what Auber watched or saw is not enough to establish actual malice. Importantly, Blankenship's failure to depose Auber during discovery does not permit him to speculate and stack unwarranted inferences upon each other in hopes of surviving summary judgment.

Blankenship relies on *Zerangue*, but the case actually supports summary judgment in Mediaite Defendants favor. (ECF No. 948 (citing *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066 (5th Cir. 1987)). In *Zerangue*, the court held that plaintiff *failed* to establish actual malice as to an article that incorrectly reported about crimes for which plaintiff had not been convicted or even indicted, even though the reporter failed to investigate and may have been negligent in relying on his own memory. *Id.* at 1071. The court allowed plaintiff's claim to proceed *only* as to a second article that contained the same false statement and was published within 30 days after the defendant published and retracted the first article. Contemporaneous evidence showed the editors and author of the second story had reason to doubt it when it was written: the editors

"knew of the . . . retraction" and the author likely attended a meeting about the retraction and reviewed the newspaper's files containing the retracted shortly before writing the second article. *Id.* at 1072. None of those facts are present here, and Blankenship cannot produce any competent evidence of actual malice because he never bothered to depose Auber, her editors, or anyone else at Mediaite. This case falls squarely under the principle that "[t]he Constitution provides the press with a shield whereby it may be wrong when commenting on acts of a public figure, as long as it is not intentionally or recklessly so." *Carr v. Forbes, Inc.*, 259 F.3d 273, 283 (4th Cir. 2001).

Aside from Blankenship's bare assertion regarding a failure to investigate, which alone is insufficient, Blankenship has no evidence that could support a finding of actual malice with respect to Mediaite Defendants. *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013) (holding that mere failure to consult records is not proof of actual malice because "failure to investigate is precisely what the Supreme Court has said is insufficient to establish reckless disregard for the truth").

## B.    Mediaite Defendants Lack of Formal Written Policies Do Not Create a Dispute of Fact

Defendants' internal policies or any lack thereof also do nothing to advance Blankenship's burden of proving actual malice by clear and convincing evidence. A "public figure plaintiff must prove *more* than an *extreme* departure from professional standards" to survive summary judgment. *Harte-Hanks*, 491 U.S. at 665 (emphasis added). Blankenship has no evidence of any departure from professional standards, let alone *more than an extreme* departure. Blankenship has presented no evidence—let alone clear and convincing evidence—that Mediaite Defendants "in fact entertained serious doubts as to the truth of [their] publication[s]" in the May 3 article.

Reckless disregard of the truth, and thus a showing of actual malice, "exists where there is sufficient evidence to permit the conclusion that the defendant in fact **entertained serious doubts as to the truth of his publication** and **yet published with such doubts**. Alternatively, there must be sufficient evidence to permit the conclusion that the allegedly defamatory statement was made with a **high degree of awareness of its probable falsity**. Recklessness may be found where there are obvious reasons to doubt the veracity or accuracy of information." *Blankenship v. Napolitano*, 451 F. Supp. 3d 596, 618-19 (S.D. W. Va. 2020)(internal citations omitted)(emphasis added). *See Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 692 (1989) (Because actual malice is a subjective standard, "failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard.").

Blankenship alleges no evidence whatsoever to identify accepted standards that "should" be in place or how Mediaite Defendants had the mindset to deviate from these standards. Simply, Blankenship declares that lack of policies equate to actual malice. This theory lacks any legal support to back it up, not even a legal citation. This simplistic narrative by Blankenship does not come anywhere close to meeting the high burden necessary to establish actual malice by clear and convincing evidence. Blankenship's argument is pure conjecture in order to obfuscate the issue, which quite frankly, doesn't exist. Blankenship has produced no journalistic standard that Mediaite Defendants have deviated from, no evidence of how that standard was deviated from, and no evidence as to the subjective mindset of Mediaite Defendants to allegedly deviate from that standard. Therefore, the case should be dismissed.

**C.      False Light Invasion of Privacy Fails Absent a Showing of Actual Malice**

West Virginia courts "treat false light privacy claims in essentially the same manner as they treat defamation claims." *Blankenship*, 451 F. Supp. at 620. (S.D. W. Va. 2020). Given that actual malice is also an essential element of a claim for false light invasion of privacy, Blankenship has failed to meet his burden on this claim as well. For all of the reasons identified herein, and considering the bare inferences and speculation upon which all of Blankenship's arguments are based off of, nothing in the record establishes that Mediaite Defendants acted with actual malice**.** As a result, Blankenship's claims against Mediaite Defendants– both of which require actual malice – fail as a matter of law.

**CONCLUSION**

For all the foregoing reasons, Mediaite Defendants respectfully submit that summary judgment should be granted to Mediaite Defendants on all claims.

Dated: June 28, 2021                    Respectfully submitted,

                                        MEDIAITE, LLC and TAMAR AUBER,
                                        Defendants

                                        By counsel:

                                        /s/ Andrew Eisbrouch
                                        Andrew Eisbrouch, Esq. (*pro hac vice*)
                                        NY Bar No. 5515598
                                        Mediaite, LLC
                                        1261 Broadway, Suite 606
                                        New York, New York 10001
                                        Tel: (201) 452-3990

                                        *Attorney for Defendants*
                                        *Mediaite, LLC & Tamar Auber*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT CHARLESTON**

_____

DON BLANKENSHIP,                              CIVIL ACTION NO. 2:19-cv-00236

                          Plaintiff,

            v.

FOX NEWS NETWORK, LLC et al.,
                          Defendants.

_____

## CERTIFICATE OF SERVICE

I hereby certify that on June 28, 2021 a true and correct copy of the foregoing was served

via CM/ECF on all counsel of record in this action registered to receive CM/ECF notification.

                          /s/ Andrew Eisbrouch
                          Andrew Eisbrouch, Esq. (*pro hac vice*)
                          NY Bar No. 5515598

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
### CHARLESTON DIVISION

|  |  |
|---|---|
| DON BLANKENSHIP,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>FOX NEWS NETWORK, LLC, et al.,<br><br>　　　　　　Defendants. | Case No.: 2:19-cv-00236 |

## DEFENDANTS FISCALNOTE AND GRIFFIN CONNOLLY'S MOTION FOR SUMMARY JUDGMENT

Defendants FiscalNote, Inc. and Griffin Connolly (collectively, the "FiscalNote Defendants") respectfully move for summary judgment on all counts under Federal Rule of Civil Procedure 56 against Plaintiff Don Blankenship for the reasons set forth in the FiscalNote Defendants' accompanying memorandum of law, which is incorporated by reference.

Respectfully submitted,

FISCAL NOTE, INC. and GRIFFIN CONNOLLY, Defendants,

By counsel:

*/s/ Allen M. Gardner*
Allen M. Gardner (DC #456723)
　　(admitted *Pro Hac Vice*)
Sarah M. Gragert (DC #977097)
　　(admitted *Pro Hac Vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004-1304
Telephone: (202) 637-2270
Facsimile: (202) 637-2201
allen.gardner@lw.com
sarah.gragert@lw.com

John J. Polak (WVSB No. 2929)
ATKINSON & POLAK, PLLC
300 Summers Street, Suite 1300
P.O. Box 549
Charleston, WV 25322-0549
Telephone: (304) 346-5100
Facsimile: (304) 346-4678
jjpolak@amplaw.com

EXHIBIT 1



# FiscalNote

## Our Company



**How far we've come.** 2014 saw us 22 strong. Now we're over 400 and growing.

**Our Mission**: To connect people and organizations to government. By doing so, we are helping to create a more transparent and connected global society.

FiscalNote is the premier information services company focused on global policy and market intelligence. By combining AI technology, expert analysis, and legislative, regulatory, and geopolitical data, FiscalNote is reinventing the way that organizations minimize risk and capitalize on opportunity.

Home to CQ, Roll Call, Oxford Analytica, and VoterVoice, FiscalNote empowers more than 5,000 clients worldwide to monitor, manage, and act on the issues that matter

4712

USCA4 Appeal: 22-1198     Doc: 64      Filed: 05/25/2022    Pg: 76 of 282

most to them.



## The FiscalNote Story

While working in government, Tim Hwang noticed that getting access to easily consumable legislative and regulatory activity -- whether at the local, state, or federal level -- was challenging. By harnessing modern technology such as machine learning and natural language processing, Tim knew he could bring clarity to these unstructured and disparate government data sources, ultimately helping people and organizations better understand and act on the issues that mattered to them.

In June 2013, Tim and childhood friends Gerald Yao and Jonathan Chen flew from Maryland to Silicon Valley, spending the summer working out of a Motel 6, with the goal of transforming Tim's idea into reality. A few months later, the three returned to the east coast with investment capital -- and validation -- from Mark Cuban, Jerry Yang, and New Enterprise Associates (NEA) to take that idea and build a company. FiscalNote was born.

Since then, we've believed that leveraging technology is the key to providing transparency into the policy, people, and geopolitics shaping today's world. That guiding principle was just as true in 2013 as it is today. Our core technology sustains products and services that power more than 5,000 clients around the world -- from small nonprofits to government agencies to large corporations (including half of the Fortune 100) -- with patented technology, expert analysis, and AI-powered data. Although our team and products have evolved significantly over time, we've never wavered from our north star to deliver novel, innovative, and compelling solutions to meet today's most pressing challenges.

USCA4 Appeal: 22-1198    Doc: 64    Filed: 05/25/2022    Pg: 77 of 282

At FiscalNote, we acknowledge that the reason we're the #1 most trusted and **secure solution** for policymaking is because of the people behind the products. **Meet the innovative leaders and experienced advisors** guiding us toward fast growth and success.

## Beyond the Products: FiscalNote Executive Institute (FNEI)

Rooted in a spirit of innovation and relevance, FiscalNote launched the **FiscalNote Executive Institute**, a program that brings together leading global companies to discuss, examine, define and promote best practices across thought leadership; and helps to advance collaboration through sharing of ideas, guidance and experiences. This community is designed to connect leaders from across industries and continents to network and collaborate with their peers, maximize their effectiveness as leaders, and tackle the world's most pressing issues as they apply to business and government.

In combining creativity, innovation, learning and inclusion best practices into FiscalNote's everyday business structure, the organization has cultivated a culture that makes FiscalNote more than a job.

## FiscalNote Awards

Since its inception, FiscalNote has leveraged technology to empower clients with the information and tools they need to navigate the policy landscape. We foster a spirit of innovation through a dedicated investment in our team, technology and our research, and we are proud of the recognition we've received as a result.







Explore a career at FiscalNote

VIEW OPEN POSITIONS

**About**

**Press**

**Careers**

**Product Support**

**Request Demo**

GLOBAL HEADQUARTERS

1201 Pennsylvania Ave NW, 6th floor Washington, D.C. 20004

(202) 793-5300

NORTH AMERICA

BATON ROUGE, USA

NEW YORK, USA

EUROPE

BRUSSELS, BELGIUM

ASIA

GURUGRAM, INDIA

SEOUL, KOREA

HONG KONG

4715

Privacy Policy   Terms of Service

All rights reserved. Copyright 2021 FiscalNote.



EXHIBIT 2

USCA4 Appeal: 22-1198 Doc: 64 Filed: 05/25/2022 Pg: 81 of 282 Case 2:19-cv-00236 Document 64-2 Filed 11/01/21 Page 1 of 8 PageID #: 13849

# Fiscal**Note**



CQ News brings you trusted, comprehensive news and insights on US federal policy.

# CQ News

## POLICY NEWS FROM AWARD-WINNING JOURNALISTS

Our team of experts have decades of experience covering Congress and the White House. You can trust them to bring you the insightful, nonpartisan analysis you need to make better decisions. *Request a demo* today.



4718



## LIGHTNING-FAST ALERTS

You need to know the moment something changes, and CQ's advanced alerting system ensures you get an automatic alert—both in your inbox and via our mobile app. See for yourself and request a demo today.



## DAILY NEWSLETTERS

4719

USCA4 Appeal: 22-1198   Doc: 64      Filed: 05/25/2022   Pg: 83 of 282   Case 2:19-cv-00236   Document 268-8 Filed 07/24/21 Page 4 of 8 PageID #: 13851

4720

USCA4 Appeal: 22-1198    Doc: 64        Filed: 05/25/2022    Pg: 84 of 282

Case 2:19-cv-00236   Document 58-8   Filed 11/01/21   Page 8   PageID #: 13852

Ready to see for yourself?

REQUEST A DEMO

4721

USCA4 Appeal: 22-1198     Doc: 64      Filed: 05/25/2022    Pg: 85 of 282
Case 2:19-cv-00236   Document 64-6   Filed 07/24/20   Page 8 PageID #: 13853

# Why you need CQ News

It's easy to find political news. It's hard to find in-depth, non-partisan analysis of federal policy.

## Morning and afternoon headlines 

Twice each day, you get the headlines of every story published by our veteran journalists. This guarantees that you are informed of everything happening on the Hill.

REQUEST A DEMO OF CQ NEWS

## Detailed summaries of major bills 

WHO'S USING IT

Media outlets, Fortune 500 companies, and every branch of the government rely on CQ News for comprehensive, non-partisan analysis





4722

USCA4 Appeal: 22-1198    Doc: 64    Filed: 05/25/2022    Pg: 86 of 282
Case 2:19-cv-00236    Document 64-16 Filed 01/07/22 Page 7 of 8 PageID #: 13854









## Ready to see for yourself?

Let us show you what the largest press corps on the Hill can do for you.

REQUEST A DEMO

**About**

**Press**

**Careers**

**Product Support**

**Request Demo**

GLOBAL HEADQUARTERS
4723

USCA4 Appeal: 22-1198      Doc: 64         Filed: 05/25/2022      Pg: 87 of 282

1201 Pennsylvania Ave NW, 6th floor Washington, D.C. 20004

(202) 793-5300

NORTH AMERICA

BATON ROUGE, USA

NEW YORK, USA

EUROPE

BRUSSELS, BELGIUM

ASIA

GURUGRAM, INDIA

SEOUL, KOREA

HONG KONG

Privacy Policy   Terms of Service

All rights reserved. Copyright 2021 FiscalNote.



4724

# EXHIBIT 3

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
### CHARLESTON DIVISION

DON BLANKENSHIP,

                Plaintiff,

v.

FOX NEWS NETWORK, LLC, *et al.*,

                Defendants.

Case No: 2:19-cv-00236

## DECLARATION OF ERIC GARCIA

I, Eric Garcia, declare and state as follows:

1.      I currently work as a freelance writer in Washington D.C.  I am over the age of 18 years and have firsthand knowledge of the contents of this declaration.

2.      In May 2018, I worked as a staff writer on the Breaking News team for the publication Roll Call and wrote several articles per day for our publication.  To write these articles, I typically relied on other news publications to inform my own articles.  Breaking News stories did not typically involve original investigative work.

3.      On May 7, 2018, I authored an article titled "Blankenship Blames Establishment For 'Misinforming' Trump."

4.      I derived the information, including the phrase "convicted felon," contained in the article from prior news publications concerning Mr. Blankenship's West Virginia senate bid and his criminal history that I located online.  I do not recall which particular news publications I used as sources to write this article.

5.      I did not know at the time I wrote the article that Mr. Blankenship's conviction amounted to a misdemeanor rather than a felony, nor did I have any doubts at that time as to

whether the reference to a felon was accurate.  If had any reason to doubt the accuracy of the term, I would not have used it.  I take pride in my publications and seek to relay only truthful and accurate information to the readers.

6.  My colleague, Griffin Connolly, was also a staff writer on the Breaking News team at the time that I wrote that article.  Mr. Connolly had no involvement in the writing or publication of this article, nor any involvement in the statement that referred to Mr. Blankenship as a "convicted felon."  I do not know why the publication online indicates that he contributed to the article.

7.  I am not aware of any FiscalNote or Roll Call policy relating to reporting on criminal activity or charges.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this __3__ day of __June__ at _____.

Eric Garcia

# EXHIBIT 4

Politics

# Blankenship Blames Establishment For 'Misinforming' Trump

'Remember Alabama,' president tweets in urging West Virginia voters about Senate candidate he says can't win



Don Blankenship, who is running for the Republican nomination for Senate in West Virginia, conducts a town hall meeting at Macado's restaurant in Bluefield on Thursday. (Tom Williams/CQ Roll Call)



Eric Garcia
@EricMGarcia

Posted May 7, 2018 7:49 AM

    

West Virginia GOP Senate candidate Don Blankenship suggested that establishment Republicans are "misinforming" President Donald Trump and telling him to oppose his campaign "because they do not want me to be in the U.S. Senate and promote the president's agenda," the convicted felon and businessman wrote Monday morning on Facebook.

In a tweet earlier Monday, Trump urged Republicans in West Virginia not to make Blankenship the party's nominee for Senate at the primary Tuesday.

Trump tweeted that Republicans have a chance to pick up a crucial seat and urged voters to pick either state Attorney General Patrick Morrisey or Rep. Evan Jenkins to run against Democratic Sen. Joe Manchin in November.

"Problem is, Don Blankenship, currently running for Senate, can't win the General Election in your State," the President said. "No way!"



**Donald J. Trump** ✔
@realDonaldTrump

To the great people of West Virginia we have, together, a really great chance to keep making a big difference. Problem is, Don Blankenship, currently running for Senate, can't win the General Election in your State...No way! Remember Alabama. Vote Rep. Jenkins or A.G. Morrisey!

♡ 54.9K   6:53 AM - May 7, 2018            ⓘ

◯ 20.6K people are talking about this            〉

*5 Things to Watch in Tuesday's Congressional Primaries*



Trump also said "Remember Alabama," referring to Democrat Doug Jones' stunning win in the Senate race in that state in December over Republican Roy Moore, who was dogged by allegations of improper relations with underage girls.

Trump defended Moore against those allegations during the special election campaign but said the day after the election that he had endorsed interim Sen. Luther Strange in the primary because he knew Moore couldn't win.

In his response to the president's tweet, Blankenship repeated the line that he is "Trumpier than Trump."

"The President is a very busy man and he doesn't know me, and he doesn't know how flawed my two main opponents are in this primary," Blankenship wrote.

**Want insight more often?    Get Roll Call in your inbox**

email address

"West Virginia voters should remember that my enemies are Barack Obama and Hillary Clinton and my opponents would not even be running as Republicans had I not resurrected the Republican Party in West Virginia," he wrote.

Jenkins left the Democratic party and joined the GOP in 2013.

USCA4 Appeal: 22-1198     Doc: 64     Filed: 05/25/2022     Pg: 95 of 282     PageID #: 13863
Case 2:19-cv-00236   Document 64-5   filed 06/03/21   Page 95 of 5

Last week, Trump's eldest son Don Jr. tweeted that West Virginia should oppose Blankenship.

"No more fumbles like Alabama," he said.



**Donald Trump Jr.** ✔
@DonaldJTrumpJr

I hate to lose. So I'm gonna go out on a limb here and ask the people of West Virginia to make a wise decision and reject Blankenship!

No more fumbles like Alabama. We need to win in November. #wv #wvpol

♡ 25.5K  3:44 PM - May 3, 2018                              ⓘ

◯ 9,776 people are talking about this                       ›

Blankenship was criticized after he released an ad calling Senate Majority Leader Mitch McConnell "Cocaine Mitch" and McConnell's in-laws his "China family."

McConnell is married to Trump's Transportation Secretary Elaine Chao, whose parents immigrated to the U.S. in 1961 and are both U.S. citizens.

Blankenship insisted the ad was not racist, saying "races are negro, white caucasian, Hispanic, Asian."

Blankenship was convicted of conspiracy to violate federal mine safety laws after 29 miners were killed in the 2010 Upper Big Branch Mine disaster.

Inside Elections with Nathan L. Gonzales rates West Virginia's Senate race Toss-up.

— *Griffin Connolly contributed to this report.*

EXHIBIT 5

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
### CHARLESTON DIVISION

DON BLANKENSHIP,

                 Plaintiff,

v.

FOX NEWS NETWORK, LLC, *et al.*,

                 Defendants.

Case No: 2:19-cv-00236

## DECLARATION OF GRIFFIN CONNOLLY

I, Griffin Connolly, declare and state as follows:

1.      I currently reside in Washington D.C. I am over the age of 18 years and have firsthand knowledge of the contents of this declaration.

2.      In May 2018, I worked as a staff writer on the Breaking News team for the publication Roll Call and wrote several articles per day for our publication. To write these articles, I typically relied on other news publications to inform my own articles. Breaking News stories did not typically involve original investigative work.

3.      I had no involvement with the May 7, 2018 article titled "Blankenship Blames Establishment For 'Misinforming' Trump," nor any involvement in the statement that referred to Mr. Blankenship as a "convicted felon."

4.      I do not know why the publication online indicates that I contributed to the article. I did not.

5.      I am not aware of any FiscalNote or Roll Call policy relating to reporting on criminal activity or charges.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 4th day of June 2021 at Downers Grove, Illinois.

_Griffin Connolly_
Griffin Connolly

EXHIBIT 6

IN THE CIRCUIT COURT OF MINGO COUNTY, WEST VIRGINIA

DON BLANKENSHIP,

     Plaintiff,

v.                                                                                    Civil Action No. 19-C-51

DONALD TRUMP, JR.; and
DOES 1-20 inclusive,

     Defendants.

SERVE:     Donald Trump Jr
              Trump Tower
              725 5th AVE
              New York NY 10022

---

### SUMMONS

---

    Within **30 days** after service of this Summons on you, exclusive of the day of service, you are required to file and serve an Answer, including any defense or counterclaim, to the Complaint. You must file your Answer with the Mingo County Circuit Court and serve a copy thereof on the following counsel of record:

    **JEFFREY S SIMPKINS ESQ**
    *SIMPKINS LAW*
    **102 E 2ND AVE**
    **WILLIAMSON WV 25661**

    If you fail to respond, judgment by default will be entered against you for the relief demanded in the Complaint and you will be thereafter barred from asserting in another action any defense or counterclaim that must be asserted in this action.

    Date: 12 June 2019

                             _____
                             Circuit Clerk

           By:     _____
                        Deputy Clerk

**EXHIBIT B**

# IN THE CIRCUIT COURT OF MINGO COUNTY, WEST VIRGINIA

DON BLANKENSHIP,

             Plaintiffs,

vs.

DONALD TRUMP, JR.;
and DOES 1-50 inclusive,

             Defendants.

Civil Action No.: **19 - C - 51**

## COMPLAINT

## INTRODUCTION

### A Case of "Weaponized Defamation"

1.     The mainstream media and much of the political establishment today routinely, and with actual malice, sets out to destroy public figures with outright lies. The competition for viewers is intense and nothing brings in eyeballs like scandal and degradation. So too is the establishment media's bloodthirsty desire to destroy those with whom they disagree politically. We live in an age of weaponized defamation where lies can be repeated in more ways at more times in more places with more speed than anyone could possibly have imagined even five years ago, much less in 1964 when the seminal case in the area of defamation of public figures was decided. This lawsuit will help determine whether the media and the political establishment, in this increasingly malevolent and digitized environment, can

continue to tell outright lies about what they consider public figures running for office, as part of their effort to sway elections and tarnish non-establishment candidates, while intentionally putting blinders on, and completely hoodwinking, the American public in the process.

2.      In the 2018 election cycle, plaintiff Don Blankenship (sometimes referred to herein as "Plaintiff") was one of several Republican candidates vying to be the next United States Senator from West Virginia.  Mr. Blankenship personified and epitomized what it is to be a non-establishment candidate for office.  As such, the DC establishment "swamp" and the establishment media united against Mr. Blankenship.  The entire establishment media spectrum — from conservative to liberal, from fringe social media to mainstream media — commenced a search and destroy mission to take out Mr. Blankenship.

3.      Prominent mainstream beltway "swamp" Republicans, led by Senate Majority Leader Mitch McConnell, told all who would listen that Mr. Blankenship had to be stopped at all costs.

4.      McConnell set in motion the wheels of a clandestine campaign -- including a "menu of items" — to destroy Mr. Blankenship and blatantly interfere in a federal election, using among other things, the National Republican Senatorial Committee ("NRSC"), Donald Trump, Jr. (sometimes referred to herein as "Defendant"), and his contacts in the establishment media, including Fox News in particular, to do McConnell's (and in turn, the NRSC's) bidding.

5.      Not to be outdone, the establishment left-wing media, including its leading mouthpieces CNN, MSNBC and The Washington Post, joined in the defamation chorus. They too set out to destroy Mr. Blankenship, and to subvert an election, but for their own particular reasons -- doing so would protect their incumbent Senator of choice, Democrat Joe Manchin (who had been beaten in the

past in both legal and political battles with Mr. Blankenship) -- and also fit perfectly within the leftwing media's tried and true agenda of using certain prominent conservatives as poster boys to paint a false picture of purported conservative evil and depravity across the board.

6.    This toxic environment provided the venue in which multiple news persons disregarded their obligation to report the truth and lied about Mr. Blankenship, reporting *ad nauseum* in the days leading up to the May 8, 2018 West Virginia Primary, that he was a "convicted felon" or had been "imprisoned for manslaughter." Mr. Blankenship is well-acquainted with the rough and tumble of politics. This is not that. Mr. Blankenship *is not and never was a felon* and has never been convicted of a felony, neither manslaughter nor any other. These false claims were not simple insults, but rather were part of a concerted plot by the establishment media and the political establishment to destroy Mr. Blankenship personally and interfere in a federal election.

## Brief Background Leading to the Weaponized Defamation of Don Blankenship

7.    Mr. Blankenship was raised in the small West Virginia town of Delorme. He began in the mines, working his way through school as a coal miner. Following graduation, he rose in the coal business from an accounting job to becoming CEO of Massey Energy in 1992. He worked in the business for thirty-eight years. Under his leadership, Massey Energy grew from a small outfit into the largest coal producer in Central Appalachia, which employed thousands of miners, and provided energy to millions of consumers. Mr. Blankenship's leadership helped destroy the coal miner's union, which resulted in the creation of thousands of new jobs and earned Mr. Blankenship the permanent enmity of union boss and Obama minion Richard Trumka.

8.    On April 5, 2010, a tragic explosion at Massey's Upper Big Branch Mine took the lives of twenty-nine miners. The explosion occurred *just a few hours after* ventilation changes required by the Obama Administration were completed, which cut the mine's airflow in half. President Obama immediately sought to divert blame from his Administration's culpability, and to continue to curry favor with union boss Trumka (who had visited Obama in the White House more than any other person). Obama purported to show sympathy for the miners' families by holding a press conference only ten days after the explosion -- long before anyone even was able to enter the mine to investigate -- in which the President told the world the explosion was the fault of Massey's management -- i.e. Don Blankenship. In fact, a scientific analysis of the explosion itself has ultimately shown that the detonation was caused by ill-advised and ill-conceived ventilation regulations imposed by the Obama Administration's Mine Safety and Health Administration (MSHA) which were completed just hours before the tragedy.

9.    The Obama Justice Department ("DOJ") followed with a politically supercharged and motivated indictment against Mr. Blankenship accusing him of three separate felonies and a misdemeanor. The Obama Administration detested Don Blankenship. Mr. Blankenship had long been well-known as the most prolific provider and defender of coal miners' jobs in West Virginia. He had also almost singlehandedly revived the conservative brand and the Republican party in West Virginia and had long been a vocal critic of Obama. He was therefore an easy mark for the coal-hating Obama Administration and a target of its unrelenting war on coal.

10.    The aggressive federal prosecution went to trial in October 2015, and Mr. Blankenship *was found innocent by a West Virginia jury on all felony counts*. He was convicted, however, only *of a misdemeanor*.

Page 4 of 26

11.    A first-time misdemeanant is never (or virtually never) sent to prison, but thanks to the overarching and outrageous pressures brought to bear against him by the government, Mr. Blankenship was sent to prison by the Obama DOJ for one year (the maximum for which any misdemeanant can be sentenced) and served time in prison.  Mr. Blankenship may have been the only prisoner in any federal prison who had been convicted of just a misdemeanor.

12.    The Department of Justice Office of Professional Responsibility has since investigated the conduct of the United States Attorneys who prosecuted Mr. Blankenship -- Booth Goodwin and Steve Ruby.  The OPR found that massive prosecutorial misconduct had occurred in the prosecution of Mr. Blankenship, stating among other things that, "because Ruby and Goodwin recklessly violated the Department's discovery policies regarding the disclosure of discoverable statements, they committed professional misconduct."

### The West Virginia Republican Primary

13.    In 2017, Mr. Blankenship announced his plans to run for the West Virginia Senate seat held by Democrat Joe Manchin. The May 8, 2018 Republican Primary pitted Mr. Blankenship against West Virginia Congressman Evan Jenkins and Attorney General Patrick Morrisey.  Thanks to Mr. Blankenship's longstanding prominence in West Virginia, the significant financial resources he brought to bear, his effective ads and success in debates, by early May 2018, his opponents' internal polls showed Mr. Blankenship had moved into contention.

14.    The potential election of Mr. Blankenship was an anathema to Mitch McConnell and the GOP Establishment.  As Mr. Blankenship rose in the polls, Leader McConnell and his colleagues determined that they would do whatever they could, including lying and smearing to stop Mr. Blankenship from winning the primary.  At or about this time, it was widely reported that McConnell convened

clandestine meetings of the NRSC to formulate a plan, including a "menu" of options, to stop Mr. Blankenship from winning the Primary. Some of these meetings took place in McConnell's office in the Capitol. One attendee, Senator John Thune, the third-ranking member of the Senate leadership, was quoted as "hop[ing] and pray[ing]" that Blankenship would not win the nomination.

### The Defamatory Attacks

15.    What followed next was Mr. Blankenship's conviction by the media not once, but dozens of times, of being a felon.

16.    The desire to stop Mr. Blankenship began to be given voice on April 25, 2018, when Judge Andrew Napolitano appeared on the Fox News Channel program "Outnumbered" and falsely claimed that Mr. Blankenship "went to jail for manslaughter, after being indicted."

17.    Just days later, on April 29, 2018, Kevin McLaughlin – now the NRSC's Executive Director and at that time an ally of Leader McConnell – appeared on CNN and falsely said about Mr. Blankenship: "Well, I mean, pick your poison with this guy, right? He doesn't live in West Virginia, he's a *convicted felon*."[1] CNN had previously reported accurately Mr. Blankenship's felony acquittals and both CNN and Mr. McLaughlin knew this slur was false.

18.    McConnell (among others), by and through his surrogates in and out of the media (including Donald Trump, Jr.), sought to interfere in a Federal election by silencing Mr. Blankenship, prevent him from winning a seat in the United States Senate and using Mr. Blankenship's public figure status to chill his free speech.

---

[1]    In this Complaint, the word *"felon"* and other defamatory utterances have been highlighted in ***bold italics***. This emphasis has been added and was not in the original text unless specifically stated.

19.    The defamatory attacks on Mr. Blankenship escalated after he walloped his opponents in a nationally televised May 1, 2018 Fox News Debate, which took place just a week before the Primary.  Polling by Mr. Blankenship's opponents estimated his performance gained him an eight-point lead in the race.

20.    Over the ensuing week, multiple news personalities, lubricated by their disdain for Mr. Blankenship, and some at the direction of McConnell and other GOP leaders, repeatedly and falsely called Mr. Blankenship a "felon" and "convicted felon".  These defamatory statements were made on Fox News and in other venues by conservative commentators.

21.    On May 3, 2018, Defendant Donald Trump, Jr. attended and gave the keynote address at a meeting of high-level NRSC leaders in Florida.  That same evening, Mr. Trump published a tweet to his 3.5 million followers calling Mr. Blankenship a "felon."

22.    Donald Trump Jr. tweeted that Mr. Blankenship was a "felon" after meeting with, and as part of a scheme with, NRSC leaders seeking to prevent Mr. Blankenship's victory in the primary.

23.    Moreover, Defendant's defamatory statement was made in conjunction with reference to the mine disaster and thus, had the additional effect, through inference, implication, *innuendo* and/or insinuation, of further defaming Mr. Blankenship by falsely attributing to him responsibility for murder.

24.    In addition, Mr. Blankenship was repeatedly defamed by the left-leaning mainstream media, including CNN and MSNBC.  Examples include MSNBC's Chris Hayes calling Mr. Blankenship a "felon" on MSNBC at least twice and Joy Reid calling him a "convicted felon" on May 5, 2018.  Others did the same.

25.    The evidence in this case will prove the Defendant acted with actual malice and reckless disregard for the truth.  As a result, Mr. Blankenship has

Page 7 of 26

suffered enormous damages. Mr. Blankenship possesses a proven record of adding billions of dollars in value to an enterprise. As Massey's CEO, Mr. Blankenship grew the company from a valuation of $150 million to $7.8 billion (while most others in the marketplace were failing). The defamation of Mr. Blankenship as a "felon" has so smeared his reputation that he has been prevented from pursuing other businesses and opportunities and generating similar returns of billions of dollars. Because of this harm and a variety other injuries Mr. Blankenship has suffered, he seeks damages in excess of the jurisdictional limit of Mingo County Circuit Court in an amount to be proven at trial.[2]

26.     In addition, Mr. Blankenship seeks substantial punitive damages in an amount to be established at trial. The purpose of punitive damages is to punish a defendant for outrageous conduct and/or to reform or deter the defendant and

---

[2]     While the evidence will support the requested relief under the prevailing standard of *New York Times v. Sullivan* (and its progeny), scrutiny of that actual malice standard is significantly increasing. *See for example*, the very recent Opinion of Justice Clarence Thomas (dated February 19, 2019), in which he concurred with the denial of *certiorari* in the case, *McKee v. Cosby, Jr.*, 2019 WL 659764. Justice Thomas describes at length, how the controlling law (which originated with *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.D. 710, 11 L.Ed.2d 686 (1984)), applies an actual malice standard to public figures *that was nowhere found in the Constitution or in common law. Id.* at *1. "The common law of libel at the time the First and Fourteenth Amendments were ratified did not require public figures to satisfy any kind of heightened liability standard as a condition of recovering damages. Typically, a defamed individual needed only to prove 'a false written publication that subjected him to hatred, contempt, or ridicule '" *Id.* at *3 *citing among others, Dun & Bradstreet*, 105 S. Ct. 2939 (1985). Justice Thomas continued, "Far from increasing a public figure's burden in a defamation action, the common law deemed libels against public figures to be, if anything, more serious and injurious than ordinary libels." *Id.* at *4 *citing* 3 Blackstone *124 ("Words also tending to scandalize a magistrate, or person in a public trust, are reputed more highly injurious than when spoken of a private man") (Other citations omitted). Justice Thomas continued, "There are sound reasons to question whether either the First or Fourteenth Amendment, as originally understood, encompasses an actual-malice standard for public fig'ures or otherwise displaces vast swaths of state defamation law." He concluded, "We should reconsider our jurisprudence in this area. *Id.* at *5, *6.

others from engaging in conduct similar to that which formed the basis of the lawsuit.

### JURISDICTION AND VENUE

27.     Mingo County Circuit Court has original and general jurisdiction pursuant to West Virginia Code § 51-2-2(b).

28.     Mingo County Circuit Court has personal jurisdiction over Defendant pursuant to West Virginia Code § 56-3-33 for reasons including, but not limited to: that the Defendant transacted business in this state; contracted to supply services or things in this state; caused tortious injury to Plaintiff by an act or omission in this state; caused tortious injury in this state by an act or omission outside this state while regularly doing and/or soliciting business in this state and/or engaging in a persistent course of conduct and/or deriving substantial revenue from goods used or consumed or services rendered in this state.

29.     In addition, Mingo County Circuit Court has personal jurisdiction over the Defendant because of the West Virginia effects of his conduct. Indeed, West Virginia was the focal point of his comments and tweet, both with respect to the underlying story itself (i.e. Mr. Blankenship's criminal proceedings in West Virginia) and with respect to a significant portion of the harm Mr. Blankenship suffered (i.e. the effect on the West Virginia election). Accordingly, Defendant purposely directed his actions toward West Virginia and should reasonably have anticipated being haled into court in West Virginia.

30.     Venue is proper in Mingo County Circuit Court pursuant to West Virginia Code § 56-1-1(a)(1).

### PARTIES

31.     Plaintiff Don Blankenship is an individual residing in West Virginia and was in 2018 a candidate for the United States Senate from West Virginia.

32.     Plaintiff is informed and believes that Defendant Donald Trump, Jr. ("Defendant") is an individual residing in the State of New York.

33.     Plaintiff does not know the true names and capacities of the Defendants sued in this Complaint as Does 1 through 50, and therefore sues these Defendants by such fictitious names. Plaintiff will amend this Complaint to allege the true names and capacities of those Doe Defendants when the same are ascertained. Plaintiff is informed and believes, and based thereon alleges, that each of the fictitiously named Defendants is responsible in some manner for the occurrences alleged in this Complaint, as further set forth herein, and that Plaintiff's damages, as alleged in this Complaint, were proximately caused by these Defendants' conduct.

## GENERAL ALLEGATIONS

### Background

34.     Plaintiff Don Blankenship was born into a poor family in Appalachia, one of four children in a single-parent home. Mr. Blankenship's first job was as a worker at his mother's small gasoline filling station, which also served as the family's home. Mr. Blankenship graduated from high school in 1968 and earned a degree in accounting from Marshall University in Huntington, West Virginia in 1972, spending his summers working in the West Virginia coal mines.

35.     Mr. Blankenship worked for ten years in the food business, until he was offered an accounting job with Massey Energy Company in 1982, then a mining concern partly owned by Royal Dutch Shell. Mr. Blankenship climbed the ranks, and in 1992, became president and CEO of Massey Energy, its first chief executive outside the Massey family. With Mr. Blankenship at the helm, Massey Energy grew from a family-run outfit into the largest coal producer in West Virginia with billions of dollars in annual revenue.

## The Upper Big Branch Explosion

36.    On April 5, 2010, tragedy struck Raleigh County at the Upper Big Branch Mine. Flammable gas deep in the mine ignited, causing an explosion which took the lives of twenty-nine miners.

37.    President Obama and others in his administration immediately claimed that the managers of the Upper Big Branch Mine – *i.e.* Mr. Blankenship – were responsible for the explosion. Just ten days after the accident, President Obama attributed the accident to "a failure first and foremost of management." However, owing to large concentrations of toxic gas, no one accessed the mine to determine the explosion's cause until *long after* the President had pointed the finger of blame.

38.    The Federal Government's investigation into the explosion was conducted by the Mining Safety and Health Administration (MSHA). However, any conclusions reached by MSHA were inherently suspect because it was necessarily investigating itself. In the months leading up to the accident, MSHA had required Massey to implement a new ventilation system at the Upper Branch Mine. Airflow into a mine is measured in "cubic feet per minute" (CFM). At about the time of the accident, the law required that airflow be measured in the mine at 30,000 CFM. Prior to MSHA requiring ventilation changes, the Upper Branch Mine was measured at four times the legal requirement: 120,000 CFM. After the MSHA ventilation changes were implemented, the CFM dropped to 50,000 CFM. Thus, the changes required by MSHA cut the mine's airflow by sixty-percent.

39.    Eight months after the disaster, on December 6, 2010, MSHA concluded that a coal bed methane build-up ignited and created an explosion. According to MSHA, the ventilation deficiencies in the mine – *which it had*

Page 11 of 26

*caused* – were a critical factor in causing the explosion. Nonetheless, MSHA placed the blame on Massey and Mr. Blankenship.

40.    In April 2014, Mr. Blankenship released a documentary which refuted the MSHA's findings and challenged the inherent conflict of having a regulatory agency investigate an explosion where it was likely at fault. Among other things, the documentary identified powerful scientific evidence, which refuted MSHA's conclusion that the explosion was caused by an influx of methane. An analysis of the air vented from the mine at the time of the explosion revealed that the explosion almost certainly resulted from a very rare inundation of natural gas through a crack in the mine's floor, which gas would have been swept out of the mine by a stronger airflow, but for MSHA's required pre-explosion ventilation changes.

41.    The Obama Administration was irate over the documentary and almost immediately began a renewed investigation of Mr. Blankenship, following Senator Manchin's demand that Mr. Blankenship be indicted. Seven months after the documentary was released, on or about November 13, 2014, federal prosecutors from the Obama Administration charged Mr. Blankenship with three felonies, including conspiracy to defraud the Federal mine regulators. He was also charged with a misdemeanor, conspiring to violate mine safety laws.

42.    The Federal Government brought the full weight of its infinite resources to bear on Mr. Blankenship. The matter went to trial in October 2015 and lasted about two months.

43.    Following lengthy deliberations, the West Virginia jury found Mr. Blankenship innocent on *all* felony charges on December 3, 2015. The jury convicted him of the misdemeanor offense.

44.    On April 6, 2016, the Judge sentenced Mr. Blankenship to one year in prison. The Judge refused to stay Mr. Blankenship's sentence pending his appeal, and he served one year at Taft Prison in Kern County, California.

45.    Mr. Blankenship was released from custody in the Spring of 2017.

### Mr. Blankenship Runs For Senate

46.    In January 2018, Mr. Blankenship formally announced his plans to run as a Republican for the U.S. Senate seat held by Senator Joe Manchin, a Democrat. The Republican primary was scheduled for May 8, 2018. In light of the then-recent events, Mr. Blankenship's candidacy was viewed as a long-shot.

47.    The fight for the Republican nomination was joined in earnest in January 2018. The race ultimately pitted Mr. Blankenship against West Virginia Congressman Evan Jenkins and Attorney General Patrick Morrisey.

48.    Mr. Blankenship outperformed expectations in the primary campaign. He campaigned well, expended significant resources in support of his campaign, and produced effective campaign ads.

49.    About a month before the May 8, 2018 primary, based on internal polling, it became clear to Senate Majority Leader McConnell, the NRSC, and others in the GOP Establishment, as well as many in the mainstream media, that Mr. Blankenship had drawn even in the race with the other two contenders. Plaintiff is informed and believes that in the weeks before the May 8th Primary, several meetings occurred, attended by Leader McConnell, members of the NRSC, and others, in which a "menu" describing possible ways to defeat Mr. Blankenship was discussed. Some of these meetings may have occurred in Federal Government offices in violation of Federal Campaign finance laws. At these meetings, the attendees determined and agreed that Mr. Blankenship's candidacy must be stopped at all costs, including by smearing Mr. Blankenship in the media with

Page 13 of 26

COMPLAINT

false stories. At the end of April 2018, Leader McConnell expressed his disdain for Mr. Blankenship this way: "I hope we actually nominate someone who can actually win the election."

## A Scheme Is Implemented to Defeat Mr. Blankenship

50.     On or about March 25, 2018, persons unknown created and carried out a "push poll" wherein phone operators would call potential voters in West Virginia purporting to conduct political polling and asking the voters questions predicated on the idea that Mr. Blankenship was a "felon." Rather than simply to collect information to assist with the defamation campaign against Mr. Blankenship, the "push poll" also was intended to defame Mr. Blankenship and derail his campaign by planting the false idea in the mind of the voters "polled" that Mr. Blankenship was a felon and/or had been convicted of a felony.

51.     On March 30, 2018, the Democratic Senatorial Campaign Committee published an article which stated: "Republicans are increasingly worried that former coal CEO and ex-felon Don Blankenship could come out on top in the primary, easing Senator Manchin's path to reelection in the fall".

52.     On April 10, 2018, the political action committee ostensibly supporting Mr. Morrisey's campaign - 35th PAC   responded to a tweet by Mr. Blankenship, with the following defamatory tweet: "You are also a convicted *felon* hurting West Virginia families." Mr. Blankenship communicated directly with the major funders of this PAC and advised that this tweet was false. No correction was ever issued. At the time this tweet was issued, the authors (and likely the PAC's top donors as well) knew that it was false, but nonetheless proceeded to publish because of their malice toward Mr. Blankenship.

53.     On April 25, 2018, Judge Andrew Napolitano intensified the attacks on Mr. Blankenship and his candidacy by deploying falsehoods on Fox News, an

extremely influential source of information for West Virginia voters. Judge

Napolitano appeared on Fox News' daytime program *Outnumbered*, alongside host

Marie Harf, among others. During a segment concerning the West Virginia

Primary, Judge Napolitano took part in the following exchange:

> **Harf:** "Don Blankenship has long been a very polarizing figure
> in West Virginia. He went to jail, actually, after a really tragic
> coal-mining incident—"
>
> **Napolitano:** "*He went to jail for manslaughter*, after being
> indicted."
>
> **Harf:** "Yes, exactly."

54.    On April 29, 2018, Kevin McLaughlin, now the Executive Director of

the NRSC, appeared on the program *CNN Newsroom* on CNN alongside host Dana

Bash and guest Alex Isenstadt, as part of a segment about Mr. Blankenship's

candidacy. Mr. McLaughlin was introduced as "working with the National

Republican Party in West Virginia, the last time Republicans tried to beat [current

West Virginia Senator] Joe Manchin" and was titled as a "GOP Political

Strategist." Several clips of Mr. Blankenship were aired during the segment.

During the segment, McLaughlin stated the following, referring to Mr.

Blankenship:

> **McLaughlin:** "Well, I mean, pick your poison with this guy,
> right? He doesn't live in West Virginia, he's a *convicted felon*,
> you know, he says -"
>
> **Bash:** "He's got a house in Nevada."
>
> **McLaughlin:** "Exactly."

## Mr. Blankenship Crushes His Opponents In The May 1st Nationally-

## Televised Fox Debate Causing The Smears To Escalate

55.    On May 1, 2018, one week before the primary election, Mr.

Blankenship participated in a debate with the other two Primary candidates which

was televised nationally on the Fox News Channel. The national broadcast, hosted

by Fox News stars Bret Baier and Martha MacCallum, resulted from the intense national interest in the West Virginia primary in political circles, because of concerns about Mr. Blankenship, and a by-then-widespread belief that the Republican primary winner could defeat Democrat Joe Manchin in the general election because of the state's massive support for President Trump in 2016. Mr. Blankenship addressed his conviction and imprisonment right out of the gate, stating in no uncertain terms: "I faced thirty years in prison for a fake charge, and I beat all three of the felonies. ... It's incredible, they sent me to prison for a misdemeanor. I was the only prisoner there that was a misdemeanant." Most objective observers concluded that he won the debate handily and, by some estimates, gained eight points against his opponents.

56.     In the week leading up to the May 8th Primary, there were multiple instances of defamation.

57.     On or about May 3, 2018, members of the NRSC met in Florida to discuss the upcoming Senate primary elections. Defendant Donald Trump Jr., the President's son, was in attendance. The President's son had (and has) considerable influence with the West Virginia voters likely to cast ballots in the May 8th Primary. That afternoon, Mr. Trump tweeted the following:

 **Donald Trump Jr.** ✔ @Donal... · 5/3/18 ⌄
I hate to lose. So I'm gonna go out on a limb here and ask the people of West Virginia to make a wise decision and reject Blankenship!

No more fumbles like Alabama. We need to win in November. #wv #wvpol

♡ 2,690     ↻ 7,496     ♡ 26.4K     ↑

Page 16 of 26

58.    Undeterred, Mr. Blankenship issued a press release that afternoon which read:

> The establishment is doing everything they can to keep Joe Manchin in office. I am the only candidate in this race that has beaten Manchin on several political issues. I beat him on the food tax and the $5.5 billion bond. The establishment needs to stand down in this race, and I will beat Manchin in the fall.

> In this primary, everyone said I could not win, but it is now apparent to the establishment that I will win.

> West Virginians are dying by the hundreds every year from opiate drugs and they will not vote for a drug lobbyist who is also associated with abortionists. They will also not vote for Little Joe (Jenkins) who has been in public office for two decades yet oversees the Congressional district that leads the nation in drug overdose deaths and which is last in economic opportunity.

> I am not just ready to help President Trump drain the swamp — I am the only candidate that is capable of doing so. If I am not the Republican nominee against Joe Manchin in the fall, Manchin will win.

> No other Republican can beat Manchin without my full support and neither Morrisey nor Jenkins is deserving of my support.

> West Virginians should be able to decide for themselves who we send to the US Senate.

59.     Later that evening, Mr. Trump followed up with a tweet that the sitting senator, Joe Manchin, had "never run against a felon[,]" referring to Mr. Blankenship.  The full tweet is as follows:



Donald Trump Jr. ✓ @DonaldJTrumpJr · 3 May 2018

Ha, now I'm establishment? No, I'm realistic & I know the first thing Manchin will do is run ads featuring the families of those 29 miners killed due to actions that sent you to prison. Can't win the general... you should know that & if others in the GOP won't say it, I will.

Dan Merica ✓ @merica

Trump's son urges West Virginia Republicans to reject Blankenship, who responds by labeling @DonaldJTrumpJr part of the "establishment" cnn.com /2018/05/03/pol...

♡ 956      ♡ 3.1K      ♡ 9.8K

MaryMary @Emberr · 3 May 2018
Don't think Manchin will do that. His ads are usually abt him.

♡ 2      ♡      ♡ 8

Donald Trump Jr. ✓
@DonaldJTrumpJr                                    Follow

Replying to @Emberr

## He's probably never run against a felon.

4:25 PM - 3 May 2018

11 Retweets  91 Likes

♡ 46      ♡ 11      ♡ 91

///
///

60.   Early the next morning, Mr. Blankenship replied to the tweet to correct the record, as follows:



Replying to @ . . . . . . . . . . .

I am sorry that you were misinformed and misled by McConnell's cronies while you were at the RNC meeting yesterday in Miami.

I have never been convicted of a felony and never been convicted of a misdemeanor that I committed.

Just like your father...(1/2)

4:44 AM · 5/9/18 · . . . . . . .



Replying to @ . . . . . . . . . . .

.., I am a victim of fake news and a corrupt Obama DOJ.

When I get to DC, your dad will have no better supporter in his efforts to drain the swamp. Looking forward to working together to Make America Great Again. You will like the real Don Blankenship, just like WV voters.

(2/2)

61.   Despite this, Plaintiff is informed and believes, and based thereon alleges that Defendant never issued a correction or retraction, nor removed his defamatory tweet from public view.

62.   Plaintiff is informed and believes, and based thereon alleges that Defendant published this false tweet at the request of the NRSC and others as part of their efforts to smear Mr. Blankenship and defeat his candidacy.

63.   Over the ensuing days leading up to the Primary, numerous media companies defamed Mr. Blankenship by calling him a "felon". Among them were conservative outlets like the Washington Times and Fox News, and Fox Business including Neil Cavuto and Stephanie Hamill, and John Layfield.[3]

---

[3]   On the eve of the Primary, the GOP establishment gave further voice to the desire to stop Mr. Blankenship from becoming their nominee. A BuzzFeed article

26366J                          COMPLAINT

4756

## The Other Media Piles On

64.     In April 2018, Chris Hays twice referred to Mr. Blankenship as a
felon. In May, S.E. Cupp twice called Mr. Blankenship a "felon" on the air on her
program as did Joy Reid on MSNBC.

65.     In May 2019, multiple news outlets and commentators published
defamatory statements about Mr. Blankenship.

66.     Mr. Blankenship lost his bid to be the GOP nominee on May 8, 2018.
In addition to the injuries to Mr. Blankenship's reputation and other harm visited
upon him by the defamatory statements alleged above, these unlawful statements
were also a material cause of his loss in the Primary.

## The Smears Continue Even After The Election

67.     Multiple individuals and organizations continued to defame Mr.
Blankenship by calling him a felon for months after the election.

## COUNT I

## DEFAMATION/CONSPIRACY TO DEFAME

68.     Plaintiff reincorporates and re-alleges paragraphs 1 through 67 above
as though set forth fully herein.

69.     Defendant made statements of fact as set forth above, which were
materially false, namely that Mr. Blankenship was a felon. To the extent

---

on May 7, 2019 includes the following: "Republicans fear Blankenship would
jeopardize their ability to compete for a seat that should be one of their best Senate
pickup opportunities this year. Internal polling from one of the campaigns opposing
him, confirmed to BuzzFeed News, has Blankenship narrowly edging his
competitors in the final weekend." And "If Blankenship does pull off a win on
Tuesday, Republicans said, it would have broader implications outside of West
Virginia." And "It would be a "blow for the party," said former Rep. Tom Davis, who
chaired the House Republican campaign arm, taking a great pickup opportunity
and making it "a much longer shot." *See "Republicans Are Worried A Race-Baiting
Coal Baron Is About To Win A Senate Primary"*.
https://www.buzzfeednews.com/article/alexislevinson/don-blankenship-west-
virginia-trump-senate-worry

Defendant's above-described statements were statements of opinion (and they were not), each such purported opinion implied the existence of undisclosed defamatory facts as the basis for the opinion, in that such opinion(s) would appear to a reasonable person to be based on the untrue and defamatory facts that Mr. Blankenship was a felon and/or had been convicted of a felony.

70.    Defendant caused to be published the above-described defamatory statements about Mr. Blankenship.

71.    Defendant's statements were defamatory in that they reflected shame, contumely, and disgrace upon Mr. Blankenship by stating that he was a felon.

72.    Defendant's statements were defamatory *per se* in that they were and are incapable of an innocent meaning and charged Mr. Blankenship with the commission of crimes of which he was acquitted, and were imputations as affecting his business, trade, profession, and/or office.

73.    Defendant's statements with respect to the Mr. Blankenship were materially and entirely false in that Mr. Blankenship is not a felon and has never been convicted of a felony, and in fact was acquitted of all felony charges with which he had ever been charged.

74.    Moreover, Defendant's defamatory statement was made in conjunction with reference to the mine disaster, and thus had the additional effect, through inference, implication, *innuendo*, and/or insinuation, of further defaming Mr. Blankenship by falsely attributing to him responsibility for murder.

75.    Defendant's made the defamatory statements with actual malice, that is, actual knowledge of the falsity of his statements or, at a minimum, with reckless and willful disregard of the truth or falsity of the statements. Among other reasons and without limitation, Defendant's wrongful conduct was motivated by the matters discussed herein above.

Page 21 of 26

76.     Anyone who consulted the freely-available public records of Mr. Blankenship's trial and conviction (including previous accurate reports of Mr. Blankenship's acquittals), would know that Mr. Blankenship was acquitted of all felony charges, that Mr. Blankenship was convicted only of a misdemeanor, and that Mr. Blankenship has never been convicted of a felony, whether for manslaughter or any other reason.

77.     Defendant intended to cause injury to Mr. Blankenship by publishing the false defamatory statements.

78.     Plaintiff is further informed and believes, and based thereon alleges, that Defendant shared a common plan with the NRSC and other persons currently unknown to Plaintiff (sued herein as Does 1-50), and each of them, for the commission of the tort of defamation.

79.     In particular, they shared the common plan of ensuring that Plaintiff did not win the West Virginia Primary Election. To that end, they agreed that Defendant would disseminate, and cause and/or encourage others to disseminate the false claim that Plaintiff was a "felon" or "convicted felon." They knew that this claim was untrue, as Plaintiff had been convicted only of a misdemeanor and had been acquitted of all felony charges.

80.     Mr. Blankenship was damaged by Defendant's defamatory statements in an amount to be proven at trial, but which exceeds the jurisdictional minimum of this Court.

///

///

///

///

///

Page 22 of 26

## COUNT II

## FALSE LIGHT INVASION OF PRIVACY/CONSPIRACY – ALL DEFENDANTS

81.    Plaintiff reincorporates and re-alleges paragraphs 1 through 80 above as though set forth fully herein.

82.    Defendant published matter which placed Mr. Blankenship in a false light before the public, as set forth above, namely that Mr Blankenship was a felon, and/or that Mr. Blankenship had been convicted of a felony.

83.    Defendant's publication, and the message conveyed thereby to the public that Mr. Blankenship was a felon, and/or that Mr. Blankenship had been convicted of a felony, were untrue and of a nature highly offensive to a reasonable person.

84.    Defendant's publications was widely disseminated throughout West Virginia and in many cases, throughout the country.

85.    Moreover, the publication was made in conjunction with reference to the mine disaster and thus, had the additional effect, through inference, implication, innuendo and/or insinuation, of further placing Mr. Blankenship in a false light before the public by falsely attributing to him responsibility for murder.

86.    Defendant made the publications with actual malice, that is, actual knowledge of the falsity of the publications, or at a minimum, with reckless and willful disregard of the truth or falsity of the publications. Among other reasons and without limitation, Defendant's wrongful conduct was motivated by the matters discussed herein above.

87.    Anyone who consulted the freely-available public records of Mr. Blankenship's trial and conviction (including previous accurate reports of Mr. Blankenship's acquittals), would know that Mr. Blankenship was acquitted of all

felony charges, that Mr. Blankenship was convicted only of a misdemeanor, and that Mr. Blankenship has never been convicted of a felony.

88. Plaintiff is further informed and believes, and based thereon alleges, that Defendant, shared in a common plan for the commission of the tort of false light invasion of privacy with others, including without limitation the NRSC and Does 1-50, and each of them.

89. In particular, Defendant, the NRSC, and Does 1-50 shared the common plan of ensuring that Plaintiff did not win the West Virginia Primary Election. To that end, Defendant, the NRSC, and Does 1-50 agreed that Defendant and others would disseminate and cause and/or encourage others to disseminate the false claim that Plaintiff was a "felon" or "convicted felon." Defendant, the NRSC, and Does 1-50, and each of them, knew that this claim was untrue, as Plaintiff had been convicted only of a misdemeanor and had been acquitted of all felony charges.

90. Defendant, the NRSC, and Does 1-50 also committed overt acts in furtherance of the conspiracy by publishing false and misleading claims about Mr. Blankenship which placed him in a false light before the public, including, but not limited to, Defendant's publication of the tweet reproduced above.

91. Mr. Blankenship was damaged by Defendants' statements placing him in a false light before the public in an amount to be proven at trial, but which exceeds the jurisdictional minimum of this Court.

///

///

///

///

///

## DEMAND

Plaintiff demands judgment against Defendant in excess of the jurisdictional limit of Mingo County Circuit Court for the following damages and other relief:

### AS TO COUNT ONE

1. Judgment for general damages for defamation;

2. Judgment for special damages for defamation;

3. A permanent injunction against Defendant prohibiting republication of the defamatory statements and requiring the removal of the defamatory statements from public access;

### AS TO COUNT TWO

4. Judgment for general damages for false light invasion of privacy;

5. Judgment for special damages for false light invasion of privacy;

6. A permanent injunction against Defendant prohibiting republication of the statements placing Plaintiff in a false light before the public and requiring the removal of those statements from public access;

### AS TO ALL COUNTS

7. Judgment for punitive damages;

8. Judgment for emotional distress damages;

9. Statutory judgment interest pursuant to West Virginia Code § 56-6-31; and

10. Such further relief as the Court may deem just and proper.

/ / /

/ / /

/ / /

/ / /

/ / /

*PLAINTIFF DEMANDS A JURY TRIAL

DON BLANKENSHIP
By Counsel

Jeffrey S. Simpkins, Esq.
WVSB #9806
*SIMPKINS LAW*
102 E. 2nd Ave.
Williamson, WV 25661
304.235.2735
simpkinslawoffice@gmail.com

Eric P. Early, Esq.
(CA State Bar No. 166275, *pro hac vice* application forthcoming)
Jeremy Gray, Esq.
(CA State Bar No. 150075, *pro hac vice* application forthcoming)
Kevin S. Sinclair, Esq.
(CA State Bar No. 254069, NV State Bar No. 12277, *pro hac vice* application forthcoming)
*EARLY SULLIVAN WRIGHT*
*GIZER & McRAE LLP*
6420 Wilshire Blvd., 17th Floor
Los Angeles, CA 90048
323.301.4660
eearly@earlysullivan.com
jgray@earlysullivan.com
ksinclair@earlysullivan.com

253663                                                    COMPLAINT



MINGO COUNTY CIRCUIT CLERK
78 EAST 2ND AVE ROOM 232
WILLIAMSON, WV 25661

CERTIFIED MAIL

7017 0660 0000 7410 1028

DONALD TRUMP JR

TRUMP
P. O. BOX 27760
WASHINGTON, D. C. 20038



SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

DONALD TRUMP JR
TRUMP TOWER
725 5TH AVE
NEW YORK, NY 10022

19-C-51

9590 9402 4600 8278 6642 58

2. Article Number (Transfer from service label)

PS Form    7017 0660 0000 7410 1026

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X                                      ☐ Agent
                                       ☐ Addressee
B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

JUN 1 0 20

485

QC✓ #077

QC✓ #029

4765

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON DIVISION**

DON BLANKENSHIP,

                Plaintiff,

v.

FOX NEWS NETWORK, LLC, et al.,

            Defendants.

Case No.: 2:19-cv-00236

**DEFENDANTS FISCALNOTE AND GRIFFIN CONNOLLY'S**
**MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF UNDISPUTED FACTS ................................................................2

LEGAL STANDARD.................................................................................................4

ARGUMENT ..............................................................................................................5

I.       THE COURT SHOULD GRANT SUMMARY JUDGMENT AS TO
         GRIFFIN CONNOLLY ..............................................................................5

II.      THE COURT SHOULD GRANT SUMMARY JUDGMENT ON
         PLAINTIFF'S DEFAMATION CLAIM AGAINST THE FISCALNOTE
         DEFENDANTS ...........................................................................................5

         A.       There is No Clear and Convincing Evidence that the FiscalNote
                  Defendants Acted with Actual Malice ........................................7

         B.       There is No Clear and Convincing Evidence that the FiscalNote
                  Defendants Intended to Harm Plaintiff......................................11

         C.       There is No Evidence that the FiscalNote Defendants Caused
                  Plaintiff Any Harm ....................................................................11

         D.       A Finding of Defamation Per Se Does Not Save Plaintiff's Claim ..........14

III.     THE COURT SHOULD GRANT SUMMARY JUDGMENT ON
         PLAINTIFF'S FALSE LIGHT CLAIM .....................................................16

CONCLUSION.........................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Backus v. City of Parkersburg,*
    980 F. Supp. 2d 741 (S.D.W. Va. 2013)...........................................................11

*Ballengee v. CBS Broad., Inc.,*
    968 F.3d 344 (4th Cir. 2020) ..........................................................................4

*Barger v. Hood,*
    104 S.E. 280 (W. Va. 1920)...........................................................................12

*Berg v. Halperin,*
    No. 2:05-cv-00900, 2005 U.S. Dist. LEXIS 64095 (S.D.W. Va. Dec. 9, 2005) ...................12

*Bose Corp. v. Consumers Union of U.S., Inc.,*
    466 U.S. 485 (1984)........................................................................................8

*Bowling v. Lawson,*
    122 F. Supp. 2d 693 (S.D.W. Va. 2000), *aff'd,* 4 F. App'x 178 (4th Cir. 2001) ...................16

*CACI Premier Tech., Inc. v. Rhodes,*
    536 F.3d 280 (4th Cir. 2008) ..............................................................7, 8, 9

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)........................................................................................5

*Church of Scientology Int'l v. Daniels,*
    992 F.2d 1329 (4th Cir. 1993) .....................................................................8, 10

*Colcord v. Gazette Publ'g Co.,*
    145 S.E. 751 (W. Va. 1928)...........................................................................14

*Crump v. Beckley Newspapers, Inc.,*
    320 S.E.2d 70 (W. Va. 1983)..............................................................6, 16, 17

*Cruse v. Frabrizio,*
    No. 3:13-cv-18768, 2014 WL 3045412 (S.D.W. Va. July 2, 2014) ........................14

*Dash v. Mayweather,*
    731 F.3d 303 (4th Cir. 2013) .........................................................................5, 9

*Distinguished Execs. Transp., LLC v. Cracker Barrel Old Country Store, Inc.,*
    No. 2:16-CV-08503, 2018 WL 2171443 (S.D.W. Va. May 10, 2018)........................12

*Fairbanks v. Roller*,
  314 F. Supp. 3d 85 (D.D.C. 2018) .......................................................... 10

*Giles v. Kanawha Cty. Bd. of Educ.*,
  No. 17-0139, 2018 WL 300605 (W. Va. Jan. 5, 2018) ............................ 17

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
  491 U.S. 657 (1989) ....................................................................... 7, 9, 10

*Haynes v. Alfred A. Knopf, Inc.*,
  8 F.3d 1222 (7th Cir. 1993) .................................................................... 14

*Horne v. WTVR, LLC*,
  893 F.3d 201 (4th Cir. 2018) ........................................................ 7, 8, 10

*Hugger v. Rutherford Inst.*,
  94 F. App'x 162 (4th Cir. 2004) ............................................................. 14

*Lohrenz v. Donnelly*,
  223 F. Supp. 2d 25 (D.D.C. 2002), *aff'd*, 350 F. 3d 1272 (D.C. Cir. 2003) ............................ 8

*Mallory v. S&S Publishers*,
  260 F. Supp. 3d 453 (E.D. Pa. 2017), *aff'd sub nom. Mallory v. Simon & Schuster, Inc.*, 728 F. App'x 132 (3d Cir. 2018) .................................... 15

*Masson v. New Yorker Mag., Inc.*,
  501 U.S. 496 (1991) .................................................................................. 7

*Mauck v. City of Martinsburg*,
  280 S.E.2d 216 (W.Va. 1981) ................................................................ 14

*Milan v. Long*,
  88 S.E. 618 (W. Va. 1916) ...................................................................... 15

*Miller v. City Hosp., Inc.*,
  475 S.E.2d 495 (W. Va. 1996) ........................................................ 5, 6, 12

*Moldea v. N.Y. Times Co.*,
  22 F.3d 310 (D.C. Cir. 1994) .................................................................. 16

*N.Y. Times Co. v. Sullivan*,
  376 U.S. 254 (1964) ............................................................................. 8, 9

*News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*,
  597 F.3d 570 (4th Cir. 2010) .................................................................... 4

*Peirce v. Bryant*,
   No. 4:14-cv-2927-BHH-TER, 2016 WL 11410276 (D.S.C. Feb. 1, 2016),
   *R.&R. adopted*, 2016 WL 1061060 (D.S.C. Mar. 17, 2016), *aff'd*, 674 F.
   App'x 323 (4th Cir. 2017) ........................................................................................ 15

*Pippen v. NBCUniversal Media, LLC*,
   734 F.3d 610 (7th Cir. 2013) ................................................................................... 10

*Richard H. v. Rachel B.*,
   No. 18-1004, 2019 WL 6998331 (W. Va. Dec. 20, 2019) ................................ 15, 16

*Sprouse v. Clay Commc'n, Inc.*,
   211 S.E.2d 674 (W. Va. 1975) ........................................................................ 5, 7, 11

*St. Amant v. Thompson*,
   390 U.S. 727 (1968) ................................................................................................... 9

*State ex rel. Suriano v. Gaughan*,
   480 S.E.2d 548 (1996) ......................................................................................... 9, 11

*Sw. Publ'g Co. v. Horsey*,
   230 F.2d 319 (9th Cir. 1956) ................................................................................... 12

*Taylor v. W. Va. Dep't of Health & Human Res.*,
   788 S.E.2d 295 (W. Va 2016) ................................................................................. 17

*Verrinder v. Rite Aid Corp.*,
   No. 3:06-CV-00024, 2007 WL 4357595 (W.D. Va. Dec. 11, 2007) ....................... 15

## STATUTES

18 U.S.C. § 3559(a) ............................................................................................................ 7

30 U.S.C. § 820 ................................................................................................................... 7

W. Va. Code Ann. § 55-7-29(a) ........................................................................................ 11

## OTHER AUTHORITIES

FAC. ¶¶ 3-4, 14, 150, 199, 202, 203, 233-34 .................................................................. 13

FAC. ¶¶ 15, 16, 18, 22, 149, 151-55, 159, 160, 162, 164-66, 169-72 ............................ 13

Fed. R. Civ. P. 56(a) ...................................................................................................... 4, 5

Restatement (Second) of Torts § 622 cmt. a, Westlaw (database updated June
   2021) ........................................................................................................................ 16

## PRELIMINARY STATEMENT

In this case, FiscalNote and its former Roll Call staff writer, Griffin Connolly (collectively, the "FiscalNote Defendants"), have somehow been caught in the net of Plaintiff's quixotic crusade against the media. But each Defendant media outlet is different, and Plaintiff's claims against the FiscalNote Defendants are meritless. Indeed, Plaintiff is flirting with Rule 11 territory for maintaining a frivolous claim after failing to develop any evidence in discovery to factually support his allegations against the FiscalNote Defendants.

Plaintiff originally named the FiscalNote Defendants in his Amended Complaint, complaining that FiscalNote published *one* article in its Roll Call newspaper—a paper targeting congressional staff in Washington, D.C., not Republican primary voters in West Virginia—that mistakenly made *one* reference to Plaintiff as a felon. That solitary article was published—by Plaintiff's own admissions—after numerous other individuals and media outlets had publicly referred to Plaintiff as a felon and Plaintiff had been subjected to substantial adverse media and social media coverage. Further, the article was written by Eric Garcia—who is *not* a defendant. Plaintiff mistakenly sued the wrong staff writer, Griffin Connolly. The irony is inescapable: Plaintiff mistakenly accuses Mr. Connolly of committing libel for an article he did not author, when Plaintiff seeks to recover billions of dollars from FiscalNote for mistakenly referring to him as felon rather than a misdemeanant.

Plaintiff's claims managed to survive the low bar of a motion to dismiss, but they cannot survive summary judgment. Plaintiff must demonstrate that a reasonable fact finder could conclude (1) that there is *clear and convincing* evidence that the FiscalNote Defendants (a) acted with actual malice and (b) intended to harm Plaintiff, and (2) that the FiscalNote Defendants themselves caused Plaintiff damages. He cannot do so.

Two years into this litigation, Plaintiff has no more evidence to support his claims than with which he started: only the one Roll Call article.  Whatever evidence Plaintiff may have amassed with respect to other Defendants, he has no other Roll Call publication, deposition testimony, declarations, emails, or any other evidence specific to FiscalNote to suggest, much less prove, that Mr. Garcia's "felon" reference was anything but an innocent mistake.  To the contrary, Mr. Garcia's declaration accompanying this motion unequivocally establishes that he had no knowledge that Plaintiff was not a felon nor any reason to doubt that Plaintiff was a felon (as had already been widely reported).  The First Amendment plainly prohibits any finding of liability for a mistake of this nature made with respect to speech about the qualifications of a candidate for political office, and Plaintiff's claims, if allowed to proceed on such a meager record, will significantly undermine these Constitutional protections.

Plaintiff has not a shred of evidence to create a reasonable factual dispute as to any element of his claims, requiring their dismissal.

## STATEMENT OF UNDISPUTED FACTS

FiscalNote, Inc. is a company that specializes in information management and offers a variety of products and services intended to connect people and organizations to government.  *See* Ex. 1 , https://fiscalnote.com/about.  Among other offerings, it owns two news publications, CQ and Roll Call, both of which are focused on coverage of the U.S. Congress for an audience of Washington DC insiders – members of Congress, congressional staffers, trade associations, and lobbyists.  *See* Ex. 2, https://fiscalnote.com/products/cq-news.

As part of its reporting, Roll Call previously operated a Breaking News team.  *See* Ex. 3, Garcia Decl. ¶ 2.  At the time of the publication in question, Defendant Griffin Connolly worked on the Breaking News Team, as did Eric Garcia, another Roll Call staff writer.  *See id.* ¶¶ 2, 6. The Breaking News team wrote several articles per day for the publication.  *Id.* ¶ 2.  Staff writers

on the Breaking News desk were responsible for preparing articles on current events, primarily by relying on articles published by other news outlets. The staff writers did not typically conduct original investigative work to prepare their Breaking News articles. *Id.*

On May 7, 2018, the day before the Republican primary for the West Virginia Senate seat for which Plaintiff was campaigning, Roll Call published an article titled "Blankenship Blames Establishment For 'Misinforming' Trump" ("Roll Call Article"), attached as Ex. 4. *See* ECF No. 883 at 5 (explaining Plaintiff's senate run). Mr. Connolly ***did not author the article.*** *See* Ex. 3, Garcia Decl. ¶ 6; Ex. 5, Connolly Decl. ¶ 3. As stated on the face of the article, Eric Garcia, who is not a defendant here, was the author. *See* Ex. 3, Garcia Decl. ¶ 3. Neither Mr. Garcia nor Mr. Connolly know why the publication indicates that Mr. Connolly contributed to the article, as he had no involvement. *Id.* ¶ 6; Ex. 5, Connolly Decl. ¶ 4. The contribution credit for Mr. Connolly was in error.

The article discussed Plaintiff's response to President Trump's efforts to secure Plaintiff's campaign defeat and a variety of derogatory and racist comments Plaintiff had made. *See generally* Exhibit 4. Buried in a sentence discussing Trump's opposition, the article mistakenly referred to Plaintiff as a felon. It stated: "West Virginia GOP Senate candidate Don Blankenship suggested that establishment Republicans are 'misinforming' President Donald Trump and telling him to oppose his campaign 'because they do not want me to be in the U.S. Senate and promote the president's agenda,' the convicted felon and businessman wrote Monday morning on Facebook." *Id.* Although confusing its classification, Mr. Garcia otherwise correctly identified the crime for which Plaintiff was convicted at the end of his article: "Blankenship was convicted of conspiracy to violate federal mine safety laws after 29 miners were killed in the 2010 Upper Big Branch Mine disaster." *Id.*

Mr. Garcia derived the information, including the phrase "convicted felon," from other online news publications he reviewed that morning that concerned Plaintiff's West Virginia senate bid and criminal history. *See* Ex. 3, Garcia Decl. ¶ 4. He does not recall the particular news publications that he used as sources. *Id.* ¶ 4. He did not know that Plaintiff's conviction was a misdemeanor, rather than a felony, nor did he have any reason to doubt the accuracy of what he wrote. *Id.* ¶ 5. If he had any doubt as to whether Plaintiff was a felon, he would not have used the term. *Id.* Numerous other articles made the same mistake as Mr. Garcia, nearly twenty of which were published before Mr. Garcia's Roll Call article was published.[1]

Because of one mistaken word in a single Roll Call article, FiscalNote has been swept into Plaintiff's lawsuit against more than one hundred defendants for remarks made in the course of media coverage about his campaign. But the entirety of the FiscalNote Defendants' mistakes consist of a single word, in a single article, targeted to an audience of congressional staffers and other Washington, D.C. insiders. There are no other remarks or facts in dispute.

## LEGAL STANDARD

Summary judgment shall be entered when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Facts are material when they might affect the outcome of the case, and a genuine issue exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *Ballengee v. CBS Broad., Inc.*, 968 F.3d 344, 349 (4th Cir. 2020) (quoting *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010)).

The nonmoving party has the burden to "show that a genuine dispute does, in fact, exist," and "must rely on more than conclusory allegations, mere speculation, the building of one

---

[1] *See* ECF No. 891 at 6-9 (summarizing over 100 mistaken references to Plaintiff as a felon).

inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather,* 731 F.3d 303, 311 (4th Cir. 2013). Summary judgment is also appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

## ARGUMENT

## I.  THE COURT SHOULD GRANT SUMMARY JUDGMENT AS TO GRIFFIN CONNOLLY

As a threshold matter, summary judgment is warranted as to Defendant Griffin Connolly: the undisputed record confirms that Mr. Connolly was not the author of, nor was he involved with, the mistaken statement that referred to Plaintiff as a "convicted felon." *See* Ex. 3, Garcia Decl. ¶ 6; Ex. 5, Connolly Decl. ¶ 3. The face of the Roll Call article confirms that Mr. Connolly was not the author. *See* Ex. 4. There is no evidence to the contrary, and no reasonable fact finder could find that Mr. Connolly made any statement about Plaintiff, much less a defamatory one. *See Miller v. City Hosp., Inc.*, 475 S.E.2d 495, 503 (W. Va. 1996) (holding that an essential element of defamation is a defamatory statement). Accordingly, summary judgment as to Mr. Connolly is warranted.

## II.  THE COURT SHOULD GRANT SUMMARY JUDGMENT ON PLAINTIFF'S DEFAMATION CLAIM AGAINST THE FISCALNOTE DEFENDANTS

At bottom, there is simply no genuine dispute of material fact concerning the FiscalNote Defendants' actions in publishing the May 7, 2018 article. Fed. R. Civ. P. 56(a). To ultimately prevail on his defamation claim, Plaintiff must prove by clear and convincing evidence that the FiscalNote Defendants used the word "felon" in the article (i) with actual malice, that is, with knowledge that the statement was false or with "reckless and willful disregard" to the truth and (ii) intending to injure the plaintiff with the publication. *See Sprouse v. Clay Commc'n, Inc.*, 211

S.E.2d 674, 680-81 (W. Va. 1975); Syl. Pt. 6, *Miller*, 475 S.E.2d at 497 (citing Syl. Pt. 1, *Crump v. Beckley Newspapers, Inc*., 320 S.E.2d 70 (W. Va. 1983)).  Plaintiff must also prove that the alleged defamation resulted in injury.  *Id.*

Here, not only are there no genuinely disputed material facts, there is no evidence whatsoever demonstrating that FiscalNote intentionally published a single inaccurate word—a far cry from actual malice, intent to harm Plaintiff, or any injury.  Nor does a finding of per se defamation change the Court's analysis.  At the motion to dismiss stage, the Court allowed Blankenship the opportunity to see if "discovery will reveal evidence of alleged wrongdoing." ECF No. 398 at 40.  But Plaintiff almost entirely ignored the Court's invitation to use discovery to try to support his allegations against the FiscalNote Defendants.  Indeed, after Plaintiff received the handful of FiscalNote Defendant documents responsive to his cookie-cutter requests, he did nothing else to try to prove his allegations against the FiscalNote Defendants.  He did not take a single deposition, and he even declined the FiscalNote Defendants' offer to provide a sworn declaration detailing the facts that are outlined here.  Discovery is now complete, and the factual record is exactly as it was at that stage: a single article in a Roll Call publication with a single mistaken word.  Plaintiff has not marshaled any evidence—no other publications, deposition testimony, communications with other defendants, internal emails, or otherwise—to support the essential elements of his claim, let alone evidence that would support a verdict by clear and convincing evidence.  The undisputed (and entirely unchallenged) record should have resulted in Plaintiff dismissing his claims against the FiscalNote Defendants long ago, but at this point the undisputed record compels summary judgment.

**A.      There is No Clear and Convincing Evidence that the FiscalNote Defendants Acted with Actual Malice**

After more than a year of discovery, not a shred of evidence demonstrates actual malice.

Plaintiff, as a public figure, ECF No. 398 at 17, must show by clear and convincing evidence that

the FiscalNote Defendants acted with actual malice, and possessed a "high degree of awareness of

… probable falsity[2]" when they published the term "felon" in the May 7, 2018 article.  *Horne v.*

*WTVR, LLC*, 893 F.3d 201, 211 (4th Cir. 2018); *see also Harte-Hanks Commc'ns, Inc. v.*

*Connaughton*, 491 U.S. 657, 659 (1989); Syl. Pt. 1, *Sprouse*, 211 S.E.2d at 679.  Plaintiff cannot

do so because (1) the First Amendment imposes a challenging standard that is not met here,

(2) there is no evidence that the FiscalNote Defendants had any awareness that the statement was

false or recklessly disregarded the truth, and (3) there is no genuine dispute concerning the author's

state of mind at the time of publishing.

As an initial matter, as a public figure alleging defamation, particularly about a statement

concerning "public discussion of the qualifications of a candidate for elective office," Plaintiff

must satisfy the high bar of proving actual malice.  And for good reason.  The challenging standard

serves as a critical gatekeeping function to protect the FiscalNote Defendants' fundamental First

Amendment rights.  *See Harte-Hanks Commc'ns*, 491 U.S. at 686 (citation omitted).  As the Fourth

---

[2] FiscalNote Defendants incorporate by reference and join in arguments made by other Defendants in their motions for reconsideration and/or certification (ECF No. 415) of the Court's prior Order (ECF No. 398) concerning the substantial truth of the statement that Plaintiff was a "felon," as well as subsequent arguments on Motions for Summary Judgment.  *E.g.*, ECF Nos. 883 at 19-23, 885 at 20-23, 891 at 20-26.  The statute under which Plaintiff was convicted, 30 U.S.C. § 820, is classified based on the "maximum term of imprisonment authorized" and does not distinguish between a misdemeanor and felony. 18 U.S.C. § 3559(a).  Plaintiff's ultimate prison sentence was just one day short of a felony, and the underlying conduct is identical for each classification.  Referring to Plaintiff as a "felon" in this context did not materially change "the substance, the gist, the sting," of the statement.  *See Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991) (citation omitted).

Circuit has held, "[t]he actual malice standard … is rooted in the First Amendment's 'vital guarantee of free and uninhibited discussion of public issues.'" *CACI Premier Tech., Inc. v. Rhodes*, 536 F.3d 280, 293 (4th Cir. 2008) (citations omitted). It "ensures that defamation cases involving issues of public concern are considered 'against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government[,] public officials,' and public figures." *Id.*

FiscalNote Defendants' genuine mistake is exactly the kind of error protected by the First Amendment and cannot give rise to actual malice. *See Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 511 (1984) ("[T]here is a significant difference between proof of actual malice and mere proof of falsity …." (footnote omitted)); *Lohrenz v. Donnelly*, 223 F. Supp. 2d 25, 55 (D.D.C. 2002) (finding there is no liability for "mere factual error–an everyday occurrence in journalism–unless those errors rise to the level of circumstantial evidence of 'actual malice'"), *aff'd*, 350 F. 3d 1272 (D.C. Cir. 2003); *Horne v. WTVR, LLC*, 893 F.3d 201, 211 (4th Cir. 2018) (finding that negligence is not sufficient). Indeed, in the seminal First Amendment Case, *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), the Supreme Court remarked "erroneous statement is inevitable in free debate … [and] must be protected if the freedoms of expression are to have the 'breathing space' that they 'need … to survive.'" *Id.* at 271-72 (citation omitted). If Plaintiff's claims are allowed to proceed against the FiscalNote Defendants based on such a paltry record, then the gatekeeping function of the actual malice standard will have lost any meaning and the floodgates will be opened to challenge important, legitimate free speech across the country.

Second, Plaintiff's claim fails because there is no evidence of any kind, much less any clear or convincing evidence, that the FiscalNote Defendants used the word "felon" recklessly or with

any awareness of its falsity. "Actual malice is defined as either knowledge of falsity or reckless disregard for the truth or falsity of the statement." *Church of Scientology Int'l v. Daniels*, 992 F.2d 1329, 1332 (4th Cir. 1993) (citing *Sullivan*, 376 U.S. at 280); *CACI*, 536 F.3d at 293. Rather, Mr. Garcia made the mistake in reliance on scores of other mistaken publications. *See* Ex. 3, Garcia Decl. ¶ 4; ECF No. 891 at 6-9 (summarizing over one hundred erroneous references). Mr. Garcia did not know that Plaintiff's conviction and sentence amounted to a misdemeanor, rather than a felony, nor did he doubt in any way the accuracy of his article. Ex. 3, Garcia Decl. ¶ 5. Lacking *any evidence*, a fact finder could not reasonably find that Mr. Garcia "purposeful[ly] avoid[ed] the truth," *Harte-Hanks*, 491 U.S. at 692, or that his mistake was "inherently improbable" or "obvious[ly]" false, *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968). Indeed, Plaintiff has publicly advertised himself as a "man who served time in a felony prison." ECF No. 882-1, Apr. 29 Blankenship Dep. 349:13-21. The confusion between a felon and misdemeanant in this statement is understandable, and inferring that a man who spent a year in "felony prison" is a "felon" is far from inherently improbable. The evidence in the record does not suggest any culpability by the FiscalNote Defendants, much less reckless disregard, and any argument to the contrary is entirely unsubstantiated and unreasonable speculation. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013).

Finally, Plaintiff must prove that Mr. Garcia *himself* entertained doubts, not that a reasonable person would have acted differently. Even assuming arguendo that Mr. Garcia should have investigated the classification of Plaintiff's crime pursuant to some journalistic standard or FiscalNote policy—a fact explicitly contradicted by the record[3]—reckless disregard is not established by what an individual *should have* done. Rather, "[t]here must be sufficient evidence

---

[3] *See* Ex. 3, Garcia Decl. ¶ 7; Ex. 5, Connolly Decl. ¶ 5.

to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *State ex rel. Suriano v. Gaughan*, 480 S.E.2d 548, 563 (1996) (quoting *St. Amant*, 390 U.S. at 731); *Horne v. WTVR, LLC*, 893 F.3d 201, 212 (4th Cir. 2018) (affirming summary judgment where plaintiff did not submit evidence that the defendant "acted with reckless disregard for the truth, or evidence that [the defendant] entertained any doubts as to the veracity of the story"). Failure to investigate is immaterial when the defendant did not have "any reason to doubt the accuracy of the sources used." *See Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013) ("But failure to investigate is precisely what the Supreme Court has said is insufficient to establish reckless disregard for the truth."). Nor does a departure from journalistic standards satisfy the demanding standard. *See Church of Scientology Int'l v. Daniels*, 992 F.2d at 1334 ("[A]ctual malice cannot be established merely by showing a departure from accepted journalistic or professional practices."); *Fairbanks v. Roller*, 314 F. Supp. 3d 85, 92 (D.D.C. 2018) ("[E]ven 'an ***extreme*** departure from professional standards' coupled with an illicit motive does not satisfy the actual malice standard." (emphasis added) (quoting *Harte-Hanks Commc'ns*, 491 U.S. at 665)).

Despite his misclassification, Mr. Garcia accurately reported Plaintiff's convicted crime, *see* Exhibit 4, and based his reporting on several published stories. *See* Ex. 3, Garcia Decl. ¶ 4. Mr. Garcia is not a lawyer versed in the distinction between a misdemeanor (particularly one that carried a one year prison sentence) and a felony, and he was unaware of his mistake. *Id.* ¶ 5. Plaintiff has not a single piece of evidence to prove that Mr. Garcia entertained any doubt, had any reason to doubt, or purposefully avoided learning the truth concerning the accuracy of the word "felon." No reasonable fact finder could conclude otherwise, and summary judgment should be granted.

**B.  There is No Clear and Convincing Evidence that the FiscalNote Defendants Intended to Harm Plaintiff**

Plaintiff's defamation claim also fails for lack of any evidence that the FiscalNote Defendants *intended* to cause Plaintiff harm.  Under West Virginia law, candidates for political office and public officials can sustain a libel action only if they can prove that "the publisher intended to injure the plaintiff through the knowing or reckless publication of the alleged libelous material." Syl. Pt. 1, *Sprouse*, 211 S.E.2d at 679.  This is a separate question from actual malice. "An intent to inflict harm is not actual malice; rather, a plaintiff must prove, by clear and convincing proof, an 'intent to inflict harm through falsehood.'" *Suriano*, 480 S.E.2d at 563 (citation omitted).  "[M]ere assertions by the plaintiffs are not enough to survive summary judgment." *Backus v. City of Parkersburg*, 980 F. Supp. 2d 741 (S.D.W. Va. 2013) (citation omitted) (granting a motion for summary judgment for lack of specific allegations regarding intent to harm).  Plaintiff has no such evidence.  Indeed, as a newspaper directed toward congressional offices—not West Virginia voters—it defies logic to conceive how FiscalNote Defendants could have intended to do so.  Accordingly, Plaintiff's defamation claim fails on this independent ground.

**C.  There is No Evidence that the FiscalNote Defendants Caused Plaintiff Any Harm**

No reasonable fact finder could possibly conclude that one mistaken word in one article—whose primary readership was outside of West Virginia—caused Plaintiff to a lose a primary election, and then the general election, and caused Plaintiff to lose $2 *billion* dollars in economic damages and $10 billion dollars in punitive damages.[4]

---

[4] In West Virginia, punitive damages requires proof of causation by "clear and convincing evidence." W. Va. Code Ann. § 55-7-29(a) (requiring plaintiff "establish[] by clear and convincing evidence that the damages suffered were the result of the conduct that was carried out by the defendant with actual malice toward the plaintiff").  As discussed below, Plaintiff cannot prove causation by a preponderance of the evidence, let alone by "clear and convincing evidence."

An "essential element[]" of defamation under West Virginia law is that there is "resulting injury" from the defamatory statement. *See Miller*, 475 S.E.2d at 503 (finding that the "record does not demonstrate any harm to [the plaintiff]" and thus that there is "no evidence of one of the essential elements for a defamation claim"); *see also Distinguished Execs. Transp., LLC v. Cracker Barrel Old Country Store, Inc*., No. 2:16-CV-08503, 2018 WL 2171443, at *11 (S.D.W. Va. May 10, 2018) (granting motion for summary judgment for failure to show economic or pecuniary loss). Importantly, a defendant is liable only for losses caused by his or her *own* defamatory statements. *Berg v. Halperin*, No. 2:05-cv-00900, 2005 U.S. Dist. LEXIS 64095, at *34 (S.D.W. Va. Dec. 9, 2005) (plaintiff failed to show likelihood of success on the merits because he did not show that defendant's statement specifically caused him harm); Syl., *Barger v. Hood*, 104 S.E. 280, 280 (W. Va. 1920) ("A suit for libel cannot be maintained against two or more defendants, unless it appears from the declaration that the publication of the libel was the common or joint action of all of them."). Further, to the extent Plaintiff seeks damages for his election loss, this is not a cognizable loss. *See Sw. Publ'g Co. v. Horsey*, 230 F.2d 319, 322 (9th Cir. 1956) ("[T]he loss of an election is not compensable in damages in a libel action, being too uncertain and too speculative.").

At bottom, Plaintiff has not provided any evidence of any injury caused by the FiscalNote Defendants specifically. *First*, Plaintiff has no surveys of West Virginia residents, affidavits, emails, deposition testimony or other evidence that anyone in West Virginia *read* the Roll Call article, much less evidence to identify any individual who (1) voted against Plaintiff in the primary, and did so (2) in reliance on the "felon" reference in the article. Nor does he have evidence that Fiscal Note's referring to Plaintiff as a felon rather than a misdemeanant, when the crime itself was accurately portrayed, caused him harm.

*Second*, Plaintiff cannot demonstrate injury generally.  Plaintiff stated in discovery that he was "unaware at this time of any specific 'other business opportunities' [he] was prevented from pursuing" as a result of defamatory statements, or any "jobs, board positions, memberships…[or] appointments."  *See* ECF No. 883, Ex. 9 at 2, 4.  Nor is he aware "of any specific person who thinks less of Plaintiff as a result of one or more" of the Defendants' statements.  *Id.* at 5.  Even Plaintiff admitted that "it would be impossible to argue that ***one single statement*** is responsible." ECF No. 889, Ex. 2 at 85:2-7.  But a single statement is all that can be attributed to the FiscalNote Defendants.

*Third*, even if he could identify some injury, Plaintiff cannot possibly demonstrate that the Roll Call article caused that injury against a backdrop of decades of negative publicity stemming from the mining disaster, his criminal conviction and prison sentence, racist statements, political opposition, and more.

> ➤ Plaintiff admits that he had already been called a felon "dozens" of times in the media, and specifically identifies 19 other instances, *before* the Roll Call Article ran on May 7, 2018*, see* FAC. ¶¶ 15, 16, 18, 22, 149, 151-55, 159, 160, 162, 164-66, 169-72;

> ➤ Plaintiff admits that he was called a felon 18 other times that same day, and alleges numerous continuing references to him as a felon after that date, *see* FAC ¶¶ 166-68, 174, 176-89, 191-221;

> ➤ In contrast to the Roll Call Article, many of these prior references occurred in conservative media, with a viewership that targets the conservative voters, *see* FAC ¶ 156, and others "were made in conjunction with reference to the mine disaster and thus, had the additional effect, through inference, implication, innuendo and/or insinuation, of further defaming Mr. Blankenship by falsely attributing to him responsibility for murder," *id.* ¶ 23;

> ➤ Plaintiff himself has advertised that he is a "man who served time in a felony prison."  ECF No. 882-1, Apr. 29 Blankenship Dep. 349:13-21.

> ➤ Plaintiff has stated concerted and coordinated efforts—which the FiscalNote Defendants were not a part of—by the Republican party and by President Trump to actively undermine Plaintiff's campaign—part of a "clandestine campaign," *see, e.g.*, FAC. ¶¶ 3-4, 14, 150, 199, 202, 203, 233-34;

> He further claims that he was the subject of misleading and damaging push polling, which did not involve the FiscalNote Defendants, *id.* ¶ 151;

> As is demonstrated by the Roll Call Article itself, Plaintiff was the subject of widespread, reputationally-damaging, and indisputably true, media reporting of his antics, including a variety of offensive and racist comments he had made, *see, e.g.*, *id.* ¶ 211; Ex. 4; and

> Plaintiff cannot demonstrate that, even if he would have otherwise won the *primary*, that he would have won the general election, but for the one word in one Roll Call Article (much less the statements by any other Defendant).

Courts have recognized that false statements "which do no *incremental* damage to the plaintiff's reputation do not injure the only interest that the law of defamation protects." *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1228 (7th Cir. 1993). On this record, no reasonable fact finder could attribute unspecified harm to FiscalNote's one article, which (1) otherwise accurately portrayed Plaintiff's criminal history, (2) was directed toward congressional staff in Washington, D.C., (3) was only one of countless other felon references, and (4) was published against a backdrop of substantial prior damaging publicity. This assertion is precisely the type of "conclusory allegations of damage to reputation" the Fourth Circuit has held are not "enough to avoid summary judgment" on a defamation claim. *Hugger v. Rutherford Inst.*, 94 F. App'x 162, 168 (4th Cir. 2004). Plaintiff's defamation claim should be dismissed.

### D. A Finding of Defamation Per Se Does Not Save Plaintiff's Claim

Even if the Court concludes that the statement "convicted felon" constitutes defamation *per se*,[5] Plaintiff's claim still fails for two reasons. *First*, even if the term "felon" has a *per se*

---

[5] The FiscalNote Defendants dispute this conclusion. Courts have found that accusing an innocent man of "crime of moral turpitude" is defamatory per se, but that is not what occurred here. *See Cruse v. Frabrizio*, No. 3:13-cv-18768, 2014 WL 3045412, at *3 (S.D.W. Va. July 2, 2014) (citing *Mauck v. City of Martinsburg*, 280 S.E.2d 216, 219 n. 3 (W.Va. 1981) ("At common law, defamation per se includes only imputations of a crime of moral turpitude, imputations of a loathsome disease, imputations of sexual misconduct by a woman, and imputations which affect a business, trade, profession or office." (citation omitted)); *Cf. Colcord v. Gazette Publ'g Co.*,

defamatory meaning, Plaintiff is not excused from showing actual malice and intent to harm. *See, e.g.*, *Mallory v. S&S Publishers*, 260 F. Supp. 3d 453, 462-63 (E.D. Pa. 2017) (granting summary judgment on a defamation per se claim for failure to show actual malice), *aff'd sub nom. Mallory v. Simon & Schuster, Inc*., 728 F. App'x 132 (3d Cir. 2018); *Peirce v. Bryant*, No. 4:14-cv-2927-BHH-TER, 2016 WL 11410276, at *7 (D.S.C. Feb. 1, 2016) (defamation *per se* is relevant to injury but that "fault on the part of the defendant publisher" is still required), *R. & R. adopted*, 2016 WL 1061060 (D.S.C. Mar. 17, 2016), *aff'd*, 674 F. App'x 323 (4th Cir. 2017); *Verrinder v. Rite Aid Corp*., No. 3:06-CV-00024, 2007 WL 4357595, at *24 (W.D. Va. Dec. 11, 2007) (plaintiff must establish the "elements of falsity and intent" in order to establish a valid claim based on defamation *per se*). As explained at *supra* pp. 6-11, Plaintiff has not done so.

*Second*, at most, defamation *per se* entitles Plaintiff to presume general damages. *See Richard H. v. Rachel B.*, No. 18-1004, 2019 WL 6998331, at *3 (W. Va. Dec. 20, 2019). But even general damages must be "related to 'the natural and probable consequence[s] of the words so spoken or written.'" *Id.* (quoting *Milan v. Long*, Syl., 88 S.E. 618 (W. Va. 1916)). There is simply no evidence that Plaintiff's alleged damages are the nature and probable consequence of FiscalNote Defendants' single mistaken word. *See id.* at *1-3. The *Richard H.* case is particularly instructive. There, the defendant wrote that the plaintiff was "a 5 time convicted felon" and a "murderer," when the plaintiff was a 3-time convicted felon and was not a murderer, although his crimes "could have ultimately led to a person's violent death." *Id.* at *1-3. The Supreme Court of Appeals held "there was no factual basis" on which to "presume general damages as the natural and probable consequences of respondent's false statements … where the falsity of respondent's

---

145 S.E. 751, 753 (W. Va. 1928) (statement accusing "law-abiding citizen" of murder constitutes defamation per se).

statements was only a *matter of degree*." *Id.* at *2-3 (emphasis added).  If erroneously calling

someone a "murderer" is "only a matter of degree," then surely it is here as well.  *Id.* at *1, *3.

Just as in *Richard H.*, damages may not be presumed.

Further, Plaintiff explicitly chose to allege specific damages—"concrete financial

losses"—which are recoverable only upon a showing of causation.  *Id.*; *see also* Restatement

(Second) of Torts § 622 cmt. a, Westlaw (database updated June 2021) (noting that, with respect

to defamation *per se*, "the defamer is also liable for any special harm … of which the defamatory

publication is the legal cause"); *Bowling v. Lawson*, 122 F. Supp. 2d 693, 699 (S.D.W. Va. 2000)

(denying certain claims for compensatory and punitive damages stemming from a slander *per se*

claim where the allegations of injury "are not credible"), *aff'd*, 4 F. App'x 178 (4th Cir. 2001).  As

discussed above, Plaintiff cannot satisfy that burden.  Plaintiff's defamation claim—per se or

otherwise—fails as a matter of law, and the record compels summary judgment for the FiscalNote

Defendants.

**III.    THE COURT SHOULD GRANT SUMMARY JUDGMENT ON PLAINTIFF'S FALSE LIGHT CLAIM**

Plaintiff's false light claim also fails as a matter of law.  As an initial matter, due to the

same First Amendment concerns involved in defamation actions, a public figure must prove that a

defendant acted with actual malice to prevail on a false light claim.  *See Crump*, 320 S.E. 2d. at 87

("[C]ourts and commentators have consistently treated false light privacy claims in essentially the

same manner as they have treated defamation."); *see also Moldea v. N.Y. Times Co.*, 22 F.3d 310,

319 (D.C. Cir. 1994) ("[A] plaintiff may not avoid the strictures of the burdens of proof associated

with defamation by resorting to a claim of false light invasion.").  As discussed above, *supra* 6-

10, there is no genuine dispute of material fact concerning actual malice.

Additionally, Plaintiff cannot demonstrate "widespread publicity," which "is an essential ingredient to any false light invasion of privacy claim." *Crump*, 320 S.E.2d at 87-88. In light of Plaintiff's extensive adverse publicity prior to publication of the Roll Call Article, his false light claim against FiscalNote Defendants fails from the outset. *See Giles v. Kanawha Cty. Bd. of Educ.*, No. 17-0139, 2018 WL 300605, at \*5 (W. Va. Jan. 5, 2018) (finding a false light claim cannot survive if a statement "'gave publicity' to … already widely publicized facts"); *see also Taylor v. W. Va. Dep't of Health & Human Res.*, 788 S.E.2d 295, 314-16 (W. Va 2016) (granting summary judgment on a false light claim because the challenged information was already public).

In *Giles*, a high school principal was criminally charged with failure to report a sexual assault that happened on the school campus. 2018 WL 300605 at \*1. A school board member publicly accused the principal of committing a crime in failing to report the assault. *Id.* However, similar to Plaintiff's acquittal of felony charges, the principal was not convicted and the criminal charges were dismissed. *Id.* at \*2. The Supreme Court of Appeals affirmed the lower court's decision to dismiss the false light claim. *Id.* at \*5. The court noted that "[t]he fact that a sexual assault allegedly occurred at the school, that petitioner was charged with failing to timely report it to authorities, and that he was suspended without pay were fodder for the local news media six days before the challenged statements were made." *Id.* Accordingly, the court concluded that "***it would be disingenuous*** to conclude that Respondent Thaw's statements on February 9, 2015, somehow 'gave publicity' to ***these already widely publicized facts***." *Id.* (emphases added).

At the time of the Roll Call Article, Plaintiff had received extensive adverse coverage. As an initial matter, the mine explosion itself received significant coverage. *See, e.g.*, ECF No. 883 at 2 (discussing the mine explosion). This was followed by a widely publicized criminal indictment against Plaintiff. *See, e.g.*, *id.* at 2-3 (discussing Plaintiff's indictment). Then, as

Plaintiff himself complains, over one hundred media outlets reported about Plaintiff leading up to the election, many prior to Roll Call's May 7 article, including mistakenly referring to him as a felon.  *See* ECF No. 891 at 6-9 (summarizing over one hundred erroneous references).  Donald Trump Jr. also tweeted the claim to his 3.5 million twitter followers prior to the FiscalNote Defendants' publication.  *See* Ex. 6, Compl. ¶¶ 21, 57, 59, *Blankenship v. Trump*, No. 2:19-cv-00549 (S.D.W. Va. July 26, 2019).

Against this undisputed backdrop—including extensive media coverage of the mine disaster in which President Obama publicly blamed Plaintiff, and an alleged widespread effort to discredit him and paint him as a felon, all before a Roll Call writer uttered that one word in one article—Plaintiff's assertion that being called a convicted felon painted him in a false light is untenable.  Accordingly, summary judgment is warranted on Plaintiff's false light claim.

## CONCLUSION

For the foregoing reasons, summary judgment should be granted as to Plaintiff's claims against FiscalNote and Griffin Connolly.

FISCAL NOTE, INC. and GRIFFIN
CONNOLLY, Defendants,
By counsel:

Dated: June 7, 2021
*/s/ Allen M. Gardner*
Allen M. Gardner (DC #456723)
    (admitted *Pro Hac Vice*)
Sarah M. Gragert (DC #977097)
    (admitted *Pro Hac Vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004-1304
Telephone: (202) 637-2270
Facsimile: (202) 637-2201
allen.gardner@lw.com

sarah.gragert@lw.com

*/s/ John J. Polak*
John J. Polak (WVSB No. 2929)
ATKINSON & POLAK, PLLC
300 Summers Street, Suite 1300
P.O. Box 549
Charleston, WV 25322-0549
Telephone: (304) 346-5100
Facsimile: (304) 346-4678
jjpolak@amplaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that I have mailed the documents by United States Postal Service to the non-CM/ECF participants identified in the Notice of Electronic Filing that will be generated upon the filing of these documents.

*/s/ Allen M. Gardner*
Allen M. Gardner

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

DON BLANKENSHIP,

                Plaintiff,

vs.

FOX NEWS NETWORK, LLC, et al.

                Defendants.

Case No.: 2:19-cv-00236

[Honorable John T. Copenhaver, Jr.]

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF DON BLANKENSHIP'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS FISCALNOTE AND GRIFFIN CONNOLLY**

---

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................... 1

II.   STATEMENT OF MATERIAL FACTS ....................................................... 4

III.  LEGAL STANDARD .................................................................................... 5

IV.  ARGUMENT ................................................................................................. 6

     A.    FiscalNote May Be Held Liable For The Defamatory Article. .................................. 6

     B.    The FiscalNote Defendants Have Not Met Their Burden To Establish The Absence Of Disputed Facts With Respect To Mr. Blankenship's Defamation Claim. ...................................................................... 6

          1.    At The Very Least, There Is A Genuine Issue of Disputed Fact With Respect to "Actual Malice"........................................................ 6

               i.    The FiscalNote Defendants Violated Their Own Standards ............................................................................. 9

               ii.   A Genuine Issue Of Fact Exists As To Whether The Author Acted With "Actual Malice" .................................. 9

          2.    There Is Evidence Of An Intent To Injure Mr. Blankenship ....................... 11

          3.    There Is Sufficient Evidence Of "Material Falsity" ..................................... 13

          4.    There Is Evidence Of Harm To Mr. Blankenship........................................ 16

               i.    "Resulting Injury" Is Presumed ..................................... 16

               ii.   Causation And Damages Are Factual Issues For The Jury ...................................................................... 17

     C.    The FiscalNote Defendants Have Note Met Their Burden To Establish The Absence Of Disputed Facts With Respect To Mr. Blankenship's False Light Invasion of Privacy Claim. ............................................ 19

V.   CONCLUSION............................................................................................ 20

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Alderson v. Kahle*, 73 W. Va. 690 (1914) ........................................................................... 16

*All Med, LLC. v. Randolph Eng'g Co.*, 228 W. Va. 634, 641 (2012) ............................... 6

*Anaya v. CBS Broadcasting Inc.*, 626 F.Supp.2d 1158 (D.N.M. 2009) .......................... 8

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ................................. 5, 7, 19

*Associated Press* v.] *Walker* [388 U.S. 130 (1967) ........................................................ 13

*Aurora World, Inc. v. Ty Inc.*, 2010 WL 11506546 (C.D. Cal. Aug. 24, 2010) ..........14, 15

*Ballock v. Costlow*, 2017 WL 9620421 (N.D. W. Va. December 6, 2017) ........................ 16

*Blankenship v. Fox News Network, LLC*, No. 2:19-CV-00236, 2020 WL 7753102 (S.D.W. Va. Dec. 29, 2020) ............................................................................................................... 2

*Blankenship v. Napolitano*, 451 F. Supp. 3d 596, 616 (S.D.W. Va. 2020) ..................... 1

*Chafin v. Gibson*, 213 W. Va. 167, 172 (2003) ............................................................. 2, 7

*Cubby, Inc. v. CompuServe, Inc.,* 776 F.Supp. 135, 143 (S.D.N.Y.1991) ......................... 6

*England v. Daily Gazette Co.,* 143 W. Va. 700, 711 (1958) ........................................... 16

*Fitzgerald v. Penthouse Int'l, Ltd.*, 691 F.2d 666, 670–71 (4th Cir. 1982) ................. 2, 8

*Gen. Electric Credit Corp. v. Fields,* 148 W.Va. 176 (1963) ........................................... 6

*Giles v. Kanawha Cty. Bd. of Educ.*, 2018 WL 300605 (W. Va. Jan. 5, 2018) .............. 20

*Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989) ....................... 8

*Henick v. Fast-Track Anesthesia Assocs.*, LLC, 2012 WL 5908939, at *6 (W. Va. Nov. 26, 2012) ............................................................................................................................. 3, 17

*Henry v. Nat'l Ass'n of Air Traffic Specialists, Inc.*, 836 F.Supp. 1204, 1211 (D.Md. 1993) .......... 7

*Hinerman v. Daily Gazette Co.*, 188 W.Va. 157 (1992) ..................................................... 8

*Hutchinson v. Proxmire*, 443 U.S. 111, 120, n. 9 (1979) .............................................. 2, 7

*Imagine Medispa, LLC v. Transformations, Inc.*, 999 F. Supp. 2d 873, 887–88 (S.D.W. Va. 2014) .............................................................................................................................. 20

*Imagine Medispa, LLC v. Transformations, Inc.*, 999 F. Supp. 2d 873, 887–88 (S.D.W. Va. 2014) .............................................................................................................................. 20

*Johnson v. Brown*, 13 W. Va. 71 (1878) .................................................................................16

*Martin v. Duffy*, 977 F.3d 294, 305 (4th Cir. 2020) ...............................................................5

*Matherly v. Andrews*, 859 F.3d 264, 279 (4th Cir. 2017) .......................................................5

*McKinney v. K-Mart Corp.*, 649 F. Supp. 1217, 1221-22 (S.D.W. Va. 1986) ......................14

*Milan v. Long*, 88 S.E. 618 (W. Va. 1916) .........................................................................3, 16

*Myers v. The Telegraph*, 332 Ill. App. 3d 917, 198 (2002) ...................................................15

*Nat'l Life Ins. Co. v. Phillips Pub., Inc.*, 793 F.Supp. 627, 632 (D.Md. 1992) .....................7

*New York Times Co. v. Sullivan*, 376 U.S. 254, 287 (1964) ....................................................7

*Palmer v. City of Yonkers*, 22 F. Supp. 2d 283, 287 (S.D.N.Y. 1998) ..................................6

*Pauley v. Combustion Engineering, Inc.,* 528 F. Supp. 759, 765 (S.D.W.V. 1981) ..............5

*Pritt v. Republican Nat. Comm.*, 557 S.E.2d 853, 860-61 (W. Va. 2001) .............................8

*Publishing Company v. Butts*, 388 U.S. 130 (1967) .............................................................13

*Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016) ..............................................................6

*Richard H. v. Rachel B.*, 2018 WL 2277775 (W. Va. May 18, 2018) ...................................16

*Robb v. Lincoln Publ'g (Ohio), Inc.*, 683 N.E.2d 823, 841 (Ohio 1996) .............................18

*Smith v. A Pocono Country Place Property Owners Ass'n, Inc.*, 686 F.Supp. 1053, 1062 (M.D. Pa. 1987) .............................................................................................................................10

*Sprouse v. Clay Communication, Inc.,* 211 S.E.2d 674 (W. Va. 1975) ................................14

*St. Amant v. Thompson*, 390 U.S. 727 (1968) ......................................................................10

*Strahin v. Cleavenger*, 603 S.E.2d 197, 211 (W. Va. 2004) ................................................19

*Tharp v. Media General, Inc.*, 987 F.Supp.2d 673 (D.S.C. 2013) .........................................8

*Tomblin v. WCHS-TV8*, 434 F. App'x 205, 211 (4th Cir. 2011) .......................................3, 8

*Tracy v. Cottrell ex rel. Cottrell*, 524 S.E.2d 879, 897 (W. Va. 1999) ...............................19

*United States v. Alvarez*, 567 U.S. 709 (2012) ....................................................................14

*Via v. Comm'ns Corp. of Am., Inc.*, 311 F. Supp. 3d 812, 822 (W.D. Va. 2018) ................17

*Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1072 (5th Cir. 1987) ........................2, 7

**Statutes**

Fed. R. Civ. P. 56(a) ................................................................................................................5

**Other Authorities**

W. Va. Code § 3-2-2(b) ............................................................................................15

W. Va. Const. art. IV, § 4-4 ....................................................................................15

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Don Blankenship ("Mr. Blankenship"), through his counsel of record, hereby submits this Memorandum of Points and Authorities in support of his Opposition to the Motion for Summary Judgment of Defendants FiscalNote, Inc. and Griffin Connolly (collectively, the "FiscalNote Defendants").[1]

## I.    INTRODUCTION

Roll Call claims to be "The Source For News On Capitol Hill Since 1955."[2]  Roll Call further touts itself as "the premier source of timely news, objective facts and analysis, and coverage of elections and the politics of legislation," with its "fingers on the pulse of the legislative process."  As part of Roll Call's "Mission," it makes the following representation: "*Roll Call has earned a reputation for delivering comprehensive, accurate and objective congressional reporting*."[3]  In direct violation of its own standards and the law, the FiscalNote Defendants falsely reported that Mr. Blankenship is a "convicted felon" the day before the 2018 West Virginia Primary in an effort to destroy his candidacy for the United States Senate.  This misconduct gives rise to Mr. Blankenship's defamation and false light invasion of privacy claims.  In their Motion for Summary Judgment, the FiscalNote Defendants contend that summary judgment should be granted as to these claims for the following reasons.

First, the FiscalNote Defendants claim that there is no clear and convincing evidence of "actual malice."  As a matter of law, "actual malice" requires that "the person who uttered the defamatory statement either knew the statement was false or knew that he was publishing the statement in reckless disregard of whether the statement was false."  *Blankenship v. Napolitano*, 451 F. Supp. 3d 596, 616 (S.D.W. Va. 2020), *on reconsideration in part sub nom. Blankenship v.*

---

[1] FiscalNote owns two news publications, including CQ and Roll Call. https://www.fiscalnote.com/products/cq-news.

[2] https://www.rollcall.com/about/.

[3] *Id*. (emphasis added).

*Fox News Network, LLC*, No. 2:19-CV-00236, 2020 WL 7753102 (S.D.W. Va. Dec. 29, 2020) ("*Blankenship*"); *Chafin v. Gibson,* 213 W.Va. 167, 172 (2003). A publication that is dedicated to reporting on political matters should know that falsely characterizing a candidate for the United States Senate as a "convicted felon" will harm his candidacy. Indeed, no felon has ever won a United States Senate seat. Nonetheless, the issue of "actual malice" is rarely appropriate for summary judgment because it involves determinations regarding a defendant's state of mind. *See e.g., Hutchinson v. Proxmire*, 443 U.S. 111, 120, n. 9 (1979). In determining whether actual malice exists, the crucial and often determinative factor is credibility. *See Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1072 (5th Cir. 1987). Thus, courts in the Fourth Circuit and otherwise have denied summary judgment because a genuine issue of material fact existed as to whether the defendant acted with "actual malice." *See e.g.*, *Fitzgerald v. Penthouse Int'l, Ltd.*, 691 F.2d 666, 670–71 (4th Cir. 1982)

In the instant case, adequate evidence of "actual malice" exists. For example, the FiscalNote Defendants violated their own standards, as well as accepted journalistic standards, in falsely reporting that Mr. Blankenship is a "convicted felon." This fact supports a finding of actual malice and should be considered by the jury in determining whether there was a reckless disregard of the truth. *Blankenship*, 451 F. Supp. 3d at 619.

Moreover, genuine issues of fact exist with respect to whether the author of the Article acted with "actual malice"—i.e., whether he recklessly or purposefully avoided the truth. It is difficult to believe that a publication like Roll Call and its "Politics Reporters" with extensive experience and involvement in politics and elections did not know of Mr. Blankenship's prior felony acquittals—a matter of public record. Indeed, a simple Google search would have revealed the truth. Thus, at the very least, genuine issues of fact exist with respect to whether the FiscalNote Defendants actually knew that their statements were false, or were reckless when they made the defamatory statements without first conducting research with respect to the contrary publicly available information. These disputed facts, if resolved in Mr. Blankenship's favor as required under the law, provide sufficient evidence from which a jury could infer that the

FiscalNote Defendants acted with actual malice. *Tomblin v. WCHS-TV8*, 434 F. App'x 205, 211 (4th Cir. 2011) (resolving disputed facts in plaintiff's favor and concluding that factual questions existed, which precluded the entry of summary judgment on defamation and false light claims).

Second, the FiscalNote Defendants contend that there is no evidence of an "intent to injure" Mr. Blankenship. In this regard, the FiscalNote Defendants, like many other defendants, cite to *Sprouse v. Clay Commc'n, Inc.*, 158 W. Va. 427 (1975) and wrongly claim that West Virginia law requires that political candidates suing for defamation prove both actual malice and an "intent to injure." As noted in the other Oppositions, a fair reading of *Sprouse* reveals this claim about the case to be false. However, because the Defendants persist in pressing their false reading of *Sprouse*, Mr. Blankenship provides additional discussion of why *Sprouse* does not hold as they claim at pages 12-14 of this brief.

Third, the FiscalNote Defendants claim that Mr. Blankenship cannot establish "resulting injury." Under West Virginia law, however, "[w]ritten words charging a person with the commission of any crime, whether a felony or a misdemeanor, are actionable without allegation or proof of special damages." *Milan v. Long,* 88 S.E. 618 (W. Va. 1916). "[W]here words are actionable per se, the person defamed need not aver or prove special damages ***or a resulting injury***." *Henick v. Fast-Track Anesthesia Assocs*., *LLC*, 2012 WL 5908939, at *6 (W. Va. Nov. 26, 2012) (emphasis added). Thus, Mr. Blankenship is not required to prove resulting injury or damages—they are presumed.

Last, the FiscalNote Defendants contend that Mr. Blankenship's false light invasion of privacy claim should be dismissed for the same reasons as his defamation claim. For the reasons discussed above, as well as those set forth below, there is a genuine issue of fact as to "actual malice" and "material falsity," precluding summary disposition. Furthermore, contrary to the FiscalNote Defendants' contention, the defamatory statement was "widely publicized" on the Internet. Thus, summary judgment with respect to this claim should also be denied.

On a motion for summary judgment, it is the FiscalNote Defendants' burden to establish the absence of any material facts as to Mr. Blankenship's claims. The FiscalNote Defendants

have failed to satisfy this burden. Thus, the FiscalNote Defendants' Motion for Summary Judgment should be denied in its entirety.

## II.   **STATEMENT OF MATERIAL FACTS**

According to the Roll Call website, "Roll Call is part of FiscalNote, the leading technology innovator at the intersection of global business and government." Roll Call claims to be "The Source For News On Capitol Hill Since 1955." The Roll Call website also provides in relevant part as follows:

> **About**
>
> CQ Roll Call provides essential intelligence and grassroots advocacy resources to take action. *As the premier source of timely news, objective facts and analysis, and coverage of elections and the politics of legislation, we keep our fingers on the pulse of the legislative process and give our clients the tools they need to maximize their influence. We are the ultimate insider, and our unmatched network of relationships and expertise has powered the productivity of those who rely on us since 1945*.
>
> …
>
> **Our Mission**
>
> In a world of media spin and special interest bias, CQ Roll Call has stayed true to its roots. From Capitol Hill hearing rooms to campaign war rooms, from the White House to the House and Senate floors, CQ Roll Call covers Congress, inside and out.
>
> As the leading provider of congressional news, legislative tracking and advocacy services, CQ Roll Call is the only media company that connects policy professionals and opinion leaders with the information and tools they need to understand and influence Congress.
>
> *CQ Roll Call has earned a reputation for delivering comprehensive, accurate and objective congressional reporting*. We help you track and understand the people, the politics and the process—and how these forces affect your interests. Moreover, CQ Roll Call provides an innovative array of channels to reach Capitol Hill, empowering private citizens and power players alike with the ability to position their message in front of members of Congress and their staff.[4]

---

[4] https://www.rollcall.com/about (emphasis added).

Despite the foregoing representation of delivering "accurate" and "objective" reporting, the FiscalNote Defendants defamed Mr. Blankenship by falsely calling him a "convicted felon." In this regard, on May 7, 2018, the FiscalNote Defendants published an online article entitled: "Blankenship Blames Establishment For 'Misinforming' Trump."  (ECF No. 903-4 ["Article"]). The first paragraph of the Article states:  "West Virginia GOP Senate candidate Don Blankenship suggested that establishment Republicans are 'misinforming' President Donald Trump and telling him to oppose his campaign 'because they do not want me to be in the U.S. Senate and promote the president's agenda,' **the convicted felon** and businessman wrote Monday morning on Facebook."  (ECF No. 903-4, p. 3 (emphasis added).)

The foregoing material facts beg the critical jury question—how much more reckless can a publication which claims to provide voters with political coverage of congressional elections be than to falsely label a leading candidate for the United States Senate a "convicted felon" the day before the Primary election?

## III.    <u>LEGAL STANDARD</u>

"Summary judgment is available only in those cases where it is not only perfectly clear that there exists no dispute as to the facts, but also where there is no dispute as to conclusions or inferences which may reasonably be drawn therefrom," and the burden to establish the absence of any disputed material fact is on the moving party.  *Pauley v. Combustion Engineering, Inc.,* 528 F. Supp. 759, 765 (S.D.W.V. 1981).  At the summary judgment stage, a court must view all facts and inferences reasonably drawn therefrom in the light most favorable to the nonmoving party. *Martin v. Duffy*, 977 F.3d 294, 305 (4th Cir. 2020) (citing Fed. R. Civ. P. 56(a)).  "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party."  *Matherly v. Andrews*, 859 F.3d 264, 279 (4th Cir. 2017).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge ... ruling on a motion for summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see also Martin*, 977 F.3d at 305. "[W]here affidavits present conflicting

versions of the facts which require credibility determinations, summary judgment cannot lie."
*Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016).

## IV.    ARGUMENT

### A.    FiscalNote May Be Held Liable For The Defamatory Article.

As a preliminary matter, the FiscalNote Defendants contend that summary judgment is warranted as to defendant Griffin Connolly, who was purportedly not the author of (and did not contribute to) the Article.  However, the FiscalNote Defendants admit that Eric Garcia, a staff writer at Roll Call, actually authored the Article containing the defamatory statement.  Thus, FiscalNote may be held liable for the defamatory statement in the Article, even if Mr. Connolly did not author the Article.[5]

### B.    The FiscalNote Defendants Have Not Met Their Burden To Establish The Absence Of Disputed Facts With Respect To Mr. Blankenship's Defamation Claim.

In their Motion for Summary Judgment, the FiscalNote Defendants contend that summary judgment should be granted with respect to Mr. Blankenship's defamation claim for four primary reasons.  As demonstrated below, the FiscalNote Defendants have not satisfied their burden of showing the absence of disputed facts with respect to any of these issues.

#### 1.    At The Very Least, There Is A Genuine Issue of Disputed Fact With Respect to "Actual Malice"

The FiscalNote Defendants contend that there is no clear and convincing evidence that they acted with "actual malice."  As a matter of law, "actual malice" requires that "the person

---

[5]    "An employer can be held vicariously liable for the tort of an independent contractor if the employer directed or took some affirmative part in the act from which injury resulted." *Palmer v. City of Yonkers*, 22 F. Supp. 2d 283, 287 (S.D.N.Y. 1998) (citing *Cubby, Inc. v. CompuServe, Inc.,* 776 F.Supp. 135, 143 (S.D.N.Y.1991) (citation omitted)).  Under the doctrine of apparent agency, courts applying West Virginia law have held that "[o]ne who by his acts or conduct has permitted another to act apparently or ostensibly as his agent, to the injury of a third person who has dealt with the apparent or ostensible agent in good faith and in the exercise of reasonable prudence, is estopped to deny the agency relationship." *All Med, LLC. v. Randolph Eng'g Co.*, 228 W. Va. 634, 641 (2012) (citing *Gen. Electric Credit Corp. v. Fields,* 148 W.Va. 176 (1963)).

who uttered the defamatory statement either knew the statement was false or knew that he was publishing the statement in reckless disregard of whether the statement was false." *Blankenship*, 451 F. Supp. 3d at 616; *Chafin v. Gibson*, 213 W. Va. 167, 172 (2003). The United States Supreme Court recognized in *New York Times Co. v. Sullivan*, 376 U.S. 254, 287 (1964) that actual malice is measured by the "persons . . . having responsibility" for the offensive publication. In this case, the persons responsible for calling Mr. Blankenship a "convicted felon" include anyone at FiscalNote and/or Roll Call who was involved in writing, editing, and/or publication of the Article, such as staff writer Eric Garcia.[6] (ECF No. 903-3.)

As a preliminary matter, the issue of "actual malice" is rarely appropriate for summary judgment because it involves determinations with respect to the defendant's state of mind. *See Hutchinson v. Proxmire*, 443 U.S. 111, 120, n. 9 (1979) (recognizing that the issue of "actual malice" "does not readily lend itself to summary disposition," since it "calls a defendant's state of mind into question"); *Denny v. Seaboard Lacquer, Inc.*, 487 F.2d 485, 491 (4th Cir. 1973) ("Where state of mind is at issue, summary disposition should be sparingly used."); *Nat'l Life Ins. Co. v. Phillips Pub., Inc.*, 793 F.Supp. 627, 632 (D.Md. 1992); *Henry v. Nat'l Ass'n of Air Traffic Specialists, Inc.*, 836 F.Supp. 1204, 1211 (D.Md. 1993), *aff'd*, 34 F.3d 1066 (4th Cir. 1994) ("Because the question of actual malice involves subjective evaluations, the Court is reluctant to take the malice determination from a jury.").

In determining whether actual malice exists, the crucial and often determinative factor is credibility. *See Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1072 (5th Cir. 1987) ("the drawing of inferences and the determination of credibility will still be a task for the factfinder," and the "present case hinges on just such determinations); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Accordingly, courts in the Fourth Circuit and otherwise have denied

---

[6]    Plaintiff believes this Court is not, and should not be bound by the limits of *New York Times Co. v. Sullivan* in the present circumstances. *See* Plaintiff's Statement filed along with the Opposition to Fox News Network, LLC's Motion for Summary Judgment. (ECF No. 923-20.)

summary judgment because a genuine issue of material fact existed as to whether the defendant acted with "actual malice."[7]

Notwithstanding the foregoing, "[a]ctual malice may be proven by circumstantial evidence." *See Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989). "[P]artisanship, animus toward the subject of a libel, or other 'malicious' motives" are not conclusive evidence of "actual malice" on their own, but a jury may consider them in determining "whether a subjective realization that the statement was false or a subjective realization that the statement was being published recklessly, existed at the time the statement was published." *Blankenship*, 451 F. Supp. 3d at 618 (citing *Hinerman v. Daily Gazette Co.*, 188 W.Va. 157 (1992)).

Although the failure to investigate is not alone sufficient to establish actual malice, this Court has emphasized that purposeful avoidance of the truth is a different matter. *Blankenship*, 451 F. Supp. 3d at 619 (citing *Harte-Hanks Commc'ns*, 491 U.S. at 688, 692). Moreover, a "newspaper's departure from accepted standards" may support a conclusion of reckless disregard of the truth. *Id.*; *see also Sprouse v. Clay Commc'n, Inc.*, 158 W. Va. 427 (1975) ("When a newspaper departs from an attempt to report the news objectively, the fact of such departure can be considered by the jury in a libel action and by an appellate court in determining whether there was a willful disregard of the truth.").

---

[7] *See e.g., Fitzgerald v. Penthouse Int'l, Ltd.*, 691 F.2d 666, 670–71 (4th Cir. 1982) (denying summary judgment motion because of the mere possibility that "plaintiff can meet his burden of proving that the defendants had actual doubts about the accuracy of the information they published and that their failure to make an adequate investigation will reveal a reckless disregard for the truth"); *Tomblin v. WCHS-TV8*, 434 F.App'x 205, 211 (4th Cir. 2011) (concluding that the disputed facts, if resolved in plaintiff's favor, provide evidence from which a jury could infer that defendant acted with reckless disregard of the truth); *Anaya v. CBS Broadcasting Inc.*, 626 F.Supp.2d 1158 (D.N.M. 2009); *Westmoreland v. CBS Inc.*, 596 F.Supp. 1170 (S.D.N.Y. 1984); *Pritt v. Republican Nat. Comm.*, 557 S.E.2d 853, 860-61 (W. Va. 2001); *Tharp v. Media General, Inc.*, 987 F.Supp.2d 673 (D.S.C. 2013).

In the instant case, a genuine issue of material fact exists as to "actual malice" for the reasons demonstrated below.

### i.        The FiscalNote Defendants Violated Their Own Standards

First, the FiscalNote Defendants violated their own standards in falsely stating that Mr. Blankenship is a "convicted felon."  As previously discussed, Roll Call claims to be "The Source For News On Capitol Hill Since 1955."  Roll Call further touts as follows:  "As the premier source of timely news, objective facts and analysis, and coverage of elections and the politics of legislation, we keep our fingers on the pulse of the legislative process and give our clients the tools they need to maximize their influence."  As part of Roll Call's "Mission," it makes the following representation:  "***Roll Call has earned a reputation for delivering comprehensive, accurate and objective congressional reporting***."[8]

Despite the foregoing representation of delivering "accurate" and "objective" reporting, the FiscalNote Defendants defamed Mr. Blankenship by falsely calling him a "convicted felon" the day before the 2018 Primary.  (ECF No. 903-4, p. 3.)  The FiscalNote Defendants also admit that there is no known FiscalNote or Roll Call policy relating to reporting on criminal activity or charges.  (ECF No. 903-3, p. 3.)  The failure to maintain such policies may also be considered as a departure from accepted journalistic standards.  *See Blankenship*, 451 F. Supp. 3d at 619 (a "newspaper's departure from accepted standards" may support a conclusion of reckless disregard of the truth).  This evidence must be considered by the jury in determining whether there was a reckless disregard of the truth and is inappropriate for summary judgment.  *Id.*; *Sprouse*, 158 W. Va. at 427.

### ii.        A Genuine Issue Of Fact Exists As To Whether The Author Acted With "Actual Malice"

In their Motion for Summary Judgment, Mr. Garcia admits to authoring the Article, which falsely states that Mr. Blankenship is a "convicted felon."  (ECF No. 903-3.)  In their defense, the

---

[8] https://www.rollcall.com/about (emphasis added).

FiscalNote Defendants merely claim that Mr. Garcia believed his statement to be true when made. (*Id.*)

In *St. Amant v. Thompson*, 390 U.S. 727 (1968), the United States Supreme Court rejected this very contention in the context of a motion for summary judgment, stating in relevant part:

> **The defendant in a defamation action brought by a public official cannot, however, automatically insure a favorable verdict by testifying that he published with a belief that the statements were true. The finder of fact must determine whether the publication was indeed made in good faith.** Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call. Nor will they be likely to prevail when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation. Likewise, recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports.

*Id.* at 732 (emphasis added); *Smith v. A Pocono Country Place Property Owners Ass'n, Inc.*, 686 F.Supp. 1053, 1062 (M.D. Pa. 1987) ("mere assertions that defendants thought the statement published was true and bare professions of good faith do not require a finding that actual malice does not exist"). Moreover, Mr. Garcia's state of mind when he made the defamatory statement requires a determination of credibility and, therefore, is improper on summary judgment for this additional reason. *See Zerangue*, 814 F.2d at 1072; *Fitzgerald*, 691 F.2d at 670–71.

In his declaration, Mr. Garcia states that he obtained the incorrect information that Mr. Blankenship is a "convicted felon" from prior news publications concerning Mr. Blankenship's West Virginia senate bid and his criminal history that Mr. Garcia located online. (ECF No. 903-3, p. 2.) However, a Google search would have undoubtedly revealed the true information about Mr. Blankenship having been acquitted of all felonies.

Critically, the Article was published on May 7, 2018 *after* Mr. Blankenship participated in a debate with the other two Primary candidates, which was televised nationally on the Fox

News Channel on May 1, 2018.  During this debate, Mr. Blankenship addressed his conviction and imprisonment right out of the gate, stating in no uncertain terms:  "I faced thirty years in prison for a fake charge, and ***I beat all three of the felonies***. … It's incredible, they sent me to prison for a misdemeanor.  I was the only prisoner there that was a misdemeanant."  (Exhibit 1 [Deposition of Don Blankenship, dated April 29, 2021 ("Blankenship Depo."), pp. 364:16-365:5 (emphasis added).)][9]  Thus, Mr. Blankenship made clear that, contrary to the defamatory remark at issue here, he was never convicted of a felony.

Mr. Garcia's declaration of "good faith" is particularly questionable considering the fact that Roll Call claims to be "the premier source of timely news, objective facts and analysis, and coverage of elections and the politics of legislation," with "its fingers on the pulse of the legislative process" and "the ultimate insider."  In this regard, Roll Call published numerous additional articles covering the 2018 West Virginia Primary and Mr. Blankenship and, thus, has obviously conducted extensive research into these topics.[10]  Moreover, Mr. Garcia claims to be an experienced "Politics Reporter" for this publication.[11]  Whether or not Mr. Garcia is credible, and whether or not he acted with reckless disregard for the truth in relying on a cursory online search while ignoring other publicly available information regarding the truth of Mr. Blankenship's felony acquittals, are ultimately questions for the jury to answer.  *See Tomblin*, 434 F.App'x at 211.  In fact, whether or not he searched for the true facts at all is a jury question.

### 2.     There Is Evidence Of An Intent To Injure Mr. Blankenship

Next, the FiscalNote Defendants argue that there is no evidence of an "intent to injure"

---

[9]  https://video.foxnews.com/v/5779097203001#sp=show-clips.

[10] *See e.g.*, https://www.rollcall.com/2018/05/07/why-don-blankenship-is-still-in-the-mix-on-eve-of-west-virginia-primary/; https://www.rollcall.com/2018/05/03/blankenship-insists-ad-that-attacks-mcconnells-china-family-is-not-racist/; https://www.rollcall.com/2018/05/08/patrick-morrisey-wins-west-virginia-gop-senate-primary/; https://www.rollcall.com/2018/02/20/scott-walker-backs-patrick-morrisey-in-west-virginia-senate-primary/;
https://www.rollcall.com/2018/02/09/jenkins-leads-morrisey-in-internal-poll-of-west-virginia-primary/; https://www.rollcall.com/2018/05/08/5-things-to-watch-on-primary-day-this-tuesday/.

[11] https://www.rollcall.com/author/eric-garcia.

Mr. Blankenship.  As a matter of logic, any publication and/or journalist that falsely labels a candidate for the United States Senate a "convicted felon" (when in truth, he is not) obviously intended to injure that candidate by destroying any chance of him winning the election.

The FiscalNote Defendants primarily rely on *Sprouse v. Clay Commc'n, Inc.*, 158 W. Va. 427 (1975) for this proposition.  The FiscalNote Defendants join with several other defendants (including Fox News, MSNBC, and CNN, among others) in misreading *Sprouse* as adding the requirement that a public-figure plaintiff must prove not just actual malice, but that the defaming party acted with an "intent to injure."[12]

The defendants did not argue for the existence of this "intent to injure" requirement in their motions to dismiss.  To the contrary, CNN did not mention "intent to injure" when it outlined the standard for actual malice: "It has long been settled that a public official or figure must plead and prove that alleged defamation was published 'with "actual malice"—that is, with knowledge that it was false or with reckless disregard of whether it was false or not.'"  (ECF No. 196, p. 12.)  Fox News argued similarly: "Accordingly, Blankenship must plead and prove 'actual malice'—that the Fox News Defendants acted 'with knowledge that [their speech] was false or with reckless disregard of whether it was false or not.'"  (ECF No. 218, p. 9.)

Furthermore, in its Order on the Motions to Dismiss, this Court specifically described the test for actual malice without adding a requirement of an "intent to injure."  *Blankenship*, 451 F. Supp. 3d at 615–16 ("Public officials or candidates for public office must prove three elements by clear and convincing evidence in order to recover in a defamation action: (1) there was the publication of a defamatory statement of fact or a statement in the form of an opinion that implied the allegation of undisclosed defamatory facts as the basis for the opinion; (2) the stated or implied facts were false; and, (3) the person who uttered the defamatory statement either knew the statement was false or knew that he was publishing the statement in reckless disregard of

---

[12] *See* ECF Nos. 883 at 11-12; 885 at 3, 12, 19; 887 at 1, 11, 19-20; 889 at 15, 21; 891 at 19; 899 at 12, 15; 901 at 5, 9; 904 at 5, 7, 11; 934 at 2; 935 at 13-14; 936 at 15; 938 at 4; 940 at 12.

whether the statement was false."). Moreover, this Court cited to *Sprouse* along with its discussions of actual malice and did not recognize the "additional element" that Defendants now wrongly argue that *Sprouse* requires. *Id*. at 616.

The Court should reject Defendants' invitation to rewrite the elements of actual malice. At the outset, it is important to recognize that *Sprouse* must be read in the context in which it arose. The decision was published about a decade after *New York Times v. Sullivan* at a point when the parameters of the actual malice doctrine were still being defined. *Sprouse*, 211 S.E.2d at 680. Indeed, the Court in *Sprouse* emphasized that it was a question of *first impression* of whether a newspaper's decision to join with a candidate to intentionally discredit (injure) his opponent was evidence relevant to proving actual malice. *Id*. But when *Sprouse* articulates the test for actual malice it makes no mention of "intent to injure" and does not deviate from *Sullivan*: "Consequently, in order for the evidence in this case to withstand appellate review it is necessary that the plaintiff, Sprouse, demonstrate that the defendant Daily Mail knew that the defamatory material contained in the articles it printed was false or for plaintiff to demonstrate that the Daily Mail was reckless and willful in its indifference to the truth of the printed material." *Id*. at 682.

In fact, *Sprouse's* discussion of "intent to injure" is **never** in the context of **adding** to *Sullivan's* description of actual malice, but rather **deciding whether evidence of intent to injure is relevant to actual malice**. *Id*. at 681-82, 690-91. Indeed, the Court makes this point explicitly: "Nevertheless when [*Associated Press* v.] *Walker* [388 U.S. 130 (1967)] and *Curtis* [*Publishing Company v. Butts*, 388 U.S. 130 (1967)] are read together they still stand for the proposition that personal motives on the part of a newspaper, or participation by a newspaper in a plan or scheme to injure, **is evidence of** recklessness and willful disregard for truth which may be considered along with other evidence on the question of actual malice." *Id*. at 688 (emphasis added).

Notably, in *Matter of Callaghan*, 796 S.E.2d 604 (W. Va. 2017) – a defamation matter involving a judicial candidate decided long after *Sprouse* – the Court did not even reference the

issue of "intent to injure" much less require proof of such to show actual malice.  Rather, the Court cited *United States v. Alvarez*, 567 U.S. 709 (2012) as follows:  "[I]n order to prevent the chilling of truthful speech on matters of public concern, we have held that liability for the defamation of a public official or figure *requires proof that defamatory statements were made with knowledge or reckless disregard of their falsity.*"  *Callaghan*, 796 S.E.2d at 623.

Likewise, a federal court citing *Sprouse* has observed that the "intent to injure" is just one example of evidence of actual malice:  "In defamation law, malice has a narrow meaning. *Sprouse v. Clay Communication, Inc.*, 211 S.E.2d 674 (W. Va. 1975).  It requires not only a deliberate intent to injure, but also an intent to injure through the publication of false or misleading defamatory statements known by the publisher or its agents to be false.  ***Alternatively***, malice can be manifested by an intent to injure through publication of such statements with reckless and willful disregard for their truth."  *McKinney v. K-Mart Corp.*, 649 F. Supp. 1217, 1221-22 (S.D.W. Va. 1986) (emphasis added).

Simply put, Defendants have not, because they cannot, cite this Court to a case where a defendant's case was tossed on summary judgment or otherwise because it proved actual malice, but did not also separately and additionally prove an "intent to injure."

### 3.      There Is Sufficient Evidence Of "Material Falsity"

In a footnote on page 7 of their Motion for Summary Judgment, the FiscalNote Defendants assert the "substantial truth" defense.   This argument fails in the context of a motion for summary judgment.   To successfully assert this defense, Defendants must *prove* that the statements were "substantially true," and that any minor misstatements of fact or inaccuracies of expression were immaterial.  *See Saleeby v. Free Press, Inc.*, 91 S.E.2d 405, 407 (Va. 1956) (submitting question of whether alleged libelous statements were "substantially true" to the jury).  Accordingly, the substantial truth defense is normally a jury question and, therefore, inappropriate on a motion for summary judgment.  *See Glob. Relief Found., Inc. v. New York Times Co.*, 390 F.3d 973, 987 (7th Cir. 2004) (recognizing that the defense of substantial truth is normally a jury question) (citing numerous supporting cases); *see also Aurora World, Inc. v. Ty*

14

*Inc.*, 2010 WL 11506546, at *13 (C.D. Cal. Aug. 24, 2010) ("Generally, the substantial truth of a statement is a question of fact for the jury.").

Notwithstanding the above, the FiscalNote Defendants claim that references to Mr. Blankenship as a "felon" are "substantially true" and do not render the statements materially false. This Court has previously rejected this very argument and it should likewise be rejected on summary judgment. In rejecting the substantial truth defense, this Court emphasized in relevant part:

> **All the defendants' statements identifying the plaintiff as a "felon" are materially false. The term "felon" is an objective label with a clear legal meaning** – having been convicted of a crime with a term of imprisonment of more than one year. ***A person either is or is not a felon; there is no in between or room for "substantial truth."*** The United States Code clearly outlines the difference between a felony and a misdemeanor even when the criminal statute does not clarify the category of the crime. ***The different consequences associated with being a felon, including that "felons can suffer numerous restrictions on their constitutional rights," further underscore that the two categories are distinct***. [citations] ("After all, ***felons lose out on fundamental rights such as voting*** and serving on juries, and face discrimination that need only survive rational basis review."). ***The court also agrees that "society at large views a 'felon' far differently than a person who has committed an offense resulting in a misdemeanor conviction."*** Myers v. The Telegraph, 332 Ill. App. 3d 917, 198 (2002).

*Blankenship*, 451 F. Supp. 3d at 617–18 (emphasis added).

In assessing the substantial truth doctrine, context matters. Thus, the defamatory statements at issue must be considered in context—i.e., they were made during an election in a state which prohibits felons from holding public office or voting. *See* W. Va. Code § 3-2-2(b); W. Va. Const. art. IV, § 4-4. The implication that Mr. Blankenship would not be allowed to vote for himself as a candidate make the true facts highly distinct from the false statements. *Myers*, 332 Ill. App. 3d at 922 (recognizing that a felony conviction carries significantly greater legal consequences than a misdemeanor does, including limitations on the right to hold public office and vote). Considering the context of the defamatory statements here further supports rejecting

the substantial truth defense.  Clearly, there is a critical distinction between a "felon" and a "misdemeanant," in light of the fact that Mr. Blankenship would not be able to hold public office and/or vote for himself if the defamatory remarks were actually true.  This would obviously affect public perception of Mr. Blankenship's candidacy for the United States Senate.  Thus, the subject defamatory statements would undoubtedly have a different effect on the mind of viewers (and voters) from that which the truth would have produced.

### 4.    There Is Evidence Of Harm To Mr. Blankenship

### i.    "Resulting Injury" Is Presumed

The FiscalNote Defendants claim that there is no evidence they caused Mr. Blankenship any harm from their defamatory statement.  However, contradictory evidence shows that Mr. Blankenship was leading in the polls, yet ultimately lost the election after the defamatory remarks, among other damages.  Moreover, the notion that falsely calling a candidate a "convicted felon" does not cause him harm is nonsensical.  This is why the law recognizes statements that are defamatory *per se*—they are so egregious that they will always be considered defamatory and harmful.  As previously discussed, society brands a person a "convicted felon" and deprives him of various rights for the very purpose of punishing that person for his misconduct.  Publicly branding a person a "convicted felon" who is not, effectively harms that person in the same way as if he actually was a "convicted felon."

Under West Virginia law, "[w]ritten words charging a person with the commission of any crime, whether a felony or a misdemeanor, are actionable without allegation or proof of special damages."  *Milan v. Long,* 88 S.E. 618 (W. Va. 1916); *Colcord v. Gazette Pub. Co.,* 145 S.E. 751, 753 (W. Va. 1928) ("Any printed or written publication imputing to another a crime or moral delinquency is actionable *per se*"); *England v. Daily Gazette Co.,* 143 W. Va. 700, 711 (1958); *Ballock v. Costlow*, 2017 WL 9620421 at *16 (N.D. W. Va. December 6, 2017); *Sweeney v. Baker*, 13 W. Va. 158, 185 (1878); *Johnson v. Brown*, 13 W. Va. 71 (1878); *Alderson v. Kahle*, 73 W. Va. 690 (1914); *Richard H. v. Rachel B.*, 2018 WL 2277775, at *1 (W. Va. May 18, 2018).

"[W]here words are actionable per se, the person defamed need not aver or prove special damages *or a resulting injury*." *Henick v. Fast-Track Anesthesia Assocs.*, *LLC*, 2012 WL 5908939, at *6 (W. Va. Nov. 26, 2012) (emphasis added); *see also Via v. Comm'ns Corp. of Am., Inc.*, 311 F. Supp. 3d 812, 822 (W.D. Va. 2018) (recognizing that the law presumes that the plaintiff suffered actual damage to her reputation for defamatory *per se* statements, and, therefore, no proof of damages is required).  Thus, Mr. Blankenship is not required to prove resulting damages or injury—they are presumed.  *See id.*

In their Motion for Summary Judgment, the FiscalNote Defendants dispute that the statement "convicted felon" constitutes defamation *per se*.  The FiscalNote Defendants' reliance on *Richard H.* is misplaced.  In *Richard H.*, the Court recognized that "it is not necessary to aver and prove special damages in order to entitle the plaintiff to general damages" in an action alleging defamation *per se* because "[t]he law implies all such damages as are the natural and probable consequence of the words so spoken or written, in all cases where the words are actionable *per se*."  2018 WL 2277775, at *5.  The same reasoning applies to the instant case and weighs against granting summary judgment.

Contrary to the FiscalNote Defendants' contention, the subject statement constitutes defamation *per se*.  *See Neal*, *supra,* 159 W. Va. at 557–59; *Milan*, *supra,* 78 W. Va. at 102; *Sweeney*, 13 W. Va. at 185.  Thus, no proof of resulting damages or injury is required.

### ii.        Causation And Damages Are Factual Issues For The Jury

Notwithstanding the above, the issues of causation and damages are highly factual and inappropriate for summary judgment.  In their Motion for Summary Judgment, the FiscalNote Defendants argue that Mr. Blankenship has not provided any evidence of any injury caused by them specifically.  The FiscalNote Defendants make three arguments, each of which fails for the reasons set forth below.

First, the FiscalNote Defendants claim that Mr. Blankenship has not submitted any evidence that anyone in West Virginia read the Article or voted against him in the Primary in

reliance on the defamatory statement in the Article.  However, as previously discussed, the resulting injury from the Article is presumed because the subject statement is defamatory *per se*.

Second, the FiscalNote Defendants claim that Mr. Blankenship "cannot demonstrate injury generally."  They then selectively cite to a couple of Mr. Blankenship's interrogatory responses.  (Citing to ECF No. 883, Exhibit 9 at 2, 4).)  The FiscalNote Defendants ignore that questions of fact for the jury are inherently created by several additional points made by Mr. Blankenship in his Supplemental Response to Interrogatory 6:  "Plaintiff will establish through expert testimony and by his own testimony that business organizations will not even consider hiring Plaintiff as a CEO or appointing Plaintiff to a corporate board after Plaintiff was falsely branded as a 'convicted' felon by Defendant's defamatory statements."  (*Id.*)  Mr. Blankenship emphasizes that his losses must be measured in light of his enormous success as the CEO of Massey.  (*Id.*)  The FiscalNote Defendants also ignore Mr. Blankenship's testimony about his inability to earn money as an executive and/or board member in the private equity energy world based on his substantial experience as a CEO and corporate board member.  (Exhibit 2 [Deposition of Don Blankenship, dated November 18, 2020 ("Nov. 18 Blankenship Depo.")] pp. 259:19-262:10, 272:25-273:9.)  He testified that executive positions, board memberships and the ability to participate in the private energy equity world are foreclosed to him because any of his employers or partners would incur pressure and pushback from regulators, permitting agencies, banks, etc. against hiring him.  (*Id.* at pp. 269:25-270:11, 270:22-271:24, 272:25-273:23, 275:24-276:11).  This and other data formed the basis for the Expert Report provided by Stan V. Smith, Ph.D. who calculated a range of damages attributable to Defendants' conduct.  (Exhibit 3 [Expert Report of Dr. Smith].)  The FiscalNote Defendants also ignore Mr. Blankenship's answer that he spent $10 million in repairing his reputation (a point also discussed in his deposition.)  (Nov. 18 Blankenship Depo. pp. 272:25-273:9, 279:4-10.)

Although the actual loss of an election is more difficult to prove, it remains a question for the jury.  *Robb v. Lincoln Publ'g (Ohio), Inc.*, 683 N.E.2d 823, 841 (Ohio 1996) (special damages arising from an election were for jury to decide).  Indeed, there is evidence that Mr. Blankenship's

poll numbers after his debate performance vaulted him into the lead.  It is ultimately for a jury to decide what role the FiscalNote Defendants played in the election and the resulting damages.

Third, the FiscalNote Defendants claim that "Plaintiff cannot possibly demonstrate that the Article caused injury against a "backdrop of decades of negative publicity."  Again, the resulting injury from the Article is presumed because the subject statement is defamatory *per se*. *Henick*, 2012 WL 5908939, at *6.  Moreover, whether the Article caused injury in light of other alleged "negative publicity" is a jury function that requires the weighing of evidence.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  In making their argument, the FiscalNote Defendants improperly conflate the issue of "causation" with the role of a jury to apportion damages among multiple tortfeasors.  *Strahin v. Cleavenger*, 603 S.E.2d 197, 211 (W. Va. 2004) (where multiple tortfeasors' conduct coincide to cause an injury they are jointly and severally liable).  It is the function of the jury to apportion damages among multiple wrongdoers.  *Tracy v. Cottrell ex rel. Cottrell*, 524 S.E.2d 879, 897 (W. Va. 1999).

### C.    The FiscalNote Defendants Have Not Met Their Burden To Establish The Absence Of Disputed Facts With Respect To Mr. Blankenship's False Light Invasion of Privacy Claim.

The FiscalNote Defendants contend that Mr. Blankenship's false light invasion of privacy claim fails for the same reasons that his defamation claim fails.[13]  For the reasons discussed above, there are genuine issues of material fact with respect to "actual malice" and "material falsity," precluding summary disposition as to both of Mr. Blankenship's claims.

The FiscalNote Defendants also argue that Mr. Blankenship cannot show "widespread publicity" in connection with this claim.  This Court, however, has not recognized "widespread publicity" to be an essential element of this claim.  *Id.*   To the extent this is a requirement, it has been satisfied here.  For example, in *Imagine Medispa, LLC v. Transformations*, *Inc.*, the Court reasoned   that   the   subject   Facebook   profile   "existed   on   the   Internet,   making   it

---

[13] "West Virginia courts … treat false light privacy claims in essentially the same manner as they treat defamation claims."  *Blankenship*, 451 F. Supp. 3d at 620.

necessarily widespread." 999 F. Supp. 2d 873, 887–88 (S.D.W. Va. 2014). Here, the subject defamatory article was published on the Internet, making it necessarily widespread. *See id*.

The FiscalNote Defendants mistakenly rely on *Giles v. Kanawha Cty. Bd. of Educ.*, 2018 WL 300605 (W. Va. Jan. 5, 2018), which is distinguishable. In *Giles*, the Court determined that "the statements are not provably false because they reflected Thaw's personal opinions." *Id*. at *5. Contrary to the FiscalNote Defendants' contention, the claim was not dismissed simply because the underlying facts were "already widely publicized."

## V.    **CONCLUSION**

For the reasons demonstrated above, Mr. Blankenship respectfully requests that the Court deny the FiscalNote Defendants' Motion for Summary Judgment in its entirety.

Respectfully submitted,

DON BLANKENSHIP
By Counsel

/s/ Jeremy Gray
**Eric P. Early, Esq.**
**(CA State Bar No. 166275, *pro hac vice*)**
**Jeremy Gray, Esq.**
**(CA State Bar No. 150075, *pro hac vice*)**
*EARLY SULLIVAN WRIGHT*
*GIZER & McRAE LLP*
**6420 Wilshire Blvd., 17th Floor**
**Los Angeles, CA 90048**
**323.301.4660**
**eearly@earlysullivan.com**
**jgray@earlysullivan.com**

/s/ Jeffrey S. Simpkins
**Jeffrey S. Simpkins, Esq.**
**WVSB #9806**
*SIMPKINS LAW*
**102 E. 2nd Ave.**
**Williamson, WV 25661**
**304.235.2735**
**simpkinslawoffice@gmail.com**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON DIVISION**

DON BLANKENSHIP,

                 Plaintiff,

      vs.

FOX NEWS NETWORK, LLC, et al.

               Defendants.

Case No.: 2:19-cv-00236

[Honorable Omar J. Aboulhosn]

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 21st day of June 2021, I electronically filed the foregoing "**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF DON BLANKENSHIP'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS FISCALNOTE AND GRIFFIN CONNOLLY**" with the Clerk of Court using the CM/ECF system which will send notice to all CM/ECF participants.

/s/ Jeremy Gray
Jeremy Gray
(CA State Bar No. 150075, pro hac vice)
EARLY SULLIVAN
  WRIGHT GIZER & MCRAE LLP
6420 Wilshire Boulevard, 17th Floor
Los Angeles, California 90048

/s/ Jeffrey S. Simpkins
Jeffrey S. Simpkins (WVSB # 9806)
SIMPKINS LAW
102 E. 2nd Avenue
Williamson, West Virginia 25661

5.1

# Exhibit 1
# Excerpts from Deposition of Don Blankenship Taken on April 29, 2021

**In the Matter Of:**

*BLANKENSHIP vs*

*FOX NEWS NETWORK*

---

*DON BLANKENSHIP*

*April 29, 2021*

---

Don Blankenship - April 29, 2021

12

```
1              P R O C E E D I N G S

2                   THE VIDEOGRAPHER:  All right.

3         Good morning.  We are now on the record.

4         My name is Rick Christian.  I'm the

5         videographer retained by Lexitas.

6              Today's date is April 29th 2021,

7         and the video time is 9:18 a.m. Eastern.

8         This deposition is in the matter of Don

9         Blankenship v. Fox News Network LLC, et

10        al.  The deponent is Don Blankenship.

11             Counsel will be noted on the

12        stenographic record.

13             The court reporter is

14        Giselle Mitchell, and will now swear in

15        the witness.

16                   DON BLANKENSHIP

17   Having been duly sworn testified as follows:

18                   MR. REGAN:  Giselle, do we need

19        to take appearances of counsel and

20        everyone who's on?

21                   THE COURT REPORTER:  I can't

22        see who's speaking.

23                   MR. SIMPKINS:  Jeff Simpkins;

24        Simpkins Law.
```

Don Blankenship - April 29, 2021

364

1    sentence period, under federal law?

2              MR. SIMPKINS:  Objection as to

3        form.

4              **THE WITNESS:  But that --**

5              MR. SIMPKINS:  The question is

6        absurd.

7          But you can answer.

8              **THE WITNESS:  Yeah.  You could**

9        **add to that, prior to an appeal.  Though**

10       **I've never heard of anyone, and I don't**

11       **know that anyone in the media has.**

12         **But, if not, you would think they**

13       **would find that to be unusual, and put**

14       **the whole prosecution in question.**

15   BY MR. REGAN:

16       Q.   It would be very unusual.  Right?

17   That's the whole point.  It is very unusual.

18   You are the only one.  Right?

19       **A.   Yeah.  So, I mean, I don't know**

20   **what, exactly, your point is.  But I made it**

21   **very clear, on many programs, including Fox**

22   **Debate, that I was sent to prison for a**

23   **misdemeanor.**

24       Q.   And Fox gave you that opportunity to

Don Blankenship - April 29, 2021

365

1    make that.  Right?  Fox -- Fox hosted the

2    debate of -- of this primary?

3         A.   Yeah.  Several days before they

4    called me a felon, and a convicted felon,

5    several more times.

6         Q.   The Fourth Circuit U.S. Court of

7    Appeal ruled against you on your appeal from

8    your conviction.  Correct?

9         A.   Yes.

10        Q.   And you asked the United States

11   Supreme Court for a writ of certiorari on that

12   question.  Correct?

13             MR. SIMPKINS:  Objection as to

14        form.

15        A.   Yes.

16        Q.   And the Supreme Court denied that

17   too.  Correct?

18        A.   Yes.

19        Q.   And once you had exhausted all those

20   appeals, you filed a petition for a writ of

21   habeas corpus, to vacate your conviction.  Is

22   that correct?

23             MR. SIMPKINS:  Objection as to

24        form.

USCA4 Appeal: 22-1198    Doc: 64    Filed: 05/25/2022    Pg: 185 of 282
Case 2:19-cv-00236   Document 947-1   Filed 06/21/21   Page 6 of 7 PageID #: 16038

Don Blankenship - April 29, 2021

505

1              REPORTER'S   CERTIFICATE

2

3          I, GISELLE MITCHELL-MARGERUM, the undersigned,
   a Registered Professional Reporter, Certified
4  Reporting Instructor, Licensed Court Reporter, and
   Certified Court Reporter, do hereby certify:
5
           That the witness, DON BLANKENSHIP, before
6  examination was remotely duly sworn to testify to
   the truth, the whole truth, and nothing but the
7  truth.

8          That the foregoing deposition was taken
   remotely stenographically by me on Thursday, April
9  29, 2021, and thereafter was transcribed by me, and
   that the deposition is a full, true, and complete
10 transcript of the testimony, including questions
   and answers, and objections, motions and exceptions
11 made by counsel.

12         That reading and signing was not requested;
   and that I am neither attorney nor counsel for, nor
13 related to or employed by, any of the parties to
   the action in which this deposition was taken; and
14 that I have no interest, financial or otherwise, in
   this case.

15

16         IN WITNESS WHEREOF, I have hereunto set
   my hand this 4th day of May       2021.

17

18

19

20

21 GISELLE MITCHELL-MARGERUM, RPR, CRI, CCR, LCR, CSR

22

23

24

Don Blankenship - April 29, 2021

506

1

2                      CERTIFICATE OF DEPONENT

3

4    I, DON BLANKENSHIP, hereby certify that I have read
     the foregoing pages, numbered 1 through 504, of my
5    deposition of testimony taken in these proceedings
     on Thursday, April 29, 2021 and, with the exception
6    of the changes listed on the next page and/or
     corrections, if any, find them to be a true and
7    accurate transcription thereof.

8

9

10

11

12   Signed:   ........................

13   Name:    DON BLANKENSHIP

14   Date:    ........................

15

16

17

18

19

20

21

22

23

24

# EXHIBIT 2
# Excerpts from Deposition of Don Blankenship taken on November 18, 2020

```
 1            IN THE UNITED STATES DISTRICT COURT
 2          FOR THE EASTERN DISTRICT OF VIRGINIA
 3                    ALEXANDRIA DIVISION
 4
 5   _____
 6   DON BLANKENSHIP          )Civil Action No.
                              )1:20-cv-00429-LMB-IDD
 7        Plaintiff           )
                              )
 8   v.                       )
                              )
 9   KEVIN McLAUGHLIN, et al.,)
                              )
10        Defendants          )
     _____
11

12

13

14            - C O N F I D E N T I A L -

15

16      Zoom Videotaped Deposition of Don Blankenship

17                   November 18, 2020

18                      10:09 a.m.

19

20

21

22

23

24   Reported by:  Bonnie L. Russo

25   Job No. 186668
```

1   Zoom Videotaped Deposition of Don Blankenship

2   held through:

3

4

5

6                  TSG Reporting

7                  228 E. 45th Street

8                  Suite 810

9                  New York, New York 10017

10

11

12

13

14

15

16

17

18

19

20

21

22   Pursuant to Notice, when were present on behalf

23   of the respective parties:

24

25

USCA4 Appeal: 22-1198   Doc: 64       Filed: 05/25/2022   Pg: 190 of 283
Case 2:19-cv-00236   Document 947-2   Filed 06/21/21   Page 4 of 19 PageID #: 16043

Confidential

Page 3

```
 1    APPEARANCES:

 2

 3

 4    On behalf of the Plaintiff:

 5        BY: JEFFREY SIMPKINS, ESQ.

 6            MICHAEL SPARKS, ESQ.

 7        SIMPKINS LAW OFFICE

 8        102 E. 2nd Avenue

 9        Williamson, West Virginia 25661

10

11

12        BY: JEREMY GRAY, ESQ.

13            LISA ZEPEDA, ESQ.

14        EARLY SULLIVAN WRIGHT GIZER & McRAE

15        6420 Wilshire Boulevard

16        Los Angeles, California 90048

17

18

19

20

21

22

23

24

25
```

USCA4 Appeal: 22-1198    Doc: 64    Filed: 05/25/2022    Pg: 191 of 282
Case 2:19-cv-00236 Document 947-2 Filed 06/21/21 Page 5 of 19 PageID #: 16044
Confidential

Page 4

```
 1    APPEARANCES (CONTINUED):

 2

 3    On behalf of the Defendants:

 4        BY: DAVID TORBORG, ESQ.

 5            STEPHEN KENNY, ESQ.

 6        JONES DAY

 7        51 Louisiana Avenue, N.W.

 8        Washington, D.C. 20001

 9

10

11

12

13

14

15

16

17

18

19    Also Present:

20    Mark von Lanken, Videographer

21

22

23

24

25
```

1                    DON BLANKENSHIP

2              MS. ZEPEDA:  Lisa Zepeda on behalf

3    of Don Blankenship.

4              THE VIDEOGRAPHER:  Will the court

5    reporter please swear in the witness.

6

7                    DON BLANKENSHIP,

8    being first duly sworn, to tell the truth, the

9        whole truth and nothing but the truth,

10              testified as follows:

11       EXAMINATION BY COUNSEL FOR DEFENDANTS

12              BY MR. TORBORG:

13       Q.    Good morning, Mr. Blankenship.

14       A.    Morning.  How are you?

15       Q.    Good.  Again, my name is David

16    Torborg, I'm with the law firm of Jones Day.

17    We represent Kevin McLaughlin in connection

18    with a case that you brought against him

19    pending in the United States District Court for

20    the Eastern District of Virginia.

21              You understand that you are

22    appearing for your deposition in that matter

23    today, correct?

24       A.    Yes.

25       Q.    Can you hear me okay?

USCA4 Appeal: 22-1198    Doc: 64       Filed: 05/25/2022   Pg: 193 of 282
Case 2:19-cv-00236   Document 947-2   Filed 06/21/21   Page 7 of 19 PageID #: 16046
Confidential

Page 259

1                    DON BLANKENSHIP

2          A.     Okay.

3          Q.     Okay.   In this interrogatory we ask

4     that you describe the basis for your allegation

5     that the defamation of Mr. Blankenship as a

6     felon so smeared his reputation that he has

7     been prevented from pursuing other businesses

8     and opportunities in generating returns of

9     billions of dollars, including identifying a

10    business and opportunities lost and the basis

11    for the contention that any lost businesses and

12    opportunities resulted from the alleged

13    conspiracy and/or McLaughlin's alleged" --

14    "allegedly defamatory statement rather than

15    plaintiff's criminal record."  It cites

16    Complaint Paragraph 48.

17            Do you see that?

18         A.     Yes.

19         Q.     Okay.   And then I want to ask you

20    about some of the specifics in your response to

21    this interrogatory.   At the bottom of Page 12,

22    you state that you were invited to serve and in

23    fact did serve on the board of directors of

24    Fluor Corporation.

25            Do you see that?

DON BLANKENSHIP

1

2    A.   Yes.

3    Q.   And --

4    A.   Fluor, F-L-U-O-R. It's not flowers;

5  it's Fluor.

6    Q.   Yeah. I misspoke.

7    Was the Fluor Corporation the former

8  parent of Massey?

9    A.   Before Massey was spun off to be

10  public in -- I don't know. 1990 or something.

11  19 something like that.

12    Q.   My research said it was November of

13  2000. Does that sound about right to you?

14    A.   Yeah. I'm sorry. We split with

15  Shell in 1990 probably, so anyway, it all runs

16  together.

17    Q.   When did you serve on the board of

18  the -- the Fluor Corporation?

19    A.   I don't remember the exact years,

20  but it was during a period of time that I was

21  president of Massey, so probably from 1990 to

22  2000, something like that. Probably 1992 or

23  '3, something.

24    Q.   Were you serving on the board of the

25  Fluor corporation at the time or immediately

Page 261

DON BLANKENSHIP

2  before your retirement from Massey?

3      A.    No.   Once Massey was spun off to the

4  public and I became the president of Massey, I

5  guess, for -- you know, I don't know if it's

6  the law or the rules, but for the appearances I

7  was separated from Fluor so that Massey would

8  be viewed as being independent of Fluor.

9      Q.    You also state that you served on

10  the board of Witco Chemical?

11      A.    Yes.

12      Q.    And what kind of company is that?

13      A.    It was a chemical company

14  headquartered in Greenwich, Connecticut that

15  was merged into -- I can't remember, another

16  chemical company.  I don't know what year that

17  was either but probably late 1990s or 2000.

18      Q.    When did you serve on the board of

19  Witco Chemical?

20      A.    That's what I said.  I think in the

21  late 1990s, but I'm not -- I'm not sure.

22      Q.    And is the reason that you ceased

23  serving on the board was the -- I believe you

24  said there was a merger with another company?

25      A.    Yes.

USCA4 Appeal: 22-1198    Doc: 64    Filed: 05/25/2022    Pg: 196 of 282
Case 2:19-cv-00236   Document 947-2   Filed 06/21/21   Page 10 of 19 PageID #: 16049
Confidential

Page 262

```
 1                    DON BLANKENSHIP
 2        Q.     Do you have -- and that was in the
 3   late 1990s you said?
 4        A.     My memory is very, very vague of it,
 5   so I -- I shouldn't guess.  But I would think
 6   it was some time in that frame.
 7        Q.     Okay.  Let me ask you to go to the
 8   bottom of Page 13, last full paragraph starting
 9   with:  "A component of the harm."
10        A.     Yes.
11        Q.     It states:  "A component of the harm
12   suffered by Mr. Blankenship will be lost
13   opportunities, business and otherwise.  By
14   their nature, the precise nature of these lost
15   opportunities is either difficult to quantify
16   or otherwise unknown to Mr. Blankenship and
17   will be the subject of investigation and
18   discovery."
19               Do you see that?
20        A.     Yes.
21        Q.     Okay.  What investigation have you
22   done to identify the nature of the lost
23   opportunities referenced in your response?
24        A.     Well, we engaged an expert who
25   studied -- you know, had some time with me and
```

```
 1                    DON BLANKENSHIP
 2        Q.     Are you aware of any particular
 3   companies that would have hired you as the CEO
 4   after the 2018 primary but for Mr. McLaughlin's
 5   statement?
 6        A.     As I said repeatedly, I don't think
 7   that any individual statement is solely
 8   responsible.  I think that the multitude of
 9   false statements much like those that you asked
10   me about earlier and these other issues.  I
11   mean, it's -- it's a continuation that I have
12   tried to stop.  I ran for the U.S. Senate,
13   spent millions of dollars making sure that
14   people knew the truth when people knew the
15   truth.  I took the lead in the polls, and the
16   media stepped up and created the same problem
17   with Kevin McLaughlin, Karl Rove, and others.
18        Q.     Have you expressed your interest to
19   any company about serving as their CEO?
20        A.     I have not because I know that
21   companies do not hire people who they believe
22   are felons, and I am pretty engaged in this
23   lawsuit and other things.  But I hope to as
24   soon as I win this lawsuit.
25        Q.     So you don't think you -- if -- if a
```

1          DON BLANKENSHIP

2    company really wanted to hire you as a CEO,

3    that they couldn't do their own research and

4    determine whether you were in fact a felon?

5         A.    They could do their own research and

6    determine that, but they would not be able to

7    withstand the pressure of the Security and

8    Exchange Commission of hiring a chairman who is

9    believed by the public because of false

10   statements by the Republican establishment and

11   the media that you are a felon.

12        Q.    How do you know that the public

13   believes that you are a felon.  What's the

14   basis for that?

15        A.    Well, because I know that they are

16   greatly influenced by the media because I have

17   seen it when I have used the media to run ads

18   and -- and won elections and when I turned my

19   unfavorables and so forth around through ads

20   that I know that people believe what they see

21   on TV because they expect it to be the truth.

22        Q.    Have you spoken with anyone in

23   connection with seeking any employment

24   opportunities?

25        A.    Again, I haven't I think I just

USCA4 Appeal: 22-1198    Doc: 64    Filed: 05/25/2022    Pg: 199 of 282
Case 2:19-cv-00236   Document 947-2   Filed 06/21/21   Page 13 of 19 PageID #: 16052
Confidential

Page 271

DON BLANKENSHIP

2    answered that question that I know as a former

3    CEO, former member of the board of U.S. Chamber

4    of Commerce, the largest construction company

5    in the world, and a chemical company that

6    people will not hire felons in this environment

7    because the SEC and others would put them under

8    greater scrutiny.

9        Q.    But you are not a felon?

10       A.    That's correct, but you are -- you

11   know, your people, if you will, have caused

12   lots of people to believe that, and perception,

13   as you know, can become reality.

14       Q.    Are you aware of any CEOs in America

15   who have previously spent a year in federal

16   prison?

17            MR. SIMPKINS:   Objection as to form.

18            THE WITNESS:   Yeah.  I can't

19   remember the names right now, but there was one

20   guy that was found guilty of a crime who came

21   out and became a broker, so it's rare, but it

22   is like the camel getting through the eye of

23   the needle.  It's -- it's not going to happen

24   very often.

25            BY MR. TORBORG:

USCA4 Appeal: 22-1198    Doc: 64    Filed: 05/25/2023    Pg: 200 of 282
Case 2:19-cv-00236  Document 947-2  Filed 06/21/21  Page 14 of 19 PageID #: 16053
Confidential

Page 272

1                    DON BLANKENSHIP

2        Q.    You also referenced in your

3    interrogatory response participating in private

4    equity energy ventures.

5              Do you see that?

6              MR. SIMPKINS:   Which interrogatory,

7    David?

8              MR. TORBORG:   Interrogatory 7, Page

9    14.   It's one of the opportunities that he

10   listed in response.

11             THE WITNESS:   Okay.   We are on the

12   right page now.

13             BY MR. TORBORG:

14       Q.    Okay.   What do you mean by "private

15   equity energy ventures"?

16       A.    It's a situation where a group of

17   private individuals get together and they

18   either buy a property or they buy a public

19   company and -- and make it private.   It can be

20   a number of things, but basically, it's a -- a

21   lot of times it's a lot of people with more

22   money than they know what to do with that hire

23   you to start a private energy company or a

24   private company.

25       Q.    What have you done since the 2018

USCA4 Appeal: 22-1198    Doc: 64    Filed: 05/25/2023    Pg: 201 of 282
Case 2:19-cv-00236   Document 947-2   Filed 06/21/21   Page 15 of 19 PageID #: 16054
Confidential

Page 273

1                    DON BLANKENSHIP

2    primary to seek business opportunities in this

3    area?

4        A.      As I have said probably five times

5    in the last two hours, I don't seek jobs as a

6    person who is perceived by the public to be a

7    felon.   I have -- I have spent a lot of money

8    trying to correct the misimpression that

9    they've given people.

10       Q.      And why would reports that you were

11   a felon prevent you from pursuing opportunities

12   in the private equity energy venture space?

13               MR. SIMPKINS:   Objection.   Asked and

14   answered.

15               THE WITNESS:   It's the same thing.

16   I mean, people who are going to make

17   investments depend heavily on permits.   They

18   depend on banking arrangements.   They depend on

19   the reputation and so forth with customers.

20   They depend on trusts.   So it's just -- once

21   you've branded someone -- it's like that

22   song, you know, being branded is hard to stick,

23   you know.

24               BY MR. TORBORG:

25       Q.      So you made your own decision not to

USCA4 Appeal: 22-1198    Doc: 64    Filed: 05/25/2022    Pg: 202 of 282
Case 2:19-cv-00236   Document 947-2   Filed 06/21/21   Page 16 of 19 PageID #: 16055
Confidential

Page 275

1                    DON BLANKENSHIP

2    current chaos to figure out what you will do in

3    the next one, but you know, should I win the

4    $12 million I've sued for, I probably will be

5    free to do a number of things.

6              BY MR. TORBORG:

7         Q.    Do you need the $12 million that you

8    are suing for in order to take advantage of

9    whatever else you want to do?

10             MR. SIMPKINS:   It's billion with a

11   B.

12             THE WITNESS:  Hardly.  I -- I think

13   that the point is that by winning the lawsuit,

14   I'm going to make us a better country and I'm

15   going to make us a better judicial system and I

16   will be able to expose how unfair the criminal

17   justice system is.  I will be able to do a lot

18   of good for the country, but I will also be

19   able to do whatever I want to do, which I'm

20   sure I'll do a lot of businesses.  But right

21   now I am almost singularly focused on winning

22   this case.

23             BY MR. TORBORG:

24        Q.    Can you identify any business

25   partners who have declined to work with you?

```
 1                    DON BLANKENSHIP

 2               MR. SIMPKINS:   Objection.  Asked and

 3    answered.

 4               THE WITNESS:  You know, it's a --

 5    it's a situation where I don't have to identify

 6    them.  I am familiar enough with the corporate

 7    world and particularly the public law firm

 8    world, the banking institute.  It's just not

 9    practical.  I have enough knowledge and

10    experience to know that I need to clean up this

11    mess first.

12               BY MR. TORBORG:

13        Q.    Your interrogatory response also

14    references opportunities to participate in a

15    Nevada gaming industry.

16               Do you see that?

17        A.    Yes.

18        Q.    What kind of opportunities do you --

19    did you reference -- do you mean to reference

20    there?

21        A.    Almost anything that you do in

22    Nevada involves games.  Every gas station has a

23    slot machine and all that.  When you have a bad

24    reputation, that is very hard to get a gaming

25    license that would allow you to even be
```

```
 1                    DON BLANKENSHIP

 2        Q.    Have you spoken with any companies

 3   -- strike that.

 4               Let's go to Page 14.  Sorry, the

 5   next paragraph.  It states:  "Mr. Blankenship

 6   has also expended more than $10 million on

 7   efforts to prepare for his post Massey business

 8   life and to restore his business reputation."

 9               Do you see that?

10        A.    Yes.

11        Q.    And it says:  "Defendant's

12   defamation has effectively undone those efforts

13   and rendered that expenditure of funds largely

14   useless."

15               And, actually, before we go to that,

16   let me go back up to a different spot, so I

17   don't forget it.

18               MR. SIMPKINS:  Is there a question

19   in the near future?

20               MR. TORBORG:  Yeah.

21               BY MR. TORBORG:

22        Q.    Let's go -- going back up to 14, you

23   say -- it's the end of the last sentence of the

24   carryover paragraph.  You say:  "During the

25   course of discovery, Mr. Blankenship also
```

USCA4 Appeal: 22-1198 Doc: 64 Filed: 05/25/2022 Pg: 205 of 282
Case 2:19-cv-00236 Document 947-2 Filed 06/21/21 Page 19 of 19 PageID #: 16058
Confidential

Page 350

1                              DON BLANKENSHIP

2

3                      CERTIFICATE OF NOTARY PUBLIC

4              I, Bonnie L. Russo, the officer before

5      whom the foregoing deposition was taken, do

6      hereby certify that the witness whose testimony

7      appears in the foregoing deposition was duly

8      sworn by me; that the testimony of said witness

9      was taken by me in shorthand and thereafter

10     reduced to computerized transcription under my

11     direction; that said deposition is a true

12     record of the testimony given by said witness;

13     that I am neither counsel for, related to, nor

14     employed by any of the parties to the action in

15     which this deposition was taken; and further,

16     that I am not a relative or employee of any

17     attorney or counsel employed by the parties

18     hereto, nor financially or otherwise interested

19     in the outcome of the action.

20     Dated: November 19, 2020.

21                        _Bonnie L. Russo_

22                          Bonnie L. Russo
                          Notary Public in and for
23                          the District of Columbia

24

25     My Commission expires:  August 14, 2025

# EXHIBIT 3
# Expert Report

# SEG

## Smith Economics Group, Ltd.
### A Division of Corporate Financial Group
*Economics / Finance / Litigation Support*

Sam V. Smith, Ph.D.
President

February 1, 2021

Mr. Eric P. Early
Early Sullivan Wright Gizer & McRae
6420 Wilshire Blvd., 17th Floor
Los Angeles, CA  90048



**EXHIBIT**

**701**

Re:  Blankenship v. Fox News Network LLC

Dear Mr. Early:

You have asked me to assess the damages to Don Blankenship based on the allegations against the various media defendants ("Media Defendants") described in the operative First Amended Complaint.

## I.  ASSIGNMENT

Based on the allegations against the Media Defendants described in the First Amended Complaint, I have been asked to assess the loss of earnings suffered by Mr. Blankenship.

## II.  QUALIFICATIONS AND EXPERIENCE

I am President of Smith Economics Group, Ltd., headquartered in Chicago, IL, which provides economic and financial consulting nationwide.  I have worked as an economic and financial consultant since 1974, after completing a Research Internship at the Federal Reserve, Board of Governors, in Washington, D.C.

I received my Bachelor's Degree from Cornell University.  I received a Master's Degree and my Ph.D. in Economics from the University of Chicago; Gary S. Becker, Nobel Laureate 1992, was my Ph.D. thesis advisor.  The University of Chicago is one of the world's preeminent institutions for the study of economics, and the home of renowned research in the law and economics movement.

As President of Smith Economics, I have performed economic analyses in a great variety of engagements, including damages analysis in personal injury and wrongful death cases, business valuation, financial analysis, antitrust, contract losses, a wide range of class action matters, employment discrimination, defamation, and intellectual property valuations including evaluations of reasonable royalty.

# SEG

I have more than 40 years of experience in the field of economics. I am a member of various economic associations and served for three years as Vice President of the National Association of Forensic Economics (NAFE) which is the principal association in the field. I was also on the Board of Editors of the peer-reviewed journal, the Journal of Forensic Economics, for over a decade; I have also published scholarly articles in this journal. The JFE is the leading academic journal in the field of Forensic Economics.

I wrote the first textbook on Forensic Economic Damages that has been used in university courses such as the University of Wisconsin, Penn State University, and in various other states. As an adjunct professor, I created and taught the first course in Forensic Economics nationwide, at DePaul University in Chicago.

I am the creator and founder of Ibbotson Associates' Stock, Bonds, Bills, and Inflation (SBBI) Yearbook, Quarterly, Monthly, and SBBI/PC Services. SBBI is generally regarded by academics in the field of finance as the most widely accepted source of statistics on the rates of return on investment securities. SBBI was originally published by Ibbotson Associates, then by Morningstar, Inc., and is now currently published by Duff & Phelps. The original SBBI series generated what became a six-book set universally used for business valuation, and currently available on an online platform. These data series are widely relied upon and regarded as the most accepted and definitive scholarly references by the academic, actuarial and investment community, and in courts of law. All three publishers of the SBBI series acknowledge me as the founder in 1983, for my "invaluable role" as having "originated the idea" of SBBI, which I then implemented while Managing Director at Ibbotson Associates.

My estimate of the real discount rate is 1.25 percent per year. This discount rate is based on the rate of return on short-term U.S. Treasury investments. The data is from the statistical series H.15 Selected Interest Rates, published by the Board of Governors of the Federal Reserve System found at www.federalreserve.gov. This data is also published in the Economic Report of the President Table for "Bond yields and interest rates" for the real return on U.S. Treasury investments primarily for the last 20 years.

I have performed economic analysis in many thousands of cases in almost every state and federal jurisdiction since the early 1980s.

My curriculum vita is attached, listing all my publications in the last 10 years and beyond. My hourly rate in this case is $525 per hour. The list of all cases in which I have testified in the last 4 years is also attached.

## III. INFORMATION REVIEWED

1. Plaintiff's First Amended Complaint;
2. The informational interview with Mr. Blankenship dated September 8, 2020.

# SEG

## IV.  BACKGROUND AND DISCUSSION

Don Blankenship became a leader in the coal industry after a meteoric rise at Massey Energy. Mr. Blankenship began working for Massey Energy in 1982, and within two years, he was President of RAWL Sales, which was a subsidiary of Massey Energy. He was put in charge of all of Massey's mining operations four years later. In 1992, he was named President and CEO of the company, and his compensation rose to almost $18,000,000 in 2009 as a result of his success with the company and the phenomenal growth in the company's value from $150,000,000 to $7,800,000,000.

On April 5, 2010, tragedy struck Raleigh County at the Upper Big Branch Mine. Only a few hours after ventilation changes required by the Obama Administration were completed, cutting the mine's airflow in half, flammable gas deep in the mine ignited, causing an explosion which took the lives of twenty-nine miners. Eight months after the disaster, on December 6, 2010, MSHA concluded that a coal bed methane build-up ignited and created an explosion. In April 2014, Mr. Blankenship released a documentary which refuted MSHA's findings and challenged the inherent conflict of having a regulatory agency investigate an explosion where the agency itself was likely at fault. Among other things, the documentary identified powerful scientific evidence which refuted MSHA's conclusion that the explosion was caused by an influx of methane.

On or about November 13, 2014, federal prosecutors from the Obama Justice Department charged Mr. Blankenship with three felonies, including conspiracy to defraud the Federal mine regulators. He was also charged with a misdemeanor, conspiring to violate mine safety laws. Mr. Blankenship was not charged with causing any of the twenty-nine deaths in the April 5, 2010 Upper Big Branch Mine disaster. The Federal Government brought the full weight of its infinite resources to bear on Mr. Blankenship. The matter went to trial in October 2015 and lasted about two months. Following lengthy deliberations, the West Virginia jury found Mr. Blankenship innocent on all felony charges on December 3, 2015. The jury convicted him of the misdemeanor offense. Notably, at that time, many media outlets accurately reported that Mr. Blankenship was convicted only of a misdemeanor and not for any of the felony counts he was facing.

The Department of Justice Office of Professional Responsibility has since investigated the conduct of the United States Attorneys who prosecuted Mr. Blankenship -- Booth Goodwin and Steve Ruby. The OPR found that massive prosecutorial misconduct had occurred in the prosecution of Mr. Blankenship, stating among other things that, "because Ruby and Goodwin recklessly violated the Department's discovery policies regarding the disclosure of discoverable statements, they committed professional misconduct." Mr. Blankenship's verdict is still under appeal.

In January 2018, Mr. Blankenship formally announced his plans to run as a Republican for the U.S. Senate seat held by Senator Joe Manchin, a Democrat. The Republican primary was scheduled for May 8, 2018. Beginning at about the end of March 2018 the Media Defendants falsely called Mr. Blankenship a felon in order to injure his reputation and discredit his candidacy. Mr. Blankenship's senatorial run was his chance to increase his reputation, but following the defamatory statements by the Media Defendants on national media, he failed to

3

# SEG

receive the Republican nomination. Achieving the Republican nomination in a senatorial race would have undoubtedly added to Mr. Blankenship's reputation and provided him with business opportunities, as well as a national podium to further establish himself.

## V.  OPINION

Lost Earnings

Mr. Blankenship would have had great opportunities to earn income from multiple sources but for the actions of the Media Defendants. I have illustrated Mr. Blankenship's loss of earnings in five categories:

> 1.) CEO in the Mining/Construction Industry;
> 2.) Strategic Consultant;
> 3.) Board of Directors;
> 4.) Coal Broker/Entrepreneur; and
> 5.) Author.

All of the above opportunities would have been available for Mr. Blankenship, but it is unlikely that he would have been a CEO and a Strategic Consultant at the same time. He could have been a CEO or a Strategic Consultant and entertained the other opportunities.

A.  CEO in the Mining/Construction Industry

Tables 1 and 2 show Mr. Blankenship's loss of earnings as a CEO in the Mining/Construction industry. Mr. Blankenship's earning capacity has been established by his track record of success as a President and CEO in the mining industry. Mr. Blankenship's compensation in as Chairman of the Board and President of Massey Energy was $5,328,422 in 2006, $9,929,125 in 2007, $11,226,717, plus non-qualified deferred compensation of $26,530,954, totaling $37,757,671 in 2008, and $17,835,837 in 2009. Adjusting Mr. Blankenship's earnings for inflation, Mr. Blankenship earned $6,900,337 in year 2020 dollars in 2006, $12,601,153 in year 2020 dollars in 2007, $13,955,811, plus non-qualified deferred compensation of $32,980,343 in years 2020 dollars, totaling $46,936,154 in year 2020 dollars in 2008, and $21,584,160 in year 2020 dollars in 2009.

While at Massey Energy, Mr. Blankenship received multiple employment offers from other companies. Mr. Blankenship states that he received an offer from Carl Smith, the former owner of Fola Coal, which was equivalent to $15 million in year 2020 dollars. He states that Massey Energy then matched and exceeded that offer to retain him. He states that he was named to the Board of Directors of Fluor, a global engineering and construction company, in 1997. In 1999, Mr. Blankenship was asked to manage Fluor while its Chairman, Les McGraw, battled cancer. Mr. Blankenship was approached to become the President of Fluor, but he declined, as he wanted to remain in West Virginia. Mr. Blankenship was contacted by a headhunter to become the President of Raytheon in approximately 2000, but he again declined to remain at Massey Energy.

4

# SEG

According to the Economic Research institute, the salary for new hire CEOs in the mining industry is $5,048,242 in year 2020 dollars.[1]

I have illustrated Mr. Blankenship's loss of earnings as a CEO in two scenarios. Table 1 shows the loss of earnings for Scenario 1. In Scenario 1, I have illustrated the lost earning to begin in 2019 at $22,005,451 in year 2020 dollars based on Mr. Blankenship's average real income from 2006 through 2009. Future earnings are illustrated to grow at inflation.

**Based on the above assumption, my opinion of the lost earnings as a CEO through 2030 are $254,647,877 ➢ Table 1.**

Table 2 shows the loss of earnings for Scenario 2. In Scenario 2, I have illustrated the lost earning to begin in 2019 at $5,048,242 in year 2020 dollars based on the salary for new hire CEOs in the mining industry. Mr. Blankenship's earnings are grown in 2024 to $21,584,160 in year 2020 dollars based on his actual income in 2009. Future earnings are illustrated to grow at inflation.

**Based on the above assumption, my opinion of the lost earnings as a CEO through 2030 are $197,218,122 ➢ Table 2.**

## B. Strategic Consultant

Tables 3 through 5 show the lost earnings for Mr. Blankenship as a Strategic Consultant in three scenarios. Under Mr. Blankenship's leadership, and his implementation of systems that cut costs and increased efficiency, Massey Energy grew from a valuation of $150,000,000 to $7,800,000,000

Mr. Blankenship gained an expertise in cost accounting following his exposure to standard cost practices in the food industry while working for Keebler Company earlier in his career. Mr. Blankenship was able to grow Massey Energy in a time when the coal industry was in decline based on his ingenuity and groundbreaking methods. The metrics that he implemented to assess mines and make them profitable are now used universally in the mining industry. This approach has now become broad and has been applied to other industries as well, including the banking industry. Mr. Blankenship stated he cut costs by $400 million per year while at Massey Energy. Mr. Blankenship's ingenuity reduced Massey Energy's costs by 30 percent compared to similar coal mines.

Mr. Blankenship states that the harm to his reputation following the election has limited his ability to engage in business opportunities as a Strategic Consultant. He states that he would have been able to bring his expertise to companies across multiple industries, including mining, banking, and construction, in order to assist with cutting costs. Mr. Blankenship states that he would have been able to put together a team to assess companies and negotiate a percentage of

---

[1] https://online.erieri.com/SS/ExecutiveSurvey/

# SEG

the savings as compensation, and 10 percent would be a reasonable fee. Mr. Blankenship states that based upon his experience as a CEO, he would be willing to pay an outside consultant 10 percent of the realized cost savings.

I have illustrated Mr. Blankenship's loss of earnings as a strategic consultant in three scenarios. In Scenario 1, I have illustrated Mr. Blankenship to earn $5,000,000 per year beginning in 2019, which assumes that he would provide cost savings of approximately $50,000,000 to various companies. Mr. Blankenship's Scenario 1 earnings are illustrated to grow in 2024 to $20,000,000, which assumes that he would increase the amount of cost savings provided to $200,000,000, or half of what he did at Massey Energy.

**Based on the above assumptions for Scenario 1, my opinion of the lost earnings as a Strategic Consultant through 2030 is $175,394,301 ➢ Table 3.**

I have illustrated Mr. Blankenship's loss of earnings as a strategic consultant in three scenarios. In Scenario 2, I have illustrated Mr. Blankenship to earn $5,000,000 per year beginning in 2019, which assumes that he would provide cost savings of approximately $50,000,000 to various companies. Mr. Blankenship's Scenario 2 earnings are illustrated to grow in 2024 to $15,000,000, which assumes that he would increase the amount of cost savings provided to $150,000,000.

**Based on the above assumptions for Scenario 2, my opinion of the lost earnings as a Strategic Consultant through 2030 is $136,982,590 ➢ Table 4.**

I have illustrated Mr. Blankenship's loss of earnings as a strategic consultant in three scenarios. In Scenario 3, I have illustrated Mr. Blankenship to earn $5,000,000 per year beginning in 2019, which assumes that he would provide cost savings of approximately $50,000,000 to various companies. Mr. Blankenship's Scenario 2 earnings are illustrated to grow in 2024 to $10,000,000, which assumes that he would increase the amount of cost savings provided to $100,000,000, or one-quarter of what he did at Massey Energy.

**Based on the above assumptions for Scenario 3, my opinion of the lost earnings as a Strategic Consultant through 2030 is $97,766,336 ➢ Table 5.**


C. Board of Directors

Tables 6 and 7 show the lost earnings for Mr. Blankenship from seats on Board of Directors. Mr. Blankenship states that he had seats on three boards while he was CEO at Massey Energy, and he believes that he could have been on up to five boards if he was not engaged in other businesses, and three boards if he was engaged in other businesses.

I have illustrated Mr. Blankenship's loss of earnings as a member of a Board of Directors in two scenarios. The 90th percentile earnings for members of a Board of Directors is $290,000 in year

6

# SEG

2020 dollars[2]. In Scenario 1, I have illustrated Mr. Blankenship as a member of five Boards of Directors and earning $290,000 per seat, which yields estimated annual earnings of $1,450,000 in year 2019 dollars beginning in 2019. Mr. Blankenship's Scenario 1 earnings are adjusted by inflation.

**Based on the above assumptions for Scenario 1, my opinion of the lost earnings as member of a Board of Directors through 2030 is $17,115,042 ➢ Table 6.**

In Scenario 2, I have illustrated Mr. Blankenship as a member of three Boards of Directors and earning $290,000 per seat, which yields estimated annual earnings of $870,000 in 2019 dollars beginning in 2019. Mr. Blankenship's Scenario 2 earnings are adjusted by national average wage growth of 4.29 percent in 2019, and 3.00 percent in 2020. Future earnings are illustrated to grow at 1.00 percent real.

**Based on the above assumptions for Scenario 2, my opinion of the lost earnings as member of a Board of Directors through 2030 is $10,269,025 ➢ Table 7.**


D.  Coal Broker

Tables 8 and 9 show the lost earnings for Mr. Blankenship from working as a Coal Broker. Mr. Blankenship states that had a relationship with the steel industry, and while he was at Massey Energy he had wanted to become a coal broker or start his own mining company later in his life. Mr. Blankenship states that there have been several successful coal brokers, including Chris Cline, Ernie Thrasher, and Joseph Craft III. and he believes that he could have gone down a similar path. He states that in the 1990s, as well as after leaving Massey Energy in 2011, Chris Cline reached out to him about becoming the President of Cline Resource and Development Co. Mr. Blankenship states that he advised Mr. Cline on his large purchase of mines in Illinois, which earned Mr. Cline a fortune.

Chris Cline, another West Virginia native got his start working in coal mines at age 15 and later bet big on high-sulfur coal reserves in Illinois. He took coal mining firm Foresight Energy public in 2014, and sold a controlling stake in 2015 for $1.4 billion cash. His net worth was estimated at $1,800,000,000 in 2019.[3]

Ernie Thrasher is the Founder, CEO and CMO of Xcoal Energy and Resources. Thrasher held various positions in mine operations and mine management through 1981. Prior to forming Xcoal Energy & Resources in 2003, Thrasher spent twenty-two (22) years in various global marketing positions at Primary Coal and AMCI. Xcoal is the largest exporter of U.S. origin coal. In addition to marketing U.S. origin coal to customers throughout the world, Xcoal activities include the financing and development of mining projects and related infrastructure projects. Thrasher founded XLNG Energy & Resources in 2015, which plans to market LNG originating from natural gas reserves in the Marcellus and Utica Shale basins in the U.S., to customers in

---

[2] https://www.payscale.com/research/US/Job=Member_of_the_Board_of_Directors/Salary

[3] https://www.forbes.com/profile/christopher-cline/#4bba4fbf9a1d

7

# SEG

South America, Europe, and Asia. Thrasher serves on the Board of Directors of Barrick Gold Corporation, the President's Leadership Council-Boy Scouts of America, is a member of the Council on Foreign Relations, serves as a Director on the National Committee on U.S.-China Relations, and serves as a Director of the U.S.-India Strategic Partnership Forum.[4]

Joseph Craft III became a lawyer, and then joined diversified coal company MAPCO as an assistant general counsel in 1980. He became president in 1987. Craft was rewarded with a big stake for leading the firm's LBO and conversion into a tax-efficient public master limited partnership in 1996; it was renamed Alliance Resource Partners three years later. He has been chief executive since and oversaw subsequent expansion across Appalachia and the Midwest as revenue increased to $390 million. His net worth was an estimated $1,400,000,000 in 2012.[5]

The average net worth for Joseph Craft III and Chris Cline, whose net worth is publicly available, is $1,730,675,739. Assuming a 30-year career yields an estimated annual income of $56,558,030 in year 2019 dollars.

I have illustrated Mr. Blankenship's loss of earnings as a coal broker or entrepreneur in two scenarios. In Scenario 1, I have illustrated Mr. Blankenship's earnings to begin in 2019 at $56,558,030 in year 2020 dollars. Future earnings are illustrated to grow at inflation.

**Based on the above assumptions for Scenario 1, my opinion of the lost earnings as a coal broker or entrepreneur through 2030 is $667,581,406 ➢ Table 8.**

In Scenario 2, I have illustrated Mr. Blankenship's earnings to begin in 2019 at 50 percent of $56,558,030, or $28,279,015 in year 2020 dollars. Future earnings are illustrated to grow at inflation.

**Based on the above assumptions for Scenario 2, my opinion of the lost earnings as a coal broker or entrepreneur through 2030 is $333,790,703 ➢ Table 9.**

E.  Author

Tables 10 and 11 show the lost earnings for Mr. Blankenship from being an author in two scenarios. Mr. Blankenship states that he planned to author several books over the remainder of his career. He states that he also planned to adapt his story into a screenplay.

I have illustrated Mr. Blankenship's loss of book revenue in two scenarios. In Scenario 1, I have illustrated Mr. Blankenship receiving a benchmark of $100,000 advances every 3 years.

**Based on the above assumptions for Scenario 1, my opinion of the lost earnings as member of a Board of Directors through 2030 is $383,816 ➢ Table 10.**

---

[4] https://usispf.org/team/ernie-thrasher/

[5] https://www.forbes.com/profile/joseph-craft/#6a4b02ab712a

# SEG

In Scenario 1, I have illustrated Mr. Blankenship receiving a benchmark of $250,000 advances every 3 years.

**Based on the above assumptions for Scenario 1, my opinion of the lost earnings as member of a Board of Directors through 2030 is $959,539 ➤ Table 11.**

All opinions expressed in this report are clearly labeled as such. They are rendered in accordance with generally accepted standards within the field of economics and are expressed to a reasonable degree of economic certainty. Estimates, assumptions, illustrations and the use of benchmarks, which are not opinions, but which can be viewed as hypothetical in nature, are also clearly disclosed and identified herein.

In my opinion, it is reasonable for experts in the field of economics and finance to rely on the materials and information I reviewed in this case, for the formulation of my substantive opinions herein.

If additional information is provided to me, which could alter my opinions, I may incorporate any such information into an update, revision, addendum, or supplement of the opinions expressed in this report.

It is my opinion, based upon the foregoing, that the Plaintiff has suffered concrete, tangible, economic harm.

If you have any questions, please do not hesitate to call me.

Sincerely,

Stan V. Smith, Ph.D.
President

9

# SUMMARY OF LOSSES

| TABLE | DESCRIPTION | ESTIMATE |
|-------|-------------|----------|
| | **LOSS OF EARNINGS THROUGH 2030** | |
| | | |
| | **CEO IN MINING/CONSTRUCTION** | |
| 1 | SCENARIO 1 | $254,647,877 |
| 2 | SCENARIO 2 | $197,218,122 |
| | | |
| | **STRATEGIC CONSULTANT** | |
| 3 | SCENARIO 1 | $175,394,301 |
| 4 | SCENARIO 2 | $136,982,590 |
| 5 | SCENARIO 3 | $97,766,336 |
| | | |
| | **BOARD OF DIRECTORS** | |
| 6 | SCENARIO 1 | $17,115,042 |
| 7 | SCENARIO 2 | $10,269,025 |
| | | |
| | **COAL BROKER/ENTREPRENEUR** | |
| 8 | SCENARIO 1 | $667,581,406 |
| 9 | SCENARIO 2 | $333,790,703 |
| | | |
| | **AUTHOR** | |
| 10 | SCENARIO 1 | $383,816 |
| 11 | SCENARIO 2 | $959,539 |

Table 1

LOSS OF CEO EARNINGS - SCENARIO 1
2019 - 2030

| YEARS | INCOME | DISCOUNT FACTOR | PRESENT VALUE | CUMULATE |
|---|---|---|---|---|
| 2019 | $21,573,972 | 1.0000 | 21,573,972 | 21,573,972 |
| 2020 | $22,005,451 | 1.0000 | 22,005,451 | 43,579,423 |
| 2021 | $22,445,560 | 0.9938 | 22,306,147 | 65,885,569 |
| 2022 | $22,445,560 | 0.9815 | 22,030,762 | 87,916,331 |
| 2023 | $22,445,560 | 0.9694 | 21,758,777 | 109,675,109 |
| 2024 | $22,445,560 | 0.9574 | 21,490,150 | 131,165,259 |
| 2025 | $22,445,560 | 0.9456 | 21,224,840 | 152,390,099 |
| 2026 | $22,445,560 | 0.9339 | 20,962,805 | 173,352,904 |
| 2027 | $22,445,560 | 0.9224 | 20,704,005 | 194,056,909 |
| 2028 | $22,445,560 | 0.9110 | 20,448,400 | 214,505,309 |
| 2029 | $22,445,560 | 0.8998 | 20,195,950 | 234,701,259 |
| 2030 | $22,445,560 | 0.8887 | 19,946,618 | 254,647,877 |

Table 2

LOSS OF CEO EARNINGS - SCENARIO 2
2019 - 2030

| YEARS | INCOME | DISCOUNT FACTOR | PRESENT VALUE | CUMULATE |
|---|---|---|---|---|
| 2019 | $4,949,257 | 1.0000 | 4,949,257 | 4,949,257 |
| 2020 | $6,723,867 | 1.0000 | 6,723,867 | 11,673,124 |
| 2021 | $9,134,783 | 0.9938 | 9,078,046 | 20,751,170 |
| 2022 | $12,410,160 | 0.9815 | 12,180,818 | 32,931,988 |
| 2023 | $16,859,959 | 0.9694 | 16,344,083 | 49,276,071 |
| 2024 | $22,905,282 | 0.9574 | 21,930,304 | 71,206,375 |
| 2025 | $22,905,282 | 0.9456 | 21,659,560 | 92,865,935 |
| 2026 | $22,905,282 | 0.9339 | 21,392,158 | 114,258,093 |
| 2027 | $22,905,282 | 0.9224 | 21,128,057 | 135,386,151 |
| 2028 | $22,905,282 | 0.9110 | 20,867,217 | 156,253,368 |
| 2029 | $22,905,282 | 0.8998 | 20,609,597 | 176,862,965 |
| 2030 | $22,905,282 | 0.8887 | 20,355,158 | 197,218,122 |

Table 3

LOSS OF STRATEGIC CONSULTANT EARNINGS - SCENARIO 1
2019 - 2030

| YEARS | INCOME | DISCOUNT FACTOR | PRESENT VALUE | CUMULATE |
|---|---|---|---|---|
| 2019 | $5,000,000 | 1.0000 | 5,000,000 | 5,000,000 |
| 2020 | $6,597,540 | 1.0000 | 6,597,540 | 11,597,540 |
| 2021 | $8,705,506 | 0.9938 | 8,651,434 | 20,248,974 |
| 2022 | $11,486,984 | 0.9815 | 11,274,702 | 31,523,676 |
| 2023 | $15,157,166 | 0.9694 | 14,693,391 | 46,217,067 |
| 2024 | $20,000,000 | 0.9574 | 19,148,687 | 65,365,754 |
| 2025 | $20,000,000 | 0.9456 | 18,912,284 | 84,278,038 |
| 2026 | $20,000,000 | 0.9339 | 18,678,799 | 102,956,837 |
| 2027 | $20,000,000 | 0.9224 | 18,448,196 | 121,405,033 |
| 2028 | $20,000,000 | 0.9110 | 18,220,441 | 139,625,474 |
| 2029 | $20,000,000 | 0.8998 | 17,995,497 | 157,620,971 |
| 2030 | $20,000,000 | 0.8887 | 17,773,330 | 175,394,301 |

Table 3

LOSS OF STRATEGIC CONSULTANT EARNINGS - SCENARIO 2
2019 - 2030

| YEARS | INCOME | DISCOUNT FACTOR | PRESENT VALUE | CUMULATE |
|---|---|---|---|---|
| 2019 | $5,000,000 | 1.0000 | 5,000,000 | 5,000,000 |
| 2020 | $6,228,655 | 1.0000 | 6,228,655 | 11,228,655 |
| 2021 | $7,759,228 | 0.9938 | 7,711,034 | 18,939,689 |
| 2022 | $9,665,910 | 0.9815 | 9,487,282 | 28,426,971 |
| 2023 | $12,041,123 | 0.9694 | 11,672,693 | 40,099,664 |
| 2024 | $15,000,000 | 0.9574 | 14,361,515 | 54,461,179 |
| 2025 | $15,000,000 | 0.9456 | 14,184,213 | 68,645,392 |
| 2026 | $15,000,000 | 0.9339 | 14,009,099 | 82,654,491 |
| 2027 | $15,000,000 | 0.9224 | 13,836,147 | 96,490,638 |
| 2028 | $15,000,000 | 0.9110 | 13,665,331 | 110,155,969 |
| 2029 | $15,000,000 | 0.8998 | 13,496,623 | 123,652,592 |
| 2030 | $15,000,000 | 0.8887 | 13,329,998 | 136,982,590 |

Table 5

LOSS OF STRATEGIC CONSULTANT EARNINGS - SCENARIO 3
2019 - 2030

| YEARS | INCOME | DISCOUNT FACTOR | PRESENT VALUE | CUMULATE |
|---|---|---|---|---|
| 2019 | $5,000,000 | 1.0000 | 5,000,000 | 5,000,000 |
| 2020 | $5,743,492 | 1.0000 | 5,743,492 | 10,743,492 |
| 2021 | $6,597,540 | 0.9938 | 6,556,561 | 17,300,053 |
| 2022 | $7,578,583 | 0.9815 | 7,438,529 | 24,738,582 |
| 2023 | $8,705,506 | 0.9694 | 8,439,137 | 33,177,719 |
| 2024 | $10,000,000 | 0.9574 | 9,574,344 | 42,752,063 |
| 2025 | $10,000,000 | 0.9456 | 9,456,142 | 52,208,205 |
| 2026 | $10,000,000 | 0.9339 | 9,339,399 | 61,547,604 |
| 2027 | $10,000,000 | 0.9224 | 9,224,098 | 70,771,702 |
| 2028 | $10,000,000 | 0.9110 | 9,110,220 | 79,881,923 |
| 2029 | $10,000,000 | 0.8998 | 8,997,749 | 88,879,671 |
| 2030 | $10,000,000 | 0.8887 | 8,886,665 | 97,766,336 |

Table 6

LOSS OF BOARD OF DIRECTORS EARNINGS - SCENARIO 1
2019 - 2030

| YEARS | INCOME | DISCOUNT FACTOR | PRESENT VALUE | CUMULATE |
|-------|--------|-----------------|---------------|----------|
| 2019 | $1,450,000 | 1.0000 | 1,450,000 | 1,450,000 |
| 2020 | $1,479,000 | 1.0000 | 1,479,000 | 2,929,000 |
| 2021 | $1,508,580 | 0.9938 | 1,499,210 | 4,428,210 |
| 2022 | $1,508,580 | 0.9815 | 1,480,701 | 5,908,911 |
| 2023 | $1,508,580 | 0.9694 | 1,462,421 | 7,371,332 |
| 2024 | $1,508,580 | 0.9574 | 1,444,366 | 8,815,698 |
| 2025 | $1,508,580 | 0.9456 | 1,426,535 | 10,242,233 |
| 2026 | $1,508,580 | 0.9339 | 1,408,923 | 11,651,156 |
| 2027 | $1,508,580 | 0.9224 | 1,391,529 | 13,042,685 |
| 2028 | $1,508,580 | 0.9110 | 1,374,350 | 14,417,035 |
| 2029 | $1,508,580 | 0.8998 | 1,357,382 | 15,774,417 |
| 2030 | $1,508,580 | 0.8887 | 1,340,625 | 17,115,042 |

Table 7

LOSS OF BOARD OF DIRECTORS EARNINGS - SCENARIO 2
2019 - 2030

| YEARS | INCOME | DISCOUNT FACTOR | PRESENT VALUE | CUMULATE |
|---|---|---|---|---|
| 2019 | $870,000 | 1.0000 | 870,000 | 870,000 |
| 2020 | $887,400 | 1.0000 | 887,400 | 1,757,400 |
| 2021 | $905,148 | 0.9938 | 899,526 | 2,656,926 |
| 2022 | $905,148 | 0.9815 | 888,421 | 3,545,347 |
| 2023 | $905,148 | 0.9694 | 877,453 | 4,422,799 |
| 2024 | $905,148 | 0.9574 | 866,620 | 5,289,419 |
| 2025 | $905,148 | 0.9456 | 855,921 | 6,145,340 |
| 2026 | $905,148 | 0.9339 | 845,354 | 6,990,694 |
| 2027 | $905,148 | 0.9224 | 834,917 | 7,825,611 |
| 2028 | $905,148 | 0.9110 | 824,610 | 8,650,221 |
| 2029 | $905,148 | 0.8998 | 814,429 | 9,464,650 |
| 2030 | $905,148 | 0.8887 | 804,375 | 10,269,025 |

Table 8

LOSS OF BROKER/ENTREPRENEUR EARNINGS - SCENARIO 1
2019 - 2030

| YEARS | INCOME | DISCOUNT FACTOR | PRESENT VALUE | CUMULATE |
|---|---|---|---|---|
| 2019 | $56,558,030 | 1.0000 | 56,558,030 | 56,558,030 |
| 2020 | $57,689,191 | 1.0000 | 57,689,191 | 114,247,221 |
| 2021 | $58,842,974 | 0.9938 | 58,477,490 | 172,724,711 |
| 2022 | $58,842,974 | 0.9815 | 57,755,546 | 230,480,256 |
| 2023 | $58,842,974 | 0.9694 | 57,042,514 | 287,522,771 |
| 2024 | $58,842,974 | 0.9574 | 56,338,286 | 343,861,057 |
| 2025 | $58,842,974 | 0.9456 | 55,642,751 | 399,503,808 |
| 2026 | $58,842,974 | 0.9339 | 54,955,804 | 454,459,612 |
| 2027 | $58,842,974 | 0.9224 | 54,277,337 | 508,736,949 |
| 2028 | $58,842,974 | 0.9110 | 53,607,247 | 562,344,195 |
| 2029 | $58,842,974 | 0.8998 | 52,945,429 | 615,289,624 |
| 2030 | $58,842,974 | 0.8887 | 52,291,781 | 667,581,406 |

Table 9

### LOSS OF BROKER/ENTREPRENEUR EARNINGS - SCENARIO 2
2019 - 2030

| YEARS | INCOME | DISCOUNT FACTOR | PRESENT VALUE | CUMULATE |
|---|---|---|---|---|
| 2019 | $28,279,015 | 1.0000 | 28,279,015 | 28,279,015 |
| 2020 | $28,844,595 | 1.0000 | 28,844,595 | 57,123,610 |
| 2021 | $29,421,487 | 0.9938 | 29,238,745 | 86,362,355 |
| 2022 | $29,421,487 | 0.9815 | 28,877,773 | 115,240,128 |
| 2023 | $29,421,487 | 0.9694 | 28,521,257 | 143,761,385 |
| 2024 | $29,421,487 | 0.9574 | 28,169,143 | 171,930,528 |
| 2025 | $29,421,487 | 0.9456 | 27,821,376 | 199,751,904 |
| 2026 | $29,421,487 | 0.9339 | 27,477,902 | 227,229,806 |
| 2027 | $29,421,487 | 0.9224 | 27,138,669 | 254,368,474 |
| 2028 | $29,421,487 | 0.9110 | 26,803,623 | 281,172,098 |
| 2029 | $29,421,487 | 0.8998 | 26,472,714 | 307,644,812 |
| 2030 | $29,421,487 | 0.8887 | 26,145,891 | 333,790,703 |

Table 10

LOSS OF AUTHOR EARNINGS - SCENARIO 1
2019 - 2030

| YEARS | INCOME | DISCOUNT FACTOR | PRESENT VALUE | CUMULATE |
|---|---|---|---|---|
| 2019 | $100,000 | 1.0000 | 100,000 | 100,000 |
| 2020 | $0 | 1.0000 | 0 | 100,000 |
| 2021 | $0 | 0.9938 | 0 | 100,000 |
| 2022 | $100,000 | 0.9815 | 98,152 | 198,152 |
| 2023 | $0 | 0.9694 | 0 | 198,152 |
| 2024 | $0 | 0.9574 | 0 | 198,152 |
| 2025 | $100,000 | 0.9456 | 94,561 | 292,713 |
| 2026 | $0 | 0.9339 | 0 | 292,713 |
| 2027 | $0 | 0.9224 | 0 | 292,713 |
| 2028 | $100,000 | 0.9110 | 91,102 | 383,816 |
| 2029 | $0 | 0.8998 | 0 | 383,816 |
| 2030 | $0 | 0.8887 | 0 | 383,816 |

Table 11

LOSS OF AUTHOR EARNINGS - SCENARIO 2
2019 - 2030

| YEARS | INCOME | DISCOUNT FACTOR | PRESENT VALUE | CUMULATE |
|---|---|---|---|---|
| 2019 | $250,000 | 1.0000 | 250,000 | 250,000 |
| 2020 | $0 | 1.0000 | 0 | 250,000 |
| 2021 | $0 | 0.9938 | 0 | 250,000 |
| 2022 | $250,000 | 0.9815 | 245,380 | 495,380 |
| 2023 | $0 | 0.9694 | 0 | 495,380 |
| 2024 | $0 | 0.9574 | 0 | 495,380 |
| 2025 | $250,000 | 0.9456 | 236,404 | 731,784 |
| 2026 | $0 | 0.9339 | 0 | 731,784 |
| 2027 | $0 | 0.9224 | 0 | 731,784 |
| 2028 | $250,000 | 0.9110 | 227,756 | 959,539 |
| 2029 | $0 | 0.8998 | 0 | 959,539 |
| 2030 | $0 | 0.8887 | 0 | 959,539 |

# SEG

## Smith Economics Group, Ltd.

A Division of Corporate Financial Group

*Economics / Finance / Litigation Support*

*Stan V. Smith, Ph.D.*
*President*

### S T A N   V.   S M I T H ,   P H. D.

**Smith Economics Group, Ltd.** -- Consultants and Experts in Economics and Finance. President, 11/85 to present. Assisted in the successful resolution of thousands of lawsuits on behalf of clients that include many dozens of the nation's largest law firms, the U.S. Department of Justice, as well as thousands of other prominent plaintiff and defense law firms in almost every state. Firm provides economic and financial consulting and economic legal analysis in federal and state courts on damages of every sort: Business Damages including antitrust damages, patent valuation, breach of contract losses, and others commercial losses; Business Valuations; Personal Injury and Wrongful Death losses including lost wages, benefits, services, and other injury losses; Hedonic Damages; Wrongful Discharge, defamation and employment discrimination; Identity Theft and other credit damages; Product Liability; Pension Fund Evaluation and Withdrawal Liability, Security Losses.

-----------------------------------------------------------------

**DePaul University.** -- Adjunct Professor, College of Law, 1990 to 1994. Created and taught a full three-credit course in Advanced Remedies — Analysis of Economic Damages in litigation, based on my textbook on Forensic Economics; delivered lectures to other courses in subsequent years. This was the first course created nationwide in the area of Forensic Economics.

**Ibbotson Associates, Inc.** -- Economic and Financial Consultants. Principal and Managing Director; Originator of SBBI Subscription Services, 11/81 to 11/85. Firm provides consulting to hundreds of the nation's most prominent money managers, law firms, brokerage firms, and pension funds.

**Seaquest International, Inc.** -- Founder and President, 7/77 to 11/81. Developed and financed sophisticated research, search, and recovery technologies for ancient underwater artifacts.

**The December Group, Ltd.** -- Investment Banking Consultants. Associate Economic Analyst 12/74 to 7/77. Firm specialized in mergers and acquisitions, leveraged buy-outs, divestitures and financing specialized start-ups with venture capital.

**JPMorgan Chase Bank – Chicago.** -- Staff Economist, 3/74 to 12/74. Analyzed bank credit and service pricing policies.

**Federal Reserve System.** -- Staff Economist at Board of Governors, Washington, D.C. 9/73 to 2/74.

**University of Chicago.** - Adjunct Professor, Public Policy Economics, 3/73 to 6/73. Research Assistant in Economics, 3/70 to 6/73.

**Midlothian Manufacturing Co.** -- Vice President, 9/68 to 3/73. Responsible for marketing to retail and industrial clients; production control.

# SEG
-------------------------------------------------------

## EDUCATIONAL BACKGROUND:

University of Chicago, Chicago IL. Ph.D. in Economics, 1997; Support Areas in Finance and Econometrics. Honors: Allied Chemical Scholar and Federal Reserve Internship. The University of Chicago is recognized as a world preeminent institution for the study of Economics and the home of the Law and Economics movement. Prof. Gary Becker, Nobel 1992, Thesis Advisor; Research Assistant to Prof. Eugene Fama, Nobel 2013.

University of Chicago, Chicago, IL. Master's Degree, 1977, Graduate School of Business; Field of Concentration in Economics.

Cornell University, Ithaca, NY. Bachelor of Science, Operations Research, 1968; Field of Concentration in Statistics, Computer Science and Industrial Engineering, Honors: John McMullen Scholar.

## PROFESSIONAL ACTIVITIES:

American Academy of Economic & Financial Experts, Journal of Legal Economics, Manuscript Referee, 199x-2008.
American Arbitration Association, Arbitrator, 1994 to 1996;
American Board of Disability Analysts, Professional Advisory Council, 2002 to present, Member & Diplomat, 2001 to present;
American College of Forensic Examiners, Fellow, Diplomate and Board Certified Forensic Examiner, 1996 to present;
American Economic Association, Member, 1985 to present;
American Finance Association, Member, 1985 to present;
Collegium of Pecuniary Damages Experts, Charter Member, 2008-2011;
Journal of the American Rehabilitation Economics Association: The Earnings Analyst, Manuscript Referee, 1998 to 2002;
Journal of Forensic Economics, Board of Editors, 1990 to 2001;
Journal of Forensic Economics, Manuscript Referee, 1990 to 2003;
National Academy of Economic Arbitrators, Founder and Charter Member, 1989 to 2005;
National Association of Forensic Economics, Vice President, 2000 to 2003, Board of Editors, 1990 to 2000, Member, 1988 to present;
National Futures Association's Panel of Arbitrators, Arbitrator, 1994 to present;

## PUBLICATIONS:

Author, "Historical Returns on Investment Instruments," Handbook of Modern Finance 1985, with Roger Ibbotson and Larry Siegel; Dennis Logue, ed., Warren, Gorham & Lamont, New York.
Author, 1988 Supplm Vol 13, Am Jur Proof of Facts 2d on aedonic Damages.
Author, "Economist Proposes Relief From Present Value Ruling," Chicago Daily Law Bulletin, June 8, 1988.
Author, "Hedonic Damages" Illinois Tort Report, June, 1988. 9209

2

# SEG
------------------------------------------------------

Author, "Hedonic Damages in Wrongful Death Cases," the ABA Journal, Sept.1988.

Author, "Hedonic Damages," The Audio Lawyer, Vol. 6 No. 8, ALI-ABA, February, 1989.

Author, "The Hedonic Value of Life: Economic Expert Witness Testimony in Injury and Wrongful Death," Expert Evidence Reporter, Vol. 1, No. 1, September 1989, Shepard's McGraw Hill.

Co author: Economic/Hedonic Damages: A Practice Book for Plaintiff and Defense Attorneys, with M. L. Brookshire, Anderson Publishing Co., Cinn., Ohio, 1990.

Co-author, "Hedonic Damages and Personal Injury:  A Conceptual Approach," Journal of Forensic Economics, 3(1), 1990, pp. 1-8.

Author, "Hedonic Damages in the Courtroom Setting - A Bridge Over Troubled Waters," Journal of Forensic Economics, 3(3), 1990, pp. 41 49.

Author, "Admissibility of Hedonic Damages Testimony," The Audio Litigator, Vol. 1, No. 1, April, 1990, ALI-AMA.

Author, "Hedonic Damages," with G. Magnarini, Wisconsin Lawyer, Vol. 64, No. 2, February 1991.

Author, "Hedonic Damages: Assessing the Loss of Enjoyment of Life," CaliforniaState Bar Bulletin, Vol. 1, No. 8, June 1991.

Co author, "Hedonic Damages and Personal Injury:  A Conceptual Approach," Journal of Forensic Economics, 3(1), 1990, pp. 1-8; Reprinted in A Hedonics Primer for Economists and Attorneys, Compiled and Edited by John O. Ward, Lawyers & Judges Publishing Co., Chapter 7, pp. 121-129, 1992.

Co-author: 1991/1992 Cumulative Supplement to Economic/Hedonic Damages: A Practice Book for Plaintiff and Defense Attorneys, with M. L. Brookshire, Anderson Publishing Co., Cinn., Ohio, 1992.

Author, "Hedonic Damages in the Courtroom Setting - A Bridge Over Troubled Waters,," Journal of Forensic Economics, 3(3), 1990, pp. 41-49; Reprinted in A Hedonics Primer for Economists and Attorneys, Compiled and Edited by John O. Ward, Lawyers & Judges Publishing Co., Chapter 6, pp. 111-120, 1992.

Author, "Spotting Bias in Plaintiffs' Economic Loss Reports: A Primer for both Sides," Illinois Bar Journal, Vol 80, No. 12, December, 1992, pp. 635 639.

Author, "Life Values: Measuring the Loss of Enjoyment of Life   Economic Analysis whose time has come," The Brief, Summer 1993, Vol. 22, No. 4 pp. 24-27, 62-63, The American Bar Association.

Co-author: 1992/1993 Cumulative Supplement to Economic/Hedonic Damages: A Practice Book for Plaintiff and Defense Attorneys, with M. L. Brookshire and Charles W. de Seve, Anderson Publishing Co., Cinn., Ohio, 1993.

Author, "Evaluating the Loss of Enjoyment of Life   Hedonic Damages," in Charles N. Simkins, ed., Analysis, Understanding and Presentation of Cases involving Traumatic Brain Injury, National Head Injury Foundation, Wash., DC, 1993.

Author, "Hedonic Damages in Personal Injury and Wrongful Death Litigation," in Gaughan and Thornton, eds. Litigation Economics, Contemporary Studies in Economic and Financial Analysis, Vol 74, JAI Press, Greenwich, CT, 1993.

Author, "Economic Evaluation of the Loss of Enjoyment of Life - Hedonic Damages," in Damages in Tort Actions, Ch. 124, Release 29 - February 1994, Pub. 909, Mathew Bender & Co., New York.

Author, "Measuring the Loss of Enjoyment of Life in Personal Injury Cases - Hedonic Damages," Journal of the Massachusetts Academy of Trial Attorneys, Vol 2, No. 1, July, 1994, pp. 65-67.

# SEG

---

Author, 3 Part Series, "Two Plus Two Equals — What?" October, 1994, p. 21; "Detecting Bias in Economics," November, 1994, pp. 14 & 21; "Striving for Economic Fairness," December, 1994, pp. 24-25, California Bar Journal, The Experts.

Author, "Measuring the Loss of Enjoyment of Life in Personal Injury Cases – Hedonic Damages," M..A News, Vol. 6, No. 4, December, 1994, pp. 3-5, Maine Trial Lawyers Association.

Author, "Hedonic Damages: Measuring The Loss of Enjoyment of Life in Personal Injury Cases," The Prairie Barrister, Vol. 1, No. 1, Winter, 1995, pp. 3, 4, & 12, Nebraska Association of Trial Attorneys.

Author, "Measuring the Loss of Enjoyment of Life in Personal Injury Cases in Ohio – Hedonic Damages," Ohio Trial, Vol. 6, Issue 3, Summer 1995, pp. 13-16, Ohio Academy of Trial Lawyers Education Foundation.

Author, "Measuring the Loss of Enjoyment of Life in Personal Injury Cases – Hedonic Damages," The Advocate, Vol. 22, No. 5, September/October, 1995, pp. 14-16, 22, The Kentucky Academy of Trial Attorneys.

Author, "Damages for the Value of Life," North Dakota Trial Lawyers The Pleader, Vol. 18, No. 4, September 1995, pp. 9-11, 24.

Author, "Hedonic Damages — Measuring The Loss of Enjoyment of Life in Personal Injury Cases," Law Reporter, The Journal of the Hawaii Trial Lawyers Association, Vol. 7, No. 9, September 1995, pp. 8-10.

Author, "Measuring the Loss of Enjoyment of Life in Personal Injury Cases in Arizona – Hedonic Damages," Advocate, Arizona Trial Lawyers Association, November 1995, pp. 5, 7, 15.

Co Author, "Hedonic Damages and Personal Injury: A Conceptual Approach," Journal of Forensic Economics, 3:1), 1990, pp. 1-8; Reprinted in A New Hedonics Primer for Economists and Attorneys, Compiled and Edited by Thomas R. Ireland and John O. Ward, Lawyers & Judges Publishing Co., Reading 25, 1996, pp. 325-334.

Author, "Hedonic Damages – Measuring the Loss of Enjoyment of Life in P.I. Cases," In Brief, Iowa Trial Lawyers Association, Vol. 7/Issue 1, January–February 1996, pp. 13-15.

Author, "Hedonic Damages in Personal Injury and Wrongful Death Litigation," in Gaughan and Thornton, eds. Litigation Economics, Contemporary Studies in Economic and Financial Analysis, Vol 74, JAI Press, Greenwich, CT, 1993; Reprinted in A New Hedonics Primer for Economists and Attorneys, Compiled and Edited by Thomas R. Ireland and John C. Ward, Lawyers & Judges Publishing Co., Reading 3, 1996, pp. 15-36.

Author, "Measuring the Loss of Enjoyment of Life in Personal Injury Cases and Wrongful Death Cases in New Mexico – Hedonic Damages," The New Mexico Trial Lawyer, New Mexico Trial Lawyers' Foundation, Vol. XXIV, No. 3, March, 1996, pp. 1, 60-63.

Author with Introduction by Darrel W. Aherin, "Measuring The Loss of Enjoyment of Life in Personal Injury Cases – Hedonic Damages," Idaho Trial Lawyers Association Journal, Volume 25, Number 2, Summer 1996, pp. 32-36.

Author, "The Value of Life to Close Family Members: Calculating the Loss of Society and Companionship," The New Hedonics Primer for Economists and Attorneys, Second Edition, Edited by Thomas R. Ireland and John O. Ward, Lawyers & Judges Publishing Co., 1996, pp. 377-384.

Author, "Pseudo-Economists – The New Junk Scientists," Federation of Insurance & Corporate Counsel Quarterly, Vol. 47, No. 1, Fall 1996, pp. 95-105.

# SEG
------------------------------------------------

Author with introduction by Darrel W. Aherin, "Measuring The Loss of Enjoyment of Life in Personal Injury Cases in Idaho - Hedonic Damages," Western Chronicle, N/E 1996, Western Trial Lawyers Association, pp. 32, 35-36.

Author, "Measuring The Loss of Enjoyment of Life in Personal Injury Cases in Washington - Hedonic Damages," Trial News, Vol. 32, Number 5, January 1997, Washington State Trial Lawyers Association, pp. 29-30.

Author, "Jury Verdicts in Drunken Driving Cases," University of Chicago Ph.D. Thesis, UMI Dissertation Services, Ann Arbor, MI, 1997.

Author, "The Value of Life to Close Family Members:  Calculating the Loss of Society and Companionship," American Rehabilitation Economics Association 1997 Monograph, pp. 10-16.

Author, Abstract:  "Jury Verdicts in Drunken Driving Cases," Journal of Forensic Economics, 11(1), 1998, p. 67-68.

Author, "Why Juries Can Be Trusted," Voir Dire, Vol. 5, Issue 3, Summer 1998, American Board of Trial Advocates, pp. 19-21 & 25.

Author, "Measuring the Loss of Enjoyment of Life in Personal Injury Cases - Hedonic Damages," The Neurolaw Letter, Vol. 9, No. 8, April 2000, pp. 45, 48-49.

Author, "Jury Verdicts and the Dollar Value of Human Life," Journal of Forensic Economics, 13(2), 2000, pp. 169-188.

Author, "Hedonic Damages," Izabela Z. Schultz, Douglas G. Brady, Steven Carella, Eds., Psychological Injuries at Trial, Torts Section, American Bar Association, 2003.

Contributor, "Economic Foundations of Injury and Death Damages," Roger T. Kaufman, James D. Rodgers, Gerald D. Martin, Edward Elgar Publishing, Inc., 2005.

Author, "Don't Overlook the Loss of Expanded Family Services," Trial, Vol. 42, No. 3, "Good Counsel" Column, March 2006, pg. 73.

Co-Author, "What is Your Value?" Chapter 2 in Six-Figure Salary Negotiation, Michael Zwell, Platinum Press, 2008.

Co-Author, "Jury Verdicts in Drunken Driving Cases," Review of Law & Economics, Berkeley Press, 2008.

Contributor, "Determining Economic Damages," Gerald D. Martin, James Publishing Inc., 2008 & previous years' editions.

Co-Author, "Estimating the Value of Family Household Management Services: Approaches and Markups," Forensic Rehabilitation & Economics, Vol 3, No. 2, 2010, with David A. Smith and Stephanie R. Uhl, pp. 85-94.

Co-Author, "Credit Damage: Causes, Consequences and Valuation," Forensic Rehabilitation & Economics, Vol 4, No. 1, 2011, with David A. Smith and Stephanie R. Uhl, pp. 27-32.

Co-Author, "Reply to Tinari's Comment on 'Estimating the Value of Family Household Management Services: Approaches and Markups,'" Forensic Rehabilitation & Economics, Vol 4, No. 1, 2011, with David A. Smith and Stephanie R. Uhl, pp. 37-38.

Co-Author, "A Response to Jayne's Comment on 'Estimating the Value of Family Household Management Services: Approaches and Markups,'" Forensic Rehabilitation & Economics, Vol 4, No. 1, 2011, with David A. Smith and Stephanie R. Uhl, pp. 39-40.

Co-Author, "A Reply to Mr. Clima's Credit Damage Comment," Forensic Rehabilitation & Economics, Vol 5, No. 1, 2012, with David A. Smith and Stephanie R. Uhl, pp. 75-76.

# SEG

---

Contributor, "Lost Earnings Report: Economist Expert," How To Write An Expert
Witness Report, James J. Mangraviti, Jr., Steven Babitsky, Nadine Nasser
Donovan, SEAK, Inc, The Expert Witness Training Company, 2014, pp. 527-542.

Author, "Economic Damages in Nevada," Vegas Legal Magazine, Vol 1, Issue 1,
Summer 2015, pp. 24-25.

Author, "Economic Damages in Nevada," REPRINT, Vegas Legal Magazine, Fall 2016,
pp. 31-32.

Author, "What Is a Wife Worth?" Vegas Legal Magazine, Winter 2017, pp. 34-35.

Author, "What Is Your Earning Capacity?" Vegas Legal Magazine, Spring 2017, pp.26-
27.

Author, "Partially Disabling Injuries," Vegas Legal Magazine, Summer 2017, pp. 26-
27.

Co Author, "Credibility & Bias in Economic Experts," Vegas Legal Magazine, Winter
2017, pp. 28-29.

Co-Author, "Credit Damages," Vegas Legal Magazine, Spring 2018, pp. 28-29.

Co-Author, "Defamation" Vegas Legal Magazine, Summer 2018, pp. 26-27.

Co-Author, "Economics is Not Fair!" Vegas Legal Magazine, Fall 2018, pp. 20-21.

Co Author, "Speculative Damages v. Imprecision: Are They the Same?" Vegas Legal
Magazine, Spring 2019, pp. 24-25.

---

Creator and founder of Ibbotson Associates' Stocks, Bonds, Bills, and Inflation
(SBBI) Yearbook, Quarterly, Monthly, and SBBI/PC Services. SBBI is generally
regarded by academics in the field of finance as the most widely accepted
source of statistics on the rates of return on investment securities. SBBI
was originally published by Ibbotson Associates, then by Morningstar, Inc.,
and is now currently published by Duff & Phelps. The original SBBI series
generated what became a six book set universally used for business valuation,
and currently available on an online platform. These data series are widely
relied upon and regarded as the most accepted and definitive scholarly
references by the academic, actuarial and investment community, and in courts
of law. All three publishers of the SBBI series acknowledge me as the founder
in 1983, for my "invaluable role" as having "originated the idea" of SBBI,
which I then implemented while Managing Director at Ibbotson Associates.

---

## PROFILES:

The Wall Street Journal, page 1 feature article with photo;
The Best Lawyer's in America: Directory of Expert Witnesses;
National Law Journal, page 1 feature article with photo;
Who's Who in the World;
Who's Who in America;
Who's Who in Finance and Industry;
Who's Who in Science and Engineering;
Who's Who in the Midwest;
Who's Who of Emerging Leaders of America;
Chicago Daily Law Bulletin, page 1 feature article;
Chicago Reader, Section 1 feature article with photo;

Smith Economics Group, Ltd.    312 943 1551

# SEG
-----------------------------------------------------

Like Judgment Day: The Ruin and Redemption of A Town Called Rosewood, D'Orso, Michael, 1996, Pg. 237.

## NATIONAL PRESENTATIONS:

Arizona: Brain Injury Association 13th Annual Conference for Attorneys, Phoenix, September 16, 1999;

California: American Bar Association Annual Meeting, San Francisco, August 10, 1992;

California: American Trial Lawyers Association 2005 Winter Convention, "Making Tangible the Intangible: Replacement Household/Family Services", Palm Springs, January 29, 2005;

Canada: Association of Trial Lawyers of America Annual Meeting, Economic Damages, Toronto, 1991;

District of Columbia: Larry King Live, Washington, May 22, 1989;

District of Columbia: National Institute for Trial Advocacy (NITA), Seventh Annual Washington DC Masters Advocacy Program, "Direct and Cross Examination of an Economic Witness," Washington, October 15, 1991;

District of Columbia: National Association. of Protection & Advocacy Systems, Inc., 19th Annual Conference, "Assessment and Proof of Damages," Washington, May 30, 1996;

District of Columbia: American Bar Association Annual Meeting, Washington, TIPS Aviation and Space Law, "Beyond the Horizon: What's Next in Aviation and Space Law Litigation," October 18, 2013;

Florida: Association of Trial Lawyers of America 1992 Winter Convention, Boca Raton, "Cutting Edge Developments in Economic Testimony," January 15, 1992;

Florida: Brain Injury Association 10th Anniversary Trial Lawyers Conference, Palm Beach, September 19, 1996;

Florida: National Association of Consumer Advocates, 2003 NACA FCRA Conference, Building on Our Success, Panel of Experts, "What the Experts Have Learned, A View From the Witness Box," Orlando, March 9, 2003;

Georgia: National Academy of Economic Arbitrators Annual Meeting, Differences in Economic Assumptions in Personal Injury Wage Calculations, Atlanta, December, 1989;

Georgia: National Association of Forensic Economics Annual Meeting, Value of Life, Atlanta, December, 1989;

Hawaii: American Bar Association Annual Meeting in Honolulu, HI, Speaker and Expert Witness at Mock Trial, Honolulu, August, 1969;

Idaho: Inner Circle of Advocates Annual Meeting, Sun Valley, August, 1989;

Illinois: University of Chicago 1982 Annual Management Conference on Venture Capital;

Illinois: National Association of Consumer Advocates, 2009 NACA-FCRA Fair Credit Reporting Act. Conference, "Credit Damages: How to Estimate Them," Chicago Hyatt Regency, May 9, 2009;

Illinois: American Rehabilitation Economics Association Annual Conference, "Hedonic Damages: A Basic Approach," Chicago, June 13, 2009;

Illinois: National Association of Consumer Advocates, 2010 NACA Auto Fraud Litigation Conference, Credit Damages: How to Estimate Them," Chicago Hyatt Regency, May 16, 2010;

Illinois: SEAK 19th Annual National Expert Witness Conference, "Handling the Toughest Questions: Depositions and Trial," Rosemont, June 25, 2010;

# SEG

-----------------------------------------------------

Illinois: National Consumer Law Center 20th Annual Consumer Rights Litigation
    Conference, "Expert Witnesses at Trial - Handling Experts in the Courtroom,"
    Fairmont Chicago Millennium Park Hotel, November 5, 2011;

Internet: Credit Bureau Strategy Consulting, Webinar Presentation, "The
    Economics of Credit Damage," September 14, 2009

Louisiana: American Bar Association, National Institute Transportation
    Megaconference, New Orleans, March 5, 1993;

Louisiana: Defense Research Institute, Medical Malpractice Seminar, New Orleans,
    May 6, 1994;

Louisiana: Association of Trial Lawyers of America 2001 Winter Convention,
    Litigation at Sunrise, "Measuring the Loss of Enjoyment of Life in Personal
    Injury Cases   Hedonic Damages Over the Last Ten Years," New Orleans, February
    12, 2001;

Louisiana: National Association of Consumer Advocates, 2005 NACA-FCRA Conference,
    "Litigating Accuracy Issues with Furnishers of Credit Data," Speaker on
    Economic Damages, New Orleans, June 5, 2005;

Louisiana: National Association of Minority and Women-Owned Law Firms, Trials
    Practice Area Committee Session: Challenging Experts? "Tactics for Mastering
    Expert Examinations," New Orleans, February 21, 2016;

Louisiana: National Association of Minority and Women-Owned Law Firms, Emerging
    Leaders Session: Ready for Action? "Hone Your Expert Cross Examination
    Techniques," New Orleans, February 22, 2016;

Michigan: Northwest #255 Air Disaster Steering Committee Meeting, Detroit, June,
    1989;

Nevada: American Rehabilitation Economics Association Conference, Mock Trial
    Presided by Nevada Supreme Court Justice William Maupin, Reno, May 15, 1999;

Nevada: National Association of Consumer Advocates, 2006 NACA-FCRA Conference,
    "Experts on Damages," Washington, May 6, 2006;

Nevada: National Association of Consumer Advocates, 2006 NACA-FCRA Conference,
    "Breakfast with the Stars," Washington, May 7, 2006;

Nevada: Brain Injury Association of America; Mastering the Science and Trial
    Strategies, "Making Tangible the Intangible: Expanding the Traditional
    Measures," Las Vegas, April 4, 2008;

Nevada: Internet Law Leadership Summit at Aria Resort & Casino, "Calculating
    Complex Financial Damages," Las Vegas, November 30, 2012;

New York: Eastern Economic Association Annual Conference, "Estimating the
    Value of Family Household Management Services: Approaches and Markups," New
    York City, February 28, 2009;

New York: Eastern Economic Association Annual Conference, "Credit Damage:
    Causes, Consequences and Valuation," New York City, February 26, 2009;

Oregon: National Crime Victim Law Institute at Lewis & Clark Law School, Ninth
    Annual Crime Victim Law Conference, Due Process for Victims: Meaningful Rights
    in Every Case, Portland, June 11, 2010;

Pennsylvania: Swiss Re American Annual Claims Conference, "Looking to the Third
    Millennium," Hershey, June 3, 1996;

Texas: MADD Advanced Victim Assistance Institute Seminar, Dallas, November 12,
    1994;

Texas: National Horplant Litigation Conference 1995, Houston, June 22, 1995.

Texas: American Rehabilitation Economics Association Annual Conference, "Hedonic
    Damages for Dummies," Austin, June 23, 2018.

# SEG
---------------------------------------------------

## REGIONAL PRESENTATIONS:

Hawaii: Western Trial Lawyers Association 1994 Annual Convention, "Making it Work-
  Trial Practice in the 90's," Maui, June 16, 1994;
Illinois: GSA Seminar "Selling your Business", Chicago, October, 1987;
Illinois: Society of Trial Lawyers, "How to Depose an Economist," Chicago, May
  7, 2009;
Louisiana: Southern Trial Lawyers Association Annual Meeting, New Orleans, 1988;
Louisiana: Southern Trial Lawyers Association 1996 Mardi Gras Conference, ATLA
  Traumatic Brain Injury Litigation Group, "Economic Implication of a Closed Head
  Injury," New Orleans, February 18, 1996;
Michigan: Advocacy Institute, Continuing Legal Education, 40th Annual
  Seminar, "Wrongful Death of an Older Person," Ann Arbor, May 12, 1995;
Michigan: German Education Services, "Direct Examination of Experts in a
  Traumatic Brain Injury Case," Novi, August 21, 1997;
Michigan: German Education Services, "Direct Examination of Experts in a
  Traumatic Brain Injury Case," Livonia, August 26, 1998;
New York: Eastern Finance Association Special Session on Pension Fund Asset
  Reversions, 1985;
New York: American Reinsurance Company for Senior Claims Executives Annual
  Meeting, August, 1989;
Ohio: Anderson Publishing Co., Proof of Economic Damages Seminar, Cincinnati,
  November 2, 1990.

## STATEWIDE PRESENTATIONS:

California: Arizona State Bar Fourth Annual "CLE By The Sea," San Diego, July
  22-23, 1994;
Connecticut Trial Lawyer Association, "All About Experts," Hartford, November 21,
  1992;
Florida State Bar Association, National Institute of Trial Advocacy (NITA),
  Advanced Trial Advocacy Seminar, Speaker and Expert Witness at Mock trial on
  Economic Damages, Gainesville, May 14, 1991;
Georgia Brain Injury Association & Institute of Continuing Legal Education in
  Georgia, "Hedonic Damages: Proving Loss of Enjoyment of Life in Non-Fatal
  Injury Cases," Atlanta, March 29, 2002;
Idaho Trial Lawyers Association Annual Meeting, Twin Falls, February 23, 1996;
Illinois State Bar Association CLE Series, April, 1989;
Illinois: Insurance Group of the Union League Club of Chicago, "Toward A More
  Rational Approach to Liability Judgments," Chicago, March 19, 1991;
Indiana State Bar Association Annual Meeting, October, 1989;
Indiana Trial Lawyers Association Annual Meeting, November 30, 1990;
Indiana State Bar Association "Masters in Trial" Spring Meeting, South Bend, April
  18, 1997;
Iowa Trial Lawyers Association Annual Meeting, Des Moines, November 5, 1993;
Kentucky Academy of Trial Attorneys Damages Seminar, Louisville, August 18, 1995;
Louisiana Trial Lawyer Association, Baton Rouge, "Winning with Experts" Seminar,
  November 10, 1989;
Louisiana Trial Lawyer Association, "Winning With the Masters" Seminar, New
  Orleans, November 21, 1995;

# SEG

------------------------------------------------

Louisiana Trial Lawyer Association, "Winning With the Masters" Seminar, New Orleans, December 10, 1997;

Massachusetts Trial Lawyers Association, "Learn From the Experts," Boston, October 9, 1992;

Massachusetts Trial Lawyers Association Annual Meeting, Boston, October 29, 1993;

Michigan Trial Lawyers Association Annual Meeting, Wrongful Death Damages, May, 1990;

Michigan Head Injury Alliance Fifth Annual Seminar on Closed Head Injury, Detroit, March 24, 1994;

Michigan Head Injury Alliance Sixth Annual Seminar on Closed Head Injury, Detroit, March 23, 1995;

Michigan Head Injury Alliance Seventh Annual Seminar on Closed Head Injury, Detroit, March 28, 1996;

Michigan Head Injury Alliance Eighth Annual Seminar on Closed Head Injury, Detroit, March 27, 1997;

Michigan, Institute of Continuing Legal Education, "The Name of the Game is Damages--Plaintiff and Defense Strategies in Negligence and Employment Cases," Troy, July 20, 2000;

Michigan Trial Lawyers Association Winter Seminar, "Hedonic Damages and Other Special Economic Issues," Gaylord, February 24, 2001;

Michigan Trial Lawyers Association 13th Annual Seminar in the Snow, Litigation Strategies and Techniques, "Loss of Society and Household Companionship and Advisory Services," Bellaire, February 22, 2003;

Mississippi Trial Lawyers Association Annual Convention, "Shooting Stars Seminar," Biloxi, May 19, 1995;

Mississippi Trial Lawyers Association Annual Convention, "Taking Your Recovery to the Next Level: Hedonic Damages," Biloxi, May 10, 2001;

Mississippi Arkansas Trial Lawyer Association "Maximizing Damages in the Personal Injury Case," Tunica, MS, October 24, 2003;

Missouri Kansas Trial Lawyers Association Annual Meeting, Kansas City, December 8, 1990;

Missouri State Bar Annual Meeting, Kansas City, September 19, 1996;

Missouri State Bar CLE Seminar, Proving Damages in Catastrophic Injury Cases, "Hedonic Damages after September 11th and An Economist's View on Proving Economic Damages," Kansas City, April 19, 2002;

Missouri State Bar CLE Seminar, Proving Damages in Catastrophic Injury Cases, "Hedonic Damages after September 11th and An Economist's View on Proving Economic Damages," St. Louis, May 9, 2002;

Montana Trial Lawyer Association Fourth Annual Convention, "Proving The Intangible (Hedonic) Value of Human Life," Whitefish, July 23, 1993;

Montana Trial Lawyer Association Seventh Annual Convention, Seminar of the Masters, Polson, August 1, 1996;

Montana Trial Lawyer Association Spring Seminar, Scientific Evidence, "Making Tangible the Intangible: Loss of Enjoyment of Life, and Society & Companionship Damages," Billings, April 25, 2003;

Nevada: Required Medical and Legal Education for the Traumatic Brain Injury Case, "9/11 Victim Compensation Fund Hedonic Damages: Implications for the State of Nevada," Las Vegas, October 25, 2002;

New Hampshire Trial Lawyer Association, "Secrets & Strategies of Trial Law," Concord, October 8, 1993;

New Mexico Trial Lawyers Association Annual Meeting, Economic Damages, Santa Fe, June 22, 1991;

# SEG
---------------------------------------------------

New Mexico Trial Lawyers Foundation Damages Seminar, Albuquerque, October 11, 1996;

North Carolina, Brain Injury Association of NC, First Annual Trial Lawyers Conference, "The Use of Expert Testimony in Brain Injury Litigation," Charlotte, January 26, 1996;

North Carolina, Brain Injury Association of NC, Second Annual Trial Lawyers Conference, "The Loss of Enjoyment of Life in Personal Injury — Hedonic Damages," Charlotte, January 24, 1997;

North Dakota Trial Lawyers Association, Annual Meeting Trial Practice Seminar, Fargo, May 4, 1995;

Ohio Association of Trial Lawyers Annual Meeting, Speaker and Expert Witness at Mock trial on Wrongful Death Damages, Toledo, April, 1990;

Ohio Head Injury Association, "Representing the Survivor of Mild Head Injury," Annual Seminar, Columbus, June 3, 1994;

Pennsylvania: Philadelphia Trial Lawyers Association CLE Lecture Series, March 17, 1993;

South Dakota Trial Lawyers Association Spring Seminar, April, 1989;

Texas Trial Lawyers Association, Medical Malpractice Seminar, Wrongful Death Damages, Houston, May, 1990;

Washington State Trial Lawyers Annual Meeting & Convention, Stevenson, July 11, 1998;

Wisconsin Association of Trial Lawyers Annual Meeting, Wrongful Death Damages, Door County, July, 1990;

Wisconsin Brain Injury 2nd Annual Seminar, "Identifying and Understanding Traumatic Brain Injury," Green Lake, May 31, 1997.


## LOCAL PRESENTATIONS:

Alaska: Alaska Trial Lawyers Association, Anchorage, August, 1989;

California: "Value of Life: Dismal Science from the Courtroom, "Economics Department Workshop Colloquium, Pomona College, Claremont, April 17, 2006;

Illinois: Chicago North Suburban Bar Association, May, 1985;

Illinois: Chicago Advocates Society, June, 1988;

Illinois: Northwest Chicago Suburban Bar Association, January, 1989;

Illinois: Chicago Public Radio, WBEZ, February, 1989;

Illinois: DuPage County, Bar Association, Chicago, May, 1989;

Illinois: Sangamon County Trial Lawyers Association, Springfield, May, 1989;

Illinois: McHenry County Bar Association, Chicago, May, 1989;

Illinois: Chicago Bar Association Wrongful Death Seminar, Wrongful Death Damages, February, 1990;

Illinois: Chicago Bar Association Torts Seminar, Defense Perspectives on Economic Damages, January 21, 1991;

Illinois: Chicago Bar Association, Wrongful Death Seminar, February 11, 1993;

Illinois: Chicago Bar Association Effective Direct and Cross Examination of Expert Witnesses — A Demonstration, January 9, 1995;

Illinois: Interstate National Corporation, "Cutting Edge Developments on Economic Damages — Defense Perspectives", Chicago, August 2, 1995;

Illinois: Interstate National Corporation, "Cutting Edge Developments on Economic Damages — Defense Perspectives", Chicago, September 2, 1997;

# SEG
------------------------------------------------------

Illinois: Cassiday Schade & Gloor, "Catastrophic Damages...They're Back!
   Limiting Damages After the Invalidation of Tort Reform," Chicago, November 18,
   1998;
Illinois: Law Bulletin Publishing Company, Legal Career Day, Economic Outlook
   for Lawyer Employment, Chicago, April 13, 2004;
Illinois: Fox News Contributor WFLD TV, October 10 and October 15, 2008;
   February 25, March 24, April 10, April 20, June 17, August 3, August 26 and
   October 19, 2009;
Michigan: American Radio Network, WFGX, Detroit, January, 1989;
Michigan: Oakland County Bar Association Negligence Committee, Bloomfield Hills,
   November 5, 1996;
Ohio: Hamilton County, Bar Association Seminar on Economic Damages, Cincinnati,
   January 31, 1991.


## TELEVISION/VIDEO PRESENTATIONS

American Bar Association Tort and Insurance Practice Section Annual
   Meeting, "Hedonic Damages," San Francisco, CA, August 10, 1992;
American Law Institute-American Bar Association, ALI-ABA Tape,
   "Hedonic Damages: Litigating the Loss of Enjoyment of Life," The Lawyers'
   Video Magazine, Vol. 1.1 Issue 20, Philadelphia, PA, December, 1991;
CNN: Larry King Live, May 22, 1989.


## PERSONAL BACKGROUND:

Born November 16, 1946, Rhinelander, Wisconsin;
Graduated Nicolet High School 1964, Milwaukee, Wisconsin;
Honorable Discharge U.S. Army, 1975;
Member of Chicago Board Options Exchange, 1975 1978;
Trustee, Wright Graduate University;
Board Member, Wright Foundation.

LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Smith v. Keyport Liquor | Superior Court of New Jersey, Law Division - Monmouth County | MON-L-1412-19 | Farus & Parsons, Middletown, NJ | 01-21-2021 |
| Tsioyk v. Schneider, et a. | United States District Court, Western District of Oklahoma | 5-14-cv-00386-R | Tomwater Law Firm, Oklahoma City, OK | 01-21-2021 |
| Pols v. Grumet | United States District Court, District of Nevada | 1-19-cv-01636-JAD-VCF | Powe l Law Firm, Las Vegas, NV | 01-20-2021 |
| Verry/Smith v. Maxum Residential Inc | District Court for Harris County, Texas, 127th District Court | 2019-78154 | Arnold & Itkin, Houston, TX | 01-20-2021 |
| Deune v. XPO Log stics Freght, Inc | United States District Court, Northern District of Illinois, Eastern Division | 18 cv 1264 | Woodruff Johnson & Evans, Aurora, IL | 01-19-2021 |
| Carlisi, Sr a. Atlas van Lines, et a. | Circuit Court of the Twelfth Judicial Circuit, Will County, Illinois | 13 L 000358 | Burnes & Libman, Chicago, IL | 01-18-2021 |
| Powers/Zakv. Schockmann, et al | United States District Court for the Southern District of New York | 1-20-cv-02625 | Famular Flores Law, Austin, TX | 01-14-2021 |
| Hartman v Hirtschneider | Second Judicial District Court for the State of Nevada, County of Washoe | IV3N-024N1, Dept No. 15 | Hamilton Law Reno, NV | 01-14-2021 |
| Davis, et al v. Kelly, et al | Twentieth Judicial District, District Court, Rice County, Kansas, Civil Department | 2018 CV 26 | Wagstaff & Cartmell, Kansas City, MO | 01-13-2021 |
| Savino, DO v. Indiana Urgent Care Physician Group, LLC | United States District Court for the Southern District of Indiana, Indianapolis Division | 1-19-cv-2163 | Betz & Blevins, Indianapolis, IN | 01-12-2021 |
| Thompson v United States of America | United States District Court, Southern District of Illinois | 3-18-CV-1520 | Walker Law Office, Granite City, IL | 01-08-2021 |
| Gass v. Slack, M.D., et al | Circuit Court of Cook County, Illinois, County Department - Law Division | 18 L 4606 | Mossing & Navarre, Chicago, IL | 01-04-2021 |
| James/Phiffer v. Irwin, et al | Circuit Court of Cook County, Illinois, County Department - Law Division | 2017 L 009959 | Loggans & Associates, Chicago, IL | 12 16 2020 |
| Duarte v. CKW Facility Services, Inc. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2019 L 012791 | Anesi Ozmon, Chicago, IL | 12-15-2020 |
| McFakey/McFakey v. Persons, M.D. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2018 L 5935 | Inggers & Associates, Chicago, IL | 12-15-2020 |
| Lethress v. Trinity Industries, Inc, et al | Circuit Court of Missouri, Twenty-First Judicial Circuit, St. Louis County, Missouri | 19SL-CC04455 | Langdon & Emison, Lexington, MO | 12-14-2020 |
| Groves v. 3M Company | State of Minnesota, County of Hennepin, District Court, Fourth Judicial District | 27 CV 19 19916 | Schwebel Goetz & Sieben, Minneapolis, MN | 12 14 2020 |
| Mesa v. Schneider F reefun Corporation | District Court, Clark County, Nevada | A-16-749747-C, Dept No. XXXI | Buchanan Law Office, Las Vegas, NV | 12-11-2020 |
| Mills v. Tarragon Summer Ridge Lewisville, et al | County Court at Law No. 1, Dallas County, Texas | CC-19-00948-A | Arnold & Itkin, Houston, TX | 12-10-2020 |
| Burton/Foster v Bristol-Myers Squibb Company, et al. | United States District Court, Northern District of Florida, Pensacola Division | 3-16-md-2734 | Goldenberg Law, Minneapolis, MN | 12-09-2020 |
| Whomate v Spectrum Health Hospitals | State of Michigan in the Circuit Court for the County of Kent | 20 01809 NH | Buchanan & Buchanan, Grand Rapids, MI | 12 02 2020 |
| Hatcher v Whittington, et al | United State District Court for the Western District of Louisiana, Shreveport | 5-18-cv-01253-SMH-KLH | Jacob Litigation, Mechanicsburg, PA | 12-02-2020 |
| Blankenship v McLaughlin, et al | United States District Court, Eastern District of Virginia, Alexandria Division | 1-20-cv-00425 | Early Sullivan Wright Gizer & McRae, Los Angeles, CA | 12-01-2020 |
| Marshall v Henkels & McCoy, Inc, et al | Superior Court of New Jersey, Law Division - Middlesex County | MID-L-6247-17 | Brach Eichler, Roseland, NJ | 11-20-2020 |
| Newson/West v. Hayes, M.D., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2017 L 003635 | Loggans & Associates, Chicago, IL | 11-19-2020 |
| Jurison v. Advocate Christ Hospital, et al | Circuit Court of Cook County, Illinois, County Department - Law Division | 17 L 12342 | Watts Guerra, San Antonio, TX | 11-17-2020 |
| Smith v. Bristol-Myers Squibb Co., et al | U.S. District Court, northern District of Florida, Pensacola Division | 3-17-cv00474 | Kirtland & Packard, Redondo Beach, CA | 11-16-2020 |
| Chandler-Hensley v. Bristol-Myers Squibb Company, et al. | U.S. District Court, northern District of Florida, Pensacola Division, | 3-18-cv-00302 | Kirtland & Packard, Redondo Beach, CA | 11-13-2020 |
| Ray-Joyner vs. Hernandez/Century Towing | District Court, Clark County, Nevada | A-19-788335-C | Powe l Law Firm, Las Vegas, NV | 11-12-2020 |
| Hurt, et al. v Bristol-Myers Squibb Company, et a. | U.S District Court, northern District of Florida, Pensacola Division | 3-17-cv-00634-MCR-GRJ | Bernheim Kelley Battista & Bliss, Plymouth, MA | 11-11-2020 |
| Speishout v. Pekin Insurance | American Arbitration Association | 241 102 | Thiesen & Roche, Wheaton, IL | 11 04 2020 |
| Moon v Shortberg, M.D., et al | Eighteenth Judicial District Court, District Court, Sedgwick County, Kansas Civil Department | 2019-CV-1513 | Napoli Shkolnik & Overland Park, KS | 11-03-2020 |
| Front Gene Therapeutics LLC v Sloan-Kettering Institute for Cancer Research, et al | Supreme Court of the State of New York, County of New York | 152856/2017 | McCue Sussmane Zapfel & Cohen, New York, NY | 10-30-2020 |
| Agwemoh v Village of Dolton, et al | Circuit Court of Cook County, Illinois, Law Division | 18 L 2677 | Motherway & Napleton, Chicago, IL | 10-29-2020 |

4877

LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Gamez v. Seibel | Circuit Court of Cook County, Illinois, Law Division | 2017-L-007185 | Patterson Law Firm, Chicago, IL | 10-28-2020 |
| Driscoll v. Castellanos, et al. | U.S. District Court, for the District of New Mexico | 1.19 cv 00527 .CH-KK | Langdon & Emison, Chicago, IL | 10-27-2020 |
| Wood v. PACCAR Inc. et al. | U.S. District Court, Northern District of Iowa, Eastern Division | 1.19-CV-1010 | Crowley & Prill, Burlington, IA | 10-16-2020 |
| Jones Martin v. United States of America | U.S. District Court, District of Nevada | 2:18-cv-02182-RFB-VCF | Powell Law Firm, Las Vegas, NV | 10-21-2020 |
| Martinez vs. James River Insurance Company | U.S. District Court, District of Nevada | 2:19-cv-00603 JAD NJK | Powell Law Firm, Las Vegas, NV | 10-20-2020 |
| Pytir v. Ford Motor Company, et al | Circuit Court of Missouri, Twenty First Judicial Circuit (St. Louis County) | 19SL-CC00857 | Langdon & Emison, Lexington, MO | 10-14-2020 |
| Rosas/Godinez v. Level Construction, Inc. | Circuit Court of Cook County, Illinois, County Department, Law Division | 2018 – 008636 | Cogan & Power, Chicago, IL | 10-06-2020 |
| Trepeta v. National Consumer Telecom and Utilities Exchange Inc., et al | United States District Court, Eastern District of Virginia, Norfolk Division | 2:19-cv-00405-MSD-LRL | Consumer Litigation Associates, Newport News, Va | 10-05-2020 |
| DeLap v. Boone, M.D., et al | Circuit Court of 17th Judicial Circuit, Winnebago County, Illinois | 17 - 149 | Cogan & Power, Chicago, IL | 10-02-2020 |
| Fernandez v. Diehl Assistance Network, LLC ("DANC") | United States District Court for the Southern District of California | 3:19-cv-01442-MMA-LLB | Keeroun Law Group, Costa Mesa, CA | 09-30-2020 |
| Letzow v. Village of Huntley et al | U.S. District Court, Northern District of Illinois, Eastern Division | 17 cv 05291 | Dvorak Law Office, Willowbrook, IL | 09-29-2020 |
| Burlew v. Shop Rite, et al. | Superior Court of New Jersey, Monmouth County | MON-L-4313-18 | Konka Law Office, Manasquan, NJ | 09-23-2020 |
| Warner v. CLS/Wedgeth, et al. | United States District Court, Southern District of Indiana, Indianapolis Division | 1:19-cv-01774-RLY-MJD | Eskew Law Office, Indianapolis, IN | 09-18-2020 |
| Westins/Green v. United States of America, et al | United States District Court, Northern District of Illinois, Eastern Division | 18-cv-4142 | Cogan & Power, Chicago, IL | 09-14-2020 |
| Lipps v. Central DuPage Hospital Association | Circuit Court of Cook County, Illinois, County Department, Law Division | 19 - 00537 | Motherway & Napleton, Chicago, IL | 09-23-2020 |
| Dugger v. BNSF Railway Company | District Court of Box Butte County, Nebraska | CI:849 | High & Younes, Omaha, NE | 09-18-2020 |
| Lugo v. Sutton, et a. | United States District Court for the Central District of Illinois, Peoria Division | 18-cv-1413-JES-JEH | Katz Nowinski, Moline, IL | 09-17-2020 |
| Jones v. Ohio/Oklahoma Heart Telestaff, Inc. | District Court of Oklahoma County, State of Oklahoma | P1-2017-4074 | Illerch Faruqe & Saumury Oklahoma City, OK | 09-16-2020 |
| Scambaugh v Indiana Department of Insurance | State of Indiana, County of Miami in the Miami County Circuit Court | 52C01 2005 CT 000326 | Roethberg Logan & Warsco, Fort Wayne, IN | 09 15 2020 |
| Doe v. First Presbyterian Church of Plymouth, MI | State of Michigan in the Third Circuit Court, Wayne County | 19-000088-NO | Flerberg National Law Group, Traverse City, MI | 09-15-2020 |
| Martinez v. Sorenson, et al. | District Court, Clark County, Nevada | A-19-798955-C, Dept No 11 | Injury Lawyers Nevada, Las Vegas, NV | 09-14-2020 |
| Dugger v. BNSF Railway Company | District Court of Box Butte County, Nebraska | CI:849 | High & Younes, Omaha, NE | 09-14-2020 |
| Seymour/Manton v. Lewis & McCorry PC | State of Michigan in the Circuit Court for the County of Kent | 19 08339 NH | Buchanan & Buchanan, Grand Rapids, MI | 09 04 2020 |
| Myers/Satellite v. Land N Sea Distributing, Inc. | United States District Court, Northern District of Indiana, Fort Wayne Division | 1 18-CV-00187-TLS-SLC | Theisen & Associates, Fort Wayne, IN | 09-01-2020 |
| Dare v. Salvation Hospital, Inc. et al. | Circuit Court for Montgomery County, Maryland | 474057-V | Bekman Marder & Adkins, Baltimore, MD | 09-01-2020 |
| White v. Mejia, et al | District Court, Clark County, Nevada | A-18-780344-C, Dept No XXIII | Paternoster Law Group, Las Vegas, NV | 08-31-2020 |
| Surge v. TCA IIS, ILC, et al. | Circuit Court of Jackson County, Missouri at Independence | 1816-CV-0404, Div 12 | Langdon & Emison, Chicago, IL | 08-17-2020 |
| Lewis v. A W Chesterton Company, et al. | State of Indiana, Marion County Superior Court, Civil Division | 49D12-1913-MI-047834 | Mayne Rachle Bartley French & Mudd, St. Louis, MO | 08-15-2020 |
| Price v. LBS Financial Services, Inc. | United States District Court, District of New Jersey, Newark Division | 1701882 JWJM-MF) | Francksen Law Group, Jacksonville, FL | 08-13-2020 |
| Hown, et al. v. Lindbergy, et al. | District Court, South Central Judicial District, State of North Dakota, County of Burleigh | 08-2018-CV-02749 | Brattle Law Firm, Des Moines, IA | 08-13-2020 |
| Polanco Urena/Urena Valverde v. Vmax Extrusion, LLC | United States District Court, District of New Hampshire | 18 cv 1019 JL | Bagdle Friedman, Jersey City, NJ | 08 06 2020 |
| Heartwise, Inc. v. Nutrigold, Inc. | United States District Court, District of Utah, Central Division | 2:13-cv-00982-DAK | Magleby Cataxinos & Greenwood, Salt Lake City, UT | 07-30-2020 |

4878

## LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Myers/Salerlee v. Land N Sea Distributing, Inc | United States District Court, Northern District of Indiana, Fort Wayne Division | 1:18-CV-00187-TLS-SLC | Theisen & Associates, Fort Wayne, IN | 07-29-2020 |
| Scollworth v. Estate of Stanus | Circuit Court of Cook County, Illinois, County Department - Probate Division | 19-P-008267 | Laomer LeVay-Pyock, Chicago, IL | 07-29-2020 |
| Lee v. Dennison, et al. | United States District Court, District of Nevada | 1:19-cv-01332-KJD-DJ | Powell Law Firm, Las Vegas, NV | 07-22-2020 |
| Khalsar v. United States of America | United States District Court, Eastern District of Virginia, Alexandria Division | 1:19-cv-01724 | Faure Walsher & Izaarsh, Washington, DC | 07-21-2020 |
| Guthmiller v. Ocwen Loan Servicing, LLC. | United States District Court, Western District of Washington at Seattle | 2:19-CV-01585-BJR | Hutchison Law Office, Tacoma, WA | 07-20-2020 |
| Guthmiller v. Ocwen Loan Servicing, LLC. | United States District Court, Western District of Washington at Seattle | 2:19-CV-01585-BJR | Hutchison Law Office, Tacoma, WA | 07-13-2020 |
| Harrington v. Spectrum Paint Company, Inc. | Circuit Court of Washington County, Arkansas, Civil Division | 72CV-19-349C | Etoub Law Firm, Helena, AR | 07-13-2020 |
| Hauck/Theriheck v. Wabash National Corporation | First Judicial District Court, Santa Fe County, New Mexico | D-101-TV-JC1N-01117 | Langdon & Emann, Lexington, MO | 07-IN-2020 |
| Davis v. The Royal Paper Stock Company, Inc | Common Pleas Court of Clinton County, Ohio, Civil Division | CVH 19000202 | Langdon & Emison, Lexington, MO | 07-07-2020 |
| Victor v. Dickey, et al. | District Court, Clark County, Nevada | A-18-775694-C, Dept. No. 11 | Patemoster Law Group, Las Vegas, NV | 07-06-2020 |
| Slotten, et al v. Southeastern Emergency Physicians of Memphis, LLP, et al. | Circuit Court of St. Clair es County, State of Missouri | 1713-CC01:08, Division 1 | Carr & Associates, St. Charles, MO | 07-03-2020 |
| Morgan v. Loseland Medical Center, et al | State of Michigan, Circuit Court for the County of Kalamazoo | AORVIN-2019-001:-Ab | Buchanan & Buchanan, Grand Rapids, MI | 06-30-2020 |
| Roper v. Muhammad, M.D., et al | Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois | 17-L4 | Cogan & Power, Chicago, IL | 06-29-2020 |
| Stewart v. Pinnacle, et al. | Commonwealth of Kentucky, Fayette Circuit Court, Division B | 18-CI-03919 | O'Hacke Law Firm, Louisville, KY | 06-17-2020 |
| Rhude v. Arto, et al | District Court, Clark County, Nevada | A-18-785359-C, Dept No. 8 | Powell Law Firm, Las Vegas, NV | 06-16-2020 |
| Peninos v. Hohani, et al | United States District Court for the Eastern District of California, Sacramento Division | 2:17-cv-00518-JLT-KJN (PC) | Simpson Tharber, Palm Alto, CA | 06-19-2020 |
| Burford, et al. v. Arconic, Inc., et al. | District Court of the 11th Judicial District, Harris County, Texas | 2017-70076-ASB | Cappolino Dodd & Krebs, Cameron, TX | 06-18-2020 |
| Magee v. Modern Forge Services, LLC. et al. | State of Indiana in the Lake Superior Court Sitting at Gary, Indiana | 45D04-1505-CT-157 | Allen Law Group, Valparaiso, IN | 06-11-2020 |
| Alt v. Catu Concrete Construction, LLC | Iowa District Court in and for Polk County | LACL 144076 | Duff Law Firm, West Des Moines, IA | 06-07-2020 |
| Winyard, et al. v. Br amar USA, Inc | Circuit Court for Baltimore City | 24-C-19-003648 OT | Delman Vander & Adams, Baltimore, MD | 05-05-2020 |
| Ginsburg v. Furbush, et al | District Court, Clark County, Nevada | A-18-779016-C, Dept. 20 | Powell Law Firm, Las Vegas, NV | 04-30-2020 |
| Moore v. BNSF Railway Company | Nineteenth Judicial District, Clinton County, Comey County, Kansas, Civil Department | 2017-CV-000099-W | Hubsel Law Firm, Kansas City, MO | 04-30-2020 |
| Corn, et al. v. Wami, Inc. | U.S. District Court, Middle District of Alabama, Northern Division | 2:19-cv-258-MHTUSMD | Pittman Dutton & Hellums, Birmingham, AL | 04-29-2020 |
| Hart v. Southern Illinois Hospital Services, et al | Circuit Court of the First Judicial Circuit, Jackson County, Illinois | 17-L-94 | Womack Law Firm, Carbondale, IL | 04-27-2020 |
| Bauer v. Parks/Patrice, et al. | Commonwealth of Kentucky, Floyd Circuit Court, Division No. 2 | 16-CI-01029 | Collins Law Office, Salyersville, KY | 04-27-2020 |
| Hunter v. Gindon Boad Service, Inc. | Commonwealth of Kentucky, Warren Circuit Court, Division No. | 17-CI-01982 | Stephenson Kifa, Sheshan Is, IN | 04-20-2020 |
| Jimenez v. Ramasamy, M.D., et al. | Superior Court of New Jersey, Law Division - Hudson County | HUD-L-008047-17 | Lynd Lynch Held Rosenberg, Hasbrouck Heights, NJ | 04-17-2020 |
| Angerson v. Propac, M.D., et al | Iowa District Court, Polk County | LACL63413 | Gulf Law Firm, West Des Moines, IA | 04-14-2020 |
| Dreamstime com v. Google, et al. | United States District Court, Northern District of California, San Jose Division | 3:18-CV 01910 WHA | Baker Marquart, Los Angeles, CA | 04-02-2020 |
| Ebre v. U-I Portage Medical Center, et al | Court of Common Pleas, Portage County, Ohio | 2018CV00671 | Farrell Law Firm, Brooklyn Hts, Ohio | 03-31-2020 |
| Nelson v. Silver Cross Hospital | Circuit Court of Will County, Illinois, Illinois County Department - Law Division | 17-L-000068 | O'Connor Law Group, Chicago, IL | 03-23-2020 |
| Kendrick v. Union Pacific Railroad Co | Circuit Court of Jackson County, Missouri at Independence | 1716-CV18719 | Dawn Bethune & Jones, Kansas City, MO | 03-19-2020 |
| Hanson v. Medina, Inc. | Circuit Court of Camden County, Missouri at Camdenton | 17CM-CC00251 | Heartland Group, Kansas City, MO | 03-17-2020 |

## LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
## STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Nheu v. Correa, et al | District Court, Clark County, Nevada | 6-18-780228-C, Dept No. XXXI | The 702 Firm, Las Vegas, NV | 03-11-2020 |
| Fre v. Mills, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2015 L 006664 | Sno*t Law Office* Chicago/JL | 03-11-2020 |
| Marqura v. United Airlines, Inc. | United States District Court, Northern District of Illinois, Eastern Division | 18-cv-4159 | Kisis Zackeri, Chicago, II | 23-10-2020 |
| Figueroa-Roserio v. Wal-Mart Stores, Inc | District Court, Clark County, Nevada | 2-19-cv-00928-CM-BNW | Powell Law Firm, Las Vegas, NV | 33-09-2020 |
| Seach v. John Crane, Inc | Circuit Court of Cook County, Illinois, County Department - Law Division | 2016 L 009430 | Taxmar Pollock Murray & Bekkerman, Chicago, IL | 03-05-2020 |
| Egermiser v. Trinity Industries, Inc. | District Court In and For Newton County, State of Oklahoma | CJ-2017-37 | Langdon & Emison, Lexington, MO | 03-03-2020 |
| Range III v. Ruscon Properties, Inc. | District Court of Harris County, Texas, b1al Judicial District | JU18-48033 | Arnold & Itkis, Houston, TX | 03-02-2020 |
| Gonzalez v. Lowe's Home Centers, et al | JAMS Arbitration, Las Vegas, NV | 2-17-cv-C2527-APG-PAL | Knepper & Clark, Las Vegas/NV | 02-27-2020 |
| Brown v. Cheesecake Factory Restaurants, Inc. | District Court, Clark County, Nevada | A-17-757485-C, Dept No. XXXI | Shook & Stone, Las Vegas, NV | 02-27-2020 |
| Nazarifo/Guerrero v. Trinity Health Corporation | Circuit Court of Cook County, Illinois, County Department - Law Division | 2017 - 003837 | Dinizulu Law Group, Chicago/IL | 02-27-2020 |
| Huntly v. Global Med Hospice Smokers, LLC, et al. | Eighth Judicial District Court, Clark County, Nevada | A-15-739603-C, Dept No. XXVIII | Luch n'rt Blakeney Courtney, Las Vegas/NV | 02-26-2020 |
| Long v. Lowe's Travel Stops and Country Stores, Inc | United States District Court, Eastern District of Missouri, Eastern Division | 4:18-CV-01414-SCP | Cox & Associates, St. Charles, MO | 02-24-2020 |
| Young/Arris v. Trinity Industries, Inc., et al | Circuit Court of Cook County, Illinois, County Department - Law Division | 2018 - 007726 | Langdon & Emison, Lexington, MO | 02-21-2020 |
| Jennings v. Naah, et al. | United States District Court, Western District of Missouri | 6:18-cv-03263-NKL | Ramsey Law Office, St. Louis/MO | 02-20-2020 |
| Squires v. Tragen | Court of the Twenty-Second Judicial Circuit, McHenry County, Illinois | 16 LA 63 | Frantz & Rechenberg, Lake in the Hills, II | 02-18-2020 |
| Cay v. Rabs, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 L 005380 | Sardman Levy & Fechteri, Chicago, IL | 02-17-2020 |
| Shores/Dewell v. The Dupps Company, Inc., et al. | United States District Court for the Central District of Illinois, Rock Island Division | 4:18 cv 04147 | Bradley Law Firm, St. Louis, MO | 02-14-2020 |
| Albright v. Metropolitan Sewer District | Jefferson Circuit Court, Division Thirteen(13) | 18-CI-007082 | Shlinger & Theller, Louisville, KY | 02-13-2020 |
| Lopez/Garrett v. Presbyterian Healthcare Services, Inc. | State of New Mexico, County of Santa Fe, First Judicial District Court | D-101-CV-1018-01342 | Salazar Sullivar Inclenouenda, Albuquerque NM | 02-11-2020 |
| Aldred v. Renown Health, et al | Second Judicial District Court for the State of Nevada, County of Washoe | CV18-01503, Dept. No. 7 | Langdon & Emison, Lexington, MO | 02-11-2020 |
| Block/Olmedo v. Cline, et al | Circuit Court of Cook County, Illinois, County Department - Law Division | 17 L 9756 | Kalogerakos & Associates, Lincolnwood, II | 02-10-2020 |
| Hennigan v. L.B Hunt | Circuit Court of Cook County, Illinois, County Department - Law Division | 2018 L 003462 | Alberts Durran & Liter, Chicago, IL | 02-07-2020 |
| Ramard v. Toyota Motor Corporation | Circuit Court of Cook County, Illinois, County Department - Law Division | 2016 L 001063 | Komyatte Law Firm, Lakewood, CO | 02-06-2020 |
| Slocum v. Kaiser Foundation Health Plan, Inc. | Matter of Arbitration | 15497 | Kapoor Law Offices, Danville, CA | 02-05-2020 |
| Slocum v. Kaiser Foundation Health Plan, Inc. | Matter of Arbitration | 15497 | Kapoor Law Offices, Danville, CA | 02-14-2020 |
| Mihorr v. Kansas City Southern Railway Company | Circuit Court of Jackson County, Missouri at Kansas City | 1816-CV11806, Division N | Dorn Arthur & Jones, Kansas City, MO | 01-14-2020 |
| Bairard v. Toyota Motor Corporation | Circuit Court of Cook County, Illinois, County Department - Law Division | 2016 - 001053 | Komyatte Law Firm, Lakewood, CO | 01-14-2020 |
| Marfre v. Finlay, et al. | District Court of the First Judicial District of the State of Idaho, In and For the County of Kootenai | CV28-18-4124 | Ramsden Martin Lally & Injurs, Coeur d'Alene, ID | 01-14-2020 |
| Kane v. Wal-Mart, Inc. | District Court, Clark County, Nevada | A-18-772835-C, Dept No. 13 | Powell Law Firm, Las Vegas, NV | 01-13-2020 |
| Jablo v. Morian-ed, et al. | United States District Court, Southern District of Iowa, Eastern Division | 3:18-cv-00093 | Langdon & Emison, Lexington, MO | 01-13-2020 |
| Pellin v. Martin | District Court, Clark County, Nevada | A-17-750181-C, Dept No. 2 | Powell Law Firm, Las Vegas/NV | 01-10-2020 |
| Walkery v. Desert Palace LLC | District Court, Clark County, Nevada | A-18-771501-C, Dept No. XV | Powell Law Firm, Las Vegas, NV | 01-09-2020 |
| Bauer v. Parks/Panice, et al. | Commonwealth of Kentucky, Floyd Circuit Court, Division No. 2 | 16 CI-00829 | Collins Law Office, Sayersville, KY | 01-09-2020 |

4880

LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Moss v. Grane Transportation Industries, Inc. | Circuit Court of Cook County, Illinois, County Department, Law Division | 18-L-000164 | Leonard Law Group, Chicago, IL | 01-09-2020 |
| Olek, Inc. v. RAR Development Associates, et al. | Superior Court of New Jersey, Law Division, Essex County | ESX-L-1780-15 | Orr Law Office, Newark, NJ | 01-08-2020 |
| Kennedy, et al. v. University of Kentucky Hospital, et al. | Commonwealth of Kentucky, Fayette Circuit Court, Division 7 | 17-Cl-02025 | Erdmann & Stumbo, Richmond, KY | 01-06-2020 |
| Van Arkel v. Rainbow Party Intervivos Holding, LLP | State of Michigan Circuit Court for the County of Ottawa | 2019-002345-NO | Lardley Law Office, Rockford, MI | 01-01-2020 |
| Tutt-Crabtree v. Riley Love, et al. | Circuit Court of the Twelfth Judicial Circuit, Will County, Illinois | 17 L 677 | Suber & Associates, Chicago, IL | 12-19-2019 |
| Vieta/Ramos v. Valley Health Systems, LLC., et al. | United States District Court, District of Nevada | 2:16-cv-01503 | Lah & Associates, Las Vegas, NV | 12-19-2019 |
| Rau v. Camana, LLC | Marion Superior Court No. 13, State of Indiana | 49D13-1312-CT-047993 | Allen Law Group, Valparaiso, IN | 12-18-2019 |
| Parker v. Stemak, et al | District Court, Clark County, Nevada | A-18-770414-C, Dept No. XXIV | Powell Law Firm, Las Vegas, NV | 12-17-2019 |
| Rust, I v. Banner Health, et al. | Superior Court of Arizona, In and For the County of Gila | S0400CV201900001 | Lloyd Law Group, Payson, AZ | 12-16-2019 |
| Bracy v. Desert Palace, Inc., et al. | District Court, Clark County, Nevada | A-16-746063-C, Dept No. II | Eglet Adams, Las Vegas, NV | 12-16-2019 |
| Butcher v. Dinescu, Inc., et al | District Court, 192nd Judicial District, Dallas County, Texas | DC-18-05700 | Witherspoon Law Group, Dallas, TX | 12-09-2019 |
| Godinez v. Urias, et al | Eighth Judicial District Court, Clark County, Nevada | A-18-777981-C, Dept. 15 | Powell Law Firm, Las Vegas, NV | 12-05-2019 |
| Hankins v. Ragauskaite, MD, et al | Circuit Court of Cook County, Illinois, County Department, Law Division | 16 L 2966 | Motherway & Napleton, Chicago, IL | 12-04-2019 |
| Gonzalez v. Christus Santa Rosa Health Care Corporation, et al | Deed of Court, 131st Judicial District, Bexar County, Texas | 2018-CI-09552 | Maloney Law Group, San Antonio, TX | 12-03-2019 |
| Fante, Jr. v. Clarksdale HMA, LLC., et al. | Circuit Court of Coahoma County, Mississippi | 14-CI-37-2033 | Mertel & Cecka, Carbondale, MS | 12-02-2019 |
| Knill v. Viper Trans, Inc | Circuit Court of Cook County, Illinois, County Department, Law Division | 2016 L 009464 | Allen Law Group, Valparaiso, IN | 11-26-2019 |
| LePrevre v. Lend Lease (US) Construction, Inc., et al. | Circuit Court of Cook County, Illinois County Department, Law Division | 13 L 13896 | Anesi Ozmon, Chicago, IL | 11-25-2019 |
| Olson v. Advanced Pain & Anesthesia Consultants, P.C., et al | Circuit Court of Cook County, Illinois County Department, Law Division | 2016L007039 | Ruder Law, Chicago, IL | 11-15-2019 |
| Maccaruso v. Krucoff, M.D. | Circuit Court of Cook County, Illinois, County Department, Law Division | 16 L 4094 | Kydatin Law Office, Chicago, IL | 11-12-2019 |
| Heywood v. Stanford, et al | District Court, Clark County, Nevada | A-18-769335-C, Dept No. XXXI | Lerner Injury Attorneys, Las Vegas, NV | 11-14-2019 |
| Davis v. Pace Suburban Bus Division of the Regional Transportation Authority, et al | Circuit Court of Cook County, Illinois, County Department, Law Division | 18 L 693 | Loggans & Associates, Chicago, IL | 11-13-2019 |
| Bennington v. Clapser, et al | District Court, Clark County, Nevada | A-18-775060-C, Dept No. I | Powell Law Firm, Las Vegas, NV | 11-13-2019 |
| Whitfield v. St. Anthony Hospital, et al. | District Court for Oklahoma County, State of Oklahoma | CJ-2017-1248 | Taterwater Law Firm, Oklahoma City, OK | 11-07-2019 |
| Darden v. Snow, et al | United States District Court, Northern District of Texas, Fort Worth Division | 4:15-CV-422-A | Washington Law Office, Dallas, TX | 11-06-2019 |
| Navarro/Guerrero v. Trinity Health Corporation | Circuit Court of Cook County, Illinois, County Department, Law Division | 2017 L 003937 | Dinizulu Law Group, Chicago, IL | 11-05-2019 |
| Anjeloye v. Wedner Properties LLC | District Court of Midland County, Texas, 441st District Court | CV54920 | Arnold & hkin, Houston, TX | 11-04-2019 |
| Caen Cultura Laboratories, LLC v. Cu Natalab, LLC | Judicial Arbitration and Mediation Service, Miami Office | 34600005460 | Kurzenberger Rosenfeld, San Francisco, CA | 10-30-2019 |
| Mathon v. The City of Chicago, et al. | United States District Court, Northern District of Illinois, Eastern Division | 1:16-cv-06104 | Horwitz Law Firm, Chicago, IL | 10-29-2019 |
| Baldonado v. Goetz, et al. | Circuit Court of Cook County, State of Illinois, 1st Municipal District, Law Division | 17 L 63913 | Carponelli Law Offices, Hoffman Estates, IL | 10-29-2019 |
| Shapiro, M.D. et al v. Northshore University Healthsystem Faculty Practice Associates | Circuit Court of Cook County, Illinois County Department, Law Division | 17 L 3434 | Motherway & Napleton, Chicago, IL | 10-28-2019 |
| Governor v. Target Corporation, et al. | Circuit Court of Cook County, Illinois, County Department, Law Division | 16 L 7377 | Motherway & Napleton, Chicago, IL | 10-25-2019 |
| Gaydula v. Roadsafe Traffic Systems, Inc. | Circuit Court of Cook County, Illinois, County Department, Law Division | 17 L 6680 | O'Connor Law Group, Chicago, IL | 10-24-2019 |
| Johnson/O'Leary v. Meeks Transport, LLC | Texas Arbitration Mediation Services | 18-0534-ARH | Grossman Law Offices, Dallas, TX | 10-17-2019 |
| Jimenez v. Ramaswamy, M.D., et al | Superior Court of New Jersey, Law Division - Hudson County | HUD-L-004047-17 | Lynch Lynch Held Rosenberg, Hasbrouck Heights, NJ | 10-17-2019 |

LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Melgoza v. Rush University Medical Center | United States District Court, Northern District of Illinois, Eastern Division | 17-cv-6819 | Hahn Loeser & Parks, Chicago, IL | 10-16-2019 |
| Shah v. Jasomnat, Inc., et al | District Court, Clark County, Nevada | A-17-756782 C, Dept 10 | Eglet Adams, Las Vegas, NV | 10-16-2019 |
| Skinner, et al v. Etherly, nr.. et al. | United States District Court for the Southern District of West Virginia at Charleston | 2:15-cv-07769 | Carpenter Zuckerman & Rowley, Llp, CA | 10-15-2019 |
| Spradlin v. Milner, et al | State of New Mexico, County of Grant, Sixth Judicial District Court | D-608-CV-2013-00181 | Sherman & Sherman, Deming, NM | 10-15-2019 |
| Gojuanotela v. BJ's Wholesale Club, Inc. etal | Superior Court of New Jersey, Law Civis on - Middlesex County | MID-L-3824-15 | Galt & Chamas, Perth Amboy,NJ | 10-09-2019 |
| Greenberg, M.D. v. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College | United States District Court, Eastern District of Louisiana | 14-cv-00117 | Flood Law, Royal Oak, MI | 10-08-2019 |
| Greybowski v. All Star Fence, et a. | Circuit Court of Cook County, Illinois, County Department, Law Division | 17-009196 | Burnes & Librar, Chicago, IL | 10-07-2019 |
| Rishu dz v. Rishford | District Court, Clark County, Nevada | A-18-775304-C, Dept No 4 | Saggese & Associates, Las Vegas, NV | 10-04-2019 |
| Santiago v. Fisher | United States District Court, Eastern District of New York | 19-CV-3 U63 | Dean Pnlk A Warzawil New York, NY | 10-03-2019 |
| Sick/Golden v. Turner, M.D. | Circuit Court of Lee County, Mississippi | CV18-044 (R)(1) | Wiss Vogeltein Forman & Offutt, Baltimore, MD | 10-02-2019 |
| Hulett v. Trinity Industries, Inc. | Circuit Court of Lake County, Illinois | 18L 00000743 | Langdon & Emisor, Lexington, MO | 10-01-2019 |
| Zausby, HC Aurora, L.C... et al. | Circuit Court of the Sixteenth Judicial Circuit, Kane County, Illinois | 13-579 | Cogan & Power, Chicago, IL | 10-01-2019 |
| Baldanzano v. Goetz, et al. | Circuit Court of Cook County, State of Illinois, 1st Municipal District - Law Division | 17-6372-L | Carpentelo Law Offices, Hoffman Estates, IL | 09-30-2019 |
| Jacobson v. Spectrum Health Primary Care Partners | State of Michigan, Circuit Court for the County of Kent | 19-00978-NH | Buchanan & Buchanan, Grand Rapids, MI | 09-30-2019 |
| Ha v. Hong, M.D., et al. | Supreme Court of the State of New York, County of New York | 805177/2014 | Lynch Lynch Held Rosenberg, Fasbrouck Heights,NJ | 09-27-2019 |
| Pearson v. Susan Hennett, LLC. | Main of Illinois, Circuit Court of the Twenty-Third Judicial Circuit, DeKalb County, Illinois | 2016-48 | Hurst Izenman & Hiram, Sycamore, IL | 09-26-2019 |
| Gallagher v. Midwest Orthopaedic Center, S.C., et a. | Circuit Court of the Tenth Judicial Circuit of Illinois, Peoria County | 17-6 | McNabola Law Group, Chicago, IL | 09-26-2019 |
| Banta v. Diaz, et al. | District Court, Clark County, Nevada | A-18-773248-C | Powell Law Firm, Las Vegas, NV | 09-26-2019 |
| Drennon v. BNSF Railway Company | Iowa District Court for Polk County | LACL16849 | Alwine Huthen Brown Deaver & Spier, Lincoln/NE | 09-25-2019 |
| Mahaffey v. Union Pacific Railroad | Circuit Court of Ouachita County, Arkansas | 52CV-17-186 | Hubbell Law Firm, Kansas City, MO | 09-24-2019 |
| Lavelle Illv, Illinois Bell Telephone Company | State of Illinois, Human Rights Commission | 2007CN3494 | McGrail & Associates, Loves Park,IL | 09-18-2019 |
| Smithers v. Phillips, M.D. | Commonwealth of Kentucky, Fayette Circuit Court, Division 7 | 16 CI 3702 | Kehh Law Office, Lexington, KY | 09-18-2019 |
| Wittle d v. Metropolitan Hospital, et al. | State of Michigan, Circuit Court for the County of Kent | 18-06748-NH | Buchanan & Buchanan, Grand Rapids, MI | 09-16-2019 |
| Iwilagher v. Midwest Orthopaedic Center S.C., et a. | Circuit Court of the Tenth Judicial Circuit of Illinois, Peoria County | 17-6 | McNabola Law Group, Chicago, IL | 09-11-2019 |
| Ouachter v. Dinequcry, Inc., et al | District Court, 192nd Judicial District, Dallas County, Texas | DC-18-05700 | Witherspoon Law Group, Dallas, TX | 09-12-2019 |
| Messmer v. Johnson By of Colorado, Boulder | United States District Court for the District of Colorado | 18-CV-02046-WIM-NRC | Weels Law Firm, Boulder, 4XX | 04-11-2019 |
| Jones Farms v. Helena Chemical Company | State of Indiana, County of Harrison, Harrison Circuit Court | 31021-1512-P-28 | Moore & Mo one, Owensboro,KY | 09-09-2019 |
| Huff, et al v. AMF Corporation, et al | Court of Common Pleas, Mahoning County, Ohio | 2017 CV 02343 | Engler Law Firm, Warren, OH | 09-07-2019 |
| Hudnut v. Adventist Midwest Health, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2017-L-003732 | McNabola & Associates, Chicago,IL | 09-06-2019 |
| Lutway v. United States of America | United States District Court, Northern District of Illinois, Eastern Division | 17-C-7943 | Kramer Jambols & Schwartz, Chicago, IL | 09-04-2019 |
| McNamara v. ICO Polymers North America, Inc., et al. | Circuit Court of Cook County, Illinois, County Department, Law Division | 14-L-000819 | Hendler Flores Law, Austin, TX | 08-29-2019 |
| Alonzo v. Kranzler, M.D., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 16-3896 | Motherway & Napleson, Chicago, IL | 08-26-2019 |

## LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
## STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Koontz v. First Transit, Inc | Superior Court of the State of Arizona, In and For the County of Maricopa | CV2017-090635 | McGovern Law Offices, Phoenix, AZ | 08-22-2019 |
| Lowe, M.D. v. Medical College of Wisconsin, Inc | United States District Court, Eastern District of Wisconsin | 2-15-cv-00650-LA | Ruberry Stalmack & Garvey, Chicago, IL | 08-22-2019 |
| Gibson v. Pirelli Tire, et al . | Circuit Court of Bernon County, Arkansas | 04CV-17-2756 | Langdon & Emison, Lexington, MO | 08-13-2019 |
| Rinott, M.D., Ph.D. v. Perrin v Ray Medical Center, et al | Supreme Court of the State of New York, County of New York | 157317/2012 | Pryor Cashman, New York, NY | 04-05-2019 |
| Mangrass v Geico Casualty Company | Circuit Court of the Twelfth Judicial Circuit, WII County, Illinois | 17-L 301010 | Allen Law Group, Valparaiso, IN | 08-19-2019 |
| Libby v. Medina, et al. | Dist. ct Court, Clark County, Nevada | A-17-768067-C, Dept No. XXIV | Powell Law Firn, Las Vegas, NV | 08-16-2019 |
| Bryant v. Waukegan Illinois Hospital Company, et al | 19th Judicial Circuit Court, Lake County, IL | 18 L 0000653 | Gainza Law, Chicago, IL | 08-16-2019 |
| Emry v Shapern, DPM, et al | Superior Court of New Jersey, Law Division - Middlesex County | MID-L-7190-16 | Quinn Law Office, Red Bank, NJ | 08-14-2019 |
| Williams, et al v. Chicago South Shore & South Bend Railroad, et al. | State of Indiana, County of Lake, Lake Circuit Court | 45D01 1308 CT 124 | Allen Law Group, Valparaiso, IN | 08-12-2019 |
| Wheaton College v. John | Circuit Court for the Eighteenth Judicial Circuit, DuPage County, Illinois | 2013 L 1179 | So To Business Law, Chicago, IL | 08-07-2019 |
| Weathers/Green v United States of America | United States District Court, Northern District of Illinois, Eastern Division | 18 C 4142 | Cogan & Puerm, Chicago, IL | 07-19-2019 |
| Tuth-Crabtree v. Riley Love et al. | Circuit Court of the Twelfth Judicial Circuit, WII County, Illinois | 17 L 677 | Suber & Associates, Chicago, IL | 07-19-2019 |
| Bingham v. Cazel, et al | Circuit Court of Kanawha County, West Virginia | 18-C-640 | Combs Law Office, Inez, KY | 07-18-2019 |
| Gerbasi v. Chicago Transit Authority | Circuit Court of Cook County, Illinois. County Department - Law Division | 2016-L-8484 | Grant Law, Chicago, IL | 07-17-2019 |
| Park v. Petsanka | Superior Court of New Jersey, Law Division - Bergen County | BER-L-252-18 | Law Law Firm, Hackensack, NJ | 07-15-2019 |
| Jordan/Lee v Silver Cross Hospital and Medical Centers, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2015 L 000134 | Fagen & Power, Chicago, IL | 07-15-2019 |
| Ferner v Toyota Motor Corporation, et al. | District Court, Clark County, Nevada | 6 17 757335 C, Dept No 27 | Dispr Cannon Gormley Angulo & Stoberski, Las Vegas, NV | 07 12 2019 |
| Su mar v ABC Automotive Investments, LLC | United States District Court, District of Nevada | 2:19-cv-00039-RFH-PAL | Henry & Krieger, Henderson, NV | 07-12-2019 |
| Hardhat-Higgan v Lee Canyon Ski Lifts, Inc., et al | District Court, Clark County, Nevada | A-17-750187-C, Dept No XXII | Simon Law, Las Vegas, NV | 07-11-2019 |
| Harkins v Ragruskane, M.D., et al | Circuit Court of Cook County, Illinois. County Department, Law Division | 16 L 2966 | Motherway & Napleton, Chicago, IL | 07-09-2019 |
| Neufelz v. Capital Bank N.A. | United States District Court, Eastern District of California | 1 18-cv-01012 LJO SKO | Kazerouni Law Group, Arroso Grande, CA | 07 08 2019 |
| Luce v. Premier Tech Technologies Ltd. et al. | United States District Court, District of Minnesota | 17-cv-4545 (DWF/LIB) | Goldenberg Law, Minneapolis, MN | 07-08-2019 |
| Ikossym v. Southwest Airlines Co. et al. | Superior Court of California, County of Alameda | RG15769954 | Ralahan & Spielberger, Los Angeles, CA | 07-01-2019 |
| Huff, et al v. XMX Corporation, et al | Court of Common Pleas, Mahoning County, Ohio | 2017 CV 02343 | Engler Law Firm, Warren, OH | 07-01-2019 |
| Wade v. ArcelorMittal, et al. | Circuit Court of Cook County, Illinois. County Department - Law Division | 16 L 13769 | Rusiro Ruman Cruemer & Polen, Dyer, IN | 07-03-2019 |
| Curtap v Arcelor Mittal et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 L 13546 | Motherway & Napleton, Chicago, IL | 07-03-2019 |
| Allen v. Cumberland County, et al. | United States District Court for the District of New Jersey, Camden Vicinage | 1 15-cv-06273 (JBS/AMD) | Benedetto Law Office, Philadelphia, PA | 06-27-2019 |
| Cent v. Grewitz, et al. | District Court, Clark County, Nevada | A-17-716454, Dept No XIV | Powell Law Firm, Las Vegas, NV | 06-26-2019 |
| Ilugnut v Adventist Midwest Health, et al | Circuit Court of Cook County, Illinois, County Department - Law Division | 2017-L-003737 | McNabola & Associates, Chicago, IL | 06-24-2019 |
| Goouzza v Vecchione, D.D.S., et al. | Superior Court of New Jersey, Law Division - Morris County | MRS-L-1983-16 | Lynch Lynch Held Rosenberg, Fairbrouck Heights, NJ | 06-20-2019 |
| Charettes v. Vecchione, D.D.S., et al. | Superior Court of New Jersey, Law Division - Morris County | MRS-L-2497-17 | Lynch Lynch Held Rusenberg, Hackensack Heights, NJ | 06-20-2019 |
| Steinberg v Vecchione, D D.S., et a . | Superior Court of New Jersey, Law Division - Morris County | MRS-L-2032-16 | Lynch Lynch Held Rosenberg, Fairbrouck Heights, NJ | 06-20-2019 |

LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Daymo v. Vecchione, D.D.S. et al. | Superior Court of New Jersey, Law Division - Morris County | MRSOL-1984-16 | Lynch Lynch Held Rosenberg, Fairbrook Heights, NJ | 06-20-2019 |
| Nasiwand v. Vecchione, D.D.S., et al | Superior Court of New Jersey, Law Division - Morris County | MRS-L-1983-16 | Lynch Lynch Held Rosenberg, Fairbrook Heights, NJ | 06-20-2019 |
| Boy e v. Vecchione, D.D.S. et al. | Superior Court of New Jersey, Law Division - Morris County | MRS-L-1878-16 | Lynch Lynch Held Rosenberg, Fairbrook Heights, NJ | 06-20-2019 |
| Coyle v. Vecchione, D.D.S., et al. | Superior Court of New Jersey, Law Division - Morris County | MRS-L-1868-16 | Lynch Lynch Held Rosenberg, Fairbrook Heights, NJ | 06-20-2019 |
| Carolen v. Vecchione D.D.S., et al | Superior Court of New Jersey, Law Division - Morris County | MRS-L-1867-16 | Lynch Lynch Held Rosenberg, Fairbrook Heights, NJ | 06-20-2019 |
| Wetniku v. Vecchione, D.D.S., et al. | Superior Court of New Jersey, Law Division - Morris County | MRS-L-1866-16 | Lynch Lynch Held Rosenberg, Fairbrook Heights, NJ | 06-20-2019 |
| Benhelo v. Vecchione D.D.S., et al | Superior Court of New Jersey, Law Division - Morris County | MRS-L-1862-16 | Lynch Lynch Held Rosenberg, Fairbrook Heights, NJ | 06-20-2019 |
| DeKinnue v. Vecchione, D.D.S., et al. | Superior Court of New Jersey, Law Division - Morris County | MRS-L-1993-16 | Lynch Lynch Held Rosenberg, Fairbrook Heights, NJ | 06-20-2019 |
| Baglieri v. New Jersey Manufacturers Insurance, et al. | Superior Court of New Jersey, Law Division - Bergen County | BER-L-3927-17 | Seigel Law, Ridgewood, NJ | 06-17-2019 |
| Mava v. BNSF Railroad Company | District Court of Oklahoma County, State of Oklahoma | CJ-2017-6087 | Fubsel Law Firm, Kansas City, MO | 06-17-2019 |
| C.R. England, Inc., et al. v Aladi | Northern District of Illinois, Western Division | 17 CV 50352 | McNeely, Stephenson Shrivyvdh, IN | 06-14-2019 |
| Huff, et al. v. XMR Corporation, et al | Court of Common Pleas, Mahoning County, Ohio | 2017 CV 02141 | Engler Law Firm, Warren, OH | 06-14-2019 |
| Boyd v. Autozone West, LLC | District Court, Clark County, Nevada | A 17 765512 C, Dept. No. II | Saggese & Associates, Las Vegas, NV | 06 13 2019 |
| Morris v. Equifax Information Services, LLC, et al | United States District Court, District of Nevada | 2.18-cv-01828-JAD-GWF | Haines & Kreger, Henderson, NV | 06-07-2019 |
| Rutc v. Utac, M.U.. et al. | Superior Court of New Jersey, Law Division - Hudson County | HUD-L-1377-13 | Gill & Chamas, Howell, NJ | 06-06-2019 |
| Cramer v. Equifax Information Services, J.C. | United States District Court, Eastern District of Missouri Eastern Division | 4:18-cv-1078 | Goldsmith Law Office, Rocky River, OH | 06-04-2019 |
| Caruso v. PBR Rock, LLC et al | District Court, Clark County, Nevada | 6-17-776385-C, Dept No II | Close Law Group, Henderson NV | 06-03-2019 |
| Gross v. FCA US LLC, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2016-L-007623 | Langdon & Emison, Lexington, MO | 05-30-2019 |
| Mejia v. Valley Health Holdings, LLC, et al. | District Court, Clark County, Nevada | A-17-751206-C, Dept No XV I | Palominotar Law Group, Las Vegas, NV | 05-28-2019 |
| Temperde v. Avis Rent a Car Systems, L.C., et a. | United States District Court, District of Nevada | 2:18-cv-00470-..-CW-EWH | Powell Law Firm, Las Vegas, NV | 05-28-2019 |
| Landess v. DeBiggershad, M.D., et al. | District Court, Clark County, Nevada | 6 18 776896 C, Dept No 24 | Howard & Howard, Las Vegas, NV | 05 24 2019 |
| Scrooman v. Fardo, et a. | District Court, Clark County, Nevada | 4-18-767754-C, Dept No. 27 | Powell Law Firm, Las Vegas, NV | 05-23-2019 |
| Schwab v. Ford Motor Company | United States District Court, District of Delaware | 1.18-cv-00384 RGA | Lamm Law Firm, Houston, TX | 05-22-2019 |
| So orrant v. Advocate Health and Hospitals Corporation | Circuit Court of Cook County, Illinois, County Department - Law Division | 2016 - 005457 | Slavin & Savin, Chicago, IL | 05-21-2019 |
| Gulda v. Brown | Circuit Court of St. Charles County, Missouri Circuit Judge Ittmann | 1711-CC00811 | Bradley Law, Louisiana, MO | 05-10-2019 |
| Hinshaw/Johnson v. USF Healthcare System, et al | Eleventh Judicial Circuit Court of Livingston County, Illinois, Law Division | 16 L 11 | McNabola & Associates, Chicago, IL | 05-20-2019 |
| Moore v. Joe Tex, Inc., et al. | District Court, 82nd Judicial District, Franklin County, Texas | 12363 | Grossman Law Offices, Dallas, TX | 05 17 2019 |
| Arvedson v. Buchar | Superior Court of the Virgin Islands, Division of St. Thomas & St. John | 430 / 2018 | Kreamer Law Office, Naperville, IL | 05-16-2019 |
| Flores, et al. v. Ramirez, et al. | District Court of Harris County, Texas, 189th Judicial District | JU17-74370 | Grunman Law Offices, Dallas, TX | 05-14-2019 |
| Leggec v. Playcore Inc., et al | Superior Court of New Jersey, Law Division - Middlesex County | MID-L-621,7-17 | Gill & Chamas, Ferth Amboy, NJ | 05-11-2019 |

4884

## LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
## STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Ancrades v. Menard, Inc | Circuit Court of Cook County, Illinois, County Department - Law Division | 2017 - 00067L | Arguna & Associates, Chicago, IL | 26-03-2019 |
| Ernst Gene Therapeutics LLC v. Sloan Kettering Institute for Cancer Research, et al. | Supreme Court of the State of New York, County of New York | 150856/2017 | McCue Sussmore Zapfel Cohen & Youbi, New York, NJ | 06-03-2019 |
| Birnbaum v. CentraState Medical Center, et al. | Superior Court of New Jersey, Law Division, Monmouth County | MON-L-4723-14 | Locurto Law, Freehold, NJ | 04-30-2019 |
| Schweers Diaz, et al | District Court, Clark County, Nevada | A-17-766063-C, Dept no 27 | Powell Law Firm, Las Vegas, NV | 03-26-2019 |
| Awe USA Co., Ltd. V. Amo Corporation | United States District Court, Northern District of Illinois, Eastern Division | 17cv08513 VVEs JC | Holmes Law Group, Chicago, IL | 04-26-2019 |
| Coe v. Colgate University | United States District Court, Northern District of New York | 5:17-cv-1291 (FJS/ATB) | Nesenoff & Milltenberg, New York, NY | 04-25-2019 |
| Mikalj v. Swedish Covenant Hospital, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 - 7992 | MrNabola & Associates, Chicago, IL | 01-23-2019 |
| Poppos - Ford Motor Company, et al | Superior Court of New Jersey, Law Division, Middlesex County | L-5813-16 | Gusparda & Mecks, Dallas, TX | 04-23-2019 |
| Zavala v. Richardson, et al. | District Court, Clark County, Nevada | A-17-749760-C, Dept No II | Powell Law Firm, Las Vegas, NV | 04-17-2019 |
| McFarland v. Ichalla, M.D. | Circuit Court of Will County, Illinois | 16 L 966 | Mutherway & Macladon, Chicago, IL | 04-15-2019 |
| Swech v. Rerigny, M.D., et a | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 - 10427L | Power Rogers & Smith, Chicago, IL | 04-15-2019 |
| Dae, et al v. Macomb Community Unit School District ho. 185, et al. | United States District Court for the Central District of Illinois, Rock Island Division | 1 18-cv-01072-SLD-IE4 | Herberg National Law Group, Traverse City, MI | 04-05-2019 |
| Siron v. Riverside Health System, Inc., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 - 003077 | Motherway & Napleton, Chicago, IL | 04 05 2019 |
| Batajas v. Un Nor Community Hospital, et a. | Circuit Court of the Sixteenth Judicial Circuit, Kane County, Illinois | 14 - 40 | Cogan & Power, Chicago, Ill | 04-04-2019 |
| Paguancela v Di's Wholesale Club Inc et al | Superior Court of New Jersey, Law Division - Middlesex County | MID-L-3824-16 | Call & Chamas, Perth Amboy NJ | 04-04-2019 |
| Gibbs v Bercy | State of Indiana, Porter County Superior Court | 64D01-CT-006021 | Martz & Lucas, Valparaiso, IN | 04-02-2019 |
| Warsh/Shane v. Koler, M.D., et al. | Superior Court of New Jersey, Law Division Camden County | CAM L 1617 16 | Lynch Lynch Held Rosenberg, Hasbrouck Heights, NJ | 04-01-2019 |
| Dru v. Kemny Construction Company, et al | Circuit Court of Cook County, Illinois, County Department - Law Division | 14 - 11196 | Menikis Hyland & Associates, Chicago, IL | 03-28-2019 |
| Dries v Starcon International, Inc | Circuit Court of Cook County, Illinois, County Department - Law Division | 17 - 3697 | Shannon Law Group, Woodridge, IL | 03-27-2019 |
| Adams v. May Trucking Co., et al. | Circuit Court of the First Judicial Circuit, Williamson County, Illinois | 17-L-33 | Langdon & Emson, Lexington, MO | 03-26-2019 |
| TSR Landmark, LLC, et al. v. International Plaza Owner's Association | Circuit Court of the Eighteenth Judicial Circuit, DuPage County, Illinois | 3019 - 000599 | Krammer Law Office, Naperville, Il | 03-26-2019 |
| Kane v 148, et al | Circuit Court of Cook County, Illinois, County Department - Law Division | 11 - 10329 | Loggers & Associates, Chicago, IL | 03-25-2019 |
| Cel a v American Family Insurance Company | State of Illinois, Uninsured Motorist Action | NA | Ryan Ryor & Landis, Chicago, IL | 03-23-2019 |
| Jones Farms v. Helena Chemical Company | State of Indiana, County of Hancock, Harrison Circuit Court | 31C01-1512-P-28 | Moore & Malone, Owensburg, KY | 03-20-2019 |
| Garbot v. Chicago Transit Authority | Circuit Court of Cook County, Illinois, County Department - Law Division | 1016-L-8484 | Grant Law, Chicago, L | 03-20-2019 |
| Saenz-Quintero v Morg-Diaz, et al | District Court, Clark County, Nevada | A-17-760988-C, Dept No 12 | Powell Law Firm, Las Vegas, NV | 03-19-2019 |
| Gulick v. Schultze, Custel & Bryant PLLC | Jefferson Circuit Court, Division Six | 15-LI-004456 | Dollather Law Firm, Louisville, KY | 03-19-2019 |
| Walther v Majeed, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2015 - 10267 | Trujilo & Associates, Chicago, IL | 03-18-2019 |
| Black v Sram County Public Utility District | United States District Court, Eastern District of Washington | 2 17-cv-00365 RMP | Earl & Earl, Boise, ID | 03-13-2019 |
| Longobardi v. Kaskel, M.D., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 - 10339 | Cogan & Power, Chicago, IL | 03-13-2019 |
| Winv Red Star Expedite, Inc., et al. | Commonwealth of Kentucky, Shelby Circuit Court | 16-CI-00315 | Stringer & Sheiler, Louisville, KY | 03-12-2019 |
| Pettie v Martin | District Court, Clark County, Nevada | A-17-750181-C | Powell Law Firm, Las Vegas, NV | 03-11-2019 |
| Hassedales v. DuPage Medical Group, LTD | Circuit Court of Cook County, Illinois, County Department, Law Division | 16 - 9158 | Lane & Lane, Chicago, IL | 03-11-2019 |

## LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
## STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Ayala v Muñiz v. Lemons, et al. | United States District Court, District of Nevada | 2:18-CV-00511-GMN-PAL | Powell Law Firm, Las Vegas, NV | 03-08-2019 |
| Rolic v. Flores, et al. | District Court, Clark County, Nevada | A-17-749017-C, Dept No VII | Ladah Law Firm, Las Vegas, NV | 03-05-2019 |
| Warner v. Sheridan Agate, LLC, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 1016 - 015989 | McNabola & Associates, Chicago, IL | 03-05-2019 |
| Maher v. Hackensack University Medical Center | Superior Court of New Jersey, Law Division - Bergen County | III N4-4101 PC-16 | Shaw Law Office, Ill. Law, NJ | 14-04-2019 |
| Obremski v. Advocate Christ Medical Center, et al | Circuit Court of Cook County, Illinois, County Department - Law Division | 2016-L-000627 | Konicek & Dillon, Geneva, IL | 03-01-2019 |
| Varebrook v. Tisdall, M.D., et al. | District Court of Bexar County, Texas, 225th Judicial District | 2017CI06007 | Krebs Law Office, Austin, TX | 02-28-2019 |
| Hall v. Sabert Landscaping Company | Circuit Court of the Cook County Judicial Circuit, Cook County, Illinois | 16 - 4742 | Saint & Maher, Waukegan, IL | 02-27-2019 |
| Lamoure v. Stamford Hospital, et al. | Superior Court, District of Fairfield at Bridgeport | FH14-CV16-NON5NONs | Milber Law Office, Norwalk, CT | 01-31-2019 |
| "Andy" v. Big Brothers Big Sister of America, Inc. | Third Judicial District Court, Salt Lake County, State of Utah | 172903382 | Marsh Law Firm, White Plains, NY | 02-25-2019 |
| Carey v. Brown, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 - 009946 | Wolfman Law Office, Chicago, IL | 02-21-2019 |
| Lilley/Zeuhen v. Ee Uan Teu, et al. | District Court, Clark County, Nevada | A-17-749596-C, Dept No XV II | Powell Law Firm, Las Vegas, NV | 02-20-2019 |
| Santiago v. Fischer | United States District Court, Eastern District of New York | 13 CV 3449 | Davis Polk & Wardwell, New York, NY | 02-20-2019 |
| Sorbas v. E Mechanical, LLC, et al. | Circuit Court of Cook County, Illinois County Department - Law Division | 16 - 7256 | Curcio Law Offices, Chicago, IL | 02-20-2019 |
| Guzman/Jaramillo-Guzman v. Estate of Michael Don Tavo Dennis, et al | District Court, Clark County, Nevada | A-16-748252-C, Dept No VII | Bighorn Law, Las Vegas, NV | 02-08-2019 |
| Gregory v. Lexington Center Corporation | Commonwealth of Kentucky, Fayette Circuit Court, Division 6 | 14-CI-389C | D Bryan Bloum & Pane, Louisville, KY | 02-08-2019 |
| Fontini v. Power Construction Company, et al | Circuit Court of Cook County, Illinois, County Department - Law Division | 15 - 308676 | O'Reilly Law Office, Chicago, IL | 01-29-2019 |
| Cochran, et al. v. Nevada Property 1, et al | District Court, Clark County, Nevada | A687603, Dept No 24 | Eglet Prince, Las Vegas, NV | 01-24-2019 |
| Lambert v. Bliss, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 - 001043 | Conway & Mrowiec, Chicago, IL | 01-22-2019 |
| Zokick v. ASV, Inc., et al. | State of Indiana, County of Porter, Porter Superior Court, Sitting at Valparaiso, Indiana | 64D01-1705-CT-004454 | Allen Law Group, Valparaiso, IN | 01-21-2019 |
| Weatherly, IIv. Integrated Airline Services, Inc., et al | Circuit Court of Cook County, Illinois, County Department - Law Division | 17 - 4348 | Shannon Law Group, Woodridge, IL | 01-17-2019 |
| Abalala, et al v. Jewish Hospital, et al. | Commonwealth of Kentucky, 30th Judicial Circuit Court, Jefferson Circuit Court, Division Nine (9) | 16 CI-02529 | Morris & Player, Louisville, KY | 01-17-2019 |
| Frey/Mitchell v. Thomas | District Court, 17th District District, Tarrant County, Texas | 017-290211-1h | Washington Law Office, Dallas, TX | 01-16-2019 |
| Williams v. Kumho Tire Co. Inc., et al | Circuit Court for Jefferson County, Arkansas | CV-2014-360-2 | Langdon & Emison, Lexington, MO | 01-14-2019 |
| Kiesswetter v. Roscoe Township | State of Illinois, Circuit Court of the 17th Judicial Circuit, Winnebago County | 14 - 194 | Kern Stoddard Buck Lewis, Sycamore, IL | 01-11-2019 |
| Valencia v. U.S. Bank National Association | United States District Court for the Southern District of Iowa, Central Division | 4 :16-cv-00066 | Duff Law Firm, West Des Moines, IA | 01-10-2019 |
| Martin v. Robertson | State of Indiana, County of Lake, Lake Superior Court, Sitting at Hammond, Indiana | 45D11-580-6-CT-00002 | Hilbrich Law Office, Highland, IN | 01-4N-2019 |
| Johnson v. Toyota Motor Corporation, et al | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 - 8558 | Langdon & Emison, Lexington, MO | 01-08-2019 |
| Capuana v. Resh, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 15 - 12727 | Mutherway & Nacleton, Chicago, IL | 01-08-2020 |
| Isaaq v. The Village of Niles, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 - 304710 | Nemeroff Law Office, Chicago, IL | 01-08-2019 |
| Carter v. Chelick, D.C. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2017 - 004046 | Cogan & Power, Chicago, IL | 01-07-2019 |
| Parmaksiz v. SVAP Hoffman Plaza, LP, et al. | Circuit Court of Cook County, Illinois, County Department - Chancery Division | 2016 CH 014315 | Paris Law Firm, Chicago, IL | 01-04-2019 |
| Lebert v. Caparura, M D | District Court, Clark County, Nevada | A-17-732003-C, Dept No XXI | Eglet Prince, Las Vegas, NV | 01-04-2019 |
| Corter v. FedEx Ground Package System, Inc. | 44th Judicial District Court, Dallas County, Texas | DC-17-06463 | Grossman Law Offices, Dallas, TX | 12-11-2018 |
| Benavides, Jr. v. Holland Community Hospital, et al | State of Michigan In the Circuit Court for the County of Ottawa | 17-5138-NH | Buchanan & Buchanan, Grand Rapids, MI | 12-17-2018 |

LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Ripley v. Shankar, M.D., et al | Circuit Court of the First Judicial Circuit, Jackson County, Illinois | 16-L-78 | Womack Law Firm, Carbondale, IL | 12-13-2018 |
| Ibach v. Cho, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 14 - 10445 | McNabola & Associates, Chicago, IL | 12 12 2018 |
| Vesely v. Walsh Construction Company of Illinois, Inc. | Circuit Court of Cook County, Illinois, County Department - Law Division | 15 - 004250 | Motiu Fighoil & Autoclaies, Chicago, Il | 12-12-2018 |
| Fallagher v. Midwest Orthopedic Center, S.C., et al. | Circuit Court of the Tenth Judicial Circuit of Illinois, Peoria County | 17 - L | McNabola Law Group, Chicago, IL | 12-11-2018 |
| Labba v. Stocker III, et al | Circuit Court for Jackson County, Missouri at Independence | 1816-CV00467 | Langdon & Emison, Lexington, MD | 12-10-2018 |
| Torres, et al. v. Brown. et a. | United States District Court, District of Arizona | 3:17-cv-08217 PCT JAT | Lerner Injury Attorney, Las Vegas, NV | 12-10-2018 |
| Roberts v. CORPAG 3OT A Plaza Owner, LLC, et a. | District Court, Clark County, NV | A-15-713245-C, Dept No VII | Maier Gutierrez & Associates, Las Vegas, NV | 12-07-2018 |
| Mimo rh v Agave And Authentic Mexican Restaurant 5 LLC | State of Indiana, County of Tippecanoe, Tippecanoe Circuit Court | FWD1-1708-CT-001147 | Hoffman Law Firm, Louisville, KY | 12-07-2018 |
| Bell v. Zamba, M.D., et al. | Circuit Court of the 17th Judicial Circ. of Winnebago County, Illinois | 15 . 0206 | Ryan Ryan & Barda, Chicago, IL | 12 06 2018 |
| Watson/Ransom/Jones v. Texas-Cola Leasing Co., et al. | District Court, Tarrant County, TX | 352-290806-17 | Washington Law Office, Dallas, TX | 12-05-2018 |
| Watson/Ransom/Jones v. Texas-Cola Leasing Co., et al. | District Court, Tarrant County, TX | 352-290806-17 | Washington Law Office, Dallas, TX | 12-04-2018 |
| Jones/Cotton v. Sheytho edami, M.D. et al. | State of Illinois, Circuit Court of the 17th Judicial Circuit, County of Winnebago | 2013-L-49 | Igumar Polcerk Murray & Beiderman, Chicago, IL | 12-04-2018 |
| Cardinall et al. v. Pustour, Inc., et al. | United States District Court, District of Nevada | 2:16-cv-02046-JAD-NJK | Haines & Krieger, Henderson, NV | 12-03-2018 |
| Adams v. University of Notre Dame du Lac | United States District Court for the Southern District of Indiana, Indianapolis Division | 1:17-CV-02101-WTL-MJD | Betz & Blevins, Indianapolis, IN | 11-30-2018 |
| Hinge v. The City of Chicago, et al. | United States District Court for the Northern District of Illinois, Eastern Division | 13 C 7998 | Herbert Law Firm, Chicago, IL | 11-29-2018 |
| Meeks v Dissanayake, M.D. | Circuit Court of Cook County, Illinois County Department - Law Division | 15 . 11535 | Loggans & Associates, Chicago, IL | 11 29 2018 |
| Thoroughman v. Wacodain Central, Ltd | United States District Court, Western District of Wisconsin | 15-CV-74 | Lipkin & Higgins, Chicago, IL | 11-28-2018 |
| Huelspriv 11-min-Way Area Special Education District AAI, et al | Circuit Court of the Twelfth Judicial Circuit Will County, Illinois | 16 L 0549 | Allen Law Group, Valparaiso, IN | 11-28-2018 |
| Adal/Meyisman v State Farm Mutua Automobile Insurance Company, et al. | United States District Court, District of Nevada | 2:17-cv-00423-REQ-CWH | Powell Law Firm, Las Vegas, NV | 11-27-2018 |
| E&I Holdings, Inc. v. Coral Springs Eggs and I, LLC, et al. | United States District Court for the District of Colorado | 17 cv 02377 WJM STV | Nova IP Law, Gainesville, VA | 11 21 2018 |
| King v. Desert Palace, Inc., et al | District Court, Clark County, Nevada | A-13-691609-C, Dept No. XIV | Gentile Cristall Miller Armeni Savarese, Las Vegas/NV | 11-21-2018 |
| King v. Desert Palace, Inc., et al | District Court, Clark County, Nevada | A-13-691609-C, Dept No XIV | Gentile Cristall Miller Armeni Savarese, Las Vegas/NV | 11-20-2018 |
| Witt v. Red Star Expeditie, Inc., et al. | Commonwealth of Kentucky, She by Circuit Court | 16-CI-00371 | Stringer & Theller, Louisville, KY | 11-16-2018 |
| Urtuz v. 11th Merchant, III, et al. | Circuit Court of Cook County, Illinois County Department - Law Division | 16 . 7748 | Power Law Offices, Chicago, IL | 11-14-2018 |
| Watson/Ransom/Jones v. Texas-Cola Leasing Co., et al. | District Court, Tarrant County, TX | 352-290806-17 | Washington Law Office, Dallas, TX | 11-13-2018 |
| Watson/Ransom/Jones v. Texas-Cola Leasing Co., et al. | District Court, Tarrant County, TX | 352-290806-17 | Washington Law Office, Dallas, TX | 11 13 2018 |
| Griffin v. Warren Ball, et al | Circuit Court of Cook County, Illinois County Department - Law Division | 17 . 2740 | Motherway & Napleson, Chicago, IL | 11-09-2018 |
| Riley v. City of Chicago, et al. | Circuit Court of Cook County, Illinois County Department - Law Division | 17 . 246 | Langdon & Emison, Chicago, IL | 11-08-2018 |
| Shah v. Bernstam, et al. | Eighth Judicial District Court, Clark County, Nevada | A-15-713496-C, Dept No. XIII | Padda Law, Las Vegas, NV | 11-07-2018 |
| Himawan/Al ms v. Vitale, M.D., et al. | Superior County of New Jersey Law Division: Bergen County | L-JC14-16 | Lynch Lynch Held Rosenberg, Hasbrouck Heights, NJ | 11-40-2018 |
| Lloyd/Watson v. Cumberland County, et al. | United States District Court for the District of New Jersey, Camden Vicinage | 1:16-cv-03503 JBS AMD | Benedetto Law Office, Philadelphia, PA | 11 06 2018 |
| Hafton v. Cumberland County, et al. | United States District Court for the District of New Jersey, Camden Vicinage | 1:16-cv-03503 JBS AMD | Benedetto Law Office, Philadelphia, PA | 11-06-2018 |
| Wann/Lewis v. Cumberland County et al. | United States District Court for the District of New Jersey, Camden Vicinage | 1:16-cv-03503 JBS AMD | Benedetto Law Office, Philadelphia, PA | 11-06-2018 |

LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Sanchez v. Sormith, et al | District Court, Clark County, Nevada | A-17-751126-C, Dept No XXX | Powell Law Firm, Las Vegas, NV | 11-05-2018 |
| Dirr, Jr. v. T. Burns, Ltd., et a. | Circuit Court of Jackson County, Missouri at Kansas City | 1816 CV03412, Division 17 | Langdon & Emison, Lexington, MO | 11-05-2018 |
| Color-Monroy v. Mahart, et al. | District Court, Clark County, Nevada | A-16-746156-C, Dept No XVII | Powell Law Firm, Las Vegas, NV | 11-03-2018 |
| Fahrir, et al. v. Seabel Healthcare System, Inc., et al | Jefferson Circuit Court, Division Twelve | 17-CI-001994 | Battaline Law Firm, Louisville, KY | 10-31-2018 |
| Ocampo-Trujillo/Nunez v. All, et al | District Court, Clark County, Nevada | A-15-728995-C, Dept No | Powell Law Firm, Las Vegas, NV | 10-23-2018 |
| Seach v. Sis Harvey Industries, Inc. et a. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2015_L10602 | Simon Law Group, Chicago, IL | 10-23-2018 |
| Bartels v. Saver Cross Hospital and Medical Centers, et a. | Circuit Court of the Twelfth Judicial Circuit, Will County, Illinois | 1018_200328 | McNabola Law Group, Chicago, IL | 10-22-2018 |
| ILarkin v. Alvarez, et al. | District Court, Clark County, Nevada | A-17-758300-C, Dept No XV | Naqvi Injury Law, Las Vegas, NV | 10-17-2018 |
| Johnson/Toth v. White River Health System, Inc., et al. | Circuit Court of Independence County, Arkansas Civil Division | CV 2012-026-2 | Wilcox Lacy, Jonesboro, AR | 10-19-2018 |
| Bartolo v. Whole Foods Market, Inc. | United States District Court for the District of Columbia | 17-cv-1453 (6PM) | Branch & Associates, Washington, DC | 10-18-2018 |
| Liller/Zruhes v. Et Ual Tan, et al. | District Court, Clark County, Nevada | A-17-749596-C, Dept No XVII | Powell Law Firm, Las Vegas, NV | 10-17-2018 |
| Illinojsa v. United Parcel Service, Inc. | Circuit Court of Cook County, Illinois, County Department - Law Division | 11_7549 | Bashford Law Group, Glenview, IL | 10-16-2018 |
| Al erson v. Starbucks Corporation | Circuit Court of Cook County, Illinois, County Department Law Division | 16_4034 | Cogan & Power, Chicago, IL | 10-15-2018 |
| Nichols v. Scaley, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2016_5671 | Dinizulu Law Group, Chicago, IL | 10-11-2018 |
| Aye/Hsin v. Ford Motor Company, et al | Missouri Circuit Court, Sixth Judicial Circuit, Platte County | 17AE-CC00423 | Langdon & Emison, Lexington, MO | 10-11-2018 |
| Malone, et a., v. Moe, et al | Eighth Judicial District Court, Clark County, Nevada | A-16-741874-C, Dept No XXX | Ingham Law, Las Vegas, NV | 10-09-2018 |
| Taylor v. Berger, MD, et al. | Circuit Court of Cook County, State of Illinois, County Department Law Division | 15_9086 | Motherway & Napleton, Chicago, IL | 10-09-2018 |
| Vaseemuddin v. County of Cook, et al. | United States District Court, Northern District of Illinois, Eastern Division | 14 C 3955 | Kreamer Law Office, Naperville, IL | 10-03-2018 |
| Snyder v. Bank of America, N.A., et al | United States District Court, Northern District of California | 15-cv-04232B-EDL | Pamela Snyder Pro Se, San Francisco, CA | 10-03-2018 |
| Farmer, et al. v. Las Vegas Metropolitan Police Department, et al | United States District Court, District of Nevada | 2:17-cv-01946-JCM-PAL | Marquis Aurbach Coffing Law, Vegas, NV | 09-28-2018 |
| Cavazos v. Paschal Enterprises LLC, et al | 88th Judicial District Court of Hardin County, Texas | 57435 | Grossman Law Offices, Dallas, TX | 09-28-2018 |
| Chappell v. Joey's Inc., et al | District Court, Clark County, Nevada | A-17-752231-C, Dept No XXX | Eglet Prince, Las Vegas, NV | 09-27-2018 |
| Confinaure v. AfxCD Corporation, et al | Superior Court of New Jersey, Law Division - Monmouth County | MON-L-797-14 | Galt & Chaman, Perth Amboy, NJ | 09-26-2018 |
| Romero v. Club JND Corp, et al | Circuit Court of Cook County, Illinois, County Department - Law Division | 2016-L-006872 | Cochran Firm, Chicago, IL | 09-24-2018 |
| Tran v. HDL Group, Inc., et al | Eighth Judicial District Court, Clark County, Nevada | A-15-740978-C, Dept X | Nguyen & Associates, Las Vegas, NV | 09-21-2018 |
| Ballard/Chapman v. Swartz, M.D., et al | Superior Court of New Jersey, Law Division - Ocean County | OCN-L-761-16 | Escandon Fernicola Anderson & Covell, Allenhurst, NJ | 09-19-2018 |
| Trshanas v. Northwestern University, et al. | United States District Court for the Northern District of Illinois, Eastern Division | 1:15-cv-11192 | DeRose & Associates, Hinsdale, IL | 09-17-2018 |
| Tracy v. Lake County Neurosurgery, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 09_L3156 | McNabola Law Group, Chicago, IL | 09-17-2018 |
| Garcia-Alvarez v. Lopez-Acosta, et al. | Eighth Judicial District Court, Clark County, Nevada | A-16-743595-C, Dept No XXX | Jones Injury Attorneys, Las Vegas, NV | 09-14-2018 |
| Ayala v. Young, et al | District Court, Clark County, Nevada | A-16-747753-C, Dept No | Powell Law Firm, Las Vegas, NV | 09-14-2018 |
| Briggs v. IAP Worldwide Services, Inc., et al | United States District Court for the Eastern District of Virginia, Alexandria Division | 18 cv 00682 AJT TCB | Ferrell Law Office, Spokane, WA | 09-13-2018 |
| Imorti v. BNSF Railway Company | United States District Court, District of South Dakota, Western Division | 5_17-cv-5030-II-V | Hubbell Law Firm, Kansas City, MO | 09-11-2018 |
| Sanchez-Tolentino v. Vasquez III, et al. | District Court, Clark County, Nevada | A-16-746-163-C, Dept No XXI | Powell Law Firm, Las Vegas, NV | 09-10-2018 |
| Whitestone v. Ellzside, et al | District Court, Clark County, Nevada | A-17-748-640-C, Dept No IV | Powell Law Firm, Las Vegas, NV | 09-07-2018 |

LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| King v. Desert Palace, Inc., et al | District Court, Clark County, Nevada | A-13-691609-C, Dept No XN | Gentile Cristalli Miller Armeni Savarese, Las Vegas, NV | 09-06-2018 |
| Rodriguez v. Wong, et al | District Court, Clark County, Nevada | A-16-740806-C, Dept No. XXIII | Powell Law Firm, Las Vegas, NV | 09-05-2018 |
| Lindsay/Lee v. Silver Cross Hospital and Medical Centers, et al. | Circuit Court of Cook County, Illinois, County Department – Law Division | 2015 L 301 297 | Cogan & Power, Chicago, IL | 08-31-2018 |
| Romazzi v. Grodoski | Circuit Court of the Eighteenth Judicial Circuit, DuPage County, Illinois | 2013 L 879 | Nemeroff Law Office, Chicago IL | 08-31-2018 |
| Dieken v. Clark, M.D. | Circuit Court of Will County, Illinois | 14 L 00512 | Paris Law Firm, Chicago IL | 08-30-2018 |
| Dukes v. Shiver, et al. | District Court, Clark County, Nevada | A-16-747820-C, Dept No. I | Powell Law Firm, Las Vegas, NV | 08-24-2018 |
| Thompson v. Methodist Healthcare System of San Antonio, LTD., et al | District Court, 57th Judicial District, Bexar County, Texas | 2016CI21754 | Kreitz Law Office, Austin, TX | 08-24-2018 |
| Ranno/Moreno v. Sanford Clinic North, et al | United States District Court, District of North Dakota, Eastern Division | 3:16-cv-00135-A-RS | Grant & Eisenhofer, Chicago IL | 08-22-2018 |
| Murillo/Young v. United States of America | United States District Court, Northern District of Illinois, Eastern Division | 17 C 1279 | Mitchell Hoffman & Wolf, Chicago, IL | 08-22-2018 |
| Adams, et al. v. Trinity Industries, Inc., et al. | Circuit Court for the City of St. Louis, Missouri | 1522-CC11336 | Langsdon & Emison, Lexington, MO | 08-20-2018 |
| George v. Burbank Diamond Logistics, Inc., et al. | Court of Common Pleas of Madison County, Ohio | CVC 20170347 | Willis & Willis, Hilliard, OH | 08-17-2018 |
| Lopez/Finnical v. Presbyterian Healthcare Services, Inc. | State of New Mexico, County of Santa Fe, First Judicial District Court | D-101-CV-2017-00654 | Salazar Sullivan Jasionowski, Albuquerque, NM | 08-16-2018 |
| Advanced Packaging Technology Laboratories, Inc. v. Pfister, et al | Circuit Court of Cook County, Illinois, County Department – Chancery Division | 2014 CH 00143 | Kalnsky & Associates, Wheeling, IL | 08-16-2018 |
| Advanced Packaging Technology Laboratories, Inc. v. Pfister, et al | Circuit Court of Cook County, Illinois, County Department – Chancery Division | 2014 CH 00143 | Kalnsky & Associates, Wheeling, IL | 08-15-2018 |
| Werx Conn, et al | State of Indiana, County of Vigo, In the Vigo County Superior Court | 84D06-1701-CT-0154 | McNeely Stephenson Thopy & Harrold, Shelbyville, IN | 08-15-2018 |
| Buckner v. Johnson, et al. | District Court, Clark County, Nevada | A-16-737407-C, Dept No XXX | Ayon Bush, Las Vegas, NV | 08-14-2018 |
| Townsend v. Rush University Medical Center, et al. | Circuit Court of Cook County, Illinois, County Department – Law Division | 15 L 2884 IN | Speakman Firm, Chicago, IL | 08-14-2018 |
| Blevins v. Hobhuyer M N | Circuit Court of Lowndes County, Mississippi | 2016-3027-612 | Mertel & Cocke, Clarksdale, MS | 08-10-2018 |
| McNeeley v. Banner Health, et al. | Superior Court of Arizona, Gila County | CV2017001 18 | Lloyd Law Group, Payson, AZ | 08 10 2018 |
| Bryant v. Wurt Electric Supply Company, et al | Circuit Court of Cook County, Illinois, County Department – Law Division | 2014 L 009840 | Grinder Law Office, Chicago, IL | 08-09-2018 |
| Mendoza v. Wal-Mart Stores Inc., et al. | State of New Mexico, County of Grant, Sixth Judicial District Court | D-604-CV-2014-00107 | Carpenter Law Firm, Las Cruces, NM | 08-08-2018 |
| Levine, et al v. Robertson, et al | Superior Court of the State of California, County of San Mateo | CIV 532372 | Kasner Law, Mountain View, CA | 08-07-2018 |
| Griffo v. Oculus VR, Inc., et al | United States District Court, Central District of California, Southern Division (Santa Ana) | 8:15-cv-01228-DOC (JCGx) | Reich Law, Boston, MA | 08 03 2018 |
| Advanced Packaging Technology Laboratories, Inc. v. Pfister, et al | Circuit Court of Cook County, Illinois, County Department – Chancery Division | 2014 CH 00143 | Kalnsky & Associates, Wheeling, IL | 08-03-2018 |
| Rosasco v. Southwest Airlines Co., et al. | Superior Court of California, County of Alameda | RG 15 76913 4 | Balaban & Spielberger, Los Angeles, CA | 08-02-2018 |
| Winn v. BNSF Railway Company, et al | Circuit Court of Cass County, State of Missouri | 15CA-CC00281, Division 1 | Dow & Bethune & Jones, Kansas City MO | 08-01-2018 |
| Spaulding, et al. v. Warner Republic of Iran, et al. | United States District Court, Northern District of Ohio, Eastern Division | 1:16-cv-1748 | Chaiken Welling, Akron, OH | 07-24-2018 |
| Lew/Mitchell v. Thomas | District Court, 17th Judicial District, Tarrant County, Texas | 017-287231-16 | Washington Law Office, Dallas TX | 07-11-2018 |
| Ogiego v. Leopardo Companies, Inc., et al. | Circuit Court of Cook County, Illinois, County Department – Law Division | 15 L 001217 | Allen Law Group, Chicago, IL | 07 10 2018 |
| Garcia v. ALPA Al-Nawfal, et al | District Court, Clark County, Nevada | A-16-742054-C, Dept No VII | Eglet Prince, Las Vegas, NV | 07-10-2018 |
| Kohnke v. Chang, et al | Circuit Court of Cook County, Illinois, County Department – Law Division | 2015 L 2089 IN | Corcoran Law Firm, Chicago, IL | 07-09-2018 |
| Lhotak v. Robertson, et al | State of Indiana, County of Porter In the Porter Superior Court, Sitting in Valparaiso, Indiana | 64D02-1704-CT-3337 | Allen Law Group, Chicago, IL | 07-09-2018 |
| Manchak v. St. Louis University, et al | Circuit Court of the City of St. Louis, State of Missouri | 1322-CC09782 | Gori Julian & Associates, Edwardsville, IL | 07-06-2018 |

## LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
## STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Varebrook v. Tisdall, M.D., et al. | District Court of Bexar County, Texas, 225th Judicial District | 2017C06007 | Krebs Law Office, Austin, TX | 07-05-2018 |
| Knaack v. Knight Transportation, Inc., et al. | United States District Court, District of Nevada | 3.17-cv-00372-LRH-WGC | Vannah & Vannah, Las Vegas, NV | 07-03-2018 |
| Ragee v. Schaefer, M.D., et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 1015-L-09631 | Etkertson and Associates, Chicago, IL | 07-02-2018 |
| Hurtey v. Hunter, et al | United States District Court for the Northern District of Ohio, Eastern Division | 4:17-cv-00178-BYP | Ingber Law Firm, Warren, OH | 06-29-2018 |
| Phillips v. Pangea Ventures, L.C. et al | Circuit Court of Cook County, Illinois, County Department Law Division | 2015-L-02092 | Brienberg Butler Gutzandsten Robinson & Saks, Chicago, IL | 06-29-2018 |
| Angelo v. Albertson's, et al. | United States District Court, District of Nevada | 2.17-CV-01246-APS-GWF | Shook & Stone, Las Vegas, NV | 06-28-2018 |
| Tessell-Demeter v. Fuerte, et al | District Court, Clark County, Nevada | A-16-735398-C, Dept No. XI | Naqvi Injury Law, Las Vegas, NV | 06-27-2018 |
| Bryant v. Wolf Electric Supply Company, et al | Circuit Court of Cook County, Illinois, County Department - Law Division | 2014-L-009640 | Grexler Law Office, Chicago, IL | 06-27-2018 |
| Pierce v. Windmill Environmental, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 15-L-11107 | Goldberg Weisman & Cairo, Chicago, IL | 06-26-2018 |
| McDaniels v. Wolverine World Wide, Inc., et al. | State of Indiana, County of Porter in the Porter Superior Court, Sitting at Valparaiso, Indiana | 64D01-1510-CT-008639 | Allen Law Group, Valparaiso, IN | 06-25-2018 |
| Verdone v. Schutz and Burch Biscuit Co | Circuit Court of Cook County, Illinois, County Department Law Division | 15-L-569 | O'Connor Law Group, Chicago, IL | 06-22-2018 |
| Schmidt v. Robertson, et al | Lake Superior Court, Gary, Indiana | 45D04-1702-CT-00042 | Alex Law Group, Valpaia suyN | 06-21-2018 |
| Nedrick v. County of Monmouth, et al. | Superior Court of New Jersey, Law Division, Monmouth County | MON-L-1966-15 | Wall Law Office, Red Bank/NJ | 06-20-2018 |
| Meoricus v. Wal-Mart Stores Lest, et al. | State of New Mexico, County of Grant, Sixth Judicial District Court | D-608-CV-2014-00183 | Carpenas Law Firm, Las Cruces, NM | 06-18-2018 |
| Lerma v. St. Alexius Medical Center | Circuit Court of Cook County, Illinois, County Department Law Division | 2016-000603 | Indomenico & Associates, Chicago/IL | 06-15-2018 |
| Hughes v. Randall-Hayes, M.D., et al. | Circuit Court, Sixth Judicial Circuit, Champaign County, State of Illinois | 2013-L-09 | Mowing & Mawirre, Chicago/IL | 06-14-2018 |
| Kan v. Big Lin International, Inc., et al | United States District Court, Northern District of California, San Francisco Division | 3.14-cv-04327-JD | Trexlman Sanders, Sar Francrsn/CA | 06-13-2018 |
| Peller v. DNB Lincoln Sales, Inc., et al. | United States District Court, Northern District of Illinois, Eastern Division | 16-cv-11340 | Fagan & Power, Chicago, IL | 06-11-2018 |
| Leon v. Experian Information Solutions, Inc. | United States District Court, District of Nevada | 2:17-cv-01408-RFB-VCF | Knepper & Clark, Las Vegas, NV | 06-08-2018 |
| Susei v. Halverson | United States District Court for the Western District of Missouri, Central Division at Jefferson City | 2.17-cv-4225 | Langdon & Emison, Lexington, MO | 06-07-2018 |
| Whitlock v. Nevada Capital Insurance Company, et al | District Court, Clark County, Nevada | A-13-684648-C, Dept No. XXIX | Maier Gutierrez & Associates, Las Vegas, NV | 06-06-2018 |
| Harris v. Trinity Industries, Inc., et al | Circuit Court of Jackson County, Missouri at Kansas City | 1716-CV02173 | Langdon & Emison, Lexington, MO | 06-06-2018 |
| Taylor v. Berger, M.O., et al. | Circuit Court of Cook County, State of Illinois, County Department - Law Division | 15-9086 | Motherway & Napleton, Chicago, IL | 06-05-2018 |
| Koleser v. RMJ Logistics Freight, Inc. | Circuit Court of Cook County, State of Illinois, County Department - Law Division | 2016-L-000646 | Palamo Law Firm, Chicago, IL | 06-04-2018 |
| Hearthege, Inc. v. Nutragold, Inc. | United States District Court, District of Utah, Central Division | 3:15-cv-00987-DAK | Workman Nydegger Salt Lake City, UT | 06-01-2018 |
| Kim v. Byen, M.D., et al. | United States District Court, Northern District of Illinois | 1:15-cv-04138 | Patterson Law Firm, Chicago, IL | 05-31-2018 |
| Barnum, et al v. Equifax Information Services, Inc | United States District Court, District of Nevada | 2:16-cv-2866-RFB-NJK | Knepper & Clark, Las Vegas, NV | 05-30-2018 |
| Bulduk v. Walgreen Co | Circuit Court of Cook County, State of Illinois, County Department - Law Division | 17-1149 | Lane Kelt Law, Chicago, IL | 05-25-2018 |
| Mejia, et al v. Lawyer Mechanical Services, et al | District Court, Clark County, Nevada | A-16-740817-C | Powell Law Firm, Las Vegas, NV | 05-24-2018 |
| Petrosampur, et al. v. Grand Lux Café LLC, et al. | District Court, Clark County, Nevada | A-14-706914-C, Dept No. XXI | Naqvi Injury Law, Las Vegas, NV | 05-24-2018 |
| Georgas v. Saied in Covenant Hospital et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2014L023808 | Power Rogers & Smith, Chicago, IL | 05-22-2018 |
| Cotton v. Lee, D.O., et al | State of Illinois in the Circuit Court of the Twelfth Judicial Circuit, Will County | 14-563 | Motherway & Napleton, Chicago, IL | 05-21-2018 |
| Lewis v. Agarwal, M.D., et al. | Circuit Court of Cook County, Illinois, County Department Law Division | 2015-L08423 | Phillips & Associates, Chicago, IL | 05-17-2018 |

LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Urth Laguna Beach Development, et al., v. Faʾssah, et al. | Superior Court of the State of California, County of Orange | 30-2016-00849787-CU-CR-CJC | American Freedom Law Center* Ann Arbor, MI | 05-16-2018 |
| Holt/Cordova Hoh v. Ocwen Loan Serv cing, et al. | Superior Court of the State of California in and for the County of Marin | CIV 1608577 | Christensen Law Office, Oakland, CA | 05 15 2018 |
| Carter/Collins v. Metrosonar Hospital, et al. | State of Michigan in the Circuit Court for the County of Kent | 17-06824-NH | Buchanan & Buchanan. G and Rapids, MI | 05-10-2018 |
| Vaerewnstin v. County of Cook, et al | United States District Court, Northern District of Illinois, Eastern Division | 14 C 3991 | Kinnamer Law Office, Naperville, IL | 05-08-2018 |
| Robertshaw v. Maurer Truck Leasing, LLC, et al | Circuit Court of Cook County, Illinois County Department, Law Division | 2016   2098 | Shannon Law Group, Woodridge, IL | 05-07-2018 |
| Haught v. Payson Healthcare Management, Inc. et al | Superior Court of the State of Arizona in and For the County of Gila | CV201300357 | McGovern Law Offices, Phoenix, AZ | 05-04-2018 |
| Walsh/Shane v. Kuser, M.D., et al. | Superior Court of New Jersey, Law Division, Camden County | CAM-L-1617-16 | Lynch Lynch Held Rosenberg, Hackensack Heights, NJ | 05-03-2018 |
| Simmons v. Richardson, M.D., et al | Commonwealth of Kentucky, Daviess Circuit Court, Division II | 13-CI-00395 | Moore Malone & Safreed, Owensboro, KY | 04-26-2018 |
| Stone v. Anesthesia Associates, PSC | Commonwealth of Kentucky, Fayette Circuit Court | 16 CI-04089 | Savage Law Firm, Lexington, KY | 04 25 2018 |
| Hall, et al   v. Reynerts, et al. | United States District Court for the Eastern District of Arkansas | 17-C-126 | Lawton & Cation, Madison, WI | 04-24-2018 |
| Diego v. Leopardo Companies, Inc., et al | Circuit Court of Cook County, Illinois, County Department - Law Division | 15 _ 301717 | Allen Law Group, Valparaiso, IN | 04-11-2018 |
| Walkery Macy's Merchandising Group, Inc. | United States District Court for the Northern District of Illinois, Eastern Division | 1 14-cv-02513 | Langdon & Emison, Lexington, MO | 04-18-2018 |
| McMichael v. Spectrum Health Hospitals, et al | State of Michigan in the Circuit Court for the County of Kent | 17 01653 NH | Buchanan & Buchanan. G and Rapids, MI | 04 12 2018 |
| Rasmer v. Johanson | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 _ 2990 | Bashford Law Group, Glenview, IL | 04-12-2018 |
| McKenna v. Chernoff, LIMO  P.C., et al | United States District Court, District of Nevada | 2-14-CV-0377X-IAD-CWH | Baley Kennedy, Las Vegas, NV | 04-11-2018 |
| Ruefsgerv Lincoln-Way Area Special Education District 843, et al | Circuit Court of the Twelfth Judicial Circuit, Will County, Illinois | 16 _ D339 | Allen Law Group, Valparaiso, IN | 04-06-2018 |
| Butkowski v. Grand Island Express, Inc., et al | State of Indiana, County of Porter, Porter County Superior Court 2 | 64D02 1503-CT 2255 | Allen Law Group, Valparaiso N | 04 05 2018 |
| Lunrdike v. Northern Indiana Public Service Company, et u. | State of Indiana, County of Lake, in the Lake Superior Court Sitting at Crown Point, Indiana | 45D05 1601-CT-27 | Allen Law Group, Valparaiso, IN | 04-04-2018 |
| McKay v the City of St  Louis, Missouri et al. | United States District Court for the Eastern District of Missouri, Eastern Division | 4 15-cv-0315-JAR | Newton Barth St Louis, MO | 03-29-2018 |
| Scott v. Wenck | Iowa District Court for Carroll County | LACV039735 | Galligan & Reid. Des Moines, IA | 03 28 2018 |
| Hasslet v. Statham | Circuit Court of the Tenth Judicial Circuit of Illinois, Knox County | 15-L-2 | LeFante Law Offices, Peoria, IL | 03-28-2018 |
| Palomino v Kaleh Verite, et al | District Court, Clark County, Nevada | A-15-727349-C, Dept No XXX | Eglet Prince,  as Vegas, NV | 03-27-2018 |
| Thompson, et al  v Stonegate Insurance Co | Circuit Court of Cook County County Department Chancery Division | 12 CH 02774 | Richert Law Office, Orland Park, IL | 03-26-2018 |
| Converas v. Manring, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2013 _ 7542 | Espoza Law Office, Chicago, IL | 03-23-2018 |
| Estate ock v. Yamasaki Mazek Corporation, et al. | United States District Court for the Northern District of Indiana | 1 15-cv-0087-RL-SLC | Theisen & Associates, Fort Wayne, IN | 03-23-2018 |
| Schmict v  Sanford Health, et al | Iowa District Court for Lyon County | LACV01034 | Hoeflie Law Firm, Des Moines, IA | 03-22-2018 |
| Appleton v  Tahoe Nugget, Inc., et al. | Second Judicial District Court of the State of Nevada, County of Washoe | CV17-00503, Dept No. 10 | Titulo Law Office,  as Vegas, NV | 03-22-2018 |
| Varran v. Proctor, D.O  et al. | Commonwealth of Kentucky, Boone Circuit Court, First Division | 13-CI-00225 | Savage Law Firm, Lexington, KY | 03-19-2018 |
| Khlaban/Barin v. Motor Coach Industries. Inc., et al. | District Court, Clark County, Nevada | A 17 755977 C | Winberg Wheeler Hudgins, Gunn & Dial* Las Vegas\NV | 03 16 2018 |
| Alan v. Regional Transportation Authority, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 015-00007-16 | Ousefamp & Associates, Chicago, IL | 03-13-2018 |
| Cornel American v  Zurich International Insurance S.P A , et al | Circuit Court of Cook County, Illinois, County Department - Law Division | 2011 _ 13140 | Simon Law Group  Chicago, IL | 03-09-2018 |
| Strosbergv Englander, M D, et al | Circuit Court of the Fifteenth Judicial Circuit, in and For Palm Beach County, Florida | 50 2014 CA 012994000078 AB | Roberts & Associates, West Palm Beach, FL | 03-08-2018 |
| Simpson v  Camna Motors, et al. | State of Michigan in the Circuit Court for the County of Genesee | 16-107303-NO | Duiling Law Office, Plymouth, MI | 03-07-2018 |

4891

## LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
## STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Smith v. Reel Project Managers, Inc., et al | Circuit Court of Cook County of Illinois County Department Law Division | 15 - 1373 | Rueborough Law Office, Lake Bluff,IL | 02-28-2018 |
| Schlager v. Fonestad | Circuit Court of the Twenty Third Judicial Circuit, Kendall County, Illinois | 15 - 185 | Rigazio Law Office, Morris, IL | 02-27-2018 |
| Kelley, Jr. v. Superior Engineering, LLC., et al | State of Indiana, County of Lake. Lake Superior Court, Sitting at Hammond Indiana | 45D01-1411-CT-00261 | Allen Law Group, Valparaiso, IN | 02-12-2018 |
| Amri v. Duncan, et al | United States District Court, Northern District of California, San Francisco Division | 3: 15-cv-09994-JSC | Hoi Law & Mediation, San Francisco, CA | 02-23-2018 |
| Robinson v. Eder, M.D., et al. | Circuit Court for Baltimore City, Maryland | 24-C 16 006431 | Wais Vogelstein Forman & Offutt, Baltimore, MO | 02-16-2018 |
| Ivy v. Shriram Williams Company | United States District Court, Northern District of Illinois, Eastern Division | 15-CV-4652 | O'Brien Law, Geneva, IL | 02-13-2018 |
| Ruettgers v. Lincoln-Way Area Special Education District 843, et al | Circuit Court of the Twelfth Judicial Circuit Will County, Illinois | 16 - 0519 | Allen Law Group, Valparaiso, IN | 02-08-2018 |
| NatNo v. Rite Aid of New Jersey, Inc., et al | Superior Court of New Jersey, Law Division - Monmouth County | MON-L-2262-16 | Escondon Ferriccola Anderson & Covell, Allenhurst, IL | 02-07-2018 |
| Garwood v. CCA Services Group, Inc., et al | State of South Carolina, County of Charleston in the Court of Common Pleas for the Ninth Judicial Circuit | 2015-CP-10-2191 | Slutchnew & Slatchnew, Charleston, SC | 02-06-2018 |
| Villanueva v. Payson Hospital Corporation, et al. | Superior Court of the State of Arizona, In and For the County of Gila | CV 2016 00277 | Lloyd Law Group, Payson, AZ | 02-05-2018 |
| Pomazal v. Grodoski | Circuit Court of the Eighteenth Judicial Circuit, DuPage County, Illinois | 2013 - 879 | Nemeroff Law Office, Chicago, IL | 02-02-2018 |
| Anderson v. Conway Two, LLC., et al. | Circuit Court of Cook County, County Department 2015L207994 - Law Division | 2015L207994 | Gary Wilhelm Kermit Finley Watson & Fury, Stuart, FL | 02-01-2018 |
| Ross, Jr. v. Carron The meg, Inc., et al | State of Indiana. County of Lake. Lake Superior Court. Sitting at Gary, Indiana | 45D04 1407 CT 129 | Allen Law Group, Chicago, IL | 02-01-2018 |
| Thames v. Bakeris, D.C. | Circuit Court of DeSoto County, Mississippi | CV-2014-203RCD | Merkel & Cocke. Clarksdale, MS | 01-31-2018 |
| Renal v. Firebird Memorial Hospital, et al. | Circuit Court of Cook County, County Department - Law Division | 14 - 1606 | McNabola & Associates, Chicago, IL | 01-31-2018 |
| Owens v. City of Chicago, et al | Circuit Court of Cook County, County Department 2015 - P132 - Law Division | 2015 - P132 | Currie Law Offices, Chicago, IL | 01-30-2018 |
| Lanham v. BNSF Railway Company | District Court of Lancaster County, Nebraska | CI 17 106 | Atwood Holsten Brown Deaver & Spier, Lincoln, NE | 01-30-2018 |
| Komada v. Dove, et a. | Circuit Court of Cook County, County Department 16 - 1275 - Law Division | 16 - 1275 | Mitchell Hoffman & Wolf, Chicago, IL | 01-29-2018 |
| Beasley v. Shady Grove Adventist Hospita, et al | Circuit Court for Prince Georges County, Maryland | CA46 30133 | Wais Vogelstein Forman & Offutt, Baltimore, MO | 01-26-2018 |
| Cardenas v. Northern Nevada Medical Center, et al. | Second Judicial District Court of the State of Nevada, County of Washue | CV13-00522, Dept No. 4 | Durney & Brennan, Reno\NV | 01-25-2018 |
| Gilman v. Zamora, et al | District Court, Clark County, Nevada | A722317, Dept No. II | Palm Rosten Law Group, Las Vegas, NV | 01-24-2018 |
| Metcalfe v. Loquerie Automotive, Inc., et al. | Circuit Court of Cook County, Illinois, County Department - Law Div sion | 15 - 12942 | Chapeka Chapeka Kardas & Schmidt, Chicago, IL | 01-22-2018 |
| Lefthand v. Taos Health Systems, Inc., et al. | Thirteenth Judicial District Court, County of Valencia, State of New Mexico | D-1314-CV-2016-00395 | Sabato Sullivan Jastonowski, Albuquerque, NM | 01-22-2018 |
| Morganheim, M.D. v. City of Highland Park, et al. | Circuit Court fo the Nineteenth Judicial Circuit, Lake County, Illinois | 15 - 1N5 | Nolan Law Group, Chicago, IL | 01-19-2018 |
| Commonwealth of Kentucky, et a. v National College of Kentucky, Inc. | Commonwealth of Kentucky. Fayette Circuit Court, Division B | 13-CI-4922 | Rose Grasch Camenisch Mains* Lexington\KY | 01-18-2018 |
| Dirk, Inc. v. KNK Development Associates, et al. | Superior Court of New Jersey, Law Division - Essex County | ESX-L-1703-15 | Uni Law Office, Newark, NJ | 01-17-2018 |
| Raburdan/Swarp v. Whitepain M Fl., et al | Circuit Court of the Fourteenth Judicial Circuit, Whiteside County, Illinois | JU14 - 3757 | Mertes & Mertes, Sterling, IL | 01-16-2018 |
| Hays, Jr., et al v. Tanui o, et al | Jefferson Circuit Court, Division One | 16-CI-03296 | Tobler Law Firm, New Orleans, LA | 01-15-2018 |
| Blue Book Services, Inc v. Amethyst Produce, Inc | United States District Court for the Northern Dist ct of Illinois, Eastern Division | 16-10495 | Schiller Law Group, New York, NY | 01-13-2018 |
| George v. SM3 Transpro, et al | United States District Court of the Eastern District of Missouri at St. Louis, Missouri | 4:16-cv-02659-RWS | Langdon & Emison, Lexington, MO | 01-10-2018 |
| Montague v. Yale University, et a. | United States District Court, District of Connecticut | 3:16 CV 00885 AVC | Todd B. Weld, Boston, MA | 01-09-2018 |

LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Cortese-Angelini v. Sengiovese, et al | District Court, Clark County, Nevada | A-17-753796-C, Dept No XXXI | Gentile Cristalli Miller Armeni Savarese, Las Vegas, NV | 01-08-2018 |
| Brooks v. Avis, et al. | District Court, Clark County, Nevada | A-16-737423-C, Dept No. VII | Powell Law Firm, Las Vegas, NV | 01-05-2018 |
| Mendoza v. Torres, et al. | District Court, Clark County, Nevada | A-16-719763-C, Dept No XV | Eglet Prince, Las Vegas  NV | 01-04-2018 |
| AshMorz - 99 Cents Only Store, et al | District Court, Clark County, Nevada | A-16-736450-C, Dept No XXXI | Powell Law Firm, Las Vegas, NV | 01-04-2018 |
| Clinkscale v. Ruffin, et al. | District Court, Clark County, Nevada | A-13-729321-C, Dept No XV | Powell Law Firm, Las Vegas, NV | 01-03-2018 |
| Hays, III, et al v. Family, et al. | Jefferson Circuit Court, Division One | 14-CI-03296 | Tobias Law Firm, New Orleans, LA | 12-13-2017 |
| Marngd v. Stephens, et al. | Circuit Court for the Eighteenth Judicial Circuit, DuPage County, Illinois | 2015 - 784 | Patterson Law Firm, Durago, IL | 12-14-2017 |
| Lerma v. St. Alexius Medical Center | Circuit Court of Cook County, Illinois, County Department - Law Division | 2016 - 006603 | Indemnico & Associates, Chicago, IL | 12-13-2017 |
| Johnson v. Shaw Transport, et al. | State of Indiana, County of Marion, Marion Superior Court #6 | 49D05-1803-CT-010096 | Allex Law Group, Valparaiso, IN | 12-08-2017 |
| Egan Marine Corporation v. ExxonMobil Oil Corporation, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 15 - 6437 | Cusmin & Co, Chicago, IL | 12-07-2017 |
| Brooks v. Caterpillar Global Mining, LLC | United States District Court, Western District of Kentucky, Owensboro Division | 4:14-CV-00032-JHM | Moore Malone & Safreed, Owensboro, KY | 12-06-2017 |
| Siegfried v. Lopez, et al | Eighth Judicial District Court, Clark County, Nevada | A-15-722816-C, Dept No II | Powell Law Firm, Las Vegas, NV | 12-05-2017 |
| Conner v. Robertson, et al. | Lake Superior Circuit Court, Crown Point, Indiana | 45D11 1501 CT 00031 | Whalley & Associates, Merrillville, IN | 12-05-2017 |
| Albert v. Gauthier, et al | Circuit Court of Cent County, Illinois, County Department - Law Division | 2015 - 20757 | Woodruff Johnson & Evans, Aurora, IL | 12-04-2017 |
| Guerrar v. Cole, et al | District Court, Clark County, Nevada | A-16-746155-C, Dept No 30 | Lerner Injury Attorneys, Las Vegas, NV | 12-01-2017 |
| Gonzalez/Cuevas v. Northshore University Healthsystem, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2014 - 006133 | Cogan & Power, Chicago, IL | 12-03-2017 |
| Macey/Veely v v The University of Chicago Medical Center | Circuit Court of Cook County, Illinois, County Department - Law Division | 14 - 006686 | Molzing & Navarre, Chicago, IL | 11-30-2017 |
| French, et al. v. Trinity Highway Products, et al. | Circuit Court for the City of St. Louis, Missouri | 1622-CC11396 | Fitch Lentran Copeland Briggs, Houston, TX | 11-28-2017 |
| Generic Integrated Systems LLC, et al | State of Indiana, County of Marion, Marion Superior Court, Sitting at Indianapolis, Indiana | 49D10-1503-CT-3939 | Allen Law Group, Valparaiso IN | 11-15-2017 |
| Schwab v. Surgical Associates of Louisville, et a. | Jefferson Circuit Court, Division Twelve (12) | 15-CI-006423 | Franklin Law Group, Louisville, KY | 11-13-2017 |
| Main Street Power Mad, Inc., et al v. Erie Insurance Exchange | State of Indiana, County of Hamilton, Hamilton Circuit Court | 29C01-1604-P.-7373 | Parr Richey Obremskey Frandsen & Patterson, Indianapolis, IN | 11-13-2017 |
| Shaffer v. Affiliated Southwest Surgeons, P.C., et al | Superior Court of the State of Arizona, In and For the County of Maricopa | CV2015-005620 | McGovern Law Offices, Phoenix, AZ | 11-10-2017 |
| Russell v. Williams, et al. | District Court, 429th Justice District, Collin County, Texas | 429-04680-2016 | Reed Law Group, Frisco, TX | 11-10-2017 |
| White v. Independence Plus, Inc., et al | Circuit Court of Cook County, County Department - Law Division | 13-L-1034 | Wimmel & Assoruim, Chicago, IL | 11-04-2017 |
| Gastrich v. Nationstar Mortgage . IC. et al | United States District Court, District of New Jersey | 1:15-cv-08278-RMB-KMW | Northeast Law Group, Longmeadow, MA | 11-03-2017 |
| Jones v. Lillah, M.O., et al. | Circuit Court, Twentieth Judicial Circuit, St. Clair County, Illinois | 14-L-565 | Hopkin Law Group, Chicago, IL | 11-03-2017 |
| Videum/Flores v Sealy, et a . | State of New Mexico, County of Lea, Fifth Judicial District ct | CV-3016-00843 | Sawyers Law Group, Hobbs, NM | 11-03-2017 |
| Ledesma v Sheets, et al | District Court, Clark County, Nevada | A-13-727686-C, Dept No | Ladah Law Firm, Las Vegas, NV | 11-06-2017 |
| Johnson v. Garcada | Second Judicial District Court in and For Weber County, State of Utah | 160903341 JA | Richards Law Office, Ogden, UT | 11-06-2017 |
| Videum/Flores v Sealy, et a . | State of New Mexico, County of Lea, Fifth Judicial District ct | CV-3016-00843 | Sawyers Law Group, Hobbs, NM | 11-03-2017 |
| Zarabe v Mendez, et al | District Court, Clark County, Nevada | A-16-712422-C, Dept No VI | Eglet Prince, Las Vegas  NV | 11-02-2017 |
| Murdock v Marbeck, M.O | State of Indiana, County of St Joseph, Circuit Court | 71C01-1504-CT-000154 | Paxton Law Group, Chicago, IL | 11-02-2017 |
| Videum/Flores v Sealy, et a . | State of New Mexico, County of Lea, Fifth Justice District ct | Cv 2016 00842 | Sawyers Law Group, Hobbs, NM | 11-01-2017 |

4893

LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|-----------|-------|-------------|----------|------|
| Morgenstern, M.D. v. City of Highland Park, et al. | Circuit Court for the Nineteenth Judicial Circuit, Lake County, Illinois | 15 - 186 | Nolan Law Group, Chicago, IL | 10-31-2017 |
| Pools, PhD v. Howard University, et al. | Superior Court of the District fo Columbia, Civil Division | 2012 CA 000003 | Branch & Associates, Washington, DC | 10 27 2017 |
| Helmandez v. Youh, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 14 - 5052 | Burns Cronauer & Brown, Sycamore, Il | 10-36-2017 |
| Jackson v. Tolley, M.D., et al. | Commonwealth of Kentucky, Madison Circuit Court, Division 1 | 16-CI-590 | Erdmann & Mumho, Richmond, KY | 10-26-2017 |
| Blomgren v. Town Square Las Vegas, LLC, et al. | District Court, Clark County, Nevada | A736220, Dept No 1 | Lerner Injury Associates, Las Vegas, NV | 10-24-2017 |
| Losa, v. Vasquez, M.D., et al. | Superior Court of New Jersey, Law Division, Passaic County | PAS-1-2196-15 | Lynch Lynch Held Rosenberg, Hasbrouck Heights, NJ | 10-23-2017 |
| Carrero-S hav, Ve cere | Circuit Court of Cook County, Illinois, County Department - Law Division | 14 , 001515 | Shirm Law Office, Rolling Meadows,Il | 10-19-2017 |
| Ganey v McGreff, et al | District Court, Clark County, Nevada | A-16-620028 | Eglet Prince, Las Vegas,NV | 10-16-2017 |
| Hon goblum v. West Door and Window Company, et al. | Circuit Court of Cook County, Illinois, County Department Law Division | 2014 - 009684 | O Mara Gleason & O Callaghan, Chicago,IL | 10-19-2017 |
| Dyrg v Advocate Health and Hospitals Corporation, et al. | Circuit Court of Cook County, Illinois, County Department, Law Division | 13 - 10038 | McNabola & Associates, Chicago, IL | 10-18-2017 |
| Flanagan/Allen v. The City of Dallas, Texas, et al. | United States District Court for the Northern District of Texas, Dallas Division | 3: 16-CV-4343 | Washington Law Office, Dallas,TX | 10-17-2017 |
| O'Sullivan v  O'Sullivan | Circuit Court of Cook County, Illinois, County Department - Domestic Relations Division | 15-D-379 | Lewis Law Office, Chicago,IL | 10-16-2017 |
| Garcia-Morales, et al. v. Marshall Ir., et al. | District Court, Clark County, Nevada | A-16-730893-C, Dept No XV | Powell Law Firm, Las Vegas, NV | 10-13-2017 |
| Smock, et al. v  Mercy Medical Center, Inc. et al | Circuit Court for Baltimore City | 24-C-17-00021N N/M | West Vinge klein Herman K Othmd, Baltimore, MD | 10-17-2017 |
| Gonzalez/G sh v  Solid Platforms, Inc | State of Indiana, County of Porter, Porter Superior Court, Sitting at Valparaiso, Indiana | 64D02-1511-CT-9806 | Allen Law Group, Valparaiso, IN | 10-11-2017 |
| Simao v. Righ, et al | District Court, Clark County, Nevada | A539455 | Eglet Prince, Las Vegas, NV | 10 10 2017 |
| Monammed v. Kelly | Circuit Court of Cook County, Illinois, County Department - Law Division | 2013 - D.10729 | Wolfe on Law Office, Chicago, IL | 10-10-2017 |
| Williams v. Douglas County, et al | United States District Court for the Northern District fo Georgia, Atlanta Division | 1 :16-CV-02933-ODE | Jeffrey Scott, New York, NY | 10-09-2017 |
| Doe v. Board of Education of the City of Chicago | Circuit Court of Cook County, Illinois, County Department | 2014 - D10388 | Montgomery Law Firm, Chicago,IL | 10 06 2017 |
| Colber v  Nactolk Southern Railway Company | Circuit Court of Clay County, Missouri | 16-CY-CV06848, Division No. 4 | Barnas Law Firm, Kansas City,MO | 10-04-2017 |
| Aye/Pierce v. Vermilion Canton Resort, LLC, et al. | District Court, Clark County, Nevada | A-15- (16-1404, Dept No XXVIII | Lerlah Law Firm, Las Vegas, NV | 10-02-2017 |
| Hemandez v  Davis, et al | District Court, Clark County, Nevada | 6- 16-739703-C, Dept No XXXI | Lerner Injury Attorneys, Las Vegas. NV | 09-27-2017 |
| Fowler v. Schaumgruner, et al. | District Court, Clark County, Nevada | A-13-729006-C, Dept No XXVIII | Powell Law Firm, Las Vegas, NV | 09-27-2017 |
| Czech v. Target Corporation, et al. | United States District Court, District of Nevada | 3.16-cv-C1973-APG-GWF | Shook & Stone, Las Vegas, NV | 09-26-2017 |
| Park v  Dash, M.D., et al | Jefferson Circuit Court, Dawson Haldeen | 15-CI-003251 | Feldberg & Simpson, Louisville, KY | 09-26-2017 |
| Seehofter v  Illinois Farmers Insurance Company | State of Illino s, County of Cook | 1020183765-1  4th Policy No. 0145696892 | Barnes & Eberan, Chicago  IL | 09-25-2017 |
| Abele/Kaufman, et al  v. Trishiv Industries, Inc., et al | Circuit Court for the City of St. Louis, Missouri | 1522 CCL1395 | Langdon & Emson, Lexington, MO | 09 21 2017 |
| Smith v  Reall Project Managers, Inc., et al | Circuit Court of Cook County, Illinois, County Department  Law Division | 15 - 1329 | Riseborough Law Office, Lake Bluff, IL | 09-22-2017 |
| Tremain v. Ferro, D.O., P.C, et al | State of Michigan, Circuit Court for the County of Ingham | 17 255 NH | Buchanan & Buchanan, Grand Rapids, MI | 09 12 2017 |
| Meeks/Jones v. Casannabate, M.D. | Circuit Court of Cook County, Illinois, County Department - Law Division | 15 - 11535 | Lougers & Associates, Chicago, IL | 09-13-2017 |
| Rabmacto v  Grand Island Express, Inc., et al | State of Indiana, County of Porter, Porter County Superior Court 2 | 64D02-1501-CT-725\ | Allen Law Group, Valparaiso, IN | 09-13-2017 |
| Comprov  Lee, D O., et al | State of Illinois in the Circuit Court of the Twelfth Judicial Circuit, Will County | 14 , 563 | Motherway & Napleson, Chicago, IL | 09-20-2017 |
| Jones/Hortman, et al. v  Goodrich Corporation, et al. | United States District Court, District of Connecticut | 3:12-CV-02197-WWE | Baum Heelund Aristei & Goldman, Los Angeles, CA | 09-20-2017 |
| Haught v. Payson Healthcare Management, Inc. et al | Superior Court of the State of Arizona and for the County of Gila | CV201300357 | McGevran Law Offices, Phoenix, AZ | 09-18-2017 |
| Jones, et al  v. Mercy Medical Center, Inc., et al. | Circuit Court for Baltimore City, Maryland | 24-C-16-005457 | West Vinge klein Herman K Othmd, Baltimore, MD | 09-14-2017 |

## LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
## STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Schelbing v. Marns Heart Associates, et al | Superior Court of New Jersey, Law Division - Morris County | MRS-L-2205-14 | Lomurro Law, Freehold\NJ | 09-13-2017 |
| Northland Products Company v. Ouelette Machinery Systems | Circut Court of the County of St. Louis, State of Missouri | 16SL CD00784, Div. 18 | Spooner Law* St. Loud\MO | 09-12-2017 |
| Sanchez/Miranda v. United States of America, et a . | United States District Court, District of New Jersey | 2:15-CV-07539-KSH-CLW | Lenet Lynch Held Rosenberg, Hackensack Heights, NJ | 09-11-2017 |
| Turner v US Airbag, LLC, et al | State of Wisconsin, Circuit Court, Chippewa County | 14 CV 362 | Gue zow Law Offices, Eau Claire\W | 09-11-2017 |
| Warsnawsky v. Epstein, OMD, et al | Circuit Court for Cook County, Illinois, County Department - Law Division | 14 . 010575 | McNabola Law Group, Chicago, IL | 09 07 2017 |
| Slamm , et al v. Rock Island Tri County Consortium, et a. | Circuit Court of the Fourteenth Judicial Circuit, Rock Island County, Illinois, General Division | 14 . 7283 | Katz Nowinski, Moline, IL | 09-07-2017 |
| Bolden v Illinois Central Railroad Company | Circuit Court of Cook County, Illinois, County Department Law Division | 09 . 15538 | Lipkin & Higgins Chicago, Il | 09-06-2017 |
| Felts v. Illinois Central Railroad Company | Circuit Court of Cook County, Illinois, County Department - Law Division | 09 . 009872 | Lipkin & Higgins, Chicago, IL | 09-06-2017 |
| Villanueva v. Streamwood Behavioral Healthcare System, et al | Circuit Court of Cook County, Illinois, County Department - Law Division | 13 . 008377 | McNabola & Associates, Chicago, IL | 09-06-2017 |
| Northland Products Company v. Ouelette Machinery Systems | Circuit Court of the County of St. Louis, State of Missouri | 16SL-CD01094, Div. 1N | Spooner law* St. Loun, MO | 09-05-2017 |
| Robbins v. Medical Associates Clinic P.C. et al. | Iowa District Court, Clayton County | LACV010093 | Harding Law Office, Des Moines, IA | 09 05 2017 |
| Dieken v. Clark, M.D. | Circuit Court of Will County, Illinois | 14 . 01012 | Paris Law Firm, Chicago, IL | 08-31-2017 |
| Colker v Norfolk Southern Railway Company | Circuit Court of Clay County, Missouri | 15CY-CV06948, Division No. 4 | Barnes Law Firm, Kansas City, MO | 08-30-2017 |
| Al miv. American Laphia Limited et al. | United States District Court for the District of Arizona | LV-16-CLN6/b-PHX-JAT | Wagstaff & Cartmell, Kansas City, MO | 08-28-2017 |
| Parker v. Derr, M D , et al | Circuit Court of A com County, MS | CV15-107PA | Mertel & Cocke, Clarksdale\MS | 08-23-2017 |
| uselyk v. Mullon | Superior Court of New Jersey, Union County Law Division | UNN . 0468 16 | Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinns, Springfield, NJ | 08 22 2017 |
| Palsechke v Northern Indiana Public Service Company et al | State of Indiana, County of Lake in the Lake Superior Court sitting in Gary, Indiana | 45D04-1508-CT-153 | Allen Law Group, Valparaiso, IN | 08-18-2017 |
| Gough v Mender, et al | District Court, Clark County, Nevada | A-15-726598-C, Dept No. XXI | Potemonster Law Group, Las Vegas, NV | 08-17-2017 |
| Brooks v. Caterpillar Global Mining, LLC | United States District Court, Western District of Kentucky, Owensboro Division | 4:14-CV-00022-JHM | Moore Malone & Safreed, Owensboro, KY | 08 17 2017 |
| Stoller v. Nissan Motor Company, LTD, et al. Paul v. HNSF Railway Company | JAMS Arbitration, Chicago, IL / District Court of Lancaster County, Nebraska | 1340015103 / CI14 3505 | K ss Law Office, Gurnee, IL / Perry Guthery Haase & Gessford, Lincoln\NE | 08-17-2017 / 08-16-2017 |
| Rohen v Pepper Construction, Co , et al | Circuit Court of Cook County, Illinois, County Department - Law Division | 14 . 7283 | Motherway & Napleson, Chicago, IL | 08-14-2017 |
| Neccraeter v Roscoe Township | State of Illinois, Circuit Court of the 17th Judicial Circuit, Winnebago County | 16 . 194 | K en Stoddard Buck Lewis, Sycamore, IL | 08-14-2017 |
| Murilo v. Good, et al. | United States District Court, District of Nevada | 2:15 cv C2738 RFB CWH | Mersich Law Office, Las Vegas, NV | 08 10 2017 |
| Nemec v Roberts Environmental Casino Corp, et al | Circuit Court of Cook County, Illinois, County Department - Law Division | 13 . 12751 | JJ Connor Law Group, Chicago\IL | 08-24-2017 |
| Edwards v Dacpts, Minnesota & Eastern Railroad Corporation | Circuit Court of the Twelfth Judicial Circuit, Will County, Illinois | 2014 . 000412 | Lipkin & Higgins Chicago\IL | 07-21-2017 |
| Al-habati v Chirov, et al. | District Court, Clark County, Nevada | A-14-700-517 C, Dept No. I | Ladah Law Firm. Las Vegas\NV | 07-20-2017 |
| Honglebum v. Yest Door and Window Company, et al | Circuit Court of Cook County, Illinois, County Department - Law Division | 2014 . 009688 | D Mera Gleason & D Callaghan, Chicago, IL | 07-18-2017 |
| Sams, et al v. Advanced Custom Engineered Systems & Equipment Co., et al | Circuit Court of Cook County, Illinois, County Department - Law Division | 13 . 012720 | Reisenberg Bulter-Goldenstein Robinson & Saro, Chicago, IL | 07-14-2017 |
| Nugazl v. Freeze, DC, et al | Circuit Court of DeSoto County, Mississippi | CV 2015-17bGCD | Mertel & Cocke, Clarksdale, MS | 07-14-2017 |
| Pisani, et a v University of Maryland Medical Center, LLC, et al | Circuit Court for Baltimore City | 24-C-16-0026 77 | Weis Vogelbten Fireman & Othmt, Baltimore\MD | 07-11-2017 |
| Fre v. Miller, et a . | Circuit Court of Cook County, Illinois, County Department - Law Division | 2015 L 006664 | Smith Law Office* Chicago, IL | 07 10 2017 |
| Smith v. BNSF Railway Company | State of New Mexico, County of Valencia, Thirteenth Judicial District | D-1314-CV-2015-00606 | David Bethune & Jones, Kansas City, MO | 07-10-2017 |

LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Miller v. Dunavant Farms Trucong, LLC , et al | Circuit Court of St. Francis County, Arkansas | CV-2015-188-1 | Langdon & Emison, Lexington, MD | 07-06-2017 |
| Carrero v. Ivey, Vecar | Circuit Court of Cook County, Illinois, County Department - Law Division | 14 - 011515 | Shim Law Office, Rolling Meadows, IL | 06 30 2017 |
| Hedrick v. TJ Materials, LLC, et al | Lake Superior Court, Civil Division, Room Four, Sitting at Gary, Indiana | 45D04-1505-CT-00095 | Allen Law Group, Valparaiso, IN | 06-19-2017 |
| Houre v. United States of America | United States District Court, Eastern District of Arkansas, Eastern Division | 1 16-00015 HKW | Peirce & Associates, Chicago, IL | 26-16-2017 |
| Murdock v. Merbeck, M D | State of Indiana, County of St. Joseph, Circuit Court | 71C01-1504-CT-000154 | Pavich Law Group, Chicago, IL | 06-27-2017 |
| Mapp v. Chen, M.D. | Circuit Court of Cook County, Illinois, County Department - Law Division | 16 - 001998 | Cogan & Power, Chicago, IL | 06 27 2017 |
| ACG Industries Inc., et al. v. Rollins Properties, et al | Superior Court of the State of California for the County of Los Angeles, Central District | BC627525 | Keen Litigation, Beverly Hills, CA | 06-26-2017 |
| O'Sullivan v. O'Sullivan | Circuit Court of Cook County, Illinois, County Department - Domestic Relations Division | 13-D-303 | Levine Law Office, Chicago, IL | 06-23-2017 |
| Hopfer/O'Grady v. Advocate Health and Hospitals Corporation, et al. | Circuit Court of Cook County, Illinois. County Department - Law Division | 14 - 1764 | McNabola & Associates, Chicago, IL | 06-23-2017 |
| Houd, Jr. v. D&I Steel Transport, Inc., et al | Circuit Court of Cook County, Illinois. County Department - Law Division | 2015 - 008640 | Lipkin & Higgins, Chicago, IL | 06-12-2017 |
| Koch/Barort v. Padgett, et v. | State of Illinois, Circuit Court of the 14th Judicial Circuit | 2015 - 525 | Langdon & Emison, Lexington, MD | 06-16-2017 |
| Koch v. Scientific Image Center Management, Inc., et al. | Superior Court of California, County of San Mateo | CIV 518706 | Kassner Kim, Mountain View, CA | 06 19 2017 |
| Wynn v. BNSF Railway Company, et al. | Circuit Court of Cass County, State of Missouri | 15CA-CC00241, Division 1 | Davis Bethune & Jones, Kansas City, MO | 06-19-2017 |
| Cramer-Homan v. Blue Island Hospital Company, LLC, et al | Circuit Court of Cook County, Illinois, County Department - Law Division | 14 - 1017 | Mutherway & Mazleton, Chicago, IL | 06-15-2017 |
| Cline v. H E B Grocery Co., L P | District Court, Hidalgo County, Texas, 206th Judicial District | C-2298-15-D | Hummel & Casso, Edinburg, TX | 06-09-2017 |
| Ragland v. Dr. Aruja, et al. | Circuit Court of the First Judicial Court, Williamson County, Illinois | 15 L53 | Womick Law Firm, Carbondale, IL | 06 08 2017 |
| Nemec v. Roberts Environmental Control Corp., et al | Circuit Court of Cook County, Illinois, County Department - Law Division | 13 - 12753 | O'Connor Law Group, Chicago, IL | 06-05-2017 |
| Zuhar/Nouny v. Summerlin Hospital Medical Center, et al. | District Court, Clark County, Nevada | A-13-642383-C, Dept No XVI | Lui & Associates, Las Vegas, NV | 06-02-2017 |
| Sitop v. Manor Care of Elk Grove Village, LLC, et al | Circuit Court of Cook County, Illinois, County Department - Law Division | 14 - 8882 | Melman & Associates, Chicago/IL | 06-02-2017 |
| Doe v. Board of Education of the City of Chicago | Circuit Court of Cook County, Illinois, County Department - Law Division | 2014 - 010388 | Montgomery Law Firm, Chicago, IL | 06 01 2017 |
| Slaton v. V-H San Antonio Partners, et al. | District Court, 225th Judicial District, Bexar County, Texas | 2016-CI-07398 | Krebs Law Office, Austin, TX | 05-24-2017 |
| Carter v. Mayn Jr M.D., et al | Commonwealth of Kentucky, McCracken Circuit Court, Division I | 17-CI-00196 | Mozer Malone & Safrent, Owensboro, KY | 05-13-2017 |
| Santiago v. Protechockey Ponds LLC, et al. | Superior Court of New Jersey, Law Division - Middlesex County | SOM-L-381-15 | Gill & Chamas, Perth Amboy, NJ | 05-16-2017 |
| Cranagadda v Duquesne University | United States District Court for the Western District of Pennsylvania | 15 1051 | Praetorian Law Group, Pittsburgh/PA | 05 12 2017 |
| Statling, V.D. v. Banner Health, et al. | United States District Court for the District of Arizona | CV-16-708-PHX-MW | Wilks & Willis, Hilliard, OH | 05-11-2017 |
| Ipurru, Shawmut Design and Construction, et al. | Circuit Court of Cook County, Illinois, County Department - Law Division | 2014 - 01805 | Palumo Law Firm, Chicago/IL | 05-11-2017 |
| Kenov De Kin International Inc, et al | United States District Court, Northern District of California, San Francisco Division | 3-14-cv-04322-JD | Troutman Sanders, San Francisco, CA | 05-09-2017 |
| Ragland v. Dr. Aruja, et al. | Circuit Court of the First Judicial Court, Williamson County, Illinois | 15 L53 | Womick Law Firm, Carbondale, IL | 05-04-2017 |
| Craig v. Village Greene Phase IV Condominium Assn Building B, et al | Circuit Court of Cook County, Illinois, County Department, Law Division | 14 - 8567 | Currie Law Offices, Chicago, IL | 05-03-2017 |
| Zurowski v. Reah Orthopedics and Sports Medicine, S.C., et al. | Circuit Court for the 12th Judicial Circuit, Will County, IL | 10 - 196 | Torpey Jones & Schroeder, Chicago/IL | 04 25 2017 |
| Johnson/Toth v. White River Health System Inc., et al. | Circuit Court of Independence County, Arkansas, Civil Division | CV-2012-025-2 | Wilkes Law, Jonesboro, AR | 04-21-2017 |
| Tyson Gonzalez v. Navarro, et al. | District Court, Clark County, Las Vegas, NV | A-15-720904-C, Dept No XXXII | Powell Law Firm, Las Vegas, NV | 04-20-2017 |
| Kobes v. Oruang | State of Illinois in the Circuit Court of the 17th Judicial Circuit, County of Winnebago | 13 - 239 | Roskem Law Office, Rockford, IL | 04-17-2017 |
| Alvarez, et al. v. Ashley Furniture Industries, Inc., et al. | United States District Court, Central District of California | CV 16 00630 MWF (MRWx) | Arias Sanguinetti Stahle Torrijos, Los Angeles, CA | 04 15 2017 |

4896

## LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
## STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Shenouda v Touch, LLC, et al | District Court, Clark County, Nevada | A-15-726557-C, Dept No II | Rabemoster Law Group, Las Vegas, NV | 04-18-2017 |
| Franco v FedEx Freight, Inc., et al. | State of Louisiana, Parish of Beauregard, Thirty Sixth Judicial District Court | C 2019-0200 | Dove Bethune & Jones, Kansas City, MO | 04-13-2017 |
| Simmons v The City of Chicago, et a. | United States District Court, Northern District of Illinois, Eastern Division | 14 C 9042 | Loford Law Office, Chicago, IL | 04-13-2017 |
| Illinois Enterprises and Zen. Ltd v Teleband Corp | United States District Court for the Eastern District of Texas, Tyler Division | h 14-cv-19 | Durrig Barrett & Ludwig, Richmond,VA | 04-17-2017 |
| Moradi v Nevada Property | District Court, Clark County, Nevada | A-14-698324-C, Dept 20 | Cohen & Padda, Las Vegas,NV | 04-04-2017 |
| Jones v City of San Antonio, Texas, et al. | United States District Court, Western District of Texas, San Antonio Division | 5:14-cv-00328-F3-HJB | Washington Law Office, Dallas,TX | 03-31-2017 |
| Bajillar v Ford Motor Company | United States District Court for the Northern District of Illinois, Eastern Division | 1:13-cv-08474 | Simon Law Group, Chicago,IL | 03-30-2017 |
| Pfeifer v Taylor, D D | Iowa District Court for Webster County | LACV31B0B0 | Gibbs & Associates, Mason, OH | 03-30-2017 |
| Bortle/Hyer v Johns Hopkins Bayview Medical Center, Inc., et al. | Circuit Court for Baltimore City, Maryland | 24C16000341/MM | Wais Vogelstein Forman & Offutt, Baltimore, MO | 03-27-2017 |
| Machaac v KG Anand., LLC, et al. | Superior Court of New Jersey, Law Division - Bergen County | L-1264-15 | Chawin Leyher & Lampariello, Secaucus,NJ | 03-24-2017 |
| Algra v Frontier Logistic Services II, Inc | State of Illinois, Human Rights Commission | Charge No. 2013CF1357*  EEOC No 21BA30407 | Fellows & Bellows, Chicago,IL | 03-22-2017 |
| Olac v. Fullerton Surgery Center, LTD., et a. | Circuit Court of Cook County, Illinois, County Department - Law Division | 14 L 008158 | Peraica & Associates, Chicago, IL | 03-21-2017 |
| Meier v. McCoy Election Coal Corporation | Commonwealth of Kentucky, Knott Circuit Court | 13-C-00-15 | Collins Law Office, Saryamville, KY | 03-17-2017 |
| Fralix v Ilhota Corporation et a | Circuit Court of Cook County, Illinois, County Department - Law Division | 2012 L 001981 | Simon Law Office, Chicago,IL | 03-17-2017 |
| Scotler v. Premier Capital, et al. | Circuit Court of Cook County, Illinois, County Department Law Division | 16 L 008968 | Kiss Law Office, Gurnee,IL | 03 15 2017 |
| Huber v. Dr. Anthony Daniels, et al. | Circuit Court of Mississippi County, Arkansas, Chickasawba District, Civil Division | CV-2016-118 | Scholorns & Avertti, Jonesboro, AR | 03-14-2017 |
| Boilos v Shepard, M D., et al. | Circuit Court of Cook County, County Department, Law Division | 13 , 13683 | Motherway & Nobleton, Chicago, IL | 03 13 2017 |
| Maine, et al v. Howard County General Hospital, Inc., et a . | Circuit Court for Howard County, Maryland | C-06-107400 | Wais Vogelstein Forman & Offutt, Baltimore, MD | 03-10-2017 |
| Tatka v. Overlook Hospital, et a. | Superior Court of New Jersey, Union County, Law Division | L-VN-2-3748-13 | Lorrunno Law, Freehold,NJ | 03-09-2017 |
| Tawatha v Metra d/b/a Northeast Illinois Regional Commuter Railroad Corporation | Circuit Court of Cook County, Illinois, County Department - Law Division | 2014 , 394487 | Langdon & Emann, Lexington,MD | 31-01-2017 |
| Monkone v. VHS Acquisition Subsidiary Number 3, Inc., et al | Circuit Court of Cook County, Illinois, County Department Law Division | 13 , 8127 | Cogan & Power, Chicago,IL | 03-01-2017 |
| Parker v. Bill Melton Trucking, Inc., et al. | United States District Court, Northern District of Texas, Dallas Division | 3:15-cv-02528-G | Ponner Law Firm, Dallas,TX | 02-28-2017 |
| Morgan v. Fernante, MD, et al. | Superior Court of New Jersey, Law Division, Passaic | PAS-L-741-14 | Quinn Law Office, Red Bank, NJ | 02-17-2017 |
| Jimenez v Klabunde, et al | Circuit Court of Cook County, Illinois, County Department, Law Division | 14 , 9280 | Dusty Law Office, Chicago, IL | 02-17-2017 |
| Pilarski, et a v University of Maryland Medical Center, LLC, et al. | Circuit Court for Baltimore City | 24 C 16 002677 | Wais Vogelstein Forman & Offutt, Baltimore, MO | 02 24 2017 |
| Losel v. Vidljstovt, et al. | United States District Court, Northern District of Illinois, Eastern Division | 12 C5751 | DeRose and Associates, Hinsdale,IL | 02-23-2017 |
| McLaughlin, et al v. Andy's Coin Launderies, LLC et al. | Court of Common Pleas of Hamilton County, Ohio | A1600791 | Bieser Greer & Landis, Dayton, OH | 02 23 2017 |
| Brumley v. Norton Hospitals, Inc., et al. | Jefferson Circuit Court, Division Ten 10) | 14-CI-006237 | Franklir Law Group, Louisville, KY | 02-23-2017 |
| Tatka v. Overlook Hospital, et a. | Superior Court of New Jersey, Union County, Law Division | L-VN-2-3748-13 | Lorrunno Law, Freehold, NJ | 02-16-2017 |
| Miltge v Porter Gauginger, et al | Circuit Court, Seventh Judicial Circuit, Sangamon County, Illinois | 12-L-79 | Ryan Kyos & Lorda, Chicago, IL | 02-16-2017 |
| Macias/Ramirez v. Texas Taco Cabana | District Court, 45th Judicial District, Bexar County, Texas | 2014 CI 08567 | Grossman Law Offices, Dallas, TX | 02 15 2017 |
| Beauchey/Robinson v Freeport Memorial Hospital, et al. | State of Illinois, Circuit Court of the 15th Judicial Circuit, County of Stephenson | 2012 , 17 | Zinger Law Office, Chicago, IL | 02-14-2017 |
| Powers v Young Men's Christian Association of Southwest Illinois | Circuit Court, Twentieth Judicial Circuit, St. Clair County, Illinois | 13-L-638 | Cor Jullien & Associates, Edwardsville, IL | 02-14-2017 |
| Stritzel v. Advocate Health and Hospitals Corporation, et al | Circuit Court of Cook County, Illinois, County Department - Law Division | 14 , 309848 | McNabola Law Group, Chicago, IL | 02-13-2017 |

## LIST OF CASES OVER THE LAST FOUR YEARS WHEREIN
## STAN V. SMITH HAS TESTIFIED AS OF 1/25/2021

| Case Name | Court | Case Number | Law Firm | Date |
|---|---|---|---|---|
| Declard/Darling v Traps, et al | 4th Judicial District Court, Rusk County, Texas | 2016-070 | Grossman Law Offices, Dallas, TX | 02-13-2017 |
| Wallace v. Wondwossen Tegen Aragaw, et al. | Circuit Court of Cook County, Illinois, County Department, Law Division | 2013 L 011927 | Woodruff Johnson & Palermo, Aurora, IL | 02 10 2017 |
| Carandang-Patrick, et al. v The Johns Hopkins Hospital, et al | Circuit Court for Baltimore City | 14-C-16-004959 | Wais Vogelstein Forman & Offutt, Baltimore, MD | 02-10-2017 |
| Doe v Morton, M.D. et n. | Superior Court of the State of California for the County of San Francisco | CPF-11-511717 | Hinsemhone Law Group, MizalCA | 02-49-2017 |
| Sitora v Manor Care of Elk Grove Village, LLC, et al | Circuit Court of Cook County, Illinois, County Department, Law Division | 14 L 8885 | Malman & Associates, Chicago, IL | 02-07-2017 |

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON DIVISION**

DON BLANKENSHIP,

                    Plaintiff,

v.

FOX NEWS NETWORK, LLC, et al.,

                  Defendants.

Case No.: 2:19-cv-00236

**DEFENDANTS FISCALNOTE AND GRIFFIN CONNOLLY'S**
**REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ............................................................................1

ARGUMENT ......................................................................................................1

I.    PLAINTIFF CONCEDES THAT SUMMARY JUDGMENT IS WARRANTED
      AS TO GRIFFIN CONNOLLY ................................................................1

II.   SUMMARY JUDGEMENT SHOULD BE GRANTED ON PLAINTIFF'S
      CLAIM FOR DEFAMATION ..................................................................2

      A.    Plaintiff Failed to Demonstrate a Genuine Fact Issue with Respect to
            Actual Malice ...........................................................................3

      B.    Plaintiff Failed to Prove that the FiscalNote Defendants Intended to Injure
            Him .........................................................................................8

      C.    Plaintiff Failed to Establish Resulting Injury .................................10

III.  SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFF'S FALSE
      LIGHT CLAIM .....................................................................................11

CONCLUSION.....................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986).................................................................2, 3, 4, 10

*Backus v. City of Parkersburg*,
    980 F. Supp. 2d 741 (S.D.W. Va. 2013)...................................................10

*Blankenship v. Napolitano*,
    451 F. Supp. 3d 596 (S.D.W. Va. 2020).....................................................7

*CACI Premier Tech., Inc. v. Rhodes*,
    536 F.3d 280 (4th Cir. 2008) .....................................................................4

*In re Callaghan*,
    796 S.E.2d 604 (W. Va. 2017)...................................................................9

*Carr v. Forbes, Inc.*,
    259 F.3d 273 (4th Cir. 2001) .....................................................................4

*Chafin v. Gibson*,
    578 S.E.2d 361 (W. Va. 2003) (per curiam).............................................9

*Church of Scientology Int'l v. Daniels*,
    992 F.2d 1329 (4th Cir. 1993) ...................................................................5

*Crump v. Beckley Newspapers, Inc.*,
    320 S.E.2d 70 (W. Va. 1984)...................................................................11

*Dash v. Mayweather*,
    731 F.3d 303 (4th Cir. 2013) ...................................................................11

*Denny v. Seaboard Lacquer, Inc.*,
    487 F.2d 485 (4th Cir. 1973) .....................................................................5

*Fitzgerald v. Penthouse Int'l, Ltd.*,
    691 F.2d 666 (4th Cir. 1982) .....................................................................5

*Giles v. Kanawha Cty. Bd. of Educ.*,
    No. 17-0139, 2018 WL 300605 (W. Va. Jan. 5, 2018)........................9, 11

*Harte-Hanks Comm'cns, Inc. v. Connaughton*,
    491 U.S. 657 (1989)...................................................................................8

*Hatfill v. N.Y. Times Co.*,
    532 F.3d 312 (4th Cir. 2008) ......................................................................................4

*Henry v. Nat'l Ass'n of Air Traffic Specialists, Inc.*,
    836 F. Supp. 1204 (D. Md. 1993), *aff'd*, 34 F.3d 1066 (4th Cir. 1994) ...................................5

*Hinerman v. Daily Gazette Co.*,
    423 S.E.2d 560 (W. Va. 1992)......................................................................................9

*Hugger v. Rutherford Inst.*,
    94 F. App'x 162 (4th Cir. 2004) (per curiam) ...........................................................4

*Long v. Egnor*,
    346 S.E.2d 778 (W. Va. 1986).....................................................................................9

*McKinney v. K-Mart Corp.*,
    649 F. Supp. 1217 (S.D.W. Va. 1986)........................................................................9

*Milan v. Long*,
    88 S.E. 618 (W. Va. 1916)........................................................................................10

*N.Y. Times Co. v. Sullivan*,
    376 U.S. 254 (1964)....................................................................................................7

*Nat'l Life Ins. Co. v. Phillips Publ'g, Inc.*,
    793 F. Supp. 627 (D. Md. 1992)................................................................................5

*Pritt v. Republican Nat'l Comm.*,
    557 S.E.2d 853 (W. Va. 2001)....................................................................................5

*Ratliff v. Gymboree Operations, Inc.*,
    No. 2:11-cv-00562, 2012 WL 2862567 (S.D.W. Va. July 11, 2012)
    (Copenhaver, J.) ........................................................................................................2

*Richard H. v. Rachel B.*,
    No. 18-1004, 2019 WL 6998331 (W. Va. Dec. 20, 2019)........................................10

*Salvin v. Am. Nat'l Ins. Co.*,
    281 F. App'x 222 (4th Cir. 2008) .............................................................................2

*Shelton v. Collins Career Ctr.*,
    No. 2:20-cv-00457, 2020 WL 7232319 (S.D.W. Va. Dec. 8, 2020) .........................1

*Sprouse v. Clay Commc'n, Inc.*,
    211 S.E.2d 674 (W. Va. 1975)....................................................................................9

*St. Amant v. Thompson*,
    390 U.S. 727 (1968)................................................................................................5, 6

*State ex rel. Suriano v. Gaughan*,
    480 S.E.2d 548 (W. Va. 1996)...................................................................6

*Sweetland v. Bank of Am. Corp.*,
    241 F. App'x 92 (4th Cir. 2007) ...............................................................2

*Tharp v. Media Gen., Inc.*,
    987 F. Supp. 2d 673 (D.S.C. 2013)...........................................................5

*Tomblin v. WCHS-TV8*,
    434 F. App'x 205 (4th Cir. 2011) .............................................................5

*Westmoreland v. CBS Inc.*,
    596 F. Supp. 1170 (S.D.N.Y. 1984).........................................................5

*Zerangue v. TSP Newspapers, Inc.*,
    814 F.2d 1066 (5th Cir. 1987) ..................................................................5

**STATUTES**

18 U.S.C. § 1927...........................................................................................2

## PRELIMINARY STATEMENT

It is hornbook law that a party opposing summary judgment must come forward with evidence sufficient to demonstrate a genuine issue of material fact.  Plaintiff has done no such thing.  Indeed, the only "evidence" Plaintiff has amassed as to Defendants FiscalNote, Inc. and Griffin Connolly (the "FiscalNote Defendants") are: (1) a single article—authored by a non-party—that made one reference to Plaintiff as a "felon" (the "Roll Call article") and (2) generic marketing material from the FiscalNote Defendants' website.  Rather than accept the Court's invitation to engage in discovery to support his claims, Plaintiff conducted no meaningful discovery: he took no depositions, refused the FiscalNote Defendants' offer to swear to the facts herein under oath, and forced the FiscalNote Defendants to move for summary judgment, to which he responded by stitching together sections of his responses to other Defendants.  Indeed, ***not one fact*** in Plaintiff's statement of material facts relates to the FiscalNote Defendants' state of mind at the time of publication.  Plaintiff has wasted party and judicial resources for long enough, and the Court should grant summary judgment.

## ARGUMENT

### I.  PLAINTIFF CONCEDES THAT SUMMARY JUDGMENT IS WARRANTED AS TO GRIFFIN CONNOLLY

As an initial matter, Plaintiff concedes that Griffin Connolly neither authored nor contributed to the Roll Call article and therefore did not make any defamatory statement.  Summary judgment should be granted as to Griffin Connolly.  *See Shelton v. Collins Career Ctr.*, No. 2:20-cv-00457, 2020 WL 7232319, at *11 (S.D.W. Va. Dec. 8, 2020) ("Any argument not responded to is deemed conceded and waived.").

Griffin Connolly never should have been a part of this litigation, and he should now be dismissed.  Plaintiff and his counsel have known that Griffin Connolly was entirely uninvolved in

the publication of the Roll Call article for nearly two years: the FiscalNote Defendants explained this fact in their original motion to dismiss and in subsequent communications with Plaintiff and Plaintiff's counsel.  Nevertheless, Plaintiff and his counsel refused to dismiss Mr. Connolly from the matter, instead requiring Mr. Connolly to expend time and resources to move for summary judgment only to then remain silent in the opposition, thereby acknowledging the frivolity of the claims.  The Fourth Circuit has upheld sanctions under 18 U.S.C. § 1927 against counsel for continuing prosecution of claims after it becomes clear "that evidentiary support for the allegations" is not forthcoming.  *See Sweetland v. Bank of Am. Corp*., 241 F. App'x 92, 97 (4th Cir. 2007) (affirming sanctions under § 1927 for attorneys' fees incurred in connection with the summary judgment proceedings); *see also Salvin v. Am. Nat'l Ins. Co.*, 281 F. App'x 222, 226 (4th Cir. 2008) (upholding award of fees when the attorney "refus[ed] to voluntarily dismiss the case once its lack of merit became evident" and the defendant "was forced to continue with its discovery obligations, file a summary judgment motion, and respond to [the plaintiff's] opposition to that motion").  Plaintiff and his counsel's frivolous pursuit of this action against Mr. Connolly is wholly inappropriate and sanctionable.

## II.    SUMMARY JUDGEMENT SHOULD BE GRANTED ON PLAINTIFF'S CLAIM FOR DEFAMATION

Plaintiff asserts that the FiscalNote Defendants "have not satisfied their burden of showing the absence of disputed facts."  Opp. at 6 (ECF No. 947).  But it is Plaintiff who carries the burden.  A party opposing summary judgment must bring forward "concrete" and "affirmative" evidence sufficient to actually create a "genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 256-57 (1986); *see also, e.g.*, *Ratliff v. Gymboree Operations, Inc.*, No. 2:11-cv-00562, 2012 WL 2862567, at *5 (S.D.W. Va. July 11, 2012) (Copenhaver, J.).  "This is true even where the evidence is likely to be within the possession of the defendant, as long as the

plaintiff has had a full opportunity to conduct discovery." *Anderson*, 477 U.S. at 256. Plaintiff has not satisfied his burden.

### A.  Plaintiff Failed to Demonstrate a Genuine Fact Issue with Respect to Actual Malice

The Supreme Court has clearly articulated Plaintiff's burden: he must "present ***affirmative evidence*** in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257 (emphasis added). Plaintiff asserts that summary judgment is improper because the FiscalNote Defendants have not "establish[ed] the absence of disputed facts" as to actual malice. Opp. at 6. This is not the standard. "The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of ***his own burden*** of producing in turn evidence that would support a jury verdict." *Anderson*, 477 U.S. at 256.

Plaintiff has not met this burden. His entire case against the FiscalNote Defendants rests on exactly two facts: that the FiscalNote Defendants published an article that contained the word "felon," and that FiscalNote's marketing materials state that it "has earned a reputation for delivering comprehensive, accurate, and objective" reporting. That is insufficient to demonstrate a genuine issue of material fact as to actual malice.

Eric Garcia (the actual author of the Roll Call article) submitted a declaration stating that he did not know at the time he wrote the article that Mr. Blankenship's conviction amounted to a misdemeanor rather than a felony and that he relied on information he found online in preparing the article. *See* FiscalNote Defs.' Mot. at 4, ECF No. 904 (citing Garcia Decl.). This is consistent with his position as a junior journalist working on the then-Breaking News desk, whose role at the time was to prepare articles based on publications from other media outlets, not to conduct investigative reporting. *See id.* at 2-3. Having not authored any other stories about Mr. Blankenship, and given Roll Call's focus on Congressional matters, *see id.* at 2, Mr. Garcia

had no reason to know any more about Mr. Blankenship's prior criminal proceedings. Mr. Garcia's declaration is the totality of the evidence regarding his state of mind.

Lacking any evidence to dispute Mr. Garcia's sworn testimony, Plaintiff offers six arguments regarding actual malice, but none can salvage this claim. Plaintiff is asking the Court to hold a full trial on Mr. Garcia's credibility without any affirmative evidence putting it in dispute. The Court should decline to do so.

*First*, Plaintiff brushes aside his lack of evidence and argues that determinations of actual malice are "rarely appropriate for summary judgment." Opp. at 7. The Supreme Court has expressly rejected this argument. *See Anderson*, 477 U.S. at 255-56. The Court repudiated the exact language that Plaintiff cites and clarified that the language was "simply an acknowledgment" of the Court's reluctance to grant special protections to Defendants in defamation actions. *Id.* at 256 n.7. Indeed, Plaintiff's argument is incompatible with the very reason for the high bar of actual malice in the first place: to prevent the chilling of legitimate speech under the First Amendment. *See CACI Premier Tech., Inc. v. Rhodes*, 536 F.3d 280, 293 (4th Cir. 2008) (affirming the district court's grant of summary judgment for failure to show actual malice and finding "[t]he actual malice standard … is rooted in the First Amendment's 'vital guarantee of free and uninhibited discussion of public issues'" (citations omitted)). If summary judgment was generally inappropriate in cases subject to the actual malice standard, these important First Amendment protections would be significantly diminished.

Since *Anderson*, courts have frequently granted summary judgment in defamation cases for failure to prove actual malice. *See, e.g.*, *Hatfill v. N.Y. Times Co.*, 532 F.3d 312, 315 (4th Cir. 2008) (affirming the district court's grant of summary judgment for failure to show actual malice); *Hugger v. Rutherford Inst.*, 94 F. App'x 162, 164 (4th Cir. 2004) (per curiam) (same); *Carr v.*

*Forbes, Inc.*, 259 F.3d 273, 282-83 (4th Cir. 2001) (same); *Church of Scientology Int'l v. Daniels*, 992 F.2d 1329, 1335 (4th Cir. 1993) (same).

The remainder of Blankenship's cited cases regarding the propriety of summary judgment—the most recent being nearly thirty years old—are inapposite. *Denny v. Seaboard Lacquer, Inc.*, 487 F.2d 485, 486-88 (4th Cir. 1973) is not a defamation case; it is a wrongful death claim litigated under Alabama law, and in both *National Life Insurance Co. v. Phillips Publishing, Inc.*, 793 F. Supp. 627, 649 (D. Md. 1992) and *Henry v. National Association of Air Traffic Specialists, Inc.*, 836 F. Supp. 1204, 1212 (D. Md. 1993), *aff'd*, 34 F.3d 1066 (4th Cir. 1994), the Court ultimately held that there was no actual malice and granted summary judgment. Plaintiff's reliance on *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066 (5th Cir. 1987) is similarly misplaced: In *Zerangue*, the court found there was sufficient evidence of actual malice because the defendant printed the defamatory statements for a second time, ***after*** printing a retraction to the original article and following contact from the Plaintiff.[1] *Id.* at 1071-72. There is no such affirmative evidence here.

***Second***, relying on *St. Amant v. Thompson*, 390 U.S. 727 (1968), Plaintiff asserts that Mr. Garcia's declaration is insufficient to defeat summary judgment. Opp. at 10. In so arguing,

---

[1] Plaintiff's additional cases are also inapposite, referring to conduct absent here. *See Fitzgerald v. Penthouse Int'l, Ltd.*, 691 F.2d 666, 671-72 (4th Cir. 1982) (author had "obvious reason to doubt" the veracity of the sole source of the allegedly defamatory statement—including evidence he had been peddling statements that "were the fabrication of a sick mind" and suggesting he was "suffering from a persecutory delusion"); *Tomblin v. WCHS-TV8*, 434 F. App'x 205, 207-08, 210-11 (4th Cir. 2011) (local television station published report of a daycare that sexually "abused" a child while knowing instead that the incident involved one child touching another); *Westmoreland v. CBS Inc.*, 596 F. Supp. 1170, 1176-77 (S.D.N.Y. 1984) (defendant affirmatively acted to edit interview excerpts misleadingly to support defamatory statement); *Pritt v. Republican Nat'l Comm.*, 557 S.E.2d 853, 860 (W. Va. 2001) (referring to, but not describing in detail, "ongoing factual dispute" related to actual malice). *Tharp v. Media General, Inc.*, 987 F. Supp. 2d 673, 688-89 (D.S.C. 2013), is simply inapposite, as it concerned a private figure and applied the common law malice standard.

Plaintiff ignores the remainder of the holding wherein the *St. Amant* Court noted that professions of good faith are "unlikely to prove persuasive, for example, where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call … [or] so inherently improbable that only a reckless man would have put [the statements] in circulation." 390 U.S. at 732. No such circumstance is present in this case—nor does Plaintiff argue there is—and Mr. Garcia's declaration remains undisputed by the record.

*Third*, Plaintiff alleges that a "Google search would have undoubtedly revealed the true information." Opp. at 10. This statement is irrelevant to Mr. Garcia's state of mind at the time he wrote the article. *See State ex rel. Suriano v. Gaughan*, 480 S.E.2d 548, 563 (W. Va. 1996) ("There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." (quoting *St. Amant*, 390 U.S. at 731)). Moreover, a Google search would have likely returned numerous articles, including articles at issue in this lawsuit, that also mistakenly called Plaintiff a felon. *See* ECF No. 891 at 6-9 (summarizing over 100 mistaken references to Plaintiff as a felon). Speculation as to what Mr. Garcia *could have done*, rather than what he actually *did*, does not create a genuine dispute of material fact.

*Fourth*, Plaintiff asserts that Mr. Garcia was on notice that Plaintiff was not a felon because the article was published after Plaintiff participated in a televised debate and, in the course of that debate, stated that he had defeated felony charges. Opp. at 10-11. This too does not create a genuine dispute of material fact. Plaintiff fails to provide any evidence that Mr. Garcia even knew about this debate—targeting the West Virginia electorate—let alone watched it. The fact that Plaintiff participated in a televised debate is immaterial as to Mr. Garcia's state of mind.

*Fifth*, Plaintiff argues that Mr. Garcia's statements are "particularly questionable" given Roll Call's coverage of elections, including coverage of the West Virginia primary and Plaintiff.

Opp. at 11.  Again, this coverage does not create a genuine dispute regarding Mr. Garcia's state of mind.  Mr. Garcia did not author a single one of the articles cited.  As this Court confirmed, "[t]he 'mere presence' of previous stories in a newspaper's files does not establish that the newspaper knew that a statement was false 'since the state of mind required for actual malice would have to be brought home to the persons in the [newspaper's] organization having responsibility for the publication of the [statement].'"  *Blankenship v. Napolitano*, 451 F. Supp. 3d 596, 619 (S.D.W. Va. 2020) (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 287 (1964)).  The fact that another individual at FiscalNote wrote about Plaintiff does not create a dispute about Mr. Garcia's state of mind.  The articles in question also have nothing to do with Plaintiff's crime, nor do they classify Plaintiff as either a felon or misdemeanant.  These articles do not create any genuine dispute that the people "having responsibility for the publication" knew that Plaintiff's crime was a misdemeanor.  Mr. Garcia's declaration remains undisputed.

*Finally*, Plaintiff asserts that the FiscalNote Defendants "violated their own standards," and failed to maintain policies concerning reporting on criminal activity, which is evidence of actual malice.  Opp. at 9.  This is both factually and legally wrong.  As an initial matter, Plaintiff fails to identify any actual journalistic standard that was violated.  Instead, Plaintiff quotes marketing language about "accurate" and "objective" reporting from the FiscalNote website and asserts that these are the FiscalNote Defendants' reporting standards and that they were violated.  *Id.*  Plaintiff provides no evidence to support either of these (untrue) claims.  Nor does Plaintiff provide support for his conclusion that the mere existence of a mistake is somehow a "departure from accepted standards," and thereby evidence of actual malice.  *Id.* (quoting *Blankenship*, 451 F. Supp. 3d at 619).  Indeed, the First Amendment explicitly protects such mistakes.  *See* FiscalNote Defs.' Mot. at 8.

Plaintiff also claims that "failure to *maintain* such policies [on criminal reporting] may also be considered as a departure from accepted journalistic standards." *Id.* (emphasis added). This statement conflating *maintaining* policies with *departing* from them is entirely unsupported in law. In *Harte-Hanks Communications, Inc. v. Connaughton*, the court found that departure from standards—including the failure to interview a key individual and the failure to listen to the interview underlying the article—was one factor supporting a finding that the newspaper "inten[ded] to avoid the truth." 491 U.S. 657, 682, 692-93 (1989). The failure of an organization to *maintain* a particular policy about criminal reporting has no bearing on an author's intent or state of mind during a particular publication.

Finally, even assuming *arguendo* that some undisclosed journalistic standard was violated, this too is insufficient. *Harte-Hanks* makes clear that even "[a] showing of highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers cannot ***alone*** support a verdict in favor of a public figure plaintiff in a libel action." *Id.* at 664 n.5 (citation omitted). Yet, this is exactly Plaintiff's argument. As explained above, Plaintiff has presented no evidence concerning Mr. Garcia's state of mind, and Plaintiff cannot meet his burden to show clear and convincing of actual malice. Summary judgment must be granted.

In short, if this meagre record is sufficient to pass summary judgment, then actual malice has ceased to have any meaning and no longer serves as a heightened bar to protect the First Amendment rights of defendants everywhere. *See* FiscalNote Defs.' Mot. at 7-8.

### B.    Plaintiff Failed to Prove that the FiscalNote Defendants Intended to Injure Him

Separate from proving that the FiscalNote Defendants published the article with actual malice, Plaintiff must also show that they intended to injure Plaintiff by doing so. He has not.

*First*, Plaintiff argues that intent is "a matter of logic," and that any publication that "falsely labels" someone a felon "obviously intended to injure that candidate." Opp. at 12. Plaintiff's argument is both illogical and untethered from the law: the First Amendment explicitly protects mistakes, even negligent ones. *See* FiscalNote Defs.' Mot. at 8. Plaintiff's argument erases the scienter element that underlies public figure libel law and protects free speech.

*Second*, Plaintiff argues that he need not prove intent to injure.[2] Opp. at 11-12. Not true. As explained in the FiscalNote Defendants' opening brief, the West Virginia Supreme Court of Appeals has repeatedly held that political candidates and public officials "can sustain an action for libel only if" they can prove both that "the statements were published with knowledge at the time of publication that they were false or misleading or were published with a reckless and willful disregard of truth" and, *as an additional element*, that "the publisher intended to injure the plaintiff through the knowing or reckless publication of the alleged libelous material." Syl. Pt. 1, *Sprouse v. Clay Commc'n, Inc.*, 211 S.E.2d 674, 679 (W. Va. 1975); *see also Giles v. Kanawha Cty. Bd. of Educ.*, No. 17-0139, 2018 WL 300605, at *3 (W. Va. Jan. 5, 2018); *Chafin v. Gibson*, 578 S.E.2d 361, 365-66 (W. Va. 2003) (per curiam); *Long v. Egnor*, 346 S.E.2d 778, 785 (W. Va. 1986); *Hinerman v. Daily Gazette Co*., 423 S.E.2d 560, 579 (W. Va. 1992).

Plaintiff's reliance on the silence of the Court in *In re Callaghan*, 796 S.E.2d 604 (W. Va. 2017) is inapposite; the Court simply did not address the element. And in *McKinney v. K-Mart Corp*., although discussed in connection with actual malice, the court clearly found that intent to injure is a component of West Virginia defamation law, 649 F. Supp. 1217, 1221-22 (S.D.W. Va. 1986). As in *Backus v. City of Parkersburg*, the Court should grant summary judgment here—

---

[2] Plaintiff also inaccurately asserts that the FiscalNote Defendants did not argue this element in their motions to dismiss. Opp. at 12. The FiscalNote Defendants briefed this element in their Motion to Dismiss. ECF No. 235 at 7-8.

USCA4 Appeal: 22-1198   Doc: 64   Filed: 05/25/2022   Pg: 276 of 282

Blankenship has offered only "conclusory statement[s]" in support of his argument that there was evidence of "intent to injure." 980 F. Supp. 2d 741, 748 (S.D.W. Va. 2013).

### C.  Plaintiff Failed to Establish Resulting Injury

Finally, Plaintiff has not established that he was injured by the FiscalNote Defendants' singular mistaken reference.[3]   Rather than address the FiscalNote Defendants' arguments regarding his lack of injury, FiscalNote Defs.' Mot. at 11-16, Plaintiff argues that his claim survives because the statement constitutes defamation *per se*.  Not so.  As explained in the FiscalNote Defendants' opening brief, *id.* at 15-16, defamation *per se* does not save Plaintiff's claim.  Presumed damages pursuant to defamation *per se* must be "related to 'the natural and probable consequence[s] of the words so spoken or written.'"  *Richard H. v. Rachel B.*, No. 18-1004, 2019 WL 6998331, at *3 (W. Va. Dec. 20, 2019) (quoting *Milan v. Long*, Syl., 88 S.E. 618 (W. Va. 1916)).  Plaintiff's opposition fails to argue how *any* of his purported business or election losses are the "natural and probable consequence" of one mistaken word in the FiscalNote Defendants' article directed toward congressional staffers, particularly given the decade of negative publicity about Plaintiff prior to the article.  Opp. at 17 (citation omitted).

Plaintiff attempts to side step this issue by arguing that whether the FiscalNote Defendants' single statement caused injury is ultimately an apportionment question for the jury.  It is not. Plaintiff must *first* provide affirmative evidence to show there is a genuine issue of material fact as to whether his purported injury was the "natural and probable consequence" of the FiscalNote Defendants' statement.  *Anderson*, 477 U.S. at 256.  The FiscalNote Defendants can only be liable for a portion of the damages if they are liable in the first place.  Plaintiff's speculation is

---

[3] The FiscalNote Defendants incorporate by reference the other Defendants' responses to Plaintiff's arguments concerning material falsity. *See, e.g.*, ECF No. 933 at 17-19; ECF No. 935 at 14-16; ECF No. 936 at 16-18.

insufficient, *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013), and summary judgment is warranted.

## III.    SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFF'S FALSE LIGHT CLAIM

Plaintiff implicitly acknowledges that if his defamation claim fails, his claim for false light invasion of privacy would fail for the same reasons. *See* Opp. at 19-20; FiscalNote Defs.' Mot. at 16. Summary judgment should be entered on his false light claim on each of the same grounds explained above. *See, e.g.*, *Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70, 87 (W. Va. 1984) ("[C]ourts and commentators have consistently treated false light privacy claims in essentially the same manner as they have treated defamation."). Moreover, Plaintiff again fails to address what the FiscalNote Defendants actually argued: that the FiscalNote Defendants' statement could not, as a matter of law, give publicity to Plaintiff's conviction because it was already widespread. *See* FiscalNote Defs.' Mot. at 17-18 (citing *Giles*, 2018 WL 300605, at *5 ("[I]t would be disingenuous to conclude that [the] statements on February 9, 2015, somehow 'gave publicity' to these already widely publicized facts.")). Plaintiff's False Light claim must fail.

### CONCLUSION

For the foregoing reasons, summary judgment should be granted as to Plaintiff's claims against FiscalNote and Griffin Connolly.

FISCAL NOTE, INC. and GRIFFIN
CONNOLLY, Defendants,
By counsel:

Dated: June 28, 2021

*/s/ Allen M. Gardner*
Allen M. Gardner (DC #456723)
   (admitted *Pro Hac Vice*)
Sarah M. Gragert (DC #977097)
   (admitted *Pro Hac Vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004-1304
Telephone: (202) 637-2270
Facsimile: (202) 637-2201
allen.gardner@lw.com
sarah.gragert@lw.com

*/s/ John J. Polak*
John J. Polak (WVSB No. 2929)
ATKINSON & POLAK, PLLC
300 Summers Street, Suite 1300
P.O. Box 549
Charleston, WV 25322-0549
Telephone: (304) 346-5100
Facsimile: (304) 346-4678
jjpolak@amplaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 28, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that I have mailed the documents by United States Postal Service to the non-CM/ECF participants identified in the Notice of Electronic Filing that will be generated upon the filing of these documents.

*/s/ Allen M. Gardner*
Allen M. Gardner

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

**DON BLANKENSHIP**,

      Plaintiff,

v.

                                    Civil Action No. 2:19-00236
                                    (Judge John T. Copenhaver, Jr.)

**FOX NEWS NETWORK, LLC**, *et al.*,

      Defendants.

## HD MEDIA, LLC'S
## MOTION FOR SUMMARY JUDGMENT

Defendant HD Media, LLC ("HDM"), publisher of the *Charleston Gazette-Mail* newspaper,[1] hereby respectfully moves for summary judgment in its favor, pursuant to Rule 56 of the *Federal Rules of Civil Procedure*, and for an order dismissing all claims brought against it in this matter, together with such further relief as the Court may deem to be just and proper.

In support of its **MOTION**, HDM submits and relies upon the accompanying **HD MEDIA, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** and the following exhibits:

1.      Exhibit 1: **MEMORANDUM IN SUPPORT OF DEFENSE MOTION NO. 3: TRANSFER TO ANOTHER DISTRICT FOR TRIAL**, filed in *United States v. Donald L. Blankenship*, 5:14-cr-00244;

---

[1] Plaintiff in his First Amended Complaint misidentifies the "The Charleston Gazette-Mail" as the "owner of the Charleston Gazette;" in fact, H.D. Media, LLC is the publisher of the *Charleston Gazette-Mail*. Plaintiff has been informed but taken no action to correct his error.

2.      Exhibit 2: Excerpt from MSHA Report of Investigation into the Fatal Underground

Mine Explosion, April 5, 2010;

3.      Exhibit 3: Declaration from Kelly Merritt with attachments thereto;

4.      Exhibit 4: Excerpts from April 29 and 30, 2021 Deposition of Plaintiff Don

Blankenship; and

5.      Exhibit 5: **PLAINTIFF DON BLANKENSHIP'S AMENDED RESPONSES TO**

**FIRST SET OF INTERROGATORIES BY DEFENDANT AMERICAN**

**BROADCASTING COMPANIES, INC.**  Plaintiff provided similar discovery

responses to other Defendants in this case, which were attached as Exhibit 22 to the

Fox News motion, Exhibit 37 to the CNN motion, Exhibit 9 to the MSNBC motion

and Exhibit 39 to the Washington Post motion.

/s/ Robert M. Bastress III
Robert M. Bastress III (W.Va. I.D. No. 9616)
Lonnie C. Simmons (W.Va. I.D. No. 3406)
**DiPIERO SIMMONS McGINLEY &**
**BASTRESS, PLLC**
604 Virginia Street, East
Charleston, WV 25301
Tel: (304) 342-0133

*Attorney for H.D. Media, LLC*

-2-

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### AT CHARLESTON

**DON BLANKENSHIP**,

       Plaintiff,

v.                                     Civil Action No. 2:19-00236
                                     (Judge John T. Copenhaver, Jr.)

**FOX NEWS NETWORK, LLC**, *et al.*,

       Defendants.

## CERTIFICATE OF SERVICE

    I, Robert M. Bastress III, hereby certify that on this 21st day of June, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all CM/ECF participants.


                          /s/ Robert M. Bastress III