No. 22-1198 (L); No. 22-1207

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

No. 22-1198 (L)

**DONALD L. BLANKENSHIP,**
*Plaintiff-Appellant*
v.
**NBCUNIVERSAL, LLC; CNBC, LLC,**
*Defendant-Appellees*

No. 22-1207

**DONALD L. BLANKENSHIP,**
*Plaintiff-Appellant*
v.
**FOX NEWS NETWORK, LLC; CABLE NEWS NETWORK, INC.;
MSNBC CABLE LLC; WP COMPANY LLC, d/b/a The Washington
Post; DOES 1-50, inclusive; MEDIAITE, LLC; FISCAL NOTE, INC.,
d/b/a Roll Call; NEWS AND GUTS, LLC; THE CHARLESTON
GAZETTE-MAIL; AMERICAN BROADCASTING COMPANIES,
INC.; TAMAR AUBER; GRIFFIN CONNOLLY; ELI LEHRER,**
*Defendants-Appellees*

Appeal from the United States District Court for the
Southern District of West Virginia, No. 2:19-cv-00236
No. 2:20-cv-00278

## BRIEF OF APPELLEES

Kevin T. Baine
Stephen J. Fuzesi
Gloria K. Maier
Matthew D. Heins
Katelyn R. Adams
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC 20024
(202) 434-5000 Phone
kbaine@wc.com
sfuzesi@wc.com
gmaier@wc.com
mheins@wc.com
kadams@wc.com

***Counsel for Appellees American Broadcasting Companies, Inc.; Cable News Network, Inc.; Fox News Network LLC; MSNBC Cable, LLC; WP Company LLC; CNBC, LLC; and NBCUniversal, LLC***

***Lead Counsel for Appellees***

***(Additional counsel on following pages)***

Kelli L. Sager
DAVIS WRIGHT TREMAINE
LLP
865 S. Figueroa Street, Suite 2400
Los Angeles, CA 90017
(213) 633-6800 Phone
kellisager@dwt.com

Eric Feder
DAVIS WRIGHT TREMAINE
LLP
1301 K Street, NW, Suite 500 East
Washington, DC 20005
(202) 973-4200 Phone
ericfeder@dwt.com

*Counsel for Appellee American Broadcasting Companies, Inc.*

Elbert Lin
HUNTON ANDREWS KURTH
LLP
951 E. Byrd Street
Richmond, VA 23219
(804) 788-8200 Phone
elin@huntonak.com

*Counsel for Appellee Fox News Network LLC*

Jared M. Tully
Mary Claire Davis
FROST BROWN TODD LLC
500 Virginia Street East, Suite 1100
Charleston, WV 25301
(304) 345-0111 Phone
jtully@fbtlaw.com
mcdavis@fbtlaw.com

Ryan W. Goellner
FROST BROWN TODD LLC
3300 Great American Tower
301 E. Fourth Street
Cincinnati, OH 45202
(513) 651-6800 Phone
rgoellner@fbtlaw.com

Kevin T. Shook
FROST BROWN TODD LLC
10 West Broad Street, Suite 2300
Columbus, OH 43215
(614) 464-1211 Phone
kshook@fbtlaw.com

*Counsel for Appellees MSNBC Cable, LLC; CNBC, LLC and NBCUniversal, LLC*

Lonnie C. Simmons
DIPIERO SIMMONS MCGINLEY
& BASTRESS, PLLC
604 Virginia Street, East
Charleston, WV 25301
(304) 342-0133 Phone

*Counsel for Appellees Mediaite,
LLC and Tamar Auber*

Robert M. Bastress, III
DIPIERO SIMMONS MCGINLEY
& BASTRESS, PLLC
604 Virginia Street, East
Charleston, WV 25301
(304) 342-0133 Phone

*Counsel for Appellee The
Charleston Gazette-Mail*

Jennifer S. Jackman
WHITEFORD, TAYLOR &
PRESTON, LLP
1800 M Street, NW, Suite 401
Washington, DC 20036
(202) 659-6800 Phone
jjackman@wtplaw.com

*Counsel for Appellee Eli Lehrer*

Allen M. Gardner
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
(202) 637-2270 Phone
allen.gardner@lw.com

*Counsel for Appellees Fiscal Note,
Inc. and Griffin Connolly*

Chris Vlahos
Jenna Harris
RITHOLZ LEVY FIELDS, LLP
131 S. 11th Street
Nashville, TN 37206
(615) 250-3939 Phone
cvlahos@rlfllp.com
jharris@rlfllp.com

William D. Wilmoth
STEPTOE & JOHNSON, PLC
1233 Main Street, Suite 3000
Wheeling, WV 26003
(304) 231-0456 Phone
william.wilmoth@steptoe-
johnson.com

*Counsel for Appellee News and
Guts, LLC*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __22-1198__        Caption: _Don Blankenship v. NBCUniversal, LLC; CNBC, LLC_

Pursuant to FRAP 26.1 and Local Rule 26.1,

_CNBC, LLC_
(name of party/amicus)


who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                    ☑YES ☐NO
      If yes, identify all parent corporations, including all generations of parent corporations:

      NBCUniversal Media, LLC
      Comcast Corporation

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                    ☑YES ☐NO
      If yes, identify all such owners:
      Comcast Corporation

12/01/2019 SCC                    - 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?    ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
      If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: ___/s/ Mary Claire Davis_____    Date: _____3/14/2022_____

Counsel for: __CNBC, LLC_____

- 2 -

    **Print to PDF for Filing**

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __22-1198__      Caption: _Don Blankenship v. NBCUniversal, LLC; CNBC, LLC_

Pursuant to FRAP 26.1 and Local Rule 26.1,

_NBCUniversal, LLC_
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2.  Does party/amicus have any parent corporations? ☑ YES ☐ NO
    If yes, identify all parent corporations, including all generations of parent corporations:

    Comcast Corporation

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☑ YES ☐ NO
    If yes, identify all such owners:

    Comcast Corporation

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: _/s/ Mary Claire Davis_____    Date: _____3/14/2022_____

Counsel for: _NBCUniversal, LLC_____

- 2 -

[ **Print to PDF for Filing** ]

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __22-1207__        Caption: _Blankenship v. Fox News Network et al_

Pursuant to FRAP 26.1 and Local Rule 26.1,

_News and Guts, LLC._
(name of party/amicus)

_____

 who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?      ☐YES ☑NO


2.      Does party/amicus have any parent corporations?      ☐YES ☑NO
        If yes, identify all parent corporations, including all generations of parent corporations:




3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?      ☐YES ☑NO
        If yes, identify all such owners:


12/01/2019 SCC                              - 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Jenna L. Harris                        Date:      03/14/2022

Counsel for: News and Guts, LLC

- 2 -

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __22-1207__     Caption: __Don Blankenship v. Fox News Network, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__MSNBC, Cable LLC__
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.     Is party/amicus a publicly held corporation or other publicly held entity?     ☐ YES ☑ NO

2.     Does party/amicus have any parent corporations?     ☑ YES ☐ NO
       If yes, identify all parent corporations, including all generations of parent corporations:

       NBCUniversal Media, LLC
       Comcast Corporation

3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?     ☑ YES ☐ NO
       If yes, identify all such owners:
       Comcast Corporation

12/01/2019 SCC                                        - 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Mary Claire Davis                    Date:        3/16/2022

Counsel for: MSNBC Cable, LLC

- 2 -

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

### DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __22-1207__    Caption: __Don Blankenship v. Fox News Network, LLC, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Mediaite, LLC__
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.  Does party/amicus have any parent corporations?  ☐ YES ☑ NO
    If yes, identify all parent corporations, including all generations of parent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
    If yes, identify all such owners:

4.     Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?     ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.     Is party a trade association? (amici curiae do not complete this question)     ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.     Does this case arise out of a bankruptcy proceeding?     ☐ YES ☑ NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.     Is this a criminal case in which there was an organizational victim?     ☐ YES ☑ NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: Lonnie C. Simmons        Date:     03/16/2022

Counsel for: Mediaite, LLC

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __22-1207__        Caption: _Don Blakenship v. Fox News Network, LLC. et al._

Pursuant to FRAP 26.1 and Local Rule 26.1,

Eli Lehrer
(name of party/amicus)

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                              ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                              ☐YES ☑NO
      If yes, identify all such owners:

12/01/2019 SCC                              - 1 -

4.   Is there any other publicly held corporation or other publicly held entity that has a direct
financial interest in the outcome of the litigation?                    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)     ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected
substantially by the outcome of the proceeding or whose claims the trade association is
pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?          ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational
victim of the criminal activity and (2) if an organizational victim is a corporation, the
parent corporation and any publicly held corporation that owns 10% or more of the stock
of victim, to the extent that information can be obtained through due diligence.

Signature: __Jennifer S. Jackman, Esq. /s/_____          Date: _____March 16, 2022_____

Counsel for: __Eli Lehrer_____

- 2 -

**Print to PDF for Filing**

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 22-1207    Caption: DON BLANKENSHIP v. FOX NEWS NETWORK, L.L.C., et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

FiscalNote, Inc., d/b/a Roll Call
(name of party/amicus)


who is _____ Appellee _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☑YES ☐NO
      If yes, identify all parent corporations, including all generations of parent corporations:

      FiscalNote Holdings Inc.
      FiscalNote Holdings II, Inc.

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Allen M. Gardner          Date: 3/16/2022

Counsel for: FiscalNote, Inc.

- 2 -

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __22-1207__        Caption: __Blankenship v. Fox News Network, LLC, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__The Charleston Gazette-Mail (now HD Media, LLC)__
(name of party/amicus)

_____

 who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                    ☑YES ☐NO
      If yes, identify all parent corporations, including all generations of parent corporations:

       In 2018, the named Defendant, The Charleston Gazette-Mail, was purchased by HD Media Co.,
       LLC.

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                            ☐YES ☑NO
      If yes, identify all such owners:

12/01/2019 SCC                            - 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Robert M. Bastress III          Date: 03/16/22

Counsel for: The Charleston Gazette-Mail

- 2 -

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No.  22-1207          Caption:  Blankenship v. Fox News Network, LLC

Pursuant to FRAP 26.1 and Local Rule 26.1,

American Broadcasting Companies, Inc.
(name of party/amicus)

who is            an Appellee          , makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO

2.  Does party/amicus have any parent corporations?   ☑YES ☐NO
    If yes, identify all parent corporations, including all generations of parent corporations:

    ABC Holding Company, Inc.;  ABC, Inc.;  ABC Enterprises, Inc.;  Disney Enterprises, Inc.;
    TWDC Enterprises 18 Corp.;  The Walt Disney Company

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?   ☑YES ☐NO
    If yes, identify all such owners:
    The Walt Disney Company

12/01/2019 SCC                          - 1 -

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?   ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?   ☐YES ☑NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?   ☐YES ☑NO
     If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/Kelli L. Sager                          Date:       3/16/2022

Counsel for: American Broadcasting Companies, I

- 2 -

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __22-1207__       Caption: __Blankenship v. Fox News Network, LLC, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__WP Company LLC, d/b/a The Washington Post__
(name of party/amicus)

_____

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.  Does party/amicus have any parent corporations?   ☑ YES ☐ NO
    If yes, identify all parent corporations, including all generations of parent corporations:

    Nash Holdings LLC

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO
    If yes, identify all such owners:

12/01/2019 SCC                                        - 1 -

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Stephen J. Fuzesi   Date:   03/16/2022

Counsel for: WP Company LLC

- 2 -

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No.  22-1207          Caption:  Don Blankenship v. Fox News Network, L.L.C., et. al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Fox News Network, LLC
(name of party/amicus)

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.  Does party/amicus have any parent corporations?  ☑ YES ☐ NO
    If yes, identify all parent corporations, including all generations of parent corporations:

    Fox News Network, LLC is directly, wholly-owned by Fox Television Stations, LLC, which is directly, wholly-owned by Fox Television Holdings, LLC, which is directly, wholly-owned by Foxcorp Holdings LLC, which is directly, wholly-owned by Fox Corporation, which is the ultimate parent and is publicly held.

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☑ YES ☐ NO
    If yes, identify all such owners:

    As described above, Fox News Network, LLC is indirectly wholly owned by Fox Corporation, which is publicly held.  None of the other entities referenced above are publicly held.

12/01/2019 SCC                              - 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Elbert Lin                          Date:        3/16/2022

Counsel for: Fox News Network, LLC

- 2 -

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __22-1207__    Caption: __Don Blankenship v. Fox News Network, L.L.C.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Cable News Network, Inc.__
(name of party/amicus)

_____

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.  Does party/amicus have any parent corporations?  ☑YES ☐NO
    If yes, identify all parent corporations, including all generations of parent corporations:

    Historic TW, Inc.; Warner Media, LLC; WarnerMedia Holdings, Inc.; Warner Bros. Discovery, Inc.

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☑YES ☐NO
    If yes, identify all such owners:

    Warner Bros. Discovery, Inc., a publicly traded company, is CNN's ultimate corporate parent. To the best of CNN's knowledge, no publicly held company owns ten percent or more of Warner Bros. Discovery, Inc.'s stock.

12/01/2019 SCC                                - 1 -

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Stephen J. Fuzesi                    Date:        4/26/2022

Counsel for: Cable News Network, Inc.

- 2 -

**Print to PDF for Filing**

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No.  22-1198, 22-1207     Caption:  DON BLANKENSHIP v. FOX NEWS NETWORK, L.L.C., et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Griffin Connolly
(name of party/amicus)


who is _____ Appellee _____ , makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.     Is party/amicus a publicly held corporation or other publicly held entity?     ☐YES ☑NO


2.     Does party/amicus have any parent corporations?     ☐YES ☑NO
       If yes, identify all parent corporations, including all generations of parent corporations:




3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?     ☐YES ☑NO
       If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?      ☐YES ☑NO
If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)      ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?      ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?      ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Allen M. Gardner                    Date:      05/02/2022

Counsel for: Griffin Connolly

- 2 -

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __22-1207__          Caption: __Don Blankenship v. Fox News Network, LLC, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Tamar Auber__
(name of party/amicus)

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.  Does party/amicus have any parent corporations?                     ☐ YES ☑ NO
    If yes, identify all parent corporations, including all generations of parent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                      ☐ YES ☑ NO
    If yes, identify all such owners:

12/01/2019 SCC                          - 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: Lonnie C. Simmons                    Date:      05/02/2022

Counsel for: Tamar Auber

- 2 -

Print to PDF for Filing

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ii

STATEMENT OF THE ISSUES ...............................................................1

STATEMENT OF THE CASE ....................................................................1

SUMMARY OF ARGUMENT...................................................................12

STANDARD OF REVIEW ........................................................................16

ARGUMENT .............................................................................................16

I.     The References to Blankenship as a Felon Were Substantially True...................................................................16

II.    There Is No Evidence Upon Which a Reasonable Jury Could Find Actual Malice by Clear and Convincing Proof.........24

      A.    The Actual Malice Standard Demands Affirmative, Concrete Evidence at the Summary Judgment Stage.......25

      B.    There Is No Clear and Convincing Evidence of Actual Malice as to Any Defendant. ...................................32

            1.    Summary Judgment Was Proper as to FNN. ..........33

            2.    Summary Judgment Was Proper as to MSNBC. ................................................................46

            3.    Summary Judgment Was Proper as to CNN. ..........56

            4.    Summary Judgment Was Proper as to the Washington Post.........................................................68

            5.    Summary Judgment Was Proper as to ABC............75

            6.    Summary Judgment Was Proper as to the Additional Ten Defendants. ......................................82

      C.    This Court Cannot Overrule *New York Times v. Sullivan*...................................................................................85

III.   Summary Judgment Additionally Should Be Affirmed Because Blankenship Failed to Establish Intent to Injure. ........87

IV.   The District Court Properly Granted Summary Judgment on Blankenship's False Light Claim............................................89

CONCLUSION..........................................................................................90

i

# TABLE OF AUTHORITIES

## **Cases**

*AdvanFort Co. v. Maritime Executive, LLC,*
2015 WL 4603090 (E.D. Va. July 28, 2015)......................................................67

*Air Wisconsin Airlines Corp. v. Hoeper,*
571 U.S. 237 (2014) ...........................................................................................20

*Anderson v. Cramlet,*
789 F.2d 840 (10th Cir. 1986) ...........................................................................20

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ......................................................................................*passim*

*Anderson v. Stanco Sports Library, Inc.,*
542 F.2d 638 (4th Cir. 1976) .............................................................................23

*Arpaio v. Zucker,*
414 F. Supp. 3d 84 (D.D.C. 2019)......................................................................21

*Backus v. City of Parkersburg,*
980 F. Supp. 2d 741 (S.D.W. Va. 2013)........................................................87, 88

*Ballengee v. CBS Broadcasting, Inc.,*
968 F.3d 344 (4th Cir. 2020) .......................................................................*passim*

*Baumback v. ABC,*
161 F.3d 1 (Table) (4th Cir. Aug. 13, 1998)................................................15, 24

*Bose Corp. v. Consumers Union of U.S., Inc.,*
466 U.S. 485 (1984) ....................................................................................28, 78

*Brewer v. Dungan,*
1993 WL 441306 (N.C. Super. Ct. June 30, 1993)...........................................19

*Brown v. Gilmore,*
256 F.3d 265 (4th Cir. 2001) .............................................................................85

*Brown v. Nucor Corp.,*
785 F.3d 895 (4th Cir. 2015) .............................................................................83

*Buckley v. Valeo,*
424 U.S. 1 (1976) ....................................................................86

*Bustos v. A&E TV Networks,*
646 F.3d 762 (10th Cir. 2011) ...............................................22

*CACI Premier Technology, Inc. v. Rhodes,*
536 F.3d 280 (4th Cir. 2008) .........................................*passim*

*Cannon v. Peck,*
36 F.4th 547 (4th Cir. 2022) .........................................*passim*

*Cantrell v. Forest City Publishing Co.,*
419 U.S. 245 (1974) ................................................................67

*Carr v. Forbes, Inc.,*
259 F.3d 273 (4th Cir. 2001) ....................................15, 24, 66

*Chafin v. Gibson,*
578 S.E.2d 361 (W. Va. 2003).........................................87, 88

*Chapin v. Knight-Ridder, Inc.,*
993 F.2d 1087 (4th Cir. 1993) ...............................................16

*Church of Scientology International v. Daniels,*
992 F.2d 1329 (4th Cir. 1993) ...............................29, 32, 33

*Colorado v. New Mexico,*
467 U.S. 310 (1984) ................................................................26

*Conrad v. CSX Transportation, Inc.,*
824 F.3d 103 (4th Cir. 2016) .................................................53

*Crump v. Beckley Newspapers, Inc.,*
320 S.E.2d 70 (W. Va. 1983).................................................89

*DiBella v. Hopkins,*
403 F.3d 102 (2d Cir. 2005).................................................17

*Dobkin v. Johns Hopkins University,*
172 F.3d 43 (Table) (4th Cir. 1999).....................................89

*Dongguk University v. Yale University,*
734 F.3d 113 (2d Cir. 2013) .................................................................80

*Dostert v. Washington Post,*
531 F. Supp. 165 (N.D.W. Va. 1982) ...................................................19

*Dunn v. Rockwell,*
689 S.E.2d 255 (W.Va. 2009)................................................................46

*Equal Rights Center v. Niles Bolton Associates,*
602 F.3d 597 (4th Cir. 2010) .............................................39, 47, 55, 68

*Fairfax v. CBS Corp.,*
2 F.4th 286 (4th Cir. 2021) ..........................................................*passim*

*Filippo v. Lee Publications, Inc.,*
485 F. Supp. 2d 969 (N.D. Ind. 2007) .................................................64

*Garrison v. Louisiana,*
379 U.S. 64 (1954) .......................................................................*passim*

*Giles v. Kanawha County Board of Education,*
2018 WL 300605 (W. Va. Jan. 5, 2018) ..............................................87

*Golden Bear Distributing Systems v. Chase Revel, Inc.,*
708 F.2d 944 (5th Cir. 1983) .........................................................31, 74

*Harte-Hanks Communications, Inc. v. Connaughton,*
491 U.S. 657 (1989) .....................................................................*passim*

*Hatfill v. New York Times Co.,*
532 F.3d 312 (4th Cir. 2008) .........................................................24, 25

*Hinerman v. Daily Gazette Co.,*
423 S.E.2d 560 (W. Va. 1992)...................................................41, 87, 88

*Hoffman v. Washington Post Co.,*
433 F. Supp. 600 (D.D.C. 1977).........................................................75

*Hopkins v. Keith,*
348 So. 2d 999 (La. Ct. App. 1977)....................................................19

*Horne v. WTVR, LLC,*
893 F.3d 201 (4th Cir. 2018) ...............................................................29

*Hovey v. Iowa State Daily Publication Board,*
372 N.W.2d 253 (Iowa 1985) ..............................................................21

*Hugger v. Rutherford Institute,*
94 F. App'x 162 (4th Cir. 2004) .........................................................24

*Hustler Magazine, Inc. v. Falwell,*
485 U.S. 46 (1988) ...............................................................................89

*In re Grand Jury Subpoena,*
870 F.3d 312 (4th Cir. 2017) ..............................................................85

*Ivey v. First Citizens Bank & Trust Co.,*
848 F.3d 205 (4th Cir. 2017) ..............................................................16

*Jankovic v. International Crisis Group,*
822 F.3d 576 (D.C. Cir. 2016) ...........................................................26

*Karpel v. Inova Health System Services,*
134 F.3d 1222 (4th Cir. 1998) ............................................................75

*Lawrence v. Altice USA,*
841 F. App'x 273 (2d Cir. 2021) .........................................................20

*Lawrence v. Hearst Communications, Inc.,*
2022 WL 894716 (2d Cir. Mar. 28, 2022) .........................................20

*Lee v. TMZ Productions Inc.,*
710 F. App'x 551 (3d Cir. 2017) .........................................................26

*Levesque v. Doocy,*
560 F.3d 82 (1st Cir. 2009) .................................................................26

*Long v. Egnor,*
346 S.E.2d 778 (W. Va. 1986) ............................................................87

*Marcone v. Penthouse International Magazine for Men,*
754 F.2d 1072 (3d Cir. 1985) .............................................................73

*Masson v. New Yorker Magazine, Inc.*,
   501 U.S. 496 (1991) ..................................................*passim*

*Masson v. New Yorker Magazine, Inc.*,
   832 F. Supp. 1350 (N.D. Cal. 1993).................................................67

*Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ..................................................................52

*Matter of Callaghan*,
   796 S.E.2d 604 (W. Va. 2017)...................................................23

*Mimms v. CVS Pharmacy, Inc.*,
   889 F.3d 865 (7th Cir. 2018) ...........................................43, 56, 62

*Monitor Patriot Co. v. Roy*,
   401 U.S. 265 (1971) ....................................................................2

*Nanji v. National Geographic Society*,
   403 F. Supp. 2d 425 (D. Md. 2005)...........................................12, 19

*Nelson Auto Center, Inc. v. Multimedia Holdings Corp.*,
   951 F.3d 952 (8th Cir. 2020) ...................................................73, 81

*New York Times Co. v. Sullivan*,
   376 U.S. 254 (1964) ..................................................*passim*

*Nunes v. WP Co.*,
   513 F. Supp. 1 (D.D.C. 2020).......................................................65

*Palin v. New York Times Co.*,
   940 F.3d 804 (2d Cir. 2019) ........................................................74

*Payne v. Taslimi*,
   998 F.3d 648 (4th Cir. 2021) .......................................................85

*PBM Products, LLC v. Mead Johnson & Co.*,
   639 F.3d 111 (4th Cir. 2011) .......................................................21

*Pippen v. NBCUniversal Media, LLC*,
   734 F.3d 610 (7th Cir. 2013) ...........................................29, 63, 71, 81

*Pritt v. RNC,*
557 S.E.2d 853 (W. Va. 2001)................................................17, 18

*Reuber v. Food Chemical News, Inc.,*
925 F.2d 703 (4th Cir. 1991) ......................................*passim*

*Rouch v. Enquirer & News,*
487 N.W.2d 205 (Mich. 1992).................................................20

*Russin v. Wesson,*
949 A.2d 1019 (Vt. 2008)..........................................................20

*Ryan v. Brooks,*
634 F.2d 726 (4th Cir. 1980) ......................................*passim*

*Secord v. Cockburn,*
747 F. Supp. 779 (D.D.C. 1990)............................................67

*Simonson v. United Press International,*
654 F.2d 478 (7th Cir. 1981) ................................................20

*Smith v. A Pocono Country Place Property Owners Association,*
686 F. Supp. 1053 (M.D. Pa. 1987)......................................31

*Sprouse v. Clay Communication, Inc.,*
211 S.E.2d 674 (W. Va. 1975)........................................15, 87

*St. Amant v. Thompson,*
390 U.S. 727 (1968) .....................................................*passim*

*Sylvia Development Corp. v. Calvert County,*
48 F.3d 810 (4th Cir. 1995) ..................................................52

*Tah v. Global Witness Publishing, Inc.,*
991 F.3d 231 (D.C. Cir. 2021) ..............................................24

*Tavoulareas v. Piro,*
817 F.2d 762 (D.C. Cir. 1987) (en banc) ..........................26

*Tennessee v. Garner,*
471 U.S. 1 (1985)......................................................................18

*Thomas v. Holly,*
  533 F. App'x 208 (4th Cir. 2013) ..................................................28

*Timpson v. Anderson County Disabilities & Special Needs Board,*
  31 F.4th 238 (4th Cir. 2022) ......................................................83

*Tucker v. Fischbein,*
  237 F.3d 275 (3d Cir. 2001) ........................................................27

*Uncork & Create LLC v. Cincinnati Insurance Co.,*
  27 F.4th 926 (4th Cir. 2022) .......................................................49

*United States v. Blankenship,*
  19 F.4th 685 (4th Cir. 2021) .........................................................6

*United States v. Blankenship,*
  2015 WL 1565675 (S.D.W. Va. Apr. 8, 2015) ..................................86

*United States v. Blankenship,*
  846 F.3d 663 (4th Cir. 2017) ....................................................5, 6

*United States v. Diaz,*
  865 F.3d 168 (4th Cir. 2017) .......................................................83

*Zerangue v. TSP Newspapers, Inc.,*
  814 F.2d 1066 (5th Cir. 1987) ............................................31, 74, 75

## Statutes

28 U.S.C. § 3559(a) ....................................................................18

## Other Authorities

4 Jonathan Elliot, Debates on the Federal Constitution (1861)....................86

Wayne R. LaFave et al., 1 Criminal Procedure (4th ed. 2018)....................19

**STATEMENT OF THE ISSUES**

1.      Should the district court's grant of summary judgment be affirmed on the ground that plaintiff failed to meet his burden of establishing, as to each defendant, that he could prove actual malice under *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), by clear and convincing evidence?

2.      Should the district court's grant of summary judgment be affirmed on the alternative ground that referring to plaintiff as a "felon" was substantially true given plaintiff's conviction and one-year prison sentence for what the sentencing judge expressly found to be a "serious crime"?

3.      Should the district court's grant of summary judgment be affirmed on the alternative ground that plaintiff failed to establish that the fleeting references to him as a felon were "intended to injure" him, as separately required under West Virginia law?

**STATEMENT OF THE CASE**

In these consolidated cases, Don Blankenship complained that he was defamed by passing references to him as a "felon" in articles and commentary discussing his 2018 candidacy for the United States Senate.  Blankenship had been convicted of conspiracy to commit federal mine safety violations, and served a year in prison, following an explosion that killed 29 miners.  At his sentencing, the trial judge found that Blankenship had run a "pervasive[],"

1

"dangerous conspiracy" that "flout[ed] … safety and health standards" and created a "risk of … death … every single day for employees in the mines." JA3324; JA3377; JA3379.  His offense was classified in the U.S. Code as a misdemeanor, because it was punishable by no more than a year in prison—the sentence that he received.  But it was, as the sentencing judge said, a "serious crime."  JA3379.

As a Senate candidate and conceded public figure, Blankenship was required to prove actual malice under *New York Times v. Sullivan*.  Indeed, as the Supreme Court repeatedly has reaffirmed, the actual malice standard "has its fullest and most urgent application precisely to the conduct of campaigns for political office."  *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272 (1971).  In three comprehensive opinions spanning 171 pages, the district court (Copenhaver, J.) evaluated the factual record as to each defendant and correctly concluded that there was no evidence from which a reasonable jury could find actual malice as to any of them by clear and convincing evidence—the demanding standard required by the First Amendment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).  The record established that in each instance the reference to Blankenship as a felon was, at most, an honest

mistake reflecting the speaker's understanding that Blankenship had been convicted of a serious crime and sentenced to a substantial prison term.

In fact, although the references to Blankenship as a felon may have been legally imprecise as a technical matter, they were substantially accurate. The term "felon" is commonly understood to mean someone who committed a "serious crime"—just what the sentencing judge called the offense of which Blankenship was convicted. And in many jurisdictions, an offense punishable by a year in prison—Blankenship's sentence—is legally classified as a felony. Blankenship simply cannot show that "the substance, the gist, the sting" of the reports here, *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 516-17 (1991), would have been any different if the defendants had called him "a convicted criminal who had served a year in federal prison for a serious crime." The challenged statements here were not, therefore, materially false.

Blankenship does not address substantial truth in his brief. Instead, he focuses exclusively on actual malice, arguing that the experienced district judge drew improper inferences in defendants' favor, made credibility determinations, and viewed "circumstantial" evidence in isolation. But these are the same arguments that public-figure plaintiffs invariably make in libel cases, and they are no more persuasive here than in the countless cases in

which those arguments have been rejected. Indeed, those arguments are even less persuasive here, because they rest on a distortion of the undisputed factual record.

Actual malice requires a plaintiff to produce affirmative evidence that the defendant knew that his publication was false, or that he published it with "a high degree of awareness of … probable falsity." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989) (quoting *Garrison v. Louisiana*, 379 U.S. 64, 74 (1954)). Establishing such proof is "no easy task," *CACI Premier Tech., Inc. v. Rhodes*, 536 F.3d 280, 293 (4th Cir. 2008), and Blankenship did not come close to meeting his burden here, as explained so carefully by the district court.

Unable to satisfy the demanding actual malice standard, Blankenship devotes the final section of his brief to arguing that *New York Times v. Sullivan* should be overruled. But that argument, itself without merit, only confirms his inability to prevail under the law as it is.

## A. Blankenship's Conviction

Blankenship was the Chairman and CEO of Massey Energy Company when, on April 5, 2010, an explosion at Massey's Upper Big Branch Mine killed 29 miners. JA0112-0113. By his own admission, Blankenship thereafter

4

became the "face" of the country's worst mining disaster in 40 years.  JA1212-1213; JA1259.

In the wake of the tragedy, a federal grand jury indicted Blankenship on multiple charges.  JA0139 ¶ 141; *United States v. Blankenship*, 846 F.3d 663, 667 (4th Cir.), *cert. denied*, 138 S. Ct. 315 (2017).  As Blankenship himself argued in his criminal case, his 2015 criminal trial was seen by the public "as the equivalent of a murder or manslaughter trial."  JA1160.  Following the six-week trial, a jury convicted Blankenship of conspiracy to willfully violate federal mine safety laws and regulations.  *Blankenship*, 846 F.3d at 667.  The evidence showed that he "was aware of [safety] violations at the Upper Big Branch mine in the years leading up to the accident," yet pressed forward because it was "cheaper to break the safety laws and pay the fines than to spend what would be necessary to follow the safety laws."  *Id.*

On April 6, 2016, the district court sentenced Blankenship to the maximum permitted by law:  one-year imprisonment and a $250,000 fine.  *Id.*; JA0308.  Blankenship, the court found, had participated in "a dangerous conspiracy" and had committed a "serious crime."  JA3377-3379.  The court found that Blankenship put "profitability of the company ahead of the safety of [his] employees" and, in doing so, "created a culture of noncompliance at

Upper Big Branch where [his] subordinates accepted and, in fact, encouraged unsafe working conditions in order to reach profitability and production targets." JA3376.

This Court affirmed Blankenship's conviction, *Blankenship*, 846 F.3d at 666, and later affirmed the denial of his petition for habeas relief, *United States v. Blankenship*, 19 F.4th 685 (4th Cir. 2021). Blankenship served his year of imprisonment at the Taft Correctional Institution in California—which he (and prison guards) regarded and referred to as "a felony prison." JA1224-1228. Of its 2,400 inmates, he was the only one convicted of a misdemeanor. JA1224; JA0140 ¶ 144.

## B.    Blankenship's Candidacy for U.S. Senate

Mere months after emerging from prison—while still on probation—Blankenship announced plans to run in the 2018 West Virginia Republican primary for the Senate seat held by Democrat Joe Manchin. JA0114 ¶ 13; JA1872. Blankenship admitted that his candidacy was a "long shot" and told supporters that he did "not think [he] can win." JA1870-1871; JA1309.

The primary pitted Blankenship against two well-known opponents, Congressman Evan Jenkins and West Virginia Attorney General Patrick Morrisey. JA1249. Blankenship ran a divisive campaign. He dubbed then-

Senate Majority Leader Mitch McConnell "Cocaine Mitch" and used phrases such as "China Family" and "China person" to refer to Senator McConnell's wife's family—references that Blankenship admits were widely criticized as racist. JA1314-1318; JA1424. Prominent national Republicans spoke out against him, endorsing his opponents and telling voters that nominating Blankenship could derail the GOP's chances of defeating Senator Manchin. JA1879-1881. A political action committee associated with Senator McConnell spent more than $1 million airing ads attacking Blankenship. JA1882. Families of miners who perished in the Upper Big Branch tragedy spoke out against him. JA1873-1874. Blankenship's opponents also repeatedly attacked him. JA1883.

By April 25, less than two weeks before the May 8 primary, Blankenship had confessed to his campaign manager that "[t]he chances of our winning are next to nil." JA1991. Then, in the final days leading up to the election, both President Trump (whom Blankenship likened to a "King" politically in West Virginia) and his son, Donald Trump, Jr. (whom Blankenship recognizes had "considerable influence with the West Virginia voters likely to cast ballots in the May 8th Primary"), urged West Virginia Republicans to vote against Blankenship. JA1319; JA1361; JA1363. President Trump tweeted that

Blankenship "can't win the General Election…No way! … Vote Rep. Jenkins or A.G. Morrisey!" JA1363.

On primary night, Blankenship conceded he had lost "badly" (placing third by 15 points) and told supporters if there was "any single factor" that caused his loss, it was President Trump's tweet. JA1949-1950. In the month that followed, he repeatedly attributed his loss to President Trump, asserting that "our buddy Trump did us in." JA1952.[1]

## C. This Lawsuit and Relevant District Court Proceedings

Nonetheless, nearly a year later, Blankenship sued dozens of news organizations, journalists, and commentators for defamation and false-light invasion of privacy, alleging that their references to his conviction were "a material cause of his loss in the Primary." JA0153 ¶ 190; JA0180 ¶ 54. The defendants included a political action committee, television news organizations, newspapers, news websites, and individuals. Some published before the election; some after. The principal claim against all of them was

---

[1] *See also* JA2003 ("I had them beat pre Trump tweet."); JA2005 (same); JA2007 (same); JA2009 ("[Trump] sure stabbed me in the back after his staff promised they would not."); JA2012 ("We would have won had [Trump] stayed out of the Primary.").

that in the course of discussing his candidacy, they had referred to him as a "felon." JA0141-0162; JA0180-0184.[2]

While Blankenship initially sued over 100 defendants, 15 remain in this appeal. Blankenship voluntarily dismissed many of the original defendants. *See* JA0001-0096. The district court dismissed others for lack of personal jurisdiction. *Id.* After the court denied motions to dismiss for failure to state a claim, *id.*, Blankenship filed a separate, nearly-identical action against NBCUniversal, LLC ("NBCU") and CNBC, LLC ("CNBC"). JA0097-0106.[3]

Discovery ensued. Blankenship did not pursue any depositions from most of the defendants. Those who were deposed testified that they believed at the time that their references to his conviction were accurate, as he had been convicted of a serious crime and served a year in federal prison.[4] During his

---

[2] Blankenship also took issue with Judge Andrew Napolitano's remark on Fox that he had gone to jail for "manslaughter," but on appeal he has conceded that this statement was a mere "mistake." Br. 19; *see infra* pp. 34, 36. That part of the claim has now been abandoned.

[3] Although filed separately, that case was litigated in tandem with the original action. The two cases were consolidated by consent for purposes of appeal.

[4] JA0515 (Hayes); JA0533-0534 (Reid); JA1402-1407 (McLaughlin); JA1438-1439 (Lockhart); JA1483-1488 (Cupp); JA2527-2535 (Verhovek); JA3531-3532 (Napolitano); JA3556 (Cavuto).

own deposition, Blankenship conceded, among other things, that he lacked "any evidence of what anybody knew at the time they made the statement." JA1350. He further conceded during discovery that he could not identify *any* individual who thought less of him or did not vote for him because of the reports at issue.[5]

At the conclusion of discovery, all 15 remaining defendants moved for summary judgment. Those defendants, now appellees, were: American Broadcasting Companies, Inc. ("ABC"); Cable News Network, Inc. ("CNN"); Fox News Network, LLC ("FNN"); MSNBC Cable LLC ("MSNBC"); WP Company LLC d/b/a The Washington Post (the "Post"); CNBC; NBCU; Mediaite, LLC and Tamar Auber; FiscalNote, Inc. and Griffin Connolly; HD Media, LLC ("HDM") (the Charleston Gazette); Eli Lehrer; News & Guts, LLC; and a now-defunct political group, 35th PAC.

Defendants argued that the references to Blankenship's conviction were not materially false; that there was no evidence of actual malice; that Blankenship failed to adduce evidence of "intent to injure," as additionally

---

[5] *See* JA1601-1602; JA3601-3603; JA0589-0590; JA2193-2194; JA0347.

required under West Virginia law; and that he could not establish causation or damages.  *See* JA5614-5650; JA5651-5756; JA5757-5784.

On February 2, 2022, the district court issued three opinions granting each of the motions for summary judgment on the issue of actual malice, noting that it "need not address the sufficiency of evidence" on the other grounds, JA5750; JA5781; *see also* JA5687.  In a 106-page opinion that carefully reviewed the arguments and factual record as to ABC, CNN, FNN, MSNBC, the Post, Mediaite and Auber, FiscalNote, HDM, Lehrer, and News & Guts, Judge Copenhaver concluded that Blankenship had failed to adduce evidence from which a jury reasonably could find actual malice by clear and convincing evidence.  JA5651-5756; 2022 WL 321023 (S.D.W. Va. Feb. 2, 2022).[6]  The court issued a separate 37-page opinion finding the same as to Blankenship's claim against 35th PAC, JA5614-5650; 2022 WL 316719 (S.D.W. Va. Feb. 2, 2022), and an additional 28-page opinion finding the same with respect to CNBC and NBCU, JA5757-5784; 2022 WL 329120 (S.D.W. Va. Feb. 2, 2022).

Blankenship appealed.  JA5788; JA5790.

---

[6] The court also granted summary judgment to Connolly, a Roll Call writer, based on the uncontested fact that he "was not involved in publishing the article at issue," JA5678-5679—something Blankenship fails even to address, despite purporting to lodge an appeal as to Connolly.

## SUMMARY OF ARGUMENT

The district court's judgment should be summarily affirmed. As Judge Copenhaver concluded after a thorough examination of the factual record, Blankenship plainly failed to adduce evidence by which a jury could find actual malice by clear and convincing evidence as to any of the defendants. Indeed, Blankenship failed to demonstrate—as a threshold matter—that the fleeting references to him as a felon were materially false. He further failed to establish that any of the defendants intended to injure him, as West Virginia law also requires.

1. Although the district court granted summary judgment on the issue of actual malice, falsity is a threshold issue and is logically addressed first. Blankenship bears the burden of proving *material* falsity. *Ballengee v. CBS Broad., Inc.*, 968 F.3d 344, 351 (4th Cir. 2020). His claim here rests entirely on the assertion that his criminal conviction was legally classified as a misdemeanor. "[A] long line of cases," however, "holds that technical errors in legal nomenclature in reports on matters involving violation of the law are of no legal consequence." *Nanji v. Nat'l Geographic Soc'y*, 403 F. Supp. 2d 425, 432 (D. Md. 2005) (internal quotation marks omitted). The question of material falsity is not one of technical, legal, or literal precision; rather, it turns

12

on "the substance, the gist, the sting" of the words at issue. *Masson*, 501 U.S. at 516-17. "A 'statement is not considered false unless it would have *a different effect on the mind of the reader* from that which the pleaded truth would have produced.'" *Ballengee*, 968 F.3d at 351 (emphasis added) (quoting *Masson*, 501 U.S. at 517). Here, there would have been no "different effect" if, instead of referring to Blankenship as a "felon," the defendants had referred to him as a "convicted criminal" who spent a year in federal prison for a "serious" and "dangerous" crime. JA3377-3379.

The error alleged here was both technical in nature and immaterial in substance. As explained *infra* p.21, a common understanding of a felony is a "serious crime," and that is exactly what the sentencing judge found Blankenship's offense to be. JA3379. Indeed, in many jurisdictions, a crime punishable by a year in prison—Blankenship's sentence—is classified as a felony. And even under federal law, Blankenship's sentence was just one day short of a felony sentence—hardly sufficient to constitute material falsity.

2. As the district court found, there is no evidence of actual malice— that any of the writers and speakers here "in fact entertained serious doubts as to the truth" of their passing references to Blankenship as a felon, *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968), or, stated differently, had "a

13

high degree of awareness of [the] probable falsity" of those references, *Garrison*, 379 U.S. at 74. The evidence at most established an honest mistake, not the kind of "calculated falsehood" that can support a finding of actual malice. *Id.* at 75; *Ryan v. Brooks*, 634 F.2d 726, 733 (4th Cir. 1980).

Actual malice must be proven by "clear and convincing evidence." *Anderson*, 477 U.S. at 256-57. At summary judgment, the question is "whether the plaintiff has proffered sufficient evidence to prove actual malice by clear and convincing evidence." *CACI Premier Tech.*, 536 F.3d at 293. After a year of discovery, Blankenship was not able to cite any such evidence.

All of the writers and speakers testified that they used the word "felon" because they believed it to be true, reflecting their understanding that Blankenship had been convicted of a serious crime—a common understanding of the word. Blankenship could not avoid summary judgment simply by asserting, as he has, that a jury might "disbelieve" the defendant. *Anderson*, 477 U.S. at 256-57. Instead, he was obligated to bring forth "concrete" and "affirmative" evidence of actual malice. *Id.* Blankenship's appellate brief only confirms that there is no such evidence, let alone evidence that could surmount the clear and convincing standard.

14

Blankenship asserts that some of the defendants were biased against him or departed from journalistic standards. But he points to no journalistic standard that was violated; and, in any event, the Supreme Court and this Court have explained repeatedly that actual malice is *not* measured by whether a defendant was negligent or departed from journalistic standards. *See Harte-Hanks*, 491 U.S. at 665; *St. Amant*, 390 U.S. at 731; *CACI Premier Tech.*, 536 F.3d at 300. The Supreme Court and this Court also have rejected the argument that actual malice can be proven by motive or bias. *See Masson*, 501 U.S. at 509-10; *Fairfax v. CBS Corp.*, 2 F.4th 286, 295 (4th Cir. 2021); *Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 716 (4th Cir. 1991).

"[E]stablishing actual malice is no easy task." *CACI Premier Tech.*, 536 F.3d at 293 (quoting *Carr v. Forbes, Inc.*, 259 F.3d 273, 282 (4th Cir. 2001)). It is a "substantial burden," *Baumback v. ABC*, 161 F.3d 1 (Table), 1998 WL 536358, at *7 (4th Cir. Aug. 13, 1998) (per curiam), that Blankenship did not come close to meeting.

3.     Blankenship also failed to adduce evidence sufficient to satisfy the independent requirement of West Virginia law that "the publisher *intended to injure* the plaintiff through the knowing or reckless publication of the alleged libelous material." *Sprouse v. Clay Commc'n, Inc.*, Syl. Pt. 1, 211 S.E.2d 674,

15

679 (W. Va. 1975) (emphasis added). The record is devoid of any evidence that any defendant intended to injure Blankenship by calling him a "felon" rather than, for example, referring to him as a "convicted criminal."

## STANDARD OF REVIEW

This Court reviews a grant of summary judgment *de novo*. *Ballengee*, 968 F.3d at 349. Summary judgment may be affirmed on any ground supported by the record. *Ivey v. First Citizens Bank & Tr. Co.*, 848 F.3d 205, 207 (4th Cir. 2017).

## ARGUMENT

In a case like this, "where the defendant is a member of the press, the plaintiff is a public figure, [and] the subject matter of the supposed libel touches on a matter of public concern," the "constitutional protection of the press reaches its apogee." *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993). Defendants' references to Blankenship's conviction were well within that protection, and the district court's judgment should be affirmed.

## I. The References to Blankenship as a Felon Were Substantially True.

As a threshold matter, judgment for the defendants should be affirmed because it was not materially false to call Blankenship a felon. After 29 people died in a terrible mine explosion, JA0113, Blankenship was convicted of a "serious crime"—and sentenced to a year in prison—based on his participation

16

in "a dangerous conspiracy" to willfully violate federal mine safety standards, JA3377-3379.  Referring to Blankenship as a felon was no more damaging than stating the irrefutable truth—that he is a convicted criminal who served a year in federal prison for a serious crime.

To meet his burden, Blankenship must prove not just a technical inaccuracy, but *material* falsity.  *Ballengee*, 968 F.3d at 351.  Like actual malice, material falsity must be proven by "clear and convincing" evidence. *Pritt v. RNC*, 557 S.E.2d 853, 862 (W. Va. 2001) (cleaned up); *see also DiBella v. Hopkins*, 403 F.3d 102, 111, 114 (2d Cir. 2005) (citing West Virginia law). And that burden of proof must be considered at the summary judgment stage. *See infra* pp. 26-27.  The district court rejected defendants' position on material falsity on their motions to dismiss, but noted in its summary judgment opinion that it "need not address the sufficiency of evidence with respect to" falsity and the other elements of the tort.  JA5750; *see also* JA5687.

In considering material falsity, what matters is "the substance, the gist, the sting" of the words at issue, not their literal or legal precision.  *Masson*, 501 U.S. at 517.  The test is substantial truth:  whether the words "would have *a different effect on the mind of the reader* from that which the pleaded truth would have produced.'"  *Ballengee*, 968 F.3d at 351 (quoting *Masson*, 501 U.S.

at 517) (emphasis added).  Viewed any number of ways, Blankenship has failed to establish that there was clear and convincing evidence of material falsity here.  *Anderson*, 477 U.S. at 252.[7]

1.      Blankenship argues that it was false to call him a felon because, under 28 U.S.C. § 3559(a), his crime is classified as a misdemeanor.  As an initial matter, however, the distinction between felonies and misdemeanors "is minor and often arbitrary," *Tennessee v. Garner*, 471 U.S. 1, 14 (1985), as this case amply demonstrates.

Different jurisdictions define "felony" differently.  Under federal law, a crime is classified as a felony if it carries a prison sentence of 366 days or more.  *See* 18 U.S.C. § 3559(a)(5).  Because Blankenship's crime carried a maximum sentence of 365 days—the sentence that he received—it is classified as a Class A misdemeanor.  *Id.* § 3559(a)(6).  Thus, under federal law, Blankenship was *one day* short of being a felon.  Under state law, the result would be mixed.  Although "roughly half of the states classify as felonies all offenses punishable by a term of imprisonment of more than one year," others "classify as a felony

---

[7] To the extent Blankenship's brief mentions the material falsity element at all, he confuses it with the doctrine of defamation per se.  Br. 9 n.3.  Whether a statement constitutes libel "per se" relates to the element of *defamatory meaning*, not falsity.  *See Pritt*, 557 S.E.2d at 857 n.4.

any offense punishable by death or imprisonment in a state penitentiary." Wayne R. LaFave et al., 1 Criminal Procedure § 1.8(c) (4th ed. 2018). In those states, an offense like Blankenship's would be a felony. Other states "do[] not utilize a misdemeanor/felony distinction" at all. *Id.* In short, there is no single, universal definition of a felony. And only under the narrowest of *legal* definitions would the term "felony" be inapplicable to a crime punishable by the prison sentence that Blankenship received.

2.      More fundamentally, in a defamation case, words are not to be taken in their "narrow, legalistic sense." *CACI Premier Tech.*, 536 F.3d at 297. Instead, it is well-established that "technical errors in legal nomenclature in reports on matters involving violation of the law"—the kind of errors alleged here—do not rise to the level of material falsity. *Nanji*, 403 F. Supp. 2d at 432-33 (collecting cases).[8]

---

[8] *See also, e.g.*, *Brewer v. Dungan*, 1993 WL 441306, at *1 (N.C. Super. Ct. June 30, 1993) (no added "sting" in calling misdemeanor aggravated assault "felony assault"); *Dostert v. Wash. Post*, 531 F. Supp. 165 (N.D.W. Va. 1982) (headline characterizing entry of "nolo contendere" plea as "guilty" is substantially true); *Hopkins v. Keith*, 348 So. 2d 999, 1002 (La. Ct. App. 1977) (considering phrase "convicted gambler" and observing that "some errors and inaccuracies are bound to occur in the use of technical terms," but "[t]he error should be a significant variation from the truth to give rise to liability").

In evaluating material falsity, courts examine the gist of a statement "by reference to the meaning a statement conveys to a reasonable reader." *Masson*, 501 U.S. at 515. "[I]t is irrelevant whether trained lawyers or judges might with the luxury of time have chosen more precise words." *Air Wis. Airlines Corp. v. Hoeper*, 571 U.S. 237, 255 (2014). Thus, for instance, the Tenth Circuit held that describing conduct as "kidnapping" was substantially true when it reflected "common usage" and "the popular sense of the word," even if legally incorrect. *Anderson v. Cramlet*, 789 F.2d 840, 844 (10th Cir. 1986) ("the meaning of an allegedly defamatory statement is not determined by legal research, but 'by the plain and ordinary meaning of the word'"); *see also Lawrence v. Altice USA*, 841 F. App'x 273, 275-76 (2d Cir. 2021) (summary order) ("A media defendant's characterization of criminal allegations … is substantially true if the characterization comports with the common understanding of the terms employed"), *cert. denied*, 142 S. Ct. 487 (2021).[9]

---

[9] *See also, e.g.*, *Rouch v. Enquirer & News*, 487 N.W.2d 205, 216-17 (Mich. 1992) ("[I]f technical and common parlance yield different interpretations of the same word, the constitutionally required breathing space affords protection of the writer's choice."); *Lawrence v. Hearst Commc'ns, Inc.*, 2022 WL 894716, at *3 (2d Cir. Mar. 28, 2022) (looking to dictionary, not legal understanding of "harassment"); *Russin v. Wesson*, 949 A.2d 1019, 1022 (Vt. 2008) ("theft" accusation was substantially true because term is "broadly defined in lay usage"); *Simonson v. United Press Int'l*, 654 F.2d 478, 481 (7th

A common understanding of the word "felon" to a layperson is "a person who is guilty of a serious crime." *Felon, Cambridge Dictionary* (2022), https://bit.ly/3JClvBr; *see also* JA1585 (Merriam-Webster Thesaurus: "a person who has committed a serious crime"); JA1591 (Collins English Thesaurus: "a person who committed a serious crime"); JA1598 (Webster's New World College Dictionary: "a person guilty of a major crime; criminal").[10] There is no question that Blankenship meets that common understanding of the term. The sentencing judge expressly found that Blankenship had been convicted of a "serious crime," JA3379, based on his "very serious" conduct, JA3380, and participation in "a dangerous conspiracy," JA3377.[11]

3. Ultimately, there would have been no "different effect on the mind of the reader," *Masson*, 501 U.S. at 517, if instead of referring to Blankenship

---

Cir. 1981) (describing "sexual abuse" as "rape" conformed with "common usage"); *Hovey v. Iowa State Daily Publ'n Bd.*, 372 N.W.2d 253, 256 (Iowa 1985) (similar).

[10] This Court should consider the "range" of a term's common meaning, not only the strict definition supplied by the U.S. Code. *CACI Premier Tech.*, 536 F.3d at 297 (looking to the "broader sense" of "torture"); *see also PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 119 (4th Cir. 2011) (considering broader definitions included among those for "lie").

[11] Thus, to the extent that the "felon" label itself "carries some serious implications of criminality," *Arpaio v. Zucker*, 414 F. Supp. 3d 84, 91 (D.D.C. 2019), that is true as to Blankenship.

as a "felon," defendants had called him a "convicted criminal"—or, more fully, a "convicted criminal who served a year in prison for a 'very serious' crime involving a 'dangerous conspiracy' to willfully violate federal mine safety standards." JA1224; JA3377; JA3380. Blankenship produced *no evidence*— much less clear and convincing evidence—that such an alternative, precisely accurate description would have had any different effect on a reader or viewer than the single word of which he complains.

Indeed, as Blankenship himself has said, "'conspiring to willfully commit mine safety violations[]' *sounds horrible*." JA1220 (emphasis added). During this litigation, he has argued that a "reasonable reader" who read that he had "spent a year in jail after a mine explosion killed 29 workers" would think that a subsequent reference to "felons" in the same article referred to him—in other words, saying that someone "spent a year in jail" suggests one is a "felon." JA2254. And, of course, Blankenship has himself referred to serving his sentence at a federal "felony prison." JA1224.[12]

---

[12] *See also, e.g.*, *Bustos v. A&E TV Networks*, 646 F.3d 762, 765 (10th Cir. 2011) (Gorsuch, J.) ("[T]he alleged misstatement must be likely to cause reasonable people to think 'significantly less favorably' about the plaintiff than they would if they knew the truth; a misstatement is not actionable if the comparative harm to the plaintiff's reputation is real but only modest.").

This Court's recent decision under West Virginia law in *Ballengee*, 968 F.3d 344, is instructive. There, a journalist covering prescription opiate abuse stated that a pharmacist "admit[ted] to filling 150 *pain pill prescriptions* daily for one clinic alone." *Id.* at 350 (emphasis added). In fact, the pharmacist had admitted only to filling 150 *prescriptions* daily, with most but not all being for pain medication. *Id.* Despite the "literal[]" inaccuracy, this Court had no difficulty concluding that the journalist's statement was "'substantially' true in overall effect." *Id.* (quoting *Matter of Callaghan*, 796 S.E.2d 604, 627 (W. Va. 2017)). After all, "[t]he substance, gist, or sting" was true—the pharmacist "had admitted to filling a high volume of pain prescriptions daily." *Id.*[13]

These well-settled principles require affirmance in this case. There is simply no evidence in the record that the passing, one-word references to "felon" at issue here "ha[d] a different effect on the mind of the reader" or viewer than the undisputed truth would have had. *Masson*, 501 U.S. at 517.

---

[13] *See also, e.g.*, *Anderson v. Stanco Sports Library, Inc.*, 542 F.2d 638, 641 (4th Cir. 1976) (calling the plaintiff a "high ranking" member of the Mafia not defamatory when he admitted to being a member).

## II. There Is No Evidence Upon Which a Reasonable Jury Could Find Actual Malice by Clear and Convincing Proof.

Even if the word "felon" is deemed materially false here, the judgment should be affirmed because, as the district court ruled, Blankenship failed to raise a triable issue of actual malice. The actual malice standard is "famously daunting," *Tah v. Glob. Witness Publ'g, Inc.*, 991 F.3d 231, 240 (D.C. Cir.), *cert denied*, 142 S. Ct. 427 (2021), and cannot be met here.

In his brief, Blankenship largely ignores how the actual malice standard has been applied at summary judgment—particularly in light of the "clear and convincing" burden of proof. Indeed, it is telling that in his 85-page brief, Blankenship includes only *one* citation to a Fourth Circuit case applying the actual malice standard—a case in which the court ruled *for the defendant* and reaffirmed the long-settled principles that have defined the standard for decades, *Reuber*, 925 F.2d 703. Courts frequently grant summary judgment in public-figure libel cases.[14] And the district court was correct in doing so here for all the reasons explained in its comprehensive opinions.

---

[14] *E.g.*, *CACI Premier Tech.*, 536 F.3d at 293; *Hatfill v. N.Y. Times Co.*, 532 F.3d 312 (4th Cir. 2008); *Hugger v. Rutherford Inst.*, 94 F. App'x 162 (4th Cir. 2004) (per curiam); *Carr*, 259 F.3d at 283; *Baumback*, 1998 WL 536358 at *7.

**A. The Actual Malice Standard Demands Affirmative, Concrete Evidence at the Summary Judgment Stage.**

**1. The Actual Malice Standard**

The actual malice standard is a "subjective" one that focuses on state of mind. *Harte-Hanks*, 491 U.S. at 688; *Fairfax*, 2 F.4th at 293. The plaintiff must establish that the author uttered a knowing falsehood or, at a minimum, "*in fact* entertained serious doubts as to the truth of his publication" and published it anyway. *St. Amant*, 390 U.S. at 731 (emphasis added); *Fairfax*, 2 F.4th at 293. "[T]here must be sufficient evidence to permit the conclusion that the defendant actually had a 'high degree of awareness … of probable falsity.'" *Harte-Hanks*, 491 U.S. at 688 (second alteration in original) (quoting *Garrison*, 379 U.S. at 74). In other words, the conduct must "approach[ ] the level of publishing a knowing, calculated falsehood." *Ryan*, 634 F.2d at 733.

Because it is a subjective standard, reckless disregard is "*not* measured by whether a reasonably prudent man would have published, or would have investigated before publishing." *St. Amant*, 390 U.S. at 731 (emphasis added); *Hatfill v. N.Y. Times Co.*, 532 F.3d 312, 325 (4th Cir. 2008) ("Constitutional malice requires 'much more than a failure to exercise ordinary care.'" (quoting *Ryan*, 634 F.2d at 732)); *Cannon v. Peck*, 36 F.4th 547, 572 (4th Cir. 2022)

("negligence is not enough"); *Harte-Hanks*, 491 U.S. at 688 ("failure to investigate … is not sufficient").[15]

## 2. The "Clear and Convincing" Burden of Proof

Actual malice must be proven by "clear and convincing" evidence. *Anderson*, 477 U.S. at 257. That standard is "significantly more onerous than the usual preponderance of the evidence standard." *Tavoulareas v. Piro*, 817 F.2d 762, 776 (D.C. Cir. 1987) (en banc). To prove actual malice under the clear and convincing standard, the evidence must "instantly tilt[] the evidentiary scales in the affirmative when weighed against the evidence [the defendant] offered in opposition." *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984). It must lead to an "abiding conviction" that the plaintiff's claim of actual malice is "highly probable." *See Cannon*, 36 F.4th at 573 (holding that "some

---

[15] *See also, e.g.*, *Ryan*, 634 F.2d at 733 (although verifying accuracy of secondary sources would be "better journalistic practice," court "cannot say that the failure to do so amounted to more than mere negligence"); *Levesque v. Doocy*, 560 F.3d 82, 90-91 (1st Cir. 2009) (although "more deliberate consideration" of a document "should have caused reasonable skepticism," defendants' carelessness in relying on it "is an indication of negligence, not actual malice"); *Lee v. TMZ Productions Inc.*, 710 F. App'x 551, 560 (3d Cir. 2017) ("[a] mere lack of professionalism will not suffice. '[T]he actual-malice test will shield careless acts of publication that would be considered irresponsible by common journalistic standards.'"); *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 595 (D.C. Cir. 2016) ("mere sloppy journalism" does not suffice).

evidence" of reckless disregard was "insufficient evidence to support a finding, *by clear and convincing evidence*").

This heightened standard applies at the summary judgment stage. "[A] court ruling on a motion for summary judgment must be guided by the *New York Times* 'clear and convincing' evidentiary standard in determining whether a genuine issue of actual malice exists." *Anderson*, 477 U.S. at 257. The plaintiff must present "affirmative evidence" that would enable a "reasonable jury" to find actual malice by clear and convincing proof. *Id.* at 255.[16]   "[M]ere allegations and denials" do not suffice; rather, "concrete evidence" is required. *Id.* at 256; *see also Tucker v. Fischbein*, 237 F.3d 275, 285-86 (3d Cir. 2001) (Alito, J.) (affirming summary judgment where there was "some evidence from which a reasonable jury could infer actual malice, but not the clear and convincing evidence needed to survive summary judgment").

### 3.    Blankenship's Actual Malice Arguments

This Court and others have ruled repeatedly that arguments of the sort Blankenship makes fail to create a triable issue of actual malice.

---

[16] "This is true," the Supreme Court has explained, "even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity to conduct discovery"—as Blankenship indisputably had here. *Anderson*, 477 U.S. at 257.

a.     Blankenship asserts that a jury could disbelieve the defendants' testimony that they believed their statements were true and, thus, that the district court made improper "credibility" determinations.  Br. 12-14.  But the Supreme Court has emphasized that the obligation to present concrete evidence of actual malice is *not* satisfied "by merely asserting that the jury might, and legally could, disbelieve the defendant's denial of a conspiracy or of legal malice."  *Anderson*, 477 U.S. at 256; *see also, e.g.*, *id.* at 256-57 (holding that even "'discredited testimony is not [normally] considered a sufficient basis for drawing a contrary conclusion'" (alteration in original) (quoting *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 512 (1984))); *Thomas v. Holly*, 533 F. App'x 208, 221 (4th Cir. 2013).

The district court here did not improperly determine credibility by choosing between two competing versions of events and blindly "accept[ing] self-serving statements."  Br. 14.  The court simply held Blankenship to the requirement that he bring forward "concrete" and "affirmative" evidence sufficient to demonstrate actual malice by clear and convincing proof.  JA5692-5695; *Anderson*, 477 U.S. at 256-57.  The court carefully evaluated the factual record as to each defendant, finding that Blankenship failed to meet his burden.

b.      Blankenship asserts that the defendants violated "journalistic standards" and internal policies. *See, e.g.*, Br. 33, 40, 56, 59. But nowhere does his brief cite a specific journalistic standard that any defendant purportedly violated. And, in any event, it is well-settled that "actual malice cannot be established merely by showing a departure from accepted journalistic or professional practices." *Church of Scientology Int'l v. Daniels*, 992 F.2d 1329, 1334 (4th Cir. 1993). Even an "*extreme departure*" from such standards is constitutionally insufficient. *Harte-Hanks*, 491 U.S. at 665 (emphasis added); *see also, e.g.*, *Reuber*, 925 F.2d at 711-12.

c.      Blankenship argues that some defendants "fail[ed] to correct" their references to him as a felon. *See* Br. 30, 49. But "actual malice cannot be inferred from a publisher's failure to retract a statement once it learns it to be false." *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013). As this Court has emphasized, "the actual malice standard requires that the defendant had a particular, subjective state of mind *at the time the statements were made*." *Fairfax*, 2 F.4th at 295 (emphasis added) (quoting *Horne v. WTVR, LLC*, 893 F.3d 201, 211 (4th Cir. 2018)); *see also Cannon*, 36 F.4th at 572-73. Accordingly, "post-publication conduct," including an "alleged refusal to correct or retract," is insufficient to create a triable issue of actual

malice. *Fairfax*, 2 F.4th at 295. And here, Blankenship did not even request a correction from most defendants.

d. Blankenship argues that some speakers who criticized his candidacy had "animus" toward him or a "motive" to defame him. *See, e.g.*, Br. 36, 48, 56. But here, too, this Court has held that an allegation of motive "does not support an inference that [the defendant] seriously doubted the truth." *Fairfax*, 2 F.4th at 295; *see also Reuber*, 925 F.2d at 716 ("[M]any publications set out to portray a particular viewpoint or even to advance a partisan cause. Defamation judgments do not exist to police their objectivity."). As the Supreme Court has instructed, even "motive arising from spite or ill will"—such as speaking out of "hatred"—is categorically distinct from constitutional actual malice. *Masson*, 501 U.S. at 509-10; *see Garrison*, 379 U.S. at 73, 78; *Harte-Hanks*, 491 U.S. at 666-67. After all, the actual malice standard was adopted "against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that *it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials.*" *N.Y. Times*, 376 U.S. at 270 (emphasis added).

Notably, Blankenship never acknowledges this Court's decision in *Fairfax*, which rejects many of his arguments. Instead, he relies largely on cases from other Circuits that are critically different from this case because they involved affirmative evidence supporting a finding of actual malice. For example, in *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1072 (5th Cir. 1987), a principal case on which Blankenship relies, the newspaper printed an inaccurate statement a second time, even though the responsible editors "knew" that the newspaper had recently corrected it. The court there, however, *affirmed* summary judgment as to the initial inaccuracy, finding that although the reporter "may have been negligent in relying on his memory to write the story and in failing to investigate further," that was not evidence of actual malice. *Id.* at 1071. Other cases Blankenship cites similarly reiterate the fundamental points that "[i]t is not enough to show that the publisher made a mistake," *Golden Bear Distrib. Sys. v. Chase Revel, Inc.*, 708 F.2d 944, 950 (5th Cir. 1983), and that "a defendant's failure to verify his facts may constitute negligence, but does not rise to the level of actual malice," *Smith v. A Pocono Country Place Prop. Owners Ass'n*, 686 F. Supp. 1053 (M.D. Pa. 1987).

\* \* \*

In short, there is a world of difference between an "unfortunate choice of words" and a "calculated falsehood." *Ryan*, 634 F.2d at 733; *see also Church of Scientology Int'l*, 992 F.2d at 1334 (no actual malice where statement was "perhaps, in legal terms, not wholly accurate," but where evidence did not "rise[] to the level of deliberate falsification"). That is the fundamental distinction that Blankenship cannot overcome on this appeal.

**B.     There Is No Clear and Convincing Evidence of Actual Malice as to Any Defendant.**

As the district court concluded after an extraordinarily detailed review of the record, there is no evidence sufficient to establish actual malice by clear and convincing proof as to any defendant. Far from viewing the evidence in isolation, as Blankenship contends, the court properly reviewed the evidence as to each defendant in its "entirety." *E.g.*, JA5714; JA5723; JA5732.

It is significant, at the outset, that these defendants were not alone in referring to Blankenship as a felon. Blankenship himself has identified *100 different media outlets or commentators* that used the same word. JA1332-1333. They ranged across the political and viewpoint spectrum, and included TV, print, websites, and social media. That is not at all surprising, given the seriousness of Blankenship's crime and the common understanding of felon to mean "a person who is guilty of a serious crime." *See supra* p.21. That the

32

word was used by so many—and was consistent with common understanding—undermines any suggestion that its use by these defendants was a deliberate falsehood. *See Church of Scientology Int'l*, 992 F.2d at 1334 (holding it was "impossible" to find actual malice "[g]iven the volume of published commentary" consistent with author's statements).

Even Blankenship admits that he "do[esn't] know of anyone that's heard of anyone going to prison for a misdemeanor." JA1231; *see also* JA1739 (Blankenship has "never heard of anyone" going to prison for a year for a misdemeanor, "and I don't know that anyone in the media has"). It defies common sense to suggest that any of these defendants deliberately chose a term they believed to be false, when they could have easily substituted the term "criminal" or described Blankenship's crime as a "serious" one for which he served a year in prison. As explained below, there is no evidence that any of these defendants engaged in any such deliberate falsification.

### 1. Summary Judgment Was Proper as to FNN.

The district court's review of the factual record and its assessment of Blankenship's arguments as to FNN were thorough and unassailably correct. JA5736-5755.

### a. Factual Record

As to FNN, Blankenship originally complained of six statements, by six commentators, which occurred from April 25 through May 9, 2018. JA3407-3410. All were passing references on live television to Blankenship's conviction during political commentary on the West Virginia election. JA3438 (Judge Andrew Napolitano); JA3466 (Neil Cavuto); JA3484 (Bradley Blakeman); JA3485 (John Layfield); JA3507 (Stephanie Hamill); JA3520 (Elizabeth MacDonald). Five of the commentators referred to Blankenship as a "felon," while the sixth (Napolitano) stated that he was convicted of "manslaughter." *Id.* On appeal, Blankenship has conceded that Napolitano's reference was a "mistake," Br. 19, and abandoned his claim that any FNN speaker other than Cavuto acted with actual malice, *see* Br. 27-34.

### i. May 7, 2018 *Cavuto Coast to Coast*

On the May 7 episode of *Cavuto Coast to Coast*, host Cavuto stated:

> The president [is] warning Republicans, you know what, we're going to lose West Virginia if Don Blankenship is allowed to win the primary and he does win the primary. Don Blankenship, of course, is arguing that he's the best qualified for this. Of course, he's a convicted felon.

JA3466. Cavuto believed Blankenship had been convicted of more than just a misdemeanor given the circumstances surrounding his prosecution and his

year-long prison sentence.  JA3550-3551; JA3556-3557.  Cavuto "did not draw the distinction" between a felony and a misdemeanor—what "stood out to [him] was the time [Blankenship] served in federal prison."  JA3551.  In fact, a later on-air discussion specifically confirmed Cavuto's state of mind.  On May 22, both Judge Napolitano and Blankenship appeared with Cavuto on *Your World*, and clarified the prior statements regarding Blankenship's conviction.  After Blankenship complained about the inaccurate references to him as a "felon," Cavuto indicated surprise and confusion that Blankenship's crime could have been a misdemeanor instead of a felony.  JA3552 ("So what are you if you've served time in jail?"); JA3553 ("[T]hat would be a little more than a misdemeanor, right?"); JA3555 ("So just serving a year in jail doesn't make you a convicted felon?").  Cavuto then turned to Napolitano, who explained that Blankenship was technically correct that his crime was not a felony.  *Id.*

### ii.  Statements by Other Commentators

The other four commentators (Blakeman, Layfield, Hamill, MacDonald) who referred to Blankenship as a "felon" on FNN programs provided sworn declarations that they believed their statements to be true at the time they made them.  JA3564 (Blakeman); JA3567 (Layfield); JA3570 (Hamill); JA3573

(MacDonald).  Blankenship adduced no contrary evidence regarding their state of mind.[17]

Blankenship also deposed Napolitano, who testified that when, on April 25, 2018, he referred to Blankenship's crime as "manslaughter," he honestly thought Blankenship had been convicted of manslaughter and believed Blankenship had been convicted of more than a misdemeanor given his lengthy prison sentence.  JA3531-3532; JA3536-3537.

Blankenship, who attended Napolitano's deposition, subsequently testified that Napolitano was "pretty convincing that he made a mistake," JA3228, and now concedes in his brief that Napolitano's statement was a "mistake," Br. 19.  The record reflects that, after Blankenship's campaign complained about Napolitano's error and Napolitano had reviewed materials showing that Blankenship had not been convicted of manslaughter and his crime was technically a misdemeanor, JA3576 (email to Napolitano), Napolitano immediately expressed regret for "mistakenly misstat[ing] the nature of [Blankenship's] conviction," JA3578.  Napolitano also sought to

---

[17] Blankenship declined to depose any of these four commentators and never attempted to point to evidence contradicting their sworn declarations.

"correct the record" and "address the complex legal issues around Don Blankenship," JA3581-3592 (emails to FNN producers). Thereafter, as noted above, Napolitano appeared on *Your World* and clarified that Blankenship's conviction had been for a misdemeanor. JA3554-3555.

### iii. May 6-7, 2018 Email Exchange

Many Republicans publicly opposed Blankenship's campaign. One week before the primary, a *Politico* article explained: "Many [Republicans] are convinced that a Blankenship win … would destroy the party's prospects of defeating Democratic Sen. Joe Manchin in November" given the mine explosion, Blankenship's year-long prison sentence, and his "racially charged" ads against Mitch McConnell and his family. JA4277-4280. A link to that article was emailed to Fox News's then-CEO Rupert Murdoch, JA4050, who then, on May 6, emailed Fox News executives Suzanne Scott and Jay Wallace, stating: "Both Trump and McConnell appealing for help to beat unelectable former mine owner who served time. Anything during the day helpful but Sean and Laura dumping on him hard might save the day." JA4052.

Notably, neither the May 6 email nor the single reply message (from Wallace the next morning) ever referred to Blankenship as a felon, and no one suggested the term should be used to describe Blankenship. JA4052;

JA4054.[18]  In any event, Murdoch, Scott, and Wallace each testified that they did not relay any of that email exchange, or its substance, to any of the speakers or anyone else at FNN.  JA4047 ¶¶ 2-3; JA4057 ¶¶ 6-7; JA4063 ¶ 6.  As the district court explained, the evidence indicates the message was never communicated to any of the speakers at issue here.  JA5738.

### b. Blankenship Failed to Present Evidence of Actual Malice.

No reasonable jury could conclude that Blankenship produced evidence of actual malice sufficient to satisfy the clear and convincing evidence standard.  Indeed, Blankenship conceded at his deposition that he had no evidence that any of the FNN commentators knew their statements were false when made.[19]

---

[18] Wallace responded by observing "After a tweet free weekend, he's back to tee up WV" and passing along the tweet from President Trump ("To the great people of West Virginia … Don Blankenship, currently running for Senate, can't win the General Election in your State...No way! Remember Alabama. Vote Rep. Jenkins or A.G. Morrisey!").  JA4054.

[19] JA3227 ("I have no evidence that [Napolitano] knew …."); JA3231 (Cavuto) ("Yeah, I don't have any evidence of what anybody knew at the time they made the statement."); JA3233 (Layfield) ("I don't think I have evidence that any of them knew about it beforehand."); JA3234 (Blakeman, Hamill, MacDonald) ("I don't have the evidence.").  To the extent Blankenship argues he was unaware of the May 6-7 email exchange at the time of his deposition, that exchange does not constitute evidence of actual malice for the reasons discussed below.  *See infra* pp. 44-45.

On appeal, Blankenship rehashes a subset of the arguments that were properly rejected by the district court. In claiming that just one of the six FNN speakers—Cavuto—acted with actual malice, he has waived any argument as to the others. *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 604 n.4 (4th Cir. 2010). And, as the district court correctly held, Blankenship's evidence concerning Cavuto falls well short of the standard needed to withstand summary judgment. JA5739-5745.

1.      Focusing solely on Cavuto in his appeal, Blankenship makes three arguments that the district court correctly rejected.

First, Blankenship points to the word "misdemeanor" buried in a ten-page packet Cavuto received, and the fact that one reporter on Cavuto's show previously had used that term in passing. Br. 30-31. But as the district court correctly reasoned, these "meager references"—"of which Mr. Blankenship has failed to establish that Mr. Cavuto was even cognizant"—fall far short of clear and convincing evidence of actual malice. JA5739-5740. A reasonable jury could not find that these passing references "instantly tilted" the "evidentiary scales" towards Blankenship, providing an "abiding conviction" that Cavuto knew his later statement was false, or probably false. *Colorado,*

467 U.S. at 316. That is especially true given the uncontradicted evidence of Cavuto's surprise when he later learned of his mistake. *See supra* p.35.

The dense, ten-page packet that Cavuto received addressed three primary races. It referred to Blankenship's conviction once as a misdemeanor, JA3639, but, as the district court explained, that word did not appear on "the individual page on Mr. Blankenship." JA3637. Instead, it appeared "a few pages later … embedded within [several] single-spaced paragraphs" describing the race generally. JA5742 (quoting JA3639). Cavuto testified that he had focused on the "big bullet point issues," JA3864-3866, which included that Blankenship "[r]esigned following the Upper Big Branch mine explosion … that killed 29 miners" and had been "[c]onvicted of conspiring to willfully violate safety standards and served one year in prison," JA3637.

Blankenship also points to the fact that a reporter on Cavuto's show two weeks earlier had referred to Blankenship as "a former coal baron who recently served a year in jail on a misdemeanor conviction tied to his role in a mine collapse that killed 29 people." JA3861-3862. Blankenship failed to adduce any evidence, however, that Cavuto picked up on or recalled that fleeting reference to "misdemeanor" during a broader discussion about the race—indeed, Blankenship did not even ask Cavuto about this statement at

his deposition, other than to confirm that it had occurred. JA3862. Cavuto's unrebutted testimony was that he "did not know there was a distinction between going to jail over a felony or going to jail over a misdemeanor, just that [Blankenship] went to jail for a year." JA3556.

Second, Blankenship argues that Cavuto's statement was an "extreme departure from journalistic standards," which he says prohibit a "news host" from "tak[ing] sides in a political race." Br. 33. As the district court correctly held, however, "mere political bias" is not evidence of actual malice, nor is even an "extreme departure from professional standards." JA5744 (quoting *Hinerman v. Daily Gazette Co.*, 423 S.E.2d 560, 573 (W. Va. 1992), and *Harte-Hanks*, 491 U.S. at 665); *see supra* p.29. Moreover, as the district court found, there was no evidence of either. JA5743-5744. Cavuto did not, as Blankenship claims, begin by stating "Morning, Republicans. You know what? We're gonna lose West Virginia …." Br. 24 (citing JA3466, JA5670). As the district court noted (and the pages Blankenship cites confirm, JA3466, JA5670), Cavuto began by stating, "*The president [is] warning Republicans*, you know what, we're going to lose West Virginia …." JA5744 (emphasis in original). By relaying the *President's* views on Blankenship, rather than his own, Cavuto

41

did not, as Blankenship claims, "take sides" in a political race. On this point, Blankenship distorts the record and ignores the district court's ruling.[20]

Third, Blankenship argues that the district court "improperly weighed [Cavuto's] credibility in favor of FNN." Br. 30. That is untrue. Rather, the district court correctly applied *Anderson*'s teaching that a plaintiff cannot survive summary judgment by "merely asserting that the jury might … disbelieve the defendant's denial," 477 U.S. at 256, and concluded that Blankenship's evidence was "insufficient … to allow a rational finder of fact to find actual malice by clear and convincing evidence," JA5749-5750 (quoting *Anderson*, 477 U.S. at 254).

2. Unable to show that Cavuto acted with actual malice—and having abandoned any claim that any other FNN speaker did so—Blankenship repeatedly argues that "FNN" acted with actual malice *as an organization. See, e.g.*, Br. 2-3. But as the district court correctly recognized, actual malice is not determined by examining the collective knowledge within an

---

[20] In Cavuto's deposition transcript, his statement was erroneously transcribed as "Morning, Republicans. You know what? We're gonna lose West Virginia …." JA3868. But the transcript of Cavuto's program, JA3466, and the actual video from that program, ECF 216-7, plainly show that his statement began "The president [is] warning Republicans, you know what, we're going to lose West Virginia …."

organization. Rather, evidence of actual malice must be "brought home" to the individual "*persons* in the [defendant's] organization *having responsibility for the publication*." JA5725 (emphases added) (quoting *N.Y. Times*, 376 U.S. at 287-88); *see also Mimms v. CVS Pharmacy, Inc.*, 889 F.3d 865, 868 (7th Cir. 2018) ("It is the state of mind of the speaker that is relevant."). Blankenship simply ignores this requirement.

Blankenship contends that "*FNN* acted with actual malice" by supposedly delaying Napolitano's correction of the misstatements until the May 22 broadcast of *Your World*. Br. 2-3 (emphasis added); *see also* Br. 26, 27. As discussed above, a failure to correct is not itself actual malice, as the district court correctly recognized. JA5746-5747 ("[A]ctual malice cannot be inferred from a failure to retract"); *see supra* pp. 29-30. But, in fact, FNN *did* provide Blankenship with the opportunity to clarify the nature of his conviction on the air, and Napolitano also provided a correction. JA3552-3555. Any alleged "delay" in doing so is not evidence that any "person[] … having responsibility" for Napolitano's statement acted with actual malice. *N.Y. Times*, 376 U.S. at 287-88. Napolitano, for his part, made efforts to correct his statement as soon as he could, *see supra* pp. 36-37, and the producers who

chose to cover other news in response to his initial requests were not somehow responsible for his prior statement, s*ee* JA5746.

Blankenship's emphasis on the May 6-7 email exchange, *see, e.g.*, Br. 22-23, is likewise a red herring. As the district court correctly explained, this email is "of little relevance" to actual malice, JA5736, because (i) nothing in that exchange refers to Blankenship as a felon, JA5737-5738; and (ii) there is no evidence that its contents were ever communicated to the individuals who made the allegedly libelous statements, or anyone else, JA5738-5739. As the court noted, Murdoch, Scott, and Wallace each testified that they did not relay this message to anyone else, nor did they instruct anyone to disparage Blankenship or mischaracterize his conviction—and Blankenship produced no evidence to the contrary. JA5738. Their affidavits confirmed the lack of any "affirmative evidence" that the email was communicated to the speakers. JA5738.[21]

---

[21] Deposition testimony also corroborated that neither the email nor its substance were *ever* communicated to *any* speaker or producer involved in *any* FNN program on which Blankenship alleges he was defamed. *See* JA3538-3543 (Napolitano, testifying he never discussed Blankenship with any of a long list of persons including Murdoch, Wallace, Scott, Senator McConnell, and others); JA3685-3691 (Hadden, same); JA3697-3699 (Levine, same, albeit shorter list); JA3714-3717 (Stirewalt, same, albeit shorter list); *see also* JA3705-3710 (Rove, same).

Blankenship offers only the conclusory assertion that the May 6 email somehow *must* have reached the speakers, because their references to Blankenship as a felon were made on May 7-9. *See, e.g.*, Br. 24. But that conclusory speculation is not evidence—let alone clear and convincing evidence—and it is also wholly unfounded. It was entirely natural that coverage of Blankenship increased on FNN, like on other media outlets, immediately around the May 8 primary election and on the heels of President Trump's tweet. Further, Blankenship's theory is belied by the fact that well *before* the email exchange, more than a dozen commentators from other media outlets had *already* referred to Blankenship as a felon. *See* JA3406-3408.

3.     Finally, Blankenship points to negative remarks about him by Karl Rove and Tammy Bruce on Martha MacCallum's FNN program. Br. 21, 37. But as the district court correctly explained, Blankenship did not claim any of these comments were defamatory, nor do they have any connection to the speakers of the challenged statements. JA5748-5750. Accordingly, this argument fails for the same reasons.

### c.     Blankenship's "Conspiracy" Claim Does Not Somehow Prove Actual Malice.

Unable to show actual malice by clear and convincing evidence, Blankenship argues that he somehow "established actual malice … via the

conspiracy claim." Br. 34-39. To begin, Blankenship did not even plead a conspiracy claim against FNN—he pleaded it only against three "Conspiracy Defendants," none of whom are affiliated with FNN. JA0151 ¶ 233 (naming NRSC, 35th PAC, and Kevin McLaughlin as "Conspiracy Defendants").

Regardless, Blankenship's argument gets the analysis backwards. As the district court correctly held, a conspiracy claim requires an underlying tort. JA5754-5755 ("[A] conspiracy is not, itself a tort. It is the tort, … not the conspiracy, that is actionable." (quoting *Dunn v. Rockwell*, 689 S.E.2d 255, 269 (W.Va. 2009))). Because Blankenship's underlying tort claims fail, any conspiracy claim necessarily fails as well. *See also infra* pp. 89-90.

Blankenship also repeatedly argues that he proved an "agreement to 'beat' [him] in the Primary." Br. 37; *see also* Br. 34 (alleging a "conspiracy to alter the outcome of the Primary"). But an effort to "beat" a political candidate is lawful political activity, not a tort. In suggesting otherwise, Blankenship merely confirms that his lawsuit is nothing more than a political grievance.

### 2. Summary Judgment Was Proper as to MSNBC.

Blankenship also failed to produce affirmative evidence sufficient to find actual malice as to MSNBC, let alone by clear and convincing evidence. The

district court's ruling should be affirmed for all the reasons explained in its comprehensive opinion. JA5725-5736.

### a. Factual Record

Blankenship's claims against MSNBC are based on three instances when two MSNBC hosts—Chris Hayes and Joy Reid—referred to Blankenship as a "convicted felon" in the course of discussing his Senate run during episodes of *All In*, a live news commentary program.[22]

### i. April 23 and May 9, 2018 *All In*

The April 23 broadcast, hosted by Hayes, focused on the political strategy employed by Republicans during the 2018 campaign season. JA0432. The segment included a Blankenship campaign ad attacking Hillary Clinton, and after the ad aired, Hayes commented, "That was a campaign ad in the year of our Lord 2018 for convicted felon Don Blankenship who spent a year in jail for his role in a mine disaster that killed 29 people, calling for Hillary Clinton to be locked up in a campaign ad in 2018." JA0452.

---

[22] In the district court, Blankenship also claimed Hayes defamed him in a tweet on Hayes's personal Twitter account referring to Blankenship as "felonious." JA5725 n.40. The court concluded the tweet "is insufficient to establish MSNBC's liability inasmuch as it was tweeted from Mr. Hayes' personal account." *Id.* Because Blankenship does not contest this ruling on appeal, he has waived this claim. *Equal Rights Ctr.*, 602 F.3d at 604 n.4.

During the May 9 broadcast, Hayes commented on Blankenship's loss in the primary. The segment summarized Blankenship's attacks on Senator McConnell, and Hayes ended the segment stating, "[T]hus endeth the brief and unsuccessful senate bid of convicted felon Don Blankenship." JA0470.

Hayes used those words because he believed Blankenship was a convicted felon. *See* JA0432-0433; JA0515. He testified that what stuck in his mind about Blankenship's conviction was the fact that Blankenship served a year in prison, which Hayes associated with a felony. *See* JA0512; JA0515.

### ii.    May 4, 2018 *All In*

On May 4, Reid substituted for Hayes. JA0542. During that broadcast, one segment focused on Blankenship's attacks on Senator McConnell and included this commentary by Reid: "coal baron and convicted felon Don Blankenship who spent a year in federal prison for his role in a 2010 mine explosion that killed 29 people and who is still on probation has been trying to get Republicans votes in the West Virginia Senate primary by going after his own party['s] senate leader Mitch McConnell …." JA0529. Reid testified she believed Blankenship had been convicted of a felony, JA0543, explaining, "at the time what I understood was that he had spent … a year in federal prison for a very serious crime," JA0533-0534.

48

### b. Blankenship Failed to Present Evidence of Actual Malice.

The district court correctly found that Blankenship failed to produce clear and convincing evidence that MSNBC—and more precisely, Hayes and Reid—acted with actual malice when they referred to Blankenship as a felon. As the district court correctly held, it is the individual speaker's state of mind that is relevant to the question of actual malice. *See supra* pp. 25, 42-43.

1. As an initial matter, Blankenship does not even challenge the district court's ruling that he failed to offer clear and convincing evidence that Reid published her May 4 statement with actual malice. Therefore, any argument as to Reid's statement is waived. *See Uncork & Create LLC v. Cincinnati Ins. Co.*, 27 F.4th 926, 930 (4th Cir. 2022) (appellant's failure to "present any argument contending that the district court erred" on a certain issue is "abandoned on appeal"). Regardless, the district court plainly was correct that Blankenship did not provide a "scintilla of evidence" that Reid subjectively doubted the truth of her statement. JA5728.

2. With respect to Hayes, Blankenship contends that the district court failed to draw all inferences in his favor and made impermissible credibility determinations in favor of Hayes. Both arguments fail.

The undisputed evidence established that at the time of his statements, Hayes believed Blankenship was a convicted felon. *See* JA0432-0433; JA0515. As this Court has held, "The actual malice standard requires that the defendant had a particular, subjective state of mind *at the time the statements were made*." *Fairfax*, 2 F.4th at 295 (emphasis added); *see Cannon*, 36 F.4th at 569-71. Blankenship cannot create a genuine issue of actual malice simply by arguing that a jury could disbelieve Hayes. *See supra* p.28.

As the district court noted, contemporaneous evidence negates any assertion that Hayes acted with actual malice. Just hours before the April 23 episode, Hayes met with producer Brian Montopoli to discuss the segment that mentioned Blankenship. JA0495-0497; JA5733-5734. In their conversation, which was recorded, Montopoli suggested that they play a portion of their "old buddy Don Blankenship's ad" in which Blankenship states, "We need to arrest Hillary. Lock her up." JA0492. In response, Hayes replied, "Holy … shit, Dude. [T]hat is, like, *convicted felon …* Don Blankenship … the man who was found, you know, to have criminally violated the law in the mine that he owned that killed, you know, all those miners," to which Montopoli replied "Yeah." *Id.* (emphasis added). As the district court observed, this conversation "appears to reinforce Mr. Hayes' contention that

50

he genuinely believed Mr. Blankenship was a convicted felon when he stated as much on air later that same evening, not that he intentionally and knowingly uttered a calculated falsehood." JA5734. Indeed, Hayes testified, "I called him a convicted felon [in the recorded meeting] … because I thought he was a convicted felon, clearly." JA0497.

An email exchange on May 10 (after the final segment at issue) likewise confirms Hayes's testimony. A viewer wrote to Hayes: "You mentioned that Blankenship was a Felon on your Thing 1/2 Segment. Unfortunately it was a misdemeanor[.] Go figure!" JA0523. Hayes responded "yes! Caught that *after the show*, but you're r[i]ght." *Id.* (emphasis added). The district court correctly found that "[t]his email—sent the day after the last challenged statement was made—further supports Mr. Hayes' contention that he believed his references to Mr. Blankenship as a convicted felon to be true at that time and did not realize his error until afterwards." JA5734.[23]

---

[23] Blankenship cites this email in a cursory argument that failure to correct the error evidences actual malice. Br. 49. He also alludes to the NBCUniversal News Group Policies and Guidelines, which provide that corrections "should be addressed as soon as reasonably possible," Br. 40 (citing JA5480), arguing that it is "additional evidence of actual malice" that Hayes did not correct this "admitted mistake," Br. 49. But this is the same argument regarding retractions that the district court properly rejected, and purported deviation from standards is far from actual malice. *See infra* pp. 64-65; *supra* p.29.

Faced with Hayes's undisputed testimony and uncontroverted contemporaneous evidence, Blankenship relies on speculation and attenuated statements. He cites an email that Hayes sent *in 2015* after reading a *New York Times* article discussing Blankenship's conviction, stating, "He only got nailed on the misdemeanor, tho. Probably not a day in jail." JA0845. From this email—sent *two-and-a-half years* and *more than 500 episodes of "All In"* before the challenged statements were made—Blankenship argues that he is entitled to "the favorable inference that Hayes retained the knowledge that Blankenship was a misdemeanant when Hayes twice called him a felon" in 2018. Br. 45. Blankenship is mistaken.

The district court properly held that this statement "cannot be viewed in isolation." JA5732. Whether an inference is reasonable "cannot be decided in a vacuum; it must be considered 'in light of the competing inferences' to the contrary." *Sylvia Dev. Corp. v. Calvert Cty.*, 48 F.3d 810, 818 (4th Cir. 1995) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986)). The court correctly viewed the email "in connection with the entirety of the evidentiary record," finding it to be of "attenuated effect." JA5732.

Blankenship also cites two episodes of *All In* from November 2017 and January 2018. Br. 45. First, he points to a November 29, 2017 telecast, in

which the *headlines* of two articles about Blankenship were used as graphics. The bodies of the articles accurately referenced Blankenship's conviction as a misdemeanor. But the full articles were not displayed on the screen, and there is no evidence that what was displayed mentioned Blankenship's conviction at all. *See* JA0906-0910; JA5729. Second, Blankenship notes that during a January 2018 telecast, guest host Reid read from a script that accurately referred to another politician as a "felon" and mentioned that Blankenship was convicted of a crime—without specifying its classification. Blankenship contends that these two telecasts are evidence that Hayes knew the true classification of Blankenship's crime.

But "[s]uch unsupported inferential leaps are no adequate substitute for actual evidence." *See Conrad v. CSX Transp., Inc.*, 824 F.3d 103, 109 (4th Cir. 2016). As to the November 2017 telecast, Blankenship did not produce any evidence that Hayes read the articles whose headlines appeared on screen. His counsel did not even ask Hayes about the articles or proffer the video or the transcript of the broadcast in his deposition. *See* JA5729-5730 n.42. As to the January 2018 telecast, there is no basis to infer actual malice from a prior statement, made by a different person, that is completely silent on the nature of Blankenship's conviction.

Blankenship's demand for ever more tenuous inferences does not stop there. He also argues it is enough that there is evidence in the record that Hayes and his staff were "familiar" with Blankenship, asserting that from some general familiarity it is reasonable to infer specific knowledge of the precise legal classification of Blankenship's conviction. Br. 46. That argument is speculative at best, and the evidence it relies upon is wholly insufficient. Blankenship notes simply that on April 23, one of Hayes's producers referred to Blankenship as an "old buddy" of *All In*, and that an April 2016 email from a staff member to Hayes and others bore the subject line, "our old friend Don Blankenship is going to the cooler for a year." Br. 42, 46 (citing JA0815-0818, JA5731). As the district court correctly observed, such evidence "is of little significance given that it does not mention the nature of Mr. Blankenship's conviction." JA5731. If anything, the reference to Blankenship's "going to the cooler for a year" confirmed that his crime was a serious one.

Lacking evidence of actual malice, Blankenship resorts to asserting that the district court impermissibly made "credibility determinations in favor of MSNBC." Br. 46. But the district court simply addressed the uncontested factual record as presented at summary judgment. It did not determine any witness's "credibility." None of Blankenship's attempts to challenge Hayes's

credibility shows that Hayes "had a high degree of awareness of … probable falsity" of his statements that Blankenship was a felon. *Cannon*, 36 F.4th at 566 (quoting *Harte-Hanks*, 491 U.S. at 688).

Blankenship's argument that Hayes "discussed [Blankenship] with obvious animus" also fails. Br. 48-49. As explained above, it is black-letter law that "ill will alone cannot demonstrate malice" in the constitutional sense. *Cannon*, 36 F.4th at 573; *see also id.* at 569 (concluding that defendant believing the plaintiffs were "jerks" and wishing to fire them does not "rise[] to the level of clear and convincing evidence" of actual malice).

3.      Finally, while Blankenship's claims against MSNBC are based solely on statements made by Hayes and Reid, Blankenship's summary judgment opposition also referenced *All In* executive producer Denis Horgan and "the 22 member staff of the *All In* television program." JA5726 (internal quotation marks omitted). On appeal, Blankenship fails to challenge the district court's rulings regarding these individuals; therefore, they are waived. *Equal Rights Ctr.*, 602 F.3d at 604 n.4. In any event, the district court correctly found that "[m]erely being responsible for the overall process of the show" does not establish actual malice, and that the court was "unable to

assess each staff member's state of mind without knowing who those individuals are." JA5726-5727 (quoting *Mimms*, 889 F.3d at 868).

The district court's decision granting summary judgment to MSNBC should be affirmed.

### 3. Summary Judgment Was Proper as to CNN.

Blankenship's brief also underscores the lack of "concrete" and "affirmative" evidence of actual malice on the part of CNN. *Anderson*, 477 U.S. at 256-57. As the district court held, JA5712-13, there is no basis—much less a "clear and convincing" basis—upon which to find that anyone at CNN came close to uttering a "calculated falsehood." *Ryan*, 634 F.2d at 733.

### a. Factual Record

Blankenship's claims against CNN are based on four passing references to Blankenship as a "felon" by three individuals—an unpaid guest and two CNN independent contractors—in the midst of discussion on live television.

### i. April 29, 2018 *CNN Newsroom*

During the *CNN Newsroom* program on April 29, chief political correspondent Dana Bash introduced a segment about the West Virginia primary. In her introduction, Bash noted that Blankenship "reminds us" that his conviction "was just a misdemeanor." JA1383. Later in the segment, an *unpaid guest*—Kevin McLaughlin—referred to Blankenship once as a "felon":

McLaughlin:  Well, I mean pick your poison with this
guy, right?  I mean he doesn't live in West Virginia,
he's a convicted felon.  You know, he says–
Bash:  Because he's – he's got a house in Nevada –
McLaughlin:  Exactly.
Bash:  And his girlfriend lives there.

JA1386.

The program was live, and McLaughlin's statements were not coordinated in advance with CNN or its personnel in any way—it was an "unscripted discussion."  JA1405-1406; JA1385 ¶ 6.  When McLaughlin used the word "felon" to describe Blankenship, he believed his statement was true.  JA1406-1407.  He explained that his "understanding was, given what had happened in the sentence, that it was obviously a very serious crime," and that prior to his appearance he had "Googled it" and "was led to believe he was a convicted felon."  JA1402-1403.[24]  Blankenship never contacted CNN to request a correction.  JA1413-1414; JA1397 ¶ 13.[25]

---

[24] It is undisputed that, during this live exchange, Bash "do[es] not recall digesting that [McLaughlin] had used the word 'felon,' let alone that it may [have been] something also worth clarifying."  JA1396-1397 ¶ 9.

[25] Blankenship separately sued McLaughlin in the Eastern District of Virginia, but voluntarily dismissed the claims.  JA1193-1194.

### ii.    May 7, 2018 *CNN Tonight*

In another live segment, on the *CNN Tonight* program on May 7, CNN contributor Joe Lockhart commented on President Trump's tweet telling West Virginians not to vote for Blankenship, and referred in passing to Blankenship as a "convicted felon." JA1428-1429. Lockhart's comment was made in the course of a live discussion with other panelists:

> What's striking here is in Trump's tweet this morning, he didn't say anything about Roy Moore and his personal problems. He didn't say don't vote for Blankenship because he went to jail, he's a convicted felon, he's a racist, and he's crazy. He said, vote for the other guys because we don't want to lose the seat.

*Id.* Lockhart is an independent contractor, and his commentary was not scripted or coordinated with CNN personnel. JA1432-1433 ¶¶ 2, 5; JA1439. He believed that referring to Blankenship as a felon was accurate, because Blankenship had been convicted of a serious crime and sent to federal prison for a year. JA1183; JA1185-1186. Lockhart is not a lawyer and "believed that [Blankenship] was a felon" based on his understanding at the time. JA1433 ¶ 6. Blankenship never contacted CNN to request a correction. JA1415; JA1434 ¶ 8.

### iii. May 2 and 8, 2018 S.E. Cupp Unfiltered

On two episodes of *S.E. Cupp Unfiltered* ("*Unfiltered*"), political commentator S.E. Cupp discussed Blankenship's candidacy with her guests, and referred to him as a "felon" once on each program.

On May 2, Cupp hosted a round-table discussion, during which Cupp and her panelists discussed primaries in multiple states. JA1443 ¶¶ 4-5. In discussing West Virginia, Cupp mentioned that Blankenship "served a year in prison," and a clip was played of Blankenship speaking at a May 1 debate where he alleged corruption at the Justice Department. JA1457-1458. Cupp then paraphrased his remarks—"You want to talk about the Justice Department, I know something about the Justice Department"—and added, "that's because you're a convict, you're a felon. Oh my God." JA1458.

Later, on May 8, Cupp again discussed primaries in West Virginia and other states, this time with political analyst David Drucker, who noted that Blankenship was "found guilty of conspiracy to avoid mine safety standards in … federal court" after a coal mining accident in which 29 miners were killed. JA1465. Cupp later commented, "[i]n case you missed it, a former coal baron and convicted felon is running for senate in West Virginia." JA1469.

Cupp, who is an independent contractor, had no doubts as to the truth of referring to Blankenship as a "felon" at the time. JA1442-1445; JA1483-1488. She knew that he had been convicted of a serious federal crime and had been sent to federal prison for a year. JA1443-1444 ¶¶ 6-7. Cupp is not a lawyer, and was using the word consistent with her colloquial understanding. *Id.* To her, there was "no doubt" that "an individual like Mr. Blankenship who was convicted of a federal crime and sent to prison for a year was a 'felon.'" *Id.* ¶ 7. Again, Blankenship never contacted CNN to request a correction. JA1414-1415; JA1445 ¶ 13.

### b. Blankenship Failed to Present Evidence of Actual Malice.

Blankenship failed to adduce any evidence of actual malice on the part of CNN. Indeed, as explained below, the references to Blankenship as a "felon" were made by a guest and independent contractors,[26] and their state of mind is not attributable to CNN. But this Court need not reach that issue, because there is no evidence that any of these individuals harbored any doubts as to the accuracy of their statements.

---

[26] The only CNN employee who addressed Blankenship's conviction, Dana Bash, accurately referred to it as a misdemeanor. JA1383.

Here again, Blankenship cannot create a triable issue of actual malice "by merely asserting that the jury might, and legally could disbelieve" testimony. *Anderson*, 477 U.S. at 256; *see supra* p.28. Blankenship's arguments are based on rank speculation and, worse, the same "plain misrepresentation" of facts that the district court identified. JA5710.

The uncontradicted testimony from all three speakers at issue— McLaughlin, Lockhart, and Cupp—is that they believed what they were saying was true. JA1406-1407; JA1433; JA1438-1439; JA1442-1445, JA1483-1488; *see also* JA5708-5713. Blankenship does not cite *any* evidence suggesting that they entertained *any* doubts, much less "serious doubts," as to the truth. *St. Amant*, 390 U.S. at 731.

Instead, Blankenship misrepresents the record. First, Blankenship suggests that, in the May 2 *Unfiltered* episode, Cupp played and reacted to a portion of a Fox News debate in which Blankenship stated that he "beat all three of the felonies" and was "sent … to prison for a misdemeanor." Br. 51. That is simply not the case. The undisputed record is that *Unfiltered* did not play the portions of the debate quoted by Blankenship, JA1447-1459, and that Cupp does not recall watching any clips in which he referred to his crime as a

misdemeanor.  JA1489.  The uncontested evidence is that she was not aware at the time that his conviction was for a misdemeanor.  JA1483.[27]

Second, Blankenship incorrectly asserts that Bash "previously traveled to West Virginia with McLaughlin in a multi-hour car ride 'to find Mr. Blankenship'"—arguing, irrationally, that this would somehow "go directly to a showing of actual malice."  Br. 58, 54.  Although Bash traveled to West Virginia to conduct reporting on the campaign,[28] *see* JA1746-1747, there is simply no evidence that McLaughlin accompanied her (and he did not)—and it is completely unclear how this allegation would relate to actual malice even if it were not invented out of whole cloth.[29]

---

[27] Blankenship goes on to speculate that "a CNN staff member must have watched" the portion of the debate that he quotes, Br. 55—but this sheer conjecture is untethered from anything in the record, and is irrelevant to the actual malice inquiry.  *See, e.g.*, *Mimms*, 889 F.3d at 868.  After all, even if a staff member did watch it, there is no evidence it was communicated to Cupp.

[28] Blankenship also suggests that it is somehow relevant that Bash sent a text message to Senator Cory Gardner, head of the National Republican Senatorial Committee, while reporting on Blankenship.  Br. 17-18.  There no evidence that Gardner ever responded, and the record demonstrates that this was a matter of routine reporting.  JA1785-1787.

[29] Blankenship further mischaracterizes the record in suggesting that Lockhart and Cupp "admitted" that they falsely called Blankenship a "felon."  Br. 51, 52.  The record is clear that both Lockhart and Cupp did *not* believe their statements to be false when made.  *See* JA1438-1439; JA1483-1484. What Lockhart and Cupp testified to was simply that they understand today,

Similarly, Blankenship's remaining arguments are based largely on speculation, far from the required "concrete" and "affirmative" evidence demonstrating clear and convincing proof. *Anderson*, 477 U.S. at 256. For example, Blankenship speculates about what McLaughlin's Google search "would" have revealed, Br. 53, and suggests, without factual support, that McLaughlin and Bash may have had discussions about Blankenship's criminal history, including during the imaginary "multi-hour car ride," Br. 58. As the district court concluded, such "pure speculation," JA5711, is patently insufficient to withstand summary judgment.

In the end, Blankenship's argument boils down to a complaint that the speakers "made no effort to research," and published without review of the "public record." Br. 57, 59. But—once again—"failure to investigate is precisely what the Supreme Court has said is insufficient to establish reckless disregard for the truth." *Pippen*, 734 F.3d at 614 (alleged failure to search PACER was not evidence of actual malice); *Fairfax*, 2 F.4th at 293; *supra* pp. 25-26.

---

following this litigation, that their remarks were not technically accurate. JA1717; JA1730.

Blankenship also argues that the speakers violated CNN's internal standards. As explained above, courts have repeatedly rejected such arguments. *See supra* p.29. And the record here is devoid of evidence of any departure from standards. The only testimony on the question—from CNN's Executive Vice President for Standards, Richard Davis—was that there were no violations of CNN's policies. *See* JA1576-1579.[30] Indeed, the only so-called standards Blankenship cites are CNN's stated mission to provide "accurate, fair, and responsible" programming, and its internal guidance relating to defamation. Br. 49, 50. But as the district court rightly concluded, such a generalized commitment to accurate reporting can hardly be the basis for a finding of actual malice; otherwise, there would be a claim any time an inaccurate statement is made. JA5712. The very premise of the actual malice standard is that "erroneous statement is inevitable in free debate" and that it "must be protected if the freedoms of expression are to have the breathing space that they need to survive." *N.Y. Times*, 376 U.S. at 271-72 (cleaned up); *see also, e.g.*, *Filippo v. Lee Publ'ns, Inc.*, 485 F. Supp. 2d 969, 976 (N.D. Ind.

---

[30] He testified, among other things, that only "significant" and "material" errors need to be corrected, and he did not believe any correction was required here. *See* JA1794-1798. The record is clear, in any event, that Blankenship never requested a correction from CNN.

2007) (granting summary judgment despite alleged violation of newspaper's ethics policy, as "the measure of actual malice is not whether a reporter violated a professional ethics policy").

Blankenship also argues that Lockhart and Cupp exhibited "animus" toward him in describing some of Blankenship's expressed views as "offensive," "racist," and "crazy." Br. 55. These expressions of opinion regarding a controversial political candidate do not come close to demonstrating subjective disbelief as to the truth of the word "felon." *See supra* p.30; *Reuber*, 925 F.2d at 716; *see also, e.g.*, *Nunes v. WP Co.*, 513 F. Supp. 1, 5 (D.D.C. 2020) (allegations of "animus against Plaintiff and others" failed to demonstrate actual malice as a matter of law), *aff'd*, 2022 WL 997826 (D.C. Cir. Apr. 1, 2022).[31]

Finally, Blankenship attempts to find support in *Harte-Hanks*—but he ignores the unique facts of that case, which are altogether different than those here. *Harte-Hanks* involved a "highly improbable" story where, among other things, there were "obvious doubts about [the] veracity" of a newspaper's sole

---

[31] Blankenship concedes that *many* people found his comments referring to "China family" and "China person," in connection to Mitch McConnell's family, to be offensive and racist. *See* JA1314-1318.

source.  491 U.S. at 691.  The newspaper interviewed six other witnesses who "consistently and categorically" denied the charge.  *Id.* at 682-83.  The newspaper "chose not to interview the one witness" who both sides "claimed would verify their conflicting accounts," and further decided not to listen to audio tapes made available to it, despite the fact that "[m]uch … could easily have been verified or disproved by listening to the tapes."  *Id.* at 683.  In the end, the evidence suggested that a decision was made to publish "regardless of how the evidence developed and regardless of whether or not [the source's] story was credible upon ultimate reflection."  *Id.* at 684.

In sharp contrast, there is no evidence that the "felon" references here were anything more than an honest mistake—the use of an imprecise term to convey that the crime for which Blankenship was convicted and imprisoned was a serious one.  That does not come close to establishing actual malice.  "[T]he First Amendment does not require perfection."  *Carr*, 259 F.3d at 283.

### c. The Speakers' State of Mind Cannot Be Imputed to CNN In Any Event.

Even if Blankenship had adduced clear and convincing evidence of actual malice on the part of the speakers—which he did not—it would not prove

actual malice *by CNN*, because no speaker was a CNN employee.[32]

McLaughlin, an unpaid guest, was not affiliated with CNN at all. JA1395 ¶ 6;

JA1404-1405. There is no basis to impute his state of mind to CNN. And the

record is undisputed that Lockhart and Cupp were independent contractors,

not employees. JA1432 ¶ 2; JA1442 ¶ 2. Under the doctrine of *respondeat*

*superior*, an employer may be held responsible for *an employee's* act of

publishing a statement with actual malice. *Cantrell v. Forest City Publ'g Co.*,

419 U.S. 245, 253-54 (1974). However, "actual malice 'cannot be imputed from

one defendant to another absent an employer-employee relationship.'"

*AdvanFort Co. v. Mar. Exec., LLC*, 2015 WL 4603090, at *7 (E.D. Va. July 28,

2015) (collecting cases); *Secord v. Cockburn*, 747 F. Supp. 779, 787 (D.D.C.

1990) (granting summary judgment because author was an independent

contractor).[33] For this reason, as well, summary judgment must be affirmed.

---

[32] The district court declined to address this, given its finding that Blankenship failed to meet his burden of showing clear and convincing evidence that the speakers acted with actual malice. JA5709 n.35; JA5711-5712 n.37.

[33] Indeed, "the constitutional mandate of *New York Times v. Sullivan* prohibits liability based solely upon an agency relationship." *Masson v. New Yorker Mag., Inc.*, 832 F. Supp. 1350, 1373 (N.D. Cal. 1993) (collecting cases), *aff'd*, 85 F.3d 1394 (9th Cir. 1996). "[T]he requirement that the defendant's state of mind be proven is the cornerstone of the constitutional requisite" of actual malice. *Id.* at 1370.

### 4. Summary Judgment Was Proper as to the Washington Post.

Blankenship's brief is likewise devoid of "concrete" and "affirmative" evidence that the two challenged references to his conviction in the Washington Post were published with actual malice. *Anderson*, 477 U.S. at 256-57. Blankenship did not even depose the Post journalists responsible for the statements at issue. As the district court found, the record evidence of their good-faith beliefs stands unrebutted.[34] JA5717-5724.

### a. Factual Record

On July 25 and 27, 2018, the Post published online and in print an article carrying the by-lines of national political correspondent Jenna Johnson and White House reporter Josh Dawsey. The article, "GOP primary candidates joust for Trump's endorsement," discussed campaigns in more than a dozen states. JA2046; JA2053. Twenty-four paragraphs into the article, one brief

---

[34] Blankenship also claimed below that he was defamed in a May 8, 2018 opinion column. JA2014; JA2020. But Blankenship does not challenge the grant of summary judgment as to this column, and has waived that claim. *See, e.g.*, *Equal Rights Ctr.*, 602 F.3d at 604 n.4. Furthermore, the evidence demonstrated that the reference to "felons" there did not even refer to Blankenship, JA2016-2017, and the district court correctly found that Blankenship had "not produced a scintilla of evidence" of actual malice to support his claim. JA5717-5718.

paragraph mentioned the West Virginia primary—which had concluded more than two months earlier:

> A day before West Virginia's Senate primary, Trump urged Republicans to vote for either Rep. Evan Jenkins or Attorney General Patrick Morrisey but not Don Blankenship, a former coal mine owner and felon. Trump tweeted that Blankenship "can't win the General Election in your State...No way! Remember Alabama." Morrisey won the primary.

JA2051; JA2054. In writing this passage, Johnson used the word "felon" because she knew Blankenship had been convicted of a crime and sent to prison, and she had seen or heard him referred to as a felon elsewhere. JA2057 ¶ 5; JA2057; JA2061. It never occurred to Johnson, who is not a lawyer, that the word "felon" was inaccurate as a technical legal matter, and she believed it to be true. *Id.* Blankenship never contacted the Post to request a correction. The Post, however, published a correction shortly after being alerted through the filing of this lawsuit. *See* JA2069; JA2073.

On August 9, 2018, the Post published an online blog post by political reporter Amber Phillips, which focused on New York Congressman Chris Collins, who had been arrested for insider trading. JA2075. This blog post— more than three months after Blankenship's primary election loss— mentioned Blankenship only in passing. JA2075. Toward the middle of the

post, Phillips added, "three convicted felons have run or are running for office this year," including "former coal baron Don Blankenship." *Id.*

The uncontradicted evidence is that Phillips used the word "felon" because she knew that Blankenship had been convicted of a serious crime and had gone to prison for it. JA2079 ¶ 4. Phillips is not a lawyer. It was her understanding that the word "felon" could be used to refer to someone who has been convicted of a serious crime, and that this was consistent with common usage. *Id.* She believed her reference was accurate, and did not have any doubts as to its truth. *Id.* Blankenship never contacted the Post to request a correction. But again, the Post published a correction shortly after this lawsuit was filed. JA2082.

### b. Blankenship Failed to Present Evidence of Actual Malice.

The district court correctly held that Blankenship failed to adduce evidence from which a jury could find, by clear and convincing evidence, that either of these statements was made with actual malice. *See* JA5719-5724.

As for the July article, Blankenship did not proffer a shred of evidence that Johnson had any doubts about the truth of what she wrote. JA2057 ¶ 5; JA2061. As the district court found, there is simply "no affirmative evidence

70

that would permit a finding that Ms. Johnson authored the statement with actual malice." JA5720.

Blankenship's only response is to suggest in a footnote that another reporter assigned to the story, Dawsey, may have been responsible for the word at issue. Br. 60 n.8. But, as the district court explained, that ignores the record. It is not just the Post's "*position* that Mr. Dawsey was not responsible for the drafting of the [allegedly] defamatory statement," Br. 60 n.8 (emphasis added); that is the uncontested evidence, consisting of both unrebutted testimony and contemporaneous documentation. *See* JA2057 ¶ 4; JA2061 ¶ 4; JA5719-5720. Moreover, as the district court noted, the record would not support a finding of actual malice as to Dawsey, even if he had written the word at issue. *See* JA5719-20.

Blankenship ultimately suggests that summary judgment was improper because the Post's internal Policies and Standards contemplate "fact-checking." Br. 59-60 & n.8. This is meritless for all of the reasons discussed above and as the district court explained. Neither "failure to investigate" nor even an "extreme departure" from journalistic standards can create a triable issue of actual malice. *St. Amant*, 390 U.S. at 731; *Pippen*, 734 F.3d at 614; *Harte-Hanks*, 491 U.S. at 665; *see supra* pp. 25-26, 29, 64-65.

Nor is there anything in the record establishing the type of "calculated falsehood" necessary to establish actual malice with respect to the August 2018 blog post. *Ryan*, 634 F.2d at 733. As the district court held, the uncontradicted evidence showed that Phillips believed "that the word 'felon' could be used to refer to someone who has been convicted of a crime and that it was used that way in common usage." JA5722-5723; JA2079. She testified in an unchallenged, sworn affidavit that she "was aware that Mr. Blankenship had been convicted of a crime and served a year in federal prison," and she used the word "felon" "in the colloquial sense," neither appreciating nor focusing "in writing this [reference] on any technical meaning that 'felon' may have." JA5722; JA2079. It just "did not occur to [Phillips] at the time that 'felon' was a word that required any further fact checking." JA2079 ¶ 4.

That one of Phillips's earlier blog posts from before the election contained a passing reference to his conviction as a "misdemeanor" does not demonstrate that she acted with actual malice three months later when she quickly grouped Blankenship in as one of the three "convicted felons"—as an "aside"—in a later blog post about Rep. Collins's recent arrest. JA2079 ¶ 3. Phillips had written more than 100 pieces since Blankenship's election loss, JA2079-2080 ¶ 5, and the uncontested evidence was that she was using "felons"

72

in a colloquial way and "did not appreciate or focus in writing this paragraph on any technical meaning that 'felon' may have," JA2079 ¶ 4. There is *no contrary evidence*. Blankenship did not depose Phillips, and he produced no evidence that she disbelieved what she wrote. There was not a shred of evidence that she had any reason to purposely utter a falsehood or that she "in fact entertained doubts" as to the truth of what she wrote. *See Fairfax*, 2 F.4th at 295.

At most, as the district court held, Phillips mistakenly failed to recognize in the moment "the technical inaccuracy associated with passively referring to Mr. Blankenship as a convicted felon." JA5723. But such a mistake is no more than that: "an innocent mistake in legal terminology." *Id.* And the "[f]ailure to recognize a mistake or ambiguity and its potential consequences is not evidence of a reckless disregard for the truth." *See Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 958 (8th Cir. 2020).[35] Or, stated differently, an "unfortunate choice of words" may be regrettable, but it is not a "calculated falsehood." *Ryan*, 634 F.2d at 733.

---

[35] *See also Marcone v. Penthouse Int'l Mag. for Men*, 754 F.2d 1072, 1089-91 (3d Cir. 1985) (publisher "may have been negligent … in failing to distinguish between an allegation and a proven fact" relating to criminal conduct, but this was not actual malice).

Blankenship's cited authority illustrates the point. In *Zerangue*, the author of an inaccurate statement was a reporter who covered the courts. In describing the plaintiff's conviction, he "may have been negligent in relying on his memory to write the story and in failing to investigate further," but that "does not rise to the level of actual malice." 814 F.2d at 1071.[36] Here, based on her understanding, it just "did not occur to [Phillips] at the time that 'felon' was a word that required any further fact checking." JA2079 ¶ 4.[37]

---

[36] Blankenship cites *Golden Bear*, but the actual malice finding there involved the author's *contemporaneous notes from the time of publication* that "clearly indicate[d] her awareness" that what she was writing was false. 708 F.2d at 950. Blankenship also cites *Palin v. New York Times Co.*, 940 F.3d 804 (2d Cir. 2019), a decision concerning the sufficiency of allegations under Rule 12(b)(6). That is an entirely different inquiry than summary judgment, which demands "proffer[ing] sufficient evidence to prove actual malice by clear and convincing evidence." *CACI Premier Tech.*, 536 F.3d at 293. Moreover, in *Palin*, the plaintiff alleged that the editor knew that the central focus of the publication—suggesting a link between Sarah Palin and a shooting—was baseless because he was responsible for "numerous articles confirming there was no link," and additionally had "reason to be personally hostile toward Palin." 940 F.3d at 813-15. There are no such allegations—much less any evidence—here.

[37] Blankenship also references "emails to her which correctly referred to Appellant's misdemeanor charge." Br. 61. As the district court explained, those were mass emails with one-word references to his conviction embedded deep within them. JA5720-5721. The uncontested record is that Phillips does not even recall reading those emails, let alone focusing on the passing references buried in them. *See id.*

Moreover, there is not only an *absence* of affirmative evidence of actual malice as to the Post; there is affirmative evidence tending to negate any inference of actual malice. Shortly after learning of the stray references in the two publications through the filing of this lawsuit, the Post published corrections in print and online, noting that Blankenship's conviction was for a misdemeanor. *See Hoffman v. Wash. Post Co.*, 433 F. Supp. 600, 605 (D.D.C. 1977) (publication of correction "is significant and tends to negate any inference of actual malice"), *aff'd*, 578 F.2d 442 (D.C. Cir. 1978); *Zerangue*, 814 F.2d at 1071 ("[A] readiness to retract tends to negate 'actual malice.'").

In sum, the district court evaluated the record "in its entirety," JA5723, and properly granted summary judgment to the Post.

### 5. Summary Judgment Was Proper as to ABC.

Blankenship's perfunctory argument as to ABC consists largely of conclusory assertions he failed to even raise previously, which this Court should disregard. *See, e.g.*, *Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1227 (4th Cir. 1998); *see also infra* pp. 82-83. The district court properly granted ABC's summary judgment motion after reviewing the "entirety of the evidentiary record"—including, "[i]mportantly, … contemporaneous [written] communications" which showed that Blankenship could not demonstrate

"clear and convincing evidence" that ABC acted with actual malice in publishing the sole statement giving rise to Blankenship's claim against it. JA5715-5716.

### a. Factual Record

ABC's lone statement was a tweet on July 24, 2018, ten weeks after Blankenship's primary loss. It quoted the first sentence of an article published on ABC's website the night before, reporting that Blankenship was seeking to run for the Senate on a third-party ticket. JA2632-2634. The reporter, John Verhovek, referred to Blankenship as a "convicted felon" but accurately described the crime for which Blankenship was convicted:

> Don Blankenship, the former coal baron and convicted felon who finished third in the West Virginia Republican primary in May, is wading back into the state's U.S. Senate race, this time attempting filing paperwork to run as a member of the Constitution Party.
>
> Bla[n]kenship was convicted in 2015 for conspiracy to violate mine safety and health standards in the aftermath of the 2010 Upper Big Branch Mine disaster that resulted in the death of 29 miners.

JA2633. The day the tweet was posted, Blankenship's campaign manager sent a text message to ABC reporter Meridith McGraw (who was assigned to cover the West Virginia Senate race, but was on vacation that day), asking for the "felon" reference in the tweet to be fixed. JA2601-2603 ¶¶ 9-15; JA2809-2810.

76

McGraw immediately notified Verhovek of the error, and he worked with editors to promptly correct the reference in the social media posts and in the original article (including a note acknowledging the mistake). All of this happened within hours—and *less than a single day*—after the original publication. JA2582-2585 ¶¶ 35-45; JA2727-2730; JA2755-2770; JA2781-2790.[38]

The record evidence is uncontroverted that when Verhovek wrote the article that was quoted in the tweet, he thought the term "convicted felon" was an accurate description for someone who had been convicted of a serious crime and served a full year in federal prison. *See* JA2527-3255; JA2576; JA2581-2582; JA2586 ¶¶ 19, 32-34, 50. Verhovek is not a lawyer, and did not typically cover courts, JA2576-2577 ¶¶ 19-21; he misunderstood the technical legal implications of a phrase that he used colloquially.

### b. Blankenship Failed to Present Evidence of Actual Malice.

Blankenship did not come close to meeting his high burden of demonstrating actual malice as to ABC. As the district court noted, the

---

[38] The social media editor also circulated an internal memo to alert others about the confusion concerning Blankenship's conviction, in an effort to prevent the mistake from occurring again. *See* JA2597 ¶ 35; JA2791-2792.

Supreme Court has long held that "choice of … language, though reflecting a misconception, does not place the speech beyond the outer limits of the First Amendment's broad protective umbrella."  JA5176 (quoting *Bose Corp.*, 466 U.S. at 513).  Otherwise, "any individual using a malapropism might be liable, simply because an intelligent speaker would have to know that the term was inaccurate in context, even though he did not realize his folly at the time." *Bose Corp.*, 466 U.S. at 512.  Here, the undisputed evidence established that Verhovek simply made a mistake in using legal terminology.  *See also CACI Premier Tech.*, 536 F.3d at 296-97 (commentator's accusation that interrogator participated in "torture" did not raise an inference of actual malice, rejecting argument that the term must be read in the "narrow legalistic sense" that the "word is used in the U.S. criminal code").

Blankenship ignores this explanation of controlling law, and the fact that *dozens* of journalists made the same error.  Instead, he focuses almost entirely on the fact that Verhovek's byline or co-byline appeared on three political updates that had been published months earlier, which reported about multiple races in different states and referred in passing to Blankenship being convicted of a "misdemeanor."  Br. 65; JA2645-2718.  These were among more than 100 articles Verhovek had written or co-written for ABC to that point,

and it is hardly unsurprising that he did not remember isolated references in a few articles that did not focus on Blankenship or his criminal history. JA2578-2580 ¶¶ 24-28.  No contrary evidence was adduced by Blankenship.

Blankenship's assertion that the district court only accepted Verhovek's uncontradicted testimony is flatly wrong.  There also were *contemporaneous written communications* between Verhovek and McGraw, which made clear that Verhovek simply made a mistake.  As the district court noted, Verhovek's "confusion is readily apparent" when he responded to McGraw's email alerting him to the error:  "Meridith can you send me exact language on this? Blankenship was sent to federal prison but he was not convicted of a felony?" JA5715; JA2731-2733.  Later that same day, Verhovek apologized to McGraw for his error:  "Sorry about Blankenship, *I thought I had it right* on that or seen it in an earlier story, that's my bad … I just wish I'd been more careful." JA5715-5716 (emphasis added); JA2811-2813.  Coupled with Verhovek's uncontradicted testimony, the district court correctly concluded that these "contemporaneous communications … indicate [Verhovek's] reference to Mr. Blankenship as a convicted felon amounts to little more than a genuine misconception or mistake, and not a knowing falsity or a reckless disregard for the truth."  JA5716.

Blankenship's other cursory attempts to conjure up a factual dispute about actual malice similarly fall flat. He criticizes Verhovek for not consulting "prior reporting" about Blankenship's criminal conviction, Br. 64 (quoting JA2578 ¶ 25), but provides no rationale for why a reporter writing a short update on a political race should be required to study the details of Blankenship's criminal history before repeating a widely-used term to reference his conviction for a serious crime. Moreover, Blankenship ignores the well-settled law that a mere "[f]ailure to investigate" does not meet the constitutional requirement of actual malice. *E.g.*, *St. Amant*, 390 U.S. at 733; *see also supra* pp. 25-26. This Court recently reaffirmed that established principle, *see Cannon*, 36 F.4th at 571-72, which also applies to an organization's own prior reporting, *see Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 125-26 (2d Cir. 2013) ("Even the failure to review one's own files is inadequate to demonstrate malice by the party responsible for publishing a statement." (citing *N.Y. Times*, 376 U.S. at 287-88)).

Blankenship also makes the newly-minted assertion that "McGraw's quick response" informing Verhovek of the error somehow demonstrates that the truth "should have been obvious" to him. Br. 66. But this convoluted argument ignores that dozens of reporters made the same mistake; it also

80

disregards the fact that McGraw learned of the error quickly because Blankenship's campaign manager contacted her about it.  JA2602 ¶ 12.

Finally, Blankenship asserts that the "convicted felon" reference "remained on the ABC website and in ABC's email newsletter until after this lawsuit was filed."  Br. 65.  But this is a red herring.  There is no dispute that ABC acted quickly to fix the error that Blankenship's team identified in the tweet, and also corrected the original article from which it was derived.  Although ABC inadvertently missed seeing an additional "felon" reference buried within a compilation of links to recent stories at the bottom of an email newsletter from that morning (which Verhovek did not prepare, and Blankenship's team never mentioned before ABC discovered and removed it during the litigation), Verhovek and his editors took immediate steps to correct the mistake in every place they could find.  JA2585-2586 ¶ 49.  That further shows that the error was an unintentional mistake, and weighs against any finding of actual malice.  *See Nelson Auto Ctr.*, 951 F.3d at 958-59 ("Readiness to print a retraction weighs against 'malice.'"); *see also supra* p.75.  In any event, as discussed above, the failure to retract after publication is not evidence that a defendant acted with actual malice before publication.  *See Fairfax*, 2 F.4th at 295; *Pippen*, 734 F.3d at 614.

In sum, as the district court properly concluded, Blankenship's "bald assertions" are not remotely sufficient to establish, by clear and convincing evidence, that ABC "had actual knowledge of falsity or serious doubts as to the truth at the time of publication"—nor to create any genuine issue of material fact. JA5716. Summary judgment for ABC should be affirmed.

### 6. Summary Judgment Was Proper as to the Additional Ten Defendants.

Blankenship devotes less than two pages to the remaining *ten* defendants—News & Guts, Eli Lehrer, Mediaite, Tamar Auber, Griffin Connolly, FiscalNote, HDM, NBCU, CNBC, and 35th PAC. *See* Br. 67-68. His brief lacks even one citation to a single fact relevant to any of them. Blankenship does not identify or discuss any evidence whatsoever, much less explain how he has met his evidentiary burden by clear and convincing evidence. Affirmance is plainly warranted for the reasons set forth in the district court's rulings. JA5696-5707.[39]

Indeed, this Court routinely finds that arguments have been waived when they are presented in the cursory, undeveloped manner in which Blankenship addresses these ten defendants. *See, e.g.*, *Timpson v. Anderson*

---

[39] 35th PAC, a defunct entity, is not participating in the appeal, but the same reasoning applies to it. *See* JA5614-5650.

*Cty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 248 & n.16 (4th Cir. 2022) (appellants waived claims as to which they provided no analysis of the relevant legal principles "or how they would apply," and "likewise include[d] no record citations to guide [the Court's] review"); *United States v. Diaz*, 865 F.3d 168, 179 (4th Cir. 2017) (finding waiver where appellee asserted argument in one page, "with the essential argument contained in one sentence"); *Brown v. Nucor Corp.*, 785 F.3d 895, 923 (4th Cir. 2015) (party waives argument on appeal "whenever [he] fails to develop [his] argument—even if his brief takes a passing shot at the issue" (cleaned up)).[40]  Blankenship was granted 20,000 words for his brief, precisely because there were so many defendants to address.  Having failed to advance any meaningful arguments that these ten defendants acted with actual malice, he can fairly be deemed to have conceded the point.

At a minimum, Blankenship's treatment of these defendants is a striking admission that the record contains no evidence of actual malice.  That is hardly

---

[40] As noted earlier, *see supra* n.6, Blankenship does not mention the district court's dismissal of defendant Griffin Connolly because he was indisputably *not the author of the FiscalNote article in question.*  JA4729-4732.  As the district court noted, "Mr. Blankenship … does not appear to dispute that Mr. Connolly was not involved in the article's publication."  JA5678.  Blankenship has waived any argument as to Mr. Connolly.

surprising: the only relevant evidence before the district court as to these defendants were uncontroverted sworn affidavits from the authors of the statements at issue or the people responsible for their publication, in which each person attested that he or she was unaware of the legal classification of Blankenship's conviction and did not doubt that referring to him as a "felon" was accurate. JA0193-0194; JA4373-4378; JA4492-4497; JA4643-4644; JA4724-4727; JA4733-4735; JA4991-4995; JA5319-5332. As the district court noted, Blankenship adduced no contradictory evidence. JA5704; JA5781.

In fact, over the course of a year of discovery, Blankenship did not depose a *single* person responsible for *any* of the statements published by these defendants. At issue for all of them were single, passing references to "felon" in single articles—the same term that Blankenship has conceded more than 100 news outlets used. *See supra* p.32. He never requested a correction from any of these defendants—and one published a correction on its own, *see* JA4495-4497, JA4992-4995. He never even adduced any evidence of ill-will, let alone constitutional actual malice; in fact, one of the authors (Lehrer) was advocating *for* Blankenship's ability to run in the general election after his primary defeat. JA4493-4494. And some of these writers averred that they recalled reviewing other references to Blankenship as a felon. JA4492;

84

JA4643-4644; JA4726; JA5698.  Blankenship's evidence on summary judgment was generally limited to copies of the statements at issue, excerpts of testimony from his own deposition, copies of the federal sentencing guidelines, and his proffered damages expert's written report—none of which amounted to evidence of actual malice.[41]

### C.   This Court Cannot Overrule *New York Times v. Sullivan.*

Unable to prove actual malice, Blankenship argues that *New York Times v. Sullivan* is "ripe to be rejected."  Br. 85.  But this Court "cannot overrule Supreme Court precedents."  *In re Grand Jury Subpoena*, 870 F.3d 312, 319 n.3 (4th Cir. 2017); *see also, e.g.*, *Payne v. Taslimi*, 998 F.3d 648, 654 (4th Cir. 2021); *Brown v. Gilmore*, 256 F.3d 265, 283 n.1 (4th Cir. 2001).

---

[41] As to CNBC and NBCU, Blankenship cited NBCUniversal News Group Policies and Guidelines and related testimony, which is irrelevant for the reasons addressed above.  Likewise, as to FiscalNote, Blankenship simply cited a statement that "delivering comprehensive, accurate and objective" reporting was part of its "mission."  JA4804.  In opposition to HDM, News & Guts, and Mediaite's motions, Blankenship argued that each company's *lack* of internal policies was a departure from "accepted journalistic standards," JA0226; JA4678-4780; JA5059.  He also contended that by criticizing his "racist" remarks (or suggesting he was racist), News & Guts and Mediaite evinced animus towards him, JA0229; JA4675-4676.  For all the reasons explained in this brief—and in the district court's rulings—none of this comes close to the required clear and convincing evidence of actual malice.

If anything, this case forcefully underscores the wisdom of *New York Times*—and the nearly six decades of jurisprudence that has followed it. Blankenship was not only "one of the most outspoken, recognizable, and controversial figures in the state." *United States v. Blankenship*, 2015 WL 1565675, at *5 (S.D.W. Va. Apr. 8, 2015). He was also a candidate for the U.S. Senate, and nowhere is the "breathing space" provided by *New York Times* more critical than in the coverage of those who seek to hold public office. *N.Y. Times*, 376 U.S. at 270-72.

As the Supreme Court has said, a case concerning "public discussion of the qualifications of a candidate for elective office presents what is probably the strongest possible case for application of the [actual malice] rule," because freedom in "examining and discussing the[] merits and demerits of the candidates" is "necessary for the optimal functioning of democratic institutions" and "must be protected with special vigilance." *Harte-Hanks*, 491 U.S. at 686–87 (quoting 4 Jonathan Elliot, Debates on the Federal Constitution 575 (1861)); *see also Buckley v. Valeo*, 424 U.S. 1, 14 (1976) (per curiam) ("[D]ebate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution. The First Amendment affords the broadest protection to such political

86

expression."). After all, "speech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison*, 379 U.S. at 74-75.

## III. Summary Judgment Additionally Should Be Affirmed Because Blankenship Failed to Establish Intent to Injure.

Separate and apart from failing to adduce evidence of constitutional actual malice, Blankenship failed to adduce evidence of intent to injure, an indispensable requirement of a defamation claim brought by a candidate for public office in West Virginia. *See Sprouse*, 211 S.E.2d at 692. Tellingly Blankenship fails to mention this separate requirement anywhere in his brief. And it independently supports affirmance of the grant of summary judgment.

As the district court recognized, the Supreme Court of West Virginia has held that a plaintiff who qualifies as a candidate for public office must prove that "the publisher *intended to injure* the plaintiff through the knowing or reckless publication of the alleged libelous material." *See* JA5686 (emphasis added) (quoting *Chafin v. Gibson*, 578 S.E.2d 361, 363 (W. Va. 2003) (per curiam)). Indeed, both federal and state courts in West Virginia repeatedly have confirmed the vitality of this requirement.[42] Like both material falsity

---

[42] *See Giles v. Kanawha Cty. Bd. of Educ.*, 2018 WL 300605, at *3 (W. Va. Jan. 5, 2018); *Backus v. City of Parkersburg*, 980 F. Supp. 2d 741, 748 (S.D.W. Va. 2013); *Chafin*, 578 S.E.2d at 365-66; *Long v. Egnor*, 346 S.E.2d 778, 785 (W. Va. 1986); *Hinerman*, 423 S.E.2d at 579). Blankenship did not identify any

and actual malice, intent to injure too must be demonstrated by clear and convincing evidence. *Hinerman*, 423 S.E.2d at 579.

When raised by defendants on summary judgment, Blankenship failed to identify any evidence in the record that any of the defendants intended to injure Blankenship through the publication of the words at issue. Instead, as discussed above, the record shows that the statements here involved one-word, passing references to Blankenship in the midst of discussion of his candidacy— however brief that discussion may have been in some cases. At most, Blankenship can say that *some* commentators criticized him, such as for his statements concerning Senator McConnell's family. *See supra* p.7. But there is no evidence that those speakers intended to injure Blankenship *through the publication of false information about his conviction*, as required under West Virginia law. *See Chafin*, 578 S.E.2d at 363; *Backus v. City of Parkersburg*, 980 F. Supp. 2d 741, 748 (S.D.W. Va. 2013) (granting summary judgment where plaintiff offered only "conclusory statement[s]" of "intent to injure"). Because the record does not support a finding of such intent, the district

---

contrary authority below, citing instead to inapposite rulings by Pennsylvania courts having nothing to do with the elements of West Virginia law.

court's grant of summary judgment should be affirmed on this independent basis as well.[43]

## IV. The District Court Properly Granted Summary Judgment on Blankenship's False Light Claim.

Finally, the district court properly granted summary judgment on Blankenship's claim for false light invasion of privacy for the same reasons as his defamation claim. *See* JA5751-5753; JA5781-5784. It is well-settled that "courts and commentators have consistently treated false light privacy claims in essentially the same manner as they have treated defamation." *Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70, 87 (W. Va. 1983); *see also Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 56 (1988); *Dobkin v. Johns Hopkins Univ.*, 172 F.3d 43 (Table), 1999 WL 22901, at *4 (4th Cir. 1999) (per curiam) (affirming summary judgment on defamation and false light claims because of lack of evidence of actual malice); *Ballengee*, 968 F.3d at 351 (affirming summary judgment on defamation and false light claims where statements were substantially true); JA5752-5753 (collecting cases). Indeed, Blankenship does not contest that his false light claim rises and falls on the same grounds

---

[43] Moreover, as defendants further argued in the district court, Blankenship also failed to show that any of the statements at issue actually caused him any injury, and summary judgment also was warranted on that basis. *See* JA1639-1643; JA0650-0656; JA2228-2232; JA3063-3067; JA3788-3791.

as his defamation claim.  *See* Br. 68-69.  For all the reasons explained above, both claims were properly dismissed by the district court.

## CONCLUSION

The judgment of the district court should be affirmed.

Dated: July 25, 2022

Respectfully submitted,

/s/ *Kevin T. Baine*

Kevin T. Baine
Stephen J. Fuzesi
Gloria K. Maier
Matthew D. Heins
Katelyn R. Adams
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC 20024
(202) 434-5000 Phone
kbaine@wc.com
sfuzesi@wc.com
gmaier@wc.com
mheins@wc.com
kadams@wc.com

***Counsel for Appellees American Broadcasting Companies, Inc.; Cable News Network, Inc.; Fox News Network LLC; MSNBC Cable, LLC; WP Company LLC; CNBC, LLC; and NBCUniversal, LLC***

***Lead Counsel for Appellees***

Kelli L. Sager
DAVIS WRIGHT TREMAINE
LLP
865 S. Figueroa Street, Suite 2400
Los Angeles, CA 90017
(213) 633-6800 Phone
kellisager@dwt.com

Eric Feder
DAVIS WRIGHT TREMAINE
LLP
1301 K Street, NW, Suite 500 East
Washington, DC 20005
(202) 973-4200 Phone
ericfeder@dwt.com

***Counsel for Appellee American
Broadcasting Companies, Inc.***

Elbert Lin
HUNTON ANDREWS KURTH
LLP
951 E. Byrd Street
Richmond, VA 23219
(804) 788-8200 Phone
elin@huntonak.com

***Counsel for Appellee Fox News
Network LLC***

Jared M. Tully
Mary Claire Davis
FROST BROWN TODD LLC
500 Virginia Street East, Suite 1100
Charleston, WV 25301
(304) 345-0111 Phone
jtully@fbtlaw.com
mcdavis@fbtlaw.com

Ryan W. Goellner
FROST BROWN TODD LLC
3300 Great American Tower
301 E. Fourth Street
Cincinnati, OH 45202
(513) 651-6800 Phone
rgoellner@fbtlaw.com

Kevin T. Shook
FROST BROWN TODD LLC
10 West Broad Street, Suite 2300
Columbus, OH 43215
(614) 464-1211 Phone
kshook@fbtlaw.com

***Counsel for Appellees MSNBC
Cable, LLC; CNBC, LLC and
NBCUniversal, LLC***

Lonnie C. Simmons
DIPIERO SIMMONS MCGINLEY
& BASTRESS, PLLC
604 Virginia Street, East
Charleston, WV 25301
(304) 342-0133 Phone

*Counsel for Appellees Mediaite,
LLC and Tamar Auber*

Robert M. Bastress, III
DIPIERO SIMMONS MCGINLEY
& BASTRESS, PLLC
604 Virginia Street, East
Charleston, WV 25301
(304) 342-0133 Phone

*Counsel for Appellee The
Charleston Gazette-Mail*

Jennifer S. Jackman
WHITEFORD, TAYLOR &
PRESTON, LLP
1800 M Street, NW, Suite 401
Washington, DC 20036
(202) 659-6800 Phone
jjackman@wtplaw.com

*Counsel for Appellee Eli Lehrer*

Allen M. Gardner
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
(202) 637-2270 Phone
allen.gardner@lw.com

*Counsel for Appellees Fiscal Note,
Inc. and Griffin Connolly*

Chris Vlahos
Jenna Harris
RITHOLZ LEVY FIELDS, LLP
131 S. 11th Street
Nashville, TN 37206
(615) 250-3939 Phone
cvlahos@rlfllp.com
jharris@rlfllp.com

William D. Wilmoth
STEPTOE & JOHNSON, PLC
1233 Main Street, Suite 3000
Wheeling, WV 26003
(304) 231-0456 Phone
william.wilmoth@steptoe-
johnson.com

*Counsel for Appellee News and
Guts, LLC*

# CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies under Federal Rule of Appellate Procedure 32(g) that the foregoing Brief of Appellees meets the applicable formatting and type-volume requirements.  This brief was prepared in Microsoft Word in 14-point proportionally spaced font and contains 19,416 words, excluding all items identified under Federal Rule of Appellate Procedure 32(f).


Dated: July 25, 2022

*/s/ Stephen J. Fuzesi*
Stephen J. Fuzesi
